# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## CENTRAL DIVISION

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Case No.:<br><br>**05-40151 FDS** |

## COMPLAINT

Plaintiff, the Tax Matters Partner of FIDELITY INTERNATIONAL

CURRENCY ADVISOR A FUND, L.L.C., by and through his attorneys, pursuant to 26

U.S.C. § 6226, hereby complains against Defendant, United States of America, as

follows:

### NATURE OF THE ACTION

1.    Plaintiff challenges the proposed adjustments by the Internal Revenue

Service (the "IRS") of the partnership items of Fidelity International Currency Advisor A

Fund, L.L.C. ("FICAA" or the "Partnership"), a limited liability company treated as a

partnership for federal income tax purposes, as reported on the Partnership's federal

income tax return for the taxable year ending December 31, 2001. The IRS's adjustments

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. _____
DATE ___9-1-05_____

to FICAA's federal partnership income tax return and the IRS's penalty assertions are erroneous.

      2.      This is an action for readjustment of partnership items, and for a refund of money held by the Secretary of Treasury, brought pursuant to section 6226(b) of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 6226(b)). At issue in this case is whether the IRS erroneously adjusted certain partnership items of FICAA for 2001, whether the IRS erroneously asserted that any underpayments of tax resulting from the adjustments are subject to accuracy-related penalties pursuant to 26 U.S.C. § 6662, and whether amounts deposited with the Secretary of Treasury pursuant to 26 U.S.C. § 6226(e)(1) should be refunded together with interest allowable by law.

## PARTIES

      3.      FICAA is a limited liability company organized under Delaware law and is treated as a partnership for federal income tax purposes. The Partnership's principal place of business is located at 116 Flanders Road, Suite 3000, Westborough, MA 01581, within the jurisdiction of this Court.

      4.      Plaintiff, Richard J. Egan, is a partner of FICAA within the meaning of 26 U.S.C. § 6231(a)(2), and a notice partner of FICAA within the meaning of 26 U.S.C. § 6231(a)(8). Plaintiff also is the Tax Matters Partner ("TMP") of FICAA within the meaning of 26 U.S.C. § 6231(a)(7) for the 2001 tax year.

      5.      The Defendant is the United States of America.

## JURISDICTION AND VENUE

      6.      Jurisdiction is proper in this court pursuant to 26 U.S.C. § 6226(b)(1) and 28 U.S.C. § 1346(e).

7.     The principal place of business of the Partnership is Westborough, Massachusetts. Venue thus is proper in this Court pursuant to 26 U.S.C. §§ 6226(a)(2) and (b)(1) and 28 U.S.C. § 1402(c). Venue is proper in the Central Division pursuant to Local Rule 40.1(D)(1)(d).

8.     FICAA timely filed its U.S. Return of Partnership Income (Form 1065) with the IRS for its 2001 taxable year.

9.     On April 6, 2005, the IRS mailed a Notice of Final Partnership Administrative Adjustment ("FPAA") with respect to the Partnership's 2001 tax return addressed to the Tax Matter Partner. A copy of the FPAA is attached as Exhibit A.

10.     On April 6, 2005, pursuant to 26 U.S.C. § 6223(a), the IRS mailed a copy of the FPAA to Plaintiff in his capacity as a notice partner of FICAA.

11.     On May 17, 2005, Plaintiff was designated as the TMP of the Partnership for the 2001 taxable year pursuant to 26 U.S.C. § 6231(a)(7) and 26 C.F.R. §§ 301.6231(a)(7)-1 and -2.

12.     No complaint was filed pursuant to 26 U.S.C. § 6226(a) within ninety days after the IRS mailed the FPAA to the TMP. No other notice partner has since filed a complaint or petition pursuant to 26 U.S.C. § 6226(b).

13.     Plaintiff, who is both a notice partner and the TMP of the partnership, has timely filed this complaint pursuant to 26 U.S.C. § 6226(b)(1), within sixty days after the close of the ninety-day period described in section 6226(a).

14.     Under 26 U.S.C. § 6226(e)(1), a partner filing a petition for readjustment of partnership items in Federal District Court is required to deposit with the Secretary of the Treasury the amount by which the tax liability of that partner would be increased if

3

the treatment of partnership items on the partner's tax return was made consistent with the treatment of partnership items on the partnership return, as adjusted by the FPAA. Plaintiff has satisfied this deposit requirement.

