# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No.: 05-40151-FDS

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO QUASH SUBPOENA DUCES TECUM

Plaintiff, the tax matters partner of Fidelity International Currency Advisor A Fund,

L.L.C. ("FICA A Fund"), moves this Court, pursuant to Rules 26(c) and 45 of the Federal Rules

of Civil Procedure, to issue an order quashing those portions of the subpoena served by

Defendant on KPMG on March 31, 2006 that seek documents that do not relate to Richard Egan,

FICA A Fund, the advisors involved in the FICA A Fund transaction, or the development of this

specific type of transaction within KPMG.  The government has made no proffer demonstrating

how such documents and information concerning other taxpayers are relevant to the present case

or how they will lead to the discovery of admissible evidence.  At best, the government can

attempt to justify its overly-broad demand that discovery of "pattern evidence" concerning

fifteen non-party individuals and thirty-eight non-party entities dating back to 1996 is necessary

in order to prove what Plaintiff did and why in 2001.  There can be no "pattern evidence"

involving FICA A Fund; FICA A Fund was created in 2000 and was involved in the relevant

1

transaction in 2001, for which the IRS disallowed deductions on its 2001 tax return.  In truth, no such speculative "pattern evidence" is even remotely justified by the rules of discovery or evidence.

Before filing this Motion, Plaintiff's counsel sent a letter to Defendant's counsel on April 11, 2006 requesting a discovery conference pursuant to Local Rule 37.1(a) in order to narrow the areas of disagreement to the greatest extent possible.  The parties discussed Plaintiff's objections to the subpoena in telephone conversations on April 12 and April 13, 2006.  Counsel failed to resolve their differences in these discussions and, therefore, Plaintiff must seek relief by this Motion.[1]

The Court has scheduled a conference with the parties for May 11, 2006 to discuss any important issues, including discovery problems.  If not resolved before that conference, Plaintiff respectfully requests this motion be argued on May 11, 2006.

## I.     BACKGROUND

Plaintiff brought this action on September 1, 2005 to challenge the proposed adjustments by the Internal Revenue Service of the partnership items of FICA A Fund as reported on FICA A Fund's federal income tax return for the taxable year ending December 31, 2001.  On March 10, 2006, the parties appeared before the Court for a scheduling conference and, thereafter, on March 22, 2006, the Court issued its scheduling order.  On March 28, 2006, Plaintiff served on Defendant Plaintiff's First Set of Requests for Production of Documents (attached as Exhibit A).  Each of the five requests concern documents relating only to FICA A Fund and the FICA A Fund transaction.  In contrast to Plaintiff's focused discovery request, on March 31, 2006,

---

[1] David J. Curtin, counsel for Plaintiff, and Dennis M. Donohue, counsel for Defendant, conferred by telephone at approximately 11:30 a.m. on April 12, 2006 for approximately ten minutes.  On April 13, 2006, following Plaintiff's receipt of Defendant's letter dated April 13, 2006, David J. Curtin and Lena Amanti, representing Plaintiff, and Dennis M. Donohue, Matthew C. Hicks, and Barry E. Reiferson, representing Defendant, again conferred by telephone, this time at approximately 4:40 p.m. for approximately ten minutes.

Defendant served a broad subpoena on KPMG that lists sixty requests for production of documents, most seeking documents about taxpayers, law firms, and others not involved in this case (attached as Exhibit B).  The subpoena demands production on April 14, 2006.  In a letter dated April 11, 2006, Plaintiff advised Defendant of its objections to the subpoena (attached as Exhibit C).  Defendant responded to this letter in a letter dated April 13, 2006 (attached as Exhibit D).

Defendant seeks documents within the timeframe of January 1, 1996 to December 31, 2005.  Beyond the information sought regarding the transaction, individuals, and entities involved in this case, the subpoena contains nine requests that seek irrelevant information regarding the law firms of Lord, Bissell & Brook LLP and Bryan Cave LLP; three requests relating to BDO Seidman, LLP; and eleven requests regarding three tax structures promoted by KPMG in which Plaintiff did not engage (FLIP, OPIS, and BLIPS).  Moreover, the subpoena surprisingly seeks documents and information from KPMG regarding fifteen named individual taxpayers who are unrelated to this case and thirty-eight named entities that are not involved in this case.

The issue for the Court to decide is whether the government should be allowed to conduct broad discovery into the affairs of individual taxpayers, law firms, and accounting firms that are not involved in this case, based on its "pattern evidence" excuse, or whether the government's broad subpoena should be brought into focus by limiting it to documents regarding the partnership before this Court, its advisors, and the development of the specific type of transaction at issue within KPMG.  The specific subpoena requests that raise an issue to be decided by the Court, and Plaintiff's position with respect to each request, are set forth in Exhibit E, attached.

## II.     ARGUMENT

The first rule of the Federal Rules of Civil Procedure provides that the Federal Rules must be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Federal Rule 26(b)(1) allows discovery of any matter "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Further limitations on discovery are enunciated in Federal Rules 26(b)(2) and 45(c)(3). Rule 26(b)(2) allows a court to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2). This provision was added to the Federal Rules to give courts a tool to deal with the persistent problem of over-discovery. Fed. R. Civ. P. 26(b) advisory committee's note (1983 amendments). The court has broad authority to act on motion by a party under Rule 26(c) to order that "discovery not be had" or that "discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(1), (4). Rule 45(c)(3) requires a court, on motion, to quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). This provision "requires the court to protect all persons from undue burden imposed by the use of subpoena power." Fed. R. Civ. P. 45(c) advisory committee's note (1991 amendments).

District courts have discretion to limit discovery, *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001), and may take into account "systemic concerns" in managing discovery, *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989). The First Circuit's statement that parties "ought not to be permitted to use broadswords where scalpels will suffice," *id.*, drives this motion.

Plaintiff's motion is necessitated by the surprising overbreadth of the KPMG subpoena. Plaintiff has no objection to the subpoena to the extent that it requests information regarding the taxpayers, entities, or transaction, including the development of this specific transaction within KPMG, at issue in this case.  Plaintiff strongly objects, however, to those numerous portions of the subpoena that seek irrelevant documents concerning taxpayers, entities, and transactions that are not before the Court in this case.  The subpoena's scope is more appropriate to replicating the investigation of the tax shelter industry conducted by the Senate Permanent Subcommittee on Investigations than to conducting discovery in this case.  Such broad discovery is not proper. Plaintiff seeks an order preventing Defendant from using the Court's power in this case to discover facts about individual taxpayers and others who are strangers to this case.

The government has made no proffer of any evidence showing that the other taxpayers and firms are involved in the facts of this case.  Defendant's justification for its overbroad subpoena is essentially its claimed need to redo the Senate Permanent Subcommittee's investigation.  Indeed, while the investment in issue occurred in 2001, the subpoena seeks documents going back to January 1, 1996.

### The KPMG Subpoena Inappropriately Seeks Irrelevant Information

Discovery must be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Although the discovery rules "are to be accorded a broad and liberal treatment[,] . . . limitations come into existence when the inquiry touches upon the irrelevant."  *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947).

The primary focus of the KPMG subpoena is on individual taxpayers, law firms, accounting firms, tax structures, and other entities that are not relevant to this case because they were not involved in the facts of the case before the Court.  The fifteen individual taxpayers

about whom the government seeks information were not involved in the transaction presently before the Court; are not affiliated with Mr. Egan; and are not business associates of Mr. Egan. In short, they are complete strangers. Their tax returns and tax information are not part of this case and the government should not be compromising their rights by seeking to inject their taxes into this case. Additionally, Lord, Bissell & Brook LLP; Bryan Cave LLP; and BDO Seidman, LLP were not engaged in connection with, did not advise on, and were not involved in the FICA A Fund transaction. The so-called FLIP, OPIS, and BLIPS transactions are not before the Court. Thirty-seven of the entities about which information is sought are not related to FICA A Fund or Mr. Egan. It is clear that a large portion of the KPMG subpoena does not focus on the facts involved in the present case.

Documents concerning individual taxpayers, law firms, accounting firms, tax structures, and other entities that were not involved in the FICA A Fund transaction are not relevant to the determination of whether the Internal Revenue Service's adjustments to FICA A Fund's 2001 partnership return were erroneous. Moreover, a real and sufficient connection between these individual taxpayers, law firms, accounting firms, tax structures, and other entities, on the one hand, and the facts of the present case, on the other, cannot fairly be made. In addition to its erroneous suggestion that discovery in this case should be as broad as the Senate Permanent Subcommittee's investigation, the government can only proffer speculation, not facts, as to why discovery regarding unrelated and uninvolved taxpayers, law firms, accounting firms, tax structures, and other entities should be allowed in the present case.

The time period applicable to Defendant's requests (January 1, 1996 to December 31, 2005) and the sheer number of documents sought by the government relating to taxpayers and transactions not presently before the Court evinces a broad discovery plan to reinvestigate

KPMG's role in the tax shelter industry and to use this case as a vehicle to conduct discovery about other taxpayers.  Neither purpose justifies the kind of run-away discovery Defendant wishes to take.

