# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 05-40151-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA DUCES TECUM

At the March 10, 2006 scheduling conference, the Court cautioned the parties that it "isn't the Senate Permanent Subcommittee. We aren't going to investigate the tax shelter industry. I hope and assume the government doesn't intend to do that." (Scheduling Conference Tr. 28-29, Mar. 10, 2006.) In its first volley of discovery, this is precisely the type of investigation the government has launched.

The law is clear that a party may raise and this Court may act to limit unduly burdensome discovery. The speculative and remote benefit that might accrue from production of the irrelevant documents Defendant seeks in its subpoena to KPMG is outweighed by the burden on Plaintiff, and ultimately the Court. To lessen this wasteful burden, this Court has the power to grant the relief requested in Plaintiff's Motion to Quash Subpoena Duces Tecum ("Plaintiff's Motion").

## I.     PLAINTIFF ACTED IN GOOD FAITH AND THE MOTION IS NOT MOOT

Two arguments offered by Defendant, largely in footnotes, can be quickly dispatched: contrary to Defendant's assertions, consultation occurred in good faith and Plaintiff's Motion is not moot.  Before filing its motion, Plaintiff communicated with Defendant both by letter and telephone in a good faith effort to discuss the scope of the KPMG subpoena.  Additionally, Plaintiff contacted counsel for KPMG and thereafter informed Defendant, both orally and in writing, of that conversation.  (*See* Ex. A.)  Notwithstanding these efforts, Defendant now complains that because Plaintiff did not agree to allow it to review a copy of its draft motion, Plaintiff acted in bad faith.  (Def.'s Opp'n 1 n.1.)[1]  Defendant's true objection appears to be that Plaintiff did not capitulate.  Providing a draft to Defendant would have delayed the motion and no doubt Defendant would have added any delay to its mootness argument.  Similarly, Plaintiff's Motion is not moot.  "Other taxpayer" information sought by the subpoena has not been produced and, based on KPMG's representations, will not be produced unless there is a protective order in place.[2]

Finally, while the real issue in dispute is "other taxpayer" and related irrelevant discovery, Defendant creates a "threshold issue" based on its all-but-conceded standing argument (Def.s Opp'n 8 n.25), from which it leaps to a specious claim of a local rule violation.  Plaintiff's motion papers informed the Court of the real discovery issues in dispute and included Defendant's letter outlining its position as an exhibit.  (*See* Memorandum in Support of Plaintiff's Motion Ex. D.)

---

[1] United States of America's Opposition to Plaintiff's Motion to Quash Third-Party Subpoena Issued to KPMG will be cited as "Def.'s Opp'n" throughout this brief.

[2] Defendant's Opposition strains to assure the Court that this discovery issue will be moot by the May 11 conference.  (Def.'s Opp'n 9.)  While the government can exert tremendous pressure on KPMG due to the Deferred Prosecution Agreement, Plaintiff assumes that Defendant would not resort to unilateral self-help pressure in order to further its mootness argument.

## II.      PLAINTIFF IS ENTITLED TO THE REQUESTED RELIEF

"Rule 26(c) generously permits 'for good cause shown' the making of 'any order which justice requires' to protect against annoyance, embarrassment or undue burden occasioned by discovery."  *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993).  District courts have broad discretion to decide when a protective order is appropriate, *id.*, and are "required to balance the burden of proposed discovery against the likely benefit."  *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 400 (1st Cir. 2005).  In particular, in determining when to limit discovery the court "can weigh discovery burdens against the likelihood of finding relevant material."  *City of Waltham v. United States Postal Serv.*, 11 F.3d 235, 243 (1st  Cir. 1993).  Additionally, under Rule 45, a court is required to quash or modify a subpoena if it "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  The KPMG subpoena imposes an undue burden on Plaintiff – and ultimately the Court – by seeking countless irrelevant documents.  This burden merits the Court granting Plaintiff's Motion and limiting the scope of discovery to matters relating to the Fidelity International Currency Advisor A Fund ("FICA A Fund") transaction.

