UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No.: 05-40151-FDS |

**UNITED STATES OF AMERICA'S SURREPLY TO PLAINTIFF'S
MOTION TO QUASH THIRD-PARTY SUBPOENA ISSUED TO KPMG[1]**

The United States is not investigating the tax shelter industry. The Senate Permanent Subcommittee on Investigations has done that, and published a report detailing widespread abuses by various professionals who sold prepackaged, generic tax shelters to willing buyers.[2] The Senate investigated a number of accounting firms, law firms, financial institutions, investment advisors, and tax shelters. The United States is not seeking discovery from or relating to the great bulk of them in connection with this litigation. Furthermore, the United States is not seeking transactional documents with respect to any tax shelter other than SOS and its variants. Nonetheless, the United States does seek marketing and other information relating to generic tax shelters that were merely prior models of the tax shelter the plaintiff bought. Discovery should not be hampered simply because there may be some overlap between information the Senate

---

[1] At the scheduling conference on March 10, 2006, the Court allowed surreplies to motions "in the ordinary course." Tr. at 39.

[2] Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't. Affairs, 109th Cong., The Role of Professional Firms in the U.S. Tax Shelter Industry (Gov't Printing Off., April 13, 2005). Available at http://levin.senate.gov/senate/investigations/ (follow "PSI Tax Shelter Reports"; then follow "The Role of Professional Firms in the U.S. Tax Shelter Industry" hyperlink).

looked at and information the United States seeks in order to defend this case and even to rebut specific allegations made by the plaintiff.

I.   THE UNITED STATES SEEKS RELEVANT DOCUMENTS

The United States' position that the documents it seeks are highly relevant is supported by numerous authorities cited in its opposition to the motion to quash[3]. Plaintiff's distinction of that large body of case law is meritless.[4] While plaintiff argues that the FLIP, OPIS, BLIPS, and SOS material sought by our KPMG subpoena is irrelevant to an understanding of the specific tax strategy that it purchased, it has alleged the exact opposite as a member of a class of so-called investors that filed an amended complaint in September 2005 against KPMG and Sidley Austin.

---

[3] *See also* the recent decision of *Douglas v. United States*, 410 F. Supp. 2d 292, 297 (S.D.N.Y. 2006) (attached as Exhibit A) where the Court expressly noted the potential relevance of evidence of financial records of other taxpayers, stating:

> The Government argues that the ...[other taxpayer] records will assist the Government in determining whether Plaintiffs' transactions lack objective economic substance, and that the information is relevant "pattern evidence" that will help demonstrate the invalidity of the disputed CARDS transactions. The "pattern evidence" argument also encompasses the additional argument made by the Government that tax cases are often tried by showing the separate steps of a scheme, and that the pattern of identical or similar steps by movants will demonstrate an impermissible pattern by the Plaintiffs . . . .
>
> There is reason to believe the financial records of . . . [other taxpayers']are relevant to the Government's investigation of a pattern of improper financial activity. The movants have employed the same financial device utilized by the Plaintiffs, and the manner of their participation in CARDS transactions is relevant to the steps taken by the Plaintiffs.

[4] The plaintiff cites (Pl.'s Reply Mem. at 9, n.9) only one case to support its position that the documents sought by the subpoena are irrelevant and/or unduly burdensome. *See, Fox v. Comm'r*, 80 T.C. 972, 1005 (1983). But plaintiffs's reliance on *Fox* is misplaced. *Fox* does not stand for the proposition that discovery of other transactions is unduly burdensome. Indeed, while considering admissibility of evidence it deemed "sketchy and incomplete," the *Fox* court stated that, *under its prior authority*, information relating to other partnerships appears "relevant." *Id.* at 1005.

In the class-action case, *Simon et al. v. KPMG et al.*, Civ. No 05-CV-03189 DMC (D. N.J.), plaintiff and the other class members alleged that "For all their complexity. . . , FLIP, OPIS, BLIPS and SOS were pre-wired deals *that were the same, from one taxpayer to the next. Only the names changed*." *See* United States Opp. Mem. Ex. 26, *Simon* Am. Compl. at ¶ 5 (emphasis added). They further alleged that

> [t]he *fraudulent scheme* to market *FLIP, OPIS, BLIPS and SOS* involved providing a "tax opinion letter" to the purchaser. . . . [T]he *joint creation* of these boilerplate opinion letters was an important part of the scheme of preparing the tax products for mass-marketing. As such, these opinion letters did not represent genuine, independent advice, but rather, were part and parcel of a *well-planned fraudulent scheme.*

*Simon* Am. Compl. at ¶ 6 (emphasis added). Now, with only the passage of months since the class-action amended complaint was filed, the "fraudulent scheme to market FLIP, OPIS, BLIPS and SOS" has, according to the plaintiff, become irrelevant. The United States believes as the plaintiff here and the other members of this class action suit believed last year – the tax shelter involved in this case was the result of an intricate and ongoing fraudulent scheme to avoid taxes. The entire product line of tax-shelter products involved in that fraudulent scheme is not only relevant but critical to a full understanding of the intricacies of the fraudulent tax shelter implemented on behalf of the Egans.

