# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY ) 
ADVISOR A FUND, L.L.C., by the Tax Matters )
Partner, )
          )
          Plaintiff, )      Case No.: 05-40151-FDS
          )
          v. )      Judge Saylor
          )
UNITED STATES OF AMERICA, )
          )
          Defendant. )
          )

## MEMORANDUM IN SUPPORT OF
## BDO SEIDMAN LLP's MOTION FOR ENTRY OF A
## SUPERSEDING PROTECTIVE ORDER

This memorandum is being filed in support of the motion of BDO Seidman LLP

("BDO"), pursuant to Rules 26(c) and 45,[1] for the entry of a Superseding Protective Order with

respect to Tax Returns[2] to be produced by BDO in response to the subpoena served by defendant

United States of America (the "United States") on non-party BDO on October 3, 2006 (the

"Subpoena").

There is no remaining dispute between BDO and either of the United States or Fidelity

International Currency Advisor A Fund, LLC. ("Plaintiff" and collectively, the "Parties")

regarding the scope of the Subpoena. Similarly, there is no remaining dispute between BDO and

either of the Parties regarding the terms of the Protective Order applicable to documents other

than Tax Returns. The sole remaining dispute is whether the Protective Order (which BDO is

simultaneously moving this Court to enter) should be modified to afford additional protection to

---

[1]      All Rule references are to the Federal Rules of Civil Procedure, unless otherwise indicated.

[2]      Tax Returns are defined in the Proposed Superseding Protective Order as "all federal, state or local tax returns (or portions thereof) of persons or entities that are produced by BDO in connection with this matter, as well as any schedules and attachments thereto and any information therein."

Tax Returns. The Tax Returns at issue are returns of BDO clients who had no direct or indirect involvement in the transactions at issue in this case. The relief sought by BDO will not diminish the Parties' ability to utilize Tax Returns during the discovery phase of this case, but rather, will prevent the unwarranted public disclosure of Tax Returns, ensuring that, in the event either Party wishes to introduce any Tax Returns at trial, BDO may move this court for an additional Protective Order. The tax liability of the BDO clients whose Tax Returns are the subject of this Motion is not at issue in this case. This Motion is filed on behalf of BDO and those BDO clients whose Tax Returns will be produced pursuant to the Subpoena.

### GOOD FAITH ATTEMPT TO RESOLVE DISCOVERY DISPUTE

Before filing this Motion, counsel for BDO (Ellis Reemer and/or Diana Erbsen) and counsel for the United States (John Lindquist and/or Barry Reiferson) participated in multiple telephone conversations (each between 5 and 45 minutes) and exchanged several letters and e-mails in an attempt to resolve the issues regarding the Subpoena and the scope of a Protective Order. Through those good faith negotiations, counsel narrowed the scope of the Subpoena and agreed on the provisions of a protective order applicable to documents other than Tax Returns. However, counsel were unsuccessful in resolving their dispute concerning proposed terms relating to Tax Returns.

In this regard, on October 11, 2006, counsel for BDO participated in a conference call with counsel for the United States and expressed concern with respect to the scope of the Subpoena. During that conversation, among other things, counsel for the United States agreed to extend the time for BDO to respond to the Subpoena and counsel for BDO indicated that Objections to the Subpoena would be filed to protect BDO's interests. Subsequently, on October 30, 2006, counsel for BDO participated in another conference call with counsel for the United

States, regarding the scope of the Subpoena. During that conversation, among other things, counsel for BDO and counsel for the United States agreed that the scope of the Subpoena would be narrowed and that BDO would draft a proposed protective order. This oral agreement of October 30, 2006 was confirmed in a letter from counsel for BDO to counsel for the United States, dated November 13, 2006 (and, as indicated below), by letter from counsel for the United States dated December 1, 2006 .

