UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

Civil Nos. 05-40151-FDS (D. Mass.)
        06-40130-FDS (D. Mass.)

Judge Saylor

**UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO BDO SEIDMAN'S MOTION FOR ENTRY OF A SUPERSEDING PROTECTIVE ORDER**

    The superseding order would severely hamper discovery, prevent evidence presentation, and eliminate the public's right to access.  Furthermore, BDO Seidman lacks standing to move for a superseding order, lacking any legally recognizable interest in the outcome of the dispute.

    The superseding order sought by BDO Seidman, though termed a "protective order," would be no less than a secrecy order.  That secrecy order would allow the parties to have the tax returns, but would effectively prevent them from using highly-relevant information on the tax returns as evidence in this case.[1]  The parties would be forbidden from using any tax return as an exhibit in a deposition.  Even after the deposition, the pages of the transcript containing the mere mention of a covered tax return would be brought under the umbrella of the secrecy order. Similarly, other discovery documents, including requests for admission, interrogatories, and

---

[1] The United States notes that BDO's proposed definition of "Tax Returns," found at the bottom of page 5 of its Memorandum, would make the proposed superseding order applicable to the tax returns, its attachments, and information contained therein only.  However, BDO requests that the Court enter the proposed superseding order to protect tax returns and "return information."  (BDO Mem. at 9, 13.)  "Return information" has a special meaning in the Internal Revenue Code.  It is a far broader category than is tax returns, and would greatly enlarge the scope of the already unacceptable order BDO seeks.

discovery motions, would be brought within the scope of secrecy. The parties would be prohibited from reading into evidence at trial any discovery request or response "concerning" tax returns. Even the Court's ability to mention the tax returns' status as evidence would be eliminated, as the superseding order would prevent the Court from disclosing as part of a Court order or memorandum any information found on the tax returns. The only breathing room provided in the proposed superseding order is an allowance for tax returns to be filed under seal. Even then, however, the viewing eyes are limited and bound to secrecy.

The burden on the party seeking such an extraordinary order is high, and BDO has fallen far short of meeting it. It is also far from clear who stands to benefit from BDO's proposed secrecy order– BDO or its tax-shelter clients. There is not even a hint in BDO's motion papers that its clients were notified of the subpoena or that the clients seek any "protection." That glaring absence should be considered in connection with two facts. First, the identities of at least 3 of the 6 suspected BDO tax-shelter clients are already public (*See, e.g., United States v. BDO Seidman, LLP*, 02-4822 (D. Ill.[2])(in which two of BDO's clients, the Gupta family and the Nussdorf family, intervened as parties (*U.S. v. BDO Seidman, LLP*, 2005 WL 742642, 95 A.F.T.R.2d 2005-1725, 2005-1 USTC P 50,264 (N.D.Ill. Mar 30, 2005), appeal pending); *Nathalie R. Cowan and David J. Cowan v. BDO Seidman, et al.*, A107681 (Cal. App.))[3] Second, as just noted, BDO is in litigation against at least one (Cowan) and perhaps more of the clients it purports here to try to protect.

---

[2]This was an action brought by the United States to enforce summonses served by the Internal Revenue Service on BDO for its involvement in the development, marketing, and implementation of abusive tax shelters.

[3]This is an action brought by BDO's clients against it for fraud, breach of fiduciary duty, and various other tortious acts in connection with its design, marketing and implementation of tax shelters.

