UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, ) ) ) | **LEAVE TO FILE GRANTED ON FEBRUARY 22, 2007** |
| ) | |
| Plaintiff,  ) | Case No.: 05-40151-FDS |
| ) | |
| v.  ) | Judge Saylor |
| ) | |
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Defendant.  ) | |

### BDO SEIDMAN LLP's REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF A SUPERSEDING PROTECTIVE ORDER

BDO Seidman, LLP ("BDO") hereby files its reply memorandum (as permitted by the Court on February 22, 2007) in further support of its Motion for Entry of a Superseding Protective Order (Docket Entries ## 57, 58).

BDO's motion sought the entry of a Protective Order regarding certain non-party tax returns (the "Tax Returns"). The proposed Protective Order would allow the parties full use of the Tax Returns in the discovery process. The restrictions contemplated by the proposed Order are entirely reasonable, requiring that the parties treat the Tax Returns as confidential in the discovery process, and, if the Tax Returns are filed with the Court, that they be filed under seal.

One would think that the Government would have no objection to protecting the privacy interests of non-party taxpayers, all of whom are individuals or trusts controlled by those individuals. This is particularly so given that the tax liability of these individuals is not at issue in this case, and the individuals (and BDO) had no direct or indirect involvement in any of the transactions that are the subject of this litigation. But Defendant has objected. Apparently, Defendant wants to have absolute discretion to place non-party tax returns in the record. The

Government has offered no justification for such an astonishing result. BDO's motion should be granted, and the Court should enter the proposed Superseding Protective Order in the form submitted by BDO to the Court.

I.  **THE TAX RETURNS ARE FULLY DESERVING OF PROTECTION**

In its main brief, BDO argued that it had demonstrated "good cause" for protection of the Tax Returns. BDO noted that it does not seek to prevent disclosure of the Tax Returns or impede their use in discovery; rather, the proposed Protective Order would merely require reasonable steps to prevent the Tax Returns from <u>public</u> disclosure. BDO cited half-a-dozen cases, from courts around the country, approving similar protective orders regarding tax returns. (BDO Br. at 11-13)

Defendant's opposition does not even *cite* any of BDO's cases, much less make an attempt to distinguish them. And Defendant has not cited a *single* case denying a party's request for confidential treatment of a tax return (much less when a non-party, such as BDO, requests such protection). This is perhaps not surprising. As stated in our main brief (at 11), BDO is not aware of any such case.

BDO is simply mystified as to why Defendant would insist on the right to force public disclosure of a non-party's tax return. As held by numerous courts, there is "a public policy against unnecessary public disclosure" of tax returns. *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74 (7th Cir. 1992) (collecting cases). It would appear from the wild charges Defendant lobs at non-party BDO that Defendant's agenda here is not the fair and speedy resolution of discovery issues, but rather to pursue an attack on BDO. Whatever Defendant's motive may be, non-party taxpayers should not be the victims.

## II. DEFENDANT MISREADS AND EXAGGERATES THE REASONABLE PROVISIONS OF THE PROPOSED ORDER

Defendant claims that the proposed Order is "extraordinary" and would "effectively prevent [the parties] from using highly-relevant information on the tax returns as evidence in this case." (Def. Br. at 1-2) Defendant is wrong. In fact, the proposed Order specifies that "Tax Returns may be used in any and all discovery proceedings in this case . . . ." (Proposed Order ¶ 2(a)) Defendant is able to reach its contrary conclusion only by misreading the terms of the proposed Order and exaggerating its scope.

Defendant first asserts that under the proposed Order, "[t]he parties would be forbidden from using any tax return as an exhibit in a deposition." (Def. Br. at 2) Defendant simply misreads the proposed Order, which does nothing of the kind. Rather, the proposed Order merely requires that the parties treat any such exhibit as confidential and subject to the terms of the proposed Order. (Proposed Order ¶ 2(a))

Defendant next talks darkly of the "umbrella of the secrecy order" which would require that "viewing eyes are limited and bound to secrecy." (Def. Br. at 2) But all that the proposed Order does is require that (1) the parties maintain the confidentiality of the Tax Returns (for example, by not disclosing them to persons other than counsel, witnesses and others involved in the case, and by marking documents containing information from the Tax Returns with appropriate legends indicating that they are confidential); and (2) any Tax Returns filed with the Court be filed under seal. There is nothing extraordinary about such provisions. To the contrary, without them, there would be no mechanism for protecting the confidentiality of the Tax Returns, and Defendant could destroy that confidentiality simply by using them as exhibits to public filings in this case (except as limited by local rule), making them available for the world to see on the Internet.

3

Finally, Defendant claims that "[t]he parties would be prohibited from reading into evidence at trial any discovery request or response 'concerning' tax returns." (Def. Br. at 2) This is a straw man as the proposed Order contains no such prohibition. Rather, it provides: "If either Party intends to introduce a Tax Return at trial, BDO will be notified not later than the date that exhibit lists are exchanged between the Parties so as to permit BDO and/or the affected taxpayers to move the Court for an additional protective order." (Proposed Order ¶ 2(a)) This provision does not prevent the use of Tax Returns at trial, but rather defers the question of such use to a later date. This is eminently reasonable, particularly given that the close of discovery in this matter is not until September of this year. By the time the parties exchange trial exhibit lists, the posture of this case and the facts at issue could be very different, and this Court will have a much clearer picture of what evidence the parties need to establish their claims and defenses. And of course, this Court may never even have to reach the issue if the parties decide that they do not need to introduce non-parties' Tax Returns or if this litigation has been resolved by motion practice or settlement. But in any event, there is no basis in the proposed Order for Defendant to imply that the issue of use at trial has already been decided.

