UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-40151 |
| | ) | |
| v. | ) | Judge Saylor |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE
TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

MICHAEL J. SULLIVAN
United States Attorney

DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. RICHTARCSIK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone: (202) 307-6561
Facsimile:  (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov
        barry.e.reiferson@usdoj.gov
        heather.l.richtarcsik@usdoj.gov

2349855.1

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    IN THIS CASE, PLAINTIFF SEEKS THE ALLEGED TAX
      BENEFITS OF AN ABUSIVE TAX SHELTER . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Nature of the Instant Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   THE UNITED STATES HAS PRODUCED VOLUMINOUS
      DOCUMENTS IN RESPONSE TO PLAINTIFF'S DISCOVERY
      REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Production of Documents from the IRS Administrative File . . . . . . . . . . 5

      B.    Production of Documents Obtained by Subpoena in this Case . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    PLAINTIFF'S REQUESTS FOR DOCUMENTS CONCERNING
      THE REASONS BEHIND THE FPAA ARE MOOT OR EXCEED
      THE SCOPE OF PERMITTED DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Plaintiff Misstates the Law in Support of its
            Assertion That the United States Failed to Properly
            Invoke the Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . 9

      B.    The Privilege Claims in Issue are Properly Supported . . . . . . . . . . . . . 11

      C.    The Integrity of the Audit Process is Not in Issue . . . . . . . . . . . . . . . . 14

II.   PLAINTIFF'S REQUESTS FOR INTERNAL, UNPUBLISHED
      IRS DOCUMENTS CANNOT LEAD TO ADMISSIBLE
      EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.    A "Reasonable Cause" Defense to Plaintiff's
            Liability for Penalties Cannot Support the
            Discovery Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          1.      Plaintiff and its Partners Could Not
Have Relied Upon Internal,
Unpublished IRS Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          2.      Internal, Unpublished IRS
Documents Will Not Determine the
Meaning of "Liability" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   B.      The Issue of Whether Treas. Reg. § 1.752-6 is Valid
Does Not Justify the Requested Discovery . . . . . . . . . . . . . . . . . . . . . . 22

   C.      Plaintiff's Discovery Requests are Overly Broad,
Vague and Burdensome . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.    PLAINTIFF'S REQUESTS FOR INTERNAL IRS DOCUMENTS
ON WHETHER KPMG WAS REQUIRED TO REGISTER ANY
TAX STRATEGY CANNOT LEAD TO ADMISSIBLE
EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.    PLAINTIFF'S REQUEST FOR INFORMATION AND
DOCUMENTS SUPPORT THE REPRESENTATIONS OF
GOVERNMENT COUNSEL TO THIS COURT IS MOOT . . . . . . . . . . . . . . 26

V.    PLAINTIFF'S REQUESTS FOR THE PRODUCTION OF
OTHER TAXPAYER INFORMATION FROM THE INTERNAL
REVENUE SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   A.      Section 6103(h)(4)(B) of the Internal Revenue Code
Prohibits Disclosure of Unrelated Third Party
Taxpayer's Returns and Return Information . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**Introduction**

Plaintiff's motion to compel is based on a series of fundamental misunderstandings – or misrepresentations – of the issues in this case, and the substantial discovery already conducted. It was also filed in violation of Local Rule 37.1 and the United States is separately filing a motion to strike.[1]

In addition to the thousands of IRS documents that the United States has already produced, the United States has also produced millions of pages of subpoenaed documents from third-parties.   What the plaintiff wants now, however, is not the documents that reflect the facts or support the United States' defenses – the United States has already produced those documents.  Instead, plaintiff seeks documents that reflect the views of individual IRS and Treasury Department employees – some of whom have not worked for the Government in over 15 years – on what the law was or should have been over the past 30-odd years.   For the reasons discussed in greater detail below, that is, quite simply, not the proper subject for fact discovery under FRCP 26.

Notwithstanding plaintiff's apparent desire to convert the case into some sort of administrative review process, this lawsuit is a *de novo* proceeding in which the Court will apply Code provisions enacted by Congress, regulations promulgated by the Treasury Department, and well-established case law to determine the correct tax treatment of the transactions at issue. Internal, unpublished discussions or writings of IRS employees cannot change this governing

---

[1]  Plaintiff's motion to compel was in violation of Local Rule 37.1(a) which requires that "counsel for each of the parties . . . confer in good faith to narrow the areas of disagreement to the greatest possible extent" before filing a motion to compel.  The rule further states that it is "the responsibility of counsel for the moving party to arrange for the conference."  Contrary to plaintiff's representations, it failed to confer, failed to arrange for a conference, and filed its motion while we were discussing a date and time for the conference.

law, nor should they even guide this Court's application of the law to the facts. Plaintiff's requests for such internal, deliberative materials constitute an irrelevant and wasteful diversion from the issues in this case, as well as an intrusion on applicable executive privileges.

Further, plaintiff seeks to compel production of the work product of the United States regarding its representations to this Court – namely that plaintiff's transaction is an economic sham. This portion of plaintiff's argument, besides being without merit, is also now moot insofar as the United States has recently filed a number of motions to compel which more than fully disclose the factual basis for its position. Moreover, the United States has now amended its discovery responses to reflect the information revealed in its filings.

Finally, plaintiff seeks to compel production of other taxpayer information within the possession of the IRS which plaintiff contends should be excepted from protection under 26 U.S.C. §6103. In light of the fact that plaintiff's counsel just represented to this Court on March 15, 2006, that plaintiff in fact has no interest in this other taxpayer information, plaintiff's motives in seeking this information appears suspect. Indeed, we believe that its real motive in seeking to compel this Section 6103 information is to prevent the United States from offering compelling evidence at trial of other taxpayers' participation in the same tax shelter as at issue here – *i.e.* pattern evidence, which evidence was produced by the various third party promoters and which evidence plaintiff is fully aware is highly relevant to multiple issues in this litigation.

Besides the fact the plaintiff's motives are, at very least, suspect, plaintiff's motion papers contain numerous misrepresentations.[2] There is no basis whatsoever to believe that any

---

[2] The least of these misrepresentations, which are detailed in our separate motion to strike, appear to be plaintiff's representation that it arranged a conference to confer prior to filing this action. Plaintiff did not. Following the deposition of Robert Prifti, which was held at the offices of plaintiff's counsel on February 27, 2007, plaintiff asked if counsel for the United States could meet with plaintiff to

of the transactional documents within the possession of the Internal Revenue Service have not already been produced to the plaintiff.  Proposed Outlines of Transaction were prepared by the promoters for each of these transactions.  These outlines have been produced by the promoters for each of the FDIS transactions, copies of which have been produced to plaintiff.  Closing Binders were prepared by the promoters for each of these transactions. These binders contain a collection of  the transactional documents related to the transaction.  Copies of these closing binders have already been produced to the plaintiff.   Factual representations appear to have been signed by each of the participants in these transactions, attesting, *inter alia*, that the transactions were not preplanned.  Most of these representation letters, which were prepared by the promoters, have already been produced to the plaintiff.   The Form 1065 U.S. Partnership Tax Returns reporting these transactions appear to have been prepared by the four accounting firms that co-promoted these transactions.  These tax returns are in the process of being subpoenaed and produced to the plaintiff.

## Background

### I.    IN THIS CASE, PLAINTIFF SEEKS THE ALLEGED TAX BENEFITS OF AN ABUSIVE TAX SHELTER

**A.    Nature of the Instant Lawsuit**

This case involves a tax shelter product purchased by Richard Egan in the fall of 2001 for the apparent purpose of generating a $150 million loss to off-set a nearly identical amount of ordinary income that Egan had realized earlier that same year for his exercise of stock options.

---

discuss a proposed motion to compel.  Counsel for plaintiffs were expressly told that Dennis Donohue, the United States' lead counsel, had to be present for any such conference and was not available that day because he was in Colorado.  Plaintiff filed this motion over the United States' objection without such a conference.  As detailed in our separate motion to strike, had plaintiffs followed Local Rule 37.1, both the United States and this Court might have avoided the unnecessary time and expense associated with addressing some aspects of plaintiff's discovery motion.

This transaction was effected through the purported partnership Fidelity International Currency Advisor A Fund, LLC.  Plaintiff is asking this Court to determine that this tax loss is justified.

The tax shelter in this litigation was developed and marketed by The Diversified Group Incorporated ("DGI") under the name "Financial Derivatives Investment Strategy" or "FDIS."[3] Egan purchased his FDIS tax shelter in 2001 through Helios, a marketing partner of DGI. Egan's FDIS tax shelter is but one of 58 FDIS tax shelters that were marketed and sold by DGI, either directly or through others in 2001 and 2002.  These 58 FDIS transactions generated over $1 billion in fraudulent tax losses.[4]

The United States believes that the Internal Revenue Code and well-established judicial doctrines interpreting the Code do not permit plaintiff to deliberately generate this claimed loss.

