# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
                                     )    Case No. 05-40151 FDS
           Plaintiff, )
                                     )    Honorable F. Dennis Saylor, IV
             vs. )
                                       )
UNITED STATES OF AMERICA, )
                                       )
           Defendant. )

## RSM MCGLADREY, INC.'S MEMORANDUM IN OPPOSITION TO UNITED STATES OF AMERICA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

      For the reasons set forth below, third-party subpoena recipient RSM McGladrey, Inc. ("RSMM"), by its attorneys, respectfully requests that this Court deny the United States of America's Motion to Compel RSMM's Production of Documents (the "Motion to Compel").[1] Instead, RSMM requests that the Court quash the subpoena improperly served on RSMM by the Defendant United States of America ("the Government"), or, in the alternative, enter RSMM's Protective Order Relating to RSMM's Response to the Government's Subpoena.  (*See* RSMM Ex. 1.)  As grounds for its opposition, RSMM states that the Government has improperly served the subpoena, which is the subject of the Government's Motion to Compel; the Government's subpoena is grossly overbroad; and its enforcement would cause the exposure of the private

---

[1] This Court should not even consider the Government's motion in view of the Government's failure to comply with Local Rule 37.1(b), which requires a certificate in the margin of the last page of the motion indicating that the party has complied with the rule, and the Government's failure to comply with Local Rule 37(b)(2) with respect to conducting and reporting the details of a discovery conference, which must be set forth in its memorandum.  In fact, the Government itself emphasized the importance of Local Rule conference obligations when it recently moved to strike an unrelated motion to compel filed by Plaintiff Fidelity International Currency Advisor A Fund, L.L.C.  (Docket No. 81.)

financial and personal information of individuals who have absolutely nothing to do with the instant litigation, as well as unduly burden nonparty RSMM.

## **INTRODUCTION**

RSMM is not a party and had no involvement in this lawsuit until it was served with a subpoena by the Government in October 2006. The Government's numerous open-ended requests sought documents relating in any way, virtually without limitation, to particular types of investment transactions and to RSMM clients who had entered into – or were even approached about entering into – these particular types of transactions during the period from January 1, 2000 to the present. Attached to the 99 separate paragraphs of the document rider were 13 pages listing the names of 252 persons and entities about which the Government was seeking documents. None but a handful of these hundreds of persons and entities appear to have any direct connection to the pending litigation.

RSMM timely objected to the subpoenas and document requests. RSMM and the Government on several occasions discussed RSMM's concerns about protecting the confidential information of RSMM's clients and limiting the overly broad and unduly burdensome scope of the Government's requests. RSMM's concerns have been consistent throughout its discussions with the Government: (1) protecting the privacy interests of the clients / taxpayers with respect to very sensitive personal and tax return information; (2) defining the scope of the production with precision to avoid any dispute over compliance; and (3) controlling the expense of an open-ended search for materials in a case where RSMM is not a party and where it had no involvement in Plaintiff's transactions until the tax returns themselves were filed.

Despite these good faith negotiations, the Government terminated discussion in February 2007, insisting that RSMM comply with its requests – and accept the proposed protective order

language that the Government had drafted – and stating that it would file a motion to compel if RSMM did not accede.

Since that time, although no order has yet been entered, progress appears to have been made, as a result of the Court's involvement, on protective order language that will better protect the tax-related documents of the clients of the third-party subpoena recipients in this matter. (*See* Tr. of March 15, 2007 Hrg on BDO Seidman Mot. for Entry of Superseding Prot. Order at 16 (in which this Court stated that "I'm assuming that whatever we agree upon here will apply to all tax returns from all sources").) Nonetheless, RSMM still requests the Court's guidance with respect to the scope of documents the Government is entitled to receive from RSMM.

## BACKGROUND

After counsel for RSMM advised the Government that it would not accept service, on October 20, 2006 the Government served its subpoena and 99-paragraph document rider on a field office of RSMM in Washington, D.C. (RSMM Ex. 3, Oct. 20, 2006 Subpoena and Attachments.)[2] One business day later it served a duplicate subpoena on a field office of RSMM in Boston. (RSMM Ex. 4, Oct. 23, 2006 Subpoena and Attachments.) Both copies of the subpoena were issued from the District of Massachusetts and are hereafter referred to as "the subpoena."

The scope of the subpoena extends far beyond the transactions at issue in this lawsuit. In fact, "Egan" is expressly referenced in only one document request (Request No. 65), and Plaintiff Fidelity International Currency Advisor A Fund, L.L.C. ("Fidelity") is expressly referenced only in the final document request (Request No. 99). The categories of documents

---

[2] The exhibits that RSMM is filing in support of this opposition brief are verified by the Declaration of Kathy A. Karcher. (RSMM Ex. 2, Decl. of Kathy A. Karcher.)

sought by the Government are extremely broad and open-ended, cover a six-year period, and go

far beyond the Fidelity transactions, seeking, *inter alia*, without limitation:

- All documents produced by RSMM to the Internal Revenue Service ("IRS") or received from the IRS in any IRS promoter investigation (Request Nos. 2-3);

- All electronic mail to, from, or within RSMM relating to the "SOS and/or FDIS" transactions (Request Nos. 6-7);[3]

- All documents relating to the development, promotion, marketing, implementation, issuance of opinions regarding, and reporting of SOS and/or FDIS transactions, including but not limited to client-specific documents (Request Nos. 13-19, 53-65);

- "All documents discussing or referencing IRS Notice 99-59, Notice 2000-44, and/or the list maintenance requirements under 26 U.S.C. §6112" (Request No. 43);

- All documents relating to the fees for SOS and/or FDIS, including documents relating to fee calculation and invoicing, and compensation of involved persons and entities both inside and outside of RSMM (Request Nos. 49-52);

- "All federal and state tax returns reporting any SOS and/or FDIS transaction, including, but not limited to, the returns for the transactions involving the [252] individuals and entities identified in Appendix A" (Request No. 67);

- "All notes taken by [RSMM], including by its employees, officers, partners, members, and/or shareholders, or by third parties, at sales or promotional meetings for SOS and/or FDIS, including, but not limited to, those taken at meetings relating to transactions involving the [252] individuals and entities identified in Appendix A" (Request No. 68); and

---

[3] RSMM has objected to the Government's terms "SOS" and "FDIS" on the grounds that the terms are vague, overbroad, unduly burdensome, and seek the production of materials that are not relevant or reasonably calculated to the matters at issue. (RSMM Ex. 5, Specific Objections ¶¶3-4.) In subsequent discussions with the Government, the Government limited the scope of the subpoena to transactions implemented by The Diversified Group Incorporated and/or Helios Financial LLC in which RSMM clients participated, and the Government identified those transactions on a list in its December 1, 2006 letter. (Govt Ex. 2 at 10-11 (filed under seal).) RSMM uses the terms "SOS" and "FDIS" in this brief only to reflect the Government's use of these terms, but does not agree to any characterizations stemming from the use of these terms.

- All correspondence relating to the 252 persons and entities listed in Appendix A and/or relating to SOS and/or FDIS (Request No. 87).

(RSMM Exs. 3 and 4.)

On October 29, 2006, RSMM timely served its written objections on the Government. (RSMM Ex. 5.) RSMM objected on multiple grounds, including, *inter alia*, that service of the subpoena on RSMM's Washington, D.C. and Boston field offices was not proper; that the subpoena imposed an undue burden and expense on RSMM; that the subpoena sought confidential and commercially sensitive material that could not be produced absent a protective order; that the subpoena sought privileged materials; that the subpoena was overly broad, vague, and sought materials that were not relevant to this lawsuit; and that the subpoena sought materials already in the possession of the Government or that were more readily available from other sources. (*Id.*)

The Government responded to RSMM by letter on December 1, 2006, in which it agreed to limit the scope of the subpoena to documents related to SOS and/or FDIS transactions and to documents relating to individuals listed at the end of the letter, which were the persons and entities that the Government believed had worked with RSMM to implement FDIS transactions. (*See* Govt Ex. 2 (filed under seal).) In subsequent discussions, the Government limited the scope of the subpoena to transactions implemented by The Diversified Group Incorporated ("DGI") and Helios Financial LLC ("Helios"). RSMM was unsuccessful in its efforts to reach a compromise with the Government on the very broad scope of the documents requested and on the terms of a protective order that would offer meaningful protection for the sensitive client documents sought.

On February 13, 2007, at the request of the Government, RSMM provided the Government with a letter setting forth RSMM's proposal for production of documents, in which

it offered to produce: (i) the documents specifically related to the transaction that is the subject of the lawsuit, (ii) the documents RSMM previously produced to the IRS related to DGI transactions, and (iii) the closing binders, tax returns, and legal opinions, if any, related to DGI deals that were implemented. (Govt Ex. 3, Feb. 13, 2007 Letter from R. Markowski.) RSMM also offered to consider the Government's request for "marketing" materials related to the DGI transactions if the parties could agree on a reasonable definition of what kinds of materials would fall into that category, and it expressly stated that the Government would have the right to seek additional documents after reviewing RSMM's production. (*Id.*)

The Government rejected RSMM's offer and stated that it would file a motion to compel if RSMM did not comply with the document requests on the Government's terms. (*See* RSMM Ex. 6, Feb. 14, 2007 Letter from B. Reiferson.) RSMM responded that it was willing to engage in further discussions, but the Government reiterated its intention to file a motion to compel. (*See* RSMM Ex. 7, Feb. 26, 2007 Letter from R. Markowski; RSMM Ex. 8, Feb, 27, 2007 Email from B. Reiferson.)

## **ARGUMENT**

### I.    **RSMM Properly Objected To The Government's Subpoena.**

The Government attempts to take some advantage from the fact that it served the subpoena on RSMM twice – once on Friday, October 20, 2006, and again on Monday, October 23, 2006. (RSMM Ex. 3, Oct. 20, 2006 Subpoena and Attachments; RSMM Ex. 4, Oct. 23, 2006 Subpoena and Attachments.)

The Government fails to articulate a valid reason as to why it served the subpoena twice.[4] In a footnote, it contends that it served the initial subpoena on October 20, 2006 on RSMM's Washington, D.C. office, that "[a]mong other objections, RSM claimed that this . . . subpoena was invalid because it was not properly issued," and that the October 23 subpoena "was therefore served upon RSM's Boston, MA office." (Govt Mem. in Supp. at 1 n.1.) However, RSMM did not serve its objections to service on the D.C. office until October 29, 2006. (RSMM Ex. 5, Objections.) Nevertheless, to the extent that the Government claims that it served the subpoena a second time to cure defects in initial service of the subpoena, such efforts failed, as indicated in RSMM's objections.

RSMM appropriately objected to the subpoena, including additional objections as needed to address problems resulting from the second service of the subpoena on RSMM's Boston office. Plainly, the Government fully understood that RSMM's objections applied to both copies of the subpoena. In fact, while stating in correspondence that RSMM was in "technical default" regarding the second subpoena, the Government expressly acknowledged that it was engaging in negotiations regarding RSMM's objections "on the assumption they validly apply to both of these personally-served subpoenas." (Govt Ex. 2 at 2, Dec. 1, 2006 Letter (filed under seal).)

## II.     The Government Incorrectly Served The Subpoena On RSMM Field Offices In Washington, D.C. And Boston.

RSMM objected that the subpoena was not properly served on RSMM by delivering it to RSMM field offices in Washington, D.C. and Boston. As a search on the Massachusetts

---

[4] The Government also references a courtesy copy of the subpoena that it sent to RSMM's counsel earlier in October. (Govt Mem. in Supp. at 1 n.1.) RSMM was under no obligation to waive formal service of the subpoena under the Federal Rules, and in light of the subpoena's sweeping scope it chose not to do so.

corporation database shows, accessible for free on the Internet, RSMM is headquartered in Bloomington, Minnesota.  (RSMM Ex. 9, Website Printout.)

Federal courts are not in agreement as to what analysis applies to determine the proper location of service of a subpoena *duces tecum* on a corporation.  There does not appear to be First Circuit authority directly on point.  The Government has cited to Second Circuit authority in support of its position that personal jurisdiction alone dictates whether a corporation is properly served with a subpoena within a particular jurisdiction.  (Govt Mem. in Supp. at 11.)

RSMM submits that personal jurisdiction is only an initial consideration, and that it is appropriate to consider an additional factor – namely, whether the location served with the subpoena has a sufficient "degree of control" over the documents.  On facts similar to the case here, the District of Colorado held that:  "The appropriate question to ask is . . . whether the agent for service of process possesses 'the degree of control' over the documents which would make it appropriate to enforce a subpoena over a corporation from a court in one state, when the corporation's documents are located in another state." *Echostar Comm. Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998) (citation omitted).

Quoting the Eleventh Circuit, the *Echostar* court ruled that "even positing that this court has personal jurisdiction . . . , it is unreasonable to assume that these appellants' local offices 'control' all documents kept at their respective corporate headquarters.  In the absence of such control, therefore, even the existence of personal jurisdiction in this court is insufficient to create jurisdiction over the documents which are outside of the district." *Id.* at 396-97 (quoting *Ariel v. Jones,* 693 F.2d 1058, 1060-61 (11th Cir. 1982)) (internal quotation marks omitted).  The court concluded that the location of document production was the location where the corporations maintained the documents, not the delivery location.  *Id.*

Here, the Government could easily have obtained the issuance of a subpoena from the District of Minnesota and served the subpoena on RSMM's Minnesota corporate headquarters, from which the RSMM documents sought are controlled. Its failure to do so renders service defective.

## III.    RSMM Is Willing To Produce Certain Documents Once An Appropriate Protective Order Has Been Entered By The Court.

Even if the Government had properly served the subpoena, RSMM's clients are entitled to appropriate protections before documents containing tax return or other highly sensitive information are produced. The Government argues that "RSM has still not produced any of the subpoenaed documents." (Govt Mem. in Supp. at 2.) What the Government fails to explain is that RSMM has offered to produce certain responsive documents once an appropriate protective order has been entered.

The Government previously advised RSMM that it would enter into a protective order in the form previously entered in this matter with respect to the production of documents by third parties KPMG, Refco Capital Markets, and Proskauer Rose. (*See, e.g.,* Govt Ex. 2 at 3, Dec. 1, 2006 Letter (filed under seal).) RSMM has consistently responded that, due to the nature of its work as an accounting firm and possession of tax-related documents of its clients, its confidentiality concerns were not adequately addressed by the Government's proposed protective order. Specifically, RSMM has expressed the need to maintain the confidentiality of taxpayer information, to place some limits on which Department of Justice ("DOJ") and IRS employees would be permitted to access these documents, and to protect the confidentiality of these documents if they were later provided by the Government to others involved in criminal

investigations, for which the Government's proposed form of order provided for "unrestricted use."[5]

After BDO Seidman raised its own concerns regarding the protection of tax returns and tax-return information and filed a motion with the Court for entry of a superseding protective order, on February 13, 2007 RSMM informed the Government:

> With respect to the protective order, we indicated that RSMM would be prepared to accept the form that you had sent to us on January 19 for non-tax-return-type materials. With respect to tax-return-type materials, we indicated that RSMM would be prepared to accept the Court's ruling on BDO's recently filed superseding protective order motion.

(Govt Ex. 3, Feb. 13, 2007 Letter at 1; *see* RSMM Ex. 10, Govt Jan. 19, 2007 Proposed Protective Order.)

At the March 15, 2007 hearing, the Court heard BDO Seidman's motion for entry of a superseding protective order that would protect tax returns and tax-return information. The Court also heard from RSMM's counsel concerning these issues as well. The Court, recognizing the highly sensitive nature of taxpayer information, directed the parties to work on agreed language for the protective order based on the Court's directions. The Government has agreed to provide RSMM a draft proposed order for comment but has yet to do so.

## IV. RSMM Has Agreed To Produce Documents That Will Directly Satisfy The Government's Stated Purpose Of Gathering "Pattern Evidence."

