# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 05-40151-FDS 06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO STRIKE PLAINTIFF'S MOTION TO COMPEL DISCOVERY

The Government's claim that Plaintiff "failed to attempt in good faith to resolve or narrow the issues" is a disingenuous attempt to divert attention from the important discovery issues raised in Plaintiff's Motion to Compel Production of Documents and Meaningful Answers to Interrogatories ("Motion to Compel"). As was explained in the Motion to Compel, Plaintiff has been attempting to resolve or narrow the areas of dispute with respect to Defendant's responses to Plaintiff's discovery requests for nearly six months. Through its numerous letters and conferences, Plaintiff has complied with Local Rules 7.1(a)(2) and 37.1(a). Moreover, Defendant was aware of all the issues raised in the Motion to Compel over two months prior to its filing,[1] and Defendant's objections and refusals to comply with the discovery requests

---

[1] Plaintiff sent Defendant letters on November 29, 2006; December 15, 2006; and December 28, 2006 specifically identifying the requests for which Plaintiff deemed Defendant's responses to be inadequate and the reasons those responses were inadequate. (Plaintiff's Memorandum in Support of Plaintiff's Motion to Compel Production of Documents and Meaningful Answers to Interrogatories ("Pl.'s Mem.") Exs. G, H, I.) Defendant set forth its position

persisted throughout that two-month period.  Thus, Defendant did not incur any unnecessary or

unjustified burden in responding to the Motion to Compel.  Furthermore, a motion to strike is not

the appropriate manner in which to raise an issue with respect to compliance with Local Rules

7.1(a)(2) and 37.1(a).  Instead, the Federal Rules, as applied in the United States District Court in

Massachusetts, require the issue to be addressed in an opposition to a motion to compel.  By

filing a motion to strike when such a remedy is not permitted under the Federal Rules, Defendant

is creating a diversion that wastes the time of the parties and the Court.  Accordingly, the Court

should deny Defendant's inappropriate motion to strike and decline Defendant's ill-conceived

invitation to impose sanctions.

## BACKGROUND

The parties have met in person twice and exchanged numerous letters regarding

discovery.  Plaintiff first arranged a meeting on September 20, 2006 to discuss, *inter alia*,

discovery issues.  Plaintiff wanted to "try to arrive at a mutual resolution" with respect to the

shortcomings in Defendant's responses to Plaintiff's discovery requests, "thus obviating the need

for court action."  (Ex. A at 1.)  At the meeting, Defendant made representations that it would

produce additional documents within the next two weeks in response to Plaintiff's First Set of

Requests for Production, which were served on Defendant over *five months* earlier.  (*See* Ex. B at

2.)  In the interest of cooperative discovery, Plaintiff awaited the production of those documents

prior to filing Plaintiff's Motion to Compel.  Contrary to its representations, Defendant's

---

with respect to those requests in letters dated January 10, 2007 and February 21, 2007.  (Pl.'s Mem. Exs. J, K.)
Thus, the claim that "plaintiff's [*sic*] failed to . . . disclose which documents were in issue" is incorrect.  (Def.'s Mot.
to Strike, Decl. of John A. Lindquist ¶ 11.)

production of the promised documents was not accomplished until February 21, 2007, another *five months* after Plaintiff was first informed of the existence of the documents.[2]

On November 2, 2006, Defendant informed Plaintiff that Matthew Hicks, who was previously responsible for handling the Government's discovery, would no longer be involved in the case and that all discovery-related issues should be directed to the attention of John Lindquist.  In light of this change in Defendant's trial counsel team, Plaintiff sent a letter to Mr. Lindquist on November 29, 2006 outlining the deficiencies in Defendant's responses to discovery requests served on Defendant after the September 20, 2006 conference, and identifying unresolved issues relating to prior discovery requests.  (Pl.'s Mem. Ex. G.)  When Defendant did not respond to the November 29, 2007 letter, Plaintiff sent another letter on December 15, 2006 in which Plaintiff outlined the specific discovery requests for which it deemed Defendant's response to be inadequate.  (Pl.'s Mem. Ex. H.)  In that letter, Plaintiff made clear that it anticipated filing a motion to compel and requested a meeting, stating in relevant part:

> Defendant has failed to fully respond to Plaintiff's discovery requests, and unless these failures are cured, we anticipate filing a motion to compel production.  We request a meeting with you to attempt to resolve or at least narrow the areas of disagreement prior to filing a motion.

(Pl.'s Mem. Ex. H at 1.)  Defendant received this request over two months before Plaintiff filed its Motion to Compel.

Defendant responded to Plaintiff's December 15, 2006 letter on December 21, 2006 by requesting that the parties "defer any conference on these issues until [counsel for Defendant] have had an opportunity to investigate the issues that [counsel for Plaintiff] have raised."  (Ex. C

---

[2] Defendant has produced approximately 4,700 documents from government files, with much of that production delayed by over six months.  By contrast, Plaintiff has produced a total of approximately 11,100 documents, and Plaintiff's productions have been within the time limits prescribed by the Federal Rules, except where redactions for privilege were required.

at 1.)  Defendant indicated that it would "attempt to have a response to [Plaintiff] by January 5, 2007."  (Ex. C at 1.)  After informing Plaintiff of another delay in its response, Defendant sent a letter on January 10, 2007 setting forth its position with respect to specific requests identified in Plaintiff's letters dated November 29, 2006; December 15, 2006; and December 28, 2006.  (Pl.'s Mem. Ex. J.)  It was clear from Defendant's January 10, 2007 letter that the parties were at an impasse with respect to a number of outstanding discovery requests (*e.g.*, Requests for Production Nos. 10, 21, 24, 27, 31, and 32); continuing its objections, Defendant wrote that it "respectfully disagree[d]" with Plaintiff's position.  (Pl.'s Mem. Ex. J, at 5, 10-11.)

In its January 10, 2007 letter, Defendant stated, however, with respect to documents responsive to Plaintiff's First and Second Sets of Requests for Production, which were served on Defendant *over nine months and six months* earlier, respectively, "We are continuing [the process of reviewing documents] and will be further supplementing our production."[3]  (Pl.'s Mem. Ex. J at 3.)  At that time, Defendant provided no certain date by which it would provide a supplemental production.  Nonetheless, Plaintiff deferred filing a motion to compel until it had received and reviewed the supplemental production, which was first alluded to on September 20, 2006, to determine whether those documents resolved any areas of disagreement.  Defendant later represented that the production would be made on January 26, 2007.  When the production did not arrive on that date, Plaintiff followed up with letters dated January 29, 2007, February 2, 2007, and February 8, 2007.  Plaintiff's counsel, Lena Amanti, also spoke to Defendant's counsel, John Lindquist, on the telephone on February 15, 2007 regarding the status of Defendant's document production.  During that conversation, Ms. Amanti asked Mr. Lindquist to provide her with possible dates to meet and confer, suggesting February 22, 2007 as a date for

---

[3] These are also the same documents that were discussed at the September 20, 2006 conference.

the meeting. Defendant's production arrived on February 21, 2007, along with a letter in which Defendant reiterated its objections set forth in its January 10, 2007 letter. (Pl.'s Mem. Ex. K.) Defendant did not provide a response, either in the February 21, 2007 letter or otherwise, to Ms. Amanti's request for a date on which Defendant could meet and confer.

Despite the fact that Defendant's positions in its February 21, 2007 letter were unchanged from its January 10, 2007 letter with respect to the issues that are the subject of Plaintiff's Motion to Compel, counsel for Plaintiff, after the deposition on February 27, 2007, met with three lawyers representing Defendant to determine whether any resolution could be reached. While counsel for Plaintiff was informed that Dennis Donohue wanted to attend a meeting to discuss discovery issues, counsel for the parties who were present discussed discovery issues for approximately twenty-five minutes. Though counsel for Defendant made vague references to a future event that may impact the discovery issues raised by Plaintiff, at no time during that meeting was counsel for Plaintiff informed that Defendant was or would be withdrawing its long-standing objections, amending its discovery responses, or changing its positions from those stated in its January 10, 2007 and February 21, 2007 letters. Furthermore, even after Defendant was informed on March 2, 2007 that Plaintiff intended to file its Motion to Compel, Defendant continued to remain silent as to its impending DGI motion (*see* Def.'s Mot. to Strike Ex. 1), even though Defendant intended to file, or had already filed, its motion to compel against DGI on that same day. (*See* Ex. D at 1.) Plaintiff first learned of this motion at the Court's status conference of March 6, 2007. (Status Conference Tr. 8:13-17.)

