# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

_____

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax Matters )
Partner, )
 )
                  Plaintiff, )    Case Nos.: 05-40151-FDS
 )                         06-40130-FDS
                  v. )
 )
UNITED STATES OF AMERICA, )
 )
                Defendant. )
_____)

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MEANINGFUL ANSWERS TO INTERROGATORIES

In arguing that the discovery sought by FICA A Fund is not relevant, the Government continually confuses the broad relevance standard for discovery purposes with the standard applicable to deciding the merits of tax cases. At this juncture, the only standard applicable to determining whether discovery is permissible is that laid out in Federal Rule 26(b); discovery must be "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Moving beyond the threshold question of the scope of discovery, the Government repeatedly fails to address the privilege issues raised in FICA A Fund's Motion to Compel. Additionally, because the Government still has not satisfied its discovery obligations, no portion of FICA A Fund's Motion to Compel is moot. Finally, FICA A Fund's request for information regarding unrelated taxpayers is necessitated by the Government placing this information at issue in this case. While it is FICA A Fund's position that this information is irrelevant, and ultimately inadmissible, the information requested is necessary to allow FICA A Fund to challenge the relevance of the

Government's pattern evidence and to impeach it in the event that the Court finds that this "other taxpayer" evidence is admissible.  Accordingly, the Court should grant FICA A Fund's Motion to Compel.

**I.   The Court Should Compel the Production of Information and Documents Regarding the IRS's Notice 2000-44 Determination**

   **A.   FICA A Fund's Motion Is Not Moot**

The Government argues that FICA A Fund's Motion with respect to Interrogatory No. 3 (Pl.'s Mem. Ex. A at 5)[1] and Request for Production No. 15 (Pl.'s Mem. Ex. B at 8) is moot because "the United States has already produced all factual documents in the IRS administrative file concerning the underlying transactions."[2]  (Def.'s Resp. at 6.)[3]  However, a recent production by the IRS in response to a Freedom of Information Act request included at least four documents that reference Plaintiff, all but one of which also reference Notice 2000-44.  (Exs. A-D.)  The Government has not produced any of these documents in this litigation.  Accordingly, the Government's assertion that it has produced all documents from IRS files relating to FICA A Fund is factually incorrect and belies the Government's argument that the Motion is moot.

   **B.   Documents Regarding the IRS's Notice 2000-44 Determination Are Relevant**

In arguing that the discovery sought by FICA A Fund regarding the IRS's Notice 2000-44 determination is not relevant, the Government's reference to the *de novo* standard of review incorrectly implies that the Court should only allow discovery of materials that the Court itself will consider in deciding the merits of this case.  Most of the cases cited by the Government are

---

[1] "Pl.'s Mem." refers to Plaintiff's Memorandum in Support of Plaintiff's Motion to Compel Production of Documents and Meaningful Answers to Interrogatories.

[2] FICA A Fund has explained to the Government that FICA A Fund's discovery requests extend beyond the Government's narrow characterization of the administrative file. (*See, e.g.,* Pl.'s Mem. Ex. H at 3 ("[Y]our failure to produce or log all responsive IRS documents is a result of your search being limited to the revenue agent's FICA A Fund administrative file. Request for Production 5, however, is not so limited nor is the government's duty to search.").)

[3] "Def.'s Resp." refers to United States' Response to Plaintiffs' [*sic*] Motion to Compel Discovery.

not on point for discovery purposes or were decided in the context of taxpayers challenging the

validity or procedural aspects of an IRS assessment, which FICA A Fund does not do here.

FICA A Fund's discovery is not limited to evidence that will be considered in deciding

the merits of this case, rather, FICA A Fund may discover any information that is "reasonably

calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  As this

Court has advised, "[W]e are quite a ways away from admissibility at trial.  We're talking about

discovery."  (Status Conference Tr. 31:6-8, May 11, 2006.)

Both parties agree that an issue for the Court to decide is whether FICA A Fund's

transaction is substantially similar to a transaction described in Notice 2000-44, which involves a

transaction in which (1) "a taxpayer purchases and writes options," (2) the "option positions are

then transferred to a partnership," and (3) there is a "disposition of the partnership interest."

Notice 2000-44, 2000-36 I.R.B. 255, 255.  Plaintiff never disposed of his partnership interest,

thus the position taken by the Government in this proceeding, that the FICA A Fund transaction is

substantially similar to a transaction described in Notice 2000-44, is in direct conflict with the

IRS's own Notice.[4]  It took the IRS over nine months to conclude that the FICA A Fund

transaction is substantially similar to Notice 2000-44.  (*See* Ex. E (entries dated May 7, 2004 and

Feb. 22, 2005.)  In light of the fact that the Government has asserted penalties and placed the

reasonableness of Plaintiff's conduct at issue, discovery into what took place during the

Commissioner's consideration of this issue is clearly relevant to both the claims and defenses of

the parties.  To deny FICA A Fund this discovery would unfairly benefit the Government and

---

[4] The Government's position also conflicts with the advice that Plaintiff received from its advisors.  While the Government devotes three pages of its Response to arguing its version of the facts of the underlying case in addressing FICA A Fund's statement that Plaintiff's advisors assured Plaintiff that the FICA A Fund transaction was not a listed transaction (Def.'s Resp. at 15-17), only discovery issues are currently before the Court.  As was true in presenting its tutorial, here again the Government attempts to divert attention from the issues at hand by arguing its case.

deprive FICA A Fund of critical evidence on this important issue. Accordingly, the Court should compel Defendant to provide information and documents regarding the IRS's Notice 2000-44 determination.[5]

### C.     Documents Are Not Protected by the Deliberative Process Privilege

The deliberative process privilege has been held not to encompass agency discussions of how to apply the law to the facts of an IRS audit. *See, e.g., Safeway, Inc. v. IRS,* No 05-3182, 2006 U.S. Dist. LEXIS 81078, at *27 (N.D. Cal. Oct. 24, 2006). The Government asserts that it is "well-recognized" that the privilege applies to the examination process, but only cites one district court case. (Def.'s Resp. at 11.) The Declaration provided by the Government does not change the nature of the documents requested; FICA A Fund seeks documents that apply established IRS policy, Notice 2000-44, to the facts of this case. Allowing FICA A Fund to discover how the IRS reached its Notice 2000-44 determination will not "discourage candid discussion within the agency and thereby undermine [the IRS's] ability to perform its functions," *Faiella* v. *IRS,* No. 05-238, 2006 U.S. Dist. LEXIS 49710, at *20 (D.N.H. July 20, 2006) (quotation omitted), because the documents are sought by a taxpayer concerning its own audit.[6]

Even if information regarding the IRS's Notice 2000-44 determination was protected by the deliberative process privilege, that "privilege is 'qualified rather than absolute' and may be overborne by a showing that the information sought is 'relevant, helpful and unavailable from other sources.'" *Velazquez v. City of Chicopee,* 226 F.R.D. 31, 34 (D. Mass. 2004) (quoting

---

[5] While the Government is not limited by the rationale and claims the IRS made when adjusting FICA A Fund's tax liability (Def.'s Resp. at 9), the discovery sought by FICA A Fund continues to be relevant to the Government's defenses. *See Timken Roller Bearing Co. v. United States,* 38 F.R.D. 57, 62-63 (N.D. Ohio 1964) (allowing discovery of IRS reports and letters).

