UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, ) ) ) ) | |
| Plaintiff, ) ) | Civil Nos. 05-40151-FDS (D. Mass.) 06-40130-FDS (D. Mass.) |
| v. ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, ) ) Defendant. ) | |

### UNITED STATES' REPLY TO RSM MCGLADREY'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS

RSM McGladrey's opposition contains more of what we have already seen from it during the six months since service of the subpoena– unsupported, untrue, and misleading allegations. RSM McGladrey's unsupported arguments in opposition are directed toward a broader subpoena than the one at issue. RSM McGladrey ("RSM") also fails to make any valid argument that it objected timely or at all to the October 23 subpoena to which the United States seeks compliance rather than the October 20 subpoena that is not at issue. Furthermore, RSM fails to make any showing whatsoever that could lead to the conclusion that the subpoena, particularly as narrowed, is overbroad or unduly burdensome to comply with. The factual allegations RSM does make, all without the support of a declaration, such as the United States' purported refusal to pay RSM's reasonable costs, are simply untrue. RSM, a central figure in this case, should produce responsive documents immediately.

### Introduction

RSM is one of four accounting firms known at this time to have been involved in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or

2403709.11

reporting of the SOS and subset FDIS tax-shelter products at issue here.[1] It is the only one of those four accounting firms to have failed to produce documents in response to a subpoena in this case. RSM is also the only one of the four subpoenaed accounting firms to have forced a motion to compel production. The United States' subpoena was served upon RSM on October 23, 2006, and almost 6 months later RSM has not produced a single page.[2]

RSM's noncompliance is made even worse by the high level of importance and relevance its documents have to this case. RSM was not a mere onlooker here. As described in detail in the United States' memorandum in support of this motion to compel, RSM was one of the principal participants in the FDIS tax-shelter scheme, and in Richard Egan's particular case. (U.S. Mem. at 2-6.)

**I.     RSM McGladrey Never Objected to This Subpoena and Must Produce Documents Immediately.**

RSM objected to the October 20 subpoena not at issue here. It never objected to the October 23 subpoena the United States seeks to enforce. RSM's failure in that regard is dispositive.

RSM improperly describes two different subpoenas as one so that it can argue that it objected to the October 23 subpoena at issue. The two subpoenas are clearly not the same. One was issued on October 20, 2006. (RSM Opp., Ex. 3.) The other was issued on October 23, 2006. (Mot. to Compel, Ex. 1.) The October 20 subpoena was served on that date in Washington, DC. (Govt. Ex. 1 attached hereto, Proof of Service.) The October 23 subpoena was served on that

---

[1] Those accounting firms are RSM, KPMG, BDO Seidman, and Grant Thornton.

[2] The other accounting firms have withheld only tax returns pending agreement on the terms of an addendum to a protective order. The United States has agreed to provide RSM with a draft of the proposed addendum.

date in Boston, MA.  (Govt. Ex. 2 attached hereto, Proof of Service.)  The October 20 subpoena had a compliance date of October 30, 2006.  (RSM Opp., Ex. 3.)   The October 23 subpoena had a compliance date of November 7, 2006.  (Mot. to Compel, Ex. 1.)

RSM made very clear in its objections[3] that it was objecting only to the October 20, 2006 subpoena.  The header on its objection cites the October 20 subpoena only.  *(Id.)*  Similarly, the introduction to RSM's objections says that RSM "objects to the Defendant's *October 20, 2006* Subpoena" (sic).  *(Id.)* (emphasis added).  RSM defined the October 20, 2006 subpoena as the "Subpoena."  *(Id.)* at 1.  It then relates all of its "General Objections" to that October 20 Subpoena.  *Id.* at 1-3.  It did not once mention in its objections the October 23, 2006 subpoena.[4]

Apparently recognizing its fatal error here, RSM now calls the two different subpoenas "duplicate[s]," and conflates them into "the subpoena."  (RSM Opp. at 3.)  RSM has nonetheless failed to object under Federal Rule of Civil Procedure 45(c)(2)(B).  It cites no legal authority for its position that objection to one subpoena not at issue suffices as an objection to a second subpoena that is at issue.

**II.     The Subpoena at Issue is Hardly Burdensome and is Sufficiently Narrow, and RSM Does Not Begin to Establish Undue Burden.**

As described in the United States' memorandum in support of this motion, there is hardly a burden imposed upon RSM here, much less an undue one.[5]  (U.S. Mem. at 15-16.)  RSM

---

[3]RSM Opp. Ex. 5.

[4]RSM did object to the October 20 subpoena on the ground that it was improperly served in Boston.  But that objection was incorrect because the October 20 subpoena was not served in Boston.  That objection was also characterized as a "General" objection as to service.

