# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Nos.:  05-40151-FDS<br>06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ISSUANCE OF LETTERS ROGATORY REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE

The Government has sought the Court's assistance for the purpose of obtaining discovery from abroad. While Fidelity International Currency Advisor A Fund, L.L.C. ("FICA A Fund") has no objection to putting on the record for trial relevant evidence found in foreign jurisdictions, it objects to the scope of the proposed letters rogatory because those letters seek broad discovery and far exceed the bounds of permissible inquiry through the use of letters rogatory. To the extent the proposed letters rogatory seek testimony or documents from Martin Hawkes, John Hussey, Nigel Glazier Scott, or Oliver Peck, they should be denied, and to the extent they seek testimony or documents from Samuel Mahoney, they should be limited to gathering evidence for trial rather than the wide-ranging international fishing expedition now urged upon the Court by the Government. FICA A Fund particularly objects to the form of the letters rogatory proposed by the Government, which mischaracterizes the issues in this case and asks the Court to adopt disputed facts and legal determinations by signing the letters as drafted. Finally, and

importantly, FICA A Fund objects to the special procedures proposed by the Government, which

are inconsistent with the applicable law in the foreign countries and the procedures set forth

under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,

*opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Hague Evidence

Convention").[1]

## BACKGROUND

In 2001, Richard Egan invested in a partnership along with Alpha Consultants LLC,

Helios Trading LLC, and a foreign investor, Samuel Mahoney.  Mr. Mahoney owned 93% of the

common interests in the partnership at a time when the partnership recognized substantial gain.

Thereafter, Mr. Egan purchased all but 5% of Mr. Mahoney's interest.  At a time when Mr. Egan

held 93% of the common interests in the partnership, the partnership recognized a substantial

loss.  As required by the Internal Revenue Code, gains recognized while Mr. Mahoney held 93%

of the common interests were allocated 93% to Mr. Mahoney.  Similarly, losses recognized

while Mr. Egan held 93% of the common interests were allocated 93% to Mr. Egan.

The IRS proposed adjustments to the tax treatment of transactions that reputable advisors

assured FICA A Fund were in accordance with the law.  In this action, FICA A Fund is

challenging the IRS's proposed adjustments and assertions of penalties.

Throughout the course of its broad discovery effort, the Government has focused its

attention on gathering information from third parties, many of whom never had any contact with

---

[1] Counsel for the parties discussed the motion for issuance of letters rogatory by telephone on March 22 and April 4, 2007.  On both occasions, counsel for the Government informed counsel for FICA A Fund of the identities of the individuals from whom evidence was being sought, but refused to provide a copy of the proposed letters rogatory or its motion papers prior to filing, which would have allowed FICA A Fund to make an informed decision about its position.  Moreover, FICA A Fund is filing this response without having had the opportunity to review the declarations, exhibits, and appendices accompanying the Government's motion because the Government has not yet filed those exhibits under seal, though FICA A Fund promptly agreed to the Government's motion to file those documents under seal on April 9, 2007.

FICA A Fund or Richard Egan.  The Government's discovery principally relates to "fourth-party" individuals who were clients of entities with which neither FICA A Fund nor Richard Egan had a relationship.[2]  This far-reaching discovery is somehow intended to aid the Government in formulating a "defense" to the allegations in FICA A Fund's Complaints.

After gathering domestically "millions of pages of subpoenaed documents from third-parties" (United States' Resp. to Pl.'s Mot. to Compel Disc. at 1), the Government now urges this Court to endorse even broader discovery overseas from Samuel Mahoney, Martin Hawkes, John Hussey, Nigel Glazier Scott, and Oliver Peck and concerning Kilsture Ltd. ("Kilsture"), Maddox Ltd. ("Maddox"), Cumberdale Investments Ltd. (including all subsidiaries) ("Cumerdale Investments"), Cumberdale Holdings Ltd. ("Cumberdale Holdings"), Trilogy Financial Products Ltd. ("Trilogy Financial"), and Biosphere Finance Ltd. ("Biosphere").  Only Mr. Mahoney is a member of FICA A Fund; the remaining individuals and entities are complete strangers to FICA A Fund and Richard Egan.

In 2001, Mr. Mahoney, an Irish national, contributed $651,000 to FICA A Fund in exchange for a membership interest.  The IRS has already gathered information from Mr. Mahoney, who responded to inquiries made through the Irish Competent Authority that this contribution was made on his behalf by Kilsture.  (*See* Ex. A.)  This contribution was wired from an account at Singer & Friedlander in the Isle of Man.  (*See* Ex. B.)  Additionally, when a portion of Mr. Mahoney's common interests was purchased by Richard Egan, the money was wired to an account at Singer & Friedlander in the Isle of Man.  (*See* Ex. C.)  The nexus of the proposed letters rogatory to this case ends there.

---

[2] *See, e.g., Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1009-10 (D.C. Cir. 1997) (describing discovery sought from third parties concerning other unrelated parties as "fourth-party" discovery and holding that the trial court erred in finding such discovery to be relevant).

In its supporting memorandum, the Government asks that the Court adopt its chain of inferences and speculations, all of which center around Mr. Mahoney's business relationships, to connect to this case the remaining entities and individuals.  With respect to Cumberdale Investments, the Government alleges that this entity was used by Diversified Group Inc. ("DGI")[3] to market a "tax shelter product" not at issue in this case.  (Mem. of Law in Supp. of Mot. for Issuance of Letters Rogatory Requesting International Judicial Assistance at 13 n.27 ("Def.'s Mem.").)  The only straw grasped by the Government is that Mr. Mahoney was apparently a director of this entity.  With respect to Biosphere, Cumberdale Holdings, and Maddox, the Government claims that DGI made payments to these entities as support for its assertions that they are related to this case.  (Def.'s Mem. at 13-14.)  The Government also claims that Martin Hawkes and John Hussey were business associates of Mr. Mahoney.  (Def.'s Mem. at 13.)  The Government fails to explain, however, how Mr. Mahoney's alleged business relationship with these entities and individuals makes the totality of their dealings "evidence" to support or dispute Mr. Mahoney's investment of $651,000 in FICA A Fund.

