UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 05-40151 |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S OPPOSITION
TO PLAINTIFF'S MOTION TO CONSOLIDATE**

The plaintiff's motion to consolidate, without adequate protection of the defendant's rights, must be denied.[1] The plaintiff fails to make the threshold demonstration of common questions of fact or law. Though there appear to be some common questions, there also appear to be many unique to each case. More significantly, consolidation, as proposed, would severely prejudice the United States in its defense of Fidelity High Tech by depriving us of our right as a litigant to conduct full and complete discovery. The plaintiff seeks, in essence, to try two separate tax-shelter cases as one simply because Richard Egan was part of both contemporaneous schemes. To support this result, the plaintiff effectively seeks to portray Fidelity High Tech as a carbon copy or mirror image of Fidelity International. Nothing could be further from the truth. Fidelity High Tech is a distinct case with distinct facts, and is worthy of and will require commensurate discovery.

The United States does not, in principle, oppose consolidation of these cases. As we have

---

[1] For ease of reference, we will refer to *Fidelity International Currency Advisor A Fund, LLC v. United States of America* (Case Nos. 05-40151 and 06-40130 (D. Mass.)) as "Fidelity International," and to *Fidelity High Tech Advisor A Fund v. United States of America* (Case Nos. 06-40243 and 06-40244 (D. Mass.)) as "Fidelity High Tech."

said before, sufficient commonalities may exist to warrant consolidation that preserves the United States' rights as a litigant. (*See* Jt. Prop. Schedule at 6.) In fact, if the United States' rights were protected, the United States would join the plaintiff in a consolidation motion. The plaintiff's proposal, however, would severely truncate, if not virtually eliminate, the United States' rights of discovery in the new Fidelity High Tech cases, and, accordingly, would be extremely prejudicial.

The Fidelity High Tech cases are in their infancy. As such, the United States has conducted virtually no discovery whatsoever into the Fidelity High Tech tax shelter. That tax shelter appears to be as complex, though entirely different from, the Fidelity International tax shelter. By rule, the United States cannot even promulgate any written discovery in Fidelity High Tech until after the required scheduling conference.[2] After that conference, the United States is entitled to and will require substantial time to unravel the tax shelter at issue in Fidelity High Tech. It will also require substantial time to obtain documents and conduct additional discovery. The right and need to conduct that discovery is not obviated by the Egans' entry into two different tax shelters in the same tax year. Following thorough document discovery, the United States will then be required to request a panoply of experts to fully analyze the discovered facts of this new tax shelter transaction and prepare reports detailing their analysis and then testify at their depositions regarding their opinions and conclusions.

The limited information provided in the plaintiff's motion does not lead to the conclusion that the United States should be denied discovery or any other right afforded it. The correct

---

[2] Plaintiff has attempted to circumvent this limitation. On October 31, 2006, prior to the filing of its Fidelity High Tech complaints, counsel for Fidelity International issued a FOIA request to the IRS on behalf of Fidelity High Tech for the IRS' administrative files of Fidelity High Tech. Plaintiff's counsel failed to notify counsel for the United States that it had made this request, even after it had filed this action against the United States.

result would be either non-consolidation or, more efficiently, consolidation with sufficient safeguards of the United States' rights as a defendant. The plaintiff seeks neither correct result.

## Factual Background

Richard Egan engaged in at least two different tax shelters in 2001. The product at issue in the Fidelity International cases is called an "FDIS" transaction. The product at issue in the Fidelity High Tech cases is called a "Stock Dribble" transaction. He engaged in those tax shelters as a so-called partner in the two purported partnerships (Fidelity International Currency Advisor A Fund and Fidelity High Tech Advisor A Fund). The tax shelters each generated huge tax benefits in 2001 and 2002. After the tax benefits were disallowed, four lawsuits were brought on behalf of the purported partnerships. The four lawsuits consisted of two for each purported partnership, and one for each purported partnership's tax years 2001 and 2002. By each lawsuit, the plaintiff seeks to have, by *de novo* review, each tax shelter's claimed tax benefits deemed proper.

