# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No.:  05-40151-FDS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO CONSOLIDATE

It is apparent from Defendant's Opposition to Plaintiff's Motion to Compel that the primary issue disputed by the parties is whether additional time is needed for discovery into *Fidelity High Tech Advisor A Fund, L.L.C. v. United States*, Nos. 06-40243-FDS & 06-40244-FDS (D. Mass.) ("High Tech cases").  Defendant's argument that Plaintiff has not made a threshold demonstration of common questions of fact or law is disingenuous in light of the fact that Defendant would join Plaintiff's Motion to Consolidate if the discovery deadline were extended from September 28, 2007 to May 2008.  (United States of America's Opposition to Plaintiff's Motion to Consolidate ("Def.'s Opp'n") at 2, 13.)  Plaintiff has amply demonstrated that common issues of fact and law exist and Defendant has failed to demonstrate that it would be measurably prejudiced by consolidating the cases, even without extending the discovery deadline.  Accordingly, the Court should grant Plaintiff's Motion to Consolidate the High Tech

cases with the cases of *Fidelity International Currency Advisor A Fund, L.L.C. v. United States*, Nos. 05-40151 & 06-40130 (D. Mass.) ("FICA A Fund cases").

## I.     The Common Questions of Law and Fact Warrant Consolidation

Defendant, without citation to legal authority, suggests that Plaintiff must make a highly detailed showing regarding the common questions of law and fact in order for Plaintiff to meet its burden of demonstrating that consolidation is warranted.  Such a detailed showing of the common questions of law and fact is not required.  In fact, the starting point for a court's evaluation of common questions of law and fact is often the pleadings in the cases.  *See, e.g.*, *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993); *Certified/LVI Envtl. Servs., Inc. v. PI Constr. Corp.*, No. SA-01-CA-1036, 2003 U.S. Dist. LEXIS 5474, at *7 (W.D. Tex. Mar. 3, 2003); *Close v. Am. Honda Motor Co.*, No. 94-365, 1994 U.S. Dist. LEXIS 17786, at *4 (D.N.H. Dec. 5, 1994).  Plaintiff has amply demonstrated the existence of common questions of law and fact to warrant consolidation.

Many of the legal issues in the High Tech and FICA A Fund cases are identical.  Twelve of the thirteen counts in the complaint for FICA A Fund's 2001 tax year (Case No. 05-40151-FDS) are also at issue in the High Tech cases.  *Compare* FICA A Fund 2001 Compl. Counts I-XI, XIII, *with* High Tech 2001 Compl. Counts I-VI, VIII-IX, XI-XIII, XV, *and* High Tech 2002 Compl. Counts I-VI, VIII-IX, XI-XIII, XV.[1]  Additionally, in deciding both the High Tech and FICA A Fund cases, the "soft doctrines" will be examined.  Those soft doctrines will turn, in part, on Plaintiff's substantial business purposes for entering into the transactions at issue.  Accordingly, the commonality of legal issues warrants consolidation.

---

[1] In addition, the notices of final partnership administrative adjustment for both the FICA A Fund and High Tech cases, which are attached to each Complaint, bear the heading "Notice 2000-44 Case."  This constitutes an assertion by the Government that, in all cases, the tax benefits should be disallowed for the reasons set forth in that Notice.

There are many common factual issues relevant to the High Tech and FICA A Fund cases. Some of these common factual issues are outlined in the complaints. *Compare* FICA A Fund 2001 Comp. ¶¶ 16-32, *with* High Tech 2001 Compl. ¶¶ 19-32, *and* High Tech 2002 Compl. ¶¶ 19-32. The complaints make apparent that Plaintiff was concerned about his concentrated stock position and sought to indirectly hedge this position due to the limitations placed on Plaintiff's ability to sell stock. FICA A Fund 2001 Comp. ¶¶ 17-18, 20; High Tech 2001 Compl. ¶¶ 20-22; High Tech 2002 Compl. ¶¶ 20-22. The complaints also state that an international accounting firm, Helios Trading LLC, and Alpha Consultants LLC advised Plaintiff on both High Tech and FICA A Fund. FICA A Fund 2001 Comp. ¶ 25; High Tech 2001 Compl. ¶ 26; High Tech 2002 Compl. ¶ 26. The international accounting firm in both cases was KPMG. In fact, most of the individuals and advisors who had a role in implementing or advising on High Tech also played a role in FICA A Fund. The complaints also state that in both High Tech and FICA A Fund Plaintiff invested in digital options and that Refco Capital Markets executed the option transactions. FICA A Fund 2001 Comp. ¶¶ 30, 32; High Tech 2001 Compl. ¶¶ 31-32; High Tech 2002 Compl. ¶¶ 31-32. Plaintiff first invested in High Tech and then, based partially on the profit from that investment and satisfaction with the advisors, invested in FICA A Fund. Thus, the facts of the High Tech cases necessarily serve as background for the FICA A Fund cases. Regardless of whether consolidation is allowed, Plaintiff will present the facts of the High Tech investment in the FICA A Fund case. Thus, if consolidation is not ordered, Plaintiff will, in effect, put on the High Tech case twice. Accordingly, the commonality of factual issues warrants consolidation.

## II.    Defendant Will Not Be Prejudiced by Consolidation

While acknowledging that "there may be an overlap of witnesses, because both transactions appear to have been developed and marketed by many of the same promoters,"

(Def.'s Opp'n at 4), the Government asserts that it will be prejudiced because it has not had the

opportunity to engage in "significant third-party discovery in Fidelity High Tech." (Def.'s

Opp'n at 9.) Its assertion, however, that "[t]here has been virtually no discovery in Fidelity High

Tech" (Def.'s Opp'n at 8) is flat wrong.

### A.    Plaintiff Has Produced Numerous Documents Relating to Fidelity High Tech

Plaintiff has produced a total of approximately 21,700 pages of documents relating to

High Tech. In its initial disclosures, Plaintiff produced approximately 11,500 pages of

documents relating to High Tech. Subsequently, in response to Defendant's First Set of

Requests for Production requesting information regarding High Tech, FICA A Fund produced an

additional 500 pages of documents, identified by Bates number 11,500 pages of documents

previously produced, and provided complete answers to three interrogatories related to High

Tech.[2] While Plaintiff objected to the discovery requests concerning High Tech, Plaintiff did not

withhold any documents based on its objections and has supplemented its production of such

documents when appropriate. Moreover, Defendant's suggestion that the requests are not

sufficient to defend the High Tech lawsuit (Def.'s Opp'n at 8) is belied by the broad scope of the

High Tech related discovery requests, including the several parts into which they are more

properly broken down. (*See* Ex. A, Interrogatories Nos. 24-26.) These requests, coupled with

other discovery in this case, called upon Plaintiff to produce the vast majority of documents

relating to High Tech.

Plaintiff reviewed the documents produced to date in the FICA A Fund matters and

determined, in complete satisfaction of Federal Rule 26(a)(1)(B), that Plaintiff produced all

---

[2] The remaining pages of documents relating to High Tech were produced in response to subpoenas issued to the Carruth entities, which are investment companies owned by Plaintiff's family, or as part of a supplemental production.

documents that Plaintiff currently "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(B). It is the disclosing party's intended use of documents that governs whether or not the disclosing party has satisfied its obligations, not the opposing party's perception of the adequacy of the disclosing party's production of initial disclosure documents. In fact, contrary to Defendant's assertions (Def.'s Opp'n at 9-10), Plaintiff has produced over 1,200 documents (12,500 pages) that mention Maureen Egan and over 11,000 pages of documents that mention MEE Holdings.

While Defendant erroneously claims that Plaintiff "seeks to deny" Defendant discovery of Plaintiff in High Tech (Def.'s Opp'n at 10), Defendant has served two sets of discovery requests on Plaintiff, and twenty-eight of its twenty-nine requests for production were served within the first three months after discovery began in FICA A Fund. Plaintiff responded to both sets of discovery requests within the time allotted by the Federal Rules. It is unclear why Defendant believes it will serve more extensive discovery requests on Plaintiff in connection with the High Tech cases. Even if Defendant decides to undertake more extensive discovery in the High Tech cases, five months is a sufficient amount of time for Defendant to serve and Plaintiff to respond to these requests. Thus, an eight-month *extension* of the discovery deadline is not necessary for seeking additional discovery from Plaintiff.

### B.    Third Parties Have Produced Documents Relating to High Tech

Twenty-two of the twenty-nine subpoenas issued to third parties by Defendant sought documents relating to High Tech.[3] Consequently, Defendant has already collected a substantial amount of documents relating to High Tech from *all* of the third parties who advised on the High Tech investments, including KPMG; Helios Trading LLC; Alpha Consultants LLC; Refco

---

[3] The seven subpoenas that do not request information regarding High Tech are subpoenas to banks for the banking records of Plaintiff's advisors.

Capital Markets; Proskauer Rose, LLP; Brown Raysman Millstein Felder & Steiner LLP; Burke,

Warren, MacKay & Serritella, P.C.; and the Carruth entities.  Defendant attempts to dismiss the

large productions of High Tech documents from third parties by claiming that it was only

seeking those documents "to the extent those documents relate to the transactions employed in

Fidelity International."  (Def.'s Opp'n at 11.)  The subpoena questions, however, are much

broader in scope, seeking, as Defendant acknowledges, "[a]ll client-specific documents relating

to the development, marketing, promotion, implementation, issuance of opinions regarding,

and/or reporting of the SOS and/or FDIS transactions, including . . . [High Tech]."  (Ex. B,

Attachment to Subpoena at 18-26 & App. A.)  The subpoena requests also seek, *inter alia,*

closing binders, operating agreements, LLC agreements, documents concerning business

purposes, documents concerning financial risk, opinions and draft opinions, and federal and state

tax returns reporting the transactions.  Thus, the third-party production of documents relating to

High Tech has been extensive and Defendant has not identified what additional third parties must

be subpoenaed under Defendant's broad view of relevance.

