UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| **FIDELITY INTERNATIONAL CURRENCY** ) | |
| **ADVISOR A FUND, LLC,** ) | |
| by the Tax Matters Partner, ) | |
| ) | Civil No. |
| Plaintiff, ) | 05-40151-FDS |
| ) | 06-40130-FDS |
| v. ) | |
| ) | |
| **UNITED STATES of AMERICA,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND MEANINGFUL ANSWERS TO INTERROGATORIES**

**SAYLOR, J.**

This is an action challenging the adjustment of a partnership tax return by the Internal Revenue Service. Plaintiff Fidelity International Currency Advisor A Fund, LLC, is a limited liability company organized under Delaware law. Richard J. Egan is the Tax Matters Partner for plaintiff within the meaning of 26 U.S.C. § 6231(a).

Plaintiff timely filed a U.S. Return of Partnership Income (Form 1065) with the IRS for the 2001 tax year. On April 6, 2005, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") with respect to that return. In substance, the IRS determined that plaintiff's tax liabilities for 2001 were understated by more than $62 million. Plaintiff deposited the disputed amount with the United States Treasury and filed a thirteen-count complaint seeking

readjustment of the disputed partnership items and a return of the deposited amount.[1]

## I.   **<u>Background</u>**

The matter is presently in the discovery stage.  The IRS has taken the position that the plaintiff should not be recognized as a partnership for tax purposes and that the transactions at issue, which created large losses that were used to shelter income, were sham transactions without any economic substance.  It further contends that plaintiff participated in an essentially pre-packaged tax shelter that was developed, promoted, or sold by multiple entities, including accounting firms (e.g., KPMG, BDO Seidman, RSM McGladrey, and Grant Thornton), law firms (e.g., Proskauer Rose, Brown & Wood, Lord Bissell, and Bryan Cave), and other entities, and that was sold in substantially identical form to more than 50 other clients.

On March 5, 2007, plaintiff filed a Motion to Compel Production of Documents and Meaningful Answers to Interrogatories.  In substance, plaintiff seeks to compel the government to produce the following discovery:

1.   An interrogatory response and documents relating to the determination by the IRS that the transaction in this case is the same as or substantially similar to a transaction described in IRS Notice 2000-44 (Interrogatory 3 and Request for Production 15);

2.   Documents maintained by the IRS in connection with *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975) (Request for Production 21);

3.   Documents concerning whether KPMG was required to register any "Tax

---

[1] In June 2006, plaintiff filed a similar action for the tax year 2002.  The two matters were consolidated in September 2006.

    Strategy" and the tax treatment, economic substance, or reporting requirements of any "Tax Strategy" ("Tax Strategy" being a defined term) (Requests for Production 31 and 32);

4. Interrogatory responses and documents supporting various factual assertions stated by counsel for the government at the November 14, 2006 status conference (Interrogatories 15-22 and Requests for Production 44-51); and

5. Documents relating to various unrelated individuals or entities listed in Appendix A to subpoenas issued by the government to various law firms, accounting firms, and others (Requests for Production 10 and 43).[2]

## II. Analysis

### A. Discovery Concerning the Determination by the IRS That the Transaction Was Similar to That Described in IRS Notice 2000-44

Plaintiff first seeks to compel the United States to identify and produce all documents upon which the Commissioner relied on in his determination in the FPAA that "this case involves a transaction that is the same or substantially similar to a transaction described in Notice 2000-44."

According to the government, it has produced "all factual documents in the administrative file concerning the underlying transactions." Gov't Mem. at 6. It objects, however, to the production of documents containing IRS internal discussions, analyses, or conclusions on the grounds that they are irrelevant and protected by the deliberative process privilege.

As an initial matter, the relevance of the documents is dubious at best. The internal

---

[2] In the alternative, plaintiff asks the Court to preclude the government from introducing evidence relating to those taxpayers under Fed. R. Evid. 403.

decision-making process at the IRS that led to the FPAA was apparently entirely non-public. There is no evidence, or suggestion, that plaintiff or any of its attorneys, accountants, or other advisors were aware of the internal deliberations of the IRS, or relied on them in any way. Nor is there is any claim of governmental misconduct or malfeasance. And this Court is required to determine the legal issues in this case *de novo*; it is not reviewing the decision of the IRS for abuse of discretion or under an "arbitrary and capricious" standard. *See, e.g., TIFD III-E Inc. v. United States*, 342 F. Supp. 2d 94, 108 (D. Conn. 2004) (court is to review plaintiff's "tax liability de novo, ignoring the factual finding and legal analysis of the Commissioner of Internal Revenue"), *rev'd on other grounds*, 459 F.3d 220 (Fed. Cir. 2006). Accordingly, discovery concerning the administrative processes at the IRS that resulted in the challenged decision is not likely to lead to the production of admissible evidence. *See, e.g., Detroit Screwmatic Co. v. United States*, 49 F.R.D. 77 (S.D. N.Y. 1970).

