UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 05-40151 and 06-40130 |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR EXTENSION OF TIME TO SUBMIT
EXPERT REPORTS AND REBUTTAL REPORTS AND TO CONDUCT DISCOVERY**

This memorandum is in support of the United States' motion for a sixty day extension of the tentative deadlines the Court set for submission of expert reports and rebuttal reports, and for a sixty day enlargement of the discovery deadline.[1] As detailed herein, there is good cause for at least a sixty day enlargement of the current discovery deadlines, the earliest of which is June 8 for the exchange of expert reports, particularly in light of the massive quantity of documents in issue and the massive quantity of essential documents which are still in the process of being produced.[2] It is essential for the United States and its experts to have access to the documents

---

[1] If this motion is allowed, expert reports would be due on August 7, 2007, rebuttal reports would be due on September 11, 2007, and the discovery deadline would be November 27, 2007.

[2] The United States first sought the plaintiff's assent to a 30-day extension. Since then, however, the United States has reconsidered its request in light of our review of the information that still has not been produced to us and, in particular, our continuing difficulty in obtaining essential documents from various promoters which are critical to our experts' analyses. As a result, we believe a sixty-day extension is more appropriate and is yet still consistent with the

(continued...)

which many of the core promoters still have not produced.

While the plaintiff opposes this motion, it cannot make a credible claim of prejudice. Given the importance of the documents yet to be produced, it is imperative for the search for the truth and presumably would benefit both parties to have access to the essential documents. Indeed the plaintiff relies heavily on "advice" from KPMG, and KPMG has just produced thousands of documents which are only now being provided to the experts. Similarly, the plaintiff engaged Refco Capital Markets as its counterparty to the transactions at issue, and Refco's production is in its early stages.

## INTRODUCTION

The extensions of time sought by the United States are necessary because, despite timely and repeated demands for documents in this case, there are a number of central promoters who have not yet produced any documents, not sufficiently completed their productions, and/or are asserting frivolous claims of privilege. Those central promoters include The Diversified Group Incorporated ("DGI"), Refco Capital Markets ("Refco"), RSM McGladrey (RSM"), Bryan Cave, Brown Raysman, BDO Seidman ("BDO"), and Grant Thornton. In addition, KPMG just recently produced 147,538 pages of additional documents which are still in the process of being reviewed. The requested extension would allow the Court to address DGI's claims of privilege, claims which the United States contends are frivolous and void under the crime-fraud exception. It would also allow the parties to continue their attempts to obtain essential documents from some of the central figures in this case who have not yet produced them. In turn, those documents

---

²(...continued)
Court's desire to hold the parties' "feet to the fire."

would be provided to the various experts in this case for use in their analyses and expert reports and would also assist counsel in determining what follow-up discovery should be conducted.

**Refco**

The documents Refco has agreed to but has not yet produced are highly relevant and absolutely essential for the experts to have before they submit their reports. Refco was the counterparty to Fidelity International's option trades. The transaction at issue in this case called for the taxpayer to engage in twelve initial options trades with a specific sequence and timing. Each of the opening positions was ultimately terminated before maturity through either a written cancellation or by entering into a perfectly offsetting contract with Refco at a later date. Examples of documents that are essential for the experts to have before they submit their reports are Refco's computations of the bid/ask-spread, margin requirements, and probabilities, and Refco's so-called deal sheets. Unfortunately, Refco's bankruptcy has significantly delayed its production, which is in its early stages. Due to Refco's bankruptcy, its hard-copy and electronic documents are in storage. It is the United States' understanding based on discussions with Refco that there are 60,000 boxes of documents in storage and only a small portion of those boxes have been indexed, meaning that even Refco does not know what is in most of those boxes. Given the enormous task of searching those boxes and the likelihood that it will not complete it any time soon, Refco has agreed to search its electronic records for responsive documents. Even to do that, however, Refco must retrieve computer-storage devices from its storage facility. It is purportedly in the process of doing so. In addition, Refco now has limited resources, including limited employees, to conduct searches and respond to the United States' subpoena in this matter. Its limited staff is also purportedly working on numerous bankruptcy-related matters. The United

States has assisted and has offered to continue to assist Refco in its document search. The United States planned to file along with this motion a letter from Refco and to the Court setting forth the difficulties that Refco has faced in producing documents in this case. However, that letter has not been completed and this motion is being filed without the benefit of such a letter.

