## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**FIDELITY INTERNATIONAL CURRENCY** )
**ADVISOR A FUND, LLC,**                )
**by the Tax Matters Partner,**         )
                                        )     **Civil No.**
            **Plaintiff,**              )     **05-40151-FDS**
                                        )     **06-40130-FDS**
            **v.**                      )
                                        )
**UNITED STATES of AMERICA,**           )
                                        )
            **Defendant.**              )
                                        )
_____

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR ISSUANCE OF LETTERS
## ROGATORY REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE

**SAYLOR, J.**

This is an action challenging the adjustment of a partnership tax return by the Internal

Revenue Service.  Plaintiff Fidelity International Currency Advisor A Fund, LLC, is a limited

liability company organized under Delaware law.  Richard J. Egan is the Tax Matters Partner for

plaintiff within the meaning of 26 U.S.C. § 6231(a).

Plaintiff timely filed a U.S. Return of Partnership Income (Form 1065) with the IRS for

the 2001 tax year.  On April 6, 2005, the IRS issued a Notice of Final Partnership Administrative

Adjustment ("FPAA") with respect to that return.  In substance, the IRS determined that

plaintiff's tax liabilities for 2001 were understated by more than $62 million.  Plaintiff deposited

the disputed amount with the United States Treasury and filed a thirteen-count complaint seeking

readjustment of the disputed partnership items and a return of the deposited amount.[1]

The IRS has taken the position that the plaintiff should not be recognized as a partnership for tax purposes and that the transactions at issue, which created large losses that were used to shelter income, were sham transactions without any economic substance. It further contends that plaintiff participated in an essentially pre-packaged tax shelter that was developed, promoted, or sold by multiple entities, including accounting firms, law firms, and other entities, and that was sold in substantially identical form to more than 50 other clients.

## I.    Background

On April 4, 2007, the United States moved for the issuance of letters rogatory requesting assistance from the appropriate judicial authorities of Ireland and the Isle of Man. One letter rogatory requests Irish authorities to compel the appearance of Samuel Mahoney, Martin Hawkes, and John Hussey to produce documents and give testimony under oath. The other requests similar assistance from Manx authorities as to Nigel Scott and Oliver Peck. According to the government, the five named individuals "were involved in the marketing and/or implementation and/or have knowledge of certain financial aspects of" the tax shelter at issue, and "this foreign discovery is essential to the United States' defense of this case."

Plaintiff objects to the motion on essentially four grounds: (1) that the proposed letters rogatory are overbroad, and constitute an impermissible "fishing expedition"; (2) that the proposed letters rogatory contain an improper description of the case that mischaracterizes the issues and effectively requires the Court to adopt findings of fact and conclusions of law

---

[1] In June 2006, plaintiff filed a similar action for the tax year 2002. The two matters were consolidated in September 2006.

concerning fundamental matters at issue in this case; (3) that the use of local counsel in the Isle of Man to submit the letter rogatory to the court is improper; and (4) that if the requests are to be allowed, a protective order should issue preventing the use of the evidence in any other proceeding.

## II.    Analysis

Under federal law, a United States District Court may issue a letter rogatory seeking to obtain evidence in a foreign jurisdiction. *See* 28 U.S.C. § 1781; Fed. R. Civ. P. 28(b). Such a request may be made pursuant to any relevant treaty or convention between the United States and the foreign state, or directly, outside the treaty context. *See Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 544-46 (1987). Where, as here, the government does not invoke the procedures of any treaty requiring the foreign state to execute the requests, the execution of the requests relies solely on international comity. *See Société Nationale*, 482 U.S. at 543-44, n.27 & 28.

The Supreme Court has noted that requests for assistance in seeking to obtain foreign evidence require careful consideration:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to 'abusive' discovery that foreign litigants advance should therefore receive the most careful consideration. In addition, we have long recognized the demands of comity in suits involving foreign states, either as parties

> or as sovereigns with a coordinate interest in the litigation. American courts
> should therefore take care to demonstrate due respect for any special problem
> confronted by the foreign litigant on account of its nationality or the location of its
> operations, and for any sovereign interest expressed by a foreign state.

*Société Nationale*, 482 U.S. at 546 (citation omitted).

With that backdrop, the Court will consider plaintiff's objections in turn.

