UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>           Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>           Defendant. | Case Nos.: 05-40151-FDS<br>06-40130-FDS<br><br>**Leave to File Granted on May 22, 2007** |

**PLAINTIFF'S AMENDED SUR-REPLY TO
DEFENDANT'S MOTION FOR ISSUANCE OF LETTERS ROGATORY
REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE**

Plaintiff does not object to obtaining documents and testimony from individuals living abroad where such a foreign expedition directly results in relevant evidence for trial. Defendant's papers, however, only support the notion that relevant evidence is obtainable from Samuel Mahoney. Defendant's expansive view of discovery to include "pattern evidence," which the Court has tolerated to date, might justify the inclusion of Martin Hawkes, if the standards for discovery were the appropriate standard for letters rogatory.[1] But the inclusion in the letters rogatory of business associates and bankers of non-parties is not supported, nor

---

[1] In denying Plaintiff's Motion to Compel, the Court held that Plaintiff's discovery was "not *likely* to lead to the *production*" of admissible evidence. (Am. Mem. and Order at 4, May 10, 2007 (emphasis added).) By contrast, the Federal Rules allow discovery of "relevant information" – a threshold that is met if the discovery is "*reasonably calculated* to lead to the *discovery*" of admissible evidence. Fed. R. Civ. P. 26(b)(1) (emphasis added). This is an important distinction. If the "likely to lead to the production of admissible evidence" standard applied to Defendant, as the Court has recently applied to Plaintiff, the letters rogatory (as well as its "pattern evidence") would be beyond the scope of discovery.

justified by the pile of exhibits cited in Defendant's motion papers. For example, only one of the over seventy exhibits referenced by Defendant mentions Oliver Peck.[2]

Defendant's exhibits prove little beyond its hope and desire to obtain discovery relating to purported payments made by Diversified Group Inc. ("DGI") to Samuel Mahoney and Martin Hawkes. Not only is discovery concerning those payments not relevant to the determination of whether the partnership lacked economic substance, but the scope of the letters extends far beyond seeking that type of evidence. Moreover, the language of the letters rogatory, a document that will be issued by this Court, continues to be objectionable. In the interest of fairness, the Court should either require Defendant to work with Plaintiff to develop agreed language for any letters rogatory that are to be issued, which is common in this context, or the Court should prepare its own statement of the facts in conformity with the types of letters rogatory routinely issued within this District. The Court should not, however, permit one party to draft a one-sided and prejudicial statement for the Court to adopt.

Finally, Defendant has not provided any assurances to this Court that, even if the letters are issued, the foreign individuals from whom evidence and testimony is being sought will actually provide any evidence or testimony.

## I. The Form of the Letters Rogatory Continues To Be Improper

In revising the Court's letters rogatory, Defendant implicitly acknowledges that the language was inappropriate for a document to be issued by this Court to a foreign court. The lengthy recitation of facts and law is not in conformity with the usual practice of issuing letters rogatory. The Court may consider the letters rogatory filed in other cases, including those attached to Plaintiff's Response, which are typical examples of the form in which letters rogatory

---

[2] This is the same single document that Plaintiff located mentioning Oliver Peck. (*See* Pl.'s Resp. to Def.'s Mot. for Issuance of Letters Rogatory Requesting International Judicial Assistance at 5.)

are issued. (Pl.'s Resp. to Def.'s Mot. for Issuance of Letters Rogatory Requesting International Judicial Assistance Exs. I-L.) Without question, the revised proposed letters rogatory that Defendant asks this Court to adopt continue to be outside the mainstream of what courts typically issue.

The revised letters rogatory admittedly contain fewer assertions of factual and legal findings not yet made by the Court than the letters originally proposed; however, the troublesome factual and legal assertions are not all together absent from the letters, nor do the letters fairly and accurately reflect Plaintiff's position. *See Globe-X Mgmt., Ltd. v. Cinar Corp.*, No. 03-1831, 2004 U.S. Dist. LEXIS 21480, at *2 (E.D. Pa. Oct. 6, 2004). For example, Plaintiff does not agree with Defendant's statement of the law, including its unnecessary citation to and characterization of *Commissioner v. Culbertson*, 337 U.S. 733, 742 (1949), which causes this Court to adopt Defendant's view of *Culbertson* concerning issues that continue to be the subject of significant dispute in the tax area. Similarly, the statement that "[t]he determination of intent of the partners requires testimonial and documentary evidence from the purported partners and others" (Ireland Letter Rogatory at 3-4)[3] suggests that this Court has decided the specific evidentiary needs, relevance, and values it will place on testimony from non-parties regarding the business purposes of Plaintiff. These and other troublesome factual findings and legal arguments must, in fairness, be removed from the Court's letters rogatory prior to the Court signing them and issuing them to a foreign court.

