UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 05-40151 and 06-40130 |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S REPLY TO RSM McGLADREY'S RESPONSE TO THE REPORT ON THE STATUS OF THE ADDENDA TO THE BDO SEIDMAN, RSM McGLADREY, AND GRANT THORNTON PROTECTIVE ORDERS**

The United States submits the reply to RSM McGladrey's "Response" to the status report filed with respect to the addenda to the BDO Seidman, RSM McGladrey ("RSM"), and Grant Thornton protective orders. It is unfortunate that RSM determined to argue its positions in response to a status report, but its actions have necessitated this reply.[1]

**A.    The United States' Proposed Addendum to the Protective Orders Provides to the Producing Third Parties Notice and an Opportunity to Object to the Intended Disclosure of Identifying Information Found on a Tax Return.**

The United States' proposed addendum, like RSM's, provides to the producing third parties notice of and an opportunity to object to an intended disclosure of an unredacted tax return. Those protections would apply in all but one scenario. Under that one scenario, which at

---

[1] The United States notified RSM, BDO Seidman, and Grant Thornton that it would seek additional guidance from the Court after negotiations failed to produce an agreement, and that it would notify the Court that RSM and the others wish to be heard on the remaining issues. The United States did just that on May 21, before RSM filed its response.

this point seems unlikely to occur, the Court would have the discretion to determine that notice is unwarranted under the circumstances. But, in any event, no disclosure could take place without leave of Court, and so the producing third parties remain well-protected.

The one exceptional scenario is where a party would decide to disclose an unredacted tax return or portions thereof during the trial itself. That would most likely occur only in a situation which could not be reasonably anticipated prior to trial. For example, a party may be surprised by a witness's testimony and may feel that such testimony is inconsistent with a tax return of another tax-shelter participant. In that event, the party should not have to forgo or delay its cross examination of the witness because it is required to give notice to the producing third party of its intention to impeach the witnesses with such identifying information. If not allowed to continue uninterrupted, the party may be seriously prejudiced. In addition, the Court should not have to halt the trial so that a party can attempt to provide notice to a producing third party which may or may not be reachable and available for argument.[2] Instead of requiring the interruption of trial, the party should, under this scenario, be able to apply to the Court for an immediate ruling allowing the disclosure of such information without notice. The Court should be allowed to weigh the varying interests involved without necessarily delaying the trial to hear from the producing third party, and exercise its discretion.

B.    **The Courtroom Should Not Be Closed to the Public.**

The Court has made clear that, to the extent possible, identifying information found on a tax return should not be disclosed to the public. The United States has proceeded in accordance

---

[2] While counsel for RSM is located in Worcester, MA, counsel for BDO Seidman and Grant Thornton are located in New York, NY.

with the Court's rulings, and negotiated an addendum which protects that information. RSM's demand to close the courtroom is premature, as a disclosure issue has not arisen and will not for quite some time, if at all. RSM's premature demand is also contrary to the public's presumptive right of access.

The United States' practice is in accord with the Court's rulings. It has been the United States' practice in this case and others to keep identifying information on tax returns confidential unless such information is clearly relevant to the resolution of an issue in the case. For example, at trial, the Government's pattern evidence will identify each of the FDIS participants, the size of their transactions, and the options employed on their transactions. With this information, it may be relevant to link the losses claimed on the tax returns of the various tax-shelter participants to each of their FDIS transactions to show that regardless of the size of the transactions or the options employed on the transactions, none of them made money. That type of showing may be highly relevant to the economic-substance issue. The United States will attempt to follow the Court's guidelines with respect to pseudonyms, but, as this example suggests, it is possible that it may be necessary for a party to offer identifying tax return information at trial. If that should occur, the Court may decide to allow disclosure under the circumstances. Again, the party's request for disclosure would be subject to the notice provisions described above. The offering of such evidence should not be a reason to close the courtroom.

The courtroom should remain open because the public has a right of access to judicial proceedings and the information here is not confidential under the law. RSM begins its argument with an incorrect assumption– that the tax returns of tax-shelter clients are "confidential" under the law. They are not. The law is clear that tax-shelter participants have no expectation of

confidentiality. The United States described the law in this regard in its opposition to BDO Seidman's motion for a superseding protective order. (Docket Entry no. 60 at 14-15).[3] RSM's remaining arguments, based on this incorrect premise, are rendered invalid. The United States does not seek to limit any rights RSM's clients have. It merely seeks to prevent the binding of the Court and the parties to additional extraordinary and unnecessary restrictions which would be to the detriment of this litigation and the public at large.

As this Court has noted, citing the First Circuit, there is a "presumption that the public should have access to judicial records, as well as a right of access to judicial proceedings." (Dec. 13, 2006 Order)(*citing, Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)).[4] Because no disclosure issue has arisen, no facts have been set forth which could overcome the public's presumptive rights. If an issue arises, the Court may disallow the disclosure in the first place, obviating the need to even consider closing the courtroom. The Court's decision on disclosure would be made, again, under the notice provisions described above. The Court's decision on closing the courtroom, if such a decision needs to be made at all, would be made in consideration

---

[3] RSM also incorrectly cites 26 U.S.C. 6103 for the proposition that tax returns may not be disclosed. This issue has been briefed many times in this case. (*See, e.g.*, U.S. Opp. to BDO Mot. for Superseding Prot. Ord. at 11-12.)

[4] In fact, even the tax returns may become judicial records to which the public has a right of access. The courts have long upheld the public's right to access court records. Absent strong countervailing considerations, courts generally make case records available to the public. *Nixon v. Warner Communications, 435* U.S. 589, 597, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"). Judicial records in this context include those records the Court uses to determine substantive rights– i.e., evidence. *See, e.g., United States v. Connolly (In re Boston Herald, Inc.)*,321 F.3d 174, 189 (1st. Cir. 2003). While the right of access is not absolute, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Gloval Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005)(*citing, FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

of all of the facts necessary to attempt to overcome the presumptive right of access.

**C.     RSM's Real Goal Seems to Be to Shield Itself by Keeping the Names of its Managers Who Participated in the FDIS Tax Shelter out of the Public's View.**

At least twenty of RSM's clients to whom it marketed FDIS have already gone public with allegations that FDIS was an abusive tax shelter.[5]  The United States has explained in detail RSM's central role in FDIS.  (*See* Mot. to Compel RSM at 2-6.)  As explained in the United States' motion to compel RSM's production, a number of RSM managers had an additional personal interest in FDIS.  Ronald Wainwright, managing director of tax at RSM and a chief FDIS architect, entered into his own FDIS tax shelter in 2001.  Five other RSM managers, then also entered into FDIS transactions in 2002.  RSM's real goal seems to be to shield itself by

---

[5]Those clients have in some cases brought suit against RSM (as described at page 9 of the United States' motion to compel RSM's production).

5

keeping the names of its participating managers and the name of their employer– RSM

McGladrey itself– out of the public's view.

                                               Respectfully submitted,

                                               MICHAEL J. SULLIVAN
                                               United States Attorney

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER RICHTARCSIK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone: (202) 307-6561
Facsimile:  (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov
       barry.e.reiferson@usdoj.gov
       heather.l.richtarcsik@usdoj.gov

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and copies will be sent to those indicated as non registered participants on May 23, 2007.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division