# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Case Nos.: 05-40151-FDS |
| v. | ) ) | 06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR EXTENSION OF TIME TO SUBMIT EXPERT REPORTS AND REBUTTAL REPORTS AND TO CONDUCT DISCOVERY

Defendant's repeated delays and extensions should no longer be condoned. This case was filed over twenty months ago. Discovery has been ongoing for approximately fourteen months. During this time, Defendant has dictated both the expansive scope and the lengthy duration of discovery, and where the Court has imposed deadlines, Defendant has acted in a manner inconsistent with meeting those deadlines. Moreover, Defendant's failure to establish good cause for further delaying this case is palpable in light of its failure to ensure the production of documents from third parties in a timely manner.

Defendant has not, in the first instance, demonstrated that this discovery is necessary for its expert reports, nor has it explained how an additional 60 days will cure its perceived difficulties. Defendant has not represented when it expects to receive additional documents from any of the third parties or offered any evidence showing that these entities would be able to

produce documents in time for Defendant's experts to review the documents and incorporate them into expert reports within the 60-day extension Defendant seeks.

## BACKGROUND

Defendant failed to timely pursue its own discovery and has repeatedly requested extensions of or failed to meet deadlines imposed by this Court and the Federal Rules, all to Plaintiff's prejudice.[1]  Plaintiff, by contrast, has not filed any Court document on extension and has responded to all of Defendant's discovery requests within the time allotted by the Federal Rules of Civil Procedure.  Although Defendant has consistently failed to respond to Plaintiff's discovery demands on a timely basis[2] and Plaintiff has received far less discovery than Defendant, Plaintiff is prepared to exchange expert reports on June 8, 2007.

Undeterred and unapologetic for its pattern of delay, Defendant now claims that further delay is necessary because it has not yet received documents from Refco Capital Markets ("Refco"), RSM McGladrey ("RSM"), KPMG, Thelen Reid Brown Raysman & Steiner LLP ("Brown Raysman"), Bryan Cave LLP, and Diversified Group Inc. ("DGI").  To the extent Defendant is missing information, it is as a result of its own failures.  Defendant has not acted promptly in the twenty months that this case has been pending to secure documents from these subpoenaed entities.  An examination of Defendant's third-party discovery efforts belies its

---

[1] This is true from the beginning of this matter.  Defendant answered this case, which is predicated on adjustments asserted by the Government, only after a 60-day extension.

[2] Defendant's delays in providing discovery responses have been both great and small.  Its tardiness includes, but clearly is not limited to, the following:

- After initially responding to Plaintiff's First Set of Requests for Production 14 days late, Defendant most recently responded to this request 353 days after the original due date.

- Defendant completed its production in response to Plaintiff's Second Set of Requests for Production 195 days after the original due date.

- Defendant responded in two parts to Plaintiff's Sixth Set of Requests for Production 11 days and 17 days after the original due date.

- Defendant delayed the deposition of Mark Corrigan for 21 days.

claim that it has been "working diligently to resolve discovery issues with numerous third parties." (Def.'s Mem. of Law in Supp. of Its Mot. for Extension of Time to Submit Expert Reports and Rebuttal Expert Reports and to Conduct Disc. ("Def.'s Mem.") at 8.)

**Refco**

Defendant served a subpoena on Refco more than *eleven months* after this case was docketed, notwithstanding the fact that Refco was identified both in the Complaint as the party that executed the trades and in Plaintiff's initial disclosures. Refco made its first production of nearly 900 pages in January 2007, but Defendant waited until *three months* later to inform the Court that Refco was having difficulty producing documents due to its bankruptcy. (Status Conference Tr. 17:25-18:20, Mar. 6, 2007.) Now, *nine months* after serving its subpoena, Defendant's discovery issues with Refco apparently remain unresolved.

