UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) | |
| Plaintiff, | ) | Civil Nos. 05-40151 and 06-40130 |
| v. | ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR EXTENSION OF TIME TO SUBMIT EXPERT REPORTS AND REBUTTAL REPORTS AND TO CONDUCT DISCOVERY**

The plaintiff's amended opposition, like its underlying case, is heavy on allegations and intentionally light on facts. It falsely accuses us of intentional delay, skirting deadlines, and failing to actively pursue discovery. The reality, however, is entirely different. In fact, the United States has pursued a massive amount of discovery in a relatively short period of time in this extremely complex tax litigation. If anything, it has been the plaintiff who, since the very beginning of discovery, has continuously attempted to preclude or impede our discovery.[1] If the plaintiff was indeed truly interested in resolving the fundamental factual and legal issues in this litigation, it would, like us, want to have information relating to, for example, how Refco valued each option, set the initial premium, and calculated the dollar amount of collateral required for the foreign exchange options. It would want to know why RSM decided, unlike KPMG, that

[1]This is borne out by the plaintiff's initial motion to quash the subpoena served on KPMG seeking materials relating to the design, marketing, and implementation, of the FDIS tax-shelter product it purchased.

Richard Egan's participation in FDIS should continue to be concealed from the IRS. It would want to review documents relating to KPMG's relationship with Singer & Friedlander in the Isle of Man and Trilogy Financial Products in London, both of which have only recently been produced by KPMG.

By contrast, this and other essential missing information is critical to the United States' defense of this litigation. In particular, our experts require such additional information for a complete analysis of many of the important issues in this case – particularly with respect to whether there was a reasonable possibility of profit stemming from the FDIS tax-shelter product and whether the plaintiff had any credible non-tax business purpose for entering into its FDIS transactions. We respectfully submit that the United States should be entitled to all material facts related to the purported propriety of the FDIS tax-shelter product, which objective we have pursued diligently and zealously from the outset of this litigation.

**I. The Delay Myth**

The plaintiff's allegations of delay are in all respects untrue and/or misleading. First, the United States could not promulgate discovery until after the entry of a scheduling order. The first scheduling order was entered on March 22, 2006. Thus, the relevant reference date is not September 1, 2005, the filing date of the initial complaint. Plaintiff itself did not file the second complaint, Case No. 4:06-cv-30130-FDS, until June 30, 2006. Upon plaintiff's request, that additional matter was consolidated with the initial matter, raising additional issues with respect to the subsequent tax year. Thus, the proper date against which to measure discovery is June 30, 2006, not September 1, 2005, some ten months earlier. As soon as the United States was able to commence discovery and to begin to untangle the web of promoters, prearranged steps of the

transaction, and international payments, it acted expeditiously.

The discovery which has been conducted by the United States to date reveals that this is indeed a case of massive proportions because the FDIS product was designed, marketed, and implemented by at least 12 promoters. The core promoters appear to have been DGI, Helios, and Alpha. These core promoters, in turn, coordinated the development, marketing, and implementation of these transactions with the assistance of at least five major law firms and four major accounting firms. It is a particularly difficult case because these promoters have either attempted to disguise themselves as independent advisors, or as in the case of DGI, to disclaim any involvement whatsoever. As a result, these promoters have, in many instances, been less than cooperative. Plaintiff itself also appears to have attempted to conceal critical documents, as evidenced by its direction to KPMG to destroy records.

The United States' motion for an extension of time focuses upon the critical importance of still unproduced and/or just recently produced documents from Refco Capital Markets ("Refco"), RSM McGladrey ("RSM"), KPMG, Brown Raysman (n/k/a Thelen Reid Brown Raysman & Steiner), Bryan Cave, and The Diversified Group ("DGI"). Only two of those six entities– Refco and KPMG – were even identified in the plaintiff's initial disclosures. The United States has moved expeditiously with respect to each of those entities– particularly those identified by the plaintiff as potentially holding relevant documents.

**A. KPMG**

After entry of the scheduling order, the United States immediately began its discovery. Just eight days after the entry of the scheduling order, the United States served its subpoena on KPMG, which was the unnamed accounting firm upon which the plaintiff claims in its

Complaint to have relied.[2] At that time, the United States was just beginning to unravel the FDIS transactions. As the plaintiff acknowledges, KPMG produced approximately 500,000 pages, and some time was required to review them. The KPMG documents provided an essential first step in the unraveling process, and allowed the United States to pursue other necessary discovery. The United States immediately pressed KPMG to produce additional documents related to its foreign operations when it was discovered that KPMG has a relationship with both Trilogy Financial Products and Singer & Friedlander. These additional documents were just produced this spring.

