## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case Nos.: 05-40151-FDS <br> 06-40130-FDS |

## PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION FOR EXTENSION OF TIME TO SUBMIT EXPERT REPORTS AND REBUTTAL REPORTS AND TO CONDUCT DISCOVERY

Defendant has not established cause for the extension of time it requests, and its conclusory assertions and mischaracterizations of facts do not negate that simple fact. Defendant has again failed to demonstrate how the discovery it awaits will be used by its experts, the guise under which they seek this extension. Defendant chose an approach to this case that has caused its current predicament: trying to prove the profitability of one transaction and the business purpose of one taxpayer by looking to unrelated transactions and unrelated individuals about which and about whom Plaintiff was unaware.

## I.      Defendant Has Not Shown Cause for the Extension of Deadlines

In order to obtain the relief requested, Defendant must demonstrate sufficient cause. Fed. R. Civ. P. 6(b). To show the requisite cause, Defendant must explain why the discovery it is awaiting is necessary and demonstrate that circumstances beyond its control prevented it from

obtaining that discovery sooner. *See e.g.*, *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 584 (1st Cir. 1994) (upholding denial of Rule 6(b) request for enlargement of time when requesting party "did not advert to any circumstances beyond their control."); *see also Higuera v. Pueblo Int'l, Inc.*, 585 F.2d 555, 557 (1st Cir. 1978) (upholding order to dismiss when party failed to ask for an extension of time and inform Court "why, and on what basis, more time was needed.")  In Defendant's Motion[1], an explanation as to why the experts need the outstanding discovery was noticeably absent.  In addition, Defendant failed to show that it has diligently pursued the outstanding discovery.  Therefore, cause does not exist to warrant the requested extension.

**A.      The Outstanding Discovery is Not Relevant to the Two Issues Identified in Defendant's Reply**

In its reply, Defendant claimed two reasons its experts want the discovery: to enable its experts to complete a purported analysis of (1) "whether the plaintiff had a reasonable possibility of profit from FDIS" and (2) "whether the plaintiff had a non-tax business purpose for entering into FDIS."  (Def.'s Reply at 9.[2])  Defendant does not cite its need for the "pattern evidence" that has been an ongoing issue in discovery, but rather for information related to *Plaintiff's* possibility for profit and *Plaintiff's* purpose.

At issue in this proceeding is the reasonable possibility of profit of Plaintiff's transaction. Information necessary to evaluate "whether the plaintiff had a reasonable possibility of profit," including the option confirmations, termination tickets, and brokerage statements from the bank that purchased and sold the options, was produced with Plaintiff's initial disclosures.  Those

---

[1] All references to "Motion" or "Defendant's Motion" refer to Defendant's Motion for Extension of Time to Submit Expert Reports and Rebuttal Reports and To Conduct Discovery.

[2] All references to "Def.'s Reply" refer to Defendant's Reply in Further Support of Its Motion for Extension of Time to Submit Expert Reports and Rebuttal Reports and to Conduct Discovery.

documents show that Plaintiff had a reasonable possibility for profit. But the third-party

discovery on which Defendant relies to justify yet another delay relates to other taxpayers'

transactions. What Defendant fails to explain is how unrelated taxpayers and transactions shed

light on the profitability of Plaintiff's transaction, especially where those transactions were

unknown to Plaintiff and the KPMG advisors that most directly assisted Plaintiff.[3] (Deposition

of Robert Prifti Tr. 84:14-85:5, Feb. 27, 2007, Ex. A.)

Similarly, documents that reflect Plaintiff's "non-tax business purpose" were produced as

part of the initial disclosures and in response to Defendant's discovery requests. To date,

Plaintiff has produced over 79,000 pages of documents from its files in response to Defendant's

55 requests for production, two subpoenas to Plaintiff's family-owned investment company, and

the subpoena to Plaintiff's attorney.[4] Moreover, Plaintiff identified the specific documents in its

productions that related to its business purpose.

Defendant has failed to explain how documents from unrelated third parties would

evidence Plaintiff's business purpose. Thus, it is highly questionable whether Defendant's

request for additional time is really predicated on its need for additional documents to address

that issue. Moreover, the evidentiary value of other taxpayers' motives to prove the motives of

Plaintiff is too remote and doubtful to justify a delay of the schedule of this case.

