## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case Nos.:  05-40151-FDS<br>06-40130-FDS |

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S MAY 10, 2007 AMENDED MEMORANDUM AND ORDER

This memorandum explains the relevance, for discovery purposes, of documents relating to the IRS's determination that Plaintiff's transaction is "substantially similar" to Notice 2000-44, 2000-36 I.R.B. 255, and relatedly, whether such information is protected from discovery by deliberative process claims.  During the Status Conference on June 5, 2007, the Court asked that the parties submit simultaneous memoranda no later than June 8, 2007 at 4:30pm.  In that conference, the Court noted that "I'm particularly interested in this issue of the penalty."  (Status Conference Tr. 16:14-15.)

Plaintiff's Motion for Reconsideration was directed solely at discovery related to the question of "substantially similar."  Whether FICA A Fund is substantially similar to Notice 2000-44 is relevant to both whether a penalty should be imposed, as asserted by the IRS, and the underlying merits.  Thus, while this is indeed a *de novo* proceeding in which the IRS's proposed

adjustments are given no deference, the IRS's own confusion over whether FICA A Fund is substantially similar to Notice 2000-44 is relevant in determining whether Plaintiff acted reasonably and, therefore, whether the IRS's assertion of penalties was improper. Moreover, such information is not protected by the deliberative process privilege, and Defendant should be ordered to produce the requested documents.[1]

## I.    Penalties

In the Notices of Final Partnership Administrative Adjustment ("FPAA"), the IRS asserted penalties totaling over $25 million, in addition to the $62 million of tax liability that is already at issue. Because the IRS asserted these penalties in the FPAAs, Plaintiff must contest them in this litigation.

### A.    Accuracy-Related Penalties

Section 6662 of the Internal Revenue Code[2] provides the basis upon which the IRS may impose penalties. If applicable, penalties are applied "to any portion of an underpayment of tax required to be shown on a return." 26 U.S.C. § 6662(a). The amount of the penalty is either 20 or 40 percent of the underpayment of tax. 26 U.S.C. § 6662(a), (h). For the penalty to apply, the underpayment must be attributable to any one of five grounds. 26 U.S.C. § 6662(b). The IRS has aggressively asserted penalties on three of those five grounds: negligence or disregard of rules and regulations, substantial understatement of income tax, and substantial valuation misstatement. (Ex. A at 1IRS0820, ¶ 13.) The discovery that is the subject of Plaintiff's Motion

---

[1] Because Defendant asserted a relevance objection, it is unclear whether a reasonable search was conducted, whether all non-privileged documents were produced, or whether all responsive documents have been logged. The fact that responsive documents were produced in response to a Freedom of Information Act ("FOIA") request and not through discovery suggests that a thorough search was not conducted. If the Court reconsiders its relevance holding, Defendant should be required to conduct a search for responsive documents, produce those that are not privileged, and log those that are privileged.

[2] Use of the term "section" refers to sections of the Internal Revenue Code of 1986 as in effect for the years at issue.

for Reconsideration is directly relevant to whether penalties apply. Disagreement within the IRS as to whether Notice 2000-44 applies to Plaintiff's transaction supports Plaintiff's claim that a reasonable person could conclude that Notice 2000-44 does not apply. Similarly, the reasonableness of Plaintiff's conduct may be considered when determining whether the substantial understatement penalty applies.

**B.    The Discovery Sought Is Relevant to Whether the Negligence Penalty Applies**

Penalties are applicable under section 6662(b)(1) if the taxpayer acted negligently or disregarded rules or regulations (hereinafter "negligence penalties"). Negligence is defined in section 6662(c) to include, "any failure to make a reasonable attempt to comply with the provisions of this title." 26 U.S.C. § 6662(c). The Treasury regulations further define negligence to mean "any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return." Treas. Reg. §1.6662-3(b)(1).[3]

Disregard is defined in section 6662(c) to mean "careless, reckless, or intentional disregard" of rules or regulations.[4] The Treasury Regulations further define "careless," "reckless," and "intentional" as follows:

> A disregard … is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. A disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded.

Treas. Reg. § 1.6662-3(b)(2).

---

[3] In 2003, the penalty regulations were amended in several places to explicitly take into account the failure to disclose a reportable transaction. *See* T.D. 9109, 2004-1 C.B. 519. Those amendments do not apply to the years at issue. All citations to Treasury regulations are to the regulations as they apply to the year at issue.

[4] Rules and regulations are defined to include notices issued by the IRS. Treas. Reg. § 1.6222-3(b)(2).

In determining the applicability of the asserted penalty, courts evaluate whether a taxpayer was negligent in his return position under an objective standard. As recently explained by the Ninth Circuit, "The Code defines negligence as 'any failure to make a reasonable attempt to comply with the provisions of [the Code],' and requires the taxpayer to prove he acted with due care. Due care is an objective standard by which the taxpayer must show that he acted as a reasonable and prudent person would act under similar circumstances." *Hansen v. Comm'r,* 471 F.3d 1021, 1028 (9th Cir. 2006) (internal citations omitted); *see also McMurray v. Comm'r,* 985 F.2d 36, 42 (1st Cir. 1993) ("Negligence in this context is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances" (citing *Allen v. Comm'r*, 925 F.2d 348, 353 (9th Cir. 1991)); *Neonatology Assocs., P.A. v. Comm'r*, 299 F.3d 221, 233 (3d. Cir. 2002) ("Generally speaking, the negligence standard as in the tort context is objective, requiring a finding of a lack of due care or a failure to do what a reasonable and prudent person would do under analogous circumstances."); *Schrum v. Comm'r*, 33 F.3d 426, 437 (4th Cir. 1994).

When applying this objective standard to discovery, information concerning the reasonableness of the taxpayer's position is relevant, even if that information was not relied upon or known by the taxpayer. For example, in *Gregg v. United States*, the court found, over the government's relevance objections, that information concerning how other taxpayers reported their transactions was relevant to whether the taxpayer at issue had acted reasonably, explaining:

> I find that the defendant, by assessing and collecting the accuracy-related (negligence) penalty, has placed the reasonableness of plaintiffs' actions … directly at issue in this case.

No. 99-845, 2000 U.S. Dist. LEXIS 8314, at *3 (D. Ore. May 18 2000); *see also Jade Trading LLC. v. United States*, 65 Fed. Cl. 487, 488 (2005) ("Plaintiffs' Administrative Files containing

4

the materials considered by the IRS in formulating the FPAAs are relevant because they contain the underpinnings for the imposition of tax liability and penalties.").  The discovery at issue in this Motion is directly relevant to an objective inquiry as to the reasonableness of Plaintiff's position on his return, and therefore, whether negligence penalties were properly imposed. Because IRS-proposed penalties are at issue, Plaintiff is entitled to such evidence.

Plaintiff's position in this case is that he made a "reasonable attempt" to comply with the internal revenue laws, exercised "reasonable care" in preparing his tax return, exercised "reasonable diligence," and engaged in "the standard of conduct that a reasonable person would observe."  Plaintiff engaged numerous advisors and obtained two legal opinions that discussed the applicability of Notice 2000-44 to Plaintiff's transaction.  Plaintiff's return position that FICA A Fund was not substantially similar to Notice 2000-44 was based on the advice received from reputable law firms.  Once the audit was initiated, Plaintiff engaged additional advisors who provided IRS personnel at various levels with detailed explanations as to why Plaintiff's transaction was distinguishable from Notice 2000-44.

