UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case Nos.: 05-40151-FDS<br>06-40130-FDS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR ISSUANCE OF A SECOND LETTER ROGATORY REQUESTING
INTERNATIONAL JUDICIAL ASSISTANCE FROM THE ISLE OF MAN**

Plaintiff objects to Defendant's newest request for what it admits is "foreign discovery"[1] sought through yet another letter rogatory directed to the court in the Isle of Man. This Court's previous letter rogatory is still pending in the foreign court but, as predicted, it is both fatally overbroad and misdirected. One witness identified in the pending letter was not employed by any of the entities that were discussed in that letter rogatory during the relevant time period, and his testimony will likely never be taken in connection with this matter.[2] Moreover, Defendant

---

[1] Mem. of Law in Supp. of Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance at 1 (filed Oct. 1, 2007) (hereinafter "Def.'s Mem.").

[2] Defendant has not formally sought to modify this Court's pending letter to reflect its apparent position that the Oliver Peck deposition need not be ordered by the Isle of Man Court. Plaintiff questions the authority of Defendant to modify this Court's pending letter without this Court's authorization. Additionally, this "second" letter does not revoke the pending letter but, as proposed, would simply be added to this Court's pending request, thereby confusing this matter for the Isle of Man court. The two letters are inconsistent. The first letter advises the Isle of Man court that the records are under the control of Oliver Peck and Nigel Scott and should be produced by one or both of them, and yet this "second" letter claims that the records are controlled by others.

intentionally did not ask the Companies[3] for their records for apparent strategic reasons and now seeks relief from a problem of its own creation because the individual witnesses do not have access to the company records that are sought. Now, within weeks of the close of discovery, Defendant asks this Court to issue yet another letter rogatory (in addition to this Court's pending letter) seeking document discovery from five companies, including Simcocks Trust Ltd., which was never previously mentioned or identified by Defendant.

This new letter rogatory suffers from many of the same flaws as the original: it is unlikely to achieve its stated objective of obtaining documents, and it imposes an undue burden on Plaintiff. Beyond these persistent flaws, this new letter is even more defective because it so clearly seeks nothing but broad document discovery. A letter rogatory is not to be used like a Rule 45 document subpoena during discovery, Fed. R. Civ. P. 45, but that is precisely what Defendant now attempts. To date, the use of the letter rogatory process to fish for foreign discovery has netted nothing, making it undeniable that the cost of this process far exceeds any benefit. The Court should deny Defendant's request because it is untimely, greatly expands Defendant's "fishing expedition," and abuses the letter rogatory process.

## BACKGROUND

On April 4, 2007, Defendant first moved this Court to issue letters rogatory to Ireland and the Isle of Man, asking the courts in those jurisdictions to compel five individuals (two in the Isle of Man) to appear in court and provide testimony about thirty-one matters and produce documents relating to twenty-five topics. In prior responses to Defendant's stream of filings, Plaintiff has asked the Court to curb Defendant's wide-ranging discovery demands on several grounds, including the lack of a connection between the identified entities and Plaintiff, the

---

[3] The "Companies" means Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., Trilogy Investments Ltd., and Simcocks Trust Ltd.

burden and expense of the letter rogatory process in light of the tangential nature of the requests, and Defendant's failure to offer any meaningful support for the proposition that these individuals or entities have relevant information.[4]  Plaintiff also noted that the burden and expense of the letter rogatory process could be avoided because any relevant information in possession of the Isle of Man witnesses, if it existed, would be available from domestic sources.

      Plaintiff specifically foretold the possibility that the Court and the parties would go through this process for naught.  Plaintiff noted that the lack of connection between the Isle of Man witnesses and the facts of this case "suggests that they will not, in fact, be able to provide the information the Government is seeking."  (Pl.'s Resp. at 20.)  Plaintiff anticipated that the parties would have to bear unnecessary expenses "to prepare for the depositions of these individuals only to arrive in the Isle of Man and discover that these individuals are unable to provide any of the information or testimony sought by the depositions."  (Pl.'s Resp. at 21.)  Plaintiff suggested that Defendant could take steps as simple as placing a phone call to avoid precisely the situation now facing the Court.[5]  Defendant refused for its own strategic reasons.

