UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Nos. 05-40151-FDS (D. Mass.) |
| | ) | 06-40130-FDS (D. Mass.) |
| v. | ) | |
| | ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF BARRY E. REIFERSON**

I, Barry E. Reiferson, pursuant to the provisions of 28 U.S.C. §1746, certify as follows:

1.      I am a Trial Attorney with the U.S. Department of Justice, employed in the Tax Division,

Northern Region, with a post of duty at Washington, D.C.

2.      I am one of the assigned trial attorneys for defendant United States in this case.

3.      I make this declaration based upon my personal knowledge and the documents referenced

herein.

4.      The documents attached as Government Exhibits 1 through 20 are true and correct copies

of documents obtained by the United States in discovery in this case.

5.      The documents attached as Appendix A are true and correct copies of privilege logs

obtained by the United States in discovery in this case.

6.      The documents attached as Appendix B are true and correct copies of redaction logs

obtained by the United States in discovery in this case.

7.      On October 12, 2007, the law firm Dewey Ballantine LLP, which represents Proskauer

Rose in relation to this case, averred that it received an explicit waiver of privilege from the

2805674.1

plaintiff.

8.      On October 13, 2007, counsel for the plaintiff averred that it has not claimed privilege as to any communications with Proskauer Rose.

9.      On October 15, 2007, counsel for the plaintiff averred that it had not claimed privilege as to any communication relating to any communication with Proskauer Rose.

10.     On October 15, 2007, the law firm Dewey Ballantine LLP, which represents Proskauer Rose in relation to this case, averred that the plaintiff's waiver described in paragraph 7 above was an oral waiver conveyed by plaintiff's counsel in which plaintiff informed Proskauer Rose that it was not asserting privilege as to any communications between plaintiff and Proskauer Rose.

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed in Washington, D.C., on this 16th day of October 2007.


                                                /s/ Barry E. Reiferson
                                                BARRY E. REIFERSON
                                                Trial Attorney, Tax Division
                                                U.S. Department of Justice
                                                Post Office Box 55
                                                Ben Franklin Station
                                                Washington, D.C.  20044
                                                Telephone: (202) 514-6058


Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on October 16, 2007.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 05-40151-FDS ) |
| UNITED STATES OF AMERICA, | ) June 26, 2006 ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rules 26.1

and 33.1, Plaintiff responds to United States' First Set of Interrogatories ("Interrogatories").

GENERAL OBJECTIONS

1.      Plaintiff objects to the inconsistent and, accordingly, vague instructions in the

Interrogatories regarding privileged materials.  The government states that it "does not intend to

request any privileged oral communication, document, or tangible thing" and then provides

instructions for creating a privilege log should Plaintiff assert any claims of privilege.

2.      Plaintiff objects to each definition and interrogatory to the extent that it seeks the

disclosure of communications protected by the attorney-client privilege, attorney work-product

doctrine, or other applicable privilege or immunity.



GOVERNMENT
EXHIBIT
1

3.      Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rule
26.1(c), as modified by the Court at the May 11, 2006 status conference, Plaintiff objects to the
Interrogatories because once the discrete subparts thereof are considered that are not logical
extensions of the basic interrogatory, the number of Interrogatories totals fifty-four.  The
government has exhausted the thirty interrogatories permitted by the Court, and has gone well
beyond the Court-set limit.  Subject to and without waiving this objection, Plaintiff responds to
the Interrogatories while reserving the right to object to additional interrogatories served by the
government on the grounds that the government has already exceeded the limitations set forth by
the Court.[1]

4.      Plaintiff objects to each interrogatory to the extent that it asks Plaintiff to respond
in a manner that is inconsistent with or exceeds the requirements of the Federal Rules of Civil
Procedure.  Specifically, Plaintiff objects to each interrogatory to the extent it asks Plaintiff to
explain "completely and accurately" the response to the interrogatory; it asks Plaintiff to give a
"complete and accurate" description; or it asks Plaintiff to create a table.  Federal Rule 33
requires that each interrogatory be answered "fully in writing," Fed. R. Civ. P. 33(b)(1), using
"such information as is available" to the responding party, Fed. R. Civ. P. 33(a).

5.      Plaintiff objects to each interrogatory to the extent it seeks discovery of Maureen
E. Egan, who is not the Plaintiff in this case and was not involved in any of the investments at
issue in this case.

6.      Plaintiff objects to each definition and interrogatory to the extent that it is
unreasonably cumulative, vague, and unduly burdensome.  Plaintiff further objects to factual

---

[1] Where Defendant's interrogatory contains more than one interrogatory, Plaintiff has numbered its response to each
interrogatory actually asked in a single interrogatory.  Plaintiff's interrogatories that are subject to this objection are
numbers 8, 9, 11, 12, 19, 24, 25, 26, and 27.

assertions contained in the Interrogatories, and by responding neither accepts nor adopts such assertions.

7.    Plaintiff objects to the Interrogatories to the extent that they are unreasonably cumulative and unduly burdensome, to the extent that they seek information that is neither relevant to the subject matter involved in the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence, and to the extent that they are otherwise beyond the scope of discovery under the Federal Rules of Civil Procedure.

8.    Plaintiff objects to the Interrogatories to the extent that they seek information that is neither known to Plaintiff, nor reasonably available to Plaintiff through an inquiry of Plaintiff's agents, Fidelity International's agents, or existing documents.

9.    Plaintiff objects to each interrogatory to the extent such interrogatory fails to specify a period of time and accordingly is overbroad or vague and ambiguous.

10.    Plaintiff objects to each interrogatory to the extent it seeks information contained in documents that have been produced by third parties in response to subpoenas issued in this case. Plaintiff directs the government to those documents in response to these Interrogatories.

11.    Subject to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff reserves the right to supplement or correct the responses to these Interrogatories after the completion of additional discovery. Plaintiff is awaiting the receipt of additional documents from the government in response to Plaintiff's First Set of Requests for Production of Documents. Where appropriate, Plaintiff will supplement the responses to the Interrogatories in accordance with Rule 26(e).

<u>DEFINITIONS</u>

In responding to these Interrogatories, Plaintiff uses the definitions provided in Local Rule 26.5 and United States' First Set of Interrogatories. In addition, the following terms are meant to have the following definitions:

"Alpha" means Alpha Consultants, LLC, a Florida limited liability company; Alpha Consultants, Inc., a Florida corporation; and all related entities and all persons holding themselves out as representatives of these entities.

"Helios" means Helios Advisory, LLC; Helios Trading, LLC; Helios Financial, LLC; Helios Grove, Inc.; Helios Group, LLC; and all related entities and all persons holding themselves out as representatives of these entities.

"IRS" means "Internal Revenue Service."

"Plaintiff" means Plaintiff and his agents.

"Proskauer" means Proskauer Rose LLP and all persons holding themselves out as representatives of this entity.

"Sidley Austin" means Sidley Austin LLP and all of its predecessors, including Sidley Austin Brown & Wood and Brown & Wood, and all persons holding themselves out as representatives of these entities.

<u>INTERROGATORIES</u>

<u>INTERROGATORY NO. 1</u>

Please identify, and provide the information listed below for, **every** person having knowledge of the formation of the entities, the purpose for such entities, and the series of

4

transactions described in paragraphs 33 through 43 of the Complaint, whether or not the person has information supporting your claims:

- the person's full name;

- the person's present or last known address and telephone number;

- the person's present or last known place of employment, when referring to a natural person;

- the person's occupation, employer, and title at that employer during the period of 2000-2001, when referring to a natural person;

- and the subject matter and a brief summary of the person's knowledge.

Please organize this information in a table sorted alphabetically by the last name of each person.

RESPONSE TO INTERROGATORY NO. 1

Plaintiff objects to this interrogatory because it is overbroad.

Plaintiff further objects to this interrogatory because the term "entities" is undefined and, accordingly, is vague and ambiguous.

Subject to and without waiving these objections, Plaintiff responds as follows:

Plaintiff directs the government to the documents already in the possession of the government and the documents Plaintiff is producing in response to United States' First Set of Requests for Production. The documents already in the possession of the government include the documents Plaintiff produced to the government on April 28, 2006, the documents produced by KPMG in response to the subpoena the government issued to KPMG, the documents produced by Helios in response to the subpoena the government issued to Helios, and all other documents in the government's possession, custody, or control. From these documents the

government can determine which individuals and entities may have knowledge of the formation of Fidelity International and Fidelity World, the purpose for Fidelity International and Fidelity World, and the series of investments described in paragraphs 33 through 43 of the Complaint.

Plaintiff directs the government to Exhibit A in response to Interrogatory No. 1. Based on the documents in Plaintiff's possession, it appears that the people listed in Exhibit A have knowledge of the formation of Fidelity International and Fidelity World, the purpose for Fidelity International and Fidelity World, and the series of investments described in paragraphs 33 through 43 of the Complaint. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to the documents already in the possession of the government and the documents Plaintiff is producing in response to United States' First Set of Requests for Production for the subject matter and a brief summary of the knowledge of the people listed in Exhibit A.

INTERROGATORY NO. 2

Please identify, and provide the information listed below for, **every** person that was involved in the design and/or development of the transactions described in paragraphs 33 through 43 of the Complaint, whether or not the person has information supporting your claims:

- the person's full name;
- the person's present or last known address and telephone number;
- the person's present or last known place of employment, when referring to a natural person;
- the person's occupation, employer, and title at that employer during the period of 2000-2001, when referring to a natural person;
- and the subject matter and a brief summary of the person's knowledge.

6

Please organize this information in a table sorted alphabetically by the last name of each person.

RESPONSE TO INTERROGATORY NO. 2

Plaintiff directs the government to the documents already in the possession of the government and the documents Plaintiff is producing in response to United States' First Set of Requests for Production. The documents already in the possession of the government include the documents the Plaintiff produced to the government on April 28, 2006, the documents produced by KPMG in response to the subpoena the government issued to KPMG, and the documents produced by Helios in response to the subpoena the government issued to Helios, and all other documents in the government's possession, custody, or control. From these documents the government can determine which individuals and entities may have been involved in the design and development of the investments described in paragraphs 33 through 43 of the Complaint.

Plaintiff and his advisors received advice and information concerning the design and development of the investments described in paragraphs 33 through 43 of the Complaint from KPMG, Helios, Alpha, and Sidley Austin. Mike Egan worked with Helios and Alpha in designing an option-trading strategy that was economically substantial and provided a reasonable opportunity to make an economic profit.

Plaintiff directs the government to Exhibit B in response to Interrogatory No. 2. Based on the documents in Plaintiff's possession, Exhibit B identifies the representatives of KPMG, Helios, Alpha, and Sidley Austin who appear to have been involved in the design and development of the investments described in paragraphs 33 through 43 of the Complaint. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to the documents already in

7

the possession of the government and the documents Plaintiff is producing in response to United States' First Set of Requests for Production for the subject matter and a brief summary of the knowledge of the people listed in Exhibit B.

