UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Nos. 05-40151-FDS (D. Mass.) |
| | ) | 06-40130-FDS (D. Mass.) |
| v. | ) | |
| | ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ISSUANCE OF LETTERS
ROGATORY REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE**

As discussed in the United States' opening memorandum, this request for the issuance of

a second Isle of Man letter rogatory is necessitated by two recent events: (1) our learning that the

trust business and the related records of Singer & Friedlander (Isle of Man) Ltd.[1] was sold to

Simcocks Trust Ltd, another Isle of Man entity[2]; and (2) a motion by four other Isle of Man

entities to intervene in the letter rogatory proceeding now pending in the Isle of Man court.

Pointedly, in their motion papers the four intervening entities make crystal clear that the sole

reason they seek to intervene in the letter rogatory proceeding is to prevent us from obtaining any

information from either Nigel Scott or Oliver Peck regarding work performed by them for their

---

[1] Singer & Friedlander (Isle of Man) Ltd. was an Isle of Man affiliate of Singer & Friedlander Ltd., a United Kingdom entity n.k.a. Kaupthing Singer & Friedlander Ltd.

[2] It is the United States' understanding, obtained through foreign counsel, that Simcocks Trust and Simcocks Advocates Ltd. (which represents Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and Trilogy Investments Ltd.) are related entities but are allegedly sufficiently separated so as not to create any conflicts. At this time, the United States takes no position as to any potential conflict Simcocks Advocates may have in its representation of these companies in the Isle of Man proceeding.

2817576.2

former employers.[3]   Thus, these entities seek to obstruct this Court's original letter rogatory

order authorizing our obtaining evidence from these foreign individuals.

In opposing our motion, the plaintiff is effectively lending support to the obstructionist

tactics of the four intervening foreign entities.[4]   Moreover, plaintiff is doing so by simply

rearguing its positions on our original requests for letters rogatory and the appropriateness of our

foreign-evidence gathering which it has opposed from day one.   In making these arguments, it

misrepresents the United States' efforts to obtain evidence from overseas entities, misrepresents

the information sought, and ignores prior Court rulings.   The plaintiff's tired arguments should

again fail.

The second letter rogatory to the Isle of Man is necessary and appropriate, and comes

with little to no burden to the plaintiff.

## I.     The Plaintiff is Inappropriately Rearguing its Failed and Repeated Opposition to the Issuance of Letters Rogatory.

As the Court held in rejecting one of the plaintiff's earlier and identical arguments of

overbreadth of the letters rogatory, "[h]ere, the United States has made very detailed allegations

of fact, with multiple specific references to record evidence."[5]   The Court further held that

> there is little doubt that the United States intends to use the information at the trial. . .
> [and] is not simply seeking to undertake a "roving inquiry" in order to "obtain
> information which may lead to obtaining evidence in general support of a party's

---

[3]*See* Notice of Mot. to Intervene, attached as Ex. 1 hereto, at p. 3, ¶ 3.

[4]There are actually six intervening entities: Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., Trilogy Investments Ltd., Outwell Ltd., and Daeman Ltd.  The United States does not seek a request of the Isle of Man with respect to Outwell and Daeman.

[5]Mem. and Ord. on Mot. for Issuance of Letters Rog ("Mem. and Ord."), May 22, 2007 at 5.

2817576.2

case."[6]

That holding applies with equal force here because this letter rogatory simply seeks the very same documentary information deemed relevant and appropriate earlier, only now also from Simcocks Trust and from the four intervening Isle of Man companies associated with the two purported foreign partners, *i.e.*, Samuel Mahoney and Martin Hawkes, in the FDIS transactions at issue in this litigation.

Given the decided relevance of the information and the appropriateness of the letter rogatory, the plaintiff's four-page argument about the proper bounds of the letter rogatory is misguided. As it did on our prior request, the plaintiff again labels this request a "fishing expedition,"[7] without explaining how this request is any less appropriate than the nearly identical one the Court already issued over the plaintiff's objection– finding that the United States was not "fishing." In fact, the earlier letter rogatory to the Isle of Man sought both oral testimony and documents, whereas this one seeks only documents. As such, the plaintiff's straight-faced argument is that the narrower letter rogatory is less appropriate than the broader earlier one.

## II. The Second Isle of Man Letter Rogatory Is Necessary Because Simcocks Trust Possesses Highly Relevant Information and Because the Four Other Isle of Man Companies Have Joined Together to Attempt to Block Messrs. Scott and Peck from Providing Relevant Evidence.

