# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>       Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case Nos.: 05-40151-FDS<br>06-40130-FDS |

## PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION FOR ISSUANCE OF A SECOND LETTER ROGATORY REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE FROM THE ISLE OF MAN

Defendant's Reply is premised on bullying accusations, ignoring the legitimate arguments asserted by Plaintiff, overlooking the burden that this process continues to impose, and arrogantly relegating Plaintiff's role in its own case to "observ[ing] from the sidelines." (Def.'s Reply at 8.)  Rather than address the issues and take responsibility for the misfired letter rogatory, Defendant prefers to accuse Plaintiff of obstruction because Plaintiff is not willing to sit quietly on the sidelines while Defendant attempts to engage in discovery against an expanding group of entities in the Isle of Man.[1]  Unsurprisingly, in response to Defendant's overly broad

---

[1] Defendant's statement that "[P]laintiff boasts that it could have done a better job of gathering foreign evidence" (Def.'s Reply at 7) is not only a mischaracterization of Plaintiff's argument, but has absolutely no relevance to the issue at hand.  Plaintiff's concern is, and always has been, that this process be fair and that it not unnecessarily burden the parties, the foreign witnesses, and the foreign courts.  Thus, Defendant is incorrect in claiming that Plaintiff has "sought to impede at every step the gathering of any foreign evidence" (*id.*), or that Plaintiff "is fighting tooth and nail to prevent the United States from obtaining highly-relevant evidence relating to a foreign 'partner.'" (*Id.* at 8 n.15.)  To the contrary, Plaintiff did not oppose the gathering of foreign "evidence" from Mr. Mahoney in its Response, filed on April 18, 2007, but objected to the unnecessary cost and delay that would ensue if evidence

attempt to obtain company records from former employees, the Isle of Man entities have asserted

their concerns and rights, including rights under the Human Rights Act and the European

Convention on Human Rights.[2]

Defendant presents two excuses for the failure of the first letter rogatory and for its return

to this Court for yet another letter.  Defendant's first excuse, the discovery of Simcocks Trust

Limited as the holder of the documents demanded rather than Singer & Friedlander, is irrelevant

in light of the fact that Defendant's original letter intentionally sought documents from

individuals, not from the companies[3] who have ultimate control over their own records.  In

addition, Defendant's second excuse, that a new letter is necessitated by the intervention of the

companies, is equally insufficient to warrant a new letter because Defendant purposefully

decided to keep the companies out of the process, taking the risk that the individuals did not

control the documents and that the companies would not agree to produce them.

I.    **Defendant's Two "Recent Events" Necessitating a New Letter Rogatory Do Not
Justify the Issuance of an Additional Letter**

Defendant's first excuse is that it only recently learned of the role of Simcocks Trust

Limited (Def.'s Reply at 1.)  This claim is misleading in two ways, and does not justify issuance

of another letter.  First, Defendant learned of Simcocks Trust Limited through a voluntary, rather

than compelled, conversation with Oliver Peck, which could have taken place before even

---

was sought from foreign witnesses who had no role or relevant information, including Mr. Peck, who has since
confirmed that he had no role and does not possess relevant information relating to Plaintiff's transaction or any
other transaction targeted by Defendant in this proceeding.

[2] The companies' filings, attached as Exhibit A, undermine Defendant's claim that "the four intervening entities
make crystal clear that the sole reason they seek to intervene in the letter rogatory proceeding is to prevent us from
obtaining any information from either Nigel Scott or Oliver Peck."  (Def.'s Reply at 1.)  As the companies' motion
papers assert, the Human Rights Act and the European Convention on Human Rights provide protections to citizens
in the European community whose rights may be affected imminently or whose rights may have been infringed.
(Ex. A, Aff. of David Anthony Karran ¶ 10.)

[3] The "companies" mean Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and Trilogy Investments Ltd.

moving for letters rogatory in April 2007, as suggested by Plaintiff.[4]  Defendant learned of

Simcocks Trust Limited through a conversation counsel for Defendant had with Oliver Peck.

(Def.'s Mem. at 2; Ex. B ¶ 30.)  Following that conversation, Defendant's Isle of Man counsel

sent a letter to Simcocks Trust Limited on July 2, 2007, requesting the records identified in the

letter rogatory issued by this Court (Ex. C; Ex. B ¶ 33), and learned ten days later that Simcocks

Trust Limited would not do so.  Notwithstanding this information, Defendant filed its application

in the Isle of Man for an order pursuant to this Court's letter rogatory on or about August 30,

2007, strategically deciding to go forward against the two individual witnesses (Messrs. Scott

and Peck) without making Simcocks Trust Limited a party to the Isle of Man proceedings with

standing to object.  Now that Defendant's discovery strategy has failed, and four months have

been wasted since Defendant initially learned of Simcocks Trust Limited, Defendant seeks to

change its strategy and now obtain documents directly from the entities who control the

documents requested.

      The second excuse offered by Defendant is the intervention of the companies whose

records Defendant demands.  This excuse is a non-starter, given that Defendant purposefully

chose not to seek the documents from the companies directly.  Even after Plaintiff identified this

critical flaw in Defendant's original letter, Defendant decided to proceed only against the

individuals, and not to attempt to obtain discovery from the companies.  It should come as no

surprise to Defendant, this Court, or the Isle of Man court that the companies would object to a

procedure that would allow Defendant to obtain company records without including the

---

[4] It is not clear that compelling Oliver Peck to testify for the purpose of identifying Simcocks Trust Limited should be considered "valuable information."  (Def.'s Reply at 4 n.8.)  Such information has been publicly available since 2005 from records of the Company Registry in the Isle of Man.  Defendant has belatedly obtained such publicly available records in the Isle of Man, which identify Simcocks Trust Limited as custodian of the companies' records, and attached those records to the application submitted to the Isle of Man Court.  Moreover, as Plaintiff understands, Oliver Peck worked at Barclay's Bank during the relevant time period and has no information to offer other than the publicly available information noted above.

companies in the process. Defendant's explanations for not seeking documents from the companies directly fall far short of a reasonable justification for its actions.

Defendant claims that it decided to seek company documents from the individuals rather than the companies directly because (1) it was already seeking the documents through treaty requests (Def.'s Reply at 6) and (2) former employees often keep records upon leaving their companies (Def.'s Reply at 7). Both claims are insufficient to justify issuance of another letter. Claiming that treaty requests, which have been outstanding for seven months, are an excuse for not also seeking the documents through letters rogatory from the entities who are in possession of the documents is inconsistent with Defendant's appetite to date for broad and redundant discovery demands.[5] As Plaintiff noted in the first round of pleadings on this matter, Defendant sought the same documents from all five witnesses, offering no explanation as to why Oliver Peck and Nigel Scott would have documents relating to Samuel Mahoney and Martin Hawkes.[6]

Interestingly, Defendant resorts to the feeble observation that "former employees frequently retain (whether properly or improperly) notes and copies of records of their former work activities" (Def.'s Reply at 7), and offers it as proper grounds for not seeking documents from the companies directly. Even if the two witnesses did retain copies of company records, the broad scope of Defendant's requests for documents, including requests without any limitation as to time, makes it impossible for those former employees to have all the records Defendant seeks. Therefore, all of Defendant's claimed justifications for failing to seek documents from the proper parties through its initial letters rogatory are without merit and do not justify the issuance of another letter rogatory at this late stage in the case. Issuing such a letter will inevitably delay this

---

[5] Moreover, there is no indication by Defendant that it revised its treaty request to seek records from Simcocks Trust Limited after its June 18, 2007 conversation with Mr. Peck.

