UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 05-40151-FDS (D. Mass.) 06-40130-FDS (D. Mass.) |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## DECLARATION OF BARRY E. REIFERSON

I, Barry E. Reiferson, pursuant to the provisions of 28 U.S.C. §1746, certify as follows:

1.    I am a Trial Attorney with the U.S. Department of Justice, employed in the Tax Division, Northern Region, with a post of duty at Washington, D.C.

2.    I am one of the assigned trial attorneys for defendant United States in this case.

3.    I make this declaration based upon my personal knowledge and the documents referenced herein.

4.    The documents attached as Government Exhibits 21 through 47 are true and correct copies of documents obtained by the United States in discovery in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C., on this 13th day of November 2007.


/s/ Barry E. Reiferson
BARRY E. REIFERSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-6058

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on November 13, 2007.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

| | |
|---|---|
| **From:** | James Haber [jhaber@divgroup.com] |
| **Sent:** | Monday, October 08, 2001 4:13 PM |
| **To:** | Shea, Pat |
| **Cc:** | Stephanie Denby; Fiddy, Carolyn |
| **Subject:** | Re: our trades |

Pat,
Thank you for your good wishes.
Summaries should be on their way to you.  If you do not have them, let me know.  I am
available on the18th, pick a time.  We work with the law firm.
Opinions will be delivered in January.  Have you decided on a law firm.
Choices are: Proskauer Rose LLP, Sidley Austin Brown & Wood LLP, Bryan Cave or Lord
Bissell & Brook.
Jimmy

----- Original Message -----
From: "Shea, Pat" <PatS@cmllc.com>
To: <jhaber@divgroup.com>
Cc: "Fiddy, Carolyn" <Carolyn@cmllc.com>
Sent: Monday, October 08, 2001 11:14 AM
Subject: our trades


>
> Jimmy---
>
> I spoke with Ron this morning and he was running the examples of
> trades
for
> us -- he will forward them to you to reformat them and get them to
> us--
>
> I don't know what effect, if any,  the attack on Aphganistan will have
> on our strategy or timing but we are looking to do the trades Tues or
> Wed--
we
> have wired the $$$ to Refco ---
>
> When will we get the opinion letter and do I have to contact anyone or
will
> you take care of that ??
>
> I will be in NY October 16-18 and have asked  Tim Speiss if the three
> of
us
> can meet on the morning of the 18th -- does that work on your
> schedule--
mid
> morning best for me---
>
> Is there anything else you need from us for this trade this week---
>
> Thanks--
>
> Hope you had a nice trip--
>
> Hope you and yours stay safe in these scary times
>
> pat
>

GOVERNMENT
EXHIBIT

21

Produced By Egan To United States on 6/26/06

**hmartin**

| | |
|---|---|
| **From:** | Fiddy, Carolyn |
| **Sent:** | Monday, October 15, 2001 8:43 AM |
| **To:** | Egan, Mike |
| **Cc:** | Henry, David; Shea, Pat |
| **Subject:** | Stockton Holdings Assignment |

Stephanie Denby and Tim Speiss of KPMG think that the assignment of Stockton Holdings is appropriate with the documentation to show it meets the goals of the new entity.

How do you want to proceed- can you provide a contact name and number for Stephanie to discuss the assignment, or will you do this?

Carolyn

GOVERNMENT
EXHIBIT

**22**

1

Produced By Egan To United States on 6/26/06

019779
2EGAN019779

**hmartin**

**From:** Shea, Pat
**Sent:** Thursday, January 24, 2002 4:32 PM
**To:** 'James Haber'
**Subject:** RE:

Ok--
We'll meet when we get the drafts--
Safe travels to Europe
pat

-----Original Message-----
**From:** James Haber [mailto:jhaber@divgroup.com]
**Sent:** Thursday, January 24, 2002 5:20 PM
**To:** Shea, Pat
**Subject:** Re:

We hope that the two opinions will be available for draft review no later than 2/10. Tim has the closing binder for Helios II. Anything else he needs for the tax return he can coordinate with John Huber of my office. We are waiting for documents to complete Helios I closing binder. Perhaps we should meet right after draft opinions are circulated.

----- Original Message -----
**From:** Shea, Pat

**To:** 'James Haber'
**Sent:** Thursday, January 24, 2002 10:37 AM
**Subject:** RE:

Jimmy--

I am available 1/31 or 2/1 in Boston or after you get back from Europe--there is no urgency on my part--maybe we can wait until the legal letters and books are done-- you make the call--
What I want to discuss / review is :

Should we be looking at any strategies for 2002--
Winding down and completing "Helios 2" making sure all file and docs are complete--including legal opinion letters--
Reviewing "Helios 1" to see if we should be doing anything--status of files and docs--including legal opinion letters
I am being "pitched" private placement insurance for the Egans and would like your thoughts / opinions on the product--(if you have any knowledge on the subject)
Anything else you can think of ???

Have a good trip to Europe--

What is timing of legal opinion letters---
Does Tim Speiss have all he needs to complete the tax returns?

Thanks
pat

-----Original Message-----
**From:** James Haber [mailto:jhaber@divgroup.com]
**Sent:** Wednesday, January 23, 2002 2:26 PM

GOVERNMENT
EXHIBIT
23

058419
6CARRUTH058419

## Carlson, Patricia B.

**From:**    Denby, Stephanie H.

**Sent:**    Wednesday, February 27, 2002 11:34

**To:**    Carlson, Patricia B.

**Subject:** FW: Draft Egan Tax Opinion

The second opinion.

-----Original Message-----
**From:** James Haber [mailto:jhaber@divgroup.com]
**Sent:** Wednesday, February 27, 2002 10:46 AM
**To:** Timothy Speiss; Jim Reiss; Stephanie Denby; Pat Shea
**Subject:** Draft Egan Tax Opinion

Enclosed please find a draft tax opinion for Helios 2 as prepared by Sidley Austin Brown & Wood LLP. We are reviewing it as you are. If you have any questions, please feel free to call.
Jimmy

GOVERNMENT
EXHIBIT
24

2/27/02

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

**Denby, Stephanie H.**

**To:** Jimmy Haber (E-mail)
**Cc:** Shea Patrick (E-mail)
**Subject:** Sidley opinion letter

It appears in the last version that the discussion on tax shelter registration (about page 130) is now missing. Why is that? Are they no longer able to opine on this issue? I am also concerned as to why we are not advised of these changes in a document which I had carefully reviewed prior drafts. It makes me uncomfortable. Perhaps they should provide us with a redline for Irwin's version to the current version.

