# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Nos.: 05-40151-FDS 06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) ) | |

### PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM FICA A FUND, <u>CARRUTH MANAGEMENT, CARRUTH ASSOCIATES, AND AFFILIATES</u>

Defendant's Reply, a reiteration of its original motion rather than a response to Plaintiff's

Opposition, misses two essential facts that essentially moot Defendant's motion papers. First, all

of the documents related to the drafting of the opinion letters have already been produced.

Second, documents that Plaintiff has withheld as privileged are not "documents related to the

structuring of the FDIS tax-shelter product."[1]  Plaintiff's assertion of the attorney-client privilege

over its communications with Ms. Denby is proper; the roles Ms. Denby and Carruth serve vis-à-

vis Plaintiff support the assertion of this privilege.  Plaintiff has not waived privilege, put

privileged communications with Ms. Denby at issue, or selectively disclosed privileged

communications. Defendant's claims to the contrary are unsupported by facts or the record.

Accordingly, Defendant's motion to compel should be denied.

---

[1] Def.'s Reply at 1.

**ARGUMENT**

Plaintiff's Opposition provided a detailed explanation as to the roles of Ms. Denby and Carruth and as to the opinion letters and opinion letter-writing process. Defendant's reiteration of its version of the opinion-writing process from selected documents, and its incorrect claim that Plaintiff is asserting reliance on Ms. Denby in this case, does not lend any support to its assertions that the communications at issue are not privileged, or that the privilege has been waived. Rather, the documents Defendant contends should be produced have been produced or do not concern the topics Defendant claims they do. Moreover, Defendant's continued mischaracterization of Ms. Denby's and Carruth's roles is not supported by the facts and does not support its claim that Ms. Denby's communications were not privileged or that such privilege has been waived.

## I.    Defendant Mischaracterizes the Withheld Documents

Defendant's claim that "[t]he documents withheld here are part and parcel of the advice upon which the plaintiff claims to have relied"[2] is patently false for two reasons. First, Plaintiff has not claimed reliance on the advice of Ms. Denby regarding the tax issues relevant to the present controversy. Rather, Plaintiff is claiming reliance on the opinion letters issued by Sidley Austin and Proskauer Rose. These letters were never privileged and were shared with multiple third parties, including RSM McGladrey and KPMG.[3] Second, Ms. Denby's communications between the other advisors in the opinion-writing process have already been disclosed. In fact,

---

[2] Def.'s Reply at 3.

[3] Defendant's citation to Sidley Austin's response to an IRS summons is merely a red herring. (Def.'s Reply at 11.) Plaintiff wrote to Sidley Austin objecting to the disclosure of Plaintiff's identity because Plaintiff's transaction was not responsive to the summons or the court's order directing Sidley Austin to comply with the summons. (*See* Ex. A.) Subsequently, Sidley Austin confirmed that Plaintiff's transaction was not within the scope of the court's order. (*See* Ex. B.) Moreover, Defendant dedicates three pages of its Reply to identifying the numerous third parties with whom the opinion letters were shared (Def.'s Reply at 5-8), further undermining its claim that privilege existed and was waived.

Defendant supports its claim that Ms. Denby's communications with respect to the opinion-writing process should be disclosed by referencing nineteen exhibits concerning the opinion-writing process that contain communications to or from Ms. Denby.  Defendant's distorted recitation of the origins of FICA A Fund and the opinion-writing process do nothing to change the fact that nearly all of the documents it seeks have nothing to do with the opinion letters.

Defendant's Motion and Reply ignore two crucial facts, which shed light on the documents that have, in fact, been withheld.  First, Defendant's discovery requests were so broad that numerous documents unrelated to the FICA A Fund transaction were responsive and were either produced or, if privileged, were logged.[4]  Second, FICA A Fund engaged in activities other than option trading.  Ms. Denby's legal advice with respect to these other activities – including advice concerning the asset characteristics that would be appropriate for FICA A Fund and how to transfer particular assets between FICA A Fund and other entities – has not been waived.  In its Reply, Defendant does not claim to be seeking either of these categories of documents.  Production of the documents withheld, therefore, would not be proper, both because the documents are privileged and because the withheld documents are not those Defendant seeks in its papers.

