UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civ 05-40151-FDS (D. Mass.)<br>06-40130-FDS (D. Mass.)<br><br>Judge Saylor |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO
REOPEN DEPOSITION OF RONALD BUESINGER**

As with our companion motion to reopen the deposition of Patrick Shea, the plaintiff also opposes the United States' motion to reopen the deposition of Ron Buesinger, another central witness in the complex set of transactions at issue in this litigation. Apart from asserting that there is no good cause to reopen the deposition, the plaintiff more fundamentally claims that the Court does not have jurisdiction of this motion because Mr. Buesinger is an out-of-district witness. These arguments are meritless.

**I. The Court Has Jurisdiction of this Motion.**

This is not a motion to compel the attendance of an out-of-district witness. If necessary, the United States will file such a motion in the appropriate judicial district. Counsel for the United States has discussed the reopening of this deposition with counsel for the witness, and, as of yet, the witness has not opposed appearing for additional deposition testimony. The witness has requested that the deposition, if it is to continue, be continued to a date in or after late November (late November having now almost passed). Because of that request, the United States

moved to reopen the deposition and to do so after the close of discovery on November 9.[1] The United States has conveyed to the witness its willingness to accommodate his schedule and other reasonable requests relating to location, date, and time. Given the witness's current non-objection, the United States does not seek here to compel the witness's appearance. Consequently, this is not a motion seeking to compel the attendance of an out-of-district witness pursuant to Fed. R. Civ. P.37(a), but rather a motion for leave to allow additional time to examine the witness and to do so after the already-passed discovery cutoff date pursuant to Rules 26(b)(2) and 30(d)(2). Contrary to plaintiff's argument, this Court clearly has jurisdiction of such a motion.

**II.     Good Cause Exists for the Reopening of this Deposition**

The heart of plaintiff's opposition to this request for additional time appears to be based on a "waiver" ground. Plaintiff argues in essence that Government counsel did not lay a foundation during the deposition of Mr Buesinger that we would need additional time to complete the examination of this witness.[2] Plaintiff cites no explicit authority for this "waiver" position and, as far as we can tell, there is none. Rather, Rule 30(d)(2) states the applicable standard on a motion requesting additional time is that "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent." And we have thus far not been

---

[1] The plaintiff should not be heard to complain of delay, as it recently noticed the deposition of a non-party witness for December 9, 2007, and the current delay is due largely to its opposition to the motion.

[2] *See* Pl's Op. 2-3, 6. Plaintiff emphasizes that Government counsel indicated that he had no further questions near the close of the deposition. But, as indicated in our opening memorandum, this statement must be construed in the context of discussions both on and off the record by plaintiff's counsel regarding the lateness of the hour.

permitted to conduct a fair examination of this important witness.

Indeed, Mr. Buesinger is one of the most pivotal witnesses in this case and appears to be the most knowledgeable of any potential witness regarding the highly technical and exceedingly complex aspects of the numerous option trades which were used to implement the FDIS product. This preplanned choreography is summarized in an "Outline of Proposed Transaction."[3] These outlines have been located for each of the 46 FDIS transactions implemented in 2001. The preplanned amount, character (ordinary or capital), and timing (tax year) of the tax loss to be generated by this product was summarized in another document with the title "Investor Fact Sheet." It appears, based upon recently discovered evidence, that both of these documents were sent to both Alpha and Brown Raysman to initiate the FDIS transaction.[4]

In addition to detailing the preplanned choreography, the "Investor Fact Sheet" also listed the amount of the net fee as a fixed percentage of the loss. Ron Buesinger testified that this fee was split between Alpha, DGI and Helios under a verbal sharing arrangement under which Alpha was entitled to 40% of the net profit, after joint expenses. Ron Buesinger further admits that he typed this spreadsheet. However, he attests that James Haber, the principal of DGI, dictated much of this information to him over the phone. Buesinger further testified that DGI paid Alpha over

---

[3] The outline for the Egan transaction is on file under seal with the Court. It is attached as a sample to Appendix C attached to the Declaration of John Lindquist filed in *United States v. The Diversified Group*, Civ. No. 4:07-mc-400004-FDS (D. Mass.).

