UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case Nos.: 05-40151-FDS <br> 06-40130-FDS |

### SUR-REPLY TO DEFENDANT'S MOTION
### TO COMPEL PRODUCTION OF DOCUMENTS FROM FOUR LAW FIRMS

The heavy burden placed on Plaintiff as a result of Defendant's ongoing solicitation of information concerning unrelated taxpayers not only gives Plaintiff clear standing to oppose Defendant's motion, but also gives Plaintiff a very strong basis for his opposition. Plaintiff has consistently opposed Defendant's "fourth-party" discovery because it is of questionable relevance and because it is highly prejudicial. Moreover, as the volume of "fourth-party" discovery increases, so does the expense and burden placed on Plaintiff, as well as the prejudice imposed on Plaintiff. Lacking information only available to Defendant, Plaintiff is prejudiced by his inability to verify whether the "fourth-party" discovery is complete. Finally, Defendant's Reply is riddled with conjecture and accusations as to Plaintiff's relationship to the four law firms, and Plaintiff is afforded the right to correct these claims.

**Argument**

When this case began, the Court instructed that "We aren't going to investigate the tax shelter industry. I hope and assume the government doesn't intend to do that." (Status Conference Tr. 28:25-29:2, Mar. 10, 2006.) The government's discovery demands to date, however, are increasingly more akin to such an investigation. Now, with Defendant seeking to invade the privilege between these four law firms and their clients for purposes of obtaining documents unrelated to Plaintiff, there is little dispute that Defendant is using this case as a forum to investigate the so-called tax shelter industry, including firms involved in advising on certain tax-advantaged structures.[1] This case is not an appropriate forum for such an investigation, and Plaintiff should not be required to bear such a burden.[2]

The burden and prejudice created by this investigation is amplified by the fact that "fourth-party" discovery sought by Defendant, throughout the litigation and in the current motion, relates to an ever-changing pool of taxpayers, advisors, and purported tax shelters. Defendant's unilateral selection of specific taxpayers, advisors, and transactions on the basis of information available only to Defendant, such as tax returns filed with the IRS[3] or documents

---

[1] Contrary to Defendant's claim, Plaintiff is not attempting to "assert others' purported-privilege claims." (Def.'s Reply at 2.) Rather, the outcome of Defendant's motion affects Plaintiff and Plaintiff is raising its concerns with the Court.

[2] In addition to the burden imposed on Plaintiff by seeking pattern evidence, Defendant has engaged in a pattern of burdening Plaintiff outside of this litigation. Late in 2006, the IRS issued an FPAA for Fidelity High Tech on the same day it issued a notice of beginning of administrative proceedings, thus denying Plaintiff the opportunity to participate in any audit. More recently, in the midst of the flurry of activity surrounding the close of discovery, the IRS sent Plaintiff a bill for the taxes and penalties the IRS claims Plaintiff owes in amounts yet to be determined by this Court. The assessment also sought taxes and penalties for the Deferred Compensation Plan KPMG developed for Plaintiff, which IRS counsel fully conceded earlier this year in the Tax Court.

[3] Defendant sent Plaintiff a selection of tax returns on the last day of discovery. Plaintiff's position is and has been that information about taxpayers who were unknown to Plaintiff at the time of the transaction is irrelevant. Should Plaintiff be required to rebut Defendant's pattern evidence, however, Plaintiff has no means of verifying whether the returns produced by Defendant encompass the entire universe of returns necessary to rebut this evidence.

produced to the IRS in promoter examinations, is highly prejudicial to Plaintiff.[4]  Moreover, it is extremely burdensome due to the volume of documents being produced, over two-and-a-half million pages to date, with productions continuing to come after the close of fact discovery.

This discovery is also burdensome because Defendant's claims as to the scope of the third- and fourth-party discovery that is relevant to this case are inconsistent with the third- and fourth-party discovery Defendant has, in reality, subpoenaed to date.  For example, Defendant inconsistently claims that the expansive discovery is necessary to show the firms' involvement in the "FDIS product" (Def.'s Reply at 2), but the documents it is seeking relate to "SOS and FDIS" (Def.'s Reply at 2 n.3), and the documents produced to date relate to a wide variety of other tax strategies.  Defendant has provided no assurances that the documents it now seeks are limited in scope.  Such expansive discovery, even beyond what Defendant has claimed is relevant to this case, is unquestionably unnecessary, burdensome, and prejudicial to Plaintiff.

In addition, many of the communications sought by Defendant took place after Plaintiff's transaction was complete and Plaintiff's opinion letters were obtained, and after the partnership and individual tax returns were filed.[5]  Accordingly, those documents cannot be relevant to the "creation and implementation of the FDIS tax shelter."  (Def.'s Reply at 3.)  If those documents are relevant to FDIS, they cannot be relevant to Plaintiff's transaction, which occurred prior to those communications.

---

[4] For example, Defendant claims that "only those four" law firms provided opinion letters. (Def.'s Reply at 6.)  The documents produced to date, however, show that attorneys from Pryor Cashman, Baker Botts, and other law firms also reviewed and advised on the FDIS transaction.  Accordingly, Defendant's claim that opinions only came from "those four law firms" results from the fact that Defendant only subpoenaed those four law firms.

[5] Over three-quarters of the documents on the Lord Bissell privilege log are documents that post-date Plaintiff's opinion letters and the filing of Plaintiff's tax return.  Similarly, numerous documents on the Proskauer Rose privilege log reflect communications that took place in 2003.

