# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 05-40151-FDS 06-40130-FDS |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF MATERIALS RELATING TO EXPERT REPORTS AND OPINIONS OF GORDON RAUSSER

Plaintiff requests that this Court compel Defendant to produce documents relating to the

expert report of Gordon Rausser.  Defendant has withheld, without providing a log, substantial

materials prepared by Defendant's trial expert Rausser and his team at OnPoint Analytics, Inc.

apparently on the grounds that these materials are related to the "tutorial."  In addition,

Defendant has failed to produce certain discrete documents, particularly notes or memoranda of

an interview of Thomas Yorke, a former Refco employee, that may have been attended by

OnPoint's Laura Craft.[1]  By withholding this expert material, Defendant not only contravenes

the substance and intent of the Court's Tutorial Order, that "[a] party's tutorial materials will be

subject to discovery and can be used at trial to the extent that party . . . makes those materials

part of or refers to those materials in an expert-witness report" (Tutorial Order at 3, Oct. 4,

---

[1] The other discrete documents Defendant has failed to produce are (1) the engagement contract for the FICA A Fund case and (2) certain invoices that Gordon Rausser testified had been produced.  These documents are discussed more fully in this motion and do not appear to be withheld in connection with the tutorial.

2006), but also improperly seeks to stretch the "tutorial" protection well beyond true tutorial materials protected by this Court's Tutorial Order. Both Rausser's deposition testimony and the documents produced to date from OnPoint illustrate that the withheld "tutorial materials" are part of, or referred to, in Rausser's reports. Without access to such materials, Plaintiff is unfairly deprived of important material needed to cross examine Rausser. Accordingly, Plaintiff asks the Court to compel Defendant to produce, or cause to be produced, these withheld materials.

## Background

On September 12, 2007, Plaintiff served subpoenas on Rausser and OnPoint seeking all documents relating to the expert reports and opinions of Rausser.[2] On October 12, 2007, Defendant served its responses to Plaintiff's requests for production relating to expert materials and produced documents and a privilege log in response to the subpoenas served on Defendant's experts. In its responses to Plaintiff's requests for production, Defendant objected to the requests relating to Rausser and OnPoint "to the extent [they] seek[] information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006."[3] (Ex. A, Def.'s Resp. to Pl.'s Req. for Produc. Nos. 98, 99, 101, 104.) While Defendant produced a total of 3,735 pages of OnPoint documents in response to the subpoenas served on Rausser and OnPoint, only eight emails (totaling 133 pages with attachments) were produced for the six-month period from September 15, 2006, when OnPoint was apparently engaged by Defendant, through March 15,

---

[2] Plaintiff also sought these documents from Defendant in requests for production served on the same date.

[3] Defendant also asserted the same objections on behalf of Rausser and OnPoint in its objections to the subpoenas issued to Defendant's experts, dated October 1, 2007. (*See* Ex. B., Def.'s Objections to Subpoenas Duces Tecum to OnPoint Nos. 1, 2, 3, 4, 5, 6, 10, and Def.'s Objections to Subpoenas Duces Tecum to Rausser Nos. 1, 2, 3, 4, 5, 6, 10, 13.)

2007, when Defendant finally presented its tutorial.[4]  On December 14, 2007, Plaintiff sent

Defendant a letter asking for certain materials that appeared to be missing from the Rausser and

OnPoint productions and requested a discovery conference.[5]  (Ex. E.)  These withheld (and

unlogged) materials were discussed in a conference on December 21, 2007, but Defendant

declined to agree to produce any of the withheld documents.[6]  As explained below, Rausser's

deposition testimony and the other OnPoint documents produced by Defendant undermine

Defendant's apparent position that the six months worth of documents from the September 2006

through March 2007 time period are all exclusively tutorial materials, and hence not

discoverable.  Defendant's reliance on what amounts to a broad "tutorial privilege" is nothing

short of an abuse of the Court's Tutorial Order.  Defendant's failure to produce specific

documents requested by Plaintiff likewise has no justification.

## <u>Argument</u>

Federal Rule of Civil Procedure 26(b)(4) (Dec. 1, 2007)[7] provides for "discovery of

expert witnesses in order to allow the opposing party a fair opportunity to prepare to cross-

---

[4] While Plaintiff presented his tutorial on November 20, 2006, Defendant delayed its tutorial presentation to March 15, 2007.  It now appears that Defendant's delay carried perceived discovery protections.

[5] The requested documents would be responsive to Plaintiff's Requests for Production Nos. 98, 99, 100, 101, 103, 104 (Ex. A), requests 1, 2, 3, 4, 5, 6, 10, 11, 12 from Plaintiff subpoena issued to Rausser (Ex. C), and requests 1, 2, 3, 4, 5, 6, 10, 11, 12 from Plaintiff's subpoena issued to OnPoint (Ex. D).

[6] Defendant responded to Plaintiff's December 14, 2007 letter by letter dated December 17, 2007, in which Defendant's counsel took the position that they could not respond until on or after January 10, 2008 because Mr. Donohue was on leave.  (*See* Ex. F.)  A discovery conference was held beginning at 10 a.m. on December 21 in Plaintiff's counsel's office in Washington, D.C. and lasted approximately 40 minutes.  David Curtin, Lena Amanti, Michelle Abroms, and Kiara Rankin represented Plaintiff and John Lindquist, Barry Reiferson, and Heather Vann represented Defendant.  The three government counsel attending the meeting did not agree to produce any materials and expressed Defendant's desire to defer the issue.  Plaintiff's counsel did not agree to defer the issue and asked that Defendant's counsel contact Plaintiff's counsel by close of business on December 27, 2007 with a report on its position.  Plaintiff's counsel did not hear from Defendant's counsel on December 27, 2007.

[7] The December 1, 2007 amendments to Rule 26 "are intended to be stylistic only," Fed. R. Civ. P. 26 advisory committee's note (2007 amendments), and the substance of the rule has not changed.

examine the witness as to his or her expert opinion." *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 33 (D. Mass. 2006). Discovery may be sought, of course, as to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26 specifically requires that an expert's report contain "the data or other information *considered* by the witness in forming [the opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added). Failure to provide the information required by Rule 26(a)(2) may preclude the expert from giving testimony regarding opinions based on that information. Fed. R. Civ. P. 37(c)(1); *see also Primus v. United States*, 389 F.3d 231, 234-35 (1st. Cir. 2004) (affirming preclusion of expert testimony based on noncompliance with Rule 26(a)).

## I.    OnPoint Materials Withheld by Defendant Are Not Protected from Disclosure by the Court's Tutorial Order

On March 10, 2006, the Court expressed an interest in receiving a tutorial to explain certain issues involved in this case. Pursuant to the Court's request, Plaintiff and Defendant jointly drafted an order, which included a provision limiting the discoverability of information prepared for the tutorial. In light of the Court's suggestion that it would be helpful to "grant use immunity" (Status Conf. Tr. 20:25, Sept. 12, 2006), the parties agreed that tutorial materials would not be subject to discovery except to the extent that a party "makes those materials part of or refers to those materials in an expert-witness report." (Tutorial Order at 3, Oct. 4, 2006.) This limitation, in essence, protected the parties from having statements made in the tutorial operate as admissions. (*See* Status Conf. Tr. 24:21-23, Sept. 12, 2006.) This limitation was not meant to be a complete shield against discovery for all work done by a party's trial expert prior to the presentation of that party's tutorial. Nonetheless, this is the shield Defendant has now raised.

In September 2006, Defendant retained Rausser to prepare an expert report and to assist Defendant in the preparation of its tutorial, which Defendant presented on March 15, 2007.

While the tutorial and possibly some limited materials prepared by Rausser or his team at OnPoint may not be discoverable under the Court's Tutorial Order, Defendant's assertion of the Tutorial Order's protection is overbroad and inconsistent with the facts uncovered in the Rausser deposition and document discovery from his company OnPoint.

Significant evidence illustrating Defendant's overbroad assertion of the Tutorial Order's tutorial protection is found in two budget proposals drafted by OnPoint and provided to Defendant. Both budget proposals describe "Phase One" work to be performed from September 15, 2006 through November 15, 2006.[8]   (*See* Exs. G, H.)  Phase One work, estimated to cost $98,750, included a review of relevant documents and the design of an analytical model.  (*See* Exs. G, H.)  Both budget proposals also describe "Phase Two" work to be performed from November 16, 2006 through February 15, 2007.  (*See* Exs. G, H.)  Phase Two work, estimated to cost $400,183, included various analyses and the "development of a tutorial script."[9]  (*See* Exs. G, H.)  These two proposals make it clear that work was to be performed during the Phase One and Phase Two periods that was not specific to the tutorial.  Defendant's productions from OnPoint and Rausser, however, contain only *eight* emails from the six-month period prior to its tutorial presentation on March 15, 2007.[10]  Defendant should be ordered to produce the non-tutorial work (and tutorial-related work to the extent it was incorporated into Defendant's expert

---

[8] Each of these budget proposals is dated April 9, 2007, although one was transmitted to Defendant on April 9, 2007 (Ex. G) and the other on June 7, 2007 (Ex. H).

[9] Withheld documents relate to both the Phase One and Phase Two time periods. While difficult to determine without a log, it appears that Defendant is withholding Phase One and Phase Two materials under the protections of the Tutorial Order.

[10] The following emails were produced:  a November 17, 2006 email from government counsel transmitting documents; a January 8, 2007 email transmitting the High Tech engagement contract; three copies of a January 9, 2007 email transmitting protective orders; three copies of a January 10, 2007 email from government counsel transmitting documents; a February 12, 2007 email regarding tax returns; a March 2, 2007 email containing pleasantries; a March 12, 2007 email from government counsel transmitting documents; and a March 15, 2007 email transmitting a to-do list.

report), and provide a log to support its claim that nearly $500,000 (which constitutes about half of what Defendant paid Rausser and his team at OnPoint) was spent on non-discoverable tutorial preparation during Phase One and Phase Two.  Defendant has the burden of showing that OnPoint documents withheld on "tutorial" grounds come within this narrow limitation on expert discovery.

Additional evidence that discoverable expert materials are being improperly withheld is a comparison of Defendant's tutorial with Rausser's expert report (the "Rausser Report"). Portions of the Rausser Report are, in fact, Defendant's tutorial transcribed.  (*See* Exs. I, J.)  This evidence shows that, as anticipated by the Court's Tutorial Order, portions of Defendant's tutorial are "part of" Defendant's expert report.  In accordance with the Court's Tutorial Order, therefore, Plaintiff would be entitled to discovery of all of the tutorial preparation materials. While Plaintiff is not seeking drafts of the tutorial script, Defendant should be required to produce the other materials from Rausser and OnPoint that have been withheld.

Finally, the deposition testimony of Rausser himself evidences Defendant's overbroad assertion of the tutorial protection and waiver of any claim to a tutorial exception to expert discovery.  With respect to the work done in Phase One, Rausser testified that non-tutorial work was performed and that such records had been produced:

> Q.    Professor, with regard to materials, communications that Laura Craft or Ms. Wallace or others at OnPoint had with the government concerning what I'll call the first phase 1 in 2006 and, let's say, not work that was related to the tutorial, has that material, the nontutorial material, been produced by OnPoint in this case?
>
> A.    It's been produced in my report.
>
> Q.    All right.  Let's put your report aside and ask the question other than the report, have those communications or work that you have done and OnPoint has done, has that been produced by OnPoint in this case?
>
> A.    It's my understanding that everything that they had available was produced. That's my understanding.
>
> Q.    And did you get that understanding from OnPoint?

A.    Yes.

(Rausser Dep. 44:22-45:18, Nov. 30, 2007.)  Rausser further testified that "there's parts of the

tutorial that found its way into the report."  (Rausser Dep. 53:21-22, Nov. 30, 2007.)  In light of

its expert's unsurprising acknowledgement that non-tutorial work was performed by OnPoint and

Rausser in late 2006 and that work performed in connection with the tutorial was incorporated

into the expert report, Defendant should not be afforded the protections of the Court's Tutorial

Order and should be compelled to produce all of Rausser's and OnPoint's materials.

