UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Nos. 05-40151-FDS (D. Mass.) |
| | ) | 06-40130-FDS (D. Mass.) |
| v. | ) | |
| | ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS RELATING TO TAX SHELTERS KNOWN AS HOMER, PICO, AND DAD**

The United States opposes the plaintiff's motion to compel production of unrelated documents and the contemporaneous motion to compel a Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition of the Internal Revenue Service ("IRS").[1]

The plaintiff seeks to obtain documents relating to tax-shelter products other than the FDIS product it bought, and other taxpayers, none of which have anything to do with this case either as pattern or other evidence. The other-product documents and testimony are not relevant under even a broad reading of Rule 26.

The plaintiff also seeks to examine the IRS through a Rule 30(b)(6) deposition so that it can similarly seek testimony about the other tax-shelter products. First, the testimony sought, like the documents, are not relevant. Second, the testimony sought is solely on matters of law–

---

[1]In the interest of economy, the United States combines its discussions in opposition to the two contemporaneously filed motions to compel production of documents and a Rule 30(b)(6) deposition.

although the plaintiff attempts to dress it up as something else.  The plaintiff aims to examine the IRS in this *de novo* proceeding[2] on how it is determined that tax-shelter products in general are "substantially similar" to those described in Notice 2000-44, and specifically how it is determined (according to the plaintiff) that three other tax shelter products– that is, products that are not the FDIS tax shelter at issue in this case– are not substantially similar to those described in Notice 2000-44.

Even if the information the plaintiff seeks were somehow even remotely relevant, which it is not, it would be protected by the deliberative process privilege.  Additionally, the other-taxpayer information in the IRS's hands is also protected from disclosure, even to counsel for the United States, by 26 U.S.C. § 6103.

The two motions opposed here are the plaintiff's fourth and fifth motions aimed at forcing the IRS to disclose and discuss its unofficial positions on matters that are neither discoverable nor relevant.  The first three motions have already been denied.[3]  These fourth and fifth motions– which contain some of the most strained logic to date– should also be denied, and the plaintiff should not be allowed to waste additional time with similarly inappropriate and repetitive motion practice.

---

[2] See, *Jade Trading v. United States*--- Fed.Cl. ----, 2007 WL 4553043 at *32 (Fed.Cl., Dec. 21, 2007).

[3] See Docket Entry no. 114, denying plaintiff's motion to compel; Electronic Clerk's Notes of 7/12/2007 denying plaintiff's motion for reconsideration of denial of motion to compel; and Electronic Clerk's Notes of 10/02/2007 denying plaintiff's motion to compel.

I.      **The United States Already Turned Over The Relevant Evidence in this Case, and Made Clear its Claims and Defenses Through its Answers to Contention Interrogatories.**

The United States' contentions and the facts supporting them– including the documentary evidence– have already been completely turned over to the plaintiff.  The United States has compiled and shared with the plaintiff a document database of approximately 2.4 million pages, all relating in some manner to the FDIS transaction at issue.

In addition to providing the plaintiff with all relevant evidence, the United States answered extensively the plaintiff's contention interrogatories.  As stated in those answers, and related to these motions, the United States contends, in defense of this action, that the plaintiff purchased and engaged in an abusive tax shelter known as FDIS.  One of the plaintiff's interrogatories asked if the United States contends that the Fidelity International transaction is "the same as or substantially similar to a transaction described in IRS Notice 2000-44."  In that regard, the United States responded that it does so contend, and further answered, in relevant part, as follows:

> [A] transaction will be treated as being the same as or "substantially similar" to one of the types of transactions that the IRS has determined to be a tax avoidance transaction if the transaction is expected to obtain the same or similar types of tax benefits and is either factually similar or is based on the same or a similar tax strategy. [FN, *See e.g.*, Treas. Reg. § 1.6011-4T(b)(1)(i).]  The term "substantially similar" is to be broadly construed in favor of disclosure.  [FN, *See e.g.*, Treas. Reg. § 1.6011-4T(b)(1)(i).]  The United States' position is that the transaction at issue is "substantially similar" to a transaction described in Notice 2000-44.  Notice 2002-44 is entitled "Tax-Avoidance Using Artificially High Basis" and sets forth two totally dissimilar transactions –  both of which have as their common unifying threads (1) the attempt to artificially-inflate the basis of a partnership interest and (2) the use of that inflated basis to support the deductibility of uneconomic losses.  In the two factual situations in Notice 2000-44,  the inflated bases of the partnership interests are derived through a carefully-sequenced set of pre-planned steps by which alleged liabilities on the taxpayers' transactions are assumed by a partnership.  In both transactions, the taxpayers characterize such liabilities as "contingent liabilities" for

purposes of Section 752 of the Internal Revenue Code – with the consequence that the taxpayers' bases in their partnership interests do not reflect their actual economic investment. In both transactions, the taxpayers actual out-of-pocket investment is a only small fraction of their claimed basis in their partnership interests, thereby causing the basis in their partnership interests to be artificially hyper-inflated.

