# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, ) ) ) ) | |
| Plaintiff, ) ) | Case No.: 05-40151-FDS 06-40130-FDS |
| v. ) ) | |
| UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) ) ) ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF MATERIALS RELATING TO <u>EXPERT REPORTS AND OPINIONS OF GORDON RAUSSER</u>

The issues presented to this Court are whether Defendant (1) may withhold six months worth of work generated by, or shared with, its testifying expert, Gordon Rausser, and (2) may withhold a record of an interview of Thomas Yorke, in which Rausser did not participate but which Rausser nonetheless has characterized as being inconsistent with Mr. Yorke's sworn deposition testimony. Defendant's Opposition provides inadequate and unsupported rebuttals to Plaintiff's Memorandum. Defendant has not met its burden to show that it is properly withholding the OnPoint documents and has ignored the substantial authority contrary to its position.

Through requests for production and subpoenas, Plaintiff has requested any communications between or among Rausser, OnPoint, and Defendant regarding the FICA A Fund cases or the Rausser Reports and all workpapers, ledgers, computations, notes, or other similar materials relating to Rausser's or OnPoint's work on the Rausser Reports. (*See* Pl.'s

Mem., Exs. A, B, C, D.)  From September 2006 through March 2007, OnPoint and Rausser performed nearly $500,000 worth of work, and Rausser himself billed 274.70 hours (or $178,555) during this time period.  Yet, with the exception of eight emails,[1] Defendant has not produced any materials from this time period.

Defendant has also refused to produce notes of its phone interview of Mr. Yorke, even though Defendant waived any work product protection over these notes because Rausser's agent (Laura Craft) participated in the interview and Rausser claims the interview, as orally reported to him by his agent, contradicts Mr. Yorke's deposition testimony.  (*See* Gordon Rausser Dep. 12:2-3, Nov. 30, 2007.)  Plaintiff's need for the notes of the Yorke interview arises from Rausser's claim that Mr. Yorke's interview and deposition are inconsistent.  While Defendant attempts to spin an argument that Plaintiff should have questioned Mr. Yorke about his phone interview at his deposition, the fact is Mr. Yorke was so questioned and testified that he was asked the same questions during the interview as were asked during the deposition and that he gave the same answers to those questions in both settings.  (*See* Thomas Yorke Dep. 142:4-14, Oct. 30, 2007.)  Rausser's attack on Mr. Yorke's testimony and credibility give rise to the need for disclosure of the interview notes.  Because Defendant's expert created this issue, and Defendant hopes to benefit from Rausser's attack on Mr. Yorke, Defendant cannot use a work-product claim to deny Plaintiff access to the notes and deny Plaintiff the right to cross-examine Rausser.

---

[1] The following emails were produced:  a November 17, 2006 email from government counsel transmitting documents; a January 8, 2007 email transmitting the High Tech engagement contract; three copies of a January 9, 2007 email transmitting protective orders; three copies of a January 10, 2007 email from government counsel transmitting documents; a February 12, 2007 email regarding tax returns; a March 2, 2007 email containing pleasantries; a March 12, 2007 email from government counsel transmitting documents; and a March 15, 2007 email transmitting a to-do list.

I.      **Any "Consulting Expert" Work Product Generated By, or Shared with, Gordon Rausser Is Discoverable**

In its opposition, Defendant claims that "Plaintiff does not appear to be requesting the documents . . . relating to OnPoint's, and not Rausser's, role as a consulting expert." (Def.'s Opp'n at 2.) To the contrary, Plaintiff seeks all documents that informed the opinions that Rausser intends to offer at trial. The evidence produced to date demonstrates that Defendant is asserting a false dichotomy between OnPoint's role as a "consulting expert" and Rausser's role as a testifying expert.[2] In withholding documents generated by a consulting expert, Defendant presumably relies on Federal Rule of Civil Procedure 26(b)(4)(B), which provides that the work product of a non-testifying expert is ordinarily immune from discovery. Defendant fails to address the substantial body of case law that requires the disclosure of a consulting expert's work product when the consulting and the testifying expert are the same individual or entity or when the consulting expert's work product has been shared with the testifying expert.

At least one court has characterized the practice of using the same individual or entity to provide both consulting and testifying expert services as "playing with fire," because "if an expert relies on something somebody else does, then [opposing counsel] is entitled in certain circumstances to depose that somebody and get what that somebody relied on." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 280 (E.D. Va. 2001). The *Trigon* court went on to explain that "the non-testifying expert generally is used to advise the lawyers, not to advise and prep the experts." *Id.* In *Trigon*, the government hired Analysis Group/Economics ("AGE") as a

---

[2] Plaintiff only recently learned that Defendant is withholding materials and communications from September 2006 through March 2007 based on OnPoint's role as a "consulting expert," which Defendant contends is separate from the expert services provided by Gordon Rausser through OnPoint. In the parties' December 21, 2007 discovery conference, in response to an inquiry from Plaintiff's counsel, Defendant's counsel represented that it was not likely that the six months' worth of OnPoint materials were being withheld because of consulting activities and that it was more likely the withheld materials related to Defendant's tutorial. On January 16, 2008, Defendant's counsel informed Plaintiff that some of the withheld documents in fact related to "OnPoint's, and not Rausser's, role as a consulting expert." (Ex. A at 2 (letter from Heather L. Vann to Lena Amanti (Jan. 16, 2008)).)

consulting expert and one of AGE's owners, Bruce Deal, as a testifying expert. *Id.* at 279-80.

