# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 05-40151-FDS |
| v. | ) ) ) | 06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORTS AND OPINIONS OF ETHAN YALE AND STUART SMITH

Ethan Yale's and Stuart Smith's reports and opinions address questions of fact on which expert testimony is appropriate and helpful to the Court. Yale opines on whether one structured transaction is factually similar to another transaction. Smith opines on whether it would be reasonable for a client to rely on the Sidley Austin and Proskauer Rose opinions, based in part on a comparison of the contents of those opinions to common industry standards and practice regarding tax opinions. This type of fact-based expert testimony is not only permissible, but routine.

Defendant's sole argument for the exclusion of the Yale and Smith opinions is that they are legal opinions. Because their opinions are factual, not legal, Defendant's motion should be denied. Even if the Yale and Smith opinions could be considered to include traces or elements of legal points, the Court should permit their testimony because their challenged opinions are well within the accepted boundaries for admissible opinions. Courts have not closed the courtroom door to fact opinions such as those offered by Yale and Smith even where the opinions have

traces of legal points or opinions.  Here, the Yale and Smith opinions are similar to expert

testimony frequently recognized by the courts as helpful and admissible.  Accordingly,

Defendant's motion should be denied.

I.     **Yale's Opinion That FICA A Fund Is Not Substantially Similar to Notice 2000-44 Is Admissible**

Yale opines that the FICA A Fund transactions are not substantially similar to the

transactions described in Notice 2000-44.[1]  In reaching his opinion, Yale compared the tax

structure of the FICA A Fund transactions to the tax structures described in Notice 2000-44.

Comparing the tax mechanics of two transactions not only requires an understanding of their

factual features (*e.g.*, assets and entities involved, sequence of events, ownership structure), but

also requires an understanding of how those factual differences affect the anticipated tax

consequences of the two transactions.  The fact that Yale's training as a tax attorney enables him

to compare the tax structures and their mechanics certainly does not render his conclusion an

inadmissible legal opinion.  To the contrary, an expert understanding of the relevant tax law

allows him to look under the hood of these structures and to perform the factual comparison of

their moving parts that the "substantially similar" inquiry requires.

A.     **Whether FICA A Fund Is Substantially Similar to Notice 2000-44 Is a Question of Fact**

In resolving a factual or legal issue, a trier of fact often must compare two things to one

another.  In copyright and patent cases, the fact finder must compare an original object to an

alleged copy to determine whether the copy is so similar to the original that infringement has

---

[1] United States of America's Mem. in Supp. of Its Mot. to Exclude the Expert Reports and Ops. of Both Ethan Yale and Stuart Smith ("Def.'s Mem.") Ex. 1 at 2 (Yale Report).

occurred.[2]  The determination of whether FICA A Fund is substantially similar to Notice 2000-

44 is comparable to the determination of whether one book plagiarizes another or one invention

infringes on another's patent.  In each case, the trier of fact must compare two items in order to

determine whether they are substantially similar.

A plaintiff establishes copyright infringement by proving that the defendant copied the

work and "that the copying . . . was so extensive that it rendered the infringing and copyrighted

works 'substantially similar.'"[3]  In that context, the First Circuit has characterized the question

of substantial similarity as a "'mixed question of fact and law'"[4] and has stated that "expert

testimony may be used to establish that there was copying (from evidence of substantial

similarity)."[5]  In particular, the First Circuit has recognized that expert testimony may aid the

court in "'dissection' of the work . . . to assess whether there are sufficient articulable similarities

to justify a finding that the defendant has copied from the protected work."[6]

As in copyright cases, patent cases involve an inquiry into whether two devices or

processes are substantially similar.  A plaintiff can prove patent infringement by showing either

---

[2] Notably, there are currently more than sixty patents held on tax strategies.  Evelyn McDowell, *Tax Strategy Patents: Truth and Consequences*, The CPA Journal, Feb. 2008.  Patent infringement suits involving tax strategy patents are a consequence of patenting strategies.  For example, in *Wealth Transfer Group, LLC v. Rowe*, which eventually settled, an organization claimed that an individual infringed on its patent by using a grantor retained annuity trust to minimize taxes on profits from stock options.  Compl., No. 06-00024 (D. Conn. Jan. 6, 2006).  In these types of patent infringement suits, a court will have to decide whether one tax strategy is similar to another tax strategy, and the parties are likely to call upon tax experts to assist the court with this decision.

[3] *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 33 (1st Cir. 2001) (quoting *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 60 (1st Cir. 2000)).

[4] *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 64 (1st Cir. 2000) (quoting *O'Neill v. Dell Publ'g Co.*, 630 F.2d 685, 687 (1st Cir.1980)).

[5] *Id*. at 66 n.11.

[6] *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 608 (1st Cir. 1988).

literal infringement or infringement under the doctrine of equivalents.[7]  Under the doctrine of equivalents, someone who modifies a patented invention may be liable for infringement if the two devices are substantially similar.[8]  Whether two devices or processes are substantially similar under the doctrine of equivalents is a question of fact.[9]  In making this determination, the fact finder must evaluate the similarity of two inventions from "the perspective of the hypothetical reasonable person."[10]

Likewise, whether FICA A Fund is substantially similar to Notice 2000-44 is a question of fact for this Court to decide.  The Court will have to compare the facts of FICA A Fund to the facts of Notice 2000-44 to determine whether these transactions are "substantially similar."  One definition of "substantially similar," which appeared in the disclosure regulations in effect when Plaintiff filed his 2001 tax return, states that it includes "any transaction that is expected to obtain the same or similar types of tax benefits and that is either factually similar or based on the same or similar tax strategy."[11]  The expected tax benefits are facts, as is the tax strategy.  Unquestionably, someone with expertise in tax can aid the Court in understanding the similarity or dissimilarity of the expected tax results and the tax strategies.  By going under the hood and

---

[7] *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *see also Borg-Warner Corp. v. Paragon Gear Works, Inc.*, 355 F.2d 400, 404 (1st Cir. 1965) (examining the plaintiff's "equivalency" claim after examining its claim of "literal infringement").

[8] *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes.").

[9] *See, e.g., Inner-Tite Corp. v. DeWalch Techs., Inc.*, No. 04-40219, 2007 U.S. Dist. LEXIS 64586, at *14, *20 (D. Mass. Aug. 31, 2007) (quoting *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006)).

[10] *Warner-Jenkinson*, 520 U.S. at 37-38 (internal quotations omitted) (declining to take up the question, but indicating there was "ample support in our prior cases for that holding"); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) ("A finding of equivalence is a determination of fact.").

[11] Temp. Treas. Reg. § 1.6011-4(b)(1)(i) (2002).

4

looking at the mechanics, Yale assists with the Court's ultimate determination by providing expertise on the degree of similarity between the tax strategies, expected tax benefits, and facts of the FICA A Fund transactions and the transactions described in Notice 2000-44. Thus, Yale's opinion addresses a question of fact on which expert testimony is appropriate and helpful to the Court.

**B.      Defendant's Attacks on Yale's Opinion Fail**

Defendant points to various aspects of Yale's report to support its argument that Yale offers a legal opinion. The fact that Yale's report is informed by the tax law, however, does not render Yale's opinion one of law.

**1.      Yale's Discussion of the Law Does Not Make His Opinion One on a Question of Law**

The main argument Defendant presents to exclude Yale's opinion is that his report "consists of his interpretation of various aspects of the federal tax law."[12] Defendant points to various Internal Revenue Code and Treasury Regulation provisions discussed in Yale's report to argue this point. These provisions are relevant to understanding the tax features of the FICA A Fund transactions and the transactions described in Notice 2000-44. How the tax law applies or was intended to apply in the FICA A Fund transactions and in Notice 2000-44 is relevant to any factual comparison between the two. Yale does not, however, opine on the meaning of the applicable substantive provisions, nor is he being offered to the Court to tell the Court what the law is. For example, Defendant points to Yale's discussion of whether a contingent obligation is a liability for purposes of section 752.[13] In his report, Yale does not opine that short options are

---

[12] Def.'s Mem. at 15.

[13] *Id.* at 5.

(or are not) liabilities; rather, he simply notes the fact that the tax consequences sought by the taxpayer rely, in part, on a particular position on this issue.

