UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No.: 05-40151-FDS<br>06-40130-FDS |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO EXCLUDE THE PROPOSED
<u>EXPERT TESTIMONY AND REPORTS OF DAVID LARUE</u>**

Defendant's response to Plaintiff's motion attempts to distract the Court from two simple facts: (1) LaRue impermissibly opines on the state of mind of those preparing FICA A Fund's and Plaintiff's tax returns and (2) LaRue is not qualified to opine on how the reporting of the FICA A Fund transaction affected audit risk.

While Defendant and LaRue repeatedly insist that LaRue is not opining on the state of mind of those preparing FICA A Fund's and Plaintiff's tax returns, an opinion that tax return reporting was "designed" to reduce an "actual or perceived" risk is inherently an opinion regarding purpose and intent. Defendant and LaRue claim that LaRue based his opinions on an "objective standard" that reflects the perspective of a "knowledgeable and experienced" tax return preparer, but he has no practical experience with tax return preparation or IRS return selection. Lacking foundation, LaRue's opinions are nothing more than speculation and,

contrary to the requirement of Federal Rule of Evidence 702, are not "the product of reliable principles and methods."

I.      **Plaintiff's Motion Only Addresses the Qualifications of LaRue and the Reliability of His Testimony**

Plaintiff's motion to exclude the proposed expert testimony and reports of LaRue is limited to the appropriateness of LaRue's opinion on states of mind, LaRue's qualifications, and LaRue's partisan advocacy.[1] Both Defendant and LaRue pointedly observe that Plaintiff's motion does not address the correctness of LaRue's facts and conclusions.[2] As Defendant should know, disputes over the substance of an expert's analysis and conclusions are not properly addressed in a motion to exclude the expert's testimony under *Daubert*.[3] Indeed, elsewhere in its brief Defendant insists that the correctness of LaRue's opinions are not at issue in the present motion and that it need only show that LaRue's opinions rest on "'good grounds,

---

[1] Mem. of Law in Supp. of Pl.'s Mot. to Exclude the Proposed Expert Test. and Reports of David LaRue ("Pl.'s Mem.") at 1.

[2] *See, e.g.*, United States of America's Opp'n to Pl.'s Mot. to Exclude the Expert Test. and Reports of Dr. David LaRue ("Def.'s Opp'n") at 21 ("The plaintiff does not appear to challenge the accuracy or completeness of the facts set forth anywhere in Dr. LaRue's Report and on which he based his opinions and conclusions. Nor does the plaintiff appear to assert or suggest that Dr. LaRue ignored or omitted facts that might have supported contrary conclusions and opinions."); *id.* at 32 ("While not contending, because he can't, that any of Dr. LaRue's observations are incorrect, the plaintiff asserts that he observations are irrelevant to the conclusions, and that the 'cumulative effect' is to 'imply' that the returns were filed in 'bad faith.'" (quoting Pl.'s Mem. at 20)); Def.'s Opp'n, Decl. of Dr. David W. LaRue in Opp'n to Pl.'s Mot. to Exclude ("LaRue Decl.") ¶ 9 ("It does not appear that *Plaintiff's Motion* challenges either the accuracy or the completeness of the facts on which I relied in conducting my analyses or in forming my opinions."); *id.* ¶ 13 ("Plaintiff does not appear to contend that any of these observations are incorrect . . . .").

[3] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("The focus . . . must be solely on principles and methodology, not on the conclusions that they generate."). *But cf. Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) ("[W]hile methodology remains the central focus of a *Daubert* inquiry, this focus need not completely pretermit judicial consideration of an expert's conclusions.").

based on what is known.'"[4]  The problem with LaRue's testimony and reports is that they do not pass muster even under Defendant's standard.

## II.    LaRue Impermissibly Opines on State of Mind

### A.    LaRue's Opinion that the Tax Reporting Was Designed to Achieve a Particular Purpose Is an Opinion on Intent

Merely saying that LaRue does not opine on the state of mind of those involved in preparing the tax returns of FICA A Fund and Plaintiff does not make it so.[5]  LaRue opines that "it would be reasonable to conclude" that the FICA A Fund transaction was reported "in a manner *that was designed to* reduce or minimize the actual or *perceived* risk of detection and audit by the IRS."[6]  An opinion that the reporting "was designed to" affect the risk of audit is necessarily an opinion as to purpose or intent, and an opinion addressing what someone "perceived" is necessarily an opinion on state of mind.  The fact that LaRue hedges his opinion—by prefacing his opinion with the phrase "it would be reasonable to conclude"—does not change the fact that it is an opinion regarding purpose and intent.  However much Defendant and LaRue try, their efforts to deny the true nature of LaRue's opinions are unsuccessful.[7]

---

[4] Def.'s Opp'n at 8 (quoting *Daubert*, 509 U.S. at 590).

