# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case Nos.: 05-40151-FDS<br>06-40130-FDS |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY AND REPORTS OF GORDON RAUSSER

Defendant is using Gordon C. Rausser, its lead expert and litigation consultant, to advocate its case in the guise of expert opinion. Rausser and his staff at OnPoint have charged Defendant well over $1 million for consulting and testifying expert services.[1] In their role as litigation consultants, Rausser and his team are necessarily advocates for Defendant.[2] It is evident that the Rausser team did not clearly separate its dual roles of litigation consultant and drafter of the testifying expert's reports. The result is that the Rausser Reports, drafted by the same staff that performed the litigation consulting services, are replete with advocacy and

---

[1] Additionally, Rausser was responsible for Defendant's tutorial as evidenced by the fact that his picture and name were displayed on it.

[2] Because they are part of a client's team of advocates, single-role litigation consultants are protected by the work-product doctrine. *See, e.g.,* Fed. R. Civ. P. 26(b)(4)(B); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003). In this case, Rausser and his staff had dual roles. Yet, Rausser's team at OnPoint and Defendant are inappropriately withholding OnPoint documents based on claims of work product. Plaintiff's motion to compel the production of these documents is pending. Defendant's opposition to that motion urges this Court to create a gaping hole in the expert discovery rules.

arguments that have no place in a report purportedly written "from the perspective of an options expert."[3]  Such opinions are untrustworthy, unreliable, and unhelpful to the trier of fact.  Under *Daubert*, this Court's "gatekeeper" function calls for it to prevent an expert advocate from testifying as an expert witness.  Accordingly, Plaintiff requests this Court to exclude Rausser's proposed expert testimony and Reports.

## I.    Rausser and His Staff at OnPoint Are Advocates

Defendant and Rausser have belatedly tried to construct a wall, with Rausser's activity as Defendant's testifying expert on one side of the wall and OnPoint's work as Defendant's litigation consultant on the other side.  Other than self-serving statements by Rausser and his partner (and lawyer), Laura Craft, there is no evidence of any such wall going back to Rausser's initial engagement.  Rausser merely claims that he has not "prepared, viewed or discussed with the OnPoint staff or counsel any of the work product that may have been generated" in OnPoint's litigation consulting activities.[4]  As this quote indicates, Defendant's position is delicately balanced on two erroneous contentions:  (1) that Rausser was hired as a testifying expert, not a

---

[3] United States of America's Combined Resp. in Opp'n to Pl.'s Mot. to Exclude the Expert Test. and Reports of Dr. A. Lawrence Kolbe and Dr. Gordon Rausser ("Def.'s Opp'n") at 31, Feb. 15, 2008.

[4] Decl. of Gordon Rausser in Supp. of the United States' Opp'n to Pl.'s Mot. to Compel Produc. of Docs. ("Rausser Decl. I") ¶ 3, Feb. 7, 2008 (attached as Ex. A to United States of America's Sur-Reply to Pl.'s Mot. to Compel Produc. of Materials Relating to Expert Reports and Ops. of Gordon Rausser ("Def.'s Sur-Reply to Mot. to Compel"), Feb. 7, 2008).  OnPoint and Rausser have not produced documents relating to their litigation consulting services. *See* Decl. of Laura Craft in Supp. of the United States' Opp'n to Pl.'s Mot. to Compel Produc. of Docs. ¶ 3, Feb. 7, 2008 (attached as Ex. B to Def.'s Sur-Reply to Mot. to Compel) ("It is my understanding that these [consulting] documents and documents created in the tutorial preparation process are the only OnPoint records that have been withheld.").  Defendant has failed to meet its obligation to log these withheld documents.  Rule 26(a) *requires* an expert witness to disclose materials that he has considered.  Rule 26(b) *permits* a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Plaintiff, therefore, is entitled to discovery of all materials created by Rausser or his OnPoint staff relating to the FICA A Fund matter because such materials are relevant to Plaintiff's cross-examination of Rausser.  Because Defendant is withholding those documents based on a claim of "trial-preparation material," it was obligated to prepare a log of the documents it is withholding under Rule 26(b)(5)(A).  Defendant has refused to provide a log and has failed to prove, as it must, that work-product protection applies to the withheld documents.

litigation consultant,[5] and (2) that there was a wall separating the activities of Rausser's staff as litigation consultants from Rausser's activities as testifying expert.

The objective evidence disproves Defendant's position. The documents show that Defendant specifically engaged Rausser, with his staff's assistance, to serve as both testifying expert and litigation consultant.[6] Defendant entered into a single contract pursuant to which the Rausser team was hired to provide testifying and consulting services. The facts speak for themselves: there was no clear separation between the litigation consulting work and the testifying expert work that the Rausser team was engaged to perform. The advocacy required in the Rausser team's role as litigation consultant tarnishes the objectivity and reliability of the opinions and conclusions in the Rausser Reports produced by that same team.

### A.    Defendant Engaged Rausser to Provide Litigation Consulting Services

The documents conclusively show that Defendant engaged Rausser to provide both consulting and testifying expert services, and his staff at OnPoint has supported him in the provision of these services. In identifying the purpose for engaging Rausser and OnPoint, counsel for Defendant checked the box next to "Expert Testimony on Behalf of U.S." and did not bother to check the box next to "Litigation Consultant Services."[7] However, the attached Expert Witness Statement of Work, signed by Rausser, made it very clear that Defendant hired Rausser to provide litigation services along with his trial expert services:

> Dr. Rausser will also identify to government lawyers what facts need to be developed . . . , and suggest to government lawyers how to find the facts that are

---

[5] *See* Def.'s Sur-Reply to Mot. to Compel at 2-3, Feb. 7, 2008 ("[T]he United States has been crystal clear that Rausser is a testifying expert, and has not performed any services on behalf of the United States as a consulting expert.").

[6] *See* Ex. A (engagement contract between Gordon Rausser and the U.S. Dep't of Justice).

[7] *See* Ex. A at OPA008252.

relevant to the issues.  Dr. Rausser will also assist counsel for defendant in preparing pretrial discovery, including interrogatories and document requests.[8]

Thus, Defendant's own documents make clear that it retained Rausser to assist with its trial preparation in addition to testifying as its expert witness.  The objective evidence refutes Defendant's assertion that Rausser "has not performed any services on behalf of the United States as a consulting expert."[9]  Defendant's engagement agreement contemplates no distinction between Rausser and his OnPoint staff, and OnPoint's invoices have likewise made no distinction between time spent on consulting activities and time spent drafting the Rausser Reports or the opinions contained therein.  In fact, Rausser's staff, including lawyers Laura Craft and Chandra Wallace, performed the so-called litigation consulting work and trial expert work.  According to the facts, Rausser was hired to do both types of work.  There is no evidence here of a clear separation of the trial expert from the litigation consultant.

