UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 05-40151-FDS (D. Mass.) 06-40130-FDS (D. Mass.) |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S REPLY IN SUPPORT
OF ITS MOTION TO EXCLUDE THE EXPERT REPORTS AND
OPINIONS OF BOTH ETHAN YALE AND STUART SMITH**

No matter how many times plaintiff makes statements to the contrary, Yale and Smith offer nothing more than legal analysis and legal opinion. While plaintiff may ask Smith and Yale to join their legal team and help argue his case along with his present counsel, he is not free to have these lawyers take the witness stand and testify about the law in this case. The burden to show that Yale and Smith should not be excluded is on plaintiff[1] and plaintiff falls far short of meeting that burden.

**I.    Yale's Legal Opinions Are Improper.**

Yale's own summary of his opinion is that:

It is my opinion that under any reasonable construction of the phrase "substantially similar," the transactions undertaken by Egan and [Fidelity International] are not substantially similar to the transactions described in Notice 2000-44.[2]

Thus, Yale offers two legal opinions: one on the legal meaning of "substantially similar" and the

---

[1] *See e.g.*, *United States v. Vargas*, 471 F.3d 255, 265 (1st Cir. 2006).

[2] Yale Report, Gov. Ex. 1, p. 2.

3091137.11

other on the whether the transactions at issue are substantially similar to the transactions described in Notice 2000-44. With respect to Yale's opinion regarding the possible legal meanings of the phrase "substantially similar," plaintiff states that the "survey of possible constructions merely preceded his factual comparison of [the Fidelity International transactions] and Notice 2000-44–it does not convert his conclusion on a factual question into a legal opinion."[3] Not only is plaintiff's statement confusing, but there is no way it could be correct, as Yale himself recognizes. The assumption that the examination of the possible meanings of the term "substantially similar," is not an exercise in legal analysis, is the exact opposite of what Yale testified at his deposition. During his deposition, he admitted that in his report, he "tried to figure out the legal meaning of substantially similar."[4] Figuring out or determining the legal meaning of that phrase can be nothing other than legal analysis.

Yale further admitted that one meaning of the phrase "substantially similar" is the definition that is already a law, *i.e.*, the definition in section 6011 of the Internal Revenue Code.[5] And plaintiff's position that Yale's analysis of the possible meanings of the phrase "substantially similar" merely forms the predicate for his comparison of [the Fidelity International transactions] and Notice 2000-44 is misleading. In fact, his legal analysis of the possible meanings of the phrase "substantially similar" is the predicate for his legal analysis of a purely legal determination of whether the transaction at issue is substantially similar to the transaction in Notice 2000-44 and Yale's analysis of that question is based upon an application of the law to the

---

[3]Plaintiff's Opposition to Defendant's Motion to Exclude the Expert Reports and Opinions of Ethan Yale and Stuart Smith ("Plaintiff's Response"), p. 6.

[4]Yale Deposition, Govt. Ex. 2., p. 261, l.3-5.

[5]Yale Deposition, Govt. Ex. 2, p.119, l.15-p.121, l.22.

facts of Notice 2000-44 and the transaction at issue.

With respect to Yale's opinion regarding whether the transactions at issue are substantially similar to the transactions described in Notice 2000-44, plaintiff asserts that the inquiry is analogous to copyright and patent cases.[6]  Plaintiff claims that "[i]n copyright and patent cases, the fact finder must compare an original object to an alleged copy to determine whether the copy is so similar to the original that infringement has occurred."[7] But plaintiff's reliance on the copyright and patent cases is misplaced.  For example, "[t]o prevail on a claim of copyright infringement, the plaintiff must show both ownership of a valid copyright and illicit copying."[8]  The First Circuit uses a two-part test to determine whether there was illicit copying of a valid copyright.  That test looks first to direct or indirect evidence of actual copying and then to whether the copying "was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'"[9]  In other words, in copyright cases, the substantially similar analysis is

---

[6]Plaintiff's Response, p. 2-4.

[7]Plaintiff's Response, p. 2-3.

[8]*Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001)(citations omitted).

