1                UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
2

3

   Fidelity International      )
4  Currency Advisor A Fund,    )
   L.L.C., by the Tax Matters  )
5  Partner,                    )
              Plaintiff,       )   Case No. 05cv40151-FDS
6                              )
                               )
7  vs.                         )
                               )
8  United States of America,   )
              Defendant.       )
9

10

   BEFORE:  The Honorable F. Dennis Saylor, IV
11

12

                     Status Conference
13

14

15

16                             United States District Court
                               Lobby behind Courtroom No. 2
17                             595 Main Street
                               Worcester, Massachusetts
18                             May 22, 2008

19

20

21

22
                     Marianne Kusa-Ryll, RDR, CRR
23                     Official Court Reporter
                     United States District Court
24                     595 Main Street, Room 514A
                     Worcester, MA 01608-2093
25                          508-929-3399
              Mechanical Steno - Transcript by Computer

1   APPEARANCES:

2   McKee Nelson, LLP
    David J. Curtin, Esquire
3   Ronald L. Buch, Jr., Esquire
    1919 M Street, NW
4   Suite 800
    Washington, DC 20036
5   for the Plaintiff

6   Mirick, O'Connell, DeMallie & Lougee, LLP
    John O. Mirick, Esquire
7   100 Front Street
    Worcester, MA 01608-1477
8   for the Plaintiff

9   (via telephone)
    United States Department of Justice
10  Tax Division
    Dennis M. Donohue, Chief Senior Litigation Counsel
11  P.O. Box 55
    Washington, DC 20044
12  For the Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1

2

3        THE CLERK:  All rise.

4        Court is now open.  You may be seated.

5        THE COURT:  All right.  This is a status conference in

6  the Fidelity case.  We recently had new telephones installed,

7  which naturally have made our telephone service worse, and I

8  understand we're going to have trouble hearing Mr. Donohue.

9  So, what I'm going to do is reconvene in the lobby.  It's not

10  going to be a closed proceeding.  If there's any spectators,

11  anyone who wishes to watch, you're welcome to.  I'm just going

12  to do this so that we can hear Mr. Donohue.  So, we'll recess

13  for a few minutes to allow the stenographer to set up out back,

14  and then we'll -- we'll --

15        MR. DONOHUE:  Your Honor, this is Dennis Donohue.  I

16  can barely hear you, but I assume what you want me to do is to

17  hang up and call back?

18        THE COURT:  Yes.

19        MR. DONOHUE:  Okay.

20        THE COURT:  Thank you.

21        MR. DONOHUE:  I will do that.

22        THE COURT:  All right.  We'll stand in brief recess.

23        (Recess from 3:54 p.m. until 3:57 p.m.)

24        (The conference moved into the lobby.)

25        THE CLERK:  Case No. 05-40151, Fidelity International

1    Currency Advisor A Fund versus the United States.

2              Counsel, please note your appearance for the record.

3              MR. CURTIN:  Your Honor, good afternoon.  This is

4    David Curtin, for the plaintiff.  With me is Mr. Ron Buch.

5              MR. BUCH:  Good afternoon, your Honor.

6              THE COURT:  Good afternoon.

7              MR. CURTIN:  And, of course, you know Mr. John Mirick.

8              MR. MIRICK:  Good afternoon, your Honor.

9              THE COURT:  Good afternoon.

10             Mr. Donohue, can you hear us?

11             MR. DONOHUE:  This is Dennis Donohue, appearing by

12   telephone, and I want to thank the court for so permitting

13   this, and I'm, of course, appearing on behalf of the United

14   States.

15             THE COURT:  All right.  Good afternoon.

16             Mr. Curtin, you sound a little under the weather.

17             MR. CURTIN:  I will admit that I am.

18             THE COURT:  All right.

19             MR. CURTIN:  So I will stay back a little bit.

20             THE COURT:  All right.

21             MR. CURTIN:  I don't want anybody else to join me

22   here.

23             THE COURT:  All right.

24             All right.  This is a status conference in this case.

25   I recognize that I -- the five or so expert motions are still

1    pending, for which I apologize, but they remain under

2    advisement.

