# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Case Nos.: 05-40151-FDS |
| v. | ) ) | 06-40130-FDS |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR WITHDRAWAL OF LETTERS ROGATORY REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE FROM THE ISLE OF MAN

Plaintiff does not oppose putting an end to the foreign discovery in this case, but rather the means by which Defendant seeks to accomplish it. Plaintiff, who was an observer in the Isle of Man proceedings, files this response to ensure that this Court has complete and accurate information concerning the current state of the proceedings in the Isle of Man, which largely render Defendant's request that the letters be withdrawn moot.

After multiple hearings and careful consideration of the issues and the applicable Manx law, Deemster Montgomerie of the Manx High Court has issued to the parties an order dismissing the letter rogatory that sought documents from Simcocks Trust Limited and the Companies.[1] In his 32-page judgment, Deemster Montgomerie concluded that the Manx High

---

[1] The "Companies" is the collective of Kilsture Ltd., Maddox Ltd., Trilogy Investments Ltd., and Cumberdale Holdings Ltd.

Court could not order the Companies or Simcocks Trust Limited to produce the broad categories of documents sought by the letter rogatory. Simply put, Deemster Montgomerie held that the letter rogatory was defective because it was too broad.[2]

Withdrawal of the letters of request at this juncture, after the Manx High Court has ruled, is unnecessary and is an affront to principles of comity, particularly given the significant efforts made by Deemster Montgomerie in reaching his already-issued decision. Moreover, even if withdrawal of one of the letters were appropriate, the "Notice of Withdrawal" proposed by Defendant is misleading with respect to the events that have taken place in the Isle of Man. As such, in the event this Court considers withdrawal of some sort to be necessary, Plaintiff offers a more accurate and appropriate "Notice of Withdrawal."

## I.     Background

A summary of the events that have transpired to date is necessary. In May 2007, this Court issued a letter rogatory to the Isle of Man seeking documents and testimony from Nigel Scott and Oliver Peck (the "First Letter Rogatory"). Three months later, Defendant's Manx counsel filed a petition with the Manx High Court seeking an order pursuant to the First Letter Rogatory, attached to which was the affidavit of John Lindquist advising that the United States was no longer seeking to examine Mr. Peck. Simcocks Advocates filed a motion on behalf of the Companies seeking to join the proceedings relating to the First Letter Rogatory because many of the documents sought related to the Companies.[3] At a September 2007 hearing, Deemster Montgomerie heard arguments from Defendant's Manx counsel and the Companies' counsel with respect to the Companies' application to join the proceedings. At an October 2007

---

[2] *See* Judgment, attached as Exhibit A.

[3] At about this time, the Companies also filed a petition seeking to enjoin Mr. Scott from giving testimony. This petition went before Deemster Kerruish and is the subject of parallel hearings.

hearing, Defendant's Manx counsel represented that Defendant would be seeking a second letter rogatory and suggested that the First Letter Rogatory and the Companies' joinder application be adjourned in anticipation of the second letter rogatory.  In November 2007, this Court issued a letter rogatory to the Isle of Man directed to Simcocks Trust Limited and the Companies, seeking the same documents that were sought in the First Letter Rogatory (the "Second Letter Rogatory").  At a November hearing, Deemster Montgomerie adjourned the hearing with respect to the First Letter Rogatory until after application had been made with respect to the Second Letter Rogatory.  In December 2007, Defendant's Manx counsel filed a petition with respect to the Second Letter Rogatory.  At a January 2008 hearing, Defendant's Manx counsel requested that the First Letter Rogatory be adjourned pending determination of the Second Letter Rogatory, which request Deemster Montgomerie granted.  The Second Letter Rogatory was then poised to proceed before Deemster Montgomerie.

The Companies and Simcocks Trust Limited raised several issues regarding the Second Letter Rogatory, including the appropriateness of the letter under Manx law.  At a February hearing, Deemster Montgomerie set two days of hearing for April to hear both jurisdictional and substantive issues.  After two days of argument and the submission of "skeleton" briefs, Deemster Montgomerie took the matter under advisement.  After six hearings (including two full days of oral argument) and ten weeks of deliberation, Deemster Montgomerie issued to the parties his 32-page judgment, of which Defendant was informed prior to filing its motion seeking to withdraw the Manx letters rogatory.  All that remains under Manx procedures is the formal pronouncement of judgment and a hearing concerning the awarding of costs.[4]

---

[4] Under Manx law, the prevailing party has the right to seek costs from the party bringing the action.  Thus, the Companies and Simcocks Trust Limited have a right to seek costs.

II.     **Deemster Montgomerie's Judgment**

On June 17, 2008, Deemster Montgomerie issued a 32-page judgment dismissing the Second Letter Rogatory on the grounds that the requests were impermissible under Manx law. Consistent with Manx procedures that judgment was not dated or signed, but it is in effect a final judgment. The Manx High Court's procedural directive provides that "copies of written judgments will generally be made available to the parties' advocates . . . on the working day before judgment is due to be pronounced."[5] The purpose of this procedure, as explained by the directive, is to "enable the advocates and the parties to consider the judgment and decide what consequential orders they should seek."[6] In addition, the early announcement of the judgment gives the parties the opportunity to "submit any suggestions to the Deemster about typing errors, wrong references and other minor correction of that kind."[7] In connection with this directive, Deemster Montgomerie's judgment was provided to the parties prior to being formally pronounced.[8] Defendant's apparent interest in seeking the withdrawal or "holding in abeyance" of this judgment does not alter the fact that the Manx High Court has decided to dismiss the Second Letter Rogatory. As a result, withdrawal of the letters rogatory at this point is a superfluous exercise and Defendant's attempts to enlist this Court's help in achieving its new goal in the Isle of Man is inappropriate.

The 32-page judgment reflects careful consideration by Deemster Montgomerie of the request for judicial assistance made by this Court. After outlining the facts of the case and the

---

[5] *See* Court Directive (June 1, 1998), attached as Exhibit B.

[6] *Id.*

[7] *Id.*

[8] A copy of Deemster Montgomerie's Judgment has been attached as Exhibit A. While the directive provides that "written judgments must be treated as confidential by advocates and the parties until judgment is pronounced in court" (Ex. B), Plaintiff's Manx counsel has obtained leave from Deemster Montgomerie to provide a copy of his judgment to this Court in order to assist this Court in making its decision with respect to Defendant's motion.

documents sought by the letter of request, the judgment sets forth the applicable Isle of Man law, which:

> shall not require a person …. to produce any documents other than particular documents specified in the order as being documents appearing to the court making the order to be, or to be likely to be, in his possession.[9]

It is this particular limitation that is the grounds for the Manx High Court's dismissal of the request.

Deemster Montgomerie's judgment also sets forth the principles that guide Manx courts when determining whether to grant letters of request. "The first principle is of course that we should afford foreign courts all the assistance we can . . . 'It is the duty and the pleasure of the English courts to do all it can to assist the foreign court, just as it would expect the foreign court to help it in like circumstances.'"[10] Moreover, "because of the approach of the English court to try and give effect to Letters of Request if they could . . . the court 'will take into account any limitations, corrections, or conditions which the party seeking the order is willing for the court to take into account. It will if appropriate, be prepared to give the request an amended effect.'"[11]

Notwithstanding the principles of comity described by the Manx High Court, Deemster Montgomerie concluded that the requests failed to identify "particular documents," both because the requests are not limited by time or subject matter and because the requests are so broad as to not be directed at actual documents "about which there is evidence which has satisfied the judge

---

[9] This is provided by The Evidence (Proceedings in Other Jurisdictions) (Isle of Man) Order 1979, which applies the Evidence (Proceedings in Other Jurisdictions) Act 1975. *See* Ex. A at 16.

[10] Ex. A at 24 (citations omitted).

[11] *Id.* at 25 (citations omitted).

that they exist . . . and that they are likely to be in the respondent's possession."[12]  As explained in the judgment,

> Even ignoring the absence of a time frame in relation to the period for which the documents are sought and that a number of the categories of documents sought are not restricted to the FDIS, I regret to say that in my view the documents requested in the Letter of Request cannot properly be described as 'particular documents.'  The most obvious example is category 18 which is a request for 'all communications concerning any contracts between . . .'  Consequently, I reject Mrs. Clough's submission that the Letter of Request compendiously describes actual documents.[13]

The judgment also addresses many of the other issues raised by both parties, most of which are rendered moot by the dismissal of the Second Letter Rogatory.

