UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br>     Plaintiff<br><br>V.<br><br><br><br>UNITED STATES OF AMERICA,<br>     Defendant | CIVIL ACTION NO.  06-40243-FDS<br>                              06-40244-FDS |
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC by the Tax Matters Partner,<br>     Plaintiff<br><br>V.<br><br><br><br>UNITED STATES OF AMERICA,<br>     Defendant | CIVIL ACTION NO.  05-40151-FDS<br>                              06-40130-FDS |

PLAINTIFF'S MEMORANDUM ON TRIAL PROCEDURES

At the Status Conference on July 8, 2008, the Court invited discussion concerning the procedures for trial of the four consolidated cases. Somewhat surprisingly, the Government suggested that instead of a consolidated trial, the Court should hold sequential mini-trials, a procedure that even the Government admitted would require more trial time and would result in repetitive testimony. The Court made no ruling and indicated that the issue would be revisited at the next conference on July 28, 2008. In preparation for that conference, Plaintiff submits this Memorandum.

The starting point for discussion should be the recognition that Plaintiff has the burden of proof. At the end of the trial, if the Court is confused or uncertain, that confusion or uncertainty will adversely affect Plaintiff, not the Government. As the party with the burden of proof, the fair and equitable approach is for Plaintiff to be given reasonable latitude in the presentation of the case, including not only the order in which Plaintiff calls his witnesses, but also the order in which Plaintiff addresses the factual and legal issues in the consolidated cases.

This is a case about Richard Egan and his investments in 2001.[1] He is the Tax Matters Partner for both Fidelity High Tech Advisor A Fund, LLC ("High Tech") and Fidelity International Currency Advisor A Fund, LLC ("FICA A"). The commonality does not end with Mr. Egan, but extends to the many accountants, attorneys, and advisors on whom he relied, including his son Michael Egan. With the sole exception of Sidley Austin Brown & Wood, the same accounting firms, law firms, and other advisors were involved with both the High Tech and the FICA A investments. Most significantly, these investments are inextricably intertwined and are efficiently and logically presented as one narrative in one trial. As the Court will hear, the profit achieved through the investment in options in High Tech was, in part, what led Mr. Egan to invest in the options in FICA A. However, because the I.R.S. completed the audit of FICA A first, FICA A has the earlier docket numbers. In fact, as Plaintiff has consistently advised the Court, the FICA A and High Tech investments are part of an interrelated series of investments taking place in the same year. As the Court will recall, the Government was well aware of this nexus, and included High Tech information in the discovery undertaken in the FICA A cases, even before the audit of High Tech had been completed.

---

[1] While both 2001 and 2002 are before the Court, the events that gave rise to the challenged tax benefits all occurred in 2001.

These are not cases in which the Court could efficiently hear all of the testimony in one case, draw a line across the page, and then separately hear all of the testimony in the other case. All of the live fact witnesses that Plaintiff expects to call will testify about both investments. Similarly, the expert witnesses that Plaintiff expects to call in its case-in-chief are the same for both investments, with the exception of Professor Yale, who is designated exclusively in FICA A, and potential rebuttal experts. In addition, the Government's expert team, led by Gordon Rausser, will be testifying in both FICA A and High Tech, with only Dr. DeRosa designated by the Government as exclusively in High Tech. It would be an unnecessary burden on these witnesses, and an unwarranted imposition on the Court's time, to hold two sequential trials.

At the Status Conference on July 8, 2008, the Government suggested that while the transactions were unique, they can somehow be confused:

> For almost all of the experts, your Honor, it's -- it's from our perspective essential that they keep these transactions separate. If the transactions – if they begin to testify at the same time with respect to both transactions, the record one is [going] to become very confusing, and it's going to be very difficult for the experts and the fact witnesses, too, to prepare them and for them to keep these transactions straight.
>
> Transcript of Status Conference, July 8, 2008, p. 55.

While that may be the Government's argument now, it is not the view advanced by the Government when the Government initially opposed consolidation, and it is not the view advanced by the Government's key expert witness, Gordon Rausser, at his deposition last month:

> Q   Let me just be sure I'm understanding. Do you agree -- the Government counsel has represented to the court in these cases that these two what they like to call shelters are entirely distinct, that is, between Fidelity International and High Tech. Do you agree with that?
>
> MR. DONOHUE: Objection; misstates counsel's statements to the court. You may answer.

BY MR. CURTIN:
Q    Well, I'll clarify.  I'm reading from the United States's opposition to Plaintiff's motion to consolidate of April 23, 2007.  This is in the International case. And on page 3, counsel says – Government counsel says, "the two tax shelters are entirely distinct."  And my only question is, do you agree with that or disagree with that?

A    I agree with that.

Gordon Rausser Dep. Tr. 155:14 – 156:11, June 30, 2008.

The High Tech and the FICA A cases involve a commonality of witnesses, but the transactions themselves are distinct.  Experienced trial counsel should have no difficulty in focusing the attention of witnesses on specific events in specific transactions.  By the same token, if the Court directed separate and sequential trials, experienced trial counsel would find it extremely difficult to resist the opportunity to revisit issues, both substantively and on credibility, when a witness who testified on the High Tech transactions was recalled to testify on the FICA A transactions.

