UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Nos.: 05-40151-FDS<br>06-40130-FDS |
| FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Nos.: 06-40243-FDS<br>06-40244-FDS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF UNREDACTED INVOICES FOR LEGAL SERVICES**

In its Motion, Defendant asks the Court to re-review legal invoices based on a new sword-and-shield argument that was available to Defendant when it filed its first motion to compel with respect to the invoices. Defendant's argument that Plaintiff placed the amount of

legal fees paid to Plaintiff's long-standing outside counsel, Burke Warren, at issue when it filed the Complaints is disingenuous. It was the government that asserted that the High Tech and FICA A Fund transactions lacked economic substance and were not entered into for profit. Plaintiff merely denied the government's allegations. In sum, it is Defendant who is attempting to use an economics argument that *it* first raised to break Plaintiff's privilege and gain access to the nature and substance of Burke Warren's legal services.

Moreover, Defendant's cry of "sword and shield" is false. Plaintiff has not placed the nature and substance of these legal services at issue by selectively disclosing some favorable privileged communications regarding the nature and substance of legal services provided to Plaintiff (as reflected in the invoices) while withholding other unfavorable communications. Defendant's Motion is a bootstrap waiver attack on the attorney-client privilege and work-product doctrine. This Court has previously recognized and sustained both of these privileges with respect to the Burke Warren invoices. Accordingly, the Court should deny Defendant's Motion and reject the invitation to find an implied waiver of Plaintiff's privilege.[1]

## BACKGROUND

In Defendant's Motion, it challenges the very same invoices that were the subject of a motion to compel it filed ten months ago.[2] The invoices encompassed within Defendant's Motion are for services rendered in the April 2000 to June 2005 time period.[3]

---

[1] Because Plaintiff's privilege is the same without regard to whom Defendant's Motion to Compel Production of Documents from Burke Warren MacKay & Serritella, Fidelity International Currency Advisor A Fund, Fidelity High Tech Advisor A Fund, Carruth Management, Carruth Associates, and Affiliates, *Fid. High Tech Advisor A Fund, L.L.C. v. United States*, Nos. 06-40243 & 06-40244 (D. Mass. July 31, 2008); *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. July 31, 2008) ("Defendant's Motion" or "Motion"), is directed, only Plaintiff is responding to Defendant's Motion.

[2] *Compare* Def.'s Supplemental Mem. in Supp. of Its Mot. to Compel Produc. of Docs. from Fidelity International Currency Advisor A Fund, Carruth Management, Carruth Associates, and Affiliates app. 2, *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. Jan. 24, 2008), *with* Def.'s Mem. of Law in Supp. of Its Mot. to Compel Produc. of Docs. from Burke Warren MacKay & Serritella, Fidelity

2

In its first motion, Defendant presented a sword-and-shield argument based on Plaintiff's reliance on legal opinions as part of an affirmative defense to the IRS's assertions of penalties.[4] The Court ruled that Plaintiff was required to provide Defendant with "materials from other counsel which go to the Plaintiff's reliance on the subject matters addressed in the . . . opinions and conclusions by such other counsel which cast doubt on such opinions."[5]

With respect to the Burke Warren invoices, the Court found that the information in the redacted invoices is protected by the attorney-client privilege and work-product doctrine.[6] The Court noted that the "redacted information is privileged because the information indicates the nature of the legal services provided."[7] The Court allowed that "[i]f at some point during the proceedings it becomes apparent that Plaintiff will attempt to rely on other claims/defenses that would impliedly waive the privilege [with respect to the same documents], then it would be

---

International Currency Advisor A Fund, Fidelity High Tech Advisor A Fund, Carruth Management, Carruth Associates, and Affiliates app. 1, *Fid. High Tech Advisor A Fund, L.L.C. v. United States*, Nos. 06-40243 & 06-40244 (D. Mass. July 31, 2008); *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. July 31, 2008) ("Defendant's Memorandum" or "Def.'s Mem."). Defendant asserts that these eighteen invoices are the only invoices that Plaintiff has logged and its Motion extends to any other invoices relating to High Tech and FICA A Fund. (Def.'s Mem. at 10 n.15.) Plaintiff produced and logged thirteen additional invoices. The invoices listed in the attached Contested Redaction Log Items chart (Ex. A) represent all of the invoices that were responsive to Defendant's discovery requests in the High Tech and FICA A Fund cases.

