UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 05-40151-FDS 06-40130-FDS |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by the Tax Matters Partner | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 06-40243-FDS Civil Nos. 06-40244-FDS |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM BURKE WARREN MACKAY & SERRITELLA, FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, FIDELITY HIGH TECH ADVISOR A FUND, CARRUTH MANAGEMENT, CARRUTH ASSOCIATES, AND AFFILIATES**

It would be fundamentally unfair, and against the weight of authority, for the plaintiff to continue to contend that it had a reasonable possibility of non-tax profit from these transactions, and that the plaintiff entered into these transactions with the primary motivation of realizing a non-tax profit, while depriving the United States of evidence essential to respond and counter those contentions. Disclosure of the withheld information is the only means of completely analyzing the facts and countering one of the plaintiff's principal claims in this litigation, *viz.*,

that its transactions had economic substance.  It is not for the plaintiff to decide how much

evidence it will withhold that would counter its own claims.

**Background**

A.     **The Plaintiff Misstates the Test for Determining Reasonable Possibility of Non-Tax Profit, and Withholds Evidence Essential to Demonstrate that No Such Reasonable Possibility Existed Here.**

The plaintiff continues to argue, most simplistically and incorrectly, that the transactions

had a reasonable possibility of profit regardless of the enormity of the fees paid to Burke Warren,

and, therefore, there is no real need to produce these invoices.  (*See* Pl. Opp. to Mot. to Compel

Prod. of Invoices (hereinafter referred to as "Pl. Opp.") at 4-5.)  The plaintiff's argument is

wrong in at least two respects.  First, the test is not whether there was some remote possibility of

profit; it is whether, when viewed objectively, there was a *reasonable* possibility of non-tax

profit.  *See Dewees v. Commissioner*, 870 F.2d 21, 32, 35 (1st Cir. 1989).  Second, reasonable

possibility of profit is not determined, as the plaintiff suggests, by conducting a basic

identification of maximum possible revenues and then deducting from that amount less than all

of the related  transaction costs and  fees.  Rather, the proper analysis, as discussed in our

opening brief, requires that all transaction costs and fees be taken into account in determining the

profit potential of the transactions.  (Opening Mem. at 7-10.)

Plaintiff's argument that even if the Burke Warren legal fees are taken into account, the

transactions would still show a profit misperceives the nature of the profit analysis required by

the economic substance doctrine.  (Pl. Opp at 4-5.)  That profit analysis is not, as plaintiffs would

have it, simply to see whether the maximum profit potential exceeds the maximum transaction

expenses.  The principal, but hardly the sole, defect of such a flawed analysis is that it fails to

take into account the *probability* that the transaction would ever generate this maximum profit. The importance of probabilities to the analysis of profit potential was fully discussed in the recent decision of *Stobie Creek v. United States*, 300 WL 2968270 * 44, *55 (Fed. Cl. 7/31/08). There the court stressed that the probability of profit and non-profit is absolutely essential information in evaluating the objective profit potential of the transaction. *Id* at *44, *55-56. In this endeavor, the court noted "that a reasonable investor would take into account *all of the costs and fees* associated with entering and completing the transaction in evaluating whether an investment has a reasonable possibility of making a profit." *Id* at *57 (emphasis added). Critically, such costs and fees can have significant effect on whether the transaction is likely to have a reasonable possibility of profit. When all fees and transaction costs were taken into account there, the court observed that the negative expected rate of return on the two paired option transactions at issue would increase to over -90%. *Id* at *54, n. 46. Based on such a hugely negative expected rate of return, the court concluded that when objectively viewed, the transaction could have no reasonable possibility of profit. *Id*

In short, the magnitude of the expenses incurred, when coupled with the probability of the various potential outcomes of profit and non-profit of the transaction, can have a dramatic effect on the expected rate of return on the transaction, and, in turn, the reasonable possibility of profit on the transaction. Plaintiff's "back-of-the envelope" approach to determining profit simply ignores the standard economic tools required by the economic substance doctrine, and is useless here.

