UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Nos. 05-40151-FDS (D. Mass.) 06-40130-FDS (D. Mass.) |
| v. | ) ) | Judge Saylor |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF RICHARD EGAN'S PURPORTED PARTNERS IN FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND**

The plaintiff "partnership" is now moving to exclude the direct testimony, taken by the United States, of the plaintiff's own purported partner, Samuel Mahoney, and Mahoney's business associate, Martin Hawkes. The plaintiff makes this motion on the ground that the testimony, according to the plaintiff, is not credible.[1] Even though the plaintiff conducted a full cross examination of each witness in front of an Irish court, with the assistance of the plaintiff's Irish barrister who was being advised by its U.S. counsel, it failed to either obtain or put forth an ounce of evidence suggesting that the witnesses' answers are not credible. To the contrary, the documentary and testimonial evidence demonstrates the Irish witnesses, who participated in dozens of FDIS tax-shelter transactions, including the Egans', were in fact simply nominees paid a fee for their participation, rather than real partners in any real partnership. The witnesses' testimony in that regard is corroborated by documentary evidence they produced in response to the letter rogatory. It is also corroborated by the evidence obtained in the United States during

---

[1] In the case of Samuel Mahoney, the plaintiff is actually seeking to impeach one of its own purported partners.

discovery.  The plaintiff's motion appears to be borne of the damage done to the plaintiff's case by the evidence, rather than of any legitimate complaint about the method of examination.

Indeed, the examination was carried out in accordance with all applicable rules.  The plaintiff did not object, and in fact did assent, to the method then, when it could have been altered.  The plaintiff's actions are fatal to the motion.  Moreover, the plaintiff was afforded the full panoply of cross-examination rights available in Ireland and in the United States.  The plaintiff's unhappiness with the testimony is not grounds for exclusion, and, as such, the motion must be denied.

## Background

The plaintiff has known since the outset of the letter-rogatory process that the questions asked of the Irish witnesses may be written out and asked of the witnesses by Irish barristers.  In fact, the questions contemplated in 2007 were listed in the letter rogatory.  (Am. Ireland Letter Rogatory, July 2, 2007, docket entry no. 153.)  The plaintiff acknowledged the existence of written questions in its opposition to the motion to amend the letter rogatory.  The plaintiff requested that the "letter rogatory be amended to make it clear that this Court requests that both parties be permitted to put the *listed questions* to the witnesses and ask questions arising from the answers given."  (Pl. Opp. to Mot. to Amend Letter Rogatory, docket entry no. 150, at 4) (emphasis added).[2]

After issuance of the letter rogatory to the judicial authorities of Ireland, the Irish High Court issued an Order that controlled the manner of testimony.  The Order did not adopt the requested procedure whereby listed questions and follow-up questions would be asked by U.S.

---

[2]The amended letter rogatory in fact requested that the plaintiff's lawyers be permitted to ask questions of the witnesses arising from the answers given to the United States' questions. (Am. Letter Rogatory at 16.)

counsel for each party. (*See* Am. Letter Rogatory.) The Order simply compelled the attendance

of the witnesses to give testimony under oath in an Irish court. The Irish High Court ordered the

witnesses to appear and be questioned in court by Irish barristers. The High Court Order was

conveyed to the United States by diplomatic note from the Irish Department of Foreign Affairs

("DFA"). It was then relayed to the plaintiff and this Court at the April 1, 2008 status

conference. (April 1, 2008 Tr. at 5:3-6:8.) The High Court Order stated, in relevant part, as

follows:

> The Department has the honor to inform the Embassy that on 3 March 2008 in the
> High Court in Dublin Mr. Justice Peart heard the requested application and made an
> order that Mr. Samuel Mahoney, Mr. Martin Hawkes and Mr. John Hussey do attend
> before the President of the District Court or such other Judge as may be nominated
> by him on the 13, 14, 15, 16 and 19 May 2008 in Court 27 at the Four Courts, Inns
> Quay, Dublin at 10.30 O'clock in the forenoon . . . , and that they do submit
> themselves for examination by Irish Counsel on behalf of the Defendant and Plaintiff
> and do produce to the District Court the categories of documents set out in the Letter
> Rogatory issued by the United States District Court for the District of Massachusetts
> on 2 July 2007.

