**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FIDELITY INTERNATIONAL CURRENCY ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case Nos.: 05-40151-FDS<br>                06-40130-FDS |
| FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by the Tax Matters Partner,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case Nos.: 06-40243-FDS<br>                06-40244-FDS |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF UNREDACTED INVOICES FOR LEGAL SERVICES**

Defendant seeks to expand the implied waiver doctrine beyond the "few genuine instances of implied waiver"[1] that courts have recognized. Defendant's waiver theories provide

---

[1] *In re Keeper of Records*, 348 F.3d 16, 23 (1st Cir. 2003).

no basis for invading Plaintiff's attorney-client privilege. The Court should reject Defendant's motion.

## I.     The Automatic Waiver Rule Does Not Apply

Defendant contends that the automatic waiver rule applies when evaluating claims of implied waiver.[2] This contention is incorrect. While Defendant relies primarily on one First Circuit decision,[3] subsequent First Circuit decisions have uniformly adopted a balancing approach. In *United States v. Desir*, the First Circuit stated that "implied waiver requires a careful weighing of facts and 'should not be applied cavalierly.'"[4] In *In re Keeper of Records*, the First Circuit stated that "[c]laims of implied waiver must be evaluated in light of principles of logic and fairness. That evaluation demands a fastidious sifting of the facts and a careful weighing of the circumstances."[5] Several district courts within the First Circuit have explicitly stated that waiver is not automatic and is subject to a balancing test.[6]

In evaluating whether an implied waiver has occurred, the dominant consideration is privilege, not relevance. Using a standard of relevance to determine whether the attorney-client privilege has been waived "completely undermines" the purpose of the privilege.[7] Thus, the

---

[2] Def.'s Reply in Supp. of Its Mot. to Compel Produc. of Docs. from Burke Warren MacKay & Serritella, Fidelity International Currency Advisor A Fund, Fidelity High Tech Advisor A Fund, Carruth Management, Carruth Associates, and Affiliates ("Def.'s Reply") at 8-9.

[3] *See id.* at 8 (citing *Greater Newbury Clamshell Alliance v. Pub. Serv. Co.*, 838 F.2d 13 (1st Cir. 1988)).

[4] 273 F.3d 39, 46 (1st Cir. 2001) (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 186 (2d Cir. 2000)).

[5] *In re Keeper of Records*, 348 F.3d 16, 23 (1st Cir. 2003) (citation omitted).

[6] *See, e.g., F.D.I.C. v. R.W. Beck, Inc.*, No. 01-11982, 2004 WL 1474579, at *1 (D. Mass. July 1, 2004) ("A waiver, as the First Circuit made clear in *Clamshell Alliance*, is not automatic, but like most things judicial, is subject to a balancing test."); *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600 (D. Mass. 1992) ("[T]he attorney-client privilege is not *automatically* waived by bringing suit." (emphasis in original)).

[7] *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

First Circuit has emphasized that "a court should begin its analysis with a presumption in favor of preserving the privilege"[8] and has urged caution in finding implied waivers.[9]

As Plaintiff explained in his Opposition, a leading First Circuit decision on privilege waiver identifies the factors common to implied waiver cases as (1) whether "'the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act'" and (2) whether applying the privilege "'to protect against disclosure of that information' would [be] unfair to the opposing party."[10] Neither condition applies to the disputed Burke Warren invoices: Plaintiff has not affirmatively placed the information in the invoices at issue, and continued application of the privilege would not be unfair to Defendant.

## II. Plaintiff Did Not Place the Information in the Invoices At Issue by Filing the Complaints

The crux of Defendant's argument is that Plaintiff waived privilege by filing his FICA A Fund and High Tech Complaints. Defendant's argument is highly disingenuous because it ignores the reality of tax litigation and the principles of TEFRA litigation and is contrary to the law of privilege. To be sure, Defendant's broad waiver claim has enormous implications for the implied waiver doctrine and is an unacceptable attack on privilege.

### A. Defendant Mischaracterizes the TEFRA Rules

Defendant argues that Plaintiff "chose to litigate, chose the forum, chose the factual assertions, and chose what claims to raise."[11] The truth is Plaintiff had to file suit to challenge

---

[8] *Greater Newbury Clamshell Alliance v. Pub. Serv. Co.*, 838 F.2d 13, 20 (1st Cir. 1988).

[9] *In re Keeper of Records*, 348 F.3d 16, 23 (1st Cir. 2003).