15.    Prior to the filing of this complaint, Plaintiff, in good faith, computed the amount that his federal income tax liability for the 2001 taxable year would be increased if the partnership items allocated to him were made consistent with the treatment of those items on the 2001 FICAA return as adjusted by the 2001 FPAA. Plaintiff made deposits totaling $62,100,000 with the Secretary of the Treasury. Specifically, Plaintiff deposited $30,000,000 on January 28, 2005; $10,000,000 on March 3, 2005; $10,000,000 on April 21, 2005; and $12,100,000 on May 6, 2005. In this action, Plaintiff seeks to recover these deposits, together with interest as allowable by law.

## FACTS COMMON TO ALL CLAIMS

### Background

16.    In 1979, Plaintiff co-founded a technology company, EMC Corporation (the "Corporation"), a developer of intelligent enterprise storage and retrieval technology. In 2000 and 2001, a very large portion of Plaintiff's assets consisted of the stock of the Corporation, which had become a publicly-traded global corporation.

17.    Plaintiff was continually concerned about this concentration of Corporation stock, particularly in 2000 and 2001 given the volatility of technology stocks. The price of the Corporation's stock peaked in September 2000, when it traded over $100 per share. At the end of 2000, the price of the Corporation's stock began a steady and precipitous decline, falling below $12 per share in 2001.

18.     Plaintiff was the chairman of the Board of Directors of the Corporation until he resigned in September 2001 to enter government service. In 2001, securities laws and the Corporation's policies limited Plaintiff's ability to sell stock in the Corporation. Plaintiff could only sell his stock during narrow windows of time, and there were substantial periods when Plaintiff was blocked from selling. It also was unpredictable when the windows would open and for how long they would remain open. The Corporation's policies also prohibited Plaintiff from directly hedging his stock. In addition, the media reported Plaintiff's sales of stock so any "large" sales would likely have a negative impact on the Corporation's stock price.

19.     By 2001, Plaintiff's investments were managed by a family-owned investment company (the "Investment Company"). The Investment Company acted as Plaintiff's agent in managing his investments and was operated by Plaintiff's sons. Plaintiff was not involved in the day-to-day management of the Investment Company or his investments, but he was consulted on all material decisions.

20.     Because of Plaintiff's concentrated stock position, Plaintiff was interested in investments that would act as an indirect hedge of Corporation stock. Moreover, in 2000 and 2001, Plaintiff and his business interests had substantial variable rate debt that Plaintiff had personally guaranteed. Accordingly, investments that directly or indirectly hedged variable interest rates were similarly attractive and served Plaintiff's objective. In evaluating investments, Plaintiff also took taxes into consideration and relied on others for advice and compliance in that area.

21.    As an executive of the Corporation, Plaintiff received stock options as part of his compensation package. In early 2001, Plaintiff exercised some of these stock options creating a substantial amount of economically unrealized taxable income.

22.    Following the exercise of the options, the price of Corporation stock dropped dramatically due to market conditions, so that the taxable income from the exercise of the options was substantially greater than the value of the stock following the decline in the stock's market price. This differential made investments that would further Plaintiff's overall investment objectives and reduce or defer tax on the economically unrealized income attractive.

23.    Michael J. Egan is Plaintiff's son and investment manager at the Investment Company. In 2000 and 2001, Plaintiff – with the assistance of Mike Egan – considered proposed investment opportunities that were consistent with Plaintiff's investment objectives and were tax-advantaged. Plaintiff was not interested in investing in a proposed investment that was mass-marketed or that had been identified as abusive by the IRS. Plaintiff was interested in an investment plan that would facilitate his overall investment strategy.

24.    Plaintiff and his son Mike Egan are not experts in federal income tax matters. Nonetheless, they understood that to obtain favorable tax results from an investment, the investment had to have economic substance aside from taxes.

25.    An international accounting firm that provided accounting and other consulting services for the Investment Company (the "Accounting Firm") advised Plaintiff and his agents concerning appropriate investments. While advising Plaintiff, the Accounting Firm recommended and arranged for Plaintiff and others acting on his behalf

to meet with Helios Trading LLC ("Helios"), an investment advisor. The Accounting Firm and Helios recommended a strategy for trading options and recommended Alpha Consultants LLC ("Alpha") to help design and customize a trading strategy to meet Plaintiff's investment objectives.

26. The Accounting Firm's recommended strategy involved a co-investor who would make a substantial cash investment and have a material opportunity to earn an economic profit or suffer an economic loss. This investor also would likely be allocated a substantial amount of taxable gain for U.S. income tax purposes that might be offset by losses at some future point.