Further, Defendant's requests for documents that are not relevant to the specific taxpayer and transaction before the Court can only be sought by the government in an attempt to support a theory that KPMG had a propensity to promote allegedly abusive tax shelters.  The Federal Rules of Evidence do not permit admission of character evidence "for the purpose of proving action in conformity therewith."  Fed. R. Evid. 404(a).  This principle is derived from the idea that admission of such evidence would prejudice the party whose character is at issue and "'deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence . . . is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.'"  Fed. R. Evid. 404 commentary (quoting *Michelson v. United States*, 335 U.S. 469, 482 (1948)).

Seeking discovery of all of the activities engaged in by KPMG only serves the purpose of putting KPMG on trial.  KPMG is not a party in this case, and Defendant should not be permitted to discover and use propensity evidence concerning KPMG for the purpose of calling into question the motives of Richard Egan and the transaction in which he engaged.  The First Circuit has held that such third party evidence cannot be admitted against a party in a case, and attempts by the Defendant to do so should be rejected.[2]

---

[2] *See United States v. St. Michael's Credit Union*, 880 F.2d 579, 601 (1st Cir. 1989) (overruling the trial court's admission of evidence concerning a third party's gambling activities to prove the defendants' motives when the defendants were unaware of the gambling activities, holding, "Absent some nexus between [the third party's] alleged gambling activities and the defendants in this case, the gambling evidence was irrelevant.")

## Production of the Information Sought in the
## KPMG Subpoena Would Be Unduly Burdensome

Production of the irrelevant documents, including, particularly, the tax return information of other taxpayers, would be unduly burdensome to Plaintiff and to the Court, contravening the goal of the Federal Rules to secure the speedy and inexpensive determination of every action. Fed. R. Civ. P. 1.  According to the government, KPMG promoted FLIP, OPIS, BLIPS, and SOS transactions to at least 601 individuals.[3]  The government's requests for production of documents from KPMG could result in the production of documents relating to at least 600 transactions. While the government has listed fifteen individual taxpayers in its first subpoena, if permitted the beyond-the-case discovery it wants, more taxpayers may well be added to its list.  Requiring Plaintiff to review and evaluate this voluminous set of documents regarding other taxpayers' transactions is unduly burdensome and imposes a great cost on Plaintiff due to the large amount of time it would take to evaluate other taxpayers' transactions.  This is both an unnecessary, given the irrelevance of the documents, and a costly way of preparing for a trial that involves only one taxpayer and one transaction.

Additionally, Defendant's requests for production are unduly burdensome for the Court. First, the Court may be forced to decide many issues regarding other taxpayers and other transactions not before the Court.  This is true, in particular, with respect to the fifteen named taxpayers and thirty-seven named entities that have no apparent connection to the present case and are not presently before the Court.  Second, the Court will have to decide current and ongoing discovery disputes about these unrelated taxpayers and dissimilar transactions.  The

---

[3] The Superseding Indictment in *United States v. Stein* asserts that FLIP was marketed and sold to at least 80 wealthy individuals, OPIS was marketed and sold to at least 170 wealthy individuals, BLIPS was marketed and sold to at least 186 wealthy individuals, and SOS was marketed and sold to at least 165 wealthy individuals.  Superseding Indictment ¶¶ 29-32, *United States v. Stein*, No. 05 Cr. 888 (S.D.N.Y. filed Oct. 17, 2005).

extra burdens imposed on the Court and Plaintiff by the production of voluminous, irrelevant

documents would make the speedy and inexpensive determination of this action impossible.[4]

**Disclosure of Confidential Tax Return**
**Information of Non-Parties Is Inappropriate**

The KPMG subpoena seeks confidential tax return information regarding fifteen

individuals and thirty-eight entities that are not parties to this case. "'Public policy favors the

non-disclosure of income tax returns. [T]he production of tax returns should not be ordered

unless it clearly appears they are relevant to the subject matter of the action . . . or because the

information contained therein is not otherwise readily available.'" *Malanka v. Data Gen. Corp.*,

No. 85-2154, 1986 WL 541, at *3 n.18 (D. Mass. July 2, 1986) (quoting *Cooper v. Hallgarten &*

*Co.*, 34 F.R.D. 482, 483-84 (S.D.N.Y. 1964)). This policy is embodied in Internal Revenue

Code section 6103, which extends confidentiality protections to tax "return information" as well

as tax returns.[5] 26 U.S.C. § 6103(a). Federal employees generally are prohibited from

disclosing tax returns and tax return information. *Id*. As stated by the First Circuit:

> Congress has decided that, with respect to tax returns, confidentiality, not
> sunlight, is the proper aim. Tax returns contain highly personal information that
> many taxpayers might wish not to have broadcast. Moreover, without clear

---

[4] The Tax Court in *Fox v. Commissioner* raised similar concerns when the government sought to introduce evidence of other partnerships promoted by the organization that had promoted the partnerships at issue in the case to petitioners. 80 T.C. 972, 1004-05 (1983). In deciding not to permit the admission of evidence of other partnerships, the court noted that "[p]rinciples of efficient judicial administration would not be served [by admitting the evidence]" as it "would greatly expand the scope of [the court's] inquiry and, in effect, require [the court] to try the cases of all the[] other partnerships simultaneously with the case of the instant two partnerships." *Id.* at 1005.

[5] The term "return information" includes

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions,
> exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies,
> overassessments, or tax payments, whether the taxpayer's return was, is being, or will be
> examined or subject to other investigation or processing, or any other data, received by, recorded
> by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect
> to the determination of the existence, or possible existence, of liability (or the amount thereof) of
> any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or
> offense.

26 U.S.C. § 6103(b)(2)(A).

taxpayer understanding that the government takes the strongest precautions to keep tax information confidential, taxpayers' confidence in the federal tax system might erode, with harmful consequences for a tax system that depends heavily on voluntary compliance.

*Aronson v. IRS*, 973 F.2d 962, 966 (1st Cir. 1992).

Efforts to introduce tax return information of non-parties into an adjudicative setting should be seriously and skeptically evaluated considering the strong policy favoring the confidentiality of tax returns and tax return information.  The government's effort to obtain confidential tax return information from the taxpayers' accountant and to bring it before a court that has limited ability to determine the legality of the taxpayers' transactions is alarming in its unfairness to the taxpayers who have an interest in maintaining the confidentiality of their tax returns.[6]  Moreover, injecting other taxpayers and their tax returns and advisors into this case is particularly unfair to Plaintiff.  Plaintiff will prove its case before this Court, but, in doing so, should not be required to explain and defend what numerous other taxpayers did or thought in reporting their taxes.

It is likely that the confidentiality requirements of Internal Revenue Code section 6103 would have prevented the government from obtaining from the Internal Revenue Service tax return information concerning taxpayers who are not parties to this litigation.  Defendant seeks to circumvent section 6103 by seeking return information from a third party whose books and records the government controls through a Deferred Prosecution Agreement between the U.S. Attorney's Office for the Southern District of New York and KPMG.[7]

---

[6] Internal Revenue Code section 7216 makes it a criminal offense for a tax return preparer to knowingly or recklessly disclose information used to prepare a tax return or use that information for any purpose other than preparing a return.  26 U.S.C. § 7216(a).  This provision does not apply, however, to disclosure by a return preparer pursuant to a court order.  26 U.S.C. § 7216(b)(1)(B).

[7] Internal Revenue Code sections 6103(h)(4)(B) and 6103(h)(4)(C) allow government officials to disclose third-party tax return information in judicial proceedings pertaining to tax administration "if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding" or if the "return

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Motion to Quash

Subpoena Duces Tecum be granted.

Dated this 14th day of April 2006.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

---

information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding."  26 U.S.C. §§ 6103(h)(4)(B)-(C).  The Internal Revenue Service refers to these exceptions, respectively, as the "item test" and the "transaction test," and the Office of Chief Counsel issued Notices providing guidance regarding the disclosure of third-party tax information under these exceptions to section 6103 and examples that illustrate that guidance.  Chief Counsel Notice CC-2006-003 (Oct. 25, 2005); Chief Counsel Notice CC-2006-006 (Nov. 22, 2005).  Defendant has provided no evidence that the treatment of an item on a third-party's tax return is "directly related" to the resolution of an issue in the present proceeding; that the third-party return information of the individuals and entities it seeks "directly relates" to a transactional relationship between FICA A Fund or Mr. Egan and the third parties listed in the subpoena; nor that this information "directly affects" the resolution of an issue in this proceeding.  Moreover, if the government believed either or both of these exceptions applied, the subpoena to KPMG would not have been necessary.  The Justice Department's client, the Internal Revenue Service, could simply have handed this information over to its counsel.

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 14, 2006.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 05-40151-FDS |

## PLAINTIFF'S FIRST SET OF
## REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

requests that Defendant, the United States of America, produce or permit inspection and copying

of the following documents on or before May 1, 2006, at the office of Plaintiff's counsel, 1919

M Street, N.W., Suite 800, Washington, D.C. 20036, or at such other time and place as counsel

agree.