### A.      Defendant Must Show Good Cause Before Seeking "Subject Matter" Discovery

The government wants to dictate the scope of discovery in this case and, when challenged, cries foul, hurls brickbats, and distorts Plaintiff's good faith consultation efforts.  Federal Rule 26(b)(1), as interpreted and applied by this Court, determines the scope of discovery, not the government.[3]

---

[3] Defendant portrays Plaintiff as uncooperative by characterizing Plaintiff's legitimate challenge to the KPMG subpoena as a "cat and mouse game" to "stifle" discovery.  (Def.'s Opp'n 2.)  By contrast, the day before these baseless accusations, Defendant asked for a two-week extension of the due date of its response to Plaintiff's request for production, to which Plaintiff agreed as a professional courtesy.  Being cooperative, however, does not require that Plaintiff stand quietly by as the government replicates the Senate investigation of the so-called tax shelter industry.

In 2000, Rule 26 was amended, along with other rules, to control over-broad discovery and to involve trial judges more actively where the scope of discovery presents problems.  Fed. R. Civ. P. 26 advisory committee's note (2000 amendments) ("The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery.")  The amendment tightened Rule 26(b)(1) to focus, and somewhat limit, lawyer-managed discovery to non-privileged matters that are relevant "to the claim or defense of any party." Under the amended rule, discovery into the broad area of "subject matter" requires a "good cause" showing and court order.

Defendant's subpoena to KPMG is designed to explore and inquire into the general subject matter of the so-called tax shelter industry going back to 1996.  This subpoena seeks information about taxpayers Plaintiff does not know and professional firms, including BDO Seidman, upon which Plaintiff did not rely.  Defendant has no automatic right to conduct this broad subject matter discovery.  Discovery into BDO Seidman communications or other taxpayers' investment plans, risk assessments, and tax plans are not relevant to Plaintiff's claims or the government's defenses.

As Rule 26(b)(1) provides, the question of scope, particularly the discovery of other events, must be decided on a case-by-case basis.

**B.      The Subpoenaed Documents Are Irrelevant**

The information sought by the KPMG subpoena is not relevant to the controversy in this litigation – whether the Internal Revenue Service's adjustments to FICA A Fund's 2001 partnership return were erroneous.  Defendant argues under the rubric of "pattern evidence" [4] that discovery regarding unrelated taxpayers, law firms, and accounting firms, and their

---

[4] This so-called "pattern evidence" is particularly without value because it is not evidence of prior conduct of Plaintiff, but of others.

participation in a variety of different transactions is relevant to the Court's determination of whether the FICA A Fund transaction was a sham, either in fact or in substance, and whether the step transaction doctrine should be applied. (Def.'s Opp'n 13-18.)

The documents sought by Defendant are not relevant to the sham-in-fact inquiry. To determine whether a transaction is a sham in fact, the Court must determine whether the transaction actually occurred. *Kirchman v. Comm'r*, 862 F.2d 1486, 1492 (11th Cir. 1989). If it did actually occur, then it is not a sham in fact. Defendant cannot argue that the non-FICA A Fund discovery it seeks from KPMG could be relevant to the sham-in-fact inquiry, because only documents relating to the FICA A Fund transaction are relevant to the determination of whether the FICA A Fund transaction actually occurred.

The documents sought by Defendant are not relevant to the sham-in-substance inquiry. Courts look at two factors when deciding "'whether the transaction contained economic substance aside from the tax consequences.'" *Black & Decker Co. v. United States*, 436 F.3d 431, 441 (4th Cir. 2006) (quoting *Hines v. United States*, 912 F.2d 736, 739 (4th Cir. 1990)); *see also Dewees v. Comm'r*, 870 F.2d 21, 36 (1st Cir. 1989). The first factor is the subjective business motivation behind the transaction. *Black & Decker Co.*, 436 F.3d at 441. Evidence concerning transactions engaged in by other taxpayers is not relevant to an examination of the subjective business purpose of the FICA A Fund transaction. *See Rice's Toyota World, Inc. v. Comm'r*, 752 F.2d 89, 92 (4th Cir. 1985) ("The business purpose inquiry simply concerns the motives *of the taxpayer* in entering the transaction." (emphasis added)). The second factor in the sham-in-substance analysis is whether, objectively, "'a reasonable possibility of profit from *the transaction* existed apart from tax benefits.'" *Black & Decker*, 436 F.3d at 441 (quoting *Rice's Toyota World*, 752 F.2d at 94) (emphasis added by *Black & Decker* court). This test focuses "on the specific transaction whose tax consequences are in dispute." *Id.* General "subject matter"

evidence regarding the design, development, and marketing of a variety of different transactions and the implementation of those transactions by non-party taxpayers (Def.'s Opp'n 14-15) has no relevance. The only evidence relevant to whether a pre-tax profit potential existed is that relating specifically to FICA A Fund and the transactions executed by it. Defendant's argument that pattern evidence is relevant to whether a profit potential existed for a specific transaction (Def.'s Opp'n 15) is illogical under the sham transaction doctrine.