## II.     PLAINTIFF LACKS STANDING

Plaintiff appears no longer to be arguing, as it did in its motion, that it has standing to quash our subpoena based on its right to ensure that information relating to KPMG's clients be protected from disclosure.[5] Whereas it previously asserted its right to protect the privacy interests of KPMG's clients, the plaintiff is now limiting its standing argument to the alleged

---

[5] The United States, unable to gain the stipulation of the plaintiff to a protective order negotiated with KPMG to protect KPMG-client information, moved on May 9, 2006 for a protective order.

undue burden to it of reviewing the material requested by the subpoena.

Circumstances may exist in which a party may object to a third-party subpoena, however, as the plaintiff now acknowledges, those instances are limited to a party's assertion of its "*own* legal rights and interests and cannot rest . . . on the legal rights and interests of third parties." *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 5 (1st Cir. 1985) (emphasis added).  While the plaintiff alleges that its has a personal legal interest in not reviewing documents sought by the subpoena, that is a clearly insufficient ground upon which to quash a subpoena to a third party.  The First Circuit recognized in *Diamantis*, that "it is the third party witnesses . . . who would have to bear the expense of producing the requested documents," and therefore held that the party arguing against discovery had "not shown that [its] own rights are threatened by the" production of documents by a nonparty.  *Id.* at 5.  The First Circuit certainly did not hold that the review of the documents themselves rises to the level of an undue burden which is sufficient to provide the party with standing to move to quash a subpoena to a third party.  As cited in our opposition memorandum, the great weight of authority holds that the objecting party must assert a personal right with respect to the subject matter.  The plaintiff alleges no such personal interest.

## CONCLUSION

In sum, plaintiff has no standing to challenge the subpoena and in any event, the materials

sought by the subpoena are clearly relevant to the issues in this litigation.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

                /s/ Dennis M. Donohue
                DENNIS M. DONOHUE
                SENIOR LITIGATION COUNSEL
                OFFICE OF CIVIL LITIGATION
                Trial Attorney, Tax Division
                U.S. Department of Justice
                P.O. Box 403, Ben Franklin Station
                Washington, D.C.  20044
                Telephone: (202) 307-6492
                Facsimile: (202) 307-2504
                E-mail: dennis.donohue@usdoj.gov

                JOHN A. LINDQUIST
                BARRY E. REIFERSON
                MATTHEW C. HICKS
                Trial Attorneys, Tax Division
                U.S. Department of Justice
                P.O. Box 55, Ben Franklin Station
                Washington, D.C.  20044-0055
                Telephone: (202) 307-6542
                Facsimile:  (202) 514-5238
                E-mail: matthew.c.hicks@usdoj.gov
                     john.a.lindquist@usdoj.gov
                     barry.e.reiferson@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on May 10, 2006.

/s/ Barry E. Reiferson
Trial Attorney
US Department of Justice, Tax Division

2 of 3 DOCUMENTS

NEAL M. DOUGLAS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant.

(LBS) M8-85, RELATED CASE NO. C-03-4518 (N.D. Cal.)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

410 F. Supp. 2d 292; 2006 U.S. Dist. LEXIS 2696; 97 A.F.T.R.2d (RIA) 932

January 25, 2006, Decided
January 26, 2006, Filed

**COUNSEL:** [**1] For Movants: Hector Gonzalez, Charles Hurley, Daniel Dumezich, MAYER, BROWN, ROWE & MAW LLP, New York, NY.

For Defendant: David S. Jones, W. Carl Hankla, Joseph A. Sergi, U.S. DEPARTMENT OF JUSTICE, Washington, D.C.