On November 17, 2006, counsel for BDO (Ellis Reemer and Diana Erbsen) spoke with counsel for the United States (John Lindquist and Barry Reiferson) concerning the proposed protective order and on November 22, 2006, counsel for BDO sent a proposed protective order to counsel for the United States for their review.

By letter dated December 1, 2006, counsel for the United States confirmed the categories of documents to be produced in response to the Subpoena, but objected to the proposed protective order. Counsel for the United States indicated that the United States would only agree to a protective order similar to that agreed to by certain other non-parties to this proceeding.

On December 5, 2006, counsel for BDO advised counsel for the United States that the protective order agreed to by certain other non-parties to this proceeding was insufficient because, for among other reasons, it did not adequately protect Tax Returns from public disclosure. On December 7, 2006, counsel for BDO again conferred with counsel for the United States in a further attempt to resolve the dispute concerning the scope of the protective order. As a result of these discussions, counsel for BDO agreed to provide a further revised protective order for consideration by the United States.

This further revised protective order was provided to the United States on December 14, 2006. This revised protective order was directed to BDO's concerns regarding the protections to be afforded to the Tax Returns. On December 20, 2006, counsel for BDO and counsel for the

United States continued their discussions concerning the scope of a protective order. During that conversation, counsel for the United States indicated that the United States was still reviewing the terms of the revised protective order. On December 29, 2006, counsel for BDO again wrote to counsel for the United States to confirm that BDO and the United States were continuing to work together to resolve their differences over the terms of a protective order.

On January 4, 2007, counsel for BDO and counsel for the United States had another conversation regarding the terms of a protective order. During that conversation, counsel for the United States indicated that Defendant would not agree to BDO's proposed protective order, but would be willing to agree to provide notice to BDO if the United States intended to introduce any Tax Returns at trial. Counsel further agreed to continue the conversation to determine whether a mutually satisfactory protective order could be achieved.

Counsel for BDO and counsel for the United States have now concluded that they cannot agree on the terms of a protective order regarding Tax Returns and that this Court's intervention is required. Accordingly, BDO is filing this Motion whereby it requests that this Court enter the Proposed Superseding Protective Order. BDO, simultaneously with the filing of this Motion, is also filing a Motion for entry of a Protective Order that would apply to documents other than Tax Returns so that BDO may begin production of those documents pending a resolution of this Motion. The Parties are aware that this Motion for a Proposed Superseding Protective Order is being filed. While the United States opposes the relief sought herein, it agrees with the procedure adopted by BDO in bringing the dispute before the Court.

### BACKGROUND

This action involves Plaintiff's challenge to the proposed adjustments made by the Internal Revenue Service ("IRS") of partnership items of FICA A Fund as reported on FICA A Fund's federal income tax return for the taxable year ending December 31, 2001.

4

BDO is an accounting firm and a non-party witness with its principal place of business in Chicago, Illinois. BDO has an office in Boston, Massachusetts.

BDO has had no relationship whatsoever with Plaintiff. BDO has had no relationship whatsoever with Plaintiff's tax matters partner. Further, BDO had no direct or indirect involvement in the transactions at issue in this case. BDO has been commanded by Request No. 37 of the Subpoena to produce Tax Returns of fourth party BDO clients, who also have no direct or indirect involvement in the transactions at issue in this case and whose tax returns are not at issue in this case. As limited by agreement, the Subpoena will require production of Tax Returns for approximately six taxpayers.

The Proposed Superseding Protective Order contains only three provisions the substance of which counsel for the United States opposes and two provisions, the substance of which counsel for BDO believes the United States does not oppose, but is opposed to including to in a protective order. Each is identified and discussed below.