**FACTUAL BACKGROUND**

A.  **BDO Seidman Was Heavily Involved in the Design and Marketing of the SOS and FDIS Tax Shelters.**

BDO was involved in the design of the Financial Derivatives Investments Strategy tax shelter, which was a successor to, and a closely related subset of, the Short-Option Strategy tax shelter. After some promoters stopped or curtailed marketing the Short-Option Strategy ("SOS") tax shelter in the wake of the issuance of IRS Notice 2000-44,[4] they became "desperate for new product."[5] The Diversified Group Inc. ("DGI"), a boutique tax-shelter operator, responded to this "product-scarcity," and in early 2001 began to circulate design and marketing materials for the Financial Derivatives Investment Strategy ("FDIS"). DGI circulated its draft FDIS design and marketing materials to various law firms and accounting firms for the purpose of seeking those firms' design and marketing input. Those firms included BDO Seidman.[6] BDO documents reflect that BDO wanted to see more of an "Investment Story" in order to disguise the transaction.[7] BDO also wanted its fees structured in such a way as to create the "appearance"

---

[4] *See* KPMG e-mail dated August 15, 2000 (filed as Govt. Ex. 5 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[5] Ivan Ross of Alpha had previously reported to Jimmy Haber of DGI that the accounting firm of BDO still considered itself a marketing channel for tax shelters and that it was desperate for new product. *See* Ivan Ross e-mail re BDO dated August 23, 2000 (filed as Govt. Ex. 7 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[6] As noted above, the involvement of BDO in the development, marketing, and implementation of abusive tax shelters has already been the subject of litigation in a summons enforcement action by the United States against the firm. *See United States v. BDO Seidman, LLP*, Case No. 02-4822 (N.D.Ill.). The BDO Bates-stamped documents attached hereto were filed as exhibits in that action. *See* FDIS PowerPoint presentation produced by BDO in response to IRS summons and filed therein (filed as Govt. Ex. 8 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[7] *See* BDO handwritten notes dated April 5, 2001 (filed as Govt. Ex. 12 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19); BDO e-mail chain dated April 26, 2001 through April 29, 2001 (filed as Govt. Exs. 14-16 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

that BDO was providing tax advice and that the legal opinions were "independent."[8] By e-mail dated April 17, 2001, BDO internally circulated an outline of the FDIS transaction for marketing approval.[9] By e-mail dated May 21, 2001, both Robert Greisman and Michael Kerekes of BDO circulated their comments on the draft opinion for the FDIS tax shelter, to which it received a response just over a week later.[10] About one month later, BDO received a contact list for the other FDIS promoters and "advisors."[11] BDO documents also reflect that it contributed to the wording of the FDIS marketing materials, and that it marketed at least three FDIS transactions.[12]

**B.    The Tax Returns Are Already Covered by a Protective Order, Local Rules, Local CM/ECF Administrative Procedures, U.S. Treasury Department Policy on Disclosure of Third Party Tax Information in Tax Shelter Matters, Relevancy and Evidentiary Rules.**

The United States and BDO have already agreed to a protective order governing all

---

[8] *See* BDO handwritten notes dated April 5, 2001 (filed as Govt. Ex. 12 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19); BDO e-mail chain dated April 26, 2001 through April 29, 2001 (filed as Govt. Exs. 14-16 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[9] *See* BDO e-mail dated April 17, 2001 (filed as Govt. Ex. 13 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[10] *See* BDO e-mail and memorandum dated May 21, 2001 (filed as Govt. Ex. 17 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19); BDO Mem. dated May 21, 2001 (filed as Govt. Ex. 18 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19); Helios e-mail dated May 30, 2001 (filed as Govt. Ex. 19 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[11] *See* e-mail dated June 20, 2001 (filed as Govt. Ex. 20 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

[12] *See* BDO e-mail dated November 28, 2001 regarding Gupta transaction involving a $5 million investment to generate a $75 million capital loss and $25 million ordinary loss (filed as Govt. Ex. 21 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19); BDO e-mail dated November 30, 2001 regarding a transaction involving a $700,000 investment (investor name redacted) (filed as Govt. Ex. 22 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19); and BDO e-mail dated December 4, regarding a transaction involving a $3 million investment (investor name redacted) to generate a $30 million loss ($20 million in 2001 and $10 million in 2002) (filed as Govt. Ex. 23 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19).

documents, including tax returns, subject to subpoena. The protective order restricts disclosure during the discovery phase of the case, ensures that persons entitled to receive and in receipt of protected information are aware of the protective order, and provides for the plaintiff's return of protected information at the conclusion of the litigation.