## III.    BDO HAS STANDING TO BRING ITS MOTION

Defendant's most absurd argument is that BDO somehow lacks the "standing" to bring its motion. Defendant cites case law holding that a non-party seeking to modify a protective order – generally an entity, such as a public interest group, trying to gain access to confidential documents – must first seek leave to intervene in the case. (Def. Br. at 6-7, *citing Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 783-85 (1st Cir. 1988)) But BDO is not a stranger to these proceedings: it has been brought within this Court's jurisdiction by reason of Defendant's own subpoena. BDO's "standing" here is provided by the interplay of Rules 26(c) and 45 of the Federal Rules of Civil Procedure, which explicitly grant a subpoenaed party the right to seek a

4

protective order, and give the Court broad discretion to enter appropriate discovery orders. (*See* cases cited in BDO Br. at 7.)

Defendant is able to make its contrary argument only by twisting the procedural record into a pretzel. Defendant argues that BDO must intervene because it is seeking to modify an existing protective order – the one entered by this Court on February 7, 2007. But that order was entered on BDO's own motion, with the *consent* of all parties, including Defendant. As set forth in BDO's motion, the parties and BDO had agreed to an appropriate protective order to govern all of BDO's document production, with the sole exception of the Tax Returns. So as not to delay the production of the bulk of BDO's documents, BDO and Defendant agreed to a two-step process: first, BDO would move for a protective order which would allow it to produce the documents as to which there was no dispute (most of which have in fact been produced), and then, BDO would file its motion for entry of a superseding protective order that would provide additional protection for Tax Returns. (*See* BDO Br. at 4) This process was the most efficient way to timely produce documents while presenting the only remaining, narrow dispute to this Court.

BDO did not engage in any procedural gamesmanship. To the contrary, BDO explained this process both in the original assented-to motion for a protective order, and in the recitation on this motion of counsels' "good faith" discussions. Indeed, as stated in that discussion, "[w]hile the United States opposes the relief sought herein, it *agrees with* the procedure adopted by BDO in bringing the dispute before the Court." (BDO Br. at 4) (emphasis added) Tellingly, Defendant's opposition on this motion nowhere challenges the accuracy of this statement. Nor did Defendant file any opposition to the original assented-to motion for a protective order, which clearly explained the process to be used. Thus, it is Defendant who is resorting to gamesmanship: it agreed to BDO's proposed procedure, allowed the process to play out, and

5

only now complains that BDO's motion for a superseding protective order is procedurally flawed. The cynicism reflected in the Government's actions is incredible.

Finally, Defendant challenges whether BDO can raise privacy concerns not of its own, but of its clients, the taxpayers. Of course, it was Defendant that chose to subpoena BDO rather than deal with the taxpayers directly. In any event, it is hardly unusual for a professional to seek protection for its client's interests and documents; for example, professionals such as lawyers are routinely allowed to object to the production of privileged materials. Here, BDO has contacted each of the taxpayers at issue and not one has told BDO that it wishes to waive the confidentiality of its Tax Return.[1] Accordingly, Defendant's standing argument must fail for this reason as well.

---

[1] This fact demolishes Defendant's scandalous charge that in seeking a reasonable level of confidentiality, BDO is "acting against [the] interests" of those persons whose Tax Returns it is endeavoring to protect. (Def. Br. at 8) Those non-parties are free to waive confidentiality. They have not done so.

**CONCLUSION**

For the foregoing reasons and those stated in its main brief, BDO respectfully requests that the Court grant BDO's Motion for Entry of a Superseding Protective Order, enter the form of Proposed Superseding Protective Order annexed to BDO's motion, and grant any further relief that the Court deems necessary.

Dated this 2nd day of March, 2007.

        Respectfully submitted,

        /s/ Ellis L. Reemer_____
        Ellis L. Reemer
        Admitted Pro Hac Vice
        DLA PIPER US LLP
        1251 Avenue of the Americas
        New York, NY 10020
        Telephone: 212-335-4500
        Facsimile: 212-335-4501
        Email: ellis.reemer@dlapiper.com

        /s/ Diana L. Erbsen_____
        Diana L. Erbsen
        Admitted Pro Hac Vice
        DLA PIPER US LLP
        1251 Avenue of the Americas
        New York, NY 10020
        Telephone: 212-335-4500
        Facsimile: 212-335-4501
        Email: diana.erbsen@dlapiper.com

        /s/ Frank J. Jackson_____
        Frank J. Jackson
        BBO No. 642123
        DLA PIPER US LLP
        1251 Avenue of the Americas
        New York, NY 10020
        Telephone: 212-335-4500
        Facsimile: 212-335-4501
        Email: frank.jackson@dlapiper.com

        *Attorneys for BDO Seidman, LLP*

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 2, 2007.

>/s/ Ellis L. Reemer
Ellis L. Reemer
Admitted Pro Hac Vice
DLA PIPER US LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-335-4500
Facsimile: 212-335-4501
Email: ellis.reemer@dlapiper.com