---

[3]  DGI referred to its initial design-iteration of FDIS as the "2001 Partnership Option Strategy." *See* DGI memo dated 3/23/01, marked as Govt. Ex. 10, Dkt. No. 68.

[4]  On March 5, 2007, the United States filed a motion to compel DGI, the lead promoter, to produce numerous documents related to its FDIS product.  These motion papers detail the development, marketing and implementation of the FDIS product, including the notable fact that the foreign partners in all of these partnership transactions were not only the same two individuals, but that the purported investments by these two foreign partners were in fact funded by the promoters.  Prior to the filing of the instant motion to compel, plaintiff's counsel was apprised of the fact that these motion papers were being filed, thereby making it clear that information disclosed in these papers by us was no longer covered by the work product privilege and that plaintiff's discovery request for such information could be resolved without the assistance of the Court. Copies of these motion papers were served upon plaintiff's counsel on March 5, 2007.  A copy of the memorandum in support of the United States' motion to compel DGI is attached to the Declaration of John Lindquist as Exhibit 1.  The declaration that was filed in support of the United States' motion was filed under seal, in the interest of privacy, but a copy of the declaration and all supporting documents were also served upon plaintiff's counsel.  A copy of this declaration is not being filed herewith, insofar as much of this same information is concurrently being filed with this Court in support of the United States' motion for issuance of letters rogatory.

II.     **THE UNITED STATES HAS PRODUCED VOLUMINOUS DOCUMENTS IN RESPONSE TO THE PLAINTIFF'S DISCOVERY REQUESTS.**

In its motion, plaintiff provides a misleading description of the discovery that has occurred in this case.  The United States has produced all the documents sought from it concerning the facts in dispute.  It has also produced all the documents its has obtained through third-party subpoenas.

### A.     Production of Documents from the IRS Administrative File

In its FRCP  26(a) initial disclosures, the United States first identified the documents from the IRS administrative file relating to this case that it believed would support its defenses in this case.  The United States also identified millions of third-party records within its possession potentially related to this transaction which had been produced to the United States in other matters which were not subject to 26 U.S.C. §6103.  These documents have been produced to plaintiff.

### B.     Production of Documents Obtained by Subpoena in this Case

Because the United States was not a participant in the transactions that comprised the tax shelter product at issue here, it did not generate any of the documents related to the design, development, marketing, implementation and reporting of the product.  These documents were generated by the taxpayer and the promoters.  In addition to requesting the taxpayer's documents, the United States has exhaustively subpoenaed the promoters to obtain the documents directly from the promoters.  This has included the core promoters, DGI, Helios, and Alpha.  It has included five law firms that co-promoted the FDIS product: Sidley Austin Brown & Wood; Proskauer Rose; Bryan Cave; Lord Bissel; and Brown Raysman.  It has included four accounting firms that co-promoted the product: KPMG; RSM McGladrey; BDO Seidman; and

2349855.1                              5

Grant Thornton.  It has also included the financial counterparty, Refco, and the financial institutions which the promoters used to transmit funds: Bank of Ireland; Bank of New York; Bank of America; HSBC; and Bank of Nova Scotia.  The United States has, in turn, produced all these documents to the plaintiff.

## ARGUMENT

I.     **PLAINTIFF'S REQUESTS FOR DOCUMENTS CONCERNING THE REASONS BEHIND THE FPAA ARE MOOT OR EXCEED THE SCOPE OF PERMITTED DISCOVERY**

The first part of plaintiff's motion to compel seeks documents responsive to Interrogatory No. 3 and Document Request No. 15.  (See Pltf's memo, pp. 7-13).  In sum, these requests ask that the United States identify all documents upon which the Commissioner relied on in his determination in the FPAA that "this case involves a transaction that is the same or substantially similar to a transaction described in Notice 2000-44" and to produce all such documents.

As detailed above, the United States has already produced all factual documents in the IRS administrative file concerning the underlying transactions.  These include thousands of pages of documents concerning plaintiff's Son of Boss transaction that the IRS originally obtained from the taxpayer and the tax shelter promoters.  Plaintiff's motion with regard to these specific documents is, therefore, moot.

At the same time it produced all these responsive documents, the United States objected to plaintiff's first set of discovery upon the ground that the information requested in Interrogatory No. 3 and Request for Production No. 15 was not only irrelevant, but protected under the governmental deliberative process privilege.[5]  It did so because this is a *de novo*

---

[5]  See Answer to Plaintiff's First Set of Interrogatories 1-14, at No. 3, a copy of which is attached to plaintiff's motion to compel marked as Exhibit A; Response to Plaintiff's Second Set of Requests for

proceeding, and plaintiff appeared to be requesting documents well beyond the factual

documents that the IRS had gathered concerning the underlying events and transactions.   We

also produced a privilege log identifying those documents within the plaintiff's IRS

administrative file which were not being produced.  In addition, the United States subsequently

produced a matrix identifying those documents produced which reference IRS Notice 2000-44.

In addition, in response to Plaintiff's request for production No. 16, the United States produced

"All records, documents, and materials concerning the issuance or interpretation of Notice

2000-44," except for those documents withheld upon a claim of privilege.

Plaintiff is not challenging the sufficiency of the United States' production and privilege

claims concerning the issuance or interpretation of Notice 2000-44.  Plaintiff is instead narrowly

focused solely upon the Commissioner's FPAA determination that "this case involves a

transaction that is the same or substantially similar to a transaction described in Notice 2000-44."

That is, plaintiff seeks not factual data  but information and documents as to the Commissioner's

own internal analyzes and conclusions as to this issue.  In so doing, plaintiff fundamentally

misunderstands the nature of the instant ligation.  In this case, the Court has jurisdiction to

"determine all partnership items of the partnership for the partnership taxable year to which the

notice of final partnership administrative adjustment relates." 26 U.S.C. § 6226(f).  The Court

does not "review" the IRS's determinations under the Administrative Procedures Act, 5 U.S.C. §

701, *et. seq.*

As a *de novo* proceeding, the conclusions or analyses of the IRS behind the issuance of

the FPAA are utterly irrelevant to this Court's independent determination of plaintiff's claims in

---

Production of Documents 6-30, at No. 15, a copy of which is attached to plaintiff's motion to compel as
Exhibit B.

this case. *See e.g., TIFD III-E Inc. v. United States*, 342 F.Supp. 94, 108 (D. Conn. 2004) (The

court is to review plaintiff's "tax liability *de novo*, ignoring the factual finding and legal analysis

of the Commissioner of Internal Revenue");[6] *In re G-1 Holdings, Inc.*, Civ. No. 02-03082

(WGB) (D.N.J. July 16, 2004); *Cook v. United States*, 46 Fed. Cl. 110, 113 (Fed. Cl. 2000)

("factual issues are tried *de novo* in this court, with no weight given to subsidiary factual finding

made by the Service in its internal administrative proceedings."); *Greenberg's Express, Inc. v.

Commissioner*, 62 T.C. 324, 328 (Tax Ct. 1974) (this "proceeding is *de novo;* our determination

as to a petitioner's tax liability must be based on the merits of the case and not any previous

record developed at the administrative level."); and *Revell, Inc. v. Riddell*, 273 F.2d 649, 658-59

(9th Cir. 1959). And, because this Court determines the facts and applicable law *de novo,*

discovery concerning the process behind the FPAA (other than production of the underlying

factual documents) could not possibly lead to admissible evidence. Not only would such

discovery exceed the scope of Rule 26(c), it would also be a wasteful and burdensome diversion.

For these reasons, courts have denied requests for discovery of the administrative process

leading to the issuance of a notice of deficiency or FPAA. *See e.g., Detroit Screwmatic Co. v.

United States*, 49 F.R.D. 77 (S.D. N.Y. 1970); *Flamingo Fishing Corp. v. United States*, 31 Fed.

Cl. 655 (Fed. Cl. 1994); *Garity v. United States,* 1980 WL 1765 (E.D. Mich. 1980); and

*Greenberg's Express, supra.* To the extent plaintiff seeks to compel such discovery here, this

Court should deny it as well.

Plaintiff's claim that they are entitled to discovery regarding the IRS's reasoning behind

the FPAA, purportedly so as to be able to anticipate potential IRS witnesses at trial, is also

---

[6]*Reversed on other grounds,* 459 F.3d 220 (Fed. Cir. 2006).

nonsensical.  The FPAA does not limit or determine the United States' defenses in this case, and

the United States can – and intends to – defend this case on all available grounds, not just those

that may have been set forth in the FPAA.  *See e.g.,* 26 U.S.C. 6226(f); Treas. Reg. §

301.6226(f)-1; *Fowler v. United States*, 2002 WL 1310286 (Fed. Cl. 2002); and *Cook*, 46 Fed.