Federal Rule of Civil Procedure 45(c) states that "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue

---

[5] Apparently itself recognizing the confidential and sensitive nature of at least some documents referencing taxpayers, the Government filed under seal five exhibits to its Motion to Compel, on the basis that "each include[s] the names of dozens of FDIS-tax-shelter participants," and "Exhibit 14 also shows the size of the tax loss generated for the participant by the tax shelter in each instance." (Docket No. 70, Govt Mot. to File Exs. Under Seal at 2.) The Government further noted that "it is unnecessary to make public at this time the names and transactional details of the FDIS participants listed on the exhibits." (*Id.*)

burden or expense on a person subject to that subpoena."  The Federal Rules of Civil Procedure specifically protect parties – especially those who are not parties themselves to the proceedings – from discovery which is unduly burdensome or expensive.  *See, e.g.,* Fed. R. Civ. P. 26(c), 45(c)(3)(A)(iv), 45(c)(2)(B).  Courts consider many factors when determining whether a discovery request is unduly burdensome, including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described" and whether the request is directed at a non-party. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *Heidelberg v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003)).

As noted above, the rules protecting individuals and corporations from unduly burdensome discovery apply with special force when discovery is sought from a non-party to the litigation.  *Heidelberg*, 333 F.3d at 41-42; *Cusumano*, 162 F.3d at 717 ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" during discovery).  The Federal Rules of Civil Procedure expressly require that "an order to compel production shall protect any person [served with a subpoena] who is not a party from significant expense . . . ."  Fed. R. Civ. P. 45(c)(2)(B).  As a result, prior decisions in this district have specifically recognized that a non-party's discovery obligations are more limited than those of a party to the litigation.  *See Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993); *see also Blount Int'l, Ltd. v. Schuylkill Energy Res., Inc.*, 124 F.R.D. 523, 526 (D. Mass. 1989) (citing *Dart. Indus. Co. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980)).

Despite the fact that the documents sought by the Government have limited, if any, relevance to the transactions at issue in this proceeding, RSMM attempted to satisfy the Government's interest in receiving particular documents related to other taxpayers. RSMM respectfully submits that its proposal, as set forth in its February 13, 2007 letter, should sufficiently meet the Government's interest in information for use in this proceeding about other taxpayers' transactions. (Govt Ex. 3, Feb. 13, 2007 Letter.)

In its February 13, 2007 letter, RSMM expressed a willingness to produce numerous documents to the Government, without prejudice to the Government seeking additional documents under the subpoena at a later time if it believed that they were necessary.

Specifically, RSMM offered to produce the following documents:

- Documents specifically related to the Egan transaction that is the subject of the lawsuit.

- Documents RSMM previously produced to the IRS related to DGI transactions.

- The closing binders, tax returns, and legal opinions, if any, related to DGI deals that were implemented.

- RSMM also offered to consider the Government's request for "marketing" materials related to the DGI transactions if the parties could agree on a reasonable definition of what kinds of materials would fall into that category.

(Govt Ex. 3, Feb. 13, 2007 Letter.)

Although insisting on compliance with its open-ended requests for the production of "all documents" responsive to its numerous requests, the Government has informed RSMM that it will not cover the cost of RSMM's compliance with the subpoena. RSMM is a third party, not a party, and it is entitled to be protected from unnecessary burden and expense. *See* Fed. R. Civ. P. 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party from significant expense. . . ."). Here, in light of RSMM's limited involvement in the filing of the tax

returns at issue and the fact that the Government has already (or will soon) obtain documents from several other third parties, including KPMG, DGI, and BDO Seidman, the Government has not demonstrated that, for purposes of this proceeding, it needs more than RSMM has offered to produce or that it has taken the steps required to minimize the burdens imposed on a third party.

Accordingly, RSMM respectfully requests that this Court narrow the scope of the Government's subpoena and document requests and require it only to produce those categories of documents responsive to the Government's "cookie-cutter" theory of pattern evidence, as set forth in RSMM's February 13, 2007 letter (*see* Govt Ex. 3, Feb. 13, 2007 Letter), and incorporated into RSMM's Protective Order Relating to RSMM's Response to the Government's Subpoena. (*See* RSMM Ex. 1.)

In the alternative, RSMM requests that the Court place other limitations on the scope of production to restrict the burden on RSMM. The production of documents should be limited to the relevant timeframe of 2001-03, which is when RSMM clients would have engaged in DGI transactions and filed tax returns regarding those transactions. The production should cover only transactions that were actually entered into by RSMM clients because locating documents created as a result of discussions that did not lead to clients entering into transactions will be difficult, if not impossible, to locate. In addition, the production should be limited to hard copy client files relating to DGI transactions and should not include extracting and searching electronic mail from electronic archives dating back over the last six years, due to the undue expense and burden this would require.

## V.    RSMM Is Willing To Produce An Appropriate Privilege Log Once The Court Has Ruled On The Scope Of Production.

The Government incorrectly contends that RSMM's objections to producing documents that are protected by the attorney-client and work-product privileges are waived because RSMM did not serve a privilege log when it served its objections.

As a preliminary matter, RSMM clearly formally objected to the subpoena on grounds of attorney-client privilege and work-product doctrine.  (RSMM Ex. 5, General Objections ¶¶7, 11.)

When a non-party to a suit objects to a subpoena on the grounds that the subpoena is not even properly served, and is also overbroad and seeks privileged information, the non-party does not waive its claim to privilege by not submitting a privilege log.  *See Williams v. City of Dallas*, 178 F.R.D. 103, 115 (N.D. Tex 1998).  The Advisory Committee Notes to Federal Rule of Civil Procedure 45(d)(2) make clear that where producing a privilege log would be too burdensome, the subpoenaed party is not required to incur this expense:

> A person served a subpoena that is too broad may be faced with a burdensome task to provide full information regarding all that person's claims to privilege or work product protection.  Such a person is entitled to protection that may be secured through an objection made pursuant to paragraph (c)(2).

Fed. R. Civ. P. 45(d)(2) Advisory Committee's Notes.  A party has "no obligation to undertake the task of lodging objections to a potentially vast array of protected materials" that fall within the scope of an overbroad subpoena. *Williams*, 178 F.R.D. at 115.[6]

_____

[6] Rule 45(d)(2) does not state when the objecting party must produce a privilege log or indeed when a claim of privilege over documents requested from a subpoena must be made. Fed. R. Civ. P. 45(d)(2).  This Court has held that while general objections to a subpoena must be made within the 14-day period prescribed in Rule 45(c)(2)(B), an objection on the basis of privilege can be made after that time period. *Winchester Capital Mgmt. Co. v. Mfr. Hanover Trust Co.*, 144 F.R.D. 170, 175-176 (D. Mass. 1992).  Even courts requiring that privilege objections be made within the 14 days prescribed by Rule 45(c)(2)(B) have held that the subpoenaed party is not required to produce a privilege log within the 14-day objection period. *See, e.g., Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) (ruling that once a party has filed a

As the Advisory Committee Notes recognize, as a practical matter, it is not possible for a party to prepare a privilege log when there is a dispute over both proper service and the scope of production under an overbroad subpoena. Rule 45 expressly states that once a party objects to a subpoena, the subpoena is not enforceable unless the serving party files a motion to compel and the Court enters an order enforcing it. It is only after the objections to scope are resolved here that it will be possible for RSMM to determine what privileged materials fall within the scope of what must be gathered to respond to the subpoena. Accordingly, RSMM is not required to comply with the subpoena – including providing a privilege log – until the Court has ruled on the Government's Motion to Compel.

Moreover, the Government and RSMM have been negotiating the scope of the privilege log, which belies the Government's claim that RSMM has waived its right to assert privilege. RSMM proposed in its February 13, 2007 letter that RSMM not be required to log privileged, responsive documents that were created after October 22, 2002, the date on which the IRS made a request for "all information [RSMM] is required to maintain under section 6112 of the Internal Revenue Code and regulations thereunder," because after that time the IRS began its scrutiny of RSMM and RSMM clients that led to substantial attorney-client contacts, as well as the increasing likelihood of litigation. (Govt Ex. 3, Feb. 13, 2007 Letter.) RSMM respectfully requests that this Court put in place appropriate limits on the scope of the privilege log that RSMM must produce.

---

written objection to the subpoena on the basis of privilege, that party must produce a privilege log within a reasonable time, which is to be determined by the district court); *see also Minnesota Sch. Bd. Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 629-30 (N.D. Ill. 1999).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, RSM McGladrey, Inc. respectfully requests that this Court set the Government's Motion to Compel for oral argument.  Alternatively, RSMM is available and willing to participate in a formal or informal conference with the Court to obtain guidance related to these matters.

**CONCLUSION**

For the foregoing reasons, RSM McGladrey, Inc. respectfully requests that this Court

deny the United States of America's Motion to Compel, allow RSM McGladrey's Protective

Order Relating to Its Response to the Government's Subpoena, and grant RSM McGladrey such

other relief as the Court deems just, equitable, and proper.

Dated: March 30, 2007                    Respectfully Submitted,

                                         RSM McGladrey, Inc.,
                                         *By its attorneys,*

                                         /s/ Peter J. Karol
                                         _____

                                         Robert L. Kann (BBO# 258025)
                                         Peter J. Karol (BBO # 660338)
                                         BROMBERG & SUNSTEIN LLP
                                         125 Summer Street
                                         Boston, MA 02110
                                         Telephone:  (617) 443-9292 x326
                                         Facsimile:  (617) 443-0004
                                         rkann@bromsun.com
                                         pkarol@bromsun.com


                                         Of Counsel:
                                         Matthew M. Neumeier
                                         Robert T. Markowski
                                         Kathy A. Karcher
                                         JENNER & BLOCK LLP
                                         330 North Wabash Avenue
                                         Chicago, IL 60611
                                         Telephone:  (312) 222-9350
                                         Facsimile:  (312) 527-0484
                                         mneumeier@jenner.com
                                         rmarkowski@jenner.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 30, 2007.

/s/   Peter J. Karol
Peter J. Karol

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | Case No. 05-40151 FDS |
| Plaintiff, | ) | |
| | ) | Honorable F. Dennis Saylor, IV |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] RSM MCGLADREY, INC.'S PROTECTIVE ORDER RELATING TO ITS RESPONSE TO THE UNITED STATES OF AMERICA'S SUBPOENA

This matter coming to be heard on Defendant United States of America's Motion to Compel RSM McGladrey, Inc.'s Production of Documents,

IT IS HEREBY ORDERED THAT third-party subpoena recipient RSM McGladrey, Inc. shall have fulfilled its duties in responding to the subpoena served by the United States of America by producing the following documents, as well as any applicable privilege log, within thirty (30) days of the entry of a protective order governing its production of documents:

(a)     The documents specifically related to the transaction that is the subject of the lawsuit;

(b)     The documents it previously produced in connection with Internal Revenue Service production requests related to The Diversified Group Incorporated ("DGI") transactions;

(c)     To the extent not covered by item (b), the closing binders, tax returns, and legal

opinions, if any, related to DGI deals that were implemented; and

(d)     Marketing materials in the form of brochures or PowerPoint presentations by

RSM McGladrey or DGI that were presented to clients that entered into any of the

relevant transactions.

IT IS FURTHER ORDERED THAT this Order is without prejudice to the Defendant

United States of America requesting additional information following its receipt and review of

the documents covered by the terms of this Order.

Date: _____          _____

                                                    The Honorable F. Dennis Saylor, IV

<u>Submitted by</u>:

Counsel for RSM McGladrey, Inc.

Robert L. Kann (BBO# 258025)
Peter J. Karol (BBO # 660338)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Telephone:  (617) 443-9292 x326
Facsimile:   (617) 443-0004
rkann@bromsun.com
pkarol@bromsun.com

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

Case No. 05-40151 FDS

Honorable F. Dennis Saylor, IV

## DECLARATION OF KATHY A. KARCHER

I, Kathy A. Karcher, hereby certify the following, pursuant to 28 U.S.C. § 1746:

1.      My name is Kathy A. Karcher, and I am an attorney licensed to practice law in the State of Illinois.

2.      I am outside counsel for non-party subpoena recipient RSM McGladrey, Inc. ("RSMM"), a corporation headquartered in Bloomington, Minnesota.

3.      I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, can do so competently under oath.

4.      The documents attached as RSMM Exhibits 3 and 4 are true and correct copies of the October 20, 2006 and October 23, 2006 subpoena and documents requests served on RSMM in this matter.

5.      The document attached as RSMM Exhibit 5 is a true and correct copy of the subpoena objections RSMM served on Defendant United States of America ("Defendant") in this matter.

6.      The documents attached as RSMM Exhibits 6 through 8 are true and correct copies of certain correspondence that counsel for RSMM and counsel for Defendant exchanged in this matter.

7.      The document attached as RSMM Exhibit 9 is a true and correct copy of the results of the search that I ran on March 30, 2007, at no cost, on the Massachusetts corporation search website available at http://corp.sec.state.ma.us/corp/corpsearch/corpsearchinput.asp.

8.      The document attached as RSMM Exhibit 10 is a true and correct copy of the proposed protective order that counsel for Defendant sent to counsel for RSMM on or about January 19, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Chicago, Illinois, on March 30, 2007.


_____s/Kathy A. Karcher/_____

Kathy A. Karcher
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL 60611
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484

# EXHIBIT 3

AO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF                    **MASSACHUSETTS**

Fidelity International Currency Advisor A Fund, LLC                    **SUBPOENA IN A CIVIL CASE**

V.

United States of America                    Case Number:[1]  05-40151-FDS

TO:  RSM McGladrey, Inc.
     24 Federal Street
     Boston, MA 02110

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
   in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects):

See Attachment to Subpoena to RSM McGladrey Inc. for the Production of Documents

| PLACE   United States Attorney's Office | DATE AND TIME |
|---|---|
| One Courthouse Way, John Joseph Moakley Courthouse, Boston, MA 02210 | 10/30/2006 10:00 am |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)     *Attorney for Defendant* | DATE    10/20/2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Barry E. Reiferson; US Department of Justice, Tax Division, P.O. Box 55, Ben Franklin Station, Washington, DC 20001
(202) 514-6058

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
                          )
          Plaintiff, )      Civil No. 05-40151-FDS
                          )
     v.                  )      Judge Saylor
                          )
UNITED STATES OF AMERICA, )
                          )
          Defendant. )

## ATTACHMENT TO SUBPOENA TO RSM MCGLADREY INC.
## FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Custodian of Records for

RSM McGladrey, Inc. is hereby required to produce for inspection and copying the documents set

forth below, from whichever office or location these documents may exist.

The production of the requested documents may be effected by mailing the originals or

clear copies of each to Barry E. Reiferson, Trial Attorney, Tax Division, United States

Department of Justice, Post Office Box 55, Ben Franklin Station, Washington, DC 20044. If you

are unwilling or unable to transmit originals or copies in the manner described above, you are

requested to advise the undersigned counsel for the United States forthwith upon receipt hereof,

in which event the documents requested herein will be produced for inspection and copying at the

office of the United States Attorney, John Joseph Moakley United States Courthouse, Suite 9200,

1 Courthouse Way, Boston, MA 02210, on October 30, 2006, at 10:00 a.m., and continuing from

day to day thereafter for so long as is reasonably necessary to examine and copy them.

Page 1 of 26

1958805.1

## DEFINITIONS

1.  As used herein, (a) the singular shall include the plural, and vice versa, (b) masculine and feminine pronouns shall be deemed to be interchangeable, (c) the words "or" and "and" shall mean "and/or," and the word "or" shall not be interpreted to narrow the scope of any request and shall be interpreted in its broadest sense, as denoting "and/or," (d) the words "any" and "all" shall mean "any and all," and the word "any" shall not be interpreted to narrow the scope of any discovery or other request, and shall be interpreted in its broadest sense, as denoting "any and all."