## ARGUMENT

Defendant's assertions that Plaintiff has not attempted in good faith to narrow the issues are unfounded. Throughout the discovery process, Plaintiff continually has apprised Defendant of the deficiencies in its responses to Plaintiff's discovery requests, either via letter, over the

5

telephone, or in person, in order to narrow or resolve discovery issues.[4]  Additionally, Plaintiff endured repeated delays in Defendant's supplemental production prior to filing its Motion to Compel.[5]  As the Court observed at the March 6, 2007 status conference:  "From my perspective, as near as I can make out, you're both doing your job, which is to resolve what can be resolved, and to file motions when it can't be resolved."  (Status Conference Tr. 12:2-4.)  Plaintiff has, in fact, complied with the local rules.

## I.      Plaintiff Has Complied with the Local Rules

Local Rules 7.1(a)(2) and 37.1(a) require, prior to filing a discovery motion, that the parties confer and attempt in good faith to resolve or narrow the areas of disagreement.  Plaintiff satisfied this obligation.

### A.      Plaintiff Acted in Good Faith to Narrow the Areas of Disagreement

Plaintiff has satisfied both the letter and the spirit of Local Rule 37.1.  As Defendant explained in its Motion, "[o]ne reason for LR 37.1 is to prevent parties from filing premature motions.  Another reason is so that the parties have a chance to ascertain whether they can narrow or resolve their disputes before involving the Court."  (Def.'s Mot. to Strike at 3 (citing *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99 (D. Mass. 1996).)  Plaintiff's Motion to Compel was not premature because the parties were at an impasse with respect to the issues raised in the Motion.

Plaintiff brought to Defendant's attention all of the issues that were raised in Plaintiff's Motion to Compel over two months prior to filing the Motion.  During this time, Defendant had

---

[4] Plaintiff sent letters to Defendant on June 9, 2006; July 13, 2006; September 7, 2006; November 29, 2006; December 15, 2006; and December 28, 2006 identifying areas of disagreement with respect to Defendant's responses to Plaintiff's discovery requests.

[5] Plaintiff also sent letters to Defendant on January 29, 2007; February 2, 2007; and February 8, 2007 inquiring as to the status of Defendant's production, which Defendant requested Plaintiff review prior to arranging a conference. Defendant has delayed the production of documents and delayed the "meet and confer" process by promising the production of additional documents, but failing to deliver those documents on the promised date.  Plaintiff has patiently waited and communicated with Defendant and filed its motion only after months of communications with, and delays by, Defendant.

ample opportunity to inform Plaintiff of its positions with respect to those issues as the parties were in contact numerous times, via telephone, letter, and in person. Defendant clearly stated its objections on January 10, 2007 and February 21, 2007 with respect to the issues raised in Plaintiff's Motion to Compel, leaving no doubt that it opposed Plaintiff's discovery requests. Thus, it was evident to Plaintiff that the parties were at an impasse. Plaintiff did, however, once again raise the issues that are the subject of the Motion to Compel during a meeting with Defendant on February 27, 2007. Defendant did not bring to Plaintiff's attention any change of position with respect to issues on which the parties had reached an impasse. Plaintiff acted in good faith to narrow the issues, and provided the parties with a significant period of time within which to narrow the areas of dispute.

**B.    The Motion to Compel Could Have Been Filed Without the February 27, 2007 Conference**

While the February 27, 2007 conference complied with Local Rule 37.1, that conference was not even necessary for purposes of complying with the local rules. Government counsel never responded to Ms. Amanti's February 15, 2007 request to meet and confer. Thus, Plaintiff was free to file the Motion to Compel without a conference. *See* Local Rule 37.1(b) (" If (I) opposing counsel has failed to respond to a request for a discovery conference within the seven day period set forth in subdivision (a) . . . a dissatisfied party may file a motion and supporting memorandum."). Local Rule 37.1(a) further provides, "Failure of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, which may include automatic allowance of the motion." Moreover, Plaintiff filed its motion to compel more than fourteen days after its February 15, 2007 request for a conference, thus the filing was in compliance with Local Rule 37.1(b) ("If . . . (II) opposing counsel has

failed to attend a discovery conference within fourteen (14) calendar days of the request . . . a dissatisfied party may file a motion and supporting memorandum.").

### C.     The Meeting on February 27, 2007 Satisfies the Requirements of the Local Rules

It is unclear from Defendant's Motion to Strike whether Defendant is asserting that the meeting on February 27, 2007 did not comply with the local rules because Mr. Donohue was not in attendance or because Plaintiff's counsel did not represent, at the time, that it intended to treat that meeting as a conference under Local Rule 37.1.  (Def.'s Mot. to Strike at 4.)   Neither of these reasons, however, precludes the February 27, 2007 meeting from serving as a conference under Local Rule 37.1.  Moreover, Defendant's attempt to discount the fact that counsel conferred on February 27, 2007 about long-standing discovery issues fits the pattern of Defendant's delays and failure to respond to Plaintiff's communications and requests.

There is no reason why Mr. Donohue's presence was required for the February 27, 2007 conference to meet the obligations of the local rules.  Plaintiff had been trying to schedule a conference since December 15, 2006, over two months earlier.  In light of the fact that Defendant had failed to provide Plaintiff with any dates on which it could meet and confer, as a courtesy, Plaintiff provided Defendant another opportunity to discuss discovery issues before filing the Motion to Compel.[6]  During that meeting, Plaintiff did not raise any new issues, rather, Plaintiff sought to discuss issues raised in the exchange of letters between the parties over the course of the previous three-and-a-half months.  Furthermore, Plaintiff had been informed on November 2, 2006 that Mr. Lindquist was the person responsible for handling discovery matters.  This was evidenced throughout the exchange of letters concerning discovery issues by the fact that all

---

[6] It has not been uncommon in this case for Defendant to fail to respond to Plaintiff's inquires.  For example, Plaintiff sent Defendant three letters inquiring into the status of its production before it received a response from Defendant.

letters to Plaintiff, regardless of whether they were in response to a letter addressed to Mr.

Donohue or Mr. Lindquist, were signed by Mr. Lindquist.[7]  Finally, Plaintiff was first informed

after filing its Motion to Compel that Mr. Lindquist, who is among the counsel of record for

Defendant and who has conducted depositions and coordinated discovery in this case, does not

have the authority to represent Defendant at a discovery conference.

The February 27, 2007 meeting was, in fact, a meeting among informed counsel of record

for the parties in which discovery disputes were discussed for purposes of narrowing the areas of

disagreement.  While Local Rule 37.1 was not explicitly invoked, what in fact occurred was

clear:  the parties met and conferred.  Defendant had been aware since December 15, 2006 that

Plaintiff wanted to meet for purposes of satisfying the requirements of Local Rule 37.1.  (Pl.'s

Mem. Ex. H.)  In fact, in a telephone conversation on February 15, 2007, Ms. Amanti

specifically asked Mr. Lindquist to provide available dates for a meeting.  Moreover, it is

unreasonable for Defendant to suggest that the approximately twenty-five minute conference

attended by three attorneys for each party does not qualify as a conference for purposes of Local

Rule 37.1, but a three minute conversation between Mr. Donohue and Mr. Curtin prior to the

status conference on March 6, 2007 is sufficient for purposes of fulfilling the obligations under

Local Rule 37.1.  (*See* Def.'s Mot. to Strike Ex. 2 at 2-3 (stating that if Plaintiff withdrew its

Motion to Compel, Defendant "will then view [Mr. Curtin's] conference with [Mr. Donohue] on

March 6 as meeting [Plaintiff's] obligation under the local rules").)  For these reasons, Plaintiff

has satisfied its obligations under Local Rules 7.1(a)(2) and 37.1(a).

---

[7] These letters include those dated October 3, 2006; December 21, 2006; January 5, 2007; January 10, 2007; and February 21, 2007.

**II.      The Motion to Compel Did Not Create an Unnecessary Burden for Defendant**

Defendant's claim that Plaintiff's Motion to Compel created an unnecessary burden is incorrect because, as discussed above, the parties were clearly at an impasse with respect to the issues raised in the Motion.  Defendant's argument of burdensomeness is based only on its claim that a motion to compel a non-party by Defendant in the Southern District of New York obviated the need for Plaintiff to file a motion to compel with respect to specific discovery requests.