[6] In a case where the Government is attempting to redefine the outer limits of relevance in tax litigation by its discovery of "other taxpayer" evidence, the Government's refusal to produce IRS records concerning the taxpayer before the Court is particularly unfair and inappropriate.

*Ass'n for Reduction of Violence v. Hall,* 734 F.2d 63, 66 (1st Cir. 1984)). Because the deliberative process privilege is discretionary, a court undertakes an "ad hoc balancing of the evidentiary need against the harm that may result from disclosure." *Texas Puerto Rico Inc., v. Dep't of Consumer Affairs,* 60 F.3d 867, 885 (1st Cir. 1995) (quotations omitted). The privilege can be overcome when documents sought are "the only way to obtain information critical to responding to the various defenses raised by the Government," and the Government fails to offer both "a comparable alternative source" and "articulate[] any specific or significant harm that would result from disclosure of the particular documents sought." *First Heights Bank, FSB v. United States,* 46 Fed. Cl. 312, 322 (2000).

The Government has failed to prove that production of the requested materials would result in significant harm (especially given that the documents only relate to FICA A Fund's own return) or offered a comparable source for such documents. Moreover, these documents are critical to FICA A Fund's case because they may provide further evidence showing that the FICA A Fund transaction is not substantially similar to Notice 2000-44. Accordingly, the Court should compel the production of documents in response to Request for Production No. 15 and meaningful answers to Interrogatory No. 3.[7]

## II.    The Request for *Helmer* Materials Is Sufficiently Specific and the Materials Are Relevant

The Government does not support its assertions that FICA A Fund's request seeking documents "maintained by the IRS in connection with *Helmer v. Commissioner,* 34 T.C.M. (CCH) 727 (1975)" (Request for Production No. 21, Pl.'s Mem. Ex. B at 12) is overly broad,

---

[7] The Government also inconsistently invokes the deliberative process privilege. For example, the Government produced a document entitled "Miscellaneous 2000-44 Transaction: Lead Sheet" prepared by the examining agent in connection with the audit of FICA A Fund's 2002 tax year (Ex. F) but is withholding this same document prepared in connection with the audit of FICA A Fund's 2001 tax year (Pl.'s Mem. Ex. L at 4, 1IRS1442). The description of the withheld document in the Declaration applies to the produced document, also.

vague, and ambiguous, except to state that the documents are not relevant.  (Def.'s Resp. at 18, 23.)  As explained in FICA A Fund's Motion, this request relates to a specific case to which the IRS was a party, in which the Government asserted a position that the court accepted with respect to the tax treatment of certain liabilities, and on which FICA A Fund relied.  (Pl.'s Mem. at 15, 15 n.16.)  It is unclear how FICA A Fund could have made this request any more specific or how this request could be narrowed, as the Government requests.  (Def.'s Resp. at 23.)

In its notice of final partnership administrative adjustment, the document that serves as the jurisdictional predicate for this case, the Government takes a position contrary to *Helmer* and its progeny.[8]  Nonetheless, it is the Government's position that *Helmer* materials are irrelevant. The Government, however, fails to explain why *Helmer* materials are not relevant for *discovery purposes,* instead asserting that FICA A Fund must rely on the Code, case law, regulations, and official IRS guidance to establish the interpretation of "liability."  (Def.'s Resp. at 19-20.)  This assertion in no way impinges on the fact that the discovery sought by FICA A Fund is relevant to the Government's defenses with respect to whether FICA A Fund's treatment of liabilities was proper.  *See Timken Roller Bearing Co. v. United States,* 38 F.R.D. 57, 62-63 (N.D. Ohio 1964). Accordingly, the Court should compel the Government to produce documents responsive to Request for Production No. 21.[9]

---

[8] Notwithstanding the Government's position, *Helmer* continues to be cited for the proper treatment of certain liabilities for basis computation purposes.  *See, e.g., Klamath Strategic Inv. Fund, LLC v. United States*, 440 F. Supp. 2d 608, 619 (E.D. Tex. 2006) ("The positions the government took in the 752 Cases resulted in the same disparity between inside and outside basis that it protests will occur here under Plaintiffs' position. . . .  The only difference between the 752 Cases regarding liability and this case is that the taxpayer is receiving the benefit rather than the IRS."); *see also COLM Producer, Inc. v. United States*, 460 F. Supp. 2d 713, 716 (N.D. Tex. 2006) ("COLM correctly states that 'liability' within the meaning of section 752 does not encompass contingent obligations."); *Cemco Investors, LLC v. United States*, No. 04 C 8211, 2007 U.S. Dist. LEXIS 22246 (N.D. Ill. Mar. 27, 2007).

[9] The Government incorrectly asserted that, "[a]ccording to Plaintiff, a key factor in deciding [the validity of Treasury Regulation section 1.752-6] is whether the regulation changed 'settled prior law or policy.'"  (Def.'s Resp. at 22-23.) While at least one court has found the retroactive regulation invalid, *Klamath Strategic Inv. Fund, LLC v. United States*, 440 F. Supp. 2d 608, 626 (E.D. Tex. 2006), FICA A Fund does not base its relevance argument on the question of the

**III.    Documents Regarding the IRS's Views of Tax Strategies Is Relevant**

With respect to Requests for Production Nos. 31 and 32, seeking documents concerning views of the IRS and views solicited by the IRS regarding Tax Strategies, (Pl.'s Mem. Ex. C) the Government fails to explain why these materials are not relevant for discovery purposes. Both parties agree that issues in this case include the tax treatment and reporting of the underlying investments and the application of penalties. Even if FICA A Fund did not rely on documents responsive to these requests, as with FICA A Fund's other discovery requests, the requested documents are relevant to the claims or defenses of the parties and reasonably calculated to lead to the discovery of admissible evidence. For these reasons, the Court should compel the Government to produce documents responsive to Requests for Production Nos. 31 and 32.

**IV.    FICA A Fund's Motion Is Not Moot with Respect to the Government's Purported Factual Statements Made on the Record and the Government's Amended Discovery Responses are Insufficient**

Contrary to the Government's assertion, FICA A Fund's Motion is not moot with respect to the discovery requests seeking the facts supporting the purported factual determinations stated by the Government on the record (Interrogatory Nos. 15-22, Pl.'s Mem. Ex. D; Requests for Production Nos. 44-51, Pl.'s Mem. Ex. E) because the Government has "amended its responses to incorporate its motion papers which have been filed against DGI in the Southern District of New York." (Def.'s Resp. at 26.)[10]  According to the Government, "These motion papers fully

---

validity of the newly promulgated retroactive regulation. In fact, nowhere in its Motion or communications with the Court or the Government has FICA A Fund raised the issue of the validity of the regulation, and it did not write the quote that appears to be attributed to it.

[10] The number and identity of taxpayers or taxpayer entities who the Government believes engaged in transactions similar to FICA A Fund's, requested in Interrogatory No. 16, is a moving target. This number has ranged from 55 in the first subpoena issued by the Government on March 31, 2006; to 63 in the November 14, 2006 status conference; to 254 in the most recent subpoena issued by the Government on January 31, 2007; to "46 or 47" in the March 6, 2007 status conference; and apparently now settling on 58 in its Response to the Motion to Compel.

disclose the factual basis for the United States report to this Court on November 21, 2006 concerning the status of discovery." (Def.'s Resp. at 26.)