[5]RSM did not object to this subpoena, nor did it move to quash or modify the subpoena.  As such, it is not entitled to seek to establish undue burden.  Federal Rule of Civil Procedure 45(c)(3) provides for modification or quashing of a subpoena that subjects a person to undue burden only upon timely motion.  RSM failed to move at all, and a motion now, six months after service of the subpoena, would not be timely.

2403709.11

follows its failure to object to the subpoena with its failure to cite a single fact that would suggest an undue burden.  RSM also seems to be objecting here, as it has before, to a subpoena other than the one at issue.

As the one resisting discovery, RSM must demonstrate undue burden.  *See*, *e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *SEC v. Brady*, 238 F.R.D. 429, 437 (D. Tex. 2006); *Lundak v. Avey*, 1992 U.S. Dist. LEXIS 22583, 5 (D. Kan. 1992).  To meet its burden, RSM "must make a specific, detailed showing of how" the subpoena is unduly burdensome.  *SEC v. Brady*, 238 F.R.D. at 437 (*citing Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000)).  In making its specific showing, RSM "must do more than 'simply intone [the] familiar litany that the'" subpoena is "'oppressive or overly broad.'" *Saylavee LLC v. Hockler*, 2005 U.S. Dist. LEXIS 39802, 4 (D. Conn. 2005)(*quoting Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984); *see also St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511-12 (N.D. Ia. 2000)(mere statement that a request is "overly broad and unduly burdensome" is inadequate); *Harding v. Dana Transport Inc.*, 914 F. Supp. 1084, 1102 (D. N.J. 1996)(non-specific allegations are "woefully short" of the burden that must be borne by an objecting party).

To support its undue-burden position, RSM must demonstrate "specifically how, despite the broad and liberal construction afforded the federal discovery rules," each subpoena demand "is overly broad, [unduly] burdensome or oppressive . . . ." *Saylavee LLC v. Hockler*, 2005 U.S. Dist. LEXIS 39802 at 5 (*quoting Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. at 42).  Furthermore, RSM must make the specific demonstration by "submitting affidavits or offering evidence revealing the nature of the

burden." *Id.* at 5; *Allianz Ins. Co. v. Surface Specialities, Inc.*, 2005 U.S. Dist. LEXIS 301 (D. Kan. 2005)*; see also Jones v. Forrest City Grocery, Inc.*, 2007 U.S. Dist. LEXIS 19482, 3-4 (D. Ark. 2007); *U.S. ex rel. Fisher v. Network Software Associates*, 217 F.R.D. 240, 246 (D.D.C. 2003); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000).

Despite the requirements that it make a specific demonstration, RSM makes only broad-based and unsupported allegations of overbreadth and undue burden. There is not a single fact presented in the entire RSM opposition relating to the burden, if any, RSM would incur if it were to comply with the subpoena. There is no suggestion that RSM spoke to a single one of its employees who worked on the SOS and FDIS products. Similarly, there is no suggestion that RSM spoke with its employees who engaged in FDIS transactions, including Mr. Wainwright, who DGI called an "accommodation" party, apparently meaning he was given FDIS tax shelters for his own personal use without paying the normal promoter fees. There is no hint that RSM has looked into its file maintenance practices with respect to these tax shelters and the customers and employees who engaged in them. This is so even though the United States provided RSM with a list of potential RSM customers who engaged in the tax shelter.[6] There is no statement regarding the ease or difficulty of retrieving electronic records, including emails. In short, RSM goes no further than merely labeling the subpoena as overbroad and unduly burdensome. RSM also fails to allege a single fact in the declaration attached to its opposition as exhibit 2.

While failing to cite a single fact supporting its allegations, RSM also mischaracterizes– quite misleadingly– the subpoena at issue. First, RSM lists a number of inapplicable subpoena

---

[6]RSM even alleges that the assistive list creates an additional burden.

requests and alleges that those requests are "without limitation." (RSM Opp. at 4.) It uses that allegation to support its overarching assertion that the "categories of documents sought by the Government are extremely broad and open-ended . . . ." RSM then contradicts itself by admitting that the subpoena, which it had just described as "without limitation," had been limited in scope to "documents related to SOS and FDIS transactions . . . ." (RSM Opp. at 5.) Even here though, RSM mischaracterizes the list provided it by the United States by letter on December 1, 2006. The United States never requested all documents relating to a list of RSM customers. The lists attached to the subpoena and incorporated into the December 1 letter were provided to assist RSM in locating RSM's SOS and FDIS files, to the extent such assistance is necessary.