The Court is being asked to rely on inference upon inference to conclude that the letters rogatory will somehow yield "evidence."  The Government is seeking nothing short of American-style discovery in foreign countries that are disdainful of such expansive discovery. For example, the Government seeks documents from Nigel Scott because he allegedly managed Trilogy Financial, which allegedly marketed transactions with DGI in 2002.  (Def.'s Mem. at 15.)  Trilogy Financial is not involved in the facts of this case and the transaction at issue took

---

[3] DGI is also only tangentially related to this case.  DGI was not engaged to advise on this transaction, though FICA A Fund now understands that DGI had a relationship with Helios Trading LLC.

place in 2001, not 2002.[4]  Such alleged and erroneous tangential relationships are so remotely related to the issues of this case that the proposed letters rogatory are not appropriate or justified.

With respect to Oliver Peck, the only nexus the Government has alleged for purposes of gathering "evidence" is that he works for Singer & Friedlander, a large banking institution at which Mr. Mahoney had an account.  Singer & Friedlander, however, has already been subpoenaed in this case.  (*See* Ex. E.)  FICA A Fund has located only a single document in the millions of pages of discovery produced to date that even mentions Oliver Peck.

The Government has failed to provide any direct linkage between Nigel Scott, Oliver Peck, Martin Hawkes, John Hussey, Biosphere, Cumberdale Holdings, Cumberdale Investments, Maddox, or Trilogy Financial and the transactions at issue in this case.  The Government is asking this Court to endorse a broad investigatory authorization to discover in foreign countries irrelevant information from individuals and entities who are tangential, at best, by relying on statements that are conclusory.[5]

The foreign individuals and entities from whom the Government seeks broad discovery by having this Court subscribe to the proposed letters rogatory, with the exception of Mr. Mahoney, have no relationship to FICA A Fund or Richard Egan.  Most were unknown to Plaintiff before the institution of broad third-party discovery by the Government in this case. Thus, while FICA A Fund was not part of an alleged "maze of foreign entities to route circuitously payments to these foreign partners" (Def.'s Mem. at 3), the Government continues to

---

[4] According to a declaration filed by DGI, Trilogy Financial was not involved with FDIS transactions in 2002 and Messrs. Mahoney and Hawkes were not involved with Trilogy Financial.  Haber Decl. ¶ 42, *United States v. Diversified Group Inc.*, No. M8-85 (S.D.N.Y. filed Apr. 12, 2007) (attached as Ex. D).

[5] Such statements include the Government's assertion that "[t]ax-shelter-related correspondence was sent to Scott's attention when addressed to Trilogy Investments Ltd."  (Def.'s Mem. at 22) and "[t]he foreign partners and their business associates have exclusive possession of evidence that goes directly to the heart of the factual-sham and economic-sham issues" (Def.'s Mem. at 24).

use this case for the purpose of conducting an investigation into multiple third parties who have no interest in these proceedings. This Court should not allow the Government to use the Court's letters rogatory powers to export the Government's broad discovery demands.

## LAW AND ARGUMENT

Letters rogatory serve as a medium "whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto . . . to assist in the administration of justice in the former country."[6] *The Signe*, 37 F.Supp. 819, 820 (E.D. La. 1941). Both the United States Code and the Federal Rules of Civil Procedure provide courts with the ability to obtain evidence abroad through the use of letters rogatory. *See* 28 U.S.C. § 1781; Fed. R. Civ. P. 28(b). In addition, courts have inherent authority to issue letters rogatory. *United States v. Reagan*, 453 F.2d 165, 172 (6th Cir. 1971). A trial court has discretion to issue letters rogatory and may refuse to do so for "good reason." *DBMS Consultants Ltd. v. Computer Assocs. Int'l Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990).

While treaties may be used to compel the execution of letters rogatory, comity[7] permits the execution of such letters in the absence of a treaty. 6 James Wm. Moore, *Moore's Federal Practice* § 28.12[1] (3d ed. 1997). The Supreme Court, recognizing the importance of comity, has advised, "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Société Nationale Industrielle*

---

[6] Letters rogatory are also referred to as "Letters of Request" in many instances, such as in the Hague Evidence Convention and in Federal Rule of Civil Procedure 28(b).

[7] "Comity" is defined as "'the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *Black's Law Dictionary* 284 (8th ed. 2004) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).

*Aérospatiale v. United States Dist. Ct.*, 482 U.S. 522, 546 (1987).  In this case, the Government is not seeking execution of letters rogatory through a treaty, thus, comity requires that special care be exercised to ensure that the letters rogatory reflect the laws and practices of the countries to which they are being issued.

In addition to the limits created by the policy of comity, the Federal Rules and legal precedent also limit a court's ability to issue letters rogatory.  The Federal Rules, which provide that letters rogatory may be issued for purposes of deposing an individual in a foreign country, require that such letters "shall be issued . . . on terms that are just and appropriate."  Fed. R. Civ. P. 28(b).  In addition, Rule 28(b) "must be read together with Rule 26(c), Federal Rules of Civil Procedure, which permits the court to make any order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  *B & L Drilling Elecs. v. Totco*, 87 F.R.D. 543, 545 (W.D. Ok. 1978) (quoting Fed. R. Civ. P. 26(c)).