The two tax shelters are entirely distinct. To be sure, it appears that many of the same promoters were involved in marketing these two separate tax shelters to Richard Egan in Fidelity International and Richard and Maureen Egan in Fidelity High Tech. It also appears that the Egans purchased and engaged in the two tax shelters in the same years. Significantly, however, the two tax shelters were structured significantly differently, and also sought to achieve their tax-sheltering goals in very dissimilar ways. One tax shelter, the Fidelity International tax shelter known as the Financial Derivatives Investment Strategy ("FDIS"), generated an artificial tax loss of approximately $150 million which Richard Egan then used to offset a nearly identical amount of ordinary income he had realized earlier that year from his exercise of stock options. The other tax shelter, the Fidelity High Tech tax shelter known as the Stock Dribble, appears to have

generated an artificially inflated basis in assets held by the Egans which was then shifted to other assets held by the Egans in order to eliminate anticipated taxable gains and then, in addition to the elimination of such gain, also to generate paper tax losses.

To achieve the tax sheltering goals, the promoters and participants went through a great deal of effort to disguise the transactions as something other than what they were – tax shelter products designed and implemented to provide the promoters' customers with huge tax benefits. The efforts resulted in intentionally complex but two highly-unique multi-step sets of integrated transactions. Obtaining a thorough understanding of these complicated strategies – thorough enough to defend these TEFRA actions – is time consuming. Just as with our document discovery in Fidelity International, which is still ongoing, the United States must conduct thorough document discovery to determine the mechanics of the Fidelity High Tech tax-shelter product. That will necessarily include discovery of the promoters and participants. While there may be an overlap of witnesses, because both transactions appear to have been developed and marketed by many of the same promoters, it appears that the respective sets of promoters are not completely identical. Furthermore, it appears that each shelter was marketed to a wholly separate group of wealthy taxpayers. As in Fidelity International, the United States will therefore need to conduct discovery in Fidelity High Tech to uncover any new promoters and also the various purchasers of this generic tax shelter product. Like Fidelity International, such discovery is essential to be able to test the merits of the plaintiff's claims, *inter alia*, as to the non-tax economic and business purposes of this new tax strategy.

As of now, the United States has not yet even been able to do any discovery in Fidelity High and will not be able to conduct any document discovery until a scheduling order is issued. Only at that point can the United States begin its formal document discovery. Once factual

discovery is well underway, the United States will then need to request a series of well-quailed experts to analyze thoroughly the factual record relating to the Stock Dribble transaction. That work will be wide ranging and extremely time consuming, and will involve an analysis of such issues as whether the Stock Dribble transaction had a reasonable basis for an economic profit and what was this transaction's likelihood of achieving one or more non-tax business purposes. Thereafter the experts will need to write extensive reports detailing their conclusions and opinions and then be prepared to be deposed on their written reports. As with document discovery, this phase of discovery has not yet begun, and really cannot begin until the factual discovery is nearly complete.

**Procedural Posture**

A.   **Fidelity international**

Fidelity International consists of two consolidated cases.[3] The first complaint was answered on January 3, 2006. The second complaint was answered on September 5, 2006. The cases were consolidated shortly thereafter on September 12, 2006. Current deadlines are as follows:

1. Expert Reports - June 8, 2007;
2. Rebuttal Reports - July 13, 2007; and
3. Discovery Cutoff - September 28, 2007.

Thus, opening expert reports are due to be exchanged in Fidelity International in less than seven weeks.

B.   **Fidelity High Tech**

There are two separate Fidelity High Tech cases.[4] Each complaint was answered on

---

[3] Case Nos. 05-40151 and 06-40130 (D. Mass.).

[4] Case Nos. 06-40243 and 06-40244 (D. Mass.).

March 23, 2007. No scheduling order has issued and no scheduling conference has been calendared. The time has not yet come for the parties to confer under Federal Rule of Civil Procedure 26(f). As such, discovery has not begun in either Fidelity High Tech case.[5]

### Argument

I.   **The Plaintiff Has Made None of the Threshold Demonstrations.**

The plaintiff failed to establish the requisite commonalities for consolidation. Actions may be consolidated if they involve "common questions of law or fact." Fed.R.Civ.P. 42(a). "A party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions . . . ." *Debruyne v. National Semiconductor Corp. (In re Repetitive Stress Injury Litig.)*, 11 F.3d 368, 373 (2d Cir. 1993); *Close v. American Honda Motor Co.*, 1994 U.S. Dist. LEXIS 17786 (D.N.H. 1994). *See also*, *e.g.*, *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co.*, 2007 U.S. Dist. LEXIS 4652, *10 (D.N.J. 2007); *Certified/LVI Envtl. Servs. v. PI Constr. Corp.*, 2003 U.S. Dist. LEXIS 5474, *5 (D. Tex. 2003); *Augustin v. Jablonsky*, 2001 U.S. Dist. LEXIS 10276, *50 (D.N.Y. 2001). The plaintiff failed to meet its burden here.