### C.    Defendant Has Already Sought Third-Party Information Concerning "Stock Dribble" Transactions

Throughout this litigation, Defendant has used a litany of terms, most heretofore

unknown to Plaintiff, to categorize the transactions at issue.  In connection with the High Tech

investment, Defendant has used the term "Stock Dribble."[4]  (*See* Def.'s Opp'n at 11 ("Fidelity

High Tech . . . did not involve an SOS or FDIS transaction.  Rather, it involved the Stock Dribble

transaction.").)  Defendant asserts that it will be prejudiced if it is not permitted to expand its

investigation beyond the 165 SOS transactions (Status Conference Tr. 16:24-25, May 11, 2006)

---

[4] Defendant does not give any further definition to the term "Stock Dribble," explain why "Stock Dribble" would
not be encompassed within the term "SOS," or provide any indication as to how many other transactions it will be
seeking discovery into because it also deems those transactions to be "Stock Dribble."

and 254 individuals and entities identified in Appendix A of the third-party subpoenas it has

issued for purposes of eventually compiling a summary exhibit or expert report.  A search

through the third-party productions has yielded a document that identifies taxpayers who

engaged in a transaction characterized as "Stock Dribble."  All of the identified taxpayers are

listed in the same Appendix A Defendant has attached to its numerous third-party subpoenas.

(*See* Ex. C, Nos. 21-23; Ex. B, App. A.)  Accordingly, Defendant has already sought discovery

from third parties concerning the other taxpayers who have been identified as engaging in a

"Stock Dribble" transaction.  Defendant has failed to provide sufficient facts to justify extending

discovery by eight months.  Five months is a sufficient amount of time within which to issue any

additional third-party subpoenas Defendant deems necessary.

### D.     Extending Discovery by Eight Months Would Unnecessarily Delay These Cases

Consolidation of these cases serves judicial economy because the facts of High Tech are

indisputably a part of the FICA A Fund cases, regardless of the differences in the structures, and

many of the legal issues are the same.  The only prejudice Defendant can assert is its alleged

need to engage in open-ended discovery from third parties for the purposes of having "experts

analyze the evidential record."  (Def.'s Opp'n at 11.)  Defendant is not seeking eight additional

months of discovery because "[o]btaining a thorough understanding of [High Tech] . . . is time

consuming."  (Def.'s Opp'n at 12.)  That understanding can be developed from documents

already produced in this case, both by Plaintiff and by third parties, and from witnesses who will

be testifying in FICA A Fund, none of whom Defendant has yet deposed for the FICA A Fund

case.  Rather, Defendant is seeking eight additional months of discovery to develop the cases of

an unknown number of taxpayers who invested in a transaction that Defendant is calling "Stock

Dribble."  In essence, Defendant is claiming that it will be prejudiced if it is required to try two

7

cases that involve the same facts, time period, witnesses, documents, business purposes, and legal issues together, while at the same time seeking to try the cases of hundreds of other unrelated taxpayers who engaged in different investments, retained different advisors, at different periods of time, and with different purposes than in the current case.

Paradoxically, Defendant claims that one year after initial disclosures were exchanged, "document discovery has progressed expeditiously, but . . . it is still not completed."   (Def.'s Opp'n at 12.)  The protracted discovery in the FICA A Fund case can be solely attributed to the actions of Defendant.  Defendant has not sought to take a single deposition; filed a motion for issuance of letters rogatory over three months after the Court "strongly encourage[d] [Defendant] to proceed expeditiously to get that process underway" (Status Conference Tr. 15:8-10, Dec. 22, 2006); and has consistently been delayed in responding to discovery requests.  Additionally, to Plaintiff's knowledge, Defendant has taken no action with respect to some of the subpoenas it issued to third parties that are many months outstanding.  Defendant should not benefit at Plaintiff's expense from its calculated discovery delays and sequencing, nor should Defendant be allowed to dictate the pace of this case by dragging its feet and expanding the scope of discovery further and further beyond those individuals and entities with knowledge of the facts at issue in these cases.

Five months is sufficient time to complete discovery given the extensive High Tech related discovery that has already been served.  While Plaintiff will be prepared to submit expert reports in both cases by June 8, 2007, Plaintiff is not opposed to extending the deadlines for expert reports if all discovery is completed by September 28, 2007.

For the foregoing reasons, Plaintiff's Motion to Compel should be granted.

Dated this 1st day of May 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
         rbuch@mckeenelson.com
         lamanti@mckeenelson.com


John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com


## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 1, 2007.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY    )
ADVISOR A FUND, L.L.C., by the Tax      )
Matters Partner,                            )
                                   )
              Plaintiff,              )     Civil No. 05-40151
                                   )
    v.                             )     Judge Saylor
                                   )
UNITED STATES OF AMERICA,         )
                                 )
           Defendant.           )

## UNITED STATES' FIRST SET OF INTERROGATORIES

The United States of America, pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure and Rule 26.5 of the Local Rules of the United States District Court for the District of

Massachusetts, serves this first set of interrogatories on Richard J. Egan, the Tax Matters Partner

for Fidelity International Currency Advisor A Fund, LLC.

## INSTRUCTIONS

I.    *Comply with Laws Governing Civil Discovery.* The United States requests that you,

     Richard J. Egan, answer all of the following interrogatories separately, fully, in writing,

     under oath, and within 30 days of the service of these interrogatories, as required by Rule

     33 of the Federal Rules of Civil Procedure, and in all other respects comply fully with the

     laws of discovery in civil actions, including Rule 33.1 of the Local Rules of the United

     States District Court for the District of Massachusetts.

II.   *Answer Completely and Accurately.* When an interrogatory does not specifically request

     a particular fact, but when that fact is necessary to make the answer to the interrogatory

1

1720225.11

comprehensible, complete, accurate, or not misleading, you should include that fact as part of the answer. The interrogatory shall be deemed specifically to request whatever facts are needed to make the response comprehensible without reference to another matter. Likewise, the interrogatory shall be deemed specifically to request all facts supporting the answer.

III.    *Construe Words to Ensure Complete and Accurate Answers.*  Whenever necessary to ensure completeness or accuracy, the singular shall include the plural, and vice versa; masculine and feminine pronouns shall be interchangeable; the words "or" and "and" shall mean "and/or," and the word "or" shall not be interpreted to narrow the scope of any interrogatory and shall be interpreted in its broadest sense as denoting "and/or"; and the words "any," "every," and "all" shall mean "any and all," and the word "any" shall not be interpreted to narrow the scope of any interrogatory and shall be interpreted in its broadest sense as denoting "any and all."

IV.    *Include Information in Possession of Others.*  You should answer these interrogatories based on all the information that is or may be available to you, or to any person, employee, agent, expert, accountant, or attorney who has acted or is now acting on your behalf.

V.    *Identify Documents Concerning Statements of Facts.*  When statements of factual information are requested, the requested information includes the identification of all formal and informal documentation that concerns, explains, clarifies, describes, substantiates, or in any way relates to the requested statement of factual information.

1720225.11

VI.    *When Specifying Business Records.*  If the answer to an interrogatory can be ascertained from your business records, and the burden of ascertaining that answer is substantially the same for you as it would be for counsel for the United States, then you may specify which business records contain the answer to the interrogatory.  A specification shall be sufficiently detailed to permit counsel for the United States to locate and identify, as readily as you could, the business records from which the answer may be ascertained.  If you answer an interrogatory in this way, please produce the document and specify, by Bates number, the page on which the answer to the interrogatory can be found.

VII.    *When Asserting Lack of Knowledge.*  If, after a reasonable and thorough investigation, using due diligence, you are unable to answer any interrogatory, or any part of an interrogatory, on the ground of lack of information available to you, specify in complete and accurate detail why the information is not available to you and what has been done to locate such information.  In addition, specify what knowledge or belief you do have concerning the unanswered portion of any interrogatory and set forth the facts on which such knowledge or belief is based.

VIII.    *When Objecting.*  You should state with specificity the grounds of any objection to all or part of an interrogatory.  If you believe that only part of an interrogatory is objectionable, make your objection and then answer the interrogatory to the extent not objectionable.

IX.    *When Asserting Claim of Privilege.*  The United States does not intend to request any privileged oral communication, document, or tangible thing.  If you claim any form of privilege with regard to any oral communication, document, or tangible thing, whether based on a statute or otherwise, as a ground for not answering an interrogatory or any

1720225.11

portion of an interrogatory, or for redacting or withholding any document or tangible thing, set forth in your answers, with respect to each oral communication, document, or tangible thing for which you claim such a privilege, the following:

A.    The nature of the privilege being asserted;

B.    The date of any oral communication or the date of preparation of any document;

C.    The name, address, title, and occupation of each of the participants in any oral communication or each of the authors, addressees, and recipients of any document;

D.    The name, title, and address of the present custodian of any document or tangible thing;

E.    A description of each oral communication, document, or tangible thing (by subject matter or title) that is sufficient to identify the particular oral communication, document, or tangible thing without revealing its content, but with sufficient detail to set out the legal and factual basis for the application of the privilege claimed for that oral communication, document, or tangible thing.

X.    *Supplement Your Responses.*  These interrogatories are continuing in nature and responses that you learn are inaccurate or incomplete are to be supplemented as required by Rule 26(e) of the Federal Rules of Civil Procedure.  Such supplemental responses are to be served as soon as reasonably possible after the corrective or additional information is obtained.

1720225.11

DEFINITIONS

Local Rule 26.5 provides for the use of uniform definitions in discovery requests. Some of those definitions are included below for ease of reference.

Concerning. The term "concerning" means referring to, describing, evidencing, or constituting.

Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

Fidelity High Tech. The term "Fidelity High Tech" means Fidelity High Tech Advisor A Fund, LLC, which may have been formed in Delaware on July 19, 2000.

Fidelity HT Index. The term "Fidelity HT Index" means Fidelity High Tech Index A Fund, LLC, which may have been formed in Delaware on July 20, 2000.

Fidelity HT Option. The term "Fidelity HT Option" means Fidelity High Tech Option A Fund, LLC, which may have been formed in Delaware on July 19, 2000.

Fidelity International. The term "Fidelity International" means Fidelity International Currency Advisor A Fund, LLC, which may have been formed in Delaware on July 19, 2000.

Fidelity World. The term "Fidelity World" means Fidelity World Currency Advisor A Fund, LLC, which may have been formed in Delaware on July 19, 2000.

Identify (with respect to communications). When referring to communications, "to identify" means to give, to the extent known, the

1720225.11

(a) the date on which the communication was made;

(b) the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

(c) the person who made the communication;

(d) the person to whom the communication was made;

(e) the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

(f) the duration of the communication;

(g) the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

(h) the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

(i) and a description of any document memorializing the communication.

Identify (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document; and

(d) author(s), addressee(s), and recipient(s).