In any event, the information is protected by the deliberative process privilege.[3] The deliberative process privilege is intended to protect the integrity of the decision-making process within a government agency. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). To qualify for the privilege, a document must be (1) predecisional, that is, "antecedent to the

---

[3] Defendant contends that the government did not properly invoke the deliberative process privilege, on the grounds (1) that the privilege was not asserted by the head of the agency (i.e., the Commissioner of the IRS) and (2) that the required declaration or affidavit was submitted in response to a motion to compel, not at the time the government responded to the discovery request. See *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980). As to the former point, the Court finds nothing improper in the delegation of the authority of the Commissioner to the Assistant Chief Counsel, who is a relatively senior and high-ranking official of the agency. *See, e.g., Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1308 (Fed. Cir. 2006). As to the latter, the Court concludes that it would be unduly burdensome and impractical—and contrary to the spirit of cooperative discovery—to require a formal assertion of the privilege (with a supporting declaration or affidavit) in response to a mere discovery request, before issues of relevance and scope have even been discussed among the parties, much less resolved. *See Pacific Gas & Elec. v. United States*, 71 Fed. Cl. 205, 209 & n.3 (June 21, 2006).

adoption of agency policy," and (2) deliberative, that is, actually "related to the process by which policies are formulated." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884-85 (1st Cir. 1995); *see Providence Journal Co. v. U.S. Dept. of the Army*, 981 F.2d 552, 557 (1st Cir. 1992) (FOIA request).

> Even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic. The privilege is a qualified one, and is not absolute. Thus, in determining whether to honor an assertion of the privilege, a court must weigh competing interests.

*Texaco Puerto Rico, Inc.*, 60 F.3d at 885 (citations and internal quotations omitted).

Here, the government has submitted a detailed declaration from Margo Stevens, Assistant Chief Counsel (Disclosure and Privacy Law) of the IRS, who has been delegated authority by the Commissioner of the IRS to claim deliberative process privilege in this matter. The declaration identifies, and describes in some detail, thirty separate items as to which the privilege is claimed, all of which appear to be internal IRS communications, notes, and workpapers containing recommendations, analyses, and conclusions of IRS personnel. The declaration is plainly sufficient, under the circumstances, to establish the existence of the privilege, at least on a prima facie basis.

The Court next turns to the question of the existence of competing interests favoring disclosure. If any exist, they are not obvious. Again, there is no claim or suggestion that the examination process lacked integrity, or that the IRS acted improperly or illegally in any way. Accordingly, the claim of deliberative process privilege will be upheld, and the motion to compel disclosure as to these items will be denied.

B.     **Discovery Concerning *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975)**

Plaintiff next seeks "[a]ll pleadings, records, documents, and materials maintained by the IRS in connection with *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), including, but not limited to, all documents previously produced by the Government in any other proceeding concerning this subject."

According to plaintiff, it reasonably relied upon the IRS's position in *Helmer* (which was adopted by the Tax Court in that case) in structuring its transactions. (In 2003, the IRS adopted a regulation expressly stating that it was no longer following *Helmer* and that the new position would apply retroactively. *See* Treas. Reg. § 1.752-6.).

Even assuming the factual predicate—that plaintiff reasonably relied on the IRS's position in *Helmer*—the Court is unable to see how the internal records of the IRS concerning that decision are relevant to this litigation. Whether *Helmer* is good law or bad, and whether the 2003 regulation is valid or invalid, in this context, at least, the internal discussions of the IRS are irrelevant. Furthermore, plaintiff could not possibly have relied upon internal IRS documents when structuring its affairs. The proposed discovery is therefore irrelevant and the motion to compel those items will be denied.

C.     **Discovery Concerning Whether KPMG Was Required to Register Any "Tax Strategy"**

Plaintiff next seeks to compel interrogatory responses and the production of documents concerning whether "KPMG was required to register any Tax Strategy."[4]

---

[4] Plaintiff has defined "Tax Strategy" for these purposes as "BLIPS (or Bond Linked Issue Premium Structure), FDIS [Financial Derivatives Investment Strategy], FOCUS [Family Office Customized Partnerships], and SOS [Short Option Strategy], either generally as a non-taxpayer specific strategy, or as a strategy engaged in by a specific taxpayer."

In substance, plaintiff contends that "the views of the IRS experts regarding the proper reporting and treatment [of plaintiff's and other taxpayers' similar transactions] [are] directly relevant to both the underlying merits of the transaction as well as the IRS's assertion that penalties should apply." (Plaintiff's Mem. at 18). It further contends (1) that the government failed to describe privileged documents with sufficient particularity, (2) that responsive documents can be produced under an exception to 26 U.S.C. § 6103 or in redacted form, and (3) that the deliberative process privilege has not been properly invoked and has been waived.