**Accounting Firms**

Each of the four subpoenaed accounting firms still owe essential documents. RSM has not even begun its production. The Court recently ordered RSM to produce documents, but it has not yet done so.[3] As described in the United States' motion to compel RSM's production of documents, the United States has received no documents from RSM in response to a subpoena served on October 23, 2006. As further described in the motion to compel and supporting papers, RSM was involved in the design of the FDIS product. It was also became directly involved with the Fidelity International transaction and the preparation of Richard and Maureen Egan's 2001 Form 1040, after Egan fired KPMG because KPMG required a disclosure of the transaction at issue. RSM then also prepared and signed Egan's 2002 U.S. Individual Income Tax Return and the 2002 Partnership Return for Fidelity International Currency Advisor A Fund's 2002 tax returns at issue. Because RSM is a central promoter and a fact witness in this case, it's production of documents should take place before the expert reports are due, and the experts should have sufficient time to review those documents in preparation of their reports.

In addition to other recent productions, KPMG has also recently produced, on April 10,

---

[3] Some of the documents to be produced by RSM will be subject to a protective order and addendum which the United States and RSM are negotiating. RSM informed the United States on May 14, 2007 that it expects to complete negotiations by the close of business on May 18, 2007, though it is uncertain that negotiations will result in an agreement.

2007, nine boxes of paper documents. It followed with more than one thousand pages of documents on April 20, 2007. These supplemental productions purportedly relate to KPMG's relationship with Singer & Friedlander through its Isle of Man subsidiary. They also supposedly relate to KPMG's joint-venture arrangements to co-promote structured cross-border tax products with DGI, Helios Financial, and/or Trilogy Financial Products. Given the central role of these promoters in the FDIS product and the international cross-border nature of the products, the United States has good cause for a sixty day enlargement of time in order to allow its experts to review these recent productions from KPMG.

**Law Firms**

Two law firms possessing essential documents are also still in the early stages of document production. Brown Raysman played a central role in the implementation of all of the FDIS transactions, including Egan's. While it has begun voluntarily complying with the documents subpoena which was served on October 25, 2006, it purportedly still has not yet begun its search for electronic documents, including emails. Nor has it produced a privilege log identifying the documents that have been withheld.

Bryan Cave, also a central player, has not yet begun its production in response to the United States' October 24, 2006 subpoena. It has represented that it will soon begin its document production subject to a protective order that has yet to be negotiated.

**DGI**

On March 5, 2007, the United States filed in the Southern District of New York a Motion to Compel Production of Documents of DGI, one of the promoters of the tax shelter at issue here, in *United States of America v. The Diversified Group Incorporated*, M8-85 (Part 1). That motion

sought to compel DGI to produce 437 documents listed on an updated privilege log with respect to which it has asserted claims of attorney-client and/or common-interest privilege.  At a hearing on May 1, 2007, Judge Griesa transferred the case to this court.[4]  The United States' motion to compel DGI to produce documents is fully briefed.  As detailed therein, not only are DGI's privilege claims frivolous, but they are also void under the crime-fraud exception.  DGI has represented that at least 22 of the 437 documents listed on its privilege log involve Richard Egan  Given the critical role played by DGI, which has been well-briefed in this case, there is further support for a sixty day enlargement of the discovery deadlines.

## ARGUMENT

Pursuant to Rule 6(b)(1) of the Federal Rules of Civil Procedure, the Court "for cause shown" may at any time in its discretion with our without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed.  Here, the record shows that there is good cause for a sixty (60) day enlargement of the current discovery deadlines, including, in particular, the upcoming June 8, 2007 deadline for exchanging expert reports.