## A.    Whether the Proposed Letters Rogatory Are Overbroad

Plaintiff first contends that the proposed letters rogatory are overbroad and constitute an

improper "fishing expedition." Plaintiff attacks the breadth of the proposal in multiple ways,

asserting in substance (1) that the letters rogatory would violate principles of comity as to the two

countries from which information is sought; (2) that the information sought is largely irrelevant to

the pending proceeding; and (3) that the proposed letters rogatory would cause the parties (and

the witnesses) to incur undue burden and expense.

Plaintiff first claims that the requests would violate principles of comity, in that they

constitute an improper "fishing expedition" in violation of the procedures of the host countries. It

is true that the judicial systems of Ireland and (apparently) the Isle of Man do not permit pre-trial

discovery to the extent that is permitted in the United States, and that an examination by letter

rogatory would not be permitted under many circumstances where a deposition would be

permissible in the United States. Nonetheless, it does not follow that a party cannot use the letter

rogatory process to obtain the testimony of a foreign witness unless the party knows exactly what

the witness will say, and that anything less would constitute a "fishing expedition."

According to one case from the United Kingdom, "fishing" is the "search for material in

the hope of being able to raise allegations of fact, as opposed to the elicitation of evidence to

support allegations of fact which have been raised with bona fide and adequate particularization." *State of Minnesota v. Philip Morris Inc.*, [1998] I.L. Pr. 170, 175 (En.).[2] Although the position of the Irish courts is less clear, it appears that in these contexts they permit "testimony" (that is, "evidence which could be used in an Irish court"), but not "discovery." *See Novell Inc. v. M.C.B. Enterprises*, 2001 1 I.R. 608, 11 (Ir. S.C.) (citing English authority).

Here, the United States has made very detailed allegations of fact, with multiple specific references to record evidence. Furthermore, there is little doubt that the United States intends to use the information at the trial. The government is not simply seeking to undertake a "roving inquiry" in order to "obtain information which may lead to obtaining evidence in general support of a party's case." *State of Minnesota*, [1998] I.L. Pr. 170, 175.

Plaintiff next contends that the information sought is largely irrelevant to the proceeding before this Court. This is a variation of an argument it has made on other occasions in the course of this litigation: that information as to so-called "pattern" evidence involving the same tax shelter promoters and advisors, but other taxpayers, is not relevant to this proceeding. Without repeating the arguments and conclusions made at other points in this lawsuit, the Court will simply note that it views the taking of testimony as to this issue to be appropriate at this time.

The Court recognizes that there is something of a "Catch-22" quality to this issue, in that it cannot rule that the evidence is admissible at trial until the evidence has been taken, yet the authorities seem to suggest that the evidence cannot be taken unless it is admissible. Nonetheless, the Court is more than satisfied that this is not a mere "fishing expedition," and that the

---

[2] Case law from the United Kingdom is persuasive, but not controlling, authority in the courts of the Isle of Man, which is a dependency, but not part, of the United Kingdom.

government has made sufficiently particularized factual allegations to satisfy the requirements of foreign law.  Accordingly, the proposed letters rogatory are not overbroad and do not seek irrelevant or inadmissible information.

Finally, plaintiff objects to the letters rogatory on the grounds that they would cause the parties and witnesses to incur undue burden and expense.  *See* Fed. R. Civ. P. 26(c); *see also DBMS Consultants Ltd., v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367, 370 (D. Mass. 1990).  As a general matter, under Rule 26(c) a court may deny or limit any request to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense."  Furthermore, and as noted, requests for evidence from foreign jurisdictions require special consideration as to ensure, among other things, that the discovery is not abusive.  *See Société Nationale*, 482 U.S. at 546.

Whether the burden or expense is "undue" requires a balancing of the likely expense and difficulty of the requested examinations against the nature and size of the controversy and the prospective value of the foreign evidence.  In this case, that balance is easily struck in favor of permitting the government to obtain the requested evidence.  The stakes are high; plaintiff seeks repayment of more than $62 million in this case as to the 2001 tax year alone.  Furthermore, the discovery is relatively limited, given the scale of the case; the government seeks to take five depositions in two countries.  The Court also notes that although the distance to be traveled is significant, the flying time between Boston and Dublin (approximately seven hours) is not dramatically longer than the flying time between Boston and Los Angeles (approximately five and a half to six hours).