The inappropriate verbiage in the proposed letters rogatory could be resolved through adopting Plaintiff's neutral and balanced version, attached as Exhibit M to Plaintiff's Response,

---

[3] "Ireland Letter Rogatory" refers to Defendant's revised Request for International Judicial Assistance (Letter Rogatory) from Ireland.

3

through ordering a joint revision by both parties, or through revision by the Court. In any event, Defendant's new proposal is inappropriate.

## II.     Nigel Scott, Oliver Peck, and John Hussey Do Not Have Relevant Evidence

Defendant's complete lack of evidence supporting its motion to issue letters rogatory concerning Nigel Scott, Oliver Peck, and John Hussey is obvious, particularly when contrasted with Defendant's numerous allegations and exhibits regarding Samuel Mahoney and, to a lesser extent, Martin Hawkes. Defendant devotes over five pages of its reply to its allegations that DGI made payments to Messrs. Mahoney and Hawkes. In support of these allegations, Defendant cites e-mails and provides bank account numbers, along with allegations of how funds were sent to those bank accounts. The exhibits attached by Defendant, however, do not support its single page of allegations that "Nigel Scott and Oliver Peck were both employees of Singer & Friedlander Isle of Man and both appear to have been involved in the structuring and transfer of funds through these four accounts." (Reply Brief in Further Support of United States' Motion for Issuance of Letters Rogatory Requesting International Judicial Assistance at 10 ("Def.'s Reply").)[4] Even if Messrs. Scott and Peck were employees of Singer & Friedlander and assisted in establishing bank accounts for Messrs. Mahoney and Hawkes, it does not follow that Messrs. Scott and Peck "have personal knowledge of Mahoney's and Hawkes's joint venture arrangement" or "have relevant evidence to the United States' position that Mahoney was a sham partner." (Def.'s Reply at 10.) Individuals open bank accounts during the course of operating a

---

[4] As Plaintiff stated in its Response, Plaintiff has located only a single document among the millions of pages produced by third parties that mentions Oliver Peck. Similarly, the few documents that mention Nigel Scott all do so in the context of transactions in which Trilogy participated, transactions which Defendant acknowledges took place in 2002. In denying Plaintiff's Motion to Compel, the Court noted the irrelevance of information upon which no one could have relied when the FICA A Fund investment occurred. (Am. Mem. and Order at 4, 6, May 10, 2007.) Even under Defendant's extraordinarily broad view of relevance, which this Court has repeatedly stated it has not accepted as an evidentiary standard, transactions that post-date Plaintiff's investment and could not have been known at the time of Plaintiff's transaction cannot be relevant.

4

business without disclosing the intimate details of that business's operations; and Defendant's speculation that they may have more information is insufficient.  Defendant has not connected Messrs. Scott and Peck to the other purported FDIS transactions that constitute Defendant's own "pattern."  The speculative connection urged by Defendant between these individuals and Messrs. Mahoney and Hawkes does not rise to the level of "relevance" for U.S. discovery purposes, and certainly will not lead to evidence as defined by foreign courts.  Accordingly, the motion for letters rogatory to be issued to the Isle of Man should be denied.

Similarly, Defendant has completely failed to show that Mr. Hussey played any material role in the alleged arrangement between DGI and Messrs. Mahoney and Hawkes.  Mr. Hussey is not mentioned in the e-mails cited by Defendant in its reply, Defendant has not connected him with any of the bank accounts identified, and very few of Defendant's motion paper exhibits mention Mr. Hussey.  Defendant's characterization of Mr. Hussey as a "foreign collaborating witness[]" (Def.'s Reply at 7) is baseless, at best, especially in light of the lack of evidence presented by Defendant.  Accordingly, the Court should not issue a letter rogatory for the testimony of Mr. Hussey.

Defendant, who seeks letters rogatory with respect to Messrs. Scott, Peck, and Hussey, readily admits that such material is not relevant.  On April 9, 2007, Plaintiff served Defendant with requests for production concerning not only the individuals who are the subject of the letters rogatory, but also the entities about which Defendant intends to inquire.  Defendant produced no documents responsive to these requests and asserted that such discovery was irrelevant.  (*See* Ex. A, Requests for Production Nos. 72 and 73.)