**RSM**

Defendant served subpoenas on RSM more than *thirteen months* after this case was docketed, notwithstanding the fact that RSM signed Plaintiff's return, which was reviewed by the Government in preparing the notice that gave rise to this case. Defendant waited another *five months* to file a motion to compel in March 2007. Within a mere two weeks, this Court instructed Defendant, RSM, and BDO Seidman to attempt to reach an agreement on a protective order. (Status Conference Tr. 34:1-4, Mar. 15, 2007.) But more than *six weeks* later, RSM explained to the Court that it had not yet received anything from Defendant with respect to the protective order, and that "it hasn't moved forward at this point." (Status Conference Tr. 6:44-46, May 2, 2007.) The subpoena to RSM has been outstanding for almost *seven months*.

**KPMG**

Defendant served a subpoena on KPMG within the first month of discovery, and KPMG responded to a majority of those requests shortly thereafter.  (Def.'s Opp'n to Pl.'s Mot. to Quash Third-Party Subpoena Issued to KPMG at 9, Apr. 28, 2006 (advising the Court that "KPMG has already complied with most of the subpoena's production requests").)  KPMG has produced approximately 500,000 pages of documents.  KPMG is also the subject of a deferred prosecution agreement compelling its cooperation with the United States in civil tax cases, which places KPMG's documents, as one court has observed, in the "possession, custody or control of the government," *United States v. Stein*, No. 05-0888, 2007 U.S. Dist. LEXIS 31513, at *38 (S.D.N.Y. May 1, 2007).  Defendant has had access to KPMG's documents for the *fourteen months* that the subpoena has been outstanding.

**Brown Raysman**

Defendant served a subpoena on Brown Raysman more than *thirteen months* after this case was docketed.  Brown Raysman produced approximately 20,000 pages, but according to Defendant "still has not yet begun its search for electronic documents."  (Def.'s Mem. at 5.) Why Defendant has failed to pursue this discovery in the *six months* the subpoena has been outstanding is unclear.

**Bryan Cave**

Defendant served a subpoena on Bryan Cave more than *thirteen months* after this case was first docketed.  *Seven months* later, Defendant stated that Bryan Cave "will soon begin its document production subject to a protective order that has yet to be negotiated."  (Def.'s Mem. at 5.)  Why Defendant has failed to pursue this discovery in the *seven months* the subpoena has been outstanding is unclear.

4

**DGI**

Defendant first served a subpoena on DGI *ten months* after this case was docketed.  DGI produced over 110,000 pages and a privilege log.  Defendant waited *four months* after that production before moving to compel the production of privileged documents.[3]  Defendant's subpoena to DGI has been outstanding for more than *ten months*.

**Letters Rogatory**

While Defendant did not identify the discovery sought by way of letters rogatory as one of its excuses for further delay, the letters rogatory are illustrative of its repeated delays and disregard of this Court's express instructions.  Defendant first mentioned that it would be seeking letters rogatory at a status conference shortly after the *one-year mark* in this case.  (Status Conference Tr. 6:7-13, Sept. 12, 2006.)  *Four months* later, this Court asked Defendant "to proceed expeditiously."  (Status Conference Tr. 15:8-10, Dec. 22, 2006.)  Yet, Defendant waited *another three months* before filing its Motion for Issuance of Letters Rogatory.  Eighteen months into this case, eight months after having told the Court it intended to seek letters rogatory, nearly four months after the Court's prodding, and with only five months remaining in discovery, the Government finally sought letters rogatory.

**Discovery Already Obtained**

Defendant's document discovery to date should be more than sufficient for purposes of preparing its expert.  The third-party productions include, for example, closing binder materials and outlines of all 58 supposed "pattern" transactions identified by Defendant.  These binders and outlines set forth the structure, sequence of events, and underlying investments for the

---

[3] Plaintiff did not claim privilege over any communications between Plaintiff or his representatives and DGI.  Thus, to the extent that communications with DGI were responsive to Defendant's discovery requests and in Plaintiff's possession, custody, or control, Plaintiff has produced them.

transactions engaged in by the 58 "pattern" taxpayers.  In addition, the third parties have

produced federal income tax returns for over 100 individual taxpayers and over 2000 option

confirmation certificates, including option confirmation certificates for the options entered into

by the "pattern" taxpayers.  Produced documents also include financial records evidencing

relevant payments to or from Helios, DGI, and Sidley Austin Brown & Wood.  It would appear

that documents necessary for Defendant's experts, including any experts on "pattern evidence,"

can be found "in the parties' multi-million-page database of promoter-document information."