**B. Refco**

The United States served its subpoena on Refco on August 8, 2006.[3] At that time, no discovery deadline had even been set. The subpoena return date of August 24, 2006 was in plenty of time to receive production before the discovery deadline that was set more than four months later, and was set to September 28, 2007. Counsel for the United States has repeatedly attempted to expedite Refco's production, which has included personal visits to Refco's facilities. Unfortunately, and through absolutely no fault of the United States, Refco has still largely failed to comply with the subpoena. As detailed in the attached letter from Refco's

---

[2]The plaintiff, on the other hand, first subpoenaed KPMG more than three months later on July 8, 2006. The plaintiff also delayed completion of KPMG's production by filing its unsuccessful motion to quash the United States' subpoena.

[3]Before serving the subpoena, the United States had to determine who represented Refco which was in a liquidating bankruptcy. The United States first contacted Skadden Arps in early July 2006. On July 18, 2006, Skadden Arps referred the United States to counsel for the bankruptcy trustee, Bingham McCutchen LLP. Bingham McCutchen agreed to accept service of the subpoena on August 8, 2006, but was unable to devote resources to the matter until after August 16, 2006, the date of a bankruptcy hearing.

counsel, the United States "has been persistent in its efforts to obtain materials from [Refco] in response to the [s]ubpoena."

While the United States' subpoena called for production of specific categories of documents including documents relating to the design, development, marketing, and implementation of FDIS, Refco's document-maintenance practices do not lend themselves to production by category, but rather by former employee. Refco's documents are maintained in multiple databases, archived hard drives, backup tapes, and approximately 60,000 unindexed boxes. Because of the manner in which its documents are stored, Refco has been able to produce only a small portion of the subpoenaed documents, largely consisting of limited emails and account statements. The vast majority of documents, including valuation documents, hedging documents, margin calculations, and most emails, are maintained in the archived hard drives, backup tapes, and unindexed boxes. The United States has attempted since January 2007 to obtain access to the hard drives and backup tapes. Refco expects that such access will be provided by the end of June. Once access is provided, the United States will expeditiously work to retrieve responsive documents.

**C. RSM McGladrey**

Similarly, the RSM McGladrey subpoena was timely served, and should have been complied with long before now. Despite the United States' diligence, RSM has failed to comply, though its compliance is expected shortly. As an initial matter, RSM's intimate involvement did not become clear until Carruth Management, essentially claiming to be the plaintiff's alter ego, produced on August 25, 2006 Egan's signed tax return prepared by RSM. It was made clearer upon review of DGI's document production in which the role of various law firms and

accounting firms was described. Once RSM's role was clear, the United States quickly drafted a subpoena and sought to serve it on RSM. As recited in detail in the United States' motion to compel RSM's production, counsel for RSM agreed to receive the subpoena on October 6, 2006, but later refused to accept service, forcing personal service on October 23, 2006. After that delay, the United States was unable to obtain RSM's voluntary compliance and moved to compel production. The motion to compel, though ultimately granted, cost almost two months, not including the requisite preliminary discussions in an effort to avoid the need to compel.[4] Even now, more than four weeks after the Court ordered RSM's production, RSM has not yet produced a single document. The United States inquired twice as to the status of RSM's ordered production, and received no response. The United States then drafted a letter to RSM informing it that, absent immediate compliance, the United States would be forced to bring the matter to the Court's attention. On May 29, 2007, in response to the United States' letter, counsel for RSM informed the United States that RSM's production will begin by June 1, and RSM's goal is to complete its production by the end of June. RSM's lead counsel also conveyed that at least some of the delay was due to his resignation from the partnership of Jenner & Block LLP and entrance into the partnership at Howrey LLP.[5]

---

[4]The efforts to avoid compulsion are detailed at pages 6-8 of the United States' memorandum in support of its motion to compel RSM's production and in ¶¶ 4, 6, and 8 of the supporting Reiferson Declaration.

[5]The plaintiff also alleges that the United States delayed entry into a protective order with RSM, resulting in further delay. That allegation is false. The United States did not delay entry into a protective order with RSM. In fact, it proposed in January 2007 a protective order substantially similar to that finally agreed upon and then entered on May 30, 2007. Additionally, and more importantly, RSM has not withheld any documents based on the absence of a protective order.

**D. Brown Raysman, Bryan Cave, and Proskauer Rose**

The United States timely served subpoenas on these three law firms in October 2006. Upon the refusal of two of these firms to comply with the subpoenas (Brown Raysman and Bryan Cave), the United States immediately engaged in negotiations in an attempt to avoid motions to compel. Those negotiations appear to have succeeded.