---

[3] Moreover, Defendant readily admits that it was unaware of the other transactions until six years post hoc and a year after this case had been filed. (*See* Def.'s Reply at 3-4.)

[4] Plaintiff, his family-owned investment company, and his attorney all responded timely to these demands, yet Defendant casts aspersions about concealing critical documents. (Def.'s Reply at 3.) This is simply untrue and intended to prejudice the Court. Plaintiff's representatives determined not to file a fully executed return. KPMG requested that the return be returned and destroyed, as is typical with draft returns. (*See* Ex. A at 153:6-10.) Destroying draft returns is intended to eliminate confusion between a filed return and a draft return.

**B.    Defendant Has Not Specified Which Documents Would Assist its Experts.**

Even after Plaintiff questioned which specific documents Defendant was seeking, Defendant remains unable to identify a single specific scrap of paper that its experts have deemed "essential."  Instead, Defendant makes conclusory assertions, such as "[a] search for the truth demands a small extension to obtain the documents in [the third party's] possession." (Def.'s Reply at 10.)  Defendant already has plenty of "truth" in its possession, including closing binders, opinion letters, option confirmation certificates, outlines of the transactions, and organizational documents, for nearly all of the transactions Defendant has identified as part of its purported pattern.  But, Defendant justifies its sought-after delay by reference to Plaintiff's reasonable possibility of profit for the FICA A Fund investments or Plaintiff's non-tax business purpose.  (Def.'s Reply at 9.)

The Court has previously observed that it "can't rule on the motions in the abstract." (Status Conference Tr. 21:18, May 2, 2007.)  Yet, Defendant is now asking the Court to do just that: to enlarge time limits for expert reports so that it can obtain unspecified documents from KPMG, Refco Capital Markets Ltd. ("Refco"), RSM McGladrey, Inc. ("RSM"), Thelen Reid Brown Raysman & Steiner LLP ("Brown Raysman"), Bryan Cave LLP, Proskauer Rose LLP, and Diversified Group Inc. ("DGI").  It is unclear how those seven parties' documents relate to the issues Defendant identified as the need for delay: the reasonable possibility of profit for the FICA A Fund investments and Plaintiff's non-tax business purpose.  The facts are:

- KPMG has produced over 500,000 pages.  Defendant now points to KPMG documents relating to Trilogy and Singer & Friedlander.  The former did not exist when Plaintiff's transaction occurred, and the latter had no relationship with Plaintiff or FICA A Fund.  It is unclear how entities that did not exist at the time or entities with which Plaintiff had no

relationship could be essential to evaluating the reasonable possibility of profit for the FICA A Fund investments or Plaintiff's non-tax business purpose.

- Refco was identified by name in the Complaint and in Plaintiff's initial disclosures, but months lapsed before Defendant sought discovery of Refco. The Refco documents necessary to address the two issues identified by Defendant were produced by Plaintiff in his initial disclosures, including brokerage statements, option confirmation and termination certificates, and customer agreements. Historical data and daily valuations relating to the options were also produced with the initial disclosures. The closest Defendant comes to identifying what it needs from Refco is a reference to "valuation documents, hedging documents, [and] margin calculations," (Def.'s Reply at 5) but how these relate to the reasonable possibility of profit for the FICA A Fund investments or Plaintiff's non-tax business purpose remains unexplained, because Refco's hedging activities have no bearing on the profit potential of Plaintiff's transactions or on Plaintiff's non-tax business motives.

- RSM McGladrey was first retained by Plaintiff several months after the partnership return at issue was filed and nearly a year after the transactions at issue occurred. It is unclear how this after-the-fact type of discovery relates to reasonable possibility of profit for the FICA A Fund investments or Plaintiff's non-tax business purpose.

- Brown Raysman prepared transactional documents and had no involvement in the underlying investments. It is Plaintiff's understanding that Brown Raysman has no additional documents related to the FICA A Fund transaction.

- Bryan Cave was not involved with Plaintiff or the FICA A Fund transaction, thus it would not be in possession of any evidence related to the reasonable possibility of profit for the FICA A Fund investments or Plaintiff's non-tax business purpose.