Documents received in response to a FOIA request evidence an array of material that was available to IRS personnel for purposes of determining the applicability of Notice 2000-44 to transactions they encountered during an audit, including tool-kits, questionnaires, Frequently Asked Questions, and outlines of specific types of transactions, none of which was available to Plaintiff when he was determining whether Notice 2000-44 was applicable to his transaction.[5] In spite of all the internal IRS materials provided to assist field agents, the IRS needed the

_____

[5] A FOIA request was submitted on Plaintiff's behalf after the IRS concluded its examination and months before the Complaint was filed in 2005.  Defendant casts unfounded aspersions in its Sur-Reply to Plaintiff's Motion to Compel Discovery at pages 1 and 2.  By availing himself of his statutory rights under FOIA, Plaintiff exposed Defendant's failure to produce these documents in response to Plaintiff's discovery requests.  Defendant's failure to produce these documents further illustrates the prejudicial nature of "pattern evidence" because Plaintiff lacks access to the information in Defendant's possession, which Defendant has taken advantage of to identify its pattern. Further preclusion from such discovery into IRS files only increases this prejudice.

assistance of the IRS Office of Chief Counsel, which took over five months to determine whether

Notice 2000-44 was applicable to FICA A Fund.  Moreover, evidence that individuals at the IRS

believed that Plaintiff's transaction was not substantially similar to Notice 2000-44, or that there

was uncertainty as to whether Plaintiff's transaction was substantially similar to Notice 2000-44,

is relevant to the objective inquiry of whether Plaintiff acted reasonably.  There is evidence that

the IRS was "wishy washy" in its efforts to determine if FICA A Fund was substantially similar

to Notice 2000-44.  (Ex. B.)  Accordingly, the Court should permit Plaintiff to obtain discovery

that will assist the Court in making an objective inquiry into whether the taxpayer made a

reasonable attempt to comply with internal revenue laws, or took reasonable care in preparing his

return.

>    **C.    The Discovery Sought Is Relevant to Whether the Substantial
>           Understatement Penalty Applies**

Penalties are applicable under section 6662(b)(2) if an understatement is attributable to

"[a]ny substantial understatement of income tax."  Such penalties may be reduced "if there is or

was substantial authority for such treatment."  26 U.S.C. § 6662(d)(2)(B)(i).  If the transaction is

considered a "tax shelter," to reduce the amount of the penalty, the taxpayer must further

demonstrate that he "reasonably believed that the tax treatment of such item … was more likely

than not the proper treatment."  26 U.S.C. § 6662(d)(2)(C)(i)(II).  Belief alone is not enough; that

belief must be reasonable.  *See, e.g., CMA Consol., Inc. v. Comm'r*, 89 T.C.M. (CCH) 701

(2005); *Santa Monica Pictures, L.L.C. v. Comm'r*, 89 T.C.M. (CCH) 1175 (2005).

Defendant has already aggressively challenged the reasonableness of Plaintiff's belief

concerning the tax treatment of FICA A Fund, including specifically the substantially similar

question.  *See* Opp'n to Pl.'s Mot. for Recons. of Order Den. Pl.'s Mot. to Compel Disc. ("Def.'s

Opp'n") at 8.  Where Defendant calls into question the reasonableness of Plaintiff's reliance on

his advisors, materials reflecting the certainty, or uncertainty, of the administrative agency with responsibility for promulgating the very rules considered by those advisors is relevant to the reasonableness of Plaintiff's reliance.  Moreover, the factual elements underlying the IRS's substantially similar determination including comparisons to other transactions may well lead to evidence helpful to Plaintiff's defense against Defendant's pattern.

## II.     The Substantially Similar Discovery Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence

In addition to the question of penalties, discovery into the "substantially similar" question is reasonably calculated to lead to the discovery of two particular categories of evidence: potential "pattern evidence" and evidence of the facts that make a transaction substantially similar to Notice 2000-44.  Notably, this discovery is not sought because of reliance on the IRS at the time Plaintiff entered into the FICA A Fund transaction or filed his or the partnership's returns.  Instead, this discovery is sought to identify evidence of those facts that make transactions substantially similar to Notice 2000-44.  Defendant has already increased to a high volume its allegations of "unreasonable" beliefs, actions, and reliance by Plaintiff, and yet wants to hide evidence in the IRS's files that is or will lead to facts that are inconsistent with these allegations.

To date, Defendant has dictated what might constitute a pattern.  But, Plaintiff is entitled to conduct discovery into the appropriateness of Defendant's supposed pattern or whether Defendant's supposed pattern is the only pattern that exists.[6]  Defendant's pattern was developed with information uniquely available to the government.  The IRS conducted audits of KPMG, Sidley Austin, and other firms, where it gathered information that was not available to Plaintiff

---

[6] Plaintiff continues to maintain that Plaintiff and Defendant have been held to fundamentally different standards of discovery.  Defendant's own Opposition highlights the difference when it contrasts the standard imposed on Plaintiff as "essential [or] required for proper preparation" with a standard of " potentially relevant" imposed on Defendant. Def.'s Opp'n. at 9.

either during the taxable years at issue or at the time the complaints were filed. This inside information ultimately led Defendant to seek discovery from third parties that it believes might have information relevant to the design of a transaction that it believes led to FICA A Fund.

The Court has been permissive in allowing Defendant to pursue discovery of entities that had no relationship with the Plaintiff and about which Plaintiff had no knowledge. But it is clear that there are other patterns and other relevant transactions. Documents received both through discovery and through FOIA show that when the IRS was considering the application of Notice 2000-44 to Plaintiff's transaction, it engaged in a side-by-side analysis with other transactions. For example, the revenue agent's "Examining Officer's Activity Log" states that the agent held a "Conference call with Group Manager Sidney Saewitz of Cincinnati. Group has similar case. Went over basic fac[ts] of transactions." (Ex. C at 1IRS1131.) By seeking discovery into "substantially similar," Plaintiff is attempting to gather evidence of those transactions that Defendant has not seen fit to include in its pattern and evidence of the facts that should be considered in determining whether a transaction is substantially similar to Notice 2000-44.

Similarly, as revealed by the FOIA documents, one transaction discussed in connection with FICA A Fund is referred to as the "distressed debt deal." (Ex. D at 27.) In a coordinated issue paper, the IRS determined, without explanation, that this transaction is not substantially similar to Notice 2000-44.[7] The IRS saw enough similarity between FICA A Fund and the distressed debt transaction to consider them together. Plaintiff should be entitled to discover the facts of a transaction that was evaluated in connection with FICA A Fund.

---

[7] Coordinated Issue Paper - Distressed Asset/Debt Tax Shelters, Tax Notes Today (April 18, 2007) (LEXIS, FEDTAX lib., TNT file, elec. cit. 2007 TNT 79-11 n.4). A coordinated issue paper is an IRS document that identifies key issues, establishes a consistent position with respect to those issues, and is binding on the examination function with respect to those issues. *See* I.R.M. § 4.51.2.4 (Dec. 9, 2005). These documents are publicly available.

Another transaction that was considered by the IRS in conjunction with its consideration of FICA A Fund is PICO. (Ex. B.) According to one publicly available document, PICO involves straddles on foreign currencies, where gain positions are terminated and allocated principally to one investor.[8] After that investor is redeemed, the loss positions are terminated and allocated to the remaining investor. Both partnership and S corporation variants of this transaction were identified in two IRS notices, neither of which invokes, or even mentions, Notice 2000-44. *See* Notice 2002-50, 2002-29 I.R.B. 173, Notice 2002-65, 2002-43 I.R.B. 729. Obtaining documents that distinguish PICO from FICA A Fund is relevant to establishing whether FICA A Fund is substantially similar to Notice 2000-44.