---

[4] To support its objections, Plaintiff pointed to the *lack* of proof, noting, for example, that "only a single document in the millions of pages of discovery produced to date . . . even mentions Oliver Peck."  (Pl.'s Resp. to Def.'s Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance at 5 (filed Apr. 18, 2007) (hereinafter "Pl.'s Resp.").)  While Defendant rejected this point, it now implicitly acknowledges its correctness by choosing not to depose Mr. Peck.

[5] Plaintiff's counsel, questioning whether Mr. Scott or Mr. Peck had any of the company records in their possession, met with Defendant's counsel a few days after Defendant filed its Reply and asked whether Defendant planned on picking up the phone and calling the Isle of Man witnesses to inquire whether they would, in fact, be able to produce the documents requested or provide the testimony sought.  Plaintiff advised the Court of this conversation and reiterated the importance of first attempting to contact the witnesses in its Sur-Reply, urging that

> Defendant should advise this Court and Plaintiff of its efforts to contact the foreign witnesses to ascertain if they will testify, thus potentially obviating the need for this lengthy letters rogatory process and avoiding more delays in the preparation of this case for trial.  Defendant has represented to Plaintiff that it has not contacted any of the witnesses, nor does it intend to do so.

(Pl.'s Sur-Reply to Def.'s Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance at 6 (filed May 11, 2007).)

In addition to the foregoing, Plaintiff has previously expressed the important concern that the Isle of Man court would not be able to issue an order based on Defendant's letter rogatory because the American-style discovery sought by the letter rogatory exceeds the bounds of what is permissible under Manx law. That concern has been significantly increased by this new letter rogatory, which is in both form and substance a "foreign discovery" demand.

The original process conceived by Defendant was flawed and Defendant's letter rogatory was issued based on what, in retrospect, can only be viewed as a series of inaccurate representations to this Court. Defendant represented to this Court that that the foreign witnesses (Messrs. Peck and Scott) "have exclusive possession of evidence that goes directly to the heart of the factual-sham and economic-sham issues." (Def.'s Mem. of Law in Supp. of Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance at 24 (filed Apr. 4, 2007).) Defendant now admits that such evidence is NOT in the possession of the individuals in the Isle of Man. Despite the clear lack of evidence showing that the Isle of Man witnesses would be able to provide any useful testimony or documents, Defendant continued to represent to this Court that "Nigel Scott, Oliver Peck, and Singer & Friedlander are directly related to FDIS . . . [and] Richard Egan" (Def.'s Reply at 10),[6] and "there is little doubt that Oliver Peck has valuable evidence to offer here." (Def.'s Reply at 11.)[7] Defendant now admits that Mr. Peck does not have any relevant files (Def.'s Mem. at 2) and has effectively withdrawn its demand to depose Mr. Peck.

---

[6] "Def.'s Reply" means Reply Br. in Further Supp. of Def.'s Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance (filed May 4, 2007).

[7] Defendant did not, however, attempt to seek information relating to the companies identified in the letter rogatory from the companies directly, presumably to deprive the companies of standing to object to the letter rogatory if issued.

4

More than a year after Defendant first raised the prospect of foreign discovery and nearly six months after briefing on the first round of letters rogatory was completed, Defendant appears to be no closer to concluding its overseas fishing expedition:

- Not a single deposition has been taken pursuant to the letters rogatory.

- One Isle of Man witness has confirmed that he does not have any relevant information.

- The other Isle of Man witness, who also has no connection to the facts of this case, is either unwilling or unable to provide information sought by Defendant.

- No application for an order pursuant to the letter rogatory has been filed in the High Court in Ireland.