<u>INTERROGATORY NO. 3</u>

Please explain completely and accurately how you and/or any advisor (including your son, Michael Egan) were first introduced to or became aware of the transactions described in paragraphs 33 through 43 of the Complaint.

<u>RESPONSE TO INTERROGATORY NO. 3</u>

Plaintiff's investments, which are described in paragraphs 33 through 43 of the Complaint, developed over time from a general concept for an investment structure. Plaintiff and his advisors first met with KPMG on May 15, 2000. At this meeting, Plaintiff and his advisors described how Plaintiff's investments were managed and the portfolio risks facing Plaintiff, including his concentrated position in EMC Corporation stock. The KPMG representative described an investment opportunity, but Plaintiff and his advisors were not interested in the investment opportunity presented. KPMG then recommended that Plaintiff and his advisors meet with Helios, as well as KPMG. Over time, Plaintiff and his advisors met with KPMG, Helios, and Alpha. Plaintiff and his advisors described Plaintiff's investment management structure and financial objectives to the representatives of each of these entities. KPMG, Helios, and Alpha proposed various investment and tax-saving strategies that addressed Plaintiff's portfolio risks and objectives from which a transaction might evolve. Those fundamental investment and tax-saving strategies were part of ongoing communications with KPMG, Helios, and Alpha. The investment strategy described in paragraphs 33 through 43 of the Complaint resulted from those ongoing communications.

8

<u>INTERROGATORY NO. 4</u>

Please identify, and provide the information listed below, for **every** communication you and/or any advisor (including your son, Michael Egan) have had with any person concerning the transactions described in paragraphs 33 through 43 of the Complaint:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- and a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

<u>RESPONSE TO INTERROGATORY NO. 4</u>

Plaintiff objects to this interrogatory because it fails to specify a period of time and, accordingly, is overbroad and vague and ambiguous. Accordingly, Plaintiff limits his response

to communications contemporaneous with the investments described in paragraphs 33 through 43 of the Complaint and the business activities of Fidelity International.

Plaintiff further objects to this interrogatory because it is unduly burdensome.

Plaintiff further objects to this interrogatory to the extent that it seeks the disclosure of communications protected by the attorney-client privilege, attorney work-product doctrine, or other applicable privilege or immunity.

Subject to and without waiving these objections, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 4 to United States' First Set of Requests for Production, which identifies non-privileged, responsive communications. Plaintiff also directs the government to documents produced to the government by third parties, including Alpha, Helios, KPMG, and Sidley Austin, whether produced in response to a subpoena in this case, collected during IRS civil examinations, or produced to the government in connection with any other proceeding, which contain responsive communications.

INTERROGATORY NO. 5

Please identify, and provide the information listed below for, every marketing or other material used in presenting the transactions described in paragraphs 33 through 43 of the Complaint to you and/or your advisors (including your son, Michael Egan):

- type of document or other tangible thing;

- general subject matter;

- date of the document or other tangible thing;

- author(s), addressee(s), and recipient(s);

10

- a description of each document or material or a citation to the beginning and ending Bates stamp numbers of the document or material;

- the person who created the document or other tangible thing;

- whether you were given a copy of the document or other tangible thing;

- if a copy was given to you, whether and where the copy still exists;

- if you were not given a copy of the document, the reason for your not receiving a copy of the document;

- if you have not furnished the Bates stamp numbers for the document or other tangible thing, the person who has custody of the document or other tangible thing and its location; and

- if it does not exist, how the document or other tangible thing was disposed of and any person who authorized its disposal or who has knowledge of its disposal.

RESPONSE TO INTERROGATORY NO. 5

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 5 to United States' First Set of Requests for Production, which identifies the marketing or other material used in presenting the investments described in paragraphs 33 through 43 of the Complaint to Plaintiff and his advisors.

INTERROGATORY NO. 6

In paragraph 20 of the Complaint in this case, you allege that "[b]ecause of Plaintiff's concentrated stock position, Plaintiff was interested in investments that would act as an indirect hedge of Corporation stock" and, moreover, that "in 2000 and 2001, Plaintiff and his business interests had substantial variable rate debt that Plaintiff had personally guaranteed" and that,

"[a]ccordingly, investments that directly or indirectly hedged variable interest rates were similarly attractive and served Plaintiff's objective."

Please explain completely and accurately how the transactions described in paragraphs 33 through 43 of the Complaint, if any, acted or were designed to act as an indirect hedge of your EMC Corporation stock.

RESPONSE TO INTERROGATORY NO. 6

Plaintiff and his advisors explained to KPMG and Helios how Plaintiff's investments were structured, the portfolio risks facing Plaintiff, and Plaintiff's investment objectives. This explanation included the fact that, in 2000 and 2001, Plaintiff had a concentrated position in EMC corporate stock. Plaintiff and his advisors wished to protect against declines in the price of EMC stock. Plaintiff, however, could not directly hedge his EMC stock due to restrictions imposed on him by EMC Corporation's securities trading policy. In addition, because Plaintiff's sales of stock were publicly disclosed, any large sales likely would have had a negative impact on EMC's stock price. Accordingly, Plaintiff and his advisors were interested in investments that would act as an indirect hedge of EMC stock.

In 2001, EMC earned significant revenue and had higher margins in Europe and Japan. Plaintiff and his advisors believed that a stronger U.S. dollar could negatively impact sales and profits overseas and reduce EMC margins, resulting in a potential decline in the price of EMC stock. Therefore, KPMG, Helios, and Alpha advised Plaintiff and his advisors that Plaintiff could indirectly hedge against declines in the price of EMC stock by investing in foreign currency options.

The investments described in paragraphs 33 through 43 of the Complaint were designed, based on the advice of KPMG, Helios, and Alpha, to provide economic gains if the U.S. dollar

became stronger relative to the Euro and Yen, and thus mitigate potential economic losses in the value of EMC stock due to declining revenue and profits in Europe and Japan. Conversely, if the U.S. dollar became weaker relative to the Euro and Yen, the economic gains in the value of EMC stock due to increased revenue and profits in Europe and Japan had the potential to mitigate economic losses from the investments described in paragraphs 33 through 43 of the Complaint. The investments had the potential for both economic profit and economic loss, and a profit potential existed for each individual option.

INTERROGATORY NO. 7

In paragraph 20 of the Complaint in this case, you allege that "[b]ecause of Plaintiff's concentrated stock position, Plaintiff was interested in investments that would act as an indirect hedge of Corporation stock" and, moreover, that "in 2000 and 2001, Plaintiff and his business interests had substantial variable rate debt that Plaintiff had personally guaranteed" and that, "[a]ccordingly, investments that directly or indirectly hedged variable interest rates were similarly attractive and served Plaintiff's objective."

Please explain completely and accurately how the transactions described in paragraphs 33 through 43 of the Complaint, if any, directly or indirectly hedged, or were designed to hedge directly or indirectly, the variable rate debt held by you and your business interests that you had personally guaranteed. Your explanation should include, but not be limited to, a complete and accurate description of the variable rate debt held by you and your business interests.

RESPONSE TO INTERROGATORY NO. 7

Plaintiff and his advisors explained to KPMG and Helios how Plaintiff's investments were structured, the portfolio risks facing Plaintiff, and Plaintiff's investment objectives. This explanation included the fact that, in 2000 and 2001, Plaintiff and his business interests had

substantial short-term variable rate debt. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the

government to Plaintiff's Response to Request for Production No. 7 to United States' First Set of

Requests for Production, which identifies documents concerning the variable rate debt held by

Plaintiff and his business interests in 2000 and 2001. Plaintiff and his advisors wished to protect

against the risk of increases in short-term interest rates.

      KPMG, Helios, and Alpha advised Plaintiff and his advisors that Plaintiff could hedge

against increases in short-term interest rates by investing in LIBOR put options. The

investments described in paragraphs 33 through 43 of the Complaint were designed, based on the

advice of KPMG, Helios, and Alpha, to hedge Plaintiff's short-term debt because if short-term

interest rates increased, Plaintiff had the potential to profit economically on the option

transactions. If short-term interest rates decreased, Plaintiff would suffer an economic loss on

the option transactions, but this loss would be mitigated by the benefit derived from the lower

interest rates on his underlying short-term obligations. The investments had the potential for

both economic profit and economic loss, and a profit potential existed for each individual option.

INTERROGATORY NO. 8

      In paragraph 21 of the Complaint in this case, you state that in early 2001 you exercised

stock options which created "a substantial amount of economically unrealized taxable income."

You also state, in paragraph 22 of the Complaint, that following the exercise of the options

referenced in paragraph 21 of the Complaint, the price of EMC stock dropped dramatically due

to market conditions, "so that the taxable income from the exercise of the options was

substantially greater than the value of the stock."

      Please explain completely and accurately what stock options you exercised, when you

exercised them, why you exercised them, the exact amount of taxable income created, and how

the transactions described in paragraphs 33 through 43 of the Complaint furthered your "overall [non-tax] investment objectives," as you allege in paragraph 22 of your Complaint.

RESPONSE TO INTERROGATORY NO. 8

Plaintiff objects to this interrogatory because it consists of two separate interrogatories. This interrogatory requests information regarding (1) the exercise of stock options described in paragraph 21 of the Complaint and (2) how the investments described in paragraphs 33 through 43 of the Complaint furthered Plaintiff's non-tax investment objectives. This interrogatory should be divided into two separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

***Response to Interrogatory No. 8.1***

Plaintiff exercised the following options, on the following dates, resulting in the following taxable income:

| Date | Number of Options | Exercise Price | Option Description | Cost | Taxable Income |
|------|-------------------|----------------|--------------------|------|----------------|
| 1/22/01 | 2,000,000 | $76.50 | EMC B Options @ Strike Price of $1.1563 | $2,312,600 | $150,687,400 |

Plaintiff exercised the options listed above in anticipation of EMC's distribution of McData Class A common stock to EMC stockholders.

15

*Response to Interrogatory No. 8.2*

Plaintiff made the investments described in paragraphs 33 through 43 of the Complaint to indirectly hedge Plaintiff's concentrated position in EMC stock and to directly hedge the variable-rate debt obligations of Plaintiff and his business interests. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Responses to Interrogatory Nos. 6 and 7 for an explanation of how the investments described in paragraphs 33 through 43 of the Complaint furthered Plaintiff's non-tax investment objectives.

INTERROGATORY NO. 9

In paragraph 23 of the Complaint, you state that, in 2000 and 2001, you considered proposed investment opportunities that were "tax-advantaged" but you were "not interested in investing in a proposed investment that was mass-marketed or that had been identified as abusive by the IRS."