While rehashing old arguments, the plaintiff also misses two essential points: (1) this second Isle of Man request is necessitated by the interference of four of the entities associated with the  foreign partners on the FDIS transactions, and is not seeking new information; and (2)

---

[6]Mem. and Ord., May 22, 2007 at 5)(citing *State of Minnesota v. Philip Morris Inc.*, [1998] I.L. Pr. 170, 175 (En.).

[7]Pl. Opp. to Mot. for Second Letter Rogatory ("Pl. Opp.") at 5, 9, 13-14.

Oliver Peck provided valuable insight into Singer & Friedlander's sale of its trust business in 2005 and its simultaneous transfer of records to Simcocks Trust– leading to the need for the inclusion of Simcocks in the Isle of Man letter rogatory proceeding.[8]

Nigel Scott and Oliver Peck were properly part of the initial request, and each has valuable information. Unfortunately, the companies they used to work for and/or work on behalf of are intent on preventing them from disseminating any of that information. It is that obstructionism as well as our learning of the sale of Singer & Friedlander's Isle of Man trust business to Simcocks Trust that necessitates this second request.

As explained in the United States' motion for issuance of the first set of letters rogatory, Nigel Scott was an employee of Singer & Friedlander and a principal of Kilsture Ltd., Maddox Ltd., and Cumberdale Holdings Ltd. He was also a manager of Trilogy Investments Ltd. As such, he was employed by the same four companies that have moved to intervene in the Isle of Man proceeding on the first letter rogatory and the company to whom their records at Singer &

---

[8]Plaintiff incorrectly asserts that Mr. Peck had no relevant information to provide and that this is the reason we have withdrawn our request to examine him in our papers filed with the Isle of Man court. (Pl. Opp. at 3 fn 4, 4.) To the contrary, at our invitation, Mr. Peck voluntarily conferred with us and provided us with valuable information, including, most critically, the sale of Singer & Friedlander's trust business to Simcocks Trust. Given his cooperation, we have deferred requesting the Isle of Man court to compel his testimony. Citing no authority, plaintiff nonetheless suggests that our failure to seek to compel the testimony of Mr. Peck (along with Mr. Scott's) may be improperly modifying the Court's original Isle of Man order. (Pl. Opp. at 1, fn 2.) However, Mr. Peck's cooperation has mooted the need for his compelled testimony. This can hardly be viewed as an improper modification of the Court's order. Indeed, plaintiff itself has repeatedly offered the suggestion that we informally contact Peck and Scott. (Pl. Opp. at 3 fn.5, 5.) Now that we have contacted them, the plaintiff faults us for doing so. This indicates quite clearly that plaintiff's panoply of inconsistent and already-rejected arguments are, in reality, a pretext for its larger goal of preventing us from obtaining any evidence whatsoever regarding the real status of its transaction's purported foreign partner.

Friedlander were transferred.  The four intervening companies moved to intervene to prevent Nigel Scott from providing the information sought by the first letter rogatory, apparently asserting some sort of proprietary interest in Mr. Scott's personal knowledge.  They similarly sought to prevent Oliver Peck from providing information, at least formally.  In their motion papers, they describe Oliver Peck as the former Managing Director of the Administrator – *i.e.*, Singer & Friedlander – of these four companies.[9]  They similarly assert some sort of proprietary interest in Mr. Peck's information.

Those assertions, regardless of whether they have any merit (and they appear not to), left the United States with two options: (1) oppose the intervention motion as to the four intervening companies in the Isle of Man court, or (2) stipulate to the intervention motion in the Isle of Man court and also move to add Simcocks trust to that proceeding, and simultaneously move this Court to add the four companies along with Simcocks Trust to the letter rogatory proceeding since they all apparently would claim to have an exclusive ownership interest in the information.

The first option would have required separate briefing and argument and thus untold delay while the matter was litigated in the Isle of Man.  After litigation, however, had intervention been disallowed, the United States would still have been required to move this Court to add Simcocks Trust to the Isle of Man proceeding given that it now possesses and presumably would claim ownership to all of the relevant records of the trust business of Singer & Friedlander.  Given the delay associated with the first option, the United States concluded that the immediate seeking of a second letter rogatory adding not just Simcocks Trust but also Kilsture, Maddox, Cumberdale and Trilogy to the Isle of Man letter rogatory proceeding was the most efficient means of overcoming the companies' interference.

---

[9] *See* Notice of Mot. to Intervene, attached as Ex. 1 hereto, at p. 3, ¶ 3.