[6] (*See* Pl.'s Resp. to Def.'s Mot for Issuance of Letters Rogatory Seeking Int'l Judicial Assistance at 20-21 (filed Apr. 18, 2007).)

case and impose additional burdens here and in the Isle of Man court, where the judge has already expressed that he has a busy calendar.

## II.    Plaintiff Opposes the Issuance of a Second Letter Rogatory on the Grounds That the Mounting Burden Exceeds the Realistic Benefit

As it stands, nearly a year after this Court first urged Defendant to initiate the letter rogatory process, there is no known application for an order in Ireland.  There is a defective letter rogatory before Deemster Mongtomerie in the Isle of Man, who has already held two hearings on the letters, with two more scheduled.  The newly proposed letter, which now seeks only documents (a procedure that is not permitted in some European countries, including Ireland), is more akin to American-style discovery than the prior requests.  Accordingly, issuance of Defendant's new proposed letter will undoubtedly lead Defendant to seek further delays, impose additional burdens on all those involved, and will draw additional objections in the Isle of Man.

When Defendant first moved for letters rogatory, Plaintiff predicted that these problems would arise, including the obvious possibility that the witnesses would not possess or control the company records demanded.  In objecting to restarting the process, Plaintiff is neither boasting nor is it obstructing, as Defendant claims.  Instead, Plaintiff is, as he has the right to do, asking that this Court balance the mounting burden, in addition to the burden placed on all those involved thus far, that will be caused by another round of defective letters against the unlikely benefit—a balancing that weighs heavily against issuance of another letter.

Moreover, Plaintiff is  not required to "simply . . . observe from the sidelines while the United States attempts to gather evidence from foreign" individuals and entities.  (Def.'s Reply at 8.)  Plaintiff must ensure that his rights are protected throughout this process, including the right to ensure that Defendant does not cherry-pick its foreign discovery, and that Defendant does not take advantage of these proceedings to gather evidence for other unrelated and

irrelevant matters.  Plaintiff's counsel will have to travel to the Isle of Man, prepare to depose foreign witnesses, and review all evidence gathered.  The time, effort, and expense involved in this process outweighs the benefit of the process, regardless of the total sum at stake, particularly when no benefit can be derived within the time available.

## <u>CONCLUSION</u>

In initially requesting letters rogatory from the Court, Defendant pointedly refused to inquire whether the individuals from whom it was seeking information would be competent and capable of providing it.  In the nearly six months that followed, Plaintiff has been compelled to expend significant time, money, and effort in dealing with the letters rogatory process, which has not yielded a single document or deposition.  Now, with discovery about to close, Defendant is before the Court again asking for a "second" letter of request, seeking American-style discovery from new entities that may or may not be able to provide the information requested, and offering two inadequate excuses for failing to seek information from the proper entities in the first place.  Accordingly, the Court should deny Defendant's motion for yet another letter rogatory.

Respectfully submitted this 29th day of October 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
           rbuch@mckeenelson.com
           lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 29, 2007.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

Clerk to His Worship Acting Deemster Montgomerie      27th September 2007
Isle of Man Courts of Justice
Isle of Man Courts of Justice      CLA 2007/74
Deemsters Walk
Bucks Road
Douglas      CJA/NLK/JH/R01184.0006
Isle of Man

# **<u>URGENT</u>**

Dear Sir

### **<u>Petition of the United States of America CLA 2007/74</u>**

We refer to the above matter and to the Notice of Motion of our clients and enclose herewith, by way of filing, Affidavit of David Anthony Karran.

A copy of this Affidavit, and this letter, has been sent to Dickinson Cruickshank & Co, on behalf of the Petitioners and Cains, on behalf of Fidelity, the Noticed Party to the proceedings.

Yours faithfully

<u>SIMCOCKS</u>
nkane@simcocks.com or carrowsmith@simcocks.com

ENC

CC:     Dickinson Cruickshank
       Cains

David Anthony Karran
Sworn: 27th September 2007

CLA 2007 / 74

IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

COMMON LAW DIVISION

SUPERIOR BUSINESS

IN THE MATTER of the Evidence (Proceedings in other Jurisdictions) Act 1973 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in other Jurisdictions) (Isle of Man) Order 1979

and

IN THE MATTER of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund LLC by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS

and

IN THE MATTER of the Petition of the United States of America dated 29th August 2007

and

IN THE MATTER of Order 9 rules 11 and 13A of the Rules of the High Court of the Isle of Man

## AFFIDAVIT OF DAVID ANTHONY KARRAN

I, DAVID ANTHONY KARRAN, of 14 Athol Street, Douglas, Isle of Man, being sworn make Oath and say as follows.

1. The contents of this Affidavit are true in relation to matters within my personal knowledge and I verily believe the content to be true insofar as they relate to matters outside the scope of my personal knowledge.

2. I swear this Affidavit in compliance with the Order of His Honour Acting Deemster Montgomerie, of the 19th day of September 2007, in support of the Notice of Motion dated the 18th day of September 2007 ("the Joinder Application") which seeks that the Companies be joined into the proceedings before the Court as between the United States of America ("USA"), and Fidelity International Currency Advisors A Fund LLC ("Fidelity").

**The Parties Before the Court**

3. It is my understanding that when the matter was first before the Court, on the 18th September 2007, an oral application to be joined, as a party, to the Petition was made on behalf of Fidelity and that the Petitioners have readily accepted that Fidelity should be a party.

4. I swear this Affidavit in support of the Joinder Application of the Companies to be joined into the Petition and to participate in the proceedings going forward.

5. I annex hereto marked "DAK1", a copy of the Joinder Application. Paragraphs 2, 3 and 4 make reference to the substantive concern that, in essence, former officers of any of the Companies, of which I am now a director, would or should discuss matters in relation to their former offices that must, of necessity, relate to information which is not theirs to give and which only came into their possession by virtue of the offices which they formerly held.

Further I note with concern that it appears to be suggested that documents relevant to the affairs, in part or in whole, of any or each of the Companies would also be produced by either Messrs Scott or Peck. Clearly, again, assuming, and it is only an assumption, for the purposes of this Affidavit, that any former officer

held documents that were created by or on behalf of former officers, in that capacity which came into their hands during their former office holding position, that any such documents would, of necessity, be material in the ownership, in every sense, of the Companies and not materials that are or were within the gift of former officers to impart to any other party.