Stephanie

1

GOVERNMENT
EXHIBIT

25

026160
2EGAN026160

**Denby, Stephanie H.**

**To:**       Shea, Pat
**Subject:**  RE: meetings 3/8

I wanted to give you a heads up that we might not be done with the opinion letters by Friday. These are massive documents and unfortunately require a lot of precise review. We are finding that a lot of the cites are off which will require us to review each cite for accuracy. I will keep you up to date. I will have a better feeling tonight about where we stand.

Stephanie

-----Original Message-----
From: Shea, Pat [mailto:PatS@cmllc.com]
Sent: Friday, March 01, 2002 7:55 AM
To: 'tpspeiss@kpmg.com'
Cc: Denby, Stephanie (Internet); 'jhaber@divgroup.com'; Reiss, James
Subject: meetings 3/8


Tim--

My assistant Elaine is trying to set a time for our meeting in NY on Fri 3/8-- (I would like 10:00am if that works for you)-- I wish to discuss the following items--

Review your workpaper files and write ups for the H2 transactions and to be sure my files are in order and compliment yours

Review H2 tax returns

Review status and ongoing requirements of H1 and tax returns

Review the legal opinion letters from your perspective to be sure they are on point

Finalize the deferred comp opinion letter

Discuss KPMG's position on my engagement letter amendment request

Strategic discussions of KPMG role in our returns--whether we want to be on the "radar" screen in light of Enron scandal and the heat all the big 5 firms will be taking regarding tax shelters

Derive an open item list and assign responsibility for completion

Any other issues you would like to address

Once all the above items are resolved and I am comfortable that we have a handle on the completion of the Helios transactions I will release payment of the outstanding fees

I look forward to a productive meeting with you and wrapping up these transactions and the underlying workpapers

Please e-mail or call to confirm a meeting time

pat

1

GOVERNMENT
EXHIBIT
26

**Shea, Pat**

| | |
|---|---|
| **From:** | Speiss, Timothy P [tpspeiss@kpmg.com] |
| **Sent:** | Friday, March 01, 2002 9:22 AM |
| **To:** | 'Shea, Pat'; Speiss, Timothy P |
| **Cc:** | Denby, Stephanie (Internet); 'jhaber@divgroup.com'; Reiss, James |
| **Subject:** | RE: meetings 3/8 |

*[handwritten: Quarterly Meetings —]*

I can meet on 3/8 at 10 am. I will be prepared to discuss your agenda.

Thanks, Pat. TPS

-----Original Message-----
From: Shea, Pat [mailto:PatS@cmllc.com]
Sent: Friday, March 01, 2002 8:55 AM
To: 'tpspeiss@kpmg.com'
Cc: Denby, Stephanie (Internet); 'jhaber@divgroup.com'; Reiss, James
Subject: meetings 3/8


Tim--

My assistant Elaine is trying to set a time for our meeting in NY on Fri
3/8-- (I would like 10:00am if that works for you)-- I wish to discuss the
following items--

Review your workpaper files and write ups for  the H2 transactions and to be
sure my files are in order and compliment yours  *[handwritten: Tim will get my wp Files]*

*[handwritten: im will do our business]*
Review H2 tax returns  *[handwritten: Will get Jim Haber Returns - Will get Returns for Stephanie]*
*[handwritten: Jim will do extensions]*
Review status and ongoing requirements of H1 and tax returns  *[handwritten: will be forwarded to me wed my 3-11]*

Review the legal opinion letters from your perspective to be sure they are
on point  *[handwritten: w Stephanie over phone]*

Finalize the deferred comp opinion letter

Discuss KPMG's position on my engagement letter amendment request  *[handwritten: Red lined as a tax return engagement if there is no KPMG internal list on this is a tax transaction only and not a listed transaction around to Irs Listing n/m]*

Strategic discussions of KPMG role in our returns--whether we want to be on
the "radar" screen in light of Enron scandal and the heat all the big 5
firms will be taking regarding tax shelters  *[handwritten: They will sign if we want them to]*

Derive an open item list and assign responsibility for completion

Any other issues you would like to address

Once all the above items are resolved and I am comfortable that we have a
handle on the completion of the Helios transactions I will release payment
of the outstanding fees

I look forward to a productive meeting with you and  wrapping up these
transactions and the underlying workpapers

Please e-mail or call to confirm a meeting time

pat
***********************************************************
The information in this email is confidential and may be legally privileged.
It is intended solely for the addressee. Access to this email by anyone else
is unauthorized.

If you are not the intended recipient, any disclosure, copying, distribution
or any action taken or omitted to be taken in reliance on it, is prohibited

1

GOVERNMENT
EXHIBIT
27

013773

**Spruck, Stephen J**

| | |
|---|---|
| **From:** | Speiss, Timothy P |
| **Sent:** | Tuesday, March 12, 2002 11:16 PM |
| **To:** | Spruck, Stephen J; Lipschultz, Brent S |
| **Subject:** | FW: Comments re Helios 2 opinion letter |



Fidelity2001
IVESTMENT PLAN.D

                FYI.

We need to update the tax returns - send copies to Stephani Denby, Egan legal counsel.

I will look at the H1 (Sec 754) transaction and returns on 3/16.

Are there any extensions due 3/15 ?

TPS

-----Original Message-----
From: Speiss, Timothy P
Sent: Tuesday, March 12, 2002 11:12 PM
To: 'SDENBY@burkelaw.com'
Subject: Comments re Helios 2 opinion letter


Stephanie,

1. I drafted a detailed narrative (attached below) outlining the business purpose of the
investment. I suggest we insert all (or a portion) in the opinion on page 1, starting the
section: I. The Transactions A. Investment Purpose and International LLC.

let me know your thoughts.

Opinion comments -

2. Page 4 Manager capital share should be 0.14 (add 0), as is Alpha (see grid)

3. Page 6 Total of ($ 567,193) should be ($ 3,367,663) - see Grid

4. Section IV. 4. Page 20 - 2. The Options as separate Instruments - I suggest citing
specific attributes of the options (or certain of the options), as examples why Smith v.
Comm'r 78 T.C. 350 (1982) and the other citations support the opinion that the Options
would be treated as separate instruments (i.e., dissimilar).

5. Page 45 - advisory fees - we are capitalizing fees to the LLC interests and to the
acquisition cost of the options on the 2001 tax returns. We completed this capitalization
exercise and discussed this treatment internally at KPMG and thus request that the opinion
include laguage that would support capitalizing advisory fees to the cost of the
investment property acquired, in addition to the current language that speaks primarily to
advisory fees bveing included in the basis of Investor's interest in International.

6. Starting at page 60, a reference to the attached narrative would help document
Investor's business purpose

7. Starting at page 104, add comments addressing how the capitalization, ownership and
continued investment participation demontrates the MLTN acknowledgement of Internationl as
a valid partnership, considering also profit sharing. Expanding upon Culbertson, using
International's facts, may be useful. Same wrt arguing anti-Sec 482 imposition.