---

[4] For example, one of Defendant's request of Carruth sought:

> [A]ll correspondence to or from Carruth (which, as defined, includes Michael Egan), and any attachments to the correspondence or documents referred to in the correspondence, that relates to any person or entity identified in Appendix A attached hereto (including Richard and Maureen Egan) and *also* to SOS, FDIS, other Tax Shelter Products, hedging of stock, hedging of variable interest rates, tax planning, and/or reduction or deferral of tax liabilities.

Subpoena to Carruth, Oct. 2, 2006.  Because Plaintiff engages in both tax planning and hedging unrelated to the transactions at issue, many documents were responsive to this request that do not involve the transactions at issue in this case.  In the more than ten years that Ms. Denby has been representing Plaintiff , there have been many privileged communications between Ms. Denby and Plaintiff and his representatives, the vast majority of which are unrelated to FICA A Fund.

## II.    Defendant Mischaracterizes the Opinion Letters and the Opinion-Writing Process

As explained above, the opinion letters were never privileged, a fact Defendant admits in its own papers.[5]  The opinion-writing process requires input from multiple advisors who are familiar with the facts of the underlying transaction.[6]  All of those communications and the opinion letters themselves, none of which were privileged, have been produced.[7]  Therefore, Defendant's claim of waiver on the basis of the "sword and shield" argument fails.

Plaintiff's production of the opinion letters and related communications does not create an "at-issue" or "subject-matter" waiver with respect to all other legal advice.  Defendant's claim that production of non-privileged documents concerning the transaction at issue waives all communications with respect to that transaction effectively eliminates the attorney-client privilege.  The subject-matter and at-issue waivers should not yield this result.  Rather, they ensure that privileged communications are not selectively disclosed.  As this Court acknowledged, "[i]f two businessmen shake hands on a deal, and say let's run some of these issues by the lawyers, such as the corporate structure, that would not ordinarily waive a privilege."[8]  Here, Plaintiff sought advice from Ms. Denby about many facets of FICA A Fund's transactions, only some of which are at issue.  Plaintiff has not selectively disclosed legal advice Ms. Denby provided to Plaintiff with respect to FICA A Fund or with respect to the opinion letters concerning FICA A Fund.  Rather, Plaintiff has disclosed Ms. Denby's communications

---

[5] Def.'s Reply at 1.

[6] *See* Pl.'s Opp'n at 5.

[7] Defendant's claims that Plaintiff "intended at the outset to maintain the confidentiality of the opinion letters," and that the opinion letters were not provided to KPMG "because documents provided to a tax-return preparer are not privileged" (Def.'s Reply at 11) are not only patently false, but inconsistent with the facts of the case.  Plaintiff provided the opinion letter to KPMG and RSM McGladrey, two parties outside the magic circle.  Moreover, the opinion letters on their face are not identified as privileged.

[8] Status Conference Tr. 6:2-8, Oct. 2, 2007.

with third parties relating to the non-privileged opinion letters.  The fact that the opinion letters and certain aspects of the underlying transactions have been placed at issue in this litigation does not alter the privileged status of Ms. Denby's communications with respect to the transactions or other issues.

## III.    Defendant Mischaracterizes Ms. Denby's Role

Ms. Denby served the role of an outside general counsel to Plaintiff and Carruth.[9]  When advice is provided by outside counsel, there is a presumption that the advice is legal, rather than business, advice.  The "modicum of evidence" standard cited in Plaintiff's Opposition is set forth in a First Circuit case where the court was considering the standard for *in-house* counsel.  The court did not adopt the "modicum of evidence" standard because it found that such a standard should only apply to *outside* counsel.[10]  Whether this Court adopts the "modicum of evidence" standard or applies the presumption that advice from outside counsel is legal advice, the result is the same.  Ms. Denby's communications are privileged because they are legal advice, a position that is supported by the facts as explained in the depositions of Plaintiff, Michael Egan, and Ms. Denby herself.[11]

The presumption that outside counsel is hired to give legal advice is well accepted.  "Communications between a client and its outside counsel are presumed to be made for the

---

[9] Pl.'s Opp'n at 2-3, 11-13.