[4] While some of these e-mail were produced by Alpha, it does not appear that Alpha produced a complete set. It appears that many of the missing e-mail are in the files of Brown Raysman which, until recently, had been withheld by Brown Raysman upon a potential claim of privilege by DGI. On November 9, 2007, DGI represented that it waived any claim of privilege to these documents. The United States immediately requested and is in the process of obtaining a complete copy of these documents.

$11 million under this arrangement with respect to the 2001 transactions. Upon learning these facts, counsel for the United States immediately demanded that Alpha produce a copy of its bank statements with respect to these payments.[5] The United States seeks to question Buesinger further with respect to these bank statements.

The United States has also recently uncovered what appears to have been a checklist for the implementation of the FDIS product.[6] This check list, in addition to detailing the steps of the FDIS transaction, identifies three excel spreadsheets: 1) the Option Gain/Loss Schedule; 2) the Cash Transaction Schedule; and 3) the Capital Accounts and Balance Sheet. It appears that Ron Buesinger and/or his assistant, created these spreadsheets for each of the FDIS transactions. The United States wishes to further question Mr. Buesinger with respect to this checklist, the referenced steps, and the referenced spreadsheets.

Not surprisingly, Mr. Businger's name appears on more than 20,000 documents obtained during discovery, many of which are highly technical. His ability to interpret and decipher these complex documents will be crucial to obtaining a full and fundamental understanding of the design, purpose and operation of the option transactions. Contrary to plaintiff's inference, we

---

[5] Buesinger Tran. pp. 271-272.

[6] This checklist was marked as Govt. Ex. 1315 at the deposition of Israel Press, a former partner at Grant Thornton, which was taken after the deposition of Ron Buesinger. Grant Thornton is one of the four major accounting firms that were recruited by DGI to help it to market its FDIS product and produced a copy of the checklist to the United States on July 17, 2007. However, given the massive volume of documents produced, now exceeding 2.5 million pages, the checklist was not located by the United States prior to its deposition of Ron Buesinger. At his deposition, Israel Press could not identify the checklist produced by Grant Thornton with respect to his own clients and asserted the Fifth Amendment both as to the propriety of these FDIS transaction. Press also asserted the Fifth Amendment as to the propriety of a tax shelter transaction through DGI which Ron Buesinger's financial summary references as a "favor."

have thus far examined Mr. Businger on only a minuscule percentage of these documents.  In short, Mr Businger is and remains one of the most critical witnesses in this case.

Mr. Businger's unique role in these options transactions was recently confirmed by Ivan Ross, who along with Mr. Buesinger, were the two key principals of Alpha.  At his deposition, taken on November 7, 2007 (after the filing of this motion), Mr. Ross claimed that during the period in 2001 when the trades on the 46 FDIS transactions were being negotiated and entered into, he was pre-occupied with other trading activities.  When asked "[w]ho was then the person who was most involved," he unhesitatingly said "Ron Buesinger." (Ross Tr. 28).[7]  Ross then reaffirmed this position throughout the deposition:

> Q.    Do you know what Ron [Buesinger] is referring to when he says we need to reserve part of the two percent inside portion in order to increase the economics of one side of the trade when we do the lift and replace (change economics by fifty KPV or so)?
> A.    Not particularly, no.

(Ross Tr. 42.)

****

> A. So to the extent that Jim Haber might have asked me can A, B and C be done, I certainly would have been responsive to that or I would have turned that over to Mr. Buesinger, but, you know, I can't be certain much beyond that.

(Ross Tr. 43).

Because of his central and unique role with respect to all of the FDIS transactions, Mr.

---

[7] Citation to "rough" Ross-deposition transcript.  Final transcript unavailable at this time.