The burden imposed on Plaintiff is magnified by the fact that the information now sought by Defendant is not relevant to Plaintiff's case because these communications were wholly unknown to Plaintiff at the time the FICA A Fund transactions took place. Both Plaintiff's representatives and Plaintiff's advisors have testified under oath that the FICA A Fund transaction was presented to Plaintiff as a customized investment structure that was not mass marketed and that was developed to meet Plaintiff's financial planning needs. For example, Robert Prifti, the engagement manager from KPMG testified that:

> A   Of the meetings that I participated in, a lot of the time, a very high number of hours were spent in gaining an understanding of their investments, their allocations and the challenges that they had because EMC was a stock where Mr. Egan was deemed an insider and couldn't sell or monetize those positions.
>
> Q   In the fourth bullet on this same page, it refers to a customized investment structure. Was this presented to the Egans as being customized or unique in any way?
>
> A   Yes, customized.
>
> Q   What was – –
>
> A   The Egans were not interested in a, for lack of a better word, cookie cutter or shelf transaction. They were interested in one that was specifically tailored to their business and investment needs, which hopefully had good tax results.

(Prifti Dep. 50:11-51:7, Feb. 27, 2007.)[6]

---

[6] (*See also* James Reiss Dep. 81:23-82:1, Aug. 28, 2007 (testifying that "from the standpoint that the Egans and the Carruth organization were looking for techniques that were unique to us, that was what was most important"); Patrick Shea Dep. 21:7-8, Oct. 16, 2007 (testifying that "we were not looking for marketed tax shelters").)

Plaintiff had no knowledge of the supposed dealings between any of its advisors and these four law firms, accordingly, such information is not relevant and is highly prejudicial. The United States has made this exact argument in another case before this Court, suggesting that offering evidence of other taxpayer activities is "unfair and misleading where there is no evidence that the IRS had notice of these activities."[7] Here, Defendant is seeking to introduce activities wholly unknown to Plaintiff between individuals who are wholly unknown to Plaintiff to create inferences about Plaintiff's state of mind and intent, which is both unfair and misleading.

To rebut the fact that these firms are complete strangers to Plaintiff, Defendant makes numerous allegations as to Plaintiff's "relationship" with these firms that are simply untrue. For example, Defendant claims that "plaintiff did in fact have a relationship with these law firms" (Def.'s Reply at 2) and "[t]he argument that Bryan Cave did not 'represent[]' the plaintiff, for example, hides the special relationship that plaintiff had with the various promoters of this scheme." (Def.'s Reply at 6.) The facts, however, are that Plaintiff had no communications with Lord Bissell or Bryan Cave, and very limited communications with Brown Raysman, all of which have been produced. Identification of Bryan Cave and Lord Bissell on one presentation provided to Plaintiff does not create a "relationship."[8] Moreover, Defendant has not introduced

---

[7] Government's Motion in Limine to Exclude Evidence of IRS Filings of Non-Similarly Situated Organizations at 4, *United States v. Mubayyid*, No. 05-40026 (D. Mass. filed Oct. 19, 2007).

[8] In fact, another presentation addressed to Plaintiff identified Arnold & Porter as a firm available to provide a more likely than not opinion. Defendant, however, does not claim a "relationship" between Plaintiff and Arnold & Porter, nor does Defendant seek documents from Arnold & Porter, though Plaintiff's connection to Arnold & Porter is no different from Plaintiff's connection to Bryan Cave or Lord Bissell.

any communications between Plaintiff and Bryan Cave or Lord Bissell, because no such communications exist.[9]

Because Defendant cannot tie Lord Bissell or Bryan Cave to Plaintiff, Defendant seeks to demonstrate relevance by tying Lord Bissell and Bryan Cave to Plaintiff's advisors. (*See, e.g.,* Def.'s Reply at 8 (discussing communications between Lord Bissell and RSM McGladrey).) This connection is tenuous, at best, and does nothing to negate the fact that Lord Bissell and Bryan Cave are completely removed from Plaintiff and Plaintiff's transaction. Moreover, Defendant does not point to communications between Helios, Alpha, and RSM McGladrey and numerous other law firms, including Baker Botts, Fulbright & Jaworski, Pryor Cashman, and Latham & Watkins, all of which have been produced in this case. Instead, Defendant has cherry-picked "facts" to create tenuous connections with the firms Defendant has decided to investigate, none of which makes the communications at issue relevant, nor does it reduce the burden and prejudice imposed on Plaintiff as we slide down the slippery slope.

## CONCLUSION

The third-party and "fourth-party" discovery sought by Defendant continues to burden and prejudice Plaintiff. Now seeking to invade the privileges of these unrelated parties, Defendant is moving yet further away from the facts of this case and Defendant's own criteria of what is relevant information regarding other taxpayers. Using this forum to investigate multiple law firms who had no involvement in the transactions at issue in this case unquestionably places an undue burden on Plaintiff. Moreover, Plaintiff is prejudiced by Defendant's ever-changing selection of "pattern evidence" taxpayers. This Court has repeatedly stated that it does not wish

---

[9] Defendant points to an e-mail from Bryan Cave, counsel for DGI, to DGI concerning impending legislation that was subsequently forwarded by James Haber to counsel for Carruth. (Def.'s Reply at 6-7.) This e-mail does not evidence some conspiracy or "special relationship," rather, it shows that Carruth's advisors sought to keep Carruth informed about relevant legislation. This was common practice for Carruth, who also received updates on relevant legislation from its advisors, including KPMG, Helios, PricewaterhouseCoopers, and Anchin, Block & Anchin.

6

to examine and try the transactions of other taxpayers, or investigate the tax shelter industry. Production of these documents only furthers those purposes. Accordingly, Defendant's motions should be denied.

Respectfully submitted this 3rd day of December 2007.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone: (508) 791-8500
Facsimile: (508) 791-8502
Email: jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 3, 2007.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: lamanti@mckeenelson.com