II.    **Defendant Should Be Required to Produce Certain Specific Items that Have Been Withheld**

In addition to failing to produce materials from Phase One and Phase Two of OnPoint's

engagement, Defendant has also failed to produce certain discrete items that are responsive to

Plaintiff's requests for production and subpoenas.  Specifically, Defendant has failed to produce

the engagement letter for OnPoint's work for FICA A Fund, invoices for the work performed by

OnPoint in connection with the FICA A Fund case, and notes of a phone interview of Thomas

Yorke in which the FICA A Fund case was discussed.  Because these documents are relevant,

not privileged, and not subject to any other protections, Defendant should be compelled to

produce them.

A.    **Engagement Letter and Invoices**

Plaintiff informed Defendant that the engagement letter for the High Tech matter had

been produced, but the engagement letter for the FICA A Fund matter was not produced.  (*See*

Ex. E.)  Plaintiff also noted that the expert's invoices to Defendant had not been produced,

though Rausser testified that:

A.    [Y]ou have the invoices, I believe.  It's a simple matter to look at the invoices and figure out exactly when we began work on this engagement.

Q.    You know, I'm not sure we have the invoices.

A.    Well, they were subpoenaed, and we produced them.

(Rausser Dep. 24:7-14, Nov. 30, 2007.)  No invoices from OnPoint to Defendant have been

produced to Plaintiff, and Defendant has not offered any explanation as to why invoices have not

been produced.  The invoices and engagement letter are discoverable, as they typically are,

because they contain information on the scope and terms of Rausser's and OnPoint's work, the

allocation of work among OnPoint staff, and Rausser's financial interest in this litigation.  All

this information is necessary for Plaintiff to cross examine Rausser.

### B.    Notes of Interview of Thomas Yorke

Plaintiff noted in its December 14, 2007 letter that Rausser testified that Laura Craft

informed him of the contents of a phone interview of Thomas Yorke (a former Refco employee)

before he began drafting his report.  (*See* Ex. E.)  Plaintiff believes that Laura Craft may have

been present during Defendant's interview of Mr. Yorke.  Any notes taken of this interview must

be produced to Plaintiff because, first, the interview was disclosed to the trial expert and, second,

they constitute critical evidence concerning Rausser's opinion that Mr. Yorke's deposition

testimony was inconsistent with what Mr. Yorke told Ms. Craft and Defense counsel in the

interview.  During his deposition, Rausser claimed that Mr. Yorke's deposition testimony

differed from his interview statements:

Q.    Tell us what you can recall about what Laura Craft said to you about the
government's interview of Mr. York.

A.    The key point that I was concerned about with regard to Refco was whether, in
fact, the commissions and/or bid-ask fees, how they were determined, and it's my
recollection that Ms. Craft informed me that during the interview, Mr. York had
represented that it was a commission, not a bid-ask fee, which he subsequently
testifies quite differently in his deposition.

(Rausser Dep. 12:2-3, Nov. 30, 2007.)  While Mr. Yorke testified that he gave the same

answers during the interview that he gave in his deposition (Ex. K., Yorke Dep. 142:10-14, Oct.

30, 2007), Rausser disputes this based on what he claims Laura Craft told him about the Yorke interview. Rausser has also concluded that the deposition testimony of Mr. Yorke and other fact witnesses was not credible:

> Q.   Do you recall the testimony of Mr. York from Refco and Mr. Ivan Ross, Mr. Buesinger, and Mr. Lien, to the effect that there was a head of the pin risk in the transactions?
>       . . .
>
> A.    I believe that they thought on paper that it existed. I also believe that their testimony on this specific matter is not credible, because if that were the case, the premium, the theoretical premium would have been much different than it was.

(Rausser Dep. 237:7-238:9, Nov. 30, 2007.) Because of Rausser's claims as to Mr. Yorke and because Plaintiff has no record of the Yorke interview, as Plaintiff was not a participant, Plaintiff needs the notes of the interview to evaluate and probe Rausser's opinion and credibility. Because Rausser received information on the Yorke interview prior to his report, and because Rausser opined on the topics discussed in the Yorke interview, it is clear that Rausser "considered" Mr. Yorke's statements within the meaning of Rule 26(a)(2)(B)(ii) and therefore this information must be disclosed.

Defendant has not produced any notes of the Yorke interview. Plaintiff does not know if Ms. Craft took notes and, if she did, whether they still exist. Whether taken by Laura Craft or Defense counsel, however, such notes are not subject to any work-product protection, are responsive to Plaintiff's subpoenas and requests for production, and should be produced because the Yorke interview was disclosed to the trial expert and he has made the contents of that interview an issue. Any notes memorializing the factual contents of the Yorke interview come within the expert discovery provisions in Rule 26 and should be produced.

1.     **Laura Craft's Notes of the Yorke Interview Are Not Protected by Any Privilege and Must Be Produced**

If Laura Craft took notes of the Yorke interview, those notes must be disclosed as material "considered" by an expert witness under Rule 26(a)(2)(B)(ii).  Laura Craft's notes are not protected by the attorney-client privilege or as attorney work product.  *See Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005) (requiring production of expert's notes from meeting with counsel).  Even if Laura Craft did not provide her actual notes to Rausser, Plaintiff is entitled to discover what material contained therein was reported to Rausser and what was not. Plaintiff has no other meaningful way to determine what information was provided to Rausser, and whether that information was a correct representation of what Mr. Yorke said during his interview.

2.     **Work-Product Protection Was Waived Over Defense Counsel's Notes by Disclosure of the Yorke Interview to the Trial Expert**

It is well established that an attorney's notes of a witness interview are typically protected from discovery as work product.  *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("[Work product] is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, [etc.]").  Important in this case, however, is the fact that the law also recognizes that an attorney waives this protection upon disclosure to third parties if the disclosure "has substantially increased the opportunities for potential adversaries to obtain the information."  *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003). Disclosure of such work product to a trial expert constitutes such a waiver.

Disclosure of a witness interview to a trial expert, or the expert's agent, results in waiver of work-product protection over counsel's interview notes where, as here, the trial expert considered the witness interview in forming his opinions.   Disclosure of counsel's notes is particularly called for in this case where the trial expert (and his agent) apparently have no notes

of the Yorke interview or of what was actually passed on to the expert about the interview.  It is now well accepted that work-product protection is waived over information provided to a testifying expert.  *See, e.g., Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 715-17 (6th Cir. 2006) (adopting the "overwhelming majority" view that Rule 26 requires disclosure of all material provided to an expert, including work product); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001) (holding that work product and attorney-client privileges are waived when material is provided to expert witnesses); *Dyson Tech. Ltd. v. Maytag Corp.*, 241 F.R.D. 247, 248, 251 (D. Del. 2007) (requiring the disclosure of all materials considered by experts, regardless of party's claims of attorney-client privilege or work-product protection).  For example, in *Granite Partners, L.P. v. Bear, Stearns & Co, Inc.*, work-product protection over a bankruptcy trustee's interview notes was waived because, *inter alia*, the trustee's expert relied on the notes and "inclusion of [the expert's] finding in the published report places the accuracy of his data and the validity of his analyses at issue and, thus, waives privilege on the supporting documents."  184 F.R.D. 49, 55 (S.D.N.Y. 1999).

Adopting this view, the court in *Suskind v. Home Depot Corporation* held that Rule 26 requires disclosure of "any material which was furnished to the witness by the attorney who retained him even though that material in other contexts must be considered core attorney work product."  No. 99-10575, 2001 U.S. Dist. LEXIS 1349, at *11 (D. Mass. Jan. 2, 2001).  Accordingly, the court ordered the parties to produce "all materials furnished to a testifying expert, including those composed by the attorney who retained the expert."  *Id.* at *3.  The court in *Suskind* rejected a contrary view expressed in *Nexxus Products Co. v. CVS N.Y., Inc.*, 188 F.R.D. 7 (D. Mass. 1999).  *See Suskind*, 2001 U.S. Dist. LEXIS 1349, at *3.

There is little doubt that statements made by a witness during an interview by counsel must be disclosed if the statements were provided to a testifying expert. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). Such a disclosure to a trial expert certainly is done with an understanding that the interview will have to be disclosed to opposing counsel. *See In re Raytheon*, 218 F.R.D. at 360 (holding that work-product protection is waived when a third-party's presence at a witness interview "substantially increase[s] the opportunities for potential adversaries to obtain the information"). Possibly realizing this, Rausser apparently took no notes of what Laura Craft told him about the Yorke interview. (*See* Rausser Dep. 12:12-15, Nov. 30, 2007 ("*Q*. [D]o you have notes of this discussion that you have with . . . Laura Craft? *A*. No.").) Similarly, Laura Craft, being a California lawyer and litigator, appears not have taken any notes of what Mr. Yorke actually said or what she represented to Rausser about the Yorke interview. With this record, or lack thereof, Plaintiff is presented with Rausser's sworn testimony that Mr. Yorke's interview statements are inconsistent with his deposition testimony. Contradicting Rausser, Mr. Yorke testified that his statements were in fact consistent. These circumstances, created by Defendant's disclosure and trial expert's testimony, give rise to the discoverability of counsel's record of the Yorke interview.

### 3.  Need for the Interview Notes

Rausser's claim that the Yorke interview and deposition are inconsistent, and his claim that Yorke's deposition testimony is not credible, leave no room to dispute that Plaintiff has substantial need for these notes. It is well established that a party may obtain documents containing ordinary work product if it "shows that it has substantial need for the materials to prepare its case and cannot, without hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also In re Grand Jury Sub.*, 220 F.R.D. 130, 144 (D. Mass. 2004) (explaining that Rule 26(b)(3) permits discovery of work product where there is

substantial need).  The need for discovery of disclosures to trial experts and the importance of information to cross examine trial experts are so well recognized that this Court should have no difficulty seeing Plaintiff's need outweighs any work product claim.

The circumstances here are quite distinct from the more typical instances, not involving experts, where one party seeks opposing counsel's interview notes based only on a claim of substantial need.  For example, in *SEC v. Stanard*, the defendants sought to compel production of the SEC's notes of witness interviews because defendants suspected the witnesses might have changed their stories.  No. 06-7736, 2007 U.S. Dist. LEXIS 46432, at *7 (S.D.N.Y. June 26, 2007).  The court denied the defendants' request, reasoning that if "this were a sufficient basis for a showing of substantial need . . . [this argument] would allow the work-product privilege to be overridden in any case in which there is a reason to suspect a witness of changing stories, that is to say, in almost every case."  *Id.* at *7-*8.  Two important facts distinguish the facts here from cases such as *Stanard*.  First, the government's interview of Mr. Yorke was likely conducted in the presence of an expert witness's agent and the contents of the interview were provided to, and considered by, the trial expert.  Second, the trial expert put the contents of the interview in play by testifying that the witness's interview and deposition statements are inconsistent.

Plaintiff's substantial need for counsel's notes arises not from Plaintiff's suspicion that Mr. Yorke may have changed his testimony, but from the government's expert's use of Mr. Yorke's interview statements.  Plaintiff cannot adequately cross examine Rausser as to his opinions unless Plaintiff knows what information Rausser was provided and what information Rausser (or Laura Craft) might have disregarded.  Moreover, the alleged discrepancy between Mr. Yorke's deposition testimony and Rausser's recollection of Mr. Yorke's interview

statements raises questions concerning the accuracy of information provided to Rausser and on Rausser's own credibility. Plaintiff cannot obtain an accurate record of Mr. Yorke's interview statements by other means and, therefore, Plaintiff's substantial need outweighs any work-product protection that might attach to counsel's notes.

## <u>Conclusion</u>

This motion seeks the classic expert discovery afforded in Rule 26. Defendant's extension of the tutorial protections to six months and nearly $500,000 worth of expert work product is overbroad. Such an extension of the tutorial protections were not authorized by the Court and should not be permitted. Defendant has also withheld other materials critical to Plaintiff's cross examination of Rausser. These withheld materials are not entitled to work-product protection. Plaintiff, moreover, has demonstrated a substantial need for these notes due to the unique circumstances presented here. Accordingly, Defendant should be compelled to produce the withheld materials prepared by, or transmitted to, Rausser and OnPoint, including any notes of the Yorke interview.