That is exactly what occurred in the instant case where the taxpayer claims to have a basis in Fidelity International which is equal to the alleged premiums paid for the long interest-rate options unreduced by the alleged premiums received for the short interest-rate options. This treatment results in the taxpayer claiming a basis in his partnership interest that is 65.7 times his actual cash investment. Moreover, both the transactions set forth in Notice 2000-44 and the transaction at issue generate losses which have no economic reality and both rely upon artificially-inflated partnership bases to support the deductibility of the uneconomic loss. Thus, the transaction at issue is substantially similar to the Notice 2000-44 transactions because it seeks to obtain the same type of tax benefits and is based on a similar tax strategy as the transactions described in the Notice.

The United States' contentions are clear, and the evidence relating to them has been shared. Because the plaintiff is already fully aware of the United States' legal contentions and analysis on this issue, its strategy seems to be to put the IRS on trial, and to confuse the real issues relating to the FDIS tax-shelter product with frequent references to other tax-shelter products. That tactic should be rejected.

## II.    Documents Relating to Other Tax-shelter Products and the IRS's Views on Those Other Tax-Shelter Products Are Not Remotely Relevant to Any Issue in this Case.

The plaintiff asks in its incorporated Rule 30(b)(6) motion papers what it calls the essential question: "whether one party should be able to depose its adversary concerning the facts upon which that *adversary relies in putting forth its claims or defenses*."[4] With that one question, the plaintiff has summed up the first reason these motions should be denied– they have nothing to do with the facts upon which the United States relies in putting forth its claims and

---

[4]Pl. Mem. of Law in Supp. of Mot. to Compel 30(b)(6) Dep. at p. 1, ¶ 1. (Emphasis added.)

4

defenses.  Instead, the plaintiff seeks facts and legal analyses relating to other taxpayers and other tax-shelter products not at issue in this litigation and, contrary to plaintiff's contention, upon which the United States does not rely.

The testimony and documents the plaintiff seeks are not relevant under Rule 26, even broadly construed.  This is a *de novo* proceeding in which the Court will apply U.S. Code provisions enacted by Congress, regulations promulgated by the Treasury Department, and well-established case law to determine the correct tax treatment of the transaction at issue and, to the extent it has jurisdiction, the applicability of various penalties.

Plaintiff correctly observes that whether its FDIS transaction is substantially similar to a Notice 2000-44 transaction relates to whether Temp. Treas. Reg. § 1.752-6T (T.D. 9062, 2003-2 C.B. 46) applies to require Richard Egan to reduce his basis in Fidelity International and also may be relevant as to whether Fidelity International is liable for accuracy-related penalties.[5] However, this issue of "*substantial similarity*" is not one of fact – but one of pure law.  Indeed, the term "substantially similar" is itself defined in temporary and proposed regulations, 26 C.F.R. § 1.6011-4T, issued on June 14, 2002, before Richard Egan filed his tax return and, accordingly, required that the FDIS transaction be disclosed on his personal income tax return.[6]  The regulations stated, in part, as follows with respect to the term "substantially similar":

> Some taxpayers and promoters have applied the substantially similar standard in an overly narrow manner to avoid disclosure. For instance, some taxpayers and promoters have made subtle and insignificant changes to a listed transaction in order to claim that their transactions are not subject to disclosure.  Others have taken the position that

---

[5]Pl. Mem. of Law in Supp. of Mot. to Compel 30(b)(6) Dep. at pp. 7-8.

[6]*See*, Treas. Reg. § 1.6011-4(b).

their transaction is not substantially similar to a listed transaction because they have an opinion concluding that their transaction is proper. The IRS and Treasury believe that these interpretations are improper. Accordingly, the regulations are modified in §1.6011-4T and §301.6111-2T to clarify that the term substantially similar includes any transaction that is expected to obtain the same or similar types of tax benefits and that is either factually similar or based on the same or similar tax strategy. Further, the term substantially similar must be broadly construed in favor of disclosure. This modification does not imply that a transaction was not otherwise the same as or substantially similar to a listed transaction prior to this modification.

67 FR 41324.

The Court will undoubtedly be presented with the facts of the plaintiff's FDIS transaction to be compared with the transactions described in Notice 2000-44 to determine whether the former is "substantially similar" to the latter.[7] That determination is a purely legal determination based upon an application of the law to the facts of Notice 2000-44 and the FDIS transaction. The status of other transactions is not relevant, and even assuming they were, the facts regarding these other transactions must be based on the facts as described in official notices and other published announcements of the IRS.

The plaintiff is seeking no less than to have the United States designate, under Rule 30(b)(6), IRS employees to testify about the IRS's legal analyses relating to other tax-shelter products. Eight of the 13 "Topics of Testimony" in the plaintiff's Rule 30(b)(6) deposition notice, and all of its disputed document-production demands, relate to tax-shelter products not at issue here. But for one particularly vague demand, the other-tax-shelter-product information

---

[7]The plaintiff's allegation that a look at copyright law helps its cause is fundamentally wrong. Of course courts and others compare an allegedly infringing label at issue to its alleged model to determine substantial similarity. That is what should happen here– the Court should compare the FDIS tax-shelter product to the Notice 2000-44 published descriptions. That is a far cry from comparing an unrelated copyright (or tax-shelter product) to a model to draw inferences about the allegedly substantially similar one.

relates to products known as HOMER, PICO, DAD, and the *Fidelity High Tech* transaction.  The rule 30(b)(6) topics relating to HOMER, PICO, DAD, and the transaction at issue in *Fidelity High Tech*[8] are as follows (emphasis added to each, and each renumbered):

1.    The facts of the FICA A Fund transaction that make it *substantially similar or not to the facts of the HOMER transaction*.