When the plaintiff subpoenaed AGE, AGE and the government "refused to comply with the

requests on the basis that AGE was acting as a non-testifying consultant and . . . also that Deal

was separately retained as a testifying expert, notwithstanding that he [was] an owner of AGE."

*Id.* at 280. The government eventually produced the requested documents after withdrawing its

proffer of Deal's expert opinions. *Id.* at 281. Similarly, Defendant claims it hired OnPoint as a

consulting expert and OnPoint's majority owner, Rausser, as a testifying expert. And as in

*Trigon*, Defendant refuses to produce materials based on its claim that Rausser's and OnPoint's

"consulting expert" activities are distinct from their activities relating to Rausser's expert

opinions, notwithstanding the considerable evidence that such information was shared between

OnPoint and Rausser. Defendant is indeed playing with fire because the weight of legal

authority provides that any "consulting expert" work product generated by, or shared with, a

testifying expert is discoverable.

### A.    Materials Produced by a Dual-Role Expert Are Discoverable

Because Rausser is claimed to be a dual-role expert, any materials created by Rausser in

his capacity as a "consulting expert" are discoverable unless Defendant can show that these

materials are clearly unrelated to Rausser's development of his expert opinions. Disfavored by

the courts, dual-role experts are those who attempt to provide both testifying expert services and

non-testifying or consulting services. When the so-called consulting expert is designated as a

trial expert, the trial expert role requires that all of the expert's previously-designated

"consulting" work be produced. Two often-cited cases explain the rule for discovery of dual-

role experts. In *B.C.F. Oil Refining Inc. v. Consolidated Edison Co.*, the Southern District of

New York held that

> [i]t is conceivable that an expert could be retained to testify and in addition to
> advise counsel outside of the subject of his testimony.  Under such a circumstance
> it might be possible to claim a work product privilege if this delineation were
> clearly made. . . .  [A]ny ambiguity as to the role played by the expert when
> reviewing or generating documents should be resolved in favor of the party
> seeking discovery.

171 F.R.D. 57, 61-62 (S.D.N.Y. 1997).  The Southern District went on to hold that the plaintiff

could withhold a few documents that dealt "either with documents [sic] requests or preparations

for depositions," but that the plaintiff had to produce the vast majority of documents "since it

[was] not clear whether the expert reviewed them solely as a consultant or whether they

informed his expert opinion as well."  *Id.* at 62.

In another leading case, *Messier v. Southbury Training School*, the District of

Connecticut explained that

> [i]f an expert is retained as both a consultant and a testifying witness, the work-
> product doctrine may be invoked to protect work completed by the expert in her
> consultative capacity as long as there exists a clear distinction between the two
> roles. . . .  Any ambiguity about which function was served by the expert when
> creating a document must be resolved in favor of discovery.

No. 94-1706, 1998 U.S. Dist. LEXIS 23221, at *7 (D. Conn. June 29, 1998) (internal citations

omitted).  In *Messier*, the court held that the documents produced in the expert's consulting role

were not discoverable because they dealt "strictly with strategy recommendations."  *Id.* at *9.  In

other words, there was no ambiguity as to the role the documents at issue played in *Messier*.

The overwhelming majority of courts presented with the issue of dual-role experts have

followed the rule articulated in *B.C.F. Oil* and *Messier*.  *See, e.g., Emcore Corp. v. Optium

Corp.*, No. 06-1202, 2007 U.S. Dist. LEXIS 91009, at *5-6 (W.D. Pa. Dec. 11, 2007) (ordering

production of materials generated or reviewed by a testifying expert in his previous role as

consultant due to the ambiguity of which role the expert was playing with respect to those

documents);  *Stephens v. Trust for Pub. Land*, 475 F. Supp. 2d 1299, 1306-07 (N.D. Ga. 2007)

(ordering production of "preliminary opinions and reports generated" by dual-role expert because they related to his role of testifying expert); *Schwab v. Philip Morris USA, Inc.*, No. 04-1945, 2006 U.S. Dist. LEXIS 11047, at *13-15 (E.D.N.Y. Mar. 20, 2006) (affirming magistrate's decision to order production of a survey designed by a testifying expert in his capacity as consultant because it may have informed his expert opinions); *W. Res., Inc. v. Union Pac. R.R., Co.*, No. 00-2043, 2002 U.S. Dist. LEXIS 1911, at *55 (D. Kan. Jan. 31, 2002) (ordering production of materials authored or reviewed by an expert in his role as a consultant because "their subject matter relate[d] to the facts and opinions expressed . . . in the expert report").