Defendant also complains about Yale's discussion of the meaning of "substantially similar."[14]  In addressing whether FICA A Fund is substantially similar to Notice 2000-44, Yale had to consider possible interpretations of the term "substantially similar."  Yale explained that "in order to make a factual comparison and then evaluate it against the substantially similar standard, you have to have some idea about what it means."[15]  To provide a framework within which to conduct his analysis, Yale examined various constructions of the phrase and determined that under any reasonable construction, FICA A Fund and Notice 2000-44 are not substantially similar.[16]  Yale did not opine on the correct definition of "substantially similar," but "outlined a range of possibilities,"[17] as any inquiring person would when confronted with the factual issue at hand.  This survey of possible constructions merely preceded his factual comparison of FICA A Fund and Notice 2000-44—it does not convert his conclusion on a factual question into a legal opinion.

While Defendant argues that Yale "frequently conceded that he was simply opining on law or offering legal analysis,"[18] the examples Defendant cites show nothing more than that Yale quoted and paraphrased various tax laws in his report and that he is knowledgeable about

---

[14] *Id.* at 3-5.

[15] Def.'s Mem. Ex. 2 at 119:5-8 (Yale Dep.); *id.* at 117:20-22 ("[U]nder any of those possible constructions of the phrase 'substantially similar,' the two transactions are not substantially similar.").

[16] Def.'s Mem. Ex. 1 at 10.

[17] Def.'s Mem. Ex. 2 at 117:14-17; *see also id.* at 117:23-24 ("I didn't render a legal opinion about what substantially similar means."); *id.* at 124:16-19 ("I don't give an opinion regarding the meaning of substantially similar, but canvas a set of possible meanings that might be assigned to that phrase.").

[18] Def.'s Mem. at 4.

these provisions.  It is unremarkable that Yale based his statements in the "Partnership Tax Law"

section of his report on his knowledge of tax law,[19] that he paraphrases section 704(d) to make it

more understandable,[20] or that in discussing outside basis he refers to the relevant provisions of

the Internal Revenue Code.[21]   Yale refers to these provisions because they are relevant to his

factual comparison of FICA A Fund and Notice 2000-44.

> **2.     The Fact That Yale's Opinion on a Question of Fact "Plugs Into [a] Legal Rule"[22] Does Not Make His Opinion One on a Question of Law**

Although the outcome of the substantially similar factual issue "determines the governing

law"[23] in this case, that fact does not convert Yale's factual comparison into a legal opinion.

Yale explained that there is an

> exception in Treasury Regulation 1.752-6, which depends on whether the
> transaction in which Egan participated is substantially similar to the transaction
> described in [Notice 2000-44].  So if it was substantially similar, then a certain
> legal rule will apply.  And if it was not substantially different, then a different
> legal rule will apply.  So the legal rule either turns on or off, switches from being
> one thing to another, based on the factual determination.[24]

Yale does not opine on how or whether Treasury Regulation § 1.752-6 applies to this

case; rather, he opines on a factual predicate to the application of the regulation.  While

Defendant argues that Yale "admits that his conclusion that Treasury Regulation § 1.752-6

potentially applies to this case is a legal conclusion,"[25] the fact that the regulation "potentially

---

[19] *Id.* (citing Def.'s Mem. Ex. 2 at 180:12-181:4).

[20] *Id.* (citing Def.'s Mem. Ex. 2 at 194:10-13); *see* Def.'s Mem. Ex. 2 at 193:24-194:1 ("I'm trying to turn [section 704(d) into a more plain English explanation so that it's more understandable.").

[21] Def.'s Mem. at 4 (citing Def.'s Mem. Ex. 2 at 196:19-25).

[22] Def.'s Mem. Ex. 2 at 97:20-21.

[23] Def.'s Mem. Ex. 1 at 2.

[24] Def.'s Mem. Ex. 2 at 96:13-22.

[25] Def.'s Mem. at 2 (citing Def.'s Mem. Ex. 2 at 96:6-97:14).

applies" is obvious from a factual review of the notices of final partnership administrative adjustment ("FPAAs") issued by the IRS to FICA A Fund.[26]  In any case, this so-called "legal conclusion" is irrelevant to Yale's comparison of the mechanics of the FICA A Fund transactions to the mechanics of the transactions described in Notice 2000-44.  This merely goes to demonstrate the relevance of Yale's testimony to this case.

### 3. Even If Yale's Opinion Includes Traces of Legal Opinions, His Opinion Is Admissible

Defendant's argument for the exclusion of Yale's opinion is premised on its characterization as a legal opinion that is per se inadmissible.[27]  Defendant wrongly suggests that a per se rule exists that forbids any expert testimony regarding questions of law (other than foreign law).[28]  Defendant's argument is fundamentally flawed and inconsistent with its own position in this case.  In fact, the very cases relied on by Defendant recognize that courts allow expert testimony on legal issues.

For example, in *Nieves-Villanueva v. Soto-Rivera*, the First Circuit explicitly stated that expert testimony on legal matters may be admissible in legal malpractice cases.[29]  Indeed, the First Circuit has recognized that in legal malpractice cases expert testimony on the law is not only permissible, but may be necessary for the plaintiff to prevail.[30]  In addition to malpractice

---

[26] *See* Ex. A at 1IRS0834 ¶ 4 (2001 FPAA); Ex. B at 13IRS00013 ¶ 4 (2002 FPAA).

[27] *See* Def.'s Mem. at 12-14.

[28] *Id.* at 13 n.55.

[29] 133 F.3d 92, 100-01 (1st Cir. 1997) ("[T]here may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it normally would be excluded.").

[30] *See, e.g., Ferreira-Plasencia v. Ruginski*, No. 01-2077, 2002 WL 850200, at *1 (1st Cir. May 2, 2002) (finding that the  district court's granting of summary judgment to the defendants in a legal malpractice suit was proper because, among other reasons, the plaintiff "failed to present expert testimony establishing the standard of care owed to him on his claim that defendants did not properly advise him as to alternative avenues for relief from deportation"); *Wagenmann v. Adams*, 829 F.2d 196, 218 (1st Cir. 1987) ("In an action for legal malpractice, expert (footnote continues on next page)

cases, the First Circuit has observed that in "highly complex and technical matters" expert testimony on legal matters may be admissible.[31]  The *Nieves-Villanueva* court gave as an example the area of patent litigation, "in which technical experts are generally allowed to comment on the scope of a patent's coverage and give their conclusions on the issue of infringement."[32]

The First Circuit and other courts have recognized that tax law is a complex area and that it may be appropriate to accept expert testimony on the tax consequences of a transaction.[33] Ironically, in cases where expert testimony on tax law has been admitted, it often has been the government that has introduced the testimony.[34]  Even more ironically, Defendant has argued in favor of admitting testimony on legal issues when doing so suits its purpose *in this very case*.[35] Thus, even if the Court were to conclude that Yale's opinion contained traces of legal opinions, his opinion would fall squarely within the category of cases in which the First Circuit and other courts have permitted experts to give their opinions, including the alleged "legal opinion" content.

---

testimony is generally needed to establish both the level of care owed by the attorney under the particular circumstances and the alleged failure to conform to that benchmark.").

[31] *Nieves-Villanueva*, 133 F.3d at 101.

[32] *Id.* at 101 n.13.

[33] *See United States v. Mikutowicz*, 365 F.3d 65, 72 (1st Cir. 2004) (stating that it is "well established" that an IRS agent may provide expert testimony on the proper tax consequences of a transaction); *United States v. Windfelder*, 790 F.2d 576, 581 (7th Cir. 1986) ("Expert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence.").

[34] *See, e.g.*, *Mikutowicz*, 365 F.3d at 71 (stating that the government called an expert witness to testify about the deductibility of certain payments); *Windfelder*, 790 F.2d at 580-81 (stating that the government called expert witnesses to testify regarding the tax consequences of a transaction).

[35] Def.'s Combined Resp. in Opp'n to Pl.'s Mot. to Exclude the Expert Test. and Reports of Dr. A. Lawrence Kolbe and Dr. Gordon Rausser at 21 ("[C]ourts specifically allow expert opinions on the application of complex tax or accounting concepts.").