[5] *See id.* at 19-24; LaRue Decl. ¶ 34.

[6] Pl.'s Mem. Ex. A ¶¶ 226, 229 (Expert Report of David W. LaRue, Ph.D., Aug. 7, 2007 with Corrections of Errata) (emphasis added).

[7] Thus, Defendant is incorrect in its assertion that the cases regarding the impermissibility of an expert opinion on state of mind "have no relevance to this case where Dr. LaRue *does not* opine on any subjective state of mind." Def.'s Opp'n at 24.  Moreover, Defendant's discussion of *In re Rezulin*, Def.'s Opp'n at 23-24, is misleading.  The court separately considered the expert opinions on ethical standards and intent, motive, and state of mind and independently found that both types of opinions should be excluded.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 542-47 (S.D.N.Y. 2004).  And like the expert in *DePaepe*, LaRue lacks any basis for opining on the motives of those preparing FICA A Fund's and Plaintiff's tax returns.  *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) ("[The expert] lacked any scientific basis for an opinion about the motives of GM's designers.").

### B. LaRue's Report Does Not Identify the "Objective Standard" He Now Purports to Have Applied

Defendant and LaRue now attempt to rehabilitate LaRue's opinions by claiming that they "are based on the application of an objective standard that looks to the decision processes and perceptions of knowledgeable and experienced tax professionals,"[8] who he defines as people "who would be preparing or reviewing tax returns for filing with the IRS."[9] LaRue's report does not identify or describe the "decision processes and perceptions" of the tax return preparer community, nor does he articulate the "objective standard" that he now claims to have derived from those processes and perceptions.[10] His reports cite no professional or academic literature, IRS publications, or any other materials used by tax professionals to determine whether the reporting of a transaction was "designed to reduce or minimize the actual or perceived risk of detection and audit by the IRS."[11] Contrary to the requirements of Federal Rule of Evidence 702, LaRue's "objective standard" is not "grounded in an accepted body of learning or experience" and he does not "explain how [his] conclusion[s] [are] so grounded."[12]

LaRue's failure to articulate the "objective standard" that he purports to have applied contrasts sharply with Plaintiff's expert's use of Circular 230 as an objective standard against

---

[8] Def.'s Opp'n at 21; LaRue Decl. ¶ 37.

[9] LaRue Decl. ¶ 27 n.19.

[10] *See id.* ¶ 37. LaRue's application of the "objective standard" to his examination of FICA A Fund's and Plaintiff's returns to reach the conclusion that the transactions were reported in a way designed to reduce or minimize the actual or perceived risk of detection and audit is problematic in and of itself. In applying the "objective standard," LaRue examined whether information was disclosed on the returns and the significance of information that was not disclosed without concluding whether such information was, in fact, required. It is not "reasonable to conclude" from the nondisclosure of information that was not required to be disclosed in the first instance that the transaction was reported in a way to reduce the risk of audit. The more reasonable conclusion is that the returns were prepared to comply with IRS rules, regulations, and instructions.

[11] Pl.'s Mem. Ex. A ¶¶ 226, 229.

[12] Fed. R. Evid. 702 advisory committee's note (2000 amendments).

which to measure the Sidley Austin and Proskauer Rose legal opinions. Stuart Smith determined that the Sidley Austin and Proskauer Rose opinions addressed the issues that the Treasury Department previously had identified in Circular 230 as the highest standard for what tax opinions should consider.[13] Smith considered this to be objective evidence that it would be reasonable for a taxpayer to rely on the opinions.[14] LaRue's failure to identify or describe the objective standard that he purportedly applied strongly suggests that it is a malleable concept concocted for purposes of this litigation.[15] It is "simply a subjective, conclusory approach that cannot reasonably be assessed for reliability"[16] and is the very type of "expert" testimony Rule 702 and *Daubert* are intended to exclude.