**B.     There Is No Meaningful Distinction Between Rausser and OnPoint**

The facts simply do not support, and indeed disprove, Defendant's claim that the litigation consulting activities of OnPoint can be neatly separated from Rausser's trial expert role.  Contrary to Defendant's claims, Rausser was not isolated from his own company or his own staff, and the terms of his own engagement contract prove that he cannot be isolated from them.  First, Rausser owns 60% of OnPoint and has access to all its materials.[10]  Second, in its request for authorization to engage Rausser, counsel for Defendant identified one contractor:

---

[8] *See* Ex. A at OPA008255.

[9] *See* Def.'s Sur-Reply to Mot. to Compel at 2-3.

[10] *See* Gordon Rausser Dep. 56:8-11, Nov. 30, 2007 (attached as Ex. 4 to Mem. of Law in Supp. of Pl.'s Mot. to Exclude the Proposed Expert Test. and Reports of Gordon Rausser ("Pl.'s Mem. to Exclude Rausser"), Jan. 17, 2008) (stating that Rausser owns 60% of OnPoint); *id.* at 49:2-9 (stating that Rausser had access to OnPoint's "P" drive, where client materials were stored); *id.* at 133:12-134:2 (stating that Rausser had access to Craft's computer, where draft reports were stored).

"Gordon Rausser, OnPoint Analytics."[11]  Finally, Rausser has also taken responsibility for the

work of his OnPoint staff—whether performed in their capacity as litigation consultants or as

drafters of the Rausser Reports.[12]  For example, Rausser personally signed a confidentiality

agreement covering *all* of the work that he and his OnPoint staff would perform on the FICA A

Fund matter, representing that

> I, Gordon Rausser, in my personal capacity and *on behalf of OnPoint Analytics*
> . . . understand that all materials provided by the Division, including any copies,
> notes, or working papers derived or produced therefrom, are the property of the
> United States Government.  If required to do so by the [government] *I will
> promptly surrender* such materials and derived copies, notes and/or working
> papers which are in my custody or control.[13]

In his own Declaration, Rausser sometimes aggregates consulting work and testifying

expert work.  He asserts that "my services accounted for approximately 35% of the total fee

billings in this matter up to the date of my second report . . . .  In my thirty years of experience as

an economic consultant, this is not at all an unusual distribution among staff and a testifying

expert."[14]  In calculating this 35-65 split, Rausser made no distinction between billings for non-

testifying, litigation consulting work and billings for time spent on the Rausser Reports.  This

failure is understandable because, in reality, there is no distinction between these roles.  The time

billed by his staff on both consulting and testifying expert activities—which exceeds 65% of the

---

[11] *See* Ex. A at OPA008252.  Although Rausser was identified as the contractor, Laura Craft signed the engagement contract on behalf of OnPoint.  It should also be noted that Defendant initially sought Rausser's services, not OnPoint's.  *See* Rausser Dep. 20:3-21:9 (stating that Defendant's initial phone call was to Rausser).

[12] *See* Ex. A at OPA008260 (Confidentiality Agreement For Expert Witness) (agreeing to ensure the confidentiality of OnPoint's work); *see also* Rausser Dep. 258:20-22 ("[U]ltimately, I am the responsible party for [Craft's] work and all the staff work.").  In the 35-page Declaration filed in opposition to Plaintiff's motion, Rausser makes it clear that he is in control:  "The fact that two of the more than ten staff members working under my supervision on this matter have law degrees does nothing to undermine my independence or my control of the ultimate work product."  Decl. of Dr. Gordon Rausser in Opp'n to Pl.'s Mot. to Exclude ("Rausser Decl. II") ¶ 7(f), Feb. 15, 2008 (attached as Ex. 2 to Def.'s Opp'n).

[13] Ex. A at OPA008260 (Confidentiality Agreement For Expert Witness) (emphasis added).

[14] Rausser Decl. II ¶ 30.

total time incurred on the matter[15]—necessarily influences the opinions presented in the Rausser Reports.

According to Rausser, since 2004 OnPoint has "add[ed] a number of Ph.D.s in economics and statistics . . . [and] finance" to support his litigation work.[16]  These same staff members—and others with J.D.s instead of Ph.D.s—have provided litigation consultant services and have supported the development of Rausser's opinions as an expert witness.[17]  Defendant's suggestion that one of Rausser's staff can shift, at the drop of a hat, from serving as partisan litigation consultant to serving as  an objective assistant to a purportedly independent testifying expert lacks credibility.  The self-serving and unsupported assurances by Rausser and Craft that Rausser did not view, prepare, or discuss the litigation consulting work fall far short of evidence of the required clear separation between the two roles.  In this case, both roles were played by the same staff members who fed information to Rausser as the trial expert and drafted his reports.  Under these circumstance, Rausser's claim that he did not view some of his staff's work is meaningless.

The circumstances surrounding Defendant's phone interview of Thomas Yorke, a former employee of Refco Capital Markets, Ltd., and Rausser's subsequent testimony regarding the interview, show that, in reality, Rausser and his staff have made the consulting and testifying expert activities inseparable.  It appears, and Defendant has not denied, that Craft took part in the interview as part of Rausser's litigation consultant

---

[15] While Rausser calculates that billings for his time represents 35% of the total billings, his proportion of hours billed on the project through the date of the submission of his Rebuttal Report is significantly less than 35%.

[16] Rausser Dep. 101:21-102:8.

[17] *See id.* at 32:18-33:9 (identifying Laura Craft, Chandra Wallace, and Guey-Mei You as those who worked on "Phase 1" of the project, which included a significant amount of consulting work now being withheld from production).

function.  Craft then told Rausser about the interview so he could consider the

information received from Mr. Yorke in his capacity as a testifying expert.[18]  This

episode is entirely inconsistent with the *post hoc* efforts by Defendant and Rausser to

construct a wall between consulting and testifying expert work,[19] including Rausser's

claim that he has not "prepared, viewed or discussed" work product information with his

OnPoint staff.[20]  While Rausser may not have "prepared" or "viewed" the Yorke

information, he certainly discussed it with Craft.[21]  Not only did Craft communicate

information about the interview to Rausser, but Rausser has factored into his opinions his

view that Mr. Yorke's deposition testimony is inconsistent with Craft's report of Mr.