[9]*Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001)(citations omitted).  The First Circuit, in noting that there is confusion in the copyright case law relating to the substantially similar prong of the analysis, reinforces the notion that the "substantially similar" issues in this context are ones of fact:

> Much of the confusion in this area of the law may be traced to the dual use of the term 'substantially similar.'  First, if there is no evidence of actual copying, as is usually the case, a plaintiff may prove that copying occurred by showing access and substantial similarity.  We have described this aspect of substantial similarity as an 'evidentiary inference.'  Second, once copying has been proven, the plaintiff must show that the 'alleged infringing work is "substantially similar" to the protected expression in the copywritten work.'

purely a factual – not a legal – analysis. That is, an expert may testify in copyright cases as to the factual similarities of the two items at issue, but certainly may not testify as to whether one item infringes on a copyrighted item, which is a legal issue. By contrast, Yale is first defining the possible legal meanings of the term "substantially similar" and then opining on the application of these legal definitions to a set of facts. Unlike an expert opining on the factual similarities of a copyrighted work to an allegedly infringing work, both aspects of Yale's opinions are purely legal in nature.

Plaintiff states that "whether [the Fidelity International transaction] is substantially similar to Notice 2000-44 is a question of fact [10] for this Court to decide. *The Court* will have to compare the facts of [the Fidelity International transaction] to the facts of Notice 2000-44 to determine whether these transactions are 'substantially similar.'"[11] But the reality is that the substantially similar determination is plainly one of law which the Court, as the arbiter of law, must make. Yale's attempt to influence the Court with his legal opinion on that issue is the classic type of improper legal testimony that should not be permitted.

Plaintiff's conclusory assertion that "even if the Court were to conclude that Yale's opinion contained traces of legal opinions, his opinion would *fall squarely* within the category of cases in which the First Circuit and other courts have permitted experts to give their opinion"[12] is equally meritless. The First Circuit has permitted experts to give opinions on "fact" substantial-similarity issues, not "legal" substantial-similarity issues. The two types of issues are entirely

---

[10] Of course, the determination of whether these transactions are substantially similar is a question of law, not a question of fact.

[11] Plaintiff's Response, p. 4 (emphasis added).

[12] Plaintiff's Response, p. 9 (emphasis added).

3091137.11                                    4

different and fundamentally distinct.

Plaintiff's argument[13] that the government itself uses expert witnesses to opine on law is plainly wrong and itself relies on inapposite case law. In *United States v. Mikutowicz*,[14] a case cited by plaintiff, an IRS agent, a *non-attorney*, was allowed to give testimony on the IRS's audit process, conclusions, and computations.[15] However, the agent was "not qualified as an expert on tax law."[16] In fact, the court in *Mikutowicz* noted that the government "attempted to elicit from [the IRS agent] neither an opinion on the precise meaning of terms used in the Internal Revenue Code nor a discussion of legal sources that could bear on such an interpretation, as well it should not have."[17] That situation is quite different from the situation here where Yale, an attorney who claims to be an expert in tax shelters,[18] wishes to testify as to various legal issues.

Plaintiff also claims that "Yale refers to [statutory] provisions because they are relevant to his factual comparison of [the Fidelity International transactions] and Notice 2000-44."[19] Such a claim is not accurate. Testimony that consists of legal analysis– the application of law to facts – is inadmissible because it does not assist the trier of fact, but, instead, impermissibly invades the role of the court. *See, e.g., v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, (D.C. Cir. 1997)("Each courtroom comes equipped with a 'legal expert,' called a judge."); *Owen*

---

[13]Plaintiff's Response, p. 9.

[14]365 F.3d 65 (1st Cir. 2004).

[15]*Id*. at 73.

[16]*Id*.

[17]*Id*.

[18]See Yale Deposition, Govt. Ex. 2, p.11, l.5-10.

[19]Plaintiff's Response, p. 7.

*v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant"); *Marx & Co., Inc. v. Diners' Club*, 550 F.2d 505, 510 (2nd Cir. 1977)("[S]uch testimony 'amounts to no more than an expression of the [witness's] general belief as to how the case should be decided" (quoting *McCormick on Evidence*, § 12 at 26-27)); *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach.... A witness also may not testify to the legal implications of conduct").