3            Mr. Donohue, can you hear me all right?

4            MR. DONOHUE:  Yes, your Honor, I can hear you

5    perfectly.

6            THE COURT:  Okay.  I saw that the magistrate judge

7    issued his opinion with regard to the privilege issues on

8    Carruth.  I forgot to check the timing of it.

9            Is there going to be an objection, or has the time

10   passed?

11           MR. DONOHUE:  Your Honor, it's my understanding that

12   appeal time runs on Tuesday.  The United States will not be

13   filing an appeal.

14           THE COURT:  All right.  What about Fidelity or any

15   other interested party?  Any objection?

16           MR. CURTIN:  Your Honor, we -- we have talked about it

17   and have consulted the client.  Having heard what I've heard, I

18   think the position would be from us that we would not be

19   appealing.

20           THE COURT:  All right.  Obviously, you have the right

21   to change your mind by Tuesday.  I'm just inquiring as a

22   practical matter.

23           MR. CURTIN:  Yeah.  We -- to be quite honest with you,

24   we were not at all concerned or upset by the opinion.

25           THE COURT:  All right.  All right.  And, obviously, I

1   ruled on the Proskauer motion, and I don't think there's any

2   other motions pending, unless I've missed something.

3        Mr. Donohue, is that right?

4        MR. DONOHUE:  The other -- if you -- that's true if

5   you take into account the expert motions.  The plaintiff's

6   motion to compel, with respect to documents regarding OnPoint

7   and Doctor Rausser, that motion is still outstanding.

8        THE COURT:  I meant to include that among the five

9   expert motions.

10       Mr. Curtin, anything dangling that you think I have

11  to --

12       MR. CURTIN:  No, I -- I think that's it.  The Rausser

13  motion, which is a discovery motion, not really what I'll call

14  for sake of reference, a -- a Daubert motion.

15       I might make one comment on the pending motions,

16  Judge.  It -- it seems to me that it would be appropriate for

17  the court to look at the fact that you've got in the High Tech

18  case many of the same experts; and while I haven't talked to

19  Mr. Donohue about this, it just occurs to me that looking at

20  the list, Mr. Rausser and Mr. Kolbe, Mr. LaRue, of course, do

21  appear in these motions -- or in the second case, and we're

22  going through discovery now.  So, you may -- in thinking about

23  this, you may see Daubert-like motions coming from both sides

24  as you move through the High Tech case, and I guess it's a

25  question of whether you want to decide them first in FICA A and

1    then deal with whatever Daubert motions you get in High Tech,

2    or do them all at once, and I just -- I present that as

3    something for us to -- to at least ask you to think about.

4            THE COURT:  All right.

5            MR. CURTIN:  I don't know what the right answer is,

6    but I mention it; and, of course, the only motion then putting

7    aside Daubert is our motion seeking the materials from OnPoint

8    and Doctor Rausser.

9            THE COURT:  All right.  All right then.  Let me have a

10   general status report.

11           Mr. Donohue.

12           MR. DONOHUE:  Your Honor, let me start by discussing

13   the -- what we've been referring to as the foreign evidence

14   gathering, because there has been a tremendous amount of

15   movement in that area.

16           If the court recalls, at the last status, I mentioned

17   that on March 3rd, Mr. Justice Peart, of the Irish Supreme

18   Court, issued an ex parte order directing the Irish witnesses

19   to appear to testify during the week of May 12th; and on

20   April 28th, the Irish witnesses filed a motion to set aside

21   that order.  That motion was fully briefed in the Irish High

22   Court, and it was heard by a different judge, Mr. Justice

23   Hedigan; and as a result of that motion, essentially the Irish

24   witnesses agreed to table or withdraw the motion in return for

25   principally that the order of Mr. Justice Peart be modified to

1    permit them to testify in camera, or that is, in a courtroom

2    not open to the public.

3           Following that hearing, the Irish witnesses' testimony

4    was taken during the week of May 12th.  They appeared in an

5    Irish court.  The plaintiff counsel -- plaintiffs were

6    represented by Irish counsel.  The witnesses were represented

7    by Irish counsel, and the United States was represented by

8    Irish counsel, and there was an Irish District Court Judge,

9    Judge Dunne, who appeared at that proceeding and presided.

10          For two days, on March the 13th and 14th, the

11   witnesses' testimony of Mr. Martin Hawkes and Mr. Samuel, which

12   we understand his name is pronounced "Mahoney," rather than

13   "Mahoney," at least in Ireland, their testimony was taken.