Deemster Montgomerie's judgment brings to a close the Second Letter Rogatory. Because the documents sought in that letter are nearly identical to the documents sought in the First Letter Rogatory,[14] and because Defendant has stated that it no longer seeks the testimony of Mr. Peck or Mr. Scott, the First Letter Rogatory has also effectively been resolved by the Manx High Court's judgment.  Accordingly, the letter rogatory process on the Isle of Man is complete, without requiring further action by this Court.  Any act to withdraw the letters rogatory after a decision relating to them has been made by the Manx High Court is both unnecessary and inconsistent with the principles of comity.

---

[12] *Id.* at 30 (citations omitted).

[13] *Id.* at 31.

[14] The only difference between the document requests in the two letters can be found in document requests 7-12.  In the First Letter Rogatory, requests 7-9 seek communications between Nigel Scott/Oliver Peck and various entities, while requests 10-12 seek payments received by Nigel Scott/Oliver Peck from various entities.  In the Second Letter Rogatory, requests 7-9 seek the same communications generally, and requests 10-12 substitute Simcocks Trust Limited and the Companies for Nigel Scott/Oliver Peck.  Request 18, which is cited in the Deemster's decision, is exactly the same in both letters.  Accordingly, these minor differences do not alter the applicability of the Deemster's decision to the document requests in the First Letter Rogatory.

### III.     Defendant Is Asking the Court To Do an Unnecessary Act

Formal withdrawal of either or both of the letters rogatory is an unnecessary act that burdens both this Court and the Manx High Court.  Defendant can discontinue its discovery efforts in the Isle of Man without further burdening either court.  Defendant has already demonstrated its ability to discontinue the letter rogatory process at its whim by excusing John Hussey and Oliver Peck from testifying and by altering the list of questions asked of the Irish witnesses, all without seeking action by this Court.

In its motion, Defendant acknowledges that it is no longer seeking testimony from Oliver Peck.  After Defendant interviewed Mr. Peck, Defendant represented to the Manx High Court and this Court that it would no longer seek testimony from Mr. Peck.[15]  At that time, Plaintiff suggested that the Court's letter may need to be amended to reflect that Defendant no longer sought testimony from Mr. Peck.  Defendant responded that such a modification was unnecessary:

> Citing no authority, plaintiff nonetheless suggests that our failure to seek to compel the testimony of Mr. Peck (along with Mr. Scott's) may be improperly modifying the Court's original Isle of Man order.  However, Mr. Peck's cooperation has mooted the need for his compelled testimony.  This can hardly be viewed as an improper modification of the Court's order.[16]

The testimony of Mr. Scott has similarly been "mooted."  Defendant may similarly inform the Manx High Court of its decision not to proceed to seek testimony from Nigel Scott, without needing this Court to formally withdraw its request.

Defendant incorrectly suggests that "[i]f the withdrawal motion is granted, the United States and the witnesses would ask the Isle of Man court to withdraw as moot, or not enter a

---

[15] Affidavit of John A Lindquist in Support of the Humble Petition of the United States of America dated 29 August 2007 (High Court of Justice of the Isle of Man) ¶ 36.

[16] Def.'s Reply Mem. in Supp. of Mot. for Issuance of Letters Rogatory Requesting Int'l Judicial Assistance 4 n.8, Oct. 22, 2007.

judgment on, its ruling on the second Isle of Man letter rogatory."[17]  Deemster Montgomerie's ruling will not be "mooted" by withdrawal; rather, it will simply not be finalized.  Going through this additional exercise, therefore, serves no function.  Moreover, Defendant's suggestion that if its motion is granted, "the United States would not appeal that ruling,"[18] is similarly misleading.  There is no requirement for Defendant to appeal the Manx High Court's ruling, and Defendant could discontinue the Manx proceedings simply by ***not*** appealing, which would be consistent with Defendant's position that "the United States [has] obtained the basic information sought by the Isle of Man letters rogatory through the Ireland letter-rogatory process."[19]  In light of the Manx High Court's ruling, Defendant also could request that the Manx High Court also dismiss the First Letter Rogatory, without necessitating the involvement of this Court.

In sum, Defendant could accomplish its goal of concluding the letter rogatory process in the Isle of Man without the assistance of this Court.  The Manx High Court will shortly dismiss the Second Letter Rogatory, which will conclude that process.[20]  Defendant can withdraw its petition with respect to the First Letter Rogatory on the same grounds, or on the grounds that the need for Mr. Scott's testimony has been rendered moot.  Defendant has previously altered the letters rogatory issued by this Court without seeking any action on the part of this Court, and there is no reason why action of this Court should be required now.  Accordingly, the Court should not take the unnecessary step of withdrawing its letters rogatory.

---

[17] Def.'s Mem. of Law in Supp. of Mot. for Withdrawal of Letters Rogatory Requesting Int'l Judicial Assistance for the Isle of Man 3 n.5, June 17, 2008.

[18] *Id.*

[19] *Id.* at 4.

[20] The Manx High Court's judgment currently is scheduled to be entered on June 30, 2007, pursuant to a request by Defendant's Manx counsel for a one-week adjournment.

**IV.     Comity Requires That This Court Give Deference to the Judgment of the Isle of Man High Court**

Withdrawal of Defendant's letters now, following an adverse ruling from Deemster Montgomerie, is inconsistent with the principles of comity and could be viewed as an affront to the Manx High Court.  Defendant came to this Court and asked that it invoke the principles of comity in seeking assistance from the Manx High Court.  Now that the Manx High Court has ruled in a manner unfavorable to Defendant, this Court is essentially being asked to tell the Manx High Court:  "Never mind."

"Comity" is defined as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws."[21]  This principle reflects the notion that courts of the United States should recognize and respect the orders and judgments handed down by foreign tribunals.  "This respect for a foreign forum's acts is not mandated by law but is born of practice, convenience, and expediency."[22]  Similarly, the doctrine of "comity of the courts," provides for "the recognition of a pending foreign proceeding that has yet to reach final judgment, and that proper deference to that proceeding requires abstention in domestic courts."[23]

Defendant is asking this Court to disregard the judgment of the Manx High Court and to withdraw the letter rogatory ***after*** that court made a judgment regarding that letter rogatory.  Comity requires that the decision of the Manx High Court be respected.  Only upon receiving an adverse decision from the Manx High Court has Defendant moved for withdrawal of that letter

---

[21] *Black's Law Dictionary* 284 (8th ed. 2004) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).

[22] *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co. Rep. Est.*, 374 F. Supp. 2d 465, 473 (D. Md. 2005).

[23] *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006).

rogatory.  Defendant's proposed withdrawal of the letters rogatory is contrary to the principles of comity and demonstrates a lack of respect to the foreign court that has expended considerable time and effort to consider the letter rogatory.

## V.    The Notice of Withdrawal

If this Court finds that withdrawal of the letters rogatory is appropriate, the means of withdrawal should accurately reflect the events that have taken place in the Isle of Man.  No precedent has been cited to support the form of the proposed "Notice of Withdrawal" and Plaintiff has not found any precedent outlining what a Court should include in a "Notice of Withdrawal."  Regardless, the current form of the "Notice of Withdrawal" is factually inaccurate and should be corrected prior to transmission to a foreign court.  The letter rogatory process has not yielded the voluntary production of *any* evidence from the Isle of Man.[24]  Accordingly, a statement to the Manx High Court that "[t]he assistance provided thus far has resulted in the voluntary production of valuable evidence"[25] is factually inaccurate.  Moreover, such a statement would be contrary to representations made to Deemster Montgomerie, who has heard arguments concerning Defendant's need for documents in response to the letters rogatory.  Accordingly, if a Notice of Withdrawal is entered, it should not be entered in the form suggested by Defendant.

If this Court decides that withdrawing the letters of request is appropriate, this Court should seek to withdraw the letters consistent with Deemster Montgomerie's order.  For the

---

[24] In Ireland, the process has yielded three documents, two of which could not be identified by the witnesses.  The Ireland process also yielded testimony from two of the three witnesses who were subject to the letter rogatory.  None of this "evidence" is of the type that was sought in the Isle of Man letter rogatory.  Therefore, it would be improper to suggest that the evidence obtained from Ireland is the "valuable evidence" that was being sought from the Isle of Man, which is implied in the Notice of Withdrawal.  Moreover, the testimony and documents were obtained only after the Irish High Court had made an order, so describing the discovery obtained in Ireland as "voluntary" is also not correct.

[25] Def.'s Proposed Withdrawal of Requests for Int'l Judicial Assistances (Letters Rogatory), June 17, 2008.