These cases have been consolidated for trial.  In effect, after having urged the Court to consolidate the cases for trial, the Government is now asking the Court to bifurcate the trials.  Admittedly, bifurcation can be a useful tool in cases where there is a sharp demarcation between liability and damages, or between the case-in-chief and a third-party claim for indemnification.  In those situations, bifurcation can offer the possibility of shortening total trial time.  Stated most simply, if a plaintiff does not establish liability, there is no need to hear evidence on damages, or evidence on a third-party claim.

No such demarcation exists between the High Tech evidence and the FICA A evidence.  While the actual transactions are unique and distinct, the witnesses are the same, and the decision to make the FICA A investments flowed directly from the experience with the High Tech investments.

In the District of Maine, Judge Woodcock was confronted with the defendants' motion for bifurcation of liability from damages in Thorndike v. DaimlerChrysler Corp,, 220 F.R.D. 6 (D. Me. 2004), a products liability case. The plaintiffs' fact witnesses and expert witnesses were expected to testify on both issues. Observing that there was necessarily "an overlap between the evidence, including expert testimony, presented on each" issue, Judge Woodcock denied the motion. When the four factors discussed by Judge Woodcock in Thorndike are applied to the four consolidated cases before this Court, it is readily apparent that the Government's request for mini-trials should be denied.

(1) Will separation of the issues for trial expedite disposition of the action? No. Indeed, in contrast to Thorndike, where a decision for the defendants on liability would obviate the need for evidence on damages and so was a factor pointing towards allowance of the motion for bifurcation, the issues in FICA A will have to be tried, regardless of the outcome of the issues in High Tech.

(2) Will separation conserve trial time and other judicial resources? No. While claiming that there could be some efficiency, the Government actually conceded at the Status Conference that five or six major fact witnesses, and the experts, would need to be called in each mini-trial. Calling the same witnesses twice is much more likely to lengthen trial time and consume judicial resources, rather than consume trial time and judicial resources. In this case separation would greatly prejudice Plaintiff by prolonging the trial, increasing his costs, and needlessly making the same witnesses appear twice during trial.

(3) <u>Will separation avoid prejudice to any party at trial that may occur in the absence of separation?</u>  No.  In contrast to a personal injury case, in which it is axiomatic among trial lawyers that strong damages will overcome weak liability, in the present cases, the Court will hear all of the evidence regarding both investments.  There is no concern that a jury may be emotionally swayed by gut-wrenching damages to find for the plaintiffs in an otherwise doubtful liability case.

(4) <u>Are the issues essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings?</u>  No.  From the beginning, Plaintiff and the Government have both recognized that the advice that Mr. Egan received and his decision to enter into the High Tech transactions was interwoven with the advice that he received and his decision to enter into the FICA A transactions.

The Government's suggestion of mini-trials makes no more sense than bifurcation of a plaintiff's patent infringement claims from a defendant's patent infringement counterclaims.  See <u>Abbott Labs v. Selfcare, Inc.</u>, No. 98-10674, 2000 U.S. Dist. Lexis 15623 (D.Mass. Sept 29, 2000).  Evidence of the defendant's patents would likely be used in trying the plaintiff's infringement claims, so the jury would be presented with evidence of both patents even if the trials were separated.  A single trial on all patents, while long, will take less time than two trials.  The same holds true for the High Tech and FICA A transactions.

The most recent discussion of bifurcation in this Circuit is out of the District of Rhode Island, <u>Corvello v. New England Gas Co.</u>, 247 F.R.D. 282, 286-87 (D. R.I. 2008).  Judge Torres allowed the <u>plaintiffs'</u> motion to bifurcate the third-party claims because the issues and witnesses

in the plaintiffs' case were different from the issues and witnesses in the third-party claims. In addition, a verdict against the plaintiffs would obviate the need to try the third party claims. Those factors simply are not present in this case.

## Conclusion

Under local practice, a plaintiff has reasonable latitude in the presentation of his case. It would be highly unusual to allow a defendant to dictate the order of the plaintiff's presentation of evidence and issues, as the Government has attempted to do here. Plaintiff's approach is logical and efficient, and avoids any recalling of witnesses or repetitive testimony in a trial that is already projected to last four weeks. The separate mini-trials advocated by the Government would extend, rather than expedite, the proceedings, and would take up an unnecessary amount of the Court's time.

FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by the Tax Matters Partner
and
FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, LLC by the Tax Matters Partner,

By their attorneys,

/s/ John O. Mirick
John O. Mirick, Esq. BBO #349240
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Telephone:  (508) 791-8500
Fax:         (508) 791-8502
Email:       jomirick@mirickoconnell.com

/s/ David J. Curtin
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
McKee Nelson LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20037
Telephone: (202) 775-1880
Fax:         (202) 775-8586
Email:       dcurtin@mckeenelson.com
             rbuch@mckeenelson.com
             lamanti@mckeenelson.com

Dated: July 23, 2008

CERTIFICATE OF SERVICE

I, John O. Mirick, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 23, 2008.

/s/ John O. Mirick
John O. Mirick, Esq.

Dated: July 23, 2008