[3] Not every invoice within this time period is responsive to Defendant's discovery requests (thus not all have been produced), nor are all of the entries on the produced invoices related to these cases. In this regard, both Defendant's requests and its Motion are overbroad.

[4] Def.'s Mem. of Law in Supp. of Its Mot. to Compel Produc. of Docs. from Fidelity International Currency Advisor A Fund, Carruth Management, Carruth Associates, and Affiliates at 3-13, *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. Oct. 16, 2007).

[5] Order at 9, *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. May 9, 2008) ("Order"). Plaintiff never withheld as privileged the legal opinions or communications with the law firms providing the legal opinions.

[6] Order at 12-13. The Court found that the privilege did not apply with respect to two redactions on one invoice because "they constitute communications concerning the Proskauer Rose and/or Sidley Austin Opinions." (*Id.* at 13.) Plaintiff complied with the Court's Order and re-produced the invoice with the two redactions removed.

[7] Order at 13.

3

appropriate for the Government to file a motion requesting that the Court reconsider" its ruling.[8] In its present Motion, Defendant now raises a new sword-and-shield argument with respect to the same documents based on its assertion that the legal fees Plaintiff paid to Burke Warren are relevant to whether Plaintiff had a "reasonable possibility of generating a non-tax profit."[9]

In the High Tech transactions, Plaintiff and Maureen Egan entered into NASDAQ-related options in early 2001 and contributed those options to High Tech. If the options expired in the money, Plaintiff would have received a net payout of $6,563,195.[10] Defendant's experts opined that the fees Plaintiff paid in connection with the High Tech transactions total $2,219,863.[11] Even taking into account these fees, the profit potential of the option transactions was $4,343,332.[12] And, even if all of the Burke Warren fees reflected on the challenged invoices were taken into account (approximately $895,000), the profit potential of the option transactions would still be almost $3.5 million.

In the FICA A Fund transactions, Plaintiff entered into interest-rate options and contributed them to FICA A Fund in late 2001. FICA A Fund entered into currency options in the same time period. If the interest-rate options expired in the money, FICA A Fund would

---

[8] *Id.* at 9 n.4.

[9] Def.'s Mem. at 7. Defendant asserts that Plaintiff has not complied with the Court's order to produce "any documents or materials from other counsel which go to the Plaintiff's reliance on the subject matters addressed in the Sidley Austin and Proskauer Rose opinions and conclusions by such other counsel which cast doubt on such opinions" (Order at 9). (Def.'s Mem. at 6 n.6.) Defendant bases its assertion on Plaintiff's failure to produce the Burke Warren invoices in unredacted form. (*Id.*) In deciding the prior motion, the Court reviewed these invoices and only ordered Plaintiff to produce two redactions on one invoice. (Order at 13.) Plaintiff complied with the Court's order. Defendant's argument extends the Court's order beyond its holding to encompass a new waiver argument that Defendant failed to ask the Court to consider when filing its prior motion.

[10] This is the total payoff on the options ($10,000,000) minus the cost of the options ($3,436,805).

[11] Expert Report of Gordon Rausser 26-27 (Mar. 31, 2008); Expert Report of A. Lawrence Kolbe 23 tbl. 4 (Mar. 31, 2008); Errata to Reports of A. Lawrence Kolbe (June 18, 2008). This total does not include the cost of the options, which have already been included above.

[12] The determination of which fees should properly be taken into account in determining whether a reasonable possibility of profit existed is for the Court, not Defendant or its experts, to make.

4

have received a net payout of $4,487,472.[13] If the currency options expired out of the money, FICA A Fund would have kept the $5,668,040 proceeds received from the counterparty for entering into the options.[14] In sum, FICA A Fund had a profit potential of $10,155,512 on the interest-rate and currency option transactions. Defendant's experts opined that the fees Plaintiff paid in connection with the FICA A Fund transactions total $4,875,000.[15] Even taking into account these fees, the profit potential of the option transactions was $5,280,512. Again, even if all of the Burke Warren fees reflected on the challenged invoices were taken into account, the profit potential of the option transactions would still be over $4 million. Thus, the detail underlying the Burke Warren invoice entries is irrelevant to whether a profit potential existed in both the High Tech and FICA A Fund transactions.