Instead, a proper analysis requires the use of actual economic tools, such as probability-weighted expected-return analysis, which takes into account all of the likely outcomes of the

transactions. That proper analysis, in turn, requires the calculation of the expenses allocable to the transaction, including those paid to Burke Warren. It is this information, which would allow for a complete and proper analysis, the plaintiff seeks to keep secret.[1]

**B.     The Plaintiff Misstates the Issues in this Case and Misstates its Reasons for making the Factual Allegations and Claims that Led to the Waiver of Privilege.**

While seeking to prevent a complete and thorough analysis, the plaintiff again, for at least the sixth time in this case, argues that it is only the nominal plaintiff, and that the United States, or more specifically, the IRS, is in reality the actual plaintiff in this litigation. The plaintiff tries the argument again in this instance apparently to attempt to convince the Court that it was essentially forced by the actions of the IRS to bring these suits and to assert the specific claims of readjustment that it did, and therefore there can be no implicit waiver of the attorney-client privilege. (Pl. Opp. at 5-6, 9.) But, the reason for the plaintiff's claims are of no import. As discussed further below, the plaintiff waived any privilege by putting at issue the withheld Burke Warren information, whether that information was put at issue as part of a claim or part of a defense. Plaintiff made its claims, and now cannot hide behind privilege to conceal advice that would disprove those claims. Moreover, the plaintiff's allegations are again wrong. The plaintiff, and not the IRS, chose to litigate, chose the forum, chose the factual assertions, and chose what claims to raise. Once the plaintiff made the decision to litigate here, the IRS's determinations with respect to the plaintiff's tax liabilities became wholly irrelevant.

---

[1]Even if the plaintiffs' simple calculations were considered, in isolation, as determinative of the profitability factor, it would still leave the issue of reasonableness. It is not for the plaintiff to decide what the Court should include in the analysis of the economic-substance issues, which include analysis of this reasonable-possibility-of-profit issue.

4

Besides being irrelevant here, the plaintiff's argument that it is really a defendant, and, in fact, the IRS is actually the plaintiff, was rejected each of the first five times the plaintiff made it.[2]  The plaintiff's attempt should be rejected, yet again, for many reasons.  This case is before the Court *de novo*.  (*See*, *e.g.*, Am. Ord. On Pl.'s Mot. to Compel, May 10, 2007, at 4) (citing *TIFD III-E Inc. v. United States*, 342 F.Supp. 94, 108 (D. Conn. 2004) (The court is to review plaintiff's "tax liability *de novo*, ignoring the factual finding and legal analysis of the Commissioner of Internal Revenue"))[3].  As such, the plaintiff made its allegations of reasonable possibility of non-tax profit because it believed that it helped its case, and the plaintiff continues to make those allegations, thereby waiving privilege.  Because the plaintiff continues, nonetheless, to make the argument that the United States essentially forced it to make the claims that it did in the Complaint, we again rebut it.

For the sake of clarity, we begin with a description of the applicable procedure followed here.  Administrative and judicial procedures with respect to the handling of partnership income tax issues were changed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, Sept. 3, 1982.  The TEFRA partnership provisions of the Internal Revenue Code are currently set forth in Subtitle F, Chapter 63C (§§ 6221-6234).  Subject to some exceptions, the TEFRA provisions apply to all partnership years beginning after September 3, 1982, including this partnership.  At the conclusion of the IRS examination, the IRS mailed a

---

[2]*See* Docket Entry No. 114, denying plaintiff's motion to compel; Electronic Clerk's Notes of 7/12/2007 denying plaintiff's motion for reconsideration of denial of motion to compel; Electronic Clerk's Notes of 10/02/2007 denying plaintiff's motion to compel; Electronic Clerk's Notes of 01/28/2008 denying plaintiff's motion to compel production of documents from IRS relating to other tax shelters, and denying plaintiff's motion to compel a Federal Rule of Civil Procedure 30(b)(6) deposition of the IRS.

[3]*TIFD III-E* rev'd on other grounds, 459 F.3d 220 (2nd. Cir. 2006).

5

Notice of Final Partnership Administrative Adjustment ("FPAA") to the partners.  The

partnership then had a choice of whether to seek readjustment of partnership items, and a choice

of forum in which to seek that readjustment.  26 U.S.C. 6226(a).  This plaintiff chose to litigate,

and to do so in the district court.  Importantly, the Court has jurisdiction to "determine all

partnership items of the partnership for the partnership taxable year to which the notice of final

partnership administrative adjustment relates." 26 U.S.C. § 6226(f).  The Court does not

"review" the IRS's determinations under the Administrative Procedures Act, 5 U.S.C. § 701, *et.*

*seq*., and the plaintiff need not rebut them.  As a *de novo* proceeding, the conclusions or analyses

of the IRS behind the issuance of the FPAA are utterly irrelevant to the Court's independent

determination of plaintiff's claims in this case.  *See, e.g., TIFD III-E Inc. v. United States*, 342