After issuance of the High Court's Order, the United States and the witnesses reached an

agreement that ensured that the witnesses would not challenge the High Court Order and delay

indefinitely the taking of evidence.[3] As described in the United States' motion and

memorandum to withdraw the Ireland Letter Rogatory, by agreement between "the Irish

witnesses and the United States, the Irish witnesses voluntarily appeared and gave testimony

under oath in an Irish Court on May 13-14, 2008." (Mem. in Support of Mot. to Withdraw at 3.)

By all accounts– including that of the United States, the witnesses, and The Diversified Group's

U.S. counsel, who each filed an affidavit in Ireland– the *sine qua non* of the agreement was that

the testimony given would be "complete and accurate" and "corroborat[ed]" by documentary

---

[3]The precise agreement and the witnesses' compliance became the subject of a dispute
between the witnesses and the United States that led to the witnesses filing a motion to set aside
the High Court's Order. That motion was settled and the prior agreement was restored.

evidence.  (Pl. Ex. B at 30, attachment to Lindquist Aff.; Pl. Ex. C part 1, Kealey Aff. at p. 12 ¶ 18; Pl. Ex. A, Wachtel Aff. At ¶ 9.)[4]  The proffered answers to agreed-to questions were memorialized in a document later referred to as the *aide memoir*e, to be used in court when the witnesses testified pursuant to the letter rogatory, which the plaintiff referred to as the *commission rogatoire*.  (Pl. Opp. to Mot. to Am. Letter Rogatory, docket entry no. 150, at 4.)

The plaintiff was represented at the letter-rogatory proceedings (at which the testimony was taken) by an Irish barrister who was advised in the courtroom by the plaintiff's U.S. counsel. (May 13, 2008 Tr., Pl. Ex. D, at 15:29-16:2.)

On the first day of testimony in Ireland, the plaintiff, through its barrister, agreed to the procedure by which the testimony was taken.  The *aide memoire*, as it was called in Ireland, was provided to the plaintiff before Mr. Hawkes took the stand, and a day before Mr. Mahoney took the stand.  The plaintiff and the Irish court were advised that the direct-examination questions and presumed answers were known to the United States and were memorialized in an *aide memoire*.  (Id. at 11:19-25.)  In fact, the document was marked as Government's Exhibit 1 (referred to in the transcript as Defendant's Exhibit 1).  (May 14, 2008 Tr., Pl. Ex. F, at 72:8-13.) Before testimony commenced, the Irish court asked the plaintiff if it assented to the procedure by which the direct-examination questions and presumed answers were memorialized.  (*See* May 13, 2008 Tr. at 15:23.)  The plaintiff stated that it had no objection to the questions and answers under the procedure as explained.  (Id. at 16:25-28.)  Rather than object to the procedure as fully described to include memorialized direct-examination questions and answers, the plaintiff made a "shopping list" of objections relating to the form of questions.  (Id. at 17:10, 22:7-21.)  Those objections related to the U.S. "Federal Rules of Evidence and Federal Rules of Civil Procedure,

---

[4]We do not suggest that we agree with everything written in the affidavits of Messrs. Kealey and Wachtel.  But, on this point we do agree.

and [were] . . . as to form." (Id. at 22:10-18.)  That is, the objections were as to questions that

might be leading, vague, or similarly objectionable.  (Id.)  There was no objection as to the

process.[5]

       After the testimony was taken in Ireland, the parties relayed to this Court the details of

the proceedings.  Even then, the plaintiff raised no objection to the procedure that had been

followed in Ireland.  At a conference before this Court more than one week after the conclusion

of the testimony in Ireland, the plaintiff advised the Court that "there won't be a blanket

objection to . . . [that testimony], but more of the typical what you'd find in a deposition, that

there may be -- there may be issues about various questions and answers." (May 22, 2008 Tr. at

13:21-24.)  The plaintiff even advised the Court that, in its view, the testimony was "favorable

from [its] perspective." (Id. at 13:18.)