[10] *Id.* at 24 (quoting 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 503.41[1] (Joseph M. McLaughlin ed. 1997)).

[11] Def.'s Reply at 4.

the IRS's FPAA adjustments, just as the plaintiff in *TIFD III-E* had to do.[12] While Plaintiff decided to challenge the FPAAs in federal district court and technically initiated these proceedings by filing his complaints, the specific determinations made by the IRS in the FPAAs dictated the factual assertions and claims that have framed the issues before the Court.

Defendant confuses the nature of traditional tax refund litigation with this TEFRA proceeding. A typical tax refund lawsuit for the "recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected" is brought in federal district court or the U.S. Court of Federal Claims pursuant to 28 U.S.C. § 1346(a). Plaintiff brought this TEFRA proceeding—a pre-assessment petition for readjustment of the partnership items as determined in the FPAA—pursuant to 26 U.S.C. § 6226 and 28 U.S.C. § 1346(e).

Defendant's assertion that the IRS's FPAA determinations became "wholly irrelevant" once Plaintiff decided to challenge the FPAA[13] is patently incorrect. Under Internal Revenue Code section 6226, the FPAA controls whether the district court has jurisdiction over a petition for readjustment of partnership items. First, no petition may be filed unless the IRS has issued an FPAA and mailed it to the tax matters partner.[14] Second, the petition must be timely filed, a determination that is made solely by reference to the mailing date of the FPAA.[15] Finally, the

---

[12] *See TIFD III-E, Inc. v. United States*, 223 F.R.D. 47 (D. Conn. 2004).

[13] *See* Def.'s Reply at 4.

[14] I.R.C. § 6226(a), (b); *see also Metro Riverboat Assocs., Inc. v. United States*, No. 05-3109, 2006 WL 2803053, at *12 (E.D. La. Sep. 27, 2006) (finding that the court lacked jurisdiction under Internal Revenue Code section 6226 because an FPAA had never been issued), *aff'd*, 264 Fed. App'x 461 (5th Cir. 2008).

[15] I.R.C. § 6226(a), (b) (prescribing the times within which the tax matters partner and any notice partner must file a petition for readjustment following the mailing of the FPAA).

4

filing partner must make a good faith deposit, the amount of which is computed by reference to the FPAA determinations.[16]

Not only does the FPAA control whether the district court has jurisdiction—it also frames the issues to be litigated. As a matter of law, the legal effect of a court's dismissal of a petition is to sustain the determinations made in the FPAA,[17] which ends the opportunity for further review of any partnership items.[18] The U.S. Court of Federal Claims and the U.S. Tax Court hear the majority of TEFRA cases and have adopted rules that require a taxpayer to plead every issue in the FPAA that the taxpayer believes is in error.[19] These rules treat the taxpayer as having conceded all issues in the FPAA that are not raised in the complaint (or amendment to the complaint).[20] In fact, in *other* TEFRA cases the government has argued that the court "must make a determination either to sustain the FPAAs or make re-determinations of partnership items as set out in the FPAAs."[21]

Thus, in the present case, had Plaintiff's complaint failed to challenge any issues in the FPAA, the FPAA's determination on that issue would have become final. The rules governing TEFRA litigation, as well as the government's litigating position in other TEFRA cases, refute

---

[16] I.R.C. § 6226(e)(1) (in calculating the good faith deposit, the filing partner must take into account what his tax liability would be as adjusted by the FPAA).

[17] I.R.C. § 6226(h); *see also, e.g.*, *Nunez v. Comm'r*, 710 F. Supp. 745, 746 (E.D. Cal. 1989) (finding that an order of the court approving a stipulated dismissal and deeming the FPAA to be correct properly applied to all partners).

[18] *See* I.R.C. § 7422(h) (prohibiting refund actions for partnership items).

[19] Tax Ct. R. 241(d)(1)(C); Fed. Cl. App. F R. 2(d)(1)(C). Internal Revenue Code section 6226 allows a petition to be filed in the plaintiff's choice of federal district court, the United States Court of Federal Claims, and the Tax Court. I.R.C. § 6226(a).

[20] Tax Ct. R. 241(d)(1)(C); Fed. Cl. R. App. F, R. 2(d)(1)(C). The Tax Court has gone a step further, shifting the burden of proof to the government for any issues it raises that were not addressed in the FPAA. Tax Ct. R. 41.