27. Plaintiff and Mike Egan would not participate in a transaction unless it was likely to be upheld if challenged by the IRS. Accordingly, Plaintiff and Mike Egan required that a reputable law firm be able to provide an independent opinion that the strategy did not constitute a "listed transaction" and that the expected tax consequences of the strategy would more likely than not be upheld if challenged by the IRS. Plaintiff obtained such opinions.

28. Plaintiff relied on the Accounting Firm to provide tax advice and guidance to assure that the investment strategy complied with applicable tax laws. The Accounting Firm reviewed the legal opinions and advised Plaintiff that the opinions fairly analyzed the law as applied to the facts and that it would be reasonable for Plaintiff to rely on the opinions.

29. Mike Egan had general knowledge of option strategies, but no specific experience in the purchase of binary or digital options. He worked with Helios and Alpha in designing an option trading strategy that was economically substantial and

7

provided a reasonable opportunity to make an economic profit. Mike Egan believed that, without regard to tax considerations, the proposed strategy was consistent with Plaintiff's general diversification and hedging objectives.

30.     Binary or digital options are well-recognized financial instruments that can be used for speculative or hedging purposes having nothing to do with taxes. Established dealers make markets in such options, which are priced using well-accepted pricing algorithms. When created in pairs – long and short – binary or digital options can produce a reasonably predictable opportunity for profit and corresponding risk of loss. A pair of long and short European-style digital options can be structured to produce a predictable probability for profit, after accounting for trading costs.

31.     Helios and Alpha made equity investments in the Partnership alongside Plaintiff and the co-investor, Samuel Mahoney.

32.     Refco Capital Markets, an established dealer in options, executed the option transactions.

### Formation And Operation Of The Partnership

33.     Fidelity World Currency Advisor A Fund ("World Fund") was a limited liability company whose sole membership interest initially was owned by Plaintiff. Because World Fund was at all relevant times a "single member LLC," it was disregarded for federal tax purposes and all of its assets and liabilities were treated as being held directly by its owner. World Fund engaged in option transactions beginning in October 2001.

34.     In October 2001, Plaintiff, Helios, Alpha, and Mr. Mahoney invested in, and became the only members (referred to hereinafter as "partners") of, the Partnership.

8

The partners accepted the terms of the Partnership's operating agreement and invested in the Partnership by contributing cash and other property in exchange for their respective interests. Plaintiff contributed his membership interest in World Fund and $2,674,500 in cash to the Partnership in exchange for 5% of the common and 100% of the preferred interests. Helios and Alpha each contributed $7,000 to the Partnership in exchange for 1% each of the common interests. Mr. Mahoney contributed $651,000 to the Partnership for 93% of the common interests.

35.    After being contributed to FICAA, World Fund entered into additional option transactions in November 2001. As a result of these trades, World Fund realized a net economic loss of $756,359.

36.    In October and December 2001, the Partnership engaged in a variety of option transactions to implement the investment plan. Once the Partnership commenced its investment activity, Mike Egan actively and continuously monitored those activities and consulted frequently with Alpha regarding the current values and expected movements of the options. Based on Alpha's advice and his own judgment, Mike Egan adjusted the Partnership's option positions in order to maximize the economic return of the strategy.

37.    As a result of the October transactions, the Partnership earned a profit of $175,603,084. As a result of the December transactions, the Partnership realized a loss of $176,152,349. The profits and losses were allocated to the partners in accordance with their respective common ownership interests at the time of the transactions. These profits and losses represent real economic profits and losses.

38.     As a result of the option transactions, the Partnership realized substantial gains and losses on individual positions but, in relatively short order, incurred a substantial net economic loss.

39.     On November 5, 2001, pursuant to the terms of the operating agreement, Plaintiff exercised an option to purchase 88% of the common interests in the Partnership from Mr. Mahoney for $325,000. While Mr. Mahoney retained a 5% common interest, the result of the sale was that Mr. Mahoney realized a substantial economic loss on his investment in a matter of weeks.

40.     Since this purchase, Mr. Mahoney has held 5% of the common interests of the Partnership; Plaintiff has held 93% of the common and 100% of the preferred interests; and Alpha and Helios have held 1% each of the common interests. The Partnership is still operating.

41.     At various times, Plaintiff has contributed additional cash and other property to the Partnership in exchange for additional preferred membership interests. On October 31, 2001, Plaintiff contributed stock valued at $4,663,135.04. On November 29, 2001, Plaintiff contributed $5,000,000. On this same date, the Partnership invested $5,000,000 in an investment fund requiring a five-year investment. On December 14, 2001, Plaintiff contributed $2,000,000.