### DEFINITIONS AND PROCEDURES

A.    These Requests for Production incorporate by reference the definitions and

procedures set forth in the Local Rules of the United States District Court for the District of

Massachusetts, including but not limited to Local Rules 26.5 and 34.1.

B.      "FICA A Fund" refers to Fidelity International Currency Advisor A Fund LLC, EIN 36-4381795.

C.      "FICA A Fund Examination" refers to the Internal Revenue Service's audit or examination of the federal income tax returns filed by FICA A Fund for the tax period ending December 31, 2001.

D.      "IRS" refers collectively to the Internal Revenue Service and the IRS Office of Chief Counsel, including each of their respective internal divisions.


## REQUESTS FOR PRODUCTION

1.  Request No. 1:  All records, documents, and materials created or maintained by KPMG LLP during the years 2000 through 2002 in connection with the FICA A Fund transaction at issue in this case, including but not limited to records of KPMG's Boston, New York, and Washington, D.C. offices, and particularly including records and files created or maintained by Timothy Speiss, Brent Lipschultz, and Robert Prifti.

    Response:


2.  Request No. 2:  All records, documents, and materials that refer or relate to the FICA A Fund transaction at issue in this case that were obtained by the IRS from third-parties during the course of any IRS civil examination, including but not limited to materials obtained from KPMG LLP, Sidley Austin LLP (and its predecessors), Proskauer Rose LLP, Refco Capital Markets, Ltd., Helios Financial LLC, and Alpha Consultants LLC.

    Response:

2

3. <u>Request No. 3</u>:  All records, documents, and materials that refer or relate to the FICA A Fund transaction at issue in this case that were obtained from Diversified Group Incorporated during the course of any IRS civil examination.

 <u>Response</u>:

4. <u>Request No. 4</u>:  All records, documents, and materials that refer or relate to the FICA A Fund transaction at issue in this case that were obtained from any foreign entity or foreign government during the course of any IRS civil examination.

 <u>Response</u>:

5. <u>Request No. 5</u>:  All records, documents, and materials created or maintained by the IRS in connection with its examination of the FICA A Fund transaction at issue in this case, including but not limited to notes and other writings or communications created by each examining agent or other IRS representatives who devoted time to the matter.

 <u>Response</u>:

Dated this 28th day of March 2006.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY
ADVISOR A FUND, L.L.C., by the Tax Matters
Partner

David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: dcurtin@mckeenelson.com
       rbuch@mckeenelson.com
       lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone: (508) 791-8500
Facsimile: (508) 791-8502
Email: jomirick@mirickoconnell.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2006 a copy of the above document, PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS, was mailed by First Class U.S. mail postage paid, and properly addressed, to the following:

Dennis M. Donohue
U.S. Department of Justice
501 Fourth Street, NW
Washington, D.C.  20001

Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# United States Department of Justice

Tax Division
*Office of Civil Litigation*
*P.O. Box 403 - Ben Franklin Station*
*Washington, D.C. 20044*
*Fax: (202) 307-2504*

**TO:**

David J. Curtin, Esq.
McKee Nelson LLP
1919 M Street, NW, Suite 800
Washington, DC 20036

**FAX NUMBER:** (202) 775-8586

**SUBJECT:** Fidelity v. United States

**DATE SENT:** March 31, 2006

**PAGES: (Including this cover sheet)** 26

**FAX FROM:**

John Lindquist
Trial Attorney
Civil Trial Section, Northern Region
Phone: (202) 307-6561

COMMENTS:

**WARNING:** The information contained in this facsimile is confidential and may be subject to disclosure limitations under Rule 6(e) of the Federal Rules of Criminal Procedure and Section 6103 of the Internal Revenue Code. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible for delivering it to the recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender identified above by telephone.

1623264.1



**U.S. Department of Justice**

**Tax Division**

Section Tel. No. (202) 307-6533
Section Fax No. (202) 514-5238
Trial Attorney: Matthew C. Hicks
Direct Line: (202) 307-6542

*Please reply to:*   U.S. Department of Justice, Tax Division
Civil Trial Section, Northern Region
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055

JALindquist
5-36-10254
CMN 2005106280

**Facsimile and Federal Express**

March 31, 2006

Armando Gomez, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005

Re:   *Fidelity Int'l v. United States*, No. 05-40151
Subpoena to KPMG for Production of Documents

Dear Mr. Gomez:

Enclosed is a subpoena to KPMG for production of documents by April 14, 2006. As agreed during our telephone conversation of March 16, 2006, you are accepting service of this subpoena on behalf of KPMG. Accordingly, please complete the waiver of personal service at the end of this letter and send a copy signed by you to me at the address set forth above.

We understand that KPMG has most if not all of the documents requested in electronic form, coded and stored in a Concordance database. Therefore, we would appreciate your producing all documents in this same electronic format.

For documents which have been produced previously to the Government and the Senate Permanent Subcommittee on Investigations ("PSI"), please produce those documents with the same Bates stamp numbers used in those productions. For documents that have not previously been produced to the Government or the PSI, please number them consecutively with a Bates stamp identifier that is distinguishable from those used in your prior productions. We suggest that you use Bates Stamp numbers beginning with the prefix "KPMG.F"

Please produce the requested documents in unredacted form and with no deletions of any data or information thereon unless (and only unless) you clearly assert a legal privilege that exists under federal law and that applies to the redacted or deleted information.

In the event that you redact or delete information from any portion of the subpoenaed documents on grounds of an asserted privilege, please so state in a letter at the time of your production and describe fully (for each document or portion thereof on which you make redactions) each reason why you believe that a legal privilege entitles you to withhold.

information otherwise called for by the attached subpoena.

We also request that the custodian of records for KPMG certify the documents requested pursuant to Rule 902(11) of the Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code. A proposed certification is enclosed. Please forward the certification as soon as possible, although its execution should in no way delay your production of the requested documents by the subpoena's return date.

In producing documents in response to this subpoena, we request that you organize the documents according to the request(s) to which they are responsive.

Also, in our conversation you mentioned that KPMG is still in the process of producing documents to the USAO. As we indicated, we are providing you with a list of names and terms in paragraph 56 of the subpoena to use in your search of this category of documents. Please let me know how much time you will need to complete your search for documents containing these names and terms.

Notice of this subpoena is being provided to the plaintiff pursuant to Rule 45(b)(1) of the Federal Rules of Civil Procedure by sending a copy of this letter and the enclosed subpoena to the plaintiff's attorney by facsimile and mail.

Thank you for your cooperation. Please call me at 202-307-6542 with any questions.

Sincerely,

JOHN A. LINDQUIST, III
Trial Attorney
Civil Trial Section, Northern Region

cc:     David J. Curtin, Esq.
        McKee Nelson LLP
        1919 M Street, NW, Suite 800
        Washington, DC 20036
            202-775-8586 (fax)

## ACKNOWLEDGMENT OF WAIVER OF PERSONAL SERVICE
### UPON KPMG, LLP

_____

Armando Gomez, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005

_____

Date Signed

1622018.1                    -3-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
                    )
               Plaintiff, )     Civil No. 05-40151
                    )
    v. )     Judge Saylor
                    )
UNITED STATES OF AMERICA, )
                    )
              Defendant. )

## DECLARATION OF RECORDS CUSTODIAN

I, _____, pursuant to Rule 902(11) of the Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code, do hereby certify as follows:

1.    I am a custodian of records for KPMG LLP, _____ _____ (specify address). In that capacity, I am responsible for the compilation and maintenance of records pertaining to business conducted by KPMG LLP and/or its subsidiaries and affiliates ("KPMG").

2.    On April _____, 2006, in response to a subpoena dated March 29, 2006, issued by the United States of America in the case of *Fidelity Int'l v. United States*, No. 05-40151 (D. Mass filed Sept. 1, 2005), I transmitted to the United States, through counsel for KPMG, true and accurate copies of records maintained by KPMG consisting of pages numbered from _____ through _____.

3.    The records described in paragraph 2 above were made at or near the time of the occurrence of the matters set forth therein by, or from information transmitted by, a person with knowledge of those matters. KPMG kept those records in the course of its regularly conducted business activity and made those records as a regular practice in its regularly conducted business activity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April _____, 2006.

_____
On behalf of KPMG LLP

_____
Printed name and title of records custodian

1615538.1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF     MASSACHUSETTS

FIDELITY INT'L CURRENCY ADVISOR A FUND

V.

UNITED STATES OF AMERICA

### SUBPOENA IN A CIVIL CASE

Case Number:[1] 05-40151

TO: KPMG LLP
    757 Third Avenue
    New York, NY 10017

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT TO SUBPOENA

| PLACE   The United States Attorney's Office, District of Massachusetts, 1 Courthouse Way, John Joseph Moakley Courthouse, Boston, MA 02210 | DATE AND TIME 4/14/2006 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 3/31/2006 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER John A. Lindquist III, Trial Attorney, U.S. Department of Justice, Tax Division P.O. Box 55, Ben Franklin Station, Washington, DC 20044-0055 | Telephone: 202-307-6561 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
)
         Plaintiff, )   Civil No. 05-40151
)
    v. )   Judge Saylor
)
UNITED STATES OF AMERICA, )
)
         Defendant. )

## ATTACHMENT TO SUBPOENA
## TO KPMG FOR PRODUCTION OF DOCUMENTS

Pursuant to FED. R. CIV. P. 45, the Custodian of Records for KPMG, LLP ("KPMG"), is hereby required to produce for inspection and copying the documents set forth below, from whichever office or location these documents may exist.