The documents sought by Defendant are not relevant to the Court's analysis of whether the step transaction doctrine should be applied in the present case. The step transaction doctrine allows a court to collapse the steps of a transaction when "a single transaction" is "broken up into various elements to avoid tax." *Maine Steel, Inc. v. United States*, 174 F. Supp. 702, 711 (D. Me. 1959). The First Circuit respects the individual steps of a transaction as long as they are "not fictitious or so lacking in substance as to be anything different from what they purported to be." *Granite Trust Co. v. United State*s, 238 F.2d 670, 678 (1st Cir. 1956). Under this standard, a court is required to look at the substance of the steps in the transaction at issue. "Pattern evidence" showing that other transactions may have been "minutely scripted" or "preplanned" (Def.'s Opp'n 17) is not relevant to whether the steps in the FICA A Fund transaction had substance. Only evidence concerning the FICA A Fund transaction can show whether the steps were what they purported to be.

Defendant supports its view that "pattern evidence" will be relevant with citations to a handful of inapposite tax cases (Def.'s Opp'n 16), suggesting that the courts have thrown the doors open to this type of discovery.[5] As Plaintiff's counsel said to the Court on March 10, this

---

[5] Government counsel's "mere assertion of relevance" is not an acceptable basis for allowing discovery regarding non-party taxpayers. *See United States v. Monumental Life Ins.*, 440 F.3d 729, 736 (6th Cir. 2006) (finding, in a summons enforcement case, that the "'mere assertion of relevance' by an IRS agent will not necessarily satisfy the government's burden" (quoting *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir. 1980))).

is a case about one tax return and one partnership. (Scheduling Conference Tr. 15.) It is about

this Plaintiff's financial investment and risk assessments made at a particular point in time.

     *Dewees v. Commissioner*, a 1989 First Circuit case not cited by Defendant, is an example

of a case where information pertaining to other taxpayers and transactions was relevant

discovery material. *Dewees* involved a consolidated case that contained the same issues as the

"1,100 other cases consolidated by the Tax Court." 870 F.2d at 22. The First Circuit

appropriately examined the facts of sample cases chosen by the parties because "the Deweeses

concede, for the purposes of this appeal, that their trading followed the typical straddle trading

pattern described in the Tax Court's opinion." *Id*. at 31; *see also Sochin v. Comm'r*, 843 F.2d

351 (9th Cir. 1988) (litigating four of 1400 cases because the Tax Court and the parties chose the

four as being generally representative with respect to the issues common to all cases).[6] No such

commonality can exist where subjective purpose is at issue, as in this case. And without

agreement as to commonality, the burden on this Court and the parties to examine the

distinguishing facts of each taxpayer and transaction would be monumental.

**C.    The Undue Burden of the Requested Discovery Outweighs the Benefit**

     The Court should balance the serious burden created by the discovery Defendant seeks

against the speculative benefit that might accrue from such discovery. In the present case, the

---

[6] Like *Sochin*, the other five cases cited by Defendant are distinguishable and provide illusive support for Defendant's broad brand of discovery. *American Electric Power* involved a dispute over a narrowly tailored request that yielded a single responsive document. *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 140 (S.D. Ohio 1999). Although *Barrister* admitted evidence of a series of partnerships with a common general partner, the court only cited other *decided cases* in reaching its decision on the merits. *Barrister Equip. Assocs. Series #115 v. Comm'r*, 67 T.C.M. (CCH) 2932, 2933-9 & n.18 (1994). *Brannen* considered related partnerships as required by the Treasury Regulation applicable in that case. *Brannen v. Comm'r*, 78 T.C. 471, 507, 512 (1982). In *Karme*, the taxpayer offered voluminous records of unrelated audits in support of a novel "selective prosecution" argument while unsuccessfully arguing that "habit" evidence under Rule 406 concerning accounting practices should be excluded. *Karme v. Comm'r*, 673 F.2d 1062, 1063-64 (9th Cir. 1982); *Karme*, 73 T.C. 1163, 1178-79 (1980). Lastly, *Jade Trading* has been tried in the Court of Federal Claims, is awaiting decision, and presents weak authority for Defendant's position, particularly in light of the fact that the other taxpayer evidence was not admitted at trial. *Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 615 (2005).

burden imposed on Plaintiff is heavy when weighed against "the likelihood of finding relevant material." *City of Waltham*, 11 F.3d at 243.