**JUDGES:** LEONARD SAND, U.S.D.J.

**OPINIONBY:** LEONARD SAND

**OPINION:** [*294] SAND, District Judge

Before the Court is a motion by third-party petitioners ("movants") to quash subpoenas issued by the United States in the underlying action. The movants are eleven individuals whose financial records have been subpoenaed from Deutsche Bank. n1 The movants assert that the Right to Financial Privacy Act ("RFPA"), *12 U.S.C. §§ 3401-3422 (2005)*, prohibits these subpoenas because there is no reason to believe the information sought is relevant to a legitimate law enforcement inquiry. See *12 U.S.C. § 3407(1)* (Government may obtain financial records via judicial subpoena only if there is "reason to believe that the records sought are relevant to a legitimate law enforcement inquiry"). Because there is reason to believe the information sought is relevant to a legitimate law enforcement inquiry, the motion is denied. Although the motion to quash was [**2] untimely, we address the motion on the merits as the Government did not urge untimeliness as a ground for denial of the motion.

> n1 The individual movants are Brion B. Applegate, Edouard Aslanian, Dr. Ray Irani, Tom Jermoluk, Boris Putanec, Timothy Mott, Sanjay Subhedar, Dr. Thomas Roskos, Thomas M. Roskos Jr., Israel Ury, and Val E. Vaden.

THE ACT

With respect to a judicial subpoena, the RFPA bars the Government from obtaining from a financial institution the financial records of the institution's customers unless the customer has authorized the disclosure or the judicial subpoena meets the requirements of *§ 3407*. *12 U.S.C. § 3402(4)*. *Section 3407* of the Act states:

> A Government authority may obtain financial records under *[§ 3402]* pursuant to judicial subpena [sic] only if—
>
> (1) such subpena [sic] is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;
>
> (2) a copy of the subpena [sic] has [**3] been served upon the customer or mailed to his last known address on or before the date on which the subpena [sic] was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry . . . .

*12 U.S.C. § 3407*.

There is no challenge to the notice provisions. *Section 3410* of the Act specifically discusses customer challenges to subpoenas. A court's decision on a customer challenge hinges on the demonstration of the subpoena's relevance. See *12 U.S.C. § 3410(c)* (stating that if court finds no "demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance with the provisions of this title, it shall order the process quashed"). Thus, the Court must determine that the inquiry is legiti-

Case 4:05-cv-40151-FDS   Document 26-2   Filed 05/10/2006   Page 2 of 4

Page 2

410 F. Supp. 2d 292, *294; 2006 U.S. Dist. LEXIS 2696, **3;
97 A.F.T.R.2d (RIA) 932

mate and that there is a reasonable belief that the records sought are relevant to that inquiry.

SUBJECT-MATTER JURISDICTION

*Section 3410* outlines the procedure for challenging a subpoena. *Section 3410(a)* states **[**4]** that "within ten days of service or within fourteen days of mailing of a subpena [sic], summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial subpena [sic]." In this case, the subpoena was issued on October 14, 2005. **[*295]** Movants filed their motion to quash on November 7, 2005, which was not within ten days of service or fourteen days of mailing of the subpoena. The Government did not note this lapse and thus a possible objection based on movants' delay was waived.

Subject-matter jurisdiction is not waivable, however, and the Court is obligated to examine whether the failure to comply with the schedule included in *§ 3410(a)* deprives the Court of subject-matter jurisdiction. At least one court in this Circuit has so held. See *Mackey v. SEC, No. 96-407, 1997 U.S. Dist. LEXIS 24000, at *2 (D. Conn. Feb. 21, 1997)* ("If a motion to quash is not timely filed pursuant to this statute, a district court does not have subject matter jurisdiction to hear the challenge."); see also *Swann v. Sec'y, U.S. Dep't of Housing & Urban Dev., Misc. No. 05-492, 2006 U.S. Dist. LEXIS 1553, at *2 (D.D.C. Jan. 19, 2006)* **[**5]** ("As a threshold matter, this court does not have subject matter jurisdiction because Swann's motion is untimely."); *Turner v. United States, 881 F. Supp. 449, 451 (D. Haw. 1995)* ("Petitioners failed to file their motion to quash the IRS summonses within the allotted time frame . . . . Because timely filing is a prerequisite to this Court's jurisdiction over this matter . . . the Court hereby dismisses the petition to quash for lack of subject matter jurisdiction.").