Paragraph 1 of the Proposed Superseding Protective Order modifies paragraph 1 of the Protective Order by defining Tax Returns and by treating "Tax Returns" as a separate class of "Protected Information" unless the identifying information on Tax Returns (as defined) is either extracted therefrom and included on a summary exhibit that does not identify any person or entity, or is redacted. If identifying information is redacted or solely contained in a summary exhibit not containing identifying information, then Tax Returns will be treated in the same manner as other documents covered by the Protective Order. As noted above, "Tax Returns" are defined in the Proposed Superseding Protective Order as "all federal, state or local tax returns (or portions thereof) of persons or entities that are produced by BDO in connection with this matter, as well as any schedules and attachments thereto and any information therein." The United

States opposes the proposed change to paragraph 1 of the Protective Order, although counsel for

BDO believes that the United States does not oppose the definition of Tax Returns.

Paragraph 2(a) of the Proposed Superseding Protective Order provides additional

protection for Tax Returns by stating as follows:

> Protected Information *and Tax Returns* shall not be publicly
> disclosed except as permitted by the Order.  Protected Information
> *and Tax Returns* may be used in any and all discovery proceedings
> in this case, including, but not limited to, document requests,
> requests for admission, depositions, interrogatories and discovery
> motions, *provided that Tax Returns are not disclosed to persons*
> *other than those identified in paragraph 4.  All pages of any*
> *request for admission, deposition, interrogatory, discovery motion,*
> *transcript and any related exhibits concerning such tax returns*
> *must be treated as Protected Information pursuant to this Order*
> *and must be marked with a conspicuous, appropriate legend.  Any*
> *Tax Return filed with the Court is to be maintained by the Court*
> *under seal.*  If either Party intends to introduce a Tax Return at
> trial, BDO will be notified in writing not later than the date that
> exhibit lists are exchanged between the Parties so as to permit
> BDO and/or the affected taxpayers to move the Court for an
> additional protective order.

The United States has opposed the substance of the italicized language above and, while it does

not oppose the substance of the last sentence, objects to the inclusion of the last sentence in a

protective order.

The final change to which the United States objects is in paragraph 8 and is a conforming

change to reflect the changes to paragraph 2(a), by excluding Tax Returns from those items the

Court may disclose as part of a court order or memorandum.

The proposed changes to paragraphs 1, 2 and 8 of the Protective Order are narrowly

crafted to protect Tax Returns from public disclosure, while allowing the Parties to utilize Tax

Returns during the discovery phase of this case.  BDO simply seeks to protect the highly

confidential and totally irrelevant personal information contained in its clients' tax returns,

including, but not limited to, the names of the taxpayers and of their children, and their

ownership interests in entities and other financial information in those tax returns from

unwarranted public disclosure.

## ARGUMENT

### I.     THE COURT MAY EXERCISE ITS DISCRETION TO ENTER THE PROPOSED SUPERSEDING PROTECTIVE ORDER TO PREVENT THE PUBLIC DISCLOSURE OF TAX RETURNS

The First Circuit has held that "[t]he discovery rules [including Rule 26] apply to

subpoenas issued under [Rule] 45.  Cusumano v. Microsoft Corp., 162 F.3d 708, 714 (1st Cir.

1998).  Thus, this Court retains broad discretion to enter discovery orders to protect a non-party

under Rule 26(c) and Rule 45(c)(3).  Heidelberg Americas Inc. v. Tokyo Kikai Seisakusho, Ltd.,

333 F.3d 38, 41 (1st Cir. 2003).  Federal district courts have broad discretion to limit discovery.

Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001); Ayala-

Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996).

Moreover, unlike parties to a litigation who "must accept [the] travails [of invasive

discovery] as a natural concomitant of modern civil litigation[,] non-parties have a different set

of expectations . . . [and] concern for the unwanted burden thrust upon non-parties is a factor

entitled to special weight in evaluating the balance of competing needs [concerning discovery]."

Cusumano, 162 F.3d at 717 (citations omitted); see also Heidelberg, 333 F.3d at 41-42; see also

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 & n.21 (1984) (noting need to prevent abuse of

non-parties' privacy interests through pre-trial discovery).

Consequently, this Court may invoke Rule 26 and Rule 45 to protect the public disclosure

of Tax Returns of non-party BDO's clients who are not participants in this litigation.