There are additional protections found in the Local Rules. Under the Local Rules, redaction of certain personal information from all filed documents is required. Specifically, the filing party must remove from any filing the following identifiers: Social Security numbers, names of minor children, dates of birth, and financial account numbers. L.R. 5.3.

The protections found in the Local Rules are expanded in the CM/ECF Administrative Procedures. Under those Procedures, the filer must remove those items required to be removed under the Local Rules, and also must remove home addresses. Furthermore, with respect to exhibits electronically filed, the filer may, without leave, submit "only those excerpts of the referenced documents that are directly germane to the matter under consideration by the court." (Admin. Proc. Part L.) As such, irrelevant personal data found in an irrelevant section of a tax return would not, without leave, be filed with the Court.

Even beyond the Stipulated Protective Order and the Local Rules and Procedures, the United States informed BDO of its policy to unilaterally protect third-party tax information. The United States informed BDO that it would endeavor to follow the Treasury Department's guidance on the "Disclosure of Third Party Tax Information in Tax Shelter Matters," (Notice 2006-003)[13], so long as the treatment does not impair trial presentation or contravene a Court order or ruling. Notice 2006-003, published by the Internal Revenue Service's Office of Chief Counsel, relates to "Disclosure of Third Party Tax Information in Tax Shelter Matters." The

---

[13] Filed as Govt. Ex. 28 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19.

Notice emphasizes that evidence of the promotion and implementation of the same or substantially similar tax-shelter transactions to third-parties may be relevant to the resolution of issues in the taxpayer's litigation. The Notice states that such pattern evidence, including third-party tax returns and return information, may therefore be disclosed in judicial or administrative tax proceedings under several exemptions to Section 6103(a) of the Internal Revenue Code.[14]

The Notice, in turn, suggests certain guidelines for the use of such personal information in these proceedings. The Notice states that "Consideration should be given to other methods of proof that do not require disclosure of third party tax information, such as summaries or compilations." Notice 2006-003 also states that "In general, public identification of specific taxpayers should be avoided, except when it is determined to be necessary to the matter before the court." The United States again avers that it will endeavor in this case to follow this general guidance of avoidance of identification of specific taxpayers to the extent it does not impair its trial presentation, and except where the Court rules that unredacted tax return information of other taxpayers should be presented into evidence. It will also, of course, be bound by the applicable standards of relevance and other evidentiary standards.

## ARGUMENT

**BDO IS NOT ENTITLED TO ADDITIONAL "PROTECTION," AND ITS MOTION FOR A SUPERSEDING PROTECTIVE ORDER SHOULD BE DENIED**

**A.    BDO Lacks Standing to Move for a Superseding Protective Order.**

As an initial matter, BDO did not follow the correct course to challenge the stipulated protective order and seek a superseding order. It's error here is fatal. The correct course to

---

[14]As discussed *infra*, Section 6103(a) only prevents disclosure of tax returns and return information by the United States. That statute has no applicability to tax returns or return information in the hands of non-Governmental persons.

6

challenge a protective order entered by a court is to first move to intervene under Federal Rule of Civil Procedure 24(b) ("Rule 24(b)"). *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-85. (1st Cir. 1988) (Intervention is the procedurally correct course for third-party challenges to protective orders). Absent a showing that failure to comply with Rule 24 would be unduly onerous or ineffectual, the First Circuit has made clear that it is not willing to create a special category of non-Rule 24 intervention for third parties who wish to challenge protective orders through informal motion. *Id* at 784.

Where a non-party has failed to strictly comply with the formal requirements of Rule 24, such an error has at times been deemed nonfatal. *Id* at 784. But no countervailing circumstances exist here. BDO did not seek, either formally or informally, intervenor status. Instead, its counsel simply filed notices of appearance and motions for leave to appear *pro hac vice*. (DI#s 36-38, 55.) Moreover, unlike its motion for entry of the stipulated protective order, BDO has no recognizable interest in the outcome with respect to this motion to modify the terms of that protective order. The protective order, now formally entered by the Court, applies to all parties in this case. Only a party can seek to modify that order.