Cl. at 114 - 15.  Accordingly, discovering the IRS's reasoning behind the FPAA would not

advance the plaintiff's proffered goal of discovering  "the identities of individuals at the IRS

who have information that bears on issues in this case or who may be witnesses in this case."

(Pltf's Mem., p.10).   No one at the IRS was involved in the design, development, marketing,

implementation or reporting of the transaction at issue.  No one at the IRS has personal

knowledge of the design, development, marketing, implementation or reporting of the

transaction.  IRS personnel only became involved in this matter after the tax returns filed by the

plaintiff had been picked up for audit.  The IRS' internal deliberations in this audit process are

not only privileged, but irrelevant to a *de novo* proceeding.

### A.    Plaintiff Misstates the Law in Support of its Assertion That the United States Failed to Properly Invoke the Deliberative Process Privilege

Plaintiff incorrectly cites *Pac. Gas & Elec*. v. *United States*, 70 Fed. Cl. 128, 134 (Fed.

Cir. 2006) for the proposition that the United States' claims of deliberative process privilege are

untimely because they were not properly supported at the time the United States served its

response.  (Pltf's Mem. p.11 and fn. 14).  Upon reconsideration, the Federal Circuit Court

substantially modified this decision.  *Pac. Gas & Elec*. v. *United States*, 71 Fed.Cl. 205 (June 21,

2006).  In so doing it expressly clarified that it had not held "that the government waived the

right to assert the deliberative process privilege by waiting until it responded to plaintiff's motion

to compel to execute affidavits in support of its assertion of the privilege." *Id*. at 208.  It

expressly recognized

> that there are authorities that have stated that the deliberative process privilege
> need not be formally invoked until after the opposing party files a motion to
> compel.  *See, e.g., In re Sealed Case,* 121 F.3d 729, 741 (D.C.Cir.1997);
> *Abramson v. United States,* 39 Fed.Cl. 290, 294 n. 3 (1997).

*Id* at 209, fn.3.  It further recognized

> that parties can "resolve [their disputes] consensually, without need for the
> [c]ourt's involvement," Recons.  Mot. at 13, and without need to resort to
> obtaining a formal affidavit to support all preliminary assertions of the
> deliberative process privilege.

*Id*. at 209.  Of course, the United States had proposed just such a procedure to plaintiff in this

case, first verbally and then formally.  In its motion papers plaintiff now represents, for the first

time, that it rejected the proposed procedure because it was still relying upon the Federal

Circuit's prior decision. [7]  (Plt's Mem. at fn.14).

        Moreover, insofar as plaintiff's discovery requests for internal IRS documents fall well

outside the scope of permissible fact discovery in this case, a formal claim of deliberative

process privilege is not required until it has first been determined that the requested documents

are in fact even relevant.  The court in *Freeman v. Seligson*, 405 F.2d 11326 (D.C. Cir. 1968),

described this practical two-step procedure, and its rationale as follows:

---

[7]  The preparation of a supporting declaration prior to the filing of plaintiff's motion would have
been extremely burdensome because of the tremendous breadth of plaintiff's discovery requests and also
because of plaintiff's refusal to identify, prior to the filing of its motion, that it planned to file a motion to
compel, or even disclose which documents were in issue.  On February 27, 2007, government counsel
again asked what, if any, documents were in issue and represented that a supporting declaration had now
been prepared by Margo Stevens, the Commissioner's delegate, with respect to almost all of privilege
logs which had been produced to plaintiff. Even then, plaintiff's counsel did not disclose that it planned to
file a motion to compel, much less identify the documents which it planned to move to compel, or that it
planned to treat this impromptu discussion as a settlement conference under Local Rule 37.1.  *See* U.S.
Motion to Strike being filed concurrently herewith.

> We agree, however, with the Secretary that matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance and good cause, and at least the rough dimensions of the Secretary's burden have been set.  This technique may, as to particular items, eliminate the 'showdown' on privilege.  Perhaps also the frequently, and in this case almost certain, laborious page-by-page examination which assertions of privilege will require, certainly of the Secretary and perhaps also of the court, may be avoided or curtailed.
>
> We are, however, on notice that privileges of certain types will be asserted, and it is evident that the rulings to be made could drastically affect the size and nature of any productions to be made.  We think that, in the circumstances of this case, we should lay down general guidelines in this regard, leaving determinations as to specific documents for such time as the issue develops precisely.

*Freeman,* 405 F.2d at 1338 - 39.  In light of plaintiff's extremely broad and, the United States believes, irrelevant document requests, this approach is particularly sensible and efficient here.

**B.     The Privilege Claims In Issue Are Properly Supported**

The deliberative process privilege, which is also known as the executive privilege, rests on a policy of affording reasonable security to the decision making process within a government agency.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  The Supreme Court has restricted the deliberative process privilege to materials that are both predecisional and deliberative.  *See EPA v. Mink*, 410 U.S. 73, 88 (1973).  In other words, to qualify for the privilege, a document must be (1) predecisional, that is, "antecedent to the adoption of agency policy," and (2) deliberative, that is, actually "related to the process by which policies are formulated."  *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995); *Providence Journal Company v. U.S. Dept. of the Army*, 981 F.2d 552, 557 (1st Cir. 1992).   It is well-recognized that the deliberative process privilege is not limited to formal rule making, but may also apply, as here, to the examination process.  *See Faiella v. IRS*, 2006 WL 2040130 (D.N.H. 2006).

Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decision making process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded. *See Sears, Roebuck*, 421 U.S. at 151-52; *Mink*, 410 U.S. at 88. In addition

> Even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic. The privilege "is a qualified one," *FTC v. Warner Communications Inc*., 742 F.2d 1156, 1161 (9th Cir.1984), and "is not absolute." *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n. 5 (D.C.Cir.1994). Thus, in determining whether to honor an assertion of the privilege, a court must weigh competing interests. *See id.*; *see also Developments*, *supra,* at 1621 (noting that courts asked to apply the privilege must engage in "ad hoc balancing of the evidentiary need against the harm that may result from disclosure").

*Texaco Puerto Rico, Inc., supra*, 60 F.3d at 885. Here, as set forth above, since none of the documents in issue are relevant, there are no competing interests to be balanced.

Attached hereto is the declaration of Margo Stevens, in which she, as the Commissioner's delegate, has formally asserted the claims of executive privilege on behalf of the Internal Revenue Service with respect to the identified documents which are the subject of this motion. The Declaration of Margo Stevens fully describes, properly asserts and explains the basis for her assertion of executive privilege as to each of the documents targeted in this section of plaintiff's motion to compel (Pltf's Mem. p. 8 and fn. 9). She states, in relevant part, as follows:

> Page 1IRS1154 – One page of handwritten notes, dated 04/08/04, authored by Debra Morrill, reflecting her opinion, as relayed to Michael M. Whalin, Partnership Technical Advisor, SBSE, Joseph P. Kennedy, Supervisory Revenue Agent, SBSE (Stoneham), and Philip P. Vinciguerra, Revenue Agent, SBSE (Worcester) as to the proper classification of the transaction as it would impact the ongoing examination of plaintiff. The Service asserts executive privilege for the entire document because it contains the author's views as to the proper

classification and approach to the examination of plaintiff, at a time when the examination was ongoing and before the issuance of the FPAA.

Page 1IRS1155 – One page of handwritten notes, dated 04/26/04, authored by Debra Morrill, reflecting her conversation with Veronica Miller, Tax Examining Technician, Memphis Campus. The notes memorialize their respective views of the proper classification of the transaction. The Service asserts executive privilege for the entire document because it contains the two employees' respective views as to the proper classification and approach to the examination of the plaintiff, at a time when the examination was ongoing and before the issuance of the FPAA.

Pages 1IRS1435-1IRS1439 – Two page checklist titled "Fidelity International Currency Advisor A Fund Notice 2000-44," pertaining to the tax year 2001 examination with an attachment of three pages of notes by William K. Conway, on the possible applicability of the section 6664 penalty to the transaction under examination. The Service asserts executive privilege for the entire document because it reflects the various indicia the Service considers in evaluating the applicability of the penalty, as well as the author's views as to the appropriateness of the application of this penalty to the involved transaction undergoing examination, including some assessment of risks associated with asserting the penalty. This checklist was completed during the examination of the plaintiff, prior to the issuance of the FPAA.

Page 1IRS1442 – One page of William K. Conway's workpapers on a form titled "Miscellaneous 2000-44 transaction: Lead Sheet for 2001" pertaining to Fidelity International Currency Advisor A Fund. Although it is undated, it appears to be early in the examination of the Form 1065 wherein Mr. Conway identified tentative issues and steps he believed needed to be taken. The Service asserts executive privilege for the entire document because it reflects certain facts developed to date, the additional factual and issue development that the case agent thought needed to be done, and Mr. Conway's views as to how to proceed with the examination of the plaintiff and the involved transaction, at a time when the examination was ongoing and prior to the issuance of the FPAA.