2.  The term "document," and derivatives and pluralizations of the same, is to be liberally construed to include all originals, copies, and nonidentical copies (whether by reason of handwritten notations thereon or otherwise) kept in any form including paper and electronic forms, including but not limited to the following: any letter, report, record, corporate minute, memorandum, contract, affidavit, agreement, appraisal, deed, lease, book, record, summary or record of personal conversation, routing slip, correspondence, communication of any nature, note, notebook of any character, ledger, financial statement, material, literature, brochure, publication, prospectus, offering, computation, check or other instrument, computer tape or disk, photograph, phonorecord, electronic transmission including but not limited to electronic mail, telegram, telex and telephone facsimile, and any other type of written or documentary or other tangible material on which information or data may be recorded, stored, or otherwise contained. As to any document that is written in another language, the term "document" also includes any translation of that document into English. As to any document in electronic form, the

Page 2 of 26

1958805.1

term "document" includes all metadata associated with document, as well as all printed versions of the document.

3. A document "relating to" a given subject matter means a document or statement that relates to, constitutes, embodies, compromises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to, that subject matter.

4. The terms "possession," "custody," and "control" include actual and constructive possession, custody, or control. These requests include any document or thing that you possess or have the right to obtain from a third party upon demand, or which otherwise may be secured from any other source for the purpose of fully responding to these requests, including attorneys, accountants or other agents.

5. The term "person" shall be construed to mean and include an individual, trust, estate, partnership, company, corporation, governmental body, or other entity, whether domestic or foreign.

6. The terms "The Diversified Group" and "DGI" refer to The Diversified Group, Incorporated, a Delaware corporation, and its affiliated companies, including, but not limited to, Diversified Financial Corp., Diversified Capital Corp., Diversified Capital Leasing Corp., and Diversified Capital International Inc., and to employees, officers, and/or shareholders thereof, including, but not limited to, James Haber, Orrin Tilevitz, and Steven F. Jacoby.

7. The term "Helios" refers to Helios Financial LLC, Helios Group LLC, Helios Advisory LLC, and Helios Trading LLC, each located at 401 N. Michigan Avenue, Suite 2950,

1958805.1

Chicago, IL, or at 225 West Washington Street, Suite 2200, Chicago, IL, or at 950 Third Avenue, 23rd Floor, NY, NY, and to Helios Group, Inc., a Delaware corporation, and all employees, members, and/or partners of any of those entities, including, but not limited to, Mox Tan, Phil Kampf, James Haber and Orrin Tilevitz.

8. The term "Alpha" refers to Alpha Consultants, LLC, a Florida limited liability company; Alpha Consultants, Inc., a Florida corporation; Alpha Strategic Management, Ltd., a Florida limited partnership; and Alpha Strategic Management, LLC, a Florida limited liability company; and all employees, members, and/or partners thereof, including, but not limited to, Ivan J. Ross, Robert H. Fasulu, G. Felix Cua, Yoshiyuki Nobumoto, Ronald Buesinger, Michael G. Leonard, and Donald S. Uderitz.

9. The term "Refco" refers to Refco Capital Markets, Ltd., which has or had an office at 200 Liberty Street, 23rd Floor, New York, NY 10281, and to Refco Securities, LLC, which has or had an office at One World Financial Center, 24th Floor, New York, NY 10281, and all employees, members, and/or partners thereof, including, but not limited to, Thomas Yorke, Elizabeth Jung, Cathleen Scappatura, Miriam, LaFuente, Jim Behrmann, Angie Lee, Alex Vojvodich, Mathew Hoff, David Weaver, and Walter Peters.

10. The term "Trilogy" refers to Trilogy Financial Products, Ltd.; Trilogy Investments, Ltd.; and their related entities, including, but not limited to, any related entity which has or had an office at 14 Athol Street, Douglas, Isle of Man, or at 5-11 St. Georges Street, Douglas, Isle of Man; and all employees and/or partners thereof, including, but not limited to, Mox Tan, Phil Kampf, James Haber, Orrin Tilevitz, and John Huber.

11. The terms "Samuel Mahoney" and "Mahoney" refer to Samuel Mahoney, Martin

1958805.1

Hawkes, John Hussey, Biosphere Finance, and/or Biosphere Holdings.

12. The term "Carruth" refers to Carruth Associates LLC and Carruth Management LLC, which have or had an office at 116 Flanders Rd., Westborough, MA 01581, and all employees, members, and/or partners thereof, including, but not limited to, Robin Calkins, Michael Egan, Carolyn Fiddy, David Henry, Judy Irvin, Jim Reiss, Melissa Seaver, and Pat Shea.

13. The term "Tequesta" refers to Tequesta Capital Advisors LP, Tequesta Fund LP, and their related entities, which have or had an office at 4270 S Decatur Blvd., Las Vegas, NV 89103 and/or at 3801 PGA Blvd., Palm Beach Gardens, FL 33410, and all employees, members, and/or partners thereof, including, but not limited to, Ron Buesinger, Gary Helene, and Ivan Ross.

14. The term "Proskauer Rose" refers to the law firm of Proskauer Rose, LLP, which has an office at One International Place, Boston, MA 02110-2600, and all employees and/or partners thereof, including, but not limited to, Ira Akselrad and Matthew Sabloff.

15. The term "Brown & Wood" refers to the law firm of Brown & Wood and its successor in interest, Sidley Austin Brown & Wood (n/k/a Sidley Austin LLP), and all employees and/or partners thereof, including, but not limited to, R.J. Ruble, Jacob Amato, John Felkamp, Susan L. Sodano, Thomas Humphries, Paul Cringle, and Eric Haueter.

16. The term "Lord Bissell" refers to the law firm of Lord Bissell & Brook, LLP, 111 South Wacker Drive, Chicago, IL 60606, and all employees and/or partners thereof, including, but not limited to, John Trustkowski, John Hughes, and Sergei Mytko.

17. The term "BWM&S" refers to the law firm of Burke, Warren, McKay & Serritella, P.C.,

195R805.1

which has an office at 330 North Wabash Avenue, 22nd Floor, Chicago, Illinois 60611-3607, and all employees and/or partners thereof, including, but not limited to, Stephanie Denby.

18. The term "Brown Raysman" refers to the law firm of Brown Raysman Millstein Felder & Steiner LLP, which has an office at 900 Third Avenue, New York, NY 10022-4728, and all employees and/or partners thereof, including, but not limited to, Thomas Levato.

19. The term "Bryan Cave" refers to the law firm Bryan Cave, LLP, which has an office at 700 Thirteenth Street, N.W., Washington, DC 20005-3960, and all employees and/or partners thereof, including, but not limited to, John Barrie, Kathleen M. Gamcana, and Elizabeth Ann Smith.

20. The term "Solomon and Weinberg" refers to the law firm of Solomon and Weinberg, located at 685 Third Avenue, New York, NY 10017, or at 900 Third Avenue, New York, NY 10022, and all employees and/or partners thereof, including, but not limited to, Craig H. Solomon and Mark Weinberg.

21. The terms "BDO" and "BDO Seidman" refer to the accounting firm of BDO Seidman, LLP, and all employees and/or partners thereof, including, but not limited to, Charles Bee, Pam Packard, Larry Cohen, Michael Kerekes, Robert Greisman, Paul Shanbrom, Dennis Field, David Dimuzio, Dicker, Klausner, Dudzinsky, Luchs, Huntzinger, Puckett, Moorman, and Jones.

22. The term "KPMG" includes both KPMG, LLP, a Delaware Limited Liability Partnership, and KPMG International, a Swiss association, and all employees and/or partners thereof, including, but not limited to, Timothy Patrick Speiss, Stephen J. Spruck, Brent S.

Lipschultz, Holly T. Belanger, Monica M. Odoy, Deborah A. Fields, Daniel J. Coburn, Rob Arthur, Robert Pritti, Leslie Kost, Steven Gremminger, Randall Bickham, Jeffrey Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Weisner, Mark Watson, Larry DeLap, David Greenberg, Carol Warley, Carl Hasting, Richard Rosenthal, and Brian Rivotto.

23.   The term "Grant Thornton" refers to the accounting firm of Grant Thornton, LLP, and all employees and/or partners thereof, including, but not limited to, Israel Press and Joseph Machara.

24.   The term "RSM McGladrey" refers to the accounting firm of RSM McGladrey, Inc., and all employees and/or partners thereof, including, but not limited to, Ronald G. Wainwright, Jr.

25.   The term "SOS" refers to the product known as "Short-Option Strategy" and all variants thereof, including, but not limited to, the Financial Derivatives Investment Strategy ("FDIS").

26.   The term "FDIS" refers to the product known as "Financial Derivatives Investment Strategy," also referred to as the "Diversified Strategy," the "Partnership Strategy," "Short-Option Strategy," and "Partnership Option Strategy."

27.   The term "Tax Shelter Products" refers to SOS, FDIS, and any other tax shelter product the same as or similar to those transactions identified in IRS Notice 2000-44.

28.   The term "FICA A Fund" refers to Fidelity International Currency Advisor A Fund LLC, EIN 36-4381795.

29.   The term "Fidelity World" refers to Fidelity World Currency Advisor A Fund, LLC.

1958805.1

30. The term "Egan" refers to Richard Egan and/or Maureen Egan, and any of their consultants, advisors, agents, partners, or employees.

31. The term "client-specific" means relating to a specific RSM McGladrey client or group of clients, or to any other person or entity, identifiable by name(s).

32. The term "Tax Opinion Committee" means any committee assigned to review, or responsible for reviewing, tax products including SOS and/or FDIS.

## INSTRUCTIONS

1. If a document was, but no longer is, in your possession, custody or control, state:

   a. how the document was disposed of;

   b. the name, current address, and telephone number of the person who currently has possession, custody or control over the document;

   c. the date of disposition;

   d. the name, current address, and telephone number of each person who authorized said disposition or who had or has knowledge of said disposition.

2. If a document cannot be located, describe with particularity the efforts made to locate the document and the specific reason for its disappearance or unavailability.

3. If a document has information on both sides, provide copies of both sides or make available the original document.

4. To the extent that any document is written both in English and another language, provide a copy of the document written in English.

5. If any document has been previously produced to the Internal Revenue Service ("IRS") in the course of any examination, the document should be produced with the same Bates number

1958805.1

used in the production to the IRS.

6.   If any document has been previously produced to the Senate Permanent Subcommittee on Investigations ("PSI"), the document should be produced with the same Bates number used in the production to the PSI.

7.   For documents that have not been produced to the IRS or the PSI, please number them consecutively with a Bates-stamp identifier that is distinguishable from those used in the prior productions to the IRS and the PSI. We suggest you use Bates-stamp numbers beginning with the prefix "RSM-F".

8.   We request that the custodian of records for RSM McGladrey certify the documents requested pursuant to Rule 902(11) of the Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code. A proposed certification is enclosed. Please forward the certification as soon as possible, although its execution should in no way delay your production of the requested documents by the subpoena's return date.

9.   If any document is withheld under any claim of privilege or for any reason, list such documents by supplying separately as to each such document the following information:

   a.   the date of the document, the type of document (e.g. letter, notebook, etc.), and the number of pages of which it consists;

   b.   the date on which the document came into your possession or control, if different from the date appearing on the document itself;

   c.   the name and title of the signer of the document (and if it was not signed, the answer shall so state and shall give the name and title of the person who prepared it, if known, and if not known, shall so state);

1958805.1

d.    the name and title of each recipient or addressees of such document (whether specifically named therein or not);

e.    the present whereabouts of the document and the name and address of the custodian thereof;

f.    an indication that you claim privilege therefor with a citation to the statute, regulation or rule claimed to apply;

g.    a brief statement of the grounds on which the claim of privilege rests;

h.    a general statement of the subject matter; and

i.    the identity of each person (and his or her position) who received a copy of such document after the time of initial distribution.

All of the above is required so that the United States may have the factual basis to determine whether such documents are, in fact, privileged. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any statute or regulation.

10.    If a document in electronic form is password protected, the password protection is to be disabled and/or the password to overcome the password protection is also to be produced.

11.    The documents shall be produced as they are kept in the usual course of business and shall be organized and labeled to correspond with the separately-numbered request(s) to which they are responsive.

12.    Unless otherwise provided, these requests encompass any responsive document created at any time from January 1, 2000 to present.

1958805.1

## REQUESTS FOR PRODUCTION

The documents requested under this subpoena relate to RSM McGladrey's involvement in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or reporting of certain transactions, including, but not limited to, the design, development, marketing, promotion, implementation, opining on, and/or reporting of SOS and/or FDIS. In connection with this request, please provide or make available for our review and copying the following specific categories of documents in your possession, custody, or control:

### Identification of Current and Former Personnel

1.  All documents identifying the current address or last known address of all persons who participated in any way in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or reporting of SOS and/or FDIS.

### Documents Relating to any IRS Promoter Investigation and to Document Retention

2.  All documents that RSM McGladrey has produced to the Internal Revenue Service ("IRS") in the course of any IRS promoter investigation, to be produced in the same form in which they were produced to the IRS.

3.  All documents RSM McGladrey received from the IRS in the course of any IRS promoter investigation.

4.  All transcripts memorializing any interviews of RSM McGladrey personnel in the course of any IRS promoter investigation.

5.  All documents memorializing or relating to the document-retention policy of RSM McGladrey, Refco, DGI, Trilogy, Helios, and/or Alpha, including, but not limited to, documents directing the destruction or transfer of documents of RSM McGladrey, Refco,

1958805.1

DGI, Trilogy, Helios, and/or Alpha.

## Generic Documents Relating to Tax Shelter Products

6.  All electronic mail to or from RSM McGladrey relating to SOS and/or FDIS, including, but not limited to, electronic mail to or from DGI, Helios, Alpha, Refco, Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BWM&S, Brown Raysman, and Solomon and Weinberg.

7.  All internal RSM McGladrey electronic mail relating to SOS, FDIS, Trilogy, Mahoney, Helios, Refco, Alpha, and/or DGI.

8.  All notes relating to any conference or conference call concerning SOS and/or FDIS.

9.  All documents relating to any FDIS PowerPoint presentation forwarded to RSM McGladrey, including but not limited to, RSM McGladrey's review of any such FDIS PowerPoint presentation.

10. All documents relating to any draft opinion provided to RSM McGladrey and/or RSM McGladrey's comments on any such opinion, including, but not limited to, RSM McGladrey's questions and comments concerning any such opinion.

11. All documents relating to RSM McGladrey's revision or modification, or suggested revision or modification, of FDIS, including, but not limited to, the role of preferred stock.

12. All documents relating to RSM McGladrey's internal approval of FDIS by a Tax Opinion Committee.

13. All documents relating to the development of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, confidentiality

1958805.1

agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft

opinions, invoices, handwritten notes, and correspondence.

14. All documents relating to the promotion of SOS and/or FDIS, including, but not limited

to, all form documents, standardized documents, templates, PowerPoint presentations,

marketing opinions, listing agreements, confidentiality agreements, engagement letters,

training materials, outlines, pro forma tax returns, handwritten notes, and correspondence.

15. All documents relating to the marketing of SOS and/or FDIS, including, but not limited

to, all form documents, standardized documents, templates, PowerPoint presentations,

marketing opinions, listing agreements, confidentiality agreements, engagement letters,

training materials, outlines, pro forma tax returns, handwritten notes, and correspondence.

16. All documents relating to the implementation of SOS and/or FDIS, including, but not

limited to, all form documents, standardized documents, templates, confidentiality

agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft

opinions, invoices, handwritten notes, and correspondence.

17. All documents relating to the reporting of SOS and/or FDIS, including, but not limited to,

all form documents, standardized documents, templates, confidentiality agreements,

engagement letters, outlines, pro forma tax returns, closing binders, draft opinions,

invoices, handwritten notes, and correspondence.

18. All documents generated by RSM McGladrey relating to the development, marketing,

promotion, implementation, and/or reporting of SOS and/or FDIS.

19. All documents relating to the involvement of RSM McGladrey in SOS and/or FDIS,

including, but not limited to, all documents relating to the development, marketing,

promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

20.    All documents relating to the involvement of Helios in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, issuance of opinions regarding, implementation, and/or reporting of SOS and/or FDIS.