Defendant's veiled references to its then yet-to-be filed motion to compel in the February 27, 2007 meeting were vague, did not inform Plaintiff that Defendant was withdrawing its objections, and did not include a representation that Defendant would amend its discovery responses.[8]

Further, orally stating that an impending and unspecified motion to compel in another court would somehow resolve discovery disputes because, Plaintiff later learned, privilege claims would be withdrawn, does not satisfy a party's discovery obligations.  Amendments to discovery responses must be "in writing."  Fed. R. Civ. P. 26(e)(2).  Oral amendment of discovery responses does not satisfy the Federal Rules, *see Bradley v. United States*, 866 F.2d 120, 124 n.2 (5th Cir. 1989) (finding that an "ambiguous reference . . . over the telephone is no substitute for the written, formal response called for by the rules"), nor does the mere filing of a motion to compel against a non-party.  Thus, even if Plaintiff had withdrawn its Motion to Compel and refiled it after review of Defendant's motion to compel a non-party in another district court, as requested in Defendant's letter dated March 12, 2007 (Def.'s Mot. Ex. 2 at 2-3),

---

[8] None of Plaintiff's counsel in attendance recall any specific statements regarding the impending motion.  Even after Plaintiff informed Defendant on March 2, 2007 that Plaintiff would file a motion to compel by the end of the day (Pl.'s Mem. Ex. M), Defendant did not disclose details regarding its impending motion to compel.  In Defendant's March 2, 2007 reply letter, there was no mention of the impending motion (Def.'s Mot. to Strike Ex. 1), even though Defendant had informed the Southern District of New York that day that it would be filing a motion to compel and requested permission to file exhibits under seal (Ex. D).

Plaintiff would have refiled the motion in the same form.  This is true both because it was not

clear that Defendant would have formally amended its discovery responses and because

Defendant's motion to compel is not fully responsive to Plaintiff's discovery.  Even if Defendant

had amended its discovery responses at the time it filed its motion to compel, reference to a

motion in answer to discovery requests does not satisfy a party's discovery obligations.  (*See*

Pl.'s Reply to Def.'s Resp. to Pl.'s Mem. at 8-11.)

Defendant was aware of all the issues that were the subject of Plaintiff's Motion to

Compel for over two months prior to it being filed.  The parties were in contact during that time

period and failed to resolve any issues contained in Plaintiff's Motion to Compel.  It was clear by

January 10, 2007, and confirmed on February 21, 2007 and February 27, 2007, that the parties

had reached an impasse.  Accordingly, Plaintiff did not create an unnecessary burden by filing its

Motion to Compel.  The Motion to Compel is necessary to the preparation of this case.  It was

filed after months of disagreement over the discovery matters in issue.  It came as no surprise to

Defendant, nor was it a surprise to the Court in light of the discussions with the Court during the

status conferences.

## III.     A Motion to Strike Is Not an Appropriate Remedy for the Failure to Comply with Local Rules

A motion to strike is not the appropriate method for challenging an alleged failure to

comply with a local rule. [9]  Defendant does not cite any statute, rule, or legal precedent that

provides that an appropriate response to a perceived failure to comply with local rules is a

motion to strike.  Courts have held that the Federal Rules do not provide for the striking of a

motion.  *See, e.g.*, *Manchester Mfg. Acquisitions, Inc. v. Sears Roebuck & Co.*, 909 F. Supp. 47,

---

[9] The Federal Rules do permit a party to strike a pleading.  *See* Fed. R. Civ. P. 12(f) (providing that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter").  A motion, however, is not a pleading.  *See* Fed. R. Civ. P. 7(a) (providing an exclusive list of "pleadings").

55 (D.N.H. 1995) (finding that, under the Federal Rules, a motion to strike was not the proper remedy for a procedurally faulty summary judgment motion, and stating that "motions are not generally subject to being stricken."); *Sierra v. United States*, No. 97 Civ. 9329, 1998 U.S. Dist. LEXIS 14135, at *28 (S.D.N.Y. Sept. 10, 1998) (citing cases supporting the proposition that "Rule 12(f) does not authorize this court to strike documents other than pleadings").  In a District of Massachusetts case in which the defendant asserted that the plaintiff had failed to comply with local rules in connection with filing a motion to compel, the Court stated that the issue of compliance with local rules "should have been made in an opposition to the motions to compel." *Gouin v. Gouin*, 230 F.R.D. 246, 247 (D. Mass. 2005).  The only case cited by Defendant to support its motion to strike does not support Defendant's contention that a purported failure to comply with the local rules is grounds for striking a motion.  In *Hasbro,* 168 F.R.D. at 100, the plaintiff moved to strike the defendant's motion to compel on the grounds that the defendant failed to comply with the local rules and the court denied the plaintiff's motion to strike.[10] Accordingly, filing a separate motion to strike a motion due to the perceived failure to comply with local rules is not appropriate.  By filing the motion to strike, Defendant has attempted to

---

[10]In *Hasbro*, the court found that the discovery process contained numerous procedural irregularities, including defendant's failure to comply with the local rules. 168 F.R.D. at 100-01. While the court denied the defendant's motion to compel without prejudice, *id*. at 102, the facts on which the court based its finding that the defendant in *Hasbro* failed to comply with the local rules, however, are distinguishable. Not only did the defendant attempt to obtain discovery from the plaintiff through the use of a Rule 45 subpoena, but also the plaintiff, after receiving a draft of the defendant's motion to compel, wrote to the defendant and "opined that the proposed motion would be premature for a variety of reasons." *Id.* at 101. The court also noted, "It appears from the documents of record, that counsel had been conferring about the document request and had not yet reached an impasse in the discussions before the motion was filed . . . ." *Id.* The court concluded that the procedural irregularities, including the failure of the parties to include certifications, "makes it difficult, if not impossible, for the Court to rule at this time on the substance of the motion to compel, however meritorious." *Id.* As explained above, Defendant set forth its position that it disagreed with Plaintiff on the issues that are the subject of Plaintiff's Motion to Compel. (Pl.'s Mem. Exs. J, K.) After receipt of these letters and a discussion with counsel for Defendant on February 27, 2007, it was clear that the parties had reached an impasse.

direct attention away from the real issues to be decided, *i.e.*, whether Defendant has complied

with its discovery obligations.  Accordingly, Defendant's Motion to Strike should be denied. [11]

### CONCLUSION

For the foregoing reasons, the Court should deny United States' Motion to Strike

Plaintiff's Motion to Compel Discovery, deny Defendant's request that Plaintiff's Motion to

Compel be summarily denied, and deny Defendant's request that sanctions be imposed on

Plaintiff.

Dated this 4th day of April 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

---

[11] On March 12, 2007, Defendant threatened to move to strike Plaintiff's Motion to Compel unless Plaintiff
withdrew its Motion.  Defendant, in turn suggested that the Motion could be refiled, relying on a brief consultation
between Dennis Donohue and David Curtin as satisfying the obligation to meet and confer.  (*See* Def.'s Mot. to
Strike Ex. 2 at 2-3).  It was apparent that Defendant's threatened motion to strike was, in substance, merely seeking
delay.  When Defendant did, in fact, request additional time to respond to the Motion to Compel, Plaintiff agreed.

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com


**Certificate of Service**

        I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 4, 2007.

                    /s/ Lena Amanti
                    Lena Amanti, D.C. Bar #490791
                    MCKEE NELSON LLP
                    1919 M Street, N.W., Suite 200
                    Washington, D.C. 20036
                    Telephone:  (202) 775-1880
                    Facsimile:  (202) 775-8586
                    Email: lamanti@mckeenelson.com

14

# Exhibit A

*McKee Nelson* LLP

> Correspondence from:
> WASHINGTON, DC

NEW YORK, NY

DAVID J. CURTIN
Direct Dial: (202) 775-8669
dcurtin@mckeenelson.com

1919 M STREET, NW
SUITE 200
WASHINGTON, DC 20036
*Telephone* 202.775.1880
*Facsimile* 202.775.8586

ONE BATTERY PARK PLAZA
34TH FLOOR
NEW YORK, NY 10004
*Telephone* 917.777.4200
*Facsimile* 917.777.4299

September 7, 2006

**VIA FEDERAL EXPRESS**

Dennis M. Donohue
U.S. Department of Justice, Tax Division
Civil Trial Section, Northern Region
555 Fourth St., NW, Suite 7804
Washington, DC 20001

Re:     *Fidelity International Currency Advisor A Fund, L.L.C. v. United
States*, No. 05-40151 (D. Mass.)

Dear Mr. Donohue:

We recently received your responses to Plaintiff's Second Set of Requests for Production of Documents Nos. 6-30 ("Requests") and to Plaintiff's First Set of Interrogatories ("Interrogatories"). The purpose of this letter is to advise you of our concerns over the objections raised and the shortcomings in Defendant's responses and production to date, as well as Defendant's failure to adequately respond to our July 13, 2006 letter concerning deficiencies in Defendant's initial disclosures and first production. We are prepared to discuss our concerns with you and to try to arrive at a mutual resolution, thus obviating the need for court action.

**Deficiencies in Defendant's Initial Disclosures**

On July 13, 2006, we sent you a letter regarding Defendant's failure to produce documents identified in Defendant's initial disclosures as being part of the public record (document categories 4 through 11). Plaintiff requested clarification regarding the nature of the materials that fall within the scope of document categories 4 through 11, or in the alternative, production of the materials. A copy of that letter is attached as Exhibit A for your convenience.