In response to interrogatories, it is inappropriate to incorporate outside material by reference. *See, e.g., SEC v. Elfindepan,* 206 F.R.D. 574, 578 (M.D.N.C. 2002), *aff'd,* 56 Fed. Appx. 149 (4th Cir. 2003) (questioning whether it is even permissible to use the tactic of "incorporation by reference" in answering interrogatories outside of the context of Rule 33(d)).[11] Even under Federal Rule of Civil Procedure 33(d), it is insufficient to reference "deposition transcripts, documents or writings that were generated, or discovered, respectively, *during the course of prior discovery in the same case,* only *portions* of which may be *relevant* to the issues for trial." *Continental Illinois Nat'l Bank & Trust Co. v. Caton,* 136 F.R.D. 682, 687 (D. Kan. 1991).[12] The incorporation by reference of the Government's "motion papers filed in support of its motion to compel The Diversified Group to produce[] documents" (Def.'s Resp. Ex. 8) in response to Interrogatories Nos. 15-22 is not a sufficient answer.[13]

Additionally, the Government's amended answers to Interrogatories Nos. 15-22 do not satisfy the Government's obligations under Federal Rule of Civil Procedure 33 to answer each interrogatory "separately and fully." Fed. R. Civ. P. 33(b)(1). All of the answers to the

---

[11] *See also Mahoney v. Kempton,* 142 F.R.D. 32, 33 (D. Mass. 1992) (stating that, except when the option to produce business records of Federal Rule 33(d) is invoked, "interrogatory answers must be complete in and of themselves; other documents or pleadings may not be incorporated into an answer by reference").

[12] *See also Melius v. Nat'l Indian Gaming Comm'n,* No. 98-2210, 2000 U.S. Dist. LEXIS 22747, at *4 n.2 (D.D.C. July 21, 2000) ("The assertion that pleadings, depositions, or exhibits are 'business records' under this rule has been rejected by every court to consider it.").

[13] Prior to amending its answers to Interrogatories Nos. 15-22, the Government referred FICA A Fund to "documents exchanged by the parties during discovery and . . . documents produced by third parties." (*Compare* Pl.'s Mem. Ex. D *with* Def.'s Resp. Ex. 8.) The Court should prohibit the Government from merely referring FICA A Fund to these documents because documents produced by third parties cannot be referred to in answering an interrogatory, *Continental Illinois Nat'l Bank & Trust Co.,* 136 F.R.D. at 687, and the burden of supporting the Government's factual determinations by searching through produced documents is greater on FICA A Fund than the Government. (Pl.'s Mem. at 29.) *See* Fed. R. Civ. P. 33(d).

interrogatories reference one document whose purpose is to persuade a court to compel a non-party to produce documents rather than to provide information to FICA A Fund in the discovery process.  Accordingly, the Court should compel the Government to provide sufficient and meaningful answers to Interrogatories Nos. 15-22.

Finally, for the same reasons that the Government's amended interrogatory answers are insufficient, the Government's references to its motion filed against a non-party in response to Requests for Production Nos. 44-51 are insufficient and do not satisfy its discovery obligations. Thus, the Government should be compelled to produce or identify materials responsive to Requests for Production Nos. 44-51.[14]

## V.    FICA A Fund Is Properly Seeking IRS Documents Relating to Other Taxpayers to Challenge the Government's Intended Use of Pattern Evidence

Defendant's suggestion that the portion of FICA A Fund's Motion concerning requests for other taxpayer information "is nothing more than a ruse for a trumped-up pretext to argue against the Government's possible use of pattern evidence" (Def.'s Resp. at 26) defies logic. Had the Government produced the requested information or applied section 6103 in a manner consistent with its assertion that other taxpayer information is relevant pattern evidence, FICA A Fund would not have raised these issues in its Motion to Compel.

FICA A Fund has consistently asserted its position that pattern evidence is not relevant in this proceeding.  Defendant itself acknowledges that "a taxpayer's liability for federal taxes depends on the law and *facts applicable to the taxpayer's own financial situation*."  (Def.'s Resp. at 28 (emphasis added).)  One of FICA A Fund's primary concerns is that much of the

---

[14] In its amended responses to Interrogatories Nos. 15-22 and Requests for Production Nos. 44-51, the Government did not withdraw its claim that the requested information and documents are protected from disclosure by the work-product doctrine.  (Def.'s Resp. Exs. 8, 9.)  As FICA A Fund stated in its Motion, the requested information and documents are either not protected by the work product doctrine or the protection has been waived. (Pl.'s Mem. at 25-29.)

information that would be required to challenge the Government's pattern evidence is in the exclusive control of the Government.[15]  Accordingly, FICA A Fund has sought discovery of all the pattern evidence the Government has put at issue, while the Government unfairly argues that it should be permitted to withhold this evidence.  It is nonsensical to suggest that a motion to compel "is not the time nor the place in which to address pattern evidence" (Def.'s Resp. at 26) when the Government has stated its intent to use such evidence and then denied FICA A Fund's discovery requests regarding that evidence.  Accordingly, the Court should compel the Government to produce documents in response to Requests for Production Nos. 10 and 43.

## VI.  Return Information of Other Taxpayers May Be Produced Under an Exception to Section 6103

In asserting that other taxpayer information cannot be produced pursuant to an exception to section 6103, the Government spends significant time arguing that just because information is "relevant" for purposes of Federal Rule 26(b)(1) does not mean that it is "directly related" for purposes of section 6103(h)(4)(B).[16]  (Def.'s Resp. at 29-32.)  The Government has previously presented the same arguments presented in this case to the Court of Federal Claims and lost.  *See Shell Petroleum, Inc. v. United States,* 47 Fed. Cl. 812 (2000).

In deciding against the Government, the *Shell Petroleum* court stated that "'directly related' information is relevant information."  *Id.* at 818.  The court found that if section 6103(h)(4)(B) were interpreted, as the Government suggested, "to limit Section 6103(h)(4)(B) to those instances where the two taxpayers are directly related, then . . . other statutes would be

---

[15] To gather comparable information, FICA A Fund would have to issue subpoenas to over 200 other taxpayers in multiple jurisdictions across the country.

[16] The entire premise for Defendant's discussion is based on the assumption that FICA A Fund is seeking other taxpayer information to show "disparate treatment of similarly situated, but unrelated, taxpayers."  (Def.'s Resp. at 29.)  FICA A Fund is seeking this information to rebut the Government's intended use of pattern evidence.  It is the Government who is putting this information in issue.

superfluous." *Id.* at 817.  Where a taxpayer is "seeking third party taxpayer information that may

assist . . . in resolving an issue in [the] case [before the court]," the disclosure would not

"interfere with the animating purpose of the statute," which was to prevent the use of tax returns

for "political advantage and intimidation."  *Id.* at 818.  Since FICA A Fund's request will not

"interfere with the animating purpose of the statute" and since the Government has asserted that

the information is relevant to "resolving an issue in [the] case," *id*. at 818, then the Court should

find that the information relating to the over 200 other taxpayers can be produced pursuant to

section 6103(h)(4)(B).