The documents sought here are appropriately narrowed to discover the marketing, implementation, and other efforts with respect to these tax-shelter products. These tax shelters were marketed to wealthy individuals and, by any reasonable account, received a lot of attention from accountants and law firms because of the obvious Government interest in tax shelters. It is beyond peradventure that RSM kept files on SOS and FDIS as well as those customers who were marketed and purchased the tax shelters. It is not as though the United States is requesting documents relating to a common item on the average tax return. RSM knows or can easily determine where these documents are, and can easily supply them.[7]

RSM's carefully crafted proposal to further limit its production is unacceptable. As we stated in the memorandum in support of this motion, RSM's proposal would deprive the parties of vital evidence relating to the design and development of these tax-shelter products. (U.S. Mem. at 7-8.) RSM offers to provide documents it deems sufficient to satisfy the purpose of

---

[7] That would be so even without the United States' guidance in the form of lists and offers to assist in determining file maintenance practices.

"[g]athering '[p]attern [e]vidence.'" (RSM Opp. at 10.) It is not for RSM to determine what amount of evidence is sufficient. That is particularly so when RSM has a stake in withholding evidence. Furthermore, the evidence in RSM's hands is not limited to "pattern evidence;" It extends to evidence bearing directly on the determination the Court will be making about the mass-marketed tax-shelter product at issue.[8]

RSM's allegation that the United States said it "will not cover the cost of [RSM's] compliance with the subpoena" is, quite simply, false. The United States has said it will reimburse RSM for reasonable and ordinary costs, such as for copying. The United States is not required to and will not pay for lawyer's fees associated with the production. Moreover, RSM is unnecessarily running up those lawyer's fees by refusing production.

### III.    The Subpoena Was Properly Served.

For the reasons described in the United States' memorandum in support of its motion to compel, service of the subpoena on RSM's Boston office was proper, and RSM must produce responsive documents in its possession, custody, or control. (U.S. Mem. at 11.)

While seemingly admitting to personal jurisdiction, RSM "submits" that the Court should "consider . . . whether the location served has a sufficient 'degree of control' over the documents . . . ." (RSM Opp. at 8.) RSM's "submi[ssion]" that such a consideration is warranted is based on its misunderstanding of the cases it cites. Specifically, RSM misunderstands the holding of the 11th Circuit in *Ariel v. Jones*, 693 F.2d 1058, which was relied upon by the District of Colorado court cited in RSM's opposition. Contrary to RSM's assertion, those cases do not stand for the proposition that the "location of the document production . . . [is]

---

[8] Additionally, even to produce all of the documents it has offered, RSM would presumably have to cull its files and remove other SOS and FDIS materials. Such an operation would be more burdensome than the broader production required– unless, of course, RSM already knows where its SOS and FDIS files are and has already performed the culling operation.

the location where the corporations maintained the documents . . . ." (RSM Opp. at 8.) The Third Circuit, in an opinion by now Justice Alito, describes the 11th Circuit's *Ariel* opinion as follows:

> In *Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982), a district court in Florida quashed a subpoena duces tecum for documents stored in Colorado on the ground that the agent served in Florida did not have effective control of the documents. In affirming, the court of appeals did not endorse the principle advocated by PwC [*i.e.* PriceWaterhouseCoopers] that a non-party may not be subpoenaed to produce documents located outside the district court's territorial jurisdiction. Rather, the court of appeals held that the trial court had not abused its discretion in quashing the subpoena as unreasonable and oppressive.

*Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 413 (3d Cir. 2004). The Third Circuit further held that *Ariel v. Jones*, relied upon by RSM here as cited by the Colorado court, is "unpersuasive or inapposite" to an argument that a subpoena for documents located outside the territory within which a subpoena is served is unenforceable. *Id.* It is clear that the "belief that a subpoena cannot reach extraterritorial documents seems to arise out of a misreading of" the law. *Id.* at 413. The law in the First Circuit, as described in the United States' memorandum in support of its motion to compel, (U.S. Mem. at 11), subjects RSM to the jurisdiction of this Court and allows the Court to reach documents located in Bloomington and other RSM offices.

     RSM as a company must produce in response to this subpoena the responsive documents in its possession, custody, or control. It would have to produce the documents even under its own misreading of the law. That is so because its Boston office, where the subpoena was served, has the requisite possession, custody, or control of the documents. RSM makes no showing or statement as to who within the company, if not the Boston office, has possession or custody of the documents. Indeed, RSM has many offices, but nowhere does it publicize where SOS and

FDIS tax-shelter documents were generated or where they are maintained. While urging the Court to consider the "degree of control" the individual locations have over the subpoenaed documents, it argues that the subpoena should have been served in Bloomington Minnesota. (RSM Opp. at 8.) At the same time, it makes no allegation that the documents are kept in Bloomington. RSM also does not state whether they are kept in Boston. It is worth noting again that RSM prepared and signed Richard Egan's 2001 Form 1040, U.S. Individual Income Tax Return, after Egan fired KPMG because it required a disclosure of the transaction in issue, and then also prepared and signed his 2002 Form 1040, as well as the 2002 Form 1065, Partnership Return, for Fidelity International Currency Advisor A Fund's 2002 tax returns at issue in this case. Both Egan and Fidelity International are and were in 2002 Massachusetts residents. In preparing those returns, RSM made or should have made determinations with respect to the disclosure requirements relating to the FDIS tax-shelter product. RSM fails to cite a single fact that would suggest that its Boston office does not have possession, custody, or control over the subpoenaed documents, and that it cannot easily comply with the subpoena.