## I.    Letters Rogatory Are Not a Forum for a Party to Argue Its Case

Letters rogatory, which assist a foreign court in executing a request to obtain evidence, should not contain assertions of a party's position as to the law or facts of a case because the letters are signed by a judge who has not yet made any legal or factual findings.  *See Globe X Mgmt., Ltd. v. Cinar Corp.*, No. 03-1831, 2004 U.S. Dist. LEXIS 21480, at *2 (E.D. Pa. Oct. 6, 2004) (revising the language of the letters rogatory because, as proposed, the letters rogatory "state Defendant's positions or assertions of fact as findings of fact by the Court" (quotation omitted)).[8]  Guidance that explains what information must be included in a letter rogatory makes clear that a letter rogatory should not be a means for a party to make its case.  Specifically, a

---

[8] *See also* Ex. F (memorandum in opposition to proposed letters rogatory and the subsequent order in *In re Townshed Patent Litig.,* No. 02-4833 (N.D. Cal. Oct. 5, 2005), which required that the parties come together to revise the language of the proposed letters rogatory in response to concerns raised by the opposing party that the letters contained improper characterizations of facts and issues).

letter rogatory must provide (1) a factual and procedural background, (2) a statement addressing

the court's authority to issue letters rogatory, (3) a summary of the evidence sought by the letters

rogatory, and (4) a statement that the evidence sought can only be obtained through letters

rogatory.[9]  *See* United States Department of State Circular:  Preparation of Letters Rogatory, 739

PLI/Lit 1037 (Mar. 2006) (attached as Ex. G).  When describing the background of the case, only

"a brief synopsis of the case" that is sufficient to "enable the foreign court to understand the

issues involved" should be included.  (*See* Ex. G.)  Additionally, to assist the foreign court, the

"language of the letter should be simple and nontechnical, and unnecessary information should

be excluded."  6 James Wm. Moore, *Moore's Federal Practice* § 28.12[9] (3d ed. 1997).

The factual and non-argumentative nature of letters rogatory is borne out in sample forms

and a survey of letters rogatory issued by courts in other cases.  Sample forms from the United

States State Department (*see* Ex. G) and the Federal Procedural Forms Database (attached as Ex.

H) do not anticipate a lengthy or argumentative recitation of the facts and law at issue in a case.

In fact, letters rogatory issued or proposed in other cases almost universally contain only a

limited recitation of the facts and allegations at issue, generally constituting less than one page.

The letters do not quote United States case law or apply that case law to the facts of the case;

rather, such information is included in the motion and memorandum accompanying the proposed

letters.  (*See* Exs. I, J, K, L (letters rogatory filed in other cases).)

The proposed letters rogatory the Government asks this Court to adopt are more akin to a

motion than a request from this Court seeking international judicial assistance.  The

Government's proposed letters would have this Court make statements of law and fact about

---

[9] While the Government does not invoke the Hague Evidence Convention, the Convention provides a similarly neutral list of information that must be included in a request made pursuant to the Convention.  Hague Evidence Convention arts. 3, 9.

which the Court has not yet reached any determinations.  The proposed letters, which the

Government asks this Court to sign, contain determinations of law, such as  (1) "testimonial and

documentary evidence from the purported partners and others is essential to this court's

[economic substance] determination, which must include a determination of how the product was

designed and implemented" and (2) "[i]n determining the product's design and purpose, and the

participants' intent, this court must also examine evidence of other similar or identical

transactions."  (Ireland Letter Rogatory at 4; Isle of Man Letter Rogatory at 4.[10])  It has always

been FICA A Fund's position that evidence regarding other transactions and taxpayers is neither

relevant to the determination of any issue in this case nor admissible into evidence, and

accordingly, the Court should not rely on such evidence in making its factual and legal

determinations in this case.  And, the Court has repeatedly noted that it has yet to decide whether

such evidence is relevant for purposes of deciding the issues in this case.  (*See, e.g.,* Status

Conference Tr. 36:15-24, Mar. 15, 2007.)  Accordingly, FICA A Fund objects to the inclusion of

statements in the letters rogatory that directly state or imply that the Court has reached legal

conclusions, in general, and specifically with respect to the relevance of other taxpayer

information.

The proposed letters rogatory also contain statements of fact, many of which are

argumentative and about which the Court has not yet made a determination.  For example, the

letters state, "Samuel Mahoney engaged in dozens of similar or identical transactions through

various entities.  Martin Hawkes engaged in dozens more."  (Ireland Letter Rogatory at 4; *see

also* Isle of Man Letter Rogatory at 4.)  The Court, however, has not made findings of fact with

---

[10] "Ireland Letter Rogatory" refers to Defendant's proposed Request for International Judicial Assistance (Letter Rogatory) from Ireland.  "Isle of Man Letter Rogatory" refers to Defendant's proposed Request for International Judicial Assistance (Letter Rogatory) from the Isle of Man.

respect to the activities of Samuel Mahoney and Martin Hawkes. Additionally, the Government

states that Maddox, an Isle of Man entity, "received substantial payments from the U.S.

promoters." (Ireland Letter Rogatory at 4; Isle of Man Letter Rogatory at 4.) Not only is this

fact so far removed from the issues in this case that it is inappropriate to include it in a "brief

synopsis" of the case, but it is also unsubstantiated and argumentative. FICA A Fund objects to

the inclusion of factual statements in the "Facts" section of the letters rogatory that would imply

that this Court has adopted the Government's factual assertions as findings of fact. In order to

assist the Court and the parties, FICA A Fund has attached as Exhibit M a statement of the facts

and issues in this case that is more appropriate for inclusion in letters rogatory.