The plaintiff makes the conclusory statement that the cases involve common issues of law *and* fact, but fails to state a single fact about either tax shelter, other than that Richard Egan participated in each. (*See* Pl. Mem in Supp. of Mot. to Consol. at 3.) The plaintiff also alleges that the so-called partnerships in each of these cases "share common investment objectives." (*Id*.) There is no mention of how any "investment objective"– whether real or phony– was achieved, or even what those purported objectives were. There is no description whatsoever of

---

[5]Federal Rule of Civil Procedure ("Rule") 26(d) prohibits the parties from conducting discovery before the parties have conferred as required by Rule 26(f). The Court allowed the parties to inquire at depositions into Fidelity High Tech as part of their discovery in Fidelity International. Thus far, plaintiff has taken two depositions in Fidelity International.

6

each tax-shelter. There is no mention of the mechanics of any transaction or set of transactions that made up the respective tax shelters. There is no discussion of who the so-called partners were in each tax shelter. Similarly, there is no statement about who marketed each transaction, who promoted each transaction, and who implemented each transaction. The plaintiff leaves us in the dark, and simply declares "the background facts" to be "substantially the same." (*Id.*)

Without a thorough description of the two different tax shelters– and the plaintiff provides none– the Court cannot determine factual and legal commonality. The Court's jurisdiction is "to determine all partnership items of the partnership . . ., the proper allocation of such items among the partners . . ., and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." 26 U.S.C. 6226(f). The Court must make those legal determinations by trial *de novo*. *Klamath Strategic Inv. Fund, LLC v. United States*, 440 F. Supp. 2d 608, 610 (D. Tex. 2006). *See also, Revell, Inc. v. Riddell*, 273 F.2d 649, 658-59 (9th Cir. 1959); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-28 (1974). To conduct a trial *de novo* and determine the issues under its jurisdiction, the Court must be presented with the facts of each case. As such, to determine whether consolidation of cases is appropriate in this instance, the Court must be presented with similarly broad facts sufficient to determine commonalities.

The plaintiff moves for consolidation in the absence of facts by mischaracterizing the basic nature of each lawsuit. More specifically, the plaintiff mischaracterizes the issues in the Fidelity International and Fidelity High Tech cases as "whether the IRS erroneously adjusted certain partnership items . . . ." (Pl. Mem in Supp. of Mot. to Consol. at 3.) Contrary to that assertion, the plaintiffs seek "readjustment" of the partnership items, and do not and cannot

7

challenge any "propose[d]"[6] IRS adjustments.  Simply put, the issues in each case focus on the plaintiff's actions in each case, not on the IRS's actions in making its adjustments.  *See e.g.*, *United States v. Nordberg*, 1996 U.S. Dist. LEXIS 5259, *4-*5 (D. Mass. 1996)(*citing Lewis v. Reynolds*, 284 U.S. 281, 283, 76 L. Ed. 293, 52 S. Ct. 145 (1932); *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (1974).  The plaintiffs engaged in at least two separate tax shelters and they have the burden of proving the correctness of the claimed tax treatment.  For purposes of this motion, the plaintiffs must present facts that demonstrate commonalities with respect to the two tax shelters and their engagement in them.

## II.     There Has Been Virtually No Discovery in Fidelity High Tech, Much less Any Expert Witness Analysis of this New and Distinct Tax Shelter.

The parties have not conducted discovery in Fidelity High Tech.  Plaintiff emphasizes that the United States has asked three interrogatories and sought from the plaintiff documents relating to Fidelity High Tech in three production requests. (*See* Pl. Mem. in Supp. of Mot. to Consol. at 4.)  As an initial matter, those discovery requests were made before the filing of Fidelity High Tech, and before the United States had an understanding of the basic nature and operation of the underlying tax shelter in Fidelity International.  As such, those requests were made to assist the United States in understanding the transaction in Fidelity International, not to prepare to defend a second, and at that time nonexistent, case.  Furthermore, the plaintiff objected to each request and each interrogatory.  It objected on grounds including that "Fidelity High Tech" was "not a party" and the "transactions engaged in by Fidelity High Tech [were not] at issue in [the Fidelity International] litigation." (Pl. Resp. to U.S.'s First Set of Interrogatories at 48, 51, 55.)