6

Identify (with respect to persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified [in this manner], only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

Person.  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

## INTERROGATORY NO. 1:

Please identify, and provide the information listed below for, **every** person having knowledge of the formation of the entities, the purpose for such entities, and the series of transactions described in paragraphs 33 through 43 of the Complaint, whether or not the person has information supporting your claims:

- the person's full name;
- the person's present or last known address and telephone number;
- the person's present or last known place of employment, when referring to a natural person;
- the person's occupation, employer, and title at that employer during the period of 2000-2001, when referring to a natural person;
- and the subject matter and a brief summary of the person's knowledge.

Please organize this information in a table sorted alphabetically by the last name of each person.

7

1697222.1

INTERROGATORY NO. 2:

Please identify, and provide the information listed below for, **every** person that was involved in the design and/or development of the transactions described in paragraphs 33 through 43 of the Complaint, whether or not the person has information supporting your claims:

- the person's full name;

- the person's present or last known address and telephone number;

- the person's present or last known place of employment, when referring to a natural person;

- the person's occupation, employer, and title at that employer during the period of 2000-2001, when referring to a natural person;

- and the subject matter and a brief summary of the person's knowledge.

Please organize this information in a table sorted alphabetically by the last name of each person.

INTERROGATORY NO. 3:

Please explain completely and accurately how you and/or any advisor (including your son, Michael Egan) were first introduced to or became aware of the transactions described in paragraphs 33 through 43 of the Complaint.

INTERROGATORY NO. 4:

Please identify, and provide the information listed below for, **every** communication you and/or any advisor (including your son, Michael Egan) have had with any person concerning the

8

1697222.1

transactions described in paragraphs 33 through 43 of the Complaint.:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- and a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

INTERROGATORY NO. 5:

Please identify, and provide the information listed below for, **every** marketing or other

9

1697222.1

material used in presenting the transactions described in paragraphs 33 through 43 of the
Complaint to you and/or your advisors (including your son, Michael Egan):

- type of document or other tangible thing;

- general subject matter;

- date of the document or other tangible thing;

- author(s), addressee(s), and recipient(s).

- a description of each document or material or a citation to the beginning
  and ending Bates stamp numbers of the document or material;

- the person who created the document or other tangible thing;

- whether you were given a copy of the document or other tangible thing;

- if a copy was given to you, whether and where the copy still exists;

- if you were not given a copy of the document, the reason for your not
  receiving a copy of the document;

- if you have not furnished the Bates stamp numbers for the document or
  other tangible thing, the person who has custody of the document or other
  tangible thing and its location; and

- if it does not exist, how the document or other tangible thing was disposed
  of and any person who authorized its disposal or who has knowledge of its
  disposal.

INTERROGATORY NO. 6:

In paragraph 20 of the Complaint in this case, you allege that "[b]ecause of Plaintiff's

10

1697222.1

concentrated stock position, Plaintiff was interested in investments that would act as an indirect

hedge of Corporation stock" and, moreover, that "in 2000 and 2001, Plaintiff and his business

interests had substantial variable rate debt that Plaintiff had personally guaranteed" and that,

"[a]ccordingly, investments that directly or indirectly hedged variable interest rates were

similarly attractive and served Plaintiff's objective."

 Please explain completely and accurately how the transactions described in paragraphs 33

through 43 of the Complaint, if any, acted or were designed to act as an indirect hedge of your

EMC Corporation stock.


INTERROGATORY NO. 7:

 In paragraph 20 of the Complaint in this case, you allege that "[b]ecause of Plaintiff's

concentrated stock position, Plaintiff was interested in investments that would act as an indirect

hedge of Corporation stock" and, moreover, that  "in 2000 and 2001, Plaintiff and his business

interests had substantial variable rate debt that Plaintiff had personally guaranteed" and that,

"[a]ccordingly, investments that directly or indirectly hedged variable interest rates were

similarly attractive and served Plaintiff's objective."

 Please explain completely and accurately how the transactions described in paragraphs 33

through 43 of the Complaint, if any, directly or indirectly hedged, or were designed to hedge

directly or indirectly, the variable rate debt held by you and your business interests that you had

personally guaranteed.  Your explanation should include, but not be limited to, a complete and

accurate description of the variable rate debt held by you and your business interests.

INTERROGATORY NO. 8:

In paragraph 21 of the Complaint in this case, you state that in early 2001 you exercised stock options which created "a substantial amount of economically unrealized taxable income." You also state, in paragraph 22 of the Complaint, that following the exercise of the options referenced in paragraph 21 of the Complaint, the price of EMC stock dropped dramatically due to market conditions, "so that the taxable income from the exercise of the options was substantially greater than the value of the stock."

Please explain completely and accurately what stock options you exercised, when you exercised them, why you exercised them, the exact amount of taxable income created, and how the transactions described in paragraphs 33 through 43 of the Complaint furthered your "overall [non-tax] investment objectives," as you allege in paragraph 22 of your Complaint.

INTERROGATORY NO. 9:

In paragraph 23 of the Complaint, you state that, in 2000 and 2001, you considered proposed investment opportunities that were "tax-advantaged" but that you were "not interested in investing in a proposed investment that was mass-marketed or that had been identified as abusive by the IRS."

Please explain completely and accurately all proposed investment opportunities that you considered in 2000 and 2001 that were tax-advantaged and describe what steps you took in each instance to determine whether the proposed investment was mass-marketed or had been identified as abusive by the IRS. This explanation should include, but not be limited to, the following:

12

- the name and a description of the proposed tax-advantaged investment opportunity considered;

- who proposed the tax-advantaged investment opportunity considered;

- when the tax-advantaged investment opportunity that was considered was proposed to you and/or your advisors (including your son, Michael Egan);

- whether you implemented, in whole or in part, directly or indirectly, any of the proposed tax-advantaged investment opportunities that you considered;

- whether, and if so why you came to believe that any of the proposed tax-advantaged investment opportunities that you considered was mass-marketed;

- whether, and if so why, you came to believe that any of the proposed tax-advantaged investment opportunities that you considered had been identified as abusive by the IRS;

- whether, and if so why, you came to believe that any of the proposed tax-advantaged investment opportunities that you considered violated federal or state tax law.

Please organize this information in a separate table for each proposed tax-advantaged investment opportunity considered, sorting them chronologically by the date when they were first proposed to you and/or your advisors (including your son, Michael Egan).

INTERROGATORY NO. 10:

Please identify, and provide the information listed below for, **every** communication you

13

1697222.1

and/or any advisor (including your son, Michael Egan) had with any person in 2000 and 2001 concerning proposed investment opportunities that were "tax-advantaged":

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- and a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

14

INTERROGATORY NO. 11:

Please give a complete and accurate history of Fidelity World, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of these accounts;

- business activities and purpose of those business activities during the years 2000 through 2005;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses for the years 2000 through 2005;

- whether, and if so why, Fidelity World entered into four option contracts on October 9, 2001, with the following numbers: RCM 2001-10-09-01, RCM 2001-10-09-02, RCM 2001-10-09-04, and RCM 2001-10-09-05;

- how Fidelity World accounted for the sale and purchase of these four option contracts;

- whether, and if so why, you assigned your interest in Fidelity World to Fidelity

15

International on October 22, 2001.

- if Fidelity World is no longer in existence, the date of the termination of this entity, the legal nature of its termination, and the reason for its termination.

INTERROGATORY NO. 12:

Please give a complete and accurate history of Fidelity International, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions whereat these accounts are held, and the purpose of these accounts;

- business activities and purpose of those business activities during the years 2000 through 2005;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses for the years 2000 through 2005;

- whether, and if so why, Fidelity International accepted the assignment of your interest in Fidelity World on October 22, 2001;

16

1697222.1

- how Fidelity International accounted for the assignment of your interest in Fidelity World;

- whether, and if so why, Fidelity International entered into four option contracts on October 22, 2001, with the following numbers: RCM 2001-10-22-07, RCM 2001-10-22-08, RCM 2001-10-22-09, and RCM 2001-10-22-10;

- whether, and if so why, Fidelity International entered into four option contracts on October 22, 2001, with the following numbers: RCM 2001-10-22-12, RCM 2001-10-22-13, RCM 2001-10-22-14, and RCM 2001-10-22-15;

- how Fidelity World accounted for the sale and purchase of these eight option contracts;

- if Fidelity International is no longer in existence, the date of the termination of this entity, the legal nature of its termination, and the reason for its termination.

## INTERROGATORY NO. 13:

Fidelity World appears to have entered into four European style digital option contracts (RCM 2001-10-09-01, RCM 2001-10-09-02, RCM 2001-10-09-04, and RCM 2001-10-09-05) on October 9, 2001, with a expiration date of October 9, 2002.

Fidelity International appears to have entered into eight European style digital option contracts on October 22, 2001, (RCM 2001-10-22-07, RCM 2001-10-22-08, RCM 2001-10-22-09, RCM 2001-10-22-10, RCM 2001-10-22-12, RCM 2001-10-22-13, RCM 2001-10-22-14, and RCM 2001-10-22-15) with a expiration date of April 19, 2002.

Please identify, and provide the information listed below for, **every** communication, oral

1697222.1

or otherwise, in which a person stated, represented, suggested, implied, intimated, or in any other way communicated that you, Fidelity International, or any other person could realize a tax loss by terminating any of these European-style digital options by the end of the 2001 tax year (and thus prior to the expiration of their full term):

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and

- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

18

INTERROGATORY NO. 14:

Please explain completely and accurately how you and/or any of your advisors (including your son, Michael Egan) became acquainted with Samuel Mahoney, who appears to have initially owned 93% of the common interests of Fidelity International.

INTERROGATORY NO. 15:

Please identify, and provide the information listed below for, **every** communication, oral or otherwise, you and/or any of your advisors (including your son, Michael Egan) had with Samuel Mahoney:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

19

1697222.1

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and

- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.


## INTERROGATORY NO. 16:

Please identify, and provide the information listed below for, **every** payment made to Samuel Mahoney with respect to the transactions described in paragraphs 33 through 43 of the Complaint or any other transactions in which payments were made to Samuel Mahoney:

- the date of the payment;

- the amount of the payment;

- the person making the payment;

- the reason for the payment;

- the account from which the payment was drawn;

- the account to which the payment was deposited;

- a description of any document memorializing the payment.

Please organize this information in a table sorted chronologically by the date on which the payment was made.