Again, the Court has difficulty understanding the relevance of internal deliberations and conclusions at the IRS concerning the disclosure or reporting obligations of KPMG. Whether KPMG was required to register any "Tax Strategy" is a legal conclusion. Regardless of what the IRS may have concluded, its internal deliberations and conclusions do not appear to be relevant to this case. In that respect, the motion to compel will be denied. The Court therefore need not reach any privilege issue that may be presented.

### D.    **Discovery Concerning Factual Assertions Made by Counsel at the November 2006 Status Conference**

Plaintiff next seeks to compel interrogatory responses and the production of documents as to certain factual allegations or statements made by counsel for the government at the status conference in this matter on November 21, 2006. The government originally claimed work-product protection as to these items. It now states, however, that it has provided the requested information to plaintiff, in the form of motion papers filed in the Southern District of New York with extensive annotations. These requests accordingly appear to be moot.

### E. Discovery Concerning Individuals and Entities Listed in Appendix A to Government Subpoenas

Finally, plaintiff seeks to compel the production of "all documents collected, created, or maintained by the IRS relating to the individuals and entities listed on the Government's . . . Appendix A attached to multiple subpoenas issued by the Government." Plaintiff's Mem. at 5.  There are more than 200 such individuals and entities.  Among other things, this request would require the IRS to produce the tax returns of all of the named taxpayers.

Plaintiff contends that the requested documents are not relevant to this proceeding.  It argues, however, that because the government is obtaining discovery of the tax and financial affairs of other individuals in order to show a pattern of similar or identical activity by tax shelter promoters, advisors, and others, the requested information is necessary in order to obtain a more complete picture and for possible use as rebuttal evidence.  The government objects to the request, principally on the ground that the information is protected from disclosure under 26 U.S.C. § 6103(h)(4)(B).

It is certainly true that the government has sought, and obtained, discovery from various accounting firms, law firms, and other entities concerning other taxpayers.  The government contends, in essence, that such evidence is relevant to show that the transactions at issue in this case did not have economic substance and were part of a pattern of abusive behavior.  Although the Court has made no conclusions as to the relevance of the information at trial, it has generally permitted such discovery to take place under the broader standards of Fed. R. Civ. P. 26.  It is also true (or soon likely to become true) that the discovery produced by the third-party entities

includes tax returns prepared for other taxpayers.

In short, the actions of third-party entities who dealt with other taxpayers *may* be relevant in ascertaining the factual issues in this case. As a general matter, however, the actions of those other taxpayers—for example, how they reported their own transactions on tax returns filed with the IRS—are not relevant to the issues in this case. Nonetheless, the tax returns and return information of other taxpayers may be relevant, not as evidence of the actions or intentions of the taxpayers themselves, but as evidence of a pattern of identical or similar activity. To state a hypothetical example, if the government sought to prove that taxpayer X had purchased a pre-packaged tax shelter and that it was identical in all respects to the structure at issue here, the tax returns of X conceivably might be relevant to show the structure and nature of the transactions and their similarity to the present case. Alternatively, those returns might be relevant to show that the transactions were in fact *not* similar, and therefore to undercut the government's case.

If the documents are potentially relevant, and therefore discoverable, the Court must next consider whether the information at issue is subject to the protections of 26 U.S.C. § 6103. Under § 6103(h)(4)(B), a third-party taxpayer's tax returns and return information may be disclosed only "if the treatment of an item reflected on such [third-party's] return is *directly related* to the resolution of an issue in the proceeding." (emphasis added). Whether a particular item is "directly related" is necessarily fact-specific. Furthermore, even where that standard is satisfied, the Court may find it appropriate to reduce the burden of discovery and to protect the legitimate privacy interests of the relevant taxpayer. Thus, the Court may want to consider whether the information has been obtained or is obtainable from other sources (e.g., the files of an accounting firm) and whether the information should be redacted or filed under seal or otherwise

protected from undue disclosure.

Accordingly, the Court will not grant the motion in the abstract, without the benefit of a specific factual context. While it is possible that a particular item could be relevant (and "directly related" under § 6103), and that its production in discovery might be warranted, the Court will evaluate each such request on an item-by-item basis. The Court will therefore deny the motion to compel as to records of other taxpayers maintained by the IRS, without prejudice to its renewal as to one or more specific items upon a showing of likely relevance and direct relationship to the present dispute, and with due regard for burden involved and the privacy interests of the affected taxpayer(s).

### III.   Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Production of Documents and Meaningful Answers to Interrogatories is DENIED. The denial is without prejudice to the extent set forth in this memorandum.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 4, 2007