As the Court noted in December 2006, the current deadlines were "somewhat arbitrary," but based, in part, upon the United States' representation that this was a complex case.[5]  The

---

[4] In addition to the Motion to Compel DGI, on April 30, 2007, the United States filed in the Southern District of New York an opposition to a motion to quash a subpoena issued to Signature Bank for the personal account records of Haber, the president and director of DGI, in *Haber v. United States of America*, M29 (Part 1).  That motion is still pending in the Southern District of New York.

[5] On December 19, 2006, the parties submitted a joint statement in which each party proposed certain discovery deadlines.  At that time, the United States proposed a due date for expert reports of July 20, 2007, a due date for rebuttal reports on August 17, 2007, and a

(continued...)

complexity is even clearer now than it was then.  The United States has since uncovered substantial evidence that Richard Egan's FDIS transaction is one of 58 nearly identical "cookie-cutter" transactions.  It has further uncovered substantial evidence that the purported foreign partners in all of these transactions were sham partners.  It further appears that the difficulties in obtaining production from some of these promoters may not be mere coincidence since they do appear to raising many of the same frivolous arguments.

As recognized by the Court numerous times, this case is complex and requires the United States to seek documents and other information from a slew of third parties, most of which have been less than eager to help the United States in the development of its case and many of whom have interests that are directly contrary to those of the United States.  The United States has been

---

[5](...continued)
discovery deadline of November 16, 2007.  The plaintiff proposed a due date for expert reports of April 27, 2007, a due date for rebuttal reports of May 25, 2007, and a discovery deadline of July 13, 2007.  In setting the schedule, the Court stated as follows (p.26, l.15-p.27, l.13):

> All right.  I'm going to order that the expert reports be exchanged by Friday, June 8, 2007, and that rebuttal reports be exchanged by the following Friday, July -- I'm sorry -- July 13th, which is five weeks later.  And I'm going to set a discovery cutoff of September 28, 2007. Now, it is the rare case, anything that's more sophisticated than a slip and fall at the post office, the parties start filing motions a week before the discovery cutoff saying that they need additional discovery.  All I'm going to say is these deadlines are somewhat arbitrary.  They simply reflect my interest in trying to have the case on track for trial at the end of 2007, or the beginning of 2008, which is what I would like to do.  And I want to continue to meet with the parties on a relatively frequent basis and see how all of this evolves.  I have no idea to what extent that that's fair or unfair, or realistic or unrealistic, at this point.  I do want to hold people's feet to the fire to get the case done, to have people set priorities, to focus on what they think is important, at the risk of perhaps something less than total perfection, and recognizing particularly with a bench trial that some loose issues can be resolved at the trial, and we don't have to have perfect discovery, while at the same time being relatively generous to the government's interest in developing what they contend is an extremely complex record.

working diligently to resolve discovery issues with numerous third parties and continues to do so. The process of negotiation with third parties is sometimes extremely tedious and can take much longer than originally anticipated. For example, as set forth in its Status Report Regarding the Addenda to the BDO Seidman and RSM McGladrey Protective Orders, filed on May 15, 2007, despite repeated best efforts, the United States has still not been able to finalize an addenda to the stipulated protective orders with BDO and Grant Thornton, and in the case of RSM, has not yet finalized even a protective order. The United States has not been delaying this case and, in fact, has entered into numerous protective orders with third parties in an attempt to facilitate the production of documents from those third parties.

    The United States not only has good cause for the requested sixty day enlargement of the discovery limits, but it would be fundamentally unfair to the United States if it had to submit reports from its experts without giving those experts the benefit of crucial information that the United States has not yet been able to obtain from third parties. Moreover, in order for the expert reports to assist the Court in the way that they should, it is necessary for the experts to have the opportunity to see as many relevant documents as possible. Finally, the expert reports will also assist counsel in determining what follow-up discovery should be conducted in this case.

## CONCLUSION

The United States' Motion for Extension of Time to Submit Expert Reports and Rebuttal Reports and to Conduct Discovery should be granted.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. RICHTARCSIK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone: (202) 307-6561
Facsimile:  (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov
         barry.e.reiferson@usdoj.gov
         heather.l.richtarcsik@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on May 17, 2007.
/s/ Heather L. Richtarcsik