Plaintiff suggests that the burden and expense on the parties may be reduced by requiring the government to take the depositions of four of the witnesses (Hawkes, Hussey, Scott, and

Peck) by written questions pursuant to Fed. R. Civ. P. 31. While this approach has been adopted in at least two instances, *see DBMS Consultants*, 131 F.R.D. at 370; *B & L Drilling Electronics v. Totco*, 87 F.R.D. 543, 545 (W.D. Okla. 1978), the Court declines to follow that approach here. Depositions by written questions under Rule 31 are rarely, if ever, used in modern litigation under any circumstances. That is surely no accident. While depositions by written questions offer one slight advantage over live depositions (the reduction of expense through elimination of attorney travel time and transcript costs), they present huge disadvantages, including the loss of spontaneity, the inability to ask follow-up questions, the inability to observe the witness, and the inability to ensure the integrity of the responses, which may be drafted or edited by lawyers. This Court sees no reason to so constrain the government under the circumstances of this case.

In short, given the amount at stake and the complexity of the litigation, the proposed taking of testimony of foreign witnesses is not unduly burdensome within the meaning of Rule 26(c), and need not be denied or limited under the principles articulated by the Supreme Court in *Société Nationale*.

**B.    Whether the Government's Description of the Case is Improper**

Plaintiff next contends that the proposed letters rogatory improperly state defendant's assertions as to the facts of this case as findings of fact by the Court. *See, e.g., Globe-X Mgmt., Ltd. v. Cinar Corp.*, No. 03-1831, 2004 U.S. Dist. LEXIS 21480, at *2 (E.D. Pa. 2004) (ruling that amendments to the proposed letters rogatory sufficiently addressed the plaintiffs' concerns that they did not "fairly summarize" the plaintiffs' claims and included "numerous assertions/characterizations of fact by counsel for Defendants which have not been found as fact by the Court . . . .").

7

It is proper, indeed necessary, for the letter rogatory to provide a description of the case, both to permit the foreign authority to evaluate the request and to ensure that the scope of the inquiry as to each witness is appropriate. *See* 6 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 28.12[9] (3d ed. 1997). The appropriate level of detail will necessarily vary from case to case. Furthermore, because the letter rogatory constitutes a request from the Court for assistance, not from a party, care should be taken to ensure that the synopsis of the case is not unduly argumentative, or state or suggest that the Court has reached factual conclusions at this stage of the proceedings.

The original versions of the letters rogatory submitted by the government were, in fact, problematic in that regard. However, after receiving plaintiff's objections, the government has substantially modified the background section to eliminate the argumentative or otherwise objectionable language. In its current format, both letters rogatory contain a "facts" section of approximately four pages, which identifies several of the "primary issues in this litigation" and which indicates as to factual assertions that they constitute the allegations of the United States (as opposed to factual findings of the Court). After reviewing the revised documents, the Court finds that the two synopses of the litigation in the proposed letters rogatory are appropriate and accordingly plaintiff's objections in that respect are overruled.

**C.    Whether the Government May Submit a Letter Rogatory by Application of Local Counsel**

Plaintiff next objects to the fact that the government intends to submit the letter rogatory to the court in the Isle of Man by application of local counsel. Plaintiff cites no authority in support of its position, other than to note that if the government were utilizing the procedures

8

under the Hague Convention on the Taking of Evidence Abroad (which it is not), the letter rogatory should be issued to the "Central Authority" in the United Kingdom. The government, by contrast, has cited authority to the effect that the law of the Isle of Man specifically provides for submission of the letter rogatory to the court by local counsel (and that, according to its local counsel, this is the "expected procedure"). Accordingly, plaintiff's objections to the proposed procedure are overruled.[3]

### D.    Whether a Protective Order Preventing Use of the Evidence in Other Proceedings is Appropriate

Finally, plaintiff objects to the issuance of letters rogatory unless the evidence obtained thereby is subject to a protective order precluding its use in other cases. Plaintiff suggests that such an order would discourage the government from undertaking a wide-ranging "fishing expedition."

Under the circumstances presented here, the issuance of such an order would be unnecessary and inappropriate. While the proposed subject matter of the depositions is wide-ranging, the government has made a sufficient showing of relevance and potential admissibility to permit the questioning to take place. The Court sees no reason at this time to impose arbitrary limitations on its use.

### III.    Conclusion

For the foregoing reasons, defendant's Motion for Issuance of Letters Rogatory Requesting International Judicial Assistance is GRANTED.

---

[3] Plaintiff has also objected that the particular counsel engaged by the United States has a conflict of interest. The Court understands that the government has engaged different counsel and that the issue has therefore been rendered moot.

**So Ordered.**

                                        /s/ F. Dennis Saylor
                                        F. Dennis Saylor IV
Dated: May 22, 2007                     United States District Judge