### III. Alleged Payments by DGI to Mahoney and Hawkes Are Not Relevant to the Issues in This Case

Defendant continues to assert that it needs foreign discovery to show that "Mahoney and Hawkes did not fund their own purported 'investments,'. . . and were not independent investors but mere nominees of the promoters, including DGI and Haber, with no money at risk." (Def.'s Reply at 7.) This speculation, even if credited for a moment, would not negate the existence of FICA A Fund as a partnership, or alter the tax consequences to Plaintiff. Rather, it requires a shift of the tax consequences from the "nominee" partner to the actual partner. *See Red Carpet Car Wash, Inc. v. Comm'r*, 73 T.C. 676, 685 (1980) (holding that an entity who invested in a partnership with capital provided by petitioner was, in reality, a "nominee" of the petitioner and the petitioner should be treated as the partner for tax purposes). Thus, Defendant does not need to investigate the "FDIS payments routed through Biosphere's Singer & Friedlander accounts." (Def.'s Reply at 9-10.) The fact of importance is that a partner made an investment of $651,000 in FICA A Fund.

### IV. Defendant Has Not Provided Assurances That Foreign Individuals Will Testify or Provide Documents

Before embarking on the time-consuming and expensive process of executing letters rogatory, Defendant should advise this Court and Plaintiff of its efforts to contact the foreign witnesses to ascertain if they will testify, thus potentially obviating the need for this lengthy letters rogatory process and avoiding more delays in the preparation of this case for trial. Defendant has represented to Plaintiff that it has not contacted any of the witnesses, nor does it intend to do so. If the witnesses represent that, even if ordered to appear by a foreign court, they will not testify the letters rogatory are futile.

Though a foreign court may compel a witness to appear pursuant to letters rogatory, the letters rogatory process does not guarantee that the foreign witness will, in fact, provide

6

testimony. This is evident by the words of the Irish court *In re Chomutov Savings Bank*, where Justice Maguire stated,

> The order will require Mary Samuel (formerly Mary Pienart) to appear before District Justice Patrick D. O'Grady on 21st November, 1957, to give evidence and produce documents touching the testimony required by the said letter of request. Her attitude before the Court and her decision to give evidence or withhold or produce documents is a matter for herself.

[1957] I.R. 355, 357 (4th Nov. 1957) (Ir.). The Judge's language suggests that, even if the foreign court issues an order pursuant to letters rogatory, it is not under an obligation to ensure the witness's testimony is complete. To ensure that discovery is conducted in an efficient and just manner, the Court should require that Defendant promptly initiate contact with the foreign witnesses to determine whether they will testify. Defendant should not be allowed to refuse to ascertain the willingness of the foreign witnesses to testify and thereafter waste three to four months in the letters rogatory process only to report to this Court that the witnesses did not testify, or that the witnesses would have willingly testified absent a court order. Moreover, the Defendant should not be allowed to delay the existing trial schedule because of its letters rogatory.

## CONCLUSION

A great deal of the information sought by the letters rogatory as proposed by Defendant is based on speculation and rhetoric. Moreover, Defendant has failed to this point to take steps to avoid further delays and the waste of time that will occur if the witnesses will not appear and testify. Plaintiff requests that the Court deny the motion to issue letters rogatory to the extent that the proposed letters seek irrelevant information. If the Court decides to grant the motion, the Court should revise the letters to ensure that the final letters rogatory accurately reflect the positions of the Court, Plaintiff, and Defendant, which is not the case in their current form.

Respectfully submitted this 23rd day of May 2007.

        PLAINTIFF
        FIDELITY INTERNATIONAL CURRENCY ADVISOR
        A FUND, L.L.C., by the Tax Matters Partner


        /s/ Lena Amanti
        David J. Curtin, D.C. Bar #281220
        Ronald L. Buch, Jr., D.C. Bar #450903
        Lena Amanti, D.C. Bar #490791
        MCKEE NELSON LLP
        1919 M Street, N.W., Suite 200
        Washington, D.C. 20036
        Telephone:  (202) 775-1880
        Facsimile:  (202) 775-8586
        Email:  dcurtin@mckeenelson.com
             rbuch@mckeenelson.com
             lamanti@mckeenelson.com

        John O. Mirick, BBO #349240
        MIRICK, O'CONNELL, DEMALLIE
        & LOUGEE, LLP
        100 Front Street
        Worcester, MA 01608
        Telephone:  (508) 791-8500
        Facsimile:  (508) 791-8502
        Email:  jomirick@mirickoconnell.com


**Certificate of Service**

| | |
|---|---|
| I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 23, 2007. | /s/ Lena Amanti<br>Lena Amanti, D.C. Bar #490791<br>MCKEE NELSON LLP<br>1919 M Street, N.W., Suite 200<br>Washington, D.C. 20036<br>Telephone:  (202) 775-1880<br>Facsimile:  (202) 775-8586<br>Email: lamanti@mckeenelson.com |