(Def.'s Sur-Reply to Pl.'s Mot. to Compel Disc. at 16, Apr. 11, 2007.)

## ARGUMENT

The first Rule in the Federal Rules of Civil Procedure requires that the Federal Rules "be

construed and administered to secure the just, speedy, and inexpensive determination of every

action."  Fed. R. Civ. P. 1.  The First Circuit has urged judges to manage their dockets and

encourages adherence to deadlines.  *See, e.g.*, *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d

576, 584 (1st Cir. 1994) ("The judge, not counsel, must run the court and set the agenda.  This

entails establishing reasonable time parameters and ensuring compliance with them.").  While

Federal Rule 6(b) permits a judge to enlarge time limits, the Court should consider "the amount

of time previously available for preparation and how assiduously the movant used that time."

*United States v. Saccoccia*, 58 F.3d 754, 770 (1st Cir. 1995).  Here, not only has Defendant had

more than a sufficient amount of time to prepare its expert reports, but it also has failed to take

the requisite steps to obtain the documents it now claims are "necessary" for its expert reports.

## I.    Defendant Is Flouting Deadlines Imposed by the Court

The First Circuit Court of Appeals in *Mendez v. Banco Popular de Puerto Rico*,

emphasized the importance of adhering to the deadlines set forth by the Court:  "If [a district

judge] sets a reasonable due date, parties should not be allowed casually to flout it or painlessly

to escape the foreseeable consequences of noncompliance." 900 F.2d 4, 8 (1st Cir. 1990). This Court has clearly instructed the parties to move this case forward. For example, at the September 12, 2006 status conference, the Court stated, "I want to make sure both of you have your foot on the gas pedal and this case is moving forward." (Status Conference Tr. 10:7-8.) At the December 22, 2006 status conference, the Court stated, "I do want to hold people's feet to the fire to get the case done . . . ." (Status Conference Tr. 27:5-6.)

Notwithstanding the Court's instructions, Defendant has consistently failed to act promptly when instructed to do so by the Court, or has acted in a manner inconsistent with meeting the Court's deadlines. Most notably, over fourteen months after the start of discovery and merely four months before the end of discovery, Defendant has not yet noticed a single deposition in this case where it initially sought 70 depositions. (Joint Proposed Schedule at 4, Dec. 19, 2006.)[4]

In addition, Defendant has not acted promptly to secure the production of documents subpoenaed from third parties or to produce documents requested by Plaintiff. Consistent with this Court's instructions and the First Circuit's mandate that "[t]he judge, not counsel, must run the court and set the agenda," *Maldonando-Denis,* 23 F.3d at 584, Plaintiff has met all Court-imposed deadlines and continues to be prepared to meet the deadline for exchanging expert reports. Defendant's continued failure to act in a manner consistent with moving this case forward and meeting Court-imposed deadlines is both unfair and highly prejudicial to Plaintiff.

---

[4] The document discovery necessary to depose most of the individuals with knowledge of the facts of this case has been completed. These individuals have no knowledge of the alleged "pattern evidence." For example, Robert Prifti, a former KPMG employee who worked on the FICA A Fund engagement, was not aware of any other transactions similar to FICA A Fund. (Deposition of Robert Prifti Tr. 84:14-86:5, Feb. 27, 2007.)

II.    **Defendant Has Not Shown Good Cause for the Extension of Deadlines**

Defendant has failed to demonstrate good cause for an extension of time.  Defendant

makes the conclusory assertion that the information that it has not yet received from third parties

is "crucial" to the preparation of expert reports.  (Def.'s Mem. at 8.)  Plaintiff continues to

maintain that third-party documents relating to other taxpayers are not relevant, but will not

reargue the issue here.  Even assuming the propriety of Defendant's "pattern evidence"

discovery, Defendant's claim that the documents it seeks are necessary for purposes of preparing

expert reports is belied by the fact that Defendant has failed to pursue diligently many of the

subpoenas it has issued.[5]  Defendant should not be permitted to waste the time and resources of

Plaintiff by wildly expanding the reaches of discovery in this case only to further prejudice

Plaintiff by delaying the case to accommodate its "pattern evidence" discovery.