Brown Raysman began its voluntary production on March 6, 2007, but has not yet completed production. The United States is working with Brown Raysman to expedite the remaining production, consisting of electronic documents, and expects completion within the next 60 days. However, there are also a substantial number of privilege claims involving Brown Raysman which are also pending before this Court in the United States' related motion to compel DGI. In that matter, DGI has asserted claims of privilege with respect to at least 34 documents involving Brown Raysman, which the United States has challenged in its pending motion to compel DGI.[6]

Bryan Cave has now agreed to produce documents voluntarily. It is expected to begin its production immediately, and is expected to complete its production by September 1, 2007. However, there are also a substantial number of privilege claims involving Bryan Cave which are also pending before this court in the United States' related motion to compel DGI. In that matter DGI has asserted claims of privilege with respect to at least 20 documents involving Bryan Cave, which the United States has challenged in its pending motion to compel DGI.[7]

Proskauer Rose has made two productions of documents, but has yet to produce its

[6]See Lindquist Declaration filed in support of the United States' Motion to Compel DGI, Appendix B-3, Doc. Nos. 35-54.

[7]See Lindquist Declaration filed in support of the United States' Motion to Compel DGI, Appendix B-3, Doc. Nos. 56-150.

privilege log. However, there are also a substantial number of privilege claims involving Proskauer Rose which are already also pending before this court in the United States' related motion to compel DGI. In that matter DGI has asserted claims of privilege with respect to at least 95 documents involving Proskauer Rose, which the United States has challenged in its pending motion to compel DGI.[8]

These essential document productions could not have been expedited by any other actions of the United States. The local and federal rules require good-faith attempts to avoid discovery motions. It is also quite likely that motions to compel, which in these instances would have been brought in the Southern District of New York and Washington, DC, respectively, would have taken more time than the preferred negotiated resolutions. In complaining about the Brown-Raysman and Bryan Cave subpoenas, the plaintiff seems to argue that the United States should have refused negotiation and moved to compel productions that the firms ultimately have agreed to, and is somehow responsible for the firms' delays.[9] The plaintiff offers no support for its assertions, and no support exists.

**E. DGI**

The United States' efforts with respect to DGI are well-documented. The United States has attempted to obtain the withheld documents since October 2006. The United States' efforts were unsuccessful, and it was forced to file a motion to compel in the Southern District of New York, which has been transferred to this Court. Here again, the plaintiff seems to fault the United States for conferring and attempting to avoid what has proven to be at least a three-month

---

[8]See Lindquist Declaration filed in support of the United States' Motion to Compel DGI, Appendix B-3, Doc. Nos. 1-34.

[9]The plaintiff has twice brought discovery motions without conferring in accordance with the rules. It should not be heard to argue that the United States should follow that same practice.

delay.

## II. The Extension is Necessary to Obtain Essential Information

The United States subpoenaed documents from the various promoters relating to the design, development, marketing, and implementation of FDIS. The documents that are the subject of the instant motion are essential documents that bear directly on two central issues in this case– whether the plaintiff had a reasonable possibility of profit from FDIS and whether the plaintiff had a non-tax business purpose for entering into FDIS. The United States' experts opining on those central issues need the unproduced documents and additional time to review the recently produced documents in order to complete their analyses. The plaintiff's experts should also require these documents, and their failure to demand them or possibly even be made aware of them is telling.

The still unproduced Refco documents are of supreme importance to the experts. Those documents, once produced, should include the following: (1) documents setting forth how Refco valued each option and established the initial premium which would be credited or debited; (2) documents reflecting Refco's ongoing valuation of the option positions, including any discounting of value during the twenty-four hours after acquisition as reflected in Alpha's daily valuations; (3) records of Refco's hedging activity to determine whether it entered into any hedging transactions to offset risks associated with the options transacted with Fidelity World and/or Fidelity International; (4) Refco's calculations of termination value and the termination premium ultimately credited or debited for each option; and (5) Refco's margin calculation used to determine the dollar amount of collateral that Fidelity International would be required to post in connection with the foreign exchange options. Those documents are essential to the experts' analyses on both sides of this case. The documents are retrievable only with additional time, and

the Court would greatly benefit from this small extension.

Similarly, the experts should have access to and time to review other essential documents from the core promoters described in the opening memorandum. RSM's decision not to disclose Egan's participation in an FDIS transaction, apparently made in conjunction with the plaintiff, Egan, and others, may be relevant to the experts' reports. Moreover, as a central figure in the development of FDIS, RSM likely has thousands of highly relevant documents. There is no reason why the reports should be due before RSM has produced documents in this case.