- Proskauer was first engaged several months after the partnership return at issue was filed and nearly a year after the transactions at issue occurred. Like the RSM McGladrey discovery, it is unclear how this after-the-fact type of discovery relates to reasonable possibility of profit for the FICA A Fund investments or Plaintiff's non-tax business purpose. Moreover, Plaintiff produced as part of its initial disclosures Proskauer's files related to the FICA A Fund transaction.

- DGI produced documents related to not only the transaction at issue, but those of many other transactions and taxpayers. Defendant's attempt to invade DGI's privilege is the only open item and does not justify a delay.

Defendant's motion should be denied because it has failed to demonstrate how the outstanding discovery would assist its experts, explain why the documents already in its possession are not sufficient, or identify what additional information related to its two identified issues is necessary.

    **C.    Defendant Has Failed to Show That Its Discovery Has Been Timely**

As Plaintiff noted in its opposition, the First Circuit has instructed that when a party moves for continuance, the Court should consider "the amount of time previously available for preparation and how assiduously the movant use that time." *United States v. Saccoccia*, 58 F.3d 754, 770 (1st Cir. 1995). The First Circuit has also advised that, "[a] petition for a continuance is always suspect when it is within the power of the petitioner to alter the conditions that allegedly preclude him from acting within the allotted period of time." *Maldonado-Denis v.*

*Castillo-Rodriguez*, 23 F.3d 576, 585 (1st Cir. 1994). Defendant has had over twenty months to conduct discovery, and over eight months have passed since the last subpoena was issued to the third parties identified in Defendant's Motion. Thus, Defendant's inability to obtain all the requested discovery in that time suggests that it has not diligently pursued its discovery.

In its efforts to demonstrate that it has been actively pursuing discovery, Defendant blatantly mischaracterizes Plaintiff's arguments, claiming that "plaintiff seems to argue that the United States should have refused negotiation and moved to compel productions." (Def.'s Reply at 8.) To the contrary, what Plaintiff brought to light was Defendant's failure to negotiate in a timely manner, including Defendant's failure to explain why Bryan Cave is only now producing documents, why Brown Raysman is only now searching its electronic documents, why it took four months of negotiation to come to an impasse with RSM, or why Defendant waited four months after reaching an impasse with DGI before filing a motion to compel. In short, Defendant demanded broad "other taxpayer" discovery and got it, but it also took on the responsibility to the Court to avoid letting this discovery bog down the case. Defendant enjoyed the benefits of its demand but failed in its responsibilities.

II.     **Defendant Has Not Demonstrated That Discovery And Expert Analysis Will be Complete in Sixty Days**

Defendant's own reply provides the grounds on which to deny Defendant's request for an extension. Defendant claims it needs a 60-day extension to obtain discovery so that its experts may complete their reports. At the same time, Defendant admits that the discovery it seeks will not be available to its experts for their reports. For example, Bryan Cave "is expected to complete its production by September 1, 2007," nearly a month after Defendant's requested extended deadline for expert reports. (Def.'s Reply at 7.) Similarly, Defendant claims that Brown Raysman "expects completion within the next 60 days" of its electronic production (*Id.*) –

less than a week before expert reports would be due.  Defendant has not shown that the

productions from these parties are necessary for its experts' reports, and its motion for an

enlargement of time to exchange expert reports should be denied.

## III.     Prejudice to Plaintiff

A 60-day delay does not seem significant to a Defendant that is ageless and is

emblematic of Defendant's approach to deadlines throughout this case.  This case began with the

government's proposed adjustments,[5] yet the government needed 60 additional days to answer

the case.  Defendant sought sixteen months for discovery and has received eighteen, even

without its proposed extension.

Defendant appears to be relying on courts' tendencies to "split the baby."[6]  In asking for

more time, Defendant met and conferred with Plaintiff over a 30-day extension, to which

Plaintiff would not agree.  Now, in filing its motion, Defendant asks this Court for a 60-day

extension.

It is also worth noting the highly-questionable relevance of the discovery that is causing

this delay.  *See, e.g., Fox v. Commissioner*, 80 T.C. 972, 1005 (1983) (finding that "evidence

relating to these other [promoter]-sponsored partnerships is only of collateral significance.")