Beyond these specific examples, Plaintiff's discovery is generally designed to lead to the discovery of the essential facts underlying a Notice 2000-44 transaction.[9] In this case, Defendant has been granted discovery from unrelated and uninvolved third parties for the purpose of gathering what it expects to be the DNA of the FICA A Fund transaction. There is similar DNA on the substantially similar issue. From the Court's perspective, a substantially similar analysis will involve two key issues: first defining the metes and bounds of substantially similar and then contrasting the FICA A Fund transaction with the transactions described in

---

[8] Compl. at 21-25, *Abessinio v. Ernst & Young LLP*, No. 06-02777 (S.D.N.Y. filed Apr. 10, 2006).

[9] It is also worth noting that Defendant seeks to expand the Court's holding to nearly all IRS files. The effect of the Court's ultimate answer to this question goes beyond the narrow discovery requests that are at issue. For example, the IRS publicly stated that a transaction known as "HOMER" is not a listed transaction, which by definition means that it is not substantially similar to Notice 2000-44. (Ex. E.) Plaintiff has little access to information concerning HOMER, however, as evidenced by a complaint filed in a civil case, it appears that HOMER involves a contribution of partially offsetting European-style digital foreign currency options to a pass-through entity. Compl. at 21, *Wilson v. Deutsche Bank AG*, No. 05-03474 (N.D. Ill. Filed June 13, 2005). When Plaintiff sought discovery of IRS files describing HOMER, Defendant refused to produce anything, citing to this Court's May 10, 2007 Amended Memorandum and Order. Given the similarity of at least one key element, the facts underlying why HOMER is not substantially similar to Notice 2000-44 should be relevant in the FICA A Fund matter.

Notice 2000-44.[10]  The term "substantially similar" as used in Treasury Regulation section

1.752-6 is undefined.  IRS materials will shed light on that definition, *i.e.*, the test to be applied.

Those materials will also expose the DNA of a Notice 2000-44 transaction for the purpose of

contrasting it with FICA A Fund.

## III.     Applications and Explanations of Agency Policy Are Not Protected by the Deliberative Process Privilege

In the June 5, 2007 Status Conference, the Court observed that the withheld material

"seems to me to be the quintessentially deliberative process."  (Status Conference Tr. 11:11-12.)

While the items listed on the privilege log contain discussions within the agency, such materials

are not protected by the deliberative process privilege for two reasons, 1) the discussions do not

relate to a formulation of agency policy, rather, they relate to application of agency policy to the

facts of a specific case, and 2) to the extent individuals at the National Office or higher levels of

the IRS communicate with members of the audit team, such communications are considered an

explanation of agency policy rather than a formulation of agency policy.

The Government has the burden to establish that the deliberative process privilege

applies.  *See Massachusetts v. United States Dep't of Health and Human Servs.*, 727 F.Supp. 35,

43 (D. Mass. 1989).  Even if a document contains the elements of the deliberative process

privilege, nondisclosure is not automatic because the privilege is "a discretionary one" requiring

a "balancing of the evidentiary need against the harm that may result from disclosure."  *Texaco*

*P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) (citations omitted).

When engaging in this balancing test, the Court should consider "the interests of the litigants,

society's interest in the accuracy and integrity of factfinding, and the public's interest in honest

---

[10] Likewise, in the area of copyright law, the First Circuit has acknowledged, "Substantial similarity is an elusive concept, not subject to precise definition" and often requiring "expert testimony, to assess whether there are sufficient articulable similarities."  *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606, 608 (1st Cir. 1988).

and effective government." *Id.* The First Circuit has further noted that the privilege may be overcome "by a showing that the information sought is 'relevant, helpful, and unavailable from other sources.'" *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004) (quoting *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984)). In this case, Plaintiff's need is very high because of the aggressive penalty assertions and broad claims of unreasonableness coming from the government.

The documents at issue are not protected by the deliberative process privilege. Even if the documents were protected, a balancing of the interests requires their disclosure, because the Court has an interest in complete and thorough factfinding and the documents are unavailable elsewhere.

### A.    The Deliberative Process Privilege Does Not Shield Discussions Regarding a Particular Case

The documents at issue in this Motion, those relating to the IRS's decision that FICA A Fund is substantially similar to Notice 2000-44, reflect the application of an agency policy to specific facts of the FICA A Fund case, rather than the formulation of agency policy. In *Safeway, Inc v. Internal Revenue Service*, the court held that the documents relating to Plaintiff's audit were not protected by the deliberative process privilege because "they are related not to the adoption of agency policy, but rather to the execution of policies that have already been adopted. In other words, the IRS's decision-making about the extent of Plaintiff's tax liability is not the sort of deliberative process meant to be addressed by the privilege." No. 05-3182, 2006 U.S. Dist. LEXIS 81078, at *26 (N.D. Cal. Oct. 24, 2006).

Applying this precedent, the items in the Declaration of Margo L. Stevens (filed with Def.'s Resp. to Pl.'s Mot. to Compel Disc., hereinafter "Declaration") would not be protected by deliberative process privilege. For example, item (g) of the Declaration describes an e-mail

11

chain regarding how other cases apply to Plaintiff's examination.  Similarly, items (a), (c), (d), (h), (m), (o), (q), (r), (u), (v), (w), (y), (z), (aa), (bb), (cc), and (dd) of the Declaration appear to relate solely to the facts of Plaintiff's case or the application of agency policy to the facts of Plaintiff's case.  Because these documents reflect discussion within the agency about how to apply established agency policy, *i.e.*, Notice 2000-44, to the facts of Plaintiff's case, they are not deliberations regarding the formation of agency policy and are not protected by the deliberative process privilege.

> **B.      The Deliberative Process Privilege Does Not Apply to Communications that Are Not Predecisional or Deliberative**

Plaintiff is seeking documents that explain the IRS's position that Plaintiff's transaction is substantially similar to Notice 2000-44.  Documents explaining that position are not protected by deliberative process privilege because they are neither "predecisional" nor are they "deliberative."  *Texaco P.R.*, 60 F.3d at 884-85 ("Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded.").  Many of the documents identified in the Declaration are not protected by the deliberative process privilege because they post-date the decision or because they merely reflect communications of that decision.  The IRS informed Plaintiff of its decision that FICA A Fund is substantially similar to Notice 2000-44 on February 22, 2005.  Items (f) and (u) of the Declaration post-date that communication and, therefore, cannot be protected by the deliberative process privilege.

In accordance with the "predecisional" requirement, communications to a subordinates are generally not protected by the deliberative process privilege because they are reflective of a decision.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)

(observing that "a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made."); *see also Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) and cases cited therein. The District of Massachusetts has also clarified that to be "predecisional" the document must be "received by the decision-maker." *Massachusetts v. HHS,* 727 F.Supp. at 43 (citations omitted). Similarly, the Supreme Court recognizes that the deliberative process privilege does not apply to documents that are transmitted to subordinate personnel because the person "who receives [the documents] has no decision to make." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 155 (1975). Many of the documents cited in the Declaration reflect advice being provided by senior IRS personnel to subordinates, including items (a), (e), (g), (n), (o), (q), (r), and (s). Because the predecisional element of the deliberative process privilege is lacking, the privilege does not apply.