This process has been lengthy, late, expensive, and time consuming due to Defendant's actions and inactions. Had Defendant simply contacted Mr. Peck and Mr. Scott (or their counsel) in May, as suggested by Plaintiff, Defendant would have learned that these witnesses did not have possession of the information sought, would not be able to provide relevant testimony, and the parties would not be before this Court in the final weeks of discovery arguing over another letter rogatory seeking documents from new witnesses that the Court and Plaintiff, once again, have no assurance possess the information sought.[8]

Even more troubling, Defendant has, once again, failed to show that this latest fishing expedition will net anything meaningful to this case within any reasonable period of time. It cannot be disputed that "a balancing of the likely expense and difficulty of the requested

---

[8] Defendant's failure to initially contact the witnesses is especially inexcusable in light of the fact that, after the letter of request was issued, Defendant "wrote Messrs. Scott and Peck asking whether they would be prepared to provide documentation and testimony on a voluntary basis." (Def.'s Mem. at 2.) Clearly, Defendant could have written to Messrs. Scott and Peck prior to, or in conjunction with, its motion for a letter rogatory seeking information on a voluntary basis, saving the Court and the parties time, burden, and expense.

5

examinations against the nature and size of the controversy and the prospective value of the foreign evidence" at this point weighs heavily in favor of Plaintiff.  (Mem. and Order on Def.'s Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance at 6 (filed May 23, 2007).)  The additional letter rogatory should be denied.

## ARGUMENT

I. **Issuance of Another Letter with Less Than a Month Before the Close of Discovery Would Be Prejudicial to Plaintiff by Furthering the Undue Burden and Expense Placed on Plaintiff and Further Delaying this Case[9]**

The delay, burden, and expense of issuing another letter of request with less than a month left in discovery is so prejudicial that Defendant's motion must be denied.  As the First Circuit readily acknowledges, "Under the best of circumstances, letters rogatory are burdensome, costly, and time-consuming."  *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,* 361 F.3d 11, 21 (1st Cir. 2004).  The burdensomeness of the letter rogatory process weighs against its use when close to the end of discovery.  *See Gen. Instrument Corp. v. Scientific-Atlanta, Inc.,* No. 91-6923, 1992 U.S. Dist. LEXIS 8928, at *3 (E.D. Pa. June 25, 1992), *aff'd,* 995 F.2d 209 (Fed. Cir. 1993) (refusing to issue letters rogatory when party moved "one week before the close of discovery").  The Southern District of New York, when faced with a similar situation, refused to issue a second letter of request because of the prejudicial effect on the opposing party.  In *Reiss v. Societe Centrale du Groupe des Assurances Nationales*, the court denied the defendants' motion for a letter rogatory, even though the they had the burden of proof with respect to the issue for which testimony was sought.  246 F. Supp. 2d 285, 289 (S.D.N.Y. 2003). The court held that the defendants were equitably precluded from obtaining the letter rogatory because "the

---

[9] Plaintiff incorporates by reference its arguments in its Response to Defendant's Motion for Issuance of Letters Rogatory Requesting International Judicial Assistance, filed April 18, 2007, and its Amended Sur-Reply to Defendant's Motion for Issuance of Letters Rogatory Requesting International Judicial Assistance, filed May 23, 2007.

process of attempting to secure the testimony of the same French Witnesses once again coercively, through Letters Rogatory . . . would cause great delay and significant prejudice." *Id.* at 289. The court stated that "it unquestionably would have been helpful to procure evidence from [the witness] on the jurisdictional issue," but would not issue another letter rogatory because the requesting party failed to adequately manage the process and "it would unduly delay this proceeding to send new Letters Rogatory." *Id.*

Similarly, Defendant in this case purposefully chose to seek the documents at issue from the individuals, rather than the Companies, without first inquiring as to whether those individuals had possession of, or access to, the documents sought. This failure was intentional and Defendant, not Plaintiff, should suffer the consequences, especially considering that Plaintiff warned of this possibility nearly six months ago. Were this Court to grant Defendant's motion, it would be shifting the adverse consequences of Defendant's mismanagement to Plaintiff. Accordingly, fairness precludes issuance of another letter rogatory and the inevitable delay that will accompany it.