Please explain completely and accurately all proposed investment opportunities that you considered in 2000 and 2001 that were tax-advantaged and describe what steps you took in each instance to determine whether the proposed investment was mass-marketed or had been identified as abusive by the IRS. This explanation should include, but not be limited to, the following:

- the name and a description of the proposed tax-advantaged investment opportunity considered;

- who proposed the tax-advantaged investment opportunity;

- when the tax advantaged investment opportunity that was considered was proposed to you and/or your advisors (including your son, Michael Egan);

- whether you implemented, in whole or in part, directly or indirectly, any of the proposed tax-advantaged investment opportunities that you considered;

- whether, and if so why you came to believe that any of the proposed tax-advantaged investment opportunities that you considered was mass-marketed;

- whether, and if so why you came to believe that any of the proposed tax-advantaged investment opportunities that you considered had been identified as abusive by the IRS;

- whether, and if so why, you came to believe that any of the proposed tax-advantaged investment opportunities that you considered violated federal or state tax law.

Please organize this information in a separate table for each proposed tax-advantaged investment opportunity considered, sorting them chronologically by the date when they were first proposed to you and/or your advisors (including your son, Michael Egan).

RESPONSE TO INTERROGATORY NO. 9

Plaintiff objects to this interrogatory because it consists of two separate interrogatories. This interrogatory requests information regarding (1) what proposed tax-advantaged investment opportunities Plaintiff considered in 2000 and 2001 and (2) how Plaintiff evaluated those opportunities. This interrogatory should be divided into two separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories

17

served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

***Response to Interrogatory No. 9.1***

In 2000 and 2001, Plaintiff, with the assistance of Mike Egan, considered proposed investment opportunities that were consistent with Plaintiff's investment objectives and that were, in some cases, tax-advantaged. Plaintiff's high net worth made him a target for many investment advisors who saw working with Plaintiff as an opportunity to profit themselves. Investment advisors continuously presented investment opportunities to Plaintiff's agents and advisors. Many of these investment opportunities, which ranged from estate planning to investing in municipal bonds, were tax advantaged. Most of the ideas that were presented to Plaintiff's agents and advisors were not seriously considered and Plaintiff never personally learned about most of them. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 9 to United States' First Set of Requests for Production, which identifies documents concerning some of the tax-advantaged opportunities presented.

***Response to Interrogatory No. 9.2***

When Plaintiff and his advisors met with individuals who presented tax-advantaged investment opportunities, Plaintiff and his advisors, if necessary, communicated to the presenters that Plaintiff and his advisors were not interested in opportunities that were mass marketed, had been identified as abusive by the IRS, or that did not comply with applicable tax laws. Presenters usually provided authority to show that the presented opportunity complied with applicable tax laws.

18

In some circumstances, Plaintiff and his advisors would request information about the number of individuals who had participated in the investment and the number of individuals to whom the opportunity had been presented. They also would inquire about whether the IRS considered the investment or its purported tax treatment to be abusive and would require that a reputable law firm be able to provide an independent opinion that the investment complied with applicable tax laws and would more likely than not be upheld if challenged by the IRS. Plaintiff and his advisors, however, were not interested in the majority of tax-advantaged investment opportunities presented to them, either because they were not good investments or because it was questionable whether they complied with applicable tax laws. In those cases, Plaintiff and his advisors did not take any further steps to investigate them or to obtain an independent opinion.

INTERROGATORY NO. 10

Please identify, and provide the information listed below for, **every** communication you and/or any advisor (including your son, Michael Egan) have had with any person in 2000 and 2001 concerning proposed investment opportunities that were "tax-advantaged":

- the date on which the communication was made;
- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communicate was made;
- the person who made the communication;
- the person to whom the communication was made;
- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;
- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- and a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

RESPONSE TO INTERROGATORY NO. 10

Plaintiff objects to this interrogatory to the extent that it seeks the disclosure of communications protected by the attorney-client privilege, attorney work-product doctrine, or other applicable privilege or immunity. Subject to and without waiving this objection, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 10 to United States' First Set of Requests for Production, which identifies non-privileged communications regarding certain tax-advantaged investment opportunities proposed to Plaintiff and his advisors in which Plaintiff did not engage.

INTERROGATORY NO. 11

Please give a complete and accurate history of Fidelity World, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of these accounts;

- business activities and purpose of those activities during the years 2000 through 2005;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses for the years 2000 through 2005;

- whether, and if so why, Fidelity World entered into four option contracts on October 9, 2001, with the following numbers: RCM 2001-10-09-01, RCM 2001-10-09-02, RCM 2001-10-09-04, RCM 2001-10-09-05;

- how Fidelity World accounted for the sale and purchase of these four option contracts;

- whether, and if so why, you assigned your interest in Fidelity World to Fidelity International on October 22, 2001;

- if Fidelity World is no longer in existence, the date of the termination of this entity, the legal nature of its termination, and the reason for its termination.

## RESPONSE TO INTERROGATORY NO. 11

Plaintiff objects to this interrogatory because it consists of six separate interrogatories. This interrogatory requests information regarding (1) the financial history of Fidelity World; (2) the business purpose for the formation of Fidelity World; (3) Fidelity World's financial accounts;

(4) the purpose of the business activities in which Fidelity World engaged, including entering into the option contracts; (5) the accounting practices of Fidelity World; and (6) whether, and if so why, Plaintiff contributed his interest in Fidelity World to Fidelity International. This interrogatory should be divided into six separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to the extent this interrogatory seeks information regarding Fidelity World through "the present." Events occurring after the filing of this lawsuit are not relevant to the years before the Court, and Plaintiff's response is limited to events occurring prior to the filing of this lawsuit.

Subject to and without waiving these objections, Plaintiff responds as follows:

### *Response to Interrogatory No. 11.1*

Fidelity World was formed on July 19, 2000. Richard Egan was the initial sole member of Fidelity World. Fidelity World had no assets upon formation or throughout 2000.

In 2001, Richard Egan contributed $2,250,000 to Fidelity World. Fidelity World then entered into four European-style digital option contracts. On October 22, 2001, Richard Egan contributed his membership interest in Fidelity World to Fidelity International. As a result of that contribution, Fidelity International became the sole member of Fidelity World. After the contribution of Fidelity World to Fidelity International, the activities of Fidelity World were

accounted for in the books and records of Fidelity International. The value of assets purchased

by Fidelity World prior to the contribution of Fidelity World to Fidelity International, however,

continued to be accounted for separately. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the

government to Plaintiff's Response to Request for Production No. 11 to United States' First Set

of Requests for Production, which identifies the documents that evidence the financial history of

Fidelity World from 2000 through 2005, including formation, assets and liabilities, profits and

losses, contributions and distributions of cash and property, business activities, and option

contracts entered into by Fidelity World.

***Response to Interrogatory No. 11.2***

Fidelity World was formed with the expectation that it would be used at a later date to

hold investments and conduct business activities on behalf of Plaintiff.

***Response to Interrogatory No. 11.3***

Details regarding Fidelity World's financial account follow:

- Refco Capital Markets: 006476-00000. This account was created for the purpose

  of holding the capital that was used in purchasing and settling Fidelity World's

  option contracts. The last known address of Refco Capital Markets is One World

  Financial Center, 200 Liberty Street, Tower A, New York, NY 10281.

***Response to Interrogatory No. 11.4***

The purpose of Fidelity World's business activities was to facilitate the holding of

Plaintiff's investments. Fidelity World entered into the specific option contracts on behalf of

Plaintiff pursuant to the advice of KPMG, Helios, and Alpha that entering into those contracts

would further Plaintiff's investment and tax objectives.

***Response to Interrogatory No. 11.5***

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 11 to United States' First Set of Requests for Production, which identifies the documents that evidence Plaintiff's accounting for option contracts RCM 2001-10-09-01, RCM 2001-10-09-02, RCM 2001-10-09-04, and RCM 2001-10-09-05.

***Response to Interrogatory No. 11.6***

Plaintiff contributed his interest in Fidelity World to Fidelity International pursuant to the advice of KPMG and Helios that such a contribution would further Plaintiff's investment and tax objectives. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 11 to United States' First Set of Requests for Production, which identifies the documents that evidence Plaintiff's contribution of Plaintiff's interest in Fidelity World to Fidelity International.

INTERROGATORY NO. 12

Please give a complete and accurate history of Fidelity International, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;
- business purpose for the formation of this entity;
- membership;
- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

24

- account numbers of all financial accounts of this entity, name and address of the financial institutions whereat these accounts are held, and the purpose of these accounts;

- business activities and purpose of those activities during the years 2000 through 2005;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses for the years 2000 through 2005;

- whether, and if so why, Fidelity International accepted the assignment of your interest in Fidelity World on October 22, 2001;

- how Fidelity International accounted for the assignment of your interest in Fidelity World;

- whether, and if so why, Fidelity International entered into four option contracts on October 22, 2001, with the following numbers:  RCM 2001-10-22-07, RCM 2001-10-22-08, RCM 2001-10-22-09, RCM 2001-10-22-10;

- whether, and if so why, Fidelity International entered into four option contracts on October 22, 2001, with the following numbers:  RCM 2001-10-22-12, RCM 2001-10-22-13, RCM 2001-10-22-14, RCM 2001-10-22-15;

- how Fidelity World accounted for the sale and purchase of these eight option contracts;

- if Fidelity International is no longer in existence, the date of the termination of this entity, the legal nature of its termination, and the reason for its termination.

RESPONSE TO INTERROGATORY NO. 12

Plaintiff objects to this interrogatory because it consists of six separate interrogatories. This interrogatory requests information regarding (1) the financial history of Fidelity International; (2) the business purpose for the formation of Fidelity International; (3) Fidelity International's financial accounts; (4) the purpose of the business activities in which Fidelity International engaged, including entering into option contracts; (5) the accounting practices of Fidelity International; and (6) whether, and if so why, Fidelity International accepted Plaintiff's assignment of his interest in Fidelity World. This interrogatory should be divided into six separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to the extent this interrogatory seeks information regarding Fidelity International through "the present." Events occurring after the filing of this lawsuit are not relevant to this matter, and Plaintiff's response is limited to events occurring prior to the filing of this lawsuit.

Subject to and without waiving these objections, Plaintiff responds as follows:

*Response to Interrogatory No. 12.1*

Fidelity International was formed on July 19, 2000. Upon beginning operations, Fidelity International had the following members, each of whom remains a member to date: Richard Egan, Alpha Consultants LLC, Helios Trading LLC, and Samuel Mahoney. Fidelity

International had no assets upon formation or throughout 2000. In 2001, all the members of Fidelity International made cash contributions to Fidelity International. Plaintiff also contributed his interest in Fidelity World to Fidelity International in 2001. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 12 to United States' First Set of Requests for Production, which identifies the documents that evidence the financial history of Fidelity International from 2000 through 2005.