Plaintiff faults the United States for not in the first place seeking the documents from Simcocks Trust and the intervening entities in the first letter rogatory motion, effectively asserting that we should have known that our seeking these documents from just the two former employees was feckless since they were not likely to possess any records of their former employers.[10]  This argument is meritless.  To begin with, the United States only learned of the existence of Simcocks Trust and its possession of relevant information upon consultation with Oliver Peck, [11] who plaintiff falsely asserts had no valuable information to impart.[12]  Secondly, at the time we filed our first letter rogatory motion, the United States already had a pending United Kingdom treaty request as to Singer & Friedlander requesting account records relating to Messrs. Mahoney and Hawkes.  In fact, this treaty request was made more than a month before the filing of our first Isle of Man motion.

Moreover, based on information we received at the time, it was anticipated that this treaty request would have been complied with long before the examination of Messrs. Scott and Peck in the Isle of Man letter rogatory proceeding.  As a result, we did not deem it appropriate (and possibly was objectionable) to duplicate a request for the same information from the same foreign entity by requesting the identical records from Singer & Friedlander in our first letter rogatory motion.  Thus, contrary to plaintiff's arguments, there was a sound and logical reason to request documents only from Scott and Peck and not also from their former employers in our first letter rogatory motion.

---

[10]Pl. Opp. at 1-2; Status Conference, October 2, 2007, Tr. 20-22.

[11]The United States had  previously served a subpoena upon the domestic affiliate of Kaupthing Singer & Friedlander, which subpoena was not honored due to the affiliate's claim that it, as a domestic entity, did not possess any of the foreign records requested.  During the course of this subpoena process, counsel for the domestic Singer & Friedlander entity never disclosed that its Isle of Man affiliate whose records we sought had been sold to Simcocks Trust.

[12]Pl. Opp. at 4.

2817576.2

Also, equally misguided is plaintiff's suggestion that we should have known that these former employees would not posses any records of their former employers. In fact, former employees frequently retain (whether properly or improperly) notes and copies of records of their former work activities. Additionally, it was unknown that these are former rather than current employees of the relevant companies (assuming Mr. Scott is no longer employed by Kilsture, Maddox, Cumberdale, and/or Trilogy). And it is still not known whether Nigel Scott possesses any of the documents sought in our first letter rogatory.

Given the interference of the four intervening companies and the transfer of Singer & Friedlander's records in 2005, there is no other means of obtaining this relevant evidence. Thus, while plaintiff boasts that it could have done a better job of gathering foreign evidence– even though it sought to impede at every step the gathering of any foreign evidence– it made no reference to any of the entities who might actually have it. In fact, the plaintiff mentions the existence of "domestic sources" of the same foreign information, but names none.[13] If the plaintiff is aware of a domestic source of the foreign evidence sought here, it should have long since disclosed this information. Of course, if the plaintiff is aware of a domestic source, it begs the question as to why it has never sought the information itself.

### III.    The Letter Rogatory Process Is Not Unduly Burdensome, and this Second Letter Creates No Additional Burden Whatsoever.

The Court has already determined that the benefits of obtaining this foreign evidence outweigh the burden. The Court described that holding over two pages in its Memorandum and Order granting the initial letter rogatory– seeking the same information as sought here.[14] The plaintiff ignores that holding, and again argues undue burden. It makes this same argument without citing any additional burden it would suffer. Had the United States included the four

---

[13]Pl. Opp. at 3.

[14]Mem. and Ord., May 22, 2007 at 6-7.

7

intervening entities in the initial request, they would, at best, be exactly where they are now– in an Isle of Man court refusing to voluntarily produce evidence and alongside Nigel Scott.  Had the United States succumbed to the plaintiff's allegations that Oliver Peck had no information to offer, the existence of Simcocks Trust and its possession of relevant information may have still been unknown to us, as well as the nature of the record keeping of Singer & Freidlander and its successor entity relating to the four entities' accounts at that institution.

This second request cannot possibly be viewed as unduly burdensome to plaintiff given that it makes no new requests for information.  It is particularly unburdensome to the plaintiff, who simply has to observe from the sidelines while the United States attempts to gather evidence from the foreign tax-shelter participants.  The United States does not even seek depositions of any of these companies, eliminating the cost of travel as a complaint for the plaintiff.  So, apparently the plaintiff now finds it unduly burdensome to monitor the United States' attempts to obtain documents abroad.[15]

Because at least the intervening companies will be in the same position as they would have been if named earlier, and because Simcocks Trust was only just discovered as a source of evidence, no alternative course would have significantly expedited this process.  It is now only the plaintiff's recycled arguments that are delaying it.