7.    Whilst I do not, within this Affidavit, purport to express a legal opinion I believe that the position in respect of former officers will be the subject of legal submissions to supplement this Affidavit.

### Summary – Former Officers

8.    With respect, the basic proposition that former officers are being invited to discuss matters relevant to their former position is in, and of itself, peculiar and, moreover, in and of itself gives rise to sufficient interest on behalf of the Companies to maintain or at least consider the position in respect of information and/or materials which are, quite clearly, sought to be obtained, by the Petitioners that must relate to the affairs either historical or current, of the Companies, or any of them.   On that basis alone it would appear to me that, with respect, the Companies should be afforded the opportunity to address the Court in relation to these issues.

### Additional Issues in relation to the Application before the Court

9.    I understand that several other issues each of them being relevant issues in relation to the Petition before the Court

10.    I understand that the Companies may enjoy the protection of section 7 of the Human Rights Act and the related European Convention on Human Rights

particularly Article 8. On its terms Section 7 of the Act expressly provides protection for persons whose rights may be affected imminently as well as to those whose rights may have been infringed to move the court.

As with paragraph 7 herein, I believe that the position of the Companies in this regard, will be the subject of legal submissions to supplement the matters raised in this Skeleton.

## Undertaking of Mr Nigel Scott

11.    An Undertaking has been entered into, voluntarily, between Mr Nigel Scott, and the Companies, wherein Mr Scott indicates, inter alia, that he will not voluntarily discuss matters with any party, specifically including the Petitioners, until such time as the Joinder application has been finally determined and that, if joinder is granted, the representations and proceedings that flow therefrom have been finally determined.

12.    The recognition, through this Undertaking, of Mr Scott is -- quite properly to my mind -- a recognition of the connection between Mr Scott, whatever evidence there is that is sought to be obtained, by the Petitioners, from Mr Scott, in his capacity as a former director -- and the Company who, on my understanding, own and are interested in whatever information and/or documentation or other matters that would equate to "evidence" that the Petitioners seek to obtain from Mr Scott or any other former officer of any of the companies.

## Summary

13.    I would, with respect, seek that the Companies be joined into these proceedings.

## Nature of Participation

14.     I understand that at Court on the 19th day of September 2007, the Advocate for the Petitioner expressed particular interest in the extent of the participation envisaged on behalf of the Companies.

15.     I recognise that the Order of this Honourable Court requires that I address this also.

16.     With respect, at this stage, until the full extent of the jurisdictional and substantive challenges, referred to above, are concluded, it is by no means certain that this process, itself, by way of a request for evidence under the 1975 Act could or should proceed.

17.     With respect only once the jurisdictional appropriateness or integrity of this mechanism has properly been considered, upon submissions by all interested parties, will the true extent of the appropriate participation in the proceedings be established.

18.     At this stage I am uncertain, until the matter is properly and fully argued, and determined by the Court, whether the appropriate participation to be sought on behalf of the Companies would be limited to making submissions to this Court which, at this stage, is considering whether or not, as I understand it, Orders should be granted requiring that Mr Scott, and potentially others, attend before another Court at an appointed place, date and time to give evidence.

19.     It may well be that there is significant argument as to whether or not that secondary point should one could ever properly be reached

20.     The position, which, with respect, appears straightforward, for the purposes of this Affidavit, is that the Companies wish to participate as appropriately and fully

as possible, within the proceedings for this Court at this stage, when it considers the relief sought in the Petition. The Companies wish to be heard to the extent that it is proper for the Courts to entertain the relief sought in the Petition. Reference to the basis, within this Affidavit, for that participation and that basis will be expanded upon in oral and written submissions should that be required. By way of example, if, having heard submissions, the Court were to determine that it does not have jurisdiction to examine the proposed witness, or other witnesses, then the matter would not progress beyond that point.

Taken and Sworn at Douglas                                    :

This  27th day of September 2007                              :

Before me:  E. Ratcliffe  .                                  :

A Commissioner for Oaths                                      :


            Emma Ratcliffe
            Commissioner for Oaths

CLA 2007 / 74

IN THE HIGH COURT OF JUSTICE OF
THE ISLE OF MAN
COMMON LAW DIVISION
SUPERIOR BUSINESS

IN THE MATTER of the Evidence
(Proceedings in other Jurisdictions) Act
1973 (an Act of Parliament as extended to
the Isle of Man by the Evidence
(Proceedings in other Jurisdictions) (Isle of
Man) Order 1979

and

IN THE MATTER of the proceedings before
the United States District Court, District of
Massachusetts between Fidelity International
Currency Advisor A Fund LLC by the Tax
Matters Partner, Plaintiff, and United States
of America, Defendant, Civil No 05-40151-
FDS and 06-40130-FDS

and

N THE MATTER of Order 40 of the Rules
of the High Court of Justice of the Isle of
Man

and

IN THE MATTER of the Petition of the
United States of America dated the 29th day
of August 2007

and

IN THE MATTER Petition of Kilsture
Limited, Maddox Limited, Cumberdale
Holdings Limited, and Trilogy Investments
Limited, together Outwell Limited and
Daeman Limited each of Top Floor 14 Athol
Street Douglas Isle of Man IM1 1JA

and

IN THE MATTER of section 56b of the
High Court Act 1990

**AFFIDAVIT OF DAVID ANTHONY
KARRAN**

CLA 2007 / 74

IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

COMMON LAW DIVISION

SUPERIOR BUSINESS

IN THE MATTER of the Evidence (Proceedings in other Jurisdictions) Act 1973 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in other Jurisdictions) (Isle of Man) Order 1979

and

IN THE MATTER of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund LLC by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS

and

IN THE MATTER of Order 40 of the Rules of the High Court of Justice of the Isle of Man

and

IN THE MATTER of the Petition of the United States of America dated the 29th day of August 2007

and

IN THE MATTER Petition of Kilsture Limited, Maddox Limited, Cumberdale Holdings Limited, and Trilogy Investments Limited, together Outwell Limited and Daeman Limited each of Top Floor 14 Athol Street Douglas Isle of Man IM1 1JA

and

IN THE MATTER of section 56B of the High Court Act 1990

**THIS IS THE EXHIBIT REFERRED TO AS "DAK1" IN THE ANNEXED AFFIDAVIT OF DAVID ANTHONY KARRAN**

Taken and Sworn at Douglas

This 27th day of Sept 2007

Before me:- E. Ratcliffe

A Solicitor / Commissioner for Oaths

Emma Ratcliffe
Commissioner for Oaths

CLA 2007 / 74

IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

COMMON LAW DIVISION

SUPERIOR BUSINESS

IN THE MATTER of the Evidence (Proceedings in other Jurisdictions) Act 1973 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in other Jurisdictions) (Isle of Man) Order 1979

and

IN THE MATTER of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund LLC by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS

and

IN THE MATTER of the Petition of the United States of America dated 29th August 2007

and

IN THE MATTER of Order 9 rules 11 and 13A of the Rules of the High Court of the Isle of Man