8. Add commentary that there is income upon the closing of the options (i.e., that it is

                                          1

GOVERNMENT
EXHIBIT

28

002056
1EGAN002056

Produced by Richard Egan to United States on 4/27/06

not a Sec 704(c) item) and would not give rise to a taxable event to our client. In this case, the tax opinions we observed cite no Sec 752 liability is recognized upon contribution of the spread options to the partnership, however we want to address how the client investor, after any loss recognition which would reduce their basis in the partnership, would also not have taxable income recognition upon the closing (settling or closing) of the short option inside the partnership (thus refuting a potential IRS assertion that there is a client recapture of the loss allocated due to a claw back of the basis on the long position, where the tax basis in the long position was not reduced upon the closing of the short option obligation).

9. Sec 752 was addressed (Helmer - no Sec 752) - add comments why IRC Sec 358 should not apply, for instance applicable to corporations, no regs for partnerships exist.

10. I am going to look through the opinion again (typos, other matters), but generally the opinion is well done and addresses the issues we have been discussing since 7/2001.

Thanks Stephanie.

Let me know if you want to discuss any of these matters.

2

002057

1EGAN002057

Produced by Richard Egan to United States on 4/27/06

**hmartin**

| | |
|---|---|
| **From:** | SDENBY@burkelaw.com |
| **Sent:** | Thursday, March 14, 2002 12:04 PM |
| **To:** | jhaber@divgroup.com |
| **Cc:** | pats@cmllc.com; tpspeiss@kpmg.com |
| **Subject:** | RE: |

I am done. I just got Tim's for the 2nd opinion (Sidley). I had understood that he was still reviewing it. Based on an email I got this morning I am assuming that he has completed his review. I will integrate them and send tomorrow. I have not seen anything from KPMG on the first opinion.

Stephanie

> -----Original Message-----
> **From:** James Haber [mailto:jhaber@divgroup.com]
> **Sent:** Thursday, March 14, 2002 11:48 AM
> **To:** Stephanie Denby
> **Cc:** Pat Shea
> **Subject:**
>
> Can you give me an idea of when I can expect your comments on both Fidelity opinions?
>
> Thank you.

GOVERNMENT
EXHIBIT
29

026168
2EGAN026168

**Denby, Stephanie H.**

| | |
|---|---|
| **From:** | Orrin Tilevitz [otilevitz@divgroup.com] |
| **Sent:** | Friday, March 15, 2002 2:05 PM |
| **To:** | Ruble R.J. |
| **Cc:** | Denby, Stephanie; Haber Jimmy |
| **Subject:** | Egan |



opinion--egan.doc

RJ:

Attached is the Egan opinion, redlined against your most recent version to reflect changes (I think all of them) proposed by the Egans' lawyer, Stephanie Denby.  Most of the changes are nits, except for some substantive additions to the reps (and the reasoning based thereon) and a couple of changes necessitated by the fact that the LLC's manager is not Helios by the Egans' son.

If you disagree with any of these changes, please call me ASAP to discuss and if necessary we'll conference in Stephanie.

1

GOVERNMENT EXHIBIT

30

037324

---

**From:**     James Haber [jhaber@divgroup.com]
**Sent:**     Thursday, March 28, 2002 2:47 PM
**To:**       Shea, Pat
**Cc:**       Denby, Stephanie (Internet)
**Subject:** Re: Helios 2

While I respect your desire for a thorough review of the opinion, the opinion has been issued in final (to the extent you find further changes I'm sure the law firm will be cooperative) and I feel that payment for Helios 2 should be forthcoming at this time.  Further delays at this point I do not believe to be appropriate.

----- Original Message -----
**From:** Shea, Pat
**To:** 'James Haber'
**Cc:** Denby, Stephanie (Internet)
**Sent:** Thursday, March 28, 2002 1:51 PM
**Subject:** RE: Helios 2

Jimmy--

Sorry I didn't get back to you yesterday but I was in Indianapolis on business--payment will be made as soon as we finish reviewing the opinion letters-- things are blowing up here around our 4/15 deadline and I haven't had a chance to review the final draft-- I feel a careful review is critical in light of the changes that were made on the last final draft-- I want to be sure we are comfortable with the wording--

pat

-----Original Message-----
**From:** James Haber [mailto:jhaber@divgroup.com]
**Sent:** Wednesday, March 27, 2002 10:14 AM
**To:** Pat Shea
**Subject:** Helios 2

Do you know when we can expect payment on Helios 2?
Thanks.
Jimmy

3/28/2002



GOVERNMENT
EXHIBIT

31

Produced By Egan To United States on 6/26/06

023576
2EGAN023576

**Div**

---

| | |
|---|---|
| **From:** | "James Haber" <jhaber@divgroup.com> |
| **To:** | "Pat Shea" <PatS@cmllc.com> |
| **Sent:** | Thursday, April 04, 2002 11:44 AM |
| **Subject:** | Re: Sidley |

Pat, can you return the opinion to me also?

Jimmy

----- Original Message -----
From: <SDENBY@burkelaw.com>
To: <jhaber@divgroup.com>
Cc: <pats@cmllc.com>
Sent: Thursday, April 04, 2002 11:03 AM
Subject: Sidley


> The revised page looks fine.
>
> I will send back the prior opinion.
>
> Stephanie
>

**DGI 77572**

GOVERNMENT
EXHIBIT

32

12/21/2004

PRODUCED BY DIVERSIFIED TO UNITED STATES ON 10/03/06

1DGI-09-54-105208

**Denby, Stephanie H.**

| | |
|---|---|
| **From:** | Shea, Pat [PatS@cmllc.com] |
| **Sent:** | Thursday, October 30, 2003 3:52 PM |
| **To:** | Denby, Stephanie (Internet) |
| **Subject:** | FW: 2001 Transaction Update |

look what i found !!!!

*[handwritten: File KPMG correspondence]*

-----Original Message-----
From: Shea, Pat
Sent: Monday, February 25, 2002 1:59 PM
To: 'Speiss, Timothy P'
Subject: RE: 2001 Transaction Update


I will be in NY 3/7 and 3/8--- can we meet to review-- I am meeting Jimmy
Haber on 3/7 afternoon-- does that fit your schedule?
Let me know--
Thanks
pat

    -----Original Message-----
From:    Speiss, Timothy P [mailto:tpspeiss@kpmg.com]
Sent: Monday, February 25, 2002 1:40 PM
To:    'Shea, Pat'
Subject:    RE: 2001 Transaction Update

Pat, I want to discuss status with you. We also need to discuss documenting
this information, as we have previously discussed.

1. Our services are not being maintained on any KPMG lists.
2. As a result of 1., there is no information from KPMG lists that would be
submitted to the IRS.
3. The tax opinion will state the investment is not a listed transaction

Thanks Pat.
************************************************************************
*
The information in this email is confidential and may be legally privileged.
It is intended solely for the addressee. Access to this email by anyone else
is unauthorized.