[10] *Borase v. M/A Com, Inc*., 171 F.R.D. 10, 15 (D. Mass. 1997) (explaining that "the author [of the journal article] was referring to a situation in which the attorney '. . . normally acts in a legal capacity. . .' even though the attorney 'on occasion [has] received or given collateral business advice'" and distinguishing that situation from the one at bar, which involved in house counsel).

[11] *See* Pl.'s Opp'n at 12-13.  Defendant's request for documentary evidence is inappropriate given that the documents are privileged and production of them would waive privilege.  Testimony provided under oath is appropriate evidence of Ms. Denby's role as a legal, rather than business, advisor.

purpose of obtaining legal advice."[12]  The First Circuit has implicitly supported this principle. In *Borase v. M/A COM*, the court acknowledged that such a presumption is available with respect to outside counsel by distinguishing the applicability of the presumption with respect to in-house counsel:

> At best, M/A COM would have the Court presume [the applicability of the privilege] from the circumstances . . . .  While such an assumption might be able to be made *if M/A COM had retained outside counsel for the particular purpose of representing it* in its dealings with Mr. Borase and his attorneys, the assumption cannot be made in the case of an in-house counsel who has other additional responsibilities over and above the rendering of legal advice.[13]

Some courts have gone even further and found that the rebuttable presumption that advice is legal advice applies to in-house counsel.[14]  Not only has Defendant failed to rebut this presumption,[15] but the witnesses who are most familiar with the services Ms. Denby provided to

---

[12] *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002); s*ee also United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else."); *United States v. Chevron Corp.*, No. C-94-1885 SBA, 1996 U.S. Dist. LEXIS 4154, at *8-9 (N.D. Cal. Mar. 13, 1996) ("Some courts have applied a presumption that all communications to *outside counsel* are primarily related to legal advice . . . .  In this context, the presumption is logical since outside counsel would not ordinarily be involved in the business decisions of a corporation").

[13] 171 F.R.D. 10, 15 (D. Mass. 1997) (emphasis added).

[14] *See, e.g.*, *United States v. KPMG LLP*, 237 F. Supp. 2d 35, 40 (D.D.C. 2002) (finding that "'[b]ecause an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel. . . .  There is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice . . . .'" (quoting *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11-12 (D.D.C. 1998))); *see also Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2003 U.S. Dist. LEXIS 11485, at * (N.D. Ill. July 3, 2003) ("Generally, there is a presumption that a lawyer in the legal department of the corporation is giving legal advice, and an opposite presumption for a lawyer who works on the business or management side.")

[15] Defendant merely points to Ms. Denby's communications with the third parties hired to provide business advice, all of which have been produced, in support of its claims that Ms. Denby was providing business advice.  In communicating with the third parties, Ms. Denby was not providing business advice, rather, it was necessary for Ms. Denby to communicate with the third-party *advisors* in order to inform her legal advice with respect to the suggestions of those advisors.

Plaintiff and Carruth have consistently testified that Ms. Denby was not consulted for business advice, rather, her role was limited to providing legal advice.[16]

## IV.    The Sharing of Documents with Carruth Does Not Waive Privilege

Legal advice requested by or received through an agent on behalf of a client does not waive privilege by virtue of the agent's involvement.  Similarly, disclosure to third parties who share an identical legal interest does not waive the attorney-client privilege.  Defendant's misapprehends Carruth's role as an agent and ignores the identical legal interest shared by Plaintiff and Carruth.

Disclosures by a client to a representative of the client do not serve to waive the privilege.  "'A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made . . . between himself or his representative and his lawyer or his lawyer's representative.'"[17]  Where a client uses representatives to facilitate the rendering of legal advice, the communications remain privileged.[18]  Here, an agency relationship exists between Plaintiff and Carruth.  Since Carruth is responsible for managing and overseeing Plaintiff's financial and business endeavors, it is necessary to include Carruth in communications with legal counsel relating to those matters.  Thus, Carruth is the "principal conduit"[19] through which Plaintiff interacts with Ms. Denby.  As such, there was no waiver of the privilege in this case.