Buesinger is a critical witness with respect to a broad array of documents and topics. Moreover, because he is not within the jurisdiction of the Court, there is no guarantee that he will appear at trial. Our cross-examination of Mr. Buesinger is therefore our only opportunity to examine him on the many intricate details of the complex option trades at issue in this case. Moreover, some of the critical documents in issue had only recently been produced, and some were produced after the deposition.

### III    Plaintiff's Other Arguments Are Without Merit

Plaintiff emphasizes that its counsel was able to examine Mr. Buesinger in less than three hours.[8] What plaintiff fails to reveal, however, is that its counsel was afforded the opportunity to interview Mr. Buesinger on at least two separate occasions prior to his deposition.[9] Thus plaintiff was in reality conducting a trial deposition while the United States, on the other hand, was forced to conduct a time-consuming discovery deposition of this pivotal witness.

Plaintiff characterizes our motion for additional time as a motion to take a second deposition of Mr. Buesinger. It is not. We do not seek to take a second deposition of Mr Buesinger but rather to complete the first deposition. Second depositions are typically requested after some decent interval of time has elapsed from the first deposition.[10] By contrast, a request

---

[8] Pl. Op. at 2.

[9] Buesinger Tr. 105:4-20

[10] To support its "second deposition" notion, plaintiff cites *In Re Sulfuric Acid Antitrust Litig.,* 235 F.R.D.527, 532 ( N.D. Ill. 2005). But there the court stated:

> [P]laintiffs were aware shortly after [the witness's] deposition concluded on April 15th that more time was needed if they were to get the notes transcribed. One would have assumed they would have taken action. They didn't. Instead, they waited four and a half months, until August 31st-two months after discovery closed, to raise the theory that all

for leave to be permitted additional time to examine a deponent will typically occur immediately or shortly after the first deposition.

The case law in this District indicates the proper procedure to be followed before filing a motion for additional time. The "better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought." *Malec v. Trs. of Boston Coll.*, 208 F.R.D. 23 -24 (D.Mass.2002). That is precisely what we have done here.

In fact, none of the cases relied upon by plaintiff have limited a party to only seven hours of deposition time, much less to have done so where the party established a good cause for the additional time. Plaintiff's citation of In *Inter Re Sulphuric Anti Trust Litigation*, 230 F.R.D.527, 532 ( N.D. Ill. 2005) and similar cases is symptomatic of its reliance upon misplaced authority. In that case, a party deposed a witness for 17 hours over two days (which was agreed to by the opposing party), waited for four months, and then sought to reopen the deposition. *Id* at 528, 532; s*ee* n. 7. Here, however, plaintiff refuses to show any flexibility at all to accommodate our need for a fair examination of this critical witness despite his integral role in plaintiff's own option transactions. As it has many times before, the plaintiff flatly opposes our attempt to obtain discovery on matters that are fundamental to the resolution of the issues in this litigation.

---

        that was sought was "additional time"to take a deposition under Rule 30(d)(2), not permission to take an additional deposition" under Rule 30(a)(2)(B). Apart from its substantive invalidity, the argument, coming as it did in a reply brief, comes too late.

Unlike the facts there, the United States here filed its motion for additional time immediately following the termination of Mr. Buesinger's deposition.

## CONCLUSION

Because Mr. Buesinger is an important witness with substantial and likely unique knowledge of the transaction at issue, the United States requests that it be permitted to depose this witness for an additional six hours. Because Mr. Buesinger is unavailable to give additional testimony until a personal matter has been finalized, we respectfully request that leave be granted to reopen his deposition on a date before the end of December 2007.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. VANN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Telephone: (202) 307-6561
Facsimile: (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov
          barry.e.reiferson@usdoj.gov
          heather.vann@usdoj.gov

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and copies will be sent to those indicated as non registered participants on November 26, 2007.

/s/ Heather L. Vann
Trial Attorney, US Department of Justice, Tax Division