Dated this 2nd day of January 2008.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
          rbuch@mckeenelson.com
          lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email: jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 2, 2008.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 05-40151-FDS & 06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

**UNITED STATES' RESPONSE TO PLAINTIFF'S ELEVENTH SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS NOS. 98-129**

The United States, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure

and Rule 34.1 of the Local Rules of the United States District Court for the District of

Massachusetts, responds to Plaintiff's Eleventh Set of Requests for Production of Documents

Nos. 98-129 as follows:

**GENERAL OBJECTIONS**

1.    The United States objects to the requests to produce on the ground that the

materials requested are not relevant to this action and are also not reasonably calculated to lead to

the discovery of admissible evidence.

2.    The United States objects to the requests on the ground that they are overbroad,

unduly burdensome, vague and/or ambiguous.

3.    The United States also objects to the requests to produce as they seek documents

subject to the attorney work product privilege.

- 2 -

4.    The United States further objects to the requests to the extent they seek information that is protected by the deliberative process privilege.

5.    The United States further objects to the requests to the extent they seek information that is protected by the attorney-client privilege.

6.    The United States also objects to the requests to the extent they seek return information that is protected under 26 U.S.C. § 6103.

7.    The United States objects to the requests to the extent they seek information regarding *Fidelity High Tech Advisor A Fund, LLC v. United States*, Nos. 06-40243 and 06-40244 (D. Mass.)("Fidelity High Tech cases").  Requests regarding the Fidelity High Tech cases are not only in violation of the Court's order denying the plaintiff's motion to consolidate those cases with the Fidelity International cases but are also contrary to Judge Saylor's admonition at the status conference held on September 4, 2007 that "....you can't have it both ways.  Either their separate transactions or they're not."  Tr., p. 23, l.23-24.

8.    The United States objects to the requests to the extent they seek documents received from or provided to experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).

9.    The United States objects to the requests to the extent they request the drafts of the expert witness reports.  There is authority in the district where this litigation is filed holding that drafts are not discoverable.  *See Nexxus Product. Co. v. CVS New York, Inc.,* 188 F.R.D. 7 (D. Mass. 1999). *But cf., Suskind v. Home Depot Corp.,* 2001 U.S. Dist. LEXIS 1349 (D. Mass. Jan. 2, 2001).

- 3 -

10.    The United States objects to the requests to the extent they request information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

11.    The United States objects to the requests to the extent they request information that is not in the "possession, custody or control" of the United States.  See Fed. R. Civ. Pro. 34(a).

12.    The United States objects to the requests to the extent they request identical information subpoenaed from Gordon Rausser, On Point Analytics, A. Lawrence Kolbe, The Brattle Group and/or David Wayne LaRue and which is being produced pursuant to one or more of those subpoenas.

## RESPONSE TO REQUESTS

### Requests Relating to the Expert Report of Gordon Rausser

**Request for Production No. 98**:  All records, documents, and materials, received from or provided to Gordon Rausser in connection with the FICA A Fund cases or the Fidelity High Tech cases, including, but not limited to, communications, documents, and materials received from or provided to Gordon Rausser in connection with the Expert Report of Gordon Rausser.

**RESPONSE:**  The United States objects to Request #98 to the extent it seeks information regarding the Fidelity High Tech cases.  The United States also objects to Request #98 to the extent it seeks documents received from or provided to experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).  The United States further objects to Request #98 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.  The United States also objects to Request #98 as unduly burdensome.  The United States also objects to the production of any drafts of expert

- 4 -

witness reports and especially to any notes by counsel on drafts not seen by any expert or their

staff. Such notes are work product not subject to discovery. To the extent not objected to or

subject to any privilege, in response to Request #98, plaintiff is referred to Exhibit 4 "Material

Received or Relied Upon" attached to the Expert Report of Gordon Rausser and also to the

documents attached hereto.


Request for Production No. 99:  All records, documents, and materials, received from or
provided to OnPoint Analytics in connection with the FICA A Fund cases or the Fidelity High
Tech cases, including, but not limited to, communications, documents, and materials received
from or provided to OnPoint Analytics in connection with the Expert Report of Gordon Rausser.

**RESPONSE:**  The United States objects to Request #99 to the extent it seeks information

regarding the Fidelity High Tech cases. The United States also objects to Request #99 to the

extent it seeks documents received from or provided to experts acting as consulting experts as

opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further

objects to Request #99 to the extent it seeks information relating to the preparation, development

and presentation of the United States' tutorial, since that information is protected from disclosure

under the Court's order of October 4, 2006. The United States also objects to Request #99 as

unduly burdensome. The United States also objects to the production of any drafts of expert

witness reports and especially to any notes by counsel on drafts not seen by any expert or their

staff. Such notes are work product not subject to discovery. To the extent not objected to or

subject to any privilege, in partial response to Request #99, plaintiff is referred to Exhibit 4

"Material Received or Relied Upon" attached to the Expert Report of Gordon Rausser. To the

- 5 -

extent not objected to or subject to any privilege, documents responsive to this request were also

provided in response to Request #98.

Request for Production No. 100: All records, documents, and materials, received from or
provided to any third party in connection with the Expert Report of Gordon Rausser.

**RESPONSE:** The United States objects to Request #100 as overbroad, unduly burdensome,

vague and ambiguous. The United States also objects to Request #100 to the extent it seeks

identical information subpoenaed from Gordon Rausser or On Point Analytics and which is being

produced pursuant to those subpoenas. To the extent not objected to or subject to any privilege,

documents responsive to this request were provided in response to Request #98.

Request for Production No. 101: All communications between Defendant and Gordon Rausser,
OnPoint Analytics, or any other person concerning or relating to the Expert Report of Gordon
Rausser.

**RESPONSE:** The United States also objects to Request #101 to the extent it seeks documents

received from or provided to experts acting as consulting experts as opposed to as testifying

experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #101 to

the extent it seeks information relating to the preparation, development and presentation of the

United States' tutorial, since that information is protected from disclosure under the Court's order

of October 4, 2006. The United States also objects to Request #101 as unduly burdensome. The

United States also objects to Request #101 to the extent it seeks identical information

subpoenaed from Gordon Rausser or On Point Analytics and which is being produced pursuant

to those subpoenas. The United States objects to Request #101 to the extent it seeks documents

- 6 -

subject to the attorney-client privilege or constitutes work product. To the extent not objected to

or subject to any privilege, documents responsive to this request were provided in response to

Request #98.


Request for Production No. 102:  All drafts of the Expert Report of Gordon Rausser.

**RESPONSE:**  The United States objects to Request #102 since there is authority in the district

where this litigation is filed holding that drafts are not discoverable.  The United States also

objects to this request to the extent any draft contain notes by counsel and which were not seen

by any expert or their staff.  Such notes are work product not subject to discovery.  The United

States also objects to Request #102 to the extent it seeks documents subject to the attorney work

product privilege.


Request for Production No. 103:  All workpapers, ledgers, computations, notes, or other similar
materials pertaining to Gordon Rausser's, OnPoint Analytic's, or any third party's work on the
FICA A Fund cases or Fidelity High Tech cases in connection with the Expert Report of Gordon
Rausser.

**RESPONSE:**  The United States objects to Request #103 to the extent it seeks information

regarding the Fidelity High Tech cases.  The United States also objects to Request #103 to the

extent it seeks identical information subpoenaed from Gordon Rausser or On Point Analytics and

which is being produced pursuant to those subpoenas.


Request for Production No. 104:  All engagement letters, other documents reflecting the terms of
engagement, and invoices for the work done by Gordon Rausser or OnPoint Analytics in
connection with the FICA A Fund cases or the Fidelity High Tech cases.

- 7 -

**RESPONSE:** The United States objects to Request #104 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #104 to the extent it relates to documents received from or provided to experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #104 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. To the extent not objected to or subject to any privilege, documents responsive to this request are attached hereto.

Request for Production No. 105: Copies of each deposition transcript and trial transcript reflecting the testimony of Gordon Rausser in other cases in which he was offered as an expert from 1999 to the present.

**RESPONSE:** The United States objects to Request #105 to the extent it seeks information that is not in the "possession, custody or control" of the United States. See Fed. R. Civ. Pro. 34(a). The United States also objects to Request #105 to the extent it seeks identical information subpoenaed from Gordon Rausser or On Point Analytics and which is being produced pursuant to those subpoenas.

Request for Production No. 106: Copies of each expert report produced by Gordon Rausser in other cases in which he was offered as an expert from 1999 to the present.

**RESPONSE:** The United States objects to Request #106 to the extent it seeks information that is not in the "possession, custody or control" of the United States. See Fed. R. Civ. Pro. 34(a). The United States also objects to Request #105 to the extent it seeks identical information

2795315.1

- 8 -

subpoenaed from Gordon Rausser or On Point Analytics and which is being produced pursuant

to those subpoenas.


<u>Requests Relating to the Expert Report of A. Lawrence Kolbe</u>

<u>Request for production No. 107</u>:  All records, documents, and materials, received from or
provided to A. Lawrence Kolbe in connection with the FICA A Fund cases or the Fidelity High
Tech cases, including, but not limited to, communications, documents, and materials received
from or provided to A. Lawrence Kolbe in connection with the Expert Report of A. Lawrence
Kolbe.

**RESPONSE:**  The United States objects to Request #107 to the extent it seeks information

regarding the Fidelity High Tech cases.  The United States also objects to Request #107 to the

extent it seeks documents received from or provided to experts acting as consulting experts as

opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).  The United States further

objects to Request #107 to the extent it seeks information relating to the preparation,

development and presentation of the United States' tutorial, since that information is protected

from disclosure under the Court's order of October 4, 2006.  The United States also objects to

Request #107 as unduly burdensome.  The United States also objects to the production of any

drafts of expert witness reports and especially to any notes by counsel on drafts not seen by any

expert or their staff.  Such notes are work product not subject to discovery.  To the extent not

objected to or subject to any privilege, in response to Request #107, plaintiff is referred to the

documents attached hereto.


<u>Request for Production No. 108</u>:  All records, documents, and materials, received from or
provided to the Brattle Group in connection with the FICA A Fund cases or the Fidelity High

- 9 -

Tech cases, including, but not limited to, communications, documents, and materials received from or provided to the Brattle Group in connection with the Expert Report of A. Lawrence Kolbe.

**RESPONSE:** The United States objects to Request #108 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #108 to the extent it seeks documents received from or provided to experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #108 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. The United States also objects to Request #108 as unduly burdensome. The United States also objects to the production of any drafts of expert witness reports and especially to any notes by counsel on drafts not seen by any expert or their staff. Such notes are work product not subject to discovery. To the extent not objected to or subject to any privilege, documents responsive to this request were provided in response to Request #107.

Request for Production No. 109: All records, documents, and materials, received from or provided to any third party in connection with the Expert Report of A. Lawrence Kolbe.

**RESPONSE:** The United States objects to Request #109 as overbroad, unduly burdensome, vague and ambiguous. The United States also objects to Request #109 to the extent it seeks identical information subpoenaed from A. Lawrence Kolbe or The Brattle Group and which is being produced pursuant to those subpoenas. To the extent not objected to or subject to any privilege, documents responsive to this request were provided in response to Request #107.

2795315.1

- 10 -

<u>Request for Production No. 110</u>:  All communications between Defendant and A. Lawrence Kolbe, the Brattle Group, or any other person concerning or relating to the Expert Report of A. Lawrence Kolbe.

**RESPONSE:**  The United States also objects to Request #110 to the extent it seeks documents received from or provided to experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).  The United States further objects to Request #110 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.  The United States also objects to Request #110 as unduly burdensome.  The United States also objects to Request #110 to the extent it seeks identical information subpoenaed from A. Lawrence Kolbe or The Brattle Group and which is being produced pursuant to those subpoenas.  The United States objects to Request #110 to the extent it seeks documents subject to the attorney-client privilege or constitutes work product.  To the extent not objected to or subject to any privilege, documents responsive to this request were provided in response to Request #107.


<u>Request for Production No. 111</u>:  All drafts of the Expert Report of A. Lawrence Kolbe.

**RESPONSE:**   The United States objects to Request #111 since there is authority in the district where this litigation is filed holding that drafts are not discoverable.  The United States also objects to this request to the extent any draft contain notes by counsel and which were not seen by any expert or their staff.  Such notes are work product not subject to discovery.  The United

- 11 -

States also objects to Request #111 to the extent it seeks documents subject to the attorney work

product privilege.