2.    The facts of the FICA A Fund transaction that make it *substantially similar or not to the facts of the PICO transaction*.

3.    The facts of the FICA A Fund transaction that make it *substantially similar or not to the facts of the DAD transaction*.

4.    *The facts of the PICO transaction* that make it substantially similar or not substantially similar to the facts of a transaction described in Notice 2000-44.

5.    *The facts of the HOMER transaction* that make it substantially similar or not substantially similar to the facts of a transaction described in Notice 2000-44.

6.    *The facts of the DAD transaction* that make it substantially similar or not substantially similar to the facts of a transaction described in Notice 2000-44.

7.    The facts of the FICA A Fund transaction that make it substantially similar or not to the transactions in the pending case of *Fidelity High Tech* . . . .

Another of the plaintiff's topics relates to the plaintiff's FDIS transaction but strangely asks for the "facts of the . . . transaction that make it substantially similar to the facts of transactions described in any IRS Notice *other than Notice 2000-44* and the identity of each of those notices."  (Emphasis added).  As to each topic, the plaintiff desires an IRS witness to prepare and testify with respect to his or her legal research and analysis as to IRS published

_____

[8] The Court has previously ruled that the transaction at issue in *Fidelity High Tech* is not at issue in this litigation.  *See* May 2, 2007 electronic Order denying motion to consolidate.

notices and announcements. [9] None of these other transactions are at issue here.  Moreover, as we discuss in the next section, to seek have another party do your legal research and analysis (under the guise of a Rule 30(b) deposition) is clearly improper.

Similar to its testimony demands, the plaintiff's document demands relate to three other tax-shelter products: HOMER, PICO, and DAD.  The only purported relationship of HOMER, PICO, and DAD to this case, according to the plaintiff, is that HOMER, PICO, and DAD have "some similarity" to the FDIS tax-shelter product.[10]

It appears to be axiomatic that the status of these other tax-shelter products, some of which allegedly have "some similarity" to FDIS, has no bearing on the substantial similarity of FDIS to the transactions described in Notice 2000-44.  The plaintiff's contrary arguments, to the extent they are discernible, do not affect the axiom.

While ignoring the *Fidelity High Tech* product altogether, the plaintiff suggests that HOMER, PICO, and DAD are relevant,[11] apparently because those transactions have not been found, at least yet, to be Notice 2000-44 transactions.  The plaintiff does not describe at all how the determinations with respect to HOMER, PICO, and DAD shed any light on the determination to be made with respect to FDIS.  They do not.  That is particularly so when neither the United States nor the plaintiff have alleged that the plaintiff engaged in HOMER, PICO, or DAD, or anything substantially similar to them.  Nonetheless, the plaintiff does provide some

---

[9]An analysis as to the similarity (or lack thereof) of facts set forth in differing published IRS notices and announcements is pure legal analysis.

[10]Pl. Mem. in Supp. of Mot. to Comp. Prod. of Documents Relating to HOMER, PICO, and DAD, at 1, line 3.

[11]Id. at 12.

meaningless, and sometimes false, allegations with respect to those transactions. As to HOMER,

the plaintiff states that it is not a listed transaction, and therefore is not a Notice 2000-44

transaction. There is no authority cited, and none exists, for the proposition that because

HOMER has not yet been "listed," it will not be listed. In fact, HOMER was recently identified

in Notice 2007-73 as a "Toggling Grantor Trust" and a transaction of interest[12], meaning that the

IRS has insufficient information on the Toggling Grantor Trust to determine if it should be

listed.[13] Regardless, a determination with respect to HOMER is not relevant here. As to DAD,

the plaintiff argues that DAD is not a Notice 2000-44 transaction, and therefore FDIS isn't either.

But, DAD and FDIS are different[14], or as the plaintiff puts it (even accepting the plaintiff's

allegation as true), have "some similarity."[15] As such, a comparison of DAD to FDIS bears no

fruit. As to the PICO transaction, the plaintiff alleges that the IRS determined it to be a Notice

2002-65 transaction, but not a Notice 2000-44 transaction. That is untrue, and unimportant. To

the extent it matters, the issuance of a notice listing a transaction does not mean that another

notice is not also applicable. The goal, as stated in the regulations, is to obtain disclosure of

potentially abusive transactions. As such, a transaction may be substantially similar to those in

an earlier notice, but still be the subject of a later notice. Indeed, PICO is substantially similar to

---

[12]Notice 2007-73 is available at http://www.irs.gov/irb/2007-36_IRB/ar20.html (last visited January 16, 2008.

[13]*See* 26 C.F.R. § 1.6011-4.

[14]The DAD tax-shelter product is described in a Coordinated Issue Paper available at http://www.irs.gov/businesses/partnerships/article/0,,id=169590,00.html (last visited January 16, 2008).