The evidence shows that it is impossible to separate the work performed by Rausser and Laura Craft (the primary drafter of the Rausser Reports and, therefore, the developer of the opinions Rausser will offer at trial) regarding the opinions proffered in the Rausser Reports from any "consulting expert" work performed from September 2006 through March 2007. OnPoint's invoices show that Rausser recorded 274.70 hours (or $178,555) and Craft recorded 292.40 hours (or $102,340) during this time period. The notion that no materials responsive to Plaintiff's subpoenas were generated in more than 560 hours of work is simply not credible. Even if Rausser and Craft spent all their time during this six-month period "consulting," that work necessarily informed and influenced the drafting of the Rausser Reports and the development of Rausser's opinions. Because of this, the rule set forth in *B.C.F. Oil* and *Messier* (and followed by numerous other courts) entitles Plaintiff to discover the six-months worth of work product currently being withheld. Rausser's own testimony shows that he had access to all OnPoint materials (*see* Rausser Dep. 49:2-9, 133:12-134:2) and that the same team of people worked on this case before and after Rausser was designated as a trial expert. (*See id.* at 32:22-33:9 (identifying OnPoint staff who worked on "Phase 1," all of whom also worked on the

Rausser Reports).)  Hence, all of the OnPoint material must be produced to allow for fair cross-examination of Rausser.

> **B.    Materials Transmitted from Consulting Experts to Testifying Experts Are Discoverable**

Any work performed by OnPoint—whether in its capacity as a "consulting expert" or as part of the assistance it provided in drafting the Rausser Reports—is discoverable if it informed the opinions that Rausser will offer at trial.  It is well established that a consultant's work product is discoverable if the testifying expert considered the consultant's materials or the consultant was heavily involved in writing the testifying expert's report.  For example, in *Derrickson v. Circuit City Stores, Inc.*, the District of Maryland ordered the plaintiff's expert to produce statistical analyses performed by the expert's assistant despite the plaintiff's assertion that the assistant was a non-testifying expert.  No. 95-3296, 1999 U.S. Dist. LEXIS 21100, at *17-21 (D. Md. Mar. 19, 1999), *aff'd on other grounds sub. nom. Johnson v. Circuit City Stores, Inc.*, No. 99-1449, 2000 U.S. App. LEXIS 370 (4th Cir. Jan. 12, 2000).  The expert testified that "he told his assistant in general terms what . . . analyses he wanted performed . . . [, and the assistant] produced the tables upon which [he] relied."  *Id.* at *18.  The court held that it did not need to decide whether the assistant was a non-testifying expert because the testifying expert "and his assistant worked hand-in-glove, and the fruits of their labor are indivisible," and therefore the defendant could not effectively cross-examine the testifying expert without understanding how the assistant had analyzed the data.  *Id.*  The court held that even if the assistant was a non-testifying expert, the result would be the same.  *Id.* at 19; *see also Heitmann v. Concrete Pipe Mach.*, 98 F.R.D. 740, 741-43 (E.D. Mo. 1983) (ordering production of a non-testifying expert's report because its work-product protection was waived when the defendant "voluntarily transmitted it to [the testifying expert, who] relied upon it in reaching his own conclusion").

Similarly, in *Pinal Creek Group v. Newmont Mining Corp.*, the court ordered the plaintiff to produce documents and communications generated by its non-testifying experts, who had acted, essentially, as assistants to the plaintiff's three testifying experts.  No. 91-1764, 2006 U.S. Dist. LEXIS 45015, at *5-6, 21 (D. Ariz. June 30, 2006).  The plaintiffs argued that they had already produced all of the work generated by the non-testifying experts for the testifying experts and that the remaining documents had never been provided to or reviewed by the testifying experts.  *Id.* at *23.  The court held that "[w]hile these assertions may prove to be true, [the defendant] should not be bound by an adverse party's statements or similar statements by adverse experts that they did not consider anything [the non-testifying experts] may have orally communicated, showed to or shared with them."  *Id.*  The court also held that the defendant sufficiently demonstrated that the non-testifying and testifying experts worked in "seamless collaboration," *id.* at 22, and therefore the defendant was "entitled to uncover facts and information to effectively cross-examine [the plaintiff's] expert witnesses."  *Id.* at 24.

Although Defendant would like to bifurcate the work performed by OnPoint as "consulting expert" from that performed by Rausser as testifying expert, the truth is that there is no clear delineation between OnPoint's and Rausser's work.  Because Defendant has not produced a log of the withheld material, is it impossible for Plaintiff to seek the production of specific documents.  Rausser's testimony and the unredacted portions of OnPoint's invoices, however, demonstrate that there is no clear distinction between Rausser's and OnPoint's work. As in *Derrickson*, the Court need not distinguish between OnPoint's roles as "consulting expert" and assistant-to-testifying-expert because Rausser, Craft, and their associates at OnPoint "worked hand-in-glove, and the fruits of their labor are indivisible."  *Derrickson*, 1999 U.S. Dist. LEXIS 21100, at *18.  As stated in Plaintiff's Memorandum, Rausser testified that work

performed during the first six months of OnPoint's engagement was used in his final report.[3]

The unredacted portions of OnPoint's invoices from October 2006 through March 2007 also

describe many activities that either relate directly to the Rausser Reports or are not clearly

distinguishable from "consulting" activities, such as:

- "graph price series, volatilities, and correlation coefficients over time:  analysis of payoffs of various vertical option spreads and option combos along with the percents of historical data points within the relevant price ranges; . . . analysis of theoretical probabilities associated with payoffs; . . . generate and revise graphs. "  (Ex. B at OPA008270 (Invoice #1376 for work performed from Nov. 1, 2006 through Nov. 30, 2006).)