**II.     Smith's Opinion That the Legal Opinions Are Ones on Which Plaintiff Could Reasonably Rely Is Admissible**

Smith's opinion is relevant to Defendant's assertion of penalties and the potential application of the reasonable cause exception.[36]  Courts have treated the existence of the reasonable cause exception to accuracy-related penalties as a question of fact.  Smith's opinions pertain to an issue of fact and are thus admissible.

At its core, Smith's opinion is that the Sidley Austin and Proskauer Rose opinions are ones "upon which the Taxpayer Egan could reasonably rely in preparing and filing his tax return."[37]  Smith bases this opinion on his conclusion that the opinions are "objectively reasonable and . . . they comply with the professional requirements common to the tax profession and also with the specific administrative practice requirements of Treasury Circular 230."[38]  In addition, Smith examined the meaning of "substantially similar" and is of the opinion that Proskauer Rose's conclusion that the FICA A Fund transactions are not substantially similar to Notice 2000-44 was reasonable.[39]

In the face of Defendant's aggressive attack on both the Sidley Austin and Proskauer Rose opinions, Smith's opinion is particularly relevant and important for the Court to consider.  As discussed above, the First Circuit has recognized that expert testimony is admissible with respect to the standards of legal practice and the reasonableness of legal interpretations in complex areas such as tax.  Expertise in the areas of tax practice and professional standards is necessary to render an opinion as to whether it would be reasonable for a client to rely on the

---

[36] *See* I.R.C. § 6664(c); Treas. Reg. § 1.6664-4.

[37] Def.'s Mem. Ex. 3 at 29 (Smith Report).

[38] *Id.* at 29.

[39] *Id.* at 30.

Sidley Austin and Proskauer Rose opinions. Additionally, expertise in substantive tax law is relevant in analyzing the interpretation of tax law in the Sidley Austin and Proskauer Rose opinions. Smith possesses the necessary expertise. He worked at the Department of Justice in the Appellate Section of the Tax Division for five years; he was the Tax Assistant to the Solicitor General for ten years; and he has been in private tax law practice for over twenty years.[40] Smith has spent over forty years addressing the reliability of written tax opinions.[41] Smith has the extensive experience both with the industry practice and professional standards unique to tax law and with the substantive tax law fundamental to rendering an opinion on whether the Sidley Austin and Proskauer Rose opinions are ones on which a taxpayer could reasonably rely.[42]

It is important to note that Smith does not opine on the correct substantive tax treatment of the FICA A Fund transactions.[43] Smith does not offer an opinion on "what law applies in determining whether plaintiff can reasonably rely on legal advice as a defense to the application of accuracy-related penalties."[44] Smith does not opine on whether a particular interpretation of

---

[40] *Id.* App. A.

[41] *Id.* at 3.

[42] As Defendant noted, Smith's opinions and testimony on reasonable reliance on a tax opinion were permitted in *Klamath Strategic Investment Fund, LLC v. United States*, 472 F. Supp. 2d 885 (E.D. Tex. 2007). Def.'s Mem. at 20 n.62. The court in *Klamath* agreed with Smith's opinions:

> The detailed opinions of Holland & Hart and Olson Lemons (addressed to Patterson at St. Croix and Nix at Rogue) provided a reasonable interpretation of the law. The plaintiffs' tax expert, Mr. Smith, also concluded that the opinions complied with standards common to the profession and with administrative standards established by Treasury Circular 230, which addresses conduct of practitioners who provide tax opinions. (Tr. II, 131-133). The court agrees with the opinions expressed by Smith.

472 F. Supp. at 905.

[43] Def.'s Mem. Ex. 3 at 2.

[44] Def.'s Mem. at 7-8.

the law is correct, but whether reliance on that particular interpretation was reasonable under the circumstances.[45]  Finally, Smith does not opine on "whether plaintiff acted reasonably."[46]

### A.    Presence of the Elements of the Reasonable Cause Exception Is a Question of Fact

Reliance on professional advice may constitute reasonable cause and good faith in the context of accuracy-related penalties "if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith."[47]  The courts have consistently characterized reasonable cause as a factual determination:  "it is a question of fact whether 'the elements that constitute "reasonable cause" are present in a given situation.'"[48]  The question of what elements must be present to constitute reasonable cause, on the other hand, is a question of law.[49]  Smith opines on whether an element of the reasonable cause defense (namely, reasonable reliance on professional advice) is present in this case.  Nowhere does he opine on what elements must be present to constitute reasonable cause or the ultimate question of whether reasonable cause exists in this case.  Indeed, Defendant criticizes Smith because he "makes no attempt to discuss the requirements of [the reasonable cause and good faith regulation] or the many cases that have

---

[45] *See id.* at 8-9.

[46] *Id.* at 18.

[47] Treas. Reg. § 1.6664-4(b)(1).

[48] *Thompson v. Comm'r*, 499 F.3d 129, 134 (2d Cir. 2007) (quoting *United States v. Boyle*, 469 U.S. 241, 249 n.8 (1985)); *see also Sparkman v. Comm'r*, 509 F.3d 1149, 1155, 1161 (9th Cir. 2007) (reviewing a lower court's penalty determination under the "clear error" standard that is applied to "factual determinations"); *Green v. Comm'r*, 507 F.3d 857, 871 (5th Cir. 2007) ("The determination of whether Green acted with reasonable cause and in good faith in making a substantial understatement of tax liability is a factual issue that we review for clear error."); *Sather v. Comm'r*, 251 F.3d 1168, 1177 (8th Cir. 2001) ("We review the tax court's factual determinations of whether a taxpayer qualifies for the reasonable cause exception for clear error.").

[49] *Thompson*, 399 F.3d at 134.

applied the regulation."[50]  That criticism underscores the fact that Smith does not opine on the legal standard or ultimate question before this Court.

Defendant argues that Smith's opinion should be excluded because "he may not testify as to whether plaintiff acted reasonably."[51]  Again, Defendant's argument ignores the fact that Smith does not opine on the ultimate question of whether Plaintiff acted reasonably or whether the reasonable cause defense applies.  Nowhere in his report or in his testimony does Smith attempt to examine whether reasonable cause exists.  Whether the reasonable cause defense to accuracy-related penalties exists in a case is based on "[a]ll facts and circumstances."[52]  Smith does examine a factual element of that defense to determine whether it is present in this case.  That is a question of fact.

Where the reasonableness of a person's conduct is at issue, the finder of fact decides disputed predicate facts.  The somewhat irrelevant cases cited by Defendant do nothing more than illustrate this point.  In the first case cited by Defendant,[53] the First Circuit stated that "the ultimate question of qualified immunity should ordinarily be decided by the court."[54]  The two prongs to this analysis are "whether the constitutional right asserted by the plaintiff was 'clearly established' at the time of the alleged violation" and "whether 'a reasonable official situated in the same circumstances should have understood that the challenged conduct violated the established right.'"[55]  The First Circuit noted that "[t]he ultimate question of whether a

---

[50] Def.'s Mem. at 17.

[51] *Id.* at 18.

[52] Treas. Reg. § 1.6664-4(c)(1).

[53] Def.'s Mem. at 18.

[54] *St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 (1st Cir. 1995) (citation omitted).

[55] *Id.* (quoting *Burns v. Loranger*, 907 F.2d 233, 236 (1st Cir. 1990)).

reasonable police officer, on the basis of information known to him, could have believed his actions were in accord with constitutional rights is 'a question of law, subject to resolution by the judge not the jury.'  But if there is a factual dispute, 'that factual dispute must be resolved by a fact finder.'"[56]  Similarly, in *Peterson v. City of Plymouth*, another qualified immunity case cited by Defendant,[57] the Eighth Circuit noted that while qualified immunity is ultimately a question of law, the finder of fact settles disputes as to predicate facts.[58]  Thus, the cases relied on by Defendant acknowledge that, in reaching an ultimate conclusion on reasonableness, the function may be split between the finder of law and the finder of fact.  Smith's opinion on a factual predicate to the application of the reasonable cause defense (whether reliance on the opinions was objectively reasonable) is an appropriate expert opinion on a question of fact.

### B.    Smith's Expert Testimony Regarding Professional and Industry Standards Is Admissible Fact Testimony

In considering whether it was reasonable for Plaintiff to rely on the advice of Sidley Austin and Proskauer Rose, Smith examined whether the contents of the Sidley Austin and Proskauer Rose opinions met the professional and industry standards relevant to providing tax opinions.  Expert opinion on the relevant standards of practice is routinely allowed in legal malpractice cases and in cases where industry standards are relevant.  This opinion testimony is particularly relevant in this case because of Defendant's aggressive attacks on the law firms and their opinions.