### C. LaRue's Speculation on Intent Is Inherently Unreliable

In an effort to recast LaRue's opinions as opinions about something other than intent, Defendant provides a lengthy and unhelpful analogy that compares LaRue's opinions regarding the design of Plaintiff's tax returns to an expert opinion regarding a raincoat.[17] If *anything*, the analogy demonstrates why LaRue's opinions do not satisfy the *Daubert* standard.

Defendant hypothesizes an expert who would "look at the fabric" to determine whether the raincoat would protect its wearer from getting wet in the event of rain. In contrast, LaRue

---

[13] United States of America's Mem. in Supp. of Its Mot. to Exclude the Expert Reports and Ops. of Both Ethan Yale and Stuart Smith Ex. 3 at 5 (Feb. 4, 2008) (Expert Report of Stuart A. Smith, Aug. 3, 2007).

[14] *Id.*

[15] In fact, at his deposition, LaRue evidenced a lack of awareness of the regulatory standards that apply to return preparers. Pl.'s Mem. Ex. B at 164:18-165:15 (David W. LaRue Dep., Nov. 26, 2007). Failure to comply with these regulatory standards may subject the preparer to penalties. *See* I.R.C. § 6694; Treas. Reg. § 1.6694-2. LaRue's ignorance of these standards—which of necessity are an inherent part of the decision processes of knowledgeable tax professionals—demonstrates that, however LaRue devised his "objective standard," he did *not* base it on the "decision processes and perceptions" of knowledgeable and experienced tax return preparers.

[16] Fed. R. Evid. 702 advisory committee's note (2000 amendments).

[17] Def.'s Opp'n at 22 n.65.

admits that he does not know whether the manner of reporting the FICA A Fund transaction made it less likely that the FICA A Fund tax returns or Plaintiff's individual tax returns would be audited. When applied to Defendant's man-in-a-raincoat hypothetical, LaRue's testimony would go something like this: "I have no way of knowing whether the raincoat the man is wearing would protect him against rain. In fact, I don't even know if it's a raincoat. And I don't know whether the weather forecast called for rain. For all I know, the man may wear the same coat every day, rain or shine. Nevertheless, I think it would be reasonable for the Court to conclude that the man wore this garment to reduce an actual or perceived risk of getting wet."

LaRue's speculation in the guise of expert testimony falls far short of the standards of reliability required by *Daubert*.

### III.    LaRue's Knowledge and Experience Do Not Provide an Adequate Foundation for the Opinions He Seeks to Offer

Defendant's recitation of LaRue's education and experience does not address whether his knowledge and experience provide an adequate foundation for the opinions he seeks to offer. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."[18] Where an expert relies primarily on experience, as LaRue purports to do, he "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[19] LaRue does none of that. Furthermore, his academic qualifications provide an inadequate foundation for his opinions regarding tax return preparation or the IRS return selection process.

---

[18] *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

[19] Fed. R. Evid. 702 advisory committee's note (2000 amendments).

### A. LaRue Is Not an Expert on Tax Return Preparation

LaRue now explains that his opinions address tax return reporting "from the perspective of a knowledgeable and experienced tax professional who is not an IRS classifier or examiner."[20] He explains that a "tax professional" is someone "who would be preparing or reviewing tax returns for filing with the IRS."[21] Based on his own definition, LaRue is not now, and never has been, a "tax professional." As explained in Plaintiff's motion, LaRue has never been engaged in tax return preparation in any meaningful way.[22] LaRue has never been employed as a tax return preparer;[23] his return preparation experience is limited to preparing returns for himself and his family members.[24] Even in that capacity, he has never prepared a partnership tax return to be filed[25] or, for that matter, reported partnership tax items from a Form K-1 on his individual tax return.[26]

Defendant and LaRue attempt to buttress LaRue's lack of practical experience by noting his teaching experience. The "hundreds of tax returns, tax schedules, and other disclosures" that LaRue "taught, reviewed, and evaluated"[27] in the context of teaching his undergraduate and graduate courses, however, were not prepared to be filed.

---

[20] LaRue Decl. ¶ 27.

[21] *Id.* ¶ 27 n.19.

[22] Pl.'s Mem. at 15-16.

[23] Pl.'s Mem. Ex. B at 120:21-22.

[24] *Id.* at 126:1-5.

[25] *Id.* at 123:16-124:1.

[26] *Id.* at 125:15-16.

[27] Def.'s Opp'n at 15-17 (citing LaRue Decl. ¶¶ 23, 24).