Yorke's interview.[22]

 In engaging Rausser and his team to provide litigation consulting and testifying

expert services, Defendant is seeking the best of both worlds.  Defendant wants Rausser

to testify in support of its case, but also wants to protect him from full cross-examination

by withholding Rausser team materials based on the work-product protection afforded to

single-role litigation consultants.  Such work-product protection does not extend to

---

[18] *See id.* at 10:8-12:3.

[19] *See* Def.'s Sur-Reply to Mot. to Compel at 2-3 ("[T]he United States has been crystal clear that Rausser is a testifying expert, and has not performed any services on behalf of the United States as a consulting expert."); Rausser Decl. I ¶ 3 (stating that Rausser has "not prepared, viewed or discussed with the OnPoint staff or counsel any of the work product that may have been generated" in OnPoint's consulting work).

[20] Rausser Decl. I ¶ 3 (stating that Rausser has "not prepared, viewed or discussed with the OnPoint staff or counsel any of the work product that may have been generated" in OnPoint's consulting work).

[21] Rausser Dep. 10:8-12:3.

[22] *See id.* 11:22-12:3.  When asked to supply Plaintiff with a record of the interview to confirm Rausser's claims, Defendant asserted that its notes of the interview were protected as work product.  *See* Def.'s Sur-Reply to Mot. to Compel at 4-5.  Defendant has not refuted, and appears to confirm, Mr. Yorke's assertion that he gave the same answers in his interview and deposition.  *Id.* at 4 ("Even more importantly, [P]laintiff makes it crystal clear in his own reply memorandum that the information conveyed by Yorke at his interview was absolutely no different than what he said at his deposition.").  Defendant's apparent disavowal of Rausser's claim that Mr. Yorke's testimony was inconsistent raises further questions about Rausser's credibility.  Defendant, Rausser, and Craft have created this issue regarding the accuracy of Mr. Yorke's testimony and they—not Mr. Yorke—should set the record straight by providing Plaintiff with an accurate record of the interview.

Rausser and his staff.[23]  Plaintiff requests that, in performing its gatekeeper function, this Court prevent Defendant from offering an expert witness whom Plaintiff cannot fully cross-examine.

### C. Lawyers Played Central Roles as Litigation Consultants and Drafters of the Rausser Reports

The evidence shows that OnPoint holds itself out to the public as a litigation consulting firm whose principal activity is to serve and assist trial advocates:

> OnPoint is *managed by trial lawyers* and *seasoned paralegals* who have spent their careers handling high stakes business litigation. Continually frustrated by the limitations of litigation support technology, they set out to *re-design the playing field* through instantly accessible data intelligence. The result is OnPoint's comprehensive service offering that *gives any trial team or business unit a provable advantage*.[24]

While in his deposition Rausser tried to disavow this statement by his own company as "not a correct representation of what OnPoint Analytics is in 2007,"[25] the evidence shows that Laura Craft and Chandra Wallace, two California attorneys, were the primary drafters of the Rausser Reports.  In addition to the voluminous set of emails and notes memorializing the work of these two lawyers on the Reports, OnPoint's invoices disclose that Craft and Wallace spent 692 and 848 hours on the FICA A Fund matter, respectively, in comparison to 593 hours spent by Rausser.

---

[23] *See* Pl.'s Reply to Def.'s Resp. in Opp'n to Pl.'s Mot. to Compel Produc. of Materials Relating to Expert Reports and Ops. of Gordon Rausser at 4-10, Jan. 31, 2008 (explaining the standard for discovery of non-testifying expert work product).

[24] OnPoint Analytics, http://www.onpointanalytics.com/ (last visited Feb. 25, 2008) (emphasis added).

[25] Rausser Dep. 100:7-17 ("[T]his is a correct representation of what OnPoint Analytics was in 2004. It is not a correct representation of what OnPoint Analytics is in 2007. . . . I think OnPoint Analytics has been so busy with engagements that it hasn't had time to update their Web site.").  As of the filing of this Reply, OnPoint's website has not changed.

Craft has been an attorney in California for over twenty-seven years.[26]  Since at least 1994, she has represented Rausser and others in litigation and served as his lead counsel in a jury trial as recently as 2006.[27]  Her legal activities continued throughout 2007.  In 2007, while drafting the Rausser Reports, Craft and Wallace worked on the appellate brief filed in Rausser's appeal from the adverse judgment in *Kearl v. Rausser* in the United States District Court in Utah.[28]  Contemporaneous emails between them refer to the "Stoel brief," "Gordon's Brief," and the "Utah Fact Statement."[29]  At his deposition, Rausser claimed he did not know what brief Wallace and Craft were working on or referring to, and he denied knowing that these lawyers were writing his Utah brief at about the same time they were drafting his expert reports.[30]  He now asserts that his "uncertainty is understandable" because "OnPoint performed economic consulting work for the Stoel Rives firm during the same time period the Fidelity International matter has been active."[31]  Rausser's explanation raises more questions than it answers:

- Did Stoel Rives hire "economic" consultants to assist in the preparation of a legal brief?

- Regardless of any confusion of the "Stoel Brief," why was he unable to identify "Gordon's Brief" or the "Utah Fact Statement?"

- Did OnPoint have other litigation consulting projects for clients named Gordon or have other litigation projects in Utah?

- Was OnPoint engaged in writing briefs or fact statements for these other clients?

---

[26] State Bar of California, Attorney Profile, Laura Richards Craft, http://members.calbar.ca.gov/search/member_detail.aspx?x=95717 (last visited Feb. 25, 2008) (listing date of admission as Dec. 16, 1980).

[27] *See* Pl.'s Mem. to Exclude Rausser at 3-5, Jan. 17, 2008.

[28] *See id.* at 5.

[29] *See id.*

[30] *See* Rausser Dep. 111:2-114:17.

[31] Rausser Decl. II ¶ 42 n.62.

- If OnPoint was working on so many briefs in 2007 that Rausser could not tell them apart, is it credible to insist that OnPoint's principal business has "evolved and changed" from litigation consulting to economic consulting?[32]

The effect of Craft's and Wallace's legal training is evident throughout the Rausser Reports, such as in the use of specialized legal terms.[33]  Rausser claims he did not intend to use the tax law meaning of "promoter," "basis," "substance over form," or "step transaction."[34]  As a member of the California State Bar Section on Taxation, Wallace presumably was well aware of the meaning of these tax-related terms.[35]

## II.   The Advocacy Role Played by Rausser and His Staff at OnPoint is Evident in the Rausser Reports

The effect of the Rausser team's serving as advocates while proffering supposedly independent expert testimony is evident in the Rausser Reports' inappropriate arguments and conclusions.  Rausser's arguments and explanations in his Declaration do not negate the fact that the Rausser Reports are tarnished by their drafters' work as advocates.