Plaintiff's argument fails to comprehend the basic distinction between a fact and legal issue, and does nothing to weaken the United States' well-supported argument that Yale provides nothing more than legal analysis and legal opinion and that Yale's testimony should be excluded.

**III. Smith's Legal Opinions Are Improper.**

Smith's opinion – based on his research of the law he deems applicable – is also legal argument dressed up as an opinion of an expert witness. Smith intends to testify that plaintiff could reasonably rely upon the opinion letters he received from Sidley Austin and Proskauer Rose because those letters, according to his analysis, meet the requirements of Treasury Circular 230, a set of rules issued by the Secretary of Treasury, and set forth in the Code of Federal Regulations. Not only is this opinion a legal conclusion, it is a conclusion based on the wrong law. Smith also intends to testify as to the legal definition of "substantially similar," which can hardly be fairly characterized as anything other than a pure legal opinion.

The first issue Smith was asked to opine on was "whether the opinion letters of [Sidley Austin and Proskauer Rose] are of the quality and character upon which a taxpayer such as

[Richard] Egan could reasonably rely in preparing his tax return."[20]  On that issue, Smith's report summarizes his opinion as follows: "I am of the opinion that [the opinion letters] are of the character and quality upon which a taxpayer such as [Richard] Egan could reasonably rely in preparing his tax return on the basis of the conclusions reached by these law firms' written opinions."[21]  With respect to this opinion of Smith, one of the many misstatements that plaintiff makes in his response is that "[a]ny tax opinion that meets the higher standards of Circular 230 is certainly one upon which a taxpayer could reasonably rely."[22]  Since there is no symmetry between Circular 230 and the applicable regulations under Section 6664, such a statement is certainly wrong.  In fact, Treasury Circular 230 has no relevance to this case, as Smith himself should realize.[23]  The relevant law for an "advice of counsel" defense to penalties, the only

---

[20] Smith Report, Govt. Ex. 3, p. 1.

[21] Smith Report, Govt. Ex. 3, p. 2.  As one of the many bases for the United States's argument that this opinion is a legal opinion, the United States cited case law, which plaintiff seeks to dismiss outright, on the issue of reasonableness of conduct.  *See* United States' Opening Brief, p. 18-19.  Plaintiff states that "Smith does not opine on the ultimate question of whether Plaintiff acted reasonably or whether the reasonable cause defense applies." (Plaintiff's Response, p. 13.)  Plaintiff is splitting hairs.  While it is true that Smith stops just short of concluding that plaintiff acted reasonably, his conclusion that it *would have been* reasonable for plaintiff to rely on the legal opinions is tantamount to such an opinion, and thus usurps the role of the Court.  Plaintiff claims that Smith may provide testimony as to the predicate facts relating to the reasonable cause defense. (Plaintiff's Response, p. 13-14.)  However, Smith is not testifying as to predicate facts.  He is testifying on what law applies here (he says Circular 230), and that the application of that law to the facts (i.e., the two legal opinions) itself requires a separate legal analysis of the legal authorities cited in those opinions.  Pointedly, the Court, as the arbiter of law, will apply the correct law (i.e., Treas. Reg. Treas. Reg. § 1.6664-4 and not Circular 230), and then determine the application of the facts of the plaintiff's alleged reliance on professional advice to that law.

[22] Plaintiff's Response, p. 18.

[23] Treasury Circular 230 contains only "the rules governing the recognition of attorneys, certified public accountants, enrolled agents and other persons representing clients before the Internal Revenue Service." 31 C.F.R. § 10.0 (1994).  As Smith himself admits, there is no issue
(continued...)

available defense to accuracy-related penalties, including a determination of whether the advice is worthy of reliance, is provided by § 6664(c) of the Code, Treas. Reg. § 1.6664-4(c), and related case law.[24]