14          On May 15th, there was a formal presentation before

15   Judge Dunne of the signing of the transcripts of their

16   testimony, which was done.  Errata and other errors in the

17   transcript were all corrected, and the next step will be for

18   the Irish Chief State Solicitors office to prepare a formal

19   forwarding of the transcript of the testimony, I'm sure,

20   through diplomatic channels to the court.  So, that all took

21   place this month.

22          As a result of the Irish witnesses voluntarily

23   agreeing to testify, we have agreed to withdraw our treaty

24   request.  Those were with respect to Ireland and the United

25   States [sic] and have begun the process of withdrawing those

1    requests.

2            THE COURT:  I'm sorry.

3            MR. DONOHUE:  We also agreed to withdraw our Isle of

4    Man letter rogatory as long as certain preconditions that we

5    discussed with them are taken into account.

6            And so, assuming that we can agree to those, we plan,

7    your Honor, very shortly to be filing a formal motion to

8    withdraw our Isle of Man letter rogatory.

9            THE COURT:  You said -- you said --

10           MR. DONOHUE:  Unless the Court has any questions, that

11   pretty much takes into account all the foreign discovery.

12           THE COURT:  Mr. Donohue.

13           MR. DONOHUE:  In terms of --

14           THE COURT:  He can't hear me.

15           Mr. Donohue.

16           MR. DONOHUE:  Yes.

17           THE COURT:  You said you've agreed to withdraw the

18   treaty request, and I think you said Ireland and the United

19   States.  Do you mean Ireland and the United Kingdom?

20           MR. DONOHUE:  Ireland and the United Kingdom.  I'm

21   sorry.

22           THE COURT:  All right.

23           MR. DONOHUE:  I did misspeak.  I'm sorry, your Honor.

24           THE COURT:  All right.  I'm sorry.  Go on.

25           MR. DONOHUE:  Then, your Honor, in sort -- and I'll

1    take both cases separately in terms of the status.  Fidelity

2    International with -- all document discovery is complete in

3    that case, and the only matters, as far as we're concerned,

4    that possibly could still be pending are:  Number one, a

5    potential motion against RSM and/or Ron Wainwright of RSM in

6    connection with their assertions of privilege as to documents

7    that we consider to be improperly invoked.

8         The -- there is fact depositions, which the parties

9    have agreed can be taken in the High Tech case, but pertain to

10   both Fidelity International and High Tech.  Those three

11   depositions are:  John Egan, Christopher Egan, and Maureen

12   Egan.  And the only other potential matter in Fidelity

13   International, from our perspective, would be that if our

14   review of materials that have been turned over to us as a

15   result of assertions of privilege, if it appears that there

16   would be documents that we review and feel that we were

17   prejudiced by the fact that we did not have these documents at

18   the time the Fidelity International depositions were taken, we

19   may, in that event, file an appropriate motion to reopen

20   depositions limited to those documents.

21        And, your Honor, you already discussed where we are in

22   Fidelity International in terms of experts.  The only matters

23   regarding experts are our pending Daubert motions and one

24   discovery motion.

25        In terms of Fidelity High Tech, your Honor, the

1   parties are in the midst of taking depositions in that case,

2   and have also on -- in terms of expert witnesses, the parties

3   have exchanged all expert witness reports and have also -- are

4   now in the process of trying to agree to a schedule for the

5   taking of the expert witness depositions.  And the parties have

6   indicated possibly with one exception that those depositions

7   will be completed by June 30th.

8          And the only other matter, your Honor, pending is to

9   set a date for the government's tutorial.  We're working

10  feverishly on completing that, and we anticipate that it will

11  be ready in the next -- at least by mid-June.  And so, it would

12  be up to the Court whether to schedule that between now and the

13  next status, or to wait and have a status and the presentation

14  of our tutorial at that time.