Court's consideration, Plaintiff attaches as Exhibit C a proposed Notice of Withdrawal that is both factually accurate and more in the spirit of comity because it recognizes the efforts of the foreign court from whom this Court sought assistance.

Respectfully submitted this 24th day of June 2008.

PLAINTIFF
FIDELITY INTERNATIONAL CURRENCY ADVISOR
A FUND, L.L.C., by the Tax Matters Partner


/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: dcurtin@mckeenelson.com
        rbuch@mckeenelson.com
        lamanti@mckeenelson.com


John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone:  (508) 791-8500
Facsimile:  (508) 791-8502
Email:  jomirick@mirickoconnell.com

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 24, 2008.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586
Email: lamanti@mckeenelson.com

# Exhibit A

CLA 2007/108

## IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

## COMMON LAW DIVISION

## SUPERIOR BUSINESS

***

**IN THE MATTER** of the Evidence (Proceedings in Other Jurisdictions) Act 1975 (an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in Other Jurisdictions)(Isle of Man) Order 1979)

and

**IN THE MATTER** of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund LLC by the Tax Matters Partner, Plaintiff, and the United States of America, Defendant, Civil No. 05-40151-FDS and 06-40130-FDS

and

**IN THE MATTER** of the Petition of the United States of America dated 26th November 2007

***

**Judgment delivered by**

**His Honour the Acting Deemster Montgomerie**

**at Douglas the    June 2008**

***

## BACKGROUND

1.  Two Petitions have been presented to the Isle of Man in respect of the proceedings before the United States District Court, District of Massachusetts between Fidelity International Currency Advisor A Fund LLC by the Tax Matters Partner ("Fidelity"), Plaintiff, and the United States of America ("the Petitioner"), Defendant, Civil No. 05-40151-FDS and 06-40130-FDS ("the Massachusetts proceedings").

1

2.    By way of Petition dated 29th August 2007 ("the First Petition") the Petitioner seeks assistance pursuant to the Evidence (Proceedings in Other Jurisdictions) Act 1975 ("the 1975 Act"), an Act of Parliament as extended to the Isle of Man by the Evidence (Proceedings in Other Jurisdictions) (Isle of Man) Order 1979 ("the 1979 Order"), in respect of a Letter of Request dated 22nd May 2007 issued by Judge Saylor in the Massachusetts proceedings. On 8th January 2008, at the request of the Petitioner, the First Petition was adjourned pending determination of the Petition dated 26th November 2007 ("the Second Petition").

3.    By the Second Petition the Petitioner also seeks assistance pursuant to the 1975 Act and the 1979 Order in respect of a further Letter of Request, dated 8th November 2007, issued by Judge Saylor in the Massachusetts proceedings.  It is requested that documents be produced by Kilsture Limited, Maddox Limited, Cumberdale Holdings Limited and Trilogy Investments Limited ("the Companies"), and by Simcocks Trust Limited ("S.T.L.").  Certification of such documents is also requested.

4.    The Companies and S.T.L. contend that the Second Petition should be dismissed on jurisdictional and/or other grounds.  On 12th February 2008, following submissions as to whether or not there should be a preliminary hearing to consider only the jurisdictional objections, I determined that there should be one hearing to consider all objections.

**SECOND PETITION**

5.    It is stated in the Second Petition that ... "Your Petitioner seeks further assistance of this Honourable Court pursuant to a second Letter of Request, dated 8 November 2007, issued by the Honourable Judge Saylor in the Massachusetts Proceedings, requesting the production of documents by the proper officer(s) of Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd. and Trilogy Investments Ltd. ... Full particulars of the relevant claims and issues in the Massachusetts Proceedings to which the Letters of Request to this Honourable Court relate are contained in the

2

affidavit of John A. Lindquist, Trial Attorney, U.S. Department of Justice, Tax Division, filed in support of this Petition and the exhibits thereto. WHEREFORE Your Petitioner prays a hearing hereof and that this Honourable Court do make an Order for the production of the documents sought by the proper officer(s) of Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd. and Trilogy Investments Ltd." ...

6. In Mr. Lindquist's affidavit, sworn on 16th November 2007, he exhibits the First Petition together with accompanying affidavit and Letter of Request. The further Letter of Request is also exhibited. He states ... "By his second Letter of Request dated 8 November 2007, Judge Saylor requests the assistance of this Honourable Court in requiring production of documents by the proper officer(s) of Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd. and Trilogy Investments Ltd. I do not propose to repeat the content of my first affidavit of 30 August. I do however respectfully refer this Honourable Court to paragraphs 6-21 of my first affidavit for a summary of the issues in the Massachusetts proceedings and paragraphs 22-29 for the background to the first Letter of Request ... I believe that the documents required under the Letter of Request to this Honourable Court to be necessary and relevant for the purpose of the Massachusetts proceedings" ...

7. The further Letter of Request is in the following form:-

"The United States District Court for the District of Massachusetts presents its compliments to the appropriate judicial authority of the Isle of Man, and requests international judicial assistance to obtain evidence to be used in a civil proceeding before this court in the above-captioned matter. This court requests the assistance described herein as necessary in the interests of justice. This court requests that the appropriate judicial authority of Isle of Man compel the production of documents by Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and Trilogy Investments Ltd.

3

Witnesses to be Served:

1.  Simcocks Trust Ltd.
    Top Floor
    14 Athol Street
    Douglas
    Isle of Man
    IM1 1JA

2.  Kilsture Ltd.
    c/o Simcocks Advocates
    Ridgeway House
    Ridgeway Street
    Douglas
    Isle of Man
    IM99 1PY

3.  Maddox Ltd.
    c/o Simcocks Advocates
    Ridgeway House
    Ridgeway Street
    Douglas
    Isle of Man
    IM99 1PY

4.  Cumberdale Holdings Ltd.
    c/o Simcocks Advocates
    Ridgeway House
    Ridgeway Street
    Douglas
    Isle of Man
    IM99 1PY

5.  Trilogy Investments Ltd.
    c/o Simcocks Advocates
    Ridgeway House
    Ridgeway Street
    Douglas
    Isle of Man
    IM99 1PY

Facts:

This case involves a set of transactions occurring in 2001 and engaged in by
a U.S. taxpayer in a purported partnership with, among others, an Irish
citizen named Samuel Mahoney. (As discussed later, the United States
alleges that identical sets of these marketed transactions were engaged in by
57 other U.S. taxpayers.) That purported partnership is called Fidelity
International Currency Advisor A Fund ('Fidelity International'). Mr. Mahoney
is alleged to have contributed $651,000 for a 93% share of the common
interests in the 'partnership'. Shortly after making his alleged contribution,
Mr. Mahoney sold 88% of his common interests in the 'partnership' to the
U.S. taxpayer for approximately half of what he had 'contributed'. Samuel
Mahoney claims that his $651,000 contribution to Fidelity International was
made on his behalf by Kilsture Ltd., an Isle of Man entity, of which he claims
to be an employee.

On its U.S. partnership tax return for 2001, Fidelity International allocated
the purported gains on this set of transactions to Mr. Mahoney as the foreign
'partner', and the purported losses to the U.S. taxpayer. Based on the
partnership tax return, Samuel Mahoney made an alleged profit of
approximately $163.8 million on the transactions. Because Mr. Mahoney was
not a U.S. citizen or resident, he was not required to pay U.S. taxes on that
alleged profit. From the same set of transactions, the U.S. taxpayer allegedly
lost more than $158 million. The United States's taxing authority disallowed
the claimed losses, adjusting the partnership items for U.S. tax purposes.
The plaintiff seeks readjustment of the partnership items for tax purposes,
pursuant to Title 26 of the United States Code, Section 6226.

One of the primary legal issues in this case is whether Samuel Mahoney is a
real partner in Fidelity International. On this issue, the United States
contends that Mr. Mahoney was not a real partner in Fidelity International
because he did not fund his own investment in this company. The United
States alleges that the U.S. promoters of this transaction, in addition to
funding Mr. Mahoney's investment, also paid him a fee to allow his name and

foreign residency to be misused on these transactions. The United States further alleges that the U.S. promoters paid these amounts to Mr. Mahoney by way of various joint-venture accounts which were in the name of Mahoney and his business partner, Martin Hawkes, also an Irish Citizen. The United States alleges that these accounts were held at the Singer & Friedlander merchant bank (n/k/a Kaupthing Singer & Friedlander) on the Isle of Man. According to the United States, the account holder of these joint-venture accounts was an Irish company by the name of Biosphere Finance Ltd., of which Mahoney, Hawkes, and John Hussey, another Irish citizen, were directors.