In deciding this Motion, it is important to understand that the genesis of the cases presently before the Court are the Notices of Final Partnership Administrative Adjustment ("FPAAs") that the IRS issued to Plaintiff, adjusting various items on High Tech's and FICA A Fund's 2001 and 2002 partnership tax returns. Among these adjustments, the IRS asserted that both the High Tech and FICA A Fund transactions lacked economic substance and that neither was entered into with a profit motive for purposes of Internal Revenue Code section 165(c).[16]

The only avenue available for Plaintiff to challenge the IRS's adjustments was for Plaintiff to file a complaint in court seeking readjustment of the IRS's treatment of items on the

---

[13] This is the total of the $2,242,663 payoff on the long-term interest rate options ($3,367,663 payoff minus $1,125,000 cost) and the $2,244,809 payoff on the short-term interest rate options ($3,369,809 payoff minus $1,125,000 cost).

[14] Plaintiff received $2,832,828 for entering into the U.S. Dollar/Euro options and $2,835,212 for entering into the Japanese Yen/U.S. Dollar options.

[15] Expert Report of Gordon Rausser 60-61 (Aug. 7, 2007); Expert Report of A. Lawrence Kolbe 26 tbl. 11 (Aug. 7, 2007). This total does not include the cost of the options, which have already been included above.

[16] FICA A Fund FPAA Ex. A ¶¶ 2, 3, 5 (2001 tax year); FICA A Fund FPAA Ex. A ¶¶ 2, 3, 5 (2002 tax year); High Tech FPAA Ex. A ¶¶ 2, 3, 6 (December 21, 2001 tax year); High Tech FPAA Ex. A ¶¶ 2, 3, 6 (2002 tax year).

partnership returns.[17]  If Plaintiff had not filed these cases, the adjustments set forth in the FPAAs would have become final.  Because Plaintiff disagreed with the IRS's adjustments, Plaintiff took the position in his Complaints that the IRS's determinations were erroneous.  Specifically, Plaintiff claimed that the IRS erroneously asserted that the High Tech and FICA A Fund transactions lacked economic substance and were not entered into for profit.[18]  Plaintiff was merely responding to the IRS's adjustment of High Tech and FICA A Fund's partnership items.  Accordingly, even though Plaintiff is the putative Plaintiff, he is in reality defending the treatment of items on the partnership returns as filed against the IRS's claims.  This is one of the aspects of these cases "in which the government is more like the plaintiff."[19]

## ARGUMENT

In order to decide this Motion, the Court needs only to determine whether Plaintiff waived the protections of the attorney-client privilege and work-product doctrine with respect to the Burke Warren invoices by placing the profitability of the High Tech and FICA A Fund transactions at issue in these cases.  Because relevance is not the standard for determining whether waiver has occurred, the Court can decide this Motion without reference to the law of economic substance or profit motive under Internal Revenue Code section 165(c).[20]  Defendant has failed to carry its burden of establishing that there has been a waiver of the attorney-client

---

[17] During the examination of FICA A Fund, the IRS issued a settlement initiative for transactions it considered to be the same as or substantially similar to Notice 2000-44 transactions.  Announcement 2004-46, 2004-1 C.B. 964.  Any taxpayer who failed to accept the settlement offer was denied administrative appeal rights.  *Id.*

[18] Compl. ¶¶ 55, 57, 59, 65, 72, 73, *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, No. 05-40151 (D. Mass. Sept. 1, 2005) (2001 tax year); Compl. ¶¶ 52, 54, 56, 62, 69, 70, *Fid. Int'l Currency Advisor A Fund, L.L.C. v. United States*, No. 06-40130 (D. Mass. June 20, 2006) (2002 tax year); Compl. ¶¶ 66, 68, 70, 76, 87, 88, *Fid. High Tech Advisor A Fund, L.L.C. v. United States*, No. 06-40244 (D. Mass. Nov. 13, 2006) (2001 tax year); Compl. ¶¶ 69, 71, 73, 79, 90, 91, *Fid. High Tech Advisor A Fund, L.L.C. v. United States*, No. 06-40243 (D. Mass. Nov. 13, 2006) (2002 tax year).

[19] Status Conference Tr. 14:5-6, July 28, 2008.

[20] It is for this reason that Plaintiff does not endeavor to correct Defendant's inaccurate and incomplete description of the economic substance doctrine as applied in the First Circuit.

privilege and work-product doctrine with respect to the Burke Warren invoices, because (1) it was the Government, not Plaintiff, that placed the profitability at issue, and (2) Plaintiff has not selectively disclosed some privileged communications while withholding others.[21]  Moreover, the Court should not consider Defendant's arguments because Defendant has already filed (and lost) a motion to compel with respect to the same documents and there have been no changes in the facts or the law or the parties' positions that would warrant raising a new argument with respect to the same documents the Court has already reviewed.