F.Supp. 94, 108 (D. Conn. 2004) (The court is to review plaintiff's "tax liability *de novo*,

ignoring the factual finding and legal analysis of the Commissioner of Internal Revenue");[4] *In re*

*G-1 Holdings, Inc.*, Civ. No. 02-03082 (WGB) (D.N.J. July 16, 2004); *Cook v. United States*, 46

Fed. Cl. 110, 113 (Fed. Cl. 2000) ("factual issues are tried *de novo* in this court, with no weight

given to subsidiary factual finding made by the Service in its internal administrative

proceedings."); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (Tax Ct. 1974)

(this "proceeding is *de novo;* our determination as to a petitioner's tax liability must be based on

the merits of the case and not any previous record developed at the administrative level."); and

*Revell, Inc. v. Riddell*, 273 F.2d 649, 658-59 (9th Cir. 1959).  In determining the partnership

items *de novo*, the Court is considering whether the plaintiff's claimed tax treatment is correct,

and not whether the IRS's adjustments are incorrect.

---

[4]*Reversed on other grounds,* 459 F.3d 220 (Fed. Cir. 2006).

Because the IRS's determinations are irrelevant, it is clear that the plaintiff is, and can only be considered as, the proponent of the allegations in the Complaint. It should not now be able to hide behind its simultaneous privilege claims.

## Argument

I. **The Plaintiff Waived Privilege by Voluntarily Claiming Reasonable Possibility of Non-Tax Profit, and Cannot Simultaneously Prevent Discovery of the Evidence Essential to Completely Rebut Those Claims.**

The plaintiff makes an overarching and persistent claim that acts as an implied waiver of privilege with respect to the Burke Warren invoices it has redacted. That claim is that these transactions had a reasonable possibility of a non-tax profit. As explained in the opening memorandum, (*See* Mem. at 7-10), and *supra*, the information on the invoices is necessary to completely refute this claim

The law in this Circuit is clear that there is an implied waiver where a plaintiff advances a claim to a court while trying to rely on privilege to withhold materials its adversary needs to defend the claim. The implicit-waiver doctrine exists to ensure fundamental fairness to the parties. *See*, *e.g.*, *XYZ Corp. v. United States (In Re Keeper of the Records)*, 348 F.3d 16, 24 (1st Cir. 2003); *Greater Newburyport Clamshell Alliance v. Public Service Co.*, 838 F.2d 13, 20 (1st Cir. 1988)("fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend"). The doctrine also exists to limit any hindrance of the search for truth. While the attorney-client privilege should not lightly be deemed waived, it "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *XYZ Corp. v. United States*, 348 F.3d at 22. "Particularly in a civil case, a privileged party cannot fairly be permitted to disclose as much as

he pleases and then to withhold the remainder to the detriment of the defendant." *Greater Newburyport Clamshell Alliance,* 838 F.2d at 20. The First Circuit drew a clear distinction between criminal cases involving constitutional protections on the one hand, and civil cases on the other. Where the privilege being invoked is not constitutionally protected, like here, the "liberal federal policy favoring discovery is of substantially greater relative weight." *Id.* at 19. In these types of cases, the courts in this Circuit may apply the so-called "automatic waiver" rule.

Under the automatic-waiver rule, a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. *See Id.* at 17. Applied to the facts of this case, the automatic waiver would apply to the Burke Warren invoices, which, as discussed, are not only relevant but also essential to a complete refutation of the plaintiff's claims.

Despite the applicability of the automatic-waiver rule to this case, the plaintiff incorrectly declares that it can continue to make these claims while withholding relevant evidence. Instead, the plaintiff erroneously cites to the inapplicable law in other courts. Some courts have rejected the automatic-waiver rule. But, the First Circuit has not. While not applying the automatic-waiver rule in all instances, the First Circuit has in each instance used one of two "general approaches" – automatic waiver and a balancing test– and adopted the balancing test in cases involving quasi-constitutional privilege issues. *Id.* at 17, 20; *see also, Sax v. Sax*, 136 F.R.D. 542, 544 (D. Mass. 1991) ("Finding the situation in the *Clamshell Alliance* case to be 'quasi-constitutional' since the conversations took place at a time when the attorney was prepared a defense [sic] to a criminal case, the Court rejected the 'automatic waiver rule' and applied the balancing test.") Of course, this case does not involve quasi-constitutional privilege

8

issues, making the automatic-waiver rule the applicable rule. Nonetheless, even under the so-called balancing test, the Burke Warren invoices must be produced in unredacted form.