       After receiving the transcript of the testimony and having an opportunity to evaluate it,

the plaintiff changed its mind and belatedly made this "blanket objection."

## Argument

       The plaintiff was fully informed at the outset of the testimony that the direct-examination

questions and presumed answers were known and memorialized.  The plaintiff agreed to that

procedure.  Had the plaintiff objected at that time to the procedure, the issue could have been

resolved.  But, no objection was made to the procedure.  After all parties agreed to proceed with

the memorialized direct examination, the testimony was taken.  Importantly, cross examination,

re-direct, and re-cross, were not memorialized and were completely spontaneous.  The plaintiff

conducted a complete cross-examination as it would have in the United States and was afforded

an opportunity to re-cross-examine after any re-direct.  It declined.  (May 14, 2008 Tr. at 70:28-

---

[5]On the second day of testimony, the plaintiff simply renewed the same form objections, but made no new one as to the procedure.  (May 14, 2008 Tr. at 3:4-6.)

30.)  Instead, the plaintiff seems to have waited for an opportunity to object here, if and when it decided that the testimony hurt its case.  The plaintiff's opportunity to object and to impeach was in May 2008 in Ireland, and not here.  The plaintiff having failed to do either, its motion must be denied.

**I.      The Procedure Was in Accordance with Applicable Irish Rules, and the Plaintiff Assented to the Procedure, Thereby Waiving Any Objection it May Have Had.**

The testimony here was in accordance with the Rules applicable in Ireland.  "In executing a letter rogatory the courts of other countries may be expected to follow their customary procedure for taking testimony."  Fed.R.Civ.P. 28 Advisory Committee Note (1963) (citation omitted).  The procedure for conducting examinations like these in Ireland is governed by the Irish Rules of the Superior Courts, Order 39.[6]  The Irish Rules give the Irish courts wide discretion "to give all such Directions as to the Time, Place, *and Manner* of . . . [an ordered] Examination, and all other Matters connected therewith, as may appear reasonable and just[.]"  Rules of the Superior Courts, Order 39, Rule 39 (emphasis added).  One discretionary matter is whether to allow a witness to be examined by interrogatory.  Rules of the Superior Courts, Order 39, Rule 1.  The Irish court may also order that any fact or facts be "proven by affidavit."  *Id.*  The Rules also allow for a party to demand production of a witness for cross-examination, (id.), which cross-examination happened here without a demand.

Here, the Irish court exercised discretion over the manner of examination in accordance with the Rules.  The plaintiff was advised that the witnesses would take the stand and be placed under oath, and that the direct-examination questions were memorialized along with the presumed direct-examination answers.  (May 13, 2008 Tr. at 11:19-25.)  The *aide memoir* was

---

[6](For a copy of those Rules, see Pl. Resp. To Mot. to Am. Letter Rogatory, docket entry no. 150, Ex. E; *see also*, The Courts Service of Ireland, http://www.courts.ie/rules.nsf/d7ed4ce54d2bd0c680256e5400502ec7/d78472735d0cd24680256 d2b0046b3e4?OpenDocument  (last visited on August 27, 2008).

marked as Government's Exhibit 1 (referred to in the transcript as Defendant's Exhibit 1). (May 14, 2008 Tr. at 72:8-13.)   The plaintiff stated that it had no objection to this procedure. (May 13, 2008 Tr. at 16:25-28.)