[21] United States' Resp. to Pls.' Mot. for Partial Summ. J. at 9, *Alpha I, L.P. v. United States*, No. 06-407T (Fed. Cl. Aug. 4, 2008); *see also* Mot. of the United States for Partial Dismissal of Pls.' Compls. at 32-33, *Keener v. United States*, No. 03-2028T (Fed. Cl. Nov. 4, 2005) ("As a matter of law, the FPAA determinations were valid and assessments of tax (and correspondingly interest) could be based on them unless *readjusted* by a court of competent jurisdiction or altered by settlement. *See* 26 U.S.C. §§ 6225(a), 6226(a), (f), 6229(d), 6231(b)(1)(C).").

Defendant's assertion that the FPAAs are irrelevant. Defendant, not Plaintiff, framed the issues now before the Court.

### B. Defendant's Position Has Implications Beyond the Present Litigation

Defendant's argument, if accepted by the Court, would have significant consequences beyond the present litigation or the TEFRA context. Under Defendant's reasoning, if the IRS claims that a transaction does not have economic substance, a taxpayer cannot challenge that IRS determination without waiving privilege over all legal bills. After all, according to Defendant, a taxpayer who disputes the IRS position that his transaction did not have economic substance is "putting at issue" whether his transaction could have generated a pre-tax profit. And, the only way the government can refute that position is to examine all legal bills received by the taxpayer to determine whether any of the legal services reflected on those bills might have any possible connection with the disputed transaction.

Defendant tries to avoid this obvious implication of its position by suggesting that Plaintiff created the waiver issue by voluntarily claiming that the transactions at issue had economic substance and a potential for a pre-tax profit.[22] As explained above, Defendant's position misstates the TEFRA rules and is nothing more than an extreme constructive waiver argument. Moreover, Defendant's suggestion that a taxpayer can avoid the problem by how it words its complaint is misleading. The clear import of Defendant's position is that any taxpayer who asserts that a transaction satisfies the economic substance doctrine has waived privilege, regardless of whether the taxpayer takes that position in its complaint, a discovery response, or a rebuttal expert report.

---

[22] *See* Def.'s Reply at 7.

### C. Defendant's Effort to Distinguish *TIFD III-E* Is Untenable

Defendant attempts to distinguish *TIFD III-E* by claiming that the documents at issue in *TIFD III-E* were relevant to "intent," whereas in this case the documents are "factual" and are not being sought by Defendant to prove intent.[23]

Defendant's purported distinction between intent and factual issues is meaningless. Intent is a factual issue, and the court in *TIFD III-E* drew no distinction between intent and other factual issues.[24] This case, like *TIFD III-E*, involves a broad claim by the government of "at issue" waiver and a demand for privileged documents, or portions thereof.

Moreover, Defendant's claim that it is not seeking the documents to prove intent is disingenuous, as evidenced by other statements it has made in pursuit of the Burke Warren invoices.[25] For example, in its opening memorandum, Defendant stated that it needs the invoices to determine "whether the plaintiffs' primary *motivation* in entering into the transaction was to make an economic profit."[26] In its reply, Defendant states that the redacted invoices "may become essential to rebut any testimony Ms. Denby gives, for example, about the existence of a non-tax business *purpose*."[27] Perhaps Defendant believes there is a distinction between intent, on the one hand, and motivation and purpose, on the other. Even if such a distinction

---

[23] Def.'s Reply at 12. Defendant's citation to *TIFD III-E* when attempting to distinguish it from the present case is incorrect. (Def.'s Reply at 12 n.9.) The decision addressing the privilege issues can be found at *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47 (D. Conn. 2004).

[24] *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47, 49 (D. Conn. 2004) (describing intent as a fact by stating that "the rule is that a party may not attempt to demonstrate intent (or any fact, for that matter) by *selectively* revealing communications with counsel or by making assertions that can only be confirmed by reviewing privileged communications").

[25] Def.'s Reply at 12.

[26] Def.'s Mem. of Law in Supp. of Its Mot. to Compel Produc. of Docs. from Burke Warren MacKay & Serritella, Fidelity International Currency Advisor A Fund, Fidelity High Tech Advisor A Fund, Carruth Management, Carruth Associates, and Affiliates at 5 (emphasis added).

[27] Def.'s Reply at 12 n.8 (emphasis added).

exists, it provides no basis for distinguishing *TIFD III-E* because in that case the government predicated its unsuccessful waiver argument on the taxpayer's claim that its transaction had a non-tax business purpose.