42.     The option transactions were professionally managed and executed. The trades were fairly priced and at market prices. A profit potential existed for each individual trade. An overall profit potential existed, and a substantial pre-tax profit potential existed after fees and expenses.

43.     Plaintiff has not disposed of his interest in the Partnership.

10

## FACTS RELEVANT TO THE ERRONEOUS ASSERTION OF PENALTIES

44.    In filing his 2001 tax return relating to the partnership operations of FICAA, Plaintiff did not engage in conduct that is subject to the accuracy-related penalties described in 26 U.S.C. § 6662.

45.    The Partnership made a reasonable attempt to comply with the Internal Revenue Code and Treasury Regulations and to exercise ordinary and reasonable care in the preparation of its tax return. The Partnership had a reasonable basis for its return position, kept adequate books and records, and can properly substantiate all items reported on its 2001 tax return.

46.    The Partnership had substantial authority for its tax treatment of the items for which adjustments are proposed in the FPAA. Moreover, the Partnership adequately disclosed its tax treatment of the items for which adjustments are proposed in the FPAA, and it had a reasonable basis for its tax treatment of the items for which adjustments are proposed in the FPAA. The Partnership reasonably believed that the tax treatment of the items for which adjustments are proposed in the FPAA was more likely than not the proper treatment.

47.    The Partnership had reasonable cause for, and acted in good faith with respect to, its tax treatment of the items for which adjustments are proposed in the FPAA.

48.    Plaintiff, in filing his 2001 federal income tax return, was required, pursuant to 26 U.S.C. § 6662(a), to treat partnership items from FICAA in a manner consistent with the treatment of partnership items on the partnership return.

49.    The Partnership and Plaintiff reasonably relied in good faith on the Accounting Firm and the opinions of qualified tax professionals who advised that the tax

treatment reported by the Partnership more likely than not would be upheld if challenged by the IRS.

## COUNT I

### Erroneous Assertion That FICAA Is Not A Partnership

50.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 50.

51.    The FPAA erroneously asserts that neither the Partnership nor its partners have established the existence of FICAA as a partnership "as a matter of fact."

52.    The FPAA's claim that FICAA is not a partnership is erroneous.

## COUNT II

### Erroneous Assertion That FICAA Had No Business Purpose, Lacked Economic Substance, And Constituted An Economic Sham

53.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 53.

54.    The FPAA erroneously asserts that the Partnership was formed or availed of solely for purposes of tax avoidance by artificially overstating basis.

55.    The FPAA erroneously asserts that transactions undertaken by the Partnership lacked a business purpose other than tax avoidance, lacked economic substance, and constituted an economic sham for federal income tax purposes.

56.    The FPAA erroneously asserts that the Partnership should be disregarded in full and that any losses are not allowable as deductions, that increases to the bases of partnership interests are not allowed, and that the allocation of the gains and losses among the partners is not allowed.

12

57.    The FPAA's claims that the Partnership had no business purpose, lacked economic substance, and constituted an economic sham are erroneous. The FPAA's claim that the Partnership should be disregarded is erroneous.

## COUNT III

### Erroneous Assertion That FICAA Is A Sham, Lacked Economic Substance, And Its Principal Purpose Was To Reduce Tax

58.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 58.

59.    The FPAA erroneously determines that the Partnership was a sham, lacked economic substance, and, under 26 C.F.R. § 1.701-2, was formed or availed of in connection with a transaction or transactions whose principal purpose was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.

60.    The FPAA erroneously disregards the Partnership and seeks to treat all transactions engaged in by the Partnership as if engaged in directly by its partners.

61.    The FPAA erroneously treats the options as never having been contributed, assumed, or acquired by the Partnership and erroneously treats any gains or losses realized by the Partnership on the options as having been realized by the partners.

62.    The FPAA erroneously determines that the partners of FICAA should not be treated as partners in the Partnership.

63.    The FPAA erroneously determines that contributions to the Partnership should be adjusted.

64.    The FPAA erroneously disregards the allocation of gains and losses from the options transactions among the partners of the Partnership.

65.     The FPAA's claims that the Partnership was a sham, lacked economic substance, and, under 26 C.F.R. § 1.701-2, the principal purpose of the transactions was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code are erroneous.

## COUNT IV

### Erroneous Assertion That Short Positions Are Treated As Liabilities

66.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 66.