The production of the requested documents may be effected by mailing the originals or clear copies of each to Matthew C. Hicks, Trial Attorney, Tax Division, United States Department of Justice, Post Office Box 55, Ben Franklin Station, Washington, D.C. 20044. If you are unwilling or unable to transmit originals or copies in the manner described above, you are requested to advise the undersigned counsel for the United States forthwith upon receipt hereof, in which event, the documents requested herein will be produced for inspection and copying at 555 4th Street, N.W., Room 7836, Washington, D.C. on April 14, 2006, at 10:00 a.m., and continuing from day to day thereafter for so long as is reasonably necessary to examine and copy them.

1622542.1

## DEFINITIONS

1.    As used herein, (a) the singular shall include the plural, and vice versa, (b) masculine and feminine pronouns shall be deemed to be interchangeable, (c) the words "or" and "and" shall mean "and/or," and the word "or" shall not be interpreted to narrow the scope of any request and shall be interpreted in its broadest sense, as denoting "and/or," (d) the words "any" and "all" shall mean "any and all," and the word "any" shall not be interpreted to narrow the scope of any discovery or other request, and shall be interpreted in its broadest sense, as denoting "any and all."

2.    The term "document" and derivatives and pluralizations of the same is to be liberally construed to include all originals, copies, and nonidentical copies (whether by reason of handwritten notations thereon or otherwise) kept in any form including paper and electronic means, including but not limited to the following: any letter, report, record, corporate minute, memorandum, contract, affidavit, agreement, appraisal, deed, lease, book, record, summary or record of personal conversation, routing slip, correspondence, communication of any nature, note, notebook of any character, ledger, financial statement, material, literature, brochure, publication, prospectus, offering, computation, check or other instrument, computer tape or disk, electronic transmission including but not limited to electronic mail, telegram, telex and telephone facsimile, and any other type of written or documentary or other tangible material on which information or data may be recorded, stored, or otherwise contained. As to any document that is written in another language, the term "document" also includes any translations of that document into English. As to any document in electronic form, the term "document" includes all metadata associated with document, as well as all printed versions of the document.

1622542.1

3.    The terms POSSESSION, CUSTODY, OR CONTROL include actual and constructive possession, custody, or control. These requests include any document or thing that you possess or have the right to obtain from a third party upon demand, or which otherwise may be secured from any other source for the purpose of fully responding to these requests, including attorneys, accountants or other agents.

4.    The term "person" shall be construed to mean and include an individual, trust, estate, partnership, company, corporation, governmental body, or other entity, whether domestic or foreign.

5.    The term "Diversified Group" or "DGI" refers to The Diversified Group, Incorporated, a Delaware limited liability company, and all employees and/or partners thereof, including, but not limited to James Haber ("Haber") and Orrin Tilevitz.

6.    The term "Brown & Wood" refers to the law firm of Brown & Wood and its successor in interest, Sidley, Austin, Brown & Wood, and all employees and/or partners thereof, including, but not limited to RJ Ruble, Jacob Amato, John Felkamp, and Susan L. Sodano.

7.    The term "KPMG" includes both KPMG, LLP, a Delaware Limited Liability Partnership and KPMG International, a Swiss association, and all employees and/or partners thereof, including, but not limited to Timothy Patrick Speiss, Stephen J. Spruck, Brent S. Lipschultz, Holly T. Belanger, Monica M. Odoy, Deborah A. Fields, Daniel J. Coburn, Rob Arthur, Robert Pritti, Leslie Kost, Steven Gremminger, Randall Bickham, Jeffrey Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Weisner, Mark Watson, Larry DeLap, David Greenberg, Carol Warley, Carl Hasting, Richard Rosenthal, and Brian Rivotto.

1622542.1

8. The term BDO refers to the accounting firm of BDO Seidman, LLP, and all employees and/or partners thereof, including, but not limited to Michael Kerekes, Robert Greisman, and Paul Shanbrom.

9. The term "Lord Bissell" refers to the law firm of Lord Bissell & Brook, LLP, 111 South Wacker Drive, Chicago, IL 60606, and all employees and/or partners thereof, including but not limited to John Trustkowski, John Hughes, and Sergei Mytko.

10. The term "Proskauer Rose" refers to the law firm of Proskauer Rose, LLP, 1585 Broadway, New York, NY 10036-8299, and all employees and/or partners thereof, including but not limited to Ira Akselrad.

11. The term "Bryan Cave" refers to the law firm Bryan Cave, LLP, 700 Thirteenth Street, N.W., Washington, DC 20005-3960, and all employees and/or partners thereof, including but not limited to John Barrie and Elizabeth Ann Smith.

12. The term "Alpha Consultants" refers to Alpha Consultants, LLC, a Florida limited liability company, and all employees and/or partners thereof, including but not limited to Ivan J. Ross, Robert H. Fasulu, G. Felix Cua, Yoshiyuki Nobumoto, Ronald Buesinger, and Donald S. Underitz.

13. The term "Alpha Consultants, Inc." refers to Alpha Consultants, Inc., a Florida Corporation, and all employees and/or partners thereof, including but not limited to Ivan J. Ross, Robert H. Fasulu, G. Felix Cua, Yoshiyuki Nobumoto, Ronald Buesinger, and Donald S. Underitz.

1622542.1

14. The term "Helios Financial" refers to Helios Financial, 225 West Washington Street, Suite 2200, Chicago, Illinois, and all employees and/or partners thereof, including but not limited to Mox Tan and Phil Kampf.

15. The term "REFCO" refers to Refco Capital Markets, Ltd., 200 Liberty Street, 23rd Floor, NY, NY 10281, and all employees and/or partners thereof, including but not limited to Thomas Yorke.

16. The term "Samuel Mahoney" refers to     Samuel Mahoney, Martin Hawkes, John Hussey, Biosphere Finance, and Biosphere Holdings.

17. The term "FLIP" refers to the product known as "Foreign Leveraged Investment Program."

18. The term "BLIPS" refers to the product known as "Bond Linked Issue Premium Structure."

19.   The term "OPIS" refers to the product known as "Offshore Portfolio Investment Strategy."

20. The term "SOS" refers to the product known as "Short-Option Strategy" and all variants thereof, including, but not limited to, the Financial Derivatives Investment Strategy ("FDIS").

21. The term "FDIS" refers to the "Financial Derivatives Investment Strategy, also referenced as the "Diversified Strategy," the "New Partnership Strategy," "Short-Option Strategy," and the "Partnership Option Strategy."

22. The term "Tax Shelter Products" refers to FLIP, OPIS, BLIPS, and SOS.

23.   The term "FICA A Fund" refers to Fidelity International Currency Advisor A Fund LLC, EIN 36-4381795.

1622542.1

## INSTRUCTIONS

1.  If a document was, but no longer is, in your possession, custody or control, state:

    a.  how the document was disposed of;

    b.  the name, current address, and telephone number of the natural or non-natural person who currently has possession, custody or control over the document;

    c.  the date of disposition;

    d.  the name, current address, and telephone number of each natural or non-natural person who authorized said disposition or who had knowledge of said disposition.

2.  If a document cannot be located, describe with particularity the efforts made to locate the document and the specific reason for its disappearance or unavailability.

3.  If a document has information on both sides, provide copies of both sides or make available the original documents.

4.  To the extent that any document is written both in English and another language, provide a copy of the document written in English.

5.  If any document has been previously produced to the Internal Revenue Service in the course of its promoter examination of KPMG, LLP, the document should be produced with the same bates number that it was produced to the Internal Revenue Service in its promoter examination of KPMG, LLP.

6.  If any document has been previously produced previously produced to the Senate Permanent Subcommittee on Investigations ("PSI") in the course of its investigation of potentially abusive tax shelters, the document should be produced with the same bates number that it was produced to the PSI.

Page 6 of 19

7.      For documents that have not been produced to the Government or the PSI, please number them consecutively with a Bates stamp identifier that is distinguishable from those used in the prior the productions to the Government and the PSI. We suggest you use Bates Stamp numbers beginning with the prefix "KPMG.F."

8.      We also request that the custodian of records for KPMG certify the documents requested pursuant to Rule 902(11) of the Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code. A proposed certification is enclosed. Please forward the certification as soon as possible, although its execution should in no way delay your production of the requested documents by the subpoena's return date.