Contrary to Defendant's characterization of Plaintiff's argument as "hypothetical harm from a hypothetical subpoena and hypothetical production" (Def.'s Opp'n 10), the burden imposed on Plaintiff by the production of documents relating to transactions in which Plaintiff did not engage, advisors who Plaintiff did not consult, and taxpayers who are unrelated to Plaintiff is substantial. Both the volume of documents encompassed within the subpoena and the necessity of becoming an expert in each transaction create an undue burden.

The volume of materials that will be produced by KPMG in response to Defendant's subpoena creates an undue burden. KPMG has not responded to all of Defendant's requests in the subpoena, and KPMG has already produced 101,500 pages of documents relating to the FLIP, OPIS, and BLIPS transactions.[7] Plaintiff cannot predict the number of additional documents that will be produced should KPMG fully comply with Defendant's subpoena, but the review of the 101,500 pages of materials relating to transactions not at issue in this case is unduly burdensome.[8]

Defendant attempts to discount the volume of information it seeks from KPMG. (Def.'s Opp'n 10.) Defendant's subpoena, however, is not so narrowly drawn that one can assume that, for example, its request for "[a]ll documents with respect to the steps for implementation of [FLIP, OPIS, BLIPS, and SOS]" (Subpoena ¶ 17) will not capture all documents prepared for every one of the 601 individuals who reportedly engaged in these transactions. Thus, even the non-taxpayer specific requests could result in a voluminous production of documents.

---

[7] Assuming that a banker's box contains 2,000-3,000 pages, KPMG's production thus far is equivalent to 34-51 boxes of materials that do not address the transaction at issue in this case.

[8] KPMG also produced 54,954 pages of materials that KPMG produced to the Senate Permanent Subcommittee on Investigations. This set of materials contains a large number of documents that pertain to unrelated transactions.

Defendant's proffered remedy for this burden is to suggest that plaintiff "avoid any burden or expense by not reading them."  (Def.'s Opp'n 11.)

If Defendant succeeds in discovering documents from KPMG relating to, at a minimum, fifty-three non-party taxpayers, Plaintiff, and ultimately the Court, will be burdened with evaluating the facts of each of these transactions.[9]  While voluminous, the information produced with respect to the non-party taxpayers will be limited and incomplete, at best.  Plaintiff will have to defend or distinguish the transactions engaged in by each non-party taxpayer without the benefit of all of the evidence.  The burden of litigating the merits of transactions of non-party taxpayers outweighs any benefit that might result from the injection of these cases into the present litigation.

These real burdens, considered in light of the speculative benefit sought by Defendant, justify the Court in granting Plaintiff's Motion.  The speculative benefit of the evidence Defendant seeks is further minimized, and perhaps even eliminated, by the fact that it would not be admissible at trial or would only be admissible under a heightened standard of relevance, which Defendant will not be able to meet.[10]

## III.    PLAINTIFF HAS STANDING TO BRING THIS MOTION

Plaintiff properly sought relief under both Rule 26(c) and Rule 45.  Under both Rules, a party may object to a third-party subpoena if the party seeks to protect its own interests, as with

---

[9] In *Fox v. Commissioner*, 80 T.C. 972, 1005 (1983), the Tax Court noted that consideration of transactions not before the court imposes a heavy burden:

> To consider fairly the profit history of these other partnerships, we would have to examine the underlying cause of the financial results in each partnership.  This would greatly expand the scope of our inquiry and, in effect, require us to try the cases of all these other partnerships simultaneously.

[10] Evidence regarding the actions of KPMG and other tax advisors may erroneously be offered to support a government desire to prove that these advisors had a propensity to promote allegedly abusive tax shelters.  Evidence of other actions by KPMG and other tax advisors, however, "is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  Additionally, the First Circuit has stated that any evidence under Rule 404(b) "must possess some *special relevance* to a disputed issue in a case."  *United States v. Sebaggala*, 256 F.3d 59, 67 (1st Cir. 2001) (emphasis added).