The untimeliness of a motion to quash is deemed by these decisions to strip the court of subject-matter jurisdiction. Other courts, however, have noted that untimeliness is a sufficient ground for denying a motion to quash, but have not gone so far as to state that untimeliness necessarily requires dismissal for lack of subject-matter jurisdiction or for any other reason. See *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd., 878 F.2d 875, 881 n.6 (5th Cir. 1989)* ("Sandsend's time to respond expired on July 5; Sandsend filed its motion on July 8. Although the untimely nature of the motion would, in most cases, provide an independent ground for denying the motion, the FHLBB waived **[**6]** the issue by neglecting to raise [it] in its motion for reconsideration."); *Friedman v. Inspector Gen. of the U.S. Dep't of State, No. 92-2312, 1992 U.S. Dist. LEXIS 16307, at *2 (D.D.C. Oct. 21, 1992)* ("The Court finds that untimeliness is sufficient grounds for denying a motion to quash."); *Giorgi v. McLaughlin, Misc. No. 1986, 1988 U.S. Dist. LEXIS 1057, at *4 (N.D.N.Y. Jan. 23, 1988)* ("Petitioner has failed to comply with the requirements of the Act. The legislative history as well as the language of the Act itself, particularly Act *section 3410(e)*, indicate that this lack of compliance is sufficient basis for the Court to deny petitioner's motion."). Often courts that dismiss untimely motions to quash note that no reason for delay has been provided, a fact which would be irrelevant if the delay deprived the courts of subject-matter jurisdiction. See *Siegfried v. Inspector Gen. of the U.S. Dep't of Agric., 163 F. Supp. 2d 170, 173 (E.D.N.Y. 2001)* (motion was late and no explanation was provided); *Collins v. Commodity Futures Trading Comm'n, 737 F. Supp. 1467, 1477 (N.D. Ill. 1990)* ("In this case, movants have **[**7]** proffered no reason explaining the belated filing of the five motions listed above, nor have they even contested the CFTC's argument that the untimely motions should be dismissed.").

The Supreme Court recently clarified the distinction between a "rule governing subject-matter jurisdiction and an inflexible claim-processing rule." *Kontrick v. Ryan, 540 U.S. 443, 456, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)*. "Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the **[*296]** parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." Id. The Supreme Court noted in dicta in *SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 104 S. Ct. 2720, 81 L. Ed. 2d 615 (1984)*, that the most salient feature of the RFPA is the "narrow scope of the entitlements it creates." *Id. at 745*. "A customer's ability to challenge a subpoena is cabined by strict procedural requirements. For example, he must assert his claim within a short period of time . . . . Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that **[**8]** customers' objections to subpoenas will delay or frustrate agency investigations." Id. These "strict procedural requirements," however, do not foreclose the ability of the Government agency to consent to a delay or forfeit a potential objection. Just as the failure to comply with the time requirements of *Rules 33* and *45 of the Federal Rules of Criminal Procedure* does not deprive courts of subject-matter jurisdiction, the lack of compliance with the time constraints listed in *§ 3410(a)* does not deprive the Court of subject-matter jurisdiction over the case. n2 See *Eberhart v. United States, 126 S. Ct. 403, 405, 163 L. Ed. 2d 14 (2005)* ("We break no new ground in firmly classifying *Rules 33* and *45* as claim-processing rules, despite the confusion generated by the

Case 4:05-cv-40151-FDS   Document 26-2   Filed 05/10/2006   Page 3 of 4

Page 3

410 F. Supp. 2d 292, *296; 2006 U.S. Dist. LEXIS 2696, **8;
97 A.F.T.R.2d (RIA) 932

'less than meticulous' uses of the term 'jurisdictional' in our earlier cases.") (quoting *Kontrick*, 540 U.S. at 454). Cf. *Fed. R. Civ. P. 82* ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts."). We proceed to discuss the merits of the motion.

> n2 *Section 3410* also contains a provision regarding how quickly a court should render a decision on a motion to quash. See *12 U.S.C. § 3410(b)* (motion to be "decided within seven calendar days of the filing of the Government's response"). The Court deems that requirement as having been waived when the Government consented to the movants' request that the date for oral argument be postponed. The Government filed its response on December 5, 2005. Movants had obtained the consent of the Government for a notice of motion filed on December 2, 2005 which moved the date for oral argument from December 13, 2005 to January 10, 2006.

[**9]

LEGITIMATE LAW ENFORCEMENT INQUIRY

The Government is the Defendant in the underlying case. The Government's subpoenas declare that movants' records are sought "for the following purpose: to defend its interests in the instant refund case." *Section 3407 of the RFPA* permits a "Government authority" to subpoena financial records if there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry. *Section 3401(8)* defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." *12 U.S.C. § 3401(8)*. Movants have not challenged the Government's claim that the defense falls into the category of "law enforcement inquir[ies]."