II.    **THE COURT SHOULD EXERCISE ITS DISCRETION TO ENTER THE
       PROPOSED SUPERSEDING PROTECTIVE ORDER TO PREVENT THE
       PUBLIC DISCLOSURE OF TAX RETURNS**

Generally, a movant must demonstrate "good cause" for the issuance of a protective

order. Anderson v. Cryovac, Inc., 805 F.2d 1, 7-8 (1st Cir. 1986). In determining whether the

movant has demonstrated "good cause" for the issuance of a protective order, the court is

required to balance "considerations of the public interest, the need for confidentiality, and

privacy interests." Gill v. Gulfstream Park Racing Assn., Inc., 399 F.3d 391, 402 (1st Cir. 2005)

(court must consider various interests in determining if movant demonstrated "good cause,"

including the privacy interests of certain unidentified informants indirectly involved in that case);

see also Gill v. Gulfstream Park Racing Assn., Inc., Civ. No. 03-cv-155-JD, 2005 U.S. Dist.

LEXIS 14733 (D.N.H. July 21, 2005) (upon remand, the court considered informants' privacy

interest in granting protective order).

Here, BDO does not seek to prevent disclosure of Tax Returns to the Parties or to impede

the use of Tax Returns and the information contained therein in developing their case. BDO

merely seeks to prevent the public disclosure of Tax Returns, and to preserve the ability to move

this Court for an additional Protective Order in the event either of the Parties seeks to introduce

any Tax Returns at trial.

The Tax Returns at issue are in BDO's possession because its clients entrusted BDO with

their personal financial information for the purpose of filing the tax returns with the Internal

Revenue Service (the "IRS") as well as appropriate state and local taxing authorities.

Tax returns, by their nature, contain some of the most private and confidential

information relating to a person or entity. The Tax Returns at issue contain not only names and

addresses, but social security numbers, names and ages of children, bank accounts, brokerage

account numbers and information, investment, employment information, business information

8

including income, expenses, gains and losses from businesses and transactions that have no relevance to this case at all. The sensitivity of this type of information is recognized by Local Rule 5.3, which provides that, with regard to filings made with the Court, unless otherwise ordered by the Court, parties "shall refrain from including, or shall partially redact where inclusion is necessary" the following information: social security numbers, names of minor children, dates of birth and financial account numbers. However, the mere exclusion or redaction of the above information is not sufficient to protect other inherently private information contained in a tax return.

Congress has specifically recognized the *per se* privacy interests of persons in their tax returns and "return information" contained therein. In 1976, Congress substantially revised section 6103 to address concerns that the use of tax returns and "return information" for purposes other than determining a taxpayer's own tax liability could seriously impair the effectiveness of the United States' system of voluntary assessment. See Senate Rep. No. 94-938, 94th Cong., 2d Sess. 316-18 (1976). Congress was especially concerned with the use of a non party's tax returns and "return information" in proceedings involving matters of tax administration and specifically added section 6103(h)(4) to strictly limit the extent to which such information could be disclosed in tax proceedings. Id. at 325-26.

It is beyond dispute that taxpayers expect that their tax returns and "return information" will be private and will not be publicly disclosed in a proceeding in which they are in no way involved and which does not involve their tax liability. This expectation of privacy underlies the Congressional intent in amending section 6103 nearly thirty years ago to limit disclosures of confidential tax data. See, e.g., Senate Rep. No. 94-938, at 317 (1976) ("actual and potential disclosure of return and return information [may breach the] reasonable expectation of privacy on the part of the American citizen"); id. at 318 (a "citizen's right to privacy" was factor

considered by the legislators); id. at 328 ("The [congressional] committee decided that information that the American citizen is compelled by our tax laws to disclose to the [IRS] was entitled to essentially the same degree of privacy as those private papers maintained in his home.").