**B.     BDO Had Failed to Show it Has Standing Under Rule 26(c).**

Furthermore, Rule 26(c) has no applicability here. To begin with, BDO is not simply seeking a protective order. It is seeking to modify the terms of a current protective order. As noted, absent intervention, it may not do so. In any event, Rule 26(c) only applies to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c). "The party requesting a protective order must initially show that the information sought to be protected is within the scope of Rule 26(c) and that **he might be harmed by its disclosure**." *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 954 (8th Cir. 1979) (emphasis added) (citing

7

8 C. Wright & Miller, Federal Practice and Procedure, § 2043 at 300-01 (1970)). Here, BDO makes no allegation that *it* would be harmed by disclosure of its clients' records. While it pretends to be arguing to protect the rights of its clients, it does not state that it is doing so on their behalf. Of course, it would be hard-pressed to do so while it is being sued by at least one of them,[15] and likely more.

BDO also does not allege that it contacted the "six taxpayers," whose tax returns are subject to the subpoena.[16] This again is almost certainly because it is involved in litigation with one or more of those "six taxpayers." At least with respect to what is likely one of the six unnamed taxpayers, David Cowan, the litigation against BDO relates to BDO's involvement in the promotion of tax shelters entered into by Mr. Cowan while Mr. Cowan was a BDO client. Cowan is also on the list of six surnames the United States provided BDO on December 1, 2006. That list was captioned "BDO Clients who Participated in FDIS."

While pretending to act in the interests of its "six" clients, BDO has failed to intervene, has failed to notify them, has not alleged to be acting on their behalf, is in litigation against at least one of them, and may be acting against their interests.[17] Accordingly, it cannot invoke Rule

---

[15] *See Nathalie R. Cowan and David J. Cowan v. BDO Seidman, et al.*, A107681 (Cal. App.).

[16] According to BDO, "As limited by agreement, the Subpoena will require production of Tax Returns for approximately six taxpayers." (BDO Mem. at 5.)

[17] BDO's interests here may run counter to its clients' interests. It seems to be in BDO's interests to prevent its tax-shelter clients, like the Cowans, from knowing the full extent of its marketing and implementation of the FDIS tax-shelter product. The tax returns at issue here contain a wealth of information about BDO's involvement. They likely show that the FDIS tax shelter was designed, implemented, and reported identically for each of BDO's clients to whom it marketed the shelter. Such information could assist the Cowans in their lawsuit filed against BDO, and could assist other claimants and potential claimants, including the others whose tax returns BDO seeks to "protect" here.

8

26(c) on their behalf.[18]

Similarly, BDO cannot seek relief under Federal Rule of Civil Procedure 45(c) ("Rule 45(c)") on behalf of its "six" clients. BDO does not allege that its production would be unduly burdensome or harmful to BDO, and it could not do so in good faith while discussing only the "production of Tax Returns for approximately six taxpayers." (BDO Mem. at 5.) Instead, it claims, albeit without any factual support, that its production in the absence of a superseding order "would impose a severe burden on" and would result in "economic harm" to its clients. (BDO Mem. at 11.) Here again, BDO purports to represent the interests of others, but lacks any legally recognizable interest itself.[19]

## C. BDO Has Failed to Justify Its Need for Additional Protection Under Rules 26(c) and 45(c).

BDO has failed to allege any facts relating to **this case** that would support its motion for additional protection beyond that provided in the stipulated protective order. As BDO acknowledges, there must be "good cause" for the issuance of a protective order. (BDO Mem. at 8.) That good cause must be shown by the moving party– here, BDO. Fed.R.Civ.P. 26(c);

---

[18]It appears that BDO's entire argument relating specifically to harm to the taxpayers at issue here is contained in two short paragraphs beginning on page 10 of BDO's memorandum. In those two paragraphs, BDO makes the conclusory statement that "public disclosure" (which ignores the substantial protections already in place to prevent public disclosure) "would result in immeasurable harm to the persons and entities whose returns are disclosed." (BDO Mem. at 10.) BDO fails in those paragraphs even to mention the specific six sets of its clients' tax returns at issue here. It certainly could have done so using initials or numbers (e.g., Client #1, etc.). BDO's failure to mention a single specific fact with respect to those six clients is likely because it is using others as a proxy for argument of its own interest.