Pages 1IRS1471- 1IRS1473 – A three-page memorandum, dated 09/17/04 from Debra E. Morrill requesting advice from John Aletta. The Service asserts executive privilege for the entire document as it reflects the author's views as to those facts deemed pertinent from the development of the ongoing examination of plaintiff, which gave rise to a number of issues for which she sought legal advice and assistance, in order for Examination personnel to determine how to proceed with the examination of plaintiff, at a time before the issuance of the FPAA.

Pages 1IRS1489-1IRS1491 – Three pages, consisting of three emails, beginning with an 09/10/04 email from Debra E. Morrill to Cheryl R. Kiger, Case Coordinator (Son of Boss), LMSB, continuing with her response, dated 09/10/04, which was copied to Michael M. Whalin, James C. Fee, Associate Area Counsel, LMSB (Philadelphia), Katy l. Lin, attorney, LMSB (Detroit), and Jadie T. Woods, attorney, LMSB (Detroit), and which was then forwarded by Ms. Morrill to William K. Conway, Mark A. Corrigan, Lead Revenue Agent, Communications, Technology & Media, LMSB, and Peter D. Macintyre, on 09/13/04. The email string reflects the agent's identification of issues arising from the facts she had developed to date in plaintiff's examination and how other shelter cases may impact on the scope and direction of her examination, as well as the advice from counsel concerning "Son of Boss"-style transactions. The Service asserts executive privilege for the entire document because it contains a discussion among the respective authors of the fact patterns involved in, and strategies employed for examining, various shelters currently under investigation and how the Service is treating the transactions, at a time when the examination of plaintiff was ongoing and before issuance of the FPAA.

Pages 13IRS00548-13IRS00549 – Two pages of typewritten notes by William K. Conway, titled "Fidelity International Currency Advisor A Fund" pertaining to the tax year 2002 examination and the possible applicability of the section 6662 penalty to the transaction under examination. The Service asserts executive privilege for the entire document because it reflects the various indicia the Service considers in evaluating the applicability of various penalties; as well as the author's views as to the appropriateness of the application of penalties to the involved transaction undergoing examination, including some assessment of risks associated with asserting penalties. These notes were completed during the examination of the plaintiff, prior to the issuance of the FPAA.

(Declaration of Margo Stevens, at ¶¶b, c, z, bb, i, h, and aa).[8] As attested by Margo Stevens, these documents all involve internal IRS deliberations to which she has asserted a claim of executive privilege on behalf of the Internal Revenue Service.

Here, just as in *Faiella*, the affidavit submitted by the IRS is sufficient to demonstrate that "disclosure 'would expose [the IRS's] decision making process in such a way as to discourage candid discussion within the agency and thereby undermine [the IRS's] ability to

---

[8] As noted by Margo Stevens, the two remaining documents placed in issue by plaintiff, 1IRS1265-67 and 1IRS1268-70, are both duplicates of 1IRS1471-73, which is fully described in ¶i of her declaration.

perform its functions.'" *Faiella v. IRS*, 2006 WL 2040130 (D.N.H. 2006), *citing Providence Journal*, 981 F.2d at 562 (*quoting Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C.Cir.1998).

### C.    The Integrity of the Audit Process is Not in Issue

At bottom the deliberative process privilege is still "a discretionary one." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 582 (E.D.N.Y.1979).   In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of fact finding, and the public's interest in honest, effective government.   *See Warner Communications*, 742 F.2d at 1162. Consequently, "where the documents sought may shed light on alleged government malfeasance," the privilege is routinely denied. *Franklin,* 478 F.Supp. at 582; see also *Bank of Dearborn v. Saxon*, 244 F.Supp. 394, 401-03 (E.D.Mich.1965) ("the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process"), *aff'd*, 377 F.2d 496 (6th Cir.1967).   But plaintiff does not (and cannot) make an allegation of "Government malfeasance" here.   Instead it alleges that "Plaintiff was assured by two accounting firms that the transaction was not a listed transaction, as defined in the regulations accompanying 26 U.S.C. § 6011, and that it was not identified in any notices."   (Pltf's Mem. at p. 10).   This allegation makes abundantly clear that the integrity of the IRS' audit deliberations is not at issue in this case.

What is more, plaintiff's factual allegations as to what representations were made to it by these accounting firms are patently false or misleading.   On February 27, 2007, plaintiff took the deposition of Robert Prifti, a former KPMG employee involved in the preparation of plaintiff's tax returns.   In his deposition, Prifti testified that the taxpayer fired KPMG when it informed him

on or about August 28, 2002 that it would not sign his personal 2001 Form 1040 tax return

without a disclosure statement under Temp.Treas. Reg. § 6011-4T disclosing the transaction in

issue.

> 1    Q   Who was involved in reviewing the form
> 2    1040 that was filed by the Egans for the year 2001?
> 3    A   Tim Speiss and myself.
> 4    Q   You indicated this morning that you didn't
> 5    know whether or not the return that you reviewed
> 6    was, in fact, filed?
> 7    A   That's a correct statement.
> 8    Q   Did you ever have any understanding or
> 9    belief that it was not filed?
> 10   A   The reason for my comment is the return
> 11   that we gave the Egans contained disclosure of the
> 12   transaction.  KPMG's relationship was terminated
> 13   because of that disclosure.  So my sense is it's
> 14   possible that the return that was filed was not the
> 15   exact return KPMG signed, i.e., without disclosure.
> 16   Q   So were you the one who presented the
> 17   return to the Egans with this disclosure on it?
> 18   A   Tim Speiss did.
> 19   Q   Were you there at that time?
> 20   A   Yes, I was.

(Transcript of Prifti Dep., p. 101).[9]   Prifti further testified that the taxpayer not only fired KPMG

because of the proposed disclosure statement, but then requested that Tim Speiss of KPMG

"destroy this return and your file copies" and to "remove any record of Mr. Egan from his files."

This request, which was made in writing, is reproduced below:

---

[9]   A partial copy of the transcript of the Prifti deposition is attached to the Declaration of John
Lindquist, marked as Ex. 2.  A copy of the referenced disclosure statement was marked as part of Exhibit
48 and is attached to the Declaration of John Lindquist, marked as Ex. 3.  Also see Prifti Dep., at pp.119-
121.

CARRUTH ASSOCIATES LLC

FROM THE DESK OF
PAT SHEA

_8/28/02_
DATE

Tim –

As discussed please destroy
this return and your fib copies
Remove any records of Mr
Egan from your files

Thanks

Pat

(Prifti De. Ex. 47).[10]  Plaintiff then filed his personal return without KPMG's signature as a

preparer and without disclosing the transaction.  (Lindquist Declaration).  In light of this

testimony, and evidence, plaintiff is disingenuous, to say the least, in representing to this Court

that he had been "assured by two accounting firms that the transaction was not a listed

transaction, as defined in the regulations accompanying 26 U.S.C. § 6011, and that it was not

identified in any notices."  KPMG required a disclosure notice, and was fired because of it.  And

while plaintiff may wish he could have destroyed this evidence, he cannot.

For the foregoing reasons, plaintiff's motion to compel the production of these

documents should be denied.  The IRS' deliberations as to the proper classification of this

---

[10]  A copy of the written direction by Patrick Shea of Carruth Management, Egan's agent,
requesting Tim Speiss of KPMG to destroy any record of Egan's FDIS transaction was marked in Prifti's
Deposition  Ex. 47 and is attached to the Declaration of John Lindquist marked as Ex. 4.

transaction for purposes of preparing the FPAA satisfy both prongs of the deliberative process test. As properly, timely, and fully explained in the attached declaration of Margo Stevens, they are predecisional and deliberative. Moreover, insofar as the review of the FPAA is *de novo*, they are irrelevant to any issue in this case.

## II.    PLAINTIFF'S REQUESTS FOR INTERNAL, UNPUBLISHED IRS DOCUMENTS CANNOT LEAD TO ADMISSIBLE EVIDENCE

The second part of plaintiff's motion to compel seeks the production of documents responsive to its Document Request No. 21 (Pltf's mem. pp. 14-16). This expansive request seeks:

> Request No. 21: All pleadings, records, documents, and materials maintained by the IRS in connection with *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), including, but not limited to, all documents previously produced by the Government in any other proceeding concerning this subject.