21.    All documents relating to the involvement of Alpha in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

22.    All documents relating to the involvement of Mahoney in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

23.    All documents relating to the involvement of DGI in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

24.    All documents relating to the involvement of Trilogy in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

25.    All documents relating to the involvement of Carruth in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

26.    All documents relating to the involvement of Tequesta in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion,

1958805.1

implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

27. All documents relating to the involvement of Brown & Wood in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

28. All documents relating to the involvement of Bryan Cave in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

29. All documents relating to the involvement of Lord Bissell in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

30. All documents relating to the involvement of BWM&S in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

31. All documents relating to the involvement of Brown Raysman in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

32. All documents relating to the involvement of Solomon and Weinberg in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

1958805.1

33. All documents relating to the involvement of Proskauer Rose in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

34. All documents relating to the involvement of KPMG in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

35. All documents relating to the involvement of BDO in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

36. All documents relating to the involvement of Grant Thornton in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

37. All documents relating to the involvement of Refco in SOS and/or FDIS, including, but not limited to, all documents relating the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

38. To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were developed.

39. To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be promoted, including all draft documents.

40. To the extent not provided in response to requests 1 through 37, all documents relating to

1958805.1

how SOS and/or FDIS were to be marketed, including all draft documents.

41.  To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be implemented, including all draft documents.

42.  To the extent not provided in response to requests 1 through 37, all documents relating to how opinions were to be issued for SOS and/or FDIS by Proskauer Rose, Brown & Wood, Lord Bissell, BWM&S, Brown Raysman, Bryan Cave, and/or any other entity.

43.  All documents discussing or referencing IRS Notice 99-59, Notice 2000-44, and/or the list maintenance requirements under 26 U.S.C. §6112.

44.  All documents relating to the potential or actual availability and/or willingness of any law firm and/or lawyer to write an opinion for the SOS and/or FDIS transactions, including, but not limited to, documents relating to the decision to have more than one law firm write an opinion.

45.  All documents relating to the proposed language of the opinions to be issued by Proskauer Rose, Brown & Wood, Lord Bissell, BWM&S, Brown Raysman, Bryan Cave, Solomon and Weinberg, and/or any other entity, for SOS and/or FDIS, including all drafts of the opinions.

46.  All documents relating to how client-representation letters were to be prepared for SOS and/or FDIS, including, but not limited to, any documents relating to the representations that were to be made by participants and drafts of the form representation letter(s).

47.  All documents relating to how SOS and/or FDIS were to be reported for federal and/or state tax purposes, including, but not limited to, the use of pro forma tax returns.

48.  All documents relating to the steps for implementation of SOS and/or FDIS.

1958805.1

49. All documents, including draft documents, relating to the fees for SOS and/or FDIS, including documents relating to fee calculation and invoicing.

50. All documents, including all draft documents, relating to how Mahoney was to be paid, or to Mahoney's payment, with respect to SOS and/or FDIS, including, but not limited to, wire transfers, checks, account statements, employment contracts, loan agreements, and/or documents concerning forgiveness of debt.

51. To the extent not provided in response to requests 49 through 50, all documents indicating how any person or other entity, including RSM McGladrey, was to be compensated, directly and/or indirectly, with respect to the development, promotion, marketing, implementation, opining on, and/or reporting of the SOS and/or FDIS transactions, including, but not limited to, any royalties, kickbacks, or any other form of compensation.

52. To the extent not provided in response to requests 49 through 51, all documents, including draft documents, relating to the fees and other compensation relating to SOS and/or FDIS, including, but not limited to, documents relating to RSM McGladrey's fees and other compensation, allocable bonuses to RSM McGladrey personnel, fee calculation, and invoicing.

### Client-Specific and Other Documents Relating to SOS and/or FDIS

53. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of the SOS and/or FDIS transactions, including, but not limited to, RSM McGladrey's consulting agreements, engagement letters, and documents relating thereto.

1958805.1

54.   All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through Grant Thornton, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

55.   All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through KPMG, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

56.   All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through BDO, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

57.   All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Proskauer Rose issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

58.   All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Brown & Wood issued an opinion, including, but not limited to,

1958805.1

those transactions which involved the individuals and entities identified in Appendix A.

59. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Bryan Cave issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

60. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Lord Bissell issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

61. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Solomon and Weinberg issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

62. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which BWM&S issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

63. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Brown Raysman issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

64. All client-specific documents relating to the development, marketing, promotion,

1958805.1

implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which RSM McGladrey issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

65. To the extent not provided in response to requests 53 through 64 all client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of all SOS and/or FDIS transactions, including, but not limited to, those transactions involving Trilogy, Mahoney, Egan, Carruth, Tequesta, and the individuals and entities identified in Appendix A.

66. All opinions, including draft opinions, relating to the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

67. All federal and state tax returns reporting any SOS and/or FDIS transaction, including, but not limited to, the returns for the transactions involving the individuals and entities identified in Appendix A.

68. All notes taken by RSM McGladrey, including by its employees, officers, partners, members, and/or shareholders, or by third parties, at sales or promotional meetings for SOS and/or FDIS, including, but not limited to, those taken at meetings relating to transactions involving the individuals and entities identified in Appendix A.

69. All outlines of proposed SOS and/or FDIS transactions, including, but not limited to, all documents entitled "Outline of Proposed Transaction."

70. All documents relating to the signing of any confidentiality agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions

1958805.1

involving the individuals and entities identified in Appendix A.

71. All documents relating to any engagement agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

72. All documents relating to any representation letters for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

73. All closing binders for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

74. All Operating Agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

75. All Contribution Agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

76. All master agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to the transactions involving the individuals and entities identified in Appendix A.

77. All due diligence documentation for the SOS and/or FDIS transactions, including, but not limited to, those relating to the transactions involving the individuals and entities identified in Appendix A.

1958805.1

78. All credit support agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to the FDIS transactions involving the individuals and entities identified in Appendix A, and including any third-party guarantees relating to any of the individuals and entities identified in Appendix A.

79. All documents concerning, opining on, discussing, or addressing in any way, financial risk to participants in the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

80. All documents concerning, opining on, discussing, or addressing in any way, the probability of profit and actual profitability of the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

81. All documents concerning, opining on, discussing, or addressing in any way, the business purpose of the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

82. All documents relating to any exit interviews or feedback from any of the SOS and/or FDIS participants regarding the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

83. All documents concerning, opining on, discussing, or addressing in any way, the application of the step transaction doctrine to the SOS and/or FDIS transactions,

1958805.1

including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

84. All LLC agreements for Alpha, Helios, and the entities identified in Appendix A.

85. All documents relating to the disposition of assets by any SOS and/or FDIS participant relating to any SOS and/or FDIS transaction, including, but not limited to, dispositions by Mahoney, Alpha, Helios, Refco, RSM McGladrey, and the individuals and entities identified in Appendix A.

86. All documents relating to the initial investment of any partner in any entity identified in Appendix A.

87. To the extent not provided in response to requests 1 through 86, all correspondence to or from RSM McGladrey that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS, including, but not limited to, recommendations and referrals.

88. To the extent not provided in response to requests 1 through 86, all correspondence to or from Brown & Wood that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

89. To the extent not provided in response to requests 1 through 86, all correspondence to or from Lord Bissell that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

90. To the extent not provided in response to requests 1 through 86, all correspondence to or from Bryan Cave that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

1958805.1

91.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Solomon and Weinberg that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

92.   To the extent not provided in response to requests 1 through 86, all correspondence to or from BWM&S that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

93.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Brown Raysman that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

94.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Proskauer Rose that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

95.   To the extent not provided in response to requests 1 through 86, all correspondence to or from KPMG that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

96.   To the extent not provided in response to requests 1 through 86, all correspondence to or from BDO that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

97.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Grant Thornton that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

98.   All complaints or petitions against RSM McGladrey, BDO, KPMG, Grant Thornton,

1958805.1

Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, DGI, Helios, Alpha, Mahoney (see definition above), including amended complaints or petitions relating to SOS, FDIS, or other Tax Shelter Products, filed by any person or entity identified in Appendix A.

99. To the extent not provided in response to requests 1 through 98, all records, documents, and materials created or maintained by RSM McGladrey during the years 2000 through 2002 relating to the FICA A Fund transactions at issue in this case.

Dated: October 20, 2006

BARRY E. REIFERSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Telephone: (202) 514-6058
Facsimile: (202) 514-5238
E-mail: barry.e.reiferson@usdoj.gov

1958805.1

# APPENDIX A

## __Name__

| | |
|---|---|
| 1. | 2001 Equity Trading LLC |
| 2. | Fidelity High Tech Advisor A Fund LLC |
| 3. | Fidelity High Tech Index A Fund LLC |
| 4. | Fidelity High Tech Option A Fund LLC |
| 5. | Fidelity International Currency Advisor A Fund LLC |
| 6. | Fidelity World Currency Advisor A Fund LLC |
| 7. | Acajoux Equities LLC |
| 8. | Acajoux Investments LLC |
| 9. | Acajoux Trading LLC |
| 10. | AD Global 2001 Fund LLC |
| 11. | AFFCO Investments 2001 LLC |
| 12. | Affco, LLC |
| 13. | AHG Investments LLC |
| 14. | AHG Trading LLC |
| 15. | Akselrad, Harold |
| 16. | Aldridge, David S. |
| 17. | Alpine Group, Inc. |
| 18. | AMJ Trading LLC |
| 19. | AN Investments LLC |

# APPENDIX A

20. AN Trading LLC

21. Anbar Investments LLC

22. Anbar Trading LLC

23. Anbar, Inc.

24. Bennett, Phillip R.

25. BET Trading LLC

26. BFS Trading 2001 LLC

27. BGH Trading LLC

28. Buske, Thomas A.

29. Butler, William

30. Caputo, Edward G.

31. CCP Trading LLC

32. CF Trading LLC

33. CFPT Investments LLC

34. CFPT Investments LLC

35. CGG Auto Trust

36. CGK Trading LLC

37. CGS Auto Trust

38. Chadds Peak Investments LLC

39. Cheris, Albert B.

1950326.1

# APPENDIX A

40. Chester Investors LLC

41. CHS Trading LLC

42. Ciasulli, Robert G.

43. Ciasulli, Ronald J.

44. Ciccarello, Rudy

45. Civello, Nelson

46. CJT Trading LLC

47. Cliffside Investments LLC

48. Cole, Robert

49. Corporex Investments LLC

50. Corporex Realty & Investment Corp.

51. Corporex Trading LLC

52. Cowan Investments LLC

53. Cowan, David

54. Crawford, Reagan

55. CSH Investments LLC

56. CTN Trading LLC

57. DC Trading LLC

58. DJR Investments LLC

59. DJR Trading LLC

# APPENDIX A

60. DP Trading LLC

61. DPT Trading LLC

62. DRG Trading LLC

63. DSG Trading LLC

64. DTH Trading LLC

65. DWT Investments LLC

66. DWT Trading LLC

67. Dziedzic, Stanley, J.

68. Egan, Maureen

69. Egan, Richard

70. EGC Investments 2001 LLC

71. EGC Trading LLC

72. Elbaum, Steven S.

73. Equity Trading 2001 Fund LLC

74. Europa International, Inc

75. Europa International, Inc.

76. Europa Investments LLC

77. Europa Trading LLC

78. Francis, Joseph

79. Francois, Curtis

1950326.1

# APPENDIX A

80. FX Investments LLC

81. Gabriel Trading LLC;

82. Garvy, Robert

83. Geewax, John J.

84. Geewax, Terker & Co.

85. Geewax, Terker & Company

86. Geisecke, John

87. GG Auto Trus

88. Giffen, Catherine K.

89. Ginsburg, Alan

90. GN Investments LLC

91. GN Trading LLC

92. Gould, Suzanne Grossinger

93. Grossinger Motor Corp., Inc.

94. Grossinger, Caroline

95. Grossinger, Garry

96. Grossinger, Schiller

97. Grossinger, Sharon

98. Grossinger, Suzanne

99. Grossprops Associates LLC

# APPENDIX A

100. GT Investments 2001 LLC

101. Gupta Investments LLC

102. Gupta, D.R.

103. Gupta, D.S.

104. Gupta, Jai N.

105. Gupta, Shasi A.

106. Holland, David T.

107. Holland, David T.

108. Hoyt, Barry G.

109. HWN Trading LLC

110. Irrevocable Trust for Christopher J. Theis

111. Irrevocable Trust for Dennis P. Theis

112. Irrevocable Trust for Dennis W. Theis

113. Irwin Grossinger Trust

114. Jacob Trading LLC

115. Jacqueline Trading LLC;

116. Jarmel, Andrew M.

117. JB Trading LLC

118. JES Trading LLC

119. JHP Trading LLC

Appendix A, Page 6 of 13

1950326.1

# APPENDIX A

120. JHT Investments LLC

121. JHT Trading LLC

122. JJG Trading LLC

123. JLS Investments LLC

124. JLS Trading LLC

125. JMG Trading LLC

126. JNG Trading LLC

127. JRF Investments LLC

128. JRF Trading LLC

129. JSB Trading, Inc.

130. JZ Trading LLC

131. Kastin

132. Kealakeva Investments LLC

133. Kutler Investments LLC

134. Kutler, Jon

135. Laurelgrove Ltd.

136. LG88 Trading LLC

137. Lunt Realty Corp.

138. Mastin

139. Maxin Corporation

# APPENDIX A

140.  McNeill Family Partnership

141.  McNeill, John "Sandy"

142.  McNeill, Ronald "Ronnie"

143.  MCP Trading LLC

144.  MFP Equities LLC

145.  NDC Investments LLC

146.  NDC Trading LLC

147.  Nix, Harold W.

148.  NJR Trading LLC

149.  NPR Investments LLC

150.  NPR Investments LLC

151.  NPR Investments LLC

152.  Nussdorf, A.

153.  Nussdorf, G.

154.  Nussdorf, R.

155.  Nussdorfs, S.

156.  Paley, Douglas

157.  Paley, Steven

158.  Paley, William

159.  Palitz, Michael C.

1950326.1

# APPENDIX A

160. Patterson, Charles C.

161. PCT Trading LLC

162. Perles, Steven R.

163. Pitt Des Moines, Inc.

164. Portillo, Richard

165. Powers Childrens Trust

166. Power, John

167. PT Trading LLC

168. RAG Investments LLC

169. RAG Trading LLC

170. RAS Investments 2001 LLC

171. RAS Trading 2001 LLC

172. RC Investments LLC

173. RC Trading, LLC

174. Reid, Daniel J.

175. RGC Investments LLC

176. RGC Trading LLC

177. RGW Investments LLC

178. RGW Trading LLC

179. RJC Investments LLC

# APPENDIX A

180.   RJC Investments LLC

181.   RJP Investments LLC

182.   RJS Investments LLC

183.   RJS Investments LLC

184.   RJS Trading LLC

185.   RM Equities LLC

186.   RM Investments 2001 LLC

187.   RM Portfolio LLC

188.   RM Trading LLC

189.   RMC Trading LLC

190.   RN Investments LLC

191.   RN Trading LLC

192.   Roach, Nelson J.

193.   RT Investments 2001 LLC

194.   RT Trading LLC

195.   RWC Investments LLC

196.   RWC Trading LLC

197.   Sabella, Richard J.

198.   SAG Trading LLC

199.   Samuel Trading LLC

1950326.1

# APPENDIX A

200. Schiller, Carolina Grossinger

201. Schostak, Jerome

202. Schut, Bragi F.

203. Scommenga, Roger A.

204. SE Trading 2001 LLC

205. SEBFS Investments LLC

206. SEBFS Investments LLC

207. Sheridan Investments LLC

208. Sheridan Trading 2001 LLC

209. Siegel, David R.

210. SJD Investments LLC

211. SJD Trading LLC

212. Slevin, James E.

213. SM Equities LLC

214. SM Investments LLC

215. SM Portfolio LLC

216. SM Trading LLC

217. SN Investments LLC

218. SN Trading LLC

219. Solomon, Craig

# APPENDIX A

220. SP Trading LLC

221. SRP Trading LLC

222. Stein, Keith

223. Steven R. Perles, PC

224. TAB Investments 2001 LLC

225. TAB Trading LLC

226. Tafeen Family trust

227. Taylor, James

228. Tenex Corp.

229. Tenex Corporation

230. Tenex Trading LLC

231. Terker, Bruce E.

232. TFT Investments 2001 LLC

233. TFT Trading LLC

234. Theis Investments LLC

235. Theis Investments LLC

236. Theis Investments LLC

237. Theis Investments LLC

238. Theis, James

239. Theis, Thomas J.

1950326.1

# APPENDIX A

240. Theis, William F. Sr.

241. Theis, William F. Jr.

242. Thomas, Paul

243. TJT Trading LLC

244. Tschetter, Ron

245. Wainwright, Ron

246. WFT Investments LLC

247. WFT Trading LLC

248. WFTJR Trading LLC

249. WFTSR Trading LLC

250. Wolff Family Trust

251. WPB Trading LLC

252. Zeretksy, Jane

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
                                   )
            Plaintiff,             )      Civil No. 05-40151-FDS (D. Mass.)
                                   )
        v.                         )      Judge Saylor
                                   )
UNITED STATES OF AMERICA,          )
                                   )
            Defendant.             )

## DECLARATION OF RECORDS CUSTODIAN FOR RSM MCGLADREY, INC

I, _____, pursuant to Rule 902(11) of the

Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code, do hereby certify as

follows:

1.    I am a custodian of records for RSM MCGLADREY, INC.,

_____

_____(specify address). In that capacity, I am responsible for the

compilation and maintenance of records pertaining to business conducted by RSM

MCGLADREY, INC..