We have not received any clarification as to or production of document categories 4 through 11. We request that you promptly provide us with an adequate response to the issues raised in our July 13, 2006 letter with respect to Defendant's initial disclosures.

Dennis M. Donohue
September 7, 2006
Page 2

## Deficiencies in Defendant's First Production

On June 9, 2006, we sent you a letter concerning deficiencies in Defendant's response to Plaintiff's First Set of Requests for Production. Specifically, we asked you to have the IRS perform a search of its files for responsive documents and to supplement your response with those documents. A copy of that letter is attached as Exhibit B for your convenience. Matthew Hicks, in a letter dated June 23, 2006, indicated that the IRS had been asked to search its files more thoroughly. Because of our continued concerns regarding the adequacy of the IRS search for responsive documents, we again raised the issue in our July 13, 2006 letter. We have not, however, received any substantive response to the July 13, 2006 letter. We request that you promptly provide us with an adequate response to the issues raised in our June 9, 2006 and July 13, 2006 letters. This response should state whether the IRS completed its search for responsive documents. If the IRS has completed its search, we request that the additional responsive documents be produced promptly. If the search has not been completed, please make any necessary efforts to locate any additional responsive documents. If the search has been completed and no responsive documents have been found, please provide us with a detailed explanation of how the search was conducted.

## Defendant's General Objections in Response to the Requests and Interrogatories

(1)    *Administrative File Materials:*  Your first objection to our Requests and Interrogatories states that requests for materials in the IRS administrative file are not reasonably calculated to lead to the discovery of admissible evidence. This objection is surprising in light of the fact that the government has for years routinely produced the IRS administrative file in tax cases. Moreover, all documents that are "relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b)(1), are discoverable. Evidence concerning the issuance of the FPAA is directly relevant to "establish[ing] that the FPAA is incorrect" and constitutes part of the facts and law involved in this case. Additionally, the information from the administrative file could be used for purposes other than challenging the assessment in the FPAA, such as impeachment of witnesses. In either case, requests for materials in the administrative file are "reasonably calculated to lead to the discovery of admissible evidence" Fed. R. Civ. P. 26(b)(1); *see also Cusumano v. Microsoft Corp*, 162 F.3d 708, 716 n.5 (1st Cir. 1998) (stating that "the standard for discoverability of information is considerably less rigorous than the standard for admissibility of evidence"). The case law cited in your objections concerning the *de novo* standard of review does not support denying discovery of the administrative file. *See Greenberg's Express, Inc. v. Comm'r*, 62 T.C. 324, 327 (1974). Rather, the information in the taxpayer's administrative files is useful to both the taxpayer and the government, by leading to the discovery of admissible evidence. *See Beresford v. United States*, 123 F.R.D. 232, 233 (E.D. Mich. 1988) (finding that "[w]hile the government may not be able to introduce the return information at trial absent disclosure, it has already received the advantage of that information").

Dennis M. Donohue
September 7, 2006
Page 3

Recently, the Court of Federal Claims, when faced with this same issue, found "[t]he documents in Plaintiffs' Administrative Files are clearly relevant because they formed the underpinnings of the FPAA or contain data considered by the IRS in issuing the FPAA, challenged in this action." *Jade Trading, LLC v. United States*, 65 Fed. Cl. 487, 491 (2005). Therefore, we request that Defendant reconsider its position that such evidence is not relevant, respond to interrogatories relating to the FPAA, and turn over the portions of the administrative file that are being withheld. It is noteworthy that in a case where Defendant has conducted discovery into the tax return information of hundreds of non-party taxpayers, you object to the production of the IRS's administrative file concerning the taxpayer who is a party to the case.

(2)    Materials Relating to IRS Notices and Regulations: Your objections to our Requests and Interrogatories also assert that materials relating to IRS Notices and regulations "have been repeatedly held to be neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in a federal tax suit, and thus not discoverable." The case law cited to support this objection is not on point; none of the cases discuss the discovery of materials relating to IRS Notices and Treasury regulations. *See Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987) (discussing whether a taxpayer could conduct "extensive inquiries" of procedures used by IRS personnel); *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1974) (discussing whether an IRS agent must be compelled to provide answers in a discovery deposition); *Garity v. United States*, No. 9-72624, 1980 U.S. Dist. Lexis 16791 (E.D. Mich. May 20, 1980) (discussing discovery of taxpayers' files). More directly on point, the Court of Federal Claims in a case concerning a transaction that was alleged to be "substantially similar" to a transaction described in Notice 2000-44 recently observed the following:

> [B]ackground files relating to the IRS' construction of the term liabilities in 26 U.S.C. § 752 and documents underlying 2000-36 I.R.B. 255, IRS Notice 2000-44 would potentially be relevant to the extent they embody the IRS' interpretations of this term at any point in time pertinent to this action. Plaintiffs are entitled to know how the IRS interpreted this term in assessing their tax liability, in asserting penalties and whether the IRS' interpretation was consistent overtime.

*Jade Trading, LLC*, 65 Fed. Cl. at 492 (footnote omitted).[1] The Court of Federal Claims also applied the finding of relevance and discoverability to Treasury regulations. *Id.* Therefore, Defendant should reconsider and change its position that such documents are not discoverable, respond to interrogatories relating to IRS Notices and regulations, and produce the documents relating to IRS Notices and regulations we requested.

(3)    Burdensomeness: In Defendant's objections to our Requests and Interrogatories, a general objection suggests that the requests are overly burdensome due to the time and effort required to determine whether documents are subject to privilege. No legal authority is cited to

---

[1] The *Jade Trading* court also found that the documents underlying those notices could be relevant to the issue of whether penalties should be applied. 65 Fed. Cl. at 492

Dennis M. Donohue
September 7, 2006
Page 4

support the position that efforts required to determine whether documents are privileged constitute burdensomeness.

## Defendant's Privilege Claims in Response to the Requests and Interrogatories

(1)    Deliberative Process Privilege: This privilege, sometimes referred to as "executive privilege," is asserted both in your general objections and in objections to specific demands in the Requests and Interrogatories.  The objections cite no First Circuit case law concerning the application of the deliberative process privilege, even though the First Circuit has specific tests for determining whether documents are predecisional and deliberative.  We previously provided you with an explanation of First Circuit law concerning the deliberative process privilege and suggested that it has been inappropriately claimed in responding to Plaintiff's First Set of Requests for Production.  See Exhibit A.  In its responses to the Requests and Interrogatories, Defendant continues to assert claims of deliberative process privilege that are inconsistent with First Circuit law.  It appears that documents over which Defendant is asserting this privilege are not protected by any privilege and should be produced.

Defendant also claims that where the deliberative process privilege applies "a court must balance the purpose of the privilege against the 'objective' need (if any) for the information in the litigation."  You then inform us, without any factual support, that the information requested by Plaintiff is objectively irrelevant to this case.  Plaintiff disagrees with Defendant's assertion that the materials requested are "objectively" irrelevant to the issues in this case.  See Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 491-92 (2005) (finding that the background files for IRS Notices and Treasury regulations, as well as the taxpayer's administrative files, were relevant to issues in the case).[2]  Therefore, Defendant should review the Requests and Interrogatories for which it has asserted the deliberative process privilege and provide more meaningful responses, consistent with the First Circuit's application of the deliberative process privilege.

With respect to Interrogatory No. 8, Defendant produced documents over which it previously claimed deliberative process.  It is unclear whether, after further review, Defendant determined that the initial claim that these documents are subject to the deliberative process privilege was erroneous or that Defendant chose to waive the privilege.  In the event that Defendant is now choosing to waive the deliberative process privilege, Plaintiff requests that you produce the remaining documents over which you have asserted deliberative process.  See Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs, 60 F.3d 867, 885 n.8 (1st Cir. 1995) (noting that application of inadvertent waiver doctrine to attorney-client privilege, which also results in subject-matter waiver, "arguably applies to the deliberative process privilege as well"); see also Clark v. Township of Falls, 124 F.R.D. 91, 93-94 (E.D. Pa. 1988) (holding that executive privilege was waived by prior disclosure).  If Defendant has determined that its initial claims of deliberative process were overbroad, Defendant should revisit the balance of the

---

[2] In addition, Plaintiff's interest in disclosure of the information sought outweighs the harm that may result from such disclosure, thus the qualified privilege, if it applied, would be overcome.  Plaintiff reserves this position for future challenges to documents withheld by Defendant.

Dennis M. Donohue
September 7, 2006
Page 5

documents over which Defendant asserted deliberative process to determine whether those privilege claims also were erroneous.