      The Government's discussion of section 6103 also appears to be inconsistent with the

Government's position in Chief Counsel Notice 2006-003 that such information may be

disclosed without violating section 6103.  Without mentioning the Notice, the Government states

that "information regarding . . . 57 other FDIS transactions may very well have a *direct*

*relationship* to the resolution of multiple issues in this litigation."  (Def.'s Resp. at 33.)  The

Government's argument that, even though such information is directly related, it does not need to

be produced because "it is unlikely that the IRS administrative files of the taxpayers engaging in

these other FDIS transactions contain factual information that has not already been (or will be)

produced by the promoters" (Def.'s Resp. at 33) is incorrect for multiple reasons.  First, returns

filed with the IRS are not necessarily the same as returns in the files of the promoters.[17]  Second,

at this point it is unknown what additional information that goes beyond the files obtained from

third parties may have been gathered in the course of audits of these other transactions.

      Finally, the Government's suggestion that only certain factual information is directly

related, thus only that information may be produced pursuant to an exception to section 6103, is

---

[17] The Government itself has previously asserted this very same point in this case. (*See* Ex. G at 2 (stating that returns in the hands of the subpoenaed party "may be different than the tax returns actually filed with the IRS.").)

inconsistent with the Government's stated position that "'if transactions reported on a third party return are directly related to an issue in the proceeding, not only the pertinent portions of the return but also any extrinsic information obtained by the IRS regarding the tax treatment of the reported transaction may be offered into evidence without violating section 6103.'" Chief Counsel Notice 2006-003, CC-2006-003 (Oct. 25, 2005) (quoting *ACM v. Comm'r*, No. 10472-93, slip op. at 34-35 (T.C. Aug. 18, 1995). For the Government to now limit disclosure to certain facts is inconsistent with its previously stated position.

The Court should find that the requested information meets an exception to section 6103, and compel the Government to produce those files by a date certain, or bar the use of pattern evidence at trial.

## CONCLUSION

For the reasons set forth above, FICA A Fund respectfully requests that its Motion to Compel Production of Documents and Meaningful Answers to Interrogatories be granted and that the Court order the Government to produce documents and a privilege log in response to Requests for Production Nos. 10, 15, 21, 31, 32, 43, and 44-51 and provide meaningful responses to Interrogatories Nos. 3 and 15-22.

Dated this 4th day of April 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY
ADVISOR A FUND, L.L.C., by the Tax Matters
Partner


/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email:  dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com


John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com


**Certificate of Service**

        I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on April 4, 2007.


/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202)775-1880
Facsimile:  (202) 775-8586
Email:  lamanti@mckeenelson.com


13

# Exhibit A

FW Bill Wilson's requests

From: Young Donna Marie [Donna.M.Young@IRSCOUNSEL.TREAS.GOV]
Sent: Friday, February 18, 2005 3:01 PM
To: Wilson Bill
Subject: FW: Bill Wilson's requests

Bill - Do I read Jim's email correctly to say that the only items that you are still expecting a response on are the attached items?

-----Original Message-----
From: Fee James C
Sent: Friday, February 18, 2005 12:30 PM
To: Young Donna Marie; Volungis Tara P
Cc: Ellison Christine E; Wilson Bill; Maselli Joseph F
Subject: RE: Bill Wilson's requests

I included Bill on my email yesterday, and just got off the phone with him. I advised him that he could rely on the prior SoB approval as well as the specific reference to 1.701-2 in the -65 listing notice for his authorization. Chris gave us a clear answer for the -44/-65 hybrid. There is nothing more we are waiting for on this. Thank you all for your assistance.

I don't know at this point whether the Field will be coming back in for a similar determination on the distressed debt/distressed asset cases.

JAMES C. FEE, Jr.
Associate Area Counsel
OFFICE OF CHIEF COUNSEL - IRS
LARGE AND MID-SIZE BUSINESS DIVISION
701 Market Street, Suite 2200
Philadelphia, PA 19106
(215) 597-3442
FAX (215) 597-3008 or 597-2150

-----Original Message-----
From: Young Donna Marie
Sent: Friday, February 18, 2005 12:03 PM
To: Volungis Tara P
Cc: Ellison Christine E; Fee James C; Wilson Bill
Subject: RE: Bill Wilson's requests

You may need to request a token.
I spoke to Bill Wilson yesterday and he is still waiting on our response to his hybrid questions,

Page 1

175

FW Bill Wilson's requests

and alternatively to his 701 requests (the last 5 attachments to my earlier email). Jim Fee may be thinking of the attachments pertaining to the Egan transaction. Maybe you and Chris can contact Bill Wilson directly next week if there is any confusion, and let me know the outcome.

-----Original Message-----
From: Volungis Tara P
Sent: Friday, February 18, 2005 11:56 AM
To: Young Donna Marie
Cc: Ellison Christine E
Subject: RE: Bill Wilson's requests

Donna, I can't open the locked emails. Chris spoke to Jim Fee about the items that were attached to Egan, and he said they were provided as background to Egan and that we didn't need to address them.

-----Original Message-----
From: Young Donna Marie
Sent: Friday, February 18, 2005 11:23 AM
To: Volungis Tara P
Cc: Ellison Christine E
Subject: Bill Wilson's requests

Tara - when you, Chris and I met, we briefly discussed these submissions from Bill Wilson, and I believe that Chris indicated that you would be assigned to work on these so I am sending them to you and copying Chris. However, check with Chris next week to see if I'm correct.

The first two attachments concern whether a transaction is substantially similar to Notice 2002-50 or Notice 2002-65 (or possibly both). (Actually, being substantially similar to either of these Eliminators will make it substantially similar to all 3 Eliminators, because they are all substantially similar). If it is substantially similar to one of these, then separate 701 approval is not necessary since we have authorized it by the listing notice.

The next two attachments ("Cliff Notes Version") are the hybrid transactions that were originally assigned to Michael Goldman in November and were also attached as part of Jim Fee's . submission. We didn't discuss these when we met on ‾  The related opinion is the firm attachment. The last two attachments are also related to the SOB hybrid question. Bill says the hybrid SOB issues are of highest priority since they've been waiting for an answer. 701 approval is requested if the transaction is not substantially similar to SOB or PICO.

b3
6103a

Thanks.

Donna Marie Young
Special Counsel to the Associate Chief Counsel (PSI)

Page 2

176

# Exhibit B

**To:** Letkewicz Larry C
**Cc:** Merkle William G; Wilson Bill; Kiger Cheryl R; Gannon Richard H
**Subject:** RE: hybrid son of boss cases`

Thanks, Larry. Bill Wilson is a Technical Advisor who is responsible for these cases and will provide you with a description of the issue and anything else you need. I think Bill has a copy of the ___ FPAA. I have copied Cheryl Kiger, another TA with responsibility over some short statute cases. Jim Hill is working a similar issue in a docketed cases and has a workplan with CC:Intl input. Gannon is also available to help.

While we may have a short fuse on some of these cases, please don't feel locked into the FPAA template if it should be changed.

Thanks for your help.

    -----Original Message-----
**From:**        Letkewicz Larry C
**Sent:**        Tuesday, March 29, 2005 12:10 PM
**To:** Fee James C
**Cc:** Merkle William G
**Subject:**    hybrid son of boss cases`

I discussed this with Bill Merkle this morning, and I am available to render any assistance which may be needed in drafting appropriate FPAA language beginning on Thursday, March 31. I will need the RAR or some other thorough description of the issues and adjustments for any assistance to be meaningful.