Regardless, there is little doubt that the Boston office has control of the documents even if it does not have possession or custody of all of them. "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38 (D. Mass. 2001)(*citing Searock v. Stripling*, 736 F.2d 650, 653 (11 Cir., 1984); *see also Haseotes v. Abacab International Computers, Inc.*, 120 F.R.D. 12, 15 (D. Mass. 1988). RSM's Boston office has the legal right to obtain the documents and could compile them whenever it decides or is compelled to do so.

## IV.    RSM's Allegations Regarding Alleged Local-Rule Violations are Specious.

RSM's allegations regarding alleged local-rule violations, emblematic of the frequent misrepresentations permeating its attempts to avoid discovery, are wholly false. RSM wrongly accuses the United States of failing to certify its compliance and of failing to describe the outcome of discovery conferences.

The United States made the requisite certification. Under the local rules, the motion "shall include a certificate in the margin of the last page that the provisions of" Local Rule 37.1 "have been complied with." L.R. 37.1(b). That certification is prominently made at the top of the last page of the United States' motion. (Mot. to Compel at 2.) The United States certified that "counsel for the United States conferred with counsel for RSM McGladrey and attempted in good faith to resolve or narrow the issues raised in this motion." (*Id.*)

The United States also set forth the details of its discovery conferences with RSM, as required under Local Rule 37(b)(2). In its memorandum, the United States detailed its "Efforts to Secure Compliance . . ." and "RSM's Offer to Produce Three Limited Categories of Documents." (U.S. Mem. of Law at 6-8.) The discussions between counsel, which are referenced in the memorandum, and the results of those discussions, are further detailed in the Declaration of Barry E. Reiferson which was filed in support of the memorandum. (Reiferson Decl. at ¶¶ 4, 6, 8.)

The United States complied with the local rules, and RSM's allegations to the contrary further signal its desperate attempt to avoid discovery of its substantial role in the promotion and implementation of this abusive tax shelter.

**Conclusion**

For the reasons stated in this reply and in the United States' motion and memorandum to compel RSM's production, RSM should immediately produce the documents responsive to this six-month-old subpoena.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

    /s/ Dennis M. Donohue
    DENNIS M. DONOHUE
    CHIEF SENIOR LITIGATION COUNSEL
    OFFICE OF CIVIL LITIGATION
    Trial Attorney, Tax Division
    U.S. Department of Justice
    P.O. Box 403, Ben Franklin Station
    Washington, D.C. 20044
    Telephone: (202) 307-6492
    Facsimile: (202) 307-2504
    E-mail: dennis.donohue@usdoj.gov

    JOHN A. LINDQUIST
    BARRY E. REIFERSON
    HEATHER RICHTARCSIK
    Trial Attorneys, Tax Division
    U.S. Department of Justice
    P.O. Box 55, Ben Franklin Station
    Washington, D.C. 20044-0055
    Telephone: (202) 307-6561
    Facsimile: (202) 514-5238
    E-mail: john.a.lindquist@usdoj.gov
           barry.e.reiferson@usdoj.gov
           heather.l.richtarcsik@usdoj.gov

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and copies will be sent to those indicated as non registered participants on April 13, 2007.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

# GOVT. EX. 1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | October 20, 2006  4:35 | 927 15th St. NW, Suite 600 Washington, D.C. 20005 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Richard Samson/Managing Director | Hand Delivery |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Chris Young | Paralegal Specialist |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   10/20/06
          DATE

SIGNATURE OF SERVER

555 4th St. NW
ADDRESS OF SERVER

Washington, D.C. 20001

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

# GOVT. EX. 2

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

DATE: 10/23/06    PLACE: Boston

SERVED: Robert P. Langley

MANNER OF SERVICE: Hand Delivery

SERVED ON (PRINT NAME)

SERVED BY (PRINT NAME): Athena K Vakas

TITLE: IRS Counsel

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 10/23/2006

SIGNATURE OF SERVER: Athena K Vakas

ADDRESS OF SERVER: 10 Causeway Street, Rm 401, Boston, MA 02222

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.