## II.    The Letters Rogatory Are Not in the Interest of Comity

The purpose of letters rogatory is to assist the parties in obtaining "evidence" from

foreign jurisdictions. The State Department instructs parties drafting letters rogatory to "[a]void

use of the term 'discovery.' Similarly, to avoid the suggestion of a 'fishing expedition' which

may result in refusal of the foreign country to execute the request, try not to use phrases such as

'any and all documents.'" (Ex. G.) The broad scope of the proposed letters rogatory, however,

are obvious discovery demands and reflect an intent to investigate the actions of multiple third

parties, only one of whom is directly connected to this case. Samuel Mahoney contributed

$651,000 to FICA A Fund. The Government's proposed letters extend far beyond this

contribution, as the Government has admitted, "[t]he government is currently investigating the

source of the funds used to make this contribution." (Tutorial Tr. 31:19-22, Mar. 15, 2007.) Use

of letters rogatory for such an investigation is not permitted by the Hague Evidence Convention

or the laws of the Isle of Man or Ireland.

Moreover, issuance of these discovery letters rogatory by this Court would reflect an

indifference towards the laws and practice of the countries from whom the information is sought,

including their views as to the permissible bounds of evidence collection.  Though the bounds of

discovery are broad in the United States, courts issuing letters rogatory are cognizant of the legal

environment of the country from which the U.S. court is seeking judicial assistance.  As

explained by the Supreme Court, "When it is necessary to seek evidence abroad . . . the district

court must supervise pretrial proceedings particularly closely to prevent discovery abuses."

*Société Nationale Industrielle Aérospatiale v. United States Dist. Ct.*, 482 U.S. 522, 546 (1987).

Specifically, United States courts should be sensitive to the limited scope of pretrial discovery

permitted in most foreign countries:

> [b]efore issuing an order for production of documents, objects or information
> located abroad, the court . . . should scrutinize a discovery request more closely
> than it would scrutinize comparable requests for information located in the United
> States. . . .  Given the difficulty in obtaining compliance, and the resistance of
> foreign states to discovery demands originating in the United States, it is
> ordinarily reasonable to limit foreign discovery to information necessary to the
> action -- typically, evidence not otherwise readily obtainable -- and directly
> relevant and material.  Requests for information that could lead to admissible
> evidence would ordinarily not be granted under this standard,

Restatement (Third) of the Foreign Relations Law of the U.S. § 442 cmt. a (1987).  Execution of

letters rogatory outside the treaty context is dependant on comity.[11]  Thus, "to achieve

procedural fairness, U.S. courts must exercise their power to order extraterritorial discovery on

the basis of principles that effectively accommodate the interests of foreign states."  David

Gerber, *International Discovery After Aérospatiale:  The Quest for an Analytical Framework*, 82

A.J.I.L. 521, 552 (1988).  Accordingly, the Court should deny the Government's request for

---

[11] The Government is not seeking execution of letters rogatory through the use of a treaty in this instance.  (*See* Def.'s Mem. at 27.)

letters rogatory because they constitute an investigation that is in conflict with the evidence
collection permitted in the Isle of Man and Ireland.[12]

### 1.    The Scope of the Proposed Isle of Man Letter Rogatory Violates International Comity

The Hague Evidence Convention is not an exclusive means for obtaining evidence from a
foreign country; issuance of letters rogatory directly from the United States court to the court in
the foreign country is also permissible.  *See Société Nationale Industrielle Aérospatiale v. United
States Dist. Ct.*, 482 U.S. 522, 546 (1987); *see also* 28 U.S.C. § 1781; Fed. R. Civ. P. 28(b).  As
to the Isle of Man, the Government is asking the Court to issue letters rogatory through informal
means, rather than through the applicable provisions of the Hague Evidence Convention.  (Def.'s
Mem. at 27.)[13]  Under both the Hague Evidence Convention and the informal procedure
proposed by the Government, however, the pretrial discovery the Government seeks through its
letter rogatory is not permissible under the laws of the Isle of Man.

Under the Hague Evidence Convention, at the time a country signs the Convention, it
"may . . . declare that it will not execute Letters of Request issued for the purpose of obtaining
pre-trial discovery of documents as known in Common Law countries."  Hague Evidence

---

[12] If the letters rogatory are sought solely for use in this case, the Government should agree to a protective order
limiting the use of any information gathered through this letter rogatory process to this case.  *See infra* Part III.B.

[13] In its supporting memorandum, the Government asserts that "[u]nder the second procedure, the United States
may hire a foreign solicitor as its agent."  (Def.'s Mem. at 27.)  The Government provides no support for its
assertion that the Isle of Man permits foreign courts to submit the letters directly to a foreign solicitor.  *See* 6 James
Wm. Moore, *Moore's Federal Practice* § 28.12[6] (3d ed. 1997) ("A United States tribunal may directly transmit
letters of request to a foreign or international tribunal, officer, or agency, and receive its return in the same manner,
when there is reason to believe this method will be accepted by authorities in the foreign country.").  Moreover, the
solicitor engaged by the Government works in the United Kingdom, and it is unclear whether he is authorized to
appear before the courts of the Isle of Man.  *See* Isle of Man Government,
http://www.gov.im/IsleOfMan/legalsystem.xml  (last visited Apr. 17, 2007) (explaining that Isle of Man lawyers
"have an exclusive right of audience in the Island's courts (although English barristers can be licensed to appear in
certain cases).").  Finally, FICA A Fund sees no merit in this Court adopting the United Kingdom solicitor engaged
by the Government as its agent or conduit for making its request to the foreign court.  The well-established
procedures of the Hague Evidence Convention should be applied, rather than a purportedly available secondary
procedure.