---

[6](Pl. Mem. in Supp. of Mot. to Consol. at 3.)

Now, completely contrary to its stated objections then, the plaintiff states that the Fidelity High Tech transactions are so similar that the Fidelity International discovery has already covered it. Putting aside for the moment the complete lack of any significant third-party discovery in Fidelity High Tech, the discovery of the plaintiff was, at best, a scratching of the surface. In fact, the plaintiff's production in response to the three production requests was made "without waiving" its objections, and the plaintiff simply provided a list of documents that "may be responsive" to those three requests.

The plaintiff also says now that "[d]ocuments that would have been provided by Plaintiff as part of its initial disclosures in the [Fidelity] High Tech cases were" already produced. (Pl. Mem. in Supp. of Mot. to Consol. at 4.) That statement is palpably untrue and, in any event, seems to be of little or no import, as initial disclosures provide a starting point for discovery. For example, on its federal partnership tax return [Form 1065] for 2001, Fidelity High Tech reported that it was

> terminated on December 21, 2001. On that date, Maureen E. Egan transferred a 99% ownership interest in the partnership to MEE Holdings L.P. . . . . This transfer resulted in a sale or exchange of 50% or more of the total interests in the partnership's capital and profits during a 12 - month period. This resulted in a new partnership for federal tax purposes . . . .

As far as we can tell, MEE Holdings, LP purports to be a limited partnership apparently owned by RJE Partners LLC (as the purported general partner) and Maureen E. Egan 1986 Trust (as the purported limited partner). Pointedly, plaintiff appears to further claim that the alleged tax benefits from the Stock Dribble transaction arise and are realized in connection with this purported new Fidelity High Tech partnership. Notwithstanding plaintiff's own representation that Fidelity High Tech became a new partnership on December 21, 2001 with a new 99% owner (MEE Holding L.P.), however, it has produced absolutely nothing regarding this new owner or

the non-tax purpose for this change of ownership. It also has not produced any information regarding the apparent family entities who are the alleged general and limited partners of this purported new owner. And this is just one example of the deficient nature of plaintiff's initial disclosures.

It further appears, upon a simple first glance, that at least one critical Fidelity High Tech witness– Maureen Egan– was left off of Fidelity International's initial disclosures and was also not disclosed in response to any of our Fidelity International discovery requests.[7] As noted, Maureen Egan was purportedly the partner with a 99% member interest in *old* Fidelity High Tech. (*See* Compl. at ¶¶33, 35.) As such, she is a highly significant potential witness, not to mention even a party in the case. 26 U.S.C. 6226(c). She clearly has discoverable information. The plaintiff objected to discovery of Maureen Egan in Fidelity International because she is "not the Plaintiff in [that] case and was not involved in any of the transactions at issue in [that] case." (Pl. Resp. to U.S.'s First Set of Interrogatories at ¶ 5.) Even upon this cursory review, at the very least, Maureen Egan would necessarily have discoverable information in Fidelity High Tech, and should have been disclosed as part of plaintiff's initial disclosures in that case.

Equally significant, as in Fidelity International, the United States expects that our formal and informal discovery will require the plaintiff to produce a substantial number of additional documents. Indeed, plaintiff has at this juncture served upon us its eighth set of production requests in Fidelity International. Yet it essentially seeks to deny us the opportunity to conduct similar extensive document discovery upon it in Fidelity High Tech.

It is true that the United States has sought some documents from non-parties relating to

---

[7]As described earlier, the plaintiff objected to discovery of the Fidelity High Tech "partnership" and "partners" on grounds including that "Fidelity High Tech" was "not a party" and the "transactions engaged in by Fidelity High Tech [were not] at issue in [the Fidelity International] litigation." (Pl. Resp. to U.S.'s First Set of Interrogatories at 48, 51, 55.)

Fidelity High Tech, but only to the extent those documents relate to the transactions employed in Fidelity International. Because the United States sought only documents relating to Fidelity International– the only Fidelity case pending at that time– it now must issue a whole new round of subpoenas to the promoters and other third parties specifically directed to the Stock Dribble transaction. Our subpoenas in Fidelity Intentional demanded "all client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of all SOS and/or FDIS transactions, including, but not limited to, those transactions involving . . . the individuals and entities identified in Appendix A" to the subpoena. While Appendix A included the Fidelity High Tech "partnership" and known "partners," Fidelity High Tech, as it turns out, did not involve an SOS or FDIS transaction. Rather, it involved the Stock Dribble transaction. As such, we must conduct an extensive amount of additional third-party discovery. Only then will the United States be in the position to have experts analyze the evidential record, which presumably will ultimately consist of a similarly massive database of materials, and prepare their written reports.