20

1697222.1

INTERROGATORY NO. 17:

On the Form 8886 Reportable Transaction Disclosure Statement that you and your wife, Maureen E. Egan, filed with the IRS roughly a month and a half after you filed the Complaint in this case, which is attached as Exhibit A, you state that you paid a fee to KPMG, Helios Trading, Sidley Austin Brown & Wood, and Proskauer Rose because each of these entities promoted, solicited, or recommended your participation in "the transaction," or provided tax advice related to the transaction.

The Form 8886 Reportable Transaction Disclosure Statement for Fidelity International, which is attached as Exhibit B, also states that Fidelity International paid a fee to KPMG, Helios Trading, Sidley Austin Brown & Wood, and Proskauer Rose because each of these entities promoted, solicited, or recommended participation in "the transaction," or provided tax advice related to the transaction.

Please explain completely and accurately how much you and Fidelity International paid to each of these entities, including as to each such payment:

- the date of the payment;

- the amount of the payment;

- the person making the payment;

- the reason for the payment;

- the account from which the payment was drawn;

- the account to which the payment was deposited;

- a description of any document memorializing the payment.

21

1697222.1

Please organize this information in a table sorted chronologically by the date on which the payment was made.


INTERROGATORY NO. 18:

On the Form 8886 Reportable Transaction Disclosure Statement that you and your wife, Maureen E. Egan, filed with the IRS roughly a month and a half after you filed the Complaint in this case, attached as Exhibit A, you disclose an expected tax benefit for the year 2002 of $1,778,122, which you attributed to a "loss from investment in Fidelity International Currency Advisor A Fund, LLC."

Please explain completely and accurately why you and/or your wife expect a tax benefit in this amount attributable to an investment in Fidelity International.


INTERROGATORY NO. 19:

You produced to the United States a legal opinion letter to you from Sidley, Austin, Brown & Wood, dated March 8, 2002 (Bates-stamped 004179-004309). Section II.A. contains a list of Investor Representations.

Please explain completely and accurately who provided the wording for these representations and identify, and provide the information listed below for, **every** communication, oral or otherwise, with such persons:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

22

1697222.1

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and

- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.


INTERROGATORY NO. 20:

The Investor Representations on page 12 of the legal opinion letter to you from Sidley, Austin, Brown & Wood, dated March 8, 2002 (Bates-stamped 004179-004309), states the following as Investor Representation #1:

Investor entered into the Transactions for substantial non-tax business reasons, predominantly related to offsetting various investment risks associated with a large single concentrated holding in a U.S. technology company, and to hedge

23

1697222.1

against currency fluctuations in international markets in which this technology company has significant currency exposure due to sales. Investor at the time was barred from engaging in direct hedging techniques with respect to his holdings. Also Investor has entered into certain Options to hedge against interest rate fluctuations since Investor was drawing on a large line of credit with a floating interest rate. It was important to be able to manage the interest rate risks due to size of the loans as well as the limitations on the Investor's ability to sell his concentrated holdings due to trading restrictions and sales lockouts at a time when the stock price was becoming increasingly volatile. The intent was for these options to provide cushion if the stock price dropped significantly or if interest rates significantly increased.

Please explain completely and accurately all non-tax business reasons that you had for entering into the series of transactions described in paragraphs 33 through 43 of the Complaint, including the reasons listed in Investor Representation #1 if true.


INTERROGATORY NO. 21:

The Investor Representations on page 12 of the legal opinion letter to you from Sidley Austin Brown & Wood, dated March 8, 2002 (Bates-stamped 004179-004309), states the following as Investor Representation #3:

Investor contributed the membership interest in World to International for substantial non-tax business reasons. Investor has a very sophisticated investment portfolio. Investor continually attempts to group similar purpose investments in limited liability companies or limited partnerships to provide more accurate investment monitoring, to maintain overall portfolio balance, to achieve diversification of Investor's portfolio and to monitor investment risk. In addition, Investor has actively pursued investment opportunities since 1994 in alternative investments (such as real estate, private equity, venture funds, hedge funds, etc.). In order to boost economic performance, diversify holdings and limit risk. All of these investments have been done through limited liability companies or limited partnerships. Many of these investments have outside participants and/or outside managers. Some of these investments have periodically involved hedging strategies.

24

1697222.1

Based on historical correlations, Investor believed that one group of the Options would move in the opposite direction of the stock price relating to his concentrated holdings and another group of the Options would move in the opposite direction of his interest rate exposure on his line of credit related to his concentrated holding. The Options were intended to provide a hedge against large losses arising due to Investor's concentrated holdings until Investor was able to sell a larger percentage of these holdings and pay down his line of credit and lower his interest rate exposure.

Please explain completely and accurately all non-tax business reasons that you had for contributing your membership interest in Fidelity World to Fidelity International, including the listed reasons if true.


## INTERROGATORY NO. 22:

In paragraphs 44 through 49 of the Complaint, you allege certain facts with respect to the assertion of accuracy-related penalties pursuant to 26 U.S.C. section 6662, and in paragraph 102 of Count XIII of the Complaint, you allege that "[t]he FPAA's application of penalties in this case is erroneous."

Please explain completely and accurately whether, and if so why, you believe that accuracy-related penalties pursuant to 26 U.S.C. section 6662 do not apply in this case.


## INTERROGATORY NO. 23:

You and your wife, Maureen E. Egan, are members of a class action suit against KPMG and Sidley Austin Brown & Wood LLP (now known as Sidley Austin LLP). *See Simon v. KPMG*, No. 05-CV-3189 (D.N.J. filed June 24, 2005).

25

1697222.1

This suit was brought on behalf of all persons "who, at any time during the period from January 1, 1996 through and including September 14, 2005, either (a) consulted with, relied upon, or received an oral or written opinion or advice from both KPMG (or any current or former partner, principal or employee of KPMG who at the time was a partner, principal or employee of KPMG) and Sidley Austin Brown & Wood LLP, or its predecessor Brown & Wood LLP (or any current or former partner or employee of either of them who at the time was a partner or employee of the firm) concerning a FLIP, OPIS, BLIPS or SOS transaction and who implemented, in whole or in part, directly or indirectly, such FLIP, OPIS, BLIPS or SOS transaction; or (b) filed a tax return (joint or otherwise) relating to a FLIP, OPIS, BLIPS or SOS transaction described in (a); and (c) the administrators, executors, personal representatives, heirs, successors, beneficiaries and assigns of all persons described in (a) and (b).  (Herein, described as 'Class Members')." *Id.* at Am. Compl. ¶209 (attached as Exhibit C).

Please identify, and provide the information listed below for, **every** FLIP, OPIS, BLIPS, or SOS transaction that you and/or your wife implemented (in whole or in part, directly or indirectly) or reported on a tax return, at any time during the period from January 1, 1996 through and including September 14, 2005:

- the number of transactions implemented and/or reported;

- for each transaction implemented and/or reported, whether it was a FLIP, OPIS, BLIPS, or SOS transaction;

- for each transaction implemented and/or reported, whether it was implemented, or reported, or both;

1697222.1

- for each transaction implemented, how it was implemented, including whether it was implemented in whole or in part, directly or indirectly;

- for each transaction reported, on which tax return and how it was reported;

- for each transaction implemented and/or reported, when it was implemented and/or reported;

- for each transaction implemented and/or reported, whether it is the same transaction described in paragraphs 33 through 43 of the Complaint;

Please organize this information in a table sorted chronologically by the date the transaction was implemented.


## INTERROGATORY NO. 24:

On the Form 8886 Reportable Transaction Disclosure Statement that you and your wife, Maureen E. Egan, filed with the IRS roughly a month and a half after you filed the Complaint in this case, attached as Exhibit A, you disclose an expected tax benefit for the year 2002 of $87,509,884, which you attributed to a "loss from investment in Fidelity High Tech Advisor A Fund, LLC." You also state that the IRS has characterized the Fidelity High Tech transaction as "substantially similar" to a transaction described in Notice 2000-44.

Please give a complete and accurate history of Fidelity High Tech, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

27

1697222.1

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions whereat these accounts are held, and the purpose of those accounts;

- business activities and purpose of those business activities;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses;

- a detailed list of all transactions, including the purchase, sale, and termination of options;

- how Fidelity High Tech accounted for all transactions, including the purchase, sale, and termination of options;

- the date of termination of Fidelity High Tech, if terminated, the legal nature of its termination, and the reason for its termination.

**INTERROGATORY NO. 25:**

Please give a complete and accurate history of Fidelity HT Index, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

28

1697222.1

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of those accounts;

- business activities and purpose of those business activities;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses;

- a detailed list of all transactions, including the purchase, sale, and termination of options;

- how Fidelity HT Index accounted for all transactions, including the purchase, sale, and termination of options;

- the date of termination of Fidelity HT Index, if terminated, the legal nature of its termination, and the reason for its termination.


INTERROGATORY NO. 26:

Please give a complete and accurate history of Fidelity HT Option, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

29

1697222.1

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of those accounts;

- business activities and purpose of those business activities;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses;

- a detailed list of all transactions, including the purchase, sale, and termination of options;

- how Fidelity HT Option accounted for all transactions, including the purchase, sale, and termination of options;

- the date of termination of Fidelity HT Option, if terminated, the legal nature of its termination, and the reason for its termination.

INTERROGATORY NO. 27:

Please explain completely and accurately your participation in KPMG's FOCUS transaction and Michael Egan's participation in KPMG's OPIS transaction.

1697222.1

## INTERROGATORY NO. 28:

Please identify, and provide the information listed below for, **every** person you and/or

your advisors (including your son, Michael Egan) communicated with or attempted to

communicate with, or who was involved in any way, in answering the United States' First Set of

Interrogatories:

- the person's full name;
- the person's present or last known address and telephone number;
- the person's present or last known place of employment, when referring to
  a natural person, and the person's title at that place of employment;
- the person's occupation, employer, and title at that employer during the
  period of 2000-2001, when referring to a natural person;
- the interrogatories the person was involved in answering;
- and the subject matter and a brief summary of the person's knowledge.

Please organize this information in a table sorted alphabetically by the last name of each

person.

Dated: _5-24-06_

MATTHEW C. HICKS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone:  (202) 307-6542
Facsimile: (202) 514-5238
E-mail: matthew.c.hicks@usdoj.gov

31

1514516.1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the United States' First Set of Interrogatories was served upon the plaintiff by sending a copy to his attorneys at the following address on this 24th day of May, 2006:

> David J. Curtin
> MCKEE NELSON LLP
> 1919 M Street, N.W., Suite 800
> Washington, D.C. 20036

MATTHEW C. HICKS

1514516.1

# Exhibit B

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern          DISTRICT OF          New York

Fidelity International Currency Advisor A Fund

V.