Defendant has, is now, and will no doubt continue to delay this case on the entirely

unacceptable grounds that its experts want more discovery about taxpayers and professionals

who, for the most part, are complete strangers to the fact of this case.  The demands and desires

of Defendant's experts cannot be allowed to continue the delay of this case.

A.    **Defendant Has Failed to Explain Why Additional Discovery Is Needed for Its Experts**

Defendant fails to provide evidence supporting its argument that the documents it has not

yet received from subpoenaed third parties contain "crucial information" for its experts.  (Def.'s

Mem. at 8.)  With the exception of Refco, Defendant does not identify which specific documents

are necessary for the purpose of preparing expert reports and does not explain why these

documents would be necessary.  Plaintiff has produced the documents from its files that an

---

[5] Given the pace of production to date, it is doubtful that within the requested 60-day extension Defendant will receive the documents it claims are necessary for its experts and that its experts will have sufficient time to both review the documents and prepare expert reports.  Defendant's real motive seems to be delay for delay's sake.

expert would need to evaluate and opine on FICA A Fund. Further, Helios, Proskauer, and DGI have produced closing binders for all forty-seven of the 2001 FDIS "pattern evidence" transactions, and all but four of the 2002 FDIS "pattern evidence" transactions identified by Defendant.[6] These documents are more than adequate for purposes of preparing expert opinions.[7]

With respect to Refco, Plaintiff's Refco-related documents were produced by Plaintiff long ago. Further, third parties have produced the same type of Refco documents for other taxpayer's transactions. Defendant need not wait on Refco's production.

The four accounting firms subpoenaed by Defendant have produced over 1,150,000 pages of documents. It is difficult to accept a bare assertion that these accounting firms still owe "essential documents" (Def.'s Mem. at 4) and that Defendant cannot find sufficient documents in those productions to satisfy its experts' appetites for more information and more time. KPMG alone has produced over half of a million pages, including over 100 individual federal income tax returns. Many of the documents in the two most recent productions referenced by Defendant (Def.'s Mem. at 4-5) are duplicates or near-duplicates of documents previously produced by KPMG.[8] In addition, those documents largely relate to tax preparation work that KPMG performed for Mr. Egan's family members and are wholly unrelated to this case. Thus, the

---

[6] These four entities that Defendant alleges engaged in an FDIS transaction in 2002 were not listed on the subpoenas issued by Defendant to third parties, which explains why their closing binders have not been produced.

[7] Plaintiff assumes that Defendant is seeking a delay for an expert report concerning the pattern evidence because one of the firms from whom it claims it "needs" documents had no involvement in the FICA A Fund transaction. Defendant has not, however, explained how its experts will use the documents identified in its Motion. Plaintiff does not concede that such an expert report would be relevant or admissible.

[8] Defendant has represented that KPMG produced nine boxes on April 10, 2007 and one thousand additional documents on April 20, 2007. (Def.'s Mem. at 4-5.) Plaintiff's records show that on March 20, 2007, Defendant provided Plaintiff with a duplicate set of seven boxes of documents that Defendant received from KPMG with a transmittal letter dated March 7, 2007. Defendant also provided an additional box of documents from KPMG to Plaintiff on April 23, 2007. Thus, it is unclear whether Defendant has provided Plaintiff with a duplicate set the nine boxes it claimed to have received on April 10, 2007.

recent receipt of those documents would not justify a delay in expert reports. Moreover, the recently produced documents relating to the "cross-border tax products" referenced in Defendant's motion do not relate to the FDIS transactions that Defendant has represented will be a part of its "pattern evidence." This Court has expressed concern about opening the floodgates to every tax product developed or marketed by KPMG (*see* Status Conference Tr. 28:25-29:1, Mar. 10, 2006 (instructing the parties, "[T]his isn't the Senate Permanent Subcommittee. We aren't going to investigate the tax-shelter industry.")), and Defendant's claim that deadlines must be extended to review these unrelated transactions represents its desire to take this case beyond any court-imposed limit.