The same may be said with respect to the KPMG, Brown Raysman, Bryan Cave, and DGI documents. Each of those firms is a central figure in this case, and documents in their possession go to the heart of the issues. A search for the truth demands a small extension to obtain the documents in their possession.

**III. Plaintiff Is Not Prejudiced by an Extension**

The plaintiff has not identified any real prejudice it would suffer from a sixty-day extension. This is a short extension to "somewhat arbitrary" deadlines. Moreover, although the plaintiff was required to make a deposit with the IRS in order to bring this lawsuit, paying money as a prerequisite to invoking the Court's jurisdiction under statute is not prejudice at all. The plaintiff appears to claim that because it expects to prevail, delaying the day it will ultimately recover its deposit is prejudicial. But that is not prejudice either. First, it presumes the plaintiff will prevail. If the plaintiff loses, it is not prejudiced by an extension. Second it presumes the plaintiff will not be compensated for the time value of the funds paid in order to bring this lawsuit. If the plaintiff prevails, it will recover interest on the funds it had to pay.[10] The plaintiff chose this forum and the attendant deposit. The plaintiff could have brought this case in the Tax

[10] 26 U.S.C. §6611.

Court and made no deposit at all. Finally, it is not clear as to why the plaintiff would not also benefit from a more complete airing of the facts that would be afforded by a small extension of time that would allow the remaining subpoena recipients to complete their productions.

**CONCLUSION**

For the foregoing reasons and those stated in our opening memorandum, we respectfully request the Court to grant our motion for a 60-day extension of the expert report deadlines and the discovery cutoff date.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. RICHTARCSIK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Telephone: (202) 307-6561
Facsimile: (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov
barry.e.reiferson@usdoj.gov
heather.l.richtarcsik@usdoj.gov

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and copies will be sent to those indicated as non registered participants on June 1, 2007.

/s/ Heather L. Richtarcsik

BINGHAM

LEGAL INSIGHT. BUSINESS INSTINCT.

Joshua Dorchak
Direct Phone: 212.705.7784
Direct Fax: 212.702.3667
joshua.dorchak@bingham.com

May 31, 2007

**BY EMAIL**

Barry E. Reiferson, Esq.
U.S. Department of Justice
Ben Franklin Station, P.O. Box 55
Washington, DC 20044

Re: *Fidelity Int'l Currency Advisor A Fund, LLC v. United States* (No. 05-40151)
Subpoena to Refco Capital Markets, Ltd.

Dear Barry:

On behalf of Marc S. Kirschner as Plan Administrator, formerly Chapter 11 Trustee, for the estate of Refco Capital Markets, Ltd. ("RCM"), I write at your request to summarize certain issues concerning the nonparty subpoena (the "Subpoena") served upon RCM by the Department of Justice (the "DOJ") in connection with the above-referenced action.

RCM's response to the Subpoena has been complicated in several respects, including that: RCM is one of over twenty debtors (collectively, "Refco") in jointly administered chapter 11 proceedings; Refco has had only a skeleton crew of employees (currently only two part-time persons performing IT duties); Refco's documents are stored in multiple databases, archived hard drives, and voluminous boxes, which were not centralized or comprehensively indexed; and from August - December 2006, the RCM Trustee was primarily occupied with the negotiation and confirmation of Refco's reorganization plan.

The DOJ has been persistent in its efforts to obtain materials from RCM in response to the Subpoena. You and I have discussed the Subpoena on average more than once per week since it was served, including attempts to address logistical issues arising from the circumstances described above. As a result, among other things, you have conducted searches for responsive documents in person at Refco's offices, due to Refco's staffing constraints. In addition, you and I have negotiated several disputes about the scope and methods of RCM's response to the Subpoena (e.g., confidentiality restrictions and cost concerns), without either the DOJ or RCM having to resort to motion practice.

As of this writing, RCM has produced documents in response to the Subpoena in three phases of a rolling production. RCM is currently arranging for the review of one further group of materials, which you have informed me the DOJ considers very significant to its case: namely, the archived email files and hard drives of former RCM employees identified by the DOJ as potentially having any involvement with digital option transactions. Although the process of retrieving these materials from off-site was delayed

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

T 212.705.7000
F 212.752.5378
bingham.com

because Refco moved its offices this month, we expect that RCM will make the final phase of its production based on these materials by the end of June.

Please let me know if you require further information on this subject.

Joshua Dorchak