When KPMG advised Plaintiff to enter into the FICA A Fund transaction, KPMG led Plaintiff to

believe that the transaction was not mass-marketed.  *See* Ex. A at 50:10-51:7, 93:4-17.  Plaintiff

---

[5] Defendant claims that the appropriate time from which to count its discovery timing is June 30, 2006.  (Def.'s Reply at 2.)  It bears repeating that this case began with the government's proposed adjustments, which were made formally on April 6, 2005.  Those adjustments were made after the IRS spent a year examining the FICA A Fund transaction, specifically, and Plaintiff, more generally.

[6] "What I'm going to do then is, in classic fashion, I'm going to cut some of these babies in half, so to speak.  I used to hate it when judges do that."  (Status Conference Tr. 26:5-7, Dec. 22, 2006.)

had good reason to believe the representations of KPMG, which had advised Plaintiff and his family-owned investment company for a year before the FICA A Fund transaction.[7]

In any event, the transaction was tailored to meet Plaintiff's investment needs. Plaintiff was not aware of the purported 57 other FDIS transactions when it entered into the FICA A Fund transactions, or anytime subsequent until Defendant recently unveiled its list of alleged FDIS transaction. It has taken the Defendant over two years and an enormous amount of resources to identify these alleged other transactions. Plaintiff did not have this information when he entered into the FICA A Fund transactions. Plaintiff's transactions should be considered in light of the circumstances Plaintiff was faced with at the time and the information available to him at that time.

While this Court has previously allowed "pattern evidence" discovery because it may be relevant, such evidence will be of limited probative value at trial. As it relates to the pending motion, it is prejudicial because it has caused, and will continue to cause, significant delays in this case, with all of the adverse consequences a litigant suffers from such delays.

## CONCLUSION

Plaintiff is prepared to exchange expert reports on June 8, 2007, and Defendant has not established the requisite cause to extend that date. On that date, this case will have been pending for over 21 months and discovery will have been under way for more than 15 months. Defendant has been dilatory in pursuing the burdensome third-party discovery it has injected into this case, and this Court should not reward Defendant with further extensions.

---

[7] For example, prior to advising Plaintiff on the FICA A Fund transaction, KPMG also advised Plaintiff on a stock option deferral plan that was also individually tailored to Plaintiff's needs. The IRS similarly challenged that arrangement, but conceded the case once it was before the Tax Court. *See* Ex. B.

Dated this 4th day of June 2007.

                          PLAINTIFF
                          FIDELITY INTERNATIONAL CURRENCY ADVISOR
                          A FUND, L.L.C., by the Tax Matters Partner

                          /s/ Ronald L. Buch, Jr.
                          David J. Curtin, D.C. Bar #281220
                          Ronald L. Buch, Jr., D.C. Bar #450903
                          Lena Amanti, D.C. Bar #490791
                          MCKEE NELSON LLP
                          1919 M Street, N.W., Suite 200
                          Washington, D.C. 20036
                          Telephone:  (202) 775-1880
                          Facsimile:  (202) 775-8586
                          Email: dcurtin@mckeenelson.com
                                  rbuch@mckeenelson.com
                                  lamanti@mckeenelson.com

                          John O. Mirick, BBO #349240
                          MIRICK, O'CONNELL, DEMALLIE
                          & LOUGEE, LLP
                          100 Front Street
                          Worcester, MA 01608
                          Telephone:  (508) 791-8500
                          Facsimile:  (508) 791-8502
                          Email:  jomirick@mirickoconnell.com


                          **Certificate of Service**

        I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on June 4, 2007.

                          /s/ Ronald L. Buch Jr.
                          Ronald L. Buch, Jr., D.C. Bar #450903
                          MCKEE NELSON LLP
                          1919 M Street, N.W., Suite 200
                          Washington, D.C. 20036
                          Telephone:  (202) 775-1880
                          Facsimile:  (202) 775-8586
                          Email: rbuch@mckeenelson.com

# Exhibit A

Transcript of the Testimony of **Robert W. Prifti**

**Date:** February 27, 2007
**Volume:**

**Case:** Fidelity International Currency Advisor A Fund, LLC v. United States of America

Printed On: June 4, 2007



ACE·FEDERAL

Ace-Federal Reporters, Inc.
Phone: 202-347-3700
Fax: 202-737-3638
Email: info@acefederal.com
Internet: www.acefederal.com