      **C.     The Deliberative Process Privilege Is Applied Narrowly to IRS Legal Analyses**

With respect to the application of the deliberative process privilege to IRS decision-making, the seminal case of *Tax Analysts v. Internal Revenue Service* established that advice from the IRS Office of Chief Counsel to field agents in the form of "Field Service Advice" memoranda is not protected by the deliberative process privilege because "FSAs are themselves statements of an agency's legal position and, as such, cannot be viewed as predecisional." 117 F.3d 607, 617 (D.C. Cir. 1997). The D.C. Circuit further noted that "the public can only be enlightened by knowing what the national office believes the law to be." *Id.* at 618. The court based its holding, in part, on established precedent that deliberative process privilege does not protect the legal conclusions of an agency that are shared with field personnel, because "an

13

agency will not be permitted to develop a body of 'secret law.'" *Id.* at 617 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)).[11]

After repeated litigation over this type of guidance, Congress codified this holding in the Internal Revenue Code by requiring that advice provided by the IRS Office of Chief Counsel be disclosed to the public. *See* 26 U.S.C. § 6110(i). Under section 6110(i)(1)(A), Chief Counsel advice is broadly defined as "written advice or instruction, under whatever name or designation, prepared by any national office component of the Office of Chief Counsel which -- (i) is issued to field or service center employees of the Service or regional or district employees of the Office of Chief Counsel; and (ii) conveys … (II) any Internal Revenue Service or Office of Chief Counsel position or policy concerning a revenue provision." "Revenue provision" is further defined to include any "published or unpublished guidance … either in general or as applied to specific taxpayers." 26 U.S.C. § 6110(i)(1)(A), (B). By enacting this provision, Congress evidenced an intent that advice provided by the IRS Office of Chief Counsel Office be available to the public, thus the deliberative process privilege does not apply. This intent was memorialized in the Conference Report, where Congress stated that "written documents issued by the National Office of Chief Counsel to its field components and field agents of the IRS should be subject to public release…. In this way, all taxpayers can be assured of access to the

---

[11] The deliberative process privilege does not apply to documents discussing an agency's application of the law to specific facts because withholding such documents would enable the agency to develop "secret law." The rational for precluding application of the deliberative process privilege to those documents was explained by the D.C. Circuit:

> [T]he policy of promoting the free flow of ideas within the agency does not apply here, for private transmittals of binding agency opinions and interpretations should not be encouraged. These are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public. Thus, to prevent the development of secret law within the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it.

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971). The agency's interpretation and application of the law is exactly what is being sought by Plaintiff.

'considered view of the Chief Counsel's national office on significant tax issues.'"  H.R. Rep.

No. 105-599 at 299 (1998) (Conf. Rep.) (citing *Tax Analysts*, 117 F.3d at 617).  Such advice is

what is at issue in Plaintiff's Motion, that is, the advice provided by the IRS Office of Chief

Counsel regarding its determination that FICA A Fund is substantially similar to Notice 2000-44.

In a case discussing the protection of advice provided by IRS counsel to the audit team of

a specific taxpayer, the court, relying on *Tax Analysts*, held that such advice is not protected by

the deliberative process privilege.  In *Ginsberg v. Internal Revenue Service*, the court held that a

legal memorandum provided by district counsel to a revenue agent was not protected by the

deliberative process privilege because "the legal memorandum provides instruction and legal

interpretation of provisions of the Internal Revenue Code to the agents conducting this civil

examination.  While the court agrees that such advice and interpretation is pre-decisional … it

nonetheless forms the operative body of law found applicable to these taxpayers in this civil

examination."  No. 96-2265, 1997 U.S. Dist. LEXIS 21836, at *11 (M.D. Fla. Dec. 23, 1997).

The item lettered (s) on the Declaration represents the same type of advice provided from

counsel to field personnel interpreting the internal revenue law for the agents conducting the

examination.  Under *Ginsberg*, such a document would not be protected by the deliberative

process privilege.  Moreover, the other documents identified in the Declaration consisting of

advice and interpretations being provided to subordinates reflect the agency's policy and not the

formulation of that policy.  Therefore, such documents are not predecisional and are not

protected by deliberative process privilege.

## **CONCLUSION**

Plaintiff should be entitled to discovery concerning the IRS's determination that FICA A

Fund is substantially similar to Notice 2000-44.  By asserting penalties in this case, the IRS has

called into question the reasonableness of Plaintiff's actions and beliefs.  Materials showing that

IRS officials were conflicted over the question of substantially similar are directly relevant to the

issue of reasonableness.  Moreover, those materials are reasonably calculated to lead to the

discovery of admissible evidence concerning those facts that make a transaction substantially

similar to Notice 2000-44, which is relevant to the underlying merits of this case.  The

documents at issue are not protected by the deliberative process privilege, both because they do

not relate to the formulation of agency policy and because they are not part of the policy

decision-making process.  Even if such documents meet the requirements of the deliberative

process privilege, it is a qualified privilege involving a balancing test that weighs in favor of

Plaintiff.  Accordingly, the Court should order Defendant to conduct a thorough search and

produce the responsive documents.


       Dated this 8th day of June 2007.


               PLAINTIFF
               FIDELITY INTERNATIONAL CURRENCY ADVISOR
               A FUND, L.L.C., by the Tax Matters Partner


               /s/ Ronald L. Buch, Jr.
               David J. Curtin, D.C. Bar #281220
               Ronald L. Buch, Jr., D.C. Bar #450903
               Lena Amanti, D.C. Bar #490791
               MCKEE NELSON LLP
               1919 M Street, N.W., Suite 200
               Washington, D.C. 20036
               Telephone:  (202) 775-1880
               Facsimile:  (202) 775-8586
               Email:  dcurtin@mckeenelson.com
                     rbuch@mckeenelson.com
                     lamanti@mckeenelson.com

16

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 8, 2007.

/s/ Ronald L. Buch, Jr.
Ronald L. Buch, Jr., D.C. Bar #450903
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

**Internal Revenue Service**

316 North Robert Street
St. Paul, Minnesota 55101

Date:  **APR 0 6 2005**

Tax Matters Partner
Fidelity International Currency Advisor A Fund, LLC
87 Elm Street
Hopkinton, MA. 01748

**Department of the Treasury**

Refer To
  ESB Stop 4020BK
Taxpayer Identifying Number:
  36-4381795
Name of Partnership
  Fidelity International Currency Advisor A
Partnership Identifying Number:
  36-4381795
Tax Year Ended
  December 31, 2001
Date FPAA Mailed to Tax Matters Partner

**APR 0 6 2005**

Person to Contact
  Bill Kahnke
  41-03606
Contact Hours
  8.00 am to 4:30 pm
Contact Telephone Number:
  (651) 312-7909

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above  We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997.

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U



1IRS0809

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

     1. the United States Tax Court;
     2. the United States Court of Federal Claims; or
     3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

              **United States Tax Court**
              **400 Second Street, NW**
              **Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

                               **Letter 1830 (DO) (Rev. 3-2001)**
                               Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Kevin Harris
Technical Services Territory Manager, Midwest Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

1IRS0811

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind, a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

1IRS0812

| Form 870-PT (8-2004) | DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO<br><br>ESB Stop 4020 |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code:<br><br>**Tax Matters Partner**<br>**Fidelity International Currency Advisor A Fund, LLC**<br>**87 Elm Street**<br>**Hopkinton, MA. 01748**<br><br>Taxpayer Identifying Number: 36-4381795 | Name of Partnership:<br>**Fidelity International Currency Advisor A Fund, LLC**<br><br>Taxpayer Identifying Number. 36-4381795<br><br>Name of Tax Matters Partner<br><br>**Helios Trading, LLC** | Tax Year(s) Ended<br><br>**December 31, 2001** |
|---|---|---|

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts
### &
### Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement; plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact  In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed |
|---|---|
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

Cat. No  57315H          WWW IRS GOV          (See Instructions for Signing Agreement)          Form **870-PT** (8-2004)

1IRS0813

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

Cat. No 57315H                     www.irs.gov                     Form **870-PT** (8-2004)