## II.     Defendant Has Not Shown That the Entities from Whom It Seeks Evidence Have or Will Provide the Evidence Defendant Is Seeking

In seeking evidence from new Isle of Man entities, Defendant again makes conclusory assertions that these entities were "involved in the marketing and/or implementation and/or have knowledge of certain financial aspects of the Financial Derivatives Investment Strategy" (Def.'s Mem. at 1), but fails once again to identify what specific evidence these entities posses and produces no evidence showing that these entities were involved any such transaction.[10] In addition, Defendant now seeks evidence for the first time, with the close of discovery nearly two

---

[10] Moreover, as Plaintiff previously argued, Defendant has made no showing that these entities have evidence that has not already been obtained through domestic discovery.

7

weeks away, from an entity called Simcocks Trust Ltd. Defendant cannot be permitted to restart or expand the letter rogatory process for the purpose of potentially obtaining evidence that may or may not exist. To justify an additional delay for a case that has already been in discovery for two years, Defendant, the party that ***does not*** have the burden of proof in this case, should have presented meaningful evidence that: 1) these entities have and will produce the information Defendant seeks, and 2) that such information is critical to this case.[11] In view of Defendant's failure to make such a showing, the balancing of interests weighs heavily against issuance of another letter rogatory because Plaintiff will be prejudiced by yet another of Defendant's delays.

In initially requesting that this Court issue a letter rogatory, Defendant was not required to make a showing that Oliver Peck would be able to provide relevant testimony or documents. Nearly six months after Defendant first asked this Court to ask a foreign court to compel Mr. Peck to testify and provide documents, Defendant now informs the Court and Plaintiff that Mr. Peck does not, in fact, have the relevant documents or testimony. Undaunted by its mismanagement of this process, Defendant now asks this Court to ask the Isle of Man court to allow Defendant's American-style document discovery. This Court should not ask the Isle of Man court for this sort of discovery assistance. Consistent with its past practices, Defendant has made no showing that its selected five companies have any specific evidence relating to this case. Because of Defendant's failure to make such a showing, and in light of its past performance, this Court should not allow Defendant to burden the Isle of Man court and Plaintiff, with this second letter.

---

[11] This Court has previously noted that it has not yet ruled on the admissibility of transactions engaged in by other taxpayers. A recent ruling in *United States v. Stein* that evidence of uncharged "tax shelters" would not be admissible because the government "offered only imprecise explanations . . . and cursory assertions of alleged similarities" suggests that the foreign evidence sought by the letter rogatory, if it exists, should not be admissible. Mem. and Order at 4, No. 05-0888 (S.D.N.Y. Oct. 12, 2007).

At this point in the proceedings, another set of letters rogatory is unquestionably prejudicial when the inevitable delay and expense caused by the process is balanced against its lack of value. Accordingly, the Court should deny Defendant's motion and protect Plaintiff's interest in a having a "just, speedy, and inexpensive determination" of his claims. Fed. R. Civ. P. 1.

**III.    The Proposed Letter Rogatory Seeks Impermissible Discovery in the Isle of Man and These Proceedings Will Be Further Delayed by Objections Raised in Isle of Man Courts**

Defendant's proposed letter rogatory is akin to American-style discovery and, hence, it violates the permissible bounds of obtaining evidence in the Isle of Man and the United Kingdom.[12] If issued in its current form, the Companies should have a strong objection to the broad scope of the letter rogatory, and the resolution of that issue will undoubtedly take months, resulting in additional delay to these proceedings and requiring Plaintiff to incur additional expenses. Moreover, this new letter rogatory puts the Isle of Man court in the difficult position of wanting to assist this Court in obtaining trial evidence, but being precluded from doing so because of the clear "fishing expedition" nature of Defendant's requests, which conflicts with the permissible scope for taking of evidence in the Isle of Man. Plaintiff previously set forth the applicable standard for discovery in the United Kingdom.[13] This "second" letter, which seeks only documents and no testimony, clearly violates those standards.

As Plaintiff explained in its Response to Defendant's first motion seeking letters rogatory, the Isle of Man has made a declaration under the Hague Evidence Convention through the United Kingdom that it will not execute letters rogatory for the purpose of obtaining pre-trial

---

[12] English law is highly persuasive in the Isle of Man. (Pl.'s Resp. at 13 n.15.)

[13] Whether the letters rogatory previously issued violate that standard is unknown because nearly five months after they were issued, the substance of the letters has not yet been addressed by a foreign court.