***Response to Interrogatory No. 12.2***

Fidelity International was formed with the expectation that it would be used at a later date to hold investments and conduct business activities.

***Response to Interrogatory No. 12.3***

Details regarding Fidelity International's financial accounts follow:

- Mellon Bank: 10-63-2846-00-0. This account was created to hold the funds of Fidelity International. The address of Mellon Bank is One Boston Place, AIM #024-0021, Boston, MA 02108.

- Refco Capital Markets: 006477-00000. This account was created for the purpose of holding the capital that was used in purchasing and settling Fidelity International's option contracts. The last known address of Refco Capital Markets is One World Financial Center, 200 Liberty Street, Tower A, New York NY, 10281.

***Response to Interrogatory No. 12.4***

The purposes of Fidelity International's business activities were to provide Plaintiff and his co-investors with the opportunity to generate economic profits, to further Plaintiff's financial objective of hedging his other investments and variable rate indebtedness, and to derive tax

benefits. The business activities of Fidelity International were undertaken pursuant to the advice of KPMG, Helios, and Alpha that those activities would further Plaintiff's investment and tax objectives.

### *Response to Interrogatory No. 12.5*

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 12 to United States' First Set of Requests for Production, which identifies the documents that evidence how Fidelity International accounted for the contribution of Plaintiff's interest in Fidelity World to Fidelity International. Fidelity World did not purchase or sell the following eight option contracts and, accordingly, did not account for their purchase or sale: RCM 2001-10-22-07, RCM 2001-10-22-08, RCM 2001-10-22-09, RCM 2001-10-22-10; RCM 2001-10-22-12, RCM 2001-10-22-13, RCM 2001-10-22-14, RCM 2001-10-22-15.

### *Response to Interrogatory No. 12.6*

Fidelity International accepted the contribution of Plaintiff's interest in Fidelity World as partial consideration for Plaintiff's acquisition of preferred and common membership interests in Fidelity International. Fidelity International accepted Plaintiff's contribution of Plaintiff's interest in Fidelity World pursuant to the advice given by KPMG and Helios that such contribution would further the investment and tax objectives of Plaintiff. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 12 to United States' First Set of Requests for Production, which identifies the documents that evidence Plaintiff's contribution of Plaintiff's interest in Fidelity World to Fidelity International.

INTERROGATORY NO. 13

Fidelity World appears to have entered into four European style digital option contracts
(RCM 2001-10-09-01, RCM 2001-10-09-02, RCM 2001-10-09-04, and RCM 2001-10-09-05) on
October 9, 2001, with a expiration date of October 9, 2002.

Fidelity International appears to have entered into eight European style digital option
contracts on October 22, 2001, (RCM 2001-10-22-07, RCM 2001-10-22-08, RCM 2001-10-22-
09, RCM 2001-10-22-10, RCM 2001-10-22-12, RCM 2001-10-22-13, RCM 2001-10-22-14, and
RCM 2001-10-22-15) with a expiration date of April 19, 2002.

Please identify, and provide the information listed below for, **every** communication, oral
or otherwise, in which a person stated, represented, suggested, implied, intimated, or in any other
way communicated that you, Fidelity International, or any other person could realize a tax loss
by terminating any of these European-style digital options by the end of the 2001 tax year (and
thus prior to the expiration of the full term):

- the date on which the communication was made;
- the means of communication (e.g., in person, by phone, by email, by fax), and, if
  in person, the place where the communication was made;
- the person who made the communication;
- the person to whom the communication was made;
- the person who heard or received any portion of the communication, if different
  or in addition to those individuals to whom the communication was made;
- the duration of the communication;
- the nature and content of the communication, repeating the actual words used to
  the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and

- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

RESPONSE TO INTERROGATORY NO. 13

Plaintiff objects to this interrogatory to the extent that it seeks the disclosure of communications protected by the attorney-client privilege, attorney work-product doctrine, or other applicable privilege or immunity. Subject to and without waiving this objection, Plaintiff responds as follows:

KPMG and Helios advised Plaintiff and his advisors generally that option positions that have declined in value could be closed out, thus realizing a loss that would be allocated to the members in accordance with their membership interests. *See, e.g.*, Bates-numbered document 011354-011362, produced to the government on April 28, 2006. Citing *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), KPMG and Helios further advised Plaintiff and his advisors that Plaintiff's allocable share of such loss could be recognized. This advice was subsequently confirmed with respect to Fidelity International's specific investments by Sidley Austin in a legal opinion dated March 8, 2002. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 13 of United States' First Set of Requests for Production, which identifies the non-privileged communications concerning the realization of a tax loss by terminating any of the option contracts listed above by the end of the 2001 tax year.

INTERROGATORY NO. 14

Please explain completely and accurately how you and/or any of your advisors (including your son, Michael Egan) became acquainted with Samuel Mahoney, who appears to have initially owned 93% of the common interests of Fidelity International.

RESPONSE TO INTERROGATORY NO. 14

Plaintiff and his advisors were seeking co-investors to invest in Fidelity International. KPMG and Helios, who had been advising Plaintiff and his advisors on investing for more than one year, identified Mr. Mahoney as a potential co-investor willing to share in the risks and rewards of the investments to be made by Fidelity International. KPMG and Helios described Mr. Mahoney as a businessman residing in Ireland who had experience with and knowledge of international investments.

INTERROGATORY NO. 15

Please identify, and provide the information listed below for, **every** communication, oral or otherwise, you and/or any of your advisors (including your son, Michael Egan) had with Samuel Mahoney:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and

- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

RESPONSE TO INTERROGATORY NO. 15

Plaintiff objects to this interrogatory because it fails to specify a period of time and, accordingly, is overbroad and vague and ambiguous.

Plaintiff further objects to this interrogatory because it seeks the disclosure of attorney work-product and communications protected by the attorney-client privilege and attorney work-product doctrine.

Subject to and without waiving these objections, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 15 to United States' First Set of Requests for Production, which identifies non-privileged responsive communications. These documents demonstrate that Plaintiff and his advisors communicated with Mr. Mahoney regarding the Fidelity International transaction and the subsequent audit and litigation. Both Plaintiff and Mr. Mahoney signed the Fidelity International Operating Agreement, dated as of October 22, 2001, and both wired their initial capital contributions for Fidelity International to an account at Refco Capital Markets. In a letter dated November 5, 2001, Plaintiff informed Mr. Mahoney and Mike Egan, as manager

for Fidelity International, that he wished to purchase 88% of the common membership interests in Fidelity International from Mr. Mahoney for a purchase price of $325,500. On November 6, 2001, Plaintiff and his advisors wired Mr. Mahoney $325,500 for the purchase of that interest. Additionally, Mr. Mahoney received notice of, and consented to, Plaintiff's contribution of 4,028 shares of Stockton Holdings Limited to Fidelity International, effective October 31, 2001; $5 million in cash to Fidelity International, effective November 29, 2001; and $2 million in cash to Fidelity International, effective December 14, 2001. Finally, Fidelity International's tax return preparer provided the members of Fidelity International, including Mr. Mahoney, with their respective Schedule K-1s.

Plaintiff and his advisors also communicated with Mr. Mahoney regarding the IRS's audit of Fidelity International. In 2004, Mike Egan asked Mr. Mahoney to provide the IRS with a copy of Mr. Mahoney's 2001 tax return in connection with the 2001 audit of Fidelity International. In 2005, Mike Egan asked Mr. Mahoney to provide the IRS with a copy of Mr. Mahoney's 2002 tax return in connection with the 2002 audit of Fidelity International.

Additionally, on September 20, 2005, Plaintiff personally met briefly with Mr. Mahoney in Dublin, Ireland to exchange pleasantries.

Documents evidencing communications between KPMG, Helios, Alpha, or Sidley Austin and Mr. Mahoney, to the extent they exist, would be in the files of each of these entities. Plaintiff directs the government to documents produced to the government by third parties, including KPMG, Helios, Alpha, and Sidley Austin, whether produced in response to a subpoena in this case, collected during IRS civil examinations, or produced to the government in connection with any other proceeding, which may contain communications between the

33

representatives of any of these entities and Mr. Mahoney regarding the Fidelity International transaction.

INTERROGATORY NO. 16

Please identify, and provide the information listed below for, **every** payment made to Samuel Mahoney with respect to the transactions described in paragraphs 33 through 43 of the Complaint or any other transactions in which payments were made to Samuel Mahoney:

- the date of the payment;

- the amount of the payment;

- the person making the payment;

- the reason for the payment;

- the account from which the payment was drawn;

- the account to which the payment was deposited;

- a description of any document memorializing the payment.

Please organize this information in a table sorted chronologically by the date on which the payment was made.

RESPONSE TO INTERROGATORY NO. 16

Richard Egan purchased 88% of the common membership interests in Fidelity International from Mr. Mahoney on or about November 6, 2001 by making a payment to Mr. Mahoney of $325,500. The account from which the payment was drawn was a personal account of Richard Egan at Chase Manhattan Bank, account number 1063281009. The payment was deposited in an account at Singer & Friedlander, account number 30123012. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 16, which identifies the documents that memorialize the payment described above.

34

INTERROGATORY NO. 17

On the Form 8886 Reportable Transaction Disclosure Statement that you and your wife, Maureen E. Egan, filed with the IRS roughly a month and a half after you filed the Complaint in this case, which is attached as Exhibit A, you state that you paid a fee to KPMG, Helios Trading, Sidley Austin Brown & Wood, and Proskauer Rose because each of these entities promoted, solicited, or recommended your participation in "the transaction," or provided tax advice related to the transaction.

The Form 8886 Reportable Transaction Disclosure Statement for Fidelity International, which is attached as Exhibit B, also states that Fidelity International paid a fee to KPMG, Helios Trading, Sidley Austin Brown & Wood, and Proskauer Rose because each of these entities promoted, solicited, or recommended your participation in "the transaction," or provided tax advice related to the transaction.

Please explain completely and accurately how much you and Fidelity International paid to each of these entities, including as to each such payment:

- the date of the payment;
- the amount of the payment;
- the person making the payment;
- the reason for the payment;
- the account from which the payment was drawn;
- the account to which the payment was deposited;
- a description of any document memorializing the payment.

Please organize this information in a table sorted chronologically by the date on which the payment was made.

RESPONSE TO INTERROGATORY NO. 17

    Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 17 to United States' First Set of Requests for Production, which identifies the documents memorializing the payments.

INTERROGATORY NO. 18

    On the Form 8886 Reportable Transaction Disclosure Statement that you and your wife, Maureen E. Egan, filed with the IRS roughly a month and a half after you filed the Complaint in this case, attached as Exhibit A, you disclose an expected tax benefit for the year 2002 of $1,778,122, which you attributed to a "loss from investment in Fidelity International Currency Advisor A Fund, LLC."