## IV.    Conclusion

The plaintiff is simply rehashing its already rejected arguments.  With nothing new to offer, the plaintiff's arguments ring hollow.  There is no significant burden created here, and,

---

[15]It is unclear as to why the plaintiff does not wish to obtain evidence even from Kilsture Ltd. which allegedly "financed "its foreign "partner" Samuel Mahoney.  The plaintiff has expended a great deal of effort and expense trying to obtain documents and/or testimony from persons who posses not a shred of admissible evidence.  But, at the same time, it is fighting tooth and nail to prevent the United States from obtaining highly-relevant evidence relating to a foreign "partner" and his financier.

2817576.2

given the importance of the foreign evidence, certainly no undue burden. Indeed, like those of

the four intervening companies in the Isle of Man proceeding, plaintiff's arguments here likewise

appear to be simply a pretext to prevent our obtaining highly-relevant information relative to the

real status of the purported foreign partner on this carefully-scripted tax shelter transaction.

Because the second letter rogatory is both necessary and appropriate, the United States' motion

should be granted.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Tax Division, U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. VANN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Telephone: (202) 307-6561
Facsimile: (202) 514-5238
E-mail:    john.a.lindquist@usdoj.gov
           barry.e.reiferson@usdoj.gov
           heather.vann@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants identified on the Notice of Electronic Filing and copies will be sent to
those indicated as non registered participants on October 22, 2007.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

2817576.2

CLA 2007 / 74

IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

COMMON LAW DIVISION

SUPERIOR BUSINESS

IN THE MATTER of the Evidence (Proceedings in other Jurisdictions) Act 1973 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in other Jurisdictions) (Isle of Man) Order 1979

and

IN THE MATTER of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund LLC by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS

and

IN THE MATTER of the Petition of the United States of America dated 29th August 2007

and

IN THE MATTER of Order 9 rules 11 and 13A of the Rules of the High Court of the Isle of Man

---

## NOTICE OF MOTION

---

TAKE NOTICE that at a sitting of this Honourable Court on the 19th September 2007

at 3.30pm or at a time so soon after as Counsel can be heard, it will be moved by

Counsel for Kilsture Limited, Maddox Limited, Cumberdale Holdings Limited, and

Trilogy Investments Limited, Outwell Limited and Daeman Limited, all companies

incorporated in the Isle of Man (together "the Companies"), that the Court do make

an order that : -

1. the Companies be made noticed parties to the Petition of the United States of America dated 29th August 2007, which is due to be called before this Honourable Court at 3.30 pm on the 19th September 2007

2. the Companies be entitled to receive all papers filed and which are properly to be served on noticed parties thereto, or as filed by the Petitioners, and have leave to file affidavit evidence and skeleton arguments and to attend all hearings and make submissions by Counsel

3. such directions as to notice or otherwise as may be appropriate.

**GROUNDS FOR THIS MOTION : -**

1. By their Petition, the Petitioner seeks an Order of Court in assistance to the United States District Court, District of Massachusetts to conduct an examination of Mr Nigel Scott (**"Mr Scott"**) in the terms set forth in a Letter of Request for International Assistance which was issued by Judge Saylor on the 22nd May 2007 in the Massachusetts Court and for the production for the documents therein in the manner sought.

2. The Companies are directly affected by the Petition and any determination thereof, as it clear from their Petition and the Affidavit of John A Lindquist sworn on the 30th August 2007 and filed in support of the Petition, that the examination of Mr Scott that the Petitioners wish to conduct, and the documentation sought to be produced, relate to the Companies and specific reference is made to paragraphs 19 – 21 of the Petition.

3. The Companies are concerned that Mr Scott and / or Mr Oliver Peck (**"Mr Peck"**) (albeit that the Petitioners have indicated at paragraph 10 of their Petition that they are not pressing for an examination of Mr Peck at this time *(our emphasis*

*added)*), will disclose information in relation to the Companies, which is not theirs to impart, and which they have obtained in their capacity as a former officer of the Companies in the case of Mr Scott and as the former Managing Director of the Administrator of the Companies, Singer & Friedlander Trust Company (Isle of Man) Limited in the case of Mr Peck.

4.  In the circumstances, the Companies are anxious to ensure that the Petition, which makes specific reference to them and which seeks information from third parties in relation to them, is not determined without their having an opportunity to make submissions to the Court.

Date this 18th September 2007

Advocate for

Kilsture Limited, Maddox Limited, Cumberdale Holdings Limited, and Trilogy

Investments Limited, Outwell Limited and Daeman Limited

To: -

1.  The Isle of Man Courts of Justice
2.  The Petitioner per their Advocate, Dickinson Cruickshank (Ref: U1030.001/CC/CMS)
3.  Nigel Scott