---

## NOTICE OF MOTION

---

TAKE NOTICE that at a sitting of this Honourable Court on the 19th September 2007 at 3.30pm or at a time so soon after as Counsel can be heard, it will be moved by Counsel for Kilsture Limited, Maddox Limited, Cumberdale Holdings Limited, and Trilogy Investments Limited, Outwell Limited and Daeman Limited, all companies incorporated in the Isle of Man (together "the Companies"), that the Court do make an order that

1. the Companies be made noticed parties to the Petition of the United States of America dated 29th August 2007, which is due to be called before this Honourable Court at 3.30 pm on the 19th September 2007

2. the Companies be entitled to receive all papers filed and which are properly to be served on noticed parties thereto, or as filed by the Petitioners, and have leave to file affidavit evidence and skeleton arguments and to attend all hearings and make submissions by Counsel

3. such directions as to notice or otherwise as may be appropriate.

**GROUNDS FOR THIS MOTION : -**

1. By their Petition, the Petitioner seeks an Order of Court in assistance to the United States District Court, District of Massachusetts to conduct an examination of Mr Nigel Scott (**"Mr Scott"**) in the terms set forth in a Letter of Request for International Assistance which was issued by Judge Saylor on the 22nd May 2007 in the Massachusetts Court and for the production for the documents therein in the manner sought.

2. The Companies are directly affected by the Petition and any determination thereof, as it clear from their Petition and the Affidavit of John A Lindquist sworn on the 30th August 2007 and filed in support of the Petition, that the examination of Mr Scott that the Petitioners wish to conduct, and the documentation sought to be produced, relate to the Companies and specific reference is made to paragraphs 19 - 21 of the Petition.

3. The Companies are concerned that Mr Scott and / or Mr Oliver Peck (**"Mr Peck"**) (albeit that the Petitioners have indicated at paragraph 10 of their Petition that they are not pressing for an examination of Mr Peck at this time *(our emphasis*

*added*)), will disclose information in relation to the Companies, which is not theirs to impart, and which they have obtained in their capacity as a former officer of the Companies in the case of Mr Scott and as the former Managing Director of the Administrator of the Companies, Singer & Friedlander Trust Company (Isle of Man) Limited in the case of Mr Peck.

4. In the circumstances, the Companies are anxious to ensure that the Petition, which makes specific reference to them and which seeks information from third parties in relation to them, is not determined without their having an opportunity to make submissions to the Court.

Date this 18th September 2007

Advocate for

Kilsture Limited, Maddox Limited, Cumberdale Holdings Limited, and Trilogy Investments Limited, Outwell Limited and Daeman Limited

To: -
1. The Isle of Man Courts of Justice
2. The Petitioner per their Advocate, Dickinson Cruickshank (Ref: U1030.001/CC/CMS)
3. Nigel Scott

CLA 2007 / 74

IN THE HIGH COURT OF JUSTICE OF
THE ISLE OF MAN
COMMON LAW DIVISION
SUPERIOR BUSINESS

IN THE MATTER of the Evidence
(Proceedings in other Jurisdictions) Act
1973 (an Act of Parliament as extended to
the Isle of Man by the Evidence
(Proceedings in other Jurisdictions) (Isle of
Man) Order 1979

and

IN THE MATTER of the proceedings before
the United States District Court, District of
Massachusetts between Fidelity International
Currency Advisor A Fund LLC by the Tax
Matters Partner, Plaintiff, and United States
of America, Defendant, Civil No 05-40151-
FDS and 06-40130-FDS

and

N THE MATTER of Order 40 of the Rules
of the High Court of Justice of the Isle of
Man

and

IN THE MATTER of the Petition of the
United States of America dated the 29th day
of August 2007

and

IN THE MATTER Petition of Kilsture
Limited, Maddox Limited, Cumberdale
Holdings Limited, and Trilogy Investments
Limited, together Outwell Limited and
Daeman Limited each of Top Floor 14 Athol
Street Douglas Isle of Man IM1 1JA

IN THE MATTERS of section 56B of the
High Court Act 1990

**EXHIBIT "DAK1" REFERRED TO IN
AFFIDAVIT OF DAVID ANTHONY
KARRAN**

# Exhibit B

CLA 2007 /

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**

**COMMON LAW DIVISION**

**SUPERIOR BUSINESS**

**(EX PARTE)**

IN THE MATTER of the Evidence
(Proceedings in Other Jurisdictions) Act 1975
(an Act of Parliament as extended to the Isle
of Man by the Evidence (Proceedings in Other
Jurisdictions) (Isle of Man) Order 1979)

and

IN THE MATTER of the proceedings before
the United States District Court, District of
Massachusetts between Fidelity International
Currency Advisor A Fund, LLC, by the Tax
Matters Partner, Plaintiff, and United States of
America, Defendant, Civil No 05-40151-FDS
and 06-40130-FDS

and

IN THE MATTER of the **HUMBLE PETITION**
of **THE UNITED STATES OF AMERICA**
dated 29 August 2007

**AFFIDAVIT OF JOHN A. LINDQUIST**

I, John A Lindquist, of the United States Department of Justice, PO Box 55, Ben Franklin
Station, Washington D.C. 20044-0055 United States of America **MAKE OATH AND SAY AS
FOLLOWS**:

1.    I am a Trial Attorney retained by the United States Department of Justice, Tax
       Division. I have day to day responsibility for the carriage and conduct of the above
       styled proceedings before the United States District Court, District of Massachusetts
       ("the Massachusetts Proceedings") in which the United States of America is named
       as Defendant.

2.    The facts and matters to which I depose are drawn from my own knowledge or from
       the papers and documents that the United States has received relating to the matters
       in issue. The contents of this Affidavit are true to the best of my knowledge
       information and belief. Where any matters referred to in this affidavit fall outside my
       personal knowledge or understanding I have been informed of such matters by other
       members of the team of Attorneys within the Department of Justice working on this

matter. In respect of all matters referred to herein I have no reason to doubt their accuracy and believe them to be true.

3.   There is now produced and shown to me marked "**JAL1**" a bundle of documents. All references to pages or tabs are to the pages or tabs of Exhibit JAL1 unless indicated otherwise.

4.   I am duly authorised to make this affidavit in support of the United States' Petition dated 23 August 2007 for an Order of this Honourable Court in assistance to the United States District Court, District of Massachusetts, to conduct the examination of Mr Nigel Scott in the terms set forth in the Letter of Request to this Honourable Court and for the production of the documents particularised therein in the manner sought.