If you are not the intended recipient, any disclosure, copying, distribution
or any action taken or omitted to be taken in reliance on it, is prohibited
and may be unlawful. When addressed to our clients any opinions or advice
contained in this email are subject to the terms and conditions expressed in
the governing KPMG client engagement letter.
************************************************************************
*

1

**GOVERNMENT EXHIBIT**

**33**

048198
2CARRUTH048198

**Denby, Stephanie H.**

| | |
|---|---|
| **From:** | Speiss, Timothy P [tpspeiss@kpmg.com] |
| **Sent:** | Wednesday, June 26, 2002 6:10 PM |
| **To:** | 'SDENBY@burkelaw.com' |
| **Subject:** | RE: disclosure |

Let's speak, since as of today, me and certain law firms I spoke with are of
the view no disclosure is required and the transaction is distinguishable
from listed transactions (as the opinions stated). This is the discussion I
had with Pat Shea on 6/24, I want to update him as well.

Further, as of today, there are no specific penalty regimes wrt
non-disclosure however the 25% accuracy related most likely would be
asserted.

Finally, I advise and have told my colleagues the individual tax returns
should be filed as soon as possible. We can speak now if you are able.

TPS
*********************************************************************
The information in this email is confidential and may be legally privileged.
It is intended solely for the addressee. Access to this email by anyone else
is unauthorized.

If you are not the intended recipient, any disclosure, copying, distribution
or any action taken or omitted to be taken in reliance on it, is prohibited
and may be unlawful. When addressed to our clients any opinions or advice
contained in this email are subject to the terms and conditions expressed in
the governing KPMG client engagement letter.
*********************************************************************

1

**GOVERNMENT
EXHIBIT
34**

PRODUCED BY RICHARD EGAN TO UNITED STATES ON 7/24/06

036396

**3EGAN036396**

**Denby, Stephanie H.**

| | |
|---|---|
| **From:** | Speiss, Timothy P [tpspeiss@kpmg.com] |
| **Sent:** | Friday, August 02, 2002 11:14 AM |
| **To:** | 'SDENBY@burkelaw.com' |
| **Subject:** | FW: 1508264v3.DOC |


**1508264v.DOC**

Stephanie,

Hello. I hope you are well.

As prepared by the Proskauer Rose law firm, please see the attached draft
disclosure opinion letter for Mr. Egan.

Please call me after your review and we can discuss comments.

Regards,

TPS
212-872-7901

*********************************************************************
The information in this email is confidential and may be legally privileged.
It is intended solely for the addressee. Access to this email by anyone else
is unauthorized.

If you are not the intended recipient, any disclosure, copying, distribution
or any action taken or omitted to be taken in reliance on it, is prohibited
and may be unlawful. When addressed to our clients any opinions or advice
contained in this email are subject to the terms and conditions expressed in
the governing KPMG client engagement letter.
*********************************************************************

1

GOVERNMENT
EXHIBIT

35

037622

PRODUCED BY CARRUTH TO UNITED STATES ON 8/25/06          1CARRUTH037622

**THE DIVERSIFIED GROUP INCORPORATED**

950 THIRD AVENUE, 23RD FLOOR, NEW YORK, NEW YORK 10022    TEL: (212) 688-2700    (800) 841-1132    FAX: (212) 688-7908

**Via Airborne**

January 7, 2002

Mr. Mike Egan
c/o Carruth Management LLC
87 Elm Street
Hopkinton, MA 01748

Dear Mike:

Enclosed please find a closing binder for the transaction you have recently consummated with us.   We will be forwarding you a tax opinion under separate cover.

Thank you for allowing us the opportunity to work with you.

Sincerely,

James Haber
President

/dc

ENC:

cc:  R.J. Ruble, Esq.
     Ivan Ross, Alpha
     Stephanie Denby, Esq.
     Tim Speiss, KPMG

X 018540

GOVERNMENT
EXHIBIT

36

001544
1EGAN001544



# Sachnoff & Weaver, Ltd.

Attorneys at Law

30 South Wacker Drive • 29th Floor • Chicago, Illinois 60606-7484

Telephone (312) 207-1000

David C. Bohan
(312) 207-3880
dbohan@sachnoff.com

August 28, 2003

Facsimile (312) 207-6400
www.sachnoff.com

## PRIVILEGED AND CONFIDENTIAL

### VIA FACSIMILE AND OVERNIGHT COURIER

Mr. Steven L. Gremminger
Associate General Counsel
KPMG LLP
280 Park Avenue – 8th floor
New York, NY 10017

      Re:    <u>Engagement Letter dated September 27, 2001</u>

Dear Mr. Gremminger:

    We are legal counsel to KPMG LLP's "Client" as defined under a certain "private and confidential" engagement letter dated September 27, 2001 executed by KPMG partner Timothy Patric Speiss.

    We have been advised that KPMG may be considering a possible disclosure, in response to a summons or summonses issued by the Internal Revenue Service, of information that will reveal confidential communications between Client and KPMG that are privileged under 26 U.S.C § 7525. The Engagement Letter expressly memorializes Client's instruction to KPMG "to claim the privilege on Client's behalf, with respect to any communications" that are subject to privilege under Section 7525. (<u>See</u> Paragraph 6 of the appended Standard Terms and Conditions.)

    KPMG's express obligation to protect Client's statutory privilege continues "until such time as Client may waive any such privilege in writing." Client has never made any such waiver and expressly reaffirms herein its continuing directive to KPMG to assert Client's privilege under Section 7525 with respect to all communications between Client and KPMG that relate to Client's engagement of KPMG under the Engagement Letter or KPMG's provision of tax services to Client thereunder. In this case, the privilege under Section 7525 protects from disclosure, among other things, any information concerning Client's identity. Under the circumstances of Client's engagement of KPMG, and given the scope of the IRS summons(es) as we understand the scope to be, any disclosure of Client's identity will necessarily disclose, in effect, the content of its confidential communications with KPMG.

GOVERNMENT
EXHIBIT

37

BWMS 04957

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

1BWMS04957



# Sachnoff & Weaver, Ltd.
### Attorneys at Law

Mr. Steven L. Gremminger
August 28, 2003
Page 2

Client has at all times deemed its engagement of KPMG and each of its communications with KPMG to be strictly confidential and has at all times reasonably expected KPMG to maintain the confidentiality. Among other things, the Engagement Letter, by its express terms, was labeled "PRIVATE & CONFIDENTIAL." As noted, it also expressly referenced the privilege under Section 7525 and documented KPMG's pledge to assert the privilege to all applicable communications. In addition, Client obtained KPMG's written assurance that its services rendered under the Engagement Letter were not required to be disclosed on its Engagement Information Form and had not been so disclosed, and client obtained tax opinions from Sidley Austin, Brown & Wood LLP indicating that the transactions were not "tax shelters" subject to the registration requirements of 26 U.S.C § 6111.