---

[16] *See* Pl.'s Opp'n at 12.

[17] *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (quoting Supreme Court Standard 503(b)).

[18] *See ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, No. 96 Civ. 6033 (BSJ) (HBP), 1998 U.S. Dist. LEXIS 8808, at *15 (S.D.N.Y. June 5, 1998) (finding that "the Dunlaps were not only plaintiff's agents with respect to the Howland Hook Project, they were the principal conduit through which plaintiff communicated with counsel. Since they are agents of the client, disclosure to them of communications that are otherwise privileged does not result in a waiver").

[19] *Id.*

Even if Carruth was not Plaintiff's agent, the common interest doctrine preserves privilege with respect to documents shared with Carruth. Defendant's arguments conflate the "common interest doctrine" and the "joint defense doctrine." While some courts have used the two doctrines interchangeably, they are distinguishable. Unlike the joint defense privilege, which Plaintiff has neither cited nor relied on, "[t]he protection of the privilege under the community of interest rationale . . . is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests joint [sic] forces for the purpose of obtaining more effective legal assistance."[20] Thus, the community of interest doctrine protects communications between parties "made as part of a joint legal enterprise regardless of whether such enterprise results in actual litigation."[21] Furthermore, "[t]he third parties receiving copies of the communication and claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation."[22]

Defendant mistakenly asserts that, in the First Circuit, "there must be a palpable threat of litigation at the time of the communication . . . [for the communication to] qualify for protection."[23] However, the *Fifth Circuit* case on which Defendant relies neither cites First Circuit law in support of this proposition, nor is it cited in any First Circuit decision. Meanwhile,

---

[20] *Nidec Corp. v. Victor Co.*, No. C-05-0686 SBA (EMC), 2007 U.S. Dist. LEXIS 48841, at *11 (N.D. Cal. July 3, 2007) (quotations omitted). Note that the court does not distinguish the phrases "joint defense theory" and "community of interest," though it appears that the court treats them as distinct. *Id.* at *10-11.

[21] *Sicurelli v. Jeneric/Pentron, Inc.*, No. 03-cv-4934 (SLT) (KAM), 2005 U.S. Dist. LEXIS 42227, at *8 (E.D.N.Y. June 16, 2005).

[22] *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974); *see also Roberts v. Carrier Corp.*, 107 F.R.D. 678, 687-88 (N.D. Ind. 1985) (holding that "[t]he third party corporation need not be a party to any anticipated or pending litigation; it may share a community of interest . . . if it shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney").

[23] Def.'s Reply at 19 (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001)).

8

another case cited by Defendant specifically identifies the First Circuit as recognizing "that the threat of litigation is not a prerequisite to the common interest doctrine."[24]

In support of the Fifth Circuit's standard, Defendant cites *In re Grand Jury Subpoena*, which, in discussing the validity of a *joint defense agreement*, stated that "a primary requirement of a joint defense agreement is that there be something against which to defend."[25] The *In re Grand Jury Subpoena* court, however, further noted that the common-interest privilege may apply "outside the context of actual litigation."[26] Accordingly, Plaintiff and Carruth need not be pursuing a joint defense for Carruth to have a common legal interest. Rather, the parties must show they "cooperated in formulating a common legal strategy,"[27] or, in other words, the parties "must simply demonstrate 'actual cooperation toward a common legal goal' with respect to the documents they seek to withhold."[28] Ms. Denby serves as legal counsel for Plaintiff and Carruth. Carruth, which is Plaintiff's agent, necessarily shares Plaintiff's legal interests. Accordingly, the community of interest doctrine protects communications between Carruth, Plaintiff, and Ms. Denby.