Request for Production No. 112: All workpapers, ledgers, computations, notes, or other similar
materials pertaining to A Lawrence Kolbe's, the Brattle Group's, or any third party's work on the
FICA A Fund cases or the Fidelity High Tech cases in connection with the Expert Report of A.
Lawrence Kolbe.

**RESPONSE:** The United States objects to Request #112 to the extent it seeks information

regarding the Fidelity High Tech cases. The United States also objects to Request #112 to the

extent it seeks identical information subpoenaed from A. Lawrence Kolbe or The Brattle Group

and which is being produced pursuant to those subpoenas.

Request for Production No. 113: All engagement letters, other documents reflecting the terms of
engagement, and invoices for the work done by A. Lawrence Kolbe or the Brattle Group in
connection with the FICA A Fund cases or the Fidelity High Tech cases.

**RESPONSE:** The United States objects to Request #113 to the extent it seeks information

regarding the Fidelity High Tech cases. The United States also objects to Request #113 to the

extent it relates to documents received from or provided to experts acting as consulting experts as

opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further

objects to Request #113 to the extent it seeks information relating to the preparation,

development and presentation of the United States' tutorial, since that information is protected

from disclosure under the Court's order of October 4, 2006. To the extent not objected to or

subject to any privilege, documents responsive to this request are attached hereto.

- 12 -

Request for Production No. 114:  Copies of each deposition transcript and trial transcript
reflecting the testimony of A. Lawrence Kolbe in other cases in which he was offered as an
expert from 1999 to the present.

**RESPONSE:**  The United States objects to Request #114 to the extent it seeks information that

is not in the "possession, custody or control" of the United States.  See Fed. R. Civ. Pro. 34(a).

The United States also objects to Request #114 to the extent it seeks identical information

subpoenaed from A. Lawrence Kolbe or The Brattle Group and which is being produced

pursuant to those subpoenas.


Request for Production No. 115:  Copies of each expert report produced by A. Lawrence Kolbe
in other cases in which he was offered as an expert from 1999 to the present.

**RESPONSE:**  The United States objects to Request #115 to the extent it seeks information that

is not in the "possession, custody or control" of the United States.  See Fed. R. Civ. Pro. 34(a).

The United States also objects to Request #115 to the extent it seeks identical information

subpoenaed from A. Lawrence Kolbe or The Brattle Group and which is being produced

pursuant to those subpoenas.


### Requests Relating to the Expert Report of David LaRue

Request for Production No. 116:  All records, documents, materials, received from or provided to
David LaRue in connection with the FICA A Fund cases or the Fidelity High Tech cases,
including, but not limited to, communications, documents, and materials received from or
provided to David LaRue in connection with the Expert Report of David LaRue.

**RESPONSE:**  The United States objects to Request #116 to the extent it seeks information

regarding the Fidelity High Tech cases.  The United States also objects to Request #116 to the

- 13 -

extent it seeks documents received from or provided to experts acting as consulting experts as

opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further

objects to Request #116 to the extent it seeks information relating to the preparation,

development and presentation of the United States' tutorial, since that information is protected

from disclosure under the Court's order of October 4, 2006. The United States also objects to

Request #116 as unduly burdensome. The United States also objects to the production of any

drafts of expert witness reports and especially to any notes by counsel on drafts not seen by any

expert or their staff. Such notes are work product not subject to discovery. To the extent not

objected to or subject to any privilege, in response to Request #116, plaintiff is referred to the

documents attached hereto.


Request for Production No. 117: All records, documents, and materials, received from or provided to any person at the McIntire School of Commerce at the University of Virginia in connection with the FICA A Fund cases or the Fidelity High Tech cases, including, but not limited to, communications, documents, and materials received from or provided to any person at the McIntire School of Commerce at the University of Virginia in connection with the Expert Report of David LaRue.

RESPONSE: The United States objects to Request #117 to the extent it seeks information

regarding the Fidelity High Tech cases. The United States also objects to Request #117 to the

extent it seeks documents received from or provided to experts acting as consulting experts as

opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further

objects to Request #117 to the extent it seeks information relating to the preparation,

development and presentation of the United States' tutorial, since that information is protected

from disclosure under the Court's order of October 4, 2006. The United States also objects to

- 14 -

Request #117 as unduly burdensome. The United States also objects to the production of any

drafts of expert witness reports and especially to any notes by counsel on drafts not seen by any

expert or their staff. Such notes are work product not subject to discovery. To the extent not

objected to or subject to any privilege, documents responsive to this request were provided in

response to Request #116.


Request for Production No. 118: All records, documents, and materials, received from or
provided to any third party in connection with the Expert Report of David LaRue.

**RESPONSE:** The United States objects to Request #118 as overbroad, unduly burdensome,

vague and ambiguous. The United States also objects to Request #118 to the extent it seeks

identical information subpoenaed from David Wayne LaRue and which is being produced

pursuant to that subpoena. To the extent not objected to or subject to any privilege, documents

responsive to this request were provided in response to Request #116.


Request for Production No. 119: All communications between Defendant and David LaRue or
any other person concerning or relating to the Expert Report of David LaRue.

**RESPONSE:** The United States also objects to Request #119 to the extent it seeks documents

received from or provided to experts acting as consulting experts as opposed to as testifying

experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #119 to

the extent it seeks information relating to the preparation, development and presentation of the

United States' tutorial, since that information is protected from disclosure under the Court's order

of October 4, 2006. The United States also objects to Request #119 as unduly burdensome. The

- 15 -

United States also objects to Request #119 to the extent it seeks identical information

subpoenaed from David Wayne LaRue and which is being produced pursuant to that subpoena.

The United States objects to Request #119 to the extent it seeks documents subject to the

attorney-client privilege or constitutes work product. To the extent not objected to or subject to

any privilege, documents responsive to this request were provided in response to Request #116.


Request for Production No. 120:  All drafts of the Expert Report of David LaRue.

**RESPONSE:**  The United States objects to Request #120 since there is authority in the district

where this litigation is filed holding that drafts are not discoverable. The United States also

objects to this request to the extent any draft contain notes by counsel and which were not seen

by any expert or their staff. Such notes are work product not subject to discovery. The United

States also objects to Request #120 to the extent it seeks documents subject to the attorney work

product privilege.


Request for Production No. 121:  All workpapers, ledgers, computations, notes, or other similar
materials pertaining to David LaRue's or any third party's work on the FICA A Fund cases or the
Fidelity High Tech cases in connection with the Expert Report of David LaRue.

**RESPONSE:**  The United States objects to Request #121 to the extent it seeks information

regarding the Fidelity High Tech cases. The United States also objects to Request #121 to the

extent it seeks identical information subpoenaed from David Wayne LaRue and which is being

produced pursuant to that subpoena.

2795315.1

- 16 -

<u>Request for Production No. 122</u>:  All engagement letters, other documents reflecting the terms of engagement, and invoices for the work done by David LaRue in connection with the FICA A Fund cases or the Fidelity High Tech cases.

**RESPONSE:**  The United States objects to Request #122 to the extent it seeks information

regarding the Fidelity High Tech cases.  To the extent not objected to or subject to any privilege,

documents responsive to this request are attached hereto.

<u>Request for Production No. 123</u>:  Copies of each deposition transcript and trial transcript reflecting the testimony of David LaRue in other cases in which he was offered as an expert from 1999 to the present.

**RESPONSE:**  The United States objects to Request #123 to the extent it seeks information that

is not in the "possession, custody or control" of the United States.  See Fed. R. Civ. Pro. 34(a).

The United States also objects to Request #123 to the extent it seeks identical information

subpoenaed from David Wayne LaRue and which is being produced pursuant to that subpoena.

<u>Request for Production No. 124</u>:  Copies of each expert report produced by David LaRue in other cases in which he was offered as an expert from 1999 to the present.

**RESPONSE:**  The United States objects to Request #124 to the extent it seeks information that

is not in the "possession, custody or control" of the United States.  See Fed. R. Civ. Pro. 34(a).

The United States also objects to Request #124 to the extent it seeks identical information

subpoenaed from David Wayne LaRue and which is being produced pursuant to that subpoena.

2795315.1

- 17 -

Requests Relating to Other Matters

**Request for Production No. 125**:  All records, documents, and materials created, collected, or maintained by the Defendant describing, evaluating, categorizing or otherwise discussing DAD.

**RESPONSE:**  The United States objects to this request upon the ground the materials requested are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.  The United States additionally objects to this request to the extent it seeks return information that is protected under 26 U.S.C. § 6103.  Further, the United States objects to this request to produce to the extent it seeks documents that are protected by the deliberative process privilege, the attorney-client privilege and the attorney work product privilege.  The United States also objects to this request on the ground that it is overbroad and unduly burdensome.

**Request for Production No. 126**:  All records, documents, and materials reflecting the names of each taxpayer the Defendant has determined engaged in DAD.

**RESPONSE:**  The United States objects to this request upon the ground the materials requested are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.  The United States additionally objects to this request to the extent it seeks return information that is protected under 26 U.S.C. § 6103.  Further, the United States objects to this request to produce to the extent it seeks documents that are protected by the deliberative process privilege, the attorney-client privilege and the attorney work product privilege.  The United States also objects to this request on the ground that it is overbroad and unduly burdensome.

2795315.1

- 18 -

<u>Request for Production No. 127</u>:  All communications between Defendant and Oliver Peck or any person acting on behalf of Oliver Peck.

**RESPONSE:** The United States objects to this request to the extent the materials requested are

not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the

discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil

Procedure.  The United States additionally objects to this request to the extent it seeks return

information that is protected under 26 U.S.C. § 6103.  The United States also objects to this

request on the ground that it is overbroad and unduly burdensome.  The United States objects to

this request to the extent it seeks documents subject to the attorney-client privilege or constitutes

work product.   The United States further objects to the extent the information sought has been

furnished under the provisions of an income tax treaty with a foreign government and its use and

disclosure is governed by provisions of such treaties. The United States avers that there exists no

non-privileged written communications between Defendant and Oliver Peck or any person acting

on behalf of Oliver Peck with respect to the FICA A cases.


<u>Request for Production No. 128</u>:  All communications between Defendant and Martin Hawkes or any person acting on behalf of Martin Hawkes.

**RESPONSE:** The United States objects to this request to the extent the materials requested are

not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the

discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil

Procedure.  The United States additionally objects to this request to the extent it seeks return

information that is protected under 26 U.S.C. § 6103.  The United States also objects to this

request on the ground that it is overbroad and unduly burdensome. The United States objects to

this request to the extent it seeks documents subject to the attorney-client privilege or constitutes

work product. The United States further objects to the extent the information sought has been

furnished under the provisions of an income tax treaty with a foreign government and its use and

disclosure is governed by provisions of such treaties. The United States avers that there exists no

written communications between Defendant and Martin Hawkes or any person acting on behalf

of Martin Hawkes with respect to the FICA A cases.


Request for Production No. 129: All filings in any foreign court or correspondence relating to
the treaty requests submitted by Defendant in connection with the FICA A Fund cases or the
Fidelity High Tech cases.

**RESPONSE:** The United States also objects to this request on the ground that it is overbroad

and unduly burdensome since the United States has previously provided all such filings and

correspondence requested in Request #129.