[15]Pl. Mem. in Supp. of Mot. to Comp. Prod. of Documents Relating to HOMER, PICO, and DAD, at 1, line 3.

a Notice 2002-50 transaction, and described in Notice 2002-65 as a Passthrough Entity Straddle Tax Shelter.[16]  Regardless, none of these other tax shelters have any relevance to the legal determinations to be made with respect to FDIS.[17]

To the extent the plaintiff actually wants to know the facts of these other transaction, even if to satisfy its own curiosity, it can simply look in the published and publicly available papers that thoroughly describe them.  Plaintiff can no more conduct discovery of facts underlying  IRS publications relating to non FDIS transactions than it could pursue discovery of facts relating to case law that it may wish to rely on or distinguish.  In short, if plaintiff feels the facts and legal analysis of IRS announcements and/or judicial authorities are relevant or irrelevant to the issues in this case, it must rely on such facts and analysis as are set forth in those publications. It certainly cannot conduct separate discovery of another party as to facts of unrelated matters to support its position in this litigation.

**III.    IRS Testimony About Legal Issues is Improper.**

The Rule 30(b)(6) topics relate solely to legal issues and/or analysis, and are beyond the bounds of Rule 26.  The plaintiff seeks an IRS designee or designees to testify as to the meaning

---

[16]The PICO tax-shelter product is described in Notice 2002-65 available at http://www.irs.gov/businesses/article/0,,id=170940,00.html (last visited January 16, 2008).

[17]To the extent the plaintiff is arguing that the other transactions are relevant because the IRS is treating the purchasers of HOMER, PICO, and DAD differently than the purchasers of FDIS, the argument fails.  It is well settled that a taxpayer's liability depends on the law and facts applicable to the taxpayer's own situation, not that of unrelated persons. *See, e.g.*, *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962); *Subash v. IRS*, 514 F. Supp. 2d 114, 119 (D. Mass. 2007); *Penn-Field Indus., Inc. v. Commissioner*, 74 T.C. 720, 723-24 (1980). Additionally, the United States has produced thousands of documents relating to other taxpayers who engaged in the FDIS tax shelter.  The plaintiff can probe the consistency of the United States' position with respect to all fifty plus FDIS transactions like the plaintiff's, which it claims is unique.

of the term "substantially similar," found in the Code of Federal Regulations and IRS Notices,

and the "process, procedures, and standards" the IRS applies in determining whether any

transaction, including FDIS, is substantially similar to a Notice 2000-44 transaction.  Plaintiff's

requests in these matters are improper because they relate to pure issues of law– the

determination of whether a transaction is substantially similar to a Notice 2000-44 transaction.

Those are legal issues for the Court to decide in its analysis and application of the governing

legal authorities.[18]  Moreover, the thoughts of those responsible for the promulgation of

regulations and other official positions have no probative value.[19]  The meaning of and reasons

for promulgation of regulations and Notices are not proper subjects for deposition because "the

IRS must speak with a single voice, that is, through formal statements of policy such as

regulations and revenue rulings. . . .  Accordingly, statements by individual IRS employees

cannot bind the Secretary."[20]  The testimony of individual officials does not represent agency

interpretations.[21]  Consequently, the views of IRS employees are irrelevant in construing

Treasury Regulations and official Notices.  As a consequence, the depositions of the IRS

employees on such subjects can not lead to the discovery of relevant information.

   Nor can a party somehow elide these basic principles of law by requiring a party to

---

[18]See *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-101 (1st Cir. 1997); *Neptune v. United States*, 38 Fed. Cl. 510, 513 (1997), *aff'd* 178 f.3d 1306 (Fed. Cir. 1998).

[19]*Honeywell, Inc. v. United States*, 661 F.2d 182, 185 (Ct. Cl. 1982).

[20]*Sidell v. Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000).  See also *Connecticut General Life Insurance Co. v. Commissioner*, 177 F.3d 136, 145 (3d Cir), *cert. denied*, 528 U.S. 1003 (1999); *Armco Corp. v. Commissioner*, 87 T.C. 865, 867-68.

[21]*Vons Cos. v. United States*, 51 Fed. Cl. 1, 21 (2001).

designate a witness pursuant to Rule 30(b)(6) to testify on such irrelevant subject matter.  In a case involving a tax shelter similar to this one, the Court of Federal Claims recently granted a protective order barring the deposition of three IRS officials involved in the drafting of certain Treasury Regulations and Notices on subjects very similar to those set forth here, holding that testimony on such subject matter is not probative and therefore was not relevant.[22]

The plaintiff's seeks to overcome its failure to show any probative value of IRS views on legal matters by arguing that the discovery is necessary to help the Court understand the legal arguments.  To get there, the plaintiff alleges that it seeks testimony on "[f]actual issues."  Those "factual issues" are allegedly legislative in nature, meaning that they "do not . . . concern the immediate parties but are general facts which help a tribunal decide questions of law and policy and discretion."[23]  In the first place, the plaintiff is not really seeking discovery of any facts (legislative or otherwise).  Rather, it is seeking a designee of the IRS to explain and amplify on various legal positions and analyses that the IRS has publicly announced.

But even assuming plaintiff was actually seeking what it calls "legislative facts," plaintiff provides no authority to suggest that it is appropriate and within the bounds of Rule 26 to demand testimony from the IRS to obtain these general facts.  Indeed, legislative-fact finding is a form of judicial notice.  In taking this judicial notice, the judge

> may consult the sources of pertinent data to which [the parties] . . . refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present. . . . The parties do no more than assist; they control no part of the process.

---

[22]*See* Order of the Court of March 19, 2007, in *Evergreen Trading v. United States*, No. 06-123 T.  (Copy attached as Govt. Ex. 1).

[23]Pl. Mem. in Supp. of Mot. to Comp. 30(b)(6) at 11.