- "evaluation of options transactions and associated probabilities; . . . import/analyze LIBOR data; plot EMC closing prices; . . . memo to Mr. Donohue; . . . update draft." (Ex. C at OPA008272 (Invoice #1402 for work performed from Dec. 1, 2006 though Dec. 31, 2006).)

- "option specifications; research LIBOR options . . . clarify the parameters required for digital option valuation; . . . review client correspondence[.]"  (Ex. D at OPA008274 (Invoice #1413 for work performed from Jan. 1, 2007 through Jan. 31, 2007).)

- "research and prepare annotations; . . . prepare spreadsheet regarding option contract comparisons; . . . create annotated table of key documents; review correspondence and comments from D. Donohue; generate probability estimation for various payouts; provide description of option valuation techniques[.]" (Ex. E at OPA008276 (Invoice #1452 for work performed from Feb. 1, 2007 through Mar. 31, 2007).)

Finally, the distinction between OnPoint and Rausser is meaningless, as Rausser is the

60% owner of OnPoint (Rausser Dep. 56:3-13) and has access to all materials received and

generated by OnPoint.  (*Id*. at 49:2-9; 133:12-134:2.)  Rausser asserts, in fact, that he is

"ultimately . . . the responsible party for [Craft's] work and all the staff work."  (*Id*. at 258:20-

22.)  It is evident that, during the first six months of OnPoint's engagement with Defendant, the

OnPoint staff spent substantial time on analyses and research that would be used in the Rausser

---

[3] Q. Professor, with regard to materials, [or] communications . . . concerning what I'll call the first phase 1 in 2006 and, let's say, not work that was related to the tutorial, has that material, the nontutorial material, been produced by OnPoint in this case?

  A.  It's been produced in my report.

(*See* Pl.'s Mem. at 6-7 (quoting Rausser Dep. 44:22-45:7).)

Reports, and there was no clear distinction between "consulting expert" and testifying expert work. Accordingly, Plaintiff is entitled to receive whatever documents Defendant is withholding based on their "relati[on] to OnPoint's, and not Rausser's, role as a consulting expert." (Def.'s Opp'n at 2.)

### C.    Defendant Has Not Met Its Burden to Show That It Has Appropriately Withheld These Materials

The party withholding materials reviewed or generated by, or shared with, a dual-role expert "bears the burden of showing that [the] expert did not consider certain documents in forming his opinion; this burden cannot generally be satisfied by the expert's representations alone." *Schwab v. Philip Morris USA, Inc.*, No. 04-1945, 2006 U.S. Dist. LEXIS 11047, at *11 (E.D.N.Y. Mar. 20, 2006). A party can meet this burden by (i) showing that the expert reviewed the materials only after testifying as to his opinions, or (ii) presenting affidavits and deposition testimony to the court "'clearly establishing' that the testifying witness never read, reviewed, or considered the subject documents in forming his opinions." *Id.*; *see also Emcore Corp. v. Optium Corp.*, No. 06-1202, 2007 U.S. Dist. LEXIS 91009, at *4-5 (W.D. Pa. Dec. 11, 2007) (quoting the *Schwab* court's explanation of burdens); *B.C.F. Oil Ref. Inc. v. Consol. Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) ("Defendant should not have to rely on plaintiffs [sic] representation that these documents were not considered by the expert in forming his opinion.")

Defendant has the burden of showing that the withheld materials were never considered by Rausser.[4] Similarly, to the extent that Defendant seeks to protect any materials on the basis

---

[4] The operative word in Rule 26(a)(2)(B)(ii) is "considered," not "relied." The drafters of the 1993 amendments to Rule 26 rejected a version of subsection 26(a)(2) that required the expert's report to identify all materials *relied upon*. *See* Aug. 1991 Proposed Rules, 137 F.R.D. 53, 89 (1991). The committee's use of "considered" instead of "relied" demonstrates its intent to broaden the expert's disclosure requirements. *See, e.g., Johnson v. Gmeinder*, 191 F.R.D. 638, 648-49 (D. Kan. 2000) (holding that "considered" means "read or reviewed"); *Lamonds v. Gen. Motors Corp.*, 180 F.R.D. 302, 306 (W.D. Va. 1998) (noting that "considered" is broader than "relied").

of the Court's Tutorial Order, Defendant should have the burden of showing the protections of the Tutorial Order apply to these materials.

Defendant has not even attempted to meet these burdens; Defendant has submitted no affidavits from Rausser or OnPoint stating that Rausser did not consider his or OnPoint's work from September 2006 through March 2007 in forming his opinions. Indeed, any such affidavit would contradict Rausser's sworn testimony.[5] This Court and Plaintiff cannot be expected to rely on Defendant's unsupported assertions that six months and nearly $500,000 worth of work product are not discoverable. Accordingly, Defendant has failed to meet its burden and must produce the materials responsive to Plaintiff's subpoenas.