---

[56] *Id.* at 24 n.1 (quoting *Prokey v. Watkins*, 942 F.2d 67, 73 (1st Cir. 1991)).

[57] Def.'s Mem. at 18-19.

[58] 60 F.3d 469, 475 (8th Cir. 1995).

In typical legal malpractice cases, the plaintiff must present expert testimony establishing the standard of care owed to the plaintiff by the defendant-attorney.[59]  An exception to this rule exists if "the attorney's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge."[60]  The purpose of having an expert in a legal malpractice case is to provide guidance on the "relevant standard of care in the profession, based on rules and codes of professional responsibility."[61]  The expert testimony in legal malpractice cases is provided by attorneys.[62]

Courts have recognized that expert testimony is appropriate even when the judge is the finder of fact.[63]  In adopting the same requirement for expert testimony in jury and bench trials, the Third Circuit noted that, even if it adopted different requirements for jury and bench trials, in a bench trial "where a specialized field of law [is] involved, and where plaintiff argue[s] to the trial judge that defendant held himself out as an expert," expert testimony would probably be required.[64]

---

[59] *See, e.g.*, *Sierra Fria Corp. v. Donald J. Evans, P.C.*, 127 F.3d 175, 182 (1st Cir. 1997) ("[E]xpert testimony almost always is required to establish the standard of care in a legal malpractice action."); *Focus Inv. Assocs., Inc. v. Am. Title Ins. Co.*, 992 F.2d 1231, 1239 (1st Cir. 1993) ("[T]he most widely accepted rule is that a legal malpractice plaintiff must present expert testimony establishing the appropriate standard of care."); *Wagenmann v. Adams*, 829 F.2d 196, 218 (1st Cir. 1987) ("In an action for legal malpractice, expert testimony is generally needed to establish both the level of care owed by the attorney under the particular circumstances and the alleged failure to conform to that benchmark."); *see also Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) ("[E]xpert testimony is necessary to establish the standard of care."); *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 480-81 (3d Cir. 1979) ("The expert witness in professional malpractice is necessary to establish the specific standard of care and to assist the jury in its determination of defendant's conformity to the relevant standard.").

[60] *Focus Inv. Assocs.*, 992 F.2d at 1239.

[61] *Innes v. Howell Corp.*, 76 F.3d 702, 711 (6th Cir. 1996).

[62] *See, e.g.*, *Weber v. Sanborn*, No. 06-10125, 2007 WL 4348065, at *9 (D. Mass. Nov. 6, 2007) (identifying the expert as a law school professor); *Sierra Fria Corp. v. Donald J. Evans, P.C.*, 978 F.Supp. 28, 38 (D. Mass. 1996) (identifying the experts of both parties as attorneys), *aff'd*, 127 F.3d 175 (1st Cir. 1997).

[63] *See Lentino*, 611 F.2d at 481 ("[T]he better approach is to apply the same requirement to both bench and jury trials.").

[64] *Id.* at 482 n.13.

In providing guidance on the standards of care and whether those standards were breached, attorney-experts often must perform legal analysis. For example, in one case, a court found that an expert-law professor could testify whether the defendant-law firm "engaged in conduct that failed to conform with the governing Rules of Professional Conduct and fell below the standard of care of the average and ordinary qualified practitioner."[65] The court stated that, in relying on "substantive law external to the Rules," the expert-law professor "employed proper legal principles in conducting his analysis."[66] In a more complicated case, an attorney was accused of malpractice in connection with his representation of a pension fund and its attempts to obtain IRS approval.[67] The court noted that, due to the complicated nature of the legal advice at issue, expert testimony was required to analyze the Internal Revenue Code, regulations, and revenue rulings.[68] In both of these examples, an expert analyzed legal rules and regulations in order to reach a conclusion as to the proper standard of care and whether it was breached.

Similarly, courts routinely permit experts to testify on the customs and practices of an industry.[69] For example, in a First Circuit case, the plaintiffs challenged the testimony of an expert "on the ground that he impermissibly testified to a legal issue by opining that the tear sheets [(describing and containing pictures of antiques)] and invoices comported with industry standard."[70] The court noted that the expert was not offering an opinion concerning a legal

---

[65] *Weber v. Sanborn*, 2007 WL 4348065, at *9.

[66] *Id.* at *10.

[67] *Lentino*, 611 F.2d at 477.

[68] *Id.* at 481.

[69] *See Levin v. Dalva Bros.*, 459 F.3d 68, 79 (1st Cir. 2006) ("Expert testimony on industry standards is common fare in civil litigation.").

[70] *Id.*

question: the expert "permissibly offered an opinion concerning practices in the art and antique industry which was helpful to the jury in resolving the legal question before it."[71] In another case, industry experts testified regarding how the relevant industry interpreted a particular provision of the Occupational Safety and Health Administration Regulations.[72] The First Circuit has also found that a plaintiff's experts were qualified to testify regarding whether it was common in the banking industry to incorporate minority participant veto powers over loan forgiveness arrangements in loan participation agreements.[73]

The present case is analogous to the legal malpractice and similar cases in which courts routinely have permitted expert testimony from an attorney regarding professional standards and industry practices. Smith's report and testimony provide guidance on the relevant professional standards and common practices in the tax law field. Smith opines on whether the Sidley Austin and Proskauer Rose opinions met both the objective standards common to the field and Circular 230. These opinions required an understanding of both substantive tax law and "the professional requirements common to the tax profession."[74]

Circular 230 is relevant to the tax professional and industry standards. Defendant's argument that "Smith's legal opinion that Treasury Circular 230 is relevant to whether or not the plaintiff reasonably relied upon the Sidley Austin and Proskauer Rose opinions letters is itself legally wrong"[75] is wrong for two reasons. First, Defendant mischaracterizes Smith's use of

---

[71] *Id.*

[72] *See Beaver Plant Operations, Inc. v. Herman*, 223 F.3d 25, 31 (1st Cir. 2000) ("The unchallenged testimony of industry experts established that [29 C.F.R. § 1910.23(a)(2)] was not understood to impose any guarding requirements on ladderway floor openings.").

[73] *Den Norske Bank AS v. First Nat'l Bank of Boston*, 75 F.3d 49, 56-59 (1st Cir. 1996).

[74] Def.'s Mem. Ex. 3 at 29.

[75] Def.'s Mem. at 15.

Circular 230.  Smith never states that Circular 230 governs the application of the reasonable

cause defense, and his use of the Circular 230 standards in his analysis is not a "legal opinion"

that Circular 230 is relevant to the reasonable cause defense.  Smith does observe that the Sidley

Austin and Proskauer Rose opinions, on their face, address the issues that Circular 230 required

certain tax opinions to address.  The fact that these opinions addressed the issues that the

Treasury Department previously had identified as necessary and appropriate for tax opinions to

consider is objective evidence that it would be reasonable for a taxpayer to rely on the opinions.

Second, Smith's use of the Circular 230 standards in his analysis is not "legally wrong."

In his report, Smith acknowledged that Circular 230 did not strictly apply to the Sidley Austin

and Proskauer Rose opinions.[76]  Circular 230 is a "more complicated standard" than the

standards common to the tax field.[77]  Smith testified that Circular 230 has relevance, "based on

[his] understanding of the practice of the profession,"[78] to the "adequacy and quality of the

opinion[s]."[79]  Smith explained in his deposition that "it is the practice of the profession to use

[Circular 230] as a litmus test . . . given the fact that it represents the Treasury's view of what an

opinion appropriately should include."[80]  Any tax opinion that meets the higher standards of

Circular 230 is certainly one upon which a taxpayer could reasonably rely.[81]  Thus, Circular 230

---

[76] Def.'s Mem. Ex. 3 at 4 n.1.

[77] *Id.* at 4.

[78] Def.'s Mem. Ex. 4 at 116:24-117:4 (Smith Dep.)

[79] *Id.* at 114:1-2.

[80] *Id.* at 116:5-10.