Defendant and LaRue also attempt to bootstrap from the experience of his accounting firm students. Defendant and LaRue insinuate that part of LaRue's experience derives from questions asked by his accounting firm seminar participants.[28] But the experience of actually preparing returns on a day-to-day basis based on real clients and real facts is nontransferable. Questions asked by seminar participants, even if based on real clients, are necessarily hypothetical. LaRue receives limited facts, does not review relevant documents, and never sees how a transaction is actually reported. Moreover, LaRue claims to have gained knowledge and experience from the very types of accounting firm professionals who prepared FICA A Fund's and Plaintiff's tax returns.

The "insights gained from the regular, sustained professional interactions [LaRue] had with hundreds of graduate and undergraduate accounting students, and with thousands of tax professionals and tax-return preparers throughout the past thirty years,"[29] are not a substitute for working as a tax return preparer. LaRue's "[t]hirty years at the highest levels of the profession"[30] amount to nothing more than teaching those who are more likely to be qualified to provide expert opinions on tax return preparation than LaRue himself.

---

[28] *See id.* at 16-17 (stating that LaRue taught programs to accountants "who were responsible for the initial preparation and review of the tax returns prepared for the firms' individual, corporate, and partnership clients" and "whose responsibilities typically included the final review of the clients' tax returns and the signing of those returns on behalf of the firm"); *id.* at 17 (stating that accounting firm students asked LaRue questions "on various technical and tax-compliance issues that arose in connection with pending client-related tax returns, tax controversies, and other projects"); *id.* ("Over the years, Dr. LaRue evaluated and informally advised on hundreds of client-specific issues for the tax professionals who attended his seminars." (citing LaRue Decl. ¶ 24)).

[29] Def.'s Opp'n at 18.

[30] *Id.* at 19.

### B.    LaRue Is Not Qualified to Opine on the IRS Return Selection Process

Defendant argues that Plaintiff's motion is flawed because LaRue does not opine on the DIF selection process or the District Office review process.[31] Regardless of whether LaRue is opining on the District Office review process or, as Defendant characterizes it, the IRS Service Center classification process,[32] LaRue does not have the foundational qualifications necessary to render an opinion. General allegations that LaRue is "quite familiar with the audit selection process for tax returns"[33] does not satisfy Defendant's burden to show that he is qualified to opine on the IRS return selection process. And, knowing "as much as . . . the public could know about the return selection process"[34] does not satisfy Federal Rule of Evidence 702's requirement that an expert have "specialized knowledge" that will "assist the trier of fact." LaRue's lack of qualifications goes beyond his "failure to work with the IRS."[35] LaRue does not have any experience that provides a foundation for an opinion regarding the IRS return selection process.

Based on LaRue's description of the classification process, it is hard to see how he could ever render an expert opinion on the subject. LaRue's declaration confirms his testimony regarding the inherent unpredictability of the IRS Service Center classification process.[36] In his declaration, LaRue describes the tax return selection process as one that involves "the judgment and subjective decision processes of one or more IRS classifiers and examiners, each with his or

---

[31] *Id.* at 9-10.

[32] *Id.* at 11.

[33] *Id.* at 14.

[34] Pl.'s Mem. Ex. B at 134:2-3.

[35] Def.'s Opp'n at 14.

[36] Pl.'s Mem. Ex. B at 174:12-175:13.

her own unique educational background, scope and depth of experience, aptitude, etc."[37] Moreover, LaRue states that it is "generally impossible to know with certainty" how the tax reporting of a transaction affects the "actual risk of detection and audit."[38] Thus, any opinion that LaRue might offer on the IRS return selection process is by its very nature speculative.

## IV.    It Would Be "Reasonable to Conclude" that LaRue Is a Partisan Advocate

It would be "reasonable to conclude," based on LaRue's inclusion of a factual narrative in his report when none is necessary, his slanted recitation of the facts, his inclusion of irrelevant observations, and the amount of compensation he receives from testifying for the government that LaRue is a partisan advocate.[39]

Defendant argues that inclusion of factual support for an expert's conclusions is required by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.[40] The inclusion of factual support for an expert's conclusions is appropriate, and Plaintiff does not take issue with LaRue's inclusion of facts *per se*; rather, it is how LaRue describes the facts and the relevance of the facts included that demonstrate his partisan advocacy. Not only does LaRue impermissibly summarize factual evidence, placing his own slant on the facts,[41] but he also draws inferences from the documents and presents his inferences as facts. For example, as Plaintiff described in

---

[37] LaRue Decl. ¶ 29.