### A.   Rausser's Factual Narrative Is Inappropriate

Rausser claims that "[p]rofessional standards," not advocacy, required him to include a factual narrative of the FICA A Fund transactions, but cites no source for such standards.[36]  While an expert's opinions must be based on sufficient facts, Rausser's "painstakingly-detailed" Reports go far beyond identifying the documents needed for an economic analysis "from the

---

[32] *See* Rausser Dep. 99:14-102:18 (explaining that OnPoint now employs Ph.D.s in economics and statistics to support Rausser's litigation work and to provide other economic consulting services that it did not provide in 2004).

[33] *See* Pl.'s Mem. to Exclude Rausser at 22-24.

[34] *See* Rausser Decl. II ¶¶ 19-23.

[35] *See* Ex. B (State Bar of California, Attorney Profile, Chandra Slack Wallace, http://members.calbar.ca.gov/search/member_detail.aspx?x=148502 (last visited Nov. 25, 2007)) (listing Wallace as belonging to the Taxation Section).

[36] Rausser Decl. II ¶¶ 8, 11.

perspective of an options expert."[37]   There are no "professional standards" that allow an expert to tell the Court what inferences to draw or how to interpret exhibits.

### B.    Contract Interpretation

Rausser defends his opinion that the contracts enabled Refco to eliminate the risk of a one-sided payout in its option trades with FICA A Fund by asserting that "any disciplined financial analysis on my part required me to take into account the option contract terms which would have enabled Refco to avoid [the risk of a one-sided payout.]"[38]   The problem is that Rausser tilts the playing field by providing an incomplete and hence inaccurate interpretation of Refco's contract.[39]   In considering the contract terms Rausser ignores Refco's contractual obligation to act with "good faith" and in a "commercially reasonable" manner.[40]   According to Rausser:  "I have expressed no opinion as to whether Refco would have been acting in bad faith or entirely within its rights in making such a selection—I merely observe the financial implication of the option contract terms, again a needed assessment in any sound financial economic analysis."[41]

Rausser offers no credible explanation for his decision to examine Refco's rights under the contract while closing his eyes to the obligations imposed on it by the very same contract.  In fact, the explanation that he offers for examining the contract in the first place—that "any disciplined financial analysis . . . required me to take into account the option contract terms"[42]—

---

[37] Def.'s Opp'n at 1, 31.

[38] Rausser Decl. II ¶ 18; *see also id.* ¶ 10 ("Peer reviewed literature on financial economics stresses the importance of understanding transaction terms and mechanics as well as the role of individual participants in evaluating a particular financial structure.").

[39] *See* Pl.'s Mem. to Exclude Rausser at 18-21.

[40] *Id.* at 20-21.

[41] Rausser Decl. II ¶ 18.

[42] *Id.*

underscores the magnitude of the problem created by his selective reading of the contract.  He

offers no principle of "disciplined financial analysis" that requires the consideration of some

contract terms and the ignoring of others.  This highly skewed reading of the contract is a

fundamental failure in his methodology that renders Rausser's conclusions regarding the Refco

contract inherently unreliable and useless.

## III.    Rausser's Inconsistencies Undermine the Reliability of His Opinions

In recent attempts to bolster his independence and credibility, Rausser has made

numerous statements that are inconsistent with his previous assertions.  For example, Rausser

has new answers to Plaintiff's questions regarding Chandra Wallace and the completeness of his

resume.

### A.    Inconsistencies Regarding Chandra Wallace

Chandra Wallace, a California attorney, billed more time on the FICA A Fund matter

than Rausser, Craft, or any other member of Rausser's team.  A printout of Wallace's attorney

profile from the State Bar of California website that was made November 25, 2007 (five days

before Rausser's deposition) identified her as a member of the State Bar's Taxation Section. [43]

At his deposition, Plaintiff asked Rausser about Chandra Wallace's background.   The court

reporter recorded the following testimony:

Q.    And were you—are you aware if Ms. Chandra Wallace had some background in
taxation?

A.    Yes.

Q.    And what do you understand her background is?

A.    I have an understanding that one of her fields of law is taxation.  That's it.[44]

---

[43] *See* Ex. B (State Bar of California, Attorney Profile, Chandra Slack Wallace,
http://members.calbar.ca.gov/search/member_detail.aspx?x=148502 (last visited Nov. 25, 2007)).

[44] Rausser Dep. 106: 12-18.

Subsequent to his deposition, Rausser's knowledge regarding Wallace's background changed and so did his testimony.  On the errata sheet for his deposition, which he signed on January 30, 2008, Rausser changed his answer to the first question from "Yes" to "No."  Regarding the second question—his understanding of Wallace's background—he changed his answer from "I have an understanding that one of her fields of law is taxation," to "I do not know."[45] Interestingly, after Rausser's deposition, Wallace's attorney profile on the California Bar website underwent a curious revision—it no longer identifies her as a member of the Tax Section.  Her new specialty is Business Law.[46]

### B.    Inconsistencies Regarding Rausser's Resume

In his deposition, Rausser claimed the omission from his resume of his five years of affiliation with Charles River Associates ("CRA") was OnPoint's doing:  "[W]e're talking about OnPoint's version of my resume. . . .  [OnPoint] would delete some items from my resume, and they're welcome to do so, in providing it to potential clients of OnPoint."[47]  In his Declaration, however, Rausser now claims that the failure to disclose his CRA affiliation resulted from a "clerical error when I was transitioning firms."[48]  Rausser transitioned firms in 2005,[49] so this purported clerical error must have existed unnoticed for at least two years at the time his resume was attached to the Report submitted on August 7, 2007.  Rausser also claims that "the reference

---

[45] Errata Sheet to Nov. 30, 2007 Rausser Dep., Jan. 30, 2008.

[46] *Compare* Ex. B *with* Ex. C (State Bar of California, Attorney Profile, Chandra Slack Wallace, http://members.calbar.ca.gov/search/member_detail.aspx?x=148502 (last visited Feb. 25, 2008)).

[47] Rausser Dep. 74:20-75:3.

[48] Rausser Decl. II. ¶ 39 n.60.

[49] Rausser Dep. 75:13-16 ("*Q*:  So I'm clear with you, then, you continued your relationship with Charles River through 2004 to some time in 2005?  *A*:  Correct.").

to CRA appeared continuously on my *publicly posted* academic resume."[50]  The relevant resume

is the one submitted under oath to the Court and to Plaintiff in this engagement, not a resume

available on the internet.