For instance, Treas. Reg. § 1.6664-4(c)(1) sets forth basic threshold requirements for the defense of reliance on the professional advice, including requirements that: (i) the advice must be based on all the pertinent facts and circumstances, and the law as it relates to those facts and circumstances;[25] (ii) the advice must take into account the taxpayer's purpose for entering into the transaction and for structuring it in a particular manner;[26] and (iii) the advice cannot be based on unreasonable factual or legal assumptions.[27] Smith makes no attempt to analyze this applicable regulation – nor could he, for the same reasons that apply to Yale's proposed testimony. And Smith cannot, as an "expert witness," testify as to what the relevant law is for a reasonable cause defense, or that it should include an application of Circular 230. The legal requirements or "elements" for a reasonable cause defense are questions of law solely for this Court to determine, and are not proper subjects of "expert" testimony. *See United States v.*

---

[23](...continued)
in this case involving a practitioner's right to practice before the IRS. Smith Deposition, Govt. Ex. 4, p. 117, l.5-14.

[24]*See, e.g. Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, 204-211 (D. Conn. 2004), *aff'd* (unpublished order) (2d. Cir. Sept. 27, 2005) (holding that two legal opinions allegedly relied upon by the taxpayer did not constitute a defense to penalties because they failed, *inter alia*, to address the applicable law).

[25]Treas. Reg. § 1.6664-4(c)(1)(i).

[26]*Id.*

[27]Treas. Reg. § 1.6664-4(c)(1)(ii). That regulation expressly provides that the advice must not be based on an "inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction."

*Boyle,* 469 U.S. 241, 249 n. 8 (1985).

Not only is Circular 230 irrelevant to the determination of a reasonable cause defense to penalties at the partnership level, Smith's application of the Circular clearly impinges on the role of this Court, just as his application of any legal rules to the facts of this case would. In his report, Smith sets forth the "five elements" he believes are required by § 10.33 of Circular 230 for a "tax shelter opinion."[28] He then proceeds to determine whether the opinion letters satisfy these requirements. First, as discussed above, the standard in the applicable Treasury Regulations are far different than the standards in Circular 230.[29] Second, Smith clearly plans to present his explicit legal analysis on the application of this incorrect law.

The legal malpractice cases that plaintiff cites are about as applicable to the instant case as Circular 230 and the copyright and patent cases that plaintiff cites; that is, they have no applicability. Plaintiff claims that "[i]n typical legal malpractice cases, the plaintiff must present expert testimony establishing the standard of care owed to the plaintiff by the defendant-attorney."[30] But a lawyer opining on what is an appropriate standard of care in the legal profession is nonetheless opining on a factual – not a legal – issue. Unlike Smith's proposed testimony, a lawyer-expert opining on standard of care is not opining what the applicable law is

---

[28]Smith Report, Govt. Ex 3, p. 5.

[29]For example, Smith assumes that the factual representations of the letter are reasonable because nothing about these factual representations appear unreasonable. He says that is all Circular 230 requires. *See* Smith Report, Gov. Ex. 1, p. 6-7. Whatever the merits of that legal conclusion, Treas. Reg. § 1.6664-4(c) requires that professional advice cannot be based on *unreasonable factual* or legal assumptions. That standard is altogether different and far more exacting than simply looking at whether a factual representation appears reasonable. Under the Regulation, the representation must not just appear reasonable; it must, in fact, be reasonable. And, as we will show at trial, many of these factual representations were not reasonable.

[30]Plaintiff's Response, p. 15.

or the application of facts to such law.

The second issue Smith was asked to opine on was whether what he refers to as the "settled" meaning of the term "substantially similar" under the Internal Revenue Code and Federal law reinforces the "reasonableness" of the Proskauer Rose opinion letter.[31] On that issue, Smith goes a step beyond Yale's survey of the potential legal meanings of substantially similar and opines that "I am of the view that the settled meaning of the term 'substantially similar' under the Internal Revenue Code and under federal law reinforces the reasonableness of the Proskauer Rose Opinion."[32] That opinion can only fairly be characterized as a pure legal opinion and in his response, plaintiff does not even dispute that.[33] Smith's testimony on this issue should also be excluded since "[e]xpert testimony proffered solely to establish the meaning of a law is presumptively improper." *United States v. Prigmore*, 243 F.3d 1, 18 n.3 (1st Cir. 2001).[34] *See also Nieves-Villanueva* at 99-101(finding that it was error to admit expert testimony explaining the holdings of various Puerto Rico Supreme Court opinions). The "axiomatic principle"[35] that

---

[31] Smith Report, Govt. Ex. 3, p. 24.