15          THE COURT:  All right.  Anything further?

16          MR. DONOHUE:  No, your Honor.

17          THE COURT:  All right.  Mr. Curtin or Mr. Buch.

18          MR. CURTIN:  Your Honor, if I may, I think we have, of

19  course, a trial date of September 22.  From -- from our

20  position, and I think from what you've just heard, there

21  appears to us to be nothing that is going to interfere with our

22  getting to trial on that day.  So, we are moving towards that,

23  and I think that is a -- a day that -- that is very achievable.

24  I see nothing that's going to interfere with it.

25          THE COURT:  And that includes High Tech as well as

1    Fidelity International?

2         MR. CURTIN:  It does.  It does, your Honor.

3         So, I think this 22nd is good.  And I'll come back to

4    that in a moment.

5         Just on the foreign evidence, I did attend in Dublin,

6    Courtroom 27, before Judge Dunne.  We had to deal through Irish

7    barristers, which to say the least was interesting.  I'm -- I'm

8    advised today that the order was slightly modified from

9    previously just to correct some errors, and that the package

10    will be shipped off to you -- as I understand it from our

11    solicitors over there, it will be shipped off in the next day

12    or so.  That -- that's the most recent information I have.

13         As Mr. Donohue says, a fellow that we have been

14    calling "Mahoney," Mr. Mahoney --

15         THE COURT:  It's going to be Mahoney, unless he

16    actually physically appears, okay, because we have enough --

17         MR. CURTIN:  Mr. Mahoney did appear and testified

18    under oath, and he -- you will see the testimony.  I will say

19    that at the outset, there was -- Mr. Donohue mentioned an

20    agreement that was struck as a result of motions being filed in

21    a dispute over there.  I think the court will find that the

22    witnesses testified basically off of a script of questions and

23    answers that were prepared by counsel for the negotiating

24    parties, that is, the government and the witnesses, and that

25    that is so reflected, I think, in the -- in the transcript, and

1    there is cross-examination of them.  And so, I think you'll

2    find that there are -- at the outset there is a statement on

3    the record that, of course, evidentiary issues are for you

4    here.  Judge Dunne is a very fine judge, but he was not calling

5    balls and strikes in terms of the Federal Rules of Evidence --

6              THE COURT:  All right.

7              MR. CURTIN:  -- so --

8              THE COURT:  At some point, therefore, I ought to set a

9    timetable for resolution of that as a pretrial matter.  Is

10   there going to be a global opposition by which I mean striking

11   all of the testimony for -- for any reason, as opposed to

12   particular questions and answers, that may or may not be

13   improper?

14             MR. CURTIN:  If I may, I'll respond to that by saying

15   I -- I'd like to read it and see, but my sense is there

16   are -- there are obviously significant portions of the

17   testimony that are -- from our point of view, we think the

18   court should read it.  It's favorable from our perspective.  I

19   think there are certain things in there that -- that the court

20   will be asked to review from an evidentiary point of view.

21             So, my -- my view at this point is that there won't be

22   a blanket objection to it, but more of the typical what you'd

23   find in a deposition, that there may be -- there may be issues

24   about various questions and answers.

25             THE COURT:  All right.

1    MR. CURTIN:  That's all.

2    THE COURT:  Okay.

3    MR. CURTIN:  Your Honor, I will say that I think

4 Mr. Donohue said March in one of his comments.

5    THE COURT:  I think he meant May.

6    MR. CURTIN:  He did, and -- and we were in Courtroom

7 27 in the Four Courts Building on May 13th.  Mr. Hawkes was the

8 first witness, who appeared before Judge Dunne.  These -- and

9 the -- and the second witness was the next day, and that was

10 Mr. Samuel Mahoney.

11    THE COURT:  All right.

12    MR. CURTIN:  Mr. Hussey, who you were asked to include

13 in your letter showed up in the courtroom but did not testify.

14 The government decided that they didn't want to put him on, and

15 he did not testify.

16    THE COURT:  All right.

17    MR. CURTIN:  I will say that I'm interested in what

18 the court has just been told about the Isle of Man.  The

19 government is going to file a motion concerning the Isle of

20 Man.  I do -- my question is is that motion going to be filed

21 with this court or with the court in the Isle of Man?