Another primary legal issue in this case is whether Fidelity International, in which Samuel Mahoney was purportedly a partner, should be recognized as a partnership for U.S. tax purposes. A partnership will be respected for U.S. tax purposes only if the partners in good faith and acting with a business purpose intend to join together in the conduct of the enterprise. *Commissioner v. Culbertson,* 337 U.S. 733, 742 (1949). The United States alleges that Mr. Mahoney had no intent to join together in the conduct of Fidelity International, and further that Fidelity International had no non-tax business purpose. The determination of intent of the partners requires testimonial and documentary evidence from the purported partners and others. The testimony of Mr. Mahoney's alleged business associates, Messrs. Hawkes and Hussey, may also be relevant to the determination as to why Mr. Mahoney became a partner in Fidelity International.

Another of the primary issues in this litigation is whether the transactions employed here had economic substance. Under the economic substance doctrine, transactions that are invented solely to create tax deductions and otherwise have no economic substance, even though formally complying with the letter of the U.S. Internal Revenue Code, will not be recognized. *Knetsch v. United States,* 364 U.S. 361 (1960); *Dewees v. Commissioner,* 870 F2d 21, 32, 35 (1st Cir. 1989). There is a two-prong test for determining economic substance. The first prong examines whether the transaction has a reasonable possibility of a profit (an objective inquiry). *Compaq Computer*

6

*Corp. v. Commissioner,* 277 F.3d 778, 781-82 (5th Cir. 2001)(internal citation omitted; emphasis added). The second prong looks to whether there existed a tax-independent business purpose for the transaction (a subjective inquiry). *Id.*

On this issue, the determination of whether Fidelity International had a reasonable possibility of profit and a tax-independent business purpose may focus on how the set of transactions at issue was designed, marketed, and implemented, and the purpose behind the formation of Fidelity International. The resolution of these issues will require testimonial and documentary evidence from the purported partners, including Mr. Mahoney, as the alleged foreign partner of Fidelity International.

When it is determined that taxpayers have engaged in a generic tax-shelter, evidence regarding similar or identical transactions may be relevant to the determination of the deductibility of the U.S. taxpayer's losses. *Douglas v. United States,* 410 F. Supp. 2d 292, 297-98 (S.D.N.Y. 2006), appeal dismissed, 448 F.3d 507 (2d. Cir. 2006). The United States alleges that Samuel Mahoney engaged in 32 similar or identical transactions through various entities, and that Martin Hawkes engaged in 24 such transactions. The United States alleges that Messrs. Mahoney and Hawkes were paid for their participation in each of these deals by the U.S. promoters. According to the United States, the U.S. promoters paid these fees to Mahoney and Hawkes through their joint-venture accounts at Singer & Friedlander on the Isle of Man, which accounts the United States alleges were held by their Irish company, Biosphere Finance Ltd.

The United States also alleges the Messrs. Mahoney and Hawkes were employees of two Isle of Man entities, Kilsture Ltd (which, as stated above, purportedly made a $651,000 contribution to Fidelity International on Mahoney's behalf) and Maddox Ltd., which allegedly also received substantial payments from the U.S. promoters. The Untied States further alleges that the purported payments made directly and indirectly to Mahoney and Hawkes were for their respective participation in an abusive tax shelter. Kilsture and

7

Maddox were shareholders of Cumberdale Holdings, also an Isle of Man entity. Nigel Scott, an Isle of Man resident, was according to the United States, a principal of Cumberdale Holdings, Kilsture, and Maddox, and was purportedly an employee of Singer & Friedlander where the Mahoney and Hawkes joint-venture accounts were allegedly held. The United States also alleges that at least one of those joint-venture accounts referenced an account held by Trilogy Investments Ltd. Oliver Peck, also an Isle of Man resident, was purportedly the Managing Director of Singer & Friedlander at that time, and allegedly corresponded with the U.S. promoters of this transaction. As such, each has evidence that may be used to support the United States' contentions at trial.

Document to be Produced by Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and Trilogy Investments Ltd.:

1.  Minutes of each meeting of the directors of Biosphere Finance Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Investments Ltd. (including all subsidiaries), Cumberdale Holdings Ltd., Trilogy Financial Products Ltd., Trilogy Financial Investments Ltd. and/or Trilogy Investments Ltd., referencing Fidelity International or its transactions, or any other FDIS 'partnership' or any of their respective transactions. (The other 57 FDIS 'partnerships' are as follows: Gupta Investments LLC, Kealakekua [a/k/a Kutler or JPK] Investments LLC, Cowan Investments LLC, Acajoux Trading LLC, Acajoux Investments LLC, Acajoux Equities LLC, AHG Investments LLC, Cliffside Investments LLC, GT Investments 2001 LLC, Geewax Terker & Company (721 Exchange), Anbar Investments LLC, WFT Investments LLC, RAS Investments 2001 LLC, JRF Investments LLC, JHT Investments LLC, JLS Investments LLC, RJP Investments LLC, TFT Investments 2001 LLC, AN Investments LLC, GN Investments LLC, RN Investments LLC, SN Investments LLC, FX Investments LLC, SJD Investments LLC, RJS Investments LLC, RT Investments LLC, NDC Investments LLC, TAB Investments 2001 LLC, AFFCO Investments 2001 LLC, DJR Investments LLC, CFPT Investments LLC, RC Investments LLC, RWC Investments LLC, DWT Investments LLC, RAG Investments LLC,

RM Investments 2001 LLC, SM Investments LLC, CSH Investments LLC, Theis Investments LLC, RGC Investments LLC, EGC Trading LLC, RGW Investments LLC, Europa Investments LLC, Europa International Inc. (351 Contribution), Sheridan Investments LLC, Corporex Investments LLC, SEBFS Investments LLC, DWT Investments 2002 LLC, Provident Capital Partners LLC, E P Investments LLC, CMC Investments LLC, Fund Investments LLC, Pettus Investments LLC, GAMA Investments LLC, LF Investments 2002 LLC, WFTSR Investments 2002 LLC, JBEJW Investments LLC, Whiteside Investments LLC, and Whiteside Investments 2002 LLC.)

2.   Company resolutions for Singer & Friedlander (Isle of Man), Biosphere Finance Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Investments Ltd. (including all subsidiaries), Cumberdale Holdings Ltd., Trilogy Financial Products Ltd., Trilogy Financial Investments Ltd. and/or Trilogy Investments ltd., referencing Fidelity International or its transactions, or any other FDIS 'partnership' or any of their respective transactions.

3.   Financial statements for Kilsture Ltd., Maddox Ltd., Cumberdale Investments Ltd. (including all subsidiaries), Cumberdale Holdings Ltd., Trilogy Financial Products Ltd., Trilogy Financial Investments Ltd. and/or Trilogy Investments Ltd.

4.   All outlines of proposed transaction concerning Fidelity International or any other FDIS 'partnership'.

5.   All account statements and/or communications referencing any of the following four accounts:

     Sub Account:  Singer & Friedlander (Isle of Man) Limited
     Account no:   30123012
     Reference:    11270012 (Please ensure reference is quoted on
     payment).

9

Sub Account:  Singer & Friedlander Limited
Account no:   30123012
Reference:    The H&M Joint Venture account number 20195700
(Please ensure reference is quoted on payment).

Sub Account:  Singer & Friedlander Limited
Account no:   30123012
Reference:    S&F Client A/C No. 11270025 (Please ensure reference is
quoted on payment).

Sub Account:  Singer & Friedlander (Isle of Man) Ltd.
Account no:   30123012
Reference:    Trilogy Investments Limited – account No: 20282910
(Please ensure reference is quoted on payment).

6.  All email concerning Fidelity International or any other FDIS
    'partnership'.

7.  All communications to or from The Diversified Group Inc. or its
    principals or employees including but not limited to James Haber and/or
    Orrin Tilevitz, concerning Fidelity International or any other FDIS
    'partnership'.

8.  All communications to or from Helios Financial or its principals or
    employees including but not limited to Mox Tan and/or Phil Kampf,
    concerning Fidelity International or any other FDIS 'partnership'.

9.  All communications to or from Alpha Financial or its principals or
    employees including but not limited to Ron Buesinger, concerning
    Fidelity International or any other FDIS 'partnership'.

10. All records of payments received by Simcocks Trust Ltd., Kilsture Ltd.,
    Maddox Ltd., Cumberdale Holdings Ltd., and/or Trilogy Investments Ltd.
    from The Diversified Group Inc. or its principals or employees including
    but not limited to James Haber and/or Orrin Tilevitz, relating to Fidelity
    International or any other FDIS 'partnership'.