**I.    Plaintiff Did Not Waive Privilege As He Has Not Placed the Information in the Invoices At Issue**

Defendant occupies the majority of its Memorandum arguing that the fees Plaintiff paid to Burke Warren are relevant, rather than providing any analysis or citing any legal authority supporting its argument that Plaintiff waived the privilege the Court has already found applies to the invoices.[22]  Even if the Court ultimately determines that the fees paid to Burke Warren are relevant, "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."[23]  Using a standard of relevance to determine whether the attorney-client privilege has

---

[21] *See In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) ("The burden of establishing that an exception to the applicable privilege applies rests with the party seeking discovery of the allegedly privileged materials or information."); Order at 7 ("The Government bears the burden of establishing that there has been a waiver of the privilege(s).").

[22] Order at 13.

[23] *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994); *see also Emerson Elec. Co. v. Ouellette*, No. 96-364, 1998 WL 34088465, at *6 (D.N.H. May 12, 1998) (quoting *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 864); *McCafferty's, Inc. v. Bank of Glen Burnie*, No. 96-3656, 1998 U.S. Dist. LEXIS 12859, at *8-9 (D. Md. Jan. 27, 1998) ("[M]erely because an attorney-client communication may be relevant to a matter in issue . . . this does not, alone, abrogate the privilege.").

been waived "completely undermines" the purpose of the attorney-client privilege—"to assure a client that he or she can consult with counsel in confidence."[24]

The proper standard for determining whether there has been an implied waiver is whether "'the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and . . . to allow the privilege to protect against disclosure of that information' would [be] unfair to the opposing party."[25]  The First Circuit noted that "courts should be cautious about finding implied waivers" and that "the case law reveals few genuine instances of implied waiver."[26]

Plaintiff has not affirmatively put the Burke Warren invoices at issue in this litigation.  A party can place a privileged communication at issue by "affirmatively relying upon the communication to prove his or her case"[27] or seeking to use a document over which privilege has been asserted.[28]  In order for a communication to be placed at issue, a party "must inject a new factual or legal issue into the case."[29]  This occurs most often through the use of an affirmative defense.[30]  Plaintiff has done none of these things.

---

[24] *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 864.

[25] *In re Keeper of Records*, 348 F.3d 16, 24 (1st Cir. 2003) (quoting 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 503.41[1] (Joseph M. McLaughlin ed. 1997)).

[26] *Id.* at 23; *see also Fed. Deposit Ins. Corp. v. R.W. Beck, Inc.*, No. 01-11982, 2004 WL 1474579, at *1 (D. Mass. July 1, 2004) (noting that implied waiver of the attorney-client privilege is "hen's teeth rare").  The limited circumstances in which courts have found waiver are "when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense."  *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982) (citations omitted).  None of these circumstances apply in the present case.

[27] *McCafferty's, Inc.*, 1998 U.S. Dist. LEXIS 12859, at *8.

[28] *See Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004) ("[T]he at-issue waiver doctrine does not apply here, as Dexia has not sought to use any of the documents for which it asserts privilege.").

[29] *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987).

[30] *Id.*

Defendant argues that Plaintiff placed the fees paid to Burke Warren at issue by claiming that the High Tech and FICA A Fund transactions had a reasonable possibility of earning a profit, relying on factual statements in the Complaints.[31] In the actual counts of the Complaints, however, Plaintiff claimed that the *government* had erroneously asserted that the High Tech and FICA A Fund transactions lacked economic substance and were not entered into with a profit motive.[32] In these counts, Plaintiff was merely responding to the government's assertions in the FPAAs issued to Plaintiff. Thus, to the extent that the profitability of the transactions is at issue, it was the government's "affirmative act," not Plaintiff's, that injected this issue into these cases. Merely denying an allegation does not impliedly waive the attorney-client privilege.[33] Defendant's argument amounts to the position that any time an IRS agent makes a claim of no economic substance or no profit motive, the taxpayer is left with the choice of waiving its attorney-client privilege to contest the IRS's assertions or protecting its privilege by conceding the assertions. It cannot be the case that the government can force a privilege waiver simply by issuing an FPAA.