The balancing test strikes a balance between the fairness/truth concerns and the privilege concerns in quasi-constitutional cases. *See Id.* at 20-22. Under the balancing test, the court weighs the need for discovery against the need to protect the secrecy of the communication. *Id.* The balancing test requires a thorough review of the facts of the case. *See XYZ Corp. v. U.S.* at 23. The test requires consideration of

> whether a defendant has demonstrated the relevancy of the materials sought, whether there is any reasonable alternative source for the information the materials contain, and whether the plaintiff's presumptively valid interest in preserving the confidentiality of its privileged communications outweighs any need for disclosure.

*FDIC v. R.W. Beck, Inc.*, 2004 U.S. Dist. LEXIS 12128 at *3, 2004 WL 1474579 at *1 (D. Mass. July 1, 2004). Even under this test, however, the First Circuit held that "in a civil damages action, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend." *Greater Newburyport Clamshell Alliance*, 838 F.2d at 20. Given the First Circuit's clear preference for a "liberal federal policy favoring discovery," *id.* at 20, it is telling that the plaintiff has not even addressed the balancing test, but has instead merely relied on dicta from these same cases suggesting that, at least in quasi-constitutional cases, courts should be "cautious" about finding implied waivers. (Pl. Opp. at 8.) Caution, however, also does not change the result.

The United States has demonstrated relevance, thereby leaving the plaintiff to prove that there is an alternative source for the information and that its privilege interests outweigh the need for the discovery.[5] The plaintiff has not begun to, and cannot, meet that burden. As described

---

[5] The plaintiff incorrectly alleges that the United States has the burden of proving the

(continued...)

9

above, without this information the United States cannot determine all of the costs to be included

in one of the most fundamental calculations in this case– whether there was a reasonable

possibility of a non-tax profit.  The plaintiff recognized the centrality of that issue, having

included it in its pleadings and expert reports.  (*See* Opening Mem. at 7.)  There is no alternative

source of that information.  In fact, during negotiations to try to resolve this matter, the United

States requested, in lieu of production, that the plaintiff provide the total cost of Burke Warren's

advice allocable to each transaction at issue.  The plaintiff refused to provide that information.

That information, in turn, is essential to refute the plaintiff's allegations, and particularly those

repeated by its expert-witness.  The plaintiff's expert witness' calculations, by his own

admission, did not include these fees because he did not "make . . . [the] assumption" that legal

fees were associated with the transactions.  (Carron *Fidelity Int'l* Dep. Tr. at 34:6-23.)  Without

knowing the full extent of the allocable fees, one cannot completely refute the plaintiff's and its

expert's allegations.[6]  Having failed to discuss the balancing test, the plaintiff provides no

evidence that its interests outweigh the need for this discovery.  The solution, if the plaintiff

---

[5](...continued)
waiver.  The inapplicable case cited by the plaintiff for that proposition, *In re Grand Jury Subpoena*, 220 F.R.D. 130 (D. Mass), deals with exceptions to privilege, such as the joint-client exception, rather than waivers.  Those cases that deal with waivers assign the burden to the proponent of the privilege.  *See XYZ Corp. v. U.S.*, 348 F.3d at 22; *Sax v. Sax*, 136 F.R.D. at 543.

[6]The United States is in fact entitled to more than just a dollar amount which it sought as a means to resolve the matter without motion practice; the United States is entitled to know to what specific subjects the costs are allocable.  For example, we are entitled to know whether some charges were for Burke Warren's advice when the Egans were shopping for tax shelters, or for its reviewing of the purportedly independent opinion letters, or for some other service.  That information would, among other things, allow the United States to effectively cross-examine the plaintiff's expert witness, Mr. Carron, on his exclusion of these expenses from the reasonable -possibility-of-profit calculations (not analyses) he performed.  As described in the opening memorandum (at pp. 8-10), Mr. Carron testified that he adopted a but-for test to determine which expenses to include in his calculations, but made no attempt to determine whether the Burke Warren or other expenses should, in fact, be included.

insists on retaining its privilege claims, is to bar it from also making its claims that there was a reasonable possibility of non-tax profit. The solution is not, as the plaintiff wants, to prevent defense of the claims.[7]