At most, the plaintiff's arguments suggest a belief on its part that the testimony is akin to interrogatories or testimony by affidavit.  But, even assuming, *arguendo*, those allegations are true, the testimony is in accordance with Irish procedure and thereby U.S. law.  Rules of the Superior Courts, Order 39, Rules 1 and 39; Fed.R.Civ.P. 28 Advisory Committee Note (1963). Even if the plaintiff had objected, which it did not, testimony by interrogatory would still have been within the Irish court's discretion.  Rules of the Superior Courts, Order 39, Rule 1.  Given the applicable rules, the plaintiff would have had no valid objection, and has no valid argument now.  Moreover, its failure to object then makes all else academic.

The plaintiff's failure to object to any perceived "error or irregularity" in the manner of the taking of the testimony was a waiver of any objection it may have had.  Fed.R.Civ.P. 32(d)(3)(B).  That waiver provision applies to any objection the plaintiff may have had relating to "the manner of taking the deposition, . . . a party's conduct, or other matters that might have been corrected at that time[.]" Fed.R.Civ.P. 32(d)(3)(B)(i).  It would have been a simple matter to correct at that time any problem the plaintiff alleges here.  It would have been as simple as approaching the witness and taking from him the *aide memoire*.  The waiver rule exists to avoid the perverse result the plaintiff seeks here, which would encourage parties to lie in wait with the hope that damaging testimony be excluded.  *See Bahamas Agricultural Industries, Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1181 (6th Cir. 1975).  The plaintiff did even more than fail to object– it assented to the manner of testimony.  As such, its motion must be denied.

7

## II.     This Testimony is Both Proper and Admissible Under All Applicable U.S. Rules.

The plaintiff cites to no applicable rule to suggest that this testimony was taken improperly or is inadmissible.  The plaintiff fails to even mention a single Federal Rule of Evidence, presumably because this testimony is fully compliant.  Despite the plaintiff's unsupported complaints, this testimony was proper and is admissible.  The testimony was taken orally, in an Irish court, with all rights of cross-examination afforded to the plaintiff, who was represented by counsel and in fact conducted cross examination.  The testimony was proper under Irish rules.  It also would be proper, even if taken in the United States, under any of a number of Federal Rules of Civil Procedure, including Rules 28, 30, and 33.  It is also admissible under the Federal Rules of Evidence.

### A.     The Testimony Complied With Any Applicable Federal Rules of Civil Procedure.

It is unclear exactly which of these Rules, if any, the plaintiff claims was violated. Nonetheless, we address compliance with, and admissibility in accordance with, Rules 28 and 32, and other Rules that may arguably have some bearing on this motion.[7]

This testimony was fully compliant with Rule 28 of the Federal Rules of Civil Procedure. The examination was conducted under a letter of request in accordance with subsection (b)(1)(B).  It was also taken on notice before a person authorized to administer oaths, in accordance with subsection (b)(1)(C).

The plaintiff does not cite to any portion of Rule 30 that was violated, but its argument touches upon aspects of that Rule.  This testimony complied with all applicable provisions of

---

[7]Rule 28 is the Federal Rule of Civil Procedure applicable to letters rogatory.  But, since the plaintiff raises an argument that the spirit of other Rules was violated, we address that allegation here by demonstrating compliance with those Rules.

Rule 30 governing depositions by oral examination.  The witnesses were placed under oath and their testimony was recorded as would have been the case at trial.  Rule 30(c)(1).

Apparently in connection with Rule 30, the plaintiff cites cases that stand for the inapposite proposition that interference with an opponent's deposition, through objections or witness coaching, is impermissible.  (Pl. Mem. at 6-8.)  Of course, that is not at all what happened here.  There was no interference whatsoever with the plaintiff's examination.  The plaintiff's questions were unknown to the United States until asked.  Similarly, they were unknown to the witnesses.  The United States did not interfere by objections or in any other manner with the plaintiff's cross examinations.  Simply put, the plaintiff conducted a completely unfettered examination of each of these witnesses.