In *TIFD III-E*, as here, Defendant made a broad "at issue" waiver argument. Defendant's attack on privilege should be rejected here, just as it was in *TIFD III-E*.

### III. Plaintiff's Privilege Does Not Deprive Defendant of "Essential" Evidence

Defendant maintains that preservation of Plaintiff's attorney-client privilege with respect to its legal bills would deprive it of evidence that is "essential" to Defendant's ability to demonstrate that the transactions at issue in this case did not have economic substance. Not only is the issue of waiver not dependent on whether the privileged information is "essential," but Defendant's argument mischaracterizes the economic substance doctrine and is incompatible with the statements made by its own testifying experts. Accordingly, maintaining Plaintiff's privilege would not "weaken, in a meaningful way, the defendant's ability to defend."[28]

#### A. Defendant Mischaracterizes the Economic Substance Doctrine As Applied in the First Circuit

Defendant erroneously suggests that the economic substance doctrine requires the presence of a "reasonable possibility of profit," an inquiry that Defendant asserts requires a "probability-weighted expected-return analysis."[29] Neither proposition is supported by the cases. First, the First Circuit's discussion of profit potential occurs in response to an argument by taxpayers that their tax losses were allowable under section 108 of the Tax Reform Act of

---

[28] *Greater Newbury Clamshell Alliance v. Pub. Serv. Co.*, 838 F.2d 13, 20 (1st Cir. 1988) (cited in Def.'s Reply at 9).

[29] Def.'s Reply at 3.

1984, which applied to losses from a "transaction entered into for profit."[30] The taxpayers argued that they satisfied section 108 because they had a reasonable prospect of profit, but the First Circuit rejected their contention.[31] While the First Circuit also affirmed the Tax Court's alternative holding that the transactions lacked economic substance,[32] it did not hold that a reasonable possibility of profit is necessary to establish that a transaction has economic substance.

Other First Circuit cases applying the economic substance doctrine have upheld transactions without inquiring into whether the taxpayer expected to realize a pre-tax profit from the transaction. In *Granite Trust*, the court upheld a transaction structured to enable the taxpayer to convert a nondeductible loss into a deductible loss, apparently without ever considering whether the taxpayer could have realized a pre-tax profit.[33] Similarly, in *Fabreeka Products*, the First Circuit held that a transaction structured to enable a corporation to convert a nondeductible dividend into a deductible expenditure had economic substance, even though the corporation could not have generated a pre-tax profit from the transaction after taking transaction costs into account.[34]

Second, Defendant's suggestion that a "reasonable possibility of profit" inquiry requires a "probability-weighted expected-return analysis"[35] is not supported by the case law. It is striking

---

[30] *Dewees v. Comm'r*, 870 F.2d 21, 22, 29 (1st Cir. 1989). "Section 108 is a special provision that Congress enacted specifically to deal with commodity straddles 'entered into before . . . 1981.'" *Id.* at 29.

[31] *See id.* at 33 ("We assumed for the sake of argument . . . that the Deweeses were correct that these words referred to an objective 'reasonable prospect of profit' test, but that is not really so.'" (citation omitted)).

[32] *Id.* at 32.

[33] *Granite Trust Co. v. United States*, 238 F.2d 670, *passim* (1st Cir. 1956).

[34] *Fabreeka Prods. Co. v. Comm'r*, 294 F.2d 876, *passim* (1st Cir. 1961).

[35] Def.'s Reply at 3.

9

that of the hundreds of cases that have applied the economic substance doctrine over the last seventy years, Defendant was able to identify only one decision that endorses that standard.[36]

### B. The Information in the Invoices Is Not "Essential" to the Analysis Performed By Defendant's Experts

In addition to mischaracterizing the law, Defendant ignores some inconvenient truths regarding the analyses employed by members of its own expert team. Two of Defendant's experts, Gordon Rausser and A. Lawrence Kolbe, concluded that neither the High Tech nor FICA A Fund transactions had a reasonable possibility of profit, even without considering the fees paid to Burke Warren.[37] While Rausser and Kolbe referenced the fees paid to Burke Warren in their analyses of the High Tech transactions, in their analyses of the FICA A Fund transactions, their conclusions regarding the lack of profitability were unreserved.[38] In fact, not only did they reach this determination for the FICA A Fund transactions, but they reached the same conclusion for the other forty-six transactions that Defendant has selected for inclusion in its "other taxpayer" evidence,[39] even though they apparently had no access to information regarding the types of costs that Defendant now claims to be "essential" to the analysis. Including the Burke Warren fees in the reasonable possibility of profit calculation will not alter Defendant's experts' opinions that no reasonable possibility of profit existed. The ability of the

---

[36] *See* Def.'s Reply at 3 (citing *Stobie Creek Invs., LLC v. United States*, Nos. 05-748 & 07-520, 2008 WL 2968170, at *44, *45 (Fed. Cl. July 31, 2008)).