67.     The FPAA erroneously determines that the short positions (written call options) contributed to the partnership constitute liabilities for purposes of 26 U.S.C. § 752, and the regulations thereunder, thereby reducing Plaintiff's basis in his interest in the Partnership.

68.     The FPAA erroneously applies Treas. Reg. § 1.752-6 (26 C.F.R. § 1.752-6) to Plaintiff's contribution of the short positions to the Partnership.

69.     The contributions of the short positions were not part of a transaction that is described in or substantially similar to the transaction described in IRS Notice 2000-44, 2000-2 C.B. 255.

70.     The FPAA's treatment of short positions as liabilities and the corresponding reduction of the partners' bases in the Partnership is erroneous.

## COUNT V

### Erroneous Assertion That There Was No Profit Motive

71.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 71.

72.    The FPAA erroneously finds that neither FICAA nor its partners entered into the option transactions with a profit motive.

73.    The FPAA's claim that no profit motive existed for the options transactions is erroneous.

## COUNT VI

### Erroneous Assertion That Contributions Should Be Reduced

74.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 74.

75.    The FPAA erroneously determines that the amounts treated as contributed by the partners under 26 U.S.C. § 722 is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call options to the same counterparty.

76.    The FPAA's treatment of the partners' contributions is erroneous.

## COUNT VII

### Erroneous Assertion That The Basis Of
### Contributed Property Has Not Been Established

77.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 77.

78.    The FPAA erroneously asserts that the adjusted bases of the options and other property contributed to the Partnership has not been established under 26 U.S.C. § 723.

79.    The FPAA's claim that the FICAA partners have not established their adjusted bases in contributed property is erroneous.

## Count VIII

### Erroneous Assertion That Option Positions Should Be Aggregated

80.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 80.

81.    The FPAA erroneously maintains that the purchase of each purchased call option by the contributing partner and the simultaneous sale of a different call option to the same counterparty constituted "the acquisition of a single, unitary position by the contributing partner."

82.    The FPAA's claim that the acquisition of a purchased call option and the sale of a different call option constituted the acquisition of a single, unitary position and the basis adjustments made by the FPAA pursuant to such claim are erroneous.

## COUNT IX

### Erroneous Assertion That The Termination Of Option Positions Did Not Constitute A Sale Or Exchange

83.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 83.

84.    The FPAA erroneously asserts that the options entered into following the termination of the gain legs of certain option positions had the same legal entitlements as the terminated positions. Based on this erroneous assertion, the FPAA incorrectly determines that the "termination of the gain legs of the option spreads" acquired by the Partnership did not constitute a sale or exchange of the terminated options for federal income tax purposes.

85.    The FPAA's claim that the termination of the gain legs was not a sale or exchange of such positions and the FPAA's reduction in the Partnership's adjusted basis

16

in the options entered into following the termination of the gain legs of the option positions are erroneous.

## Count X

### Erroneous Assertion That The 26 U.S.C. § 988
### Loss Has Not Been Established As Allowable

86.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 86.

87.    The FPAA erroneously disallows the 26 U.S.C. § 988 loss claimed by the Partnership based on the FPAA's erroneous conclusion that the Partnership has not established that the loss was incurred and is deductible under any provision of the Internal Revenue Code.

88.    The FPAA's claim that the 26 U.S.C. § 988 loss has not been established as allowable is erroneous.

## COUNT XI

### Erroneous Assertion That The Losses Have Not Been Established As Allowable

89.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 89.

90.    The FPAA erroneously disallows the losses arising from the option transactions based on the erroneous finding that it has not been established that the losses were incurred and are deductible under any provision of the Internal Revenue Code.

91.    The FPAA's disallowance of the losses arising from the option transactions is erroneous.

## COUNT XII

### Erroneous Assertion That A Partner's Contribution Has Not Been Established

92.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 92.

93.     The FPAA erroneously asserts that it has not been established that Mr. Mahoney was a partner in FICAA or that he made a contribution of cash in exchange for an interest in the Partnership.

94.     The FPAA's claims that Mr. Mahoney is not a partner and that he did not make a contribution in exchange for an interest in the Partnership are erroneous.

## COUNT XIII

### Erroneous Assertion Of Penalties

95.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth in this paragraph 95.

96.     The IRS erroneously determines that underpayments of tax resulting from the IRS's adjustments are subject to one or more accuracy-related penalties under 26 U.S.C. § 6662.

97.     The FPAA erroneously determines that the Partnership's adjustments of partnership items are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the Partnership or its partners that the position taken more likely than not was the correct treatment.