9.      If any document is withheld under any claim of privilege or for any reason, list such documents by supplying separately as to each such document the following information:

> a.      the date of the document, the type of document (e.g. letter, notebook, etc.), and the number of pages of which it consists;
>
> b.      the date on which the document came into KPMG's possession or control, if different from the date appearing on the document itself;
>
> c.      the name and title of the signor of the document (and if it was not signed, the answer shall so state and shall give the name and title of the person who prepared it, if known, and if not known, shall so state);
>
> d.      the name and title of each recipient or addresses of such document (whether specifically named therein or not);
>
> e.      the present whereabouts of the document and the name and address of the custodian thereof;

1622542.1

    f.    an indication that it claims privilege therefor with a citation to the statute, regulation or rule claimed to apply;

    g.    a brief statement of the grounds on which the claim of privilege rests;

    h.    a general statement of the subject matter; and

    i.    the identity of all persons (and their positions) who received copies of such document subsequent to the time of initial distribution.

All of the above is required so that the United States may have the factual basis to determine whether such documents are, in fact, privileged. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any statute or regulation.

10. If a document in electronic form is password protected, the password protection is to be disabled and/or the password to disable the password protection is also to be produced.

## REQUESTS FOR PRODUCTION

The documents requested under this subpoena relate to all documents involving KPMG's development, marketing, promotion, implementation and/or reporting of potentially abusive tax shelters during the time period from January 1, 1996 through and including December 31, 2005, including, but not limited to the development, marketing promotion, implementation and/or reporting of FLIP, OPIS, BLIPS, and SOS. In connection with this request, please provide or make available for our review the following specific categories of documents in your possession, custody, or control:

## Documents related to list maintenance

1.    All documents that KPMG produced to the IRS in the course of a concluded tax promoter audit of KPMG in the same form in which they were produced to the IRS.

2.    All transcripts memorializing interviews of KPMG personnel in the course of the promoter audit referenced above.

## Documents related to PSI Investigation

3.    All documents produced by KPMG to the Senate Permanent Subcommittee on Investigations ("PSI") with respect to the PSI's investigation into the promotion of potentially abusive tax shelters by professionals.

## Generic Documents related to KPMG's Tax Shelter Products

4.    All form documents used by KPMG to market FLIPS, OPIS, BLIPS and SOS products, including all powerpoint presentations, marketing opinions, confidentiality agreements, engagement letters, training materials, and implementation documents.

5.    Identification of the current address or last known address of all KPMG personnel who participated in the development, marketing, promotion, implementation and/or sale of FLIPS, OPIS, BLIPS, and SOS products;

6.    All documents generically discussing the development, marketing, promotion, implementation and/or reporting of the FLIP, BLIPS, OPIS, SOS products.

7.    All documents generated by KPMG generically discussing the development, marketing, promotion, implementation and/or reporting of the FLIP, BLIPS, OPIS, SOS and FDIS products.

8.    All documents generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and

Page 9 of 19                                         1622542.1

Samuel Mahoney, or any other person, generically discussing in any way the development, marketing, promotion, implementation, and reporting of the financial products.

9.    All documents discussing IRS Notice 99-59, Notice 2000-44, and/or the list maintenance requirements under 26 U.S.C. §6112.

10. All documents referencing IRS Notice 99-59 and/or Notice 2000-44 and any of the Tax Shelter Products.

11. All documents referencing IRS Notice 99-59 and/or Notice 2000-44 generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney.

12. All documents related to the decision by KPMG in 2000 to modify its sales practices for the Tax Shelter Products.

13. All documents regarding the fee structure(s) for the Tax Shelter Products.

14. All documents regarding development and/or design of the Tax Shelter Products.

15. All documents regarding the marketing,      promotion, implementation, or reporting of the Tax Shelter Products.

16. All documents regarding the issuance of opinions with respect to the Tax Shelter Products.

17. All documents with respect to the steps for implementation of the Tax Shelter Products.

18. All documents relating to the involvement of DGI in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

19. All documents relating to the involvement of Brown & Wood in the SOS products, including, but not limited to, all communications regarding the development of the product, the

1622542.1

implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

20. All documents relating to the involvement of Proskauer Rose in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

21. All documents relating to the involvement of Lord Bissell in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

22. All documents relating to the involvement of Bryan Cave in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

23. All documents relating to the involvement of Alpha Consultants in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

24. All documents relating to the involvement of Alpha Consultants, Inc., in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

1622542.1

25. All documents relating to the involvement of Helios Financial in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

26. All documents relating to the involvement of Refco in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions.

27. All documents outlining the topics to be discussed at the marketing, sales and/or promotional meetings targeting participants for SOS products.

28. All documents regarding the preparation of tax returns to report the SOS transactions and all decisions regarding the procedure and manner in which those returns would be prepared.

29. All documents regarding the development and use of templates to prepare the tax returns for the SOS products.

30. All documents, including, but not limited to, internal correspondence, e-mail, or notes, discussing any tax benefits involved with offsetting digital options.

31. All documents indicating which KPMG employees were compensated, or were to be compensated, directly and/or indirectly, as a result of the implementation of SOS products.

32. All documents indicating how KPMG employees were compensated, or were to be compensated, directly and/or indirectly, with respect to the implementation of the SOS products.

33. All documents indicating how any third party was to be compensated, directly and/or indirectly, as a result of the SOS products, including, but not limited to, any kick-backs or royalties.

1622542.1

34. All KPMG marketing, sales or promotional material for the SOS products, including all drafts.

35. All documents related to the proposed language of the opinions to be issued by Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave and/or any other person, with respect to the SOS products.

36. All documents related to the proposed language of the opinions to be issued by Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave and/ or any other party, for the SOS products, including all drafts of the form opinion.

37. All documents related to the decision to have more than one law firm available to write the opinion for the SOS transactions.

38. All documents related to the preparation of client representation letters for the SOS transactions, including any documents relating to the representations that were to be made by participants and any drafts of the form representation letter(s).

### Client Specific Documents related to SOS and FDIS

39. All documents relating to the development, marketing, promotion, implementation, and reporting of the SOS and FDIS transactions, including, but not limited to, those transactions which involved the persons identified on Exhibit A.

40. All notes taken by employees of KPMG or by third parties at sales or promotional meetings for SOS.

41. All documents related to the signing of any confidentiality agreements for the SOS transactions, including, but not limited to transactions involving the persons identified on Exhibit A.

1622542.1

42. All documentation generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney for the SOS transactions, including, but not limited to the transactions involving the persons identified on Exhibit A.

43. All master agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A.

44. All due diligence documentation for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A.

45. All credit support agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A, and including any third-party guarantees, involving any of the persons identified on Exhibit A.

46. All documents concerning financial risk to participants in the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A.

47. All documents concerning the probability of profit and actual profitability of the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A.

48. All documents concerning the business purpose of the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A.

49. All documents related to the preparation of client representation letters for the SOS transactions, including any documents relating to the representations that were to be made by SOS participants and any drafts of the representation letters.

Page 14 of 19

1622542.1

50. All documents concerning any exit interviews or feedback from any of the SOS participants regarding the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A.

51. All documents concerning the application of the step transaction doctrine to the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A.

52. All documents concerning any transactions similar to the transactions described in IRS Notice 2000-44 in which an any employee of KPMG, DGl, Brown & Wood, Proskauer Rose, Lord Bissell, Alpha Consultants, Alpha Consultants, Inc., Helios Financial and/or Refco was a participant.

53. All documents      concerning the $158,630,921.00 loss claimed by Richard J. and Maureen E. Egan on their 2001 Form 1040 and reported by Fidelity International Currency Advisor A Fund, LLC, on its 2001 Form 1065 and Schedule K-1 for Richard J. Egan.

54. All documents concerning the $154,503,242.00 gain reported by Fidelity International Currency Advisor A Fund, LLC, on its 2001 Form 1065 and Schedule K-1 for Samuel Mahoney.

55. All documents concerning the transactions that resulted in the loss and gain      referenced in paragraphs 53 and 54, above.

56. All documents concerning the following persons or phrases:

    a.    Richard J. Egan, Maureen E. Egan, Michael J. Egan, James Reiss, Patrick W. Shea, Carolyn Fiddy, Steven J. Drew, Stephanie H. Denby, Carruth Management, Carruth Associates, Fidelity World Currency Advisor A Fund, LLC, and Fidelity International Currency Advisor A Fund, LLC (or "FICAA");

1622542.1

    b.    Samuel Mahoney, Martin Hawkes, John Hussey, Biosphere Finance, Biosphere Holdings;

    c.    Helios Trading, The Diversified Group, James Haber, Mox Tan, Philip Kampf, John Huber, Steve Jacoby, Orrin Tilevitz;

    d.    Alpha Consultants, Ivan J. Ross, Robert H. Fasulu, G. Felix Cua, Yoshiyuki Nobumoto, Ronald Buesinger;

    e.    Refco Capital Markets, Thomas Yorke, Elizabeth J. Yung, Mathew Hoff;

    f.    KPMG, Timothy Speiss, Stephen Spruck, Brent Lipschultz, Holly Belanger, Monica Odoy, Deborah Fields, Daniel Coburn, Rob Arthur, Robert Pritti, Leslie Kost, Steven Gremminger, Randall Bickham, Jeffrey Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Weisner, Mark Watson, Larry DeLap, David Greenberg, Carol Warley, Carl Hasting, Richard Rosenthal;

    g.    R.J. Ruble, Tom Smith, Thomas Humphries, Paul Cringle, Eric Haueter, Susan Sodano, Brown & Wood, Sidley Austin Brown & Wood;

    h.    Proskauer Rose, Ira Akselrad, Jay Waxenberg.

    i.    SOS, FOCUS, option spread, spread option, CMBO, and complex multivariate barrier option.

    j.    Financial Derivatives Investment Strategy," also referred to as FDIS, or the "Diversified Strategy," the "Partnership Strategy," "Short-Option Strategy," and the "Partnership Option Strategy."