Plaintiff's Motion. According to Defendant, however, it can subpoena documents from third parties with "abandon," as one case put it, and Plaintiff can do nothing to protect the scope of discovery in its own litigation. *See Taylor v. Litton Med. Prods., Inc.*, 19 Fed. R. Serv. 2d 1190, 1193 (D. Mass. 1975). No litigant, including the government, has the right to unilaterally determine the scope of discovery.

Rule 26(c) explicitly states that a party may file a motion thereunder. *See* Fed. R. Civ. P. 26(c) ("Upon motion by a party *or* by the person from whom discovery is sought . . . ." (emphasis added)); *see also* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure* § 2035 (2d ed. 1994) ("The motion [for a protective order] may be made by any party . . . ."); *see also Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005). Defendant observes that "'[a] party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself'" (Def.'s Opp'n 9 (quoting Wright, Miller, & Marcus, *supra*, § 2035)), but the same authority cited by Defendant continues, stating that "a party may seek an order if it believes its own interest is jeopardized by discovery sought from a third person," Wright, Miller, & Marcus, *supra*, § 2035. This is precisely why Plaintiff has sought an order – to protect itself against the burdens associated with Defendant's far-reaching and irrelevant discovery.

Under Rule 45, a party similarly may move to quash a third-party subpoena where the party makes a claim to a personal right or privilege with respect to the subject matter of a third-party subpoena. *See, e.g.*, *Taylor*, 19 Fed. R. Serv. 2d at 1192; *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (2d ed. 1994). The First Circuit has made clear that a party's challenge to a subpoena issued to a third party is permissible, but the party "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights and interests of third parties." *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 5 (1st

Cir. 1985) (holding that an appellant lacked standing to appeal a denial of a motion to quash because she was asserting the rights of a third party). Simply stated, when a party's own legal rights and interests are at stake, it has standing to move for relief. Contrary to Defendant's argument, Plaintiff does not have to sit quietly while Defendant serves subpoenas with abandon.

Defendant is incorrect in its assertion that, as a matter of law, a party lacks standing to move to quash a subpoena issued to a third party. (Def.'s Opp'n 7.) None of the cases cited by Defendant are First Circuit cases and none of those cases stand for the absolute rule Defendant advances. All of the cases acknowledge that circumstances exist under which a party may object to a third-party subpoena, and thus support Plaintiff's position.

Contrary to Defendant's self-serving characterization, Plaintiff does not seek to "object on KPMG's behalf when KPMG does not object at all." (Def.'s Opp'n 9.) Rather, Plaintiff objects because, with this subpoena, Defendant is clearly embarking on a fishing expedition. This type of investigation damages the scope of discovery in this litigation, places an undue burden on Plaintiff by pulling into this case a voluminous amount of irrelevant documents that outweigh any benefit that might arise from the production of those irrelevant documents, and raises broader policy concerns.[11] Thus, because Plaintiff is asserting its own interests in its objection to the KPMG subpoena, Plaintiff properly filed its Motion under both Rules 26(c) and 45. This Court unquestionably has the authority to grant the requested relief. *See* Fed. R. Civ. P.

---

[11] The provision of Rule 45 addressing motions to quash or modify a subpoena "requires the court to protect *all* persons from undue burden imposed by the use of the subpoena power," not just the person to whom the subpoena is addressed. Fed. R. Civ. P. 45(c)(3)(A)(iv) advisory committee's note (1991 amendments) (emphasis added). Plaintiff's memorandum noted for the Court's consideration the policy concerns arising from Defendant's subpoena, such as the disclosure of third-party return information, to illustrate that fairness issues exist with respect to the disclosure of tax return information of non-parties. Although Defendant's subpoena is carefully crafted to circumvent the statutory protections generally afforded taxpayer returns and return information, the Court should nonetheless balance the policy concerns of disclosing such information against the minimal usefulness of such disclosure. Plaintiff pursued these concerns with the government following the filing of Plaintiff's Motion (Ex. B), and Defendant responded to Plaintiff's letter (Ex. C). Plaintiff would have been remiss in not raising these issues with Defendant and before the Court.