RELEVANCE

In the underlying action, Plaintiffs Neal and Christine Douglas challenge the disallowance by the Government of claimed income tax benefits related to their Custom Adjustable Rate Debt Structure ("CARDS") transaction. The parties dispute whether Plaintiffs' claimed tax losses achieved through the CARDS transaction possess [**10] economic substance, as an "activity will not provide the basis for deductions if [*297] it lacks economic substance." *Ferguson v. Commissioner, 29 F.3d 98, 101 (2d Cir. 1994)*. See also *Jacobson v. Commissioner, 915 F.2d 832, 837 (2d Cir. 1990)* ("A sham transaction analysis requires a determination 'whether the transaction has any practicable economic effects other than the creation of income tax losses.'") (quoting *Rose v. Commissioner, 868 F.2d 851, 853 (6th Cir. 1989))*. The Government has subpoenaed records of individual investors who utilized the CARDS investment vehicle to obtain tax savings of their own. These investors' identities were obtained by the Government pursuant to an earlier subpoena of Deutsche Bank. (Def.'s Br. 2, n.1.) The Government claims to have a reasonable belief that the evidence regarding movants' CARDS transactions is relevant to its claim that the tax losses obtained by the Douglases through the CARDS transaction are not allowable. The movants claim there is no reason to believe their records are relevant to the Douglas case.

The statutory language does not demand that the subpoenaed documents be demonstrably relevant. The statute [**11] instead states that there must be a "reasonable belief that the records sought are relevant to [the law enforcement] inquiry." *12 U.S.C. § 3410(c)*. See *In re U.S. SEC Private Investigation., Misc. No. M8-85, 1990 U.S. Dist. LEXIS 10460, at *5 (S.D.N.Y. Aug. 10, 1990)* ("Even if plaintiff may be read to have met his statutory burden, he misreads the burden the statute imposes on the SEC. The statute does not require the agency to show that the records are relevant, but rather that there is a reasonable belief that the records sought are relevant.") (quotation omitted). It is not necessary to delve into what space exists, if any, between a showing that documents are "relevant" and a showing that there exists a "reason to believe" that the documents are relevant. As discussed below, the records at issue are properly the subject of the subpoena under either standard.

DISCUSSION

The Government argues that the movants' records will assist the Government in determining whether Plaintiffs' transactions lack objective economic substance, and that the information is relevant "pattern evidence" that will help demonstrate the invalidity of the disputed [**12] CARDS transactions. The "pattern evidence" argument also encompasses the additional argument made by the Government that tax cases are often tried by showing the separate steps of a scheme, and that the pattern of identical or similar steps by movants will demonstrate an impermissible pattern by the Plaintiffs. The fact that the IRS has already issued a notice concluding that CARDS transactions do not result in allowable deductions (Def.'s Br. 4) n3 does not defeat the Government's claim that the movants' records are needed to demonstrate that in this case the CARDS transactions by the Douglases caused unallowable losses.

Case 4:05-cv-40151-FDS  Document 26-2  Filed 05/10/2006  Page 4 of 4

Page 4

410 F. Supp. 2d 292, *297; 2006 U.S. Dist. LEXIS 2696, **12;
97 A.F.T.R.2d (RIA) 932

n3 The Government cites to I.R.S. *Notice 2002-21, 2002-1 C.B. 730*.

There is reason to believe the financial records of the movants are relevant to the Government's investigation of a pattern of improper financial activity. The movants have employed the same financial device utilized by the Plaintiffs, and the manner of their participation in CARDS transactions is relevant to the **[\*\*13]** steps taken by the Plaintiffs. This is true regardless of whether movants' transactions are at some later date deemed to have resulted in allowable or unallowable losses. Cf. *Jade Trading, LLC v. United States, 65 Fed. Cl. 188 (Fed. Cl. 2005)* ("The amount and dates of capital gains and losses recognized by the nonparty taxpayers in 1999-2000 are potentially relevant to the Government's **[\*298]** contention that the activity engaged in by the Ervins and others who participated in this type of transaction, was unlike typical marketplace transactions."). Moreover, the sequence of steps undertaken by movants in undertaking the CARDS transactions relates to Plaintiffs' intentions and their understanding of the disputed transactions.

The Court notes that this ruling does not hold that the records are admissible at trial, only that the RFPA does not bar their release to the Government. As the Government has shown it possesses a reasonable belief that the records are relevant to a legitimate law enforcement inquiry, the motion to quash is denied.

SO ORDERED

Dated: January 25, 2006

New York, New York

LEONARD SAND

U.S.D.J.