Accordingly, even if section 6103 does not by its terms specifically limit disclosure of Tax Returns to the parties, the privacy interests inherent in its provisions evidence the Congressional intent to protect tax returns and "return information" from unwarranted public disclosure.  Here the parties will have use of Tax Returns during the discovery phase of this case to develop their cases.  However, there is absolutely no need for Tax Returns to be publicly disclosed.  In BDO's view, the Protective Order as currently drafted does not prevent unwarranted and unnecessary public disclosure of Tax Returns.  The proposed changes to paragraphs 1 and 2 balance the needs of the Parties and recognize the inherent burden placed on, and resulting harm to, BDO's clients if Tax Returns are needlessly made public.

Public disclosure of Tax Returns would also lead to specific, clear and serious injury to the individuals and entities whose returns are subject to public disclosure.  Public disclosure of Tax Returns would result in immeasurable harm to the persons and entities whose returns are disclosed.  Public disclosure of Tax Returns and "return information" contained therein would permit unauthorized persons, the public at large, corporations, friends, neighbors, competitors, marketers, etc., to have access to some of the most private information associated with those non-parties, such as the names and ages of non-minor children, amount of savings (easily extrapolated from interest income), investment income and losses, employment information (such as industry and salary), business income (such as industry and gains).  Public disclosure would increase the risks of "identity theft."  While either of the Parties may consider certain limited information contained on a Tax Return as potentially relevant, most of the information

contained in the Tax Returns at issue cannot conceivably be relevant and public disclosure is unwarranted, unnecessary and would impose a severe burden on the individuals involved.

Moreover, in addition to the risks identified above, the risk of economic harm to persons whose economic interests and financial circumstances may become known, even inadvertently, to business competitors, is a specific and substantial harm, with a risk of a clearly defined and serious injury. That risk that should certainly not be borne by persons unrelated to this litigation and who did not seek the jurisdiction of the Court.

As noted above, protecting the privacy interests of parties and non-parties is among the protections afforded to parties and non-parties by Rule 26(c). Seattle Times Co., 467 U.S. at 35, n.21; Glenmede Trust, 56 F.3d at 483.

Counsel for BDO is not aware of any case in which a Court has denied a non-party's request for a protective order to prevent the public disclosure of tax returns or "return information" to be disclosed in court-ordered discovery.

In contrast, the federal courts that have addressed the issue have issued protective orders under Rule 26(c) to protect the disclosure of tax returns and "return information." While these cases involve parties to a litigation, the analysis necessarily applies to third and fourth parties who are not even involved in the litigation.[3]

In Stokwitz v. United States, 831 F.2d 893 (9th Cir. 1987), the Ninth Circuit, in addressing the application of section 6103 in the context of the seizure of tax records by Navy personnel, stated that even though the tax returns could be disclosed to other Navy employees,

---

[3] Indeed, many courts are even reluctant to order the production of income tax returns and, therefore, balance the relevant interests before permitting a party to discover the confidential income tax returns of another party. See, e.g., Raba v. Suozzi, No. CV-06-1109 (E.D.N.Y. Jan. 9, 2007) (Tomlinson, Mag. J.) (prohibiting discovery of plaintiffs' tax returns due to policy of maintaining confidentiality of tax returns); Malanka v. Data Gen. Corp., No. 85-2154, 1986 WL 541, at *2-*3 & n.18 (D. Mass. July 2, 1986) (defendant in securities class action litigation could not discover the class representative's income tax returns due to the public policy against disclosure of tax returns).

"[t]he confidentiality of tax information may also be preserved in civil proceedings through protective orders." Id. at 897.

In Mi-Jack Products, Inc. v. Eidal International Sales Corp., 1992 U.S. Dist. LEXIS 14362, Civil No. 91-348-FR (D. Ore. 1992), the plaintiff was concerned about providing its tax returns to the defendant. Recognizing that "[t]here is a public policy against unnecessary public disclosure of income tax returns," the court preserved the confidentiality of the tax returns by directing the parties to enter into an appropriate order. Id. (citing Stokwitz); see also EGH, Inc. v. Blue Cross and Blue Shield of Oregon, 1991 U.S. Dist. LEXIS 13965, Civil No. 90-1210-FR (D. Ore. 1991) (same; citing Stokwitz).