[19]BDO did not allege that the tax returns contain information privileged under 26 U.S.C. § 7525. While it might have at least had standing to make such an argument, it would have failed on the merits. Privileges relating to taxpayer communications do not apply to communications regarding tax shelters. 26 U.S.C. § 7525(b).

9

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988).  Furthermore, "[a] finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986).

BDO falls far short of particularly demonstrating potential harm.  In fact, it falls short of even alleging potential harm with any particularity.  As such, it is unclear exactly what potential harm BDO is alleging.  Without stating which of the potential harms it or its clients may face, BDO merely states that a court "retains broad discretion to protect a non-party under Rule 26(c) and Rule 45(c)(3)," and the "Court may invoke Rule 26 and Rule 45 to protect public disclosure of Tax Returns of non-party BDO's (sic) clients . . . ."  (BDO Mem. at 7.)  We are forced to deduce from that general statement BDO's allegations.

A court may grant a proper motion for a protective order under Rule 26(c) to protect a person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed.R.Civ.P. 26(c).  To the extent that BDO, through its general statements, alleges that failure to enter its proposed superseding order will result in a parade of horribles to include "identity theft" (BDO Mem. at 10) and "economic harm," (BDO Mem. at 11), it also appears to be invoking Rules 45(c)(3)(A)(iv) (alleging undue burden) and 45(c)(3)(B)(i) (alleging disclosure of trade secrets, etc.)

But BDO has made no "particular factual demonstration of potential harm" to itself or even to its clients, as demanded by the First Circuit.  *See Anderson v. Cryovac, Inc.*, at 8.  While required to make the particularized demonstration, BDO instead discusses the "nature" of all tax returns.  (BDO Mem. at 8.)  That nature, according to BDO, is to contain "some of the most private and confidential information relating to a person . . . ."  (BDO Mem at 8.)  Most of the

information then listed by BDO as inherently private is already protected by the stipulated protective order and the abundant rules and guidelines governing its production. Seemingly recognizing that fact, BDO makes the conclusory assertion – without support– of the insufficiency of the existing protections. (BDO Mem. at 9.) Such a blanket assertion fails to satisfy the standard of particularity required by the First Circuit.

**D.      Section 6103 Has No Applicability Here.**

BDO's lengthy discussion of 26 U.S.C. § 6103– even with its caveat that 6103 might "not by its terms specifically limit disclosure of Tax Returns to the parties"– suggests that BDO wishes to assert privilege. Section 6103 has absolutely no applicability here. That statute generally prohibits the disclosure of "returns" or "return information" by officers or employees of the United States. BDO is not an officer or employee of the United States. Moreover, the statute only prohibits disclosure of documents constituting "returns" and "return information" which consist only of documents that are "filed with, received by, recorded by, prepared by, furnished to, or collected by" the IRS. 26 U.S.C. § 6103(b). BDO is obviously not a component of the IRS. Thus, documents in BDO's custody and control are clearly not "returns" or "return information" with the meaning of Section 6103(b). *See, e.g., Baskin v. United States*, 135 F.3d 338, 342 (5th Cir. 1998) ("The plain language of the statute reveals that 'return information' must be information which has somehow passed through, is directly from, or generated by the IRS."); *Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996) (". . . Section 6103 'protects only information filed with and disclosed by the IRS, not all information relating to any tax matter.'"); *Stokwitz v. United States*, 831 F.2d 893, 896 (9th Cir. 1987) ("the central fact evident from the legislative history, structure, and language of section 6103 (including the definitions of