At the outset, these requests are clearly overly broad, unduly burdensome and too vague to permit a definite response. In response the United States objected as follows:

> Response: The United States objects to this request as vague, ambiguous, and overly broad. Further, as explained in the general objections, the United States objects to this request to produce on the ground that the materials requested are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

Beyond these obvious problems with regard to vagueness and ambiguity, however, is the fact that this request cannot lead to admissible evidence relevant to issues in this case.[11]

---

[11]    On February 27, 2007, immediately following the deposition of Robert Prifti, defense counsel requested further clarification from counsel for plaintiff as to precisely what documents were being requested by plaintiff with respect to the *Helmer* litigation in plaintiff's Request for Production No. 21. In response, plaintiff's counsel verbally asserted that the government should produce copies of the filed pleadings and papers from the *Helmer* litigation. Plaintiff's counsel represented that they had attempted to obtain these litigation files directly from the Tax Court, but that the Tax Court no longer had any of its *Helmer* files. Defense counsel represented that defendant had also had not been able to locate these court files. These files no longer appear to exist insofar as the *Helmer* litigation is now over 30 years old and

Plaintiff claims the discovery is relevant to two issues. The first – the partnership's alleged "reasonable cause" defense to penalties. The second – the validity of Treas. Reg. §1.752-6 – in which the IRS expressly stated that it was no longer following *Helmer*. The validity of this regulation, however, will be decided according to the relevant Code provisions and case law, not the unpublished writings, or impromptu views, of current and former individual employees of the IRS and Treasury Department.

### A.    A "Reasonable Cause" Defense to Plaintiffs's Liability for Penalties Cannot Support the Discovery Requests

Relying upon a decision in the Court of Federal Claims case of *Jade Trading*, plaintiff claims that it has been held that this information is relevant to a "reasonable cause" defense to penalties because it could aid in determining the reasonableness of the position adopted by plaintiff on its tax return. (See Pltf's Mem., p.18) There are several problems with this alleged justification for the discovery.

### 1.    Plaintiff and Its Partners Could Not Have Relied Upon Internal, Unpublished IRS Documents

The principal problem with plaintiff's claim that a reasonable cause defense supports its discovery requests is that internal, unpublished documents created by IRS employees could not have been relied upon at all by plaintiff, or its partners. They could have relied only on information actually available to them – the Code, case law, Treasury Regulations and certain official interpretations published by the Treasury Department. *See* 26 U.S.C. § 7805; and Treas. Reg. § 601.601(d)(1), (d)(2)(iii) and (d)(2)(v)(e). If plaintiff wants to establish the interpretation of "liability" it relied upon (and that more recent interpretations are allegedly a change from this

the IRS records center only has a 25 year retention policy for litigation files. See Lindquist Declaration, ¶12.

interpretation), it can do so only through the Code, case law, regulations and official guidance of the IRS.  There is no, and could be no, claim that plaintiff reasonably relied upon unpublished IRS employee interpretations of the term "liability" as used in § 752 of the Code.

In fact, no opinions were issued to the partnership, and the opinion letters that were issued to Richard and Maureen Egan cite only Code provisions, Treasury Regulations, case law and published Revenue Rulings and IRS Notices.[12]  The partnership's alleged reliance on these opinion letters, in the context of the other factual circumstances surrounding their shelter transactions, is the only relevant focus for discovery relating to any alleged reasonable cause defense.  *See, e.g.*, Treas. Reg. § 1.6664-4(c).

### 2. Internal, Unpublished IRS Documents Will Not Determine the Meaning of "Liability"

The second basic problem with plaintiff's argument that a reasonable cause defense justifies discovery of internal documents of the IRS is that the court which considers this issue will not determine the meaning of "liability," as used in § 752 of the Code, by reference to any internal IRS documents.  To the extent any judicial interpretation of that statutory term is necessary, "internal administrative documents" are irrelevant.  *See Sidell v. Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000) (The "IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings.... Because these internal memoranda represent the personal views of the authors, not the official positions of the agency, they do not

---

[12] A purported legal opinion was issued to Richard Egan by the law firm of Sidley Austin dated March 8, 2002.  Richard Egan signed a representation letter to the law firm of Sidley Austin dated March 28, 2002.  A second purported opinion on the Egan FDIS transaction was issued to Richard Egan by the law firm of Proskauer Rose dated September 4, 2002.  Neither of these "opinions" represent that they are relying on internal, unpublished documents created by IRS employees.  Nor did Egan represent in his representation letter to Sidley Austin that he was relying on internal, unpublished documents created by IRS employees.  See Lindquist Declaration and Govt. Exs. 5-7 attached thereto.

figure in our decisional calculus."). *See also Deluxe Check Printers, Inc. v. United States*, 5 Cl.Ct. 498, 500 - 01 (Cl. Ct. 1984) (internal administrative documents have no bearing on the purpose of Congress in enacting statutory language). Instead, the court will look to the statute, legislative history (if necessary) and existing case law. *Id.*

Internal deliberative documents are also irrelevant to establish any interpretation that the IRS had given to the term "liability" in 2000, or previously. Before the Secretary of the Treasury promulgated new regulations under §752 in 2003, the IRS' interpretation of that term was contained only in revenue rulings. *See, e.g.*, *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434, 37435, ("There is no statutory or regulatory definition of liabilities for purposes of section 752.") Such published, official interpretations of the IRS cannot be contradicted or bolstered by internal documents authored by individual IRS employees. *See, e.g.,* Treas. Reg. §601.601(d)(2)(i)(a) ("A Revenue Ruling is an official interpretation by the Service that has been published in the Internal Revenue Bulletin. Revenue Rulings are issued only by the National Office and are published for the information and guidance of taxpayers, Internal Revenue Service officials and others concerned.); *United States v. American Telephone and Telegraph Co.,* 524 F.Supp. 1381, 1387 (D.D.C. 1981) ("Extrinsic evidence as to how and why the FCC reached its decisions and what it intended thereby – either by Commissioners speaking in their individual capacities or by employees of the FCC – are irrelevant to the question whether defendant's compliance was reasonable."); and *Deluxe Check Printers, Inc*., *supra.* For all the above reasons, plaintiff's requests for internal IRS documents cannot lead to admissible evidence supporting any purported reasonable cause defense.

**B.    The Issue of Whether Treas. Reg. §1.752-6 Is Valid Does Not Justify the Requested Discovery**

The plaintiff also appears to argue that the requested discovery is relevant to its claim that Treas. Reg. §1.752-6 (issued in 2003) is invalid if retroactively applied to its transactions in 2001.  According to plaintiff, a key factor in deciding this issue is whether the regulation changed "settled prior law or policy."  Plaintiff appears to claims that it needs the requested discovery to show what was the settled prior law or policy at the time of the transaction addressed by the FPAA. As noted above, internal deliberative IRS documents are not, and cannot be used as, evidence of the law, or the official, published guidance of the IRS.  The "settled" law, or policy of the IRS, can be established only through the Code, case law, regulations promulgated by the IRS and guidance and revenue rulings officially issued by the IRS.   The documents the plaintiff seeks here could show only what individual IRS employees may have thought about the law during their internal deliberations.  Those individual views are no more relevant to the resolution of this lawsuit than are the views of the hypothetical "man in the street."

Of course, the 2003 regulations expressly define "liability," and describe the proper tax treatment of a partnership's assumption of liabilities.  *See* Treas. Reg. §§ 1.752-1 and 1.752-6; and *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434 (June 24, 2003).  There is no claim that these regulations are ambiguous.  Nor could there be – they clearly address the situation presented here (the purported contribution of foreign currency options to plaintiff by its partners), and disallow the tax treatment claimed by plaintiff.  *See, e.g.*, Treas. Reg. § 1.752-6(c); and *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434, 37436 (June 24, 2003).  In fact, plaintiff's only claim regarding this regulation is that it is invalid if applied to transactions in

2001.  The Court must decide this issue of validity, however, without recourse to or

consideration of any internal deliberative IRS documents.  *See Deluxe Check Printers, Inc.,*

*supra*; and *Furman v. United States*, 1983 WL 1687 (D.S.C. 1983) (the issue of invalidity is "one

which this Court must decide based on legal authorities.")  Accordingly, plaintiff's discovery

requests seek documents beyond the scope of Rule 26(c).[13]

### C.    Plaintiff's Requests Are Overly Broad, Vague and Burdensome

In addition to not meeting the required threshold of leading to the discovery of admissible

evidence, plaintiff's requests for internal IRS documents are overly broad, vague and

burdensome.  Considering the fact that the underlying information is not even close to being

tangentially relevant, and cannot lead to the discovery of any admissible evidence, the Court

should not permit such broad and burdensome discovery.  *See,* FRCP 26(b)(2).  If the Court

determines, however, that the plaintiff is entitled to some internal IRS file, the United States asks

the Court to limit severely the scope of that discovery, or order plaintiff to narrow its discovery

requests.  In addition, the United States requests an opportunity to review any such documents

for purposes of determining whether the documents are privileged and to assert that privilege.[14]

---

[13]  Plaintiff's citation of *Klamath Strategic Investment Fund LLC v. United States* does not
support its discovery requests.  The factors listed by that court as relevant to its determination of whether
Treas. Reg. § 1.752-6 could be retroactively applied do not include the internal views of IRS employees.
*See Klamath*, 440 F.Supp. 608, 623 (E.D.Tex. 2006).  The United States also disagrees with the ruling in
*Klamath* striking down the regulation as applied to those plaintiffs.