2.    On _____, 2006, in response to a subpoena dated October 20, 2006,

issued by the United States of America in the case of *Fidelity Int'l v. United States*, Civ. No. 05-

40151 (D. Mass.), I transmitted to the United States, through counsel, true and accurate copies of

records maintained by RSM MCGLADREY, INC.consisting of pages numbered from

_____ through _____.

1982759.1

3.    The records described in paragraph 2 above were made at or near the time of the occurrence of the

matters set forth therein by, or from information transmitted by, a person with knowledge of those

matters. RSM MCGLADREY, INC. kept those records in the course of its regularly conducted

business activity and made those records as a regular practice in its regularly conducted business

activity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2006.


_____

On behalf of RSM MCGLADREY, INC.


_____

Printed name and title of records custodian

2

1982759.1

# EXHIBIT 4

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF     MASSACHUSETTS

Fidelity International Currency Advisor A Fund, LLC

V.

United States of America

### SUBPOENA IN A CIVIL CASE

Case Number:[1] 05-40151-FDS

TO:   RSM McGladrey, Inc.
      24 Federal Street
      Boston, MA 02110

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment to Subpoena to RSM McGladrey Inc. for the Production of Documents

| PLACE   United States Attorney's Office<br>One Courthouse Way, John Joseph Moakley Courthouse, Boston, MA 02210 | DATE AND TIME<br>11/7/2006 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_     Attorney for Defendant | 10/23/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Barry E. Reiferson; US Department of Justice, Tax Division, P.O. Box 55, Ben Franklin Station, Washington, DC 20001 (202) 514-6058

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY ) 
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
                                  )
              Plaintiff, )    Civil No. 05-40151-FDS
                                  )
      v. )    Judge Saylor
                                  )
UNITED STATES OF AMERICA, )
                                  )
           Defendant. )

## ATTACHMENT TO SUBPOENA TO RSM MCGLADREY INC.
## FOR THE PRODUCTION OF DOCUMENTS

    Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Custodian of Records for

RSM McGladrey, Inc. is hereby required to produce for inspection and copying the documents set

forth below, from whichever office or location these documents may exist.

    The production of the requested documents may be effected by mailing the originals or

clear copies of each to Barry E. Reiferson, Trial Attorney, Tax Division, United States

Department of Justice, Post Office Box 55, Ben Franklin Station, Washington, DC 20044. If you

are unwilling or unable to transmit originals or copies in the manner described above, you are

requested to advise the undersigned counsel for the United States forthwith upon receipt hereof,

in which event the documents requested herein will be produced for inspection and copying at the

office of the United States Attorney, John Joseph Moakley United States Courthouse, Suite 9200,

1 Courthouse Way, Boston, MA 02210, on November 7, 2006, at 10:00 a.m., and continuing

from day to day thereafter for so long as is reasonably necessary to examine and copy them.

1986621.1

# DEFINITIONS

1. As used herein, (a) the singular shall include the plural, and vice versa, (b) masculine and feminine pronouns shall be deemed to be interchangeable, (c) the words "or" and "and" shall mean "and/or," and the word "or" shall not be interpreted to narrow the scope of any request and shall be interpreted in its broadest sense, as denoting "and/or," (d) the words "any" and "all" shall mean "any and all," and the word "any" shall not be interpreted to narrow the scope of any discovery or other request, and shall be interpreted in its broadest sense, as denoting "any and all."

2. The term "document," and derivatives and pluralizations of the same, is to be liberally construed to include all originals, copies, and nonidentical copies (whether by reason of handwritten notations thereon or otherwise) kept in any form including paper and electronic forms, including but not limited to the following: any letter, report, record, corporate minute, memorandum, contract, affidavit, agreement, appraisal, deed, lease, book, record, summary or record of personal conversation, routing slip, correspondence, communication of any nature, note, notebook of any character, ledger, financial statement, material, literature, brochure, publication, prospectus, offering, computation, check or other instrument, computer tape or disk, photograph, phonorecord, electronic transmission including but not limited to electronic mail, telegram, telex and telephone facsimile, and any other type of written or documentary or other tangible material on which information or data may be recorded, stored, or otherwise contained. As to any document that is written in another language, the term "document" also includes any translation of that document into English. As to any document in electronic form, the

1986621.1

term "document" includes all metadata associated with document, as well as all printed versions of the document.

3.    A document "relating to" a given subject matter means a document or statement that relates to, constitutes, embodies, compromises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to, that subject matter.

4.    The terms "possession," "custody," and "control" include actual and constructive possession, custody, or control.  These requests include any document or thing that you possess or have the right to obtain from a third party upon demand, or which otherwise may be secured from any other source for the purpose of fully responding to these requests, including attorneys, accountants or other agents.

5.    The term "person" shall be construed to mean and include an individual, trust, estate, partnership, company, corporation, governmental body, or other entity, whether domestic or foreign.

6.    The terms "The Diversified Group" and "DGI" refer to The Diversified Group, Incorporated, a Delaware corporation, and its affiliated companies, including, but not limited to, Diversified Financial Corp., Diversified Capital Corp., Diversified Capital Leasing Corp., and Diversified Capital International Inc., and to employees, officers, and/or shareholders thereof, including, but not limited to, James Haber, Orrin Tilevitz, and Steven F. Jacoby.

7.    The term "Helios" refers to Helios Financial LLC, Helios Group LLC, Helios Advisory LLC, and Helios Trading LLC, each located at 401 N. Michigan Avenue, Suite 2950,

1986621.1

Chicago, IL, or at 225 West Washington Street, Suite 2200, Chicago, IL, or at 950 Third

Avenue, 23rd Floor, NY, NY, and to Helios Group, Inc., a Delaware corporation, and all

employees, members, and/or partners of any of those entities, including, but not limited

to, Mox Tan, Phil Kampf, James Haber and Orrin Tilevitz.

8.      The term "Alpha" refers to Alpha Consultants, LLC, a Florida limited liability company;

Alpha Consultants, Inc., a Florida corporation; Alpha Strategic Management, Ltd., a

Florida limited partnership; and Alpha Strategic Management, LLC, a Florida limited

liability company; and all employees, members, and/or partners thereof, including, but not

limited to, Ivan J. Ross, Robert H. Fasulu, G. Felix Cua, Yoshiyuki Nobumoto, Ronald

Buesinger, Michael G. Leonard, and Donald S. Uderitz.

9.      The term "Refco" refers to Refco Capital Markets, Ltd., which has or had an office at 200

Liberty Street, 23rd Floor, New York, NY 10281, and to Refco Securities, LLC, which has

or had an office at One World Financial Center, 24th Floor, New York, NY 10281, and all

employees, members, and/or partners thereof, including, but not limited to, Thomas

Yorke, Elizabeth Jung, Cathleen Scappatura, Miriam, LaFuente, Jim Behrmann, Angie

Lee, Alex Vojvodich, Mathew Hoff, David Weaver, and Walter Peters.

10.     The term "Trilogy" refers to Trilogy Financial Products, Ltd.; Trilogy Investments, Ltd.;

and their related entities, including, but not limited to, any related entity which has or had

an office at 14 Athol Street, Douglas, Isle of Man, or at 5-11 St. Georges Street, Douglas,

Isle of Man; and all employees and/or partners thereof, including, but not limited to, Mox

Tan, Phil Kampf, James Haber, Orrin Tilevitz, and John Huber.

11.     The terms "Samuel Mahoney" and "Mahoney" refer to Samuel Mahoney, Martin

1986621.1

Hawkes, John Hussey, Biosphere Finance, and/or Biosphere Holdings.

12.   The term "Carruth" refers to Carruth Associates LLC and Carruth Management LLC, which have or had an office at 116 Flanders Rd., Westborough, MA 01581, and all employees, members, and/or partners thereof, including, but not limited to, Robin Calkins, Michael Egan, Carolyn Fiddy, David Henry, Judy Irvin, Jim Reiss, Melissa Seaver, and Pat Shea.

13.   The term "Tequesta" refers to Tequesta Capital Advisors LP, Tequesta Fund LP, and their related entities, which have or had an office at 4270 S Decatur Blvd., Las Vegas, NV 89103 and/or at 3801 PGA Blvd., Palm Beach Gardens, FL 33410, and all employees, members, and/or partners thereof, including, but not limited to, Ron Buesinger, Gary Helene, and Ivan Ross.

14.   The term "Proskauer Rose" refers to the law firm of Proskauer Rose, LLP, which has an office at One International Place, Boston, MA 02110-2600, and all employees and/or partners thereof, including, but not limited to, Ira Akselrad and Matthew Sabloff.

15.   The term "Brown & Wood" refers to the law firm of Brown & Wood and its successor in interest, Sidley Austin Brown & Wood (n/k/a Sidley Austin LLP), and all employees and/or partners thereof, including, but not limited to, R.J. Ruble, Jacob Amato, John Felkamp, Susan L. Sodano, Thomas Humphries, Paul Cringle, and Eric Haueter.

16.   The term "Lord Bissell" refers to the law firm of Lord Bissell & Brook, LLP, 111 South Wacker Drive, Chicago, IL 60606, and all employees and/or partners thereof, including, but not limited to, John Trustkowski, John Hughes, and Sergei Mytko.

17.   The term "BWM&S" refers to the law firm of Burke, Warren, McKay & Seritella, P.C.,

1986621.1

which has an office at 330 North Wabash Avenue, 22nd Floor, Chicago, Illinois

60611-3607, and all employees and/or partners thereof, including, but not limited to,

Stephanie Denby.

18.  The term "Brown Raysman" refers to the law firm of Brown Raysman Millstein Felder &

Steiner LLP, which has an office at 900 Third Avenue, New York, NY 10022-4728, and

all employees and/or partners thereof, including, but not limited to, Thomas Levato.

19.  The term "Bryan Cave" refers to the law firm Bryan Cave, LLP, which has an office at

700 Thirteenth Street, N.W., Washington, DC 20005-3960, and all employees and/or

partners thereof, including, but not limited to, John Barrie, Kathleen M. Gamcana, and

Elizabeth Ann Smith.

20.  The term "Solomon and Weinberg" refers to the law firm of Solomon and Weinberg,

located at 685 Third Avenue, New York, NY 10017, or at 900 Third Avenue, New York,

NY 10022, and all employees and/or partners thereof, including, but not limited to, Craig

H. Solomon and Mark Weinberg.

21.  The terms "BDO" and "BDO Seidman" refer to the accounting firm of BDO Seidman,

LLP, and all employees and/or partners thereof, including, but not limited to, Charles Bee,

Pam Packard, Larry Cohen, Michael Kerekes, Robert Greisman, Paul Shanbrom, Dennis

Field, David Dimuzio, Dicker, Klausner, Dudzinsky, Luchs, Huntzinger, Puckett,

Moorman, and Jones.

22.  The term "KPMG" includes both KPMG, LLP, a Delaware Limited Liability Partnership,

and KPMG International, a Swiss association, and all employees and/or partners thereof,

including, but not limited to, Timothy Patrick Speiss, Stephen J. Spruck, Brent S.

1986621.1

Lipschultz, Holly T. Belanger, Monica M. Odoy, Deborah A. Fields, Daniel J. Coburn, Rob Arthur, Robert Pritti, Leslie Kost, Steven Gremminger, Randall Bickham, Jeffrey Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Weisner, Mark Watson, Larry DeLap, David Greenberg, Carol Warley, Carl Hasting, Richard Rosenthal, and Brian Rivotto.

23.  The term "Grant Thornton" refers to the accounting firm of Grant Thornton, LLP, and all employees and/or partners thereof, including, but not limited to, Israel Press and Joseph Machara.

24.  The term "RSM McGladrey" refers to the accounting firm of RSM McGladrey, Inc., and all employees and/or partners thereof, including, but not limited to, Ronald G. Wainwright, Jr.

25.  The term "SOS" refers to the product known as "Short-Option Strategy" and all variants thereof, including, but not limited to, the Financial Derivatives Investment Strategy ("FDIS").

26.  The term "FDIS" refers to the product known as "Financial Derivatives Investment Strategy," also referred to as the "Diversified Strategy," the "Partnership Strategy," "Short-Option Strategy," and "Partnership Option Strategy."

27.  The term "Tax Shelter Products" refers to SOS, FDIS, and any other tax shelter product the same as or similar to those transactions identified in IRS Notice 2000-44.

28.  The term "FICA A Fund" refers to Fidelity International Currency Advisor A Fund LLC, EIN 36-4381795.

29.  The term "Fidelity World" refers to Fidelity World Currency Advisor A Fund, LLC.

1986621.1

30.     The term "Egan" refers to Richard Egan and/or Maureen Egan, and any of their

consultants, advisors, agents, partners, or employees.

31.     The term "client-specific" means relating to a specific RSM McGladrey client or group of

clients, or to any other person or entity, identifiable by name(s).

32.     The term "Tax Opinion Committee" means any committee assigned to review, or

responsible for reviewing, tax products including SOS and/or FDIS.

### INSTRUCTIONS

1.     If a document was, but no longer is, in your possession, custody or control, state:

    a.     how the document was disposed of;

    b.     the name, current address, and telephone number of the person who currently has

        possession, custody or control over the document;

    c.     the date of disposition;

    d.     the name, current address, and telephone number of each person who authorized

        said disposition or who had or has knowledge of said disposition.

2.     If a document cannot be located, describe with particularity the efforts made to locate the

document and the specific reason for its disappearance or unavailability.

3.     If a document has information on both sides, provide copies of both sides or make

available the original document.

4.     To the extent that any document is written both in English and another language,

provide a copy of the document written in English.

5.     If any document has been previously produced to the Internal Revenue Service ("IRS") in

the course of any examination, the document should be produced with the same Bates number

1986621.1

used in the production to the IRS.

6.     If any document has been previously produced to the Senate Permanent Subcommittee on Investigations ("PSI"), the document should be produced with the same Bates number used in the production to the PSI.

7.     For documents that have not been produced to the IRS or the PSI, please number them consecutively with a Bates-stamp identifier that is distinguishable from those used in the prior productions to the IRS and the PSI. We suggest you use Bates-stamp numbers beginning with the prefix "RSM-F".