(2)    26 U.S.C. § 6103 Protection:  This prohibition on disclosing tax return information is cited as the basis for not producing any new documents in response to Request Nos. 8, 10, 11, 12, 13, 14, 18, 23, and 24.  Tax return information, however, "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer."  26 U.S.C. § 6103(b)(2).  Therefore, responsive documents should have been produced in redacted form to the extent that they do not consist primarily of return information.  *See Tax Analysts v. I.R.S.*, 117 F.3d 607 (D.C. Cir. 1997) (holding that FSAs and TAMs were required to be produced in redacted form, though they contained some return information).  Additionally, applying the government's position as articulated in Chief Counsel Notice 2006-003, the documents requested by Plaintiff should have fallen under an exception to section 6103 that permits disclosure of tax return information that relates to an item or transaction at issue.  CC-2006-003 (Oct. 25, 2005).  Accordingly, consistent with the government's own declared position, Defendant should have produced these documents in un-redacted form.

Alternatively, responsive documents that have been produced to the Department of Justice by other taxpayers during the course of litigation, including summons enforcement proceedings, are not protected by I.R.C. § 6103 because those documents were not "received by" the IRS or produced to the Department of Justice by the IRS.  *See Baskin v. United States*, 135 F.3d 338, 342-43 (5th Cir. 1998); *see also Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 719, 722 (2000) ("Section 6103 does not prohibit the disclosure of tax return information that comes from a source other than the IRS.").  Therefore, Plaintiff requests that Defendant produce all documents responsive to the Requests listed above either from the Department of Justice files, or from IRS files to the extent that an exception to section 6103 applies in accordance with the Chief Counsel Notice.

## Deficiencies in Defendant's Response to Plaintiff's Second Set of Requests for Production

(1)    Failure to Identify Request(s) to Which Documents Respond:  Defendant failed to identify the request to which each document, whether currently or previously produced, is responsive.  In a letter from Matthew Hicks dated June 23, 2006, he stated, "Had you asked us to organize and label our responses, we would have done so and will do so if you ask in any future requests for production, assuming of course that you provide us with the same courtesy."  The instructions to Plaintiff's Second Set of Requests for Production state, "Please organize and label the documents to correspond to the specific request for production to which they are responsive."  We expect that Defendant will provide an index identifying the request(s) to which each document responds, including previously produced documents that are referenced in the Requests.  This is necessary because responses to some of the requests state that responsive documents were previously produced, but those documents have not been located.

Dennis M. Donohue
September 7, 2006
Page 6

    (2)    <u>Inadequacy of Privilege Log and Failure to Log All Privileged Documents</u>:
Defendant's production includes a disk that contains a privilege log for some, but not all, of the
documents demanded in the Requests.  Specifically, there is no indication that privileged
documents responsive to Request Nos. 8, 10, 12, 13, 14, 18, 24, and 25 are included on any of
the privilege logs produced to date, although your objections to those requests include privilege
and section 6103 assertions.  Federal Rule of Civil Procedure 26(b)(5) requires that a party
claiming privilege "describe the nature of the documents, communications, or things not
produced or disclosed in a manner that . . . will enable other parties to assess the applicability of
the privilege or protection."  Such information typically includes the "date, type of document, the
number of pages, author/recipient and the applicable privilege claimed for each document." *See,
e.g.*, *Gloves Inc. v. Berger*, 198 F.R.D. 6, 8 (D. Mass. 2000).  Defendant's privilege logs to date
fail to set forth such basic information as (i) from whom each communication was made; (ii) to
whom each communication was made; and (iii) any additional recipients of each communication.
Defendant is obligated to produce a privilege log for the documents not currently included in its
logs, and to revise the logs previously produced to identify the specific privilege being asserted
and the appropriate identifying information listed above.   Alternatively, we suggest that your
privilege log conform to the instructions in United States' First Set of Requests for Production,
which was served on Plaintiff on May 24, 2006.

    (3)    <u>Failure to Properly Claim Privilege or Protection</u>:  Defendant's responses to
multiple requests state that the responsive documents "may" or "might" be protected by the
deliberative process privilege, law enforcement privilege, Rule 6(e) of the Federal Rules of
Criminal Procedure, or by Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure.  Plaintiff
requests that Defendant identify whether those protections do in fact apply and include that
information on a privilege log.

    (4)    <u>Law Enforcement Privilege</u>:  Defendant asserts a "law enforcement privilege" in
response to the Requests and the Interrogatories without providing any legal or factual basis for
asserting this privilege.  Plaintiff requests that Defendant provide the legal authority and factual
basis upon which this privilege is being asserted.

## Deficiencies in Responses to Specific Requests

    (1)    <u>CD referenced in Bates-numbered Document 1IRS1159</u>:  The response to Request
No. 6 states that Defendant is attempting to locate the identified CD.  Plaintiff requests that
Defendant describe with particularity its efforts to locate the CD and the specific reasons for its
unavailability.

    (2)    <u>Documents from Files of IRS Personnel</u>:  The response to Request No. 7 states
that all responsive documents that are not privileged have been produced.  Neither the privilege
log nor the productions, however, indicate that this is the case.  Plaintiff requests that Defendant
supplement its production with the responsive documents that are still being withheld or log the
documents, to the extent they are privileged, on a privilege log.  Pursuant to the instructions in

Dennis M. Donohue
September 7, 2006
Page 7

Plaintiff's Second Set of Requests for Production those documents should be identified, whether produced or logged, as responsive to Request No. 7.

       (3)     <u>Documents Concerning Individuals and Entities on Appendix A</u>:  The response to Request No. 10 states that all documents concerning taxpayers are protected from disclosure by I.R.C. § 6103.  As explained above, the government's position in Chief Counsel Notice 2006-003 is that disclosure of these documents falls under an exception to section 6103.  Accordingly, Plaintiff requests that the responsive documents be produced promptly.

       (4)     <u>Materials Maintained by the IRS Relating to <em>Helmer v. Commissioner</em>:</u>  Defendant objects to Request No. 21 on the basis of relevancy, vagueness, and overbroadness and makes no claim of privilege.  This is a baseless objection.  The discovery sought by Request No. 21 is reasonably calculated to lead to discovery of admissible evidence.  The discussion in <em>United States v. Jade Trading LLC</em>, 65 Fed. Cl. 487 (2005), supports the view that discovery sought by Request No. 21 is relevant because it concerns the government's interpretation of "liability" over time.  Therefore, Plaintiff requests that Defendant produce the responsive documents promptly.

       (5)     <u>Interview and Deposition Transcripts</u>:  In responding to Request Nos. 25 and 26, Defendant mysteriously objects on the basis that the requested discovery is "not identified with sufficient particularity."  The request, however, provides the date of the deposition or interview, the name of the individual deposed or interviewed, and, in some instances, the matter in which the individual was deposed or interviewed.  Additionally, all of the requested discovery is in the possession of the government.  Finally, Defendant claims that such documents are "presumably part of the public record."  Plaintiff is unaware of any law, rule, or other legal authority that would allow Defendant to withhold documents in its possession based on the speculative claim that the material might be in the public record.  Plaintiff requests that Defendant produce the requested documents promptly.

       (6)     <u>Transcripts and Video Recording of Depositions from Cases Identified in Defendant's Initial Disclosures</u>:  The response to Request No. 28 states that the documents requested are part of the public record.  Plaintiff is unaware of any law, rule, or other legal authority that allows Defendant to withhold requested documents in its possession on the basis that the requested documents are available in the public record.  To date, Plaintiff has been unsuccessful in locating these documents in the public record and requests that Defendant produce them promptly.

## Deficiencies in Responses to Specific Interrogatories

       (1)     <u>Names of Individuals at KPMG Identified in the Statement of Facts</u>:  In response to Interrogatory Nos. 12 and 13, Defendant asserted that the requested information is protected from disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure.  This objection is inappropriate for multiple reasons.  First, Plaintiff is not seeking 6(e) materials.  Rather, Plaintiff is seeking facts underlying the Deferred Prosecution Agreement.  Those facts exist independent of the grand jury proceedings.  Second, not all materials presented to the grand jury are protected

Dennis M. Donohue
September 7, 2006
Page 8

by Rule 6(e). *See Church of Scientology Int'l v. United States Dept. of Justice,* 30 F.3d 224, 236 (1st Cir. 1994) (stating that "[it] cannot be that exposure to the grand jury immunizes information from future disclosure"). Instead, only materials that "would reveal the inner workings of the grand jury" are protected. *Id.* Additionally, when asserting this privilege, "[t]he government is obligated to offer some support for its claim that the release of the sought-after documents would compromise the secrecy of the grand jury process." *Id.* Therefore, Plaintiff requests that Defendant provide Plaintiff with the information not protected by Rule 6(e) and provide support for its claims that the information it continues to withhold is protected by Rule 6(e).