# Exhibit C

Russ Cary

| | |
|---|---|
| **From:** | Letkewicz Larry C [Larry.C.Letkewicz@IRSCOUNSEL.TREAS.GOV] |
| **Sent:** | Monday, April 04, 2005 10:33 AM |
| **To:** | Fee James C |
| **Cc:** | Wilson Bill |
| **Subject:** | FW: hybrid son of boss cases` |

Jim, what do you think?

-----Original Message-----

| | |
|---|---|
| **From:** | Wilson Bill [mailto:Bill.H.Wilson@irs.gov] |
| **Sent:** | Monday, April 04, 2005 10:23 AM |
| **To:** | Gannon Richard H; Letkewicz Larry C |
| **Subject:** | FW: hybrid son of boss cases` |

Please see below

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd.
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

-----Original Message-----
**From:** Wilson Bill
**Sent:** Wednesday, March 30, 2005 9:15 AM
**To:** Fee James C; Letkewicz Larry C
**Cc:** Merkle William G; Wilson Bill; Kiger Cheryl R; Gannon Richard H
**Subject:** RE: hybrid son of boss cases`

Larry/Rick:

I took the FPAA language you drafted and sanitized it and sent a copy to Jadie Woods (Son of Boss Counsel) to check and make sure I didn't miss anything in the process.

Do you think it would be ok to send a sanitized draft to others with the FDIS cases? I am getting a lot of calls on these. Alternatively and/or in addition we could put this on the Son of Boss web site. These aren't son of boss cases in the strict sense, but are being worked under the Son of Boss executive champion.

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd.
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

246

-----Original Message-----
**From:** Fee James C [mailto:James.C.Fee@IRSCOUNSEL.TREAS.GOV]
**Sent:** Wednesday, March 30, 2005 8:14 AM
**To:** Letkewicz Larry C
**Cc:** Merkle William G; Wilson Bill; Kiger Cheryl R; Gannon Richard H
**Subject:** RE: hybrid son of boss cases`

Thanks, Larry.  Bill Wilson is a Technical Advisor who is responsible for these cases and will provide you with a description of the issue and anything else you need.  I think Bill has a copy of the     FPAA.  I have copied Cheryl Kiger, another TA with responsibility over some short statute cases.   Jim Hill is working a similar issue in a docketed cases and has a workplan with CC:Intl input.   Gannon is also available to help.

While we may have a short fuse on some of these cases, please don't feel locked into the FPAA template if it should be changed.

Thanks for your help.

    -----Original Message-----
**From:**        Letkewicz Larry C
**Sent:**        Tuesday, March 29, 2005 12:10 PM
**To:**  Fee James C
**Cc:**  Merkle William G
**Subject:**      hybrid son of boss cases`

I discussed this with Bill Merkle this morning, and I am available to render any assistance which may be needed in drafting appropriate FPAA language beginning on Thursday, March 31.  I will need the RAR or some other thorough description of the issues and adjustments for any assistance to be meaningful.

# Exhibit D

## Russ Cary

| | |
|---|---|
| **From:** | Fee James C [James.C.Fee@IRSCOUNSEL.TREAS.GOV] |
| **Sent:** | Tuesday, April 05, 2005 4:54 PM |
| **To:** | Wilson Bill; Fee James C |
| **Cc:** | Kiger Cheryl R |
| **Subject:** | RE: hybrid son of boss cases` |

Looks good, Bill.

-----Original Message-----
| | |
|---|---|
| **From:** | Wilson Bill [mailto:Bill.H.Wilson@irs.gov] |
| **Sent:** | Tuesday, April 05, 2005 5:39 PM |
| **To:** | Fee James C |
| **Cc:** | Kiger Cheryl R |
| **Subject:** | RE: hybrid son of boss cases` |

I think for now it is probably best to send it out to the known FDIS cases.  The latest list I have is as of February.  I'll see if Cheryl can send me an update (if there is one). What about the transaction description I sent you (copy attached).  Do you think its OK to post that?

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd. << File: Son of Boss-Straddle Shelter.doc >>
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

-----Original Message-----
**From:** Fee James C [mailto:James.C.Fee@IRSCOUNSEL.TREAS.GOV]
**Sent:** Tuesday, April 05, 2005 9:58 AM
**To:** Wilson Bill
**Cc:** Letkewicz Larry C; Woods Jadie T
**Subject:** RE: hybrid son of boss cases`

If you know the inventory of FDIS cases, I would send the FPAA language to the agents and their cadre attorneys.    If you post it on the Web, you will need to be specific in describing the cases or transactions to which it relates.  I have attached a list of attorney assignment.
 << File: SOB COUNSEL ATTORNEY ASSIGNMENTS 3 11.doc >>
Make sure that whatever you send out is the version drafted by Larry and reviewed by Jadie Woods.  Instruct the agents that this is a model that must be conformed to the facts of each case as the transactions are by no means uniform.

-----Original Message-----
| | |
|---|---|
| **From:** | Letkewicz Larry C |
| **Sent:** | Monday, April 04, 2005 11:33 AM |
| **To:** | Fee James C |
| **Cc:** | Wilson Bill |
| **Subject:** | FW: hybrid son of boss cases` |

Jim, what do you think?

-----Original Message-----
| | |
|---|---|
| **From:** | Wilson Bill [mailto:Bill.H.Wilson@irs.gov] |
| **Sent:** | Monday, April 04, 2005 10:23 AM |
| **To:** | Gannon Richard H; Letkewicz Larry C |
| **Subject:** | FW: hybrid son of boss cases` |

252

Please see below

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd.
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

-----Original Message-----
**From:** Wilson Bill
**Sent:** Wednesday, March 30, 2005 9:15 AM
**To:** Fee James C; Letkewicz Larry C
**Cc:** Merkle William G; Wilson Bill; Kiger Cheryl R; Gannon Richard H
**Subject:** RE: hybrid son of boss cases

Larry/Rick:

I took the FPAA language you drafted and sanitized it and sent a copy to Jadie Woods (Son of Boss Counsel) to check and make sure I didn't miss anything in the process.

Do you think it would be ok to send a sanitized draft to others with the FDIS cases? I am getting a lot of calls on these. Alternatively and/or in addition we could put this on the Son of Boss web site. These aren't son of boss cases in the strict sense, but are being worked under the Son of Boss executive champion.

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd.
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

-----Original Message-----
**From:** Fee James C [mailto:James.C.Fee@IRSCOUNSEL.TREAS.GOV]
**Sent:** Wednesday, March 30, 2005 8:14 AM
**To:** Letkewicz Larry C
**Cc:** Merkle William G; Wilson Bill; Kiger Cheryl R; Gannon Richard H
**Subject:** RE: hybrid son of boss cases

Thanks, Larry. Bill Wilson is a Technical Advisor who is responsible for these cases and will provide you with a description of the issue and anything else you need. I think Bill has a copy of the FPAA. I have copied Cheryl Kiger, another TA with responsibility over some short statute cases. Jim Hill is working a similar issue in a docketed cases and has a workplan with CC:Intl input. Gannon is also available to help.

While we may have a short fuse on some of these cases, please don't feel locked into the FPAA template if it should be changed.

Thanks for your help.

-----Original Message-----
**From:**      Letkewicz Larry C
**Sent:**      Tuesday, March 29, 2005 12:10 PM

2

**To:**          Fee James C
**Cc:**          Merkle William G
**Subject:**    hybrid son of boss cases`

I discussed this with Bill Merkle this morning, and I am available to render any assistance which may be needed in drafting appropriate FPAA language beginning on Thursday, March 31. I will need the RAR or some other thorough description of the issues and adjustments for any assistance to be meaningful.