Convention art. 23.  The United Kingdom, which includes the Isle of Man for purposes of the

Hague Evidence Convention, has made such a declaration.[14]  The United Kingdom's adoption of

the restrictive clause shows that the United Kingdom, even outside the context of the Hague

Convention, does not execute letters rogatory that seek pretrial discovery.  This is confirmed by

the United Kingdom's consistent refusal to execute letters rogatory when they are so broad as to

constitute a "fishing expedition."  *See State of Minnesota v. Philip Morris Inc.*, [1998] I.L.Pr.

170, 170 (30 July 1997) (En.) ("[T]he courts will seek to give effect to a Letter of Request

wherever this is practical. . . .  However, notwithstanding that, it is important to bear in mind that

fishing cannot be permitted as part of a request.")[15] (attached as Ex. N).[16]

    The United Kingdom's highest court, the House of Lords, contrasted American discovery

with that permitted in the United Kingdom.  *In re Westinghouse Elec. Corp. Uranium Contract*

*Litig. M.D.L. Docket No. 235 (No. 1 and No. 2)*, [1978] A.C. 547, 608 (1 Dec. 1977) (H.L.) (En.)

(attached as Ex. P).  That seminal case addressed the enforcement of letters rogatory.  There, the

House of Lords observed that, "it is plain that the principle [of discovery] has been carried much

further in the United States of America than it has been carried in this country."  *Id.*  The House

of Lords has posted a clear "no fishing" sign across the pond.

    The decision in *Westinghouse* has been applied in English courts to define impermissible

"fishing" in two ways:  (1)  "the 'evidence' may be sought for a preliminary purpose, such as the

process of pre-trial discovery in the United States" or (2) there is "a roving inquiry, by means of

---

[14] *See* Hague Conference on Private International Law,
http://www.hcch.net/index_en.php?act=status.comment&csid=564&disp=resdn (last visited Apr. 17, 2007).

[15] The Isle of Man considers United Kingdom law to be highly persuasive authority.  *Frankland v. The Queen*,
[1987] A.C. 576 (P.C. 1987) (appeal taken from Isle of Man) (attached as Ex. O).  Because the availability of Isle of
Man law is limited, the seminal cases in the United Kingdom are identified.

[16] All foreign cases cited in this memorandum have been attached for the convenience of the Court.

the examination and cross-examination of witnesses, which is not designed to establish by means of their evidence allegations of fact which have been raised bona fide with adequate particulars, but to obtain information which may lead to obtaining evidence in general support of a party's case."  *State of Minnesota v. Philip Morris Inc.*, [1998] I.L.Pr. 170, 175 (30 July 1997) (En.) (Ex. N).  The proposed Isle of Man Letter Rogatory constitutes an impermissible fishing expedition because it is pretrial discovery and a "roving inquiry."

It is apparent from the breadth of information sought in the proposed letter rogatory and the tangential relationships between the information sought and the facts of this case that the Government's primary purpose for using the letter rogatory is to impermissibly "fish" for information, rather than to gather evidence for the trial of this case.  Conclusory assertions by the Government that "it is seeking critical trial evidence" (Def.'s Mem. at 26) does not change the true nature of the information requested.  The Government's attempt to conduct pretrial discovery and a "roving inquiry" by having this Court endorse its proposed letter rogatory runs counter to discovery practices in the Isle of Man and thus violates principles of comity. Accordingly, the Government's request that this Court issue the proposed letter rogatory to the Isle of Man should be denied.

### 2.     The Scope of the Proposed Ireland Letter Rogatory Violates International Comity

Because Ireland is not a member of the Hague Evidence Convention, execution of letters rogatory by an Irish court for purposes of taking a deposition relies solely on international comity.[17]  While the Federal Rules provide reasonably broad discovery in the United States,

---

[17] The Government's statement that "unlike judicial assistance between the United States and the Isle of Man, judicial assistance between the United States and Ireland is governed by the Vienna Convention on Consular Relations ("VCCR") and the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters" (Def.'s Mem. at 27) is misleading.  For example, the Isle of Man, through the United Kingdom, is also a party to the latter of these treaties, which provides procedures for transmitting documents

Irish law does not envision such wide-ranging discovery.  Whether Ireland will execute letters rogatory is governed by the Foreign Tribunal Evidence Act of 1856, which provides that "it shall be lawful" for an Irish court to compel, upon application of a foreign court that "is desirous of obtaining testimony," the examination of a citizen under the jurisdiction of the Irish court.  *See Novell Inc. v. M.C.B. Enters.*, [2001] 1 I.R. 608 (30th Jan. 2001) (Ir.) (quoting Foreign Tribunals Evidence Act of 1856) (attached as Ex. Q).  Irish courts distinguish "testimony" from "discovery" stating that a deposition pursuant to the Foreign Tribunals Act of 1865 is appropriate only if "the evidence obtained would be confined to evidence which could be used in an Irish court."  *Id.*  (Ex. Q).

        The depositions the Government is requesting, with the possible exception of Samuel Mahoney, only serve discovery, rather than testimonial, purposes.  Neither Martin Hawkes nor John Hussey had any involvement with the transactions at issue in this case.  Accordingly, the only information John Hussey and Martin Hawkes will be able to provide will not be relevant to the facts of this case, and thus, will not rise to the level of "testimony."  Moreover, the questions listed in the Ireland Letter Rogatory illustrate that the Government is seeking discovery rather than testimony; specifically, these questions are targeted towards the Government's investigation of certain "U.S. promoters."[18]  Sending the letter rogatory to the Irish court in this form, therefore, increases the likelihood that the Irish court will not execute it under principles of comity because it violates the discovery practices permitted by Irish law.