**III.     Even If Sufficient Commonalities Exist to Warrant Consolidation, the Cases Should Be Consolidated Only If the United States' Rights Are Protected.**

The United States' right to conduct discovery in defense of Fidelity High Tech cannot be infringed upon. Even if the Court determines with additional facts that commonalities exist, it must then weigh the costs and benefits of consolidation to decide whether that procedure is appropriate. *Seguro de Servicio de Salud v. McAuto Systems Group, Inc.*, 878 F.2d 5, 8 (1st Cir. 1989). "In considering the costs and benefits of consolidation, it is appropriate to consider and weigh the convenience or inconvenience to the parties, the judicial economy, the savings in time, effort or expense and 'any confusion, delay or prejudice that might result from consolidation.'" *Gilliam v. Fid. Mgmt. & Research Co.*, 2005 U.S. Dist. LEXIS 10478, *4 (D. Mass. 2005) (*quoting Data General Corporation v. Grumman Systems Support Corporation*, 834 F.Supp.

11

477, 487 (D.Mass. 1992)).

The United States believes that *appropriate* consolidation would result in convenience; judicial economy; savings in time, effort or expense; and would avoid prejudice. The consolidation sought by the plaintiff, with no additional time allotted for a second, and unique, case, would be wholly unfair to the United States, which must defend each action.

If the plaintiff's motion is granted and there is insufficient time allotted to conduct discovery in Fidelity High Tech, the prejudice to the United States' defense would be extreme. The Fidelity High Tech tax shelter is intentionally complex. Obtaining a thorough understanding of it– thorough enough to defend a TEFRA adjustment action – is time consuming. In the Fidelity International case, initial disclosures were made in March 2006. More than one year later, document discovery has progressed expeditiously, but, because of the number of relevant witnesses, and recalcitrance or cumbersomeness of some, it is still not completed. Just as with our document discovery in Fidelity International, the United States must conduct thorough document discovery to unravel the relevant facts relating to the entirely different "Stock Dribble" tax shelter at issue in Fidelity High Tech. The United States is entitled to and will want to conduct the predicate fact discovery in Fidelity High Tech. It will also wish to conduct substantial document discovery before launching into depositions. Furthermore, discovery must progress substantially before any experts can begin to prepare the necessary reports in Fidelity High Tech. It is simply absurd for the plaintiff to argue that the United States should be ready to submit expert reports in less than seven weeks in Fidelity High Tech when we have not yet even begun to do formal discovery.

## Conclusion

The United States recognizes the likelihood that some efficiencies can be achieved by consolidation of these cases which involve at least some of the same participants and promoters.

With that recognition, the United States believes that twelve months of discovery in Fidelity High Tech would be sufficient. That would be sixth months fewer than the parties had in the equally complex Fidelity International case. The Fidelity International discovery cutoff is currently September 28, 2007. Appropriate consolidation would therefore result in enlargement of discovery in the consolidated cases to approximately May 2008.[8]

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

                                /s/ Dennis M. Donohue
                                DENNIS M. DONOHUE
                                CHIEF SENIOR LITIGATION COUNSEL
                                OFFICE OF CIVIL LITIGATION
                                Trial Attorney, Tax Division
                                U.S. Department of Justice
                                P.O. Box 403, Ben Franklin Station
                                Washington, D.C. 20044
                                Telephone: (202) 307-6492
                                Facsimile: (202) 307-2504
                                E-mail: dennis.donohue@usdoj.gov

                                JOHN A. LINDQUIST
                                BARRY E. REIFERSON
                                HEATHER RICHTARCSIK
                                Trial Attorneys, Tax Division
                                U.S. Department of Justice
                                P.O. Box 55, Ben Franklin Station
                                Washington, D.C. 20044-0055
                                Telephone: (202) 307-6561
                                Facsimile: (202) 514-5238
                                E-mail: john.a.lindquist@usdoj.gov
                                            barry.e.reiferson@usdoj.gov
                                            heather.l.richtarcsik@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on April 23, 2007.

/s/ Barry E. Reiferson
_____

---

[8] That schedule assumes that discovery in Fidelity High Tech begins in May 2007.