United States of America

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-40151-FDS (D. Mass)

TO:  Timothy Speiss
93 Broadway
Irvington, NY 10533

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attachment to subpoena to Timothy Speiss for Production of Documents

| PLACE    United States Attorney's Office<br>300 Quarropas Street, Third Floor, White Plains, NY 10601 | DATE AND TIME<br>2/16/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Heather L. Richtarcsik*  Attorney for Defendant | 1/31/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Heather L. Richtarcsik, Trial Attorney, Civil Trial Section, Northern Region, U.S. Department of Justice, Tax Division, P.O. Box 55, Ben Franklin Station, Washington, D.C. 20044, (202) 307-2822

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY    )
ADVISOR A FUND, L.L.C., by the Tax    )
Matters Partner,    )
    )
                    Plaintiff,    )        Civil No. 05-40151-FDS
    )
        v.    )        Judge Saylor
    )
UNITED STATES OF AMERICA,    )
    )
                    Defendant.    )

**ATTACHMENT TO SUBPOENA TO TIMOTHY SPEISS**
**FOR THE PRODUCTION OF DOCUMENTS**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Timothy Speiss is hereby

required to produce for inspection and copying the documents set forth below, from whichever

office or location these documents may exist.

The production of the requested documents may be effected by mailing the originals or

clear copies of each to Heather L. Richtarcsik, Trial Attorney, Tax Division, United States

Department of Justice, Post Office Box 55, Ben Franklin Station, Washington, DC 20044. If you

are unwilling or unable to transmit originals or copies in the manner described above, you are

requested to advise the undersigned counsel for the United States forthwith upon receipt hereof,

in which event the documents requested herein will be produced for inspection and copying at the

office of the United States Attorney, 300 Quarropas Street, Third Floor, White Plains, NY 10601,

on February 14, 2007, at 10:00 a.m., and continuing from day to day thereafter for so long as is

reasonably necessary to examine and copy them.

2192276.1

## DEFINITIONS

1. As used herein, (a) the singular shall include the plural, and vice versa, (b) masculine and feminine pronouns shall be deemed to be interchangeable, (c) the words "or" and "and" shall mean "and/or," and the word "or" shall not be interpreted to narrow the scope of any request and shall be interpreted in its broadest sense, as denoting "and/or," (d) the words "any" and "all" shall mean "any and all," and the word "any" shall not be interpreted to narrow the scope of any discovery or other request, and shall be interpreted in its broadest sense, as denoting "any and all."

2. The term "document," and derivatives and pluralizations of the same, is to be liberally construed to include all originals, copies, and nonidentical copies (whether by reason of handwritten notations thereon or otherwise) kept in any form including paper and electronic forms, including but not limited to the following: any letter, report, record, corporate minute, memorandum, contract, affidavit, agreement, appraisal, deed, lease, book, record, summary or record of personal conversation, routing slip, correspondence, communication of any nature, note, notebook of any character, ledger, financial statement, material, literature, brochure, publication, prospectus, offering, computation, check or other instrument, computer tape or disk, photograph, phonorecord, electronic transmission including but not limited to electronic mail, telegram, telex and telephone facsimile, and any other type of written or documentary or other tangible material on which information or data may be recorded, stored, or otherwise contained.  As to any document that is written in another language, the term "document" also includes any translation of that document into English.  As to any document in electronic form, the

2192276.1

term "document" includes all metadata associated with the document, as well as all printed versions of the document.

3.    A document "relating to" a given subject matter means a document or statement that relates to, constitutes, embodies, compromises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to, that subject matter.

4.    The terms "possession," "custody," and "control" include actual and constructive possession, custody, or control.  These requests include any document or thing that you possess or have the right to obtain from a third party upon demand, or which otherwise may be secured from any other source for the purpose of fully responding to these requests, including attorneys, accountants or other agents.

5.    The term "person" shall be construed to mean and include an individual, trust, estate, partnership, company, corporation, governmental body, or other entity, whether domestic or foreign.

6.    The terms "you" and "your" refer to Timothy Speiss, and any of his attorneys or agents.

7.    The terms "The Diversified Group" and "DGI" refer to The Diversified Group, Incorporated, a Delaware corporation, and its affiliated companies, including, but not limited to, Diversified Financial Corp., Diversified Capital Corp., Diversified Capital Leasing Corp., and Diversified Capital International Inc., and to employees, officers, and/or shareholders thereof, including, but not limited to, James Haber, Orrin Tilevitz, and Steven F. Jacoby.

8.    The term "Helios" refers to Helios Financial LLC, Helios Group LLC, Helios Advisory

2192276.1

LLC, and Helios Trading LLC, each located at 401 N. Michigan Avenue, Suite 2950,

Chicago, IL, or at 225 West Washington Street, Suite 2200, Chicago, IL, or at 950 Third

Avenue, 23rd Floor, NY, NY, and to Helios Group, Inc., a Delaware corporation, and all

employees, members, and/or partners of any of those entities, including, but not limited

to, Mox Tan, Phil Kampf, James Haber and Orrin Tilevitz.

9.     The term "Alpha" refers to Alpha Consultants, LLC, a Florida limited liability company;

Alpha Consultants, Inc., a Florida corporation; Alpha Strategic Management, Ltd., a

Florida limited partnership; and Alpha Strategic Management, LLC, a Florida limited

liability company; and all employees, members, and/or partners thereof, including, but not

limited to, Ivan J. Ross, Robert H. Fasulu, G. Felix Cua, Yoshiyuki Nobumoto, Ronald

Buesinger, Michael G. Leonard, and Donald S. Uderitz.

10.    The term "Refco" refers to Refco Capital Markets, Ltd., which has or had an office at 200

Liberty Street, 23rd Floor, New York, NY 10281, and to Refco Securities, LLC, which has

or had an office at One World Financial Center, 24th Floor, New York, NY 10281, and all

employees, members, and/or partners thereof, including, but not limited to, Thomas

Yorke, Elizabeth Jung, Cathleen Scappatura, Miriam, LaFuente, Jim Behrmann, Angie

Lee, Alex Vojvodich, Mathew Hoff, David Weaver, and Walter Peters.

11.    The term "Trilogy" refers to Trilogy Financial Products, Ltd.; Trilogy Investments, Ltd.;

and their related entities, including, but not limited to, any related entity which has or had

an office at 14 Athol Street, Douglas, Isle of Man, or at 5-11 St. Georges Street, Douglas,

Isle of Man; and all employees and/or partners thereof, including, but not limited to, Mox

Tan, Phil Kampf, James Haber, Orrin Tilevitz, and John Huber.

2192276.1

12.     The terms "Samuel Mahoney" and "Mahoney" refer to Samuel Mahoney, Martin
        Hawkes, John Hussey, Biosphere Finance, and/or Biosphere Holdings.

13.     The term "Carruth" refers to Carruth Associates LLC and Carruth Management LLC,
        which have or had an office at 116 Flanders Rd., Westborough, MA 01581, and all
        employees, members, and/or partners thereof, including, but not limited to, Robin
        Calkins, Michael Egan, Carolyn Fiddy, David Henry, Judy Irvin, Jim Reiss, Melissa
        Seaver, and Pat Shea.

14.     The term "Tequesta" refers to Tequesta Capital Advisors LP, Tequesta Fund LP, and their
        related entities, which have or had an office at 4270 S Decatur Blvd., Las Vegas, NV
        89103 and/or at 3801 PGA Blvd., Palm Beach Gardens, FL 33410, and all employees,
        members, and/or partners thereof, including, but not limited to, Ron Buesinger, Gary
        Helene, and Ivan Ross.

15.     The term "Proskauer Rose" refers to the law firm of Proskauer Rose, LLP, which has an
        office at One International Place, Boston, MA 02110-2600, and all employees and/or
        partners thereof, including, but not limited to, Ira Akselrad and Matthew Sabloff.

16.     The term "Brown & Wood" refers to the law firm of Brown & Wood and its successor in
        interest, Sidley Austin Brown & Wood (n/k/a Sidley Austin LLP), and all employees
        and/or partners thereof, including, but not limited to, R.J. Ruble, Jacob Amato, John
        Felkamp, Susan L. Sodano, Thomas Humphries, Paul Cringle, and Eric Haueter.

17.     The term "Lord Bissell" refers to the law firm of Lord Bissell & Brook, LLP, 111 South
        Wacker Drive, Chicago, IL 60606, and all employees and/or partners thereof, including,
        but not limited to, John Trustkowski, John Hughes, and Sergei Mytko.

2192276.1

18.  The term "BWM&S" refers to the law firm of Burke, Warren, McKay & Seritella, P.C., which has an office at 330 North Wabash Avenue, 22nd Floor, Chicago, Illinois 60611-3607, and all employees and/or partners thereof, including, but not limited to, Stephanie Denby.

19.  The term "Brown Raysman" refers to the law firm of Brown Raysman Millstein Felder & Steiner LLP, which has an office at 900 Third Avenue, New York, NY 10022-4728, and all employees and/or partners thereof, including, but not limited to, Thomas Levato.

20.  The term "Bryan Cave" refers to the law firm Bryan Cave, LLP, which has an office at 700 Thirteenth Street, N.W., Washington, DC 20005-3960, and all employees and/or partners thereof, including, but not limited to, John Barrie, Kathleen M. Gamcana, and Elizabeth Ann Smith.

21.  The term "Solomon and Weinberg" refers to the law firm of Solomon and Weinberg, located at 685 Third Avenue, New York, NY 10017, or at 900 Third Avenue, New York, NY 10022, and all employees and/or partners thereof, including, but not limited to, Craig H. Solomon and Mark Weinberg.

22.  The terms "BDO" and "BDO Seidman" refer to the accounting firm of BDO Seidman, LLP, and all employees and/or partners thereof, including, but not limited to, Charles Bee, Pam Packard, Larry Cohen, Michael Kerekes, Robert Greisman, Paul Shanbrom, Dennis Field, David Dimuzio, Dicker, Klausner, Dudzinsky, Luchs, Huntzinger, Puckett, Moorman, and Jones.