With respect to the law firms, Brown Raysman's role appears to be limited to preparing organizational and corporate documents. Plaintiff has produced those organizational documents concerning FICA A Fund. In addition, subpoenaed third parties have produced organizational documents for all of those taxpayers that Defendant listed in its subpoena to Brown Raysman. Finally, Brown Raysman itself has already produced approximately 20,000 pages of documents, and only electronic documents remain outstanding. Defendant has not explained why these electronic documents are material to its experts. Bryan Cave played no role in the FICA A Fund transaction. Thus, Bryan Cave documents will be of no assistance in preparing expert reports on the transaction at issue in this case. To the extent Defendant is seeking to prepare experts to opine on "pattern evidence," which is of dubious relevance and admissibility, Bryan Cave only opined on twelve of the fifty-eight transactions in Defendant's "pattern." KPMG, who advised on FICA A Fund, did not advise on any of the transactions in which Bryan Cave was involved, making the relevance of Bryan Cave to any pattern in this case even more dubious. Lastly,

Defendant is already in possession of some Bryan Cave opinions it has received from other sources.

DGI has produced approximately 110,000 pages of documents. Defendant raises the issue of DGI's privileged documents, but does not explain why these documents are necessary for the preparation of expert reports. (Def.'s Mem. at 5-6.) While Defendant states that DGI represented that at least twenty-two of the documents on its privilege log relate to Plaintiff (Def.'s Mem. at 6), there are only two documents on the privilege log that could be identified as relating to Plaintiff. *United States v. Diversified Group Inc*., No. M8-85 (S.D.N.Y. Mar. 5, 2007) (Mem. of Law in Support of Petitioner's Mot. to Compel Produc. of Docs., Ex. 69, entry nos. 310, 333). Plaintiff has produced the communications between DGI and Plaintiff's representatives that were responsive to Defendant's discovery requests and appears to have produced those documents from its own files. (Bates No. 047935-047942 and 047272-047373, respectively.) Without a specific showing of what documents Defendant's experts need from Refco, RSM, KPMG, Brown Rayman, Bryan Cave, and DGI, a 60-day delay cannot be justified.

### B. Defendant Has Failed to Act to Obtain Documents Expeditiously

If Defendant truly believed that the unspecified information that it has not yet obtained from subpoenaed third parties is "crucial" for its experts, Defendant would have acted more expeditiously to obtain this information. Defendant has been aware of the expert-witness deadline for nearly five months and has not acted in a manner consistent with meeting that deadline. The Court has continually expressed a desire to complete this case, recognizing that the parties must "set priorities, . . . focus on what they think is important, at the risk of perhaps something less than total perfection." (Status Conference Tr. 27:7-9, Dec. 22, 2006.) Yet, as part of its strategy of delay, Defendant has allowed the subpoenaed parties to delay their

productions for months after the return dates of the subpoenas. Additionally, as this Court recently witnessed with respect to the process of creating a protective order for BDO Seidman, Defendant has not proceeded expeditiously to put the necessary protective orders in place even when instructed to do so by the Court.

The subpoena to Refco has been outstanding for nine months. It took Defendant three months to move for the entry of a protective order and it was not until two months later that Refco first produced documents. Additionally, Defendant has offered nothing to support the notion that Refco will complete its production within the 60-day extension and in time for it to be reviewed by their experts.

The subpoena to RSM has been outstanding for over six months. Approximately four months after RSM provided its objections and responses to Defendant and over one month after the Court set June 8, 2007 as the deadline for the exchange of expert reports, RSM offered to produce numerous documents to Defendant, including "the closing binders, tax returns, and legal opinions, if any, related to DGI deals that were implemented." (RSM Mem. in Opp'n to Def.'s Mot. to Compel Produc. of Docs. at 6, Mar. 30, 2007.) Instead, Defendant rejected RSM's offer and now seeks to delay this case by sixty days apparently to obtain those very same documents from RSM.