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

- - - - - - - - - - - - -x

FIDELITY INTERNATIONAL    :

CURRENCY ADVISOR A FUND, :

L.L.C., by the Tax        :

Matters Partner,          :

        Plaintiff,        :    Case Nos.:

   vs.                    :    05-cv-40151 FDS

UNITED STATES OF AMERICA :    06-cv-40130 FDS

       Defendant.        :

- - - - - - - - - - - - -x

DEPOSITION OF ROBERT W. PRIFTI

Washington, DC

Tuesday, February 27, 2007

REPORTED BY:

   JULIE BAKER

1    Deposition of ROBERT W. PRIFTI, called for

2 examination pursuant to notice of deposition, on

3 Tuesday, February 27, 2007, in Washington, DC, at

4 the law offices of McKee Nelson, 1919 M Street, NW,

5 Suite 200, at 10:29 a.m., before JULIE BAKER, a

6 Notary Public within and for the District of

7 Columbia, when were present on behalf of the

8 respective parties:

9

10          RONALD L. BUCH, JR., ESQ.

11          LENA AMANTI, ESQ.

12          MICHELLE ABROMS, ESQ.

13          McKee Nelson LLP

14          1919 M Street, NW

15          Suite 200

16          Washington, DC  20036

17          202-327-2078

18          On behalf of Plaintiff

19

20

21

22                    -- continued --

```
 1 APPEARANCES (Continued):

 2          JOHN A. LINDQUIST, III, ESQ.

 3          HEATHER L. RICHTARCSIK, ESQ.

 4          BARRY E. REIFERSON, ESQ.

 5          United States Department of Justice

 6          PO Box 55

 7          Washington, DC  20044

 8          202-307-6561

 9          On behalf of Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22
```

1 introduced him to the family, and my role was once

2 the New York team did their work, our work would

3 flow into the individual returns, so that's why I

4 say indirectly.

5       Q    The first attachment is a presentation,

6 and turning to page 2, was this transaction

7 presented, if you recall, to the Egans as having

8 both investment and tax aspects?

9       A    Yes, sir.

10      Q    What were the investment aspects?

11      A    Of the meetings that I participated in, a

12 lot of the time, a very high number of hours were

13 spent in gaining an understanding of their

14 investments, their allocations and the challenges

15 that they had because EMC was a stock where Mr. Egan

16 was deemed an insider and couldn't sell or monetize

17 those positions.

18      Q    In the fourth bullet on this same page, it

19 refers to a customized investment structure.

20           Was this presented to the Egans as being

21 customized or unique in any way?

22      A    Yes, customized.

Page 51

1    Q    What was --

2    A    The Egans were not interested in a, for

3 lack of a better word, cookie cutter or shelf

4 transaction.   They were interested in one that was

5 specifically tailored to their business and

6 investment needs, which hopefully had good tax

7 results.

8    Q    If we turn forward to page 6, there's a

9 diagram, you mentioned a moment ago Helios and

10 alpha, they're both noted on that diagram.   Do you

11 recall an individual by the name of Samuel Mahoney?

12   A    Yes, I do.

13   Q    Who do you understand Mr. Mahoney to be?

14   A    My recollection is part of the transaction

15 had a leg of a foreign investor, and Mr. Mahoney was

16 a foreign investor.

17   Q    Page 8 of this document.   The fourth or

18 fifth bullet down refers to "probability and

19 profitability relationships and payoffs based on

20 risk tolerance."

21        Did you have discussions with the Egans

22 concerning risk tolerances, probabilities and

1 brought up, but I don't remember what role or any

2 entities where he may have had involvement.

3      Q      Is it your understanding that John Schrier

4 was an employee of KPMG?

5      A      Absolutely.  He was a partner?  The New

6 York office.

7      Q      Were you at the meeting where the H2

8 transaction was first discussed with the taxpayer?

9      A      I think the best way to answer that, I was

10 at a series of meetings where certain investment

11 structures were discussed.  Whether I was at the

12 ultimate meeting where the transaction was

13 undertaken, I don't recall.

14      Q      Do you have any recollection of the

15 taxpayer ever asking you or anyone at KPMG whether

16 any other KPMG clients had purchased an H2-type

17 transaction?