1IRS0814

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

## Agreement for Partnership Items and Partnership Level Determinations
## as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Fidelity International Currency Advisor A Fund, LLC | | | |
| | 12/31/2001 | | |
| TAXPAYER IDENTIFYING NUMBER: 36-4381795 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | 0.00 | | |
| OTHER ADJUSTMENTS | ███████ | | |
| A.  CAPITAL CONTRIBUTIONS | | | |
| (1)  ADJUSTMENT | (164,702,351) | | |
| (2)  AS REPORTED | 164,702,351 | | |
| (3)  CORRECTED | 0 00 | | |
| B.  PORTFOLIO INCOME (LOSS) – INTEREST INCOME | ███████ | | |
| (1)  ADJUSTMENT | (4,712.00) | | |
| (2)  AS REPORTED | 4,712 00 | | |
| (3)  CORRECTED | 0.00 | | |

REMARKS

- **Reference Exhibit A Attached.**

**Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, Paragraph 13, for a description of the penalties.**

**\* See Exhibit A, Paragraph 4.**

---

Cat. No 57315H                      www.irs.gov                      Form **870-PT** (8-2004)

1IRS0815

# Form 870-PT, Other Adjustments (Continued)

|  | | | |
|---|---|---|---|
| | Page ____ of ____ | | |
| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
| Fidelity International Currency Advisor A Fund, LLC<br><br>TAXPAYER IDENTIFYING NUMBER  36-4381795 | 12/31/2001 | | |
| **C.  OUTSIDE PARTNERSHIP BASIS** | | | |
| (1)  ADJUSTMENT | (147,750,000.00) | | |
| (2)  AS REPORTED | 147,750,000.00 | | |
| (3)  CORRECTED | **0.00\*** | | |
| **D   OTHER INCOME (LOSS)** | | | |
| (1)  ADJUSTMENT | 4,138,665.00 | | |
| (2)  AS REPORTED | (4,138,665.00) | | |
| (3)  CORRECTED | 0 00 | | |
| **E.  DEDUCTIONS RELATED TO PORTFOLIO INCOME** | | | |
| (1)  ADJUSTMENT | 34.00 | | |
| (2)  AS REPORTED | 34.00 | | |
| (3)  CORRECTED | 0.00 | | |
| **F.  INVESTMENT INCOME INCLUDED IN PORTFOLIO INCOME** | | | |
| (1)  ADJUSTMENT | (4,712.00) | | |
| (2)  AS REPORTED | 4,712.00 | | |
| (3)  CORRECTED | 0.00 | | |
| **G.  INVESTMENT EXPENSES INCLUDED IN DEDUCTIONS RELATED TO PORTFOLIO INCOME** | | | |
| (1)  ADJUSTMENT | 34.00 | | |
| (2)  AS REPORTED | 34 00 | | |
| (3)  CORRECTED | 0.00 | | |
| **H.  TAX-EXEMPT INTEREST INCOME** | | | |
| (1)  ADJUSTMENT | (5,926 00) | | |
| (2)  AS REPORTED | 5,926 00 | | |
| (3)  CORRECTED | 0.00 | | |
| **I.  NONDEDUCTIBLE EXPENSES** | | | |
| (1)  ADJUSTMENT | 290 00 | | |
| (2)  AS REPORTED | 290 00 | | |
| (3)  CORRECTED | 0.00 | | |

Cat. No  57315H                    www.irs.gov                    Form **870-PT** (8-2004)

1IRS0816

**Form 870-PT, Other Adjustments (Continued)**

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Fidelity International Currency Advisor A Fund, LLC<br><br>TAXPAYER IDENTIFYING NUMBER  36-4381795 | 12/31/2001 | | |

| J  DISTRIBUTIONS OF MONEY | | | |
|---|---|---|---|
| (1)  ADJUSTMENT | (6,408 00) | | |
| (2)  AS REPORTED | 6,408 00 | | |
| (3)  CORRECTED | 0 00 | | |

1IRS0817

"Notice 2000-44 Case"

**FPAA**
EXHIBIT A

1. It is determined that neither Fidelity International Currency Advisor A Fund, LLC nor its purported partners have established the existence of Fidelity International Currency Advisor A Fund, LLC as a partnership as a matter of fact.

2. Even if Fidelity International Currency Advisor A Fund LLC existed as a partnership, this purported partnership was formed and/or availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners and engaging in the options transactions. The formation of Fidelity International Currency Advisor A Fund, LLC, the acquisition of any interest in this purported partnership by its purported partners, its purchase and sale of offsetting options, its transactions involving said options, the transfer of offsetting options to Fidelity International Currency Advisor A Fund, LLC in return for a partnership interest, and the transfer of partnership interests in Fidelity International Currency Advisor A Fund, LLC among its partners, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, Fidelity International Currency Advisor A Fund, LLC and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases to the adjusted basis of partnership interests are not allowed for federal income tax purposes; and (3) the splitting of gains and losses from these options transactions among the partners of Fidelity International Currency Advisor A Fund, LLC is not allowed.

3. It is determined that Fidelity International Currency Advisor A Fund, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and/or availed of in connection with a transaction or transactions in taxable year 2001, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

    a. Fidelity International Currency Advisor A Fund, LLC is disregarded and that all transactions engaged in by this purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC, including but not limited to options, were acquired directly by its purported partners.

    b. the option(s), purportedly contributed to, acquired by, or assumed by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC, are treated as never having been contributed to, acquired by, or assumed by said partnership and any gains or losses purportedly realized by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC on the option(s) are treated as having been realized by its

I

"Notice 2000-44 Case"

**FPAA**
**EXHIBIT A**

partners.

c. the purported partners of FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC should be treated as not being partners in FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC.

d. contributions to FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

e. Allocating gains and losses from the options transactions among the partners of Fidelity International Currency Advisor A Fund, LLC will not be recognized.

4. It is determined that the obligations under the short positions (written call options) transferred to FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC shall reduce the purported partners' bases in FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC in the amount of $147,750,000, but not below the fair market value of the purported partnership interest.

5. It is determined that neither FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC nor its purported partners entered into the option(s) positions with a profit motive for purposes of § 165(c)(2).

6. It is determined that, even if the option(s) are treated as having been contributed to FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partner(s) and FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC. by $147,750,000. Consequently, any corresponding claimed increases in the outside basis in FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC resulting from the contributions of the option(s) are disallowed.

7. It is determined that the adjusted bases of the long call positions (purchased call options), and other contributions purportedly contributed to FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC by its partners has not been established under I.R.C. § 723. It is consequently determined that the partners of FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

8. It is determined that the purchase of each option by a contributing partner and the simultaneous sale of an offsetting option to the same counterparty constituted, in fact, the acquisition of a single, unitary

2

1IRS0819

"Notice 2000-44 Case"

## FPAA
### EXHIBIT A

position by the contributing partner and that, as such, the contributing partner's basis in the partnership interest created on the contribution of the offsetting position to the partnership is limited to the difference between the amount paid on the purported purchase of one option and the amount credited on the purported sale of the offsetting option.

9. It is determined that the purported termination of the gain legs of the option spreads acquired by the partnership and the immediate replacement of the purportedly terminated legs with legs providing the partnership with the same legal entitlements as those provided by the terminated legs did not constitute a sale or exchange for federal income tax purposes. No gain or loss was realized on the purported termination of the legs in question and the partnership's adjusted basis in the purportedly terminated legs is decreased to reflect the non-recognition of the gain.

10. It is determined that the Section 988 loss of $4,138,665 claimed by Fidelity International Currency Advisor A Fund, LLC from its options' transactions is disallowed as it has not been established that such loss was incurred and is deductible under any provision of the Internal Revenue Code including, but not limited to, I.R.C. Section 165.