9

discovery of documents. (Pl.'s Resp. at 12-13.) The Isle of Man has codified this declaration in the Evidence (Proceedings in Other Jurisdictions) (Isle of Man) Order 1979, which formally adopts the Evidence (Proceedings in Other Jurisdictions) Act of 1975 (United Kingdom) (hereinafter the "1975 Act"). The 1975 Act, as adopted by the Isle of Man, provides that an Isle of Man court may not order a witness "to produce any documents other than particular documents specified in the order as being documents appearing to the court making the order to be, or to be likely to be, in his possession, custody or power." 1975 Act at 4(b). Under the 1975 Act, Defendant's proposed document requests are problematic for two reasons: first, the documents sought are not specified, and second, evidence has not been presented showing that the documents are, or are likely to be, in the possession, custody or power of the entities to be served.

The United Kingdom's House of Lords explained how the 1975 Act should be applied to determine whether documents have been "specified." After noting its standing position that "following the spirit of the 1975 Act which is to enable judicial assistance to be given to foreign courts, the letter rogatory ought to be given effect to so far as possible," the House of Lords in *Re Asbestos Insurance Coverage Cases*, set forth two tests that a document request in a letter rogatory must meet for a document to be "specified" as required by the 1975 Act. [1985] 1 All ER 716, 719 (1985) (quoting Lord Wilberforce in *Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.* [1978] 1 All ER 434, 444 (1978)). First, the request must "clearly indicate[ ]" the documents sought, rather than seek a class of documents, which the House of Lords explained by way of an example:

> [A]n order for production of the respondents' "monthly bank statements for the year 1984 relating to his current account" with a named bank would satisfy the requirements of the paragraph, provided that the evidence showed that regular monthly statements had been sent to the respondent during the year and were

10

>likely to be still in his possession. But a general request for "all respondent's bank statements in 1984" would in my view refer to a class of documents and would not be admissible.

*Id*. at 721. Second, there must be "evidence which has satisfied the judge that [the particular documents sought] exist, or at least that they did exist, and that they are likely to be in the respondents' possession." *Id.* The document requests in Defendant's proposed letter rogatory fail both tests.

The overbroad document requests in Defendant's proposed "second letter" fail both of the tests set forth by the House of Lords for several reasons, thus, the Isle of Man court is precluded from issuing an order on the basis of those requests. First, all of the requests are drafted as American-style discovery requests seeking classes of documents, similar to what is found in a Rule 45 subpoena. Fed. R. Civ. P. 45. None of the requests are limited to a specific period of time, but instead seek, for example, "[f]inancial statements for Kilsture Ltd., Maddox Ltd., Cumberdale Investments Ltd. (including all subsidiaries), Cumberdale Holdings Ltd. . . . ." (Request No. 3),[14] or "all email concerning Fidelity International or any other FDIS 'partnership.'" (Request No. 6.) The most egregious example of an American-style document discovery request that is neither limited in the period of time it covers nor the subject matter of the documents requested is presented in Request No. 22, which seeks:

>Contracts between Nigel Scott, Oliver Peck [who Defendant had already admitted has no relevant information], Singer & Friedlander (n/k/a Kaupthing Singer & Friedlander), Samuel Mahoney, Martin Hawkes, and/or John Hussey, and Helios, The Diversified Group Inc., Kilsture Ltd., Maddox Limited, Cumberdale Investment Ltd. (including all subsidiaries), Cumberdale Holdings Ltd., Trilogy Financial Products Ltd., and/or Biosphere Finance Ltd.

---

[14] "Request No." refers to the numbered category of documents under "Documents to be Produced by Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and Trilogy Investments Ltd." in Defendant's proposed letter rogatory.

11

Such broad requests, with no limitation to date, and virtually no limitation as to substance, cannot be reasonably interpreted as clearly indicating specific documents. Rather, these requests reflect American-style discovery by seeking broad groups of documents, which is impermissible under governing Manx precedent.