    Please explain completely and accurately why you and/or your wife expect a tax benefit in this amount attributable to an investment in Fidelity International.

RESPONSE TO INTERROGATORY NO. 18

    Plaintiff objects to this interrogatory to the extent it seeks discovery of Maureen E. Egan, who is not the Plaintiff in this case and was not involved in any of the transactions at issue in this case.

    Plaintiff further objects to this interrogatory because the present suit challenges only the proposed adjustments made by the IRS in the Notice of Final Partnership Administrative Adjustment ("FPAA") issued in connection with Fidelity International's 2001 tax year. Fidelity International's 2002 tax year is the subject of a separate FPAA. As previously disclosed to the Court, Plaintiff will file a complaint challenging the proposed adjustments in the 2002 FPAA and a motion to consolidate the present suit and the suit to be filed challenging the 2002 FPAA. Discovery has not yet begun in the yet-to-be filed case challenging the 2002 FPAA.

Subject to and without waiving these objections, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response

to Request for Production No. 18 to United States' First Set of Requests for Production.

INTERROGATORY NO. 19

You produced to the United States a legal opinion letter to you from Sidley, Austin,

Brown & Wood, dated March 8, 2002 (Bates-stamped 004179-004309). Section II.A. contains a

list of Investor Representations.

Please explain completely and accurately who provided the wording for these

representations and identify, and provide the information listed below for **every** communication,

oral or otherwise, with such persons:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if
  in person, the place where the communication was made;

- the person who made the communication;

- the person to whom the communication was made;

- the person who heard or received any portion of the communication, if different
  or in addition to those individuals to whom the communication was made;

- the duration of the communication;

- the nature and content of the communication, repeating the actual words used to
  the extent possible and, when not possible, paraphrasing in detail those words;

- the nature, content, and person making any response, repeating the actual words
  used to the extent possible and, when not possible, paraphrasing in detail those
  words; and

- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

RESPONSE TO INTERROGATORY NO. 19

Plaintiff objects to this interrogatory because it consists of two separate interrogatories. This interrogatory requests information regarding (1) who provided the wording for the Investor Representations in the Sidley Austin opinion letter and (2) every communication with such persons. This interrogatory should be divided into two separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to this interrogatory because it is vague. The interrogatory does not specify with whom the individuals who provided the wording for the Investor Representations must be communicating for a communication to be responsive.

Plaintiff further objects to this interrogatory to the extent that it seeks the disclosure of communications protected by the attorney-client privilege, attorney work-product doctrine, or other applicable privilege or immunity.

Subject to and without waiving these objections, Plaintiff responds as follows:

***Response to Interrogatory No. 19.1***

Sidley Austin drafted and issued the final opinion letter regarding the Fidelity

International transaction. Thus, Sidley Austin provided the initial draft of the wording for the

Investor Representations contained in the opinion letter. Drafts of the opinion letter were

circulated to Plaintiff's advisors, including Stephanie Denby who is counsel for Plaintiff, and

KPMG and Helios. Plaintiff's advisors reviewed and provided comments to Sidley Austin

regarding the draft legal opinion, including the Investor Representations. In connection with its

preparation of a revised draft, Sidley Austin reviewed the revisions and comments provided by

Plaintiff's advisors.

***Response to Interrogatory No. 19.2***

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to the documents

Plaintiff produced in Plaintiff's Response to Request for Production No. 19 to United States'

First Set of Requests for Production, which identifies non-privileged communications Plaintiff

and his advisors had with the individuals who provided the wording for the Investor

Representations.

<u>INTERROGATORY NO. 20</u>

The Investor Representations on page 12 of the legal opinion letter to you from Sidley,

Austin, Brown & Wood, dated March 8, 2002 (Bates-stamped 004179-004309), states the

following as Investor Representation #1:

> Investor entered into the Transactions for substantial non-tax business reasons,
> predominantly related to offsetting various investment risks associated with a
> large single concentrated holding in a U.S. technology company, and to hedge
> against currency fluctuations in international markets in which this technology
> company has significant currency exposure due to sales. Investor at the time was
> barred from engaging in direct hedging techniques with respect to his holdings.
> Also Investor has entered into certain Options to hedge against interest rate
> fluctuations since Investor was drawing on a large line of credit with a floating

interest rate. It was important to be able to manage the interest rate risks due to size of the loans as well as the limitations on the Investor's ability to sell his concentrated holdings due to trading restrictions and sales lockouts at a time when the stock price was becoming increasingly volatile. The intent was for these options to provide cushion if the stock price dropped significantly or if interest rates significantly increased.

Please explain completely and accurately all non-tax business reasons that you had for entering into the series of transactions described in paragraphs 33 through 43 of the Complaint, including the reasons listed in Investor Representation #1 if true.

RESPONSE TO INTERROGATORY NO. 20

The explanation of Plaintiff's non-tax business reasons for entering into the investments described in paragraphs 33 through 43 of the Complaint is contained in the quoted portion of this interrogatory.

Plaintiff and his advisors explained to KPMG and Helios how Plaintiff's investments were structured, the portfolio risks facing Plaintiff, and Plaintiff's investment objectives. This explanation included the facts that, in 2000 and 2001, Plaintiff had a concentrated position in EMC stock and Plaintiff and his business interests had substantial short-term variable rate debt. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Responses to Request for Production Nos. 7 and 20 to United States' First Set of Requests for Production, which identifies documents concerning the variable rate debt owed by Plaintiff and his business interests in 2000 and 2001. KPMG and Helios advised Plaintiff and his advisors that the investments described in paragraphs 33 through 43 of the Complaint were appropriate investments and that they would meet Plaintiff's investment objectives.

As explained in Investor Representation #1 and in the Response to Interrogatory No. 6, in 2001, Plaintiff wished to protect against declines in the price of EMC stock. Plaintiff, however, could not directly hedge his EMC stock due to restrictions placed on him by EMC Corporation's

securities trading policy. Accordingly, Plaintiff and his advisors were interested in investments that would act as an indirect hedge of EMC stock. In 2001, EMC earned significant revenue and had higher margins in Europe and Japan. Plaintiff and his advisors believed that a stronger U.S. dollar could negatively impact sales and profits overseas and reduce EMC margins, resulting in a potential decline in the price of EMC stock. Therefore, KPMG, Helios, and Alpha advised Plaintiff and his advisors that Plaintiff could indirectly hedge against declines in the price of EMC stock by investing in foreign currency options.

As explained in Investor Representation #1 and in the Response to Interrogatory No. 7, in 2001, Plaintiff wished to protect against increases in short-term interest rates. KPMG, Helios, and Alpha advised Plaintiff and his advisors that Plaintiff could hedge against increases in short-term interest rates by investing in LIBOR put options.

Plaintiff and his advisors, including KPMG and Helios, described Plaintiff's financial objectives to counsel at Sidley Austin and counsel confirmed the advice provided by KPMG, Helios, and Alpha.

INTERROGATORY NO. 21

The Investor Representations on page 12 of the legal opinion letter to you from Sidley Austin Brown & Wood, dated March 8, 2002 (Bates-stamped 004179-004309), states the following as Investor Representation #3:

> Investor contributed the membership interest in World to International for substantial non-tax business reasons. Investor has a very sophisticated investment portfolio. Investor continually attempts to group similar purpose investments in limited liability companies or limited partnerships to provide more accurate investment monitoring, to maintain overall portfolio balance, to achieve diversification of Investor's portfolio and to monitor investment risk. In addition, Investor has actively pursued investment opportunities since 1994 in alternative investments (such as real estate, private equity, venture funds, hedge funds, etc.). In order to boost economic performance, diversify holdings and limit risk. All of these investments have been done through limited liability companies or limited

partnerships. Many of these investments have outside participants and/or outside managers. Some of these investments have periodically involved hedging strategies.

Based on historical correlations, Investor believed that one group of the Options would move in the opposite direction of the stock price relating to his concentrated holdings and another group of the Options would move in the opposite direction of his interest rate exposure on his line of credit related to his concentrated holding. The Options were intended to provide a hedge against large losses arising due to Investor's concentrated holdings until Investor was able to sell a larger percentage of these holdings and pay down his line of credit and lower his interest rate exposure.

Please explain completely and accurately all non-tax business reasons that you had for contributing your membership interest in Fidelity World to Fidelity International, including the listed reasons if true.

RESPONSE TO INTERROGATORY NO. 21

The explanation of Plaintiff's non-tax business reasons for contributing Plaintiff's membership interest in Fidelity World to Fidelity International is contained in the quoted portion of this interrogatory. In addition, Plaintiff contributed his membership interest in Fidelity World to Fidelity International to combine the management, control, and reporting of like investments and to facilitate third-party investments in assets held by Fidelity World and Fidelity International.

INTERROGATORY NO. 22

In paragraphs 44 through 49 of the Complaint, you allege certain facts with respect to the assertion of accuracy-related penalties pursuant to 26 U.S.C. section 6662, and in paragraph 102 of Count XIII of the Complaint, you allege that "[t]he FPAA's application of penalties in this case is erroneous."

Please explain completely and accurately whether, and if so why, you believe that accuracy-related penalties pursuant to 26 U.S.C. section 6662 do not apply in this case.

RESPONSE TO INTERROGATORY NO. 22

Plaintiff objects to this interrogatory because it is premature in that at this stage of the discovery process the government has not produced all documents and material relevant to the IRS's assertion of penalties, nor has Plaintiff discovered as of this time documents and information from KPMG, and others, relevant to the penalties at issue. Subject to and without waiving this objection, Plaintiff responds as follows:

Plaintiff directs the government to paragraphs 44 through 49 of the Complaint where Plaintiff has asserted Plaintiff's position regarding accuracy-related penalties. Plaintiff believes that accuracy-related penalties do not apply in this case for the following reasons:

Plaintiff and Fidelity International made a reasonable attempt to comply with the Internal Revenue Code and Treasury Regulations and to exercise ordinary and reasonable care in the preparation of Fidelity International's 2001 tax return. Plaintiff and Fidelity International had a reasonable basis for their return positions, kept adequate books and records, and can properly substantiate the items reported on their 2001 tax returns.

In addition, Plaintiff and Fidelity International had substantial authority for their tax treatment of the items for which adjustments are proposed in the Notice of Final Partnership Administrative Adjustment ("FPAA"). Moreover, Plaintiff and Fidelity International adequately disclosed their tax treatment of the items for which adjustments are proposed in the FPAA and had a reasonable basis for their tax treatment of the items for which adjustments are proposed. Plaintiff and Fidelity International reasonably believed that the tax treatment of the items for which adjustments are proposed was more likely than not the proper treatment.