5.   The remainder of this affidavit is structured as follows :

    a.   an overview of the type of tax-shelter scheme employed in the present case;

    b.   a summary of the Massachusetts Proceedings and the particular issues raised therein;

    c.   the application for Letters Rogatory with consideration of the relevance of the evidence sought to the issues in the Massachusetts Proceedings; and

    d.   other matters including correspondence with Fidelity's Isle of Man Advocates, Cains and the witnesses

*Synopsis – the FDIS tax-shelter product*

6.   This concerns a scheme promoted as and known as the "Financial Derivatives Investment Strategy" ("FDIS") tax–shelter product. The core domestic (US) promoters of the product included The Diversified Group ("DGI"), Helios Financial ("Helios"), and Alpha Consultants ("Alpha"). The United States has identified 58 FDIS transactions.   These 58 transactions are relevant to multiple issues to the FDIS transaction at issue in the Massachusetts Proceedings, including whether the foreign partner on the transaction was a real partner, whether the transaction has economic substance and also whether the FDIS strategy consisted of a series of pre-planned steps. In each transaction a foreign "partner", who is US tax-indifferent (i.e. not liable to US tax) is required to make the tax-shelter work. In each of the 58 cases the foreign "partner" was Mr Samuel Mahoney ("Mr Mahoney"), a citizen of the Republic of Ireland or his business associate Martin Hawkes ("Mr Hawkes").

7.   In each case the planned implementation of the FDIS strategy was detailed in an outline of the proposed transaction which, in addition to detailing the pre-planned

steps of the transaction, also detailed the pre-planned fees. Upon information and belief, Mr. Mahoney and/or Mr. Hawkes received a copy of the outline prior to the implementation of the FDIS strategy.

8.   In each FDIS strategy Mr. Mahoney or Mr. Hawkes made an initial contribution to the "partnership" only to sell most of that interest shortly thereafter. Further, specifically, in each case, the foreign "partner" proceeded to sell the majority of his recently purchased common interest (88% of his 93% common interest or 90% of his 95% interest) to the US taxpayer. The outlines for the proposed transactions provided that the purchase price in each case for the interest was one-half of the foreign "partner's" initial capital "contribution".

9.   On its US partnership tax return for the year in question, the "partnership" would then allocate the purported gains on this set of transactions to the foreign "partner", and the purported losses to the relevant US taxpayer. Because the foreign "partner" was not a US citizen or resident he was not required to pay taxes on that alleged profit. From the same set of transactions the US taxpayer would then claim very significant losses, in the present case, as will be explained below, allegedly a loss of more than $158 million.

*The Massachusetts Proceedings - Fidelity International Currency Advisor A Fund, LLC, by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS*

10.   The Massachusetts Proceedings to which the Letter of Request relates are summarised in Judge Saylor's Letter of Request dated 22 May 2007 at tab 1.

11.   The specific proceedings in question involve a set of transactions occurring in 2001 and engaged in by a US taxpayer, Richard Egan ("Mr Egan"), in purported partnership with, among others, Mr Mahoney. The purported partnership is called Fidelity International Currency Advisor A Fund, LLC, the Plaintiff in the Massachusetts Proceedings ("Fidelity").

12.   Mr Mahoney is alleged to have made a contribution of $651,000 for a 93% share of the "partnership". Shortly after making his alleged contribution Mr Mahoney sold 88% of his common interests in the "partnership" to the US taxpayer Mr Egan for approximately half of what he had "contributed". Mr Mahoney claims his $651,000 contribution was made on his behalf by Kilsture Ltd, a Company incorporated in the Isle of Man of which he claimed to be an employee.

13.   On its US partnership tax return for 2001, Fidelity allocated the purported gains on this set of transactions to Mr Mahoney as the foreign "partner", and the purported losses to Mr Egan. Based on the partnership tax return, Mr Mahoney made an alleged profit of approximately $163.8million on the transactions but because he was not a US citizen or resident he was not required to pay taxes on that alleged profit. From the same set of transactions Mr Egan allegedly lost more that $158 million. These gains and losses were purely paper (and not economic) gains and losses.

14.   The United States taxing authority, the Internal Revenue Service ("IRS"), disallowed the losses claimed by Fidelity, adjusting the partnership items for US tax purposes. The consequence of these adjustments was to disallow the losses claimed by Egan as allocable from Fidelity, thereby :

   a.   Increasing Egan's tax liabilities for 2001 by more than $62m

   b.   Increasing Egan's tax liabilities for 2002 by approximately $500k.

15.   By the Massachusetts Proceedings Fidelity challenges the IRS's adjustments and seeks readjustment pursuant to Title 26 of the United States Code, Section 6226 [1].

16.   Copies of the two complaints for readjustment (the first for the financial year ending 31 December 2001, the second for the subsequent year) filed in these proceedings are at tabs 2 and 3.

17.   By section 6226 (f) the District Court has, among other things, jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates and the proper allocation of such items among the partners.

18.   The IRS, and the United States in defence of Fidelity's complaints, argues, inter alia, that Mahoney was not a real but only a nominee partner of the partnership and the

---

[1] Section 6226 provides:

"(a) Petition by tax matters partner
Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with —
(1) the Tax Court,
(2) the district court of the United States for the district in which the partnership's principal place of business is located, or
(3) the Court of Federal Claims. "

gains allocated to him should be reallocated to Egan, that Fidelity should not be recognised as a partnership for tax purposes and that the transactions in issue, which created large paper losses that were used to shelter income, were sham transactions without any economic substance. The United States Answer is at tab 4.

19.    The principal issues in dispute in the Massachusetts Proceedings are conveniently set out in Judge Saylor's Letter of Request (tab 1) and include :

    a.    Whether Mr Mahoney is a real partner of Fidelity (page 2). The United States contends :

- that he is not, because he did not fund his own investment in this company;

- that US promoters of the transaction, in addition to funding Mr Mahoney's investment, also paid him a fee to allow his name and foreign residency to be misused on these transactions;

- US promoters paid these amounts to Mr Mahoney by way of various accounts, including joint-venture accounts, controlled by Mr Mahoney and his business partner, Mr Hawkes, also an Irish Citizen;

- that the joint-venture accounts were held at Singer & Friedlander (now Kaupthing Singer & Friedlander) in the Isle of Man, and include the following accounts:

        1.   Sub Account:  Singer & Friedlander (Isle of Man) Limited

           Account no: 30123012

           Reference: 11270012

        2.   Sub Account:  Singer & Friedlander Limited

           Account no: 30123012

           Reference: The H&M Joint Venture account number 20195700

        3.   Sub Account:  Singer & Friedlander Limited

           Account no: 30123012

           Reference: S&F Client A/C No. 11270025

        4.   Sub Account:  Singer & Friedlander (Isle of Man) Ltd.

           Account no: 30123012

Reference: Trilogy Investments Limited - Account no: 20282910; and

- the account holder of these joint-venture accounts was an Irish Company Biosphere Finance Ltd., of which Mahoney, Hawkes, and John Hussey, another Irish citizen, were directors

b. Whether Fidelity, in which Mr Mahoney was purportedly a partner, should be recognised as a partnership for US tax purposes (page 3). As a matter of US law it will only be so recognised if the partners in good faith and acting with a business purpose intend to join together in the conduct of the enterprise. The United States contends :