Moreover, KPMG never completed the tax services it expressly promised to perform under the Engagement Letter inasmuch as it did not sign all Client tax returns for the year at issue. Under these circumstances, it is unclear how KPMG would know what tax benefits Client realized or tried to claim in connection with the transactions proposed under the Engagement Letter, or on what basis KPMG could disclose information relating to Client in response to any IRS summons.

KPMG's failure to protect privileged and confidential communications between Client and KPMG may cause Client to incur legal fees and expenses and to suffer damages for which KPMG will be legally responsible.

Please advise us at your earliest opportunity whether KPMG has disclosed or intends to disclose any information relating to Client, the nature of such information and disclosures, and what measures KPMG has taken or intends to take to protect information relating to Client from disclosure.

Very truly yours,

David C. Bohan

DCB/del
cc:    Mr. David E. Lieberman

BWMS 04958

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

1BWMS04958

**Sachnoff & Weaver, Ltd.**

Attorneys at Law

Mr. Steven L. Gremminger
August 28, 2003
Page 3

bcc:    Mr. Patrick W. Shea
        Ms. Stephanie H. Denby

BWMS 04959

1BWMS04959

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | 787 SEVENTH AVENUE | LOS ANGELES |
| BRUSSELS | NEW YORK, NEW YORK 10019 | NEW YORK |
| CHICAGO | TELEPHONE 212 839 5300 | SAN FRANCISCO |
| DALLAS | FACSIMILE 212 839 5599 | SHANGHAI |
| GENEVA | www.sidley.com | SINGAPORE |
| HONG KONG | FOUNDED 1866 | TOKYO |
| LONDON | | WASHINGTON, D.C. |

Mr. Richard J. Egan
87 Elm Street
Hopkinton, MA 01748

October 2, 2003

Dear Mr. Egan:

Sidley, Austin, Brown & Wood LLP ("SAB&W"), successor to Brown & Wood LLP, has been served with summonses by the Internal Revenue Service requiring it to provide, among other things, the names of clients to whom Brown & Wood provided opinions in connection with certain transactions. Our records indicate that you are one of those former Brown & Wood clients.

The United States Court of Appeals for the Seventh Circuit, in a case involving similar summonses to an accounting firm, has required, in the circumstances of that case, the identification to the IRS of clients who participated in certain transactions. US v. BDO Seidman, Nos. 012-3914, 5 (July 23, 2003). We believe that this and other recent rulings significantly undermine any argument that the identities of former Brown & Wood clients sought by the IRS from SAB&W are protected from disclosure to the IRS. We also understand that documents sufficient to identify persons who engaged in the transactions you were involved in have already been disclosed to the IRS by others.

Accordingly, SAB&W will provide the names and addresses of you and others to the IRS pursuant to its summonses. We intend to do so on October 13, 2003.

We strongly recommend that you immediately consult with your tax advisor and regular legal counsel regarding this letter.

Very truly yours,

SIDLEY AUSTIN BROWN & WOOD LLP

GOVERNMENT
EXHIBIT
38

BWMS 03812

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

1BWMS03812

# Sachnoff & Weaver, Ltd.

Attorneys at Law

30 South Wacker Drive · 29th Floor · Chicago, Illinois 60606-7484

Telephone (312) 207-1000

*Fol. Kemb Libger* (handwritten)

David C. Bohan
(312) 207-3880
dbohan@sachnoff.com

Facsimile (312) 207-6400
www.sachnoff.com

October 8, 2003

*PRIVILEGED AND CONFIDENTIAL*

<u>**Via Facsimile and First Class Mail**</u>

Thomas R. Smith, Jr.
Vice Chairman of the Management Committee
Sidley Austin Brown & Wood LLP
787 Seventh Avenue
New York, NY 10019

> **Re:**   *Correspondence to Richard J. Egan from Sidley Austin Brown & Wood
> Dated October 2, 2003*

Dear Mr. Smith:

I am writing as counsel to Richard J. Egan in response to your firm's letter to Mr. Egan dated October 2, 2003 (the "Letter").

*First*, the Letter states that, according to your firm's records, Mr. Egan is a former client of Brown & Wood. In fact, however, it was Sidley Austin Brown & Wood, the successor to Brown & Wood, which on March 8, 2002 issued a formal written opinion to Mr. Egan regarding the tax consequences of certain transactions described therein. Thus, to the extent that your firm is responding to an IRS summons requesting information pertaining to former clients of Brown & Wood, I respectfully suggest that you consult the summons again to determine whether it applies to documents identifying Mr. Egan.

*Second*, in order to advise Mr. Egan regarding the subject of the Letter, I will need to inspect and/or copy the summons(es) pursuant to which your firm intends to disclose his identity to the IRS. If you are unwilling to permit such inspection and/or copying, please provide me at once with the date of the summons(es), the date upon which production is demanded and the text of the paragraph(s) that you believe call for the disclosure of Mr. Egan's identity.

*Third*, Mr. Egan was led to believe that the transactions in which he participated were specially designed and customized for his particular economic circumstances. If others "engaged in the transactions [Mr. Egan was] involved in," as the Letter suggests, please state

GOVERNMENT
EXHIBIT
39

048182
2CARRUTH048182

**Sachnoff & Weaver, Ltd.**
Attorneys at Law

Thomas R. Smith, Jr.
October 8, 2003
Page 2


how many others were so engaged, and whether their identities have been or will be disclosed to the IRS.

*Fourth,* I presume that any appropriate objections and/or privileges that your firm is still asserting on behalf of other clients will continue to be asserted on behalf of Mr. Egan as well. If this is not the case, please tell me so.

*Fifth,* the Letter twice describes Mr. Egan as a "former" client. As current counsel for Mr. Egan, it would be helpful for me to understand when and under what circumstances your firm's representation of him ceased. Please let me know whether you are willing to furnish that information.

I await your immediate response.

Sincerely,

David C. Bohan

DCB:drp
609570

cc:    R.J. Ruble

PRODUCED BY CARRUTH TO UNITED STATES ON 9/25/06

**Sachnoff & Weaver, Ltd.**

Attorneys at Law

Thomas R. Smith, Jr.
October 8, 2003
Page 3

bcc:   Patrick W. Shea
       Stephanie H. Denby
       David E. Lieberman

PRODUCED BY CARRUTH TO UNITED STATES ON 9/25/06

048184
2CARRUTH048184

# SIDLEY AUSTIN BROWN & WOOD LLP

BEIJING

BRUSSELS

CHICAGO

DALLAS

GENEVA

HONG KONG

LONDON

BANK ONE PLAZA
10 S. DEARBORN STREET
CHICAGO, ILLINOIS 60603
TELEPHONE 312 853 7000
FACSIMILE 312 853 7036
www.sidley.com

FOUNDED 1866

LOS ANGELES

NEW YORK

SAN FRANCISCO

SHANGHAI

SINGAPORE

TOKYO

WASHINGTON, D.C.