## CONCLUSION

Defendant's Motion seeking production of the contested documents should be denied. The documents sought by Defendant have either previously been produced or are protected by the attorney-client privilege. Plaintiff has more than satisfied its burden of proof in demonstrating this fact. Furthermore, Defendant mischaracterizes Plaintiff's counsel's role with

---

[24] *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007).

[25] *In re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. 2001).

[26] *Id.* at 572.

[27] *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996).

[28] *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004) (quoting *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001)).

respect to the transactions at issue as primarily business in nature, rather than legal.  As has been

shown, the work of Ms. Denby was equivalent to that of any diligent and responsible attorney

advising her client.  Finally, Defendant's contention that disclosure of confidential information to

the Carruth entities vitiates the attorney-client privilege demonstrates a fundamental

misunderstanding of both the law and the facts surrounding Plaintiff's relationship with Carruth.

Accordingly, Defendant's Motion should be denied.

Respectfully submitted this 20th day of November 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY
ADVISOR A FUND, L.L.C., by the Tax Matters
Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email:  dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 20, 2007.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email:  lamanti@mckeenelson.com

# Exhibit A

# Sachnoff & Weaver, Ltd.

Attorneys at Law

30 South Wacker Drive · 29th Floor · Chicago, Illinois 60606-7484

Telephone (312) 207-1000

David C. Bohan
(312) 207-3880
dbohan@sachnoff.com

January 21, 2004

Facsimile (312) 207-6400

www.sachnoff.com

<u>Via Messenger Delivery</u>

*PRIVILEGED AND CONFIDENTIAL*

Mr. Michael Sweeney
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

Re: .  *United States of America v. Sidley Austin Brown & Wood LLP,*
          *No. 03-C-9355 (N.D. Ill.)*

Dear Mr. Sweeney:

We write as counsel to Richard J. Egan in response to your firm's "Important Notice" dated January 13, 2004 concerning the above-captioned proceeding (the "Enforcement Proceeding").

Mr. Egan objects to the Notice and to Sidley Austin Brown & Wood LLP's ("SABW") proposed response to the order of Judge Kennelly dated January 13, 2004 (the "Order"). The Order directs SABW to provide notice to "former clients . . . who received opinions from Brown & Wood LLP or [SABW] with respect to the transactions identified on Appendix A hereto . . . ." To our knowledge, Mr. Egan has never received an opinion from Brown & Wood or SABW regarding any of the 18 transactions identified on Appendix A to the Order. Mr. Egan did receive a formal written opinion from SABW dated March 8, 2002 (the "Opinion"), but it addresses transactions that do not appear to be included in any of the 18 transactions identified in the Order. Accordingly, we do not understand why SABW has directed its Notice to Mr. Egan or on what basis SABW proposes to disclose Mr. Egan's identity to the IRS.

If SABW believes that the transactions addressed in the Opinion are among those listed in the Order, please identify the transaction or transactions identified in the Order that you believe include the transactions addressed in the Opinion, and explain in detail the basis for your belief. Your immediate response is necessary in order for us to offer Mr. Egan fully informed advice regarding his rights under the Notice and the Order. Absent a reasoned determination by SABW that the transactions addressed in the Opinion are among those identified in the Order, we insist that SABW, consistent with its ethical and legal obligations to Mr. Egan, preserve the confidentiality of his identity and the substance of all attorney-client communications.

Additionally, we have reviewed the Summons that is the subject of the Enforcement Proceeding and fail to see how it could be construed to require SABW to disclose Mr. Egan's identity. The Summons, assuming it were lawfully issued and otherwise enforceable, commands

PZK02161
PZK02161

PRODUCED BY SIDLEY AUSTIN TO UNITED STATES ON 10/11/07

1SA00006

## Sachnoff & Weaver, Ltd.
Attorneys at Law

Mr. Michael Sweeney
January 21, 2004                                        *PRIVILEGED AND CONFIDENTIAL*
Page 2

SABW to disclose identifying information regarding taxpayers who participated in any "listed transaction" or "potentially abusive tax shelter" "organized or sold by" Brown & Wood or SABW. To our knowledge, Mr. Egan has never participated in a transaction organized or sold by SABW or Brown & Wood, or in any listed transaction or potentially abusive tax shelter.