Date: October 12, 2007

                                    *Heather L. Vann*
                                    HEATHER L. VANN
                                    Trial Attorney, Tax Division
                                    U.S. Department of Justice
                                    Post Office Box 55
                                    Ben Franklin Station
                                    Washington, D.C.  20044
                                    Telephone: (202) 307-2822

- 20 -

<u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' RESPONSE

TO PLAINTIFF'S ELEVENTH SET OF REQUEST FOR PRODUCTION OF DOCUMENTS has

been made upon the following by depositing a copy in the United States mail, postage prepaid, this

12th day of October, 2007:

        Ronald L. Buch, Jr.
        1919 M. Street, NW
        Suite 200
        Washington, DC 20036

        *Heather L. Vann*
        HEATHER L. VANN
        Trial Attorney, Tax Division
        U.S. Department of Justice
        Post Office Box 55
        Ben Franklin Station
        Washington, D.C.  20044
        Telephone: (202) 307-2822

2795315.1

# Exhibit B

IN THE UNITED STATES COURT FOR THE
DISTRICT OF MASSACHUSETTS

FIDELITY INTERNATIONAL CURRENCY )
ADVISOR A FUND, L.L.C., by the Tax Matters )
Partner, )
  )
  )
    Plaintiff, )
  )
  v. ) Civil Nos. 05-40151-FDS & 06-40130-FDS
  )
UNITED STATES OF AMERICA )
  )
    Defendant. )

## UNITED STATES' OBJECTIONS TO SUBPOENAS DUCES TECUM TO ONPOINT ANALYTICS, INC., GORDON RAUSSER, THE BRATTLE GROUP, A. LAWRENCE KOLBE AND DAVID WAYNE LARUE

The United States objects as follows on behalf of OnPoint Analytics, Inc., Gordon Rausser, The Brattle Group, A. Lawrence Kolbe and David Wayne LaRue to the subpoenas duces tecum (collectively the "Five Subpoenas") issued to them on September 12, 2007.

### GENERAL OBJECTIONS

1. The United States object to the Five Subpoenas to the extent that the materials requested are not relevant to this action or are also not reasonably calculated to lead to the discovery of admissible evidence.

2. The United States objects to the Five Subpoenas to the extent that they are overbroad, unduly burdensome, and/or vague or ambiguous.

3. The United States objects to the Five Subpoenas to the extent they seek information regarding *Fidelity High Tech Advisor A Fund, LLC v. United States*, Nos. 06-40243 and 06-40244 (D. Mass)("Fidelity High Tech cases"). Requests regarding the Fidelity High Tech cases

2774250.1

- 2 -

are not only in violation of the Court's order denying the plaintiff's motion to consolidate those

cases with the Fidelity International cases but are also contrary to Judge Saylor's admonition at

the status conference held on September 4, 2007 that "....you can't have it both ways. Either

their separate transactions or they're not." Tr., p. 23, l.23-24.

    4.    The United States objects to the Five Subpoenas to the extent they seek return

information that is protected under 26 U.S.C. § 6103.

    5.    The United States objects to the Five Subpoenas to the extent they seek documents

from experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ.

Pro. 26(b)(4)(B).

    6.    The United States objects to the Five Subpoenas to the extent they request the drafts

of the expert witness reports.  There is authority in the district where this litigation is filed

holding that drafts are not discoverable. *See Nexxus Product. Co. v. CVS New York, Inc.,* 188

F.R.D. 7 (D. Mass. 1999). *But cf., Suskind v. Home Depot Corp.,* 2001 U.S. Dist. LEXIS 1349

(D. Mass. Jan. 2, 2001).

    7.    The United States objects to the Five Subpoenas to the extent they request

information relating to the preparation, development and presentation of the United States'

tutorial, since that information is protected from disclosure under the Court's order of October 4,

2006.

- 3 -

## SPECIFIC OBJECTIONS

The United States sets forth its objections to specific requests for documents below. Production of documents in response to requests to which the United States has specifically objected is not a waiver of those objections.

Subpoena *duces tecum* directed to OnPoint Analytics, Inc.

The United States objects to the subpoena *duces tecum* directed to On Point Analytics, Inc., to the extent it is duplicative of the subpoena *duces tecum* directed to Gordon Rausser.

The United States objects to Request #1 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #1 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #1 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #2 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #2 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #2 to the extent it seeks information relating to the preparation, development and presentation of the United States'

- 4 -

tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #3 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #3 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #3 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #4 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #4 as duplicative of Request #3. The United States further objects to Request #4 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #4 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #5 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #5 as unduly burdensome. The United States further objects to Request #5 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #5 to the extent it seeks information

- 5 -

relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. In response to Request #5, plaintiff is referred to Exhibit 4 attached to the Expert Report of Gordon Rausser.

The United States objects to Request #6 to the extent it seeks information regarding the Fidelity High Tech cases. The United States objects to Request #6 as unduly burdensome. The United States further objects to Request #6 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #7 as vague and overly broad and unduly burdensome. The United States also objects to Request #7 as duplicitative of one of more other requests to On Point Analytics, Inc.

The United States objects to Request #9 since there is authority in the district where this litigation is filed holding that drafts are not discoverable.

The United States objects to Request #10 to the extent it seeks information regarding the Fidelity High Tech cases. The United States further objects to Request #10 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #12 as vague.

The United States objects to Request #13 as the documents sought are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of

2774250.1

- 6 -

admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The United States further objects to Request #13 as overly broad and unduly burdensome. The United States also objects to Request #13 as it seeks return information that is protected under 26 U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by judicial orders.

The United States objects to Request #14 as the documents sought are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The United States further objects to Request #14 as overly broad and unduly burdensome. The United States also objects to Request #14 as it seeks return information that is protected under 26 U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by judicial orders.

Subpoena *duces tecum* directed to Gordon Rausser

The United States objects to the subpoena *duces tecum* directed to Gordon Rausser to the extent it is duplicative of the subpoena *duces tecum* directed to On Point Analytics, Inc.

The United States objects to Request #1 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #1 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #1 to the extent it seeks information relating to the preparation, development and presentation of the United States'

- 7 -

tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #2 to the extent it seeks information regarding the Fidelity High Tech cases.  The United States also objects to Request #2 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).  The United States further objects to Request #2 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #3 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #3 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).  The United States further objects to Request #3 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #4 to the extent it seeks information regarding the Fidelity High Tech cases.  The United States also objects to Request #4 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts.  See Fed. R. Civ. Pro. 26(b)(4)(B).  The United States also objects to Request #4 as duplicative of Request #3.  The United States further objects to Request #4 to the extent it seeks information

2774250.1

- 8 -

relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #5 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #5 as unduly burdensome. The United States further objects to Request #5 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #5 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. In response to Request #5, plaintiff is referred to Exhibit 4 attached to the Expert Report of Gordon Rausser.

The United States objects to Request #6 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #6 as unduly burdensome. The United States further objects to Request #6 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #7 as vague and overly broad. The United States also objects to Request #7 as duplicitative of one of more other requests to Gordon Rausser.

The United States objects to Request #9 since there is authority in the district where this litigation is filed holding that drafts are not discoverable.

The United States objects to Request #10 to the extent it seeks information regarding the Fidelity High Tech cases. The United States further objects to Request #10 to the extent it seeks

2774250.1

- 9 -

information relating to the preparation, development and presentation of the United States'
tutorial, since that information is protected from disclosure under the Court's order of October 4,
2006.

The United States objects to Request #12 as vague.

The United States objects to Request #13 as the documents sought are not relevant to the
subject matter of this litigation and are not reasonably calculated to lead to the discovery of
admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The
United States further objects to Request #13 as overly broad and unduly burdensome. The
United States also objects to Request #13 as it seeks return information that is protected under 26
U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by
judicial orders.

The United States objects to Request #14 as the documents sought are not relevant to the
subject matter of this litigation and are not reasonably calculated to lead to the discovery of
admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The
United States further objects to Request #14 as overly broad and unduly burdensome. The
United States also objects to Request #14 as it seeks return information that is protected under 26
U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by
judicial orders.

Subpoena *duces tecum* directed to The Brattle Group

The United States objects to the subpoena *duces tecum* directed to The Brattle Group,

2774250.1

- 10 -

Inc., to the extent it is duplicative of the subpoena *duces tecum* directed to A. Lawrence Kolbe.

The United States objects to Request #1 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #1 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #1 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #2 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #2 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #2 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #3 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #3 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #3 to the extent it seeks information relating to the preparation, development and presentation of the United States'

- 11 -

tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #4 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #4 as duplicative of Request #3. The United States further objects to Request #4 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #4 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #5 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #5 as unduly burdensome. The United States further objects to Request #5 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #5 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. In response to Request #5, plaintiff will receive a list of the documents sought.

The United States objects to Request #6 to the extent it seeks information regarding the Fidelity High Tech cases. The United States objects to Request #6 as unduly burdensome. The United States further objects to Request #6 to the extent it seeks information relating to the

2774250.1

- 12 -

preparation, development and presentation of the United States' tutorial, since that information is

protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #7 as vague and overly broad and unduly

burdensome.  The United States also objects to Request #7 as duplicitative of one of more other

requests to The Brattle Group.

The United States objects to Request #9 since there is authority in the district where this

litigation is filed holding that drafts are not discoverable.

The United States objects to Request #10 to the extent it seeks information regarding the

Fidelity High Tech cases.  The United States further objects to Request #10 to the extent it seeks

information relating to the preparation, development and presentation of the United States'

tutorial, since that information is protected from disclosure under the Court's order of October 4,

2006.

The United States objects to Request #12 as vague.

The United States objects to Request #13 as the documents sought are not relevant to the

subject matter of this litigation and are not reasonably calculated to lead to the discovery of

admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The

United States further objects to Request #13 as overly broad and unduly burdensome.  The

United States also objects to Request #13 as it seeks return information that is protected under 26

U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by

judicial orders.

2774250.1

- 13 -

The United States objects to Request #14 as the documents sought are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The United States further objects to Request #14 as overly broad and unduly burdensome. The United States also objects to Request #14 as it seeks return information that is protected under 26 U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by judicial orders.

Subpoena *duces tecum* directed to A. Lawrence Kolbe

The United States objects to the subpoena *duces tecum* directed to A. Lawrence Kolbe to the extent it is duplicative of the subpoena *duces tecum* directed to The Brattle Group, Inc.

The United States objects to Request #1 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #1 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #1 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #2 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #2 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See

2774250.1

- 14 -

Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #2 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #3 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #3 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #3 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #4 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #4 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #4 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #5 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #5 as unduly burdensome. The United States further objects to Request #5 to the extent it seeks documents from experts

2774250.1

- 15 -

acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #5 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. In response to Request #5, plaintiff will receive a list of the documents sought.

The United States objects to Request #6 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #6 as unduly burdensome. The United States further objects to Request #6 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #7 as vague and overly broad. The United States also objects to Request #7 as duplicitative of one of more other requests to A. Lawrence Kolbe.

The United States objects to Request #9 since there is authority in the district where this litigation is filed holding that drafts are not discoverable.

The United States objects to Request #10 to the extent it seeks information regarding the Fidelity High Tech cases. The United States further objects to Request #10 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #12 as vague.

2774250.1

- 16 -

The United States objects to Request #13 as the documents sought are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The United States further objects to Request #13 as overly broad and unduly burdensome. The United States also objects to Request #13 as it seeks return information that is protected under 26 U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by judicial orders.

The United States objects to Request #14 as the documents sought are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The United States further objects to Request #14 as overly broad and unduly burdensome. The United States also objects to Request #14 as it seeks return information that is protected under 26 U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by judicial orders.

### Subpoena *duces tecum* directed to David Wayne LaRue

The United States objects to Request #1 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #1 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #1 to the extent it seeks information relating to the preparation, development and presentation of the United States'

- 17 -

tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #2 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #2 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #2 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006.

The United States objects to Request #3 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #3 as unduly burdensome. The United States further objects to Request #3 to the extent it seeks documents from experts acting as consulting experts as opposed to as testifying experts. See Fed. R. Civ. Pro. 26(b)(4)(B). The United States further objects to Request #3 to the extent it seeks information relating to the preparation, development and presentation of the United States' tutorial, since that information is protected from disclosure under the Court's order of October 4, 2006. In response to Request #3, plaintiff will receive a list of the documents sought.

The United States objects to Request #4 to the extent it seeks information regarding the Fidelity High Tech cases. The United States also objects to Request #4 as unduly burdensome. The United States further objects to Request #4 to the extent it seeks information relating to the

2774250.1

- 18 -

preparation, development and presentation of the United States' tutorial, since that information is

protected from disclosure under the Court's order of October 4, 2006.

     The United States objects to Request #5 as vague and overly broad and unduly

burdensome.  The United States also objects to Request #5 as duplicitative of one of more other

requests to David Wayne LaRue.

     The United States objects to Request #7 since there is authority in the district where this

litigation is filed holding that drafts are not discoverable.

     The United States objects to Request #8 to the extent it seeks information regarding the

Fidelity High Tech cases.   The United States further objects to Request #8 to the extent it seeks

information relating to the preparation, development and presentation of the United States'

tutorial, since that information is protected from disclosure under the Court's order of October 4,

2006.

     The United States objects to Request #10 as vague.

     The United States objects to Request #11 as the documents sought are not relevant to the

subject matter of this litigation and are not reasonably calculated to lead to the discovery of

admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The

United States further objects to Request #11 as overly broad and unduly burdensome.  The

United States also objects to Request #11 as it seeks return information that is protected under 26

U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by

judicial orders.

- 19 -

The United States objects to Request #12 as the documents sought are not relevant to the subject matter of this litigation and are not reasonably calculated to lead to the discovery of admissible evidence as is required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The United States further objects to Request #12 as overly broad and unduly burdensome. The United States also objects to Request #12 as it seeks return information that is protected under 26 U.S.C. § 6103 and/or information that is otherwise confidential or protected from disclosure by judicial orders.

Dated: October 1, 2007

*Heather L. Vann*

HEATHER L. VANN
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-2822

2774250.1

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the UNITED STATES' OBJECTIONS TO

SUBPOENAS DUCES TECUM TO ONPOINT ANALYTICS, INC., GORDON RAUSSER, THE

BRATTLE GROUP, A. LAWRENCE KOLBE AND DAVID WAYNE LARUE has been made

upon the following via hand delivery this 1st day of October, 2007:


Ronald Buch, Jr.
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C.  20036


HEATHER L. VANN
Trial Attorney, Tax Division

Exhibit C

AO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Northern | DISTRICT OF | California |

Fidelity International Currency Advisor A Fund, L.L.C.

**V.**

United States

### SUBPOENA IN A CIVIL CASE

Case Number:[1]  05-40151 & 06-40130 (D. Mass.)

TO:  Gordon Rausser
      University of California - Agricultural & Resource Economics
      207 Giannini Hall / MC 3310
      Berkeley, CA  94720-3310

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | |
|  | DATE AND TIME |
|  | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attachment

| PLACE       1919 M Street, NW, Suite 200, Washington, DC, 20036 | DATE AND TIME 9/26/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   *ATTORNEY FOR PLAINTIFF* | DATE 9/12/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Ronald L. Buch, Jr., McKee Nelson, LLP, 1919 M Street, NW, Washington, DC 20036
(202) 327-2078

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                      DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## ATTACHMENT TO SUBPOENA TO
## GORDON RAUSSER FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 45, Gordon Rausser, is hereby required to produce for inspection and copying the documents set forth below, from whichever office or location these documents may exist.

The production of the requested documents may be effected by mailing the originals or clear copies of each to David J. Curtin, McKee Nelson LLP, 1919 M Street NW, Suite 200, Washington, D.C. 20036. If you are unwilling or unable to transmit originals or copies in the manner described above, you are requested to advise the undersigned counsel.

## DEFINITIONS

1.     "Communication" means any correspondence in any form including paper and electronic forms, and including, but not limited to, the following: letter, note, electronic mail, facsimile, or telegram.

2.     "Defendant" means the United States of America, including the Tax Division of the Department of Justice and the Internal Revenue Service.

3.     "Document" should be construed liberally and means all originals and copies, kept in any form, including paper and electronic form.

4.     "Expert Report of Gordon Rausser" means the expert and rebuttal reports prepared by Gordon Rausser in the matter of *Fidelity International Currency Advisor A Fund, LLC v. United States,* Nos. 05-40151 and 06-40130 (D. Mass.) and all drafts thereof.

5.     "FICA A Fund" means Fidelity International Currency Advisor A Fund LLC.

6.     "FICA A Fund cases" means *Fidelity International Currency Advisor A Fund, LLC v. United States,* Nos. 05-40141 and 06-40130 (D. Mass.).

7.     "Fidelity High Tech" means Fidelity High Tech Advisor A Fund, LLC.

8.     "Fidelity High Tech cases" means *Fidelity High Tech Advisor A Fund, LLC v. United States*, Nos. 06-40243 and 06-40244 (D. Mass.).

9.     "Gordon Rausser" means Gordon Rausser, Ph.D. and all persons acting on his behalf, assisting him, or holding themselves out as his representative.

10.     "OnPoint Analytics" means the OnPoint Analytics, Inc. identified on page six of the Expert Report of Gordon Rausser.

11.     "Person" means an individual, partnership, company, corporation, organization, or any other entity.

## DOCUMENTS DEMANDED

1.     All communications between Gordon Rausser and Defendant in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser.

2.     All communications between OnPoint Analytics and Defendant in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser.

3.     All communications between Gordon Rausser and any other person in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser including, but not limited to, communications between or among Gordon Rausser and those persons assisting him.

4.     All communications between Gordon Rausser and any other person in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser including but not limited to, communications between or among Gordon Rausser and those persons assisting him.

2

5.    All records, documents, and materials received from Defendant in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser.

6.    All records, documents, and materials received from any other person in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser

7.    All documents identifying every person who provided assistance in preparing the Expert Report of A. Gordon Rausser.

8.    All documents reflecting the work done by any third party in connection with the Expert Report of Gordon Rausser.

9.    All drafts of the Expert Report of Gordon Rausser.

10.    All engagement letters, other documents reflecting the terms of engagement, and invoices for the work done by Gordon Rausser, OnPoint Analytics, or any third party in connection with the FICA A Fund cases or the Fidelity High Tech cases.

11.    All workpapers, ledgers, computations, notes, or other similar materials pertaining to Gordon Rausser's or OnPoint Analytics' work on the Expert Report of Gordon Rausser.

12.    All workpapers, ledgers, computations, notes, or similar materials pertaining to any other person's work on the Expert Report of Gordon Rausser.

13.    Copies of each deposition transcript and trial transcript reflecting the testimony of Gordon Rausser in other cases in which he was offered as an expert from 1999 to the present, including, but not limited to, transcripts from testimony or depositions provided in the cases listed in Exhibit 3 of the Expert Report of Gordon Rausser.

14.    Copies of each expert report produced by Gordon Rausser in other cases in which he was offered as an expert from 1999 to the present, including, but not limited to, reports prepared in connection with the cases listed in Exhibit 3 of the Expert Report of Gordon Rausser.

# Exhibit D

AO88  (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

_____Northern_____    DISTRICT OF    _____California_____

Fidelity International Currency Advisor A Fund, L.L.C.

V.

United States

## SUBPOENA IN A CIVIL CASE

Case Number:[1] 05-40151 & 06-40130 (D. Mass.)

TO:  OnPoint Analytics, Inc.
     2000 Powell Street, Suite 860
     Emeryville, CA 94608

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attachment

| PLACE      1919 M Street, NW, Suite 200, Washington DC, 20036 | DATE AND TIME    9/26/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    ATTORNEY FOR PLAINTIFF | DATE    9/12/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Ronald L. Buch, Jr., McKee Nelson, LLP, 1919 M Street, NW, Suite 200, Washington, DC 20036
(202) 327-2078

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

**ATTACHMENT TO SUBPOENA TO
ONPOINT ANALYTICS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 45, OnPoint Analytics, is hereby required to produce for

inspection and copying the documents set forth below, from whichever office or location these

documents may exist.

The production of the requested documents may be effected by mailing the originals or

clear copies of each to David J. Curtin, McKee Nelson LLP, 1919 M Street NW, Suite 200,

Washington, D.C. 20036.  If you are unwilling or unable to transmit originals or copies in the

manner described above, you are requested to advise the undersigned counsel.

## DEFINITIONS

1.      "Communication" means any correspondence in any form including paper and

electronic forms, and including, but not limited to, the following: letter, note, electronic mail,

facsimile, or telegram.

2.      "Defendant" means the United States of America, including the Tax Division of

the Department of Justice and the Internal Revenue Service.

3.      "Document" should be construed liberally and means all originals and copies,

kept in any form, including paper and electronic form.

4.      "Expert Report of Gordon Rausser" means the expert and rebuttal reports

prepared by Gordon Rausser in the matter of *Fidelity International Currency Advisor A Fund,

LLC v. United States* Nos. 05-40151 and 06-40130 (D. Mass.) and all drafts thereof.

5.      "FICA A Fund" means Fidelity International Currency Advisor A Fund, LLC.

6.      "FICA A Fund cases" means *Fidelity International Currency Advisor A Fund,

LLC v. United States,* Nos. 05-40151 and 06-40130 (D. Mass.).

7.     "Fidelity High Tech" means Fidelity High Tech Advisor A Fund, LLC.

8.     "Fidelity High Tech cases" means *Fidelity High Tech Advisor A Fund, LLC v. United States*, Nos. 06-40243 and 06-40244 (D. Mass.).

9.     "Gordon Rausser" means Gordon Rausser, Ph.D. and all persons acting on his behalf, assisting him, or holding themselves out as his representative.

10.     "OnPoint Analytics" means the OnPoint Analytics, Inc. identified on page six of the Expert Report of Gordon Rausser.

11.     "Person" means an individual, partnership, company, corporation, organization, or any other entity.

## DOCUMENTS DEMANDED

1.     All communications between Gordon Rausser and Defendant in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser.

2.     All communications between OnPoint Analytics and Defendant in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser.

3.     All communications between OnPoint Analytics and any other person in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser including, but not limited to, communications between or among Gordon Rausser and those persons assisting him.

4.     All communications between OnPoint Analytics and any other person in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser including, but not limited to, communications between or among Gordon Rausser and those persons assisting him.

2

5.     All records, documents, and materials received from Defendant in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser.

6.     All records, documents, and materials received from any other person in connection with the FICA A Fund cases, the Fidelity High Tech cases, or the Expert Report of Gordon Rausser

7.     All documents identifying every person who provided assistance in preparing the Expert Report of Gordon Rausser.

8.     All documents reflecting the work done by any third party in connection with the Expert Report of Gordon Rausser.

9.     All drafts of the Expert Report of Gordon Rausser.

10.     All engagement letters, other documents reflecting the terms of engagement, and invoices for the work done by Gordon Rausser, OnPoint Analytics, or any third party in connection with the FICA A Fund cases or the Fidelity High Tech cases.

11.     All workpapers, ledgers, computations, notes, or other similar materials pertaining to Gordon Rausser's or OnPoint Analytics', work on the Expert Report of Gordon Rausser.

12.     All workpapers, ledgers, computations, notes, or similar materials pertaining to any other person's work on the Expert Report of Gordon Rausser.

13.     Copies of each deposition transcript and trial transcript reflecting the testimony of Gordon Rausser in other cases in which he was offered as an expert from 1999 to the present, including, but not limited to, transcripts from testimony or depositions provided in the cases listed in Exhibit 3 of the Expert Report of Gordon Rausser.

14.     Copies of each expert report produced by Gordon Rausser in other cases in which he was offered as an expert from 1999 to the present, including, but not limited to, reports prepared in connection with the cases listed in Exhibit 3 of the Expert Report of Gordon Rausser.

# Exhibit E

## McKee Nelson LLP

DAVID J. CURTIN
Direct Dial: (202) 775-8669
dcurtin@mckeenelson.com

*Correspondence from:*
> WASHINGTON, DC

1919 M STREET, NW
SUITE 200
WASHINGTON, DC 20036
*Telephone* 202.775.1880
*Facsimile* 202.775.8586

NEW YORK, NY

ONE BATTERY PARK PLAZA
34TH FLOOR
NEW YORK, NY 10004
*Telephone* 917.777.4200
*Facsimile* 917.777.4299

December 14, 2007

**VIA E-MAIL AND FEDERAL EXPRESS**

Dennis M. Donohue
U.S. Department of Justice, Tax Division
Civil Trial Section, Northern Region
555 Fourth Street, NW, Room 7204
Washington, DC 20001

      Re:    *Fidelity International Currency Advisor A Fund, L.L.C. v. United States,* Nos. 05-
            40151 & 06-40130 (D. Mass.)

Dear Dennis:

      I am writing to address four issues that arise from our deposition of Gordon Rausser on November 30, 2007 and review of the OnPoint Analytics ("OnPoint") production.

      First, OnPoint produced an engagement contract for the High Tech matter, but not for the FICA A Fund matter. *See* OPA000015-25. We request that OnPoint and Defendant promptly produce all engagement contracts responsive to the subpoenas issued to Gordon Rausser and OnPoint and to Plaintiff's Eleventh Set of Requests for Production.

      Second, Professor Rausser stated in his deposition that OnPoint produced its invoices for work performed in this matter. Rausser Dep. 21:6-13 (Nov. 30, 2007).[1] Our review of the documents produced by OnPoint, however, shows that we have not been provided any invoices. Indeed, Laura Craft's letter transmitting OnPoint's materials in response to Plaintiff's subpoena does not list invoices as an enclosure. *See* OPA000001. We request that OnPoint and Defendant produce all invoices responsive to the subpoenas issued to Gordon Rausser and OnPoint and to Plaintiff's Eleventh Set of Requests for Production.

      Third, two OnPoint budget proposals (OPA003864-67 and OPA004043-46) indicate that nearly $500,000 was allocated to work performed by Rausser and OnPoint from September 15, 2006 through February 15, 2007. However, but for five emails from this period no documents were produced by OnPoint. Although the budget proposals suggest that some of the work performed during this time period related to Defendant's tutorial, certainly not all of it can be

---

[1] All citations to the November 30, 2007 Rausser deposition refer to the rough draft of the transcript, as the final draft is not currently available.

Dennis M. Donohue
December 14, 2007
Page 2

withheld as "tutorial" material. Moreover, Judge Saylor's October 10, 2006 order provides that a party's tutorial materials will be subject to discovery if those materials become part of an expert witness's report. Professor Rausser specifically stated in his deposition that analyses performed from September 15, 2006 through February 15, 2007 were "produced in my report," Rausser Dep. 42:5, and that "there's parts of the tutorial that found its way into the report," *id.* 50:20-21. We request that OnPoint and Defendant promptly produce all materials from this time period that are responsive to the subpoenas issued to Gordon Rausser and OnPoint and to Plaintiff's Eleventh Set of Requests for Production. In the event you claim some of these OnPoint materials can be withheld on tutorial protected grounds (or some other grounds), the withheld documents should be logged.

Fourth, Professor Rausser testified that information regarding government counsels' interview of Thomas Yorke was disclosed to him through Laura Craft. *See* Rausser Dep. 7:7-15. Neither Defendant nor OnPoint has produced evidence of the communications between or among government counsel, Laura Craft and Mr. Yorke. If Ms. Craft participated in the Yorke interview, her notes should have been produced. If her notes were discarded you should so advise us. This evidence is responsive to the subpoenas issued to Gordon Rausser and OnPoint and to Plaintiff's Eleventh Set of Requests for Production, and we request that these materials promptly be produced. In view of the fact that government counsel disclosed the Yorke interview to its expert and in view of the expert's deposition testimony on this point, government counsels' interview notes (or memoranda) should be produced, particularly if Ms. Craft has no notes.

If you object to production of these documents, we request that a discovery conference pursuant to Local Rule 37.1 take place as soon as possible and no later than January 3, 2008.

Sincerely,

David J. Curtin

cc:    John A. Lindquist
       Barry E. Reiferson
       Heather L. Vann

# Exhibit F



**U.S. Department of Justice**

**Tax Division**

|  |  |
|---|---|
| Facsimile No. (202) 514-5238 | Please reply to:  Civil Trial Section, Northern Region |
| Trial Attorney: Heather L. Vann | P.O. Box 55 |
| Attorney's Direct Line: (202) 307-2822 | Ben Franklin Station |
| | Washington, D.C.  20044 |

5-36-10254
CMN 2005106280

December 17, 2007

<u>Via Federal Express</u>

David J. Curtin, Esquire
McKee Nelson LLP
Suite 200
1919 M Street, NW
Washington, DC 20036

Re:    *Fidelity Int'l v. United States*, Nos. 05-40151 & 06-40130 (D. Mass.)

Dear Mr. Curtin:

This letter is in response to your letter to Mr. Donohue dated December 14, 2007 regarding Gordon Rausser and OnPoint Analytics in which you requested a discovery conference on or before January 3, 2008. First, please be advised that lead counsel for the United States, Mr. Donohue, is currently on leave and will continue to be on leave until January 10, 2008. Thus, in the event we can not resolve the issues raised in your letter before January 10, 2008, we request that the parties hold a discovery conference after January 10, 2008. In the meantime, we have forwarded your letter to OnPoint Analytics and we will provide a more substantive response to your letter once we receive additional information from OnPoint Analytics. If you have any questions, please do not hesitate to call me at the number listed above.

Sincerely,

HEATHER. L. VANN
Trial Attorney
Civil Trial Section, Northern Region

# Exhibit G

**Chandra Wallace**

| | |
|---|---|
| **From:** | Chandra Wallace |
| **Sent:** | Tuesday, April 10, 2007 10:35 PM |
| **To:** | Laura Craft |
| **Subject:** | FW: The REAL Revised Memo. |

**Attachments:** Further Revised Budget Estimate Fidelity International 04 09 07.doc

Here is the revised work plan memo.

---

**From:** Chandra Wallace
**Sent:** Mon 4/9/2007 5:30 PM
**To:** 'Reiferson, Barry E. (TAX)'
**Cc:** Laura Craft
**Subject:** The REAL Revised Memo.

I apologize for the error! This is the correct version.
Chandra

9/27/2007

OPA003864



**Privileged and Confidential**

**Fidelity International Currency Advisor**
Revised Work Plan and Budget

**To:**   Barry Reiferson, Esq.
          Department of Justice, Tax Division

**From:** Laura R. Craft
          OnPoint Analytics, Inc.

**Date:** April 9, 2007

As requested, this memo sets forth the proposed budget for expert services of Gordon C. Rausser, Ph.D., and all supporting staff in connection with the Son of Boss tax shelter litigation identified as *Fidelity International Currency Advisor A Fund LLC. v. United States of America*, USDC D. Mass. No. 05-40151 FDS.

Work will proceed in five phases: 1) Assessment, 2) Conclusions, 3) Reports, 4) Deposition, and 5) Trial Testimony. After completion of each of the first four phases, a product and progress review will be conducted with you before proceeding with the next phase. The budget contained herein is the best estimate of cost based upon the currently available information, but may change as additional information becomes available. OnPoint will communicate regularly with you regarding project status and billings in proportion to budget. This budget pertains to professional fees and does not include out of pocket expenses for items such as data acquisition and travel. These items will be passed through at cost. OnPoint does not charge clients for internal expenses such as copying, printing, telephone, facsimile and computer usage, and treats these items as part of its normal operating overhead. We are familiar with and will comply with government guidelines regarding expenses such as travel.

We understand that some initial work may have already been performed by another firm or expert. If you own the results as accessible work product, and if they can effectively be incorporated into our analysis, this may have a positive effect on the budget. With regard to the second phase of our work ("Conclusions"), the ultimate charges will depend heavily upon how many individual transactions comprise the overall structure and the form and specificity of detail contained in the available transactional documents. Our budget does not include extensive data entry services. With regard to the fourth phase ("Reports"), the scope of the included rebuttal report is highly dependent upon whether initial reports are filed simultaneously, or whether the plaintiffs file their report with sufficient lead time for us to thoroughly respond in our initial report. In addition, we have not accounted for the cost of attending the opposing expert(s) deposition(s) in the event that you wish us to do so. Finally, the budget for the fifth phase ("Trial Testimony") presumes that graphs, charts and other visuals appearing in the Reports are sufficient for use at trial. This phase of the budget therefore does not incorporate the cost of developing extensive new demonstratives for use at trial.

Following approval of the original work plan and commencement of work, the Department of Justice requested that we become involved on a deeper level with the initial transaction analysis to be presented to the court. Based on this request, and subject to revision based on new information, our revised estimate of the total cost of the project, expected to span approximately 13 months, is $645,783, as itemized below.

   1. **Phase One:  Assessment  and Model Design**
      Time Period: 9/15/06 – 11/15/06
      Total Estimated Hours: 285
      Total Estimated Cost: $98,750



During this initial phase, we will review all of the contract documents and related tax opinion(s) and design the analytical model for evaluating potential economic returns and risk profile of each of the proposed transactions, individually and collectively.

### 2.  Phase Two:  Data Analysis, Simulations and Conclusions
Time Period: 11/16/06 – 2/15/07
Total Estimated Hours: 1,235
Total Estimated Cost: $400,183

In this second phase, we will collect and load all relevant market data, extract and load all transactional data, code and run all models and simulations, and form conclusions about both the prospective (ex ante) and actual (ex post) economic returns and risk. We will also set up benchmark risk/return comparisons with other recognized, legitimate investment structures.  We will consult with other experts in the field of financial engineering, and with videography and animation specialists. In addition, we will assist in development of graphic techniques effective to illustrate for the court the complex financial structures and engineering underlying the taxpayer transaction. We will assist in analysis of discovery requests and responses to develop the data necessary to our modeling process, and will assist in development of a tutorial script that accurately simplifies the financial concepts necessary to lay understanding of the taxpayer's transaction.

### 3.  Phase Three: Reports
Time Period: 2/16/07 – 5/31/07
Total Estimated Hours: 245
Total Estimated Cost: $80,115

In the third phase we will draft an initial and one rebuttal report, including graphs, charts, tables and illustrations as appropriate.  Back-up copies of the reports (for later reference) will contain complete source footnoting as well as data extracts and model outputs for future reference in deposition and trial preparation. We will also compile and supply an Appendix of all materials relied upon.

### 4.  Phase Four: Deposition and Preparation
Time Period: 6/1/07 – 8/1/07
Total Estimated Hours: 67
Total Estimated Cost: $29,915

Actual deposition testimony time is estimated at 8 hours.  The balance of the time in this phase is comprised of materials preparation, review, meetings with you, and travel.

### 5.  Phase Five: Trial Testimony and Preparation
Time Period: 8/2/07 – 11/1/07
Total Estimated Hours: 70
Total Estimated Cost: $36,820

Phase five, trial testimony, includes multiple preparation sessions, travel, and actual testimony and court waiting time.

### Professional Services Rate Schedule
### Cases Commencing in 2006

- Testifying Expert (Dr. Gordon C. Rausser) - $650
- Project Manager - $350

OPA003866



- Database Architect and Statistician - $ 300
- Financial/Derivatives Analyst - $300
- Staff Economist - $250
- Junior Analyst - $200
- Project Assistant - $90
- Data Technician - $50

OPA003867

# Exhibit H

⚠ You replied on 6/8/2007 9:38 AM.
This message was sent with high importance.
Attachments can contain viruses that may harm your computer. Attachments may not display correctly.

**Laura Craft**

| From: | Chandra Wallace | Sent: | Thu 6/7/2007 3:44 PM |
|---|---|---|---|
| To: | John Galindo; Laura Craft | | |
| Cc: | | | |
| Subject: | FW: Needing your help again, John | | |
| Attachments: | 📄 June 2007 Budget Estimate Fidelity International.doc(67KB) | | |

Attaching the upward revision--use this attached one instead.
Thanks!

---

**From:** Chandra Wallace
**Sent:** Thu 6/7/2007 3:38 PM
**To:** John Galindo
**Cc:** Laura Craft
**Subject:** Needing your help again, John

Hello there,
I am hoping you can help me get something out by FedEx--I know it's a short deadline, but I just got ahold of the client (who was home sick today and came into the office tonight to catch up, poor bean).

The document is here:
P:\Client Materials\Client Specific\DOJ (Fidelity International)\01. Correspondence\June 2007 Budget Estimate Fidelity International

I've also attached a copy. It's a new budget estimate that we need to get to him right away, but he doesn't want us to email it, so we need to send it FedEx.

Can you please print the document out and have Laura look it over, then FedEx it to:
Barry Reiferson, Esq.
Department of Justice
555 Fourth Street NW
Room #7832
Washington DC, 20001

Check the "Bill Recipient" box, and put down this FedEx acct number: 15102394-0.

If you can get it out in time for 10am delivery or thereabouts, I would be most grateful. :) I would be second-most grateful if you can get it out for delivery any time tomorrow.
Thank you!!
Chandra

OPA004043



***Privileged and Confidential***        ***Fidelity International Currency Advisor***
Revised Work Plan and Budget

**To:**   **Barry Reiferson, Esq.**
          **Department of Justice, Tax Division**
**From:**  **Laura R. Craft**
          **OnPoint Analytics, Inc.**
**Date:**  **April 9, 2007**

As requested, this memo sets forth the proposed budget for expert services of Gordon C. Rausser, Ph.D., and all supporting staff in connection with the Son of Boss tax shelter litigation identified as *Fidelity International Currency Advisor A Fund LLC. v. United States of America*, USDC D. Mass. No. 05-40151 FDS.

Work will proceed in five phases: 1) Assessment, 2) Conclusions, 3) Reports, 4) Deposition, and 5) Trial Testimony. After completion of each of the first four phases, a product and progress review will be conducted with you before proceeding with the next phase. The budget contained herein is the best estimate of cost based upon the currently available information, but may change as additional information becomes available. OnPoint will communicate regularly with you regarding project status and billings in proportion to budget. This budget pertains to professional fees and does not include out of pocket expenses for items such as data acquisition and travel. These items will be passed through at cost. OnPoint does not charge clients for internal expenses such as copying, printing, telephone, facsimile and computer usage, and treats these items as part of its normal operating overhead. We are familiar with and will comply with government guidelines regarding expenses such as travel.

We understand that some initial work may have already been performed by another firm or expert. If you own the results as accessible work product, and if they can effectively be incorporated into our analysis, this may have a positive effect on the budget. With regard to the second phase of our work ("Conclusions"), the ultimate charges will depend heavily upon how many individual transactions comprise the overall structure and the form and specificity of detail contained in the available transactional documents. Our budget does not include extensive data entry services. With regard to the fourth phase ("Reports"), the scope of the included rebuttal report is highly dependent upon whether initial reports are filed simultaneously, or whether the plaintiffs file their report with sufficient lead time for us to thoroughly respond in our initial report. In addition, we have not accounted for the cost of attending the opposing expert(s) deposition(s) in the event that you wish us to do so. Finally, the budget for the fifth phase ("Trial Testimony") presumes that graphs, charts and other visuals appearing in the Reports are sufficient for use at trial. This phase of the budget therefore does not incorporate the cost of developing extensive new demonstratives for use at trial.

Following approval of the original work plan and commencement of work, the Department of Justice requested that we become involved on a deeper level with the initial transaction analysis to be presented to the court. Based on this request, and subject to revision based on new information, our revised estimate of the total cost of the project, expected to span approximately 19 months, is $895,167, as itemized below.

> **1. *Phase One: Assessment and Model Design***
> Time Period: 9/15/06 – 11/15/06
> Total Estimated Hours: 285
> Total Estimated Cost: $98,750

OPA004044



OnPoint

During this initial phase, we will review all of the contract documents and related tax opinion(s) and design the analytical model for evaluating potential economic returns and risk profile of each of the proposed transactions, individually and collectively.

### 2. Phase Two: Data Analysis, Simulations and Conclusions
Time Period: 11/16/06 – 2/15/07
Total Estimated Hours: 1,235
Total Estimated Cost: $400,183

In this second phase, we will collect and load all relevant market data, extract and load all transactional data, code and run all models and simulations, and form conclusions about both the prospective (ex ante) and actual (ex post) economic returns and risk. We will also set up benchmark risk/return comparisons with other recognized, legitimate investment structures. We will consult with other experts in the field of financial engineering, and with videography and animation specialists. In addition, we will assist in development of graphic techniques effective to illustrate for the court the complex financial structures and engineering underlying the taxpayer transaction. We will assist in analysis of discovery requests and responses to develop the data necessary to our modeling process, and will assist in development of a tutorial script that accurately simplifies the financial concepts necessary to lay understanding of the taxpayer's transaction.

### 3. Phase Three: Reports
Time Period: 2/16/07 – 8/31/07
Total Estimated Hours: 929
Total Estimated Cost: $219,469

In the third phase we will draft an initial and one rebuttal report, including graphs, charts, tables and illustrations as appropriate. Back-up copies of the reports (for later reference) will contain complete source footnoting as well as data extracts and model outputs for future reference in deposition and trial preparation. We will also compile and supply an Appendix of all materials relied upon.

### 4. Phase Four: Deposition and Preparation
Time Period: 8/1/07 – 10/1/07
Total Estimated Hours: 134
Total Estimated Cost: $59,830

Actual deposition testimony time is estimated at 8 hours. The balance of the time in this phase is comprised of materials preparation, review, meetings with you, and travel.

### 5. Phase Five: Trial Testimony and Preparation
Time Period: 10/2/07 – 03/31/08
Total Estimated Hours: 70
Total Estimated Cost: $36,820

Phase five, trial testimony, includes multiple preparation sessions, travel, and actual testimony and court waiting time.

### Professional Services Rate Schedule
### Cases Commencing in 2006

- Testifying Expert (Dr. Gordon C. Rausser) - $650
- Project Manager - $350

OPA004045



- Database Architect and Statistician – $ 300
- Financial/Derivatives Analyst – $300
- Staff Economist – $250
- Junior Analyst – $200
- Project Assistant – $90
- Data Technician – $50

# Exhibit I

## IV.  Options Terminology

The transactions here were comprised of carefully balanced options pairs that virtually offset each other. An option involves the payment of an up-front premium by the buyer in exchange for the future right to buy or sell a particular financial asset or commodity known as the underlying asset. The price at which the underlying asset will ultimately be made available is known as the strike price.  The difference between this strike price and the current market price for the asset on the date of exercise, known as its spot price, determines the option's value.  If the spot price meets or surpasses the strike price, the option is profitable and will be exercised.  This is referred to as being "in the money."  If the spot price by maturity does not meet or surpass the strike price the option is referred to as being "out of the money" and it will expire worthless without being exercised.  In that case, the seller of the option will keep the initial premium he received and will not have to make any payout on the option.

Options are considered either "American" or "European," based upon when they can be exercised. An American option may be exercised by the holder at any time during the life of the option. By contrast, a European option can only be exercised on its final day, which is also its expiration date. All of the options in this transaction were "European" style options, meaning that the original contract terms only permitted them to be exercised on the final day.  Despite this fact, each of the options was terminated early by agreement, remaining outstanding for only a small fraction of the time provided for in the contract.  The plan for these early terminations was set forth in advance in a number of written Transaction Outlines.

9

1   the buyer the difference between the strike price set in the

2   contract and the actual market price for the asset at the

3   expiration date.

4           Options can be applied to a wide range of financial

5   assets, including stocks, currencies, fixed income securities,

6   interest rates, commodities, or other trading products.  The

7   financial asset or commodity on which the option is based is

8   called its underlying asset.

9           Standardized options with fixed quantities and

10  expiration dates are traded on many regulated exchanges;

11  however, customized option contracts can also be arranged in

12  nonregulated transactions between private parties, who contract

13  directly with each other.  These are referred to as

14  over-the-counter transactions and are entered into directly

15  between two identified parties.

16          Options are considered either American or European,

17  based upon when they can be exercised.  An American option may

18  be exercised by the holder at any time during the life of the

19  option.

20          By contrast, a European option can only be exercised

21  on its final day, which is its expiration date.  All of the

22  taxpayer's options in this case were European-style options,

23  meaning that they could only be exercised in the final day and

24  that their profitability would be determined by the market

25  price of the underlying asset on that date.  Even though an

1  option is European, it is possible for the holder to close out,

2  or terminate, the option early if the counterparty agrees.  All

3  of the options in this transaction were terminated early.

4        The buyer of an option acquires the right, but not the

5  duty, to exercise the option, and it will do so only if the

6  ultimate market conditions make that exercise profitable.  As a

7  result, the purchase of an option is essentially a one-way bet.

8  Other than the potential loss of the premium paid for the

9  transaction, the buyer has no risk and only the potential for

10  gain.  The seller of the option, however, is in a very

11  different position.  His upside is limited to keeping the

12  premium he initially collected for the option, but he is

13  exposed to the risk that he will have to pay out under the

14  option if the market turns against him.

15        To illustrate, we will discuss an option based on a

16  variable interest rate known as the London Interbank Offered

17  Rater, or LIBOR.  LIBOR is a daily reference rate based on the

18  rates in which banks offer to lend each other unsecured funds

19  in the London wholesale or interbank market.  Information is

20  collected based on activity throughout the day for various

21  maturities, ranging from overnight to one-year loans in a

22  number of different currencies.  The resulting filtered rates

23  are published once daily by the British Bank Association.

24  LIBOR is the world's most widely used benchmark for short-term

25  lending rates and provides the basis for numerous financial

# Exhibit J

would affect them equally but in opposite directions. As a result, at any point in time, one

side of the pair would be producing an apparent "gain" while the other side would be

producing an apparent "loss" as illustrated in Figure 2.

Figure 2: Offsetting Option Relationship to Spot Price Movement



In the Euro quartet acquired by Fidelity International, the purchased call and sold

put were both bets that the Euro would become stronger relative to the US Dollar.  They

were counterbalanced by a sold call and a purchased put that were bets in the opposite

direction.  No matter which direction the exchange rate moved, one side of each pair

would gain value, while the other would lose value.  In the pair of options made up of

calls, if the Euro increased in value the purchased call would exhibit gain, and the sold

call would exhibit loss. If, on the other hand, the Euro decreased in value, these positions

would be reversed. The same observation applies to the quartet of JPY/USD options.

The ability to use even modest price movements to create the appearance of

dramatic gain or loss is illustrated by the promoter's own valuations of the USD/EUR

options in the first 24 hours following their acquisition. The written daily reports in

25

1    of cash collateral it had posted with Refco.

2          Dr. Gordon Rausser, at the Robert Gordon Sproul, a

3    distinguished professor, at the University of California,

4    Berkeley, and an expert in futures and options markets,

5    explains the structure of these two quartets of foreign

6    currency options.

7          DR. RAUSSER:  When traders discuss structures built

8    from multiple options, they commonly refer to the individual

9    options as legs within the overall structure.  Each leg gains

10   or losses value over time as it becomes closer or farther from

11   being in the money due to price movement in the underlying

12   asset.

13          In this case, each pair of currency options

14   effectively had a gain leg and a loss leg.  In the Euro

15   quartets, the purchased call and sold put were both bets that

16   the Euro would become stronger relative to the U.S. dollar.

17   They were counterbalanced by a sold call and purchased put that

18   were bets in the opposite direction.  No matter which direction

19   the exchange rate moved, one side of each pair would gain value

20   while the other would lose value.  In the pair of options made

21   up of calls, if the Euro increased in value, the purchase call

22   would be the gain leg.  And the sold call would be the loss

23   leg.  If, on the other hand, the Euro decreased in value, these

24   positions would be reversed.

25          NARRATOR:  As Dr. Rausser explained, the holder of a

# Exhibit K

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------x

FIDELITY INTERNATIONAL

CURRENCY ADVISOR A FUND, L.L.C.,

by the Tax Matters Partner,

                    Plaintiffs,

     -against-                Civil Action No.

UNITED STATES OF AMERICA,        05-40151

                    Defendant.

------------------------------------------x

VIDEOTAPED DEPOSITION OF:

THOMAS H. YORKE

Tuesday, October 30, 2007

New York, New York

Reported in stenotype by:
Rich Germosen, CCR, CRCR, RPR, CRR, CLR

THOMAS YORKE

                    THOMAS H. YORKE

1

2       Q.      I'm not interested in going into

3  the details of that call, but let me ask you

4  this:  In that conversation that you had prior to

5  coming in today with folks from the Justice

6  Department concerning this matter, were you asked

7  questions very much like the ones you were asked

8  today by government counsel?

9       A.      Yes.

10      Q.      And can you tell me if your

11 answers then were the same answers essentially

12 that you gave today?

13      A.      I would say they were essentially

14 the same answers.

15      Q.      Before you joined Refco did you

16 trade or have experience in trading derivatives?

17      A.      Yes.

18      Q.      You joined Refco in 1997 or 1998?

19      A.      1997.

20      Q.      All right.

21              And during your work at Refco from

22 1997 up to the time you first became involved in

23 trades for Fidelity International or Fidelity

24 World, had you been engaged in trading in

25 derivatives?