*Cotter v. City of Boston*, 193 F. Supp. 2d 323, 341 (D. Mass. 2002)(quoting Edmund M. Morgan,

Judicial Notice, 57 Harv. L. Rev. 269, 270-71 (1944)).  The plaintiff cannot expand discovery to

examine the IRS on what the plaintiff claims are "legislative facts."  Legislative-fact discovery

does not lead to admissible evidence.  To the contrary, legislative facts "usually are not proved

through trial evidence but rather by material set forth in the briefs . . . ."[24]  So, to the extent the

Court seeks to learn "general facts" to assist in making its legal determinations, the parties can

submit briefs, not demand discovery.  This discovery would be no more appropriate than

deposing the National Weather Service to determine what the weather was yesterday.  The

United States has already answered thoroughly contention interrogatories and the IRS's official

positions on these matters have been published.  The plaintiff can cite those positions and the

controlling law in its briefs, and can seek stipulations or request judicial notice on "general

facts."  Any more than that would cross the line into discovery of legal issues– and that is not

permitted under Rule 26, even under the guise of legislative fact.

**IV.    The Plaintiff's Demand for Testimony of a 30(b)(6) Witness Relating to the Facts
That Make the Fidelity International Transaction Substantially Similar to a Notice
2000-44 Transaction Is Improper Because it Seeks Information Protected by the
Work-Product Privilege.**

The United States already answered thoroughly contention interrogatories, including at

least one covering this same topic (answer transcribed above).

As it seeks to learn, by means of shortcut, all of the factual support for the United States'

---

[24]*Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104,
112 (1st Cir. 1999)(*citing* Fed. R. Evid. 201 advisory committee's note; *Knight v. Dugger*, 863
F.2d 705, 742 (11th Cir. 1988).

litigating positions, the plaintiff demands a "contention deposition."  Courts disfavor this tactic.

Recently, faced with like circumstances in another federal tax case, one court stated:

> The information BB&T seeks from the depositions is for the United States to identify the factual and legal bases for its denial of the 1997 tax deductions. . . .  [T]his type of request is usually made by serving contention interrogatories which are favored over contention depositions because, by their nature, contention discovery will usually require the assistance of a party's attorney. . . .  Thus, the contention deposition will likely involve the deposition of a party's attorney, which is not favored.

*BB&T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006) (internal citations omitted).

"Even under the present-day liberal discovery rules," the United States "is not required to

have counsel marshal all of its factual proof and prepare a witness to be able to testify on a given

defense or counterclaim."[25]  As another court explained:

> [T]o provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to [the 30(b)(6) designate] so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information . . . .

*United States v. District Council of New York City*, 1992 WL 208284, *15 (S.D.N.Y. 1992).

Most instructive, from the standpoint of exposing the reasons why the plaintiff's

proposed "contention deposition" of the IRS exceeds the permissible limits of discovery, is *SEC*

*v. Buntrock*, 2004 WL 1470278 (N.D. Ill. 2004).  In close analogy to the IRS examination that

preceded the present lawsuit, *Buntrock* involved an investigation under the federal securities laws

"conducted by SEC attorneys and by SEC employees working under the direction of attorneys."[26]

---

[25]*In re Independent Service Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (internal quotation omitted)

[26]*Buntrock*, 2004 WL 1470278 at *2 (internal quotation omitted).

14

Like the IRS here, "[n]o one at the SEC ha[d] any firsthand knowledge of the facts at issue in" *Buntrock*.[27]  Much as the plaintiff seeks to do here, Buntrock sought a Rule 30(b)(6) deposition of the SEC, aimed at the legal and factual theories supporting the SEC's litigating position. Finding that the proposed Rule 30(b)(6) deposition of the SEC "would necessarily involve the testimony of attorneys assigned to the case, or require those attorneys to prepare other witnesses to testify," the court held that "Buntrock is not entitled to the type of discovery he seeks in his 30(b)(6) notice of deposition and that the deposition notice impermissibly seeks to invade the SEC's attorney work product."[28]

The plaintiff may not conduct a "contention deposition" of trial counsel.[29]  It is equally clear that the plaintiff may not achieve that end indirectly through a Rule 30(b)(6) deposition of an IRS witness who of necessity would serve as a conduit for trial counsel's work product.  To prepare such an IRS witness, the United States' trial counsel would have to impart his knowledge of the facts obtained to date through discovery to the witness.

Without question, the proposed inquiry into the United States' trial counsels' evaluation of facts obtained through discovery, if allowed, would violate the attorney work product doctrine.

---

[27] *Buntrock* 2004 WL 1470278 at *3

[28]  *Id*. at *2-3; *see also SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1993) ("[T]he proposed Rule 30(b)(6) deposition constitutes an impermissible attempt by defendant to inquire into the mental processes and strategies of the SEC."); *SEC v. Rosenfeld*, 1997 WL 576021, *3 (S.D.N.Y. 1997) ("This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason.").

[29]*See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947); *BB&T*, 233 F.R.D. at 449 ("Because of their intrusive, disruptive nature, contention depositions of a party's attorneys are not favored.").

As the plaintiff "well knows, it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine."[30]

Courts recognize that a Rule 30(b)(6) "contention deposition," as posited here, is at odds with the work product doctrine.  One such court recently observed:

> Plaintiffs have proposed the use of a Rule 30(b)(6) witness to discover facts within an attorney's knowledge without asking counsel directly.  While it is certainly an inventive maneuver, the Court is not persuaded by plaintiffs' position.

*In re Linerboard Antitrust Litig.*, 237 F.R.D. at 380.  On like reasoning, this Court should reject the plaintiff's maneuver and permit no Rule 30(b)(6) deposition of the IRS.

**V.     The Plaintiff Is Not Entitled to Testimony or Documents Relating to the IRS's Internal Deliberations about IRS Notices, Treasury Regulations, and the Status of Any Transaction (Including Fidelity International's FDIS Transaction) as Substantially Similar to a Listed Transaction or Transaction of Interest.**

Even if the sought-after evidence were somehow relevant, deliberative process privilege would bar testimony or dissemination of documents regarding the promulgation and application of regulations, IRS notices, or other official documents or positions, because "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper

---

[30]*EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *see also Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985); *In re Independent Service Org. Antitrust Litig.*, 168 F.R.D. at 654 (holding that "requir[ing] . . . counsel [to] 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim" in a Rule 30(b)(6) deposition would raise "serious privilege concerns"); *District Council of New York*, 1992 WL 208284 at *8-9; *Buntrock*, 2004 WL 1470278 at *3; *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 384 (E.D. Pa. 2006) (finding that "if [a] Rule 30(b)(6) designee must be educated with all facts within [counsel's] knowledge, the Rule 30(b)(6) deposition will become the functional equivalent of a deposition of" counsel).

candor with a concern for appearances . . . to the detriment of the decisionmaking process."[31] Therefore, privilege protects the details of such decision making from disclosure.[32]

The Court has already denied a prior motion to compel by this plaintiff on the ground of deliberative process privilege. (Mem. and Ord. May 17, 2007). The result here should be the same.

**VI.    The Documents and Testimony Relating to Other Taxpayers Involved with Other Tax-shelter Products Are Protected by 26 U.S.C. § 6103 and Cannot Be Disclosed by the IRS Even to Trial Counsel for the United States.**

Generally, federal tax returns and "return information" are confidential, as required by 26 U.S.C. § 6103 ("Section 6103" or "6103"). There are exceptions to the general rule, but those exception do not apply here.

When enacting Section 6103(h)(4)(B), Congress had a clear opportunity to allow for unrestricted discovery. It declined to do so. Instead, Congress established the more circumscribed item test (6103(h)(4)(B)) and transaction test (6103(h)(4)(C)) for determining when tax information of a third-party taxpayer may be disclosed in a judicial tax proceeding.

Under the item test of section 6013(h)(4)(B), a third party taxpayer's statutorily protected information may be disclosed in judicial proceedings only "if the **treatment of an item** reflected on such [third party's] return is **directly related** to the resolution of an issue in the proceeding." "**[D]irectly** related" certainly describes a more circumscribed relationship than "relevant" under Rule 26(b)(1). The plaintiff has, of course, failed to meet even the relevance standard. In order for any item of third-party-return information to be disclosed in a judicial tax proceeding, the

---

[31] *United States v. Nixon*, 418 U.S. 683, 705 (1974).

[32] See, generally, *Marriott International Resorts, LP v. United States*, 437 F.3d 1302 (Fed. Cir. 2006).

treatment of that item must be more than relevant, or related; it must directly related to the

resolution of an issue in the proceeding.  The legislative history of section 6103(h)(4)(B) explains

the intended scope and application of the "item" test, and makes clear that mere relevance was

**not** the standard adopted by Congress:

> The disclosure of a third party return [or return information] in a tax proceeding ...
> will be subject to the same item and transaction tests described above, [pursuant to
> which a third party's tax information may be disclosed to the U.S. Department of
> Justice,] except that such items and transactions **must have a *direct relationship* to
> the resolution of an issue of the taxpayer's liability**.

S. Rep. No. 94-938, at 326 (1976)(emphasis added).

It is important to emphasize that in the case of disclosures of third party tax information

to the Department of Justice in connection with tax administration proceedings, Congress

provided for disclosure "if the treatment of the item reflected on such return *is or may be related*

to the resolution of an issue..." 26 U.S.C. §6103(h)(2)(B)(emphasis added).  The legislative

history elaborates on this standard by noting that "[t]he return or return information of a third

party may be disclosed to the Justice Department in the event the treatment of an item reflected

on his return *is or may be relevant* to the issue of the taxpayer's liability . . . " (emphasis added).

S.Rep. 94-938 at 325.  Clearly, Congress intended something more than a relevance standard in

subsection (h)(4)(B), given the language that disclosure of third party return or return information

in a tax proceeding will be subject to the same item and transaction tests as that in place for

disclosures to the Department of Justice "*except* such items or transactions must have *a direct

relationship*..." *Id.* at 326 (emphasis added).

Nowhere in the legislative history of the item test is there any suggestion that section

6103(h)(4)(B) would permit disclosure of unrelated third party taxpayers' tax information simply

because the plaintiff alleges "some similarity" between the third-parties' transactions and the

plaintiff's. To the contrary, Congress provided two clear examples illustrating its intention that

disclosure of similarly situated but unrelated third party taxpayers' tax information in tax

proceedings is not authorized under Section 6103:

> The return reflecting the compensation paid to an individual by an employer other than the taxpayer whose liability is at issue would **not** meet either the item or transaction tests described above in a reasonable compensation case. Thus, for example, the reflection on a corporate return of the compensation paid its president would not represent an item the treatment of which was relevant to the liability of an unrelated corporation with respect to the deduction it claims for the salary it paid its president.

> In section 482 cases (involving the reallocation of profits and losses among related companies), where it is sometimes necessary to determine the prices paid for certain services and products at arms-length between unrelated companies, the return or return information of a company which was unrelated to the taxpayer company would **not** be disclosable under either the item or transaction tests described above.

S. Rep. No. 94-938, at 325-326 (emphasis added).

The two examples provided by Congress represent common situations in cases where a

"comparability factor" arises. Both examples manifest Congressional intent that the standard for

disclosing a third party's return or return information cannot be as low as the "relevance"

standard. When Congress weighed the interests of taxpayers discovering and contesting

"comparability issues" with the rights of third parties to protect information provided to the IRS,

it decided that the latter must prevail. Congressional intent would be frustrated by disclosing

third party return information in the context of *IBM*-type allegations based upon "information

and belief" where the direct relationship is not established.

Caselaw interpreting section 6103(h)(4)(B) is generally consistent with the legislative

history's explanation of that provision. In those cases allowing disclosure under the item test

there was a "direct relationship" between the tax liability of the third parties whose tax information was disclosed and the taxpayers in whose judicial tax proceedings the disclosures were made, *i.e.*, alimony between ex-spouses; assets available to a husband-wife; payments from a parishioner to her church.[33]

The broad scope of the Section 6103 prohibition of the unauthorized disclosure of tax-return information reinforces the Government's position that plaintiff is not entitled to the requested discovery.  Unlike evidence relating to the cookie-cutter FDIS tax-shelter product, the requested discovery here is aimed at four transactions that even the plaintiff alleges have at best "some similarity"

## VII.    To the Extent the Plaintiff Wanted this Information, it Could Have Obtained it from Other Sources During Discovery and Without the Problems of 6103 and Various Privileges.

Given the plaintiff's repeated mantra that "this is a case of ones," and its opposition to discovery of documents relating to the plaintiff's mass-marketed tax-shelter product, its demand for documents and testimony relating to at least four other tax-shelter products and an unknown number of unrelated taxpayers is baffling.

---

[33]    *E.g., Christoph v. United States*, 1995 U.S. Dist. LEXIS 19977 (S.D. Ga. Dec. 12, 1995)(an ex-spouse's tax information showing her treatment of disputed payments after divorce was directly related to resolving deductibility of payments claimed to be alimony in the taxpayer's proceeding); *Tavery v. United States*, 32 F. 3d 1423 (10 Cir. 1994), *aff'g* 1991 U.S. Dist. LEXIS 15592 (D. Col, Oct. 18, 1991)(court determined that the third party-wife's income and tax refunds were directly related to the issue of the taxpayer-husband's ability to pay attorneys' fees in considering court appointed counsel); and, *Lebaron v. United States*, 794 F.Supp. 947 (C.D. Cal. 1992)(disclosing the tax information of a third party was authorized by Section 6103(h)(4)(B) because the requested information was relied upon by the IRS in making its determination whether to investigate a tax exempt organization).  In each of these decisions, finding a "direct relationship" was consistent with what Congress described as satisfying the item test.  Thus, for example, the returns of Subchapter S corporations, partnerships, estates, and trusts may reflect the treatment of certain items which may have a direct relationship to resolving a taxpayer's liability arising out of the taxpayer's relationship as a shareholder, partner or beneficiary with the third party.  S. Rep. 94-938, at 325 (1976).

Nonetheless, the information relating to these other tax-shelter products and taxpayers was available from sources disclosed publicly some time ago. The IRS identified the promoters of the HOMER transaction in a May 2007 press release.[34] Additionally, the plaintiff is well aware of a complaint filed in 2005 in Illinois relating to the HOMER transaction.[35] Similarly, KPMG was described as a promoter of the PICO transaction in a 2003 Senate report.[36] DAD was the subject of an April 2007 Coordinated Issue Paper. If the plaintiff had wanted information about these products, it was publicly available. If it wanted more information, it could have subpoenaed the records and testimony from the promoters of the transactions. It did not do so. Instead, it fought the United States' subpoena of KPMG for documents relating to the very shelter at issue here, arguing that it was beyond the scope of discovery. One is left to wonder how the plaintiff argued then that discovery of KPMG in relation to **the very tax-shelter product at issue in this case (FDIS)** was beyond the permissible scope of discovery, but argues now that a KPMG-promoted and unrelated tax-shelter product is open to discovery from the IRS.

The plaintiff is not interested in obtaining facts– because it already has them. And, it is not interested in taking discovery of tax-shelter promoters because it illuminates the tangled web of tax-shelter promoters. It is interested in putting the IRS on trial.

---

[34]http://www.irs.gov/newsroom/article/0,,id=169143,00.html (Last visited January 16, 2008).

[35]*Wilson v. Deutshce Bank AG*, No. 05-CH-8002 (Ill. Cir. Ct. May 9, 2005).

[36]Permanent Subcomm. on Investigations, Minority Staff, U.S. TAX SHELTER INDUSTRY: THE ROLE OF ACCOUNTANTS, LAWYERS, AND FINANCIAL PROFESSIONALS FOUR KPMG CASE STUDIES: FLIP, OPIS, BLIPS, AND SC2 (November 18 & 20, 2003). levin.senate.gov/newsroom/supporting/2003/111803TaxShelterReport.pdf (last visited January 16, 2008). The Senate Report notes that the promoter summonses issued to KPMG included a summons for the PICO transaction. It appears that PICO was primarily promoted by Ernst & Young.

## VIII.   Conclusion

The plaintiff's motions to compel have been denied consistently on grounds of irrelevance and privilege.  These fourth and fifth motions should similarly be denied.  The plaintiff demands information relating to other tax-shelter products and taxpayers that have absolutely no relationship to this case.  Because it is unrelated, the information is also protected from disclosure by 26 U.S.C. § 6103.  That is, it is protected from disclosure by the United States.  The plaintiff could have obtained all of the information from the promoters of the various unrelated transactions.  Additionally, the plaintiff undoubtedly already has most or all of the factual information from public sources.  What the plaintiff really seeks is to force the United

States to "marshal" all of the evidence, which would be a wholly improper invasion of the work-product privilege.  The plaintiff also seeks to take a contention deposition of the IRS to attempt to confuse the issues and put the IRS on trial.  These tactical maneuvers should be rejected.

<div style="margin-left: 50%;">

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

 /s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. VANN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone: (202) 307-6561
Facsimile:  (202) 514-5238
E-mail:  john.a.lindquist@usdoj.gov
            barry.e.reiferson@usdoj.gov
            heather.vann@usdoj.gov

</div>

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and copies will be sent to those indicated as non registered participants on January 16, 2008.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

# In The United States Court of Federal Claims

No. 06-123 T

(Filed: March 19, 2007)

---

EVERGREEN TRADING, LLC, by and
through GLEN NUSSDORF AND CLAUDINE
STRUM on behalf of GN INVESTMENTS,
LLC, A Partner Other than the Tax Matters
Partner,

                Plaintiffs,

    v.

THE UNITED STATES,

                Defendant.

\* \* \* \* \* \* \* \* \* \* \* \*

Depositions; Motion for Protective
Order; Depositions of IRS employees
regarding drafting of regulation;
Personal views of IRS employees
irrelevant in determining the validity of
the regulations; Motion granted.

---

## ORDER

---

*David D. Aughtry*, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, Georgia,
for plaintiffs.

*Stuart J. Bassin*, Tax Division, U.S. Department of Justice, Washington, D.C., with
whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

**ALLEGRA, Judge**:

On March 13, 2007, defendant filed a motion for a protective order under RCFC 26(c) to
bar plaintiffs from taking the depositions of three individuals who were involved in the drafting
of certain Treasury regulations at issue in this case, including Treas. Reg. §§ 1.752-6 and 1.752-
6T. Earlier this day, plaintiffs filed their response to this motion.

Having reviewed these documents, the court concludes that the requested depositions will
not lead to the discovery of information relevant to the claim or defense of any party in this
litigation. While plaintiffs cite various cases that might provide grounds for challenging certain
of the Treasury regulations at issue in this case, none of these cases remotely suggest that the
personal views, intentions, etc. of the drafters of such regulations are relevant to those arguments.
*See, e.g.*, *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368 (Fed. Cir. 2000). Other
cases, indeed, explicitly make clear that the views expressed by individual Internal Revenue

GOVERNMENT
EXHIBIT

1

Service employees are irrelevant in construing regulations or determining the validity thereof. *See Sidell v. Comm'r of Internal Revenue*, 225 F.3d 103, 111 (1ˢᵗ Cir. 2000) (rejecting the taxpayer's reliance on a number of internal IRS memoranda to show that a proposed regulation was not meant to cover a particular situation); *Conn. Gen. Life Ins. Co. v. Comm'r of Internal Revenue*, 177 F.3d 136, 145 (3d Cir. 1999), *cert. denied*, 528 U.S. 1003 (1999) ("reliance upon remembered details from officials who lacked the ultimate authority to issue any proposed regulation has little support in the law"); *Schwalbach v. Comm'r of Internal Revenue*, 111 T.C. 215, 228 n.4 (1998) (giving "no weight" to oral statements made by "agents of the Commissioner" describing the content of final regulations); *Armco Inc. v. Comm'r of Internal Revenue*, 87 T.C. 865, 867-68 (1986) (affidavit of IRS employee explaining his intent in drafting a regulation irrelevant to interpreting the regulation); *see also Vons Cos. v. United States*, 51 Fed. Cl. 1, 21 (2001) ("this court [should be] extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency"). Accordingly, in the court's view, the requested depositions fall well outside the scope of appropriate discovery under RCFC 26(b)(1).

Finding plaintiffs' other claims in support of the requested depositions also misplaced, the court concludes that the requested protective order shall issue and that the requested depositions shall be barred. *See Vons Cos., Inc.*, 51 Fed. Cl. at 24-25 ("While . . . some degree of fishing is anticipated by the Federal discovery rules, those rules do not sanction a party to employ essentially a purse seine that indiscriminately sweeps in not only relevant catch, but hosts of irrelevant and protected species of information.").[*]

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[*] Based on the foregoing, the court need not reach defendant's argument that the information sought by plaintiff is protected by the deliberative process privilege.