## II. Defendant's Notes from the Yorke Interview Are Not Protected from Discovery

In its opposition, Defendant asserts that it did not share its notes of the Yorke interview with OnPoint or Rausser and asserts that no one from OnPoint took notes of the interview. (Def.'s Opp'n at 3-4.) Defendant argues, therefore, that its own notes are still protected as work product and Plaintiff is not entitled to Defendant's record of the interview. (Def.'s Opp'n at 4-5.) However, without the notes regarding the Yorke interview, Plaintiff would be unduly prejudiced because Plaintiff has no way to verify Rausser's claims regarding Mr. Yorke's credibility. Without the notes, Defendant's misguided strategy for putting Rausser in a position to attack Mr. Yorke without being examined based on a record of the interview will be allowed to work. Moreover, Defendant completely fails to address Plaintiff's argument that Defendant waived work-product protection over the interview by permitting Craft to participate as Rausser's agent. (*See* Pl.'s Mem. at 12 (explaining that work-product protection over an

---

[5] *See supra* note 3 (quoting Rausser Dep. 44:22-45:7).

interview is waived when the presence of a third-party—such as an expert or an expert's agent—increases the opportunities for adverse parties to obtain information on the interview).)

Defendant argues that Plaintiff could have obtained information on the Yorke interview had it more thoroughly questioned Mr. Yorke about the interview at his deposition. (Def.'s Opp'n at 4-5.) Plaintiff did not learn that the content of the Yorke interview had been transmitted to Rausser until one month after Mr. Yorke's deposition. At the time of Mr. Yorke's deposition, therefore, the content of the Yorke interview had no particular significance to Plaintiff. In fact, Plaintiff questioned Mr. Yorke as to whether his deposition testimony was consistent with the statements he made during the phone interview:

> Q.   In that conversation that you had prior to coming in today with folks from the Justice Department concerning this matter, were you asked questions very much like the ones you were asked today by government counsel?
>
> A.   Yes.
>
> Q.   And can you tell me if your answers then were the same answers essentially that you gave today?
>
> A.   I would say they were essentially the same answers.

(Thomas Yorke Dep. 142:4-14, Oct. 30, 2007.) Given Mr. Yorke's testimony, it was unnecessary for Plaintiff to inquire further into the details of the interview.

Rausser has questioned Mr. Yorke's credibility and formed opinions based on his views of Mr. Yorke's testimony, which Mr. Yorke has already testified is consistent with his interview. Because Defendant's notes were taken contemporaneously with the Yorke interview, they are a particularly important record of Mr. Yorke's statements to Laura Craft, Rausser's agent. If Defendant can attack Mr. Yorke's testimony through Rausser and withhold the notes of what was said, Plaintiff will be unduly prejudiced because he is unable to challenge Rausser's unsupported allegations regarding Mr. Yorke. Accordingly, Plaintiff has a substantial need for Defendant's notes.

## III.     Conclusion

Defendant has improperly withheld a substantial portion of the communications and work performed by, or shared with, its testifying expert.  While Defendant provides no rationale for withholding, moreover failing to log, such information, it was likely withheld either on the basis of an overbroad interpretation of the Court's Tutorial Order or on an unsupportable assertion of the protections afforded to "consulting experts."  Because Defendant has not produced a log, it is impossible for Plaintiff to know exactly what materials are being withheld and for what reason. It is evident, though, that both the facts known thus far and the substantial weight of legal authority do not support Defendant's claim that Rausser's and OnPoint's "consulting expert" work can be neatly segregated from their work on the expert opinions Defendant would like to introduce at trial.  It is also evident that (1) Defendant waived work-product protection over its notes of the Yorke interview when it permitted Craft to participate in the interview, and (2) Plaintiff has a substantial need for a credible record of the Yorke interview.  Accordingly, Plaintiff respectfully requests that the Court grant its Motion to Compel Production of Materials Relating to Expert Reports and Opinions of Gordon Rausser.

Respectfully submitted this 31st day of January, 2008.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner


/s/ Ronald L. Buch, Jr.
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586

Email: dcurtin@mckeenelson.com
rbuch@mckeenelson.com
lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone: (508) 791-8500
Facsimile: (508) 791-8502
Email: jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on January 31,
2008.

/s/ Ronald L. Buch, Jr.
Ronald L. Buch, Jr., D.C. Bar #450903
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: rbuch@mckeenelson.com

# Exhibit A



**U.S. Department of Justice**

**Tax Division**

|  |  |
|---|---|
| *Facsimile No. (202) 514-5238* | *Please reply to:*  Civil Trial Section, Northern Region |
|  | P.O. Box 55 |
| *Trial Attorney: Heather L. Vann* | *Ben Franklin Station* |
| *Attorney's Direct Line: (202) 307-2822* | *Washington, D.C.  20044* |

5-36-10254
CMN 2005106280

January 16, 2008

**Via Email and Federal Express**

Lena Amanti
McKee Nelson LLP
Suite 200
1919 M Street, NW
Washington, DC 20036

   Re: ***Fidelity International Currency Advisor A Fund, L.L.C. v. United States,***
     <u>**Case No. 05-40151 (D. Mass.)**</u>

Dear Ms. Amanti:

   This letter responds to your letter dated January 11, 2008, which I received yesterday. We completely disagree with your position that you satisfied your obligations under Local Rule 37.1. It is our position that you violated the spirit, if not the letter, of that rule. On December 14, 2007, plaintiff sent a letter to counsel for the United States regarding issues relating to OnPoint and Rausser and requested that the parties hold a discovery conference on or before January 3, 2008. Counsel for the United States promptly responded that lead counsel for the United States was on leave until January 10, 2008 and requested that the parties hold a discovery conference after January 10, 2008 if the issues raised in plaintiff's letter were not resolved before that date. On December 18, 2007, plaintiff responded to the United States' letter by stating that during the meet-and-confer that the parties had scheduled for December 21, 2007 to discuss another matter, plaintiff "encourage[d] [the United States] to provide us with the government's position" on plaintiff letter of December 14, 2007. At no time did plaintiff inform the United States that it objected to delaying the discovery conference under Local Rule 37.1 until a week after the date requested for the conference. It is true that plaintiff requested that United States' counsel contact plaintiff on December 27, 2007, only two business days after the December 21, 2007 meeting, to update plaintiff on the issues raised in their December 14, 2007 letter and United States' counsel agreed to do so and did not do so. However, when the request was made, United States' counsel told plaintiff that they likely would not have any further information at that time and, in fact, United States' counsel did not have an update to give at that time. The fact that we produced documents during the time our lead counsel was on leave does not show that his presence at a discovery conference was not necessary but rather shows that the United States was attempting to narrow the issues in disagreement between the parties. However, rather than meaningfully attempt to narrow the disputed issues, plaintiff chose to file a premature motion and to waste the time and resources of the court and both parties.

- 2 -

With respect to OnPoint's invoices from September 2006 and April 2007, OnPoint's first invoice related to work performed in October 2006 and thus no invoice exists for September 2006. Further, on October 12, 2007, the United States produced OnPoint's invoice from April 2007. See 1D000309-1D000310.

You have now received all communications to which you are entitled that relate to OnPoint's work during the first six months of OnPoint's engagement. As we stated during our January 10, 2008 meeting, the only documents that we are withholding from that time period are (1) two non-discoverable e-mails that discuss the tutorial and that were not made a part of Rausser's expert report; (2) documents showing travel and hotel arrangements of United States' counsel, certain experts and others retained by the United States in connection with the tutorial production and viewing; (3) litigation in *Fidelity High Tech*; (4) drafts of the script of the United States' tutorial, which plaintiff has not asked for; and (5) documents relating to OnPoint's, and not Rausser's, role as a consulting expert. The redacted portions of the documents that you reference in your letter relate to one or more of those five categories of documents. As plaintiff is not entitled to discovery of any of those items in this case, no privilege log is required to be produced listing those items.

Sincerely,

*Heather L. Vann*

Heather L. Vann
Trial Attorney
Civil Trial Section, Northern Region

2995916.1

Exhibit B

**OnPoint**

## OnPoint Analytics
2000 Powell Street
Suite 860
Emeryville, CA 94608
(510) 463-0130

**Invoice for Services: # 1376**

Dated: December 31, 2006
Matter: Fidelity Int'l. Currency Advisor A Fund LLC v. United States of America

**Contract #: 6WTAX - 136153**

> **Mr. Barry E. Reiferson, Esq.**
> U.S. Department of Justice
> Tax Division
> P.O. Box 813
> Ben Franklin Station
> Washington. DC 20044

Services from November 1 through 30, 2006: Meetings with staff; review and evaluate documents: : travel and review documents for court hearing: attend plaintiffs' tutorial; meetings with Dennis Donohue; calls with DOJ attorneys; review draft correspondence: review and analysis of Brattle presentation; prepare transaction chronology: perform accounting analysis regarding trades; search/download EMC stock price and foreign currency exchange rate data: graph price series, volatilities, and correlation coefficients over time: analysis of payoffs of various vertical option spreads and option combos along with the percents of historical data points within the relevant price ranges; obtain and analyze historical price data of 10-year swap rates: analysis of theoretical probabilities associated with payoffs; download/compile historical LIBOR data; review public EMC SEC filings; review and index documents produced by Egan and related entities; draft search terms for Refco documents;

locate and digest pattern evidence from Helios documents; review Alpha documents; review Plaintiffs' tutorial presentation slides: review Dewees decision; generate and revise graphs.

| Title | Hours | Rate | Fee |
|---|---|---|---|
| Testifying Expert (G. Rausser) | 75.80 | $650 | $ 49,270.00 |
| Project Manager (L. Craft) | 62.10 | $350 | $ 21,735.00 |
| Statistician (G. You) | 28.30 | $300 | $ 8,490.00 |
| Database Architect (J. Mouledous) | 4.25 | $280 | $ 1,190.00 |
| Analyst (C. Wallace) | 91.75 | $200 | $ 18,350.00 |
| Analyst (H. Greiner) | 162.60 | $200 | $ 32,520.00 |
| Project Assistant (H. Bellson) | 9.50 | $ 90 | $ 855.00 |
| Project Assistant (B. Mobley) | .50 | $ 90 | $ 45.00 |
| Data Entry (K. Cummins) | 2.00 | $ 50 | $ 100.00 |
| | | | |
| Total Current Fees: | | | $132,555.00 |

OPA008270



Reimbursable Costs at Cost:
Airfare – G. Rausser                                     $ 724.30
Hotel Marriott – G. Rausser                             $ 111.33
Taxis/Car Service – G. Rausser                          $  99.55
Meals While Traveling – G. Rausser                      $  42.20
Meals – Working Meeting – Rausser/Craft/Greiner         $  76.77
FedEx                                                   $  71.28

Total Reimbursable Costs at Cost:                       $   1,125.43


**Total Current Charges:**                              **$ 133,680.43**


Previous Balance Due:       **(CORRECTED)**
                            Invoice #1365 Dated 11/27/06     $  81,930.00


**Total Balance Due:**                                  **$ 215,610.43**



**No other costs have been incurred through the billing period for this invoice.  Information
about anticipated costs for future periods may be obtained from Laura R. Craft at
(510) 463-0133 and are in accordance with the previously executed contract.**

---

2000 Powell Street, Suite 860, Emeryville, CA  94608            Accounting:  510-463-0137

OPA008271

# Exhibit C



### OnPoint Analytics
2000 Powell Street
Suite 860
Emeryville, CA  94608
(510) 463-0130

**Invoice for Services: # 1402**

Dated: January 31, 2007
Matter: *Fidelity Int'l. Currency Advisor A Fund LLC v. United States of America*

Contract #:  **6WTAX - 136153**

> **Mr. Barry E. Reiferson, Esq.**
> U.S. Department of Justice
> Tax Division
> P.O. Box 55
> Ben Franklin Station
> Washington, DC 20044

Services December 1 through 31, 2006:

Draft and revise tutorial script: telephone conferences with Donohue and Reiferson; evaluation of options transactions and associated probabilities; check theoretical values of YEN options and EURO options: prepare/design visuals for tutorial presentation; import/analyze LIBOR data; plot EMC closing prices: review related source documents, visuals; conf. GCR; review related source documents, visuals:  review Carruth-produced source documents; memo to Mr. Donohue; gather and review numbers for Fidelity matters to compare against current budget; complete and send memo to Mr. Donohue with attached documents: review contract documents; meeting with Laura to plan presentation; script revisions: review related source documents, visuals; develop PowerPoint slides: identify. complete. and compile PowerPoint slides; incorporate Dennis's updates to slides and script: create binders of script and slides and cited materials; index source documents: index work product: meeting with Laura and Chandra; review Rule 2002-50; read Proskaure Rose Opinion: review rule 2003-56: Review Helios Files; review Section 305.1(b)(2).15: read Helmer Opinion; review March 2000 announcements; review Notices 2001-45: review Carruth files; review redemptions taxable as dividends; review adjusting entries; review reporting book tax differences; index Carruth files: update draft.

OPA008272



| Title | Hours | Rate | Fee |
|---|---|---|---|
| Testifying Expert (G. Rausser) | 45.80 | $650 | $ 29,770.00 |
| Project Manager (L. Craft) | 58.50 | $350 | $ 20,475.00 |
| Statistician (G. You) | 27.40 | $300 | $ 8,220.00 |
| Analyst (C. Wallace) | 98.25 | $200 | $ 19,650.00 |
| Analyst (H. Greiner) | 110.25 | $200 | $ 22,050.00 |
| Analyst (R. Stifter) | .10 | $200 | $ 20.00 |
| Project Assistant (H. Bellson) | 10.25 | $ 90 | $ 922.50 |
| Project Assistant (B. Mobley) | 6.00 | $ 90 | $ 540.00 |

Total Current Fees:                                          $101,647.50


Reimbursable Costs at Cost:

| | |
|---|---|
| United Airlines – Airfare – SFO to Denver - L.Craft | $ 730.60 |
| Westin Tabor Center – Hotel Denver – L. Craft | $ 285.98 |
| Airport Parking SFO – L. Craft | $ 63.00 |
| Meals While Traveling – L. Craft | $ 18.78 |
| Total Reimbursable Costs at Cost | $ 1,098.36 |


Total Current Charges:                                       $ 102,745.86

Previous Balance Due:

| | |
|---|---|
| Invoice #1365 | $ 81,930.00 |
| Invoice #1376 | $ 133,680.43 |


Total Balance Due:                                           $ 318,356.29


**No other costs have been incurred through the billing period for this invoice. Information about anticipated costs for future periods may be obtained from Laura R. Craft at (510) 463-0133 and are in accordance with the previously executed contract.**

---

2000 Powell Street, Suite 860, Emeryville, CA 94608          Accounting: (510) 463-0137

OPA008273

# Exhibit D



## OnPoint Analytics
2000 Powell Street
Suite 860
Emeryville, CA 94608
(510) 463-0130

**Invoice for Services: # 1413**

Dated: February 28, 2007
Matter: Fidelity Int'l. Currency Advisor A Fund LLC v. United States of America

**Contract #: 6WTAX - 136153**

**Mr. Barry E. Reiferson, Esq.**
U.S. Department of Justice
Tax Division
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

Services January 1 through 31, 2007:

option specifications; research LIBOR options, interest rate market, and definitions; check current foreign exchange rate; clarify the parameters required for digital option valuation; word search of documents produced; review client correspondence;
review handwritten documents from Carruth; review documents produced by Alpha entities;
review documents
produced by Helios entities; review documents produced by DGI and related parties;
review and index Egan documents;
ent.

| Title | Hours | Rate | Fee |
|---|---|---|---|
| Testifying Expert (G. Rausser) | 31.50 | $650 | $ 20,475.00 |
| Project Manager (L. Craft) | 40.55 | $350 | $ 14,192.50 |
| Statistician (G. You) | 13.35 | $300 | $ 4,005.00 |
| Database Architect (J. Mouledous) | 1.25 | $300 | $ 375.00 |
| Analyst (C. Wallace) | 50.75 | $200 | $ 10,150.00 |
| Project Assistant (H. Bellson) | .50 | $ 90 | $ 45.00 |

Total Current Fees:                                          $ 49,242.50

---

OPA008274



**Reimbursable Costs at Cost:**

| | |
|---|---|
| United/Airfare – G. Rausser | $ 564.80 |
| Hotel Monaco – Denver – G. Rausser | $ 662.69 |
| Transportation to SFO – G. Rausser | $ 74.75 |
| Taxis – Denver | $ 52.00 |
| Transportation from SFO – G. Rausser & L.Craft | $ 100.05 |
| United/Airfare – L. Craft | $ 556.80 |
| Hotel Monaco – L. Craft | $ 297.46 |
| Taxis – Denver | $ 55.00 |
| FedEx | $ 201.53 |

**Total Reimbursable Costs at Cost:**          $   2,565.08

**Total Current Charges:**          $  51,807.58

**Previous Balance Due:**

| | |
|---|---|
| Invoice #1365 | $ 81,930.00 |
| Invoice #1376 | $ 133,680.43 |
| Invoice #1404 | $ 102,745.86 |

**Total Balance Due:**          $ 370,163.87

**No other costs have been incurred through the billing period for this invoice. Information about anticipated costs for future periods may be obtained from Laura R. Craft at (510) 463-0133 and are in accordance with the previously executed contract.**

OPA008275

# Exhibit E



### OnPoint Analytics
2000 Powell Street
Suite 860
Emeryville, CA  94608
(510) 463-0130

Invoice for Services: # 1452

Matter: Fidelity Int'l. Currency Advisor A Fund LLC v. United States of America

Contract #:  6WTAX - 136153

**Mr. Barry E. Reiferson, Esq.**
U.S. Department of Justice
Tax Division
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

Services Rendered Through March 31, 2007

. . . aft expert declaration outline; research and prepare annotations; review of 2002 Fidelity International tax return; prepare spreadsheet regarding option contract comparisons; review and index documents produced by Refco to the DOJ; calls with B. Reiferson; call with Chris Young re: additional documents; create annotated table of key documents; review correspondence and comments from D. Donohue; generate probability estimation for various payouts; provide description of option valuation techniques; analysis of document redactions by plaintiffs.

| Title | Hours | Rate | Fee |
|---|---|---|---|
| Testifying Expert (G. Rausser) | 49.90 | $650 | $ 32,435.00 |
| Project Manager (L. Craft) | 112.75 | $350 | $ 39,462.50 |
| Statistician (G. You) | 20.70 | $300 | $  6,210.00 |
| Analyst (C. Wallace) | 113.00 | $200 | $ 22,600.00 |
| Project Assistant (H. Bellson) | 10.75 | $ 90 | $    967.50 |
| Project Assistant (B. Mobley) | 4.00 | $ 90 | $    360.00 |

Total Current Fees:                              $ 102,035.00

OPA008276



**Reimbursable Costs at Cost:**

| | |
|---|---:|
| Airfare – SFO/Denver - L. Craft | $ 2,749.81 |
| Hotel – L. Craft | $ 297.46 |
| Transportation – L. Craft | $ 458.75 |
| Airport Parking – L. Craft | $ 39.00 |
| Airfare – G. Rausser | $ 1,878.81 |
| Hotel – G. Rausser | $ 97.83 |
| Transportation – G. Rausser | $ 262.00 |
| Meals While Traveling – G. Rausser | $ 169.09 |
| FedEx | $ 14.56 |

| | |
|---|---:|
| **Total Reimbursable Costs at Cost:** | $ 5,967.31 |
| **Total Current Charges:** | $ 108,002.31 |
| **Previous Balance Due:** | $ 0.00 |
| **Total Balance Due:** | $ 108,002.31 |

| | | |
|---|---|---:|
| 07/09/07 | **Payment by ACH** | $ 102,100.30 |
| | **Finance Charge – Past Due Invoice** | $ 65.30 |
| | **Balance Due** | $ 5,967.31 |

**No other costs have been incurred through the billing period for this invoice. Information about anticipated costs for future periods may be obtained from Laura R. Craft at (510) 463-0133 and are in accordance with the current contract.**

2000 Powell Street, Suite 860, Emeryville, CA 94608        Accounting: (510) 463-0137

OPA008277