[81] While Defendant argues that Circular 230 "sets forth rules of conduct for practitioners representing taxpayers in administrative proceedings before the IRS," Def.'s Mem. at 16, one of the reasons for governing practitioner behavior and the issuance of tax opinions is to "protect taxpayers from unscrupulous advisers."  *See* Sheryl Stratton, *Advisers and Taxpayers Need to Take More Responsibility, IRS Says*, Tax Notes Today (Oct. 22, 2003) (LEXIS, FEDTAX lib., TNT file, elec. cit. 2003 TNT 204-5) ("But professional standards are not a means for enforcing the (footnote continues on next page)

is relevant to Smith's conclusions regarding whether the Sidley Austin and Proskauer Rose opinions are ones on which a taxpayer could reasonably rely.

### C.     Even If Smith's Opinion Includes Traces of Legal Opinions, His Opinion Is Admissible

As discussed above, the First Circuit and other courts have permitted expert testimony regarding legal issues in tax cases and similar cases where complicated legal issues are relevant aspects of the facts.  Moreover, in *Pelletier v. Main Street Textiles, LP*, which Defendant relied on in its opening brief,[82] the First Circuit acknowledged that courts permit expert testimony on the law in "situations in which the proper interpretation of the law is itself a factual issue in the case, as when the defendant claims that his interpretation of the law was reasonable, even if incorrect."[83]  Defendant's assertion that penalties apply to the FICA A Fund transactions squarely raises the issue of the reasonableness of the interpretations of law reflected in the tax returns.

### D.     Defendant's Attacks on Smith's Opinion Fail

Notwithstanding Defendant's claims, Smith did not testify that he was providing legal opinions; to the contrary, Smith consistently testified that he was not providing legal opinions. Defendant's statement, unsupported by citations to Smith's testimony, that Smith "admitted at his deposition at least ten times that he was giving a legal opinion in his expert report"[84] is

---

tax law but to improve the administration of it, and to protect taxpayers from unscrupulous advisers, [then-acting IRS Chief Counsel] Parker concluded.").

[82] Def.'s Mem. at 12-13.

[83] 470 F.3d 48, 55 (1st Cir. 2006).

[84] Def.'s Mem. at 18.

wrong.  Smith repeatedly explained that he was not rendering a legal conclusion.[85]  In the one

place where Defendant does cite Smith's deposition testimony,[86] Defendant mischaracterizes

Smith's testimony.  Referring to a passage from Smith's report that a particular conclusion in the

Sidley Austin opinion was objectively reasonable, Defendant's counsel asked Smith, "Is it fair to

say that is a legal conclusion on your part?"[87]  Smith responded, "Yes, but it is a conclusion –

just a minute – it is a conclusion, as I have said earlier today, . . . you can't comment on a French

novel unless you know French.  So, for me to judge the professionalism and objective

reasonableness of this opinion, I had to know something about the tax law that it was

discussing."[88]  Unsatisfied with Smith's answer, Defendant's counsel again asked, "That is a

legal conclusion on your part, am I correct?"[89]  Smith responded that Defendant's counsel was

---

[85] Defendant's counsel asked Smith many times if various parts of his report contained legal conclusions.  Smith, almost invariably, responded to this question by not agreeing with Defense counsel's characterization of his report.  *See* Def.'s Mem. Ex. 4 at 202:20-25 (stating that a particular passage of his report was not a "legal conclusion"); *id.* at 203:1-6 ("[I]t was Sidley Austin's job to render an opinion in this case."); *id.* at 208:4-6 (stating that a particular statement was not a legal conclusion); *id.* at 237:17-23 ("[I]t was an analysis on my part that attempted to . . . engage in a separate inquiry as to whether there was some kind of settled meaning of the term substantially similar under the tax law and under federal law"); *id.* at 239:22-25 ("[I]t was not a legal conclusion in the sense that I said it is my opinion that substantially similar means the same thing everywhere."); *id.* at 240:13-16 ("My report on this point was more of a gathering of materials.  It wasn't coming to a conclusion in which I said my opinion substantially similar means thus and so can never mean anything else."); *see also id.* at 243:18-23 ("If I then said it is my opinion, in the absence of congressional authorization there is absolutely no support whatever for the broad construction rule of the regulations, that would be a legal opinion.  And I refrain from that.").  Even when Smith seemed to state that he provided a legal conclusion, it was for a limited purpose.  *See id.* at 213:16-214:2 ("Well, it is a legal conclusion, it is a legal conclusion that, to the extent it deals with a legal question. . . . But I will grant you that maybe it is, even if it is legal analysis, it is legal analysis for the purpose of appraising the quality and objective reasonableness of the Proskauer opinion."); *id.* at 215:1-3 ("It is a legal conclusion for the limited purpose of determining whether the Proskauer opinion is objectively reasonable."); *id.* at 241:4-12 ("Well, the first sentence is clearly my opinion as an expert, that I believe the Proskauer opinion is objectively reasonable for the additional reasons that I set forth in page, on page, on part three.  And I also say that I independently agree, you know, with that conclusion.  So to that extent probably the latter sentence may well be a legal opinion that I don't regard this, these transactions as substantially similar as that term is used in the regulations.").

[86] Def.'s Mem. at 11.

[87] Def.'s Mem. Ex. 4 at 201:21-22.

[88] *Id.* at 201:23-202:4.

[89] *Id.* at 202:20-21.

"not correct."[90]  Given the entire exchange, for Defendant to claim that Smith "admitted that [the passage in his report] was a legal conclusion"[91] is a flat wrong.

Defendant makes much of the fact that Smith stated in his report that "the central tax issue" in this case "concerns the treatment of 'contingent' liabilities in determining the taxpayer's 'basis' in his ownership of his membership interest in [FICA A Fund] under Section 752 of the Code."[92]  It is unremarkable to say that this is the central issue.  Paragraph four of the FPAAs denies Plaintiff's treatment of the short positions as not liabilities for the purposes of section 752.[93]  Thus, reviewing the FPAAs would inform any reader with tax knowledge that the treatment of liabilities is a central issue in this case.

Defendant also makes the useless observation that Smith "admit[ted] that certain portions of his opinion contain legal analysis."[94]  The fact that Smith referred to the tax law in his opinion does not mean that his ultimate opinion is a legal opinion upon which an expert may not provide testimony.  Smith explained that he used legal analysis to "assist[] [him] in judging the quality of [the opinions],"[95] and that he engaged in legal analysis "[f]or the limited purpose of rendering a conclusion about the objective reasonableness of [the Sidley Austin and Proskauer Rose]

---

[90] *Id.* at 202:25.

[91] Def.'s Mem. at 11.

[92] Def.'s Mem. Ex. 3 at 9, *quoted in* Def.'s Mem. at 8.

[93] Ex. A at 1IRS0834 ¶ 4 (2001 FPAA); Ex. B at 13IRS00013 ¶ 4 (2002 FPAA).

[94] Def.'s Mem. at 11.

[95] Def.'s Mem. Ex. 4 at 204:3-4.

opinions."[96]  As explained above, this type of analysis falls well within the boundaries of accepted expert opinion.[97]

## CONCLUSION

This Court should deny Defendant's motion to exclude the Yale and Smith reports and opinions because they address questions of fact on which expert testimony is appropriate and helpful to the Court.  The fact that the subject matter of their reports concern tax statutes and regulations and that they employ some legal analysis does not convert their opinions from ones of fact into ones of law.  Even if their opinions contain traces or elements of legal points, their opinions are analogous to the types of expert opinions that have been commonly admitted by courts in patent infringement, legal malpractice, and tax cases.  Accordingly, the Court should deny Defendant's motion to exclude the Yale and Smith reports and opinions.

Respectfully submitted this 19th day of February 2008.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner

/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com

---

[96] *Id.* at 211:6-11.

[97] *See supra* pp. 8-9.

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email: jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 19, 2008.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

**Internal Revenue Service**

**Department of the Treasury**

316 North Robert Street
St. Paul, Minnesota 55101

Refer To
   ESB Stop 4020BK
Taxpayer Identifying Number
   36-4381795
Name of Partnership
   Fidelity International Currency Advisor A
Partnership Identifying Number
   36-4381795
Tax Year Ended
   December 31, 2001
Date FPAA Mailed to Tax Matters Partner

Date.   **APR 06 2005**

**APR 06 2005**

Person to Contact
   Bill Kahnke
   41-03606
Contact Hours
   8 00 am to 4 30 pm
Contact Telephone Number
   (651) 312-7909

Tax Matters Partner
Fidelity International Currency Advisor A Fund, LLC
116 Flanders Road, Suite 2000
Westborough, MA. 01581

### NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice

We are proposing adjustments to the partnership items of the partnership and tax year shown above  We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS ) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997·

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return  You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return  You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

1IRS0824

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

1IRS0825

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

## 3. If you do nothing:

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Kevin Harris

Kevin Harris
Technical Services Territory Manager, Midwest Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

1IRS0826

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

1IRS0827

| Form 870-PT (8-2004) | DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO<br>ESB Stop 4020 |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code | Name of Partnership:<br>Fidelity International Currency Advisor A Fund, LLC | Tax Year(s) Ended |
|---|---|---|
| Tax Matters Partner<br>Fidelity International Currency Advisor A Fund, LLC<br>116 Flanders Road, Suite 2000<br>Westborough, MA. 01581 | Taxpayer Identifying Number: 36-4381795 | December 31, 2001 |
| | Name of Tax Matters Partner | |
| Taxpayer Identifying Number: 36-4381795 | Helios Trading, LLC | |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts
### &
### Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement; plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact  In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed |
|---|---|
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

| Cat. No. 57315H | www.irs.gov | (See Instructions for Signing Agreement) | Form **870-PT** (8-2004) |
|---|---|---|---|

1IRS0828

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

1IRS0829

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

**Agreement for Partnership Items and Partnership Level Determinations
as to Penalties, Additions to Tax, and Additional Amounts**

SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Fidelity International Currency Advisor A Fund, LLC | 12/31/2001 | | |
| TAXPAYER IDENTIFYING NUMBER: 36-4381795 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | 0.00 | | |
| OTHER ADJUSTMENTS | ▮▮▮ | ▮▮▮ | ▮▮▮ |
| A. CAPITAL CONTRIBUTIONS | | | |
| (1) ADJUSTMENT | (164,702,351) | | |
| (2) AS REPORTED | 164,702,351 | | |
| (3) CORRECTED | 0.00 | | |
| B. PORTFOLIO INCOME (LOSS) – INTEREST INCOME | ▮▮▮ | ▮▮▮ | ▮▮▮ |
| (1) ADJUSTMENT | (4,712 00) | | |
| (2) AS REPORTED | 4,712.00 | | |
| (3) CORRECTED | 0 00 | | |

REMARKS

- **Reference Exhibit A Attached.**

  **Accuracy Penalties under IRC Section 6662 are included as a partnership level determination.
  See Exhibit A, Paragraph 13, for a description of the penalties.**

  **\* See Exhibit A, Paragraph 4.**

1IRS0830

## Form 870-PT, Other Adjustments (Continued)

Page _____ of _____

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Fidelity International Currency Advisor A Fund, LLC | 12/31/2001 | | |
| TAXPAYER IDENTIFYING NUMBER  36-4381795 | | | |
| **C  OUTSIDE PARTNERSHIP BASIS** | | | |
| (1)  ADJUSTMENT | (147,750,000.00) | | |
| (2)  AS REPORTED | 147,750,000.00 | | |
| (3)  CORRECTED | **0.00\*** | | |
| **D  OTHER INCOME (LOSS)** | | | |
| (1)  ADJUSTMENT | 4,138,665 00 | | |
| (2)  AS REPORTED | (4,138,665.00) | | |
| (3)  CORRECTED | 0.00 | | |
| **E.  DEDUCTIONS RELATED TO PORTFOLIO INCOME** | | | |
| (1)  ADJUSTMENT | 34 00 | | |
| (2)  AS REPORTED | 34.00 | | |
| (3)  CORRECTED | 0.00 | | |
| **F.  INVESTMENT INCOME INCLUDED IN PORTFOLIO INCOME** | | | |
| (1)  ADJUSTMENT | (4,712.00) | | |
| (2)  AS REPORTED | 4,712.00 | | |
| (3)  CORRECTED | 0 00 | | |
| **G.  INVESTMENT EXPENSES INCLUDED IN DEDUCTIONS RELATED TO PORTFOLIO INCOME** | | | |
| (1)  ADJUSTMENT | 34.00 | | |
| (2)  AS REPORTED | 34 00 | | |
| (3)  CORRECTED | 0 00 | | |
| **H.  TAX-EXEMPT INTEREST INCOME** | | | |
| (1)  ADJUSTMENT | (5,926.00) | | |
| (2)  AS REPORTED | 5,926.00 | | |
| (3)  CORRECTED | 0 00 | | |
| **I.  NONDEDUCTIBLE EXPENSES** | | | |
| (1)  ADJUSTMENT | 290 00 | | |
| (2)  AS REPORTED | 290 00 | | |
| (3)  CORRECTED | 0 00 | | |

Cat. No 57315H                      www.irs.gov                      Form **870-PT** (8-2004)

1IRS0831

## Form 870-PT, Other Adjustments (Continued)

Page _____ of _____

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Fidelity International Currency Advisor A Fund,  LLC<br><br>TAXPAYER IDENTIFYING NUMBER  36-4381795 | 12/31/2001 | | |

| J.  DISTRIBUTIONS OF MONEY | | | |
|---|---|---|---|
| (1)  ADJUSTMENT | (6,408.00) | | |
| (2)  AS REPORTED | 6,408.00 | | |
| (3)  CORRECTED | 0.00 | | |

1IRS0832

"Notice 2000-44 Case"

## FPAA
## EXHIBIT A

1. It is determined that neither Fidelity International Currency Advisor A Fund, LLC nor its purported partners have established the existence of Fidelity International Currency Advisor A Fund, LLC as a partnership as a matter of fact.

2. Even if Fidelity International Currency Advisor A Fund LLC existed as a partnership, this purported partnership was formed and/or availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners and engaging in the options transactions. The formation of Fidelity International Currency Advisor A Fund, LLC, the acquisition of any interest in this purported partnership by its purported partners, its purchase and sale of offsetting options, its transactions involving said options, the transfer of offsetting options to Fidelity International Currency Advisor A Fund, LLC in return for a partnership interest, and the transfer of partnership interests in Fidelity International Currency Advisor A Fund, LLC among its partners, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, Fidelity International Currency Advisor A Fund, LLC and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases to the adjusted basis of partnership interests are not allowed for federal income tax purposes; and (3) the splitting of gains and losses from these options transactions among the partners of Fidelity International Currency Advisor A Fund, LLC is not allowed.

3. It is determined that Fidelity International Currency Advisor A Fund, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and/or availed of in connection with a transaction or transactions in taxable year 2001, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

   a. Fidelity International Currency Advisor A Fund, LLC is disregarded and that all transactions engaged in by this purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC, including but not limited to options, were acquired directly by its purported partners.

   b. the option(s), purportedly contributed to, acquired by, or assumed by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC, are treated as never having been contributed to, acquired by, or assumed by said partnership and any gains or losses purportedly realized by FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC on the option(s) are treated as having been realized by its

1

**"Notice 2000-44 Case"**

**FPAA**
**EXHIBIT A**

partners.

c.  the purported partners of FIDELITY INTERNATIONAL CURRENCY
    ADVISOR A FUND, LLC should be treated as not being partners in
    FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC.

d.  contributions to FIDELITY INTERNATIONAL CURRENCY ADVISOR A
    FUND, LLC will be adjusted to reflect clearly the partnership's or
    purported partners' income.

e.  Allocating gains and losses from the options transactions among the
    partners of Fidelity International Currency Advisor A Fund, LLC will not
    be recognized.

4.   It is determined that the obligations under the short positions (written
     call options) transferred to FIDELITY INTERNATIONAL CURRENCY
     ADVISOR A FUND, LLC constitute liabilities for purposes of Treasury
     Regulation §1.752-6T, the assumption of which by FIDELITY
     INTERNATIONAL CURRENCY ADVISOR A FUND, LLC shall reduce
     the purported partners' bases in FIDELITY INTERNATIONAL
     CURRENCY ADVISOR A FUND, LLC in the amount of $147,750,000,
     but not below the fair market value of the purported partnership
     interest.

5.   It is determined that neither FIDELITY INTERNATIONAL CURRENCY
     ADVISOR A FUND, LLC nor its purported partners entered into the
     option(s) positions with a profit motive for purposes of § 165(c)(2).

6.   It is determined that, even if the option(s) are treated as having been
     contributed to FIDELITY INTERNATIONAL CURRENCY ADVISOR A
     FUND, LLC, the amount treated as contributed by the partners under
     section 722 of the Internal Revenue Code is reduced by the amounts
     received by the contributing partners from the contemporaneous sales
     of the call option(s) to the same counter-party.   Thus, the basis of the
     contributed option(s) is reduced, both in the hands of the contributing
     partner(s) and FIDELITY INTERNATIONAL CURRENCY ADVISOR A
     FUND, LLC. by $147,750,000.  Consequently, any corresponding
     claimed increases in the outside basis in FIDELITY INTERNATIONAL
     CURRENCY ADVISOR A FUND, LLC resulting from the contributions
     of the option(s) are disallowed.

7.   It is determined that the adjusted bases of the long call positions
     (purchased call options), and other contributions purportedly
     contributed to FIDELITY INTERNATIONAL CURRENCY ADVISOR A
     FUND, LLC by its partners has not been established under I.R.C. §
     723.   It is consequently determined that the partners of FIDELITY
     INTERNATIONAL CURRENCY ADVISOR A FUND, LLC have not
     established adjusted bases in their respective partnership interests in
     an amount greater than zero (-0-).

8.   It is determined that the purchase of each option by a contributing
     partner and the simultaneous sale of an offsetting option to the same
     counterparty constituted, in fact, the acquisition of a single, unitary

1IRS0834

"Notice 2000-44 Case"

## FPAA
### EXHIBIT A

position by the contributing partner and that, as such, the contributing partner's basis in the partnership interest created on the contribution of the offsetting position to the partnership is limited to the difference between the amount paid on the purported purchase of one option and the amount credited on the purported sale of the offsetting option.

9.  It is determined that the purported termination of the gain legs of the option spreads acquired by the partnership and the immediate replacement of the purportedly terminated legs with legs providing the partnership with the same legal entitlements as those provided by the terminated legs did not constitute a sale or exchange for federal income tax purposes. No gain or loss was realized on the purported termination of the legs in question and the partnership's adjusted basis in the purportedly terminated legs is decreased to reflect the non-recognition of the gain.

10. It is determined that the Section 988 loss of $4,138,665 claimed by Fidelity International Currency Advisor A Fund, LLC from its options' transactions is disallowed as it has not been established that such loss was incurred and is deductible under any provision of the Internal Revenue Code including, but not limited to, I.R.C. Section 165.

11. It is determined that the loss of $158,630,921, claimed by Fidelity International Currency Advisor A Fund, LLC from its options' transactions and reported on Schedule K-1 for its partner, Richard J. Egan is disallowed as it has not been established that such loss was incurred and is deductible under any provision of the Internal Revenue Code including, but not limited to, I.R.C. Section 165.

12. It has not been established that Samuel Mahoney became a partner in FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC or that he contributed $651,000 in exchange for an interest in the partnership.

13. It is determined that the adjustments of partnership items of FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the

3

1IRS0835

**"Notice 2000-44 Case"**

**FPAA**
**EXHIBIT A**

partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.   It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC.   The penalty shall be imposed on the components of underpayment as follows:

A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3),  and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

1IRS0836

# Exhibit B

| | Notice 2000-44 Case | |
|---|---|---|
| **Internal Revenue Service** | | **Department of the Treasury** |

30 East 7th Street
St. Paul, Minnesota 55101

*File Copies*

Date:  APR 2 6 2006

Tax Matters Partner
Fidelity International Currency Advisor A Fund, LLC
116 Flanders Road, Suite 2000
Westborough, MA. 01581

Refer To:
  ESB Stop 4020BK
Taxpayer Identifying Number:
  36-4381795
Name of Partnership:
  Fidelity International Currency Advisor A Fund
Partnership Identifying Number:
  36-4381795
Tax Year Ended:
  December 31, 2002
Date FPAA Mailed to Tax Matters Partner:

Person to Contact:  APR 2 6 2006
  Bill Kahnke
  41-03606
Contact Hours:
  8:00 am to 4:30 pm
Contact Telephone Number:
  (651) 312-7909

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

**Internal Revenue Service**

Notice 2000-44 Case

**Department of the Treasury**

30 East 7th Street
St. Paul, Minnesota 55101

*File*
*cry----*

Date: APR 2 6 2006

Tax Matters Partner
Fidelity International Currency Advisor A Fund, LLC
116 Flanders Road, Suite 2000
Westborough, MA. 01581

Refer To:
ESB Stop 4020BK
Taxpayer Identifying Number:
36-4381795
Name of Partnership:
Fidelity International Currency Advisor A Fund
Partnership Identifying Number:
36-4381795
Tax Year Ended:
December 31, 2002
Date FPAA Mailed to Tax Matters Partner:

Person to Contact:    APR 2 6 2006
Bill Kahnke
41-03606
Contact Hours:
8:00 am to 4:30 pm
Contact Telephone Number:
(651) 312-7909

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partn[...] decrease to the tax liability on your individual return. Form 870-P[...] *Deficiency in Tax for Partnership Adjustments*, is a summary of t[...] return. You can compute your share of the proposed adjustments [...] by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partne[...] decrease in the tax liability on your individual return. The adjustm[...] determinations regarding penalties and additions to tax that relate [...] Form 870-PT, *Agreement for Partnership Items and Partnership L[...] Additions to Tax, and Additional Amounts*, is a summary of the pr[...] You can compute your share of the proposed adjustments by multi[...] your percentage interest for that partnership item.

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

PS Form 3800, June 2002                See Reverse for Instructions

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

13IRS00004

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

    1. the United States Tax Court;
    2. the United States Court of Federal Claims; or
    3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

        **United States Tax Court**
        **400 Second Street, NW**
        **Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

### 3. If you do nothing:

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Timothy M. Conley
Technical Services Territory Manager, Western Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

**Letter 1830 (DO) (Rev. 3-2001)**
Catalog Number 61242U

13IRS00007

| Form **870-PT** (Rev. 8-2004) | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: ESB Stop 4020 |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code: | Name of Partnership: Fidelity International Currency | Tax Year(s) Ended: |
|---|---|---|
| **Tax Matters Partner** **Fidelity International Currency Advisor A Fund, LLC** 116 Flanders Road, Suite 2000 Westborough, MA. 01581 Taxpayer Identifying Number: 36-4381795 | Taxpayer Identifying Number: 36-4381795 Name of Tax Matters Partner: Richard J. Egan | December 31, 2002 |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### &

### Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed |
|---|---|
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

Catalog Number 57315A          www.irs.gov          (See instructions for Signing Agreement)          Form **870-PT** (Rev. 8-2004)

13IRS00008

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the waiver must be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

---

Catalog Number 57315A          www.irs.gov          (See instructions for Signing Agreement)          Form **870-PT** (Rev. 8-2004)

13IRS00009

Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

| SCHEDULE OF ADJUSTMENTS | | | |
|---|---|---|---|
| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
| Fidelity International Currency | 12/31/2002 | | |
| TAXPAYER IDENTIFYING NUMBER   36-4381795 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | -0- | | |
| OTHER ADJUSTMENTS | ▮▮▮▮▮▮▮▮ | | |
| A. Capital Contributions | | | |
| (1) ADJUSTMENT | (336,419) | | |
| (2) AS REPORTED | 336,419 | | |
| (3) CORRECTED | -0- | | |
| B. Other Decreases | ▮▮▮▮▮▮▮▮ | | |
| (1) ADJUSTMENT | 135,775,584 | | |
| (2) AS REPORTED | (135,775,584) | | |
| (3) CORRECTED | -0- | | |

REMARKS

* Reference Exhibit A attached.

Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, Paragraph 12 for a description of the penalties.

* See Exhibit A, Paragraph 4.

Catalog Number 57315A                    www.irs.gov                    Form 870-PT (Rev. 8-2004)

## Form 870-PT, Other Adjustments (Continued)

Page _____ of _____

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Fidelity International Currency | 12/31/2002 | | |
| TAXPAYER IDENTIFYING NUMBER  36-4381795 | | | |
| C. Portfolio Income - Interest Income | | | |
| (1) ADJUSTMENT | (3,451) | | |
| (2) AS REPORTED | 3,451 | | |
| (3) CORRECTED | -0- | | |
| D. Other Income (Loss) | | | |
| (1) ADJUSTMENT | 1,911,959 | | |
| (2) AS REPORTED | (1,911,959) | | |
| (3) CORRECTED | -0- | | |
| E. Deductions Related to Portfolio Income | | | |
| (1) ADJUSTMENT | (168,233) | | |
| (2) AS REPORTED | 168,233 | | |
| (3) CORRECTED | -0- | | |
| F. Investment Income Included in Portfolio Income | | | |
| (1) ADJUSTMENT | (3,451) | | |
| (2) AS REPORTED | 3,451 | | |
| (3) CORRECTED | -0- | | |
| G. Investment Expense on Investment Debt | | | |
| (1) ADJUSTMENT | (168,233) | | |
| (2) AS REPORTED | 168,233 | | |
| (3) CORRECTED | -0- | | |
| H. Other Adjustments and Tax Preference Items | | | |
| (1) ADJUSTMENT | (44,823) | | |
| (2) AS REPORTED | 44,823 | | |
| (3) CORRECTED | -0- | | |
| I. Tax-Exempt Interest Income | | | |
| (1) ADJUSTMENT | (44,823) | | |
| (2) AS REPORTED | 44,823 | | |
| (3) CORRECTED | -0- | | |

Catalog Number 57315A                    www.irs.gov                    Form 870-PT (Rev. 8-2004)

13IRS00011

EXHIBIT A – Explanation of Items
**Fidelity International Currency Advisor A Fund , LLC**
Final Partnership Administrative Adjustment Letter
**Tax Year Ended: December 31, 2002 .    TIN: 36-4381795**

1. It is determined that neither Fidelity International Currency Advisor A Fund, LLC nor its purported partners have established the existence of Fidelity International Currency Advisor A Fund, LLC as a partnership as a matter of fact.

2. Even if Fidelity International Currency Advisor A Fund LLC existed as a partnership, this purported partnership was formed and/or availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners and engaging in the options transactions. The formation of Fidelity International Currency Advisor A Fund, LLC, the acquisition of any interest in this purported partnership by its purported partners, its purchase and sale of offsetting options, its transactions involving said options, the transfer of offsetting options to Fidelity International Currency Advisor A Fund, LLC in return for a partnership interest, and the transfer of partnership interests in Fidelity International Currency Advisor A Fund, LLC among its partners, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, Fidelity International Currency Advisor A Fund, LLC and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases to the adjusted basis of partnership interests are not allowed for federal income tax purposes; and (3) the splitting of gains and losses from these options transactions among the partners of Fidelity International Currency Advisor A Fund, LLC is not allowed.

3. It is determined that Fidelity International Currency Advisor A Fund, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and/or availed of in connection with a transaction or transactions in taxable year 2002, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

    a. Fidelity International Currency Advisor A Fund, LLC is disregarded and that all transactions engaged in by this purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by Fidelity International Currency Advisor A Fund, LLC, including but not limited to options, were acquired directly by its purported partners.

    b. the option(s), purportedly contributed to, acquired by, or assumed by Fidelity International Currency Advisor A Fund, LLC, are treated as never having been contributed to, acquired by, or assumed by said partnership and any gains or losses purportedly realized by Fidelity International Currency Advisor A Fund, LLC on the option(s) are treated as having been realized by its partners.

1

13IRS00012

EXHIBIT A – Explanation of Items
**Fidelity International Currency Advisor A Fund , LLC**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **December 31, 2002**    **TIN: 36-4381795**

c.  the purported partners of Fidelity International Currency Advisor A Fund, LLC should be treated as not being partners in Fidelity International Currency Advisor A Fund, LLC.

d.  contributions to Fidelity International Currency Advisor A Fund, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

e.  Allocating gains and losses from the options transactions among the partners of Fidelity International Currency Advisor A Fund, LLC will not be recognized.

4.  It is determined that the obligations under the short positions (written call options) transferred to Fidelity International Currency Advisor A Fund, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6, the assumption of which by Fidelity International Currency Advisor A Fund, LLC shall reduce the purported partners' bases in Fidelity International Currency Advisor A Fund, LLC in the amount of $147,750,000, but not below the fair market value of the purported partnership interest.

5.  It is determined that neither Fidelity International Currency Advisor A Fund, LLC nor its purported partners entered into the option(s) positions with a profit motive for purposes of § 165(c)(2).

6.  It is determined that, even if the option(s) are treated as having been contributed to Fidelity International Currency Advisor A Fund, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party.  Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partner(s) and Fidelity International Currency Advisor A Fund, LLC. by $147,750,000.  Consequently, any corresponding claimed increases in the outside basis in Fidelity International Currency Advisor A Fund, LLC resulting from the contributions of the option(s) are disallowed.

7.  It is determined that the adjusted bases of the long call positions (purchased call options), and other contributions purportedly contributed to Fidelity International Currency Advisor A Fund, LLC by its partners has not been established under I.R.C. § 723.  It is consequently determined that the partners of Fidelity International Currency Advisor A Fund, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

8.  It is determined that the purchase of each option by a contributing partner and the simultaneous sale of an offsetting option to the same counterparty constituted, in fact, the acquisition of a single, unitary position by the contributing partner and that, as such, the contributing partner's basis in the partnership interest created on the contribution of the offsetting position to the partnership is limited to the difference

2

13IRS00013

EXHIBIT A – Explanation of Items
**Fidelity International Currency Advisor A Fund , LLC**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **December 31, 2002    TIN: 36-4381795**
between the amount paid on the purported purchase of one option and
the amount credited on the purported sale of the offsetting option.

9.  It is determined that the purported termination of the gain legs of the
    option spreads acquired by the partnership and the immediate
    replacement of the purportedly terminated legs with legs providing the
    partnership with the same legal entitlements as those provided by the
    terminated legs did not constitute a sale or exchange for federal
    income tax purposes.  No gain or loss was realized on the purported
    termination of the legs in question and the partnership's adjusted basis
    in the purportedly terminated legs is decreased to reflect the non-
    recognition of the gain.

10. It is determined that the Section 988 loss of $1,911,959 claimed by
    Fidelity International Currency Advisor A Fund, LLC from its options'
    transactions is disallowed as it has not been established that such loss
    was incurred and is deductible under any provision of the Internal
    Revenue Code including, but not limited to, I.R.C. Section 165.

11. It is determined that the loss of $1,778,122 claimed by Fidelity
    International Currency Advisor A Fund, LLC from its options'
    transactions and reported on Schedule K-1 for its partner, Richard J.
    Egan is disallowed as it has not been established that such loss was
    incurred and is deductible under any provision of the Internal Revenue
    Code including, but not limited to, I.R.C. Section 165.

12. It is determined that the adjustments of partnership items of Fidelity
    International Currency Advisor A Fund, LLC are attributable to a tax
    shelter for which no substantial authority has been established for the
    position taken, and for which there was no showing of reasonable
    belief by the partnership or its partners that the position taken was
    more likely than not the correct treatment of the tax shelter and related
    transactions.  In addition, all of the underpayments of tax resulting from
    those adjustments of partnership items are attributable to, at a
    minimum, (1) substantial understatements of income tax, (2) gross
    valuation misstatement(s), or (3) negligence or disregarded rules or
    regulations.  There has not been a showing by the partnership or any
    of its partners that there was reasonable cause for any of the resulting
    underpayments, that the partnership or any of its partners acted in
    good faith, or that any other exceptions to the penalty apply.   It is
    therefore determined that, at a minimum, the accuracy-related penalty
    under Section 6662 of the Internal Revenue Code applies to all
    underpayments of tax attributable to adjustments of partnership items
    of Fidelity International Currency Advisor A Fund, LLC.   The penalty
    shall be imposed on the components of underpayment as follows:

3

13IRS00014

EXHIBIT A – Explanation of Items
**Fidelity International Currency Advisor A Fund , LLC**
Final Partnership Administrative Adjustment Letter
**Tax Year Ended: December 31, 2002     TIN: 36-4381795**

A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3),  and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

4

13IRS00015