[38] *Id.* ¶ 31.

[39] Regardless of how LaRue characterizes his "primary occupation," it would be "reasonable to conclude," based on the "observation" that in the past two years LaRue has received at least 300% more in compensation from the government than from the University of Virginia, Pl.'s Mem. at 25, that LaRue has a financial incentive to be a partisan advocate.

[40] Def.'s Opp'n at 28-29.

[41] Pl.'s Mem. at 17-20.

his memorandum, LaRue asserts that FICA A Fund was designed to generate a loss.[42] LaRue states that "[t]his is not an assertion, it is a fact."[43] This "fact" has been the subject of requests for admission,[44] is a contested issue in this case, and trial evidence will be submitted that addresses this contested fact. Furthermore, this "fact," like many of LaRue's other "factual" recitations, is based on inferences LaRue drew from the documentary record. This is not a role for an expert.[45]

Defendant and LaRue argue that LaRue's observations—most of which consist of items not disclosed on the returns—are relevant to his opinions because, if such disclosures had been made, even if not required by law or IRS instructions,

> it would be reasonable to conclude that the risk of detection and audit would have increased and would have therefore been indicative (possibly conclusive) that the manner in which the Fidelity International transaction was reported on the Fidelity International return was *not* designed to reduce or minimize the risk of detection and audit.[46]

This explanation, offered for the first time in response to Plaintiff's motion, raises additional questions and concerns regarding the reliability of LaRue's methodology. With limited exceptions, he offers no opinion as to the correctness of the tax returns or whether his suggested

---

[42] *Id.* at 19.

[43] LaRue Decl. ¶ 46.

[44] For example, in Request for Admission No. 7, Defendant asked Plaintiff to admit that Plaintiff's "primary purpose in entering into the Fidelity International transaction was to generate a tax loss." Plaintiff denied this request. Additionally, in Request for Admission No. 12, Defendant asked Plaintiff to admit that "KPMG, Alpha, Helios, DGI, and Sidley Austin promoted the transaction to the plaintiff as a tax-loss-generation plan." Plaintiff denied this request.

[45] *See Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 281 (S.D. Ala. 2006) (criticizing an expert for stating an "advocacy-based interpretation of documents in the record"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004) (criticizing an expert for basing opinions on inferences drawn from documents produced in discovery).

[46] Def.'s Opp'n at 33; LaRue Decl. ¶ 50.

disclosures are required. Moreover, he does not opine whether the alternative reporting—the reporting he maintains would have been "indicative (possibly conclusive)" that the reporting was not designed to minimize the risk of audit—was permissible. And he ignores numerous other items that would, in the hands of any fair and impartial expert, suggest that there was no effort to reduce the risk of audit.

For example, LaRue observes that Plaintiff's tax return included a Form 8271 that listed ten "tax shelters," but did not include FICA A Fund.[47] LaRue admits that he is not rendering any opinion as to whether FICA A Fund was a tax shelter for purposes of Form 8271.[48] According to his Declaration, however, LaRue believes this omission is relevant because, if Plaintiff had included FICA A Fund on Form 8271, it would have been "indicative"—indeed, perhaps even *"conclusive"*—that the reporting was not designed to reduce the risk that Plaintiff would be audited.[49]

This example typifies the way in which LaRue uses his observations. First, LaRue cites no basis for his conclusion that, from the perspective of a "knowledgeable and experienced tax professional,"[50] ignoring IRS instructions on how to complete Form 8271 could constitute favorable evidence that the preparer was not trying to reduce audit risk. Indeed, if accepted by the Court, LaRue's methodology would likely encourage taxpayers to include forms and

---

[47] Pl.'s Mem. Ex. A ¶ 194.

[48] Pl.'s Mem. Ex. B at 278:17-279:9.

[49] LaRue Decl. ¶ 51 (emphasis added).

[50] *Id.* ¶ 27.

attachments that the IRS has asked them not to submit as potential protection against a future allegation that they were trying to avoid audit risk.[51]

Second, LaRue's observations amount to a bait-and-switch for the taxpayer. If a taxpayer meticulously follows IRS instructions that tell him how to report an item, LaRue "observes" that even though the taxpayer's reporting may have been correct, if the taxpayer had reported the item differently, it would have been exculpatory evidence.

Finally, LaRue's observations are highly selective. LaRue states that listing the FICA A Fund transaction on Form 8271 would have been affirmative evidence that Plaintiff's reporting was *not* designed to reduce the risk of audit. If that is true, any neutral observer would have to agree that Plaintiff's identification of *ten* tax shelters on his 2001 tax return is itself strong evidence that the return was not designed to minimize the risk of an IRS audit. It is undisputed that, if Plaintiff's tax return had been audited, the IRS would likely have identified the FICA A Fund transaction;[52] thus, a neutral observer would have concluded that the inclusion of ten tax shelter transactions on the Form 8271 was affirmative evidence that Plaintiff's tax return was not designed to reduce the risk of audit. Yet LaRue ignores the fact that Plaintiff reported ten transactions on the Form 8271 and bases his observation on an eleventh transaction that

---

[51] This would be the logical consequence of LaRue's observation that FICA A Fund's return did not include a break-out of various capitalized fees that went into the basis of its currency options. Pl.'s Mem. Ex. A ¶ 106. It seems highly unlikely that the IRS would be happy if taxpayers began routinely attaching to their returns detailed information regarding all of the items going into the computation of the basis of each asset sold during the tax year. In fact, one can imagine a taxpayer who did so being accused of trying to hide the ball by inundating the IRS with paper.

[52] LaRue Decl. at 13 n.21.

Plaintiff's tax return preparers correctly omitted. That is not the approach of an unbiased expert who "let[s] the chips fall where they may."[53]

## V.    LaRue's Testimony and Reports Are Only Relevant to Penalty Issues

Defendant states that "[t]he manner in which this transaction was reported is of extreme relevance"[54] and "critical to *many* issues in this case."[55] But the only issues identified by Defendant are issues relating to penalties: (1) "whether there is evidence that the plaintiff knew he had engaged in an abusive tax shelter and took steps to conceal it" and (2) whether the reasonable cause and good faith exception to accuracy-related penalties applies.[56]

How the FICA A Fund transaction was reported on the tax returns has no relevance to its substantive tax treatment.[57] The Court will determine the proper tax treatment based on the

---

[53] *Id.* ¶ 57.

[54] Def.'s Opp'n at 8.

[55] *Id.* at 5 n.9 (emphasis added); *see also id.* at 8 ("Whether the transaction was disclosed in a meaningful way on the tax returns is at the heart of this case."). Defendant implies that Plaintiff's request for admission regarding the disclosure of the allocation of FICA A Fund's gains and losses on its 2001 Form 1065 and accompanying schedules is an acknowledgement by Plaintiff that the disclosure of the transaction is "at the heart of this case." *Id.* Plaintiff served Request for Admission No. 33 on November 20, 2007 in response to LaRue's expert report, which was served on August 7, 2007. It was not an admission or acknowledgement that the disclosure of the FICA A Fund transaction on the tax returns "is at the heart of this case."

[56] Def.'s Opp'n at 5 n.9.

[57] In the First Circuit, whether a transaction has economic substance is based on objective factors, not on the taxpayer's subjective intent or business purpose. *See, e.g.*, *Stone v. Comm'r*, 360 F.2d 737, 740 (1st Cir. 1966) (stating that a transaction has economic substance unless "'there was nothing of substance to be realized . . . from this transaction beyond a tax deduction'" (quoting *Knetsch v. United States*, 364 U.S. 361, 366 (1960))); *Fabreeka Prods. Co. v. Comm'r*, 294 F.2d 876, 878-79 (1st Cir. 1961) (finding that if transactions are real, the intent of the taxpayer does not negate the tax benefits); *Granite Trust Co. v. United States*, 238 F.2d 670, 675 (1st Cir. 1956) (stating that "a 'purpose to minimize or avoid taxation is not an illicit motive'" that vitiates the tax treatment of certain transactions (quoting *Sawtell v. Comm'r*, 82 F.2d 221, 222 (1st Cir. 1936))). Thus, whether "plaintiff knew he had engaged in an abusive tax shelter," Def.'s Opp'n at 5 n.9, is irrelevant to the economic substance analysis. To the extent Plaintiff's subjective intent may be relevant in applying the economic substance doctrine, it is Plaintiff's intent at the time the FICA A Fund transaction was undertaken that is relevant, not his intent (or that of his tax return preparers) at the time the tax returns reporting the transaction were prepared. *See, e.g.*, *Hunt v. Comm'r*, 938 F.2d 466, 472 (4th Cir. 1991) ("The first prong of the *Rice's Toyota* test - the business purpose inquiry - concerns the motives of the taxpayer *in entering the transaction in question*." (emphasis added)). Thus, LaRue's report is completely irrelevant to any issue other than penalties.

transactions that occurred. Neither the reporting of the FICA A Fund transaction nor the government's treatment of the transaction in the FPAAs control the tax treatment. As Defendant has asserted many times, "this lawsuit is a *de novo* proceeding in which the Court will apply Code provisions enacted by Congress, regulations promulgated by the Treasury Department, and well-established case law to determine the correct tax treatment of the transactions at issue."[58] Defendant's suggestion that the tax return reporting of the FICA A Fund transaction should be considered by the Court in deciding the proper substantive tax treatment of those transactions puts the cart before the horse.

Although the only issue to which LaRue's testimony and reports are relevant are penalty defenses, Defendant now contends for the first time that "this Court may lack jurisdiction to determine whether, in defense to penalties, Richard Egan acted with reasonable cause and in good faith."[59] Defendant's raising of this issue by way of footnote almost two-and-a-half years into this litigation is inconsistent with its discovery in this case and its engagement of LaRue to opine on the manner in which the FICA A Fund transaction was reported. Much of Defendant's discovery in this case has been predicated on issues that are relevant only to accuracy-related penalty defenses. And, much of Defendant's extensive discovery from third parties is relevant only to whether Plaintiff's reliance on outside advisors, "under all the circumstances, . . . was reasonable."[60] Additionally, in raising the jurisdictional issue, Defendant failed to cite cases

---

[58] United States' Resp. to Pl.'s Mot. to Compel Disc. at 1 (Mar. 26, 2007).

[59] Def.'s Opp'n at 5 n.9.

[60] Treas. Reg. § 1.6664-4(b)(1).

where courts have considered partner-level defenses in a partnership-level proceeding.[61]  It is ironic that Defendant has spent so much time and effort during discovery in this case seeking information from third parties and only now raises a questionable argument that, if accepted, could bar this Court from considering Defendant's extensive discovery and LaRue's testimony.

## CONCLUSION

Defendant's and LaRue's explanations and arguments do nothing to counter the facts that LaRue impermissibly opines on the state of mind of those preparing FICA A Fund's and Plaintiff's tax returns and that LaRue is unqualified to opine on how the reporting of the FICA A Fund transaction affected audit risk.  For these reasons, the Court should grant Plaintiff's motion to exclude the proposed expert testimony and reports of LaRue.

Respectfully submitted this 25th day of February 2008.

                      PLAINTIFF
                      FIDELITY INTERNATIONAL CURRENCY ADVISOR
                      A FUND, L.L.C., by the Tax Matters Partner

                      /s/ Lena Amanti
                      David J. Curtin, D.C. Bar #281220
                      Ronald L. Buch, Jr., D.C. Bar #450903
                      Lena Amanti, D.C. Bar #490791
                      MCKEE NELSON LLP
                      1919 M Street, N.W., Suite 200
                      Washington, D.C. 20036
                      Telephone:  (202) 775-1880
                      Facsimile:  (202) 775-8586
                      Email:  dcurtin@mckeenelson.com
                               rbuch@mckeenelson.com
                               lamanti@mckeenelson.com

---

[61] *See, e.g.*, *Klamath Strategic Inv. Fund, LLC v. United States*, 472 F. Supp. 2d 885, 904 (E.D. Tex. 2007) (finding that the court could consider the reasonable cause defenses under Internal Revenue Code section 6226(f) in a partnership-level proceeding and noting that "no administrative benefit would be gained by requiring additional proceedings"); *Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157, 1229-36 (2005) (considering the reasonable cause and good faith exception to accuracy-related penalties in a partnership-level proceeding).

       John O. Mirick, BBO #349240
       MIRICK, O'CONNELL, DEMALLIE
       & LOUGEE, LLP
       100 Front Street
       Worcester, MA 01608
       Telephone:  (508) 791-8500
       Facsimile:  (508) 791-8502
       Email: jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 25, 2008.

       /s/ Lena Amanti
       Lena Amanti, D.C. Bar #490791
       MCKEE NELSON LLP
       1919 M Street, N.W., Suite 200
       Washington, D.C. 20036
       Telephone:  (202) 775-1880
       Facsimile:  (202) 775-8586
       Email: lamanti@mckeenelson.com