**IV.    Plaintiff's Substantive Challenges to Rausser's Conclusions Will Be Made at Trial if the Court Permits Rausser's Expert Testimony**

In a weak attempt to respond to Plaintiff' Motion, Rausser makes the nonsensical

argument that Plaintiff agrees with his factual assertions or ultimate conclusions.  Lapsing into

his role as an advocate in his over-done Declaration, Rausser argues that "[i]t does not appear

that Plaintiff challenges the accuracy of any of these statements"[51] and that "Plaintiff's motion

presents no substantive challenge to [the Rausser Reports]."[52]  As Defendant well knows, at this

stage, Plaintiff's challenge is directed to the reliability, trustworthiness, and usefulness of

Rausser's opinions under *Daubert* and Rule 702.[53]  The issue before the Court at this time is not

whether Rausser's conclusions are correct, but whether they are reliable, trustworthy, and

useful.[54]  If the Court permits Rausser to testify, Plaintiff will challenge whatever opinions he

may offer at trial.

---

[50] Rausser Decl. II ¶ 39 n.60; *see also* Rausser Dep. 75:3-6 ("But I know in my university academic CV, it has consulting engagements, which would include LECG and Charles River.").

[51] Rausser Decl. II ¶ 12.

[52] *Id.* ¶ 29.

[53] The statements in the Rausser Declaration suggest that he believes the failure to identify areas of substantive disagreement signify agreement.  Plaintiff notes that the *Daubert* motions filed by Defendant against two of Plaintiff's experts, Ethan Yale and Stuart Smith, did not challenge those experts' ultimate conclusions.  Whether or not Defendant intended its silence in those motions to signify consent, Plaintiff emphasizes that its decision to focus on specific concerns in its motion to exclude Rausser's opinions should not be taken as agreement with any of his other statements or conclusions.

[54] *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 595 (1993) ("The focus . . . must be solely on principles and methodology, not on the conclusions that they generate.").

**CONCLUSION**

The facts show that Rausser is a partisan advocate, not an independent expert witness.

Defendant hired Rausser as a testifying expert and litigation consultant, and it is clear that

Rausser and his staff at OnPoint performed these dual functions.  Moreover, Defendant seeks to

take advantage of the Rausser team's dual roles by withholding materials necessary for

Plaintiff's cross-examination of Rausser.  The rules governing expert discovery do not permit

Defendant to play this game with its trial expert.  Accordingly, Plaintiff requests that this Court

exclude Rausser's testimony and Reports because they are unreliable, untrustworthy, and

inappropriate expert advocacy.

Respectfully submitted this 25th day of February 2008.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner


/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
       rbuch@mckeenelson.com
       lamanti@mckeenelson.com

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email: jomirick@mirickoconnell.com

15

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 25, 2008.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

**U.S. Department of Justice**

**Request, Authorization and Contract for Services of Expert Witness, Litigative Consultant, or ADR Neutral**

Contract/Purchase Order No.: 6WTAK-136153

| 1. Requesting Official (Name & Title)<br>Dennis Donohue<br>Special Litigation Counsel | 2. Signature of Requesting Official | 3. Point of Contact (Name and Tel.)<br>Matthew C. Hicks<br>Telephone:  202-307-6542 | 4. Date of Request<br>Sept. 19, 2006 |
|---|---|---|---|
| 5. Preparer (Name & Tel.)<br>Matthew C. Hicks<br>202-307-6542 | 6. Originating Office (Name & Address)<br>Tax Division, CTS-N<br>555 4th St. NW, Suite 7804<br>Washington, DC 20001 | 7. Case Name, Court & Ct. Docket No.<br>Fidelity Int'l v. United States<br>Nos. 05-40151 and 06-40130<br>(D. Mass.) | 8. DJ File No./USAO No.<br>5-38-10254<br>2005106280 |
| 9. Contractor (Name and Tel.)<br>Gordon Rausser<br>OnPoint Analytics<br>Telephone:   510-463-0130 | 10. Contractor Mailing Address<br>Watergate Towers I<br>1900 Powell Street, #150<br>Emeryville, CA 94608 | 11. Contractor TIN or SSN (Individual)<br>77-0637796 | 12. Contractor Specialty<br>Economics and<br>Options Trading |

| | 13. Reason for Request (Place an "X" in the applicable Box in the Left Column) | | | |
|---|---|---|---|---|
| X | 13.a. Expert Testimony on Behalf of U.S. | | | |
| | 13.b. Deposition Conducted by DOJ Attorney | | | |
| | 13.c. Medical Examination of Plaintiff/Witness/Defendant in Contemplation of Testimony on Behalf of U.S. | | | |
| | 13.d. Examination Under 18 USC 4241, Mental Competency to Stand Trial Only | | | |
| | 13.e. Dual Purpose Psychiatric Examination (Time of Offense and Competency to Stand Trial) on the motion of: | | | |
| | 13.f. ADR Neutral Services | | | |
| | 13.g. Litigative Consultant Services | | | |
| | 13.h. Other (explain below): | | | |

*Attach the Statement of Work to this Form*

| 14. Negotiated Contractor Rates, Estimated Expenses, and Performance Dates (Note: Expenses incurred must be supported by receipts) | | | | |
|---|---|---|---|---|
| 14.a. Examine Case | 09/25/06 - 06/01/07 | | 810 | $301,992.60 |
| 14.b. Prepare Testimony | 06/02/07 - 10/01/07 | | 50 | $23,020.00 |
| 14.c. Court Testimony | 10/02/07 - 11/01/07 | | 20 | $13,000.00 |
| 14.d. Deposition | 06/01/07 - 08/02/07 | | 67 | $29,915.50 |
| 14.e. Litigative Consultant/Neutral | | See<br>Attached<br>Proposal<br>For Rates | | $0.00 |
| 14.f. Per Diem (if not part of fee) | | Day | | $0.00 |
| 14.g. Privately Owned Vehicle (MTE coach rate) | | Mile | | $0.00 |
| 14.h. Common Carrier Transportation Via GTA | | | | |
| 14.i. Common Carrier Transportation Reimbursed | | | | |
| 14.j. Miscellaneous | | | | |
| 14.k. TOTAL ESTIMATE | | | | $368,728.10 |

| 15. Submit Invoices & EFT Information to:<br>Matthew C. Hicks<br>U.S. Dept. of Justice, Tax Division<br>P.O. Box 55, Ben Franklin Station<br>Washington, DC 20044 | 16. Payment will be made by: (Place an "X" in the applicable Box and fill-in if not JMD/Finance) |
|---|---|
| | X  U.S. Department of Justice<br>JMD/Finance Staff<br>600 E Street, NW, Room 4045<br>Washington, DC 20530-0001<br>Tel. Hotline: (202) 616-5755 |

Previous Editions are Obsolete

Form OBD-47 (Revised 3-2005)
1923846.Page 1 of 2

OPA008252

**U.S. Department of Justice**

**Request, Authorization and Contract for Services of Expert Witness, Litigative Consultant, or ADR Neutral**

Contract/Purchase Order No. **6WJAK-136153**

| 17. Appropriation Data | | | | |
|---|---|---|---|---|
| 17.a. Authorized Amount | 17.b. YREGDOC | 17.c. Cost Center | 17.d. OBL Month | 17.e. Sub Object Code (SOC) |
| $368,728.10 | 601136153 | 03619601 | | 1157 |

17.f. Remarks  *OR 4-31-06*

*Note: The FEW Appropriation (15X0311) shall ONLY be used to fund Witness Services (i.e., Items 13.a through 13.e above).*

| 18. Funding Amount (Place an "X" in the applicable Box in the Left Column and fill-in the Amount and Performance Period) | | |
|---|---|---|
| 18.a. Fully Funded | 18.b. Amount | 18.c. Period (From - To) |
| X  This Contract is FULLY FUNDED in the amount specified in Block 18.b to cover the estimated costs of the ENTIRE project whose performance period is specified in Block 18.c. This amount shall NOT be exceeded without authorization and written modification of this contract by the Contracting Officer. | $368,728.10 | 09/29/06 - 11/01/07 |
| 18.d. Incrementally Funded | 18.e. Amount | 18.f. Period (From - To) |
| This Contract is INCREMENTALLY FUNDED. The total estimated cost of the project is specified in Block 14.h. Currently, funding is provided only in the amount specified in Block 18.e to cover estimated costs incurred during the performance period specified in Block 18.f. The amount specified in Block 18.e shall NOT be exceeded without authorization and written modification of this contract by the Contracting Officer. | | |

*Reminder: Witnesses are not entitled to Advance Payments.*

| 19. Funding Approval | | |
|---|---|---|
| 19.a. Signature of Approving Official | 19.b. Name & Title of Approving Official | 19.c. Date Approved |
| *Gayle A. McClain* | Gayle A. McClain, Budget Analyst | 09-22-06 |

This contract consists of the documents listed below. In the event of any inconsistency among the following documents, such inconsistency shall be resolved in the order in which said documents are listed.

(1) OBD Form 47, Request, Authorization and Contract for Services of Expert Witness, Litigative Consultant, or ADR Neutral, consisting of 2 pages.
(2) Attachment 1, Contract Terms, Conditions, and Procedures, consisting of 3 pages.
(3) Attachment 2, Statement of Work.
(4) The Contractor's proposal, incorporated herein by reference.

By signing this document, the Contractor agrees to perform services as described herein in accordance with the terms, conditions, and rates set forth in this contract.

The Contractor also certifies that, to the best of its knowledge, there is nothing derogatory in the background of its employees that could impugn testimony given by these employees or work products delivered by the Contractor.

This contract shall not become effective until signed by an authorized representative of the Contractor AND the Contracting Officer.

| 20. Contractor Signature | | |
|---|---|---|
| 20.a. Signature of Authorized Person | 20.b. Name and Title of Signer | 20.c. Date Signed |
| *signature* | *Bernard* President, On Point Analytics, Inc. | 11/2/06 |

| 21. Contracting Officer Signature | | |
|---|---|---|
| 21.a. Signature of Contracting Officer | 21.b. Name of Contracting Officer | 21.c. Date Signed |
| *signature* | Violet N Foster  SMD/PSS/APG | 9/29/06 |

OPA008253

### EXPERT WITNESS
### STATEMENT OF WORK
(Gordon C. Rausser)

1.    **PURPOSE:** Briefly describe your understanding of what the Government requires and how you intend to satisfy these requirements.

   This case involves a series of financial transactions which purportedly generate a tax loss out of proportion with the economics of the transaction. We must therefore investigate whether these transactions are bona-fide business transactions or whether their only significant purpose is to reduce income tax liability. This is important if the IRS and Tax Division are to enforce the Internal Revenue Code.

2.    **STATEMENT OF WORK:** Describe logically and thoroughly the services to be performed or product(s) to be provided. This section may be further divided into parts to communicate essential components or to describe phases that must happen before the final services or product can be accepted. Include a detailed list of miscellaneous services (if any) associated with preparation of testimony (e.g., graphics, audio visual) and list labor and time requirements of contract employees (if required).

   Gordon C. Rausser will provide high quality and timely expert opinion testimony in one or more written expert witness reports, in one or more written affidavits, orally at deposition, and orally at trial as to an analysis he will make of the complicated set of transactions in the case. He will help the government to ascertain: (1) whether the transactions could have been profitable; (2) whether the complicated set of transactions bore some reasonable relationship to market norms; and (3) whether there are any apparent reasons for engaging in the complicated set of transactions other than to generate the claimed tax benefit.

   Dr. Rausser will also identify to government lawyers what facts need to be developed in order to address the questions set forth above, and suggest to government lawyers how to find the facts that are relevant to the issues.

   Dr. Rausser will also assist counsel for defendant in preparing pretrial discovery, including interrogatories and document requests.

   Dr. Rausser will comply with all terms in the confidentiality agreement that he signed in connection with this agreement.

1923815.1

3    **PERSONNEL (if applicable):** Identify the individuals required to provide the services or product.

Dr. Rausser charges $650 per hour. He will be assisted by support staff at OnPoint Analytics, Inc. ("OnPoint Analytics"), whose services will be charged at hourly rates of $50 to $350.

4    **PERIOD OF PERFORMANCE:** Specify date on which work will commence and desired dates for delivery of the services or product. This would include the date that an expert's report would be provided and the anticipated date(s) of trial. The period of performance dates cannot be exceeded. If exceeded, the work must cease and a new contract must be authorized by a contracting officer. Contracts cannot be modified after the period of performance has ended. If an expert anticipates the dates should be extended he/she should notify you so that a modification can be put in place.

Work is to begin on or about September 15, 2006, and can be anticipated to continue through trial, which has not yet been scheduled.

5.    **LABOR RATES AND OTHER COSTS:** Provide daily/hourly rates and estimated hours for each proposed employee. Also include other proposed costs such as travel, per diem, and miscellaneous supplies. This section should specify that expenses (transportation, hotel, meals and incidentals) will be reimbursed in accordance with the Federal Travel Regulations.

Dr. Rausser charges $650 per hour. He will be assisted by support staff at OnPoint Analytics, whose services will be charged at hourly rates of $50 to $350. Expenses (transporation, hotel, meals, and incidentals) will be reimbursed in accordance with the Federal Travel Regulations.

6.    **GOVERNMENT FURNISHED INFORMATION/EQUIPMENT:** If the Government is furnishing data or equipment, specify what it is, when it is to be provided and why it is being provided.

It is anticipated that we will provide Dr. Rausser and OnPoint Analytics with information and documents we obtain through informal and formal discovery and with documents from the IRS.

1923815.1

7.    **REPORTS:** Identify the types, format and frequency of required reports.

It is anticipated that an expert witness report and a rebuttal expert witness report will be required. However, the Court may require or authorize additional reports, and we may need affidavits to support summary judgment motions or discovery motions.

8.    **POINTS OF CONTACT:** List the principal contact for both the Government and the contractor for technical and contractual concerns. Include name, title and telephone number. Except in unusual circumstances, this will be the Trial Attorney for the Government.

Matthew C. Hicks (202-307-6542), the government's trial attorney, will be the principal contact for the government.

Laura Craft (510-463-0133), OnPoint Analytics, will be the principal contact for Dr. Rausser and OnPoint.

9.    **REFERENCES TO DOCUMENTS:**

The 9/15/06 Work Plan and Budget, which is attached, further defines the elements of work to be provided and the cost estimate.

10.    **FUNDING:**

Dr. Rausser and/or OnPoint Analytics must notify the government's trial attorney as soon as the available funding is close to being exhausted. A modification must be authorized by a contracting officer so that work will not have to cease. In the event that funding is exceeded, work will have to cease immediately until a modification has been authorized by a contracting officer.

11.    **INVOICING:**

For services provided under this agreement, Dr. Rausser and/or OnPoint Analytics will provide to the Government's trial attorney invoices on a monthly basis no later than 30 days after performance or receipt of services and that satisfy the requirements set forth in II(B) on the back of Form OBD-47. The Government's trial attorney (Matthew C. Hicks, 202-307-6542) will be the principal contact for Dr. Rausser and OnPoint Analytics for technical and contractual concerns.

1923815.1

## 12.   SIGNATURES:

*I understand that no contract for performance of these services exists until both an authorized government procurement official and I have signed an official Department of Justice Form OBD-47. At that time, this statement of work will be incorporated into the contract for expert services.*

*I propose to provide expert witness services in accordance with the terms and at the rates set forth in the foregoing Statement of Work.*

9|19|06
_____
Date

*Gordon Rausser*
_____
Gordon C. Rausser

1923815.1

OPA008257



**OnPoint**

**Privileged and Confidential**     ***Fidelity International Currency Advisor***
Work Plan and Budget
9.15.06

To: Matthew Hicks, Esq.
         Department of Justice, Tax Division
From: Laura R. Craft
         OnPoint Analytics, Inc.
Date: September 15, 2006

As requested, this memo sets forth the proposed budget for expert services of Gordon C. Rausser, Ph.D., and all supporting staff in connection with the Son of Boss tax shelter litigation identified as *Fidelity International Currency Advisor A Fund LLC. v. United States of America*, USDC D. Mass. No. 05-40151 FDS.

Work will proceed in six phases: 1) Assessment, 2) Conclusions, 3) Reports, 4) Deposition, and 5) Trial Testimony Preparation, and 6) Trial Testimony. After completion of each of the first four phases, a product and progress review will be conducted with you before proceeding with the next phase. The budget contained herein is the best estimate of cost based upon the currently available information, but may change as additional information becomes available. OnPoint will communicate regularly with you regarding project status and billings in proportion to budget. This budget pertains to professional fees and does not include out of pocket expenses for items such as data acquisition and travel. These items will be passed through at cost. OnPoint does not charge clients for internal expenses such as copying, printing, telephone, facsimile and computer usage, and treats these items as part of its normal operating overhead. We are familiar with and will comply with government guidelines regarding expenses such as travel.

We understand that some initial work may have already been performed by another firm or expert. If you own the results as accessible work product, and if they can effectively be incorporated into our analysis, this may have a positive effect on the budget. With regard to the second phase of our work ("Conclusions"), the ultimate charges will depend heavily upon how many individual transactions comprise the overall structure and the form and specificity of detail contained in the available transactional documents. Our budget does not include extensive data entry services. With regard to the fourth phase ("Reports"), the scope of the included rebuttal report is highly dependent upon whether initial reports are filed simultaneously, or whether the plaintiffs file their report with sufficient lead time for us to thoroughly respond in our initial report. In addition, we have not accounted for the cost of attending the opposing expert(s) deposition(s) in the event that you wish us to do so. Finally, the budget for the fifth phase ("Trial Testimony") presumes that graphs, charts and other visuals appearing in the Reports are sufficient for use at trial. This phase of the budget therefore does not incorporate the cost of developing extensive new demonstratives for use at trial.

Subject to revision based on new information, our current estimate of the total cost of the project, expected to span approximately 13 months, is $368,720, as itemized below.

> ***1. Phase One: Assessment and Model Design***
> Time Period: 9/15/06 – 11/15/06
> Total Estimated Hours: 285
> Total Estimated Cost: $98,750

During this initial phase, we will review all of the contract documents and related tax opinion(s) and design the analytical model for evaluating potential economic returns and risk profile of each of the proposed transactions, individually and collectively.

Aldergate Towers I, 1900 Powell Street, #150, Emeryville CA 94608          Phone: 510-463-0130          Fax: 510-463-0131

OPA008258


OnPoint

### 2. Phase Two: Data Analysis, Simulations and Conclusions
Time Period: 11/16/06 – 2/15/07
Total Estimated Hours: 380
Total Estimated Cost: $123,120

In this second phase, we will collect and load all relevant market data, extract and load all transactional data, code and run all models and simulations, and form conclusions about both the prospective (ex ante) and actual (ex post) economic returns and risk. We will also set up benchmark risk/return comparisons with other recognized, legitimate investment structures.

### 3. Phase Three: Reports
Time Period: 2/16/07 – 5/31/07
Total Estimated Hours: 245
Total Estimated Cost: $80,115

In the third phase we will draft an initial and one rebuttal report, including graphs, charts, tables and illustrations as appropriate. Back-up of the reports (for later reference) will contain complete source footnoting as well as data extracts and model outputs for future reference in deposition and trial preparation. We will also compile and supply an Appendix of materials relied upon.

### 4. Phase Four: Deposition and Preparation
Time Period: 6/1/07 – 8/1/07
Total Estimated Hours: 67
Total Estimated Cost: $29,915

Actual deposition testimony time is estimated at 8 hours. The balance of the time in this phase is comprised of materials preparation, review, meetings with you, and travel.

### 5. Phase Five: Trial Preparation
Time Period: 8/1/07 – 10/1/07
Total Estimated Hours: 50
Total Estimated Cost: $23,820

Phase five, preparation for trial testimony, includes assembly and review of materials, internal preparation sessions, and preparation directly with you.

### 6. Phase Six: Trial Testimony
Time Period: 10/1/07 – 11/1/07
Total Estimated Hours: 20
Total Estimated Cost: $13,000

Phase six, trial testimony, includes travel, and actual testimony and court waiting time.

### Professional Services Rate Schedule
- Testifying Expert (Dr. Gordon C. Rausser) - $650
- Project Manager - $350
- Database Architect and Statistician - $ 300
- Financial/Derivatives Analyst - $300
- Staff Economist - $250
- Junior Analyst - $200
- Project Assistant - $90
- Data Technician - $50

OPA008259

## CONFIDENTIALITY AGREEMENT
## FOR EXPERT WITNESS

I.       I, Gordon C. Rausser, in my personal capacity and on behalf of OnPoint Analytics, Inc.,
         do solemnly swear (or affirm) that I understand the high standards of trustworthiness and
         integrity required of me with regard to materials and information which may come to my
         attention in connection with Department of Justice case/matter <u>Fidelity International
         Currency Advisor A Fund, L.L.C., v. United States</u>, Nos. 05-40151 and 06-40130 (D.
         Mass), while I am employed as a contractor with the Tax Division.

II.      Except as necessary to the performance of my duties under this contract I will not:

         A.      Reveal, divulge or publicize any matter dealt with under this contract, including
                 the identity of any taxpayer or any taxpayer return information.

         B.      Disseminate any oral or written information obtained as a result of the execution
                 of this contract, except those disclosures specifically authorized in writing by the
                 Department of Justice Trial Attorney.

         C.      Remove any document from the place of contract performance, except as
                 approved, in advance, by the Department of Justice Trial Attorney supervising the
                 performance of this contract.

III.     I understand that all materials provided by the Division, including any copies, notes, or
         working papers derived or produced therefrom, are the property of the United States
         Government. If required to do so by the Department of Justice Trial Attorney I will
         promptly surrender such materials and derived copies, notes and/or working papers which
         are in my custody or control. I understand that my failure to surrender such materials
         promptly, or my conversion of such materials to a use not called for by the contract (e.g.
         delivery of a document, a copy thereof, or notes containing information taken from the
         document to someone not working on this contract) may be a violation of 18 U.S.C. 641
         (theft of Government property) and may subject me to fines (up to $10,000) and
         imprisonment (up to 10 years).

IV.      I understand some materials provided to me by the Division may contain taxpayer return
         information as defined in 26 U.S.C. Sec. 6103. I understand that this information is
         disclosed to me pursuant to 26 U.S.C. Sec. 6103(n) and the regulations thereunder. I
         further understand that unauthorized disclosure of this information may be a violation of
         26 U.S.C. Sec. 7213 and may subject me to fines (up to $5,000) and imprisonment (up to
         5 years) and/or may subject me to liability for civil damages pursuant to 26 U.S.C.
         Sec. 7431.

1637769.1

OPA008260

V.   I understand that should I make any unauthorized disclosure(s) of confidential information, the terms of the Default Clause contained in PAR 52.249-8 (48 C.F.R.), incorporated herein by reference, may be invoked and that I will be considered to be in breach of this contract.

VI.   In accordance with contract provisions, this agreement may be formally modified or changed by the Division in those instances in which the courts (e.g., civil investigative demands) or specific circumstances dictate such a modification or change.

VII.   The above clauses are not meant to apply to materials which are matters of public record or available to interested parties upon request from the Division; but are intended to apply to privileged documents and internal memoranda and other work product of the Division.

VIII.   This agreement does not preclude me from quoting my research, work product or trial testimony occasioned by my status in Departmental litigation in subsequent academic research and teaching activities, as long as that research, etc. is not based on confidential information.

IX.   I further certify that, to the best of my knowledge, there is nothing derogatory in my background that could be used to impugn my testimony or work products.

9/19/06
Date

_Gordon C. Rausser_
Gordon C. Rausser

_____
Date

_____
Matthew C. Hicks, Trial Attorney

1637769.1

# Exhibit B

# THE STATE BAR OF CALIFORNIA

Sunday, November 25, 2007

State Bar Home

Home > Attorney Search > Attorney Profile

## ATTORNEY SEARCH

## Chandra Slack Wallace - #148502

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

| Bar Number | 148502 | | |
|---|---|---|---|
| Address | OnPoint Analytics<br>2000 Powell St Ste 860<br>Emeryville, CA 94608 | Phone Number | (510) 463-0130 |
| | | Fax Number | (510) 463-0131 |
| | | e-mail | Not Available |
| District | District 3 | Undergraduate School | Univ of California at Los Angeles; CA |
| County | Alameda | Law School | UC Hastings COL; San Francisco CA |
| Sections | Taxation | | |

## Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 12/4/1990 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

### Disciplinary and Related Actions
This member has no public record of discipline.

### Administrative Actions
This member has no public record of administrative actions.

Start New Search >

# Exhibit C



# THE STATE BAR OF CALIFORNIA

Monday, February 25, 2008

Home > Attorney Search > Attorney Profile

State Bar Home

## ATTORNEY SEARCH

# Chandra Slack Wallace - #148502

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

| | | | |
|---|---|---|---|
| **Bar Number** | 148502 | | |
| **Address** | OnPoint Analytics<br>2000 Powell St Ste 860<br>Emeryville, CA 94608 | **Phone Number** | (510) 463-0130 |
| | | **Fax Number** | (510) 463-0131 |
| | | **e-mail** | Not Available |
| **District** | District 3 | **Undergraduate School** | Univ of California at Los Angeles; CA |
| **County** | Alameda | **Law School** | UC Hastings COL; San Francisco CA |
| **Sections** | Business Law | | |

## Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 12/4/1990 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

### Disciplinary and Related Actions
This member has no public record of discipline.

### Administrative Actions
This member has no public record of administrative actions.

Start New Search >

**Contact Us**     **Site Map**     **Privacy Policy**     **Notices**     © 2008 The State Bar of California