[32] Smith Report, Govt. Ex.3, p. 24.

[33] The only mention of "substantially similar" in plaintiff's argument regarding Smith is plaintiff's statement that: "'In addition, Smith examined the meaning of 'substantially similar' and is of the opinion that Proskauer Rose's conclusion that the [Fidelity International] transactions are not substantially similar to Notice 2000-44 was reasonable." Plaintiff's Response, p. 10.

[34] An exception to the general rule that experts may not opine on the law is that experts may be allowed to opine on foreign law. *See Nieves-Villanueva*, 133 F.3d at 99.

[35] *The Pinal Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1042 (D.Ariz. 2005)(internal quotation marks omitted)(holding that a law professor's attempt to offer expert testimony on law regarding piercing the corporate veil in Maine constituted inadmissible legal opinion and was excluded since testimony merely discussed and applied the law).

legal opinions are inadmissible, a principle that is followed by every Circuit,[36] should unquestionably be applied here to Smith's (and Yale's) opinions. Testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988).

Smith's repeated attempt to opine on the law by citing, analyzing and applying the Internal Revenue Code, Treasury Regulations under the Internal Revenue Code and case law must be rejected. Such legal testimony will not assist the trier of fact.[37] Perhaps Smith said it best himself when he stated at his deposition that:

> As I said earlier, the judge is going [sic], is the arbiter of the law in this case. **And he doesn't need my help to render a decision.** He is going to have the help of able counsel who are going to, going to help him come to a conclusion.[38]

Not only does the Court not need Smith (or Yale's) help in this case, the help they offer is in the form of impermissible legal testimony.

## CONCLUSION

Plaintiff has not carried his burden of showing that Yale and Smith should not be excluded from testifying in the instant case. Simply put, neither Yale nor Smith offer any "scientific, technical or other specialized knowledge" that will assist this Court determine a "*fact in issue*."[39] Yale and Smith offer nothing other than impermissible discussions of law, and applications of their view of the law to the alleged facts. Presentation of this legal argument – in

---

[36]Every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)(citing cases), *vacated and remanded on other grounds*.

[37]*See* Fed.R.Evid. 702.

[38]Smith Deposition, p. 203, l. 11-15.

[39]See Fed. R. Evid. 703.

the guise of purported "expert legal testimony" – will only waste time and unduly delay the trial in this case.  More importantly, by offering this so-called "evidence" plaintiff improperly attempts to usurp the role of this Court.  Plaintiff's desperate attempt to bolster his weak case through improper legal testimony must be rejected. Yale's and Smith's opinions are inadmissible as expert testimony, and the Court should exclude Yale and Smith from offering evidence at trial.

       Respectfully submitted,

       MICHAEL J. SULLIVAN
       United States Attorney

       /s/ Dennis M. Donohue
       DENNIS M. DONOHUE
       CHIEF SENIOR LITIGATION COUNSEL
       OFFICE OF CIVIL LITIGATION
       Trial Attorney, Tax Division
       U.S. Department of Justice
       P.O. Box 403, Ben Franklin Station
       Washington, D.C.  20044
       Telephone: (202) 307-6492
       Facsimile: (202) 307-2504
       E-mail: dennis.donohue@usdoj.gov

       JOHN A. LINDQUIST
       BARRY E. REIFERSON
       HEATHER L. VANN
       Trial Attorneys, Tax Division
       U.S. Department of Justice
       P.O. Box 55, Ben Franklin Station
       Washington, D.C.  20044-0055
       Telephone: (202) 307-6561
       Facsimile:  (202) 514-5238
       E-mail: john.a.lindquist@usdoj.gov
               barry.e.reiferson@usdoj.gov
               heather.vann@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and copies will be sent to those indicated as non registered participants on February 28, 2008.

/s/ Heather L. Vann
Trial Attorney, US Department of Justice, Tax Division

3091137.11                                           12