22    So, at some point here maybe we can get some

23 clarification on that.  Is that a -- is that an issue -- is

24 that a motion that's going to ask you to withdraw your letter

25 rogatory or modify it, or is that just going to notify the

1    deemster that -- the deemster in the Isle of Man that he should

2    not proceed or ask him not to?  I'm interested there.

3            I don't know what preconditions are being put on this.

4    That's apparently some discussion with -- between government

5    counsel and counsel for the witnesses that we are not a party

6    to.

7            I will say that the FICA A case is pretty much, as you

8    say, done.  We have a little bit going on particularly as it

9    relates to the certain family members, but generally, I think

10   now we -- we are well on the road to this September 22 trial

11   date.

12           One thing I want to mention, Judge, and you've asked

13   us about trial time how long it would take, and counsel have,

14   you know, tried to give you some insights.  Just quickly,

15   several cases have been tried recently that -- that may bare

16   some resemblance, and that is in terms of they may have

17   involved options.  We've looked back.  A recent case was tried

18   in Federal District Court in Colorado before Judge Babcock, who

19   is a -- you know, he's been around a while, and that case is

20   called Sala, S-A-L-A, versus the United States.  That

21   trial -- this is a foreign currency options case.  It involved

22   an RJ Ruble opinion.  You've heard that name in this case.  It

23   involved Refco.  If you read the opinion, which I think would

24   be something of in the category of a tutorial here.  You might

25   want to take a look at it.  I have a copy if you'd like.

```
1    Helmer is mentioned, retroactivity.  So, some of the issues

2    that you have heard about from counsel are mentioned there, and

3    I do have a copy of that opinion, if you want it.

4           THE COURT:  All right.  Why don't you give it to me.

5           Mr. Donohue, do you have a copy of this?

6           MR. DONOHUE:  Yes, your Honor.

7           THE COURT:  Okay.

8           MR. CURTIN:  And you'll see.  So, for information

9    purposes, I think it's -- it's somewhat helpful.  That case

10   took some eight days to try.  That judge has a different trial

11   time.  All judges have a different trial time.  So, assume

12   they're more or less a trial day that runs from 9:00 to 4:30 or

13   something along those lines.

14          The next case that I would mention to you is the

15   Klamath case, which was tried down in Marshall, Texas.  That

16   case took five days.  That case involved the -- the two

17   plaintiffs' lawyers, who -- who were trying -- this is another

18   TEFRA case.  That took five days; and then the last case is a

19   case that is not in a Federal District Court, but in a claims

20   court which was recently tried.  It's called Stobie Creek.  I

21   think the government may have mentioned this case in some

22   filing, but there my point is that one appears to have taken

23   11 days.  So, the range we're seeing here -- not that these

24   cases are identical, but they involve some of the same issues

25   that the Court has heard about.  We're --
```

1          THE COURT:  Okay.

2          MR. CURTIN:  -- we're looking at time periods that

3    have to be adjusted for what we're going to do here, but that

4    should give you a little more guidance than maybe we've been

5    able to give you to this point.

6          THE COURT:  All right.  It's warming my heart to hear

7    eight or five or eleven days, rather than 70 or 90 or 120.

8          MR. CURTIN:  Well, I -- and I'm -- but as a guide.

9          THE COURT:  Yes.  No, I appreciate it.

10          MR. CURTIN:  As a guide, I think that's -- that's

11    fair.

12          So, your Honor, those -- the -- I think

13    that's -- that's where we are.  We look at the September 22

14    trial date clearly as a -- as a date that is solid and

15    achievable from what we can see, and -- and so we're moving

16    along.

17          THE COURT:  Okay.  Any quick response, Mr. Donohue?

18          MR. DONOHUE:  Your Honor, I'll confine my response

19    just to the last comment regarding the length of the trial.  In

20    our view, you cannot compare what -- other trials to this case.

21    They involve different transactions.  They involve different

22    witnesses.  They involve different, in some cases, expert

23    witnesses; so, to make some comparison between other cases and

24    the length of trials in those cases and this case, to me, is

25    not -- is not that helpful.

1        What is more helpful is what are the expected

2   witnesses of each of the parties and the potential scope of

3   their examination in court as well as the expert witnesses, and

4   that's what we've been focusing on.

5        THE COURT:  All right.

6        MR. CURTIN:  I might note that some of the experts,

7   Mr. DeRosa, for example, did appear in the Sala case.  So,

8   there is -- there is some -- some identity in terms of expert

9   testimony; but I agree, as the Court well knows, every case has

10  its own time that it's going to take, but I'm giving this to

11  you as -- as some help for all of us in guiding us into what

12  it's going to realistically take.

13       THE COURT:  All right.  One stray issue.  I notice

14  that a letter had been filed basically where Proskauer was

15  seeking leave for additional time to respond.  Just so you all

16  know in -- in -- in the electronic filing system, everything

17  gets categorized, and anything requesting me to take action

18  should be called a motion, not a letter, because, otherwise, it

19  sits there in cyberspace, and it's not brought to my attention,

20  or I don't go looking for it.

21       That time appears to have passed.  Is there any issue

22  dangling there that I need to resolve?

23       Mr. Donohue, is there one as far as you --

24       MR. DONOHUE:  I don't believe so, your Honor.  I

25  believe, in fact, that they either have or are in the process

1   of producing the documents that have been withheld.

2           THE COURT:  Okay.  And, again, just check the box

3   "motion" if you're going to file something asking me to do it

4   or it -- it -- it may never appear on my list of things to do.

5           MR. CURTIN:  Judge, if I may ask.

6           THE COURT:  Yes.

7           MR. CURTIN:  Could we find out if the government is

8   going to file a motion with you concerning the Isle of Man, or

9   is that going to be lodged in the Isle of Man?

10          THE COURT:  Well, if you know, Mr. Donohue.

11          MR. DONOHUE:  Well, yes, your Honor, I do know.  We

12  cannot file a motion in the Isle of Man.  We must file, your

13  Honor, a motion with you, which would have the effect of in the

14  request withdrawing the Isle of Man letter rogatory, which

15  would then be issued to the Isle of Man court, but that is

16  proper procedure to take.

17          THE COURT:  All right.

18          All right.  Is there anything else that we ought to

19  talk about?  What I'm inclined to do is to suggest that our

20  next conference also ought to double as perhaps an initial

21  pretrial conference.  We ought to start focusing on those sorts

22  of issues, setting deadlines for designation of exhibits and

23  witnesses, focussing on the length of trial, how this is going

24  to play out as a practical matter.  Obviously, we have some

25  flexibility compared to a jury trial, but I think we need to

1    begin thinking about that.

2           And it may well be that there will be motions pending

3    at that point concerning this Irish testimony, but I'll wait

4    and see what happens in that regard.

5           I'm reluctant to set a deadline without knowing what's

6    going to happen when, but obviously, if it's a -- a motion to

7    exclude or limit something, it -- it will need to be filed

8    without undue delay, but, I think, perhaps we need to reconvene

9    say in -- at the end of June or early July and begin focusing

10   on pretrial matters.

11          Mr. Donohue, do you disagree?

12          MR. DONOHUE:  Your Honor, the only, I suppose,

13   add -- point to add to that is I mentioned the tutorial.

14          THE COURT:  Yes.  And --

15          MR. DONOHUE:  And --

16          THE COURT:  -- I'm going to leave that in your -- your

17   court.  You -- you -- you should suggest something when and if

18   you're ready to do it, and then we'll take it up at that time.

19   And, again, I can -- we can convene by telephone.  If that's

20   all we have to talk about, for example, and you want to

21   be -- for instance, if Mr. Curtin has some problem with it and

22   wants to be heard on short notice, we can arrange that by

23   tele -- I say that we can arrange it by telephone, not knowing

24   whether our phones actually will permit communication with the

25   outside world, but putting that aside, we can take that up.

1          And, of course, I'm cognizant that I need to get this

2     expert issue resolved.  My inclination at present is simply

3     to -- to deal with what's on my plate.  If it looks like that

4     doesn't make sense for some reason, because I'll have to

5     reinvent the wheel somehow in the High Tech case, or there's

6     some wrinkle on this that's not obvious, again, the parties

7     ought to focus on that and bring it to my attention quickly,

8     because I think I need to have that issue resolved before the

9     next time we meet, at least in broad strokes, if not down to

10    every detail.

11         MR. CURTIN:  I think that's fair.  From our

12    perspective, the pending motion for discovery of OnPoint

13    Analytics and Rausser, obviously, that has -- that is of

14    significance to us, and the Court can -- you know, we'd

15    certainly like to know what we have there, if anything.

16         THE COURT:  Well, for what it's worth, I had set an

17    internal deadline of having that resolved before Memorial Day

18    weekend, which gives me about 24 hours, and I think it may not

19    happen that quickly, so --

20         MR. CURTIN:  We've -- we've looked at your trial

21    schedule, Judge.  It looks like you are in trial for the

22    foreseeable future, and I understand you've got other things

23    going on.

24         THE COURT:  Well, maybe something will settle.  You

25    know, we'll see.

1              MR. CURTIN:  Maybe the flip flops.

2              THE COURT:  I don't think that one's going to settle.

3              All right.  Marty, let me look at the calendar.

4              All right.  I'm out the week of June 30th.  I have a

5     trial scheduled for June 23rd that is expected to settle, and I

6     don't know whether the judges' meeting in Boston at the

7     beginning of July will be moved or not, but what may make sense

8     is to -- I was going to suggest convening either the morning of

9     Friday, June 27th, or the morning of Tuesday, July 8th.

10             What's counsel's preference?

11             Mr. Donohue.

12             MR. DONOHUE:  Your Honor, July 8th would be our

13    preference.

14             THE COURT:  Mr. Curtin.

15             MR. CURTIN:  I always like earlier rather than later.

16    Either one, Judge.  It's your schedule.

17             THE COURT:  All right.  Let's -- let's make it

18    July 8th, which will at least leave the possibility that it

19    will happen in Boston, and we'll say at ten o'clock a.m.

20             I'm not going to direct the parties at this point to

21    file anything specific in terms of exhibit lists and witnesses

22    lists and so forth, but I do want this to be at least in part

23    an initial pretrial conference.  I want parties to be -- to

24    give me an order of magnitude estimate of the length of -- that

25    they expect their evidence to take, assuming a nine to one

1    trial, a bench trial.  We may have occasional time here and

2    there, but let's assume nine to one, which obviously involves a

3    rough cut at who the witnesses are likely to be, what the

4    exhibits are likely to be.  You'll have to make some

5    assumptions about experts, obviously, if I haven't ruled yet,

6    but I think some focus needs to be given in that -- to that

7    issue; what particular evidentiary issues might arise with

8    regard to foreign evidence, summary evidence, things of that

9    nature, a briefing schedule for pretrial briefs.  I assume

10   you're going to want to file them and things of that nature.

11   Again, sort of an impractical -- from a practical standpoint, I

12   want to start to get things lined up for our September 22nd

13   trial date, and I think as a practical matter, it's -- we'll

14   probably have two further conferences before the 22nd, but I

15   wouldn't count on a third.  So -- so we need to take that into

16   account.

17             MR. CURTIN:  I think, Judge, if I may, in this

18   case --

19             THE COURT:  Putting aside the tutorial if it happens.

20             MR. CURTIN:  Right.  Right.  And we have, as the Court

21   has indicated, a tutorial we could put on, if we so chose, and

22   I think what the Court described as a rebuttal in the FICA A

23   case, and so we will see when the government's going to do it

24   and what it's going to do.

25             I think you'll find that a lot of the evidence here

1    has been taken as the Irish evidence was taken.  I mean, those

2    are essentially depositions.  So, a lot of -- a lot of evidence

3    is transcript --

4            THE COURT:  Right.

5            MR. CURTIN:  -- reading, and -- and there are some

6    videos.  The Irish evidence was not videoed.  It's transcripts.

7    So, again, I know typically the Court is not interested in

8    spending its time listening to people read transcripts, and in

9    my experience, even watching a bunch of videos in the

10   courtroom.  There may be an isolated incident where you will,

11   but I think there is -- there is going to be a need to sort out

12   how to use these transcripts, and what to do about the videos.

13           THE COURT:  All right.  That -- that's a fair point.

14   I will keep an open mind about it.  I obviously would like to

15   be efficient; on the other hand, some degree of formality of

16   the trial process needs to be maintained, I think.

17           I don't have a problem in the abstract with watching

18   videos while counsel are present.  If I'm going to have to

19   watch them anyway, you know, we may as well do it in a formal

20   way.  I would expect that some editing would be done, so I

21   don't hear every last jot and tittle, but that's something we

22   can talk about at our next conference.

23           MR. CURTIN:  All right.

24           THE COURT:  In terms of reading the transcripts

25   themselves, it -- it does not excite me to have lawyers read

1    transcripts.  On the other hand, there may be a good reason to

2    do that, and so I'll -- I will -- I'll listen to whatever it is

3    you want to do.

4          I would like this to be presented in the way that best

5    educates me and that is reasonably efficient, and it may be

6    it's most efficient for me to, you know, to read these on the

7    living room couch, or it may be more efficient to have people

8    read them aloud.  I don't know.  I'll hear what you have to

9    say.

10          MR. CURTIN:  All right.

11          THE COURT:  Mr. Donohue, anything you want to add in

12    that regard?

13          MR. DONOHUE:  No, your Honor, except in past statuses,

14    I've pointed out that in many instances the video will allow

15    the court to not only hear the trans -- the testimony, but also

16    gauge the demeanor of the witness, which we think in some cases

17    is important.

18          THE COURT:  No, I understand, and I certainly have no

19    problem at all with people offering video evidence; and, again,

20    let's put it this way, I'm going to assume that I will watch

21    videos -- I will watch edited videos in open court, and that

22    will be the way that we proceed.  We don't have to proceed that

23    way, but that will be my starting point.

24          Okay.  And if people have a thick Irish brogue -- I

25    guess it's not videoed, is it, Mr. Mahoney, so I don't have to

1    worry about --

2            MR. CURTIN:  That's right, your Honor.  He was not,

3    but even though not videoed, there are certain portions of it

4    that I think you will find very helpful.

5            THE COURT:  Okay.

6            MR. DONOHUE:  Your Honor, on --

7            THE COURT:  Yes.

8            MR. DONOHUE:  -- on the video of the Irish witnesses

9    we, in fact, did move for a video of the Irish witnesses'

10   testimony; however, it was opposed not only by the witnesses

11   but also by the plaintiffs; so, the judge ultimately ruled

12   against videotaping their testimony.

13           THE COURT:  All right.

14           MR. CURTIN:  Let me add something, if I may there.

15   The -- the position we were in is that the -- the order

16   based -- the Irish order based on the letter rogatory did not

17   provide for videoing, and so the position we're in is we're

18   going to comply with the order, and the State Solicitor's

19   Office was of a view that the general rule is no videoing, and

20   so, that -- that -- that's the context, Judge.

21           THE COURT:  Well, in any event, we -- it is what it

22   is, so we have no video.

23           All right.  Anything else, Mr. Donohue?

24           MR. DONOHUE:  No, your Honor.

25           THE COURT:  Mr. Curtin, anything further?

1           MR. CURTIN:  No, your Honor.  Thank you.

2           THE COURT:  Okay.  I hope you feel better, and I will

3    see you all on July 8th, unless there's some reason to convene

4    between now and then.

5           MR. CURTIN:  Thank you.

6           MR. BUCH:  Thank you, your Honor.

7           MR. MIRICK:  Thank you.

8           MR. DONOHUE:  Thank you, your Honor.

9

10          (At 4:33 p.m., court was adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1                    C E R T I F I C A T E

2

3          I, Marianne Kusa-Ryll, RDR, CRR, Official Court

4   Reporter, do hereby certify that the foregoing transcript,

5   consisting of 27 pages inclusive, is a true and accurate

6   transcription of my stenographic notes in Case No.

7   05cv40151-FDS, Fidelity International Currency Advisor A Fund,

8   L.L.C., by the Tax Matters Partner, versus the United States of

9   America, before F. Dennis Saylor, IV, on May 22, 2008, to the

10  best of my skill, knowledge, and ability.

11

12

13                      /s/ Marianne Kusa-Ryll

14                      Marianne Kusa-Ryll, RDR, CRR

15                      Official Court Reporter

16

17

18

19

20

21

22

23

24

25