11. All records of payments received by Simcocks Trust Ltd., Kilsture Ltd.,
    Maddox Ltd., Cumberdale Holdings Ltd., and/or Trilogy Investments Ltd.

from Helios Financial or its principals or employees including but not
limited to Mox Tan and/or Phil Kampf, relating to Fidelity International
or any other FDIS 'partnership'.

12.  All records of payments received by Simcocks Trust Ltd., Kilsture Ltd.,
Maddox Ltd., Cumberdale Holdings Ltd., and/or Trilogy Investments Ltd.
from Alpha Financial or its principals or employees including but not
limited to Ron Buesinger, relating to Fidelity International or ay other
FDIS 'partnership'.

13.  All communications concerning Fidelity International or any other FDIS
'partnership', including communications with Samuel Mahoney, Martin
Hawkes, and/or Biosphere Finance.

14.  All communications concerning the funding of Biosphere Finance,
Samuel Mahoney and/or Martin Hawkes for any person's or entity's
participation in Fidelity International or any other FDIS 'partnership'.

15.  All communications concerning the payment of $2 million to Biosphere
Finance, Samuel Mahoney and/or Martin Hawkes.

16.  All communications and/or other documents concerning any 'reckoning
on fees in relation to fund structures, Irish companies and Trilogy
transactions'.

17.  All communications and/or other documents, including documents
relating to payments, concerning the Collaboration Agreement between
The Diversified Group Inc. and Trilogy Financial Products, Ltd.

18.  All communications concerning any contracts between Singer &
Friedlander, Nigel Scott, and/or Oliver Peck, and Samuel Mahoney,
Martin Hawkes, John Hussey, Helios Financial, The Diversified Group
Inc., Kilsture Ltd., Maddox Ltd., Cumberdale Investments Ltd. (including
all subsidiaries), Cumberdale Holdings Ltd., Biosphere Finance Ltd.,

11

Trilogy Financial Products Ltd., Trilogy Financial Investments Ltd. and/or Trilogy Investments Ltd.

19. Marketing materials for all Helios and/or The Diversified Group Inc. transactions in which Simcocks Trust Ltd., Kilsture Ltd., Maddox Ltd., Cumberdale Holdings Ltd., and/or Trilogy Investments Ltd. participated, including those relating to Fidelity International or any other FDIS 'partnership'.

20. Contribution agreements for each partnership in which Samuel Mahoney or Martin Hawkes was a purported partner and in which a U.S. taxpayer purchased sets of offsetting options and then transferred the offsetting options to the partnership.

21. Tax returns for each partnership in which Samuel Mahoney or Martin Hawkes was a purported partner and in which a U.S. taxpayer purchased sets of offsetting options and then transferred the offsetting options to the partnership.

22. Contracts between Nigel Scott, Oliver Peck, Singer & Friedlander (n/k/a Kaupthing Singer & Friedlander), Samuel Mahoney, Martin Hawkes, and/or John Hussey, and Helios, The Diversified Group Inc., Kilsture Ltd., Maddox Limited, Cumberdale Investments Ltd. (including all subsidiaries), Cumberdale Holdings Ltd., Trilogy Financial Products Ltd., and/or Biosphere Finance Ltd.

23. Loan documents for loans from Kilsture Ltd. to Samuel Mahoney.

24. Proof of Samuel Mahoney's repayment of any loans from Kilsture Ltd.

25. Bank records of Kilsture Ltd. showing trans-Atlantic payments to or from Kilsture Ltd.

Special Procedures:

This court requests testimony under oath, or the submission of a declaration by the custodian of records for each entity that produces documents in response to this request, attesting to the authenticity of documents produced.  Under the United States's Federal Rules of Evidence, which apply in this lawsuit and in all civil proceedings in the United States district courts, certain business records may be received into evidence only if a competent representative of the business appears at trial as a witness and testifies as to the authenticity of the records and the manner in which they are prepared and maintained at the business.  However, with respect to foreign business records, the appearance and testimony at trial of a representative of a foreign entity may not be required if a representative of the foreign entity gives testimony under oath as to the authenticity of the records (or true copies thereof) or if the records (or true copies thereof) are accompanied by a written declaration certifying the authenticity of the business records. Therefore, this court considers it necessary in the interests of justice that testimonial evidence and/or written declarations certifying the authenticity of business records be obtained from the producing entities and/or their representatives.  To be of value to this court, the written declaration(s) must comply with the requirements of Title 28 of the United States Code, section 1746.  A proposed declaration is attached to this letter of request.

Reciprocity:

The courts of the United States are authorized by statute codified at Title 28 of the United States Code, Section 1782 to extend similar assistance to the tribunals of Isle of Man and will gladly reciprocate the courtesies shown by the judicial authorities of Isle of Man.

Reimbursement of Costs:

The United States District Court for the District of Massachusetts is prepared to reimburse your Court for all costs incurred in executing this request.  The

13

court extends to the judicial authorities of Isle of Man the assurances of its
highest consideration ...

Certification of Business Records:

I, the undersigned, _____, with the
understanding that I am subject to criminal penalty under the laws of Isle of
Man for an intentionally false declaration, declare that I am:
employed by/associated with _____ in the
position of _____ and by reason of my
position am authorized and qualified to make this declaration.

I further declare that the documents attached hereto are original records or
true copies of records identified as Exhibit(s)
_____ (list all exhibits as appropriate),
and:

1.    were made at or near the time of the occurrence of the matters set
      forth therein, by (or from information transmitted by) a person with
      knowledge of those matters;
2.    were kept in the course of regularly conducted business activity;
3.    were made by the said business activity as a regular practice; and,
4.    if not original records, are duplicates of original records.

The originals or duplicates of these records are maintained in the country of
_____.

Date of execution:            _____
Place of execution:           _____

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Signature _____ "

14

8.    At the hearing to consider the objections, which took place on 2nd and 3rd April 2008, it was indicated on behalf of the Petitioner that the documents to be produced were restricted to the period 2001 to 2004 and to the Financial Derivatives Investment Strategy (the "FDIS").  Also, that the production of documents in respect of categories 23-25 related solely to Kilsture Ltd.

**LAW**

9.    The relevant statutory provisions are contained in sections 1 and 2 of the 1975 Act as applied in the Isle of Man by the 1979 Order.

10.    Section 1 provides that "Where an application is made to [the High Court of Justice of the Isle of Man] for an order for evidence to be obtained in the part of [the Isle of Man] in which it exercises jurisdiction, and the court is satisfied –

    (a)    that the application is made in pursuance of a request issued by or on behalf of a court ... ('the requesting court') exercising jurisdiction ... in a country ... outside [the Isle of Man]; and

    (b)    that the evidence to which the application relates is to be obtained for the purposes of civil proceedings which ... have been instituted before the requesting court ...,

    [the High Court of Justice of the Isle of Man] shall have the powers conferred on it by the following provisions of this Act".

11.    Section 2 provides as follows:-

    "(1)    Subject to the provisions of this section, [the High Court of Justice of the Isle of Man] shall have power, on any such application as is mentioned in section 1 above, by order to make such provision for obtaining evidence in the part of [the Isle of Man] in which it exercises jurisdiction as may appear to the court to be appropriate for the

15

purpose of giving effect to the request in pursuance of which the application is made; and any such order may require a person specified therein to take such steps as the court may consider appropriate for that purpose.

(2)    Without prejudice to the generality of subsection (1) above but subject to the provisions of this section, an order under this section may, in particular, make provision –

...

(b) for the production of documents;

...

(3)    An order under this section shall not require any particular steps to be taken unless they are steps which can be required to be taken by way of obtaining evidence for the purposes of civil proceedings in the court making the order (whether or not proceedings of the same description as those to which the application for the order relates) ...

(4)    An order under this section shall not require a person –

(a)    to state what documents relevant to the proceedings to which the application for the order relates are or have been in his possession, custody or power; or

(b)    to produce any documents other than particular documents specified in the order as being documents appearing to the court making the order to be, or to be likely to be, in his possession, custody or power.

(5)    A person who, by virtue of an order under this section, is required to attend at any place shall be entitled to the like conduct money and payment for expenses and loss of time as on attendance as a witness in civil proceedings before the court making the order."

16

12. High Court Directive IV(3), issued on 7th December 1998, provides the following:-

"The Rules of the High Court of Justice 1952 do not provide any procedure by which an order may be made by the Court, under section 2 of the Evidence (Proceedings in Other Jurisdictions) Act 1975..., as extended to the Isle of Man, for obtaining evidence in the Isle of Man, in pursuance of an application made on behalf of a court in another jurisdiction, comparable to Order 70 of the Rules of the Supreme Court of England.

In the absence of any such rule, all applications for an order under section 2 of the Act shall be made ex parte by petition to the Common Law Division and must be supported by affidavit. In appropriate cases an order will then issue from the Court for the examination of a witness before a person appointed by the Court."

13. It was accepted on behalf of the Petitioner that it was for the Petitioner to satisfy this Court that the application was properly brought and that the relief should properly be granted.

## HEARING

14. At the hearing Mrs. K. Clough appeared on behalf of the Petitioner, Mr. C. Arrowsmith for the Companies and Mr. A. Bridson for S.T.L. In addition to hearing submissions, I had the benefit of being provided with skeleton arguments and authorities from the parties prior to the hearing.

15. A watching brief was kept by Mr. P. Clucas on behalf of Fidelity.

## SUBMISSIONS

16. I consider it would be of assistance to set out the parties' respective submissions in brief.

17

**JURISDICTIONAL OBJECTIONS**

17.    Both Mr. Arrowsmith and Mr. Bridson submitted that any request for the
       production of documents must be directed to a specific individual or a proper
       officer and not a corporate entity:  Penn – Texas Corporation v. Murat Anstalt
       and Others [1964] 1 Q.B. 40.

18.    Mr. Arrowsmith went on to submit that the collection of the material
       requested engaged the Companies' and third parties' rights under Article 8(1)
       of the Convention for the Protection of Human Rights and Fundamental
       Freedoms:  Amann v. Switzerland [2000] No. 27798/95.  Article 8(2) of the
       Convention provided that an interference with the rights protected by Article
       8(1) could only be justified if it was in accordance with the law.  Mr.
       Arrowsmith submitted that the requirement that an interference be in
       accordance with the law was a necessary condition for compliance with
       Convention rights:  Foxley v. United Kingdom [2000] No. 33274/96.  In these
       circumstances, as requiring the Companies to produce documents was
       unlawful, Mr. Arrowsmith submitted that the Second Petition and the Letter
       of Request from which it derived were not in accordance with the law; its
       further consideration was incompatible with the Companies' and third parties'
       Convention rights, and so was beyond the jurisdiction of this Court.

19.    Mr. Bridson went on to submit that this Court could not rewrite or add in
       words to the Letter of Request to cure any defects or to clarify it; the most
       that this Court could do was in specific circumstances to strike out words
       using the 'blue pencil' test:  Phipson on Evidence (Sixteenth Edition) [2005]
       Paras. 8-34 to 8-44.  The Letter of Request required S.T.L. to produce
       documents.  In view of the 'blue pencil' test, Mr. Bridson submitted that this
       Court could not write into the Letter of Request the words "the proper officer
       of (S.T.L.)" and so the application was fundamentally flawed.

20.    Although Mrs. Clough on behalf of the Petitioner was prepared to assume
       (without conceding) that execution of the Letter of Request engaged the
       Companies', S.T.L.'s and third parties' Convention rights under Article 8(1)

and she also acknowledged the 'blue pencil' test in the context of requests for documentary evidence, she submitted that the jurisdictional objections were misconceived for the following reasons:-

(i)    In <u>Golden Eagle Refinery Co. Ltd. and Others v. Associated International Insurance Co. and Others [19 February 1998] Unreported</u>, the Court of Appeal rejected the suggestion that a letter of request could suffer from a jurisdictional defect because of some aspect of its wording.

(ii)    It was not the correct approach to place a strict interpretation on isolated aspects of a letter of request:  <u>Radio Corporation of America v. Rauland Corporation and Another [1956] 1 Q.B. 618</u>; <u>Gredd v. Busson [2003] E.W.H.C. 3001</u>.

(iii)    The powers of the Court to which an application was made pursuant to a letter of request were to be found in section 2 of the 1975 Act and included the power to require an officer of a company to attend in order to produce documents.

(iv)    The Companies' and S.T.L.'s submissions rested entirely upon the <u>Penn – Texas</u> case.  This was a case in relation to the Foreign Tribunals Evidence Act 1856 ("the 1856 Act"), that Act was worded significantly differently from the 1975 Act and was therefore of no assistance on the proper interpretation of the 1975 Act.

## OTHER OBJECTIONS

**21.**    Both Mr. Arrowsmith and Mr. Bridson submitted that words restricting the documents to be produced to the period 2001 to 2004 and to the FDIS could not be added to the Letter of Request; the most that this Court could do was to strike out words using the 'blue pencil' test.

19

22.     Mrs. Clough submitted that this was nothing more than a point of
clarification.  In the alternative Mrs. Clough submitted that these restrictions
did not increase the number of documents requested or alter the categories
of such documents; they involved deletions only and so were permissible.

23.     Both Mr. Arrowsmith and Mr. Bridson submitted that this application was
nothing less than a fishing expedition; they further objected to its breadth
and vagueness, its lack of precision or particularity and its speculative
nature:  In Re Asbestos Insurance Coverage Cases [1985] 1 W.L.R. 331; Re
Global Info Ltd. [1999] 1 B.C.L.C. 74.

24.     Mrs. Clough submitted that the requesting Court had specifically considered
and rejected an argument by the Plaintiff in the United States that this was a
fishing expedition; the documents sought were precisely identified and there
was ample evidence in the affidavits of Mr. Lindquist to support not only the
existence of the documents but also that they were in the possession of the
Companies and S.T.L.  Mrs. Clough further submitted that even if this Court
felt any particular category of document was too wide, then the appropriate
remedy was not to reject the Letter of Request in its entirety but to give
effect to those parts it thought proper: the Golden Eagle case; Smith v. Philip
Morris Inc. [2006] E.W.H.C. 916.

25.     Mr. Arrowsmith submitted that the Petitioner had failed to proceed as
expeditiously with this matter as it could have.  In the Massachusetts
proceedings Judge Saylor had been cognizant that the foreign evidence, i.e.,
the evidence requested on behalf of the Petitioner from the Isle of Man and
Ireland, was not available when he set down the trial to commence on 22nd
September 2008 and he had indicated that the trial would proceed with or
without such evidence.  Mr. Arrowsmith submitted that, given the very strong
likelihood of a challenge to any Order for production of documents made by
this Court and the consequent delay, this Court could not be satisfied
documents ordered to be produced would be for the purposes of the
Massachusetts proceedings.

26.   Mrs. Clough submitted that an examination of the chronology showed that the Petitioner had acted expeditiously at every stage, despite the war of attrition against the Letters of Request that had been fought by Fidelity in the United States and by the Companies and S.T.L. in the Isle of Man.

27.   Both Mr. Arrowsmith and Mr. Bridson submitted that disclosure was not necessary:  Article 8(2) of the Convention.

28.   Mrs. Clough submitted that the Order sought was a proportionate and legitimate interference.  It was necessary for the protection of the rights and freedoms of others, namely, the tax payers of the Untied States.  It was also necessary for the economic well-being of the Isle of Man, that well-being depending in part upon there being systems in place so that where there was evidence that Manx entities had participated in abusive transactions overseas they were required to furnish evidence in order to determine whether or not that was the case.

**ADDITIONAL ISSUES**

29.   In its objection to the Petitioner's Motion to the Massachusetts Court for an Order that Letters of Request be issued to the Isle of Man and Ireland, Fidelity had submitted that if the Requests were to be allowed then a protective order should also be issued preventing the use of the evidence obtained in any other proceedings.  Judge Saylor ruled that "the issuance of such an order would be unnecessary and inappropriate".

30.   Mr. Arrowsmith stated it was public knowledge that, separately from the Massachusetts proceedings, criminal investigations were continuing in the United States into transactions based upon or even related to non-U.S. resident partnership arrangements.  Mr. Arrowsmith submitted that, in the event this Court was to grant assistance, the requirements of proportionality in Article 8(2) of the Convention dictated that no greater interference be permitted with the Companies' and third parties' rights than was necessary for the purposes of the Request.  Mr. Arrowsmith went on to submit that any

21

such assistance should therefore be subject to an effective stipulation, i.e., one backed by an undertaking provided by the United States' Authorities, that any documents or other material provided in pursuance of this Request could only be used for the purposes of this Request and the civil proceedings which gave rise to it and for no other purpose and in no other proceedings whatsoever: In Re State of Norway's Application [1987] 1 Q.B. 433.

31. Mr. Bridson went further. Should assistance be granted Mr. Bridson submitted that this Court should make an Order that the documentation would only be provided in the event of the receipt of an appropriate undertaking from the Massachusetts Court and should direct that, in view of the expense involved and the uncertainty as to whether an undertaking would be forthcoming, no documentation need be prepared by S.T.L. until such receipt.

32. Mrs. Clough indicated during the hearing that she had obtained instructions from the Petitioner that it would be prepared to enter into a protective order agreed between the parties and issued by the Massachusetts Court. Mrs. Clough submitted that, in order to avoid any further delay, documentation should be prepared prior to the receipt of the protective order. Should the order not be forthcoming, the matter of preparation could be dealt with by way of a Costs Order.

33. Mr. Arrowsmith submitted that the Petitioner could not rely upon the affidavits of Mr. Lindquist and accompanying exhibits in support of this application; his affidavits were not adopted within the Letter of Request and, being an in-house Counsel of the Petitioner, his evidence could not be regarded as objective.

34. Mrs. Clough submitted that there was no legal justification for rejecting Mr. Lindquist's affidavits; not only had his sworn evidence led to a Judgment in the Massachusetts proceedings but also no evidence to contradict him had been provided.

22

35. Mr. Arrowsmith submitted that, in the event of this Court being minded to proceed in whole or in part with the Letter of Request, the procedure to be adopted by this Court in relation to the protection of Article 8(1) Convention rights would remain a matter for further filings and submissions: <u>Benno Hafner and Hafner and Hochstrasser v. City of Westminster Magistrates' Court and Australian Securities and Investments Commission [5 March 2008] Unreported</u>.

36. Mrs. Clough submitted that the standard procedure of blanking out any offending material would suffice; if the Court considered it appropriate, submissions could be made in respect of particular documents in camera.

37. Both Mr. Arrowsmith and Mr. Bridson submitted that the certification of business records requested amounted to oral testimony. Mr. Bridson further submitted that, as S.T.L. only took over any corporate service provider business from Singer & Friedlander in 2005, it would not be possible for an officer of S.T.L. to give the declaration requested. The Letter of Request indicated the following: "This court considers it necessary in the interests of justice that testimonial evidence and/or written declarations certifying the authenticity of business records be obtained from the producing entities and/or their representatives. To be of value to this court, the written declaration(s) must comply with the requirements of Title 28 of the United States Code, section 1746." Both Mr. Arrowsmith and Mr. Bridson submitted that in these circumstances this Court could not be satisfied documents ordered to be produced would be for the purposes of the Massachusetts proceedings.

38. Mrs. Clough submitted that oral testimony concerned the giving of evidence as to the contents of documents and not the certification of business records. Mrs. Clough further submitted that, even if an officer of S.T.L. was unable to give the declaration requested, this Court was nevertheless entitled to make an Order for production.

**39.**   The parties agreed that this Court should first determine whether or not Title
28, section 1746 might be of relevance.  Only if the answer was in the
affirmative would the Court then be provided with a copy of the same and
the parties would be given the opportunity of making submissions thereon.

## GENERAL PRINCIPLES

**40.**   The general principles to be applied by the Courts when determining letters
of request for the provision of evidence for the purposes of civil proceedings
were set out by Lord Justice Waller in the Court of Appeal in the case of
<u>Genira Trade & Finance Inc. and Another v. Refco Capital Markets Limited
and Another [2001] E.W.C.A. Civ. 1733</u>:-

"The first principle is of course that we should afford foreign courts all the
assistance we can – in Lord Denning's often quoted phrase 'It is the duty and
the pleasure of the English courts to do all it can to assist the foreign court,
just as it would expect the foreign court to help it in like circumstances'.  (see
Lord Denning MR in *RTZ v Westinghouse* [1978] A.C. 547 at 560).

Second, the jurisdiction to make the order is statutory.  Such an order 'shall
not require any particular steps to be taken unless they are steps which can
be required to be taken by way of obtaining evidence for the purposes of civil
proceedings' in the English court (section 2(3)).  It is that provision which
precludes the English court from making orders for the taking of oral
depositions from a non-party simply as part of the discovery exercise which
takes place under the United States procedure (see Lord Diplock in *RTZ v
Westinghouse* at p.634).  The position is clearer still so far as documents are
concerned. (see section 2(4) above).

Third, the fact that Letters of Request may have been issued for the purpose
of obtaining discovery or pre-trial depositions which fall foul of the above
does not mean that the English court has no jurisdiction to attempt to give
effect to the same (see most recently *Golden Eagle Refinery v Associated
International Insurance* COT 19th February 1998).  The court, so far as

24

documents are concerned, can by application of the blue pencil identify particular documents, and so far as oral testimony is concerned make it subject to terms that for example 'the examination of witnesses shall be for the purpose only of eliciting and recording testimony appropriate to be given at trial' and that 'no question may be asked of the witness that in the opinion of the examiner is not a question of the nature that could properly be asked by counsel examining a witness-in-chief at a trail before the High Court of England and Wales'. Those were the terms on the basis of which the Court of Appeal in the *Golden Eagle Case* upheld the orders for examination of witnesses.

Fourth, 'In the face of a statement in letters rogatory that a certain person is a necessary witness for the applicant ... the court of request should not be astute to examine the issues in the action and the circumstances of the case with excessive particularity for the purpose of determining in advance whether the evidence of that person will be relevant and admissible'. (see Lord Keith in *RTZ v Westinghouse* at 654).

Fifth, it was in the context of seeking to take oral evidence that Lord Woolf in *State of Minnesota v Philip Morris Inc* [1998] I.L.Pr. 170 said because of the approach of the English court to try and give effect to Letters of Request if they could that the court 'will take into account any limitations, corrections or conditions which the party seeking the order is willing for the court to take into account. It will if appropriate, be prepared to give the request an amended effect'. (see paragraph 18). So far as documents are concerned however, the words in section 2(4) by which it is provided that 'an order' under this section shall not require any documents other than 'particular' documents to be produced has been strictly construed. It has been construed so as to allow documents to be compendiously described but only so long as the exact documents were clearly indicated, and the documents were shown to exist or to have existed, rather than being conjectural documents. (see *In re-Asbestos Insurance Coverage Cases* [1985] 1 WLR 331). Furthermore it has been construed so as not to allow an order to be made which would involve altering the letter of request other than by the

25

operation of striking out words in the Letter of Request with a blue pencil. (see *RTZ v Westinghouse* Lord Wilberforce at 610-611; Lord Diplock at 635-6; and Lord Keith at 654; they were the majority and the minority would not have allowed even the operation of the blue pencil)."

## DETERMINATION

41.    I have given this matter very long and careful consideration.

## JURISDICTIONAL OBJECTIONS

42.    As Mrs. Clough rightly pointed out, the Companies and S.T.L.'s submissions rest entirely upon the <u>Penn – Texas</u> case.

43.    The <u>Penn – Texas</u> case concerned the interpretation of section 1 of the 1856 Act.  That section provided the following:-

"Where, upon an application for this purpose, it is made to appear to any court or judge having authority under this Act that any court or tribunal of competent jurisdiction in a foreign country, before which any civil or commercial matter is pending, is desirous of obtaining the testimony in relation to such matter of any witness or witnesses within the jurisdiction of such first-mentioned court, or of the court to which such judge belongs, or of such judge, it shall be lawful for such court or judge to order the examination upon oath upon interrogatories or otherwise, before any person or persons named in such order, of such witness or witnesses accordingly; and it shall be lawful for the said court or judge ... or any other judge having authority under this Act, by any subsequent order, to command the attendance of any person to be named in such order, for the purpose of being examined, or for the production of any writings or other documents to be mentioned in such order, and to give all such directions as to the time, place, and manner of such examination, and all other matters connected therewith, as may appear reasonable and just; and any such order may be enforced in like manner as

26

an order made by such court or judge in a cause depending in such court or before such judge."

44.    Such wording, which focuses on the desire of the foreign court or tribunal "of obtaining the testimony ... of any witness or witnesses" and the power of the judge "to order the examination upon oath ... of such witness or witnesses", contrasts sharply with the wording of section 1 of the 1975 Act which refers to an application made "for an order for evidence to be obtained". I agree with Mrs. Clough that the <u>Penn – Texas</u> case is of no assistance on the proper interpretation of the 1975 Act.

45.    I consider that this application is "in accordance with the law" as the requirements of section 1 of the 1975 Act have been satisfied:-

(i)    It is made to the High Court of Justice of the Isle of Man for an Order for evidence, namely, the production of documents, to be obtained in the Isle of Man;

(ii)    It is made in pursuance of a Request issued by a Court exercising jurisdiction in a country outside the Isle of Man, namely, the Massachusetts Court; and

(iii)    The evidence to which this application relates is to be obtained for the purposes of civil proceedings instituted before the requesting Court, namely, the Massachusetts proceedings.

46.    The Court's powers in these circumstances are set out in section 2 of the 1975 Act as follows:-

(i)    By Order to make such provision for obtaining evidence as may appear to it to be appropriate for the purpose of giving effect to the Request;

27

(ii)    Any such Order may require a person specified therein to take such steps as it may consider appropriate for that purpose; and

(iii)   An Order may, in particular, make provision for the production of documents.

**47.**    In view of the foregoing, I consider that I am therefore entitled to make an Order requiring the proper officer(s) of the Companies and S.T.L. to produce documents (provided that such Order complies with the conditions in section 2(3) and 2(4) of the 1975 Act).

## OTHER OBJECTIONS

**48.**    As was stated in the Genira case, in the context of requests for documentary evidence, the words in section 2(4) of the 1975 Act by which it is provided that "An order under this section shall not require a person ... (b) to produce any documents other than particular documents" have been construed so as not to allow an order to be made which would involve altering the letter of request other than by the operation of striking out words in the letter of request with a 'blue pencil' (see also the House of Lords case of RTZ).

**49.**    The Letter of Request has no time frame in relation to the period for which the documents are sought and a number of the categories of documents sought are not restricted to the FDIS. Mrs. Clough has indicated on behalf of the Petitioner that the documents sought to be produced are restricted to the period 2001 to 2004 and to the FDIS.

**50.**    Mrs. Clough's submission that it is simply a point of clarification to indicate the documents sought in the Letter of Request are restricted to the period 2001 to 2004 clearly cannot be sustained. And, while I have some sympathy with Mrs. Clough's submission that such a restriction involves a deletion of periods outside of that time frame, the 'blue pencil' test only permits the striking out of words in a letter of request. I am therefore unable to restrict

the documents sought within the Letter of Request to the period 2001 to 2004.

51.   This Request for the production of documentary evidence by the Companies and S.T.L. must not only satisfy the requirements of section 2(3) of the 1975 Act which exclude fishing discovery, but also the stricter requirements of section 2(4). Without a time frame in the Letter of Request, which undoubtedly in my view was the reason for the indication given at the hearing that the documents sought were restricted to the period 2001 to 2004, I do not consider that those requirements are satisfied and consequently the Second Petition must be dismissed.

52.   In the Asbestos case, the House of Lords considered the meaning of "particular documents" in section 2(4)(b) of the 1975 Act:-

"The meaning of the expression 'particular documents specified in the order' in subsection (4)(b) was considered by several of the noble and learned lords who took part in the Westinghouse case [1978] A.C. 547 decision. They were all emphatic that the expression should be given a strict construction. Having regard to the purpose of subsection (4) which, as I have already mentioned, is to preclude pre-trial discovery, it is to be construed so as not to permit mere 'fishing' expeditions. Lord Wilberforce said, at p. 609:

'These provisions, and especially the words 'particular documents specified in the order' (replacing 'documents to be mentioned in the order' in the [Foreign Tribunals Evidence Act] 1856) together with the expressed duty of the English court to decide that the documents are or are likely to be in the possession, custody or power of the person called upon to produce, show, in my opinion, that a strict attitude is to be taken by English courts in giving effect to foreign requests for the production of documents by non-party witnesses. They are, in the words of Lord Goddard C.J., not to countenance 'fishing' expeditions: Radio Corporation of America v. Rauland Corporation [1956] 1 Q.B. 618, 649.'

29

Lord Diplock expressed perhaps an even more restrictive view of the effect of subsection (4)*(b)* where he said, at p. 635:

'The requirements of subsection (4)*(b)*, however, are not in my view satisfied by the specification of classes of documents. What is called for is the specification of 'particular documents' which I would construe as meaning individual documents separately described.'

I do not think that by the words 'separately described' Lord Diplock intended to rule out a compendious description of several documents provided that the exact document in each case is clearly indicated. If I may borrow (and slightly amplify) the apt illustration given by Slade L.J. in the present case, an order for production of the respondents 'monthly bank statements for the year 1984 relating to his current account' with a named bank would satisfy the requirements of the paragraph, provided that the evidence showed that regular monthly statements had been sent to the respondent during the year and were likely to be still in his possession. But a general request for 'all the respondent's bank statements for 1984' would in my view refer to a class of documents and would not be admissible.

The second test of particular documents is that they must be actual documents, about which there is evidence which has satisfied the judge that they exist, or at least that they did exist, and that they are likely to be in the respondent's possession. Actual documents are to be contrasted with conjectural documents, which may or may not exist. In the *Westinghouse* case, I said, at p. 644:

'The reference to 'any' documents in the sweeping-up words in the schedule to the letters rogatory suggests to me that the draftsmen did not know whether such documents were in existence or not. Accordingly the words seem to be an attempt to circumvent paragraph (a) of section 2(4) of the Act of 1975, an attempt which should not be allowed to succeed.' "

30

53.  Even ignoring the absence of a time frame in relation to the period for which the documents are sought and that a number of the categories of documents sought are not restricted to the FDIS, I regret to say that in my view the documents requested in the Letter of Request cannot properly be described as "particular documents". The most obvious example is category 18 which is a request for "all communications concerning any contracts between ..." Consequently, I reject Mrs. Clough's submission that the Letter of Request compendiously describes actual documents as found permissible in the Asbestos case.

54.  Furthermore, the recipient of an order should be able to determine from the description of the documents requested precisely what documents are covered; an order requiring the recipient to go through his file and search for documents "relating to" specified matters or make a judgement about the relevance of a document is too widely drawn (see the Global case). The most obvious example of this within the Letter of Request is category 24 which requires "proof of Samuel Mahoney's repayment of any loans from Kilsture Ltd."

55.  Having conducted an examination of the chronology, I agree with Mrs. Clough that the Petitioner has acted with due diligence throughout. Furthermore, it is not for this Court to speculate about possible challenges to any Order it may make.

56.  Had the Order sought complied with the conditions in section 2(3) and 2(4) of the 1975 Act then I would have considered disclosure to be necessary, and a proportionate and legitimate interference with Article 8 Convention rights for the reasons outlined by Mrs. Clough. An important factor to bear in mind is that the sum involved exceeds $62 million.

## ADDITIONAL ISSUES

57.  I shall deal very briefly with the additional issues.

31

58.    I agreed with Mrs. Clough's submissions in paragraphs 32, 34 and 36
       (supra).

59.    Title 28, section 1746 might have been of relevance to my determination.



# Exhibit B

*RIC*

**X 23**

**COURT DIRECTIVE**

**Issued: 1ˢᵗ June 1998**

## HANDED DOWN JUDGMENTS

Recently a practice has developed for written judgments of the court to be handed down without, as in the past, being read aloud. In this way much time is saved for the court, for advocates and for litigants. Unless the court otherwise orders, copies of written judgments will generally be made available to the parties' advocates or, if a party is not represented, to the party himself, on the working day before judgment is due to be pronounced. This will enable the advocates and the parties to consider the judgment and decide what consequential orders they should seek. It will also enable them to submit any suggestions to the Deemster about typing errors, wrong references and other minor corrections of that kind, so that, if the Deemster thinks fit, the judgment can be corrected. The contents of written judgments may be communicated immediately by advocates to the parties, but written judgments must be treated as confidential by advocates and the parties until judgment is pronounced in court.

# Exhibit C

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Case Nos.:  05-40151-FDS<br>06-40130-FDS |

## <u>WITHDRAWAL OF REQUESTS FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTERS ROGATORY)</u>

United States District Court for the District of Massachusetts presents its compliments to the appropriate judicial authority of the Isle of Man and hereby informs this honorable Court that, at the request of Defendant, the United States of America, it wishes to withdraw its pending letter rogatory requesting international judicial assistance in this case.

This Court has reviewed the written judgment of the High Court of Justice of the Isle of Man with respect to the Petition of the United States of America dated 26th November 2007, and understands that the letter of request that is the subject of that petition will be dismissed as a result of that judgment.  At the request of the United States, this Court wishes to withdraw the pending letter rogatory in this matter, which is the subject of the Petition of the United States of America dated 29th August 2007.  The United States District Court for the District of Massachusetts extends its highest gratitude.

DATE: _____


_____

HON. F. DENNIS SAYLOR, IV
United States District Judge
U.S. District Court for the District of Massachusetts
Worcester, Massachusetts