In a similar context, the government has argued that by asserting that a transaction had business purpose, the taxpayer had waived its attorney-client privilege with respect to any documents that demonstrated the purposes of the transaction.[34] The court rejected the government's argument, noting that "the rule is that a party may not attempt to demonstrate

---

[31] Def.'s Mem. at 7.

[32] *See supra* note 18.

[33] *See Lorenz*, 815 F.2d at 1098 ("To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations."); *McCafferty's, Inc.*, 1998 U.S. Dist. LEXIS 12859, at *11-12 ("I do not see how it can be seriously said that by merely denying [the plaintiff's] allegations, the [defendant] has thereby impliedly waived the protections afforded its communications with counsel—especially given the [defendant's] undeviating insistence that these communications are privileged.").

[34] *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47, 49 (D. Conn. 2004).

intent (or any fact, for that matter) by *selectively* revealing communications with counsel or by making assertions that can only be confirmed by reviewing privileged communications."[35] The court found that the taxpayer had done neither of these things: "It has not argued that it acted on the advice of counsel. It has not argued that it acted on the basis of some motivation that can only be fathomed by the inspection of privileged communications. It has not disclosed some advice of counsel while withholding other advice."[36]

In the present case, Plaintiff has not selectively revealed communications with Burke Warren about the legal services provided to Plaintiff. Plaintiff has consistently asserted that the nature of legal services provided by Burke Warren, as reflected in the invoices, is protected by the attorney-client privilege. Neither has Plaintiff argued that he was following Burke Warren's advice in determining whether the transactions had a reasonable possibility of earning a profit. Nor has Plaintiff argued that he acted on the basis of a motivation that can be discerned from the Burke Warren invoices. Even if the Court finds that Plaintiff has placed the amount of the fees paid to Burke Warren at issue, "that is not the same as placing the advice of [his] counsel at issue and so does not work a forfeiture of the attorney-client privilege."[37]

Quite simply, Defendant's sword-and-shield argument is inapplicable here. Where a party "has no intention to prove its case in any way by reliance on any attorney-client communication[,] . . . [i]t thus cannot be said that [the party] is using the attorney-client privilege as a 'sword and shield' through selective disclosure of privileged documents."[38]

Finally, Plaintiff's withholding of the documents is not unfair to Defendant:

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at 49-50.

[38] *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992).

10

> The mere fact that the government would also like to use [the plaintiff's] privileged communications in support of its case, does not make withholding those documents unfair. There is simply no authority for the proposition that a privilege is forfeited solely because information protected by it might disprove the case of the party claiming the privilege.[39]

It is not unfair for Plaintiff to withhold privileged communications that Defendant merely wants to support its case when Plaintiff has not placed those communications at issue.[40]

## II.    Defendant Waived Its Privilege Arguments

Defendant's present Motion is an extension of earlier motion practice that Defendant initiated ten months ago. Defendant now asks this Court to review the very same invoices that it reviewed in connection with Defendant's prior motion to compel to determine whether Plaintiff waived privilege with respect to those invoices. Defendant's present Motion is not based on any new facts that Defendant has learned. Defendant's argument that Plaintiff has put the invoices at issue is based on statements in the Complaints,[41] the latest of which was filed in November 2006. Nor is Defendant's present Motion based on new law that has developed in the ten months since it filed its first motion. The case law Defendant cites in its Memorandum was in existence at the time Defendant filed its first motion to compel. Just as courts generally do not consider arguments raised for the first time in a reply brief,[42] this Court should not consider Defendant's

---

[39] *TIFD III-E, Inc.*, 223 F.R.D. at 49.

[40] Defendant's professed need for the Burke Warren invoices is belied by the fact that Defendant's experts have opined that neither the High Tech nor the FICA A Fund transactions had a reasonable possibility of profit. Expert Report of Gordon Rausser 8-9 (Mar. 31, 2008); Expert Report of A. Lawrence Kolbe 40 (Mar. 31, 2008); Expert Report of Gordon Rausser 7 (Aug. 7, 2007); Expert Report of A. Lawrence Kolbe 59 (Aug. 7, 2007). Including additional fees in the reasonable possibility of profit calculations will not change Defendant's experts' opinions; they will still opine that there was no reasonable possibility of profit for the transactions. Additionally, the relative size of the fees paid to Burke Warren (overestimated at $895,000) would not significantly affect the profitability calculation.

[41] Def.'s Mem. at 7.

[42] *See, e.g., A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d 454, 469 (S.D.N.Y. 2008) ("Because the argument is raised for the first time in the reply, this Court need not consider it."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 399 n.7 (D. Mass. 2007) ("Normally, this Court would not consider

11

new privilege argument on the same invoices in a new motion to compel filed ten months after the first motion to compel (and two months before trial).

## CONCLUSION

Plaintiff has not waived the protections of the attorney-client privilege or work-product doctrine over the Burke Warren legal invoices. Defendant, not Plaintiff, injected the issue of fees paid to Burke Warren into this litigation, and Plaintiff has not selectively disclosed privileged information. Defendant cannot justify breaking Plaintiff's privilege by asserting that the legal fees are relevant because relevance is not the standard for determining whether an implicit waiver of privilege has occurred. For these reasons, Defendant's Motion should be denied.

Respectfully submitted this 13th day of August 2008.

> PLAINTIFF
> FIDELITY INTERNATIONAL CURRENCY ADVISOR
> A FUND, L.L.C. by the Tax Matters Partner, and
> FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by
> the Tax Matters Partner
>
>
> /s/ Lena Amanti
> David J. Curtin, D.C. Bar #281220
> Ronald L. Buch, Jr., D.C. Bar #450903
> Lena Amanti, D.C. Bar #490791
> MCKEE NELSON LLP
> 1919 M Street, N.W., Suite 200
> Washington, D.C. 20036
> Telephone: (202) 775-1880
> Facsimile: (202) 775-8586
> Email: dcurtin@mckeenelson.com
>         rbuch@mckeenelson.com
>         lamanti@mckeenelson.com

---

arguments first raised in a reply brief."); *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 10 n.5 (D. Me. 1991) (declining to address an argument that was not raised in the plaintiffs' first memorandum in support of the motion to compel).

John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone: (508) 791-8500
Facsimile: (508) 791-8502
Email: jomirick@mirickoconnell.com

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 13, 2008.

/s/ Lena Amanti
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: lamanti@mckeenelson.com

# EXHIBIT A

**FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C. v. UNITED STATES**
Nos. 05-40151 & 06-40130 (D. Mass.)

**FIDELITY HIGH TECH ADVISOR A FUND, L.L.C. v. UNITED STATES**
Nos. 06-40243 & 06-40244 (D. Mass.)

**Contested Redaction Log Items**

| Begin Bates | End Bates | Subject Matter | Privilege Basis | Privilege Status |
|---|---|---|---|---|
| 048782 | 048784 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Defendant has failed to carry its burden of establishing that there has been a waiver of the attorney-client privilege because (1) it was the Government, not Plaintiff, that placed the reasonable possibility of profit at issue and (2) Plaintiff has not selectively disclosed some favorable privileged communications while withholding other unfavorable communications. | | | | |
| 048785 | 048788 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048789 | 048791 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048792 | 048794 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048795 | 048799 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048800 | 048804 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048805 | 048808 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048809 | 048813 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |

| Begin Bates | End Bates | Subject Matter | Privilege Basis | Privilege Status |
|---|---|---|---|---|
| 048814 | 048823 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048824 | 048827 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048828 | 048829 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048830 | 048831 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048832 | 048834 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048835 | 048838 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048839 | 048842 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048843 | 048847 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048848 | 048851 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048852 | 048854 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048855 | 048856 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048857 | 048859 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048860 | 048862 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048863 | 048864 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |
| 048865 | 048867 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided | AC & WP |
| Defendant has failed to carry its burden of establishing that there has been a waiver of the attorney-client privilege and work-product doctrine because (1) it was the Government, not Plaintiff, that placed the reasonable possibility of profit at issue and (2) Plaintiff has not selectively disclosed some favorable privileged communications while withholding other unfavorable communications. | | | | |

| Begin Bates | End Bates | Subject Matter | Privilege Basis | Privilege Status |
|---|---|---|---|---|
| 048868 | 048869 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| 048870 | 048871 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| 048872 | 048874 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| 048875 | 048877 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| 048878 | 048880 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| 048881 | 048882 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| 048883 | 048887 | Legal services provided to client | Confidential communication from counsel to client reflecting legal services provided<br>Work product prepared in anticipation of litigation | AC & WP |
| Plaintiff incorporates by reference the entry at Bates numbers 048865-67. | | | | |
| HT007520 | HT007523 | Legal services provided to client | Confidential communication from counsel to client reflecting legal advice | AC |
| Plaintiff incorporates by reference the entry at Bates numbers 048782-84. | | | | |