The plaintiff's contention that it has not put the contents of the invoices at issue, (Pl. Opp. at 8), is plainly wrong. As described in the opening memorandum, the plaintiff put the invoices at issue in the Complaints and in its expert reports. (Opening Mem. at 7.) The plaintiff even raised this issue in its ill-conceived, and ill-fated, motion to exclude the United States' expert witness, Dr. Rausser. In that motion, the plaintiff alleged that the Burke Warren legal fees were "tax planning" fees, and therefore should not be included in any reasonable-possibility-of-profit analysis. (*See* Pl. Mem. in Support of Mot. to Exclude Rausser at 27.) The plaintiff attempted to take to task the United States' expert for failing to consider "the possibility that such fees were attributable to numerous other transactions or estate planning services . . . " and therefore not necessarily "properly allocated to the underlying investments." (Id.) But, it is the plaintiff that has withheld the information from the United States, and its experts, that would allow one to make that determination. Moreover, of course, we know that Burke Warren was involved in more than "tax planning." As described in the memoranda supporting the motion to compel production of documents from the plaintiff (Docket-Entry Nos. 175 and 206), Burke Warren's services went far beyond tax planning. Burke Warren, for example, was immersed in the review of the so-called "independent" opinion letters from the promoter-supplied firms. Even the plaintiff admitted that Burke Warren was working in earnest on these transactions. With respect

---

[7]The plaintiff may also stipulate that the Burke Warren legal fees, (Pl. Opp. at 4), are all allocable to these transactions and would not have been incurred but for these transactions. The plaintiff should have no problem stipulating, given its insistence that the allocable dollar amounts do not matter.

to the Fidelity International transaction, which the plaintiff refers to as "FICA A," the plaintiff

stated that "Ms. Denby[, of Burke Warren,] provided Plaintiff with legal advice about the

structure of FICA A Fund, the legal formation of the FICA A Fund entities, the asset

characteristics that would be appropriate for FICA A Fund, how to transfer particular assets

between FICA A Fund and other entities, and the independent opinion letters . . . ." (Pl. Opp. to

First Mot. to Compel, docket Entry No. 190, at 3.)  Even by the plaintiff's own accounting, these

services were linked to the transactions.  Without the redacted information, however, the plaintiff

can continue to claim that they are not.[8]

     Despite this inappropriate dual use of the privilege claims, the plaintiff still contends that,

even if the withheld information is at issue, the plaintiff is entitled to withhold it.  (*See* Pl. Opp.

at 9.)  The plaintiff incorrectly relies on *TIFD III-E, Inc.*[9] for the proposition that a party does not

waive privilege to documents demonstrating intent simply by having put some of its intent at

issue.  (Id.)  In that case, the Court upheld privilege claims for documents that might show a

different intent than the one claimed by the plaintiff.  (Id. at 49.)  But, of course, the

circumstances here are entirely different.  The withheld documents here are factual.  That is, they

contain the amount of legal fees allocable to the transactions.  The withheld Burke Warren

invoices are not being sought to prove intent.  This is not a case in which the United States

wishes to prove with attorney-client communications the plaintiff's state of mind.  Instead,

---

[8]Additionally, the plaintiff lists Stephanie Denby of Burke Warren as a witness for trial. This information may become essential to rebut any testimony Ms. Denby gives, for example, about the existence of a non-tax business purpose.

[9]342 F.Supp. 94, 108 (D. Conn. 2004), rev'd on other grounds, 459 F.3d 220 (2nd. Cir. 2006)

disclosure of the withheld information is the only way to defend completely a claim of reasonable possibility of non-tax profit.

II.    **The United States Has Appropriately Requested, in Accordance with the Court's Order, a Review of the Privilege Assertions with Respect to These Invoices Because it Is Clear That the Plaintiff Continues to Put Them at Issue.**

The plaintiff's brief argument that the United States waived its rights to these documents is unsupported by any applicable law, wrong on the facts, and in contravention of the Court's order.  The plaintiff misleadingly states that it can continue to withhold this information because there are no "new facts" and the last Complaint, in which the withheld information was first put at issue, was filed in November 2006.  Even if that were the entire set of facts, it would not prohibit this motion.  The plaintiff cites no law or facts whatsoever to support its argument that this motion is somehow time barred.  But, of course, the plaintiff did not give the entire set of facts.  The facts are that the plaintiff first raised these issues in its Complaints.  Then, it raised the issues in its expert reports.  Then, it raised the issues in its motion to exclude the United States' expert.  Then, its expert witness, Mr. Carron, testified, first on November 20, 2007 and then on June 24, 2008, that he did not include the Burke Warren charges in his calculations, but reached a conclusion, still put forth by the plaintiff, that there was a reasonable possibility of a non-tax profit from these transactions.  Given the plaintiff's persistent argument in that regard, the withheld information falls squarely within the category of documents on which the United States was allowed to move for reconsideration.  (*See* Ord. on First Mot. to Compel at 9 n.4.)

Moreover, this information should have been disclosed under the Court's earlier order.  In that order, the Court required the plaintiff "to turn over any documents or materials from other counsel which go to the Plaintiff's reliance on the subject matters addressed in the Sidley Austin

13

and Proskauer Rose opinions and conclusions by such other counsel which cast doubt on such opinions." (Id. at 9.) This information casts doubt on those opinions. In the opinion letter from Sidley Austin, for example, the law firm simply accepted Richard Egan's "representations," which included that Egan "believed he had a reasonable opportunity to earn a reasonable profit from the [Fidelity International] Transactions in excess of all fees and transaction costs without regard to tax benefits." (*See* Govt. Ex. 6, excerpts of Sidley Austin opinion letter, at p.1 ¶2 and p.2.) That is yet another example of where the plaintiff continues to put at issue the reasonableness or unreasonableness of the possibility of a non-tax profit. Additionally, the magnitude of the allocable Burke Warren fees certainly casts doubt on any opinion, such as Sidley Austin's, that relies on representations made by Richard Egan regarding the possibility of non-tax profit after consideration of those and other fees. As such, the invoices must be produced in unredacted form even under the Court's initial Order.

To the extent there are other documents still being withheld in their entirety or redacted that similarly cast doubt on the Sidley Austin and/or Proskauer Rose opinion letters, they should have been produced long ago and must be produced immediately.

## Conclusion

Because the plaintiff continues to argue, as it has since the outset of this case, that there was a reasonable possibility of a non-tax profit from these transactions, it has waived privilege to the withheld Burke Warren invoices. While the waiver is automatic, the result is the same even under a balancing test. It would be fundamentally unfair for the plaintiff to continue to make this argument, and to argue that it was motivated by a non-tax profit, while the plaintiff withholds information essential to completely refuting those claims. Moreover, the invoices, and possibly

14

other documents, should have been disclosed under the court's earlier Order because they cast doubt on the opinions which form the very foundation of the plaintiff's prosecution of this case. The plaintiff's oft-repeated but never successful argument that it is in a defensive posture should be given no weight, and changes nothing. The plaintiff chose to bring this case, which is before the Court *de novo*. The plaintiff knows quite well that it also had a choice of allegations, and chose as it did for tactical reasons. It should not now be allowed to use the privilege claims as both a sword and shield to prevent the United States' defense of the action. The law is clear that

such a dual use is not allowed, and waives any privilege. As such, the invoices must be produced

in unredacted form.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

 /s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Tax Division, U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. VANN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Telephone: (202) 307-6561
Facsimile: (202) 514-5238
E-mail: john.a.lindquist@usdoj.gov
        barry.e.reiferson@usdoj.gov
        heather.vann@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants identified on the Notice of Electronic Filing and copies will be sent to
those indicated as non registered participants on August 27, 2008.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY | ) | |
| ADVISOR A FUND, L.L.C., by the Tax | ) | |
| Matters Partner, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Nos. 05-40151-FDS |
| | ) | 06-40130-FDS |
| v. | ) | |
| | ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| FIDELITY HIGH TECH ADVISOR A FUND, | ) | |
| L.L.C., by the Tax Matters Partner | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Nos. 06-40243-FDS |
| | ) | Civil Nos. 06-40244-FDS |
| v. | ) | |
| | ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF BARRY E. REIFERSON**

I, Barry E. Reiferson, pursuant to the provisions of 28 U.S.C. §1746, certify as follows:

1.      I am a Trial Attorney with the U.S. Department of Justice, employed in the Tax Division, Northern Region, with a post of duty at Washington, D.C.

2.      I am one of the assigned trial attorneys for defendant United States in this case.

3.      I make this declaration based upon my personal knowledge and the documents referenced herein.

4.      The document attached as Government Exhibit 6 is a true and correct copy of excerpts of

a document obtained by the United States in discovery in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C., on this 27th day of August, 2008

/s/ Barry E. Reiferson
BARRY E. REIFERSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-6058

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on August 27, 2008.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

**SIDLEY AUSTIN BROWN & WOOD** LLP

Mr. Richard J. Egan
March 8, 2002
Page 12

II.     **Representations:**

    A.     **Investor Representations:**

    For purpose of rendering our opinion, Investor has represented as follows:

    1.     Investor entered into the Transactions for substantial non-tax business reasons, predominantly related to offsetting various investment risks associated with a large single concentrated holding in a U.S. technology company, and to hedge against currency fluctuations in international markets in which this technology company has significant currency exposure due to sales. Investor at the time was barred from engaging in direct hedging techniques with respect to his holdings. Also Investor has entered into certain Options to hedge against interest rate fluctuations since Investor was drawing on a large line of credit with a floating interest rate. It was important to be able to manage the interest rate risks due to size of the loans as well as the limitations on the Investor's ability to sell his concentrated holdings due to trading restrictions and sales lockouts at a time when the stock price was becoming increasingly volatile. The intent was for these options to provide cushion if the stock price dropped significantly or if interest rates significantly increased.

    2.     Based on advice of the Investment Advisor as to the probability of the referenced property reaching certain price levels at which the Options would be profitable, and on Investor's own independent evaluation, Investor believed that he had a reasonable opportunity to earn a reasonable profit from the Transactions in excess of all fees and transaction costs and without regard to tax benefits.

    3.     Investor contributed the membership interest in World to International for substantial non-tax business reasons. Investor has a very sophisticated investment portfolio. Investor continually attempts to group similar purpose investments in limited liability companies or limited partnerships to provide more accurate investment monitoring, to maintain overall portfolio balance, to achieve diversification of Investor's portfolio and to monitor investment risk. In addition, Investor has actively pursed investment opportunities since 1994 in alternative investments (such as real estate, private equity, venture funds, hedge funds, etc.). In order to boost economic performance, diversify holdings and limit risk. All of these investments have been done through limited liability companies or limited partnerships. Many of these investments have outside participants and/or outside managers. Some of these investments have periodically involved hedging strategies.

    Based on historical correlations, Investor believed that one group of the Options

NY1 5160576v1

010996

GOVERNMENT
EXHIBIT

6

065091

14CARRUTH065091

SIDLEY AUSTIN BROWN & WOOD LLP

Mr. Richard J. Egan
March 8, 2002
Page 15

regard to tax benefits. Co-investor is a sophisticated investor and has engaged in options trading in the past.

**D.    Investment Advisor Representation**

For purpose of rendering our opinion, Investment Advisor has represented that every transaction did occur as described in Part I, above.

**III.    Conclusions**

In rendering our opinions, we have reviewed the facts set forth in Section I above, and representations and advice, including financial information, from various parties to the Transactions and made certain assumptions, which representations, advice and assumptions are referred to below. We have made no independent verification of such representations, advice, assumptions, records, agreements, certificates, instruments, documents, and responses to such inquiries. We have assumed, with your consent, that all of the representations and statements set forth in the documents related to the Transactions ("Transaction Documents") are true and correct, and all of the obligations imposed by any such documents on the parties thereto have been and will be performed or satisfied in accordance with their terms. We also have assumed the genuineness of all signatures, the proper execution of all documents, the authenticity of all documents submitted to us as originals, the conformity to originals of documents submitted to us as copies, and the authenticity of the originals from which any copies were made. Further, we have assumed that the Transaction Documents have not been, subsequent to our review of them, modified or amended in any way. In rendering our opinions, we have also examined such agreements, certificates, instruments and documents, and we have made such other inquires of officers, owners and representatives of the entities involved in the Transactions as we have considered necessary to render the opinions set forth herein. If any such fact, representation, advice, assumption, record, agreement, certificate, instrument, document, or response is inaccurate in any material respect, or any such agreement, certificate, instrument, or document prove not to be authentic, the opinions contained herein may not be relied upon.

In rendering our opinion, we have reviewed the applicable provisions of the Code and of the final, temporary, and proposed Treasury Regulations ("Treas. Reg.", "Treasury Regulations", or "Regulations") promulgated thereunder; relevant decisions of the federal courts; published Revenue Rulings ("Rev. Rul.") and Revenue Procedures ("Rev. Proc.") of the Internal Revenue

NY1 3160876v1

010999