Where the plaintiff had the cross-examination opportunity that it had in Ireland, Rule 32 provides for the use of the testimony for any purpose.  Fed.R.Civ.P. 32(a)(1).  The deposition may be used where a witness, as here, is unavailable.  Fed.R.Civ.P. 32(a)(4).  Because Mr. Mahoney is also a plaintiff here, 26 U.S.C. 6226, his deposition also may be used under Rule 32(a)(3).

Because Mahoney is a plaintiff here, the plaintiff's argument here does not even get off the ground.  In the light most favorable to the plaintiff, Mahoney's testimony may be considered a hybrid of interrogatories under Rule 33 and oral deposition under Rule 30.  The United States had a right to propound interrogatories to Mr. Mahoney under Rule 33.  As such, the United States could serve upon him written questions and receive back written answers.  Again, in the light most favorable to the plaintiff, that is what happened here.  The plaintiff, on the other hand, asked Mr. Mahoney any questions it wished to ask, and received back oral answers, just as would be the case in the typical Rule 30 deposition.

**B.     The Testimony is Admissible Under the Federal Rules of Evidence.**

Because the plaintiff does not raise any Rule of Evidence in its motion, we only briefly address the Rules of Evidence.  The testimony here is admissible.  The witnesses here are competent, Fed.R.Evid. 601, and testified based on personal knowledge.  Fed.R.Evid. 602.  The testimony was lawfully taken and is either not hearsay or falls under one of the hearsay exceptions, and therefore may be used at trial.  Fed.R.Evid. 801 and 804.  Additionally, witnesses may use writings, such as the *aide memoire*, to refresh their recollection, so long as the document is produced, as this was, to the plaintiff.  Fed.R.Evid. 612.  In that instance, the plaintiff is entitled to cross examine the witness on the document the witness uses.  The plaintiff failed to cross examine, and has no further recourse here.[8]

**III.     Because the Testimony is Admissible, the Proper Means of Challenging it is Cross-Examination and Contrary Evidence**.

Despite the plaintiff's allegations, (Pl. Mem. at 8-10), there is no evidence to suggest that the testimony is less than credible.  Instead, the testimony is supported by documentary evidence.  Moreover, the witnesses held up to the plaintiff's unfettered cross-examination.  Even so, the credibility of a witness goes only to weight and not admissibility.

To the extent the plaintiff wishes to argue weight, it must produce evidence, which it has failed to adduce, that the testimony is less than credible.  The means of assessing a witnesses'

---

[8]Although not directly related to this motion, because the plaintiff claimed in Ireland to retain its rights to object to the form of certain questions, we point out that it has not retained any such rights. The plaintiff waived those rights by making an inappropriate "global" objection to the form of every one of the direct-examination questions.  (May 13, 2008 Tr. at 22:7-21.)  The plaintiff must object specifically to any question it deems objectionable as to form.  *See* Fed.R.Civ.P. 32(d)(3); *see also Order of United Commercial Travelers v. Tripp*, 63 F.2d 37, 39-40 (10th Cir. 1933) ("if a question or answer is objectionable only in form, the objection must be interposed while the opportunity exists to correct it); *Cordle v. Allied Chemical Corp.*, 309 F.2d 821, 825-826 (6th Cir. 1962).

truthfulness is by subjecting him to cross-examination. *See Rock v. Arkansas*, 483 U.S. 44, 61

(1987). Where, as here, testimony is admissible, the proper means of attacking it is through

vigorous cross-examination and presentation of contrary evidence. *See Daubert v. Merrell Dow*

*Pharms.*, 509 U.S. 579, 596 (U.S. 1993). Because the proper means of assessing truthfulness

involve the gathering of contrary evidence, the single case cited by the plaintiff is of no

relevance here. (Pl. Mem. at 8 n26.) That case involved the presentation to a witness of the

*opposition's* questions and, in turn, the witness' written responses prepared in conjunction with

counsel. *The Mandu; in re Companhia de Navegacao Lloyd Brasileiro*, 11 F. Supp. 845

(E.D.N.Y. 1935). In other words, in that case, an adverse party was denied the right of

unfettered cross-examination because the answers to the cross-examination questions were

crafted with the assistance of the opposing party's counsel. That is the opposite of what

happened here. Here, the witnesses were fully and spontaneously cross-examined by the

plaintiff. The plaintiff simply failed to adduce any contrary facts. The plaintiff has not pointed

out a single inconsistency in the witnesses' testimony. Nor has the plaintiff presented to the

Court any contrary documentary evidence. As such, the plaintiff's cannot even sustain an

argument as to weight, much less admissibility.

Moreover, there is nothing unique about the process followed here. For example, the

Southern District of New York has issued letters rogatory upon written interrogatories, whereby

the opposing party could cross examine the witnesses orally. *United States v. S.S. Marine*

*Courier*, 236 F. Supp. 476, 476-477 (S.D.N.Y. 1964). Additionally, courts have allowed the use

of testimony obtained in letter-rogatory proceedings in which the witness was not even under

oath. *See United States v. Salim*, 855 F.2d 944, 953 (2d Cir. 1988). In that case, the

admissibility was based on the procedure, as here, being in compliance with the law. (*Id.*)

There is also nothing whatsoever unusual or improper about a lawyer for a party meeting with a witness and discussing questions and answers. Even the court in the plaintiff's one cited case recognized "the right to interview prospective witnesses in advance of seeking the issuance of . . . letters rogatory, in order to determine what evidence they will give . . . ." Id. at 846. In fact, Richard Egan met Samuel Mahoney in Ireland in 2004 or 2005, shortly before filing this action as the tax-matters partner. (Richard Egan *Fidelity Int'l* Dep. Tr. at 19:9-12.) But, the United States alleges nothing inherently improper about that meeting. To the extent the plaintiff wanted to know more about the witnesses' preparation for their testimony, the time to find out was on cross examination– not now.

## Conclusion

The plaintiff has all along sought to prevent the United States from obtaining any evidence from the plaintiff's so-called partner, Samuel Mahoney, and from Mahoney's business associates. Even though Samuel Mahoney was purportedly Richard Egan's partner in Fidelity International and Richard Egan even met with Mahoney shortly before filing this case, the plaintiff failed to lift a finger to obtain, and in fact impeded the seeking of, any evidence from overseas. Now that the evidence has been obtained and the plaintiff has determined that such evidence damages its case, it belatedly raises an objection it waived months ago. The plaintiff's belated objection here is not based on any facts, which the plaintiff failed to adduce during its completely unfettered cross examinations in Ireland. The facts are that the examinations were conducted in accordance with all applicable rules. They were also conducted with the plaintiff's assent, the plaintiff having been represented by an Irish barrister being advised in person by lead U.S. counsel. The plaintiff, even after the fact, advised this Court that it had no "blanket objection," but may object to the form of certain questions. The plaintiff cannot reverse course

now that it has determined that the foreign participants in its tax-shelter scheme gave damaging

testimony.

Because the plaintiff waived any objection and, in fact, assented to the manner of taking

of the testimony in Ireland, and because the taking of that testimony complied with all applicable

rules, the plaintiff's motion must be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Tax Division,     U.S. Department of Justice
P.O. Box 403, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

JOHN A. LINDQUIST
BARRY E. REIFERSON
HEATHER L. VANN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Telephone: (202) 307-6561
Facsimile:  (202) 514-5238
E-mail:     john.a.lindquist@usdoj.gov
            barry.e.reiferson@usdoj.gov
            heather.vann@usdoj.gov

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants identified on the Notice of Electronic Filing and copies will be sent to those
indicated as non registered participants on August 29, 2008.

/s/ Barry E. Reiferson
Trial Attorney, US Department of Justice, Tax Division

13