[37] Expert Report of Gordon Rausser at 8-9, *Fid. High Tech Advisor A Fund, LLC v. United States*, Nos. 06-40243 & 0640244 (D. Mass. Mar. 31, 2008); Expert Report of A. Lawrence Kolbe at 40, *Fid. High Tech Advisor A Fund, LLC v. United States*, Nos. 06-40243 & 0640244 (D. Mass. Mar. 31, 2008); Expert Report of Gordon Rausser at 7, *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. Aug. 7, 2007) ("Rausser *FICA A Fund* Report"); Expert Report of A. Lawrence Kolbe at 59, *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, Nos. 05-40151 & 06-40130 (D. Mass. Aug. 7, 2007) ("Kolbe *FICA A Fund* Report").

[38] Rausser *FICA A Fund* Report at 60-61; Kolbe *FICA A Fund* Report tbl. 17.

[39] *See* Rausser *FICA A Fund* Report at 85-86 (stating that the expected return on the forty-six transactions was negative); Kolbe *FICA A Fund* Report Workpaper E-13 (showing a negative rate of return on investment after fees for all forty-six other transactions).

experts to opine on profitability without the invoices undermines the "essential" nature of the invoices.

### C. There Is No Basis for Destroying Plaintiff's Privilege

Defendant's desire for Plaintiff's privileged information does not justify a finding of waiver. But moreover, (1) the First Circuit does not require a transaction to have a reasonable possibility of profit for it to have economic substance, (2) Defendant's "probability-weighted expected-return analysis" has been endorsed by only one trial court, and (3) Defendant's experts opined on not only Plaintiff's transactions but also forty-six other transactions without knowing the types of legal fees represented by the Burke Warren invoices. Further, because Plaintiff "has not thrust a *partial disclosure* into ongoing litigation, fairness concerns neither require nor permit massive breaching of the attorney-client privilege."[40]

## CONCLUSION

For the reasons stated above and in Plaintiff's Opposition, the Court should reject Defendant's invitation to expand the scope of the implied waiver doctrine beyond the few genuine instances that currently exist. Defendant's motion should be denied.

---

[40] *In re Keeper of Records*, 348 F.3d 16, 25 (1st Cir. 2003) (emphasis added); *see also United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998) (stating that the implied waiver doctrine "is directed against *selective disclosures* by reserving protection for only those communication that the privilege holder himself is prepared to keep confidential" (emphasis added)).

Respectfully submitted this 4th day of September 2008.

                    PLAINTIFF
                    FIDELITY INTERNATIONAL CURRENCY ADVISOR
                    A FUND, L.L.C. by the Tax Matters Partner, and
                    FIDELITY HIGH TECH ADVISOR A FUND, L.L.C., by
                    the Tax Matters Partner


/s/ Lena Amanti
David J. Curtin, D.C. Bar #281220
Ronald L. Buch, Jr., D.C. Bar #450903
Lena Amanti, D.C. Bar #490791
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586
Email: dcurtin@mckeenelson.com
       rbuch@mckeenelson.com
       lamanti@mckeenelson.com


John O. Mirick, BBO #349240
MIRICK, O'CONNELL, DEMALLIE
& LOUGEE, LLP
100 Front Street
Worcester, MA 01608
Telephone: (508) 791-8500
Facsimile: (508) 791-8502
Email: jomirick@mirickoconnell.com

**Certificate of Service**

| | |
|---|---|
| I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 4, 2008. | /s/ Lena Amanti<br>Lena Amanti, D.C. Bar #490791<br>MCKEE NELSON LLP<br>1919 M Street, N.W., Suite 200<br>Washington, D.C. 20036<br>Telephone: (202) 775-1880<br>Facsimile: (202) 775-8586<br>Email: lamanti@mckeenelson.com |