98.     The FPAA erroneously concludes that any underpayment of tax that might result from the proposed adjustments is due to negligence or disregard of the rules and

regulations for filing income tax returns, and erroneously concludes that a twenty percent penalty under 26 U.S.C. §§ 6662(a) and (b)(1) applies.

99.    The FPAA erroneously concludes that any underpayment of tax that might result from the proposed adjustments constitutes a substantial understatement of income tax and erroneously concludes that a twenty percent penalty under 26 U.S.C. §§ 6662(a) and (b)(2) applies.

100.    The FPAA erroneously determines that either a substantial valuation misstatement penalty or a gross valuation misstatement penalty applies under 26 U.S.C. §§ 6226(a), (b)(3), (e), and (h).

101.    The FPAA erroneously determines that there has been no showing that there was reasonable cause for any of the underpayments, that the Partnership or any of its partners acted in good faith, or that any other exceptions to the penalties apply.

102.    The FPAA's application of penalties in this case is erroneous.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    That this Court determine that the Partnership's 2001 federal income tax return was correct as filed;

2.    That this Court determine that the IRS's adjustments of FICAA's partnership items for 2001 contained in the FPAA are erroneous;

3.    That this Court determine that the assertion of accuracy-related penalties by the IRS is erroneous;

4.    That this Court order that the United States return and refund all amounts deposited with (or paid to) the Secretary of the Treasury with respect to this action,

together with interest thereon as allowed by law, and pay all other amounts that may be legally due; and

    5.    That this Court grant such other and further relief to which Plaintiff and the other partners of FICAA are entitled as well as any other relief that the Court deems just and appropriate.


Respectfully submitted this 1st day of September 2005.


PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY
ADVISOR A FUND, L.L.C., by the Tax Matters
Partner


John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone: (508) 791-8500
Facsimile: (508) 791-8502


William F. Nelson, D.C. Bar #467236
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
(applications pro hac vice submitted concurrently)
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586

**Internal Revenue Service**

**Department of the Treasury**

316 North Robert Street
St. Paul, Minnesota 55101

Refer To:
ESB Stop 4020BK
Taxpayer Identifying Number:
36-4381795
Name of Partnership:
Fidelity International Currency Advisor A
Partnership Identifying Number:
36-4381795
Tax Year Ended:
December 31, 2001
Date FPAA Mailed to Tax Matters Partner:

Date: **APR 0 6 2005**

**APR 0 6 2005**
Person to Contact:

Tax Matters Partner
Fidelity International Currency Advisor A Fund, LLC
87 Elm Street
Hopkinton, MA. 01748

Bill Kahnke
41-03606
Contact Hours:
8:00 am to 4:30 pm
Contact Telephone Number:
(651) 312-7909

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

   The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

   We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

   The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

   The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.



**EXHIBIT**

*A*

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Kevin Harris

Kevin Harris
Technical Services Territory Manager, Midwest Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

05 - 40151 FDS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Fidelity International Currency Advisor A Fund, L.L.C., by the Tax Matters Partner

**DEFENDANTS**

United States

**(b)** County of Residence of First Listed Plaintiff   Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

John O. Mirick, Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, MA 01608, (508) 791-8500

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     (U.S. Government Not a Party)

☒ 2  U.S. Government
     Defendant

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                 and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☒ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    another district
    (specify)

☐ 6 Multidistrict
    Litigation

☐ 7 Appeal to District
    Judge from
    Magistrate
    Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
26 U.S.C. 6226

Brief description of cause:
Readjustment of partnership items and refund of money held by the Secretary of Treasury.

## VII. REQUESTED IN    COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

**DEMAND $**
62,100,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes   ☒ No

## VIII. RELATED CASE(S)    IF ANY

(See instructions):    JUDGE                     DOCKET NUMBER

DATE   9/1/05

SIGNATURE OF ATTORNEY OF RECORD
John O. Mirick

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**05-40151 FDS**

1. Title of case (name of first party on each side only)

    **Fidelity International Currency Advisor A Fund, L.L.C., by the Tax Matters Partner v. United States**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    ___    I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    ___    II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    ___    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

    _X_    IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

    ___    V.    150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

    YES ☐    NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☒    NO ☐

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division ☐      Central Division ☒      Western Division ☐

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division ☐      Central Division ☐      Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME     John O. Mirick

ADDRESS             Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, MA 01608

TELEPHONE NO.       (508) 791-8500

(CategoryForm.wpd -5/2/05)