57. All records, documents, and materials created or maintained by KPMG LLP during the years 2000 through 2002 in connection with the FICA A Fund transaction at issue in this case, including but not limited to records of KPMG's Boston, New York, and Washington, D.C.

1622542.1

offices, and particularly including records and files created or maintained by Timothy Speiss,

Brent Lipschultz, and Robert Prifti.

58. All outlines of the proposed transactions, including, but not limited to, all documents

entitled "Outline of Proposed Transaction."

59. All closing documents and drafts of closing documents for FDIS and/or SOS transactions,

including but not limited to the Summary of Transaction, Economic Summary of Trades, Option

Confirmations, Daily Values, Operating Agreement for each entity, Contribution Agreement for

each entity, and Buy-Sell Notice.

60. All opinions and drafts of opinions issued with respect to the FDIS and/or SOS

transactions, including but not opinions that were issued by Brown & Wood, Proskauer Rose,

Bryan Cave, and/or Lord Bissell.

Dated: March 2/___, 2006.

MICHAEL J. SULLIVAN
United States Attorney

DENNIS M. DONOHUE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Telephone: (202) 307-6429
Facsimile: (202) 514-5238

Page 17 of 19

1622542.1

APPENDIX A

**Individuals**

1 Caputo Ed

2 Civello Nelson

3 Cowan David

4 Dziedzic Stan

5 Egan Richard & Maureen

6 Geewax John

7 Giesecke John

8 Giffen Catherine

9 Ginsburg Alan

10 Hoyt Barry G.

11 Jarmel Andrew M.

12 Powers John

13 Schostak Jerome L.

14 Scommenga Roger A.

15 Terker Bruce

16 Tschetter Ron

**Entities**

1 AHG Trading LLC

2 Affco Investments 2001 LLC

3 Affco, LLC

4 AHG Invesments LLC

5 Anbar Investments LLC

6 Anbar, Inc.

7 Andbar Trading LLC

8 CKG Trading 2001 LLC

9 Cliffside Investments LLC

10 Cowan Investments 2001 LLC

11 DC Trading LLC

12 EGC Investments 2001 LLC

13 EGC Trading LLC

14 Fidelity Hich Tech Advisor A. Fund, LLC

15 Fidelity Internaltional Currency Advisor A Fund, LLC

16 Geewax, Terker & Co.

17 JHP Trading LLC

18 JJG Trading LLC

19 JLS Investments 2001 LLC

20 JLS Trading LLC

21 JMB Trading LLC

22 LaGitt 88 Trust

23 LG88 Trading LLC

24 NDC Investments LLC

25 NDC Trading LLC

1622542.1

26 PCT Trading LLC

27 Powers Children Trust

28 RAS Investments 2001 LLC

29 RAS Trading 2001 LLC

30 RT Investments 2001 LLC

31 RT Trading LLC

32 SJD Investments LLC

33 SJD Trading LLC

34 TFT Investments 2001 LLC

35 TFT Trading LLC

36 The Taffen Family Trust

37 WFT Investments LLC

38 WFT Trading LLC

39 Wolff Family Trust

1622542.1

# McKee Nelson LLP

Correspondence from:

➤ WASHINGTON, DC

**DAVID J. CURTIN**
Direct Dial: (202) 775-8669
dcurtin@mckeenelson.com

1919 M STREET, NW
SUITE 800
WASHINGTON, DC 20036
*Telephone* 202.775.1880
*Facsimile* 202.775.8586

NEW YORK, NY

ONE BATTERY PARK PLAZA
34TH FLOOR
NEW YORK, NY 10004
*Telephone* 917.777.4200
*Facsimile* 917.777.4299

April 11, 2006

**VIA MAIL, FAX AND E-MAIL**

Dennis M. Donohue
U.S. Department of Justice
501 Fourth Street, NW
Washington, DC 20001

     *Re:*   *Fidelity International Currency Advisor A Fund, L.L.C. v.*
            *United States, No. 05-40151 (D. Mass.)*

Dear Dennis:

     We received the document subpoena the defendant issued to KPMG on March 31, 2006 in connection with the above-referenced case. This letter is to inform you that we object to the subpoena and, pursuant to Local Rule 37.1(a), request a discovery conference. I will call you or one of your co-counsel today or tomorrow to discuss your subpoena.

     The subpoena to KPMG is overbroad in scope. It seeks irrelevant documents concerning people and transactions that are not before the Court in this case. The subpoena's scope is more appropriate to replicating the investigation of the tax shelter industry conducted by the Senate Permanent Subcommittee on Investigations than to conducting discovery in this law suit. The subpoena names fifteen individual taxpayers and thirty-nine entities about whom specific tax information is demanded from KPMG. These individual taxpayers and entities are not parties to our case nor were they involved in the transaction in dispute.

     We have no objection to the subpoena to the extent that it requests relevant information regarding the transaction, people or entities involved in this case. Because the subpoena strays far beyond the facts of this case, it is objectionable. Indeed, the primary focus of the subpoena is on law firms, accounting firms and alleged tax structures that are not involved in the facts of our case.

Dennis M. Donohue
April 11, 2006
Page 2

      We would like to confer promptly to narrow the areas of disagreement to the greatest extent possible.

Sincerely,

David J. Curtin

cc:    John A. Lindquist, III



**U.S. Department of Justice**

**Tax Division**

*Please reply to:* *Civil Trial Section, Northern Region*
*Facsimile No. (202) 514-5238*                                   *P.O. Box 55*
*Trial Attorney: Barry E. Reiferson*                           *Ben Franklin Station*
*Attorney's Direct Line: (202) 514-6058*                  *Washington, D.C. 20044*

5-36-10254
CMN 2005106280

April 13, 2006

VIA FACSIMILE AND MAIL

David J. Curtin, Esq.
McKee Nelson LLP
Suite 800
1919 M Street, NW
Washington, DC 20036

Re:     ***Fidelity Int'l v. United States*, No. 05-40151 (D. Mass.)**

Dear Mr. Curtin:

This is in response to your letter of April 11, 2006 in which you state your objection to the United States' subpoena issued to KPMG and request a discovery conference.

First and most fundamentally, you lack standing to "object to the subpoena" issued to KPMG. Under Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, only the person commanded to produce and permit inspection and copying may object to the subpoena. *See, e.g., Donahoo v. Ohio Dep't of Youth Servs.,* 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty."); *Bulkmatic Transport Co., Inc. v. Pappas,* No. 99 Civ. 12070, 2001 U.S. Dist. LEXIS 6062, at *4-*5 (S.D.N.Y. May 11, 2001) ("Generally, in the absence of a claim of privilege or proprietary interest, parties to an action may not object to a subpoena served on a non-party."); *Epling v. UCB Films, Inc.,* Nos. CIV. A. 98-4226-SAC, CIV. A. 98-4227-RDR, 2000 U.S. Dist. LEXIS 21818, at *7 (D. Kan. Aug. 7, 2000) (only person to whom subpoena is directed has standing to object under Rule 45 of the Federal Rules of Civil Procedure).

Second, even assuming *arguendo* that you have standing to object to a nonparty subpoena, the documents requested in the KPMG subpoena are clearly relevant to this litigation. Your position that the subpoena requests documents relating to people and transactions not before the Court fails to recognize that the collective conduct, known as "pattern evidence," of other KPMG clients involved in other tax shelter transactions can be highly relevant to various issues in this litigation, including, among others, the economic substance issue, the step transaction issue, and the penalty issues. *See, e.g., Sochin v. Commissioner,* 843 F.2d 351, 354 (9th Cir.), *cert. denied,* 488 U.S. 824 (1988) (evidence of other transactions admitted as relevant to economic substance determination and also admitted as relevant to the credibility of the taxpayers with respect to their non-tax-based motives); *Jade Trading v. United States,* 65 Fed.

- 2 -

Cl. 188 (2005) (documents relating to non-parties "are potentially relevant to the Government's contention that the activity engaged in by the Ervins and others who participated in this type of transaction, was unlike typical marketplace transactions"); *Karme v. Comm'r,* 673 F.2d 1062 (9th Cir. 1982), ("Although the testimony did not relate to the particular transaction giving rise to the deficiency, it did tend to establish a pattern or practice of tax planning of which this transaction was a part, and it was within the tax court's discretion to admit."); *accord, ACM P'ship v. Comm'r,* 157 F.3d 231, 248 (3d Cir. 1998), *cert. denied,* 526 U.S. 1017 (1999); *Muhich v. Comm'r,* 238 F.3d 860, 864 (7th Cir. 2001); *Transpac Drilling Venture, 1983-2 by Dobbins v. United States,* 32 Fed.Cl. 810, 820 (1995); and *Am. Elec. Power Co., Inc. v. United States,* 326 F.3d 737, 741 (6th Cir. 2003).

Also, the documents requested as to KPMG transactions other than the SOS-type transaction at issue here, such as the BLIPS, OPIS, and FLIPS transactions, may be highly relevant to whether these tax shelter transactions were all designed, marketed, and implemented in a very similar pattern and manner. These documents may also be highly relevant to whether there was a concerted effort begun years before the development of the SOS transactions to fraudulently conceal the phony losses generated from KPMG's tax shelter transactions, and that these efforts continued through the marketing of the SOS transactions at issue here.

Finally, the issue of relevance at this stage of the litigation relates not to the admissibility of the subpoenaed documents into evidence, but also to their relevance for purposes of discovery under Federal Rule of Civil Procedure 26. On that score, the documents requested by this subpoena are manifestly relevant under the broad scope of Rule 26. As the First Circuit has recognized, "the plain language of ... Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent." *Klonoski v. Mahlab,* 156 F.3d 255, 267 (1st Cir. 1998). In the discovery context, "the word 'relevant' encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" and is "not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978)). Furthermore, using that broad definition of relevance, the law in this district is that "information is discoverable if there is *any possibility* it might be relevant to the subject matter of the action." *Cabana v. Forcier,* 200 F.R.D. 9 (D. Mass. 2001) (emphasis added). And there is no question that there is a possibility – and we believe a strong probability – that these documents might be relevant to the subject matter of this litigation.

As Mr. Donohue discussed with you yesterday, we are, of course, willing to discuss these issues with you. We suggest a telephone conference at 10:30 a.m. on Friday morning. However, since you clearly do not have standing to challenge the KPMG subpoena, we do not see how our discussion of your objections will in any way change our position.

1647842.1

- 3 -

Please let me know if the above date and time for the telephone conference is convenient for you. My direct number is (202) 514-6058.

Sincerely,

Barry E. Reiferson
Trial Attorney
Civil Trial Section, Northern Region

cc:  VIA FACSIMILE (202) 661-8284
     Armando Gomez, Esq.
     Skadden, Arps, Slate, Meagher & Flom
     1440 New York Avenue, N.W.
     Washington, D.C. 20005

1647842.1

## Issues to be Decided by the Court

In accordance with Local Rule 37.1(b), each request for production raising an issue to be decided by the Court, Plaintiff's position with respect to each contested issue, and Defendant's response to each contested issue, is set forth below.  Plaintiff has no objection to the subpoena Defendant served on KPMG to the extent that it requests documents that relate to Richard Egan, FICA A Fund, the advisors involved in the FICA A Fund transaction, or the development of this specific type of transaction within KPMG.

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
|  | The documents requested under this subpoena relate to . . . the time period from January 1, 1996 through and including December 31, 2005. | The documents requested that relate to the time periods from January 1, 1996 to December 31, 1999 and from January 1, 2003 to December 31, 2005 are irrelevant. | The documents requested that relate to the time periods from January 1, 1996 to December 31, 1999 and from January 1, 2003 to December 31, 2005 are relevant. |
| 1 | All documents that KPMG produced to the IRS in the course of a concluded tax promoter audit of KPMG in the same form in which they were produced to the IRS. | All documents that KPMG produced to the IRS in the course of a concluded tax promoter audit of KPMG are irrelevant to the extent those documents do not concern FICA A Fund or Richard Egan. | All documents that KPMG produced to the IRS in the course of a concluded tax promoter audit of KPMG are relevant. |
| 2 | All transcripts memorializing interviews of KPMG personnel in the course of the promoter audit referenced above. | All transcripts memorializing interviews of KPMG personnel in the course of the promoter audit are irrelevant to the extent those interviews are unrelated to FICA A Fund or Richard Egan. | All transcripts memorializing interviews of KPMG personnel in the course of the promoter audit are relevant. |
| 3 | All documents produced by KPMG to the Senate Permanent Subcommittee on Investigations ("PSI") with respect to the PSI's investigation into the promotion of potentially abusive tax shelters by professionals. | All documents produced by KPMG to the PSI with respect to the PSI's investigation into the promotion of potentially abusive tax shelters by professionals are irrelevant to the extent such documents do not concern FICA A Fund or Richard Egan. | All documents produced by KPMG to the PSI with respect to the PSI's investigation into the promotion of potentially abusive tax shelters by professionals, are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 4 | All form documents used by KPMG to market FLIPS, OPIS, BLIPS and SOS products, including all powerpoint presentations, marketing opinions, confidentiality agreements, engagement letters, training materials, and implementation documents. | All form documents used by KPMG to market FLIP, OPIS, and BLIPS products, including all PowerPoint presentations, marketing opinions, confidentiality agreements, engagement letters, training materials, and implementation documents are irrelevant. | All form documents used by KPMG to market FLIP, OPIS, and BLIPS products, including all PowerPoint presentations, marketing opinions, confidentiality agreements, engagement letters, training materials, and implementation documents are relevant. |
| 5 | Identification of the current address or last known address of all KPMG personnel who participated in the development, marketing, promotion, implementation and/or sale of FLIPS, OPIS, BLIPS, and SOS products. | Identification of the current address or last known address of all KPMG personnel who participated in the development, marketing, promotion, implementation, and/or sale of FLIP, OPIS, and BLIPS products is irrelevant. | Identification of the current address or last known address of all KPMG personnel who participated in the development, marketing, promotion, implementation, and/or sale of FLIP, OPIS, and BLIPS products is relevant. |
| 6 | All documents generically discussing the development, marketing, promotion, implementation and/or reporting of the FLIP, BLIPS, OPIS, SOS products. | All documents generically discussing the development, marketing, promotion, implementation, and/or reporting of the FLIP, BLIPS, and OPIS products are irrelevant. | All documents generically discussing the development, marketing, promotion, implementation, and/or reporting of the FLIP, BLIPS, and OPIS products are relevant. |
| 7 | All documents generated by KPMG generically discussing the development, marketing, promotion, implementation and/or reporting of the FLIP, BLIPS, OPIS, SOS and FDIS products. | All documents generated by KPMG generically discussing the development, marketing, promotion, implementation, and/or reporting of the FLIP, BLIPS, and OPIS products are irrelevant. | All documents generated by KPMG generically discussing the development, marketing, promotion, implementation, and/or reporting of the FLIP, BLIPS, and OPIS products are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 8 | All documents generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and Samuel Mahoney, or any other person, generically discussing in any way the development, marketing, promotion, implementation, and reporting of the financial products. | All documents generated by Lord Bissell, Bryan Cave, and BDO generically discussing in any way the development, marketing, promotion, implementation, and reporting of the financial products are irrelevant. All documents generated by individuals or entities other than DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Refco, and Samuel Mahoney generically discussing in any way the development, marketing, promotion, implementation, and reporting of the financial products are irrelevant. To the extent the undefined term "financial products" refers to FLIP, BLIPS, and OPIS products, all documents generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Refco, and Samuel Mahoney generically discussing in any way the development, marketing, promotion, implementation, and reporting of the FLIP, BLIPS, and OPIS products are irrelevant. | All documents generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and Samuel Mahoney, or any other person, generically discussing in any way the development, marketing, promotion, implementation, and reporting of the financial products are relevant. |
| 9 | All documents discussing IRS Notice 99-59, Notice 2000-44, and/or the list maintenance requirements under 26 U.S.C. §6112. | All documents discussing IRS Notice 99-59 are irrelevant. | All documents discussing IRS Notice 99-59 are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 10 | All documents referencing IRS Notice 99-59 and/or Notice 2000-44 and any of the Tax Shelter Products. | All documents referencing IRS Notice 99-59 are irrelevant. All documents referencing IRS Notice 2000-44 and FLIP, OPIS, or BLIPS are irrelevant. | All documents referencing IRS Notice 99-59 are relevant. All documents referencing IRS Notice 2000-44 and FLIP, OPIS, or BLIPS are relevant. |
| 11 | All documents referencing IRS Notice 99-59 and/or Notice 2000-44 generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney. | All documents referencing IRS Notice 99-59 generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney are irrelevant. All documents referencing IRS Notice 2000-44 generated by Lord Bissell, Bryan Cave, and BDO are irrelevant. | All documents referencing IRS Notice 99-59 generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney are relevant. All documents referencing IRS Notice 2000-44 generated by Lord Bissell, Bryan Cave, and BDO are relevant. |
| 12 | All documents related to the decision by KPMG in 2000 to modify its sales practices for the Tax Shelter Products. | All documents related to the decision by KPMG in 2000 to modify its sales practices for FLIP, OPIS, and BLIPS are irrelevant. | All documents related to the decision by KPMG in 2000 to modify its sales practices for FLIP, OPIS, and BLIPS are relevant. |
| 13 | All documents regarding the fee structure(s) for the Tax Shelter Products. | All documents regarding the fee structure(s) for FLIP, OPIS, and BLIPS are irrelevant. | All documents regarding the fee structure(s) for FLIP, OPIS, and BLIPS are relevant. |
| 14 | All documents regarding development and/or design of the Tax Shelter Products. | All documents regarding development and/or design of FLIP, OPIS, and BLIPS are irrelevant. | All documents regarding development and/or design of FLIP, OPIS, and BLIPS are relevant. |
| 15 | All documents regarding the marketing, promotion, implementation, or reporting of the Tax Shelter Products. | All documents regarding the marketing, promotion, implementation, or reporting of FLIP, OPIS, and BLIPS are irrelevant. | All documents regarding the marketing, promotion, implementation, or reporting of FLIP, OPIS, and BLIPS are relevant. |
| 16 | All documents regarding the issuance of opinions with respect to the Tax Shelter Products. | All documents regarding the issuance of opinions with respect to FLIP, OPIS, and BLIPS are irrelevant. | All documents regarding the issuance of opinions with respect to FLIP, OPIS, and BLIPS are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 17 | All documents with respect to the steps for implementation of the Tax Shelter Products. | All documents with respect to the steps for implementation of FLIP, OPIS, and BLIPS are irrelevant. | All documents with respect to the steps for implementation of FLIP, OPIS, and BLIPS are relevant. |
| 21 | All documents relating to the involvement of Lord Bissell in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions. | All documents relating to the involvement of Lord Bissell in the SOS products including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions, are irrelevant. | All documents relating to the involvement of Lord Bissell in the SOS products including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions, are relevant. |
| 22 | All documents relating to the involvement of Bryan Cave in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions. | All documents relating to the involvement of Bryan Cave in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions, are irrelevant. | All documents relating to the involvement of Bryan Cave in the SOS products, including, but not limited to, all communications regarding the development of the product, the implementation documents, the fee structure, the opinion, and/or the reporting of the proposed transactions, are relevant. |
| 35 | All documents related to the proposed language of the opinions to be issued by Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave and/or any other person, with respect to the SOS products. | All documents related to the proposed language of the opinions to be issued by Lord Bissell and Bryan Cave with respect to the SOS products are irrelevant. All documents related to the proposed language of the opinions to be issued by any other person or law firm, other than Brown & Wood and Proskauer Rose, are irrelevant. | All documents related to the proposed language of the opinions to be issued by Lord Bissell and Bryan Cave with respect to the SOS products are relevant. All documents related to the proposed language of the opinions to be issued by any other person are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 36 | All documents related to the proposed language of the opinions to be issued by Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave and/or any other party, for the SOS products, including all drafts of the form opinion. | All documents related to the proposed language of the opinions to be issued by Lord Bissell and Bryan Cave for the SOS products, including all drafts of the form opinion, are irrelevant. All documents related to the proposed language of the opinions to be issued by any party, other than Brown & Wood or Proskauer Rose, are irrelevant. | All documents related to the proposed language of the opinions to be issued by Lord Bissell and Bryan Cave for the SOS products, including all drafts of the form opinion, are relevant. All documents related to the proposed language of the opinions to be issued by any other party are relevant. |
| 39 | All documents relating to the development, marketing, promotion, implementation, and reporting of the SOS and FDIS transactions, including, but not limited to, those transactions which involved the persons identified on Exhibit A. | All documents relating to the development marketing, promotion, implementation, and reporting of the SOS and FDIS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents relating to the development marketing, promotion, implementation, and reporting of the SOS and FDIS transactions, including, but not limited to, those transactions that involved the persons identified on Exhibit A, are relevant. |
| 41 | All documents related to the signing of any confidentiality agreements for the SOS transactions, including, but not limited to transactions involving the persons identified on Exhibit A. | All documents related to the signing of any confidentiality agreements for the SOS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents related to the signing of any confidentiality agreements for the SOS transactions, including, but not limited to, transactions involving the persons identified on Exhibit A, are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 42 | All documentation generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney for the SOS transactions, including, but not limited to the transactions involving the persons identified on Exhibit A. | All documentation generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney for the SOS transactions involving anyone other than Richard and Maureen Egan is irrelevant. | All documentation generated by DGI, Helios Financial, Alpha Consultants, Alpha Consultants, Inc., Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BDO, Refco, and/or Samuel Mahoney for the SOS transactions, including, but not limited to, the transactions involving the persons identified on Exhibit A, is relevant. |
| 43 | All master agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A. | All master agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All master agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A, are relevant. |
| 44 | All due diligence documentation for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A. | All due diligence documentation for the SOS transactions, including, but not limited to, the FDIS transactions involving anyone other than Richard and Maureen Egan is irrelevant. | All due diligence documentation for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A, is relevant. |
| 45 | All credit support agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A, and including any third-party guarantees, involving any of the persons identified on Exhibit A. | All credit support agreements for the SOS transactions, including, but not limited to, the FDIS transactions, and including any third-party guarantees, involving anyone other than Richard and Maureen Egan are irrelevant. | All credit support agreements for the SOS transactions, including, but not limited to, the FDIS transactions involving the persons identified on Exhibit A, and including any third-party guarantees, involving any of the persons identified on Exhibit A, are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 46 | All documents concerning financial risk to participants in the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A. | All documents concerning financial risk to participants in the SOS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents concerning financial risk to participants in the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A, are relevant. |
| 47 | All documents concerning the probability of profit and actual profitability of the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A. | All documents concerning the probability of profit and actual profitability of the SOS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents concerning the probability of profit and actual profitability of the SOS transactions, including, but not limited to, the SOS transactions involving persons identified on Exhibit A, are relevant. |
| 48 | All documents concerning the business purpose of the SOS transactions including, but not limited to, the SOS transactions involving the persons identified on Exhibit A. | All documents concerning the business purpose of the SOS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents concerning the business purpose of the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A. |
| 50 | All documents concerning any exit interviews or feedback from any of the SOS participants regarding the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A. | All documents concerning any exit interviewers or feedback from any of the SOS participants regarding the SOS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents concerning any exit interviewers or feedback from any of the SOS participants regarding the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A, are relevant. |
| 51 | All documents concerning the application of the step transaction doctrine to the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A. | All documents concerning the application of the step transaction doctrine to the SOS transactions involving anyone other than Richard and Maureen Egan are irrelevant. | All documents concerning the application of the step transaction doctrine to the SOS transactions, including, but not limited to, the SOS transactions involving the persons identified on Exhibit A, are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 52 | All documents concerning any transactions similar to the transactions described in IRS Notice 2000-44 in which an any employee of KPMG, DGI, Brown & Wood, Proskauer Rose, Lord Bissell, Alpha Consultants, Alpha Consultants, Inc., Helios Financial and/or Refco was a participant. | All documents concerning any transactions similar to the transactions described in IRS Notice 2000-44 in which an any employee of KPMG, DGI, Brown & Wood, Proskauer Rose, Lord Bissell, Alpha Consultants, Alpha Consultants, Inc., Helios Financial and/or Refco was a participant are irrelevant. | All documents concerning any transactions similar to the transactions described in IRS Notice 2000-44 in which an any employee of KPMG, DGI, Brown & Wood, Proskauer Rose, Lord Bissell, Alpha Consultants, Alpha Consultants, Inc., Helios Financial and/or Refco was a participant are relevant. |
| 58 | All outlines of the proposed transactions, including, but not limited to, all documents entitled "Outline of Proposed Transaction." | All outlines of the proposed transactions, including, but not limited to, all documents entitled "Outline of Proposed Transaction," to the extent such outlines do not concern Richard or Maureen Egan or FICA A Fund, are irrelevant. | All outlines of the proposed transactions, including, but not limited to, all documents entitled "Outline of Proposed Transaction," are relevant. |
| 59 | All closing documents and drafts of closing documents for FDIS and/or SOS transactions, including but not limited to the Summary of Transaction, Economic Summary of Trades, Option Confirmations, Daily Values, Operating Agreement for each entity, Contribution Agreement for each entity, and Buy-Sell Notice. | All closing documents and drafts of closing documents for FDIS and/or SOS transactions, including, but not limited to, the Summary of Transaction, Economic Summary of Trades, Option Confirmations, Daily Values, Operating Agreement for each entity, Contribution Agreement for each entity, and Buy-Sell Notice, to the extent such documents do not concern Richard or Maureen Egan or FICA A Fund, are irrelevant. | All closing documents and drafts of closing documents for FDIS and/or SOS transactions, including, but not limited to, the Summary of Transaction, Economic Summary of Trades, Option Confirmations, Daily Values, Operating Agreement for each entity, Contribution Agreement for each entity, and Buy-Sell Notice, are relevant. |

| Request No. | Disputed Request | Plaintiff's Position | Defendant's Response |
|---|---|---|---|
| 60 | All opinions and drafts of opinions issued with respect to the FDIS and/or SOS transactions, including but not opinions that were issued by Brown & Wood, Proskauer Rose, Bryan Cave, and/or Lord Bissell. | All opinions and drafts of opinions issued with respect to FDIS and/or SOS transactions by Bryan Cave and/or Lord Bissell are irrelevant. | All opinions and drafts of opinions issued with respect to FDIS and/or SOS transactions by Bryan Cave and/or Lord Bissell are relevant. |