26(b)(2) (allowing a court to limit discovery through a protective order if it determines that "the

burden or expense of the proposed discovery outweighs its likely benefit"); Fed. R. Civ. P.

45(c)(3)(A)(iv) (requiring a court to quash or modify a subpoena if it subjects a person to undue

burden).

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Motion to Quash

Subpoena Duces Tecum be granted.


Dated this 9th day of May 2006.


PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner


/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email:  dcurtin@mckeenelson.com
          rbuch@mckeenelson.com
          lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 9, 2006.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

# McKee Nelson LLP

**DAVID J. CURTIN**
Direct Dial: (202) 775-8669
dcurtin@mckeenelson.com

*Correspondence from:*

> WASHINGTON, DC

1919 M STREET, NW
SUITE 800
WASHINGTON, DC 20036
*Telephone* 202.775.1880
*Facsimile* 202.775.8586

NEW YORK, NY

ONE BATTERY PARK PLAZA
34TH FLOOR
NEW YORK, NY 10004
*Telephone* 917.777.4200
*Facsimile* 917.777.4299

April 14, 2006

**VIA MAIL AND FACSIMILE**

Armando Gomez
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, NW
Washington, DC 20005

> Re:   *Fidelity International Currency Advisor A Fund, L.L.C. v. United States*, No. 05-40151 (D. Mass.)

Dear Mr. Gomez:

We received a copy of the subpoena that the U.S. Department of Justice issued to KPMG on March 31, 2006 in the matter of *Fidelity International Currency Advisor A Fund, L.L.C. v. United States*, No. 05-40151 (D. Mass.). We have filed a motion to quash portions of that subpoena and provided a courtesy copy to you on April 14, 2006. To the extent that KPMG provides documents that relate to our clients to the Justice Department in response to the subpoena, I have requested that a duplicate set of documents be provided directly to our office in the form in which it is provided to the Justice Department. You have agreed to do so. Additionally, I understand that your client will be producing subpoenaed documents concerning the Senate investigation and that you will also provide my office with a duplicate set.

In making my request for duplicate sets of documents, I am not suggesting that the subpoena is reasonable in scope, for I believe it is not.

Sincerely,

David J. Curtin

cc:   Dennis M. Donohue
      John A. Lindquist, III

McKee Nelson LLP
*Attorneys at Law*
**www.mckeenelson.com**

# Exhibit B

# McKee Nelson LLP

**DAVID J. CURTIN**
Direct Dial: (202) 775-8669
dcurtin@mckeenelson.com

> WASHINGTON, DC

1919 M STREET, NW
SUITE 800
WASHINGTON, DC 20036
*Telephone* 202.775.1880
*Facsimile* 202.775.8586

April 26, 2006

## VIA FEDERAL EXPRESS, FAX AND E-MAIL

Dennis M. Donohue
Senior Litigation Counsel
Office of Civil Litigation
U.S. Department of Justice, Tax Division
555 Fourth Street, N.W., Suite 7204
Washington, D.C. 20001

   *Re:*   *Fidelity International Currency Advisor A Fund, L.L.C. v. United States,*
           *No. 05-40151 (D. Mass.)*

Dear Dennis:

   This letter seeks additional information regarding the subpoena *duces tecum* issued by the government to KPMG on March 31, 2006 in this case. The subpoena demands specific information, including tax return information, about fifteen individual taxpayers and thirty-eight entities who are not parties to this case and were not involved in the transaction at issue. Through its subpoena, the government has already disclosed the identity of these non-party taxpayers and further disclosures concerning their tax returns appear to be likely if the government is allowed to pursue this line of discovery.

   As reflected in our pending motion, we believe that the discovery of non-party tax information, as sought by your subpoena, is inappropriate and contravenes the longstanding policy of protecting confidential tax return information as embodied in Internal Revenue Code Sections 6103 and 7216. However, in order to understand more completely the government's plans concerning these other taxpayers, its answers to the following questions are important to us.

   (1) Has the government notified, or does it intend to notify, the fifteen non-party individual taxpayers and the thirty-eight non-party entities listed in the subpoena that the government has disclosed their identities and is seeking further discovery and disclosure of their tax return information in this case?

www.mckeenelson.com

Dennis M. Donohue
April 26, 2006
Page 2

(2)  Is the government planning to produce for use in this case the IRS audit files of each of the non-party taxpayers listed in the subpoena if it is allowed to pursue this line of discovery?

The fact that the government has requested the return information of the non-party taxpayers and entities for use in this case also raises the prospect that our client's confidential tax return information has been or will be sought by the government for use in tax cases other than the above-referenced case.  We request that, prior to the disclosure of information concerning Richard J. Egan or Fidelity International Currency Advisor A Fund, we be notified of such disclosure so that we have the opportunity to consider whether the disclosure would be objectionable.

We look forward to receiving your answers to the questions posed above and an open discussion regarding the discovery process.

Sincerely,

David J. Curtin

cc:    John A. Lindquist, III

Exhibit C



**U.S. Department of Justice**

**Tax Division**

*Please reply to:*  Civil Trial Section, Northern Region
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044

Facsimile No. (202) 514-5238
Trial Attorney: Barry E. Reiferson
Attorney's Direct Line: (202) 514-6058

5-36-10254
CMN 2005106280

May 3, 2006

VIA FACSIMILE AND MAIL

David J. Curtin, Esq.
McKee Nelson LLP
Suite 800
1919 M Street, NW
Washington, DC 20036

Re:    ***Fidelity Int'l v. United States***, No. 05-40151 (D. Mass.)

Dear Mr. Curtin:

This is in response to your letter of April 26, 2004 to Mr. Donohue in which you seek "additional information" regarding the United States' subpoena to KPMG.  Mr. Donohue has asked me to reply to that letter.

As stated in our opposition to your motion to quash, the KPMG subpoena is clearly proper.  The tax-reporting information of KPMG's clients who purchased tax shelters identical to or similar to the tax shelter at issue in this case is both properly discoverable and not confidential within the meaning of Internal Revenue Code sections 6103 and 7216.  As you seem to recognize on page 10 of your memorandum, section 6103 applies to disclosures by government officials, and therefore does not apply at all to the KPMG subpoena.  Similarly, you acknowledged, albeit in a footnote, that section 7216 is inapplicable.  *See* Pl.'s Mem. Supp. Mot. to Quash at 10, n.6. Indeed, given those acknowledgments, it is puzzling that you would cite those statutes in your letter.  Not only is there is no confidentiality right to assert here, but, as we made clear in our opposition to your motion, you lack standing to assert any purported confidentiality right on behalf of KPMG's clients.

Because you appear to recognize the discoverability of the information we seek from KPMG, and because you nonetheless persist in trying to prevent such discovery without standing to do so, we can only assume that your letter is designed to further that goal.  Notwithstanding that belief, we will answer the two numbered questions you posed in your letter.

As to your first question, which asks if the United States has notified individual taxpayers and nonparty entities that their names were listed in the KPMG subpoena and that the United States seeks further discovery in this case, the answer is no.  Neither the United States nor, to the best of our knowledge, KPMG, is under any legal obligation to inform KPMG's clients of our

- 2 -

subpoena request, though we do not know whether KPMG has informed its own clients. If you are aware of legal authority that requires such notification, please provide it to us. We do know that, as we already told you and as you are undoubtedly aware from your discussions with KPMG's counsel, we are working with KPMG to finalize a protective order for the information relating to its clients. In asking this question, you also seem to operate under the false premise that there has been an improper disclosure of taxpayer information by the United States in this case. If that is in fact your assertion, please state the basis for it along with the applicable law.

As to your second question, asking whether the government is "planning to produce for use in this case the IRS audit files for each of the non-party taxpayers listed in the [KPMG] subpoena," the United States will make no decision regarding any further discovery of KPMG client information until it has thoroughly reviewed the documents produced by KPMG and other tax-shelter promoters.

Finally, we address your request that we notify you before any disclosure of Richard Egan's or Fidelity International's "confidential tax return information." As with any action the United States takes in this case, we will follow the applicable law. On that point, we do not and, of course, cannot agree to broaden Congress' definition of confidential tax-return information. Though the attorneys representing the United States in this case don't make representations on behalf of other attorneys, we believe that attorneys for the United States will also follow the applicable law in the unnamed "other" tax cases you refer to in your letter.

Sincerely,

Barry E. Reiferson
Trial Attorney
Civil Trial Section, Northern Region

1680296.1