Likewise, in Shearson Lehman Hutton, Inc. v. Lambros, 135 F.R.D. 195 (M.D. Fl. 1990), which involved a claim by an employer against two former employees and a counterclaim by those employees, the Court found that, while the employees' tax returns were relevant to their counterclaim, a protective order was warranted to protect the defendants' tax returns from disclosure to third-parties because of the "confidential[] and the generally private nature of tax returns." 135 F.R.D. at 198.

In Sendi v. Prudential-Bache Securities, 100 F.R.D. 21, 23-24 (1983), defendants sought to compel plaintiffs to produce their income tax returns. To protect the privacy and confidentiality of the tax returns, the court issued a protective order, directing that the tax returns should be filed under seal; that the tax returns and return information should not be utilized except in that litigation; and, even then, any tax returns and return information reflected in pleadings or memoranda in the case must be kept under seal.

Similarly, in Weiner v. Bache Halsey Stuart, Inc., 76 F.R.D. 624 (S.D. Fl. 1977), plaintiff bondholders sued their securities broker. The broker sought to discover, among other things, the plaintiffs' personal tax returns, and the court directed plaintiffs to comply. However, the Court

agreed with the plaintiffs' request that their tax returns "be kept under seal and not be made public except by court order.". 76 F.R.D. at 627.

Finally, in <u>Beresford v. United States</u>, 123 F.R.D. 232 (E.D. Michigan 1988), the IRS had relied on internal data and on third party tax return information to increase the value of stock held by an estate and, thereby, increase the taxpayer's estate tax liability.  When the taxpayer sought to obtain that information from the IRS, the IRS contended that section 6103 prohibited the disclosure of that return information.  Notwithstanding the confidentiality rules of section 6103, the court determined that, since the IRS had used that information to increase the taxpayer's estate tax liability, notions of fairness required the IRS to release the data to the taxpayer, but that such disclosure could be "made under a protective order limiting the disclosure for the purposes of th[at] litigation." <u>Id.</u> at 235.  The court noted further that "[a]ny use of the information at trial could be made in redacted form to code the identity of other taxpayers." <u>Id.</u>

Based on the foregoing, this Court should exercise its discretion to enter the Proposed Superseding Protective Order because the non-parties' compelling interest in protecting their tax returns and "return information" from public disclosure -- especially when, as non-parties, they never sought to invoke the jurisdiction of this Court in this civil tax litigation -- substantially outweighs the United States' opposition to the issuance of that protective order.

Based on the foregoing, BDO requests that the Court enter the Proposed Superseding Protective Order so as to protect the confidentiality of the tax returns and return information of fourth parties which is being sought in this case by counsel for the United States.

## CONCLUSION

For the foregoing reasons, BDO respectfully requests that the Court: grant BDO's Motion for Entry of a Superseding Protective Order; enter the form of the Proposed Superseding Protective Order annexed to this motion; and grant any further relief that the Court deems necessary.

Dated this 6th day of February, 2007.

Respectfully submitted,

/s/ Ellis L. Reemer
Ellis L. Reemer
Admitted Pro Hac Vice
DLA PIPER US LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-335-4500
Facsimile: 212-335-4501
Email: ellis.reemer@dlapiper.com

/s/ Diana L. Erbsen
Diana L. Erbsen
Admitted Pro Hac Vice
DLA PIPER US LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-335-4500
Facsimile: 212-335-4501
Email: diana.erbsen@dlapiper.com

/s/ Frank J. Jackson
Frank J. Jackson
BBO No. 642123
DLA PIPER US LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-335-4500
Facsimile: 212-335-4501
Email: frank.jackson@dlapiper.com

*Attorneys for BDO Seidman, LLP*