'return and return information') [is] that the statute is concerned solely with the flow of tax data to, from, or through the IRS."). Furthermore, even if Section 6103 were somehow applicable, return information of tax-shelter participants may be disclosed in a judicial proceeding under the item-test exception in Section 6103(h)(4)(B). *See* Chief Counsel Notice CC-2006-003.[20] Under that exception, disclosure is permitted in judicial proceedings "if the treatment of an item reflected on such [third party's] return is directly related to the resolution of an issue in the proceeding." 26 U.S.C. § 6103(h)(4)(B). As the IRS recognizes in the Notice, nonparty taxpayer information may be disclosed if that taxpayer "participated in substantially similar transactions promoted by the same [tax-shelter] promoter" as the party, and if the information relates directly to the resolution of an issue in the proceeding.[21]

### E.   The Tax Returns are Highly Relevant.

The relevance of these tax returns is certain and unchallenged here. Each of the returns relates to the SOS and FDIS tax shelter at issue in this case. That relation is a certainty because

---

[20] Filed as Govt. Ex. 28 to Mem. in Opp. to Mot. to Quash KPMG Subpoena, DI# 19.

[21] Chief Counsel Notice CC-2006-003 at 2. The Notice gives an example of such a direct relationship which is relevant here. That example is as follows:

> Government argues that Investor A engaged in an abusive transaction for the sole purpose of tax avoidance. Investor A responds that the transaction was motivated by the non-tax purpose of portfolio diversification and was tailored to effect this specific purpose. The Government refutes Investor A's contention by showing that the transaction was not unique and that other taxpayers (Investors B, C, D, E and F) all participated in substantially similar transactions through the same promoter, all reported similar items of income, deduction and loss, and all claimed a similar non-tax purpose for entering into the transaction. The treatment of an item reflected on Investor B, C, D, E and F's returns is directly related to the resolution of an issue in Investor A's proceeding (whether the loss reported by Investor A arose from a transaction that was a sham in substance because it lacked independent economic substance or business purpose).

*Id.* at 2-3.

the subpoena to which they are responsive demands all tax returns "reporting any SOS and/or FDIS transaction . . . ." (Subpoena Att. at ¶ 67.) As has already been determined in this case, the tax treatment and tax-return information of other tax-shelter participants is relevant for purposes of discovery and may be considered by the Court. (*See* May 11, 2006 Tr. at 25-26; U.S. Opp. to Mot. to Quash KMPG Subpoena at 12-18.)

The motivation behind BDO's efforts to keep these tax returns secret under the guise of helping others may well be its efforts to avoid its own liability. We believe the tax returns of the tax-shelter participants will show that each participant reported similar items of income, deduction, and loss; took the same series of steps in consummating the tax shelter; realized no economic loss; and realized no economic profit– absent tax savings– in excess of the enormous fees on these transactions. Such similar reporting for different clients raises suspicion on BDO's own actions, which it does not wish to see the light of day.[22]

**F.      The Public Has a Right of Access to Court Documents.**

The courts have long upheld the public's right to access court records. Absent strong countervailing considerations, courts generally make case records available to the public. *Nixon v. Warner Communications, 435* U.S. 589, 597, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"). As this Court has noted, citing the First Circuit, there is a presumption that the public should have access to judicial records. (Dec. 13, 2006 Order)(*citing, Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)). Judicial

---

[22]It appears that BDO and DGI agreed to a 50/50 split of the fees for the tax-shelter transactions. They also agreed that BDO would bill the tax-shelter clients directly, and pay DGI from its own collection of the fees. To a single DGI bank account, BDO Solutions paid $5,941,500 during the seven-month period from October 2001 to May 2002.

records in this context include those records the Court uses to determine substantive rights– i.e., evidence.  *See, e.g., United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 189 (1st. Cir. 2003).  While the right of access is not absolute, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Gloval Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005)(*citing*, *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).  The proposed superseding order would require any tax return used as evidence to be filed under seal, depriving the public of its right of access.  In fact, it would even prohibit the Court from informing the public about the evidence it considered in making a ruling if any of the considered evidence was derived from a tax return.  Such a heightened level of secrecy is unwarranted.  BDO provides no facts to support a determination that there is any reason– much less a compelling one– to overcome the public's rights to know.

**G.     Tax-Shelter Participants Have No Expectation of Confidentiality**.

Congress has determined that tax-shelter participants are not entitled to confidentiality with respect to their participation in tax shelters.  Congress has at least thrice codified that determination.  Communications between tax practitioners, such as BDO, and their clients regarding tax shelters are specifically excluded from accountant-client confidentiality. 26 U.S.C. § 7525(b).  Sections 6111 and 6112 of the Internal Revenue Code require the organizer of a tax shelter to register the tax shelter with the IRS and maintain a list of investors. 26 U.S.C. §§ 6111, 6112.  Even Section 6103, which, as discussed at length, would not even cover the tax returns at issue here, would exclude from protection BDO's six clients' tax returns because the information of tax-shelter participants may be disclosed in a judicial proceeding under the item-test exception in Section 6103(h)(4)(B).

14

Despite its contrary arguments here, BDO is well aware that its clients had no reasonable expectation of privacy with respect to these tax returns and the information used to generate them. BDO is well aware of that because the Seventh Circuit said the following with respect to BDO clients' participation in tax shelters:

> Congress has determined that tax shelters are subject to special scrutiny, and anyone who organizes or sells an interest in tax shelters is required, pursuant to I.R.C. § 6112, to maintain a list identifying each person to whom such an interest was sold. This list-keeping provision precludes the [participants] from establishing an expectation of confidentiality in their communications with BDO. . . .

*United States v. BDO Seidman*, 337 F.3d 802, 812 (7th Cir. 2003). *See also, United States v. KPMG LLP*, 316 F. Supp. 2d 30 (D.D.C. 2004) (tax-shelter participants have no expectation of confidentiality with respect to their participation in potentially abusive tax shelters); *John Doe 1, John Doe 2 v. KPMG LLP*, U.S., C.A. No. 03-*37 cv-2036-H, 2004 WL 797719 (N.D.Tex. Apr. 12, 2004); *John Doe # 1* v. *Wachovia Corp.*, 268 F.Supp.2d 627 (W.D.N.C.2003).

## CONCLUSION

BDO lacks standing to assert the rights of others with respect to secrecy, or "protection." That is particularly so where it has failed even to ascertain those others' views on the secrecy, which may very well run counter to BDO's position. BDO also failed to allege a single fact that would entitle it to the superseding order it seeks. That superseding order would add draconian secrecy provisions to the stipulated protective order, local rules and procedures, policy considerations, and other protections already afforded. BDO's failures preclude as a matter of law its ability to overcome the public's right of access to documents that may be used as

15

evidence in this case. As such, BDO's motion for a superseding protective order must be denied.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

          /s/ Dennis M. Donohue
          DENNIS M. DONOHUE
          SENIOR LITIGATION COUNSEL
          OFFICE OF CIVIL LITIGATION
          Trial Attorney, Tax Division
          U.S. Department of Justice
          P.O. Box 403, Ben Franklin Station
          Washington, D.C.  20044
          Telephone: (202) 307-6492
          Facsimile: (202) 307-2504
          E-mail: dennis.donohue@usdoj.gov

          JOHN A. LINDQUIST
          BARRY E. REIFERSON
          HEATHER L. RICHTARCSIK
          Trial Attorneys, Tax Division
          U.S. Department of Justice
          P.O. Box 55, Ben Franklin Station
          Washington, D.C.  20044-0055
          Telephone: (202) 307-6542
          Facsimile:  (202) 514-5238
          E-mail: john.a.lindquist@usdoj.gov
                barry.e.reiferson@usdoj.gov
                heather.l.richtarcsik@usdoj.gov

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on February 20, 2007

/s/ Barry E. Reiferson
Trial Attorney
US Department of Justice, Tax Division