[14]  For all the reasons above, the United States disagrees with the discovery rulings of the Court
of Federal Claims allowing such discovery in *Marriott International Resorts, L.P. v. United States*, 61
Fed.Cl. 411 (2004), *rev'd in part*, 437 F.3d 1302 (Fed. Cir. 2006), and *Jade Trading L.L.C. v. United
States*, 65 Fed. Cl. 487 (2005), cited by plaintiff.  To begin with, the continuing vitality of these rulings is
questionable given the subsequent reversal of a key aspect of the *Marriott International* discovery ruling.
In fact, two recent orders by other judges on the Court of Federal Claims have denied similar discovery in
the cases of *Evergreen Trading, LLC v. United States*, ( No. 06-123, Fed. Cl.) and *Stobie Creek
Investments, LLC v. United States*, (05-748 T, Fed. Cl.).  *Evergreen* involves a 2000 tax shelter
transaction purchased by the Nussdorfs through the accounting firm of BDO Seidman, LLP.  *Stobie Creek*
also involves a 2000 tax shelter transaction.  Like Egan, the plaintiffs in *Evergreen* and *Stobie Creek* have

### III.   PLAINTIFF'S REQUEST FOR INTERNAL IRS DOCUMENTS ON WHETHER KPMG WAS REQUIRED TO REGISTER ANY TAX STRATEGY CANNOT LEAD TO ADMISSIBLE EVIDENCE

The third part of plaintiff's motion to compel seeks the production of documents

responsive to its Document Requests Nos. 31 and 32 (Pltf's mem. pp. 17-24).  These expansive

requests seek:

> Request for Production No. 31: All communications, records, documents, and materials, whether generated by the IRS or by third parties at the request of the IRS, concerning whether KPMG was required to register any Tax Strategy, including but not limited to the e-mail dated May 17, 2004 from Roland Barral to Deborah Nolan and Cono Namorato that is described in The New York Times article dated September 15, 2006, a copy of which is attached for reference.
>
> Request for Production No. 32: All communications, records, documents, and materials, whether generated by the IRS or by third parties at the request of the IRS, concerning the tax treatment, economic substance, or reporting requirements, including reporting requirements under Internal Revenue Code sections 6011 or 6111, of any Tax Strategy.

In response the United States objected as follows:

> Response #31: The United States objects to this requests upon the ground of relevancy and upon the ground that the documents requested are inherently deliberative in nature and privileged under the deliberative process privilege. Further, the United States objects that the referenced  e-mail dated May 17, 2004

---

sought to take discovery on the IRS' internal deliberations regarding the merits of the *Helmer* decision and the IRS' subsequent issuance of IRS Notices and regulations regarding the merits of the decision.   In both *Evergreen* and *Stobie Creek*, these discovery requests have been flatly denied on the basis of relevance.  In *Evergreen Trading* Judge Allegra entered an order barring the plaintiffs from deposing the three individuals who drafted certain Treasury regulations, including Treas. Reg. §§1.752-6 and 1.752-6T.  As the court made clear there, the internal deliberative documents of the IRS cannot provide legislative history for statutory provisions of the Code.  And the published regulations and revenue rulings of the IRS are what they are, and cannot be altered or impeached by the internal writings of IRS employees.  Similarly, plaintiff does not claim here that there is any ambiguity in the published interpretations of liability that would require further explanation.  To the contrary, plaintiff claims that such interpretations were clear and settled, but changed with the issuance of the new regulations in 2003. Justifications for the discovery in *Marriott* and *Jade*, based on a need to explain ambiguous law or regulations, therefore, are not applicable here, as well as wrong.  In any event, the discovery rulings in *Marriott* and *Jade* do not bind this Court, and the mere fact that documents may have been produced in those cases is not a reason they should also be produced in this case.

2349855.1                               24

from Roland Barral of the IRS to Deborah Nolan and Cono Namorato, both of the IRS, is subject to a protective order.

Response #32:  The United States objects to this request upon the ground of relevancy and upon the ground that the documents requested are inherently deliberative in nature and privileged under the deliberative process privilege.

The Court should deny this portion of plaintiff's motion for several reasons, including, most notably the fact that neither of these requests can lead to admissible evidence relevant to issues in this case.[15]

First, the only potentially relevant documents are those in the possession of the promoters.  These documents have already been subpoenaed directly from the promoters, with copies provided to the plaintiff.  What plaintiff seeks here are not documents related to the issues before this Court, but documents which reflect the IRS' deliberations as to whether the transactions, once discovered, should have been registered and/or reported.   These issues raised in this portion of plaintiff's motion are identical to those raised in the first part of its motion since it was the promoters who were obligated under Temp.Treas.Reg. 1-6011-4T to disclose any transaction that was the same or substantially similar to IRS Notice 2000-44.

And, for the same reasons stated above, plaintiff's discovery requests for internal IRS documents fall well outside the scope of permissible fact discovery in this case.  Therefore, the Court should address privilege issues concerning these documents only if it first determines that plaintiff has met its initial burden of demonstrating that these documents are relevant – or reasonably calculated to lead to the discovery of admissible evidence – and established good

---

[15]  As to the subject e-mail dated May 17, 2004, counsel for the United States has recently discovered a redacted copy of the email in the public domain.  Accordingly, the IRS is no longer asserting a claim of deliberative process to the document.  Nevertheless, this document remains irrelevant.  It also remains subject to a protective order in the *Stein* criminal litigation and protection under Section 6103.

cause for their production.  *See Freeman v. Seligson*, 405 F.2d 11326 (D.C. Cir. 1968).

According, this portion of plaintiff's motion should also be denied.

## IV.    PLAINTIFF'S REQUEST FOR INFORMATION AND DOCUMENTS SUPPORTING THE REPRESENTATIONS OF GOVERNMENT COUNSEL TO THIS COURT CONCERNING THE STATUS OF ITS DISCOVERY

The fourth part of plaintiff's motion to compel seeks the production of documents responsive to its Second Set of Interrogatories Nos. 15-22 and Fifth Set of Requests for Production Nos. 44-51 (Pltf's Mem. at pp. 25-29).  While this requested information was protected work product, the United States has since amended it responses to incorporate its motion papers which have been filed against DGI in the Southern District of New York.  These motion papers fully disclose the factual basis for the United States report to this Court on November 21, 2006 concerning the status of its discovery.   The United States has formally amended these discovery responses accordingly.[16]   As such, these discovery requests are now moot.

## V.    PLAINTIFF'S REQUESTS FOR THE PRODUCTION OF OTHER TAXPAYER INFORMATION FROM THE INTERNAL REVENUE SERVICE

The fifth part of plaintiff's motion to compel seeks the production of documents responsive to Requests for Production Nos. 10 and 43 (Pltf's Mem. at pp. 34- 40).   Both of these requests seek other taxpayer information, which as noted in the government's objections, are statutorily protected under 26 U.S.C. §6103.  This part of plaintiff's motion, however, is nothing more than a ruse for a trumped-up pretext to argue against the Government's possible use of pattern evidence.   This is not the time nor the place in which to address pattern evidence.   As

---

[16]  Copies of the United States' amended discovery responses are attached to the Declaration of John Lindquist marked as Govt. Exs. 8 and 9.

detailed herein, all of the documents requested are protected by statute.  Whether, and to what extent, these documents may be excepted under the transaction and/or item tests is still under review.

> In its Request for Production No. 10, Plaintiff requests
>
> Request No. 10: All records, documents, and materials collected, created, or maintained by the IRS in connection with the entities listed in Appendix A to Attachment to Subpoena to KPMG for Production of Documents, issued by the government to KPMG on March 31, 2006, a copy of which is attached as Exhibit A for reference.

The United States objected that other taxpayer information is protected by statute under 26 U.S.C. § 6103.  In its Request for Production No. 43, Plaintiff requested

> Request No. 43:  All records, documents, and materials collected, created, or maintained by the Internal Revenue Service relating to any of the individuals or entities listed in Appendix A of the attachment to subpoena issued by the Defendant to the following: 1) Carruth Management LLC and Carruth Associates on October 2, 2006; (2) BDO Seidman LLP on October 3, 2006; (3) RSM McGladrey, Inc., on October 6, 2006, October 20, 2006, and October 23, 2006; (4) Grant Thorton LLP on October 17, 2006; (5) Proskauer Rose LLP on October 19, 2006; (6) Lord Bissell & Brook LLP on October 23, 2006; (7) Burke, Warren, MacKay & Seritella, P.C. on October 23, 2006; (8) Bryan Cave LLP on October 24, 2006; and (9) Brown Raysman Millstein Felder & Steiner on October 25, 2006.  A copy of Appendix A is attached for reference.

In response the United States objected on multiple grounds, stating:

> The United States objects to this production request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, insofar as it seeks, without any limitation whatsoever, all of the IRS administrative files of the taxpayer for all years, as well all of the IRS administrative files for multiple other taxpayers for all years.  The United States further objects to this production request to the extent that it seeks other taxpayer information subject to 26 U.S.C. section 6103.  All relevant documents, with the limited exception of the actual filed tax returns reporting the FDIS transactions, are available directly from the third party promoters of these transactions.  The tax returns of other taxpayers are subject to 26 U.S.C. section 6103.  As to the taxpayer's own IRS administrative files, the United States has already produced all non-privileged documents for the tax years in issue, as well as a privilege log

2349855.1                                              27

for all documents within those files which have been withheld upon a claim of privilege.  As to all subpoenaed documents, the United States has already agreed, upon plaintiff's request, to provide plaintiff a duplicate copy of all subpoenaed documents.

(US Response to 4th Set of Production Requests No. 43).[17]

Plaintiff contends that it needs access to the IRS' records because the production of documents from the promoters has been incomplete.   However, KPMG is the only promoter to which it has issued a document subpoena.  And while the United States has provided plaintiff with a duplicate copy of all of the documents that it has obtained from third-parties, plaintiff's motion fails to identify precisely which documents it believes are incomplete.

## A.    SECTION 6103(h)(4)(B) OF THE INTERNAL REVENUE  CODE PROHIBITS DISCLOSURE OF UNRELATED THIRD PARTY TAXPAYERS' RETURNS AND RETURN INFORMATION

As a general matter, it is well settled that a taxpayer's liability for federal taxes depends on the law and facts applicable to the taxpayer's own financial situation. *Penn-Field Industries, Inc. v. Commissioner*, 74 T.C. 720, 722 (1980); *Goodstein v. Commissioner*, 267 F.2d 127 (1st Cir. 1959); *Davis v. Commissioner*, 65 T.C. 1014, 1022 (1976); *Teichgraeber v. Commissioner*, 64 T.C. 453 (1975).  Courts have generally rejected the proposition that a taxpayer who otherwise is liable for federal taxes can avoid that liability by pointing to another taxpayer who may not have been, for one reason or another, similarly treated by the Internal Revenue Service. A review of the structure and scope of the broad Section 6103 prohibition on the unauthorized disclosure of tax return information, and particularly an analysis of the exceptions Congress chose to adopt, reinforces the Government's position that plaintiff is not entitled to the requested

---

[17]   See United States' Response to Plaintiff's Fourth Set of Requests for Production of Documents, No. 43, Pltf's Ex. F.

discovery.  When enacting Section 6103(h)(4)(B), Congress had a clear opportunity to allow for

unrestricted discovery.  Yet, not only did Congress decline to do so, it also rejected the concept

of allowing third party tax information to be disclosed in a tax proceeding whenever the issue of

alleged disparate treatment of similarly situated, but unrelated, taxpayers is raised. Instead,

Congress established the more circumscribed item ((6103(h)(4)(B) and transaction

(6103(h)(4)(C)) tests for determining when tax information of a  third party taxpayer may be

disclosed in a judicial tax proceeding.

      Under the item test of section 6103(h)(4)(B), a third party taxpayer's statutorily protected

information may be disclosed in judicial proceedings only "if the **treatment of an item** reflected

on such [third party's] return is **directly related** to the resolution of an issue in the proceeding."

Plaintiff, in essence, argues that since these exceptions are higher than the standard relevancy

test for discovery, the United States' proposed use of pattern evidence is inherently prejudicial

because plaintiff has not been provided full access to the requested information of other taxpayer

in the possession of the IRS.

      "**[D]irectly** related" certainly describes a more circumscribed relationship than "relevant"

which Rule 26(b)(1) defines as information "reasonably calculated to lead to the discovery of

admissible evidence." [18] In order for any item of third party return or return information to be

disclosed in a judicial tax proceeding, the treatment of that item must be more than relevant, or

related; it must directly relate to the resolution of an issue in the proceeding. Congress certainly

---

[18] In essence, "relevance" appears to be the standard required for disclosure of a party's own tax information in judicial tax proceedings.  *See* I.R.C.§ 6103(h)(4)(A) governing disclosure of a return or return information of a taxpayer that is a party to a judicial tax proceeding or where the proceeding arises out of, or from, the taxpayer's liability (such as an action relating to the collection of a party's liability from a third party).  On the other hand, Congress plainly established a different standard for disclosure of a party's own tax information in a judicial proceeding under section 6103(h)(4)(A), than for disclosure of a third party's tax information in any such proceeding under §§ 6103(h)(4)(B) and/or 6103(h)(4)(C).

was at liberty to establish "relevance" as the standard for permitting disclosure of a third party's tax information in a judicial proceeding, but it is apparent from the plain language of that provision that Congress chose a standard other than simple relevance.

The legislative history of section 6103(h)(4)(B)(as well as subsection (h)(4)(C)) explains the intended scope and application of the "item" test and makes clear that mere relevance was **not** the standard adopted by Congress:

> The disclosure of a third party return [or return information] in a tax proceeding ... will be subject to the same item and transaction tests described above,[pursuant to which a third party's tax information may be disclosed to the Department of Justice] except that such items and transactions **must have a *direct relationship* to the resolution of an issue of the taxpayer's liability**.

> Only such part or parts of the third party's return or return information which reflects the item or transaction will be subject to disclosure ... in a tax proceeding. Thus, the return of a third party witness could not be introduced in a tax proceeding for purposes of discrediting that witness except on the item or transaction grounds stated above.

> In those cases where the absence of the reflection of an item or transaction on a third party's return is ... directly related ... to the resolution of an issue, the IRS would not be authorized to disclose such return, but would be authorized to verify in a written statement the absence of the reflection of such item or transaction.

S. Rep. No. 94-938, at 326 (1976)(emphasis added).

It is important to emphasize that in the case of disclosures of third party tax information to the Department of Justice in connection with tax administration proceedings Congress provided for disclosure "if the treatment of the item reflected on such return is or may be related to the resolution of an issue..." 26 U.S.C. §6103(h)(2)(B)(emphasis added).  The legislative history elaborates on this standard by noting that "[t]he return or return information of a third party may be disclosed to the Justice Department in the event the treatment of an item reflected on his return is or may be relevant to the issue of the taxpayer's liability..." (emphasis added).

2349855.1                                    30

S.Rep. 94-938 at 325.  Clearly, Congress intended something more than a relevance standard in subsection (h)(4)(B), given the language that disclosure of third party return or return information in a tax proceeding will be subject to the same item and transaction tests as that in place for disclosures to the Department of Justice "except such items or transactions must have a direct relationship..." *Id*. at 326 (emphasis added).

Nowhere in the legislative history of the item test is there any suggestion that section 6103(h)(4)(B) would permit disclosure of unrelated third party taxpayers' tax information simply to determine if taxpayers were similarly situated.  To the contrary, Congress provided two clear examples illustrating its intention that disclosure of similarly situated but unrelated third party taxpayers' tax information in tax proceedings is not authorized under Section 6103:

> The return reflecting the compensation paid to an individual by an employer other than the taxpayer whose liability is at issue would **not** meet either the item or transaction tests described above in a reasonable compensation case.  Thus, for example, the reflection on a corporate return of the compensation paid its president would not represent an item the treatment of which was relevant to the liability of an  unrelated corporation with respect to the deduction it claims for the salary it paid its president.
>
> In section 482 cases (involving the reallocation of profits and losses among related companies), where it is sometimes necessary to determine the prices paid for certain services and products at arms-length between unrelated companies, the return or return information of a company which was unrelated to the taxpayer company would **not** be disclosable under either the item or transaction tests described above.

S. Rep. No. 94-938, at 325-326 (emphasis added).

The two examples provided by Congress represent common situations in cases where a "comparability factor" arises.  Both examples manifest Congressional intent that the standard for disclosing a third party's return or return information cannot be as low as the "relevance" standard.  When Congress weighed the interests of taxpayers discovering and contesting

"comparability issues" with the rights of third parties to protect information provided to the IRS, it decided that the latter must prevail. Congressional intent would be frustrated by disclosing third party return information based upon "information and belief" where the direct relationship is not established.

Case law interpreting section 6103(h)(4)(B) is generally consistent with the legislative history's explanation of that provision. In those cases allowing disclosure under the item test there was a "direct relationship" between the tax liability of the third parties whose tax information was disclosed and the taxpayers in whose judicial tax proceedings the disclosures were made, *i.e.*, alimony between ex-spouses; assets available to a husband-wife; payments from a parishioner to her church.[19]

Here, the United States contends that the plaintiff's FDIS transaction is one of 58 cookie-cutter FDIS tax shelter transactions, all of which appear to have been joined at the hip not only with common promoters but also with sham foreign partners. In light of the United States recent discovery of some of these facts, the United States has again asked the IRS to review the other

---

[19] *E.g., Christoph v. United States*, 1995 U.S. Dist. LEXIS 19977 (S.D. Ga. Dec. 12, 1995)(an ex-spouse's tax information showing her treatment of disputed payments after divorce was directly related to resolving deductibility of payments claimed to be alimony in the taxpayer's proceeding); *Tavery v. United States*, 32 F. 3d 1423 (10 Cir. 1994), *aff'g* 1991 U.S. Dist. LEXIS 15592 (D. Col. Oct. 18, 1991)(court determined that the third party-wife's income and tax refunds were directly related to the issue of the taxpayer-husband's ability to pay attorneys' fees in considering court appointed counsel); and, *Lebaron v. United States*, 794 F.Supp. 947 (C.D. Cal. 1992)(disclosing the tax information of a third party was authorized by Section 6103(h)(4)(B) because the requested information was relied upon by the IRS in making its determination whether to investigate a tax exempt organization). In each of these decisions, finding a "direct relationship" was consistent with what Congress described as satisfying the item test. Thus, for example, the returns of Subchapter S corporations, partnerships, estates, and trusts may reflect the treatment of certain items which may have a direct relationship to resolving a taxpayer's liability arising out of the taxpayer's relationship as a shareholder, partner or beneficiary with the third party. S. Rep. 94-938, at 325 (1976).

taxpayer information of the promoters and other investors for possible exception under the transaction or item tests.  For example, information regarding the fact that the same sham foreign partners that were involved in the transactions here were also involved in 57 other FDIS transactions may very well have a *direct relationship* to the resolution of multiple issues in this litigation.  However, it is unlikely that the IRS administrative files of the taxpayers engaging in these other FDIS transactions contain factual

 information that has not already been (or will be) produced by the promoters in this litigation and which information has been already furnished to plaintiff.

It appears that what plaintiff is really seeking by this request is not factual information obtained by the IRS regarding these other cookie-cutter  FDIS transactions but the IRS' internal analyzes and conclusions regarding these other substantially identical FDIS transactions.  As previously discussed, however, such IRS analyses and conclusions underlying its FPAA adjustments here or its FPAA adjustments regarding substantially identical FDIS transactions is simply not relevant to the resolution of any issues in this *de novo* proceeding. Accordingly, there is no basis whatsoever for the IRS to produce this information under the item or transaction tests exceptions to Section 6103.

For the foregoing reasons, this section of plaintiff's motion to compel should also be denied.

**Conclusion**

For all the above reasons, the Court should deny plaintiff's motion to compel.

DATED:  March 26, 2007

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

 /s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION
COUNSEL
OFFICE OF CIVIL LITIGATION
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. RICHTARCSIK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone: (202) 307-6561
Facsimile:  (202) 514-5238
E-mail:  john.a.lindquist@usdoj.gov
          barry.e.reiferson@usdoj.gov
          heather.l.richtarcsik@usdoj.gov

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on March 26, 2007.

<u>/s/ John A. Lindquist</u>

Trial Attorney, US Department of Justice, Tax Division

2349855.1

# In The United States Court of Federal Claims

No. 06-123 T

(Filed: March 19, 2007)

---

| | |
|---|---|
| EVERGREEN TRADING, LLC, by and<br>through GLEN NUSSDORF AND CLAUDINE<br>STRUM on behalf of GN INVESTMENTS,<br>LLC, A Partner Other than the Tax Matters<br>Partner,<br><br>          Plaintiffs,<br><br>     v.<br><br>THE UNITED STATES,<br><br>          Defendant. | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*     Depositions; Motion for Protective<br>     Order; Depositions of IRS employees<br>     regarding drafting of regulation;<br>     Personal views of IRS employees<br>     irrelevant in determining the validity of<br>     the regulations; Motion granted. |

---

## ORDER

---

*David D. Aughtry*, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, Georgia, for plaintiffs.

*Stuart J. Bassin*, Tax Division, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

**ALLEGRA, Judge**:

On March 13, 2007, defendant filed a motion for a protective order under RCFC 26(c) to bar plaintiffs from taking the depositions of three individuals who were involved in the drafting of certain Treasury regulations at issue in this case, including Treas. Reg. §§ 1.752-6 and 1.752-6T. Earlier this day, plaintiffs filed their response to this motion.

Having reviewed these documents, the court concludes that the requested depositions will not lead to the discovery of information relevant to the claim or defense of any party in this litigation. While plaintiffs cite various cases that might provide grounds for challenging certain of the Treasury regulations at issue in this case, none of these cases remotely suggest that the personal views, intentions, etc. of the drafters of such regulations are relevant to those arguments. *See, e.g.*, *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368 (Fed. Cir. 2000). Other cases, indeed, explicitly make clear that the views expressed by individual Internal Revenue

Service employees are irrelevant in construing regulations or determining the validity thereof. *See Sidell v. Comm'r of Internal Revenue*, 225 F.3d 103, 111 (1ˢᵗ Cir. 2000) (rejecting the taxpayer's reliance on a number of internal IRS memoranda to show that a proposed regulation was not meant to cover a particular situation); *Conn. Gen. Life Ins. Co. v. Comm'r of Internal Revenue*, 177 F.3d 136, 145 (3d Cir. 1999), *cert. denied*, 528 U.S. 1003 (1999) ("reliance upon remembered details from officials who lacked the ultimate authority to issue any proposed regulation has little support in the law"); *Schwalbach v. Comm'r of Internal Revenue*, 111 T.C. 215, 228 n.4 (1998) (giving "no weight" to oral statements made by "agents of the Commissioner" describing the content of final regulations); *Armco Inc. v. Comm'r of Internal Revenue*, 87 T.C. 865, 867-68 (1986) (affidavit of IRS employee explaining his intent in drafting a regulation irrelevant to interpreting the regulation); *see also Vons Cos. v. United States*, 51 Fed. Cl. 1, 21 (2001) ("this court [should be] extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency"). Accordingly, in the court's view, the requested depositions fall well outside the scope of appropriate discovery under RCFC 26(b)(1).

Finding plaintiffs' other claims in support of the requested depositions also misplaced, the court concludes that the requested protective order shall issue and that the requested depositions shall be barred. *See Vons Cos., Inc.*, 51 Fed. Cl. at 24-25 ("While . . . some degree of fishing is anticipated by the Federal discovery rules, those rules do not sanction a party to employ essentially a purse seine that indiscriminately sweeps in not only relevant catch, but hosts of irrelevant and protected species of information.").*

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

* Based on the foregoing, the court need not reach defendant's argument that the information sought by plaintiff is protected by the deliberative process privilege.

-2-

# In the United States Court of Federal Claims

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**STOBIE CREEK INVESTMENTS, LLC, and**            \*
**JFW ENTERPRISES, INC.,**

                                            \*

                             Plaintiffs,      \*

                     v.                    \*      No. 05-748T

**THE UNITED STATES,**            \*      (Filed Mar. 14, 2007)

                           Defendant.     \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Further to the argument on pending discovery motions and the discovery conference held on March 12, 2007, and for the reasons stated from the bench,

**IT IS ORDERED**, as follows:

1. Plaintiffs' Motion To Compel Discovery filed on November 28, 2006, is denied without prejudice to renewal. Plaintiff[s'] Motion To Compel Deposition Testimony from Richard Starke filed on February 28, 2007, is denied. Defendant's cross-motion for protective order filed March 5, 2007, is granted, and the subpoena dated January 10, 2007, to depose Richard Starke hereby is quashed.

2. Defendant shall file its motion for leave to take more than ten depositions by March 16, 2007. See RCFC 26(b)(2). Plaintiffs shall respond by March 28, 2007, and defendant shall reply by April 4, 2007. Argument shall be held by video conference at 2:00 p.m. on Tuesday, April 10, 2007, in the Howard T. Markey National Courts Building.

3. Plaintiff shall move for summary judgment by April 30, 2007. Defendant shall respond and cross-move for summary judgment by June 13, 2007. All further briefing shall be by rule.

5. The court reserves issuance of any published written order on the discovery motions.


s/ Christine O.C. Miller

**Christine Odell Cook Miller**
Judge