8.     We request that the custodian of records for RSM McGladrey certify the documents requested pursuant to Rule 902(11) of the Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code. A proposed certification is enclosed. Please forward the certification as soon as possible, although its execution should in no way delay your production of the requested documents by the subpoena's return date.

9.     If any document is withheld under any claim of privilege or for any reason, list such documents by supplying separately as to each such document the following information:

     a.     the date of the document, the type of document (e.g. letter, notebook, etc.), and the number of pages of which it consists;

     b.     the date on which the document came into your possession or control, if different from the date appearing on the document itself;

     c.     the name and title of the signer of the document (and if it was not signed, the answer shall so state and shall give the name and title of the person who prepared it, if known, and if not known, shall so state);

1986621.1

d.      the name and title of each recipient or addressees of such document (whether

        specifically named therein or not);

e.      the present whereabouts of the document and the name and address of the

        custodian thereof;

f.      an indication that you claim privilege therefor with a citation to the statute,

        regulation or rule claimed to apply;

g.      a brief statement of the grounds on which the claim of privilege rests;

h.      a general statement of the subject matter; and

i.      the identity of each person (and his or her position) who received a copy of such

        document after the time of initial distribution.

All of the above is required so that the United States may have the factual basis to

determine whether such documents are, in fact, privileged. If a claimed privilege applies to only

a portion of any document, that portion only should be withheld and the remainder of the

document should be produced. As used herein, "claim of privilege" includes, but is not limited

to, any claim that a document either may or must be withheld from production pursuant to any

statute or regulation.

10.     If a document in electronic form is password-protected, the password protection is to be

disabled and/or the password to overcome the password protection is also to be produced.

11.     The documents shall be produced as they are kept in the usual course of business and

shall be organized and labeled to correspond with the separately-numbered request(s) to which

they are responsive.

12.     Unless otherwise provided, these requests encompass any responsive document created at

any time from January 1, 2000 to present.

1986621.1

## REQUESTS FOR PRODUCTION

The documents requested under this subpoena relate to RSM McGladrey's involvement in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or reporting of certain transactions, including, but not limited to, the design, development, marketing, promotion, implementation, opining on, and/or reporting of SOS and/or FDIS.  In connection with this request, please provide or make available for our review and copying the following specific categories of documents in your possession, custody, or control:

### Identification of Current and Former Personnel

1.    All documents identifying the current address or last known address of all persons who participated in any way in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or reporting of SOS and/or FDIS.

### Documents Relating to any IRS Promoter Investigation and to Document Retention

2.    All documents that RSM McGladrey has produced to the Internal Revenue Service ("IRS") in the course of any IRS promoter investigation, to be produced in the same form in which they were produced to the IRS.

3.    All documents RSM McGladrey received from the IRS in the course of any IRS promoter investigation.

4.    All transcripts memorializing any interviews of RSM McGladrey personnel in the course of any IRS promoter investigation.

5.    All documents memorializing or relating to the document-retention policy of RSM McGladrey, Refco, DGI, Trilogy, Helios, and/or Alpha, including, but not limited to, documents directing the destruction or transfer of documents of RSM McGladrey, Refco,

1986621.1

DGI, Trilogy, Helios, and/or Alpha.

## Generic Documents Relating to Tax Shelter Products

6.    All electronic mail to or from RSM McGladrey relating to SOS and/or FDIS, including, but not limited to, electronic mail to or from DGI, Helios, Alpha, Refco, Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, BWM&S, Brown Raysman, and Solomon and Weinberg.

7.    All internal RSM McGladrey electronic mail relating to SOS, FDIS, Trilogy, Mahoney, Helios, Refco, Alpha, and/or DGI.

8.    All notes relating to any conference or conference call concerning SOS and/or FDIS.

9.    All documents relating to any FDIS PowerPoint presentation forwarded to RSM McGladrey, including but not limited to, RSM McGladrey's review of any such FDIS PowerPoint presentation.

10.    All documents relating to any draft opinion provided to RSM McGladrey and/or RSM McGladrey's comments on any such opinion, including, but not limited to, RSM McGladrey's questions and comments concerning any such opinion.

11.    All documents relating to RSM McGladrey's revision or modification, or suggested revision or modification, of FDIS, including, but not limited to, the role of preferred stock.

12.    All documents relating to RSM McGladrey's internal approval of FDIS by a Tax Opinion Committee.

13.    All documents relating to the development of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, confidentiality

1986621.1

agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft opinions, invoices, handwritten notes, and correspondence.

14. All documents relating to the promotion of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, PowerPoint presentations, marketing opinions, listing agreements, confidentiality agreements, engagement letters, training materials, outlines, pro forma tax returns, handwritten notes, and correspondence.

15. All documents relating to the marketing of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, PowerPoint presentations, marketing opinions, listing agreements, confidentiality agreements, engagement letters, training materials, outlines, pro forma tax returns, handwritten notes, and correspondence.

16. All documents relating to the implementation of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, confidentiality agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft opinions, invoices, handwritten notes, and correspondence.

17. All documents relating to the reporting of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, confidentiality agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft opinions, invoices, handwritten notes, and correspondence.

18. All documents generated by RSM McGladrey relating to the development, marketing, promotion, implementation, and/or reporting of SOS and/or FDIS.

19. All documents relating to the involvement of RSM McGladrey in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing,

1986621.1

promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

20. All documents relating to the involvement of Helios in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, issuance of opinions regarding, implementation, and/or reporting of SOS and/or FDIS.

21. All documents relating to the involvement of Alpha in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

22. All documents relating to the involvement of Mahoney in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

23. All documents relating to the involvement of DGI in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

24. All documents relating to the involvement of Trilogy in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

25. All documents relating to the involvement of Carruth in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

26. All documents relating to the involvement of Tequesta in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion,

1986621.1

implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

27. All documents relating to the involvement of Brown & Wood in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

28. All documents relating to the involvement of Bryan Cave in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

29. All documents relating to the involvement of Lord Bissell in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

30. All documents relating to the involvement of BWM&S in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

31. All documents relating to the involvement of Brown Raysman in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

32. All documents relating to the involvement of Solomon and Weinberg in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

1986621.1

33.     All documents relating to the involvement of Proskauer Rose in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

34.     All documents relating to the involvement of KPMG in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

35.     All documents relating to the involvement of BDO in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

36.     All documents relating to the involvement of Grant Thornton in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

37.     All documents relating to the involvement of Refco in SOS and/or FDIS, including, but not limited to, all documents relating the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

38.     To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were developed.

39.     To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be promoted, including all draft documents.

40.     To the extent not provided in response to requests 1 through 37, all documents relating to

1986621.1

how SOS and/or FDIS were to be marketed, including all draft documents.

41.  To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be implemented, including all draft documents.

42.  To the extent not provided in response to requests 1 through 37, all documents relating to how opinions were to be issued for SOS and/or FDIS by Proskauer Rose, Brown & Wood, Lord Bissell, BWM&S, Brown Raysman, Bryan Cave, and/or any other entity.

43.  All documents discussing or referencing IRS Notice 99-59, Notice 2000-44, and/or the list maintenance requirements under 26 U.S.C. §6112.

44.  All documents relating to the potential or actual availability and/or willingness of any law firm and/or lawyer to write an opinion for the SOS and/or FDIS transactions, including, but not limited to, documents relating to the decision to have more than one law firm write an opinion.

45.  All documents relating to the proposed language of the opinions to be issued by Proskauer Rose, Brown & Wood, Lord Bissell, BWM&S, Brown Raysman, Bryan Cave, Solomon and Weinberg, and/or any other entity, for SOS and/or FDIS, including all drafts of the opinions.

46.  All documents relating to how client-representation letters were to be prepared for SOS and/or FDIS, including, but not limited to, any documents relating to the representations that were to be made by participants and drafts of the form representation letter(s).

47.  All documents relating to how SOS and/or FDIS were to be reported for federal and/or state tax purposes, including, but not limited to, the use of pro forma tax returns.

48.  All documents relating to the steps for implementation of SOS and/or FDIS.

1986621.1

49. All documents, including draft documents, relating to the fees for SOS and/or FDIS, including documents relating to fee calculation and invoicing.

50. All documents, including all draft documents, relating to how Mahoney was to be paid, or to Mahoney's payment, with respect to SOS and/or FDIS, including, but not limited to, wire transfers, checks, account statements, employment contracts, loan agreements, and/or documents concerning forgiveness of debt.

51. To the extent not provided in response to requests 49 through 50 , all documents indicating how any person or other entity, including RSM McGladrey, was to be compensated, directly and/or indirectly, with respect to the development, promotion, marketing, implementation, opining on, and/or reporting of the SOS and/or FDIS transactions, including, but not limited to, any royalties, kickbacks, or any other form of compensation.

52. To the extent not provided in response to requests 49 through 51, all documents, including draft documents, relating to the fees and other compensation relating to SOS and/or FDIS, including, but not limited to, documents relating to RSM McGladrey's fees and other compensation, allocable bonuses to RSM McGladrey personnel, fee calculation, and invoicing.

### Client-Specific and Other Documents Relating to SOS and/or FDIS

53. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of the SOS and/or FDIS transactions, including, but not limited to, RSM McGladrey's consulting agreements, engagement letters, and documents relating thereto.

1986621.1

54. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through Grant Thornton, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

55. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through KPMG, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

56. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through BDO, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

57. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Proskauer Rose issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

58. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Brown & Wood issued an opinion, including, but not limited to,

1986621.1

those transactions which involved the individuals and entities identified in Appendix A.

59. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Bryan Cave issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

60. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Lord Bissell issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

61. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Solomon and Weinberg issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

62. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which BWM&S issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

63. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Brown Raysman issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

64. All client-specific documents relating to the development, marketing, promotion,

· 1986621.1

implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which RSM McGladrey issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

65. To the extent not provided in response to requests 53 through 64 all client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of all SOS and/or FDIS transactions, including, but not limited to, those transactions involving Trilogy, Mahoney, Egan, Carruth, Tequesta, and the individuals and entities identified in Appendix A.

66. All opinions, including draft opinions, relating to the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

67. All federal and state tax returns reporting any SOS and/or FDIS transaction, including, but not limited to, the returns for the transactions involving the individuals and entities identified in Appendix A.

68. All notes taken by RSM McGladrey, including by its employees, officers, partners, members, and/or shareholders, or by third parties, at sales or promotional meetings for SOS and/or FDIS, including, but not limited to, those taken at meetings relating to transactions involving the individuals and entities identified in Appendix A.

69. All outlines of proposed SOS and/or FDIS transactions, including, but not limited to, all documents entitled "Outline of Proposed Transaction."

70. All documents relating to the signing of any confidentiality agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions

1986621.1

involving the individuals and entities identified in Appendix A.

71. All documents relating to any engagement agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

72. All documents relating to any representation letters for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

73. All closing binders for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

74. All Operating Agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

75. All Contribution Agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

76. All master agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to the transactions involving the individuals and entities identified in Appendix A.

77. All due diligence documentation for the SOS and/or FDIS transactions, including, but not limited to, those relating to the transactions involving the individuals and entities identified in Appendix A.

1986621.1

78.    All credit support agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to the FDIS transactions involving the individuals and entities identified in Appendix A, and including any third-party guarantees relating to any of the individuals and entities identified in Appendix A.

79.    All documents concerning, opining on, discussing, or addressing in any way, financial risk to participants in the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

80.    All documents concerning, opining on, discussing, or addressing in any way, the probability of profit and actual profitability of the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

81.    All documents concerning, opining on, discussing, or addressing in any way, the business purpose of the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

82.    All documents relating to any exit interviews or feedback from any of the SOS and/or FDIS participants regarding the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

83.    All documents concerning, opining on, discussing, or addressing in any way, the application of the step transaction doctrine to the SOS and/or FDIS transactions,

including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

84. All LLC agreements for Alpha, Helios, and the entities identified in Appendix A.

85. All documents relating to the disposition of assets by any SOS and/or FDIS participant relating to any SOS and/or FDIS transaction, including, but not limited to, dispositions by Mahoney, Alpha, Helios, Refco, RSM McGladrey, and the individuals and entities identified in Appendix A.

86. All documents relating to the initial investment of any partner in any entity identified in Appendix A.

87. To the extent not provided in response to requests 1 through 86, all correspondence to or from RSM McGladrey that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS, including, but not limited to, recommendations and referrals.

88. To the extent not provided in response to requests 1 through 86, all correspondence to or from Brown & Wood that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

89. To the extent not provided in response to requests 1 through 86, all correspondence to or from Lord Bissell that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

90. To the extent not provided in response to requests 1 through 86, all correspondence to or from Bryan Cave that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

1986621.1

91.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Solomon and Weinberg that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

92.   To the extent not provided in response to requests 1 through 86, all correspondence to or from BWM&S that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

93.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Brown Raysman that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

94.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Proskauer Rose that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

95.   To the extent not provided in response to requests 1 through 86, all correspondence to or from KPMG that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

96.   To the extent not provided in response to requests 1 through 86, all correspondence to or from BDO that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

97.   To the extent not provided in response to requests 1 through 86, all correspondence to or from Grant Thornton that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

98.   All complaints or petitions against RSM McGladrey, BDO, KPMG, Grant Thornton,

1986621.1

Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, DGI, Helios, Alpha, Mahoney (see definition above), including amended complaints or petitions relating to SOS, FDIS, or other Tax Shelter Products, filed by any person or entity identified in Appendix A.

99. To the extent not provided in response to requests 1 through 98, all records, documents, and materials created or maintained by RSM McGladrey during the years 2000 through 2002 relating to the FICA A Fund transactions at issue in this case.

Dated: October 23, 2006

BARRY E. REIFERSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone:  (202) 514-6058
Facsimile: (202) 514-5238
E-mail: barry.e.reiferson@usdoj.gov

1986621.1

# APPENDIX A

## Name

1.   2001 Equity Trading LLC

2.   Fidelity High Tech Advisor A Fund LLC

3.   Fidelity High Tech Index A Fund LLC

4.   Fidelity High Tech Option A Fund LLC

5.   Fidelity International Currency Advisor A Fund LLC

6.   Fidelity World Currency Advisor A Fund LLC

7.   Acajoux Equities LLC

8.   Acajoux Investments LLC

9.   Acajoux Trading LLC

10.  AD Global 2001 Fund LLC

11.  AFFCO Investments 2001 LLC

12.  Affco, LLC

13.  AHG Investments LLC

14.  AHG Trading LLC

15.  Akselrad, Harold

16.  Aldridge, David S.

17.  Alpine Group, Inc.

18.  AMJ Trading LLC

19.  AN Investments LLC

# APPENDIX A

20.   AN Trading LLC

21.   Anbar Investments LLC

22.   Anbar Trading LLC

23.   Anbar, Inc.

24.   Bennett, Phillip R.

25.   BET Trading LLC

26.   BFS Trading 2001 LLC

27.   BGH Trading LLC

28.   Buske, Thomas A.

29.   Butler, William

30.   Caputo, Edward G.

31.   CCP Trading LLC

32.   CF Trading LLC

33.   CFPT Investments LLC

34.   CFPT Investments LLC

35.   CGG Auto Trust

36.   CGK Trading LLC

37.   CGS Auto Trust

38.   Chadds Peak Investments LLC

39.   Cheris, Albert B.

1950326.1

# APPENDIX A

40.   Chester Investors LLC

41.   CHS Trading LLC

42.   Ciasulli, Robert G.

43.   Ciasulli, Ronald J.

44.   Ciccarello, Rudy

45.   Civello, Nelson

46.   CJT Trading LLC

47.   Cliffside Investments LLC

48.   Cole, Robert

49.   Corporex Investments LLC

50.   Corporex Realty & Investment Corp.

51.   Corporex Trading LLC

52.   Cowan Investments LLC

53.   Cowan, David

54.   Crawford, Reagan

55.   CSH Investments LLC

56.   CTN Trading LLC

57.   DC Trading LLC

58.   DJR Investments LLC

59.   DJR Trading LLC

# APPENDIX A

60. DP Trading LLC

61. DPT Trading LLC

62. DRG Trading LLC

63. DSG Trading LLC

64. DTH Trading LLC

65. DWT Investments LLC

66. DWT Trading LLC

67. Dziedzic, Stanley, J.

68. Egan, Maureen

69. Egan, Richard

70. EGC Investments 2001 LLC

71. EGC Trading LLC

72. Elbaum, Steven S.

73. Equity Trading 2001 Fund LLC

74. Europa International, Inc

75. Europa International, Inc.

76. Europa Investments LLC

77. Europa Trading LLC

78. Francis, Joseph

79. Francois, Curtis

1950326.1

# APPENDIX A

80. FX Investments LLC

81. Gabriel Trading LLC;

82. Garvy, Robert

83. Geewax, John J.

84. Geewax, Terker & Co.

85. Geewax, Terker & Company

86. Geisecke, John

87. GG Auto Trus

88. Giffen, Catherine K.

89. Ginsburg, Alan

90. GN Investments LLC

91. GN Trading LLC

92. Gould, Suzanne Grossinger

93. Grossinger Motor Corp., Inc.

94. Grossinger, Caroline

95. Grossinger, Garry

96. Grossinger, Schiller

97. Grossinger, Sharon

98. Grossinger, Suzanne

99. Grossprops Associates LLC

# APPENDIX A

100. GT Investments 2001 LLC

101. Gupta Investments LLC

102. Gupta, D.R.

103. Gupta, D.S.

104. Gupta, Jai N.

105. Gupta, Shasi A.

106. Holland, David T.

107. Holland, David T.

108. Hoyt, Barry G.

109. HWN Trading LLC

110. Irrevocable Trust for Christopher J. Theis

111. Irrevocable Trust for Dennis P. Theis

112. Irrevocable Trust for Dennis W. Theis

113. Irwin Grossinger Trust

114. Jacob Trading LLC

115. Jacqueline Trading LLC;

116. Jarmel, Andrew M.

117. JB Trading LLC

118. JES Trading LLC

119. JHP Trading LLC

1950326.1

# APPENDIX A

120. JHT Investments LLC

121. JHT Trading LLC

122. JJG Trading LLC

123. JLS Investments LLC

124. JLS Trading LLC

125. JMG Trading LLC

126. JNG Trading LLC

127. JRF Investments LLC

128. JRF Trading LLC

129. JSB Trading, Inc.

130. JZ Trading LLC

131. Kastin

132. Kealakeva Investments LLC

133. Kutler Investments LLC

134. Kutler, Jon

135. Laurelgrove Ltd.

136. LG88 Trading LLC

137. Lunt Realty Corp.

138. Mastin

139. Maxin Corporation

# APPENDIX A

160. Patterson, Charles C.

161. PCT Trading LLC

162. Perles, Steven R.

163. Pitt Des Moines, Inc.

164. Portillo, Richard

165. Powers Childrens Trust

166. Power, John

167. PT Trading LLC

168. RAG Investments LLC

169. RAG Trading LLC

170. RAS Investments 2001 LLC

171. RAS Trading 2001 LLC

172. RC Investments LLC

173. RC Trading, LLC

174. Reid, Daniel J.

175. RGC Investments LLC

176. RGC Trading LLC

177. RGW Investments LLC

178. RGW Trading LLC

179. RJC Investments LLC

# APPENDIX A

140. McNeill Family Partnership

141. McNeill, John "Sandy"

142. McNeill, Ronald "Ronnie"

143. MCP Trading LLC

144. MFP Equities LLC

145. NDC Investments LLC

146. NDC Trading LLC

147. Nix, Harold W.

148. NJR Trading LLC

149. NPR Investments LLC

150. NPR Investments LLC

151. NPR Investments LLC

152. Nussdorf, A.

153. Nussdorf, G.

154. Nussdorf, R.

155. Nussdorfs, S.

156. Paley, Douglas

157. Paley, Steven

158. Paley, William

159. Palitz, Michael C.

1950326.1

# APPENDIX A

180.  RJC Investments LLC

181.  RJP Investments LLC

182.  RJS Investments LLC

183.  RJS Investments LLC

184.  RJS Trading LLC

185.  RM Equities LLC

186.  RM Investments 2001 LLC

187.  RM Portfolio LLC

188.  RM Trading LLC

189.  RMC Trading LLC

190.  RN Investments LLC

191.  RN Trading LLC

192.  Roach, Nelson J.

193.  RT Investments 2001 LLC

194.  RT Trading LLC

195.  RWC Investments LLC

196.  RWC Trading LLC

197.  Sabella, Richard J.

198.  SAG Trading LLC

199.  Samuel Trading LLC

1950326.1

# APPENDIX A

200.   Schiller, Carolina Grossinger

201.   Schostak, Jerome

202.   Schut, Bragi F.

203.   Scommenga, Roger A.

204.   SE Trading 2001 LLC

205.   SEBFS Investments LLC

206.   SEBFS Investments LLC

207.   Sheridan Investments LLC

208.   Sheridan Trading 2001 LLC

209.   Siegel, David R.

210.   SJD Investments LLC

211.   SJD Trading LLC

212.   Slevin, James E.

213.   SM Equities LLC

214.   SM Investments LLC

215.   SM Portfolio LLC

216.   SM Trading LLC

217.   SN Investments LLC

218.   SN Trading LLC

219.   Solomon, Craig

# APPENDIX A

220. SP Trading LLC

221. SRP Trading LLC

222. Stein, Keith

223. Steven R. Perles, PC

224. TAB Investments 2001 LLC

225. TAB Trading LLC

226. Tafeen Family trust

227. Taylor, James

228. Tenex Corp.

229. Tenex Corporation

230. Tenex Trading LLC

231. Terker, Bruce E.

232. TFT Investments 2001 LLC

233. TFT Trading LLC

234. Theis Investments LLC

235. Theis Investments LLC

236. Theis Investments LLC

237. Theis Investments LLC

238. Theis, James

239. Theis, Thomas J.

1950326.1

# APPENDIX A

240. Theis, William F. Sr.

241. Theis, William F. Jr.

242. Thomas, Paul

243. TJT Trading LLC

244. Tschetter, Ron

245. Wainwright, Ron

246. WFT Investments LLC

247. WFT Trading LLC

248. WFTJR Trading LLC

249. WFTSR Trading LLC

250. Wolff Family Trust

251. WPB Trading LLC

252. Zeretksy, Jane

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax )
Matters Partner, )
                                       )
                    Plaintiff, )      Civil No. 05-40151-FDS (D. Mass.)
                                         )
         v. )      Judge Saylor
                                         )
UNITED STATES OF AMERICA, )
                                         )
                  Defendant. )

**DECLARATION OF RECORDS CUSTODIAN FOR RSM MCGLADREY, INC**

I, _____, pursuant to Rule 902(11) of the

Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code, do hereby certify as

follows:

1.    I am a custodian of records for RSM MCGLADREY, INC.,

    _____

    _____(specify address). In that capacity, I am responsible for the

    compilation and maintenance of records pertaining to business conducted by RSM

    MCGLADREY, INC..

2.    On _____, 2006, in response to a subpoena dated October 23, 2006,

    issued by the United States of America in the case of *Fidelity Int'l v. United States*, Civ. No. 05-

    40151 (D. Mass.), I transmitted to the United States, through counsel, true and accurate copies of

    records maintained by RSM MCGLADREY, INC. consisting of pages numbered from

    _____ through _____.

1986625.1

3.    The records described in paragraph 2 above were made at or near the time of the occurrence of the matters set forth therein by, or from information transmitted by, a person with knowledge of those matters. RSM MCGLADREY, INC. kept those records in the course of its regularly conducted business activity and made those records as a regular practice in its regularly conducted business activity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2006.

_____

On behalf of RSM MCGLADREY, INC.

_____

Printed name and title of records custodian

2                                        1986625.1

# EXHIBIT 5

## Markowski, Robert T

| | |
|---|---|
| **From:** | Markowski, Robert T |
| **Sent:** | Sunday, October 29, 2006 9:12 AM |
| **To:** | 'Barry.E.Reiferson@usdoj.gov' |
| **Cc:** | Neumeier, Matthew M |
| **Subject:** | RSMM Response to Subpoena |
| **Attachments:** | RSMM Response to Subpoena.pdf |



RSMM Response
to Subpoena.pdf .

Barry,

    I am attaching RSMM's response to the government's subpoena in the Fidelity matter.  Both Matt Neumeier and I are,  of course,  available to discuss these matters further,  with the hope that we can reach a reasonable resolution which does not place an undue burden on our client and which permits the parties in the Fidelity case to obtain the discovery appropriate to issues in that proceeding.

                  Bob

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATION CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | Civil No.  05-40151-FDS |
| Petitioners, | ) | |
| | ) | Judge Saylor |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

### RSM McGLADREY INC.'S OBJECTIONS
### TO DEFENDANT'S OCTOBER 20, 2006 SUBPOENA FOR THE
### PRODUCTION OF DOCUMENTS

RSM McGladrey, Inc., ("RSMM"), pursuant to Fed. R. Civ. P. 45(c)(2)(B), by its

attorneys, hereby objects to Defendant's October 20, 2006 Subpoena ("Subpoena") on the

following grounds:

### GENERAL OBJECTIONS

1.     RSMM objects generally on the ground that service of the Subpoena is not proper

under Fed. R. Civ. P. 45(b).

2.     RSMM objects generally on the ground that the October 20, 2006 service of the

Subpoena, issued by the United States District Court for the District of Massachusetts, on an

RSMM office in Washington, D.C., is invalid under Fed. R. Civ. P. 45(b)(2).

3.     RSMM objects generally to the October 20, 2006 service of the Subpoena on an

RSMM Washington, D.C. office on the ground that RSMM's Washington, D.C. office is neither

RSMM's principal office nor a location where the materials that are the focus of the Subpoena

are or were located.

4.      RSMM objects generally to the October 23, 2006 service of the Subpoena on an

RSMM Boston office on the ground that RSMM's Boston office is neither RSMM's principal

office nor a location where the materials that are the focus of the Subpoena are or were located.

5.      RSMM objects generally to the Subpoena, which includes a twenty-six page

attachment, consisting of thirty-two "Definitions," twelve "Instructions," ninety-nine individual

"Requests for Production," and an "Appendix A" identifying two-hundred and fifty-two names

of individuals and entities for which materials are specifically requested, on the ground that the

Subpoena violates Fed. R. Civ. P. 45(c)(1) because it fails to take reasonable steps to avoid

imposing undue burden or expense on RSMM.

6.      RSMM objects generally under Fed. R. Civ. P. 45(c)(3)(A)(i) on the ground that

the Subpoena fails to allow reasonable time for compliance.

7.      RSMM objects generally to the extent the Subpoena seeks the disclosure of

privileged or other confidential matters.

8.      RSMM objects generally under Fed. R. Civ. P. 45(c)(3)(A)(iv) on the ground that

the Subpoena subjects RSMM to undue burden.

9.      RSMM objects generally to providing any non-public client-specific RSMM

information or any confidential or commercially sensitive proprietary RSMM material until such

time as an appropriate protective order is entered.

10.     RSMM objects generally to the definitions and/or instructions in the Subpoena to

the extent they purport to impose obligations on RSMM beyond those set forth in the Federal

Rules of Civil Procedure.

11.     RSMM objects generally to the Subpoena to the extent it purports to seek

attorney-client and/or work product materials of RSMM or its attorneys, including but not

2

limited to those related to the representation or involvement of RSMM in any civil action,

arbitration, mediation, regulatory proceeding, or investigation, or materials covered by any other

applicable privilege, including the federal tax practitioner privilege.

12.     RSMM objects generally to the Subpoena to the extent it seeks materials beyond

those specific to the plaintiffs Fidelity International Currency Advisor A Fund, L.L.C. or Richard

Egan on the grounds of burden, overbreadth, relevance, and vagueness.

13.     RSMM objects generally to the Subpoena to the extent it seeks materials already

in the possession of the defendant or more readily available from other sources.

14.     RSMM objects to the Subpoena to the extent it seeks identifying information,

including "returns" and "return information" as defined in I.R.C. § 6103(b)(1)-(2), for which

I.R.C. § 6103(a) prohibits disclosure.

15.     RSMM objects to Requests 1-99 of the Subpoena on the ground that each Request

is overly broad and seeks the production of materials neither relevant to the matters at issue nor

reasonably calculated to lead to the discovery of admissible evidence.

16.     RSMM reserves the right to supplement, modify, or amend these objections

based upon any future communications with the defendant related to the materials sought by the

Subpoena.

## SPECIFIC OBJECTIONS

In addition to the foregoing general objections, which RSMM asserts in response to each

Request for Production, RSMM hereby asserts the following Specific Objections:

1.     RSMM further objects to the time period of "January 1, 2000 to [the] present" set

forth in Instruction 12 on the ground that such time period is overly broad, unduly burdensome,

and seeks the production of materials that are not relevant or reasonably related to the matters at

issue.

3

2.      RSMM further objects to the definition of the term "SOS" in Definition 25 on the ground that the definition is vague, overbroad, unduly burdensome, and seeks the production of materials that are not relevant or reasonably related to the matters at issue.

3.      RSMM further objects to the definition of the term "FDIS" in Definition 26 on the ground that the definition is vague, overbroad, unduly burdensome and seeks the production of materials that are not relevant or reasonably related to the matters at issue.

4.      RSMM further objects to the definition of the term "Tax Shelter Products" in Definition 27 on the ground that the definition is vague, overbroad, unduly burdensome and seeks the production of materials that are not relevant or reasonably related to the matters at issue.

5.      RSMM further objects to the definition of "client-specific" in Definition 31 on the ground that the definition is vague, overbroad, unduly burdensome and seeks the production of materials that are not relevant or reasonably related to the matters at issue.

6.      RSMM further objects to Request 1 on the ground that its reference to "all persons who participated in any way" is vague, overbroad, unduly burdensome, and seeks the production of materials that are not relevant or reasonably related to the matters at issue.

7.      RSMM further objects to Request 5 to the extent it seeks documents more readily available from others.

8.      RSMM further objects to Request 10 on the ground that its reference to "[all] documents relating to any draft opinion" is vague, oppressive, overbroad, unduly burdensome, and seeks the production of materials that are not relevant or reasonably related to the matters at issue.

9.  RSMM further objects to Requests 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, and 97, on the ground that the reference to "all correspondence … that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS, is vague, oppressive, overbroad, unduly burdensome, and seeks the production of materials that are not reasonably related to the matters at issue.

10.  RSMM further objects to Request 98 on the ground that the reference to "[all] complaints or petitions … including amended complaints or petitions relating to SOS< FDIS, or other Tax Shelter Products, filed by any person or entity identified in Appendix A," is vague, oppressive, overbroad, and unduly burdensome, seeks the production of materials that are not reasonably related to the matters at issue, and seeks materials already in the possession of the defendant or more readily available from other sources.

RSM McGLADREY, INC.

By: _____
One of its Attorneys

Matthew M. Neumeier
Robert T. Markowski
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
(312) 222-9350
(312) 840-7736 (fax)

5

# EXHIBIT 6

# United States Department of Justice

## Tax Division
### Civil Trial Section, Northern Region
### P.O. Box 55 - Ben Franklin Station
### Washington, D.C.  20044
### Fax: (202) 514-5238/9649

| | |
|---|---|
| **TO:** | Robert T. Markowski |
| **FAX NUMBER:** | 312-840-7736 |
| **SUBJECT:** | *Fidelity Int'l v. US* |
| **DATE SENT:** | February 14, 2007 |
| **PAGES: (Including this cover sheet)** | 4 |
| **FAX FROM:** | Barry E. Reiferson |
| | 202-514-6058 |

**COMMENTS:**

**WARNING:** The information contained in this facsimile is confidential and may be subject to disclosure limitations under Rule 6(e) of the Federal Rules of Criminal Procedure and Section 6103 of the Internal Revenue Code.  The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or the employee or agent responsible for delivering it to the recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender identified above by telephone.



**U.S. Department of Justice**

**Tax Division**

*Facsimile No. (202) 514-5238*
*Trial Attorney: Barry E. Reiferson*
*Attorney's Direct Line: (202) 514-6058*

*Please reply to:*   *Civil Trial Section, Northern Region*
*P.O. Box 55*
*Ben Franklin Station*
*Washington, D.C.  20044*

5-36-10254
CMN 2005106280

February 14, 2007

**<u>Via Federal Express and Facsimile (312) 840-7736</u>**

Robert T. Markowski
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

      Re:    *Fidelity Int'l v. United States*, Civ. No. 05-40151 (D. Mass.)

Dear Mr. Markowski:

      I write in response to your February 13, 2007 letter in which you propose limiting your obligations of responding to the subpoena and doing so in accordance with the Federal Rules of Civil Procedure.  Given the importance of your documents, your actions so far, and your failure to produce or agree to produce a single document almost four months after the subpoena was served upon you, we must reject your proposal and move to compel your compliance.

      Because of the inherently relevant and important nature of your documents, we cannot accept your proposal to limit the subpoena even further than we did by letter on December 1, 2006.  We insist that you produce the documents relating to the SOS and FDIS tax shelters.  As we described at length in our December 1, 2006 letter, those documents are clearly relevant to one of the bedrock issues in this litigation– whether the tax shelter employed here, as designed, developed, marketed and implemented, was a factual and/or economic sham.  This discovery will be especially relevant if it shows, as we believe it will, that many different participants in this and similar tax shelters followed the same chronology of steps, regardless of the particular facts of their situation.  RSM McGladrey had a role in the development, marketing, promotion, implementation, and/or reporting of many FDIS transactions.  Indeed, it appears that RSM McGladrey continued to promote the FDIS product in subsequent tax years and that RSM McGladrey's tax managing director, Ronald Wainwright, was also a participant in an FDIS transaction.  As such, we cannot limit the subpoena as you suggest, because such limitations would almost certainly exclude from production, at the very least, developmental documents (documents relating to the development of SOS and FDIS), marketing materials (which include PowerPoint presentations and other documents used to market SOS and FDIS to potential buyers), draft opinion letters, and documents related to specific SOS and FDIS transactions that were not implemented.

      Given RSM McGladrey's extensive involvement in the FDIS promotion, it should not be

- 2 -

overly burdensome to review its files, to the extent necessary, to locate the responsive documents. While desperately trying to convince the United States to further limit the scope of the subpoena to exclude documents that would shed additional light on RSM's involvement, you failed to cite a single fact that would suggest an undue burden here.[1]  In fact, most of the documents you now agree to produce are documents you say you already produced to the IRS. Production of those documents should have been made in response to this subpoena immediately upon service, and would have created virtually no burden at all.  In regard to the other responsive documents, the United States supplied with the subpoena a list of suspected tax-shelter participants.  It did so to assist you.  We then supplemented that list with an additional assistive document.  On December 1, 2006, we supplied you with a list of 29 participants in FDIS tax shelters promoted by RSM McGladrey in 2001.  Approximately three weeks later, we spoke with you to try to assist you in locating specific client files, as we have some knowledge as to how the relevant files are often kept.  You merely stated that you were looking into your file-maintenance practices.  Despite our repeated efforts to reasonably limit the scope of the subpoena and reduce any burden you may experience, you have unjustifiably failed to comply with the subpoena.

Rather than use our guidance and RSM's extensive knowledge of the relevant transactions to conduct a reasonable search, you have attempted to shift the burden to the United States to request documents you fail to produce.  This turns the discovery world upside down.  It is you as the subpoena recipient and tax-shelter promoter that knows what responsive documents you have.

We also cannot accept your proposal to limit your obligation to provide a privilege log in compliance with Federal Rule of Civil Procedure 45(d)(2).  Congress imposed this obligation so that the subpoenaing party has sufficient information to contest any claim of privilege.  Based on your February 13 proposal, it appears that you instead want to simply assert a blanket privilege claim covering all documents produced after October 22, 2002– the date you say the IRS made a request for documents RSM McGladrey was required to maintain under 26 U.S.C. § 6112.  There is, of course, no privilege created by such an IRS request, and we fail to understand the relevance of that date with respect to your privilege claims.  To the extent that your future privilege claims,

_____

[1]To date, your actions have been aimed at attempting to limit the scope of the subpoena. Those efforts began even before service, when you had agreed to receive– and had received– the subpoena by mail but nonetheless refused to accept service unless we agreed to limit the scope of the subpoena.  After personal service you made frivolous objections and demands.  Even after we agreed to limit the scope of the subpoena and clarify terms you found to be unclear, you failed to produce documents.  That failure continued while we negotiated a protective order to govern your production.  Because the production would not be unduly burdensome, and perhaps hardly burdensome at all, your motivation is called into question.  It appears that your motivation for such extraordinary efforts in furtherance of non-compliance may be to protect RSM McGladrey and its partners who promoted or participated in dozens of FDIS tax shelters.

2237686.2

- 3 -

if any, are based on more, you must assert the claims with specificity as required by the Federal Rules so that the United States can contest them. Failure to do so will be deemed a waiver of such privilege claims.

Accordingly, please be advised that we plan to file a motion to compel within the next week to ten days. Moreover, given your failure to produce the requested documents within a reasonable time period, we will ask the Court at the next status conference on March 6, 2007 to act on our motion expeditiously. For your information, the Court has already ruled that similar documents that we sought from KPMG were relevant for purposes of discovery in this action. If you should decide to produce any documents before the filing of our motion, we will, of course, limit the scope of our motion to only those documents you fail to produce. If you should decide to comply fully with the subpoena, please notify us immediately so that we may not incur further time and costs in seeking to enforce this lawful subpoena.

Sincerely yours,

BARRY E. REIFERSON
Trial Attorney
Civil Trial Section, Northern Region

2237686.2

# EXHIBIT 7

J E N N E R & B L O C K

February 26, 2007

Chicago
Dallas
New York
Washington, DC

Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
Tel 312-222-9350
www.jenner.com

Barry E. Reiferson
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, DC  20044

Robert T. Markowski
Tel  312 923-2736
Fax  312 840-7736
rmarkowski@jenner.com

RE:    **Fidelity International Currency Advisor A Fund, L.L.C. v. United States, No. 05-40151**

Dear Barry:

As I expressed to you previously, we were surprised by the harsh tone of your February 14 letter given what we believed to be the constructive discussion Matt Neumeier and I had with you the previous week.  During that call we took significant steps in an effort to resolve the protective order issues that had troubled not only us but other parties who had received similar subpoenas.

With respect to the scope of productive issues, we have consistently indicated that our concern with respect to the government's subpoena was twofold:  (1) the burden an unfocused request for production places on RSMM, which is not a party to the Egan case, and (2) avoiding any disputes over whether there has been compliance with regard to RSMM's production.  In our call we proposed a specific plan for moving forward and indicated that our proposal would be without prejudice to the government's right to seek additional documents under the current subpoena should the government believe that to be necessary after reviewing RSMM's production.

The only specific additional category of documents you mentioned during the call, after we told you our proposal, related to marketing materials.  We expressed a willingness to explore that further and asked if the government would be willing to provide us with a clear description of what types of materials it considered to fall into that category.

Barry E. Reiferson
February 26, 2007
Page 2


     Our post-call letter further expressed a willingness to discuss any other issues in a constructive way.  We remain willing to do so.  We also are willing, if the Court will make itself available to provide us both with guidance, to appear without the need for the filing of motions and to obtain direction with respect to the scope of production issues.  Finally, we have confirmed that RSMM remains willing to produce documents to you as set forth in our February 13, 2007 letter.


                Sincerely,

                Robert T. Markowski


RTM/dar

cc:    Matthew M. Neumeier

# EXHIBIT 8

## Markowski, Robert T

**From:**     Reiferson, Barry E. (TAX) [Barry.E.Reiferson@usdoj.gov]
**Sent:**     Tuesday, February 27, 2007 5:58 PM
**To:**       Markowski, Robert T
**Cc:**       Donohue, Dennis (TAX); Lindquist, John A. (TAX); Richtarcsik, Heather L. (TAX)
**Subject:**  Reply to February 26 Letter

Dear Mr. Markowski:

I received your February 26 letter in which you again offer to incompletely respond to the United States' subpoena served upon RSM McGladrey in connection with *Fidelity International v. U.S.*, No. 05-40151 (D. Mass.). Unfortunately, your February 26 letter states nothing new and simply states the obvious-- that the United States reserves the right to seek documents that it has already demanded by subpoena.  Given the importance of your documents, we must again demand full compliance with the subpoena as limited and explained over the course of many months since service.  In our February 14 letter, and in numerous correspondence dating back to October 2006, we gave additional guidance to you in an attempt to facilitate your production.  Our efforts have been unrewarded.  As we stated almost two weeks ago, we will move at our earliest opportunity to compel your compliance with the subpoena, and will, of course, limit the scope of our motion to only those documents you fail to produce.  If you change your mind and agree to comply, please inform us of that change immediately.

Sincerely,
Barry Reiferson

# EXHIBIT 9



# The Commonwealth of Massachusetts
# William Francis Galvin

### Secretary of the Commonwealth, Corporations Division

One Ashburton Place, 17th floor
Boston, Massachusetts 02108-1512
Telephone: (617) 727-9640

## Public Browse and Search - Entity Results

Help with this form

### 1 Records Matched Your Begins With Search for Entity Name: RSM McGladrey, Inc.
(Page 1 of 1)

| Entity Name | Identification Number | Old Identification Number | Principal Office Address, City, State, Zip, Country |
|---|---|---|---|
| RSM MCGLADREY, INC. | 411944416 | 000668673 | 3600 AMERICAN BOULEVARD WEST, 3RD FLOOR, BLOOMINGTON, MN  55431  USA |

New Search

© 2001 - 2007 Commonwealth of Massachusetts
All Rights Reserved

# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 05-40151<br><br>Judge Saylor |

## **STIPULATED PROTECTIVE ORDER**

By agreement of the parties, plaintiff Fidelity International Currency Advisor A Fund, L.L.C.,

by its tax matters partner, and defendant United States of America (together, "the Parties"), and RSM

McGladrey Inc. ("RSM McGladrey"), by and through their attorneys, and in order to protect certain

information during the discovery phase of this litigation that non-party RSM McGladrey may be

required to produce during the course of this action while recognizing the "vital public interest in

open judicial proceedings," 28 C.F.R. §50.9, it is hereby ORDERED that:

1.     All information, materials, and documents (whether in paper or electronic form) produced

or furnished by RSM McGladrey to either or both of the Parties in response to subpoenas issued in

this case shall be deemed "Protected Information." The Parties and RSM McGladrey understand and

agree that documents produced by RSM McGladrey in response to subpoenas in this case, that are

otherwise publicly available, are not entitled to treatment as Protected Information pursuant to this

Order.

2.    Protected Information may be used in any and all discovery proceedings in this case including, but not limited to, document requests, requests for admission, depositions, interrogatories, and discovery motions, but otherwise shall not be publicly disclosed except as permitted by this Order. Protected Information may be used in connection with the prosecution or defense of this action but not for any other pending or threatened civil litigation, nor any business or other purpose except as otherwise provided for in this Order. This Order shall not restrict the transfer of Protected Information in response to a subpoena or other discovery demand in another proceeding in a court of competent jurisdiction. Either Party may use Protected Information in other civil litigation involving the same or similar issues, but only with the written authorization of RSM McGladrey or its counsel.

3.    Except as described herein (or by subsequent order of this Court), the Parties agree not to give, show, disclose, disseminate, or describe, either directly or indirectly, Protected Information to any person(s) other than those identified by this Order.

4.    Access to Protected Information shall be restricted to:

(a).    This Court and its personnel;

(b).    Counsel for the Parties, including outside and in-house lawyers; other lawyers regularly employed in their offices; and such supervising attorneys, lawyers' staff, and administrators, to whom it is necessary to disclose Protected Information for purposes of this litigation (including secretaries, paralegals, clerks, and other assistants);

(c).    The Plaintiff, the United States Department of Justice and its employees, and the Internal Revenue Service and its employees;

(d).    Independent experts or consultants retained by counsel for the purpose of assisting in this litigation, including any of their staff to whom it is necessary to disclose Protected Information in order to assist in their participation in this litigation;

(e).    Any potential witness in this litigation identified in the Complaint, identified during discovery or by the Parties' witness lists, or planned to be called as a witness by a Party at deposition or during trial or to be interviewed about a matter at issue in this case, as well as any counsel for such witness and any person(s) present during such testimony.  Individuals identified by this Paragraph may be provided with a copy of any relevant Protected Information for their review in preparation for or during the witness's deposition or testimony, either at trial or other hearing in this litigation. Upon completion of their review, the Protected Information provided shall be returned to counsel for the Party that supplied it;

(f).    Any mediators, arbitrators, or other outside parties and their staff enlisted by all parties to assist in the resolution of this matter;

(g).    Outside or contracted litigation-support services, including commercial copying services;

(h).    Any court reporter, transcriber or videographer who reports, transcribes or records testimony in this action at a deposition, provided they agree by a statement on the record before the witness begins his or her deposition testimony that no such Protected Information and testimony related thereto revealed shall be disclosed by such reporter, transcriber or videographer except to the attorneys for each Party and any other person who is present while such testimony is being given, except that upon use of a deposition exhibit at trial, the exhibit becomes public information and is no longer Protected Information;

(i).    Employees of the Department of Justice and the Internal Revenue Service who are assigned to any pending criminal investigation or matter for their unrestricted use in such criminal investigation or matter.

5.    No Party shall disclose Protected Information or copies of Protected Information to any of the persons identified in Paragraphs 4(d), 4(e), or 4(f) without first having obtained an executed acknowledgment from such person, substantially in the form attached hereto.

6.    The Parties and RSM McGladrey agree that the inadvertent or unintentional disclosure by a party of Protected Information shall not be deemed a waiver in whole or in part of any claim of confidentiality or protected status. This paragraph applies to both the specific information disclosed as well as any other information relating thereto or on the same or related subject matter.

7.    Within ninety (90) days after the final conclusion of the Litigation, including all appeals, Plaintiffs will provide written certification to RSM McGladrey that all originals and/or copies of all Protected Information (including both paper and electronic versions) in the possession of Plaintiffs, their counsel or other agents, have been either returned to RSM McGladrey or destroyed.

8.    This Protective Order shall be effective immediately upon signature by counsel for either Party, and shall remain in effect after conclusion of this litigation, and the signing Parties agree that the Court may enforce the terms of this agreement and may disclose any Protected Information as part of a Court order or memorandum.

9.    This Stipulation may be executed by each Party separately.

10.    Promptly upon discovery, counsel for the Parties shall report any breach of the provisions of this Protective Order to counsel for RSM McGladrey. Upon discovery of any breach of this Protective Order, counsel for the breaching Party shall immediately take appropriate action to

2171373.12

cure the violation and retrieve any Protected Information that may have been disclosed to persons

not covered by this Protective Order. The Parties shall reasonably cooperate in determining the

existence of any such breach and whether there is reason to report the breach to the Court.

11.    Nothing in this Protective Order is to be deemed a waiver of any protections provided by

law.


IT IS SO ORDERED this _____ day of _____, _____.


_____

F. Dennis Saylor, IV
U.S. District Court

## ACKNOWLEDGMENT REGARDING RSM McGLADREY

The undersigned has been provided with a copy of the foregoing Protective Order entered in the case captioned *Fidelity International Currency Advisor A Fund, L.L.C., by the Tax Matters Partner v. United States of America, Civ. A. No. 05-40151*, has had an opportunity to review the Protective Order; and is fully familiar with all of the terms of the Protective Order. By executing this Acknowledgment, the undersigned agrees to be bound by the terms of the Protective Order.

Print name: _____

Address: _____

_____

_____

Date signed: _____