(2)    Names of Persons Involved in Development or Design of SOS, FOCUS or FDIS: In response to Interrogatory No. 14, Defendant objects on the ground that such information is obtainable from third parties. Plaintiff is unaware of any law, rule, or other legal authority that would allow Defendant to not respond to an interrogatory on the basis that the information should be sought elsewhere. If Defendant has the information, it should provide it.

(3)    Information Relating to FICA A Fund's 2002 Federal Income Tax Return: Defendant objected to Interrogatory Nos. 3, 4, 5, 6, and 7 to the extent that they seek information relating to the FPAA, concerning FICA A Fund's 2002 tax return, on the basis that it is the subject of another suit. Accordingly, Defendant did not provide a response to those interrogatories. This is in contrast to Defendant's Interrogatory No. 18, which requested information about Richard Egan's "expected tax benefit for the year 2002." Plaintiff, while preserving the same objection, provided a response to Defendant's Interrogatory No. 18. Defendant should provide meaningful responses to Interrogatory Nos. 3, 4, 5, 6, and 7.

In addition to the foregoing, Plaintiff is very concerned that Defendant may be informally, but effectively, interfering with Plaintiff's discovery of KPMG. Following discussions with government counsel, KPMG declined to respond to two requests contained in our subpoena to it. KPMG, through its counsel, advised that "the United States may have an objection as to request (sic) 9 and 10...." Similarly, on July 21, 2006, Mr. Lindquist informed me by telephone of a possible objection to these same requests and agreed to advise me of the government's ultimate position. To date, KPMG has not produced documents in response to these requests and Defendant has not confirmed whether it, in fact, has an objection to assert.

Please let us know when it would be convenient to meet and discuss the concerns identified above.

Sincerely,

David J. Curtin

Enclosures

Dennis M. Donohue
September 7, 2006
Page 9


cc:     Matthew C. Hicks
        John A. Lindquist
        Barry E. Reiferson

# Exhibit B



**U.S. Department of Justice**

**Tax Division**

*Facsimile No. (202) 514-5238*
*Trial Attorney: John A. Lindquist*
*Attorney's Direct Line: (202) 307-6561*

*Please reply to:* Civil Trial Section, Northern Region
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044

5-36-10254
CMN 2005106280

October 3, 2006

**Via Facsimile & Regular Mail**
[FAX 202/775-8586]

David J. Curtin, Esq.
McKee Nelson LLP
Suite 200
1919 M Street, NW
Washington, DC 20036

Re:     *Fidelity International Currency Advisor A Fund, L.L.C. v. United States,*
        *Case No. 05-40151 (D. Mass.)*

Dear Mr. Curtin:

I am writing regarding the discovery issues raised in your letter of September 7, 2006, and our proposed resolution of least some of those issues, pursuant to our discussion last week on September 19, 2006.

**A.     Defendant's Initial Disclosures**

You have asked for clarification regarding the nature of the materials that fall within the scope of document categories 4 through 11 that we identified in our initial disclosures as documents in the public record. As discussed on September 19, 2006, our reference was to the documents that are available to the public from the referenced proceedings with two possible exceptions. Those two exceptions are the depositions of James Haber and Paul Daugerdas taken in *The Diversified Group, Inc. v. Paul Daugerdas*, Case Nos. 00 C 0771 and 00 C 6484 (USDC SDNY), which we produced to you in our letter of September 29, 2006. As you are aware, many documents were filed in that proceeding under seal in whole or part. However, as discussed with you, it appears that the documents that are being produced by DGI in response to our document subpoena include a relatively complete copy of that record. You have asked for a complete copy of the DGI documents that we are having copied, as well as a scan copy, and we have agreed that, as a matter of course, each party will provide the other party with duplicate copies of any subpoena productions, with each party to pay their own costs. We have been notified that the DGI documents have been copied and should be delivered to each of us shortly. In addition, on September 29, 2006, we sent you copies of these two depositions.

- 2 -

**B.    Defendant's Response to Plaintiff's First Production of Documents**

You have asked for clarification regarding whether the IRS has completed its search for documents responsive to Plaintiff's First Requests for Production of Documents and, if so, that we promptly produce any additional responsive documents. As discussed at our meeting, the IRS has completed its search for documents responsive to this discovery request and produced additional documents to us. However, due to problems with our computer systems these documents are still in the process of being reviewed (for privilege and Section 6103). We have since upgraded our computer system and anticipate supplementing our production sometime next week.

**C.    Defendant's General Objections in Response to Plaintiff's Requests and Interrogatories**

(1)    **Administrative File Materials:** You have raised a number of concerns with respect to the three general objections that we raised in our responses to your first set of discovery requests, particularly as to the how those objections could apply to the IRS administrative files. However, we produced the entire IRS administrative file to you (except for privelged materials) pursuant to our Initial Disclosures – and did so even before we responded to your first set of discovery requests. By letter dated May 15, 2006, we then sent a privilege log to you detailing the portions of the administrative file to which we were asserting a specific claim of privilege. Consequently, our general objections had absolutely no effect on our production of the non privelged portions of the IRS administrative files.

Please be aware, however, that we remain convinced that our objections (both general and specific) to Interrogatories 3-7 of your First Set of Interrogatories, inquiring, *inter alia*, as to the bases of various adjustments made by the IRS in the FPAA, are amply supported by the case law cited in our objections. As noted in our objections, however, we view those requests as essentially contention interrogatories, which should have been crafted to inquire as to the positions of the United States in this litigation. Nonetheless, as noted above, our objections even to these discovery requests likewise had no effect on our production of the entire non privileged portions of the IRS administrative files.

At our meeting, you have also raised a concern as to whether our production of IRS materials includes copies of all records, documents, and materials maintained by the following individuals regarding the audit examination of FICA A Fund:

- James Fee
- William Kahnke
- John Klotsche
- Heather Malloy
- Denis McSweeney

1953281.1

- 3 -

- Deborah Morrill
- Henry Singleton
- Jonathan Zelnik

It is understanding that it does, but will again ask the IRS to verify that this is correct. As discussed, it is our understanding that your client previously obtained documents from the IRS under the Freedom of Information Act (FOIA) with respect to the examination of the FICA A entity. Because the IRS does not retain copies of its FOIA productions, we are unable to verify whether these FOIA productions are consistent with our production of IRS materials. If you have reason to believe that there is some inconsistency in the two productions, please inform us as to the specifics of the apparent inconsistency, and we will attempt to correct any problem.

(2)    **Defendant's Objections Based on Relevance, Burdensomeness and the Deliberative Process Privilege to Requests and Interrogatories Requesting IRS Notices and Regulations.**

You have raised concerns about our general objections to your requests and interrogatories relating to IRS Notices and Regulations. We believe our objections to these discovery requests – based on relevance, burdensomeness and deliberative process privilege – were perfectly proper and are well supported by the case law cited in our objections. Your reliance upon *Jade Trading, LLC, v. United States*, 65 Fed. Cl. 487 (2005) is misplaced. The court in *Jade Trading* relied upon the decision in *Marriott Int'l Resorts v. United States*, 63 Fed.Cl. 144, 145-46 (2005), to support its twin holdings that (i) "background files to the IRS' final actions" are potentially relevant in a tax case and (ii) that the Government had improperly invoked the deliberative process privilege. However, the decision of the Court of Federal Claims in *Marriott Int'l Resorts* was recently reversed by the Federal Circuit. *See, Marriott Int'l Resorts v. United States*, 437, F3d, 1302 (Fed. Cir. 2006). Specifically, the Federal Circuit held that the Government had not improperly invoked the deliberative process privilege in that case – leaving the entire decisions of the lower courts in *Marriott Int'l Resorts* as well as in *Jade Trading* as tenuous precedent. *Id.*

To support its holding as to the relevance of regulatory background files, the Court of Federal Claims in *Jade Trading, LLC,* also heavily relied upon the decision in *Bank of America v. United States*, 78 U.S.T.C. ¶ 9493 (N.D. Ca 1978). Significantly, however, the District Court based its decision there principally on the ground that these regulatory background materials constituted agency working law. Whatever the merits of that finding, there is no question here that the type of regulatory and notice materials that you seek do not fit the description of IRS working law. *Cf. Arthur Andersen & Co. v. Internal Revenue Service*, 679 F.2d 254, 259 (D.C Cir. 1982).

1953281.1

- 4 -

Even more importantly, the decisions in *Jade Trading, LLC* and *Bank of America* are flatly at odds with the fundamental principle that the views of individual members of an agency as to how a statute or regulation should be construed is legally irrelevant. *See. e.g. United States v. Farley*, 11 F.3d 1385, 1389 (1993), where the Seventh Circuit stated:

> In its attempt to decipher the meaning of a statute a court may rely on various tools, including official agency interpretations.*** *"[V]iews of individual members of the [agency's] staff are not legally germane."*

[Internal citations omitted and emphasis added]

You also argue that we failed to cite any legal authority to support our objections to these requests on the ground of burdensomeness. Burdensomeness, however, is a well accepted objection to a discovery request and there is no requirement to cite legal authority to support an objection in a response to a discovery request. As one court cogently put it:

> The dilemma faced by counsel in crafting interrogatories is akin to the dilemma of Goldilocks visiting the home of the three bears. Crafting an interrogatory that is "too narrow" may result in the answering party failing to provide relevant evidence that is related to the interrogatory but is fairly excludable under the terms of the interrogatory. Crafting an interrogatory that is "too broad" *results in valid objections due to overbreadth, irrelevance, and burdensomeness*. Too often, as a backlash to the results of crafting too narrow an interrogatory, parties will craft interrogatories that are too broadly worded. Although it is not an easy task (particularly when, as here, discovery is unnecessarily contentious), *it is* nevertheless incumbent upon the propounding party to craft an interrogatory that is *"just right."*

*Moore v. Baca,* 2002 WL 1040997, *2 fn. 2 (C.D. Cal. 2002) (Emphasis added.)

We believe your broadly-worded requests for IRS regulatory materials (as well as many of your other requests) ran afoul of the requirement that discovery requests be crafted "just right."

Once again, however, without waiving these general objections, we have endeavored to produce the voluminous materials requested except to the extent they are subject to the deliberative process or some other privilege. And thus far, we have already produced to you the bulk of the non-privileged documents. The remaining balance of the non-privileged documents were produced on September 29, 2006.

As discussed on September 19, 2006, however, we would like to agree with you upon the general procedure for our invoking the deliberative process privilege. This is particularly necessary given the extremely broad scope and otherwise burdensome nature of your IRS notice and regulation requests. To date, we have provided you with privilege logs without supporting

- 5 -

declarations from the appropriate IRS official authorized to invoke the privilege in the event of a court challenge. Since it would take a significant amount of time for this official to review personally all of the materials that are claimed to be privileged and since you may ultimately decide to seek court review of only a few (if any) of these documents, we have agreed with our opposing counsel in other cases as to the general procedure for our invocation of the privilege, which we propose should also be applied here. That procedure is as follows:

(1)     A claim of protection against disclosure based upon privilege shall be based upon a privilege log. Documents contained therein should be identified by date and by the names of the author(s) and recipient(s) and describing their general subject matter. We believe this procedure is consistent with Fed. R. Civ. P. Rule 26(b)(5). To the extent that our current privilege logs fail to provide this information, we will revise them to add the missing items as you requested. We will also request the IRS to reassess their assertions of privilege as to the documents identified in your letter of July 13, 2006.

(2)     The United States, if asserting a claim of governmental deliberative process privilege, will not support the claim of privilege log with a signed declaration from the authorized IRS official unless the claim is challenged in a motion to compel. In such event, the United States will notify the Court and the plaintiff as to when it will file a supporting declaration to the challenged claims of privilege, with such period being a good faith estimate of the amount of time required in light of the number of documents that need to be reviewed for purposes of preparing and filing a supporting declaration.

As discussed, such a procedure would greatly facilitate the resolution of any disputes that might arise as to particular documents described in the privilege logs. A similar procedure has already been adopted in the Multi-District Litigation involving many of the same documents.

Finally, please be advised that the process of asserting the deliberative process privilege is done on a document-by-document basis and our production of any specific document is not – and cannot be so treated – as a waiver of the privilege as to any other document.

## D.     26 U.S.C. § 6103 Protection

You have raised concerns about our failure to produce documents potentially subject to 26 U.S.C. § 6103 and/or potentially not excepted therefrom. As discussed on September 19, 2006, we are still in the process of reviewing the documents which have been released to us by the IRS for purposes of determining whether they may be released to you and plan to supplement our production. We will also produce a supplemental privilege log identifying any documents withheld under 26 U.S.C. § 6103.

- 6 -

**E.    Defendant's Response to Plaintiffs Second Set of Requests for Production**

**(1)    Failure to Identify Request(s) to Which Documents Respond:**

You have asked that we organize and label our production responses so as to allow you to identify the production request to which they relate.  In an attempt to show you the same courtesy that you have shown us, we have attempted to produce documents in electronic form so that they were readily searchable.   We apologize for any misunderstanding.  We will supplement our production to include an index identifying the request to which each document responds in the same manner that you have done.

**(2)    Materials Maintained by the IRS Relating to Helmer v. Commissioner:**

As discussed on September 19, 2006, without waiving our objections to this request, it is our understanding that certain IRS documents discussing *Helmer,* which were introduced into evidence in *United States v. Jade Trading LLC*, 65 Fed. Cl. 487 (2005), had been inadvertently released by the IRS in a prior FOIA proceeding involving another taxpayer.  The IRS generally does not retain copies of its prior FOIA productions and we have not located a copy of that FOIA production.

**(3)    Interview and Deposition Transcripts:**

You have asked that we again attempt to locate any transcripts, video recordings, or notes of the IRS interviews of James Haber on February 27 and 28, 2003.  We have recently located a partial copy of this transcript, a copy of which was produced on September 29, 2006. The United States was not a party to any of the other referenced litigation and we have not yet located a copy of any of the requested depositions.

**(4)    Transcripts and Video Recording of Depositions from Cases Identified in Defendant's Initial Disclosures:**

As discussed above, you will be receiving a copy of documents being produced by DGI in response to our document subpoena.  This production includes transcripts of depositions responsive to Request No. 28.

**F.    Deficiencies in Responses to Specific Interrogatories**

**(1)    Names of Individuals at KPMG Identified in the Statement of Facts:**

As discussed on September 19, 2006, we must stand on our responses to Interrogatory Nos. 12 and 13.   This is because these interrogatories seek information *to which we do not have*

- 7 -

*access* because that information is protected from disclosure by the law enforcement privilege and/or Rule 6(e) of the Federal Rules of Criminal Procedure.

The law enforcement privilege is a well settled privilege designed to protect documents and information relating to an ongoing criminal investigation. *See, In re U.S. Dept. of Homeland Sec.* 459 F.3d 565, (5th Cir. 2006) (reversing District Court for failure to recognize the existence of the law enforcement privilege). Indeed, many courts recognize the law enforcement privilege as covering documents relating to ongoing criminal investigations. *See, e.g., Dellwood Farms v. Cargill, Inc.,* 128 F.3d 1122, 1125 (7th Cir.1997) (recognizing the "law enforcement investigatory privilege"); *In re Dep't of Investigation,* 856 F.2d 481, 483-84 (2d Cir.1988) (stating that the law enforcement privilege exists and prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation); *United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981) (stating that the "law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files") (internal quotation marks and ellipse omitted).

(2)     **Names of Persons Involved in Development or Design of SOS, FOCUS, or FDIS:**

We stand on our objection to this request for information. The United States was not involved in the design or development of SOS, FOCUS and FDIS or any other tax shelter products. Plaintiff has or will receive copies of all documents and materials obtained by the United States from third parties in this case. We are not required to review this material and provide you with information from these documents. Indeed, our own review of these documents constitutes opinion work product which is afforded nearly absolute protection from discovery. It is axiomatic that opinion work product includes an attorney's evaluation of his case based on review of documents and interviews of witnesses. Opinion work product

> is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases.

*Sporck v. Peil,* 759 F.2d, 312, 316 (3d Cir.), *cert. denied,* 474 U.S. 903 (1985), *citing Upjohn Co. v. United States,* 449 U.S. 383, 401 (1981).

1953281.1

- 8 -

(3)    **Objection that Interrogatories Nos. 3-7 Sought Information Relating to FICA A Fund's 2002 Federal Income Tax Return**

In addition to our objection that 2002 was outside the scope of this litigation, as previously discussed, we raised a number of other objections to Interrogatories Nos. 3-7. While the 2002 tax year has now been consolidated with this litigation, our other objections to these requests continue to be applicable.

**G.    Interferring with Plaintiff's Discovery**

Lastly, while not discussed on September 19, 2006, you raise the spectre that we have been interfering with plaintiff's discovery by communicating with KPMG. We respectfully disagree. We do not believe that we have interfered with your discovery by notifying both you and KPMG that we might have an objection to the scope of your discovery. Of course, if you had such concerns on July 21, 2006, at the time that Mr. Lindquist notified you that we might have an objection, we might have been able to address your concerns at that time. The very fact that you were fully informed of our possible objection is itself evidence of the fact that there has been no interference. Accordingly, we believe your concern is misplaced.

If you have any further questions regarding these matters or any other concerns, please feel free contact John Lindquist at 202/307-6561.

Sincerely,

John Lindquist
Trial Attorney
Civil Trial Section, Northern Region

1953281.1

# Exhibit C



**U.S. Departmen** **Justice**

**Tax Division**

| | |
|---|---|
| *Facsimile No. (202) 514-5238* | *Please reply to:* *Civil Trial Section, Northern Region* |
| *Trial Attorney: John.A.Lindquist* | *P.O. Box 55* |
| *Attorney's Direct Line: (202) 307-6561* | *Ben Franklin Station* |
| | *Washington, D.C.* *20044* |

5-36-10254
CMN 2005106280

December 21, 2006

**Via Facsimile & Regular Mail**
[FAX 202/775-8586]

David J. Curtin, Esq.
McKee Nelson LLP
Suite 200
1919 M Street, NW
Washington, DC 20036

      Re:    ***Fidelity International Currency Advisor A Fund, L.L.C. v. United States,***
           **Case No. 05-40151 (D. Mass.)**

Dear Mr. Curtin:

      By letter dated October 3, 2006, we responded to a number of discovery issues that you had raised regarding the sufficiency of some of our discovery responses in the above-referenced matter. In that letter, in addition to attempting to fully address those concerns, I invited you to contact me directly if you had any further questions or concerns.

      This letter is to confirm receipt of your letters dated November 29, 2006 to me and December 15, 2006 to Mr. Donohue, in which you have again raised a number of issues regarding the sufficiency of our responses to your discovery requests. While some of the issues that you have raised appear to be similar to your prior concerns, you now have provided us with some additional information regarding the basis for your concerns, particularly regarding certain communications which you believe should have either been produced or identified and your outstanding request for certain civil deposition transcripts which you have identified as within the possession of the criminal prosecutors. We would like to defer any conference on these issues until we have had an opportunity to investigate the issues that you have raised, particularly in light of the additional information that you have provided, and will attempt to have a response to you by January 5, 2007.

- 2 -

    Thank you for your continuing cooperation in this matter.  Again, if you have any other questions or concerns, please do not hesitate to contact me directly at 202/307-6561.

Sincerely,

John Lindquist
Trial Attorney
Civil Trial Section, Northern Region

2109560.1

# Exhibit D



**U.S. Department of Justice**

**Tax Division**

*Please reply to:* Office of civil Litigation

Facsimile No. (202) 307-2504
Senior Litigation Counsel: Dennis M. Donohue
Attorney's Direct Line: (202) 307-6492

P.O. Box 403
Ben Franklin Station
Washington, D.C. 20044

March 2, 2007

**BY HAND**

Hon. Lawrence M. McKenna
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

## MEMO ENDORSED

(P.3)

Re:     Application to file materials under seal in Part I matter *United States v. The Diversified Group Inc.*, No. M8-85 (Part 1), arising from civil action No. 05-40151 (D. Mass.)

Dear Judge McKenna:

I am an attorney with the Tax Division of the United States Department of Justice, and am assigned to litigate the above-referenced matter, in which the United States will imminently file a motion in Part 1 of this Court. The United States is seeking to compel a New York entity, The Diversified Group Inc. ("DGI"), to produce documents it has withheld on claims of privilege in response to a Rule 45 subpoena issued in this District in connection with a significant civil tax matter pending in the District of Massachusetts. I write respectfully to request, on an *ex parte* basis, authorization, pursuant to Fed.R.Civ.P. 26(c), to file the supporting declaration under seal, insofar as many of the exhibits attached thereto could cause "embarrassment" to numerous non-parties to this action. I respectfully request a ruling at the Court's earliest possible convenience, as we intend to file the motion to compel today, March 2, 2007.

<u>Background of Underlying Litigation</u> - The lawsuit in which DGI was subpoenaed to produce these tax-shelter documents is *Fidelity International Currency Advisor A Fund, LLC v. United States*, 05-40151 (D. Mass.) (Honorable F. Dennis Saylor). That case involves a tax-shelter product purchased by Richard Egan, a former U.S. ambassador to Ireland. The tax shelter was developed and marketed by DGI under the name "Financial Derivatives Investment Strategy" or "FDIS." Ambassador Egan purchased an FDIS tax shelter in 2001, designed to generate over $150 million in tax benefits. This tax shelter is but one of 59 such tax shelters that were marketed and sold by DGI in 2001 and 2002, which generated well over $1 billion in fraudulent tax losses.

<u>Basis for the Government's Application to File Under Seal</u> - The United States seeks to seal the declaration in order to mitigate "embarrassment" to these other DGI customers. It is noted that

- 2 -

the information in issue is not subject to protection under 26 U.S.C. Section 6103, insofar as it does not come from the Internal Revenue Service. However, as memorialized in U.S. Treasury Department Notice 2006-003, it is the United States' general policy to avoid "public identification of specific taxpayers . . . , except when it is determined to be necessary to the matter before the court." Here, the fraud in issue is based, in part, upon the fact that the same foreigners participated as purported partners in each of these 59 tax shelters, but were in fact sham partners. The proof of this fact is contained in DGI's own records, both within and outside the four corners of Ambassador Egan's tax shelter transaction. The United States believes that this information may prove important to the Court's consideration of the United States' motion. However, additional public disclosure is not necessary at this time insofar as these other taxpayers are not before this Court.

The United States' motion to compel is based, in part, on its contention that DGI's assertions of privilege, invalid in any event, are barred by the crime fraud exception. As part of this showing, the United States supports its motion with the Declaration of John Lindquist (a trial attorney with the U.S. Department of Justice, Tax Division) and voluminous supporting exhibits. The declaration and attached exhibits will corroborate, among other things, that DGI's withheld documents do not contain attorney-client communications and contain no more than business advice relating to DGI's development and marketing of fraudulent tax shelters. As such, the declaration and exhibits are central to the Government's showing that the documents are not privileged and that the crime fraud exception applies to defeat the assertion even of an otherwise-valid privilege.

These materials, which refer to and reveal personal and sensitive information about numerous nonparty taxpayers, should be filed under seal to avoid violating those individuals' privacy interests. The documents, necessary to demonstrate DGI's provision of business advice in furtherance of a fraud, identify all 59 tax shelters, involving over 100 nonparty taxpayers— all high-net-worth individuals – who purchased fraudulent tax-shelter products from DGI. That identification, inextricably linked to this matter, could be embarrassing and potentially damaging to those taxpayers. Beyond that identification, the exhibits also reveal the large dollar amounts of the tax shelters used to offset taxable income of the purchasers, thereby revealing the amount of the taxable income that each of these individuals wanted to shelter from federal taxation.

<u>Necessity of Proceeding *Ex Parte* and Attempt to Secure Adversary's Consent</u> - John Lindquist, co-counsel for the United States, requested the consent of counsel for DGI to a sealing order. Counsel for DGI declined to consent to this request, suggesting that the exhibits could be redacted rather than filed under seal. Redacting the exhibits is not a viable alternative, for several reasons. First, redacting identifying information will make it much more difficult, if not impossible, for the Court to effectively evaluate the merit of many of DGI's privilege claims. For instance, DGI's own privilege logs identify many communications between DGI and its other customers. Second, as discussed above, due to the nature of the fraud, it is necessary for the court to evaluate the planning, development and implementation of all 59 FDIS tax shelter

2278548.1

- 3 -

transactions, in the aggregate. Third, as a practical matter, redacting all personal identifying information from the United States' submission will not be feasible, as the United States is necessarily submitting voluminous exhibits that stand approximately six inches thick. Finally, redacting the documents, no matter how carefully, will not necessarily prevent the public from discerning the identities and personal information of these other taxpayers, given that some, but not all, of these individuals have already brought suits against the promoters of these tax shelters.

Given the time sensitivity of this matter for the underlying litigation, it is not a viable option for us to formally move and litigate our request to seal the declaration and exhibits. We respectfully submit, for the reasons stated above, that sealing the declaration and exhibits is necessary to protect numerous nonparties to this dispute. We request entry of an immediate order permitting the matter to proceed without delay, and with the declaration and exhibits filed under seal. We have no objection to such an order being without prejudice to any application by DGI or any party to vacate the seal order. Any such application to vacate would, of course, be assigned to Your Honor as the judge ruling on the motion to seal.

Accordingly, we respectfully request that Your Honor "so order" this letter to permit the United States to file the Declaration of John Lindquist and accompanying exhibits under seal, without prejudice to DGI's or any other party's right to apply for an order vacating the sealing order. Thank you for your consideration of this request.

Respectfully submitted,

*Dennis M. Donohue /dsj*

Dennis M. Donohue
Senior Litigation Counsel
Office of Civil Litigation
Trial Attorney, Tax Division
U.S. Department of Justice
Tel: (202) 307-6492

*So ordered.*
*[signature] 3/2/07*

2278548.1