254

3

# Exhibit E

# Examining Officer's Activity Record

| EXAMINING OFFICER'S ACTIVITY RECORD | Examining Officer William Conway | Date Assigned/Opened |
|---|---|---|
| **Taxpayer (use preprinted label if possible)** Name    **Fidelity International Currency Advisor A Fund ,LLC** Address  **C/O Michael J. Egan, Manager** **116 Flanders Road. Suite 3000** **Westboro, Ma. 01581** **Business Name: Same** **Address** **Phone Business ( 508 )898-3800 ext 352** **Fax ( )** | **Taxpayer's Representative.** **Patrick Shea CPA  See Form 2948 for additional POA/.** **Name** **Address** ___ **TP Auth/** | |

## Contacts and Activities

| Date | Loc. | Cont. | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 5/7/2004 | | | 8 | Case assigned. Referrals made by Team Man᷈ for international and Financial Products. Read through information provided with case file. Call received from Chief Counsel Atty John Aletta. He will be assigned counsel on case. Copy of Partnership return faxed to  John Alet Discussed case with manager. Researched possible Son of Boss issues and transactions |
| 5/11/04 | | | | Case assigned to Mark Corrigan financial specialist.  Per discussion with manager Peteɾ McIntyre will be international agent assigned t case. Appointment letter prepared. Appt to be scheduled for 6/21/04 Pub 1 and Noitce sent tᴏ taxapayer |
| 5/17/04 | | | 8 | Taxpayer (Egan) will be sent settlement offer. Not sure if what version Son of Boss Case but offer will be sent per direction Tax Rod Oakes. |
| 5/19/2004 | | | 4 | Started researching 988 losses. Son of Boss transactions. |
| 06/01/2004 | | | | Started preparing audit plan. Planning meetin᷈ will be held prior to initial interview.  Started preparing initial letters. NBAP will be deliverec on first day of appointment. Appt Letter for TMP returned undeliverable Appt letter for Ptr. Returned undeliverable. New address 116 Flanders Rd. Westboro, Ma. Appt. Letter prepared with current date and |

1IRS1129

# Examining Officer's Activity Record

| | | | | | |
|---|---|---|---|---|---|
| | | | | | hand delivered to 116 Flanders Rd.<br><br>Research Halt memo and effect on case. |
| 6/1/04 | | | | 4 | Disk received from Tim Erickson. Copied and mailed to John Aletta. |
| | | | | 7 | Telephone call from John Aletta. He received ( disk. Discussed transaction. Transaction has some elements of Son of Boss. Advised John Aletta that I would be sitting down with Mark Corrigan Financial Products Specialist on Jun 14. |
| 6/14/04 | | | | 4 | Telephone call made to Pat Shea. Requested corrected address for TMP. Appointment scheduled for June 21, 2004 will be cancelled. Mr. Shea stated that he is putting together information. Agent will call on June 21, 2004 t get status of information.<br><br>Met with Revenue Agents Mark Corrigan and Berny Kaufman financial specialist agents. We through case with agents. Went through transactions. |
| 6/15/04 | | | | 6 | Researching currency options. Went through information that Mark Corrigan put together. Mark will analyze the specific option transactions and underlying currency transactions and brokerage statements. He wi put the information into program to address th economic reality issue of the transaction. |
| 6/21/04 | | | | | Related taxpayer will file settlement offer on tI transaction. Discussed case with Pat Shea taxpayers POA. Requested that the examinati be scheduled in August do to vacations and end of quarter reports. Mr. Shea stated it will take some time to get all the information completed but wants it to be complete when I out. He suggested August 16th but called bacl requestiung August 23rd. Advised POA that it will be expected that all information be provided. Appt will be August 16th |
| 7/21/04 | | | | 8 | Pre-Planning meeting held with International, Financial Products , Counsel along with Group Manager Debra Morrill, International Manager Denis McSweeney and International Territory manager Stan Locke. Case discusse along with discussion on duties of each specialist. Went through KPMG information |

# Examining Officer's Activity Record

| | | | | | |
|---|---|---|---|---|---|
| | | | | | received with Counsel John Aletta |
| 7/2204 | | | | 4 | Continued reading through information in case |
| 8/16 | | | | 8 | Interview held at Partnership address. Pat She Stephanie Denby and John Monaco of PWC. Started going through records presentede |
| 8/17 | | | | 8 | Audit continued at Patnership. A meeting will I scheduled which financial products and International can discuss issues. |
| 8/30/04 | | | | 8 | Met with Mark Corrigan and Peter Macintyre to plan for meeting on the 2nd. Went over case fil and information received to date. |
| 9/2/ | | | | 6 | Appointment held at taxpayer with audit team along with Group Manager Debra Morrill and International Group Manager Denis McSweene Taxpayer were represented by Mox Tan of Helios Financial. Pat Shea, John Monacco, Stephine Denby. Along with Michael Egan. Discussion held on the transaction. |
| 9/3 | | | | 2 | Discussed case with Mark Corrigan and Questions which need to be developed. Questions will be sent to John Aletta. |
| 9/13 | | | | 8 | Prepared memo to be sent to counsel to determine whether case is a son of boss case. |
| 9/14 | | | | 2 | CONFERENCE CALL HELD WITH john MONACCO AND PAT SHEA TO GO OVER STATUS OF ISSUE. ADVISED THAT MEMO WA GOING TO BE SENT TO COUNCIL FOR DETERMINATION. |
| 9/15 | | | | | CONFERENCE CALL HELD WITH MONACO SHEA DEBRA MORRILL AND MYSELF. Discussing memo that was prepared and sent up. |
| 9/17 | | | | 4 | WORKED ON CASE FILE  Conference call with Group Manager Sidney Saewitz of Cincinnati. Group has a similar case. Went over basic fac of transactions. |
| 9/20 | | | | 4 | MEMO E-MAILED TO JOHN ALETTA DISCUSSED MEMO WITH JOHN. HE WILL FORWARD THE REQUEST UP THE CHAIN. Worked on IDR's which will need to be approved. |
| 9/22 | | | | | Corrected IDR's as directed by John Aletta. |
| 9/27 | | | | 4 | Went through case file. |
| | | | | | |
| 10/5 | | | | 1 | Discussed status of memo. |
| 10/6 | | | | 1 | Checked recent information on Son of Boss. |

# Examining Officer's Activity Record

| | | | | |
|---|---|---|---|---|
| 10/18 | | | 6 | Planning meeting held with Debra Morrill Deni McSweeney, Mark Corrigan and Peter McIntyre Meeting scheduled for 10/19 at taxpayers with Jim Fee. |
| 10/19/04 | | | 8 | Meeting held at taxpayers . Discussion of fact to determine whether Fidelity is a Son of Bos Case or other type shelter/transaction and whether taxpayer will have appeal rights.Jim Fee of Chief Counsel attended the meeting in order to help in making determination as to whether this is a Son of Boss Case. See note in history section. Determination should be made with a few weeks. |
| 10/26'04 | | | 2 | Spoke with Pat Shea will be faxing letter letter received. Lists out taxpayers position on Son Boss. |
| 11/1/04 | | | 8 | No determination made to date. Prepared Forr 872 P and sent to partnership, TMP and the Power of attorneys. Read through letter sent previously. |
| 11/22/04 | | | 4 | Determination as to whether taxpayer is Son o Boss has not been made. Prepared follow up letter for 872 P. Mailed on the 24th. Call to be made to Pat Shea. It is taxpayers intentions to sign an extension if it is detemined that they a not a son of boss transaction. If they are not going to be given appeal rights they will not sign statute extension. Decision may be made by Dec 1st. |
| 12/1/04 | | | 1 | No determination made. Taxpayer reiterated that they would sign a statute extension when determination is made. |
| 12/2/04 | | | 1 | Worked on case file. |
| 12/14/04 | | | 8 | Worked on case file. Continued working throu information obtained through audit. |
| 12/16/04 | | | 8 | Individual outside basis calculation has been provided. Went through corporate records to determine numbers are accurately reflected. No determination made as to whether taxpaye will be apprised of there appeal rights. |
| 1/4/05 | | | 2 | Called Pat Shea. Discussed that no decision was made and no decision is expected any tin soon. |
| 1/10/05 | | | 8 | Worked on case. Researched closing of case and specific procedures relating to |

# Examining Officer's Activity Record

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Son of Boss |
| 1/14/05 | | | | | Conference call with John Monaco. John was looking for information so he can convince his TEAM to sign extension. Advised John that no determination was made and probably will not be made before the FPAA is sent out. |
| 1/18/05 | | | | 4 | Researched information on bonds presented information to Patrick Shea. Discussed bond procedure with Shea. Met with Pat Shea |
| 1/25/04 | | | | 8 | Met with Pat Shea and received copies of 2002 and 2003 1040 returns. Examination will be initiated. Advised Patrick Shea that FPAA will prepared and issued shortly. Pat Shea presented Agent with letter that was faxed to Jim Fee and and Johnathan Zelnik. |
| 1/26 | | | | 8 | Worked on FPAA. Received Mark Corrigans wwriteup Worked on RGS, Required adjustments needed to be listed on RAR cann be done with RGS program. Printed and Save RAR to adobe file. *DO NOT USE RAR DISK FO REPORTS" USE ADOBE 4605a FOR ANY CHANGES" |
| 1/27 | | | | 10 | WORKED on FPAA. Pat Shea called stating tha they will be making a payment in form of cash bond. Payment will be 30 Million dollars. Emailed preliminary FPAA and writeup to John Aletta and Rick Gannon. Rick Gannon will review and make corrections and additions. A prepare argument on case. |
| 1/28 | | | | 9 | Picked up payment from Pat Shea. Discussed letter. Went back to office processed check. Mailing documents checked. Rick Gannon will work on case this weekend and should have draft maybe on Monday.. |
| 1/31 | | | | 10 | Spoke to Rick Gannon. Continue working on Writeup. Continued working the case for closing. FPAA is being worked on by John Aletta Discussed case with Counsel. |
| 2/1 | | | | 9 | Continued working case. Draft Form 886a sen by John Aletta. Started reviewing. Worked on penalty writeup for individual closing. Penalty applicable at investor level. |
| 2/2 | | | | 9 | Continued working case file. Organized workpapers, Read through Form 886a |

1IRS1133

# Examining Officer's Activity Record

| 2/3 | | | | 9 | Continued preparing case for closing. |
|-----|---|---|---|---|---------------------------------------|
| 2/4 | | | | 6 | CASE completed. submitted to MGR - |
| | | | | | CALLED Ron Douglas |
| | | | | | No Return call. |

1IRS1134

# Examining Officer's Activity Record

| | | | | |
|---|---|---|---|---|
| | | | | |
| 2/4 | | | | Case given to manager Called Rod Douglas re tefra linkage. |
| 2/11 | | | | Spoke to Ron Douglas tefra coordinator in Ogden. Case has been established and NBAP was sent out on Feb 7.\ |
| 2/22/05 | | | | Decision received regarding request for advice whether it was determined that this case was substantially similar to notice 2000-44. It was determined that it was. Taxpayer will not be allowed to apprise themselves of appeal rights. Pat Shea was called and informed of the decision. |
| 2/24/05 | | | | Penalty IDR prepared and sent to counsel for approval. Investor level |
| 3/1 | | | | Emailed Richard Gannon requesting status of Penatly IDR along with status of FPAA and 886. |
| 3/3 | | | | Met with Pat Shea and Michael Egan. Went ove status of partnership. Letter presented requesting agent to give them a written analysi as to how decision was met. |
| 3/7/05 | | | 8 | Updated files and closing documents. No response from taxpayer.Printed the last revised FPAA and 886A. |
| | | | | |
| | | | | |
| | | | | |

# Exhibit F

Taxpayer: **Fidelity International Currency**          Form: 1065
**Advisor A Fund ,LLC**
Initial: wc

**Miscellaneous 2000-44 transaction:**

# LEAD SHEET

## 200212

## PRE-PLAN QUESTIONS AND CONCERNS:

1. Contribution of Fidelity World to Fidelity – generating stepped up basis substantially similar to the above notice.  Case was identified as a Son of Boss Case.

2. Settlement offer issued to investor. Taxpayer did not accept settlement offer. Prior year is presently In U.S. District Court.
3. Utilize financial Product Specialist. – Transactions involve option  transactions which were opened in 2001 and closed in 2002

4. 2002 is subsequent year which was split off from 2001. 2002 is being opened to disallow all partnership items.
   5..

| AUDIT STEPS/PROCEDURES | W/P REF | |
|---|---|---|
| 1. Financial Product specialist. | I | |
| 2.   Verify Basis transactions  (fidelity world  to Fidelity International Paid in Capital. | I | |
| 3.    Check calculation of  losses | | |
| 4.    . Check for transaction costs- capitalized ?  Basis | | |
| 5.   Disallow all partnership items | | |
| 6.   . | | |
| 7.   . | | |
| 8. | | |
| 9.   . | | |
| 10: | | |
| 11. | | |

**CONCLUSIONS OF SPECIFIC AUDIT STEPS/QUESTIONS:**

The transaction implemented by the taxpayer in this case was designed to utilize two, separate tax strategies, a basis generating strategy or "basis generator," and a loss generating strategy, a "loss generator."  The key players were our Richard J. Egan, an individual U.S. investor ("Egan"), Fidelity World LLC ("Fidelity World") a single member LLC which is disregarded for Federal Income Tax purposes and owned 100% by Egan, Fidelity International Currency Advisor A Fund, LLC ("Fidelity International" or the "Partnership" or "LLC"), which had elected to be taxed as a partnership,  Refco Capital Markets ("Refco" or "Counterparty"), an Irish investor, Samuel Mahoney "Mahoney",  Helios Trading LLC and Alpha Consultants LLC.  The

**FILE:**                                                                    W/PI

Taxpayer: **Fidelity International Currency**                    Form: **1065**
**Advisor A Fund ,LLC**
Initial: wc

transactions were promoted by Helios Financial ("Helios") and Alpha Consultants LLC.  It is assumed that Helios is the parent of Helios Trading LLC.

The basis generating strategy or "basis generator," was necessary to enable Egan to obtain the adjusted basis in the Partnership necessary to deduct the losses to be allocated to him from the Partnership under Sec. 704(d), was the Son of BOSS strategy described in Notice 2000-44.  The Son of BOSS strategy described in the notice originally contemplated a taxpayer purchase of a European style digital option in foreign currency and a simultaneous sale of an option in the same currency to the same counterparty that sold our taxpayer the first option. As indicated by this transaction, the type of notional property used in Son of BOSS transactions has evolved beyond foreign currency into more exotic financial instruments, but the underlying concept remains the same.

Taxpayer using foreign investor entered into sale of interest which was loss generator of the transaction.   See 2001 RAR and Write-up along with current year  886a  for additional information.

As a result of the transaction and determination that it is 2000-44 transaction.  The partnership will be considered  as being a non entity for Federal Tax Purposes. All partnership items will be reduced to 0.  See subsequent workpapers  reconciling  K-1 figures and subsequent disallowance of those figures.

\

---

**FILE:**                                                                                          W/PI

13IRS00555

# Exhibit G



**U.S. Department of Justice**

**Tax Division**

Please reply to:  Civil Trial Section, Northern Region
P.O. Box 55
Ben Franklin Station
Washington, D.C.  20044

*Facsimile No. (202) 514-5238*
*Trial Attorney: Barry E. Reiferson*
*Attorney's Direct Line: (202) 514-6058*

5-36-10254
CMN 2005106280

September 7, 2006

Via Federal Express

Ronald L. Buch, Jr.
McKee Nelson LLP
Suite 800
1919 M Street, NW
Washington, DC 20036

Re:    *Fidelity Int'l v. United States*, No. 05-40151 (D. Mass.)

Dear Mr. Buch:

I write in response to your August 22, 2006 letter listing Carruth Management LLC's and Carruth Associates LLC's "general" and "specific" objections to the United States' subpoenas *duces tecum* in this case.

The United States' issuance and service of subpoenas *duces tecum* upon Carruth Associates and Carruth Management were entirely proper under Federal Rules of Civil Procedure 34(c) and 45. In each instance, we issued a subpoena seeking documents that may be in the possession, custody, or control of the nonparty witness. As such, the subpoenas were not only proper but also necessary. Your statement that Egan and nonparty entities, including Carruth Management and Carruth Associates, "draw from the same repository of documents" does not obviate the need for nonparty discovery, and, of course, does not render such discovery improper.

Your allegation that the United states used the subpoena process to "circumvent Rule 34" is misguided. In fact, Rule 34(c) provides that a nonparty "may be compelled to produce documents . . . as provided in Rule 45," which, as you know, relates to subpoenas and not document requests. Accordingly, and contrary to your allegation, the United States simply followed Rule 34.

In following the rules, the United States sent the subpoenas directly to Joseph Jenkins, Esq., counsel to Carruth Associates and Carruth Management. As we explained to you during our August 17, 2006 telephone conversation, we were advised by Carruth personnel to send the subpoenas to Attorney Jenkins. Because you never noticed your representation of the Carruth entities and because the Carruth personnel with whom we spoke on August 9 failed to mention it, we were understandably unaware of your representation. Accordingly, to the extent that your letter implicitly indicates your concern that the subpoenas were not sent directly to you, your

- 2 -

concern is unnecessary. We will of course direct any future Carruth correspondence to you, so long as you represent the Carruth entities. In that regard, it would be a worthwhile endeavor for you to provide us with a list of other nonparty witnesses you represent in this case, if any. That is particularly so because you request direction of any additional discovery of Carruth or its partners to you. As you may recall, on August 17, 2006, you were unable to confirm your representation of Michael Egan.

Your August 22, 2006 letter states that you would be unable to remove duplicate documents from Carruth's production "because [of] the brief period within which to respond" to the subpoenas. We would have been quite willing to provide you with a reasonable extension of time to comply with the subpoenas if you had requested it, and we invite you to make such a request if future circumstances warrant it. Nonetheless, in this instance, it seems to have been rendered moot as indicated by your letter of August 25 in which you state that you were able to complete removal of duplicate documents.

As to your "Specific Objections" to the Carruth Management and Carruth Associates subpoenas, we have the following initial concerns:

1.      Your objection to Request 6 seems to be raising a privilege claim. If so, we await your privilege log. If it implies that a non-privileged document may be withheld because it was also provided to counsel, your objection is improper.

2.      Your objections to Requests 69 and 100 asking for federal and state tax returns of Carruth Management and others are improper. Carruth Management was an advisor to Mr. Egan in connection with the transactions at issue and was paid a fee for its services. The amount and reporting of this income is relevant to the issues in this case. Moreover, it is not a valid objection to refuse production because the IRS may also have the requested federal tax returns. Documents in the IRS's files are not necessarily available to counsel for the United States in this case. Furthermore, the requested documents may be different than the tax returns actually filed with the IRS. *See United States v. Daffin*, 653 F.2d 121, 124 (4th Cir. 1981)(recognizing the possibility that a taxpayer may alter a tax return after it is prepared, and therefore the information sought may not already be in the possession of the requesting party even if that party possesses a filed tax return).

3.      Your objections to Requests 89 and 90 indicate that Carruth Management will only produce the documents requested to the extent they are related to an entity identified on Appendix A and are contemporaneous with a claim or defense of a party. Those objection are improper. First, we are aware that the Egans and their advisors were considering the purchase of tax-shelter strategies long before entering into the transactions at issue. Any such documents are clearly relevant to our defenses in this case. For example, such documents may be relevant in

1902470.1

- 3 -

showing that the negligence penalty is applicable here. Since such documents would probably not relate to an entity on Appendix A, please inform us if you are withholding any such documents. Secondly, it is unclear what you consider to be contemporaneous with the "contribution of assets to or investments made in FICA A Fund" or "the years at issue." Please inform us as to what documents you consider to be contemporaneous with the issues in this case. Additionally, to the extent you consider tax-year 2002 documents not to be contemporaneous, we assert that the transaction resulting in the claimed loss in this case was supposed to span two years (2001 and 2002), and, as such, year 2002 documents are clearly relevant. Furthermore, 2002 is directly at issue in the second Fidelity suit against the United States (Civ. No. 06-40130-FDS (D. Mass.)).[1] Finally, since Fidelity International is still in existence, we have right to know whether Mahoney, Helios, and Alpha are still members of this LLC, even though that information may relate to tax years after 2002. As such, that later-year information is also clearly relevant.

5.     You state that Request 101 is overbroad because it requests all documents for the years 2000-2002 relating to the transactions at issue in this case. You assert that you have already produced specific documents relating to the transactions at issue. Your objection fails to explain why you believe the request to be overbroad. It is not clear to us that Carruth Management would have such a voluminous amount of materials relating to the transactions at issue that it would be too onerous for them to produce their entire file of such documents. Indeed, we assume that Carruth Management has already produced all such documents to your firm. Thus, please inform us as to why you believe this request is overbroad.

As you are aware, we are required to attempt to resolve any discovery dispute before filing an appropriate discovery motion with the Court. Accordingly, we would greatly appreciate a prompt response to this letter. If you have any questions, I can be reached at (202) 514-6058.

Sincerely,

Barry E. Reiferson
Trial Attorney
Civil Trial Section, Northern Region

---

[1]The two Fidelity International Currency Advisor A Fund cases versus the United States should have been marked as related cases under LR 40.1(G). You failed to indicate on the Civil Cover Sheet for case number 06-40130 the existence of a related case.

1902470.1