---

and judicial requests.  Judicial assistance between the United States and Ireland in the form of executing the letters rogatory issued to unwilling witnesses must be done through an Irish court, and is thus dependant on the principles of comity.  *See* U.S. Dep't of State, Ireland Judicial Assistance, http://travel.state.gov/law/info/judicial/judicial_652.html#compcivcom (last visited Apr. 18, 2007).  Such letters are issued through the diplomatic channels.  *Id.*

[18] It is possible that the Government is taking advantage of this forum to conduct its investigation because the use of letters rogatory for certain other purposes would be significantly limited.  *See, e.g.*, Fed. R. Crim. P. 15(a).

Moreover, the argumentative and accusatory tone of the letter operates as a disincentive for an Irish court to execute the letters and for the individuals to testify.  The Government would like this Court to issue a request to an Irish court to compel the depositions of Samuel Mahoney and Martin Hawkes based on the Government's allegations, not judicial findings, that "Samuel Mahoney engaged in dozens of similar or identical transactions through various entities.  Martin Hawkes engaged in dozens more. . . .  The United States also alleges that Messrs. Mahoney and Hawkes appear to have been employees of two Isle of Man entities, . . . which also  received substantial payments from the U.S. promoters."  (Ireland Letter Rogatory at 4.)  The accusatory tone strongly suggests that the Government is conducting investigations of individuals who are subject to Ireland's jurisdiction, thus impinging on Ireland's sovereignty and the protections Ireland affords its citizens.  Therefore, this Court should not issue the letters rogatory in their current form because they exceed the scope of evidence gathering permissible under Irish law, and they are not likely to be well received by an Irish court or the witnesses.  Moreover, the Court should deny the Government's motion to issue letters rogatory for the purposes of deposing Martin Hawkes and John Hussey because those individuals are unable to provide "testimony" as required by Irish law, thus, the Irish courts are unlikely to execute those letters.

III.    **The Proposed Letters Rogatory Are Not on Terms That Are "Just and Appropriate"**

A.    **The Request for Issuance of Letters Rogatory Should Be Denied to the Extent the Letters Rogatory Seek Collateral Information**

The broad scope of the proposed letters rogatory is not permissible under the Federal Rules.  Other courts have rejected the terms of letters rogatory as not "just and appropriate" for multiple reasons.  A judge in this District refused to grant a request to issue letters rogatory where the purpose was "to divert this court's attention to a collateral inquiry."  *United States v. Green*, No. 80-274, 1981 U.S. Dist. LEXIS 9433, at *27 (D. Mass. Feb. 18, 1981).  On review,

the First Circuit held that it was appropriate to refuse to issue letters rogatory when the collateral

information sought "would not help the appellants." *United States v. Kincaid,* 712 F.2d 1, 4 (1st

Cir. 1983).

The Government's proposed Isle of Man Letter Rogatory is not "just and appropriate"

because it serves no purpose except to undertake a "collateral inquiry" and to subject the parties

(and the individuals from whom information is sought) to undue burden and expense. The

proposed Isle of Man Letter Rogatory inquires into the activities of two individuals, Oliver Peck

and Nigel Scott, who have no connection to this case, as evidenced by their near total absence

from the millions of pages produced by the Government and third parties. In addition, Trilogy

Financial is not in any way involved in the facts of this case. The dots that the Government is

trying to connect are so far removed from this case that the inquiry can only be characterized as

"collateral." Accordingly, the request to issue a letter rogatory to the Isle of Man for the

depositions of Nigel Scott and Oliver Peck should be denied.

Similarly, the Ireland Letter Rogatory largely constitutes a "collateral inquiry" into the

activities of Mr. Mahoney's business associates. Neither Martin Hawkes nor John Hussey were

involved in the transactions at issue in this case, nor will they have any relevant additional

information that cannot be provided by Mr. Mahoney. Additionally, to the extent the

Government seeks information not known by Mr. Mahoney, that information is collateral.

Accordingly, the depositions of Messrs. Hawkes and Hussey are not "just and appropriate."

### B.    The Court Should Issue a Protective Order to Limit the Use of Information Gathered from Letters Rogatory to This Case

In certain situations, a protective order has been used to ensure that letters rogatory are

issued on "just and appropriate" terms. 6 James Wm. Moore, *Moore's Federal Practice*

§ 28.12[5] (3d ed. 1997). In *Philan Insurance. Ltd. v. Frank B. Hall & Co.*, the defendant

opposed the plaintiff's request for the issuance of letters rogatory because the proposed

discovery was being sought for use in a separate action. No. 87-4624, 1992 U.S. Dist. LEXIS

11094, at *3 (S.D.N.Y. July 21, 1992). The court issued the letters rogatory, but made the

depositions subject to a protective order limiting their use to the case before the court. *Id.* at *6;

*see also Philan Ins. Ltd. v. Frank B. Hall & Co.*, 138 F.R.D. 45, 46 (S.D.N.Y. 1991) (containing

the terms of the protective order). This type of protective order operates to discourage the party

moving for the issuance of letters rogatory from undertaking a wide-ranging fishing expedition.

A protective order cannot cure defective letters rogatory, such as those presented here, but may

be used to ensure the proper use of properly drawn letters rogatory.

The Government appears to be attempting to use this Court to facilitate letters rogatory in

this case to gather discovery for other cases. This is evidenced by the breadth of questions, most

of which have nothing to do with the actual transactions at issue in this case. For example, the

Isle of Man Letter Rogatory seeks documents and deposition testimony from individuals

regarding Cumberdale Investments and Maddox. These entities are not found anywhere in the

facts of this case, and seeking documents, including company resolutions, minutes of directors

meetings, and financial statements, of these organizations relates more closely to an investigation

of DGI.[19] Furthermore, the Government specifically references two cases docketed in the Tax

Court in which the Government alleges that Samuel Mahoney and Martin Hawkes played

roles.[20] (Def.'s Mem. at 21.) In order to limit the unnecessary burden and expense placed on

---

[19] Even if the Government asserts that it needs information regarding bank accounts to trace financing by Samuel
Mahoney, the broad requests have no such limitation. Accordingly, the broad scope of the requests negates any
suggestion by the Government that the information is sought solely for purposes of this case.

[20] Another case for which the Government appears to be gathering evidence through this case is *Epsolon Ltd. v.
United States*, No. 05-999 (Fed. Cl. filed Sept. 15, 2005). Cumberdale Investments is a partner of Epsolon Ltd.
Compl. ¶ 17.k. Furthermore one member of the Government's trial counsel team for this case has filed numerous
declarations in *Epsolon*.

FICA A Fund by the Government's use of this case to seek discovery in other cases, the Court should issue a protective order limiting the use of evidence obtained pursuant to the letters rogatory it issues to this case. FICA A Fund believes that such a protective order will assist in limiting the scope of the Government's inquiry pursuant to letters rogatory, thus reducing the expense and burden on the parties.

### C.    The Request for Issuance of Letters Rogatory Should Be Denied to the Extent They Create an Undue Burden

Courts have consistently held that the interplay between Federal Rules of Civil Procedure 28(b) and 26(c) require that letters rogatory be issued on terms that are "just and appropriate" and that protect the parties from "undue burden or expense." *See DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367, 370 (D. Mass. 1990) (finding terms of a letter rogatory were "unjust and inappropriate" in light of the time and expense necessary to travel to the foreign country). In addition, before issuing letters rogatory, a court should "be satisfied that such discovery was not duplicative and not readily available from another source." *Commercial Bank of Korea Ltd. v. Charone, Inc.*, No. 90-260, 1992 U.S. Dist. LEXIS 11805, at *16 & n.3 (N.D. Ill. July 29, 1992) (denying the defendant's motion for issuance of letters rogatory "to obtain broad discovery from governmental entities").

The Government's proposed letters rogatory will cause both the parties, and the persons subject to the letters, to incur undue burden and expense. The State Department advises that "[t]he letters rogatory procedure is 'complex, costly and time consuming' and should be avoided where possible." (Ex. G.) It is certainly possible in this case to avoid the undue burden and expense. First, some of the information sought can be obtained with less burden and cost from domestic sources. For example, the Government asserts that "[e]ach of the overseas participants should also be able to explain why the domestic promoters made their records inaccessible in the

United States." (Def.'s Mem. at 25.) The Government has not attempted to obtain such evidence from domestic sources. Further, documents responsive to the Government's subpoena to DGI were never placed offshore. (*See* Ex. D (Haber Decl. ¶ 42).) FICA A Fund's records were available and have been produced from domestic sources. Second, multiple questions seek information that is already in the Government's possession. For example, questions directed to Messrs. Mahoney and Hawkes inquiring as to whether each was a director or shareholder of various entities are unnecessary given that the Government has stated as a fact that "Mahoney and Hawkes are Irish citizens who were directors of an Irish company known as Biosphere Finance, Ltd." (Def.'s Mem. at 4.) Expending additional resources to seek this same information from foreign sources constitutes an undue burden.

Finally, the discovery through letters rogatory issued to five individuals creates an undue burden on the parties because the testimony relevant to this case should be obtained from Mr. Mahoney. To ask the same questions of Messrs. Hussey and Hawkes is unnecessary because it is duplicative, multiplying the burden. Messrs. Hussey and Hawkes were not members of FICA A Fund and are unlikely to have the information relating to FICA A Fund that the Government is seeking. (*See* Ireland Letter Rogatory at 10-12, Questions to Samuel Mahoney, Martin Hawkes, and John Hussey, Nos. 56-60, 64-69, 70, 71, 74, 77, 79.) Accordingly it is not "just or appropriate" to seek this information from them.

Similarly, the lack of any direct connection between the individuals subject to the Isle of Man Letter Rogatory and FICA A Fund suggests that they will not, in fact, be able to provide the information the Government is seeking. For example, one proposed topic in the Isle of Man Letter Rogatory is "[t]he business purpose(s) and design of Fidelity International Currency Advisor A Fund." (Isle of Man Letter Rogatory at 7, Topics of Inquiry of Nigel Scott and Oliver

Peck, No. 3.)  Considering that neither Oliver Peck nor Nigel Scott was a partner in FICA A

Fund, it is unclear how they would have any insight into the purposes behind its formation.

Accordingly, it would create a significant burden and unnecessary expense for the parties to

prepare for the depositions of these individuals only to arrive in the Isle of Man and discover that

these individuals are unable to provide any of the information or testimony sought by the

depositions.

Even if the individuals from whom the Government is seeking discovery possess the

information sought, there is some doubt that they would freely testify in light of the

argumentative and accusatory tone of the letters rogatory the Government is asking the Court to

issue.  In their current form, the letters rogatory seek information from Messrs. Scott and Peck on

the grounds that "the fee was paid to Mr. Mahoney from U.S. tax-shelter promoters through the

use of various foreign entities and with the assistance of Nigel Scott and Oliver Peck."  (Isle of

Man Letter Rogatory at 2.)  In light of that tone, it is likely that the foreign persons would react

negatively to the demands of lawyers representing the United States government.  Thus, the

parties may well be burdened by preparing for and attending a futile deposition.  The tone of the

letters rogatory seems intentionally designed to discourage the cooperation of the foreign courts

and foreign persons.

Finally, the questions and document requests will create an unnecessary burden for the

parties and deponents because they lack clarity, are overly broad in scope, and concern issues not

related to this case.  Almost all of the document requests lack a reasonable scope, asking for

documents without any limit as to date or subject matter.  (*See* Ex. R (listing questions that are

objectionable).)  Many of the document requests are compound requests, thus, they are not

"simple" as recommended by *Moore's Federal Practice*.[21]  Moreover, over half of the document requests and deposition topics or questions do not relate to FICA A Fund.  (*See* Ex. R.)  The overbroad drafting of the questions and document requests and the unlimited scope of inquiry into many irrelevant topics places an undue burden on FICA A Fund by requiring that FICA A Fund prepare for depositions of four individuals who are complete strangers to FICA A Fund concerning matters relating to multiple entities that are also complete strangers to FICA A Fund. Thus, the Court should limit the letters rogatory to exclude the depositions of Martin Hawkes, John Hussey, Oliver Peck, and Nigel Scott, and limit the questions and document requests directed to Samuel Mahoney so that they seek relevant information.

### D.    The Court Should Require That Depositions Be Taken Pursuant to Written Questions

If the Court finds that letters rogatory should be issued for the four individuals who had no involvement in the transactions at issue in this case and who are unlikely to possess information relevant to this case, the burden and expense on the parties should be reduced by the depositions being taken by written questions pursuant to Federal Rule of Civil Procedure 31.  In *DBMS Consultants*, the court found that "[t]he expense in money and time" required to depose an individual in Australia "falls heavily on all litigants" and that "it would be unjust and inappropriate to request a full-blown oral examination, with the attendant time, travel and money constraints for all involved, when a simpler procedure may yield the desired information."  131 F.R.D. at 370.  To alleviate the parties of this undue burden the court ordered depositions on written questions pursuant to Federal Rule 31, and further instructed that "[s]hould this less expensive and less burdensome deposition method prove inadequate, the Court will consider any

---

[21]  For example, when broken down to its constituent parts, the Isle of Man Letter Rogatory contains 102 document demands, and 174 topics of inquiry.  (*See* Ex. S.)

further request to take [the witness]'s oral deposition." *Id.* The *DBMS Consultants* court further ordered the parties to "attempt in good faith to collaborate in the preparation of an appropriate letter rogatory." *Id.* Multiple courts have adopted this approach to the issuance of letters rogatory in order to limit the burden and expense placed on the parties. *See, e.g.*, *B & L Drilling Elecs. v. Totco,* 87 F.R.D 543, 545 (W.D. Ok. 1978) (ordering deposition by written questions to save the parties the expense of traveling to *Canada*).

Because the parties will incur significant expense in traveling to Europe to take depositions of individuals who have very little, if any, relevant information, the Court should require the use of a less costly measure to obtain the information sought and order that the depositions be taken on written questions.

## IV.     The Government Should Not Be Permitted to Choose a Solicitor or Non-Treaty Procedures in Connection with the Isle of Man Letter Rogatory

FICA A Fund opposes allowing the Government, a litigant in this case, to choose a solicitor to execute the Isle of Man Letter Rogatory. The Government's solicitor would be the recipient of this Court's letter rogatory and would purportedly act as the conduit between this Court and the Isle of Man court. This is unnecessary and inappropriate. The law firm retained by the Government for purposes of executing this Court's letters rogatory, Herbert Smith LLP, represents EMC Corporation, which was founded by Richard Egan. (*See* Ex. T.) The Government did not consult with FICA A Fund concerning its United Kingdom solicitor and we can only presume that the Government is aware of the attorney-client relationship between the law firm it is urging on this Court and EMC. While the Government has not informed the Court of this relationship, we believe the Court should be so informed. Moreover, not only is it inappropriate for the Government to choose a United Kingdom solicitor to execute its own overly broad and argumentative letter rogatory, but the Government has failed to show that such

a procedure is even available in the Isle of Man.  *See supra* note 13.  Accordingly, the Court would be better served by issuing the letter rogatory pursuant to the Hague Evidence Convention.[22]

## CONCLUSION

The letters rogatory process provides courts with the ability to obtain evidence from foreign jurisdictions.  There are limitations to the use of letters rogatory, however, to protect the parties from undue burden and to ensure that courts do not infringe on the sovereignty of foreign jurisdictions.  The letters rogatory the Government asks this Court to endorse are not narrowly tailored to gather evidence in this case.  Rather, they represent a far-ranging fishing expedition.  They create both an undue burden on the parties and infringe on the sovereignty of the Isle of Man and Ireland by seeking to investigate multiple third-party individuals and entities who are domiciled in those countries and who are not related to this case.  Accordingly, FICA A Fund requests that the Court deny the Isle of Man Letter Rogatory and limit the scope of the Ireland Letter Rogatory.

---

[22] The Hague Evidence Convention provides an established procedure whereby letters rogatory may be issued directly from a United States court to the "Central Authority" in the receiving nation.  *See* Hague Evidence Convention art. 2.  The Central Authority to whom the Isle of Man Letter Rogatory should be sent is identified in U.S. Dep't of State, Judicial Assistance United Kingdom, http://travel.state.gov/law/info/judicial/judicial_671.html (last visited Apr. 18, 2007).  Letters rogatory issued pursuant to the Hague Evidence Convention must be captioned as such and must contain specific information.  *See* 6 James Wm. Moore, *Moore's Federal Practice* § 28.12[4] (3d ed. 1997).

Respectfully submitted this 18th day of April 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner


/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com


John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com


## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 18, 2007.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com