23.  The term "KPMG" includes both KPMG, LLP, a Delaware Limited Liability Partnership, and KPMG International, a Swiss association, and all employees and/or partners thereof,

including, but not limited to, Timothy Patrick Speiss, Stephen J. Spruck, Brent S. Lipschultz, Holly T. Belanger, Monica M. Odoy, Deborah A. Fields, Daniel J. Coburn, Rob Arthur, Robert Pritti, Leslie Kost, Steven Gremminger, Randall Bickham, Jeffrey Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Weisner, Mark Watson, Larry DeLap, David Greenberg, Carol Warley, Carl Hasting, Richard Rosenthal, and Brian Rivotto.

24.   The term "Grant Thornton" refers to the accounting firm of Grant Thornton, LLP, and all employees and/or partners thereof, including, but not limited to, Israel Press and Joseph Machara.

25.   The term "RSM McGladrey" refers to the accounting firm of RSM McGladrey, Inc., and all employees and/or partners thereof, including, but not limited to, Ronald G. Wainwright, Jr.

26.   The term "SOS" refers to the product known as "Short-Option Strategy" and all variants thereof, including, but not limited to, the Financial Derivatives Investment Strategy ("FDIS").

27.   The term "FDIS" refers to the product known as "Financial Derivatives Investment Strategy," also referred to as the "Diversified Strategy," the "Partnership Strategy," "Short-Option Strategy," "Partnership Option Strategy," "Digital Option Transaction," "Offsetting Option Transaction," and "Loss Generating Transaction."

28.   The term "Tax Shelter Products" refers to SOS, FDIS, and any other tax shelter product the same as or similar to those transactions identified in IRS Notice 2000-44.

29.   The term "FICA A Fund" refers to Fidelity International Currency Advisor A Fund LLC,

2192276.1

EIN 36-4381795.

30.  The term "Fidelity World" refers to Fidelity World Currency Advisor A Fund, LLC.

31.  The term "Egan" refers to Richard Egan and/or Maureen Egan, and any of their

consultants, advisors, agents, partners, or employees.

32.  The term "client-specific" means relating to a specific client or group of clients, or to any

other person or entity, identifiable by name(s) of Timothy Speiss and/or KPMG.

33.  The term "Tax Opinion Committee" means any committee assigned to review, or

responsible for reviewing, tax products including SOS and/or FDIS.

## INSTRUCTIONS

1.  If a document was, but no longer is, in your possession, custody or control, state:

a.  how the document was disposed of;

b.  the name, current address, and telephone number of the person who currently has

possession, custody or control over the document;

c.  the date of disposition;

d.  the name, current address, and telephone number of each person who authorized

said disposition or who had or has knowledge of said disposition.

2.  If a document cannot be located, describe with particularity the efforts made to locate the

document and the specific reason for its disappearance or unavailability.

3.  If a document has information on both sides, provide copies of both sides or make

available the original document.

4.  To the extent that any document is written both in English and another language,

provide a copy of the document written in English.

2192276.1

5.      If any document has been previously produced to the Internal Revenue Service ("IRS") in the course of any examination, the document should be produced with the same Bates number used in the production to the IRS.

6.      If any document has been previously produced to the Senate Permanent Subcommittee on Investigations ("PSI"), the document should be produced with the same Bates number used in the production to the PSI.

7.      For documents that have not been produced to the IRS or the PSI, please number them consecutively with a Bates-stamp identifier that is distinguishable from those used in the prior productions to the IRS and the PSI. We suggest you use Bates-stamp numbers beginning with the prefix "SPEISS".

8.      We request that the custodian of records for Timothy Speiss certify the documents requested pursuant to Rule 902(11) of the Federal Rules of Evidence and Section 1746 of Title 28 of the United States Code. A proposed certification is enclosed. Please forward the certification as soon as possible, although its execution should in no way delay your production of the requested documents by the subpoena's return date.

9.      If any document is withheld under any claim of privilege or for any reason, list such documents by supplying separately as to each such document the following information:

      a.      the date of the document, the type of document (e.g. letter, notebook, etc.), and the number of pages of which it consists;

      b.      the date on which the document came into your possession or control, if different from the date appearing on the document itself;

      c.      the name and title of the signer of the document (and if it was not signed, the

2192276.1

answer shall so state and shall give the name and title of the person who prepared it, if known, and if not known, shall so state);

d.    the name and title of each recipient or addressees of such document (whether specifically named therein or not);

e.    the present whereabouts of the document and the name and address of the custodian thereof;

f.    an indication that you claim privilege therefor with a citation to the statute, regulation or rule claimed to apply;

g.    a brief statement of the grounds on which the claim of privilege rests;

h.    a general statement of the subject matter; and

i.    the identity of each person (and his or her position) who received a copy of such document after the time of initial distribution.

All of the above is required so that the United States may have the factual basis to determine whether such documents are, in fact, privileged. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any statute or regulation.

10.    If a document in electronic form is password protected, the password protection is to be disabled and/or the password to overcome the password protection is also to be produced.

11.    The documents shall be produced as they are kept in the usual course of business and shall be organized and labeled to correspond with the separately-numbered request(s) to which they are responsive.

2192276.1

12.     Unless otherwise provided, these requests encompass any responsive document created at any time from January 1, 2000 to present.

## REQUESTS FOR PRODUCTION

The documents requested under this subpoena relate to your and/or KPMG's involvement in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or reporting of certain transactions, including, but not limited to, the design, development, marketing, promotion, implementation, opining on, and/or reporting of SOS and/or FDIS. In connection with this request, please provide or make available for our review and copying the following specific categories of documents in your possession, custody, or control:

### Identification of Current and Former Personnel

1.     All documents identifying the current address or last known address of all persons who participated in any way in the design of, development of, marketing of, promotion of, implementation of, opining on, and/or reporting of SOS and/or FDIS.

### Documents Relating to any IRS Promoter Investigation and to Document Retention

2.     All documents that you and/or KPMG produced to the Internal Revenue Service ("IRS") in the course of any IRS promoter investigation, to be produced in the same form in which they were produced to the IRS.

3.     All documents that you and/or KPMG received from the IRS in the course of any IRS promoter investigation.

4.     All transcripts memorializing any interviews conducted in the course of any IRS promoter investigation.

5.     All documents memorializing or relating to the document-retention policy of you and/or

2192276.1

KPMG, including, but not limited to, documents directing the destruction or transfer of

documents of you and/or KPMG.

### Generic Documents Relating to Tax Shelter Products

6.  All electronic mail to or from you and/or KPMG relating to SOS and/or FDIS, including,

    but not limited to, electronic mail to or from DGI, Helios, Alpha, Refco, Brown & Wood,

    Proskauer Rose, Lord Bissell, Bryan Cave, BWM&S, Brown Raysman, and Solomon and

    Weinberg.

7.  All internal KPMG electronic mail relating to SOS, FDIS, Trilogy, Mahoney, Helios,

    Refco, Alpha, and/or DGI.

8.  All notes relating to any conference or conference call concerning SOS and/or FDIS.

9.  All documents relating to any FDIS PowerPoint presentation forwarded to you and/or

    KPMG, including but not limited to, you and/or KPMG's review of any such FDIS

    PowerPoint presentation.

10. All documents relating to any draft opinion provided to you and/or KPMG and/or you

    and/or KPMG's comments on any such opinion, including, but not limited to, you and/or

    KPMG's questions and comments concerning any such opinion.

11. All documents relating to you and/or KPMG's revision or modification, or suggested

    revision or modification, of FDIS, including, but not limited to, the role of preferred

    stock.

12. All documents relating to you and/or KPMG's internal approval of FDIS by a Tax

    Opinion Committee.

13. All documents relating to the development of SOS and/or FDIS, including, but not

2192276.1

limited to, all form documents, standardized documents, templates, confidentiality agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft opinions, invoices, handwritten notes, and correspondence.

14. All documents relating to the promotion of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, PowerPoint presentations, marketing opinions, listing agreements, confidentiality agreements, engagement letters, training materials, outlines, pro forma tax returns, handwritten notes, and correspondence.

15. All documents relating to the marketing of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, PowerPoint presentations, marketing opinions, listing agreements, confidentiality agreements, engagement letters, training materials, outlines, pro forma tax returns, handwritten notes, and correspondence.

16. All documents relating to the implementation of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, confidentiality agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft opinions, invoices, handwritten notes, and correspondence.

17. All documents relating to the reporting of SOS and/or FDIS, including, but not limited to, all form documents, standardized documents, templates, confidentiality agreements, engagement letters, outlines, pro forma tax returns, closing binders, draft opinions, invoices, handwritten notes, and correspondence.

18. All documents generated by you and/or KPMG relating to the development, marketing, promotion, implementation, and/or reporting of SOS and/or FDIS.

19. All documents relating to the involvement of you and/or KPMG in SOS and/or FDIS,

2192276.1

including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

20.     All documents relating to the involvement of Helios in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, issuance of opinions regarding, implementation, and/or reporting of SOS and/or FDIS.

21.     All documents relating to the involvement of Alpha in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

22.     All documents relating to the involvement of Mahoney in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

23.     All documents relating to the involvement of DGI in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

24.     All documents relating to the involvement of Trilogy in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

25.     All documents relating to the involvement of Carruth in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

26.     All documents relating to the involvement of Tequesta in SOS and/or FDIS, including,

2192276.1

but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

27.  All documents relating to the involvement of Brown & Wood in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

28.  All documents relating to the involvement of Bryan Cave in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

29.  All documents relating to the involvement of Lord Bissell in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

30.  All documents relating to the involvement of BWM&S in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

31.  All documents relating to the involvement of Brown Raysman in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

32.  All documents relating to the involvement of Solomon and Weinberg in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS

2192276.1

and/or FDIS.

33.     All documents relating to the involvement of Proskauer Rose in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

34.     All documents relating to the involvement of KPMG in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

35.     All documents relating to the involvement of BDO in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

36.     All documents relating to the involvement of Grant Thornton in SOS and/or FDIS, including, but not limited to, all documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

37.     All documents relating to the involvement of Refco in SOS and/or FDIS, including, but not limited to, all documents relating the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS.

38.     To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were developed.

39.     To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be promoted, including all draft documents.

2192276.1

40.    To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be marketed, including all draft documents.

41.    To the extent not provided in response to requests 1 through 37, all documents relating to how SOS and/or FDIS were to be implemented, including all draft documents.

42.    To the extent not provided in response to requests 1 through 37, all documents relating to how opinions were to be issued for SOS and/or FDIS by Proskauer Rose, Brown & Wood, Lord Bissell, BWM&S, Brown Raysman, Bryan Cave, and/or any other entity.

43.    All documents discussing or referencing IRS Notice 99-59, Notice 2000-44, and/or the list maintenance requirements under 26 U.S.C. §6112.

44.    All documents relating to the potential or actual availability and/or willingness of any law firm and/or lawyer to write an opinion for the SOS and/or FDIS transactions, including, but not limited to, documents relating to the decision to have more than one law firm write an opinion.

45.    All documents relating to the proposed language of the opinions to be issued by Proskauer Rose, Brown & Wood, Lord Bissell, BWM&S, Brown Raysman, Bryan Cave, Solomon and Weinberg, and/or any other entity, for SOS and/or FDIS, including all drafts of the opinions.

46.    All documents relating to how client-representation letters were to be prepared for SOS and/or FDIS, including, but not limited to, any documents relating to the representations that were to be made by participants and drafts of the form representation letter(s).

47.    All documents relating to how SOS and/or FDIS were to be reported for federal and/or state tax purposes, including, but not limited to, the use of pro forma tax returns.

48. All documents relating to the steps for implementation of SOS and/or FDIS.

49. All documents, including draft documents, relating to the fees for SOS and/or FDIS, including documents relating to fee calculation and invoicing.

50. All documents, including all draft documents, relating to how Mahoney was to be paid, or to Mahoney's payment, with respect to SOS and/or FDIS, including, but not limited to, wire transfers, checks, account statements, employment contracts, loan agreements, and/or documents concerning forgiveness of debt.

51. To the extent not provided in response to requests 49 through 50 , all documents indicating how any person or other entity, including you and/or KPMG, was to be compensated, directly and/or indirectly, with respect to the development, promotion, marketing, implementation, opining on, and/or reporting of the SOS and/or FDIS transactions, including, but not limited to, any royalties, kickbacks, or any other form of compensation.

52. To the extent not provided in response to requests 49 through 51, all documents, including draft documents, relating to the fees and other compensation relating to SOS and/or FDIS, including, but not limited to, documents relating to you and/or KPMG's fees and other compensation, allocable bonuses to KMPG personnel, fee calculation, and invoicing.

### Client-Specific and Other Documents Relating to SOS and/or FDIS

53. All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of the SOS and/or FDIS transactions, including, but not limited to, you and/or KPMG's consulting agreements,

2192276.1

engagement letters, and documents relating thereto.

54.     All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through Grant Thornton, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

55.     All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through KPMG, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

56.     All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions that were promoted, sold, marketed, and/or implemented through BDO, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

57.     All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Proskauer Rose issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

58.     All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS

2192276.1

transactions for which Brown & Wood issued an opinion, including, but not limited to, those transactions which involved the individuals and entities identified in Appendix A.

59.    All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Bryan Cave issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

60.    All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Lord Bissell issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

61.    All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Solomon and Weinberg issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

62.    All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which BWM&S issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

63.    All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Brown Raysman issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

2192276.1

64.  All client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of SOS and/or FDIS transactions for which Timothy Speiss and/or KPMG issued an opinion, including, but not limited to, transactions involving the individuals and entities identified in Appendix A.

65.  To the extent not provided in response to requests 53 through 64 all client-specific documents relating to the development, marketing, promotion, implementation, issuance of opinions regarding, and/or reporting of all SOS and/or FDIS transactions, including, but not limited to, those transactions involving Trilogy, Mahoney, Egan, Carruth, Tequesta, and the individuals and entities identified in Appendix A.

66.  All opinions, including draft opinions, relating to the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

67.  All federal and state tax returns reporting any SOS and/or FDIS transaction, including, but not limited to, the returns for the transactions involving the individuals and entities identified in Appendix A.

68.  All notes taken by you and/or KPMG, including by its employees, officers, partners, members, and/or shareholders, or by third parties, at sales or promotional meetings for SOS and/or FDIS, including, but not limited to, those taken at meetings relating to transactions involving the individuals and entities identified in Appendix A.

69.  All outlines of proposed SOS and/or FDIS transactions, including, but not limited to, all documents entitled "Outline of Proposed Transaction."

2192276.1

70. All documents relating to the signing of any confidentiality agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

71. All documents relating to any engagement agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

72. All documents relating to any representation letters for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

73. All closing binders for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

74. All Operating Agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

75. All Contribution Agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to transactions involving the individuals and entities identified in Appendix A.

76. All master agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to the transactions involving the individuals and entities identified in Appendix A.

77. All due diligence documentation for the SOS and/or FDIS transactions, including, but

2192276.1

not limited to, those relating to the transactions involving the individuals and entities identified in Appendix A.

78. All credit support agreements for the SOS and/or FDIS transactions, including, but not limited to, those relating to the FDIS transactions involving the individuals and entities identified in Appendix A, and including any third-party guarantees relating to any of the individuals and entities identified in Appendix A.

79. All documents concerning, opining on, discussing, or addressing in any way, financial risk to participants in the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

80. All documents concerning, opining on, discussing, or addressing in any way, the probability of profit and actual profitability of the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

81. All documents concerning, opining on, discussing, or addressing in any way, the business purpose of the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

82. All documents relating to any exit interviews or feedback from any of the SOS and/or FDIS participants regarding the SOS and/or FDIS transactions, including, but not limited to, those relating to the SOS and/or FDIS transactions involving the individuals and entities identified in Appendix A.

2192276.1

83.   All documents concerning, opining on, discussing, or addressing in any way, the
      application of the step transaction doctrine to the SOS and/or FDIS transactions,
      including, but not limited to, those relating to the SOS and/or FDIS transactions involving
      the individuals and entities identified in Appendix A.

84.   All LLC agreements for Alpha, Helios, and the entities identified in Appendix A.

85.   All documents relating to the disposition of assets by any SOS and/or FDIS participant
      relating to any SOS and/or FDIS transaction, including, but not limited to, dispositions by
      Mahoney, Alpha, Helios, Refco, RSM McGladrey, and the individuals and entities
      identified in Appendix A.

86.   All documents relating to the initial investment of any partner in any entity identified in
      Appendix A.

87.   To the extent not provided in response to requests 1 through 86, all correspondence to or
      from you and/or KPMG that relates to any person or entity identified in Appendix A,
      and/or relates to SOS and/or FDIS, including, but not limited to, recommendations and
      referrals.

88.   To the extent not provided in response to requests 1 through 86, all correspondence to or
      from Brown & Wood that relates to any person or entity identified in Appendix A, and/or
      relates to SOS and/or FDIS.

89.   To the extent not provided in response to requests 1 through 86, all correspondence to or
      from Lord Bissell that relates to any person or entity identified in Appendix A, and/or
      relates to SOS and/or FDIS.

90.   To the extent not provided in response to requests 1 through 86, all correspondence to or

2192276.1

from Bryan Cave that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

91.    To the extent not provided in response to requests 1 through 86, all correspondence to or from Solomon and Weinberg that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

92.    To the extent not provided in response to requests 1 through 86, all correspondence to or from BWM&S that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

93.    To the extent not provided in response to requests 1 through 86, all correspondence to or from Brown Raysman that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

94.    To the extent not provided in response to requests 1 through 86, all correspondence to or from Proskauer Rose that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

95.    To the extent not provided in response to requests 1 through 86, all correspondence to or from KPMG that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

96.    To the extent not provided in response to requests 1 through 86, all correspondence to or from BDO that relates to any person or entity identified in Appendix A, and/or relates to SOS and/or FDIS.

97.    To the extent not provided in response to requests 1 through 86, all correspondence to or from Grant Thornton that relates to any person or entity identified in Appendix A, and/or

2192276.1

relates to SOS and/or FDIS.

98.   All complaints or petitions against RSM McGladrey, BDO, KPMG, Grant Thornton,

      Brown & Wood, Proskauer Rose, Lord Bissell, Bryan Cave, DGI, Helios, Alpha,

      Mahoney (see definition above), including amended complaints or petitions relating to

      SOS, FDIS, or other Tax Shelter Products, filed by any person or entity identified in

      Appendix A.

99.   To the extent not provided in response to requests 1 through 98, all records, documents,

      and materials created or maintained by you and/or KPMG during the years 2000 through

      2002 relating to the FICA A Fund transactions at issue in this case.


Dated: January 31, 2007



                              *Heather L. Richtarcsik*
                              HEATHER L. RICHTARCSIK
                              Trial Attorney, Tax Division
                              U.S. Department of Justice
                              P.O. Box 55, Ben Franklin Station
                              Washington, D.C. 20044-0055
                              Telephone: (202) 307-2822
                              Facsimile: (202) 514-5238
                              E-mail: heather.l.richtarcsik@usdoj.gov




2192276.1

# APPENDIX A

## <u>Name</u>

1.    2001 Equity Trading LLC

2.    Fidelity High Tech Advisor A Fund LLC

3.    Fidelity High Tech Index A Fund LLC

4.    Fidelity High Tech Option A Fund LLC

5.    Fidelity International Currency Advisor A Fund LLC

6.    Fidelity World Currency Advisor A Fund LLC

7.    Acajoux Equities LLC

8.    Acajoux Investments LLC

9.    Acajoux Trading LLC

10.   AD Global 2001 Fund LLC

11.   AFFCO Investments 2001 LLC

12.   Affco, LLC

13.   AHG Investments LLC

14.   AHG Trading LLC

15.   Akselrad, Harold

16.   Aldridge, David S.

17.   Alpine Group, Inc.

18.   AMJ Trading LLC

19.   AN Investments LLC

# APPENDIX A

20.     AN Trading LLC

21.     Anbar Investments LLC

22.     Anbar Trading LLC

23.     Anbar, Inc.

24.     Bennett, Phillip R.

25.     BET Trading LLC

26.     BFS Trading 2001 LLC

27.     BGH Trading LLC

28.     Buske, Thomas A.

29.     Butler, William

30.     Caputo, Edward G.

31.     CCP Trading LLC

32.     CF Trading LLC

33.     CFPT Investments LLC

34.     CFPT Investments LLC

35.     CGG Auto Trust

36.     CGK Trading LLC

37.     CGS Auto Trust

38.     Chadds Peak Investments LLC

39.     Cheris, Albert B.

2192715.1

# APPENDIX A

40.    Chester Investors LLC

41.    CHS Trading LLC

42.    Ciasulli, Robert G.

43.    Ciasulli, Ronald J.

44.    Ciccarello, Rudy

45.    Civello, Nelson

46.    CJT Trading LLC

47.    Cliffside Investments LLC

48.    Cole, Robert

49.    Corporex Investments LLC

50.    Corporex Realty & Investment Corp.

51.    Corporex Trading LLC

52.    Cowan Investments LLC

53.    Cowan, David

54.    Crawford, Reagan

55.    CSH Investments LLC

56.    CTN Trading LLC

57.    DC Trading LLC

58.    DJR Investments LLC

59.    DJR Trading LLC

# APPENDIX A

60.    DP Trading LLC

61.    DPT Trading LLC

62.    DRG Trading LLC

63.    DSG Trading LLC

64.    DTH Trading LLC

65.    DWT Investments LLC

66.    DWT Trading LLC

67.    Dziedzic, Stanley, J.

68.    Egan, Maureen

69.    Egan, Richard

70.    EGC Investments 2001 LLC

71.    EGC Trading LLC

72.    Elbaum, Steven S.

73.    Equity Trading 2001 Fund LLC

74.    Europa International, Inc

75.    Europa International, Inc.

76.    Europa Investments LLC

77.    Europa Trading LLC

78.    Francis, Joseph

79.    Francois, Curtis

2192715.1

# APPENDIX A

80.    FX Investments LLC

81.    Gabriel Trading LLC;

82.    Garvy, Robert

83.    Geewax, John J.

84.    Geewax, Terker & Co.

85.    Geewax, Terker & Company

86.    Geisecke, John

87.    GG Auto Trus

88.    Giffen, Catherine K.

89.    Ginsburg, Alan

90.    GN Investments LLC

91.    GN Trading LLC

92.    Gould, Suzanne Grossinger

93.    Grossinger Motor Corp., Inc.

94.    Grossinger, Caroline

95.    Grossinger, Garry

96.    Grossinger, Schiller

97.    Grossinger, Sharon

98.    Grossinger, Suzanne

99.    Grossprops Associates LLC

# APPENDIX A

100.  GT Investments 2001 LLC

101.  Gupta Investments LLC

102.  Gupta, D.R.

103.  Gupta, D.S.

104.  Gupta, Jai N.

105.  Gupta, Shasi A.

106.  Hechler, Robert L.

107.  Holland, David T.

108.  Holland, David T.

109.  Hoyt, Barry G.

110.  HWN Trading LLC

111.  Irrevocable Trust for Christopher J. Theis

112.  Irrevocable Trust for Dennis P. Theis

113.  Irrevocable Trust for Dennis W. Theis

114.  Irwin Grossinger Trust

115.  Jacob Trading LLC

116.  Jacqueline Trading LLC;

117.  Jarmel, Andrew M.

118.  JB Trading LLC

119.  JES Trading LLC

2192715.1

# APPENDIX A

120.    JHP Trading LLC

121.    JHT Investments LLC

122.    JHT Trading LLC

123.    JJG Trading LLC

124.    JLS Investments LLC

125.    JLS Trading LLC

126.    JMG Trading LLC

127.    JNG Trading LLC

128.    JRF Investments LLC

129.    JRF Trading LLC

130.    JSB Trading, Inc.

131.    JZ Trading LLC

132.    Kastin

133.    Kealakeva Investments LLC

134.    Kutler Investments LLC

135.    Kutler, Jon

136.    Laurelgrove Ltd.

137.    LG88 Trading LLC

138.    Lunt Realty Corp.

139.    Mastin

# APPENDIX A

140.    Maxin Corporation

141.    McNeill Family Partnership

142.    McNeill, John "Sandy"

143.    McNeill, Ronald "Ronnie"

144.    MCP Trading LLC

145.    MFP Equities LLC

146.    NDC Investments LLC

147.    NDC Trading LLC

148.    Nix, Harold W.

149.    NJR Trading LLC

150.    NPR Investments LLC

151.    NPR Investments LLC

152.    NPR Investments LLC

153.    Nussdorf, A.

154.    Nussdorf, G.

155.    Nussdorf, R.

156.    Nussdorfs, S.

157.    Paley, Douglas

158.    Paley, Steven

159.    Paley, William

# APPENDIX A

160. Palitz, Michael C.

161. Patterson, Charles C.

162. PCT Trading LLC

163. Perles, Steven R.

164. Pitt Des Moines, Inc.

165. Portillo, Richard

166. Powers Childrens Trust

167. Power, John

168. PT Trading LLC

169. RAG Investments LLC

170. RAG Trading LLC

171. RAS Investments 2001 LLC

172. RAS Trading 2001 LLC

173. RC Investments LLC

174. RC Trading, LLC

175. Reid, Daniel J.

176. RGC Investments LLC

177. RGC Trading LLC

178. RGW Investments LLC

179. RGW Trading LLC

# APPENDIX A

180. RJC Investments LLC

181. RJC Investments LLC

182. RJP Investments LLC

183. RJS Investments LLC

184. RJS Investments LLC

185. RJS Trading LLC

186. RM Equities LLC

187. RM Investments 2001 LLC

188. RM Portfolio LLC

189. RM Trading LLC

190. RMC Trading LLC

191. RN Investments LLC

192. RN Trading LLC

193. Roach, Nelson J.

194. RT Investments 2001 LLC

195. RT Trading LLC

196. RWC Investments LLC

197. RWC Trading LLC

198. Sabella, Richard J.

199. SAG Trading LLC

# APPENDIX A

200.  Samuel Trading LLC

201.  Schiller, Carolina Grossinger

202.  Schostak, Jerome

203.  Schut, Bragi F.

204.  Scommenga, Roger A.

205.  SE Trading 2001 LLC

206.  SEBFS Investments LLC

207.  SEBFS Investments LLC

208.  Sheridan Investments LLC

209.  Sheridan Trading 2001 LLC

210.  Siegel, David R.

211.  SJD Investments LLC

212.  SJD Trading LLC

213.  Slevin, James E.

214.  SM Equities LLC

215.  SM Investments LLC

216.  SM Portfolio LLC

217.  SM Trading LLC

218.  SN Investments LLC

219.  SN Trading LLC

# APPENDIX A

220.    Solomon, Craig

221.    SP Trading LLC

222.    SRP Trading LLC

223.    Stein, Keith

224.    Steven R. Perles, PC

225.    TAB Investments 2001 LLC

226.    TAB Trading LLC

227.    Tafeen Family trust

228.    Taylor, James

229.    Tenex Corp.

230.    Tenex Corporation

231.    Tenex Trading LLC

232.    Terker, Bruce E.

233.    TFT Investments 2001 LLC

234.    TFT Trading LLC

235.    Theis Investments LLC

236.    Theis Investments LLC

237.    Theis Investments LLC

238.    Theis Investments LLC

239.    Theis, James

2192715.1

# APPENDIX A

240.  Theis, Thomas J.

241.  Theis, William F. Sr.

242.  Theis, William F. Jr.

243.  Thomas, Paul

244.  TJT Trading LLC

245.  Tschetter, Ron

246.  Tucker, Keith A.

247.  Wainwright, Ron

248.  WFT Investments LLC

249.  WFT Trading LLC

250.  WFTJR Trading LLC

251.  WFTSR Trading LLC

252.  Wolff Family Trust

253.  WPB Trading LLC

254.  Zeretksy, Jane

Exhibit C

**M E M O R A N D U M**
**Via Email**

TO:        Ira Akselrad, Esq.               DATE:        January 2, 2002

FROM:      James Haber

---

Below is a list of tax opinions we propose to be prepared by your firm and proposed compensation for such preparation:

|     | Client Name | Opinion Type | Notes |
|-----|-------------|--------------|-------|
| 1.  | Keith Stein | Standard Partnership | Same LLC as Akselrad |
| 2.  | Harold Akselrad | Standard Partnership | Same LLC as Stein |
| 3.  | Richard Sabella | Standard Partnership | |
| 4.  | Douglas Paley | Standard Partnership | |
| 5.  | William Paley | Standard Partnership | |
| 6.  | Steven Paley | Standard Partnership | Same LLC as Zaretsky |
| 7.  | Jane Zaretsky | Standard Partnership | Same LLC as Steven Paley |
| 8.  | Ronald Ciasulli | Standard Partnership | Will be paid directly by client ($25,000) |
| 9.  | Corporex | Standard Partnership | Principal is William Butler |
| 10. | William Butler | Basis Only – Sec 351 Exchange | |
| 11. | Joseph Francis | Standard Partnership | |
| 12. | Richard Portillo | Standard Partnership | |
| 13. | Daniel Reid | Standard Partnership | |
| 14. | Robert Cole | Standard Partnership | |
| 15. | Ronald McNeill | Standard Partnership | |
| 16. | John "Sandy" McNeill | Standard Partnership | |
| 17. | Glenn Nussdorf | Standard Partnership | ]                **Revision** |
| 18. | Ruth Nussdorf | Standard Partnership | ]  One Family   **$150,000 to be paid** |
| 19. | Arlene Nussdorf | Standard Partnership | ]                **direct by client** |
| 20. | Stephen Nussdorf | Standard Partnership | ] |
| 21. | Richard & Maureen Egan | Stock Dribble | |
| 22. | Ronnie McNeill | Stock Dribble | |
| 23. | John "Sandy" McNeill | Stock Dribble | |
| 24. | Alpine | CFC | |

**DGI 78379**

| 25. | Pitt Des Moines | CFC | |
| 26. | Steven Perles | CFC & Basis (Sec. 351 Exchange) | |
| 27. | Craig Solomon | CFC & Basis (Sec. 351 Exchange) | |
| 28. | Jon Kutler | Standard Partnership | (Already in the works) |

## Summary

20 Standard Partnership Opinions (including Kutler)
  1 Basis only
  3 Stock Dribble
  2 CFC
  <u>2</u> CFC & Basis Combo.
<u>28 Total Opinions</u>

19 Clients [Paley Family, Nussdorf, Corporex/Butler counted as one, McNeill's counted as two (not 4)].

Out of the 19 clients 4 are accommodation clients (Stein, Akselrad, Sabella & Solomon).

## Proposed Fees

### *Paid by Client Direct*

| | | |
|---|---|---|
| Kutler | $ | 200,000 |
| Ron Ciasulli | | 25,000 |
| **Nussdorf (4 opinions)** | | **150,000 - revision** |

### *Paid By DGI*

| | | |
|---|---|---|
| Solomon | | 50,000 |
| Sabella / Stein | | <u>70,000</u> |
| Subtotal | $ | **495,000** |
| For All Others (14 clients, 23 opinions) | | <u>**900,000**</u> |
| TOTAL | | $<u>1,395,000</u> |

**DGI 78380**