Defendant's subpoena to KPMG has been outstanding for over thirteen months. In this time, Defendant should have been able to identify which documents it believes are missing from KPMG's production and ask KPMG to produce them. Because KPMG's documents are in the "possession, custody or control of the government," *United States v. Stein*, No. 05-0888, 2007 U.S. Dist. LEXIS 31513, at *38 (S.D.N.Y. May 1, 2007), it is inexcusable that Defendant has not

collected the documents that it deems necessary for its experts from KPMG within the past thirteen months.

The subpoenas to Brown Raysman and Bryan Cave have been outstanding for over six months and Brown Raysman has produced approximately 20,000 pages.  Defendant does not explain why Brown Raysman "still has not yet begun its search for electronic documents." (Def.'s Mem. at 5.)  Defendant also does not explain why Bryan Cave has not produced a single document or why a protective order has not been negotiated in the over six months that the subpoena has been outstanding.  (Def.'s Mem. at 5.)

In sum, Plaintiff should not be penalized for Defendant's failure to secure the production of documents from third parties, some of which were subpoenaed over one year ago, particularly in light of the fact that much of the discovery sought has nothing to do with Plaintiff's facts.

## III.    Plaintiff Has Been Prejudiced by Defendant's Numerous Delays

On its present schedule, discovery will close more than two years after this case was filed and after approximately eighteen months of discovery.  Out of professional courtesy and in the spirit of cooperative discovery, Plaintiff has agreed to many of Defendant's requests to extend deadlines.  Defendant's delays, however, harm Plaintiff's economic interests and challenge his endurance.  Plaintiff will no longer accede to unnecessary delays; nor should this Court.

The Court has consistently expressed a desire for this case to move forward.[9]  The Court has also recognized that "plaintiff has a valid desire for this case to proceed expeditiously and economically and not to be dragged down different rabbit trails; and while the plaintiff, or Mr. Egan, in any event is no doubt wealthy, obviously no one can match the resources of the government."  (Status Conference Tr. 7:25-8:4, Dec. 22, 2006.)  While Plaintiff is wealthy, he is

---

[9] (*See, e.g.*, Status Conference Tr. 23:7-9, Nov. 14, 2006 ("I really want this thing moving and to be on a timetable for completion . . . that is going to require you to work hard, but -- but that's fair to all sides.").)

entitled to fair treatment and protection from Defendant's prejudicial delays. While the Court

repeatedly acknowledges that there is a lot at issue,[10] that does not end the inquiry into prejudice.

Delay is inherently prejudicial. *Robson v. Hallenbeck*, 81 F.3d 1, 4 (1st Cir. 1996).

Discussing the slippery slope of pattern evidence, over a year ago the Court asked the

rhetorical question "can we step on the slope without sliding to the bottom, and I'm going to give

the government a chance to try to do that." (Status Conference Tr. 26:11-13, May 11, 2006.)

Defendant not only missed that chance but is purposefully taking this case to the bottom on the

excuse that its experts want to see what is down there. Defendant's tactics have delayed this

case, and we are past the point at which delays caused by Defendant have become prejudicial to

Plaintiff, who is 77 and has already had two birthdays pass while this case has been docketed.

## CONCLUSION

Plaintiff is prepared to exchange expert reports on June 8, 2007, and there is no fair

reason why Defendant should not also be prepared. On that date, this case will have been

pending for over 21 months and discovery will have been under way for more than 15 months.

Defendant has been dilatory in pursuing discovery and this Court should not reward Defendant

with further extensions.

---

[10] (*See, e.g.*, Mem. and Order on Def.'s Mot. for Issuance of Letters Rogatory Requesting International Judicial Assistance at 6, May 22, 2007 ("The stakes are high; plaintiff seeks repayment of more than $62 million in this case as to the 2001 tax year alone.").)

Dated this 25th day of May 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

**Certificate of Service**

        I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 25, 2007.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com