18      A      I'm not aware of any others.

19      Q      You're not aware of any other H2-type

20 transactions?

21      A      That I'm aware of.

22      Q      Mr. Rivotto never told you of any other

1 H2-type transactions?

2      A      No, he did not.

3      Q      Mr. Speiss never told of any other H2-type

4 transactions that he was involved in?

5      A      Not that I can recall.

6      Q      We talked about this morning that there

7 were a list of four law firms that were on that

8 PowerPoint -- I think was Sidley Austin.  One of the

9 Proskauer.  One was Lord Bissell & Brook and one was

10 Bryan Cave.  Do you have any knowledge as to why

11 there were those four law firms out there as listed

12 and available to render opinions on that H2

13 transaction?

14      A      Any response would be a guess in that

15 area.

16      Q      You don't know why those four firms were

17 listed on that material?

18      A      I do not.

19      Q      Where did that PowerPoint come from that

20 initially described the H2 transaction?

21      A      I would assume that it came from Tim

22 Speiss.

Page 93

1    Q    Were you aware that RSM McGladrey was also

2 marketing the H2 transaction in 2001?

3    A    No, I was not.

4    Q    You were asked a couple times about how

5 the H2 transaction could be customized to the

6 taxpayer's, your client's needs.  I wanted to get a

7 little more detail of exactly how you understood the

8 H2 transaction was, in fact, customized to the

9 Egans' needs?

10    A    Well, my understanding is the H2

11 transaction, as you're calling it, was the premise

12 or the foundation of it may have been a short option

13 type of transaction, but it was customized with

14 various attributes that made a difference than the

15 short option transaction and what fell under notice

16 2000-44.  The exact twists and turns and attributes,

17 I couldn't voice to you what they were.

18    Q    Do you know on what basis it was different

19 from notice 2000-44?

20    A    I do not, sir.

21    Q    Did you at the time?

22    A    I don't think I did at the time,

1      A     I was aware they existed.

2      Q     Did you have any view of those firms in

3 terms of reputation or knowledge in terms of the

4 work that they provided?

5      A     Not one one way or the other, no.

6      Q     With respect to draft returns working in

7 the compliance area, what was your typical approach

8 in handling of draft returns that were not filed?

9      A     Draft returns that were not filed,

10 generally were destroyed.

11     Q     Are you aware whether at any time KPMG was

12 under what's called a promoter examination?

13     A     I'm aware they have an examination going

14 on from the standpoint of a promoter, yes.

15     Q     In terms of the issue of disclosing the

16 Fidelity International transaction, do you know

17 whether the promoter examination was ongoing at that

18 time?

19     A     I do not, sir.

20          MR. BUCH:  I'm all set.

21                    EXAMINATION

22          BY MR. LINDQUIST:

# Exhibit B

## UNITED STATES TAX COURT

RICHARD J. and MAUREEN E. EGAN,    )
                                 )
             Petitioners,    )
                                 )
             v.    )    Docket No.  2088-07
                                 )
COMMISSIONER OF INTERNAL REVENUE,    )
                                 )
             Respondent.    )

## DECISION

Pursuant to the agreement of the parties in this case, it is

ORDERED AND DECIDED: That there is no deficiency in income tax due from, nor overpayment due to, petitioners for the taxable year 2001; and

That there is no penalty due from petitioners for the taxable year 2001, under the provisions of I.R.C. § 6662(a).

(Signed) John O. Colvin

Judge.

Entered:    APR 1 1 2007

\*        \*        \*        \*        \*

Docket No. 2088-07            - 2 -

It is hereby stipulated that the Court may enter the foregoing decision in this case.

DONALD L. KORB
Chief Counsel
Internal Revenue Service

By: _____

STUART M. LEWIS
Counsel for Petitioners
Tax Court Bar No. LS0225
BUCHANAN INGERSOLL & ROONEY PC
1700 K. Street, NW  Suite 300
Washington, DC 20006
Telephone: (202) 452-7900

CAROL E. SCHULTZE
Associate Area Counsel
(Large & Mid-Size Business)
Tax Court Bar No. SC0663
P.O. Box 44085
Washington, DC 20026
Telephone: (202) 874-1321

Date: 4/5/07

Date: 4/10/07