11. It is determined that the loss of $158,630,921, claimed by Fidelity International Currency Advisor A Fund, LLC from its options' transactions and reported on Schedule K-1 for its partner, Richard J. Egan is disallowed as it has not been established that such loss was incurred and is deductible under any provision of the Internal Revenue Code including, but not limited to, I.R.C. Section 165.

12. It has not been established that Samuel Mahoney became a partner in FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC or that he contributed $651,000 in exchange for an interest in the partnership.

13. It is determined that the adjustments of partnership items of FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the

3

1IRS0820

"Notice 2000-44 Case"

## FPAA
## EXHIBIT A

partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.   It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC.   The penalty shall be imposed on the components of underpayment as follows:

A.  a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B.  a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C.  a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D.  a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3),  and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

4

1IRS0821

# Exhibit B

Message                                                                                    Page 1 of 2

## Russ Cary

**From:**    Wilson Bill

**Sent:**    Thursday, June 09, 2005 9:45 AM

**To:**      Russ Cary

**Subject:** FW: Son of Boss PICO Hybrids

Cary:

Here is an email where I am asking for guidance on FPAAs on the hybrid.

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd.
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

-----Original Message-----
**From:** Poindexter Carol J
**Sent:** Tuesday, February 22, 2005 1:58 PM
**To:** Wilson Bill
**Cc:** Fee James C
**Subject:** RE: Son of Boss PICO Hybrids

If an FPAA is issued, then it is issued for the entire tax return, not a specific issue.  Therefore, no Appeals.

Are the transactions separate transactions or the same transaction?  I would say that if they are separate transactions, then they MIGHT be able to go to fast track on the PICO issue, but ONLY if the PICO issue champion allows it.  If they don't agree with the SOB transaction, however, then they are going to get FPAA's anyway and it's a moot point - FPAA both issues.  If they are one transaction, then I don't see any way to separate out the 2 issues and treat them separately.

CC needs to decide which listed transaction these belong to and not be so wishy washy and say both, especially if they are one transaction and not two separate transactions on the same tax return.

      -----Original Message-----
      **From:** Wilson Bill
      **Sent:** Tuesday, February 22, 2005 1:47 PM
      **To:** Poindexter Carol J
      **Cc:** Fee James C
      **Subject:** Son of Boss PICO Hybrids

On the unagreed Son of Boss PICO Hybrids, I understand that if the taxpayer does not sign an extension, we issue and FPAA by default to protect the statute. No appeal (although could be settled by counsel/appeals in the post FPAA period). But what about cases where they are willing to sign 872-Ps in order to get appeals rights, assuming, at least, that the PICO portion will be appealable? Most well represented taxpayers are not going to sign extensions unless they have a chance for appeal rights.  In some cases, this question is being asked specifically.

Chief Counsel has opined that these are similar to both SOB and PICO, but has left the determination with respect to administrative appeal rights with compliance. I vote for Jim's recommendation (no appeal rights - not practical to bifurcate the transactions), but we need to advise the field soon as to what to be advising taxpayers when requesting these extensions. Reps will surely ask if signing an extension will allow them to go to appeals.

# Exhibit C

 

# Examining Officer's Activity Record

| EXAMINING OFFICER'S ACTIVITY RECORD | Examining Officer William Conway | Date Assigned/Opened |
|---|---|---|
| Taxpayer (use preprinted label if possible)<br>Name    Fidelity International Currency Advisor A<br>           Fund ,LLC<br>Address  C/O Michael J. Egan, Manager<br>           116 Flanders Road. Suite 3000<br>           Westboro, Ma. 01581<br>Business Name: Same<br>Address<br><br><br>Phone Business ( 508  )898-3800 ext 352<br>           Fax (   ) | Taxpayer's Representative.<br>Patrick Shea CPA  See Form 2948 for additional POA/,<br>Name<br>Address<br><br>                _____ TP Auth/ | |

## Contacts and Activities

| Date | Loc. | Cont. | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 5/7/2004 | | | 8 | Case assigned. Referrals made by Team Manç for international and Financial Products. Read through information provided with case file. Call received from Chief Counsel Atty John Aletta. He will be assigned counsel on case. Copy of Partnership return faxed to  John Alet Discussed case with manager. Researched possible Son of Boss issues and transactions |
| 5/11/04 | | | | Case assigned to Mark Corrigan financial specialist.  Per discussion with manager Peter McIntyre will be international agent assigned t case. Appointment letter prepared. Appt to be scheduled for 6/21/04 Pub 1 and Noitce sent to taxpayer |
| 5/17/04 | | | 8 | Taxpayer (Egan) will be sent settlement offer. Not sure if what version Son of Boss Case but offer will be sent per direction Tax Rod Oakes. |
| 5/19/2004 | | | 4 | Started researching 988 losses. Son of Boss transactions. |
| 06/01/2004 | | | | Started preparing audit plan. Planning meeting will be held prior to initial interview.  Started preparing initial letters. NBAP will be delivered on first day of appointment.<br>Appt Letter for TMP returned undeliverable Appt letter for Ptr. Returned undeliverable.<br><br>New address 116 Flanders Rd. Westboro, Ma. Appt. Letter prepared with current date and |



PLAINTIFF'S EXHIBIT
WC- 1

1IRS1129

 

# Examining Officer's Activity Record

| | | | | |
|---|---|---|---|---|
| | | | | hand delivered to 116 Flanders Rd.<br><br>Research Halt memo and effect on case. |
| 6/1/04 | | | 4 | Disk received from Tim Erickson. Copied and mailed to John Aletta. |
| | | | 7 | Telephone call from John Aletta. He received disk. Discussed transaction. Transaction has some elements of Son of Boss. Advised John Aletta that I would be sitting down with Mark Corrigan Financial Products Specialist on Jun 14. |
| 6/14/04 | | | 4 | Telephone call made to Pat Shea. Requested corrected address for TMP. Appointment scheduled for June 21, 2004 will be cancelled. Mr. Shea stated that he is putting together Information. Agent will call on June 21, 2004 to get status of information.<br><br>Met with Revenue Agents Mark Corrigan and Berny Kaufman financial specialist agents. We through case with agents. Went through transactions. |
| 6/15/04 | | | 6 | Researching currency options. Went through information that Mark Corrigan put together. Mark will analyze the specific option transactions and underlying currency transactions and brokerage statements. He wi put the information into program to address th economic reality issue of the transaction. |
| 6/21/04 | | | | Related taxpayer will file settlement offer on th transaction. Discussed case with Pat Shea taxpayers POA. Requested that the examinati be scheduled in August do to vacations and end of quarter reports. Mr. Shea stated it will take some time to get all the information completed but wants it to be complete when I out. He suggested August 16th but called bacl requestuing August 23rd. Advised POA that it will be expected that all information be provided. Appt will be August 16th |
| 7/21/04 | | | 8 | Pre-Planning meeting held with International, Financial Products , Counsel along with Group Manager Debra Morrill, International Manager Denis McSweeney and International Territory manager Stan Locke. Case discusse along with discussion on duties of each specialist. Went through KPMG information |

1IRS1130

 

# Examining Officer's Activity Record

| | | | | | |
|---|---|---|---|---|---|
| | | | | | received with Counsel John Aletta |
| 7/2204 | | | | 4 | Continued reading through information in case |
| 8/16 | | | | 8 | Interview held at Partnership address. Pat Shea Stephanie Denby and John Monaco of PWC. Started going through records presentede |
| 8/17 | | | | 8 | Audit continued at Patnership. A meeting will l scheduled which financial products and International can discuss issues. |
| 8/30/04 | | | | 8 | Met with Mark Corrigan and Peter Macintyre to plan for meeting on the 2nd. Went over case fil and information received to date. |
| 9/2/ | | | | 6 | Appointment held at taxpayer with audit team along with Group Manager Debra Morrill and International Group Manager Denis McSweene Taxpayer were represented by Mox Tan of Helios Financial. Pat Shea, John Monacco, Stephine Denby. Along with Michael Egan. Discussion held on the transaction. |
| 9/3 | | | | 2 | Discussed case with Mark Corrigan and Questions which need to be developed. Questions will be sent to John Aletta. |
| 9/13 | | | | 8 | Prepared memo to be sent to counsel to determine whether case is a son of boss case. |
| 9/14 | | | | 2 | CONFERENCE CALL HELD WITH john MONACCO AND PAT SHEA TO GO OVER STATUS OF ISSUE. ADVISED THAT MEMO WA GOING TO BE SENT TO COUNCIL FOR DETERMINATION. |
| 9/15 | | | | | CONFERENCE CALL HELD WITH MONACO SHEA DEBRA MORRILL AND MYSELF. Discussing memo that was prepared and sent up. |
| 9/17 | | | | 4 | WORKED ON CASE FILE  Conference call with Group Manager Sidney Saewitz of Cincinnati. Group has a similar case. Went over basic fac of transactions. |
| 9/20 | | | | 4 | MEMO E-MAILED TO JOHN ALETTA DISCUSSED MEMO WITH JOHN. HE WILL FORWARD THE REQUEST UP THE CHAIN. Worked on IDR's which will need to be approved. |
| 9/22 | | | | | Corrected IDR's as directed by John Aletta. |
| 9/27 | | | | 4 | Went through case file. |
| 10/5 | | | | 1 | Discussed status of memo. |
| 10/6 | | | | 1 | Checked recent information on Son of Boss. |

1IRS1131

 

# Examining Officer's Activity Record

| 10/18 | | | 6 | Planning meeting held with Debra Morrill Deni McSweeney, Mark Corrigan and Peter McIntyre Meeting scheduled for 10/19 at taxpayers with Jim Fee. |
|---|---|---|---|---|
| 10/19/04 | | | 8 | Meeting held at taxpayers . Discussion of fact to determine whether Fidelity is a Son of Boss Case or other type shelter/transaction and whether taxpayer will have appeal rights. Jim Fee of Chief Counsel attended the meeting in order to help in making determination as to whether this is a Son of Boss Case. See notes in history section. Determination should be made with a few weeks. |
| 10/26'04 | | | 2 | Spoke with Pat Shea will be faxing letter letter received. Lists out taxpayers position on Son Boss. |
| 11/1/04 | | | 8 | No determination made to date. Prepared Form 872 P and sent to partnership, TMP and the Power of attorneys. Read through letter sent previously. |
| 11/22/04 | | | 4 | Determination as to whether taxpayer is Son o Boss has not been made. Prepared follow up letter for 872 P. Mailed on the 24th. Call to be made to Pat Shea. It is taxpayers intentions to sign an extension if it is detemined that they a not a son of boss transaction. If they are not going to be given appeal rights they will not sign statute extension. Decision may be made by Dec 1st. |
| 12/1/04 | | | 1 | No determination made. Taxpayer reiterated that they would sign a statute extension when determination is made. |
| 12/2/04 | | | 1 | Worked on case file. |
| 12/14/04 | | | 8 | Worked on case file. Continued working throu information obtained through audit. |
| 12/16/04 | | | 8 | Individual outside basis calculation has been provided. Went through corporate records to determine numbers are accuarately reflected. No determination made as to whether taxpaye will be apprised of there appeal rights. |
| 1/4/05 | | | 2 | Called Pat Shea. Discussed that no decision was made and no decision is expected any tin soon. |
| 1/10/05 | | | 8 | Worked on case. Researched closing of case and specific procedures relating to |




# Examining Officer's Activity Record

| Date | | | | | Son of Boss |
|------|---|---|---|---|-------------|
| 1/14/05 | | | | | Conference call with John Monaco. John was looking for information so he can convince his TEAM to sign extension. Advised John that no determination was made and probably will not be made before the FPAA is sent out. |
| 1/18/05 | | | | 4 | Researched information on bonds presented information to Patrick Shea. Discussed bond procedure with Shea. Met with Pat Shea |
| 1/25/04 | | | | 8 | Met with Pat Shea and received copies of 2002 and 2003 1040 returns. Examination will be initiated. Advised Patrick Shea that FPAA will prepared and issued shortly. Pat Shea presented Agent with letter that was faxed to Jim Fee and and Johnathan Zelnik. |
| 1/26 | | | | 8 | Worked on FPAA. Received Mark Corrigans wwiteup  Worked on RGS, Required adjustments needed to be listed on RAR cann be done with RGS program.  Printed and Save RAR to adobe file. *DO NOT USE RAR DISK FC REPORTS" USE ADOBE 4605a FOR ANY CHANGES" |
| 1/27 | | | | 10 | WORKED on FPAA. Pat Shea called stating tha they will be making a payment in form of cash bond. Payment will be 30 Million dollars. Emailed preliminary FPAA and writeup to John Aletta and Rick Gannon.  Rick Gannon will review and make corrections and additions. A prepare argurment on case. |
| 1/28 | | | | 9 | Picked up payment from Pat Shea. Discussed letter.  Went back to office processed check. Mailing documents checked. Rick Gannon will work on case this weekend and should have draft maybe on Monday.. |
| 1/31 | | | | 10 | Spoke to Rick Gannon.  Continue working on Writeup.  Continued working the case for closing. FPAA is being worked on by John Aletta Discussed case with  Counsel. |
| 2/1 | | | | 9 | Continued working case. Draft Form 886a sen by John Aletta. Started reviewing. Worked on penalty writeup for individual closing. Penalty applicable at investor level. |
| 2/2 | | | | 9 | Continued working case file. Organized workpapers, Read through Form 886a |

1IRS1133

 

# Examining Officer's Activity Record

| 2/3 | | | 9 | Continued preparing case for closing. |
|---|---|---|---|---|
| 2/4 | | | 6 | CAsE completed. |
| | | | | submitted to MGR - |
| | | | | called Per Douglas |
| | | | | No Return cal. |

1IRS1134



# Examining Officer's Activity Record

| | | | | |
|---|---|---|---|---|
| 2/4 | | | | Case given to manager Called Rod Douglas re tefra linkage. |
| 2/11 | | | | Spoke to Ron Douglas tefra coordinator in Ogden. Case has been establiened and NBAP was sent out on Feb 7.\ |
| 2/22/05 | | | | Decision received regarding request for advice whether it was determined that this case was substantially similar to notice 2000-44. It was determined that it was. Taxpayer will not be allowed to apprise themselves of appeal rights. Pat Shea was called and informed of the decision. |
| 2/24/05 | | | | Penalty IDR prepared and sent to counsel for approval. Investor level |
| 3/1 | | | | Emailed Richard Gannon requesting status of Penalty IDR along with status of FPAA and 886 |
| 3/3 | | | | Met with Pat Shea and Michael Egan. Went ove status of partnership. Letter presented requesting agent to give them a written analysi as to how decision was met. |
| 3/7/05 | | | 8 | Updated files and closing documents. No response from taxpayer.Printed the last revise FPAA and 886A. |
| | | | | |
| | | | | |
| | | | | |

1IRS1135

# Exhibit D



**Russ Cary**

| | |
|---|---|
| **From:** | Wilson Bill |
| **Sent:** | Thursday, June 09, 2005 9:41 AM |
| **To:** | Russ Cary |
| **Subject:** | FW: Cases with Son of Boss Features - "Substantially Similar" Issue |

**Importance:**    High

Bill Wilson
Partnership Technical Advisor, LMSB
Mail Stop 4200:MSRO, Room 1130
4050 Alpha Rd.
Dallas, TX 75244-4201
Phone: 972-308-1573
Fax: 972-308-1594

-----Original Message-----
**From:** Fee James C [mailto:James.C.Fee@IRSCOUNSEL.TREAS.GOV]
**Sent:** Thursday, October 28, 2004 9:27 AM
**To:** Wilson Bill; Lin S Katy; Woods Jadie T; Smathers Lenny T; Kiger Cheryl R
**Cc:** Fee James C; Weinger Larry A; Whalin Michael M
**Subject:** RE: Cases with Son of Boss Features - "Substantially Similar" Issue
**Importance:** High

You may also wish to talk with Larry Weinger who is familiar with some of these transactions.

Larry, if you have a concise write-up on the deals with SoB features, will you send it around to us. We are under tight deadlines for tomorrow's meeting.

> -----Original Message-----
> **From:**    Fee James C
> **Sent:**    Wednesday, October 27, 2004 5:06 PM
> **To:**    Wilson Bill; Whalin Michael M; Lin S Katy; Woods Jadie T
> **Cc:**    Smathers Lenny T; Fee James C; Singleton Henry V; Rule Peggy C; Maselli Joseph F; Zamolo Paul R
> **Subject:**    RE: Cases with Son of Boss Features - "Substantially Similar" Issue
> **Importance:** High

As we discussed with Peggy on Monday's call, it is imperative that we have materials that will concisely present the subject transactions for consideration of the substantially similar issue. In this regard, she made assignments of the SoS Version III hybrid transaction, the distressed debt deal ( C⟍⟍ ),. I think we agreed that toggle trusts are not SoB and will not be presented. I agreed to present the S Corp version of the SoB, which we have also decided is not SoB.

b3
(6)03a

When can I expect the write-ups and charts so that I can package them for distribution? I need them with sufficient time to review them with Joe Maselli before I send them out.

> -----Original Message-----
> **From:**    Fee James C
> **Sent:**    Saturday, October 23, 2004 2:47 PM
> **To:**    Wilson Bill; Fee James C; Whalin Michael M; Lin S Katy; Woods Jadie T
> **Cc:**    Gannon Richard H
> **Subject:** RE: Cases with Son of Boss Features - "Substantially Similar" Issue
> **Importance:**    High





I left Mike Whalin a voicemail message. It would be helpful, and actually, essential to have a briefing paper for each of the subject transactions. I would suggest a description of the transaction with no more than 1 1/2 to 2 pages each, including a statement of our authority for disallowance. Also I think a chart comparing the transactions features and relevant law compared to the specific transaction and law in Announcement 2000-44, the CCDM Notices, and the CIP to compare what features are similar and what are not.

I am asking the TA's and their Issue Counsel to take the lead on this. Confer with whomever you think is appropriate. Rick Gannon is always a good resource, and in fact he knows something about the distressed debt scenario. Do you think something could be put together by COB Wednesday?

-----Original Message-----
**From:**      Wilson Bill [mailto:Bill.H.Wilson@irs.gov]
**Sent:**      Friday, October 22, 2004 5:15 PM
**To:** Fee James C
**Subject:**     RE: Cases with Son of Boss Features - "Substantially Similar" Issue

Let me know what I can do. Also, please advise when you have the call in number.

-----Original Message-----
**From:**      Fee James C [mailto:James.C.Fee@IRSCOUNSEL.TREAS.GOV]
**Sent:**      Friday, October 22, 2004 10:04 AM
**To:**      Rule Peggy C; Singleton Henry V; Zamolo Paul R; Poindexter Carol J; Whalin Michael M; Wilson Bill
**Cc:**      Hill James D; Maselli Joseph F; Sterner Christopher B; Lanning James C; LaBelle Peter J
**Subject:**     FW: Cases with Son of Boss Features - "Substantially Similar" Issue

Right now we have tentatively scheduled Friday, October 29 at 1 for our meeting and call as a time that works for Jon Zelnick, P&SI (Donna Young and maybe Heather), and me. They suggest two hours, which will be tight in my opinion. A lot will depend on the quality and timing of the briefing materials I can submit and I will work with Mike Whalin and Bill Wilson, and perhaps Katy and Jadie in that regard.

How is this for you? Please let me know who will participate and whether it will be by phone or in person.

-----Original Message-----
**From:**      Fee James C
**Sent:**      Wednesday, October 20, 2004 4:09 PM
**To:**      Zelnik Jonathan R; Young Donna Marie
**Cc:**      Maselli Joseph F; Lanning James C; Sterner Christopher B; LaBelle Peter J; Zamolo Paul R; Fee James C
**Subject:**     Cases with Son of Boss Features - "Substantially Similar" Issue

     Jon, following up with or conversation last week, I would like to schedule a meeting or call to nail down the critical question of what is substantially similar to Son of Boss. During an Issue Champion conference call on Monday, which I missed, I understand that Paul Zamolo and I have been asked to seek resolution on this issue

b3/6103a

28



JAMES C. FEE, Jr.

Associate Area Counsel
OFFICE OF CHIEF COUNSEL - IRS
LARGE AND MID-SIZE BUSINESS DIVISION
701 Market Street, Suite 2200
Philadelphia, PA 19106
(215) 597-3442
FAX (215) 597-3008 or 597-2150

# Exhibit E



INTERNAL REVENUE SERVICE

# IRS ☺ News Release

| Media Relations Office | Washington, D.C. | Media Contact: 202.622.4000 |
| --- | --- | --- |
| www.IRS.gov/newsroom | | Public Contact: 800.829.1040 |

## Jenkens & Gilchrist Admits It Is Subject to $76 Million IRS Penalty

IR-2007-71, March 29, 2007

WASHINGTON — The Internal Revenue Service today announced that it has reached a settlement with the law firm of Jenkens & Gilchrist, which agreed that they are subject to a penalty of $76 million. The penalty stems from the firm's promotion of abusive and fraudulent tax shelters and violation of the tax law concerning tax shelter registration and maintenance and turnover to the IRS of tax shelter investor lists.

"While it is unfortunate that the 56-year-old national firm of Jenkens & Gilchrist is terminating its legal practice, this should be a lesson to all tax professionals that they must not aid or abet tax evasion by clients or promote potentially abusive or illegal tax shelters, or ignore their responsibilities to register or disclose tax shelters," said IRS Commissioner Mark W. Everson. "Pursuing abusive tax shelters is a top priority for the IRS."

The firm aggressively marketed potentially abusive tax shelters to high-net-worth individuals. Some of the packages marketed to these individuals included listed transactions such as COBRA (Currency Options Bring Reward Alternatives); BEST (Short Option/Basis Enhancing Securities Transaction); BLISS (Basis Leveraged Investment Swap Spreads); OPS (Option Partnership Strategy); BEDS (Basis Enhancing Derivatives Structure); and BOSS (Bond & Option Sale Strategy).

The firm also marketed two transactions that are not listed transactions — HOMER (Hedge Option Monetization of Economic Remainders) and BART (Basis Adjustment Remainder Trusts).

The agency estimates that 1,400 investors are affected by the firm's advice and will owe interest and penalties on their underpayment of tax. Jenkens & Gilchrist, which was once a 600-lawyer national firm, is in the process of winding down its legal practice and business affairs.

The national law firm of Jenkens & Gilchrist is composed of a corporation in Dallas, Texas; a corporation in Chicago, Illinois; a partnership in Los Angeles, California; and a partnership in New York City.

—30—