The document requests in Defendant's proposed letter rogatory also fail the second test set forth by the House of Lords because Defendant has offered no evidence that the documents exist and that they are likely to be in the Companies' possession. For example, Defendant has offered no evidence that "Fidelity International or any other FDIS 'partnership'" was ever discussed at the directors' meetings of the Companies, yet the very first document request in Defendant's proposed letter rogatory seeks meeting minutes from all the Companies evidencing discussions of those topics. Defendant has offered no evidence of payments by Alpha Financial[15] to any of the Companies, yet Request No. 12 seeks "[a]ll records of payments received by Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and/or Trilogy Investments Ltd. from Alpha Financial or its principals or employees . . . ." Similarly, Defendant has not provided any evidence from the millions of pages it has obtained through subpoenas it has issued to third parties that the documents sought by Request No. 4, "[a]ll outlines of proposed transaction concerning Fidelity International or any other FDIS 'partnership,'" are, or would be, in the possession of the Companies. Finally, Defendant's proposed letter rogatory seeks all account statements relating to four separate accounts (Request No. 5), with no evidence that these entities have any control over those accounts. Without such proof, which further evidences the nature of Defendant's proposed letter rogatory as a fishing

---

[15] "Alpha Financial" is not defined in Defendant's proposed letter, which will also cause additional confusion.

expedition, the Isle of Man court would be hard pressed to issue an order on the basis of Defendant's proposed letter rogatory.

Any challenge to the American-style document requests in Defendant's letter will undoubtedly be taken under consideration by the Manx court in light of the applicable Manx law and precedent, outlined above, that precludes such discovery. Accordingly, if Defendant's proposed letter rogatory were filed with the court in the Isle of Man in its current form, this process would undoubtedly be delayed and would very likely fail.

## CONCLUSION

In initially requesting letters rogatory from the Court, Defendant chose not to inquire whether the individuals from whom it was seeking information would be competent and capable of providing it. In the nearly six months that followed, Plaintiff has expended significant time, money, and effort in dealing with the letters rogatory process, which has not yet yielded a single document or deposition. Now, with less than a month before the close of discovery, Defendant is before the Court again asking for a "second" letter of request, seeking American-style discovery from new entities that may or may not be able to provide the information requested. Defendant has not made any showing that these entities have any special or significant evidence for use in this case. Issuance of another letter rogatory would be prejudicial to Plaintiff, burdensome to the foreign court, and result in an unjust benefit to the party that has mismanaged its requests. A balancing of the value of the *potential* evidence obtained from the letter rogatory process, which to this point is nil, against the *certain* time and expense the process imposes on Plaintiff, including the additional delay that is inevitable with the close of discovery less than a month away, weighs heavily against issuance of another letter rogatory. Accordingly, the Court should deny Defendant's motion for yet another letter rogatory.

Respectfully submitted this 15th day of October 2007.

                        PLAINTIFF
                        FIDELITY INTERNATIONAL CURRENCY ADVISOR
                        A FUND, L.L.C., by the Tax Matters Partner


                        /s/ Lena Amanti
                        David J. Curtin, D.C. Bar #281220
                        Ronald L. Buch, Jr., D.C. Bar #450903
                        Lena Amanti, D.C. Bar #490791
                        MCKEE NELSON LLP
                        1919 M Street, N.W., Suite 200
                        Washington, D.C. 20036
                        Telephone:  (202) 775-1880
                        Facsimile:  (202) 775-8586
                        Email:  dcurtin@mckeenelson.com
                                rbuch@mckeenelson.com
                                lamanti@mckeenelson.com

                        John O. Mirick, BBO #349240
                        MIRICK, O'CONNELL, DEMALLIE
                        & LOUGEE, LLP
                        100 Front Street
                        Worcester, MA 01608
                        Telephone:  (508) 791-8500
                        Facsimile:  (508) 791-8502
                        Email:  jomirick@mirickoconnell.com


**Certificate of Service**

| | |
|---|---|
| I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 15, 2007. | /s/ Lena Amanti<br>Lena Amanti, D.C. Bar #490791<br>MCKEE NELSON LLP<br>1919 M Street, N.W., Suite 200<br>Washington, D.C. 20036<br>Telephone:  (202) 775-1880<br>Facsimile:  (202) 775-8586<br>Email: lamanti@mckeenelson.com |