Plaintiff and Fidelity International had reasonable cause for, and acted in good faith with respect to, the tax treatment of the items for which adjustments are proposed in the FPAA.

43

Plaintiff and Fidelity International reasonably relied in good faith on KPMG and Sidley Austin, who advised that the tax treatment reported by Fidelity International more likely than not would be upheld if challenged by the IRS. Plaintiff and Fidelity International were advised that the transactions in which Plaintiff and Fidelity International engaged were real transactions with real economic effects, and Plaintiff and his advisors believed them to be so. Plaintiff and his advisors took tax into account, as well as Plaintiff's investment objectives, in evaluating whether to engage in the transaction proposed by KPMG, Helios, and Alpha. Penalties are not applied, however, merely because a taxpayer planned for tax when investing.

## INTERROGATORY NO. 23

You and your wife, Maureen E. Egan, are members of a class action suit against KPMG and Sidley Austin Brown & Wood LLP (now known as Sidley Austin LL). *See Simon v. KPMG*, No. 05-CV-3189 (D.N.J. filed June 24, 2005).

The suit was brought on behalf of all persons "who, at any time during the period from January 1, 1996 through and including September 14, 2005, either (a) consulted with, relied upon, or received an oral or written opinion or advice from both KPMG (or any current or former partner, principal or employee of KPMG who at the time was a partner, principal or employee of KPMG) and Sidley Austin Brown & Wood LLP, or its predecessor Brown & Wood LLP (or any current or former partner or employee of either of them who at the time was a partner or employee of the firm) concerning a FLIP, OPIS, BLIPS or SOS transaction and who implemented, in who or in part, directly or indirectly, such FLIP, OPIS, BLIPS or SOS transaction; or (b) filed a tax return (joint or otherwise) relating to a FLIP, OPIS, BLIPS or SOS transaction described in (a); and (c) the administrators, executors, personal representatives, heirs,

successors, beneficiaries and assigns of all persons described in (a) and (b). (Herein, described as 'Class Members')." *Id.* at Am. Compl. ¶ 209 (attached as Exhibit C).

Please identify, and provide the information listed below for, **every FLIP, OPIS, BLIPS, or SOS transaction** that you and/or your wife implemented (in whole or in part, directly or indirectly) or reported on a tax return, at any time during the period from January 1, 1996 through and including September 14, 2005:

- the number of transactions implemented and/or reported;

- for each transaction implemented and/or reported, whether it was a FLIP, OPIS, BLIPS, or SOS transaction;

- for each transaction implemented and/or reported, whether it was implemented, or reported, or both;

- for each transaction implemented, how it was implemented, including whether it was implemented in whole or in part, directly or indirectly;

- for each transaction reported, on which tax return and how it was reported;

- for each transaction implemented and/or reported, when it was implemented and/or reported;

- for each transaction implemented and/or reported, whether it is the same transaction described in paragraphs 33 through 43 of the Complaint.

Please organize this information in a table sorted chronologically by the date the transaction was implemented.

RESPONSE TO INTERROGATORY NO. 23

Plaintiff objects to this interrogatory to the extent it seeks discovery of Maureen E. Egan, who is not the Plaintiff in this case and was not involved in any of the transactions at issue in this case.

Plaintiff further objects to this interrogatory in so far as it states or suggests that Richard Egan was a party-plaintiff to *Simon v. KPMG*, No. 05-CV-3189 (D.N.J. filed June 25, 2005) when it was filed against KPMG.

Plaintiff further objects to this interrogatory because the terms "FLIP," "OPIS," "BLIPS," and "SOS" are undefined and, accordingly, are vague and ambiguous.

Subject to and without waiving these objections, Plaintiff responds as follows:

Plaintiff did not invest in a FLIP, OPIS, or BLIPS transaction during the period from January 1, 1996 through and including September 14, 2005. In that time period, Plaintiff invested in and became a member of Fidelity International. KPMG has advised Plaintiff that Plaintiff's investment in Fidelity International is the "Short Option Strategy" or "SOS" for purposes of the class action. Neither that title nor that acronym, however, were ever used by KPMG or Sidley Austin in their contemporaneous discussions with Plaintiff or Plaintiff's advisors.

INTERROGATORY NO. 24

On the Form 8886 Reportable Transaction Disclosure Statement that you and your wife, Maureen E. Egan, filed with the IRS roughly a month and a half after you filed the Complaint in this case, attached as Exhibit A, you disclose an expected tax benefit for the year 2002 of $87,509,884, which you attributed to a "loss from investment in Fidelity High Tech Advisor A

Fund, LLC." You also state that the IRS has characterized the Fidelity High Tech transaction as "substantially similar" to a transaction described in Notice 2000-44.

Please give a complete and accurate history of Fidelity High Tech, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of these accounts;

- business activities and purpose of those business activities;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses;

- a detailed list of all transactions, including the purchase, sale, and termination of options;

- how Fidelity High Tech accounted for all transactions, including the purchase, sale, and termination of options;

- the date of termination of Fidelity High Tech, if terminated, the legal nature of its termination, and the reason for its termination.

47

RESPONSE TO INTERROGATORY NO. 24

Plaintiff objects to this interrogatory because the information sought by this interrogatory is not relevant. Fidelity High Tech is not a party to this litigation, nor are the transactions engaged in by Fidelity High Tech at issue in this litigation.

Plaintiff further objects because this interrogatory consists of five separate interrogatories. This interrogatory requests information regarding (1) the financial history of Fidelity High Tech; (2) the business purpose for the formation of Fidelity High Tech; (3) Fidelity High Tech's financial accounts; (4) the purpose of the business activities in which Fidelity High Tech engaged; and (5) the accounting practices of Fidelity High Tech. This interrogatory should be divided into five separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to the extent this interrogatory seeks information regarding Fidelity High Tech through "the present." Events occurring after the filing of this lawsuit are not relevant to this matter, and Plaintiff's response is limited to events occurring prior to the filing of this lawsuit.

Subject to and without waiving these objections, Plaintiff responds as follows:

*Response to Interrogatory No. 24.1*

Fidelity High Tech was formed on July 19, 2000. The original and current members of Fidelity High Tech are Richard and Maureen Egan. In September 2000, Richard and Maureen

Egan contributed EMC stock to Fidelity High Tech. Fidelity High Tech did not engage in any other investments in 2000. In 2001, Richard and Maureen contributed their respective membership interests in Fidelity HT Index Fund and Fidelity HT Option Fund to Fidelity High Tech. Additional capital contributions were made to Fidelity High Tech throughout 2001 in the form of stock and cash. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 24 to United States' First Set of Requests for Production, which identifies documents that evidence the financial history of Fidelity High Tech in 2000 through 2005, including formation, assets and liabilities, profits and losses, contributions and distributions of cash and property, and business activities.

### Response to Interrogatory No. 24.2

Fidelity High Tech was formed to provide Richard and Maureen Egan with a limited liability company through which they could hold substantial investments and conduct business activities.

### Response to Interrogatory No. 24.3

Details regarding Fidelity High Tech's financial accounts follow:

- Mellon Bank: 10-63-2847-00-0. This account was created to hold the funds of Fidelity High Tech. The address of Mellon Bank is One Boston Place, AIM #024-0021, Boston, MA 02108.

- Goldman Sachs: 010-29337-1. This account was created for the purpose of holding securities. The address of Goldman Sachs is Oliver Street Tower, 125 High Street Suite 1700, Boston, MA 02110-2704.

### Response to Interrogatory No. 24.4

The purposes of Fidelity High Tech's business activities were to provide Plaintiff and his wife with the opportunity to generate economic profits, to further Plaintiff and his wife's financial objective of hedging their investments, and to derive tax benefits. Plaintiff discussed the investment management structure of Plaintiff and his wife, their concentrated position in EMC stock, and their investment objectives with KPMG, Helios, and Alpha. The business activities of Fidelity High Tech were undertaken pursuant to the advice of KPMG, Helios, and Alpha that those activities would further the investment and tax objectives of Plaintiff and his wife.

### Response to Interrogatory No. 24.5

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 24 to United States' First Set of Requests for Production, which identifies the documents that evidence the accounting for investments and activities that Fidelity High Tech undertook in 2001 through 2005.

### INTERROGATORY NO. 25

Please give a complete and accurate history of Fidelity HT Index, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;
- business purpose for the formation of this entity;
- membership;
- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of these accounts;

- business activities and purpose of those business activities;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses;

- a detailed list of all transactions, including the purchase, sale, and termination of options;

- how Fidelity HT Index accounted for all transactions, including the purchase, sale, and termination of options;

- the date of termination of Fidelity HT Index, if terminated, the legal nature of its termination, and the reason for its termination.

RESPONSE TO INTERROGATORY NO. 25

Plaintiff objects to this interrogatory because the information sought by this interrogatory is not relevant. Fidelity HT Index is not a party to this litigation, nor are the transactions engaged in by Fidelity HT Index at issue in this litigation.

Plaintiff further objects because this interrogatory consists of five separate interrogatories. This interrogatory requests information regarding (1) the financial history of Fidelity HT Index; (2) the business purpose for the formation of Fidelity HT Index; (3) Fidelity HT Index's financial accounts; (4) the purpose of the business activities in which Fidelity HT Index engaged, including entering into option contracts; (5) the accounting practices of Fidelity HT Index. This interrogatory should be divided into five separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of

51

the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to the extent this interrogatory seeks information regarding Fidelity HT Index through "the present." Events occurring after the filing of this lawsuit are not relevant to this matter, and Plaintiff's response is limited to events occurring prior to the filing of this lawsuit.

Subject to and without waiving these objections, Plaintiff responds as follows:

### *Response to Interrogatory No. 25.1*

Fidelity HT Index was formed on July 20, 2000. The initial sole member of Fidelity HT Index was Richard Egan. Richard Egan made contributions of cash to Fidelity HT Index in September and October of 2000. In 2001, Richard Egan made a contribution to Fidelity HT Index of $50,000 which was used to purchase option contracts. On February 7, 2001, Richard Egan contributed his membership interest in Fidelity HT Index to Fidelity High Tech. As a result of that contribution, Fidelity High Tech became the sole member of Fidelity HT Index. After that time, the activities of Fidelity HT Index were accounted for in the books and records of Fidelity High Tech. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 25 to United States' First Set of Requests for Production, which identifies the documents that evidence the financial history of Fidelity HT Index in 2000 through 2005, including formation, assets and liabilities, profits and losses, contributions and distributions of cash and property, and business activities.

52

*Response to Interrogatory No. 25.2*

Fidelity HT Index was formed to provide Plaintiff and Maureen Egan with a limited liability company through which they could more easily hold and transfers investments and conduct business activities.

*Response to Interrogatory No. 25.3*

Details regarding Fidelity HT Index's financial accounts follow:

- Refco Capital Markets: 006376-00000. This account was created for the purpose of holding the capital that was used in purchasing and settling Fidelity HT Index's option contracts. The last known address of Refco Capital Markets is One World Financial Center, 200 Liberty Street, Tower A, New York, NY 10281.

*Response to Interrogatory No. 25.4*

The purposes of Fidelity HT Index's business activities were to provide Plaintiff and his wife with the opportunity to generate economic profits, to further Plaintiff and his wife's financial objective of hedging their investments, and to derive tax benefits. Plaintiff discussed the investment management structure of Plaintiff and his wife, their concentrated position in EMC stock, and their investment objectives with KPMG, Helios, and Alpha. The business activities of Fidelity HT Index were undertaken pursuant to the advice of KPMG, Helios, and Alpha that those activities would further the investment and tax objectives of Plaintiff and his wife.

*Response to Interrogatory No. 25.5*

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 25 to United States' First Set of Requests for Production, which

identifies the documents that evidence the accounting for investments and activities that Fidelity

HT Index undertook in 2001 through 2005.

## INTERROGATORY NO. 26

Please give a complete and accurate history of Fidelity HT Option, *from its inception to the present*, except where otherwise indicated, including but not limited to the following:

- date of formation;

- business purpose for the formation of this entity;

- membership;

- assets and liabilities at formation; on December 31, 2000; December 31, 2001; December 31, 2002; December 31, 2003; December 31, 2004; December 31, 2005; and at present;

- account numbers of all financial accounts of this entity, name and address of the financial institutions where these accounts are held, and the purpose of these accounts;

- business activities and purpose of those business activities;

- a detailed list of all contributions and distributions of cash or property;

- profits and losses;

- a detailed list of all transactions, including the purchase, sale, and termination of options;

- how Fidelity HT Option accounted for all transactions, including the purchase, sale, and termination of options;

- the date of termination of Fidelity HT Option, if terminated, the legal nature of its termination, and the reason for its termination.

RESPONSE TO INTERROGATORY NO. 26

Plaintiff objects to this interrogatory because the information sought by this interrogatory is not relevant. Fidelity HT Option is not a party to this litigation, nor are the transactions engaged in by Fidelity HT Option at issue in this litigation.

Plaintiff further objects because this interrogatory consists of five separate interrogatories. This interrogatory requests information regarding (1) the financial history of Fidelity HT Option; (2) the business purpose for the formation of Fidelity HT Option; (3) Fidelity HT Option's financial accounts; (4) the purpose of the business activities in which Fidelity HT Option engaged, including entering into option contracts; and (5) the accounting practices of Fidelity HT Option. This interrogatory should be divided into five separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to the extent this interrogatory seeks information regarding Fidelity HT Option through "the present." Events occurring after the filing of this lawsuit are not relevant to this matter, and Plaintiff's response is limited to events occurring prior to the filing of this lawsuit.

Subject to and without waiving these objections, Plaintiff responds as follows:

*Response to Interrogatory No. 26.1*

Fidelity HT Option was formed on July 19, 2000. The initial sole member of Fidelity HT Index was Maureen Egan. Maureen Egan made contributions of cash to Fidelity HT Option in September and October of 2000. In early 2001, Maureen Egan made a contribution of $4,950,000 to Fidelity HT Option, which was used to purchase option contracts. On February 7, 2001, Maureen Egan contributed her membership interest in Fidelity HT Option to Fidelity High Tech. As a result of that contribution, Fidelity High Tech became the sole member of Fidelity HT Option. After that time, the activities of Fidelity HT Option were accounted for in the books and records of Fidelity High Tech. Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 25 to United States' First Set of Requests for Production, which identifies the documents that evidence the financial history of Fidelity HT Option in 2000 through 2005, including formation, assets and liabilities, profits and losses, contributions and distributions of cash and property, and business activities.

*Response to Interrogatory No. 26.2*

Fidelity HT Option was formed to provide Plaintiff and Maureen Egan with a limited liability company through which they could more easily hold and transfer investments and conduct business activities.

*Response to Interrogatory No. 26.3*

Details regarding Fidelity HT Option's financial accounts follow:

- Refco Capital Markets: 006375-00000. This account was created for the purpose of holding the capital that was used in purchasing and settling Fidelity HT Option's option contracts. The last known address of Refco Capital Markets is One World Financial Center, 200 Liberty Street, Tower A, New York, NY 10281.

*Response to Interrogatory No. 26.4*

The purposes of Fidelity HT Option's business activities were to provide Plaintiff and his wife with the opportunity to generate economic profits, to further Plaintiff and his wife's financial objective of hedging their investments, and to derive tax benefits. Plaintiff discussed the investment management structure of Plaintiff and his wife, their concentrated position in EMC stock, and their investment objectives with KPMG, Helios, and Alpha. The business activities of Fidelity HT Option were undertaken pursuant to the advice of KPMG, Helios, and Alpha that those activities would further the investment and tax objectives of Plaintiff and his wife.

*Response to Interrogatory No. 26.5*

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff directs the government to Plaintiff's Response to Request for Production No. 25 to United States' First Set of Requests for Production, which identifies the documents that evidence the accounting for transactions that Fidelity HT Option undertook in 2001 through 2005.

INTERROGATORY NO. 27

Please explain completely and accurately your participation in KPMG's FOCUS transaction and Michael Egan's participation in KPMG's OPIS transaction.

RESPONSE TO INTERROGATORY NO. 27

Plaintiff objects to this interrogatory because it consists of two separate interrogatories. This interrogatory requests information regarding (1) Plaintiff's participation in KPMG's FOCUS transaction and (2) Michael Egan's participation in KPMG's OPIS transaction. This interrogatory should be divided into two separate interrogatories because, in contravention of Local Rule 26.1(c), the parts of this interrogatory are not logical extensions of the basic

interrogatory and do not seek to obtain specified additional particularized information with respect to the basic interrogatory. Subject to and without waiving this objection, Plaintiff responds to this interrogatory while reserving the right to object to additional interrogatories served by the government on the grounds that the government has already exceeded the limitations set forth by the Court.

Plaintiff further objects to this interrogatory because the terms "FOCUS" and "OPIS" are undefined and, accordingly, are vague and ambiguous.

Subject to and without waiving these objections, Plaintiff responds as follows:

### Response to Interrogatory No. 27.1

Plaintiff did not participate in KPMG's FOCUS transaction.

### Response to Interrogatory No. 27.2

Plaintiff's son, Michael Egan, did not participate in KPMG's OPIS transaction.

INTERROGATORY NO. 28

Please identify, and provide the information listed below for, every person you and/or your advisors (including your son, Michael Egan) communicated with or attempted to communicate with, or who was involved in any way, in answering the United States' First Set of Interrogatories:

- the person's full name;

- the person's present or last known address and telephone number;

- the person's present or last known place of employment, when referring to a natural person, and the person's title at that place of employment;

- the person's occupation, employer, and title at that employer during the period 2000-2001, when referring to a natural person;

58

- the interrogatories the person was involved in answering;

- and the subject matter and a brief summary of the person's knowledge.

Please organize this information in a table sorted alphabetically by the last name of each person.

RESPONSE TO INTERROGATORY NO. 28:

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney work-product doctrine. Subject to and without waiving this objection, Plaintiff responds as follows:

The list of people Plaintiff and Plaintiff's advisors communicated with or attempted to communicate with regarding the factual information contained in these Interrogatories or who were involved in providing the factual information contained in these Interrogatories is contained in Exhibit C. Plaintiff directs the government to the documents already in the possession of the government and the documents Plaintiff is producing in response to United States' First Set of Requests for Production for the subject matter and a brief summary of the knowledge of the people listed in Exhibit C.

<div style="margin-left:2em">

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

</div>

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

COMMONWEALTH OF MASSACHUSETTS )
                                      )
COUNTY OF WORCESTER )

      I am Richard J. Egan, the tax matters partner of Fidelity International Currency Advisor

A Fund, L.L.C. The facts stated in the foregoing answers to interrogatories are true and correct

to the best of my knowledge, information, and belief, based where necessary on information

received from my agents and advisors.

                                                    Richard J. Egan.

SUBSCRIBED AND SWORN TO before me this 22 day of June , 2006.

                                                  NOTARY PUBLIC

My Commission Expires: July 27, 2012

**Certificate of Service**

    It is hereby certified that service of the foregoing, PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES, has been made today, June 26, 2006, by sending a true and correct copy by messenger, to the following:

> Matthew C. Hicks
> Trial Attorney
> U.S. Department of Justice, Tax Division
> Civil Trial Section, Northern Region
> 555 Fourth Street, NW, Suite 7804
> Washington, DC 20001


> Lena Amanti, D.C. Bar #490791
> MCKEE NELSON LLP
> 1919 M Street, N.W., Suite 800
> Washington, D.C. 20036
> Telephone: (202) 775-1880
> Facsimile: (202) 775-8586
> Email: lamanti@mckeenelson.com

**EXHIBIT A**

**RESPONSE TO INTERROGATORY NO. 1**

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | During 2000-2001 | | |
|---|---|---|---|---|---|
| | | | Occupation | Employer | Title |
| Akselrad, Ira | 1585 Broadway<br>New York, NY 10036<br>212-969-3000 | Proskauer | Attorney | Proskauer | Partner |
| Buesinger, Ron | 3801 PGA Blvd.<br>Suite 803<br>Palm Beach Gardens, FL 33410<br>561-624-9998 | Alpha<br>Tequesta Capital Advisors LP | | Alpha<br>Tequesta Capital Advisors LP | |
| Calkins, Robin | 116 Flanders Rd.<br>Suite 3000<br>Westborough, MA 01581<br>508-898-3800 | Carruth Associates LLC ("CALLC") | | Carruth Management LLC ("CMLLC")<br>CALLC | |
| Denby, Stephanie | 330 N. Wabash Ave.<br>22nd Floor<br>Chicago, IL 60611<br>312-840-7000 | Burke, Warren, McKay & Serritella, P.C. | Attorney | Burke, Warren, McKay & Serritella, P.C. | Attorney |
| Egan, Michael | 116 Flanders Rd.<br>Suite 3000<br>Westborough, MA 01581<br>508-898-3800 | CMLLC | | CMLLC | Managing Member<br>President, Secretary & Treasurer |
| Egan, Richard | c/o CMLLC<br>116 Flanders Rd.<br>Suite 3000<br>Westborough, MA 01581<br>508-898-3800 | Ambassador to Ireland | Chairman of the Board of Directors<br>Ambassador | EMC Corporation<br>United States of America | Chairman of the Board of Directors<br>Ambassador |
| Fiddy, Carolyn | 9526 Devonshire Drive<br>Huntersville, NC 28078<br>704-895-3535 | Self-employed | Accountant<br>Accountant | CMLLC<br>CALLC | Staff Accountant<br>Staff Accountant |
| Haber, James | 950 Third Ave.<br>23rd Floor<br>New York, NY 10022<br>212-688-2700 | The Diversified Group Inc. | | Helios<br>The Diversified Group Inc. | |

1

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | Occupation | During 2000-2001 Employer | Title |
|---|---|---|---|---|---|
| Helene, Gary | 3801 PGA Blvd. Suite 803 Palm Beach Gardens, FL 33410 561-624-9998 | Alpha | | Alpha Tequesta Fund | CFA & Vice President |
| Henry, David | 116 Flanders Rd. Suite 3000 Westborough, MA 01581 508-898-3800 | CALLC | Advisor/Consultant | Wellesley Group CALLC | Director of Investments |
| Hoff, Matthew | One World Financial Center 200 Liberty St. New York, NY 10281 212-693-7000 | Refco Capital Markets Ltd. ("Refco") | | Refco | Authorized Signatory |
| Huber, John | 950 Third Ave. 23rd Floor New York, NY 10022 212-688-2700 | The Diversified Group Inc. | | The Diversified Group Inc. | |
| Irvin, Judy | 116 Flanders Rd. Suite 3000 Westborough, MA 01581 508-898-3800 | CALLC | | CMLLC CALLC | |
| Jung, Elizabeth | One World Financial Center 200 Liberty St. New York, NY 10281 212-693-7000 | Refco | | Refco The Diversified Group Inc. | Vice President |
| Kampf, Phil | 401 N. Michigan Ave. Suite 2950 Chicago, IL 60611 312-284-1903 | Juno Investments LLC | | Helios | |
| Levato, Thomas | 900 Third Ave. New York, NY 10022-4728 212-885-2109 | Brown Raysman Millstein Felder & Steiner LLP | Attorney | Brown Raysman Millstein Felder & Steiner LLP | Attorney |
| Lipschultz, Brent | 750 Third Ave. New York, NY 10017 212-949-8700 | Eisner LLP | | KPMG LLP | Manager |

2

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | Occupation | During 2000-2001 | |
|---|---|---|---|---|---|
| | | | | Employer | Title |
| Mahoney, Sam | 43 Ailesbury Rd.<br>Ballsbridge<br>Dublin 4<br>Ireland<br>011-353-1-260-3070 | Biosphere Finance Ltd. | | Biosphere Finance Ltd. | |
| Price, Mark | 2001 M Street NW<br>Washington DC 20036<br>202-533-3000 | KPMG LLP | | KPMG LLP | |
| Prifti, Robert | 345 Park Ave.<br>New York, NY  10154<br>212-758-9700 | KPMG LLP | Personal Financial Planning | KPMG LLP | CPA, CFP |
| | 99 High St.<br>Boston, MA  02110<br>617-988-1000 | | | | |
| Reiss, Jim | 116 Flanders Rd.<br>Suite 3000<br>Westborough, MA  01581<br>508-898-3800 | CALLC | Accountant | CMLLC | CFO |
| | | | Accountant | CALLC | CFO |
| Rivotto, Brian | 101 Federal St.<br>14th Floor<br>Boston, MA  02110<br>617-488-2700 | RINET Company, LLC | Personal Financial Planning Partner | KPMG LLP | Partner |
| Ross, Ivan | 3801 PGA Blvd.<br>Suite 803<br>Palm Beach Gardens, FL  33410<br>561-624-9998 | Alpha | Consultant | Alpha | Managing Partner |
| | | Tequesta Capital Advisors LP | Consultant | Tequesta Capital Advisors LP | Managing Partner |
| Ruble, RJ | 875 Third Ave.<br>New York, NY 10022<br>212-906-2000 | Self-employed | Attorney | Sidley Austin | Partner |
| Sabloff, Matthew | 437 Madison Ave.<br>New York, NY  10022<br>212907-7300 | Golenbock Eiseman Assor Bell & Peskoe LLP | Attorney | Proskauer | Associate |
| Schrier, John | New York, NY | GreenTrader | Attorney | KPMG | Partner |
| Seaver, Melissa | 116 Flanders Rd.<br>Suite 3000<br>Westborough, MA  01581<br>508-898-3800 | CALLC | Accountant | Gray, Gray & Gray LLP | Tax Manager |
| | | | Accountant | CALLC | CPA |

3

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | During 2000-2001 | | |
|---|---|---|---|---|---|
| | | | Occupation | Employer | Title |
| Shea, Pat | 116 Flanders Rd. Suite 3000 Westborough, MA 01581 508-898-3800 | CALLC | Manager Accountant | CMLLC/CALLC CMLLC/CALLC | Chief Operating Officer CPA |
| Speiss, Tim | 750 Third Ave. New York, NY 10017 212-949-8700 | Fisher LLP | Consultant | KPMG LLP | Personal Financial Planning Partner |
| Tan, Mox | 401 N. Michigan Ave. Suite 2950 Chicago, IL 60611 312-284-1903 | Helios | Manager | Helios | Manager |
| Tilevitz, Orrin | 950 Third Ave. 23rd Floor New York, NY 10022 212-688-2700 | The Diversified Group Inc. | | The Diversified Group Inc. | |
| Yorke, Thomas | One World Financial Center 200 Liberty St. New York, NY 10281 212-693-7000 | Refco | | Refco | Senior Vice President |
| Alpha | 3801 PGA Blvd. Suite 803 Palm Beach Gardens, FL 33410 561-624-9998 | | | | |
| The Diversified Group Inc. | 950 Third Ave. 23rd Floor New York, NY 10022 212-688-2700 | | | | |
| Helios | 401 N. Michigan Ave. Suite 2950 Chicago, IL 60611 312-284-1903 | | | | |
| KPMG LLP | 345 Park Ave. New York, NY 10154 212-758-9700 99 High St. Boston, MA 02110 617-988-1000 | | | | |

4

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | During 2000-2001 | | |
|---|---|---|---|---|---|
| | | | Occupation | Employer | Title |
| Proskauer | 1585 Broadway<br>New York, NY 10036<br>212-969-3000 | | | | |
| Refco Capital Markets | One World Financial Center<br>200 Liberty St.<br>New York, NY 10281<br>212-693-7000 | | | | |
| Sidley Austin | 875 Third Ave.<br>New York, NY 10022<br>212-906-2000<br><br>787 Seventh Ave.<br>New York, NY 10019<br>212-839-5300 | | | | |

5

**EXHIBIT B**

**RESPONSE TO INTERROGATORY NO. 2**

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | Occupation | During 2000-2001 Employer | Title |
|---|---|---|---|---|---|
| Buesinger, Ron | 3801 PGA Blvd. Suite 803 Palm Beach Gardens, FL 33410 561-624-9998 | Alpha Tequesta Capital Advisors LP | | Alpha Tequesta Capital Advisors LP | |
| Denby, Stephanie | 330 N. Wabash Ave. 22nd Floor Chicago, IL 60611 312-840-7000 | Burke, Warren, McKay & Serritella, P.C. | Attorney | Burke, Warren, McKay & Serritella, P.C. | Attorney |
| Egan, Michael | 116 Flanders Rd. Suite 3000 Westborough, MA 01581 508-898-3800 | Carruth Management LLC ("CMLLC") | | CMLLC | Managing Member President, Secretary & Treasurer |
| Haber, James | 950 Third Ave. 23rd Floor New York, NY 10022 212-688-2700 | The Diversified Group Inc. | | Helios The Diversified Group Inc. | |
| Kampf, Phil | 401 N. Michigan Ave. Suite 2950 Chicago, IL 60611 312-284-1903 | Juno Investments LLC | | Helios | |
| Lipschultz, Brent | 750 Third Ave. New York, NY 10017 212-949-8700 | Eisner LLP | | KPMG LLP | Manager |
| Prifti, Robert | 345 Park Ave. New York, NY 10154 212-758-9700 | KPMG LLP | Personal Financial Planning | KPMG LLP | CPA, CFP |
| | 99 High St. Boston, MA 02110 617-988-1000 | | | | |
| Rivotto, Brian | 101 Federal St. 14th Floor Boston, MA 02110 617-488-2700 | RINET Company, LLC | Personal Financial Planning Partner | KPMG LLP | Partner |

| Name | Last Known Address and Telephone Number | Last Known Place of Employment | Occupation | During 2000-2001 Employer | During 2000-2001 Title |
|---|---|---|---|---|---|
| Ross, Ivan | 3801 PGA Blvd. Suite 803 Palm Beach Gardens, FL 33410 561-624-9998 | Alpha | Consultant | Alpha | Managing Partner |
|  |  | Tequesta Capital Advisors LP | Consultant | Tequesta Capital Advisors LP | Managing Partner |
| Ruble, RJ | 875 Third Ave. New York, NY 10022 212-906-2000 | Self-employed | Attorney | Sidley Austin | Partner |
| Speiss, Tim | 750 Third Ave. New York, NY 10017 212-949-8700 | Fisher LLP | Consultant | KPMG LLP | Personal Financial Planning Partner |
| Tan, Mox | 401 N. Michigan Ave. Suite 2950 Chicago, IL 60611 312-284-1903 | Helios | Manager | Helios | Manager |
| Alpha | 3801 PGA Blvd. Suite 803 Palm Beach Gardens, FL 33410 561-624-9998 |  |  |  |  |
| The Diversified Group Inc. | 950 Third Ave. 23rd Floor New York, NY 10022 212-688-2700 |  |  |  |  |
| Helios | 401 N. Michigan Ave. Suite 2950 Chicago, IL 60611 312-284-1903 |  |  |  |  |
| KPMG LLP | 345 Park Ave. New York, NY 10154 212-758-9700 99 High St. Boston, MA 02110 617-988-1000 |  |  |  |  |
| Sidley Austin | 875 Third Ave. New York, NY 10022 212-906-2000 787 Seventh Ave. New York, NY 10019 212-839-5300 |  |  |  |  |

EXHIBIT C

RESPONSE TO INTERROGATORY NO. 28

| Name | Present or Last Known Address and Telephone Number | Present or Last Known Place of Employment and Title at that Place of Employment | During 2000-2001 | | | Interrogatories the Person was Involved in Answering |
|---|---|---|---|---|---|---|
| | | | Occupation | Employer | Title | |
| Denby, Stephanie | 330 N. Wabash Ave. 22nd Floor Chicago, IL 60611 312-840-7000 | Burke, Warren, McKay & Serritella, P.C. | Attorney | Burke, Warren, McKay & Serritella, P.C. | Attorney | Nos. 1-28 |
| Egan, Michael | 116 Flanders Rd. Suite 3000 Westborough, MA 01581 508-898-3800 | CMLLC | | CMLLC | Managing Member President, Secretary & Treasurer | Nos. 1-28 |