- that Mr Mahoney had no intent to join in the conduct of Fidelity

- Fidelity had no non-tax purpose

c. Whether the transactions employed had "economic substance" (as a doctrine of US law) (page 3). As a matter of US law, transactions invented solely to create tax deductions and otherwise have no economic substance will not be recognised. The Court should consider first whether there is a possibility of profit and second whether there existed a tax-independent business purpose for the transaction. The first test takes the form of an objective inquiry, the second a subjective one. The United States contends that resolution of these issues requires testimonial and documentary evidence from the purported partners including Mr Mahoney as the alleged foreign partner of Fidelity.

d. Whether Fidelity engaged in similar or identical transactions (page 4). The United States contends :

- That Messrs Mahoney and Hawkes were paid for their participation in each of the transactions in question by the US promoters

- The US promoters paid these fees to Messrs Mahoney and Hawkes through Singer & Friedlander in the Isle of Man, which accounts the United States alleges were held by the various entities they controlled, including Maddox Ltd., Kilsture Ltd., Cumberdale Holdings Ltd. (formerly College Green Limited), and Biosphere Finance Ltd

- Messrs Mahoney and Hawkes were employees of two of the Isle of Man companies which allegedly received substantial payments from

US promoters, Kilsture Ltd (which purportedly contributed $651,000 to Fidelity on Mr Mahoney's behalf) and Maddox Ltd,

- Kilsture Ltd and Maddox Ltd were shareholders of Cumberdale Holdings Ltd, another Isle of Man Company.

- Mr Nigel Scott was a principal of Kilsture Ltd and Maddox Limited and College Green Limited / Cumberdale Holdings Ltd.

- Mr Oliver Peck was the Managing Director of Singer & Friedlander Trust Company (IOM) Ltd

20.    I believe that Mr Scott will have evidence of crucial relevance to these issues. Mr Scott was a director of Kilsture Limited, Maddox Limited and College Green Limited / Cumberdale Holdings Ltd over the relevant period. I attach company returns at tabs 5-7. I believe he first became involved with Mr Hawkes and Mr Mahoney and the relevant Companies during his employ at KPMG, that KPMG sold its fiduciary business to Singer & Friedlander in 2001 and that Mr Scott transferred to Singer & Friedlander taking the business with him. I believe Singer & Friedlander Trust Company (IOM) Ltd and/or associated companies in the Singer & Friedlander Group[2], provided Corporate and Banking Services to Kilsture Limited, Maddox Limited and Cumberdale Holdings Ltd and continued to do so until that fiduciary business was passed to Simcocks Trust Limited in about 2005 (see further below for correspondence with that entity) and Mr Scott retired.

21.    I believe that Mr Peck was appointed Managing Director of Singer & Friedlander Trust Company (IOM) Ltd on 11 October 2002 and remained in that position until 22 April 2004.

*The Letter of Request to this Court*

22.    I am aware of the applicant's duty of full and frank disclosure on an *ex parte* application and accordingly wish to appraise the Court that Fidelity did contest the issue of the Letter of Request.

23.    The United States application was made on 4 April 2007 seeking Orders that Letters of Request (or Letters Rogatory) be issued to the judicial authorities in the Isle of Man (seeking evidence from Mr Scott and Mr Peck) and the Republic of Ireland (seeking evidence from Samuel Mahoney, Martin Hawkes and John Hussey). A copy of the memorandum of law in support of the motion is at tab 8.

---

[2] Singer & Friedlander Investment Management (IOM) Limited , Singer & Friedlander (Isle of Man) Limited

24.   Fidelity opposed to the motion. I attach a copy of its response dated 18 April 2007 at tab 9. Among other things it argued :

- that the proposed Letters Rogatory are overbroad and constitute a fishing expedition in the form of American style "pre-trial" discovery (pages 12-14);

- that they contain an improper description of the case (pages 7-12);

- that the use of local counsel in the Isle of Man to submit the Letter Rogatory to the Isle of Man Court is improper (pages 23-24)

- that if the Letters Rogatory were allowed, a protective order should issue preventing the use of the evidence in any other proceeding (pages 17-18)

- that the proposed Letters Rogatory were not just and appropriate and create an undue burden (in terms of expense) (pages 16-23)

25.   A copy of the United States' Reply brief is at tab 10. The United States stressed that the foreign evidence sought was critically relevant among other things to the United States Defence that the promoters of the scheme in question were in fact paying Mr Mahoney and Mr Hawkes to participate in the FDIS "partnership". I refer in particular to the introduction at pages 1 and 2 in particular, at page 2 "the foreign evidence we seek with respect to the Irish and Manx individuals is highly specific and is directly relevant to whether Mahoney was a sham partner in plaintiff's FDIS transaction as well as multiple other issues in this case". Fidelity's Sur-Reply is at tab 11.

26.   Having considered these arguments Judge Saylor ruled on 22 May 2007 (tab 12) rejecting each of these objections :

- that the purpose of the proposed Letter Rogatory to the Isle of Man and was not a "fishing expedition" rather an elicitation of evidence to support pleaded allegations of fact and that it was not overbroad (pages 4-5);

- that the modified Letter Rogatory contains an appropriate synopsis of the case (pages 7-8);

- that the law and practice of the Isle of Man provides for submission of the Letter Rogatory by local counsel (pages 8-9);

- that the protective order sought would be necessary and appropriate (page 9);

- That the burden or expense is justified against the nature and size of the controversy and the prospective values of the foreign evidence, finding "*the balance is easily struck in favor of permitting the government to obtain the requested evidence*" (pages 6-7)

27. On 22 May 2007 Judge Saylor issued the Letter of Request for International Judicial Assistance to the appropriate judicial authority of the Isle of Man requesting an Order that Mr Scott and Mr Peck do produce certain documents and attend for oral examination (in the matter more particularly referred to in the Letter of Request).

28. The documentation and testimony sought under the Letter of Request is all relevant and necessary for the purposes of the Massachusetts Proceedings and the United States' defence thereof and directly relevant to the issues summarised at paragraph 19 (a) to (d) above.

*Other Matters*

29. On 13 June 2007 Dickinson Cruickshank, engaged by the Department of Justice in relation to this matter, wrote to Mr Peck and Mr Scott asking whether they would be prepared to provide the documentation and testimony on a voluntary basis, to avoid the need for these proceedings. Copies of the letters, without attachments (which were the Letter Rogatory and the Memorandum and Order dated 22 May 2007) are at tab 13.

30. On 18 June 2007 Mr Peck contacted Dickinson Cruickshank. He had declined an offer of representation by Messrs Simcocks. Counsel for the United States subsequently spoke with Mr Peck in lieu of, at least at this time, compelled testimony. During that conversation, Mr Peck confirmed that he does not have any Singer & Friedlander files nor any files relating to any of the companies or clients it administered or serviced.

31. Mr Scott responded by his Advocates Messrs Simcocks on 20 June 2007. Dickinson Cruickshank responded on 28 June 2007 asking whether Mr Scott was prepared to give the testimony and documentation sought on a voluntary basis. Messrs Simcocks responded on 12 July 2007 stating that they are reviewing the legality of the request. This correspondence is at tab 14.

32. Messrs Cains, instructed by Fidelity, contacted Dickinson Cruickshank by telephone on 21 June and subsequently by letter on 26 June. Fidelity requested participation in the examination process. This is uncontroversial insofar as Fidelity requests its right of cross examination. Dickinson Cruickshank replied by letter of 28 June 2007 with a

proposed draft order and requesting certain information. Cains replied on 4 July 2007 suggesting that the initial hearing before the Examiner is for directions only, in the light of the fact that it is proposed (by both parties) that the examination be conducted by US Counsel. Again that is uncontroversial. This correspondence is at tab 15.

33.    Having become aware that since about 2005 the business of the relevant entities and/or individuals has been transferred to it from Singer & Friedlander Dickinson Cruickshank wrote to Simcocks Trust Limited on 2 July 2007 enclosing the list of questions put to Mr Scott and Mr Peck and asking whether Simcocks Trust Limited and the directors of Kilsture Limited, Maddox Limited and Cumberdale Holdings Ltd and Trilogy Investments Limited were prepared to provide documentation sought. Simcocks Advocates letter of 12 July 2007 referred to above indicates that they are instructed by the four referenced companies and/or Simcocks Trust Limited and are reviewing the legality of the request. They specifically ask that the directions hearing take place without the witnesses being summonsed alluding to concerns that their clients wish to explore prior to evidence being taken. This correspondence is at tab 16.

34.    Although I believe that Mr Scott will be able to provide the evidence and documentation sought, the United States does reserve its position generally in relation to further Letter of Request seeking evidence from present officers of Singer & Friedlander and / or Simcocks Trust Limited should that become necessary.

35.    I am also aware that Mr Peck and Mr Scott are no longer employed by Singer & Friedlander. Mr Peck is now employed by Fortis Intertrust and, as I state above, I believe that Mr Scott may have retired.

36.    In the light of Mr Peck's willingness to speak with counsel for the United States and the fact that he appears not to have files relating to this case, the United States does not press for an examination of Mr Peck at this time.

*Conclusion*

37.    I believe that the documents and testimony required under the Letter of Request to this Honourable Court to be necessary and relevant for the purpose of the Massachusetts Proceedings.

38.    I respectfully request that this Honourable Court do make an Order in assistance to the United States District Court, District of Massachusetts, to conduct the examination of Mr Scott in the terms set forth in the said Letter of Request and for the production of the documents particularised therein in the manner sought.

TAKEN and SWORN at

This 3.9 th day of August 2007

Before me:

_Kimberly McGee_

KIMBERLY J. McGEE
Notary Public of District of Columbia
My Commission Expires June 30, 2008

Commissioner for Oaths

:
:
:
:
:
:
:

_John A. Lindgyn III_

CLA 2007 /

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**

**COMMON LAW DIVISION**

**SUPERIOR BUSINESS**

**(EX PARTE)**

IN THE MATTER of the Evidence (Proceedings in Other Jurisdictions) Act 1975 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in Other Jurisdictions) (Isle of Man) Order 1979)

and

**IN THE MATTER** of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund, LLC, by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS

and

**IN THE MATTER** of the **HUMBLE PETITION** of **THE UNITED STATES OF AMERICA** dated 29 August 2007

**EXHIBIT**

This is the Exhibit marked "JAL 1" referred to in the **Affidavit of John A Lindquist**

TAKEN and SWORN at                          :

This 30 th day of August 2007               :

Before me:                                   :

KIMBERLY J. McGEE
Notary Public of District of Columbia
My Commission Expires June 30, 2008        :

Commissioner for Oaths                       :

CLA 2007 /

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**

**COMMON LAW DIVISION**

**SUPERIOR BUSINESS**

**(EX PARTE)**

**IN THE MATTER** of the Evidence (Proceedings in Other Jurisdictions) Act 1975 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in Other Jurisdictions) (Isle of Man) Order 1979)

and

**IN THE MATTER** of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund, LLC, by the Tax Matters Partner, Plaintiff, and United States of America, Defendant, Civil No 05-40151-FDS and 06-40130-FDS

and

**IN THE MATTER** of the **HUMBLE PETITION** of **THE UNITED STATES OF AMERICA** dated 29 August 2007

**AFFIDAVIT OF JOHN A. LINDQUIST**

Dickinson Cruickshank
Advocates & Notaries
33 Athol Street
Douglas
(Ref: U1030.001/CC/CMS)

# Exhibit C



**DICKINSON CRUICKSHANK**

ADVOCATES AND NOTARIES

Your Ref:

Our Ref:    U1030.001/CC/cms

**www.dc.im**

33 Athol Street
Douglas
Isle of Man  IM1 1LB

T 01624 647647
F 01624 620992
E mail@dc.im

Simcocks Trust Limited
Top Floor
14 Athol Street
DOUGLAS
IM1 1JA

02 July 2007

Dear Sirs

**Fidelity International Currency Advisor A Fund, LLC v United States of America**

- **Kilsture Limited**
- **Maddox Limited**
- **Cumberdale Holdings Limited**
- **Trilogy Investments Limited**

We are instructed by the United States Department of Justice to apply to the Isle of Man High Court pursuant to the Evidence (Proceedings in Other Jurisdictions) Act 1975 for evidence to be taken from this jurisdiction relevant to civil proceedings in the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund, LLC, Plaintiff, and United States of America, Defendant, Civil Nos 05–40151-FDS and 06–40130-FDS.

Presently the Massachusetts Court has requested evidence in the form of testimony and documentation to be provided by Mr Nigel Scott (former managing director of Singer & Friedlander and former director of the Companies) and Mr Oliver Peck (as former managing director of Singer & Friedlander). We attach a list of the documentation sought from them which in part relates to the above-referenced Isle of Man companies.

We have asked Mr Scott and Mr Peck whether they are prepared to provide the testimony and documentation sought on a voluntary basis rather than under the 1975 Act procedure. Mr Christopher Arrowsmith of Simcocks Advocates has written to us on behalf of Mr Scott but has not indicated his position in relation to provision of evidence on a voluntary basis or under compulsion.

We understand that the current directors of each company are your Ms Couper-Woods and Mr Karran with Ms McHarrie as alternate and that they, and Simcocks Trust Limited, will hold relevant company documentation. We therefore write to request whether Simcocks Trust Limited, Ms Couper-Woods and Mr Karran will provide the relevant documentation on a voluntary basis, without recourse to a formal procedure under the 1975 Act which may be invoked.

We look forward to hearing from you.

Partners: P D Morris, R A Long, S T H Cain, N B A Verardi, M S Humphrey, J M W Rimmer, C D B Cope, S J Harding, F P Moffett.
Resident Partner: P A F Jakki, S C Watson. Consultants: G O M Moore, S Roberts.



**DICKINSON CRUICKSHANK**
ADVOCATES AND NOTARIES

**Yours faithfully**



**CHRISTOPHER COPE**
**DICKINSON CRUICKSHANK**
Email: cope@dc.im or christineskillicom@dc.im
Direct dial: +44 (0)1624 647618
Direct fax: +44(0)1624 626381

**Enc**

1.  Minutes of each meeting of the directors of Biosphere Finance Ltd, Kilsture Ltd, Maddox Ltd, Cumberdale Investments Ltd (including all subsidiaries), Cumberdale Holdings Ltd, Trilogy Financial Products Ltd, Trilogy Financial Investments Ltd and/or Trilogy Investments Ltd, referencing Fidelity International or its transactions, or any other FDIS "partnership" or any of their respective transactions.

2.  Company resolutions for Singer & Friedlander (Isle of Man), Biosphere Finance Ltd, Kilsture Ltd, Maddox Ltd, Cumberdale Investments Ltd (including all subsidiaries), Cumberdale Holdings Ltd, Trilogy Financial Products Ltd, Trilogy Financial Investments Ltd, and/or Trilogy Investments Ltd, referencing Fidelity International or its transactions, or any other FDIS "partnership" or any of their respective transactions.

3.  Financial statements for Kilsture Ltd, Maddox Ltd, Cumberdale Investments Ltd (including all subsidiaries), Cumberdale Holdings Ltd, Trilogy Financial Products Ltd, Trilogy Financial Investments Ltd and/or Trilogy Investments Ltd.

4.  All outlines of proposed transaction concerning Fidelity International or any other FDIS "partnership".

5.  All account statements and/or communications referencing any of the following four accounts:

    - Sub Account: Singer & Friedlander (Isle of Man) Limited
    - Account No: 30123012
    - Reference: 11270012 (please ensure reference is quoted on payment).

    - Sub Account: Singer & Friedlander Limited
    - Account No: 30123012
    - Reference: The H&M Joint Venture account number 20195700 (please ensure reference is quoted on payment).

    - Sub Account: Singer & Friedlander Limited
    - Account No: 30123012
    - Reference: S&F Client A/C No 11270025 (please ensure reference is quoted on payment).

    - Sub Account: Singer & Friedlander (Isle of Man) Ltd
    - Account No: 30123012

- Reference: Trilogy Investments Limited — account No: 20282910 (please ensure reference is quoted on payment).

6.     All email concerning Fidelity International or any other FDIS "partnership".

7.     All communications from Nigel Scott and/or Oliver Peck to The Diversified Group Inc or its principals or employees including but not limited to James Haber and/or Orrin Tilevitz, concerning Fidelity International or any other FDIS "partnership".

8.     All communications Nigel Scott and/or Oliver Peck to Helios Financial or its principals or employees including but not limited to Mox Tan and/or Phil Kampf, concerning Fidelity International or any other FDIS "partnership".

9.     All communications from Nigel Scott and/or Oliver Peck to Alpha Financial or its principals or employees including but not limited to Ron Buesinger, concerning Fidelity International or any other FDIS "partnership".

10.    All records or payments received by Nigel Scott and/or Oliver Peck from the Diversified Group Inc or its principals or employees including but not limited to James Haber and/or Orrin Tilevitz, relating to Fidelity International or any other FDIS "partnership".

11.    All records of payments received by Nigel Scott and/or Oliver Peck from Helios Financial or its principals or employees including but not limited to Mox Tan and/or Phil Kampf, relating to Fidelity International or any other FDIS "partnership".

12.    All records of payments received by Nigel Scott and/or Oliver Peck from Alpha Financial or its principals or employees including but not limited to Ron Buesinger, relating to Fidelity International or any other FDIS "partnership".

13.    All communications concerning Fidelity International or any other FDIS "partnership" including communications with Samuel Mahoney, Martin Hawkes, and/or Biosphere Finance.

14.    All communications concerning the funding or Biosphere Finance, Samuel Mahoney and/or Martin Hawkes for any person's or entity's participation in Fidelity International or any other FDIS "partnership".

15.    All communications concerning the payment of $2 million to Biosphere Finance, Samuel Mahoney and/or Martin Hawkes.

16.    All communications and/or other documents concerning any "reckoning on fees in relation to fund structures, Irish companies and Trilogy transactions".

17.    All communications and/or other documents, including documents relating to payments, concerning the Collaboration Agreement between the Diversified Group Inc and Trilogy Financial Products Ltd.

18. All communications concerning any contracts between Singer & Friedlander, Nigel Scott, and/or Oliver Peck, and Samuel Mahoney, Martin Hawkes, and/or John Hussey, and Helios Financial, The Diversified Group Inc, Kilsture Ltd, Maddox Ltd, Cumberdale Investments Ltd (including all subsidiaries), Cumberdale Holdings Ltd, Biosphere Finance Ltd, Trilogy Financial Products Ltd, Trilogy Financial Investments Ltd, and/or Trilogy Investments Ltd.

19. Marketing materials for all Helios and/or The Diversified Group Inc transactions in which Messrs Scott and/or Peck participated, including those relating to Fidelity International or any other FDIS "partnership".

20. Contribution agreements for each partnership in which Samuel Mahoney or Martin Hawkes was a purported partner and in which a US taxpayer purchased sets of offsetting options and then transformed the offsetting options to the partnership.

21. Tax returns for each partnership in which Samuel Mahoney or Martin Hawkes was a purported partner and in which a US taxpayer purchased sets of offsetting options and then transferred the offsetting options to the partnership.

22. Contracts between Nigel Scott, Oliver Peck, Singer & Friedlander (n/k/a Kaupthing Singer & Friedlander), Samuel Mahoney, Martin Hawkes, and/or John Hussey, and Helios, The Diversified Group Inc, Kilsture Ltd, Maddox Limited, Cumberdale Investments Ltd (including all subsidiaries), Cumberdale Holdings Ltd, Trilogy Financial Products Ltd, and/or Biosphere Finance Ltd.

23. Loan documents for loans from Kilsture Ltd to Samuel Mahoney.

24. Proof of Samuel Mahoney's repayment of any loans from Kilsture Ltd.

25. Bank records of Kilsture Ltd showing trans-Atlantic payments to or from Kilsture Ltd.