WRITER'S DIRECT NUMBER
(312) 853-7780

WRITER'S E-MAIL ADDRESS
msweeney@sidley.com

January 27, 2004

<u>Via Telecopy (207-6400) and U.S. Mail</u>
David C. Bohan
Sachnoff & Weaver, Ltd.
30 South Wacker Drive
29th Floor
Chicago, IL 60606-7484

Re: <u>Notice to Former Clients in John Doe Summons Enforcement Proceeding</u>

Dear Mr. Bohan:

I have received your letter of January 22, 2004 on behalf of Richard J. Egan. We have reviewed our files relating to this former client of ours in light of the representations made in your letter on his behalf, as well as the January 13, 2004 Court Order that required us to send the notice to which your letter responds. We have concluded that it appears that Mr. Egan arguably is not within the scope of Attachment A to the January 13 Court Order. We will therefore not disclose his identity to the government under paragraph 3 of the January 13 Court Order, nor will we produce a redacted version of your letter to the government under paragraph 5 of that Court Order. Because Mr. Egan's identity nonetheless appears to be within the scope of what is sought by the government in the action in which that Court Order was entered, it may be the subject of further proceedings in this matter. We have expressed, both to the government and to the Court, our fundamental disagreement with the government's characterization of what we did in connection with the matters on which it is seeking this discovery as the "organization" or "sale" of transactions.

Very truly yours,

Michael J. Sweeney

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

**GOVERNMENT EXHIBIT**

**40**

PAGE. 02

18

PRODUCED BY CARRUTH TO UNITED STATES ON 11/13/06

052096

4CARRUTH052096

# Sachnoff & Weaver, Ltd.

Attorneys at Law

30 South Wacker Drive • 29th Floor • Chicago, Illinois 60606-7484

Telephone (312) 207-1000

David E. Lieberman
(312) 207-6475
dlieberman@sachnoff.com

Facsimile (312) 207-6400

www.sachnoff.com

March 8, 2004

VIA U.S. MAIL AND ELECTRONIC MAIL

Mr. James J. Sabella
Sidley Austin Brown & Wood LLP
787 Seventh Avenue
New York, New York 10019

Dear Mr. Sabella:

Enclosed please find a fully executed copy of the tolling agreement among Richard J. Egan, Carruth Management LLC, Carruth Associates LLC, and Sidley Austin Brown & Wood LLP, bearing David Bohan's original signature.

Very truly yours,

SACHNOFF & WEAVER, LTD.

By: _David E. Lieberman_

DEL/rlp
Enclosure
cc:    Mr. David C. Bohan (with enclosure)

GOVERNMENT
EXHIBIT

41

048488
2CARRUTH048488

## TOLLING AGREEMENT

This Tolling Agreement (the "Agreement") is made and entered into as of this 30th day of January, 2004 (the "Agreement Date"), by and between Richard J. Egan, Carruth Management LLC and Carruth Associates LLC ("Egan"), on the one hand, and Sidley Austin Brown & Wood LLP ("Sidley") on the other hand.

**WHEREAS**, Sidley provided an opinion, dated March 8, 2002, regarding the federal income tax consequences of certain investment transactions involving Egan, as more fully described in the opinion (hereinafter referred to as the "Opinion");

**WHEREAS**, Egan alleges that he may have suffered damages as a result of the Opinion, the transactions to which it relates, and alleged disclosure of confidential information relating to his engagement of Sidley to provide the Opinion, which claim Sidley denies;

**WHEREAS**, in order to preserve claims Egan may assert against Sidley, without admitting any alleged liability, the parties desire to toll all applicable statute of limitations to extend the time available to permit a possible resolution of the issues and/or any claims against Sidley associated with the Opinion.

**NOW, THEREFORE**, in consideration of the mutual promises of the parties contained herein, the parties hereby agree as follows:

1.    The time period extending from the Agreement Date until the date this Agreement expires in accordance with its terms shall not be counted in determining the applicability of any statute of limitations, statute of repose, laches or other time-based defense in any action against Sidley or its predecessor, Brown & Wood LLP, with respect to any claims Egan or any of his successors or assigns may now have or in the future may have arising from or related in any way to the Opinion or the alleged disclosure of confidential information relating to his engagement of Sidley to provide the Opinion.

2.    This Agreement shall remain in force and effect until the earlier of January 30, 2006, or until sixty (60) days after any party hereto provides written notice of withdrawal from this Agreement. Neither party shall commence any litigation against the other relating to the Opinion during the term of this Agreement without first providing at least 30 days written notice to the other. In the event that Egan commences a civil action against Sidley arising out of or otherwise related to the Opinion, Sidley agrees it will not plead, argue or otherwise assert that any of the time during which this Agreement was in effect should be included in the calculation of any time limit or limitation period, including but not limited to any limits imposed by federal or state law or by contract, that might otherwise be applicable to such civil action, or provide the basis for any time-based defense.

3.    This Agreement shall be construed in all respects as jointly drafted, and shall not be construed in any way against any other party hereto on the grounds that the party was the drafter of this Agreement.

PRODUCED BY CARRUTH TO UNITED STATES ON 9/25/06

048489
2CARRUTH048489

4.    The parties to this Agreement agree that it shall remain confidential among them, and neither this Agreement nor the fact that it is made shall be disclosed by them or by their representatives to any third party for a period of ten (10) years, except that the parties acknowledge that this Agreement can be disclosed to a Court for the purpose of establishing, defending or interpreting the terms of this Agreement. Notwithstanding this provision, Egan may discuss the Agreement with members of the Egan family and the Parties may provide copies of this Agreement to their attorneys, accountants, and to their insurance carrier(s), including agents and attorneys of such insurance carrier(s).

5.    Nothing in this Agreement shall constitute or be construed as an admission by either Party or evidence that any claim could properly be asserted against it by the other Party or that any such claim would have any basis in law or in fact. Except as expressly provided in this agreement with respect to time-based defenses, this Agreement is not intended to and shall not have any effect upon any defense that either Party may assert to any claim brought by the other Party. Subject to the last sentence of Section 2 above, nothing in this Agreement shall be or be construed as an admission by either Party regarding whether or when any statute of limitations, laches or other time-based defense has or has not begun to run on any potential claim or whether or not any potential claim is or is not already barred, impaired or limited by the passage of time.

6.    This Agreement shall be governed in all respects by the laws of the State of New York in effect at the time of its execution, without reference to its choice of law rules. Nothing herein shall be taken to imply that any party has agreed to the jurisdiction of any court or arbitration, or to the application of any laws of any particular jurisdiction, to any dispute between the parties except as specifically set forth in this paragraph.

7.    This Agreement may not be amended or modified, except if done in writing and executed by all parties hereto.

8.    Notice required or permitted under this Agreement shall be in writing and shall be deemed duly delivered upon personal delivery or as of three (3) days after depositing in the United States mail, certified mail, return receipt requested, postage prepaid, or as of the first business day after depositing such notice with a nationally recognized overnight courier service, expenses prepaid, addressed as follows:

For:    Richard Egan, Carruth Management LLC and Carruth Associates LLC

David C. Bohan, Esq.
Sachnoff & Weaver, Ltd.
30 South Wacker Drive, 29th fl.
Chicago, Illinois 60606-7484

and

2

PRODUCED BY CARRUTH TO UNITED STATES ON 9/25/06

048490
2CARRUTH048490

Patrick W. Shea
Chief Operating Officer
Carruth Associates LLC
116 Flanders Road
Suite 3000
Westborough, Massachusetts 01581

For:    Sidley Austin Brown & Wood LLP

James J. Sabella, Esq.
Sidley Austin Brown & Wood LLP
787 Seventh Avenue
New York, New York 10019

10.    The Parties agree to execute and deliver such other and further documents and perform such other acts as shall be necessary to effectuate the purpose of this Agreement.

11.    This Agreement may be executed in counterpart originals, each of which shall be deemed to be an original by all parties signatory to the counterpart.

12.    The Parties shall preserve until at least one year beyond the expiration of this Agreement all documents in their possession, custody or control relating directly and specifically to Sidley's disclosure of Richard Egan's identity to the Internal Revenue Service or the United States Department of Justice, or relating to the Opinion or to Sidley's role, if any, as an organizer or seller of any transaction addressed in the Opinion.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the date first above written.

Richard J. Egan

By _____
David C. Bohan, Esq.
Counsel

Carruth Management LLC

By _____
David C. Bohan, Esq.
Counsel

3

PRODUCED BY CARRUTH TO UNITED STATES ON 9/25/06

048491

2CARRUTH048491

Carruth Associates LLC

By _____
      David C. Bohan, Esq.
      Counsel


Sidley Austin Brown & Wood LLP

By _____
      James J. Sabella, Esq.
      Partner

4

NY1 5500902v1

PRODUCED BY CARRUTH TO UNITED STATES ON 9/25/06

048492
2CARRUTH048492

MEMO RE. Due Diligence Helios Financial LLC

TO· file
FROM: Pat Shea
DATE: July 21, 2000

Objective – before entering in to a significant transaction with Helios as a facilitator we wanted reasonable assurance they were experienced in transactions of this size and could handle our deal.

References—

KPMG- John Schrier, Partner has worked with Jim Haber for several years.  He assured me that :
Helios has handled deals this size.
They have a great reputation in the field.
They have the necessary financing relationships.
KPMG did an internal background check on them. He could not provide me a copy but assured me that it was a very favorable report.  KPMG does an extensive check in to the business practices and personal backgrounds of businesses that they partner with.They found that Jim Haber had some litigation against him as a result of a messy divorce. KPMG was not too concerned because it was personal and brought by disgruntled ex-spouse.
 In late 80's early 90's litigation was brought against Haber by unhappy participant in a tax shelter deal that went sour. Everyone involved was sued (including Jim Haber). The suit was dropped and determined without merit.
Jim is involved in another business Diversified Partners that runs similar deals.
He has a second company because he has different partners. My references were positive for either entity and Jim Haber individually.

Redacted

I spoke w Jordan Dickstein of Paine Webber in NY who has handled some deals with Helios and Haber
Very efficient
Very reliable organization

GOVERNMENT
EXHIBIT
42

036036

3EGAN036036

MEMO RE. Due Diligence Helios Financial LLC

TO· file
FROM: Pat Shea
DATE: July 21, 2000

Objective – before entering in to a significant transaction with Helios as a facilitator we wanted reasonable assurance they were experienced in transactions of this size and could handle our deal.

References—

KPMG- John Schrier, Partner has worked with Jim Haber for several years. He assured me that :
Helios has handled deals this size.
They have a great reputation in the field.
They have the necessary financing relationships.
KPMG did an internal background check on them. He could not provide me a copy but assured me that it was a very favorable report. KPMG does an extensive check in to the business practices and personal backgrounds of businesses that they partner with.They found that Jim Haber had some litigation against him as a result of a messy divorce. KPMG was not too concerned because it was personal and brought by disgruntled ex-spouse.
 In late 80's early 90's litigation was brought against Haber by unhappy participant in a tax shelter deal that went sour. Everyone involved was sued (including Jim Haber). The suit was dropped and determined without merit.
Jim is involved in another business Diversified Partners that runs similar deals.
He has a second company because he has different partners. My references were positive for either entity and Jim Haber individually.

Stephanie made a couple of calls to Bank Of America and received glowing reports.
Highly reputable
Well respected in financial circles
High level of integrity

She also spoke with an attorney that has done some legal work on one of their transactions and was told they performed everything they promised and the deal took place without a hitch.

She felt a comfort level with them based on the information that we had  and the fact  that we got them through KPMG.

I spoke w Jordan Dickstein of Paine Webber in NY who has handled some deals with Helios and Haber
Very efficient
Very reliable organization



GOVERNMENT
EXHIBIT
43

036036

PRODUCED BY EGAN TO UNITED STATES ON 10/09/07    13CARRUTH036036

**Denby, Stephanie H.**



To:                     James Haber
Subject:                RE: Update

Jim's point is that he doesn't want Fidelity to collapse as a single member LLC into MEE holdings. He wants KPMG to file a separate return for Fidelity so that the accounting doesn't come back to Carruth on the Holdings level. That being the case, I think it makes sense to keep Dick's Fidelity outside. Do you agree?

Stephanie

-----Original Message-----
From: James Haber [mailto:jhaber@divgroup.com]
Sent: Tuesday, November 27, 2001 10:32 AM
To: SDENBY@burkelaw.com; pats@cmllc.com; jimr@cmllc.com
Subject: Re: Update


I'm available when you are.

----- Original Message -----
From: <SDENBY@burkelaw.com>
To: <pats@cmllc.com>; <jimr@cmllc.com>
Cc: <jhaber@divgroup.com>
Sent: Tuesday, November 27, 2001 11:27 AM
Subject: FW: Update


> We should discuss. Maybe we should have RJE add his Fidelity interest.
We
> had briefly talked about this.
>
> Stephanie
>
> -----Original Message-----
> From: James Haber [mailto:jhaber@divgroup.com]
> Sent: Tuesday, November 27, 2001 10:27 AM
> To: Stephanie Denby
> Subject: Re: Update
>
>
> It may be easier to account for Fidelity Advisor Fund's activities if
RJE's
> interest is also transferred. It is not an important tax criteria.
>
> ----- Original Message -----
> From: <SDENBY@burkelaw.com>
> To: <jhaber@divgroup.com>
> Sent: Tuesday, November 27, 2001 10:57 AM
> Subject: RE: Update
>
>
> > I am planning to transfer all of MEE's interest- which is 99% of the
> > Fidelity Advisor fund. We are not transferring RJE's interest.
> >
> > -----Original Message-----
> > From: James Haber [mailto:jhaber@divgroup.com]
> > Sent: Tuesday, November 27, 2001 9:46 AM
> > To: SDENBY@burkelaw.com
> > Cc: jimr@cmllc.com; pats@cmllc.com
> > Subject: Re: Update
> >
> >

1

GOVERNMENT
EXHIBIT
44

BWMS 00114

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

1BWMS00114



```
> , >
> > I want to make sure that we are all on board.  I am completing the
> transfer
> >   documents for MEE's fidelity 1 interest to be transferred ......    DID
> YOU
> > MEAN 99% INTEREST?
> >
> > ----- Original Message -----
> > From: <SDENBY@burkelaw.com>
> > To: <jhaber@divgroup.com>
> > Cc: <jimr@cmllc.com>; <pats@cmllc.com>
> > Sent: Tuesday, November 27, 2001 10:08 AM
> > Subject: Update
> >
> >
> > > I want to make sure that we are all on board.  I am completing the
> transfer
> > > documents for MEE's fidelity 1 interest to be transferred into MEE
> Holdings
> > > LP in the next week or so.  MEE will hold 99.xxx% with RJE holding
.yyy%
> > as
> > > the general partner.  Exact percentages will be determined when we
fund.
> > > You are coordinating with Preskauer to get an opinion for the 754
> election
> > > pursuant to this transfer.
> > >
> > > I am still waiting for the valuation information on Stockton for the
> > > contribution agreement for Fidelity 2.  The Stockton interest was
> > > transferred as of Oct 31.  An additional $5 million in cash will be
put
> in
> > > for funding Mariner by the 29th.   Perhaps you can update the daily
> > reports
> > > leaving the value for Stockton blank until that information is
provided.
> > >
> > > Let me know if you have any questions.
> > >
> > > Stephanie
> > >
> >
> >
>
>
```

2

Produced by Burke, Warren, MacKay, and Serritella to United States on 11/08/06

BWMS 00115

1BWMS00115

**From:**          James Haber [jhaber@divgroup.com]
**Sent:**          Thursday, November 01, 2001 5:17 PM
**To:**            Shea, Pat
**Cc:**            Denby, Stephanie (Internet)
**Subject:**       Re: trades


I'm available any time after 10AM.


----- Original Message -----
From: "Shea, Pat" <PatS@cmllc.com>
To: <jhaber@divgroup.com>
Cc: "Denby, Stephanie (Internet)" <sdenby@burkelaw.com>
Sent: Thursday, November 01, 2001 4:32 PM
Subject: trades


>
> Jimmy--
> Can we set up a con call with Stephanie to discuss several issues--
>
> You mentioned that there is a way to bifocate the stock in the
> original fidelity high tech fund to dispose of some of the stock if we
> choose-- Mike Egan may sell some EMC prior to year end -- can you
> explain the
details
> of this feature so that we can sell that stock if we wish--
>
> In the current transaction I know we need to buy out the irish soon--
> can
we
> close the trade now on the basis trade (the interest rate trade)-- if
> we
are
> in the money is there any reason to keep that trade going ??
>
> Is sometime Friday ok with you guys--
>
> Let me know
>
> thanks
>

GOVERNMENT
EXHIBIT

45

Produced By Egan To United States on 6/26/06

022551

2EGAN022551

**hmartin**

| | |
|---|---|
| **From:** | Reiss, James |
| **Sent:** | Friday, May 19, 2000 3:54 PM |
| **To:** | Stephanie Denby (E-mail) |
| **Cc:** | Neuendorf, Rebecca; Remillard, Carol; Egan, Mike |
| **Subject:** | FW: Tentative Meeting - Mike, me, Stephanie & Helios |

**Importance:**        High

Stephanie:

Let's get the Helios crew in for 10am Thursday 5/25.

JimR

-----Original Message-----
**From:** **Remillard, Carol**
**Sent:** Friday, May 19, 2000 4:08 PM
**To:** Reiss, James
**Subject:** RE: Tentative Meeting - Mike, me, Stephanie & Helios

*Thursday @ 10:00 a.m. works fine for Mike. Please let Stephanie know.*

-----Original Message-----
**From:** Reiss, James
**Sent:** Friday, May 19, 2000 3:20 PM
**To:** Remillard, Carol
**Subject:** Tentative Meeting - Mike, me, Stephanie & Helios

Carol:

Stephanie is trying to coordinate a meeting between us and an organization called Helios for Thursday 5/25 around 10am to discuss their tax reduction strategy.  This meeting would be held in our office.  Stephanie will already be in the area on the previous day for Dick's IRS audit.

JimR

1



GOVERNMENT
EXHIBIT
**46**

011727

Produced By Egan To United States on 6/26/06

2EGAN011727

**Denby, Stephanie H.**

**To:**                    Mox Tan
**Subject:**               RE: Proskauer

I can wait to see the second draft.  Could Jimmy just give me an assurance that this is in fairly good shape & that we will be getting a usable product?

Stephanie

-----Original Message-----
From: Mox Tan [mailto:moxtan@heliosfinancial.com]
Sent: Wednesday, September 20, 2000 2:02 PM
To: SDENBY@burkelaw.com
Subject: Re: Proskauer

_Careful look_

Stephanie,

Jimmy has received a draft of the Proskauer opinion and is in the process of reviewing it and making comments on it.  Would you rather wait for the second draft or would you like to see what we have in hand right now?

Re your FYI below, you are absolutely right.

Mox

----- Original Message -----
From: <SDENBY@burkelaw.com>
To: <moxtan@heliosfinancial.com>
Sent: Wednesday, September 20, 2000 11:33 AM
Subject: status

> Jimmy told me that he thought we would be getting a draft of the Preskauer
> opinion letter this week.  Can you let me know where we stand.
>
> In addition what is the status with HSHB?  When are we going to implement
> the purchase.  Please let me know.  FYI- I bet that it was not pleasant at
> Carruth on Tuesday.  This type of thing drives Mike crazy.
>
> Stephanie
>

1

GOVERNMENT
EXHIBIT
47

038080
1CARRUTH038080