Mr. Egan's only dealings with SABW and Brown & Wood were to engage the firm to provide a legal opinion regarding the federal income tax consequences of certain investment transactions. If SABW *was* acting as an organizer or seller in connection with the transactions reviewed during that engagement, it concealed that role from Mr. Egan, in plain violation of SABW's obligations as his attorney and fiduciary. If, on the other hand, SABW *was not* acting as an organizer or seller of those transactions, then any disclosure of Mr. Egan's identity to the IRS would be entirely voluntary and in violation of SABW's ethical obligations to preserve the confidentiality of its relationship and communications with Mr. Egan. We demand that your firm advise us at once whether, with respect to Mr. Egan's transactions, SABW or Brown & Wood acted as an "organizer" or "seller" within the meaning of the Internal Revenue Code and/or the regulations promulgated thereunder.

Further, it is unclear to us, in light of the Opinion itself, how the transactions that were the subject of the Opinion could qualify as listed transactions or potentially abusive tax shelters. The Opinion advises Mr. Egan that those transactions were *not* listed transactions or potentially abusive tax shelters. By sending Mr. Egan your Notice, you suggest that Mr. Egan should not be relying on your Opinion. If this is the case, it is essential that you so advise us immediately.

We await your immediate response to this letter. Without the information requested herein, we will be unable to provide Mr. Egan with fully informed advice regarding his continued reliance on your Opinion and his response to your Notice.

This letter reveals and contains privileged and confidential attorney-client communications. It is not intended as and shall not be construed as the type of privilege claim contemplated under paragraph 2 of the Order. Without our express written approval, this letter should not be produced pursuant to the procedures outlined in paragraph 5 of the Order or otherwise disclosed to any other party.

Sincerely,

David C. Bohan

DCB:
631276 v.4

cc:    David E. Lieberman

PZK02162
PZK02162

PRODUCED BY SIDLEY AUSTIN TO UNITED STATES ON 10/11/07

1SA00007

# Exhibit B

# SIDLEY AUSTIN BROWN & WOOD LLP

BEIJING

BRUSSELS

CHICAGO

DALLAS

GENEVA

HONG KONG

LONDON

BANK ONE PLAZA
10 S. DEARBORN STREET
CHICAGO, ILLINOIS 60603
TELEPHONE 312 853 7000
FACSIMILE 312 853 7036
www.sidley.com

FOUNDED 1866

LOS ANGELES

NEW YORK

SAN FRANCISCO

SHANGHAI

SINGAPORE

TOKYO

WASHINGTON, D.C.

WRITER'S DIRECT NUMBER
(312) 853-7780

WRITER'S E-MAIL ADDRESS
msweeney@sidley.com

January 27, 2004

Via Telecopy (207-6400) and U.S. Mail
David C. Bohan
Sachnoff & Weaver, Ltd.
30 South Wacker Drive
29th Floor
Chicago, IL 60606-7484

Re: Notice to Former Clients in John Doe Summons Enforcement Proceeding

Dear Mr. Bohan:

I have received your letter of January 22, 2004 on behalf of Richard J. Egan. We
have reviewed our files relating to this former client of ours in light of the representations made
in your letter on his behalf, as well as the January 13, 2004 Court Order that required us to send
the notice to which your letter responds. We have concluded that it appears that Mr. Egan
arguably is not within the scope of Attachment A to the January 13 Court Order. We will
therefore not disclose his identity to the government under paragraph 3 of the January 13 Court
Order, nor will we produce a redacted version of your letter to the government under paragraph 5
of that Court Order. Because Mr. Egan's identity nonetheless appears to be within the scope of
what is sought by the government in the action in which that Court Order was entered, it may be
the subject of further proceedings in this matter. We have expressed, both to the government and
to the Court, our fundamental disagreement with the government's characterization of what we
did in connection with the matters on which it is seeking this discovery as the "organization" or
"sale" of transactions.

Very truly yours,

Michael J. Sweeney

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS